# EXHIBIT D

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 2 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

Index No. _____
Date Purchased: November 4, 2019

**SUMMONS**

TO THE ABOVE-NAMED DEFENDANT,

    Donald J. Trump
    725 Fifth Avenue
    New York, NY 10022:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

    Pursuant to NY CPLR §§ 503(a) and 509, Plaintiff designates as the place of trial New York County, the county of residence of the Defendant at the time this action was commenced.

Dated: November 4, 2019
New York, New York

KAPLAN HECKER & FINK LLP

_____
Roberta A. Kaplan

350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 3 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

Index No. _____

**COMPLAINT AND
JURY DEMAND**

Plaintiff E. Jean Carroll ("Plaintiff" or "Carroll"), by and through her attorneys at Kaplan Hecker & Fink LLP, alleges as follows:

## INTRODUCTION

1.      Nobody in this nation is above the law. Nobody is entitled to conceal acts of sexual assault behind a wall of defamatory falsehoods and deflections. The rape of a woman is a violent crime; compounding that crime with acts of malicious libel is abhorrent. Yet that is what Defendant Donald J. Trump did to Plaintiff E. Jean Carroll.

2.      Roughly 23 years ago, playful banter at the luxury department store Bergdorf Goodman on Fifth Avenue in New York City took a dark turn when Trump seized Carroll, forced her up against a dressing room wall, pinned her in place with his shoulder, and raped her.

3.      In the aftermath, Carroll confided in two close friends. One urged her to report the crime to the police, but the other warned that Trump would ruin her life and livelihood if she reported it.

4.      Carroll chose silence—and remained silent for over two decades.

5.      Carroll knew then that sexual assault was pervasive. She also knew that men have been assaulting women and getting away with it since before she was born. And she knew that while a woman who accused *any* man of rape was rarely believed, a woman who accused a rich, famous, violent man of rape would probably lose everything. She therefore reasonably concluded that if she accused Donald Trump of rape he would bury her in threats and lawsuits, and she would probably lose her reputation, not to mention everything she had worked for and achieved.

6.      Near the end of the 2016 presidential election, Carroll watched in horror as numerous women offered highly credible (and painfully familiar) accounts of Trump assaulting them; Trump responded with insults and denials; the public fractured; and Trump not only won the election, but grew *more* popular with some supporters as a result of the controversy.

7.      Carroll's mother, a respected Republican official in Indiana, was dying during the last six weeks of the presidential election. Carroll, wanting to make her mother's last days as pleasant as possible and avoid causing her any pain, decided to remain silent about what Trump had done to her.

8.      But that all changed in late 2017, when the Harvey Weinstein scandal and its aftermath signaled a profound shift in how American society responds to accusations of sexual misconduct by powerful men. It suddenly seemed possible that even Trump could be held to account.

9.      For Carroll, that project grew more urgent—and more personal—as the #MeToo era prompted a flood of new letters to her advice column seeking her counsel about how to respond to sexual assault and abuse. In her column, Carroll encourages her readers to be brave, to think clearly, and to seek justice. When readers overcome with the doubt and anxiety have turned to her seeking advice, Carroll has always advised taking action. But she never confessed her own

2

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 5 of 201

experiences. She never revealed that she, too, had been a victim of sexual assault. Over time, as described below, the contradiction between Carroll's words and her actions became increasingly untenable.

10. Carroll is a journalist. She watched as a throng of women came forward and accused Trump of sexual assault, only to be denigrated and then brushed aside. When she felt she should finally come forward herself, Carroll wanted to do it differently. She decided to describe Trump's rape in a book she had already begun to write about her experiences with various men. She did not want to tell her story to the police, a newspaper, an elected official, or a fellow journalist, and be treated as a "victim." In other words, she wanted to tell her own story on her own terms.

11. When Carroll's account was published, Trump lashed out with a series of false and defamatory statements. He denied the rape. But there was more: he also denied ever having met Carroll or even knowing who she was. Through express statements and deliberate implications, he accused Carroll of lying about the rape in order to increase book sales, carry out a political agenda, advance a conspiracy with the Democratic Party, and make money. He also deliberately implied that she had falsely accused other men of rape. For good measure, he insulted her physical appearance.

12. Each of these statements was false. Each of them was defamatory.

13. Trump knew that these statements were false; at a bare minimum, he acted with reckless disregard for their truth or falsity. Trump had recognized Carroll on sight at Bergdorf Goodman. He knew who she was when he raped her, and he knew who she was in 2019. He certainly knew that she was telling the truth. After he lied about attacking her, he surrounded that central lie with a swarm of related lies in an effort to explain why she would invent an accusation of rape. To do so, he smeared her integrity, honesty, and dignity—all in the national press.

3

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 6 of 201

14.     These lies were familiar to Trump. He had used them before, when other women stated that he had grabbed, groped, or raped them.

15.     Trump's defamatory statements injured Carroll. They inflicted emotional pain and suffering, they damaged her reputation, and they caused substantial professional harm.

16.     Carroll filed this lawsuit to obtain redress for those injuries and to demonstrate that even a man as powerful as Trump can be held accountable under the law.

## THE PARTIES

17.     Plaintiff E. Jean Carroll is a journalist, author, former writer for Saturday Night Live, and advice columnist for *Elle* magazine. She is a resident of the State of New York.

18.     Defendant Donald J. Trump is currently the President of the United States, although he is sued here only in his personal capacity. Since taking office, Trump has filed several lawsuits in his personal capacity, including *Trump v. Vance, Jr. et al.*, No. 19 Civ. 8694 (S.D.N.Y.), *Trump et al. v. Deutsche Bank AG et al.*, No. 19 Civ. 3826 (S.D.N.Y.), *Donald J. Trump for President, Inc. et al. v. Padilla et al.*, No. 19 Civ. 1501 (E.D. Cal.), *Trump v. Committee on Ways and Means of the U.S. House of Representatives et al.*, No. 19 Civ. 2173 (D.D.C.), and *Trump et al. v. Committee on Oversight and Reform of the U.S. House of Representatives et al.*, No. 19 Civ. 1136 (D.D.C.). Trump is also defending a related case pending in this Court. *See Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.). Trump is a resident of the State of New York.

## JURY DEMAND

19.     Plaintiff E. Jean Carroll hereby demands a trial by jury.

## JURISDICTION & VENUE

20.     This Court has jurisdiction pursuant to NY CPLR § 301.

21.     Venue is proper in this county pursuant to NY CPLR § 503 and § 509.

4

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 7 of 201

## FACTUAL ALLEGATIONS

### I.   TRUMP RAPES CARROLL AT BERGDORF GOODMAN

22.    One evening between the fall of 1995 and the spring of 1996, Carroll left work and went to Bergdorf Goodman, the luxury department store on Fifth Avenue in New York City. She was and remains a regular shopper at Bergdorf's.

23.    That evening, Carroll did not find whatever she was looking for and prepared to leave Bergdorf's empty-handed. As she exited through Bergdorf's revolving side door on 58th Street, Trump arrived and entered through that very same door, which was cater-cornered across from the Plaza Hotel.

24.    Trump instantly recognized Carroll on sight. They had met at least once before and had long traveled in the same New York City media circles. In this period, Carroll was doing the daily *Ask E. Jean* TV show, a small hit on the "America's Talking" network started by Roger Ailes. She was also on a frequent guest and commentator on the widely watched *Today* show.

25.    Trump put up his hand to stop her from exiting and said, "Hey, you're that advice lady!" Carroll, struck by his boyish good looks, responded by saying, "Hey, you're that real estate tycoon!"

26.    Trump said that he was at Bergdorf's to buy a present for "a girl" and asked Carroll to come advise him. Carroll was surprised but thrilled that Trump would want her advice. She stuck around, imagining the funny stories that she might later recount.

27.    Trump and Carroll began searching for a gift that Trump could give to the unnamed girl. As they stood just inside the door, Carroll pointed to the handbags. Trump made a face; he did not like that idea. Carroll instead suggested a hat. Trump walked over, going straight for a fur hat, prompting Carroll to object that no woman would wear a dead animal on her head.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 8 of 201

28.     As Trump cuddled the fur hat, Carroll asked how old "the girl" was. Trump did not

answer, instead asking Carroll how old she was. When Carroll replied that she was fifty-two years

old, he taunted her, "You're so *old*!"

29.     Trump then had an idea: He would buy lingerie instead.

30.     Trump and Carroll rode up the escalator to the lingerie department. When they

arrived, it was uncharacteristically empty, with no sales attendant in sight. Sitting on the counter

near them were two or three boxes and a see-through bodysuit in lilac gray.

31.     Snatching the bodysuit, Trump insisted that Carroll try it on. Bemused, Carroll

responded that *he* should try it on himself, adding that it was his color. Trump and Carroll went

back and forth, teasing each other about who should try on the bodysuit.

32.     Suddenly, Trump grabbed Carroll's arm and said, "Let's put this on."

33.     Trump maneuvered Carroll to the dressing room. As they moved, Carroll laughed,

thinking to herself that she would make him put the bodysuit on over his pants.

34.     Strangely for Bergdorf's, the dressing room door was open and unlocked.

35.     Trump closed the door of the dressing room.

36.     Immediately, Trump lunged at Carroll, pushing her against the wall, bumping her

head quite badly, and putting his mouth on her lips.

37.     Carroll shoved him back. Utterly shocked by Trump's unexpected attack, Carroll

burst out in awkward laughter. She could hardly process the insanity of the situation. She also

hoped, at least at first, that laughter would bruise his ego and cause him to retreat.

38.     But Trump did not stop. He seized both of her arms and pushed her up against the

wall again, bumping her head a second time. While pinning Carroll against the wall with his

shoulder, Trump jammed his hand under her coatdress and pulled down her tights.

6

39.     Trump opened his overcoat and unzipped his pants. Trump then pushed his fingers around Carroll's genitals and forced his penis inside of her.

40.     Carroll resisted, struggling to break free. She tried to stomp his foot with her high heels. She tried to push him away with her one free hand (as she kept holding her purse with the other). Finally, she raised a knee up high enough to push him out and off her.

41.     Carroll ran out of the dressing room, out of Bergdorf's, and onto Fifth Avenue.

42.     The whole attack lasted two to three minutes.

## II.     CARROLL CONFIDES IN TWO FRIENDS ABOUT THE RAPE

43.     As soon as she was outside Bergdorf's, Carroll pulled her phone out of her purse and called her friend Lisa Birnbach, the author, journalist, and correspondent on TV morning shows.[1] Carroll was breathless and still reeling from the assault. She kept laughing, manically—her way of coping with the stress and trauma that she had just experienced.

44.     Carroll recounted to Birnbach how Trump had attacked her in Bergdorf's dressing room. She told Birnbach how Trump had pulled down her tights and put his penis inside of her.

45.     "He raped you," Birnbach kept repeating. She begged Carroll to go to the police and offered to accompany her. Still in shock and reluctant to think of herself as a rape victim, Carroll did not want to speak to the police. She told Birnbach that it was just a few minutes of her life and that it was over. She implored Birnbach never to tell anyone what had happened.

46.     Carroll drove home and crawled straight into bed.

47.     Over the next few days, Carroll confided in a second friend, the New York City journalist and news anchor Carol Martin. They sat together in the kitchen as Carroll described the

---

[1] Birnbach wrote a story about Trump's Mar-a-Lago that was published in February 1996. *See* Lisa Birnbach, *Mi Casa Es Su Casa*, NEW YORK (Feb. 12, 1996). Birnbach has suggested that it was because of her work on that article that Carroll called her immediately after the assault.

rape. This time, Carroll did not laugh. Nobody laughed. The gravity of the assault had finally started to sink in.

48.     Martin solemnly advised Carroll to tell no one. Recognizing that Trump was a powerful man, Martin feared that if her friend came forward, disaster would ensue. Martin warned Carroll, in sum and substance: "Tell no one. Forget it! He has two hundred lawyers. He'll bury you."

49.     Carroll took Martin's advice. She knew how brutal and dangerous Trump could be.

50.     Carroll was also afraid of being dragged through the mud if she reported the rape. She was convinced that nobody would believe her if she came forward. And like so many other survivors of sexual assault, Carroll also blamed herself. She called herself "stupid." She told herself that she "deserved it" for agreeing to go lingerie shopping with Trump. She struggled with the guilt that, somehow, though she had fought to protect herself from his attack, it was her fault that Trump had raped her because she had entered that Bergdorf dressing room.

51.     Fundamentally, Carroll was raised to believe that strong women get by in the world with a stiff upper lip—*i.e.*, by putting hardship and suffering behind them. She believed that strong women laugh at disasters because feeling sad only doubles the burden. To Carroll, laughter is how women have dealt with calamity for thousands of years. So Carroll put her chin up and tried to move on.

52.     Carroll thus chose silence.

53.     Carroll did not mention the rape again for over twenty years. She did not want to be seen—or to see herself—as a victim of sexual assault.

54.     Carroll has not had sex with anyone since that day when Trump raped her.

## III.   CARROLL REMAINS SILENT FOR TWENTY YEARS

55.   For the next twenty years, Carroll pursued her career as a writer and advice columnist. Over time, she built a loyal audience and enjoyed the support of her publisher. Her *Ask E. Jean* advice column in *Elle* magazine became the longest, still-active advice column in American publishing. Its success resulted in large part from the many letters sent to her by readers.

56.   Carroll's column in *Elle* was about life and love. Readers' questions ranged from the lighthearted to the deeply personal. From time to time, readers would ask questions about whether behavior that they experienced at work, at church, and in their relationships was appropriate. When Carroll detected sexism or abuse, she did her level best to call it out and to help women protect themselves.

57.   One reader, for example, despaired in 1994, "My boss is always rubbing up against me . . . . He scares me because he's very powerful and could ruin me." Carroll responded: "Darling, if the old snake has done so much to help your career, why are you still an assistant? Sex harassers are filthy yellow sneaking cowards and must be won over, or crushed . . . . If all else fails, next time the old waterhead touches you, give him a knee in the groin. You've got nowhere to go but up."[2]

58.   Another reader had been raped when thirteen years old and sought advice from Carroll because her rapist had just been hired as a co-worker. Carroll responded: "[T]he gentleness of your [letter] speaks strongly for your forgiving nature; however, it makes my duty *very* difficult. Because now I must harden your soul. I must twist a little bit of steel—I'd try a big block of metal

---

[2] *Reprinted in* E. JEAN CARROLL, A DOG IN HEAT IS A HOT DOG AND OTHER RULES TO LIVE BY 28-29 (1996).

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 12 of 201

if I could—around your backbone, and persuade you to report your friend to the police."[3] Carroll added:

> "First, call your rape crisis center and speak with a counselor. Second, join a group of rape survivors—with their hardy support, you'll start constructing a world for *yourself* and leave the world the rapist built for you. And, third, find another job at once. (Do *not* tell your employer about the rape. Do *not* inform the rapist of these steps. Stay cool. He's dangerous.)"[4]

59.     In her advice columns, Carroll sought to offer witty, wise, and worldly guidance, and to address her readers in a clear, straightforward manner. She often urged readers to speak the truth and to recognize patterns of rationalization and abuse. Readers' perception of Carroll as honest, thoughtful, frank, and well-meaning were essential to Carroll's professional success.

60.     But in responding to her readers, Carroll did not confess her own life experiences, including the sexual assault by Trump described above.

61.     During the last month of the election of 2016, Carroll watched a multitude of women reveal that Trump had engaged in sexual misconduct. She saw Trump brutally attacking his accusers on a national stage—denying their accusations, while also savaging their reputations and insulting their appearance.

62.     And as Carroll sat at the bedside of her dying mother in a Bloomington, Indiana hospital, watching numerous, credible women stun the nation with their stories of Trump's sexual brutality, Carroll briefly considered whether she, too, should reveal that Trump had raped her.  But she feared—just as she had for decades—that Trump would lie his way out of it, while destroying her life and reputation. He had done it before to plenty of women and, it seemed to Carroll, he would readily do it again. And, worst of all, coming forward with her story would also cause a

---

[3] *Id.* at 141-42.

[4] *Id.* at 142.

media storm in Indiana and destroy her mother's last happy days on the planet. Carroll feared that it would cost her and her family dearly without actually changing anything, especially since any accusation made during the presidential campaign would be characterized by Trump and his allies as a stunt to thwart his election.

63.     Indeed, Carroll worried that she might make Trump *more* popular in states like Indiana by revealing the rape, since his electoral fortunes had steadily improved despite credible allegations of sexual abuse. To Carroll, it appeared that some of Trump's political supporters actually admired the fact that Trump was rich enough, macho enough, and powerful enough to be sued by—and to pay off—all these women he had groped and penetrated (especially porn stars and *Playboy* models).

64.     Carroll, in honor of her mother's remarkable life, many years of which were spent as a local and loyal Republican elected official, and because she thought the publicity would help Trump win the election, warily persisted in her decades-old silence.

65.     Carroll's mother died on October 11, 2016. In 2017, Carroll decided to write a book drawing on her observations as an advice columnist, but focusing specifically on her own life and trying to understand why so many *Ask E. Jean* letter-writers complained about men. On the morning of October 5, 2017, Carroll set out on a road trip, traveling to towns named after women. When she arrived in each town named after a woman (Angelica, New York, Tallulah, Louisiana, Marianna, Arkansas, and so forth), she spoke to women from all walks of life about their relationships with men. She asked many of her subjects about the roles that men play in their lives.

## IV.     CARROLL DECIDES TO SPEAK OUT

66.     On the very day Carroll began her road trip for her book, October 5, 2017, the *New York Times* revealed that Harvey Weinstein had sexually assaulted and harassed dozens of women

11

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 14 of 201

in the film industry.[5] The news went off in Carroll's mind like a bomb. She could not stop reading. Painful memories of abuse at the hands of men, including Trump, swept over her.

67.     Days later, several women accused Weinstein of rape.[6] It soon became clear to Carroll, and to the American people, that Weinstein's abuses had been enabled for decades by a loose network of loyalists and lawyers, who had ensured that Weinstein evaded accountability for his exploitation of women—even though it was an open secret in Hollywood.

68.     As the Weinstein scandal persisted, Carroll saw society respond to the accusations with a seriousness and depth of self-reflection that she had never seen before; all too often, and as recently as the 2016 election, many Americans had brushed aside or marginalized accusations of sexual misconduct by powerful men. Carroll also saw other women suddenly feel emboldened to come forward with their own reports of harassment, exploitation, abuse, violence, and rape.

69.     Carroll was moved by this experience. The walls that she had erected in her mind—the fear that Trump would emerge unscathed, the wariness of allowing him and his allies to come after her, the doubt that speaking up would actually matter, and the nagging anxiety that she was somehow to blame for being raped—began to crumble. Decades of deflection, diversion, and denial dissolved, resurfacing memories and feelings that she had hidden away.

70.     Carroll was struck by the fact that Weinstein, for all his wealth and power, could still be held accountable for his sexual misconduct. She saw how women had at last changed the public conversation by saying "Me Too" and by demanding accountability.

---

[5] Jodi Kantor & Megan Twohey, *Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*, N.Y. TIMES (Oct. 5, 2017).

[6] Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, NEW YORKER (Oct. 10, 2017).

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 15 of 201

71.     These observations lead Carroll to reflect again on her column in *Elle* magazine, and to ask whether she was a hypocrite. For decades, she had paired her trademarked wit with steely resolve in confronting the everyday unfairness—and, all too often, the abuse—that her (largely female) readers confessed. Carroll's written persona was brave. But she *still* had not confessed her own experiences of abuse, her fear of coming forward, or her creeping self-doubt.

72.     These internal reflections loomed larger in her mind—and became inescapable— as more readers of Carroll's advice column began asking, "Should I come forward with my account of surviving sexual abuse or harassment?"

73.     Carroll finally decided that she owed her readers the truth. She also owed them (and many other women) solidarity in their efforts to bring justice and accountability to powerful men who had engaged in sexual assault and gotten away with it. She knew that it would be painful to speak up. But she also knew that it was the right thing to do so.

74.     While Carroll was on the road trip across the country talking to women as research for her book, she started a list of the 21 most hideous men she had ever encountered—men who had, each in his own way, left indelible and ugly marks on her story. This list grew into a book, *What Do We Need Men For?: A Modest Proposal*. In that book, Carroll interspersed the stories of women she had met while traveling the country with the men on her "Most Hideous List."

75.     Two men on the Most Hideous List haunted Carroll the most. The first was Cam Parks, the Waterfront Director at her Girl Scout camp, a man who sexually abused her every day during a two-week period when she was twelve. The second was Donald Trump, the man who raped her when she was 52. Carroll described that attack in detail.

76.     Carroll knew a book was the right place for her to come forward about Trump's assault. Writing is Carroll's lifeblood; she writes to process the world around her and to reveal her

13

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 16 of 201

inner self. It's her normal way of living: she writes about what happens to her, often in a confessional, idiosyncratic manner. She also believed that a book would allow her to control her narrative and speak directly to her readers. This was important. Carroll did not want to be, or to act like, a victim. She wanted to tell her story on her terms, rather than as filtered through journalists or social media. Her language was specific.

77.     In her book, Carroll truthfully described, in meticulous detail, the rape in Bergdorf Goodman:

> "The next moment, still wearing correct business attire, shirt, tie, suit jacket, overcoat, he opens the overcoat, unzips his pants, and, forcing his fingers around my private area, then thrusts his penis halfway—or completely—I'm not certain— inside me."[7]

78.     She also explained why she had not come forward earlier:

> "Receiving death threats, being driven from my home, being dismissed, being dragged through the mud, and joining the sixteen women who've come forward with credible stories about how the man grabbed, badgered, belittled, mauled, molested, and assaulted them, only to see the man turn it around, deny, threaten, and attack them, never sounded like much fun. Also, I'm a coward."[8]

79.     At noon on June 21, 2019, *New York* magazine published Carroll's account of the rape on NYMag.com as an excerpt of her forthcoming book. The excerpt first appeared on *The Cut,* a vertical on NYMag.com. The excerpt appeared on newsstands three days later in the June 24-July 7 print edition.

80.     Carroll's book was released by St. Martin's Press on July 2, 2019.

---

[7] E. JEAN CARROLL, WHAT DO WE NEED MEN FOR?: A MODEST PROPOSAL 248 (2019).

[8] *Id.* at 244.

14

## V.   TRUMP REPEATEDLY DENIES RAPING CARROLL AND MAKES A SLEW OF FALSE, INSULTING STATEMENTS ABOUT HER

81.    In three statements—published on June 21, 22, and 24 respectively—Trump responded to Carroll by publicly, falsely, and maliciously smearing her reputation.

82.    On June 21, 2019, Trump issued the following public statement:

"Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."

83.    Upon information and belief, Trump's June 21 statement was first given to the press, including Laura Litvan of *Bloomberg News*, who posted it on Twitter at 2:17 p.m.[9]

---

[9]   *See* Laura Litvan (@LauraLitvan), Twitter (June 21, 2019 2:17 PM), https://twitter.com/LauraLitvan/status/1142179819075121154.

84.     Trump's June 21 statement was subsequently shared online by other journalists and covered by many leading news sources as Trump's statement in response to Carroll.[10]

85.     In the June 21 statement, Trump falsely stated that he did not rape Carroll.

86.     In the June 21 statement, Trump falsely stated that he had never met Carroll.

87.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that he had no idea who Carroll was.

---

[10] *See, e.g.*, AFP News Agency, *US Writer Says Trump Sexually Assaulted Her in Mid-1990s*, AL JAZEERA, (June 21, 2019); Alexandra Alter, *E. Jean Carroll Accuses Trump of Sexual Assault in Her Memoir*, N.Y. TIMES (June 21, 2019); Jenna Amatulli, *Trump on E. Jean Carroll Rape Allegation: "I've Never Met This Person in My Life"*, HUFFINGTON POST (June 21, 2019); Amber Athey, *Trump Responds to Rape Accuser: "People Should Pay Dearly for Such False Accusations"*, DAILY CALLER (June 21, 2019); Brian Bennet, *Trump Says He "Never Met" Author Who Has Accused Him of Sexual Assault*, TIME (June 21, 2019); Ellie Bufkin, *Trump Issues Blistering Denial of E. Jean Carroll's Rape Allegation*, WASH. EXAMINER (June 21, 2019); Adam Carlson, *Noted Advice Columnist Says Trump Raped Her in Manhattan Department Store in the '90s—"Never Happened," Trump Responds*, PEOPLE MAG. (June 21, 2019); Matthew Choi, *Trump Dismisses New Sexual Assault Allegation*, POLITICO (June 21, 2019); Casey Darnell, *Writer Says She Was Raped by Trump in 1990s*, YAHOO! NEWS (June 21, 2019); EJ Dickson, *E. Jean Carroll Alleges President Donald Trump Assaulted Her*, ROLLING STONE (June 21, 2019); Vivian Ho & Lauren Gambino, *Evening Summary: Trump Responds to E Jean Carroll's Allegations*, GUARDIAN (June 21, 2019); Colby Itkowitz, *Magazine Columnist Accuses Trump of Sexual Assault More than Two Decades Ago, an Allegation He Denies*, WASH. POST (June 21, 2019); Sarah Jones, *E. Jean Carroll: "Trump Attacked Me in the Dressing Room of Bergdorf Goodman."*, N.Y. MAG. (June 21, 2019); Hilary Lewis, *E. Jean Carroll Says Bringing Rape Charges Against Trump Would Be "Disrespectful" to Migrant Women*, HOLLYWOOD REP. (June 22, 2019); Caitlin Mac Neal, *Advice Columnist E. Jean Carroll Accuses Donald Trump Of Sexual Assault*, TALKING POINTS MEMO (June 21, 2019); Alex Pappas, *Longtime Advice Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FOX NEWS, (June 21, 2019); Daniel Politi, *Trump Goes on Tirade to Deny Latest Assault Allegation: Women Are "Paid Money" to Make False Claims*, SLATE (June 22, 2019); Christina Prignano, *Author E. Jean Carroll Accuses President Trump of Sexual Assault in 1990s*, BOS. GLOBE (June 21, 2019); Eliza Relman, *Trump Claims He's Never Met the Columnist Who Just Accused Him of Sexual Assault Despite Photo Evidence of Them Together*, BUS. INSIDER (June 21, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Jessica Taylor, *Trump Denies New Sexual Assault Allegation by Advice Columnist E. Jean Carroll*, NPR (June 21, 2019); Josh Wingrove, *Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FORTUNE (June 21, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019); Josh Wingrove, *Woman Accuses Trump of Sexual Assault at New York Store in 1990s*, BLOOMBERG (June 21, 2019).

16

88.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll had invented the rape accusation as a ploy for increased book sales.

89.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation to carry out a political agenda.

90.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation as part of a conspiracy with the Democratic Party.

91.     On June 22, 2019, Trump made the following statement to reporters:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

17

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that."[11]

92.    Like his first statement, Trump's June 22 statement regarding Carroll was widely reported in the national press.[12]

93.    In the June 22 statement, Trump falsely stated that he did not rape Carroll.

94.    In the June 22 statement, Trump falsely stated that he had no idea who Carroll was.

95.    In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had falsely accused other men of sexual assault.

96.    In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had been paid money to invent the rape accusation against him.

---

[11] *Remarks by President Donald Trump Before Marine One Departure*, WHITE HOUSE (June 22, 2019).

[12] *See, e.g.*, Matthew Chapman, *Trump Goes on Manic Tirade After Being Asked About New Rape Allegation: Women Get "Paid Money to Say Bad Things About Me"*, RAW STORY (June 22, 2019); William Cummings, *Writer E. Jean Carroll Made a Claim of Sexual Assault Against Trump. Here's What We Know*, USA TODAY (June 25, 2019); Gillian Edevane, *George Conway Says Trump's Credibility is "Annihilated" After President Denies Knowing Alleged Assault Victim*, NEWSWEEK (June 22, 2019); Lulu Garcia-Navarro, *"It Hurt. And It Was Against My Will": Trump Accuser Stands by Her Story*, NPR (June 22, 2019); Amanda Holpuch, *Trump Repeats Contested Claim He Does Not Know Latest Sexual Assault Accuser*, GUARDIAN (June 22, 2019); Colby Itkowitz et al., *Trump Compares Himself to Kavanaugh in Latest Sexual Assault Allegation*, WASH. POST (June 22, 2019); Darlene Superville, *Trump Denies Knowing E. Jean Carroll, Woman Accusing Him of Sexual Assault in Department Store*, ABC NEWS (June 22, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Mihir Zaveri, *Trump Emphatically Denies Sexual Assault Allegation by E. Jean Carroll*, N.Y. TIMES (June 22, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019).

18

97.     Two days later, on June 24, 2019, *The Hill* released an interview in which Trump made the following statement in response to Carroll: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[13]

98.     Trump's statement in *The Hill* was widely reported by the national press.[14]

99.     This insulting statement was consistent with Trump's response to other accusations of sexual assault. About one woman who claimed he groped her and tried to put his hand up her skirt while they were seated next to each other on an airplane, Trump told crowds at a rally,

---

[13] Jordan Fabian & Saagar Enjeti, *EXCLUSIVE: Trump Vehemently Denies E. Jean Carroll Allegation, Says "She's Not My Type"*, HILL (June 24, 2019).

[14] *See, e.g.*, Julia Arciga, *Trump on E. Jean Carroll's Assault Allegations: "She's Not My Type"*, DAILY BEAST (June 24, 2019); Associated Press, *Trump on E. Jean Carroll Sexual Assault Claim: "She's Not My Type"*, HOLLYWOOD REP. (June 25, 2019); Associated Press, *Trump Says Famed Advice Columnist Who Accused Him of Sexual Assault Is "Not My Type'*, CHI. TRIB. (June 24, 2019); Associated Press, *Trump: Woman Who Accused Him of Sexual Assault Not His Type*, DENVER POST (June 24, 2019); Amber Athey, *Trump Says Columnist Who Accused Him of Rape Is "Not My Type"*, DAILY CALLER (June 24, 2019); Peter Baker & Neil Vigdor, *Trump, Accused Again of Sexual Misconduct, Insults Woman Who Said He Assaulted Her*, BOS. GLOBE (June 25, 2019); Antonia Blumberg, *Trump on E. Jean Carroll Accusing Him of Rape: "She's Not My Type"*, HUFFINGTON POST (June 24, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, BUS. INSIDER (June 25, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, REUTERS (June 25, 2019); Burgess Everett & Melanie Zanona, *"I Believe the President": GOP Stands by Trump on Sexual Assault Allegation*, POLITICO (June 25, 2019); Rebecca Falconer, *Trump Says He Didn't Rape Author E. Jean Carroll: "She's Not My Type"*, AXIOS (June 24, 2019); Megan Garber, *The Real Meaning of Trump's "She's Not My Type" Defense*, ATLANTIC (June 25, 2019); Rebecca Morin, *"She's Not My Type": Trump Again Denies E. Jean Carroll's Sexual Misconduct Allegation*, USA TODAY (June 24, 2019); Ari Shapiro, *A Look at President Trump's Pattern of Responding To Accusations Of Sexual Misconduct*, NPR (June 25, 2019); Matt Stieb, *Trump Responds to E. Jean Carroll Rape Allegation: "She's Not My Type"*, CUT (June 25, 2019); Jia Tolentino, *E. Jean Carroll's Accusation Against Donald Trump, and the Raising, and Lowering, of the Bar*, NEW YORKER (June 25, 2019); Jay Willis, *Donald Trump Responds to E. Jean Carroll's Rape Allegation: "She's Not My Type"*, GQ (June 25, 2019); Anthony Zurcher, *Trump Says Sexual Assault Accuser E Jean Carroll "Not My Type"*, BBC NEWS (June 25, 2019).

19

"Believe me. She would not be my first choice. That I can tell you."[15] He reportedly called that same woman "the cunt on the airplane" when he ran into her at a charity gala years after the assault.[16] About a second woman, who claimed he forcibly pinned her to a wall and kissed her without consent while she was interviewing him for a magazine, Trump said to crowds at another rally, "Take a look. You take a look. Look at her, [then] look at her words. You tell me what you think. I don't think so. I don't think so."[17] Indeed, Trump often responds to claims that he has behaved inappropriately by simultaneously attacking the individual's credibility and attractiveness. When a female journalist quoted him as saying in a 1992 interview that "you have to treat women like shit," Trump insisted later, "The woman's a liar, extremely unattractive, lots of problems because of her looks."[18]

100.    In the June 24 statement, Trump falsely stated that he did not rape Carroll.

101.    On June 27, Birnbach and Martin went on the record to corroborate Carroll.[19]

102.    Speaking to Carroll, Martin, and a reporter, Birnbach said:

"I remember [Carroll] saying repeatedly, he pulled down my tights . . . . [Carroll] did say, he put his penis in me. And I said—my face just did it. What? He raped you? And [Carroll] said, eh, he kept pulling down—he pulled down my tights. He pulled down my tights . . . . It just—it was horrible. We fought. And I said, let's go to the police. No. Come to my house. No. I want to go home. I'll take you to the

---

[15] Jose A. DelReal, *Trump Mocks Sexual Assault Accusers: "She Would Not Be My First Choice"*, WASH. POST (Oct. 14, 2016).

[16] BARRY LEVINE & MONIQUE EL-FAIZY, ALL THE PRESIDENT'S WOMEN: DONALD TRUMP AND THE MAKING OF A PREDATOR 72 (2019).

[17] Naomi Lim, *Donald Trump on Accuser: "Take a Look at Her . . . I Don't Think So"*, CNN (Oct. 13, 2016).

[18] Nancy Collins, *Donald Trump Talks Family, Women in Unearthed Transcripts: "When I Come Home and Dinner's Not Ready, I Go Through the Roof"*, HOLLYWOOD REP. (Oct. 13, 2016).

[19] Michael Barbaro et al., *Corroborating E. Jean Carroll*, N.Y. TIMES (June 27, 2019).

20

police. No. It was 15 minutes of my life, it's over. Don't ever tell anybody. I just had to tell you."[20]

103.     Responding to Carroll, Birnbach, and a reporter, Martin said:

"From what I could sense of you, you were, A, you were handling it, as you handle things. She doesn't break down easily on anything. And there was none of that, as you told me. It wasn't like she started crying, or nothing that was a frantic kind of response to it. It was like, I can't believe this happened."[21]

104.     Martin added: "I said, don't tell anybody. I wouldn't tell anybody this."[22]

105.     Separately, Birnbach observed, "I believe E. Jean in this episode that she recounted to me in 1996. Yes. Without hesitation. She's not a fabulist. She doesn't make things up."[23]

## VI.   TRUMP'S FALSE STATEMENTS ABOUT CARROLL WERE MADE WITH KNOWLEDGE OF FALSITY OR RECKLESS DISREGARD FOR THE TRUTH

106.     The false statements that Trump made about Carroll on June 21, 22, and 24, 2019, were published with knowledge of their falsity and/or with reckless disregard for the truth.

107.     Trump knew who Carroll was at the time he raped her.

108.     Trump identified Carroll on sight when they met at Bergdorf Goodman.

109.     In that period, Trump moved in the same highly publicized New York City media circles as Carroll, who also appeared on her own popular daily television program.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Jessica Bennett et al., *Why E. Jean Carroll, "the Anti-Victim," Spoke Up About Trump*, N.Y. TIMES (June 27, 2019).

21

110.    In 1987, Trump and Carroll were photographed at a party together:



111.    Trump has stated that he possesses "one of the great memories of all time."[24]

112.    Trump has also described himself as a "very stable genius."[25]

113.    In June 2019, Trump knew it was false to state that he had never met Carroll.

114.    In June 2019, Trump knew it was false to state that he had no idea who Carroll was.

115.    In June 2019, Trump knew it was false to state that he had never raped Carroll.

116.    Trump's other defamatory statements about Carroll in June 2019—that she had fabricated the rape accusation to increase her book sales, to carry out a political agenda, as part of a conspiracy with the Democratic Party, or in exchange for payment—rested on the express or deliberately-implied premise that Carroll's underlying accusation was false. Because Trump knew that the accusation was true, he also knew that his other statements about Carroll were false.

117.    Moreover, Trump lacked any factual basis for these highly specific statements regarding why Carroll had revealed to the public that he raped her at Bergdorf Goodman. And since all of these statements about Carroll were made to impute motives for lying, when in fact he

---

[24] Foreign Staff, *Donald Trump: I Have "One of the Greatest Memories of All Time"*, TELEGRAPH (Oct. 26, 2017).

[25] Daniella Diaz, *Trump: I'm a "Very Stable Genius"*, CNN (Jan. 6, 2018).

22

knew that Carroll had spoken the truth, Trump had strong reason to doubt the veracity of his own insulting claims. Trump thus published these statements with reckless disregard for the truth.

118.    Trump also lacked any factual basis for stating (or affirmatively implying) that Carroll had falsely accused other men of sexual assault. And since he knew that her accusation against him was truthful, he had strong reason to doubt the veracity of his statement that she was lying about other men. Trump thus made this statement with reckless disregard for the truth.

119.    Carroll did not reveal Trump's rape for any of the reasons imputed to her by Trump. Each and every statement that he made about her motives for coming forward—and her supposed conspiracy with political actors to fabricate a rape accusation—was false.

120.    To the contrary, Carroll feared that revealing Trump's rape would cause terrible damage to her reputation, career, and personal life. That was especially true given Trump's famed litigiousness and public abuse of those who criticize him. Carroll made this decision to honor her values and to inspire other sexually abused women to seek justice and accountability.

121.    With respect to politics, to the extent Carroll considered such things at all, it was principally to worry that coming forward might *benefit* Trump by firing up his base and affording him another opportunity to play the victim on national television.

122.    Trump's series of false, insulting, and defamatory statements about Carroll—and his actual malice in making those statements—are fully consistent with his tried-and-true playbook for responding to credible public reports that he sexually assaulted women.

123.    In 2005, Trump admitted—on a hot mic—to repeatedly sexually assaulting women in almost exactly the same manner that he had raped Carroll:

> "I'd better use some Tic Tacs just in case I start kissing her [the woman Trump was looking at, whom he had never met before]. You know, I'm automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything. Grab them by the pussy. You can do anything. . . . Oh, [she has] nice legs, huh?"[26]

124.    Based on Carroll's own experiences, Trump's 2005 statement was not "locker room talk" or mere braggadocio. It was a true description of how Trump believes he can treat women—and of how he *has* treated them on many occasions, including at Bergdorf Goodman.

125.    Indeed, Trump has openly suggested that sexual assault is inevitable when men and women interact. In 2013, for instance, he tweeted: "26,000 unreported sexual assults [sic] in the military . . . . What did these geniuses expect when they put men & women together?"[27]

126.    In addition to Carroll, Trump has been accused publicly by over a dozen women of forcibly kissing them, groping them above or below the waist, or attempting to rape them—often upon meeting him for the very first time. Those women include Jill Harth, Jessica Leeds, Cathy Heller, Temple Taggart McDowell, Karena Virginia, Bridget Sullivan, Tasha Dixon, Mindy McGillivray, Rachel Crooks, Natasha Stoynoff, Summer Zervos, and Cassandra Searles. Trump has responded to their accusations in a manner eerily similar to the statements he made about Carroll in June 2019.

127.    A recently published book by Barry Levine and Monique El-Faizy documents 67 incidents of alleged inappropriate behavior by Trump toward women, including 26 allegations of unwanted sexual contact. Forty-three of the allegations of inappropriate behavior in the book had

---

[26] *Transcript: Donald Trump's Taped Comments About Women*, N.Y. TIMES (Oct. 8, 2016).

[27] Daniella Diaz, *Trump Defends Tweet on Military Sexual Assault*, CNN (Sept. 8, 2016).

24

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 27 of 201

not been previously reported.[28] The book traces "Trump's transformation from a kid from Queens to high school 'ladies' man' into a womanizing, model-chasing, porn-star-frequenting philanderer," who "repeatedly and systematically engaged in aggressive sexual pursuit of women over the course of many decades."[29] In one instance, Karen Johnson describes Trump hiding behind a tapestry at his Mar-a-Lago home during a party and, when she walked by to use the restroom, grabbing her by the genitals, pulling her toward him, and kissing her without consent.[30] In another, Kristin Anderson describes Trump putting his hands up her skirt and touching her vagina through her underwear in a Manhattan nightclub. Trump denied that could have happened because he never would have been at a nightclub alone.[31]

128.    Trump thus knew he was lying when he said that Carroll had fabricated her rape accusation for a hodgepodge of unsavory reasons that he himself had invented out of whole cloth. He knew she was telling the truth because he knew who she was and he knew that he had raped her, just as he had sexually assaulted many other women over many years.

## VII.    CARROLL SUFFERS REPUTATIONAL AND OTHER HARM

129.    Trump's false and insulting statements about Carroll were defamation *per se*. They tended to (and did) damage Carroll in her trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information.

130.    Carroll has suffered harm as a direct result of Trump's false, defamatory statements.

131.    Carroll endured stoically when she kept secret the fact that Trump had raped her. But coming forward put her in the crosshairs of the most powerful man on the planet. He has since

---

[28] *See* LEVINE & EL-FAIZY, *supra* n.16, at 2.

[29] *Id.* at 2-3.

[30] *Id.* at 80-82, 88, 254.

[31] *Id.* at 250-51.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 28 of 201

used that platform to attack her integrity, demean her appearance, condemn her as a liar, and accuse her of conspiring with political operatives in a despicable lie.

132.    These defamatory statements have caused Carroll emotional pain and suffering at the hands of the man who raped her, as well as injury to her reputation, honor, and dignity.

133.    Carroll has suffered professional harm as a direct result of Trump's defamatory statements. Carroll's professional success is inextricably bound up with her *Ask E. Jean* advice column, where readers look to her for wisdom, wit, honesty, integrity, and courage. By attacking Carroll, Trump has injured the reputation on which she makes her livelihood and attracts readers.

134.    Trump's defamatory statements caused Carroll to lose the support and goodwill of many of her readers. Many were turned off by even the idea of writing to a woman whom the President of the United States branded a "liar." Since Trump defamed her, some fans have stopped sending letters altogether—thus impairing Carroll's column, which requires a steady flood of compelling letters to which she can respond. In the months of July, August, and September 2019, Carroll received roughly 50% fewer letters than she received during the same period in 2018.

135.    Carroll is an advice columnist whose reputation is the very lifeblood of her trade, and Trump's defamatory statements have therefore inflicted wide-ranging and substantial harm.

136.    Carroll filed this lawsuit to obtain redress for those injuries.

## CAUSE OF ACTION: DEFAMATION

137.    Plaintiff Carroll incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

138.    Trump published statements to the media on June 21, 22, and 24, 2019.

139.    Each of those statements identified—and was "of or concerning"—Carroll.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 29 of 201

140.    Each of those statements contained numerous falsehoods about Carroll, whether on their face and/or by virtue of a clear implication affirmatively intended by Trump.

141.    Trump's false statements regarding Carroll were defamatory *per se*.

142.    Trump's false and defamatory statements were published throughout New York State and around the world on television, in newspapers and magazines, on social media, and elsewhere in print and on the internet. Trump ensured that his false and defamatory statements about Carroll would receive a wide circulation by making them to the national press.

143.    Trump made these false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity.

144.    Trump made these false statements with ill will and spite, and with wanton, reckless, or willful disregard for their injurious effects on Carroll and Carroll's rights.

145.    Trump's false and defamatory statements caused Carroll to suffer reputational, emotional, and professional harm, as alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Carroll prays for relief as follows:

a.  Ordering Trump to retract any and all defamatory statements;

b.  Ordering Trump to pay compensatory damages in an amount to be determined at trial;

c.  Ordering Trump to pay punitive damages in an amount to be determined at trial; and

d.  Awarding pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 30 of 201

Dated:  November 4, 2019

Respectfully submitted,

By:

Roberta A. Kaplan
Matthew J. Craig
Martha E. Fitzgerald
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com
mfitzgerald@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

28

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 31 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

--------------------------------------------------

Index No. 160694/2019

**AFFIRMATION**

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.      I am a partner with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.      I submit this affirmation as a supplement to our Request for Judicial Intervention identifying the above-captioned action as related to another action, *Summer Zervos v. Donald J. Trump*, No. 150522/2017, currently pending before Justice Jennifer G. Schecter. For the reasons set forth below, the present action should be deemed related to *Zervos*, and Justice Schecter should be likewise assigned.

3.      Although Justice Schecter was reassigned to the Commercial Division after *Zervos* was filed on January 17, 2017, she has continued to preside over that case in the Civil Branch of the New York Supreme Court, New York County. This action, as with *Zervos*, is properly filed in the Supreme Court's Civil Branch.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 32 of 201

4.      "[The] purpose of requiring identification of related actions is to ensure that related proceedings are resolved most expeditiously by assignment to the justice most familiar with the proceedings." *United Cmty. Ins. Co. v. State Farm Fire & Cas. Co.*, 143 Misc.2d 954, 956 (Sup. Ct., N.Y. Cty. 1989).

5.      It is in the interests of both the parties and the Court to assign Justice Schecter to this action, given the similarities between the two cases and the potential administrative demands that they present for the Court.

6.      The defendant, Donald J. Trump, is the same in both cases. He is being sued in his individual capacity by both plaintiffs for similar defamatory statements he made in response to similar—and grave—allegations by both plaintiffs of sexual misconduct. Both cases therefore present similar, and often novel, legal issues.

7.      Further, *Zervos* has received significant media attention, and we anticipate that similar attention will be paid to this lawsuit. Indeed, dozens of articles about the *Carroll* complaint were published on the day that it was filed.

8.      Assigning two different Justices to these cases would both amplify the Court's workload unnecessarily and risk conflicting rulings.

9.      Although *Zervos* was assigned to Justice Schecter before she was assigned to the Commercial Division, and the present action would not otherwise satisfy Section 202.70(b) of the Rules of the Commercial Division of the Supreme Court, the two cases are "sufficiently related to justify the assignment of both of them to the same judge," *Place v. Ciccotelli*, 121 A.D.3d 1378, 1379 (3d Dep't 2014), because, as explained above, "the efficient administration of the [C]ourt's business will be advanced thereby," 105 N.Y. Jur. 2d Trial § 8.

2

10.     Carroll has submitted this Request for Judicial Intervention without notice to Trump because she has been unable to effect service upon him pursuant to CPLR §§ 308(2) and 313, and other methods of service are impracticable. Concurrent with this filing, Carroll is also submitting an *ex parte* application for an order permitting alternative service pursuant to CPLR § 308(5). As further explained in my affirmation in that separate filing, Carroll, through a process server, has attempted to serve Trump with the summons, the complaint, a Notice of Electronic Filing, and a Request for Judicial Intervention and accompanying affirmation[1] on five separate occasions—four at Trump's Trump Tower residence, and one at the White House. Secret Service agents have frustrated the process servers' efforts on each occasion.

11.     Because this Request for Judicial Intervention identifies reasons to assign Justice Schecter to this action, and because Carroll's *ex parte* application for an order permitting alternative service may lead to the assignment of a Justice, we have made the two filings concurrent with one another.

 Dated: New York, New York
        November 8, 2019

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

---

[1] The Request for Judicial Intervention and accompanying affirmation that Carroll attempted to serve on each of those five occasions were materially indistinguishable from the present submission, and sought to identify this action as related to *Zervos*.

3

REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 07/29/2019)

__SUPREME__ COURT, COUNTY OF __NEW YORK__

Index No: __160694/2019__    Date Index Issued: __11/04/2019__

| | For Court Use Only: |
|---|---|
| **CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet. | IAS Entry Date |

E. Jean Carroll,

Plaintiff(s)/Petitioner(s)

Judge Assigned

-against-

Donald J. Trump, in his personal capacity,

RJI Filed Date

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**    Check only one box and specify where indicated.

**COMMERICIAL**
- ○ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ○ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (specify): ___
*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY**    Specify how many properties the application includes: ___
- ○ Condemnation
- ○ Mortgage Foreclosure (specify):    ○ Residential    ○ Commercial
  Property Address: ___
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ○ Tax Certiorari
- ○ Tax Foreclosure
- ○ Other Real Property (specify): ___

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution    [see NOTE in COMMERCIAL section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (specify): ___

**MATRIMONIAL**
- ○ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- ○ Asbestos
- ○ Child Victims Act
- ○ Environmental (specify): ___
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (specify): ___
- ○ Other Negligence (specify): ___
- ○ Other Professional Malpractice (specify): ___
- ◉ Other Tort (specify): __Defamation__

**SPECIAL PROCEEDINGS**
- ○ CPLR Article 75 (Arbitration) [see NOTE in COMMERCIAL section]
- ○ CPLR Article 78 (Body or Officer)
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 (Kendra's Law)
- ○ MHL Article 10 (Sex Offender Confinement-Initial)
- ○ MHL Article 10 (Sex Offender Confinement-Review)
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (specify): ___
- ○ Other Special Proceeding (specify): ___

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ◉ | ○ | If yes, date filed: __11/04/2019__ |
| Has a summons and complaint or summons with notice been served? | ○ | ◉ | If yes, date served: ___ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: ___ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.
- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: ___
- ○ Notice of Motion    Relief Requested: ___    Return Date: ___
- ○ Notice of Petition    Relief Requested: ___    Return Date: ___
- ○ Order to Show Cause    Relief Requested: ___    Return Date: ___
- ○ Other Ex Parte Application    Relief Requested: ___
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ◉ Other (specify): __Identification, without notice, of the related case Summer Zervos v. Donald J. Trump, No. 150522/2017__

1 of 2

**RELATED CASES**    List any related actions.  For Matrimonial cases, list any related criminal or Family Court cases.  If none, leave blank.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| Summer Zervos v. Donald J. Trump | 150522/2017 | Supreme Court, New York County, NY | Justice Jennifer G. Schecter | See attached affirmation by Roberta A. Kaplan |
| | | | | |
| | | | | |
| | | | | |

**PARTIES**    For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**.

| Un-Rep | Parties — List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants — For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | Issue Joined — For each defendant, indicate if issue has been joined. | Insurance Carriers — For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: E. Jean Carroll  Role(s): Plaintiff | Roberta A. Kaplan  Kaplan Hecker & Fink LLP, 350 Fifth Avenue, Suite 7110, New York, New York 10118 Tel: (212) 763-0883; Email: rkaplan@kaplanhecker.com | ○ YES  ○ NO | n/a |
| ☐ | Name: Donald J. Trump  Role(s): Defendant | Unknown | ○ YES  ◉ NO | Unknown |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: _____11/08/2019_____

_____
Signature

_____2507093_____                    Roberta A. Kaplan
Attorney Registration Number                    Print Name

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------

E. JEAN CARROLL,

*Plaintiff*,

-against-

Index No. 160694/2019

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

------------------------------------------------------------

## [PROPOSED] ORDER PERMITTING ALTERNATIVE SERVICE

Upon the annexed affirmation of Roberta A. Kaplan, Esq., dated November 8, 2019, and all supporting papers annexed thereto, it is hereby:

ORDERED that service of process shall be directed pursuant to CPLR § 308(5) upon Defendant Donald J. Trump as follows:

Until such time that counsel for Defendant in this action has been identified, Plaintiff E. Jean Carroll shall be permitted to serve Defendant by mailing the summons and all other papers to Defendant at the two addresses below, and emailing a copy of such papers to Defendant's attorneys below:

> Donald J. Trump
> Trump Tower
> 725 Fifth Avenue
> New York, NY 10022
>
> Donald J. Trump
> White House
> 1600 Pennsylvania Ave NW
> Washington, DC 20500
>
> Richard F. Brueckner
> Law Offices of Alan S. Futerfas
> rbrueckner@futerfaslaw.com

Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

Once counsel for Defendant in this action has been identified, Plaintiff shall be permitted

to serve the summons and all papers on Defendant's counsel via email until such time that counsel

has entered a notice of appearance in this action.

Dated: November ___, 2019

ENTER:

_____

J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

---------------------------------------------------

Index No. 160694/2019

## AFFIRMATION OF ROBERTA A. KAPLAN IN SUPPORT
## OF *EX PARTE* APPLICATION FOR AN
## <u>ORDER PERMITTING ALTERNATIVE SERVICE</u>

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.    I am a partner with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.    I submit this affirmation in support of Plaintiff E. Jean Carroll's *ex parte* application for an order permitting alternative service upon Defendant Donald J. Trump pursuant to CPLR § 308(5). Pursuant to CPLR § 2217(b), I state that no prior request for the relief requested herein has been made.

### RELEVANT FACTUAL BACKGROUND

3.    Carroll filed this action on November 4, 2019. The summons and complaint are attached as Exhibit A.

4.    As alleged in her complaint, roughly 23 years ago, Carroll unexpectedly encountered Defendant Trump at the luxury department store Bergdorf Goodman in New York

City. What began as playful banter between the two took a dark turn when Trump seized Carroll

in a dressing room and raped her. In the wake of Trump's election as President and the revelations

of the #MeToo era, Carroll published an account of the rape in the summer of 2019. Trump

responded with a series of false and defamatory statements, denying not only the rape, but also

ever having met Carroll or even knowing who she was. Carroll filed this action to obtain redress

for the injuries caused by Trump's defamation, and to demonstrate that even a man as powerful as

Trump can be held accountable under the law.

5.    Carroll's filing garnered immediate and widespread attention in the national and

international media. Scores of articles were published on the day of filing.[1]

---

[1] *See* Associated Press, *Advice Columnist E. Jean Carroll, Who Says Trump Sexually Assaulted Her in 1990s, Sues President for Defamation,* BALT. SUN (Nov. 4, 2019, 11:58 AM), https://www.baltimoresun.com/news/nation-world/ct-nw-e-jean-carroll-donald-trump-lawsuit-20191104-7ukqztmajnghtgbtx6yqb7h2su-story.html; Associated Press, *Advice Columnist E. Jean Carroll, Who Says Trump Sexually Assaulted Her in 1990s, Sues President for Defamation,* CHI. TRIB. (Nov. 4, 2019, 10:58 AM), https://www.chicagotribune.com/nation-world/ct-nw-e-jean-carroll-donald-trump-lawsuit-20191104-7ukqztmajnghtgbtx6yqb7h2su-story.html; Emily Alford, *E. Jean Carroll Becomes the Second Woman to Sue Donald Trump for Defamation*, JEZEBEL (Nov. 4, 2019, 2:07 PM), https://jezebel.com/e-jean-carroll-becomes-the-second-woman-to-sue-donald-1839612863?u; Kimberly Alters, *E. Jean Carroll Sues Trump for Saying She Lied About Her Assault Allegation,* MIC (Nov. 4, 2019), https://www.mic.com/p/e-jean-carroll-sues-trump-for-saying-she-lied-about-her-assault-allegation-19295373; Steve Benen, *Following Sexual Assault Allegation, Carroll Files Suit Against Trump,* MSNBC (Nov. 4, 2019, 2:52 PM), http://www.msnbc.com/rachel-maddow-show/following-sexual-assault-allegation-carroll-files-suit-against-trump; Ryan Boysen, *Columnist Who Accused Trump of Rape Sues for Defamation*, LAW 360 (Nov. 4, 2019, 2:36 PM), https://www.law360.com/media/articles/1216692; Mike Brest, *E. Jean Carroll Sues Trump for Defamation After He Called Her Rape Allegation Against Him a Lie,* WASH. EXAMINER (Nov. 4, 2019, 11:13 AM), https://www.washingtonexaminer.com/news/e-jean-carroll-sues-trump-for-defamation-after-he-called-her-rape-allegation-against-him-a-lie; Kevin Breuniger & Dan Mangan, *Writer E. Jean Carroll Sues Trump for Defamation After He Calls Her Rape Claim a Lie,* CNBC (Nov. 4, 2019, 10:33 AM), https://www.cnbc.com/2019/11/04/e-jean-carroll-sues-trump-for-defamation-over-rape-claim.html; Adam Carlson, *Noted Advice Columnist Who Said Donald Trump Raped Her Sues Him Claiming Defamation*, PEOPLE (Nov. 4, 2019, 2:11 PM), https://people.com/politics/e-jean-carroll-sues-donald-trump-defamation-after-rape-allegation/; Catherine Caruso, *E. Jean Carroll Sues Trump for Defamation*, MEDIUM (Nov. 4, 2019), https://medium.com/@catherineann.caruso/e-jean-carroll-sues-trump-for-defamation-b2db6b35aae0; Christina Cauterucci, *He Said, She Sued,* SLATE (Nov. 4, 2019, 6:28 PM), https://slate.com/news-and-politics/2019/11/e-jean-carroll-donald-trump-rape-lawsuit.html; Matthew Chapman, *E. Jean Carroll Sues Trump for Defaming Her over Rape Accusations*, RAW STORY (Nov. 4, 2019), https://www.rawstory.com/2019/11/e-jean-carroll-sues-trump-for-defaming-her-over-rape-accusations/; Laura Clawson, *E. Jean Carroll Sues Trump for Defamation After Sexual Assault Claim*, DAILY KOS (Nov. 4, 2019, 11:26 AM), https://www.dailykos.com/stories/2019/11/4/1897096/-E-Jean-Carroll-sues-Trump-for-defamation-after-sexual-assault-claim; Ashley Collman, *E. Jean Carroll, Who Accused Trump of Rape, Just Filed a Defamation*

2

*Lawsuit Against the President*, BUS. INSIDER BY PULSE (Nov. 4, 2019, 5:25 PM), https://www.pulse.ng/bi/politics/e-jean-carroll-who-accused-trump-of-rape-just-filed-a-defamation-lawsuit-against-the/0114gec; Jay Connor, *Advice Columnist Who Accused Donald Trump of Sexual Assault Is Suing Him for Defamation*, ROOT (Nov. 4, 2019, 4:12 PM), https://www.theroot.com/advice-columnist-who-accused-donald-trump-of-sexual-ass-1839614579; William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the President for Defamation*, USA TODAY (Nov. 4, 2019, 1:47 PM), https://www.usatoday.com/story/news/politics/2019/11/04/trump-sued-defamation-e-jean-carroll/4155674002/; Igor Derysh, *E. Jean Carroll Sues Trump for Defamation After He Calls Her Rape Allegation "False,"* SALON (Nov. 4, 2019, 8:45 PM), https://www.salon.com/2019/11/04/e-jean-carroll-sues-trump-for-defamation-after-he-calls-her-rape-allegation-false/; Randy DeSoto, *E. Jean Carroll Sues Trump for Defamation After He Disputed Her Rape Allegation*, WESTERN J. NEWS (Nov. 4, 2019, 11:39 AM), https://www.westernjournal.com/e-jean-carroll-sues-trump-defamation-disputed-rape-allegation/; Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4, 2019, 2:03 PM), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation; Andrea Germanos, *Columnist E. Jean Carroll, Who Accused Trump of Rape, Files Defamation Suit Against President*, COMMON DREAMS (Nov. 4, 2019), https://www.commondreams.org/news/2019/11/04/columnist-e-jean-carroll-who-accused-trump-rape-files-defamation-suit-against; Dave Goldiner, *Writer sues Trump for defamation over Bergdorf Goodman rape claim*, N.Y. DAILY NEWS (Nov. 4, 2019, 11:24 AM), https://www.nydailynews.com/news/politics/ny-jean-carroll-rape-trump-defamation-20191104-flf6i4k5snflbf4wpzcqy6unby-story.html; Aaron Homer, *E. Jean Carroll: Who Is the Journalist Suing Donald Trump After Accusing Him of Rape?*, INQUISTR (Nov. 4, 2019), https://www.inquisitr.com/5727345/e-jean-carroll/; Molly Jong-Fast, *E. Jean Carroll Is a Hero for Stepping into the MAGA Meat Grinder*, DAILY BEAST (Nov. 4, 2019, 8:00 PM), https://www.thedailybeast.com/e-jean-carroll-is-a-hero-for-stepping-into-trumps-maga-meat-grinder; Vivian Kane, *Writer E. Jean Carroll Is Suing Donald Trump for Defamation After He Said Her Rape Allegations Were Lies*, MARY SUE (Nov. 4, 2019, 6:05 PM), https://www.themarysue.com/e-jean-carroll-suing-donald-trump/; Andy Kroll, *E. Jean Carroll Sues Trump for Lying About Sexually Assaulting Her*, ROLLING STONE (Nov. 4, 2019, 9:21 AM), https://www.rollingstone.com/politics/politics-news/e-jean-carroll-trump-lawsuit-defamation-rape-allegation-907585/; Erik Larsen, *Trump Accuser E. Jean Carroll Sues President for Defamation over Rape Denial, "Conspiracy" Tweets*, TIME (Nov. 4, 2019), https://time.com/5717679/e-jean-carroll-trump-defamation/; Abbey Marshall, *E. Jean Carroll Suing Trump for Defamation*, POLITICO (Nov. 4, 2019, 12:24 PM), https://www.politico.com/news/2019/11/04/e-jean-carroll-suing-trump-defamation-065423; Pilar Melendez, *E. Jean Carroll, Who Accused Trump of Raping Her in a Dressing Room, Sues Him for Defamation*, DAILY BEAST (Nov. 4, 2019, 12:32 PM), https://www.thedailybeast.com/e-jean-carroll-who-accused-trump-of-raping-her-in-bergdorfs-sues-him-for-defamation?s; Rose Minutaglio, *Elle Columnist E. Jean Carroll Sues Trump for Defamation*, MARIE CLAIRE (Nov. 4, 2019), https://www.marieclaire.com/culture/a29687718/elle-e-jean-carroll-sues-trump-defamation/?; *E. Jean Carroll Shares Details on Her Sexual Assault Allegations Against Donald Trump*, DIGG (Nov. 4, 2019), https://digg.com/video/e-jean-carroll-donald-trump-assault-allegation; Tim O'Donnell, *E. Jean Carroll Is Suing Trump for Defamation over Rape Allegation*, WEEK (Nov. 4, 2019), https://theweek.com/speedreads/876228/e-jean-carroll-suing-trump-defamation-over-rape-allegation; Amanda Ottaway, *Trump Rape Accuser Brings Suit for Defamation*, COURTHOUSE NEWS SERV. (Nov. 4, 2019), https://www.courthousenews.com/trump-rape-accuser-brings-suit-for-defamation/; Dominic Patten, *Donald Trump Thumped with Defamation Suit by Writer E. Jean Carroll over Attaching Sexual Assault Claims*, DEADLINE (Nov. 4, 2019, 2:36 PM), https://deadline.com/2019/11/donald-trump-lawsuit-sexual-assault-e-jean-carroll-defamation-stephanie-grisham-summer-zervos-1202777367/; Jennifer Peltz, *Columnist Sues Trump for Calling Her Sex Assault Claim a Lie*, PORTLAND PRESS HERALD (Nov. 4, 2019), https://www.pressherald.com/2019/11/04/columnist-sues-trump-for-calling-her-sex-assault-claim-a-lie/; Corinne Ramey, *Elle Columnist Files Defamation Suit Against Trump*, WALL ST. J. (Nov. 4, 2019, 10:52 AM), https://www.wsj.com/articles/elle-columnist-files-defamation-suit-against-trump-11572882744; Jan Ransom, *E. Jean Carroll, Who Accused Trump of Rape, Sues Him for Defamation*, N.Y. TIMES (Nov. 4, 2019), https://www.nytimes.com/2019/11/04/nyregion/jean-carroll-sues-trump.html; Beth Reinhard, *Advice Columnist E. Jean Carroll, Who Accused Trump of Sexual Assault, Sues Him for Defamation*, WASH. POST

3

6.    Just hours after Carroll's complaint became publicly available on the New York

State Court's Electronic Filing website, Trump, through a statement issued by White House Press

Secretary Stephanie Grisham, responded directly to the lawsuit as follows:

> Carroll is suing the president for defending himself against false
> allegations? . . . I guess since the book did not make any money she's
> trying to get paid another way. The story she used to try and sell her
> trash book never happened, period . . . . The lawsuit is frivolous, and
> the story is a fraud—just like the author.[2]

7.    Since then, Carroll, through a process server, has attempted to serve Trump with

---

(Nov. 4, 2019, 11:00 AM), https://www.washingtonpost.com/politics/new-york-writer-who-accused-trump-of-sexual-assault-sues-him-for-defamation/2019/11/04/8ab2afb0-fcf7-11e9-9534-e0dbcc9f5683_story.html; Brett Samuels, *Writer E. Jean Carroll Sues Trump for Defamation*, HILL (Nov. 4, 2019, 11:05 AM), https://thehill.com/homenews/administration/468845-writer-e-jean-carroll-sues-trump-for-defamation; Ashe Schow, *E. Jean Carroll Suing Trump for Defamation After He Claimed Her Sexual Assault Accusations Against Him Were False*, DAILY WIRE (Nov. 4, 2019), https://www.dailywire.com/news/e-jean-carroll-suing-trump-for-defamation-after-he-claimed-her-sexual-assault-accusations-against-him-were-false; Jazz Shaw, *So E. Jean Carroll Is Suing the President for Defamation*, HOT AIR (Nov. 4, 2019, 3:21 PM), https://hotair.com/archives/jazz-shaw/2019/11/04/e-jean-carroll-suing-president-defamation/; Chris Spargo, *Jean Carroll Sues President Donald Trump for Defamation After He Denies Raping Her in a Dressing Room—Despite the Advice Columnist Revealing She Has Dress with Possible DNA Evidence*, DAILYMAIL.COM (Nov. 4, 2019), https://www.dailymail.co.uk/news/article-7648183/E-Jean-Carroll-sues-President-Donald-Trump-defamation-denies-raping-NYC-store.html; Alexandra Svokos, *E. Jean Carroll Sues Trump for Defamation over Rape Accusation Denial*, ABC NEWS (Nov. 4, 2019), https://abcnews.go.com/Politics/jean-carroll-sues-trump-defamation-rape-accusation-denial/story?id=66740654; Dave Urbanski, *Advice Columnist Who Claimed President Trump Sexually Assaulted Her over Two Decades Ago Sues Trump for Defamation over His Denials*, BLAZE (Nov. 4, 2019), https://www.theblaze.com/news/advice-columnist-who-claimed-president-trump-sexually-assaulted-her-over-two-decades-ago-sues-trump-for-defamation-over-his-denials; Chris Walker, *Trump Accuser E. Jean Carroll Sues for Defamation Against President*, HILLREPORTER.COM (Nov. 4, 2019), https://hillreporter.com/trump-accuser-e-jean-carroll-sues-for-defamation-against-president-50195; Jane Wester, *Roberta Kaplan Files Lawsuit Alleging Trump Defamed Author as Liar in Wake of Rape Accusation*, LAW.COM (Nov. 4, 2019), https://www.law.com/newyorklawjournal/2019/11/04/roberta-kaplan-files-lawsuit-alleging-trump-defamed-author-as-liar-in-wake-of-rape-accusation/; *Trump Accuser Files Suit*, NEWSER.COM (Nov. 4, 2019, 1:42 PM), https://www.newser.com/story/282644/trump-accuser-files-suit.html; *Trump Sued by Rape Accuser E. Jean Carroll for Defamation*, CANOE.COM (Nov. 4, 2019), https://canoe.com/news/world/trump-sued-by-rape-accuser-e-jean-carroll-for-defamation; *Writer E. Jean Carroll Files Lawsuit Against Trump over Alleged Sexual Assault*, GUARDIAN (Nov. 4, 2019, 12:23 PM), https://www.theguardian.com/us-news/2019/nov/04/e-jean-carroll-sues-trump-defamation-alleged-rape-bergdorf-goodman; *Writer E. Jean Carroll Sues Donald Trump for Denials of Sexual Assault Accusation*, BREITBART (Nov. 4, 2019), https://www.breitbart.com/news/writer-e-jean-carroll-sues-donald-trump-for-denials-of-sexual-assault-accusation/.

[2] Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4. 2019, 2:30 PM), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation.

4

the summons, the complaint, a Notice of Electronic Filing, and a Request for Judicial Intervention and accompanying affirmation on five separate occasions, through two different methods. Not one attempt, however, has been successful.

8.    More specifically, on the day of filing, a process server attempted to serve those papers on Trump by leaving them with a person of suitable age and discretion at his residence at Trump Tower, 725 Fifth Avenue, New York, NY 10022. That address corresponds to the address that Trump has provided in connection with his active New York voter registration. A copy of Trump's voter registration page from the date of filing is attached as Exhibit B.

9.    Upon arrival to Trump Tower, the process server passed through a Secret Service security checkpoint and spoke with the concierge. After making a call to a legal office, the concierge told the process server that they would not accept the papers. The process server then tried to leave the papers with the concierge himself. As the process server headed toward the exit, the concierge signaled to Secret Service agents to stop him. A Secret Service agent prevented the process server from leaving the papers at Trump Tower. The agent told him that the Secret Service "had been instructed not to allow process servers to leave papers with [the] concierge." When the process server asked how process was to be served, the agent replied, "I am not going to do your job for you." The Secret Service agent made the process server leave the building, papers in hand. Affidavits describing the November 4 service attempt are attached as Exhibit C.

10.    The next day, November 5, a process server again attempted to serve those same papers on Trump at Trump Tower. The experience was the same. The process server asked the concierge whether anyone was available to accept documents on behalf of Donald J. Trump. After making a phone call "upstairs" to inquire, the concierge stated that service would not be accepted by anyone at the building or by the concierge himself. When the process server nonetheless

5

attempted to leave the papers with the concierge and walk away, the concierge demanded that he wait and began speaking through a walkie-talkie. The process server turned to find Secret Service agents watching him. The process server felt forced to return to the concierge and retrieve the papers before exiting. Affidavits describing the November 5 service attempt are attached as Exhibit D.

11.     Finally, on November 6, a process server attempted to serve Trump twice at Trump Tower and once at the White House. All three attempts were unsuccessful. In the morning at Trump Tower, the process server passed through the security checkpoint manned by armed Secret Service agents. He again attempted to serve the concierge. The concierge informed him that no one at the building would accept service. When the process server asked what would happen if he left the papers on the concierge's podium, he was informed that security would stop him from leaving if he tried to do so. The process server ultimately took the documents from the podium and exited the building. Affidavits describing the November 6 morning service attempt at Trump Tower are attached as Exhibit E.

12.     In the evening that same day, a process server again attempted to effect service at Trump Tower. He was met at the door by New York City police officers and Secret Service agents, who told him that he would not be permitted to leave papers at the building. A Secret Service agent stated that "papers have to go to DC," but did not further specify where or how service could be made. Affidavits describing the November 6 evening service attempts at Trump Tower are attached as Exhibit F.

13.     At the White House, a process server went to the visitors' entrance where he spoke with a Secret Service agent about serving Trump. The agent informed him that he could not access the building nor would the agent or anyone else attempt to contact anyone inside at the process

server's request. The process server tried to leave a business card with the agent to see if his request to make service could be passed on to anyone else, but the Secret Service agent refused to take it. An affidavit describing the November 6 service attempt at the White House is attached as Exhibit G.

14.     In addition to the process servers' attempts to serve Trump, I sent an email on November 4 to Marc Kasowitz, who represents Trump in *Zervos v. Trump*, Index No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.), inquiring as to whether he had been retained to represent Trump in this similar action and whether he was able to accept service on his behalf. A colleague of Mr. Kasowitz, Christine Montenegro, spoke with Matthew Craig of my firm, and informed him that Kasowitz Benson Torres LLP had not been retained in connection with this action and could not accept service. A copy of the email to Mr. Kasowitz is attached as Exhibit H.

## ARGUMENT

15.     Service of a summons is a necessary step in the prosecution of an action. Evading process is no way to defend one.

16.     New York law provides for various ways to effect service of a summons. The principal ways to serve a natural person within the state are: delivering the summons "to the person to be served"; both delivering the summons "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode" of the person to be served *and* mailing the summons to the person's "last known residence" or "actual place of business"; and "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" of the person to be served *and* mailing the summons to the person's "last known residence" or "actual place of business." CPLR § 308(1), (2) & (4). In other words, those three subsections of CPLR § 308 provide for service "by personal delivery, delivery and mail, and nail and mail."

7

*Contimortgage Corp. v. Isler*, 48 A.D.3d 732, 734 (2d Dep't 2008).

17.     When service of process is "impracticable" under CPLR § 308(1), (2), and (4), a plaintiff may file a motion without notice for leave to serve the defendant "in such manner as the court . . . directs." CPLR § 308(5); *see also Kozel v. Kozel*, 161 A.D.3d 700, 701 (1st Dep't 2018) ("CPLR 308(5) permits a court to direct another manner of service if the methods set forth in the statute prove impracticable.").

18.     "A showing of impracticability under CPLR 308(5) does not require proof of actual prior attempts to serve a party under the methods outlined pursuant to Subdivisions (1), (2), or (4)." *Franklin v. Winard*, 189 A.D.2d 717, 717 (1st Dep't 1993). Nor does it "require the applicant to satisfy the more stringent standard of 'due diligence'" that applies elsewhere under CPLR § 308. *Contimortgage Corp.*, 48 A.D.3d at 734 (internal quotation marks omitted). Instead, the plaintiff must "make competent showings as to factual efforts made to effect service," *Oglesby v. Barragan*, 135 A.D.3d 1215, 1216 (3d Dep't 2016), and an alternative method of service should be allowed when efforts pursuant to CPLR § 308(1), (2), and (4) "would be 'futile,'" *Liebeskind v. Liebskind*, 86 A.D.2d 207, 210 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 858 (1983).

19.     An order permitting an alternative method of service is more than warranted here.

20.     As outlined above, Carroll made four separate attempts to serve Trump by leaving the summons, the complaint, and other papers at his Trump Tower residence pursuant to CPLR § 308(2). Those successive, but unsuccessful, efforts are themselves sufficient to demonstrate impracticability. *See Kelly v. Lewis*, 220 A.D.2d 485, 486 (2d Dep't 1995) ("After the plaintiffs made three unsuccessful attempts at three different times on three different weekdays to serve the defendant . . . at his last known residence address, the court reasonably concluded that service was impracticable."). That each attempt failed because Secret Service would not permit the process

8

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 46 of 201

server to leave the documents provides an additional basis for finding impracticability. *See In re World Trade Diamond Corp. (Siegmann)*, 158 A.D.2d 300, 302 (1st Dep't 1990) (holding that service was impracticable when "security barred any normal means of personal service upon respondent at his office during normal business hours").

21.     The other relevant methods of service are not practicable either. The intensive security protocols associated with Trump's status as President of the United States make "personal delivery" to Trump himself virtually impossible. CPLR § 308(1); *see Emigrant Mortg. Co. v. Westervelt*, 105 A.D.3d 896, 896–97 (2d Dep't 2013) (observing that CPLR § 308 requires "strict compliance" with its terms and remanding for hearing on sufficiency of service under § 308(1)).

22.     Nor can the summons, the complaint, and other papers be physically affixed to Trump Tower as required by CPLR § 308(4). *See PacAmOr Bearings, Inc. v. Foley*, 92 A.D.2d 959, 960 (3rd Dep't 1983) ("[W]edging of the summons between the screen door and the door jamb is not an 'affixation' within the meaning of the statute," which is "to be accomplished by use of a nail, tack, tape, rubber band or some other device which will ensure a genuine adherence."). Given the presence and mandate of Secret Service agents posted to Trump Tower, anyone appearing to physically interfere with that building would surely be met with a swift, and potentially dangerous, response.

23.     Finally, although attempted service outside the state pursuant to CPLR § 313 is not required before a court authorizes an alternative method of service pursuant to CPLR § 308(5), Carroll's attempt to serve Trump at the White House, as well as her counsel's communication with an attorney representing Trump in a similar action, underscores her diligence. That Carroll was barred from serving Trump at the very location from which he released a statement deeming her lawsuit "frivolous" underscores the unfairness of the present situation.

9

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 47 of 201

24.     Because Trump has made it impracticable for Carroll to serve him through any of the methods set forth in CPLR § 308(1), (2), and (4), this Court should authorize service by alternative means.

25.     Once a plaintiff has satisfied the impracticability standard, courts have "broad" discretion over the alternative method they authorize, *Dobkin v. Chapman*, 21 N.Y.2d 490, 499 (1968), and are simply guided by the basic principal that the method "be 'reasonably calculated, under all the circumstances, to apprise the defendant of the action," *Jean v. Csencsits*, 171 A.D.3d 1149, 1150 (2d Dep't 2019) (internal quotation marks omitted).

26.     Here, given the widespread media attention that this action has drawn, and Trump's public response to the suit on the day it was filed, there is no doubt that Trump is already apprised of this action. In these circumstances, even a minimal further step would arguably suffice.

27.     Nevertheless, in an abundance of caution, Carroll respectfully requests that, until counsel for Trump in this action has been identified, she be permitted to serve Trump by mailing all papers to Trump at the two addresses below, and emailing a copy of such papers to the attorneys below, all of whom are presently representing Trump in actions that Trump has brought or is defending in his personal capacity in this State:

> Donald J. Trump
> Trump Tower
> 725 Fifth Avenue
> New York, NY 10022

> Donald J. Trump
> White House
> 1600 Pennsylvania Ave NW
> Washington, DC 20500

10

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 48 of 201

Richard F. Brueckner
Law Offices of Alan S. Futerfas
rbrueckner@futerfaslaw.com
Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

28.     Mailing papers to two known addresses for Trump and emailing papers to six

attorneys who continue to represent Trump in this State easily satisfies the requirement of an

alternative method of service "reasonably calculated" to "apprise" Trump of this action. *Jean*, 171

A.D.3d at 1150; *see also Born to Build, LLC v. Saleh*, 139 A.D.3d 654, 655–56 (2d Dep't 2016)

(finding alternative service on defendant's attorney proper under CPLR § 308(5)); *Kelly v. Lewis*,

11

220 A.D.2d 485, 486 (2d Dep't 1995) (same); *Esposito v. Ruggerio*, 193 A.D.2d 713, 713–14 (2d

Dep't 1993) (finding alternative service by mailing to defendant's last known address and serving

defendant's insurance carrier proper under CPLR § 308(5)).

29.     Once counsel for Trump in this action is identified, Carroll respectfully requests

that she be permitted to serve all papers on Trump's counsel via email until such time that counsel

has entered a notice of appearance in this action. *See, e.g.*, *Alfred E. Mann Living Trust v. ETIRC*

*Aviation S.A.R.L.*, 78 A.D.3d 137, 141 (1st Dep't 2010) ("Indeed, both New York courts and

federal courts have, upon application by plaintiffs, authorized e-mail service of process as an

appropriate alternative method when the statutory methods have proven ineffective."); *Baidoo v.*

*Blood-Dzraku*, 48 Misc.3d 309, 310 (Sup. Ct., N.Y. Cty. 2015) ("[C]ourts are now routinely

permitting [service of a summons by email] as a form of alternative service.").


WHEREFORE, Plaintiff E. Jean Carroll respectfully requests that the Court enter an order

permitting alternative service upon Defendant Donald J. Trump in the manner set forth above

pursuant to CPLR § 308(5).


Dated:  New York, New York
        November 8, 2019

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

12

Hon. Deborah A. **Kaplan**
J.S.C.

*Present:*
Hn. _____ *D.S.C.*

At IAS/CSP part _____ of the Supreme
Court of the State of New York, held in
and for the County of New York, at the
Court _____ _____ _____ Street,
New York, New York, _____
of _____ *November* _____ *15th*
_____ *2019*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

               *Plaintiff,*

   -against-

DONALD J. TRUMP, in his personal capacity,

               *Defendant.*

Index No. 160694/2019

**[PROPOSED] ORDER PERMITTING ALTERNATIVE SERVICE**

Upon the annexed affirmation of Roberta A. Kaplan, Esq., dated November 8, 2019, and

all supporting papers annexed thereto, it is hereby:

ORDERED that service of process shall be directed pursuant to CPLR § 308(5) upon

Defendant Donald J. Trump as follows:

~~Until such time that counsel for Defendant in this action has been identified,~~ Plaintiff E.

Jean Carroll shall be permitted to serve Defendant by mailing the summons and all other papers to

Defendant at the two addresses below, *by overnight mail and by first class mail* and emailing a copy of such papers to Defendant's attorneys

below:

        Donald J. Trump
        Trump Tower
        725 Fifth Avenue
        New York, NY 10022

        Donald J. Trump
        White House
        1600 Pennsylvania Ave NW
        Washington, DC 20500

        Richard F. Brueckner
        Law Offices of Alan S. Futerfas
        rbrueckner@futerfaslaw.com

Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

Once counsel for Defendant in this action has been identified, Plaintiff shall be permitted

to serve the summons and all papers on Defendant's counsel via email until such time that counsel

has entered a notice of appearance in this action.

Dated: November 12, 2019

*It is further ORDERED that all mailings and emails must be accompanied by a copy of this ex parte order.*

ENTER:

_____
J.S.C.

2

**Hon.** Deborah A. Kaplan
**J.S.C.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------

E. JEAN CARROLL,

                    *Plaintiff*,                         Index No.  160694/2019

        -against-

                                                        **NOTICE OF APPEARANCE**

DONALD J. TRUMP, in his personal capacity,

                    *Defendant*.

--------------------------------------------------------------

TO THE CLERK OF COURT:

        PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I
appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

        All pleadings, notices of hearing, and other filings in this matter should be served
upon the undersigned counsel.


Dated: New York, NY
        November 13, 2019

                                        /s/ Matthew J. Craig

                                        Matthew J. Craig
                                        KAPLAN HECKER & FINK LLP
                                        350 Fifth Avenue, Suite 7110
                                        New York, New York 10118
                                        Telephone: (212) 763-0883
                                        Facsimile: (212) 564-0883
                                        mcraig@kaplanhecker.com

                                        *Counsel for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------

E. JEAN CARROLL,

                *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                *Defendant*.

------------------------------------------------

Index No. 160694/2019

AFFIRMATION OF SERVICE

I, Matthew J. Craig, an attorney admitted to practice in the courts of the State of New York, hereby affirm under penalty of perjury, pursuant to CPLR 2106, that on November 13, 2019, I caused to be served upon Defendant Donald J. Trump the Summons (Doc. 1), Complaint (Doc. 2), Notice of Mandatory E-Filing, and Order Permitting Alternative Service (Doc. 15). These documents were sent by USPS First Class Mail as well as Overnight Mail to the following addresses:

    Donald J. Trump
    Trump Tower
    725 Fifth Avenue
    New York, NY 10022

    Donald J. Trump
    White House
    1600 Pennsylvania Ave NW
    Washington, DC 20500

Further, I sent electronic copies of the Summons (Doc. 1), Complaint (Doc. 2), Notice of

Mandatory E-Filing, and Order Permitting Alternative Service (Doc. 15) to the following attorneys

for Defendant at the following email addresses:

> Richard F. Bruekner
> rbruekner@futeraslaw.com

> William S. Consovoy
> will@consovoymccarthy.com

> Joanna C. Hendon
> jhendon@spearsimes.com

> Marc E. Kasowitz
> mkasowitz@kasowitz.com

> Lawrence S. Rosen
> LRosen@LHRGB.com

> Patrick Strawbridge
> Patrick@consovoymccarthy.com

Dated: New York, New York
November 13, 2019

By: /s/ Matthew J. Craig

Matthew J. Craig
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
mcraig@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------

E. JEAN CARROLL,

      *Plaintiff*,

 -against-

DONALD J. TRUMP, in his personal capacity,

      *Defendant*.

------------------------------------------------------------

Index No.  160694/2019


**NOTICE OF APPEARANCE**


TO THE CLERK OF COURT:

  PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

  All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.


Dated: New York, NY
   November 13, 2019

      /s/ Martha E. Fitzgerald

      Martha E. Fitzgerald
      KAPLAN HECKER & FINK LLP
      350 Fifth Avenue, Suite 7110
      New York, New York 10118
      Telephone: (212) 763-0883
      Facsimile: (212) 564-0883
      mfitzgerald@kaplanhecker.com

      *Counsel for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
E. JEAN CARROLL,

                    Plaintiff,                Index No.: 160694/19

            -against-

                                      **NOTICE OF APPEARANCE**

DONALD J. TRUMP, in his personal capacity,

                    Defendant.
----------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that LaRocca Hornik Rosen & Greenberg LLP hereby appears

in the above-referenced action on behalf of defendant Donald J. Trump.

      **PLEASE TAKE FURTHER NOTICE** that copies of all pleadings and papers, shall be

served upon the undersigned, and that electronic service via e-mail is acceptable and preferred.

      This notice of appearance is not intended to confer jurisdiction, to admit any fact and/or to

waive any defense.

Dated: New York, New York
       November 25, 2019

                              **LAROCCA HORNIK ROSEN**
                              **& GREENBERG LLP**

                              _____
                              Lawrence S. Rosen, Esq.
                              40 Wall Street, 32nd Floor
                              New York, NY 10005
                              T: (212) 530-4822
                              E: lrosen@lhrgb.com
                              *Attorneys for defendant,*
                              *Donald J. Trump*

To:   Roberta Kaplan, Esq. (*Via NYSCEF*)
       KAPLAN HECKER & FINK LLP
       350 Fifth Avenue, Suite 7110
       New York, NY 10118

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X

E. JEAN CARROLL,

                               Index No. 160694/2019

               Plaintiff,

             -against-                    **STIPULATION**

DONALD J. TRUMP, in his personal capacity,

              Defendant.
--------------------------------------------------------------------X

       WHEREAS, on November 4, 2019, plaintiff E. Jean Carroll ("plaintiff") commenced the above-captioned action against defendant Donald J. Trump ("defendant") by filing a Summons and Complaint via NYSCEF;

       WHEREAS, on November 12, 2019, the Court issued an order permitting plaintiff to serve defendant with process under CPLR 308(5);

       WHEREAS, LaRocca Hornik Rosen & Greenberg LLP has appeared as attorneys of record on behalf of defendant in this action;

       WHEREAS, defendant intends to file a pre-answer motion to dismiss plaintiff's Complaint (the "Motion"); and

       WHEREAS, counsel for the parties have conferred in good faith, and now desire to set a briefing schedule in connection with the Motion;

       IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that the parties will brief the Motion as follows:

       1.      Defendant shall file moving papers by January 14, 2020 via NYSCEF;

       2.      Plaintiff shall file opposition papers by February 11, 2020 via NYSCEF;

       3.      Defendant shall file reply papers, if any, by March 3, 2020 via NYSCEF;

4.      The return date of the Motion shall be March 5, 2020, or such other future date as

the Court may establish; and

5.      Electronic signatures shall serve as originals for the purposes of this stipulation.

Dated: New York, New York
          November 26, 2019

**KAPLAN HECKER & FINK LLP**

_____
Roberta A. Kaplan, Esq.
350 Fifth Avenue, Suite 7110
New York, New York 10118
T: (212) 763-0883
E: rkaplan@kaplanhecker.com

*Attorneys for plaintiff*
*E. Jean Carroll*

**LAROCCA HORNIK ROSEN**
**& GREENBERG LLP**

_____
Lawrence S. Rosen, Esq.
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822
E: lrosen@lhrgb.com

*Attorneys for defendant*
*Donald J. Trump*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------

E. JEAN CARROLL,

                      *Plaintiff*,

   -against-

DONALD J. TRUMP, in his personal capacity,

                      *Defendant*.

--------------------------------------------------------------

Index No. 160694/2019

**NOTICE OF APPEARANCE**

TO THE CLERK OF COURT:

     PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

     All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.

Dated: New York, NY
       November 26, 2019

                      /s/ Gabrielle E. Tenzer

                      Gabrielle E. Tenzer
                      KAPLAN HECKER & FINK LLP
                      350 Fifth Avenue, Suite 7110
                      New York, New York 10118
                      Telephone: (212) 763-0883
                      Facsimile: (212) 564-0883
                      gtenzer@kaplanhecker.com

                      *Counsel for Plaintiff E. Jean Carroll*

# NEW YORK COUNTY SUPREME COURT

60 CENTRE STREET • NEW YORK, NEW YORK 10007

_Nov 26_ , 20_19_

Dear Counselor:

_Carroll v. Trump,_
_Index No.: 160694/2019_

Please be advised as to the following:    (only as to what is checked)

(__)1/Please be advised that your post-submission papers cannot be considered. Once a motion is submitted to the court, additional submissions are not accepted, unless by consent.

(✓)2/This is to acknowledge your letter dated _Nov 21, 2019_ .

(__) 3/Such letter references a court order/decision/prior letter, which is not attached, so it is being returned to you and cannot be considered. _This Part deals with approximately 1000 cases per year, and approximately 800 plus applications and motions per year, and has insufficient resources to pull the relevant order/letter(s) on each piece of correspondence received, which is generally in the Clerk's office in the basement, given no secretarial help, and extremely limited resources. NOTE: Correspondence should be limited to letters authorized by CPLR or Court/Part rules, as the court has no secretary, able to manage the 20 plus letters (and duplicate letters) received daily. See #8, below._

(__)4/Your letter is being returned to you as the court cannot consider your request made by letter as an application of such nature must be made by formal motion.

(—)5/Your letter is being returned to you as you did not send a copy to the other side. Your letter must indicate that a copy was sent to the other side, with the address it was sent to provided on the bottom of the letter.

(__)6/The court does not accept faxed documents. (There is no need to fax and send by mail.)

(__)7/Please be advised that all motions, decisions after trial, and any other matters are processed in the order in which they are received. Every matter before the court is very important, and thus your very important matter will be processed accordingly. Please be assured that all matters are expedited in accordance with the court's busy schedule and that some cases may take longer because of the complexity of the case submitted.

(__)8/ _On average, this Part deals with approximately 1000 or more cases per year with limited staffing and resources,_ including a decreased Law Dept. Please be reminded that the court's budget was cut by 170 million dollars in 2011 and has not been increased since then, which in effect is a further cut. Accordingly, the court has lost staff through layoffs and attrition and thus applications, mediation, trials, and motions take longer to resolve/schedule. In addition to staff cuts and numerous personnel changes, court hours have curtailed and staff required to leave by 6pm due to the closing of the building because of lack of court officers. Moreover, Part 36 has not had a regularly assigned Part clerk for several years and the Judge has been presiding over Supreme court cases and was also appointed as an Associate Justice of the Appellate Term, First Department, in March of 2014.

(✓)9/Please forward a copy of this letter to all parties within 5 days of receipt.

(✓)10/ _Processing of RJI's is done in the Clerk's office &_
_not by individual Justices. To the extent you wish_
_to have the case reassigned to Justice Schecter, the proper_
_procedure is to write to the A.J. Deborah Kaplan, attaching_
_your ~~application~~ Affirmation._

Sincerely,

_Dona Albie_

Donna M. Albano/Susanna Lee
Court Attorney to Justice Doris Ling-Cohan
J:\Judge_Ling-Cohan\gray sheets & forms\Form Inquiry Letters\form letter updated app term.wpd

1 of 2

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL    rkaplan@kaplanhecker.com

November 21, 2019

VIA OVERNIGHT MAIL

Hon. Doris Ling-Cohan
60 Centre Street, Room 551
New York, NY 10007

Hon. Jennifer G. Schecter
60 Centre Street, Room 626
New York, NY 10007

      Re:    *Carroll v. Trump*, Index No. 160694/2019 (N.Y. Sup. Ct., N.Y. Cty.)

Dear Justices Ling-Cohan and Schecter:

      I write on behalf of Plaintiff E. Jean Carroll in the above-referenced action to confirm whether the Court has processed our Request for Judicial Intervention dated November 8, 2019, which identified this action as related to *Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.), and attached an affirmation setting forth the reasons for such identification. *See* Doc. Nos. 4 & 5. The public docket does not indicate whether the Court has made a determination of non-relatedness, or whether that issue remains to be determined. I am happy to provide any further information that the Court may require.

      Thank you for your attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc:    Defendant Donald J. Trump
      (via overnight mail to Trump Tower, 725 Fifth Avenue, New York, NY 10022, and
      White House, 1600 Pennsylvania Ave NW, Washington, DC 20500)

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

December 3, 2019

**VIA NYSCEF & OVERNIGHT MAIL**

Hon. Deborah A. Kaplan
Administrative Justice
New York Supreme Court, Civil Branch
60 Centre Street, Room 609
New York, NY 10007

   *Re:*  *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Kaplan:

   I write on behalf of Plaintiff E. Jean Carroll in the above-referenced action to advise the Court that this action is substantially related to another case, *Zervos v. Trump*, Index No. 150522/2017 (Sup. Ct., N.Y. Cty.), which is currently pending before Justice Schechter. The reasons why the two cases are related are set forth in my declaration, attached as Exhibit A hereto.

   An earlier version of this affirmation was filed in connection with a Request for Judicial Intervention ("RJI") on November 8, 2019. We submitted that RJI without notice to Defendant Donald J. Trump because we had been unable to serve him with the summons and complaint, and because it was unclear whether our submission of an *ex parte* application for an order permitting alternative service would prompt assignment of a Justice. After the Court granted the *ex parte* application and Trump was served, Justice Ling-Cohan was assigned to this action.

   On November 21, we wrote to the Court seeking clarification as to whether the Court had processed our RJI and, in fact, determined that *Carroll* and *Zervos* were unrelated. On December 3, Donna M. Albano, Court Attorney to Justice Ling-Cohan, instructed that a submission identifying the two cases as related should be directed to Your Honor. *See* Doc. No. 22. We submit this letter and updated affirmation in accordance with the Ms. Albano's guidance.

KAPLAN HECKER & FINK LLP                                          2

Thank you for your attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record (via NYSCEF)

        Beth Wilkinson, Moira Kim Penza, Jaclyn Delligatti, and
        Meghan Cleary, *Counsel to Summer Zervos* (via email)

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 64 of 201

# LaRocca Hornik Rosen

# & Greenberg LLP

### COUNSELORS AT LAW

The Trump Building
40 Wall Street
32nd Floor
New York, NY 10005
212.530.4823
212.530.4815 fax

LHRGB.COM

Freehold Commons
83 South Street
3rd Floor
Freehold, NJ 07728
732.409.1144
732.409.0350 fax

Frank J. LaRocca ⋄□
Jonathan L. Hornik
Lawrence S. Rosen
Rose Greenberg ⋄
Amy D. Carlin ⋄
Patrick T. McPartland ⋄
David N. Kittredge ⋄
Jonathan F. Ball ⋄
Jared E. Blumetti
Katelyn Canning
Florence R. Goffman ⋄⋄
Sherry Hamilton ⋄
Peter Kelegian ⋄
Drew Tanner ⋄
Lauren Weissman-Falk

⋄ New York Bar Only
⋄ New Jersey Bar Only
⋄ Of Counsel Attorneys
□ Certified Matrimonial Law Attorney

DIRECT DIAL: 212.530.4822
EMAIL: LROSEN@LHRGB.COM

December 5, 2019

**VIA NYSCEF & FEDEX**
Hon. Deborah A. Kaplan
Administrative Justice
Supreme Court of the State of New York
County of New York
60 Centre Street, Room 609
New York, New York 10007

Re:  E. Jean Carroll v. Donald J. Trump
     Supreme Court, New York County, Index No. 160694/2019

Dear Justice Kaplan:

We represent defendant Donald J. Trump in the above-captioned action, and write to briefly respond to plaintiff's December 3, 2019 correspondence in which plaintiff seemingly appears—for the second time—to be engaging in improper judge-shopping. *See* NYSCEF Doc. Nos. 23-24.

In her initial RJI, filed November 8, 2019, plaintiff attempted to have this non-commercial case assigned to Justice Schecter of the Commercial Division on the purported grounds that it was "related to" the case entitled *Summer Zervos v. Donald J. Trump*, Index No. 150522/2017. That request by plaintiff was denied and, in accordance with this Court's IAS protocols, the instant case was randomly assigned to Justice Ling-Cohan. *See* 22 NYCRR § 202.3(b) ("[a]ssignments shall be made by the clerk of the court pursuant to a method of ***random selection***") (*emphasis added*).

Undeterred, on November 21, 2019, plaintiff curiously sent to Justices Schecter and Ling-Cohan an *ex parte* letter purportedly seeking to confirm whether her request to assign this case to Justice Schecter had been "processed," this despite the Court's electronic filing system clearly identifying Justice Ling-Cohan as the Justice assigned to this case.[1] This letter was ultimately

---

[1] Despite admittedly being in possession of President Trump's attorneys' contact information and e-mail addresses, plaintiff instead mailed a copy of her November 21, 2019 letter to President Trump at Trump Tower (where he no longer resides) and to the White House (where plaintiff presumably knew that there would be a significant delay in the letter reaching President Trump or his counsel, if ever).

forwarded to Your Honor's attention in connection with plaintiff's December 3, 2019 correspondence.

In point of fact, these separate defamation cases—which involve different plaintiffs, different alleged statements that were made in different places, at different times, and in different contexts—are "unrelated" in every respect, except that the defendant is President Trump and the claims are for defamation.

Indeed, by plaintiff's logic this case should be assigned not to Justice Schecter, but rather to Justice Jaffe, who dismissed a very similar defamation case that was brought against President Trump by Cheryl Jacobus (a dismissal that was upheld by the First Department and denied further review by the Court of Appeals). *See Jacobus v. Trump*, 55 Misc.3d 470, 51 N.Y.S.3d 330 (Sup. Ct. N.Y. Cty. 2017), *aff'd* 156 A.D.3d 452, 64 N.Y.S.3d 889 (1st Dept. 2017), *lv. denied* 31 N.Y.3d 903 (2018). The Uniform Civil Rules require, however, that cases be assigned according to a method of "***random selection***." It was presumably for this reason that the *Zervos* case was randomly assigned to Justice Schecter, not Justice Jaffe, and the instant case was randomly assigned to Justice Ling-Cohan, and not to Justice Schecter.

In light of the foregoing, plaintiff's instant request to reassign this case from Justice Ling-Cohan to Justice Schecter should be denied.

Respectfully submitted,

Lawrence S. Rosen

cc:    Counsel of record (*via NYSCEF*)

2

## SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK

INDIVIDUAL ASSIGNMENT PART [OR JUSTICE] __Doris Ling-Cohan__

| | |
|---|---|
| E. Jean Carroll | Index No. __160694/2019__ |
| *Plaintiff(s)*, | DCM Track ____Standard____ |
| - against - | |
| Donald J. Trump | **PRELIMINARY CONFERENCE ORDER** |
| *Defendant(s)*. | **(By the Court)** |
| | (202.8, 202.12 and 202.19 of the Uniform Rules) |

**APPEARANCES**

Plaintiff(s): _____

X

Defendant(s): _____

X

As the court has received notice of appearance from defendant's counsel, it is hereby ORDERED that disclosure shall proceed as follows:

**(1) Insurance Coverage:** If not already provided, shall be furnished by ___all parties___ on or before ___2/6/20___.

**(2) Bill of Particulars:**
    (a) Demand for a bill of particulars shall be served by ___all parties___ on or before ___2/6/20___
    (b) Bill of particulars shall be served by ___all parties___ on or before ___3/6/20___.
    (c) A supplemental bill of particulars shall be served by _____ as to Items _____ on or before _____.

**(3) Medical Reports and Authorizations:**
    Shall be served as follows: _____

X

**(4) Physical Examination:**
    (a) Examination of _____ shall be held

X

    (b) A copy of the physician's report shall be furnished to plaintiff within _____ days of the examination.

**(5) Depositions:** Depositions of ☐ Plaintiff(s) ☐ Defendant(s) ☑ All Parties shall be held On or before 4/6/20; if the parties cannot agree, EBTs to commence on 4/2/20 and continue day to day until completed.

**(6) Other Disclosure:**
    (a) All parties, on or before ___2/6/20___, shall exchange names and addresses of all eye witnesses and notice witnesses, statements of opposing parties, and photographs, or, if none, provide an affirmation to that effect.
    (b) Authorization for plaintiff's(s') employment records for the period ___N/A___ shall be furnished on or before _____.
    (c) Demand for discovery and inspection shall be served by ___all parties___ on or before ___2/6/20___. The items sought shall be produced to the extent not objected to, and objections, if any, shall be stated on or before ___3/6/20___.
    (d) Other [interrogatories, etc.] _____

TS-13a (REV 1/03/17)

Case Name: __Carroll - V - Trump__    Index No: __160694/2019__ PC ORDER - Page 2

(7) **End Date for All Disclosure:**

_11/9/20_

(8) **Impleader:** Shall be completed on or before   within 45 days from party EBT's on ____ _4/6/20_ .

(9) **Compliance Conference:** Shall be held on ___ _5/21/20 @ 10:00 AM_, ~~Room 428~~. If a NOI has been filed and all *

(10) **Motions:** Any dispositive motion(s) shall be made on or before   60 days from filing note of issue. .

(11) **Note of Issue:** _____ Plaintiff _____ shall file a note of issue/certificate of readiness on or
before ___ _11/10/20_ . A copy of this order, an affirmation stating that the terms of the
order have been complied with, and an affidavit of service of the affirmation and note of issue shall be served and filed
with the note of issue on or before said date.

**FAILURE TO COMPLY WITH ANY OF THESE DIRECTIVES MAY RESULT IN THE IMPOSITION OF COSTS OR
SANCTIONS OR OTHER ACTION AUTHORIZED BY LAW. DATES SET FORTH HEREIN MAY NOT BE
ADJOURNED EXCEPT WITH ADVANCE APPROVAL OF THE COURT.**

* discovery complete, counsel need not appear at the
conference, provided that a courtesy copy has been received
by the Part 36 Clerk, ~~Room 428~~, at least 2 business days before
the conference date.

**SO ORDERED:**

_____
                                   _J.S.C._

Dated: _____

## ADDITIONAL DIRECTIVES

In addition to the directives set forth above, it is further ORDERED as follows:

_____

1.  Counsel shall confer in accordance with 22 NYCRR §202.7 (a) and (c), prior to filing a discovery related
    motion, and/or contacting the Court with respect to a discovery issue.

2.  Prior to the commencement of discovery, both sides shall discuss settlement, and/or the possibility of resolving
    this through ADR or mediation, by telephone call, to be initiated by plaintiff's counsel, on or before __ _2/13/20_
    at 3 o'clock PM. Counsel shall update this Court by joint letter as to the status of such conversation, or or
    before __ _2/19/20_ , via hand delivery or regular mail, to 60 Centre St., ~~Room 428~~, New York, NY 10007.

3.  The filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery.

_____

Dated: ___ _12/12/19_ ____

**SO ORDERED:**

_Doris Ling Cohan_

_____
        JUDGE
   NEW YORK COUNTY  J.S.C.

TS-13a (REV 1/03/17)

RII  11/8/19

At IAS Part 36 of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre Street, New York, New York on the __ day of _____, 2020.

PRESENT:  <u>DORIS LING-COHAN, Justice.</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
E. JEAN CARROLL,

                          Plaintiff,

           - against -

DONALD J. TRUMP, in his personal capacity,

                      Defendant.
--------------------------------------------------------------------X

Index No.  160694/2019

**[PROPOSED] ORDER**
**TO SHOW CAUSE**

**Oral Argument Requested**

Upon the Affirmation of Lawrence S. Rosen, dated January 3, 2020, and the attached exhibits, supported by the points and authorities set forth in the accompanying memorandum of law, dated January 3, 2020, and upon all the papers and proceedings had herein, including the parties' November 26, 2019 stipulation setting forth the briefing schedule for the application below (*see* "Briefing Stipulation" at NYSCEF Doc. No. 20),

LET, plaintiff E. Jean Carroll or her attorneys appear and show cause before Justice Ling-Cohan of this Court at IAS Part 36, Room 428, at the Supreme Court Courthouse, located at 60 Centre Street, New York County, State of New York, on the 5th day of March, 2020, at 9:30 a.m., or as soon thereafter as counsel can be heard,

WHY, an Order should not be entered:

(i)       Dismissing plaintiff's Complaint, pursuant to CPLR 3211(a)(8), for lack of personal jurisdiction; and

(ii)      Granting President Trump any such other relief as the Court deems just and proper.

ORDERED THAT PENDING the hearing of this application, the discovery deadlines set forth in the Court's December 12, 2019 Order are temporarily stayed; and it is further

ORDERED, that, per the Briefing Stipulation, answering papers, if any, shall be served so as to be received by LaRocca Hornik Rosen & Greenberg LLP, attorneys for President Trump, at 40 Wall Street, 32nd Floor, New York, New York 10005, to the attention of Lawrence S. Rosen at the e-mail address of said attorney at LROSEN@LHRGB.COM, on the 11th day of February, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED, that, per the Briefing Stipulation, reply papers, if any, shall be served so as to be received by Kaplan Hecker & Fink LLP, attorneys for plaintiff, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM, on the 3rd day of March, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED that sufficient cause therefor being alleged, let service of a copy of this Order and the papers upon which it is granted, be made on or before _____, 2020, in the manner provided below with proof of service thereof to be filed on the return date of this motion be deemed good and sufficient service; and

TO:    Plaintiff by delivery of all papers described above to Kaplan Hecker & Fink LLP, attorneys for plaintiff E. Jean Carroll, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM.

E N T E R

_____

J.S.C.

2

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 70 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------X

E. JEAN CARROLL,

               Plaintiff,

          - against -

DONALD J. TRUMP, in his personal capacity,

              Defendant.

--------------------------------------------------------------------X

Index No. 160694/2019

**AFFIRMATION OF
LAWRENCE S. ROSEN**

STATE OF NEW YORK    }
                         } ss:
COUNTY OF NEW YORK  }

       LAWRENCE S. ROSEN, an attorney duly admitted to practice before the Courts of the

State of New York, affirms under penalty of perjury as follows:

       1.     I am a partner at LaRocca Hornik Rosen & Greenberg LLP, attorneys for defendant

Donald J. Trump, and am personally familiar with the facts and circumstances set forth herein.

       2.     I submit this affirmation in support of President Trump's application for an order

(i) dismissing plaintiff's Complaint, pursuant to CPLR 3211(a)(8), for lack of personal jurisdiction,

and (ii) staying the discovery deadlines set forth in the Court's December 12, 2019 Order (the

"Preliminary Conference Order") pending the hearing of the instant motion.

       3.     Attached as **Exhibit A** is a true and correct copy of plaintiff's Complaint.

       4.     Attached as **Exhibit B** is a true and correct copy of the Court's November 13, 2019

*ex parte* order allowing for service on President Trump to be effectuated through his attorneys,

pursuant to CPLR 308(5).

       5.     Attached as **Exhibit C** is a true and correct copy of the Preliminary Conference

Order, wherein the Court ordered the parties to, among other things, exchange written discovery

and conduct party depositions on or before February 6 and April 6, 2020, respectively.  President

Trump respectfully requests that the Court stay the discovery deadlines set forth in the Preliminary

Conference Order pending a hearing on the instant motion.

6.    The undersigned informed the attorneys for plaintiff via telephone that President

Trump would be seeking a stay of discovery in Court today.

7.    Based on the points and authorities set forth in the accompanying memorandum of

law, President Trump respectfully requests that the Court grant the instant motion in its entirety.

8.    No prior request for the relief sought herein has previously been made.


Dated: New York, New York
       January 3, 2020

 

_____

LAWRENCE S. ROSEN

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
E. JEAN CARROLL,

                                                   Index No.  160694/2019

               Plaintiff,

             - against -

DONALD J. TRUMP, in his personal capacity,

             Defendant.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO STAY DISCOVERY

*On the brief:*
*Lawrence S. Rosen, Esq.*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN**
**& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822, 4837, 4831
E: LROSEN@LHRGB.COM
   PMCPARTLAND@LHRGB.COM
   JBLUMETTI@LHRGB.COM
*Attorneys for defendant*
*Donald J. Trump*

Defendant Donald J. Trump, by his attorneys, LaRocca Hornik Rosen & Greenberg LLP, respectfully submits this memorandum of law in support of his application for an order (i) dismissing plaintiff's Complaint, pursuant to CPLR 3211(a)(8), for lack of personal jurisdiction, and (ii) staying the discovery deadlines set forth in the Court's December 12, 2019 Order (the "Preliminary Conference Order") pending a hearing on the instant motion.

## PRELIMINARY STATEMENT

This defamation lawsuit must be dismissed in its entirety because this Court does not have personal jurisdiction over President Trump. Under well-established New York law, defamatory statements made outside of New York State do not, on their own, provide a basis for personal jurisdiction even when the purported statements were published to New York readers/listeners, or were directed towards or caused harm to a New York citizen.

Here, plaintiff admits in her Complaint that each of the alleged defamatory statements were made by President Trump not while he was in New York, but rather while he was in Washington D.C. Her lone assertion that President Trump is a "resident" of New York—besides being erroneous (he has resided in Washington D.C. for the past three years)—is insufficient to confer personal jurisdiction over him for the alleged statements.

Given that a dismissal for lack of personal jurisdiction will dispose of this action in its entirety in New York, it is respectfully requested that the Court stay the discovery deadlines set forth in the Preliminary Conference Order pending a hearing on this threshold jurisdictional issue.

1

# ARGUMENT

## I.

## THE COURT LACKS PERSONAL
## JURISDICTION OVER PRESIDENT TRUMP

Beyond a conclusory assertion that this Court has personal jurisdiction over President Trump under CPLR 301, plaintiff's sole allegation in the Complaint supporting *in personam* jurisdiction over him is that he is a New York "resident." *See ¶¶ 18, 20 of the Complaint, which is attached as **Exhibit A** to the Affirmation of Lawrence S. Rosen, dated January 3, 2020 (the "Rosen Affirm.")*. This, of course, is untrue, as the Court can take judicial notice that the President of the United States has resided in the White House for the past three years. Regardless, residency does not establish jurisdiction under CPLR 301. *See e.g. Chen v. Guo Liang Lu*, 144 A.D.3d 735, 737, 41 N.Y.S.3d 517, 520 (2d Dept. 2016) (jurisdiction under CPLR 301 is determined by an individual's domicile, reasoning that "[a]n individual may have multiples residences, but only one domicile").

Given that President Trump was not physically served in New York State,[1] there are no other grounds for *in personam* jurisdiction under CPLR 301. As such, plaintiff may only obtain jurisdiction over President Trump through New York's long-arm statute. *See* CPLR 302(a). However, it is blackletter law that the mere making of an alleged defamatory statement outside of New York State does not confer jurisdiction under New York's long-arm statute, even where the alleged defamatory statement purportedly causes harm to, or is aimed at, a New York citizen. *See* CPLR 302(a)(3) ("a court may exercise personal jurisdiction over any non-domiciliary…[who]

---

[1] Plaintiff obtained an *ex parte* order allowing for service on President Trump to be effectuated through his attorneys. *Rosen Affirm., Exh. B.*

2

commits a tortious act without the state causing injury to person or property within the state, **_except as to a cause of action for defamation of character_**") (*emphasis added*).

Here, by plaintiff's own admission, each of the alleged defamatory statements were made in Washington D.C. and, therefore, cannot provide a basis for jurisdiction on their own. *See e.g. SPCA of Upstate New York, Inc. v. American Working Collie Ass'n*, 18 N.Y.3d 400, 405, 940 N.Y.S.2d 525, 528 (2012) (no jurisdiction over defamation claim stemming from alleged defamatory internet posts in Vermont regarding plaintiff's purported treatment of animals on its premises in New York, even though the posts' probable purpose was to warn New Yorkers about plaintiff's conduct in their community); *Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 829, 527 N.Y.S.2d 729, 731 (1988) (no jurisdiction over defamation claim stemming from alleged defamatory statements in California regarding defendant's prior observations of a New York university basketball coach acting severely intoxicated on various occasions during her prior enrollment at the school); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007) (no jurisdiction over defamation claim stemming from alleged defamatory internet posts in Iowa regarding New York-based moving company operating interstate illegally and not carrying cargo insurance because "making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers"); *Trachtenberg v. Failedmessiah.com*, 43 F.Supp.3d 198, 203 (E.D.N.Y. 2014) (no jurisdiction over defamation claim stemming from alleged defamatory internet posts in Minnesota regarding preschool teacher's arrest in New York for alleged sexual abuse of a child despite plaintiff's assertions that defendant's "internet activity [was] expressly targeted at or directed to New York").

The only recognized exception to this statutory rule is inapplicable here. Specifically, plaintiff would need to demonstrate that the alleged defamatory statements were "substantially

3

related" to a "transaction of business" by President Trump in New York. *See SPCA*, 18 N.Y.3d at 404, 940 N.Y.S.2d at 527–28. In her Complaint, plaintiff does not (and cannot) make any such allegations, as she acknowledges in her Complaint that the alleged defamatory statements were made directly in response to her own statements that President Trump sexually assaulted her during a personal meeting some twenty odd years ago (and, thus, were not the result of any "transaction of business"). *See e.g. Best Van Lines, Inc.*, 490 F.3d at 248 ("the single act of uttering a defamation, not matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction") (*internal quotations and alterations omitted*); *SPCA*, 18 N.Y.3d at 405, 940 N.Y.S.2d at 528 (alleged defamatory internet posts in Vermont regarding plaintiff's purported treatment of animals on its premises in New York did not constitute a transaction of business in New York); *Trachtenberg*, 43 F.Supp.3d at 203 (alleged defamatory internet posts in Minnesota regarding preschool teacher's arrest in New York for alleged sexual abuse of a child did not constitute a transaction of business in New York); *Farahmand v. Dalhousie University*, 958 N.Y.S.2d 645, * 3 (Sup. Ct. N.Y. Cty. 2011) (Ling-Cohan, J.) ("plaintiff has not demonstrated that defendant transacted business with plaintiff within this state, at any time, nor was there a transaction of business within New York between defendant and some other entity that led to [the alleged defamation]").

For all of these reasons, plaintiff's Complaint should be dismissed in its entirety for lack of personal jurisdiction. Moreover, the discovery deadlines set forth in the Preliminary Conference Order should be stayed pending a hearing on this application. *Rosen Affirm., Exh. C*. As noted above, the gravamen of plaintiff's defamation claim concerns what did or did not transpire during a purported personal meeting between the parties more than twenty years ago. Any discovery in this case—which will necessarily involve intrusive and burdensome document and testimonial discovery from party and non-party witnesses regarding purported events dating back to the mid-

4

1990's—should be stayed pending a hearing on whether this Court even has personal jurisdiction over President Trump in this action.[2] *See e.g. Chan v. Zoullas*, 943 N.Y.S.2d 790, * 3 (Sup. Ct. N.Y. Ct. 2012) (referencing the Supreme Court's discretion to stay discovery during the pendency of a dispositive motion).

## CONCLUSION

Based on the foregoing, President Trump respectfully requests that the Court (i) dismiss plaintiff's Complaint on the grounds that the Court lacks personal jurisdiction over him, and (ii) stay the discovery deadlines in the Preliminary Conference Order pending a hearing on this application.

Dated: New York, New York
January 3, 2020

**LAROCCA HORNIK ROSEN
& GREENBERG LLP**

By: _____

Lawrence S. Rosen
Patrick McPartland
Jared E. Blumetti
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822, 4837, 4831
E: LROSEN@LHRGB.COM
    PMCPARTLAND@LHRGB.COM
    JBLUMETTI@LHRGB.COM

*Attorneys for Donald J. Trump*

---

[2] Indeed, plaintiff has already served a non-party subpoena *duces tecum* in this action seeking various documents and information dating back to **_1994_**. Upon information and belief, this non-party has since objected to the substance, scope, and burdensome nature of plaintiff's subpoena.

5

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 78 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------

E. JEAN CARROLL,

                     *Plaintiff*,

  -against-

DONALD J. TRUMP, in his personal capacity,

                     *Defendant*.

-----------------------------------

Index No. 160694/2019

**AFFIRMATION OF ROBERTA A. KAPLAN**
**IN OPPOSITION TO DEFENDANT'S**
**PROPOSED ORDER TO STAY DISCOVERY**

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.      I am a partner with the law firm of Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.      I submit this affirmation in opposition to Defendant Donald J. Trump's proposed order dated January 3, 2020 (the "Proposed Order") to the extent that it seeks an immediate stay of discovery in this case. *See* Doc. No. 28 at 2. Plaintiff E. Jean Carroll intends to oppose the Proposed Order insofar as it seeks dismissal of the Complaint for lack of personal jurisdiction in accordance with the briefing schedule to which the parties have stipulated, which contemplates Plaintiff submitting her opposition on or before February 11, 2020. *See* Doc. No. 28.

**RELEVANT FACTUAL BACKGROUND**

3.      Carroll is a citizen of New York. Trump, a lifelong New Yorker, currently serves as President of the United States.

4.     As alleged in the Complaint, roughly two decades ago, Carroll unexpectedly encountered Trump at the luxury department store Bergdorf Goodman across from the Plaza Hotel in Manhattan. *See* Doc. No. 2. What began as playful banter between the two took a dark turn when Trump seized Carroll in a dressing room and sexually assaulted her. In the wake of Trump's election as President and the change in attitude brought about as a result of the #MeToo movement, Carroll published an account of that assault by Trump in the summer of 2019. Trump responded with a series of false and defamatory statements about Carroll, denying not only the rape, but also ever having met Carroll or even knowing who she was. He went so far as to deny raping Carroll because "she's not [his] type." *Id.* ¶ 97. Trump further stated that Carroll made up her account out of whole cloth either in order to sell more books or as part of a conspiracy with the Democratic Party, or both. *Id.* ¶ 82. Carroll filed this action to obtain redress for the injuries caused by Trump's defamation, and to demonstrate that even a man as powerful as Trump can be held accountable under the law.

5.     At the outset of the case, building staff and Secret Service agents in New York frustrated multiple attempts to serve process on Trump at his Trump Tower residence in New York, 725 Fifth Avenue, New York, NY 10022. Doc. No. 6. at 4-6. An effort to serve Trump at the White House was similarly rebuffed. *Id.* at 6-7. As a result, this Court issued an order permitting alternative service pursuant to CPLR § 308(5). *See* Doc. No. 15. Process was accordingly served by mail on Trump at the same Trump Tower address and at the White House, with copies sent to six attorneys representing Trump in New York State actions in which Trump had sued, or was being sued, in his personal capacity. *See* Doc. No. 17.

6.     On November 26, 2019, the parties stipulated to a briefing schedule for Trump's anticipated motion to dismiss, which counsel for Trump explained at the time was going to be

2

based on the theory that Trump's statements about Carroll were not defamatory. *See* Doc. No. 20; Doc. No. 24 at 3. The parties agreed that Carroll's opposition to that motion would be due on February 11, 2020, and any reply papers would be due March 3, 2020. Doc. No. 20 at 1.

7.    On December 12, 2019, the Court ordered discovery to proceed, setting deadlines for the exchange of written discovery and completion of depositions, with initial production due by March 6 and depositions to be completed by April 6, 2020. *See* Doc. No. 27. The Court specifically directed that, in this case, "[t]he filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery." *Id.* at 2.

8.    On January 3, 2020, Trump moved to dismiss the Complaint by Order to Show Cause. Switching gears from what his counsel had previously predicted, Trump's current argument is limited to the issue of personal jurisdiction. Doc. No. 33. In other words, Trump's motion does not seek dismissal for failure to state a cause of action pursuant to CPLR § 3211(a)(7). Instead, Trump argues that New York courts lack personal jurisdiction over him because: (1) personal jurisdiction is lacking (1) under CPLR § 301 since he currently resides at the White House and/or because the Complaint uses the term "resident," not "domiciliary"; and (2) under CPLR § 302 because his defamatory statements about Carroll were made from the District of Columbia.[1]

9.    In support of proceeding by Order to Show Cause rather than by motion, Trump further argues that the Court should exercise its discretion to stay the previously established discovery deadlines pending resolution of his motion to dismiss for lack of personal jurisdiction. Doc. No. 33. This Affirmation responds to that aspect of Trump's requested relief.

**ARGUMENT**

10.    Nothing in Trump's motion to dismiss should induce the Court to alter the

---

[1] It is significant to note that in her Complaint, Carroll does not invoke CPLR § 302 as a basis for jurisdiction in this case.

3

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 81 of 201

discovery deadlines it has already established in this case. Trump's sole asserted ground for dismissal—his supposed lack of amenability to suit in New York—is as dubious as it is narrow. The obvious weakness of Trump's jurisdictional argument only confirms the wisdom of the Court's December 12 scheduling order: there is no reason to defer or delay discovery at this time.

11.     First, discovery should proceed because the Court will ultimately deny Trump's motion. Prior to his assuming the presidency, Trump was a lifelong New Yorker, and he has been sued in New York courts repeatedly over the decades, including since 2016. *See, e.g.*, *Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.). He therefore cannot—and his motion does not—dispute that he has been a New York domiciliary. And that domicile of New York persists unless and until Trump can prove by clear and convincing evidence that he has not only stated an intention to change residence, but has actually established a new permanent domicile somewhere else, where he now lives. *See Hosley v. Curry*, 85 N.Y.2d 447, 451 (1995) ("For a change to a new domicile to be effected, there must be a union of residence in fact and an 'absolute and fixed intention' to abandon the former and make the new locality a fixed and permanent home."). Jurisdiction is therefore proper under CPLR § 301 at a minimum because Trump's domicile was clearly New York when the Complaint was filed, which is the relevant inquiry. *Chen v. Guo Liang Lu*, 144 A.D.3d 735, 737 (2nd Dep't 2016).

12.     To defeat personal jurisdiction, therefore, the burden is on Trump to prove his establishment of a new domicile outside of New York, taking into account all of his relevant "acts, statements, and conduct." *In re Urdang*, 194 A.D.2d 615, 615 (2d Dep't 1993). Yet in support of the instant motion, Trump never asserts any other domicile, arguing only that the Court should take judicial notice of his current temporary residence in the White House—a fact that is plainly insufficient under New York law to alter Trump's New York domicile since it is not permanent.

4

*See Hosley*, 85 N.Y.2d at 451 ("'Mere change of residence although continued for a long time does not effect a change of domicile . . . .'") (quoting *In re Newcomb*, 192 N.Y. 238, 250 (1908)). Moreover, Trump's motion does not address, much less seek to rebut, the ample evidence that Trump's New York domicile persisted at the commencement of this case, including his ownership of both residential and commercial property in New York and his payment of New York taxes. *See, e.g.*, *Deer Consumer Prods., Inc. v. Little*, 35 Misc. 3d 374, 381 (Sup. Ct., N.Y. Cty. 2012). Indeed, Trump has failed to submit any sworn affidavit or any other evidence to support his bare-bones contention that he no longer has sufficient contact with New York to be sued here, and that failure alone is sufficient to defeat any motion to dismiss. *See Hosley*, 85 N.Y.2d at 451 ("[A] party . . . alleging a change in domicile has the burden to prove the change by clear and convincing evidence.").

13.     Rather than confront the issue of his New York citizenship head on, Trump's primary argument under CPLR § 301 hinges on a technicality: he asserts that Carroll has failed to allege Trump's citizenship because the Complaint refers to Trump's status as a New York "resident," rather than invoking the words "domiciliary" or "citizen" instead. Doc. No. 33 at 3. But, as the Court knows, New York long ago rejected such an overly formalistic approach to pleading, *see, e.g.*, CPLR § 107, and Carroll was under no obligation to plead the basis of personal jurisdiction at all. To the contrary, "[t]here is no requirement, in New York pleading practice, that the complaint allege the basis for personal jurisdiction." *Fishman v. Pocono Ski Rental, Inc.*, 82 A.D.2d 906, 907 (2d Dep't 1981); *see also In re New York City Asbestos Litig.*, 173 A.D.3d 519, 519 (1st Dep't 2019) ("Personal jurisdiction is not an element of a claim, and matters that are not elements need not be pleaded in the complaint."). In any event, the Complaint here alleges both the *fact* of Trump's residence in New York, and, by invoking CPLR § 301, alleges the *legal*

5

significance of that residence as Trump's domicile for jurisdictional purposes. *See* Doc. No. 2 ¶¶ 18, 20. That is more than enough under black letter New York law. *See Fishman*, 82 A.D.2d at 907; *In re New York City Asbestos Litig.*, 173 A.D.3d at 519; *Rung v. U.S. Fidelity & Guarantee Co.*, 139 A.D.2d 914, 914 (4th Dep't 1988) (New York has no "strict jurisdictional pleading rule" for personal jurisdiction); CPLR § 3026 ("Pleadings shall be liberally construed.").

14.      In the end, Trump's case against this Court's jurisdiction boils down to barely any argument at all. The bulk of his brief—which itself spans fewer than five pages to begin with—is devoted to red-herring rebuttals of a jurisdictional basis that Carroll doesn't invoke. And *relevant* discussion concerning CPLR § 301 fills less than a single page, which arguably reflects Trump's lack of confidence in his own argument.[2]

15.      Moreover, even if the Court were ultimately to harbor any doubt as to Trump's amenability to suit in New York, the appropriate remedy would be not to suspend discovery, but to conduct it. At a minimum, facts yet unknown to Carroll "may exist" relevant to establishing Trump's contacts with New York, and many of the documents establishing those facts—such as Trump's latest New York State tax return—are within Trump's "exclusive control." *Peterson v. Spartan Indus., Inc.*, 33 N.Y.2d 463, 465-66 (1974); *see also* CPLR § 3211(d); *Ying Jun Chen v. Lei Shi*, 19 A.D.3d 407, 408 (2d Dep't 2005) ("The plaintiffs established that facts 'may exist' to exercise personal jurisdiction over [defendant] and have made a 'sufficient start' to warrant further discovery on the issue of personal jurisdiction over him . . . .").[3]

---

[2] For these reasons, Carroll reserves the right to seek an appropriate award of costs and sanctions in connection with Trump's motion to dismiss, since his jurisdictional argument is "completely without merit in law" and was made "primarily to delay or prolong the resolution of the litigation." Rules of the Chief Administrative Judge, Subpart 130-1.1(c)(1)-(2).

[3] Along with the filing of this affirmation, Carroll is serving Trump with a first set of document requests, requests for admission, and interrogatories directed at the issue of personal jurisdiction. Trump's responses will be due on January 27, which should give Carroll sufficient time to incorporate his responses in her opposition to Trump's motion to dismiss on or before February 11.

6

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 84 of 201

16.     Finally, and perhaps most importantly, the Court has *already* decided the issue of when discovery should take place *against Trump* in this case. As Trump himself concedes, it is within the Court's "discretion" to decide whether briefing on his motion to dismiss should proceed in parallel with discovery. Doc. No. 33 at 5-6 (citing *Chan v. Zoullas*, 2012 WL 98492, at *3 (Sup. Ct., N.Y. Cty. 2012)). Here, the Court has already exercised that discretion by deciding that a stay is not warranted. When the Court ordered discovery to proceed on December 12, 2019, the Court was well aware that Trump planned to file a motion to dismiss—and that the parties' briefing of that motion would be contemporaneous with discovery. *Compare* Doc. No. 27 at 2 (order dated December 12, 2019, setting discovery dates and directing that "[t]he filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery"), *with* Doc. No. 20 at 1 (stipulation filed November 26, 2019, informing the Court that "defendant intends to file a pre-answer motion to dismiss plaintiff's Complaint" and agreeing to a briefing schedule). Accordingly, there is no basis for the Court to reconsider its previous decision on the ground that something was somehow overlooked or misapprehended, and Trump does not point to anything that the Court missed. *See* CPLR § 2221(d)(2). Indeed, as discussed above, the lack of merit in Trump's asserted ground for dismissal only reinforces the correctness of the Court's original decision to direct that discovery can and should proceed in this case at this time.

7

WHEREFORE, Plaintiff E. Jean Carroll respectfully requests that the Court deny Defendant Donald J. Trump's request for an order staying discovery pending resolution of his motion to dismiss.

Dated: New York, New York
      January 6, 2020

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

8

At IAS Part 36 of the Supreme Court of the
State of New York, held in and for the
County of New York, at the Courthouse
located at 60 Centre Street, New York, New
York on the __ day of _____, 2020.

PRESENT: <u>DORIS LING-COHAN</u>, Justice.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------X

E. JEAN CARROLL,

                   Plaintiff,

        - against -

DONALD J. TRUMP, in his personal capacity,

               Defendant.

-----------------------------------------------------------X

Index No. 160694/2019

**[PROPOSED] ORDER
TO SHOW CAUSE**

**<u>Oral Argument Requested</u>**

Upon the Affirmation of Lawrence S. Rosen, dated January 3, 2020, and the attached

exhibits, supported by the points and authorities set forth in the accompanying memorandum of

law, dated January 3, 2020, and upon all the papers and proceedings had herein, including the

parties' November 26, 2019 stipulation setting forth the briefing schedule for the application below

(*see* "Briefing Stipulation" at NYSCEF Doc. No. 20),

    LET, plaintiff E. Jean Carroll or her attorneys appear and show cause before Justice Ling-

Cohan of this Court at IAS Part 36, Room 428, at the Supreme Court Courthouse, located at 60

Centre Street, New York County, State of New York, on the 5th day of March, 2020, at 9:30 a.m.,

or as soon thereafter as counsel can be heard,

    WHY, an Order should not be entered:

    (i)    Dismissing plaintiff's Complaint pursuant to CPLR 3211(a)(8), for lack of

personal jurisdiction; and

    (ii)    Granting President Trump any such other relief as the Court deems just and proper.

JUSTICE DORIS LING-COHAN

ORDERED THAT PENDING the hearing of this application, the discovery deadlines set forth in the Court's December 12, 2019 Order are temporarily stayed; and it is further

ORDERED, that, per the Briefing Stipulation, answering papers, if any, shall be served so as to be received by LaRocca Hornik Rosen & Greenberg LLP, attorneys for President Trump, at 40 Wall Street, 32nd Floor, New York, New York 10005, to the attention of Lawrence S. Rosen at the e-mail address of said attorney at LROSEN@LHRGB.COM, on the 11th day of February, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED, that, per the Briefing Stipulation, reply papers, if any, shall be served so as to be received by Kaplan Hecker & Fink LLP, attorneys for plaintiff, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM, on the 3rd day of March, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED that sufficient cause therefor being alleged, let service of a copy of this Order and the papers upon which it is granted, be made on or before _____, 2020, in the manner provided below with proof of service thereof to be filed on the return date of this motion be deemed good and sufficient service; and

TO:    Plaintiff by delivery of all papers described above to Kaplan Hecker & Fink LLP, attorneys for plaintiff E. Jean Carroll, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM.

E N T E R

_____
J.S.C

2

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. DORIS LING-COHAN**

*Justice*

-------------------------------------------------------------------X

E. JEAN CARROLL

                                    Plaintiff,

                        - v -

DONALD TRUMP,

                                    Defendant.

-------------------------------------------------------------------X

| PART | IAS MOTION 36 |
| --- | --- |
| INDEX NO. | 160694/2019 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 28, 29, 30, 31, 32, 33, 34

were considered on this motion to/for _____ DISMISS _____.

Defendant Donald Trump ("Trump") seeks that this Court sign his Order to Show Cause to dismiss for lack of personal jurisdiction and for an interim stay of discovery.

Upon the foregoing documents, it is

ORDERED that the Court declines to sign the within Order to Show Cause submitted by defendant Trump, as the moving papers fail to contain an affidavit by him, to support his argument that this Court lacks personal jurisdiction over him. Although defendant Trump, through his counsel, claims lack of personal jurisdiction, notably, there is not even a tweet, much less an affidavit by defendant Trump in support of his motion. Instead, as to his claim of lack of personal jurisdiction, defendant asserts, through his attorney in a mere Memorandum of Law in Support, that this Court should "take judicial notice that the President of the United States has resided in the White House for the past three years." (Memorandum of Law in Support, at 2, ¶1). However, judicial notice is not appropriate here, as "[a] court may only apply judicial notice to matters 'of common and general knowledge, well established, and authoritatively settled, not

**160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.**                                    **Page 1 of 2**
**Motion No. 001**

doubtful or uncertain [;] the test is whether sufficient notoriety attaches to the fact to make it

proper to assume its existence without proof.'" (*Dollas v W.R. Grace and Co.*, 225 AD2d 319,

320 [1st Dept 1996], quoting *Ecco High Frequency Corp. v Amtorg Trading Corp.*, 81 NYS 2d

610 [Sup Ct, NY County 1948], *affd* 274 AD 982 [1st Dept 1948]).

      The Court notes that, not only was no affidavit from defendant Trump supplied in support

of this application, but even the defendant's attorney's affirmation does not assert a basis

(evidentiary or otherwise) for dismissal; rather, the affirmation acts as a mere conduit to provide

documents relating to the procedural posture of the case. (Lawrence Rosen Affirmation).

      Moreover, there is no basis for a stay of discovery deadlines in this case.

      In the future, all Orders to Show Cause shall be presented in the following manner:

      (1)    Notice to the other side as per 22 NYCRR §202.7(f) and the Court shall also be

provided with courtesy hard copies in hand, of all papers; and

      (2)    Movant shall seek an appropriate "time, date and place" as per 22 NYCRR

§202.7(f), for presentation of any application, from the Part's court attorney by telephone, prior

to filing.

| | |
|---|---|
| **1/6/2020** | |
| DATE | DORIS LING-COHAN, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | REFERENCE |

J:\Judge_Ling-Cohan\OSC\Denied\Carroll v Trump 01606942019 001.docx

**160694/2019   CARROLL, E. JEAN vs. TRUMP, DONALD J.**                                    **Page 2 of 2**
**Motion No.  001**

2 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------

E. JEAN CARROLL,

                 *Plaintiff*,

  -against-

DONALD J. TRUMP, in his personal capacity,

                 *Defendant*.

----------------------------------------

Index No.  160694/2019
Hon. Justice Ling-Cohan

## <u>NOTICE OF ENTRY</u>

Please take notice that within is a true and correct copy of the Decision and Order on

Motion of Justice Doris Ling-Cohan dated January 6, 2020, which was entered in the office of

the Clerk of the County of New York on January 10, 2020.

Dated:   New York, NY
           January 13, 2020

Respectfully submitted,

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

To: Lawrence Rosen (by NYSCEF)
LaRocca Hornik Rosen & Greenberg LLP
40 Wall Street, 32nd Floor
New York, NY 10005

At IAS Part 36 of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre Street, New York, New York on the __ day of _____, 2020.

PRESENT: <u>DORIS LING-COHAN</u>, Justice.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
E. JEAN CARROLL,

               Plaintiff,

        - against -

DONALD J. TRUMP, in his personal capacity,

          Defendant.
----------------------------------------------------------------X

Index No. 160694/2019

**[PROPOSED] ORDER
TO SHOW CAUSE**

**<u>Oral Argument Requested</u>**

Upon the Affirmation of Lawrence S. Rosen, dated January 3, 2020, and the attached exhibits, supported by the points and authorities set forth in the accompanying memorandum of law, dated January 3, 2020, and upon all the papers and proceedings had herein, including the parties' November 26, 2019 stipulation setting forth the briefing schedule for the application below (*see* "Briefing Stipulation" at NYSCEF Doc. No. 20),

LET, plaintiff E. Jean Carroll or her attorneys appear and show cause before Justice Ling-Cohan of this Court at IAS Part 36, Room 428, at the Supreme Court Courthouse, located at 60 Centre Street, New York County, State of New York, on the 5th day of March, 2020, at 9:30 a.m., or as soon thereafter as counsel can be heard,

WHY, an Order should not be entered:

    (i)    Dismissing plaintiff's Complaint pursuant to CPLR 3211(a)(8), for lack of personal jurisdiction; and

    (ii)    Granting President Trump any such other relief as the Court deems just and proper.

JUSTICE DORIS LING-COHAN

ORDERED THAT PENDING the hearing of this application, the discovery deadlines set forth in the Court's December 12, 2019 Order are temporarily stayed; and it is further

ORDERED, that, per the Briefing Stipulation, answering papers, if any, shall be served so as to be received by LaRocca Hornik Rosen & Greenberg LLP, attorneys for President Trump, at 40 Wall Street, 32nd Floor, New York, New York 10005, to the attention of Lawrence S. Rosen at the e-mail address of said attorney at LROSEN@LHRGB.COM, on the 11th day of February, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED, that, per the Briefing Stipulation, reply papers, if any, shall be served so as to be received by Kaplan Hecker & Fink LLP, attorneys for plaintiff, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM, on the 3rd day of March, 2020, and electronically filed via NYSCEF so as to be received by the Court by such time; and it is further

ORDERED that sufficient cause therefor being alleged, let service of a copy of this Order and the papers upon which it is granted, be made on or before _____, 2020, in the manner provided below with proof of service thereof to be filed on the return date of this motion be deemed good and sufficient service; and

TO:     Plaintiff by delivery of all papers described above to Kaplan Hecker & Fink LLP, attorneys for plaintiff E. Jean Carroll, at 350 Fifth Avenue, Suite 7110, New York, New York 10118, to the attention of Roberta A. Kaplan at the e-mail address of said attorney at RKAPLAN@KAPLANHECKER.COM.

E N T E R

_____
                                    J.S.C

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. DORIS LING-COHAN** _____  **PART**  **IAS MOTION 36**

*Justice*

---------------------------------------------------------------X

**INDEX NO.** _____160694/2019_____

E. JEAN CARROLL  **MOTION DATE** _____N/A_____

Plaintiff,  **MOTION SEQ. NO.** _____001_____

- v -

DONALD TRUMP,  **DECISION + ORDER ON MOTION**

Defendant.

---------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 28, 29, 30, 31, 32, 33, 34

were considered on this motion to/for _____ DISMISS _____.

     Defendant Donald Trump ("Trump") seeks that this Court sign his Order to Show Cause

to dismiss for lack of personal jurisdiction and for an interim stay of discovery.

     Upon the foregoing documents, it is

     ORDERED that the Court declines to sign the within Order to Show Cause submitted by

defendant Trump, as the moving papers fail to contain an affidavit by him, to support his

argument that this Court lacks personal jurisdiction over him.  Although defendant Trump,

through his counsel, claims lack of personal jurisdiction, notably, there is not even a tweet, much

less an affidavit by defendant Trump in support of his motion. Instead, as to his claim of lack of

personal jurisdiction, defendant asserts, through his attorney in a mere Memorandum of Law in

Support, that this Court should "take judicial notice that the President of the United States has

resided in the White House for the past three years." (Memorandum of Law in Support, at 2, ¶1).

However, judicial notice is not appropriate here, as "[a] court may only apply judicial notice to

matters 'of common and general knowledge, well established, and authoritatively settled, not

160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.    Page 1 of 2
Motion No. 001

1 of 2

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 94 of 201

doubtful or uncertain [;] the test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof.'" (*Dollas v W.R. Grace and Co.*, 225 AD2d 319, 320 [1st Dept 1996], quoting *Ecco High Frequency Corp. v Amtorg Trading Corp.*, 81 NYS 2d 610 [Sup Ct, NY County 1948], *affd* 274 AD 982 [1st Dept 1948]).

The Court notes that, not only was no affidavit from defendant Trump supplied in support of this application, but even the defendant's attorney's affirmation does not assert a basis (evidentiary or otherwise) for dismissal; rather, the affirmation acts as a mere conduit to provide documents relating to the procedural posture of the case. (Lawrence Rosen Affirmation).

Moreover, there is no basis for a stay of discovery deadlines in this case.

In the future, all Orders to Show Cause shall be presented in the following manner:

(1)     Notice to the other side as per 22 NYCRR §202.7(f) and the Court shall also be provided with courtesy hard copies in hand, of all papers; and

(2)     Movant shall seek an appropriate "time, date and place" as per 22 NYCRR §202.7(f), for presentation of any application, from the Part's court attorney by telephone, prior to filing.

| | | |
|---|---|---|
| **1/6/2020** | | |
| **DATE** | | **DORIS LING-COHAN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

J:\Judge_Ling-Cohan\OSC\Denied\Carroll v Trump 01606942019 001.docx

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------

E. JEAN CARROLL,

                        *Plaintiff*,

  -against-

DONALD J. TRUMP, in his personal capacity,

                        *Defendant*.

Index No. 160694/2019

Hon. Verna L. Saunders

**[PROPOSED] ORDER AND STIPULATED BRIEFING SCHEDULE**

WHEREAS, on December 12, 2019, the Court issued a Preliminary Conference Order setting various deadlines for discovery and disclosure in this action;

WHEREAS, Defendant has informed Plaintiff of his intention to move to stay this action pending the New York Court of Appeals' decision in *Zervos v. Trump*, APL-2020-00009 (N.Y.);

WHEREAS, the parties desire to set a briefing schedule in connection with Defendants' motion to stay;

WHEREAS, Plaintiff has agreed to temporarily adjourn all discovery and discovery-related deadlines in the Court's Preliminary Conference Order so as to permit expedited briefing and resolution of Defendant's anticipated motion to stay, and not to enforce any deadlines with respect to prior notices and requests issued to Defendant pursuant to CPLR §§ 3120–21, 3123, and 3130–32 during the pendency of that motion;

IT IS HEREBY STIPULATED AND AGREED,[1] by and between the undersigned counsel, that the parties shall brief Defendant's motion to stay as follows:

1.    Defendant shall file moving papers by February 4, 2020;

2.    Plaintiff shall file opposition papers by February 7, 2020;

3.    Defendant shall file reply papers, if any, by February 11, 2020;

4.    The return date of the motion to stay shall be February 13, 2020; and

5.    The parties shall appear for oral argument on March 4, 2020, or such other future date as the Court may establish;

6.    Given Defendant's stated intention to appeal any adverse ruling on its motion to stay, and in light of the spring vacation schedule for New York City schools, the parties shall meet and confer regarding the timing of such appeal prior to taking any action before the Appellate Division, First Department.

IT IS FURTHER STIPULATED AND AGREED, by and between the undersigned counsel, that all discovery is adjourned and the deadlines in paragraphs 1, 2, 5, and 6 of the Preliminary Conference Order shall be extended by the amount of time from January 31 to the date of the Court's decision on Defendant's motion to stay, plus five business days.

---

[1] Defendant enters into this Stipulation subject to and reserving all rights to his immunity, under the Supremacy Clause of the United States Constitution, Article VI, cl. 2, as a sitting United States President from being sued in a state court while serving as President.

2

SO STIPULATED.

Dated: New York, New York
January 31, 2020

KAPLAN HECKER & FINK LLP

LAROCCA HORNIK ROSEN &
GREENBERG LLP

_____
Roberta A. Kaplan
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com

_____
Lawrence S. Rosen
40 Wall Street, 32rd Floor
New York, New York 10005
Tel: (212) 530-4822
lrosen@lhrgb.com

*Counsel for Plaintiff E. Jean Carroll*

*Counsel for Defendant Donald J. Trump*

SO ORDERED.

Date: New York, New York
          _____, 2020

_____
VERNA L. SAUNDERS, J.S.C.

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------

E. JEAN CARROLL,

*Plaintiff,*

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant.*

-------------------------------------------------------------

Index No. 160694/2019

Hon. Verna L. Saunders

1 of 3

## [PROPOSED] ORDER AND STIPULATED BRIEFING SCHEDULE

WHEREAS, on December 12, 2019, the Court issued a Preliminary Conference Order setting various deadlines for discovery and disclosure in this action;

WHEREAS, Defendant has informed Plaintiff of his intention to move to stay this action pending the New York Court of Appeals' decision in *Zervos v. Trump*, APL-2020-00009 (N.Y.);

WHEREAS, the parties desire to set a briefing schedule in connection with Defendants' motion to stay;

WHEREAS, Plaintiff has agreed to temporarily adjourn all discovery and discovery-related deadlines in the Court's Preliminary Conference Order so as to permit expedited briefing and resolution of Defendant's anticipated motion to stay, and not to enforce any deadlines with respect to prior notices and requests issued to Defendant pursuant to CPLR §§ 3120–21, 3123, and 3130–32 during the pendency of that motion;

2 of 3

IT IS HEREBY STIPULATED AND AGREED,[1] by and between the undersigned counsel,

that the parties shall brief Defendant's motion to stay as follows:

1.      Defendant shall file moving papers by February 4, 2020;

2.      Plaintiff shall file opposition papers by February 7, 2020;

3.      Defendant shall file reply papers, if any, by February 11, 2020;

4.      The return date of the motion to stay shall be February 13, 2020; and

5.      The parties shall appear for oral argument on March 4, 2020, or such other future

date as the Court may establish;

6.      Given Defendant's stated intention to appeal any adverse ruling on its motion to

stay, and in light of the spring vacation schedule for New York City schools, the parties shall meet

and confer regarding the timing of such appeal prior to taking any action before the Appellate

Division, First Department.

IT IS FURTHER STIPULATED AND AGREED, by and between the undersigned

counsel, that all discovery is adjourned and the deadlines in paragraphs 1, 2, 5, and 6 of the

Preliminary Conference Order shall be extended by the amount of time from January 31 to the date

of the Court's decision on Defendant's motion to stay, plus five business days.

---

[1] Defendant enters into this Stipulation subject to and reserving all rights to his immunity, under the Supremacy Clause of the United States Constitution, Article VI, cl. 2, as a sitting United States President from being sued in a state court while serving as President.

2

FILED: NEW YORK COUNTY CLERK 02/04/2020 01:03 PM

NYSCEF DOC. NO. 39

INDEX NO. 160694/2019

RECEIVED NYSCEF: 02/04/2020

3 of 3

SO STIPULATED.

Dated: New York, New York
January 31, 2020

KAPLAN HECKER & FINK LLP

Roberta A. Kaplan
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

SO ORDERED.

Date: New York, New York
Feb 4, 2020

LAROCCA HORNIK ROSEN &
GREENBERG LLP

Lawrence S. Rosen
40 Wall Street, 32rd Floor
New York, New York 10005
Tel: (212) 530-4822
lrosen@lhrgb.com

*Counsel for Defendant Donald J. Trump*

HON. VERNA L. SAUNDERS, J.S.C.
HON. VERNA L. SAUNDERS
J.S.C.

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------ x

E. JEAN CARROLL,

                Plaintiff,

        - against-

DONALD J. TRUMP,

              Defendant.

------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Index No. 160694/2019

Hon. Verna L. Saunders

**NOTICE OF APPEARANCE**

        PLEASE TAKE NOTICE that Marc E. Kasowitz, who is admitted to practice before this

Court, hereby appears as counsel of record for defendant President Donald J. Trump in the above-

captioned action and requests that all further pleadings and papers in this action be served upon,

and correspondence directed to, him at the address provided below.

Dated:  February 4, 2020
        New York, New York

KASOWITZ BENSON TORRES LLP

By:   /s/*Marc E. Kasowitz*   
       Marc E. Kasowitz

1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
MKasowitz@kasowitz.com
Courtnotices@kasowitz.com

*Attorneys for Defendant*
*President Donald J. Trump*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------  x
                                         :
E. JEAN CARROLL,                         :   Index No. 160694/2019
                                         :
                 Plaintiff,              :   Hon. Verna L. Saunders
                                         :
          - against-                     :   **NOTICE OF APPEARANCE**
                                         :
DONALD J. TRUMP,                         :
                                         :
                 Defendant.              :
                                         :
---------------------------------------  x

      PLEASE TAKE NOTICE that Christine A. Montenegro, who is admitted to practice before

this Court, hereby appears as counsel of record for defendant President Donald J. Trump in the

above-captioned action and requests that all further pleadings and papers in this action be served

upon, and correspondence directed to, her at the address provided below.

Dated:  February 4, 2020          KASOWITZ BENSON TORRES LLP
        New York, New York
                                  By:   _/s/ *Christine A. Montenegro*_
                                        Christine A. Montenegro

                                  1633 Broadway
                                  New York, NY  10019
                                  Telephone: (212) 506-1700
                                  Fax: (212) 506-1800
                                  CMontenegro@kasowitz.com
                                  Courtnotices@kasowitz.com

                                  *Attorneys for Defendant*
                                  *President Donald J. Trump*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x
                                :
E. JEAN CARROLL,                      : Index No. 160694/2019
                                  :
              Plaintiff,          : Hon. Verna L. Saunders
                                  :
          - against-            : **NOTICE OF APPEARANCE**
                                  :
DONALD J. TRUMP,               :
                                  :
             Defendant.        :
                                  :
---------------------------------------- x

       PLEASE TAKE NOTICE that Paul J. Burgo, who is admitted to practice before this Court,

hereby appears as counsel of record for defendant President Donald J. Trump in the above-

captioned action and requests that all further pleadings and papers in this action be served upon,

and correspondence directed to, him at the address provided below.

Dated:   February 4, 2020              KASOWITZ BENSON TORRES LLP
          New York, New York

                                      By:    /s/*Paul J. Burgo*
                                           Paul J. Burgo

                                     1633 Broadway
                                     New York, NY  10019
                                     Telephone: (212) 506-1700
                                     Fax: (212) 506-1800
                                     PBurgo@kasowitz.com
                                     Courtnotices@kasowitz.com

                                     *Attorneys for Defendant*
                                     *President Donald J. Trump*

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 104 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x
: 
E. JEAN CARROLL,                                      : Index No. 160694/2019
:
                              Plaintiff,              : Hon. Verna L. Saunders
:
                        - against-                   : Mot. Seq. No. 002
:
DONALD J. TRUMP,                                     : **NOTICE OF MOTION**
:
                              Defendant.              :
:
---------------------------------------- x

**PLEASE TAKE NOTICE** that, upon the Affirmation of Marc. E. Kasowitz, dated

February 4, 2020, in support of this motion, the exhibits thereto, the accompanying

memorandum of law dated February 4, 2020, as well as any other papers, pleadings and

proceedings in this action, defendant President Donald J. Trump will move this Court at the

Motion Submissions Part Courtroom, Room 130, 60 Centre Street, New York, New York on

February 13, 2020, at 9:30 AM, or as soon thereafter as counsel can be heard, for an order

staying proceedings pursuant to CPLR § 2201, pending the decision of the Court of Appeals on

his appeal from *Zervos v. Trump*, 171 A.D.3d 110 (1st Dep't 2019), *lv and stay pending appeal

granted¸* 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7, 2020)).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the parties' stipulation of

January 31, 2020, so-Ordered by the Court on February 4, 2020, plaintiff shall file any

opposition papers no later than February 7, 2020.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the parties' stipulation of

January 31, 2020, so-Ordered by the Court on February 4, 2020, defendant shall file reply papers

no later than February 11, 2020.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to their stipulation of January 31, 2020, so-Ordered by the Court on February 4, 2020, the parties shall appear for oral argument on March 4, 2020, or as soon thereafter as counsel can be heard.

Dated:  February 4, 2020

KASOWITZ BENSON TORRES LLP

By: _____*/s/Marc E. Kasowitz*_____
    Marc E. Kasowitz
    Christine A. Montenegro
    Paul J. Burgo

1633 Broadway
New York, New York 10019
(212) 506-1700
MKasowitz@Kasowitz.com
CMontenegro@Kasowitz.com
PBurgo@Kasowitz.com

LAROCCA HORNIK ROSEN &
GREENBERG LLP
40 Wall Street, 32nd Floor
New York, New York 10005
(212) 530-4822

*Attorneys for Defendant,*
*President Donald J. Trump*

TO: Counsel of Record

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------- x

E. JEAN CARROLL,

                        Plaintiff,

              - against-

DONALD J. TRUMP,

                    Defendant.

------------------------------------- x

Index No. 160694/2019

Hon. Verna L. Saunders

Mot. Seq. No. 2

**AFFIRMATION OF**
**MARC E. KASOWITZ**

Marc E. Kasowitz, an attorney duly admitted to practice before the courts of the State of New York, hereby affirms the following under penalty of perjury:

1.      I am a member of the firm Kasowitz Benson Torres LLP, attorneys for defendant President Donald J. Trump in the above-referenced action.  I respectfully submit this affirmation in support of defendant's application for a stay of proceedings, pursuant to CPLR § 2201, pending the decision of the Court of Appeals on his appeal from *Zervos v. Trump*, 171 A.D.3d 110 (1st Dep't 2019), *lv and stay pending appeal granted¸* 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7, 2020)).

2.      Attached as **Exhibit A** are true and correct copies of (1) plaintiff's affirmation in support of her Request for Judicial Intervention, dated November 8, 2019, NYSCEF No. 3, and (2) the letter from plaintiff's counsel to Administrative Judge Kaplan and supporting affirmation, both dated December 3, 2019, NYSCEF Nos. 23-24.

3.      Attached as **Exhibit B** is a true and correct copy of the Preliminary Conference Order entered in this case on December 12, 2019, NYSCEF No. 27.

4.      Attached as **Exhibit C** is a true and correct copy of the letter dated January 21, 2020 from the Chief Clerk and Legal Counsel to the Court of Appeals to the parties in *Zervos v. Trump*.

5.      Attached as **Exhibit D** is a true and correct copy of the so-Ordered Stipulated Briefing Schedule, dated January 31, 2020, and so-Ordered February 4, 2020, NYSCEF No. 39.

6.      On January 6, 2020, plaintiff served a First Set of Document Requests, Notices to Admit and Interrogatories; on January 10, 2020, plaintiff served a Second Set of Document Requests; and, on January 30, 2020, plaintiff served a First Notice to Submit to Physical Examination.

7.      No prior application for a stay pending the decision of the Court of Appeals in *Zervos v. Trump* has been made in this action.

Dated: February 4, 2020
       New York, New York

_____*/s/ Marc E. Kasowitz*_____
MARC E. KASOWITZ

2

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

December 3, 2019

**VIA NYSCEF & OVERNIGHT MAIL**

Hon. Deborah A. Kaplan
Administrative Justice
New York Supreme Court, Civil Branch
60 Centre Street, Room 609
New York, NY 10007

   *Re:* *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Kaplan:

   I write on behalf of Plaintiff E. Jean Carroll in the above-referenced action to advise the Court that this action is substantially related to another case, *Zervos v. Trump*, Index No. 150522/2017 (Sup. Ct., N.Y. Cty.), which is currently pending before Justice Schechter. The reasons why the two cases are related are set forth in my declaration, attached as Exhibit A hereto.

   An earlier version of this affirmation was filed in connection with a Request for Judicial Intervention ("RJI") on November 8, 2019. We submitted that RJI without notice to Defendant Donald J. Trump because we had been unable to serve him with the summons and complaint, and because it was unclear whether our submission of an *ex parte* application for an order permitting alternative service would prompt assignment of a Justice. After the Court granted the *ex parte* application and Trump was served, Justice Ling-Cohan was assigned to this action.

   On November 21, we wrote to the Court seeking clarification as to whether the Court had processed our RJI and, in fact, determined that *Carroll* and *Zervos* were unrelated. On December 3, Donna M. Albano, Court Attorney to Justice Ling-Cohan, instructed that a submission identifying the two cases as related should be directed to Your Honor. *See* Doc. No. 22. We submit this letter and updated affirmation in accordance with the Ms. Albano's guidance.

KAPLAN HECKER & FINK LLP

2

Thank you for your attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record (via NYSCEF)

Beth Wilkinson, Moira Kim Penza, Jaclyn Delligatti, and
Meghan Cleary, *Counsel to Summer Zervos* (via email)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------- x
                                 :

E. JEAN CARROLL,                  :   Index No. 160694/2019
                                   :
                 Plaintiff,        :   Hon. Verna L. Saunders
                                   :
          - against-            :   Mot. Seq. No. 002
                                   :
DONALD J. TRUMP,            :
                                   :
              Defendant.      :
                                   :
-------------------------------------------- x

## MEMORANDUM OF LAW OF PRESIDENT DONALD J. TRUMP
## IN SUPPORT OF MOTION FOR A STAY OF PROCEEDINGS

KASOWITZ BENSON TORRES LLP

  Marc E. Kasowitz
  Christine A. Montenegro
  Paul J. Burgo
  1633 Broadway
  New York, New York 10019
  (212) 506-1700

LAROCCA HORNIK ROSEN &
GREENBERG LLP

  40 Wall Street, 32nd Floor
  New York, New York 10005
  (212) 530-4822

*Attorneys for Defendant,*
*President Donald J. Trump*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

PRIOR PROCEEDINGS ........................................................................... 4

ARGUMENT .............................................................................................. 6

    A.    If the Court of Appeals Reverses *Zervos v. Trump*, This Action Must be Dismissed or Stayed.................................................................... 7

    B.    Official Immunity Claims Must be Decided at the Outset of the Case. ................. 8

    C.    The Courts are Constitutionally Required to Give Deference to the President........................................................................................... 8

    D.    The Requested Stay is Warranted Under CPLR § 2201....................................... 11

CONCLUSION ........................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assenzio v A.O. Smith Water Prods.*,
No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) ............................11

*Behrens v. Pelletier*,
516 U.S. 299 (1996) .........................................................................................................8

*Belabarodaya v. Carepro of NY, Inc.*,
No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) ......................4, 11

*Belopolsky v. Renew Data Corp.*,
41 A.D.3d 322 (1st Dep't 2007) ...................................................................................12

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004).......................................................................................................2, 9

*Clinton v. Jones*,
520 U.S. 681 (1997).............................................................................................. *passim*

*Felder v. Casey*,
487 U.S. 131 (1988).......................................................................................................11

*Galicia v. Trump*,
No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019) ........................................................4, 10

*Haywood v. Drown*,
556 U.S. 729 (2009).......................................................................................................10

*Hegarty v. Somerset Cnty.*,
25 F.3d 17 (1st Cir. 1994)..............................................................................................8

*Hunter v. Bryant*,
502 U.S. 224 (1991).......................................................................................................8

*Jones v. Clinton*,
No. 95-1167, BL-62 (8th Cir. Apr. 16, 1996)..................................................................3, 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936).......................................................................................................13

*Lerner v. Karageorgis Lines, Inc.*,
66 N.Y.2d 479 (1985).....................................................................................................11

ii

*Liu v. New York City Police Dep't,*
216 A.D.2d 67 (1st Dep't 1995) .........................................................8

*Nixon v. Fitzgerald,*
457 U.S. 731 (1982)...............................................................2, 9, 13

*Nixon v. Sirica,*
487 F.2d 700 (D.C. Cir. 1973) ........................................................3, 10

*OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.,*
96 A.D.3d 541 (1st Dep't 2014) ......................................................4, 11

*In re Reynders v. Conway,*
79 A.D.2d 863 (4th Dep't 1980) ........................................................11

*Trump v. Deutsche Bank AG,*
--- S.Ct. ----, 2019 WL 6797733 (U.S. Dec. 13, 2019).......................3, 9

*Trump v. Mazars USA, LLP,*
--- S.Ct. ----, 2019 WL 6328115 (U.S. Nov. 25, 2019), ......................2, 9

*Trump v. Mazars USA, LLP,*
940 F.3d 710 (D.C. Cir. 2019) .........................................................10

*Trump v. Vance,*
941 F.3d 631 (2d Cir. 2019)...............................................................6

*Trump v. Vance,*
No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019).................3, 9, 10

*In re Trump,*
781 F. App'x 1 (D.C. Cir. 2019)......................................................3, 9

*In re Trump,*
928 F.3d 360 (4th Cir. 2019) .......................................................3, 10

*United States v. Burr,*
25 F.Cas. 187 (C.C. Va. 1807)........................................................2, 9

*United States v. Nixon,*
418 U.S. 683 (1974).............................................................2, 3, 9, 12

*Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP,*
116 A.D.3d 631 (1st Dep't 2014) ...................................................12, 13

*Zervos v. Trump,*
171 A.D.3d 110 (1st Dep't 2019) ........................................... *passim*

iii

*Zervos v. Trump*,
  2020 WL 63397, 2020 N.Y. Slip Op. 60193(U)...........................................................1, 5, 6, 7

**Statutes and Other Authorities**

U.S. Const. art VI, cl. 2.......................................................................................................... *passim*

CPLR § 2201...................................................................................................................1, 4, 11

Patrick M. Connors, Practice Commentaries, McKinney's Cons. Laws of NY
  Annotated, CPLR C2201:11 ....................................................................................................11

iv

Defendant President Donald J. Trump respectfully submits this memorandum of law in support of his motion for a stay of proceedings, pursuant to CPLR § 2201, pending the decision of the Court of Appeals on his appeal from *Zervos v. Trump*, 171 A.D.3d 110 (1st Dep't 2019), *lv and stay pending appeal granted¸* 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7, 2020)).[1]

## PRELIMINARY STATEMENT

This defamation action against the President of the United States may not proceed if the Supremacy Clause of the U.S. Constitution bars state-court subject matter jurisdiction over actions against a U.S. President while he or she is in office. That precise issue, which the U.S. Supreme Court has called an "important constitutional issue," *Clinton v. Jones*, 520 U.S. 681, 690-91 (1997), is now squarely before the Court of Appeals on the President's pending appeal from the First Department's 3-2 decision in *Zervos v. Trump*.

In *Zervos*, the First Department, in granting President Trump leave to appeal, also granted the President's motion to stay the proceedings "pending hearing and determination of the appeal by the Court of Appeals." *Zervos v. Trump*, 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U). If President Trump is successful on that appeal, this Court would be without jurisdiction to hear this action while President Trump is in office, and that threshold issue should be decided by the Court of Appeals before this action proceeds. Like *Zervos*, this action should be stayed pending that decision.

The requested stay here is mandated not only because it would permit resolution of the President's claim that he is immune from suit in state court while in office, but also because of

---

[1]  Submitted herewith in support of the motion is the affirmation of Marc E. Kasowitz, dated February 4, 2020 ("Kasowitz Aff."). References to "Ex." are to exhibits to the Kasowitz Aff.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 116 of 201

the unique role of the President under Article II of the Constitution. *See Clinton v. Jones*, 520 U.S. at 697-98 (Supreme Court had "no dispute" with the fundamental premise that the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties"). Accordingly, courts are required under the U.S. Constitution to give deference to the President. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 391-92 (2004) ("Special considerations applicable to the President . . . suggest that the courts should be sensitive to requests by the Government for interlocutory appeals . . . ."); *Clinton v. Jones*, 520 U.S. at 707 ("The high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery."); *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982) ("Courts traditionally have recognized the President's constitutional responsibilities and status as factors counseling judicial deference and restraint."); *United States v. Nixon*, 418 U.S. 683, 715 (1974) (Courts must extend the President "that high degree of respect due the President of the United States."); *United States v. Burr*, 25 F.Cas. 187, 192 (No. 14,694) (C.C. Va. 1807) (John Marshall, C.J., sitting by designation) (Courts may not "proceed against the President as against an ordinary individual.").

Given this constitutionally required deference, courts routinely grant requests by the President for stays pending appeal or for interlocutory appeals on constitutional issues. *See, e.g.*, *Trump v. Mazars USA, LLP*, --- S.Ct. ----, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545) (granting President Trump's application for a stay, pending disposition of his petition for writ of certiorari and, if granted, judgment of the Court, on the constitutionality, under the Separation of Powers doctrine, of a Congressional subpoena to President's accountant seeking pre-presidential, private documents), *cert. granted*, --- S.Ct. ----, 2019 WL 6797734 (Mem) (U.S.

2

Dec. 13, 2019) (No. 19-715); *Trump v. Deutsche Bank AG*, --- S.Ct. ----, 2019 WL 6797733

(Mem) (U.S. Dec. 13, 2019) (No. 19A640) (same); *United States v. Nixon*, 418 U.S. at 714

("[e]nforcement of the subpoena duces tecum [directed to President Nixon] was stayed pending

this Court's resolution of the issues," including whether, under the Separation of Powers

doctrine, a federal district court may issue a subpoena to the President in a criminal action);

*Trump v. Vance*, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019) (granting stay of

enforcement of state grand jury subpoena seeking the President's documents from his

accountant, given "the unique issues raised by the appeal," including whether, under the

Supremacy Clause, a state grand jury may issue a subpoena seeking the President's records); *In

re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019) (district court abused its discretion in denying the

President's request for an immediate interlocutory appeal from denial of his motion to dismiss

claim that he violated the Foreign Emoluments Clause of the U.S. Constitution, because the

issues raised were "unsettled" and potentially "dispositive"); *In re Trump*, 928 F.3d 360, 364

(4th Cir. 2019) (granting President permission to file interlocutory appeal and staying district

court proceedings pending that appeal from district court's orders, which denied the President's

motion to dismiss and permitted discovery on claims he violated the Emoluments Clauses), *reh'g

granted*, 780 Fed. Appx. 36 (Mem); *Jones v. Clinton*, No. 95-1167, BL-62 (8th Cir. Apr. 16,

1996) (granting President Clinton's motion to stay pending President Clinton's appeal to the U.S.

Supreme Court on whether the Separation of Powers doctrine bars federal court jurisdiction over

actions against the President arising from his unofficial conduct); *Nixon v. Sirica*, 487 F.2d 700,

721 (D.C. Cir. 1973) (directing district court to stay the action to allow the President to appeal

the district court's determinations compelling disclosure of materials subject to the President's

claim of Article II privilege); *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24,

2019) (granting the President a stay pending appeal on whether the state trial court could,

consistent with Article II of the U.S. Constitution, require the President to appear for deposition).

The requested stay here under these circumstances is thus authorized and mandated.

Under CPLR § 2201, which authorizes courts to "grant a stay of proceedings in a proper case,

upon such terms as may be just," New York courts grant stays pending appeals in other actions

where those appeals would, as here, resolve a dispositive issue. *See, e.g.*, *OneBeacon Am. Ins.

Co. v. Colgate-Palmolive Co.*, 96 A.D.3d 541, 541 (1st Dep't 2014) (affirming grant of stay

under CPLR § 2201, and holding that "[t]he duplication of effort, waste of judicial resources, and

possibility of inconsistent rulings in the absence of a stay [pending appeal in a related action in

another state] outweigh any prejudice to plaintiff"); *Belabarodaya v. Carepro of NY, Inc.*, No.

152534/2018, 2018 WL 3733304, at *2 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) (granting stay

pending appeals to the Court of Appeals in two separate actions addressing a dispositive issue).

Moreover, not only is a stay constitutionally required, but a stay would also avoid "duplication of

effort, waste of judicial resources, and [the] possibility of inconsistent rulings." *OneBeacon*,

*supra*. Accordingly, the stay should be granted.

## **PRIOR PROCEEDINGS**

Like this action, *Zervos* is an alleged defamation action against President Trump in

Supreme Court, New York County. In *Zervos*, the President moved to dismiss on the ground,

among others, that the Supremacy Clause of the U.S. Constitution, art. VI, cl. 2, bars state courts

from exercising jurisdiction over the President while he or she is in office. On March 20, 2018,

Justice Schecter denied the President's motion, *Zervos*, 59 Misc.3d 790 (Sup. Ct., N.Y. Cnty.

2018), and on March 14, 2019, the First Department affirmed in a 3-2 decision, *Zervos*, 171

A.D.3d at 120.

4

Several days after filing this action in November 2019, plaintiff sought to have it reassigned to Justice Schecter on the grounds that this action and *Zervos* "present similar, and often novel, legal issues," including "the same argument[s] that Trump made, and Justice Schecter considered, in *Zervos*," and that "[a]ssigning two different Justices to these cases would both amplify the Court's workload unnecessarily and risk conflicting rulings." (Kasowitz Aff., Ex. A (NYSCEF Nos. 3 at ¶¶ 6, 8, 24 at ¶¶ 9, 10, 12).)[2]

On December 12, 2019, this Court entered a Preliminary Conference Order ordering that document requests be served by February 6, 2020, with responses due March 6, that party depositions be completed by April 6, 2020, and that "[t]he filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery." (Kasowitz Aff., Ex. B (NYSCEF No. 27).)

Plaintiff has served the President with numerous and burdensome discovery requests, including notices to admit, interrogatories, two sets of document requests, and a notice for physical examination. (Kasowitz Aff. ¶ 6.)

On January 3, 2020, defendant filed a proposed order to show cause and accompanying motion to dismiss the complaint for lack of jurisdiction and to stay discovery pending the Court's decision on the motion to dismiss. (NYSCEF Nos. 28-33.) On January 6, 2020, this Court declined to sign the order to show cause. (NYSCEF No. 36.)

The next day, on January 7, 2020, the First Department in *Zervos* granted President Trump leave to appeal to the Court of Appeals. *Zervos*, 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U). The First Department also granted President Trump's motion to "stay . . .

---

[2] Plaintiff's request to reassign the action was denied by letter, dated December 9, 2019, from Hon. Deborah A. Kaplan, Administrative Judge for Civil Matters, Supreme Court of the State of New York.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 120 of 201

proceedings pending hearing and determination of the appeal by the Court of Appeals." *Id.* On

January 17, 2020, in *Zervos*, President Trump filed in the Court of Appeals his preliminary

appeal statement. On January 21, 2020, the Court of Appeals issued a briefing schedule under

which the appeal will be fully briefed by May 11, 2020. (Kasowitz Aff., Ex. C.)

On February 4, 2020, the Court so-Ordered the parties' stipulation adjourning all

discovery deadlines by the amount of time from January 31 to the date of the Court's decision on

this motion, plus five business days. (Kasowitz Aff., Ex. D at 2.)

## ARGUMENT

Whether the U.S. Constitution bars state-court subject matter jurisdiction over actions

against a U.S. President while he or she is in office is now squarely before the Court of Appeals

on the President's appeal from the First Department's 3-2 decision in *Zervos v. Trump*, 171

A.D.3d 110. A stay of this action is thus mandated until the Court of Appeals decides that issue,

which the U.S. Supreme Court in *Clinton v. Jones*, 520 U.S. at 690-91, called an "important

constitutional issue[]."

In *Clinton v. Jones*, the Supreme Court held that the Separation of Powers doctrine does

not bar federal court jurisdiction over an action against the President arising from alleged private

conduct, on the ground that the federal Judicial Branch is a coequal branch with the Executive

Branch of the federal government. The Supreme Court took pains, however, to note that it was

"not necessary to consider or decide whether a comparable claim might succeed in a state

tribunal" under the Supremacy Clause, which might "present a more compelling case for

immunity." *Id.* at 691. *See also Trump v. Vance*, 941 F.3d 631, 642-43 (2d Cir. 2019)

(acknowledging, without deciding, that "the President may be correct that state courts lack the

authority to issue him orders"), *cert. granted*, --- S.Ct. ----, 2019 WL 6797730 (Mem) (U.S. Dec.

13, 2019) (No. 19-635); *Zervos v. Trump*, 171 A.D.3d at 113 (whether state courts can hear

actions against a sitting president is a "constitutional issue of first impression").

> **A.    If the Court of Appeals Reverses *Zervos v. Trump*,
> This Action Must be Dismissed or Stayed.**

In *Zervos v. Trump*, 171 A.D.3d at 113, the First Department, acknowledging that it was

deciding a "constitutional issue of first impression," held, citing *Clinton v. Jones*, that the

"Supremacy Clause does not deprive a state court of its power and authority to decide [the]

case," *id.* at 128.  Two justices in dissent, however, correctly noted that the holding in *Clinton v.*

*Jones*, on its face, does not extend to state courts and concluded that the Supremacy Clause bars

state-court jurisdiction over a sitting President because "subjecting the President to a state trial

court's jurisdiction imposes upon him a degree of control by the State of New York that

interferes with his ability to carry out his constitutional duty of executing the laws of the United

States."  *Id.* at 131.  The First Department granted the President leave to appeal its 3-2 decision

to the Court of Appeals and granted the President's motion to stay proceedings "pending hearing

and determination of the appeal by the Court of Appeals."  *Zervos v. Trump*, 2020 WL 63397,

2020 N.Y. Slip Op. 60193(U).

This action should be stayed as well.  The issue on appeal in *Zervos* is squarely present in

this action, and if resolved by the Court of Appeals in favor of the President, this Court would be

without jurisdiction to hear this action, which must be dismissed or stayed while President

Trump is in office.  Accordingly, this threshold issue -- whether the President is immune from

suit in state court while in office -- should be decided by the Court of Appeals before this action

proceeds.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 122 of 201

**B.    Official Immunity Claims Must be Decided at the Outset of the Case.**

To avoid negating a claim of official immunity -- here, the President's constitutional right to immunity from suit in state court while in office -- the courts have repeatedly made clear that courts should decide such claims at the beginning of the case, before discovery. *See, e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (Immunity "is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery …, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'") (emphasis in original) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."); *Hegarty v. Somerset Cnty.*, 25 F.3d 17, 18 (1st Cir. 1994) ("[I]mmunity from suit includes protection from the burdens of discovery . . . [and] the stay of discovery, of necessity, ordinarily must carry over through the *appellate court's* resolution of [the immunity question], so long as the appeal is non-frivolous.") (emphasis in original); *Liu v. New York City Police Dep't*, 216 A.D.2d 67, 69 (1st Dep't 1995) (assertion of immunity is "an issue of law which the court should decide at the earliest possible stage of the litigation").

**C.    The Courts are Constitutionally Required to Give Deference to the President.**

*A fortiori*, when the official asserting immunity is the President, the immunity issue must be decided first.  A stay would permit resolution of the President's claim that he is immune from suit in state court while in office, and is also mandated because of the unique role of the President under Article II of the Constitution.  *See Clinton v. Jones*, 520 U.S. at 697-98 (Court had "no dispute" with the premise that the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties").  Accordingly, courts are required to give

8

deference to the President of the United States under the U.S. Constitution. *See Cheney*, 542 U.S. at 391-92 ("Special considerations applicable to the President . . . suggest that the courts should be sensitive to requests by the Government for interlocutory appeals . . . ."); *Clinton v. Jones*, 520 U.S. at 707 ("The high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery."); *Nixon v. Fitzgerald*, 457 U.S. at 753 ("Courts traditionally have recognized the President's constitutional responsibilities and status as factors counseling judicial deference and restraint."); *United States v. Nixon*, 418 U.S. at 715 (1974) (Courts must extend the President "that high degree of respect due the President of the United States."); *United States v. Burr*, 25 F.Cas. at 192 (Courts may not "proceed against the President as against an ordinary individual.").

Given this constitutionally required deference, courts thus routinely grant a President's request for a stay pending appeal or interlocutory appeal on constitutional issues like the one presented here. *See Trump v. Mazars USA*, *supra* (granting President Trump's motion to stay, pending disposition of his petition for writ of certiorari, and, if granted, judgment of the Court, on the constitutionality, under the Separation of Powers doctrine, of a Congressional subpoena to President's accountant seeking pre-presidential, private documents); *Trump v. Deutsche Bank*, *supra* (same); *United States v. Nixon*, 418 U.S. at 714 ("[e]nforcement of the subpoena duces tecum [directed to President Nixon] was stayed pending this Court's resolution of the issues," including whether, under the Separation of Powers doctrine, a federal district court may issue a subpoena to the President in a criminal action); *Trump v. Vance*, *supra* at *1 (granting stay of enforcement of state grand jury subpoena seeking the President's documents from his accountant, given "the unique issues raised by this appeal," including whether, under the Supremacy Clause, a state grand jury may issue a subpoena seeking the President's records); *In*

9

*re Trump*, 781 F. App'x at 2 (district court abused its discretion in denying the President's request for an immediate interlocutory appeal from denial of his motion to dismiss claim that he violated the Foreign Emoluments Clause of the U.S. Constitution, because the issues raised were "unsettled" and potentially "dispositive"); *In re Trump*, 928 F.3d at 364 (granting President permission to file interlocutory appeal and staying district court proceedings pending that appeal from district court's orders, which denied the President's motion to dismiss and permitted discovery on claims he violated the Emoluments Clauses); *Jones v. Clinton*, *supra* (granting President Clinton's motion to stay pending President Clinton's appeal to the U.S. Supreme Court on whether the Separation of Powers doctrine bars federal court jurisdiction over actions against the President arising from his unofficial conduct); *Nixon v. Sirica*, 487 F.2d at 721 (directing district court to stay the action to allow the President to appeal the district court's determinations compelling disclosure of materials subject to the President's claim of Article II privilege); *Galicia v. Trump*, *supra* (granting the President a stay pending appeal on whether the trial court could, consistent with Article II of the U.S. Constitution, require the President to appear for deposition).[3]

Moreover, under the Supremacy Clause, a substantive federal right -- including the President's right to judicial deference -- takes precedence over any state procedures that would nullify that right. *See Haywood v. Drown*, 556 U.S. 729, 736, 740-41 (2009) ("[A]lthough States retain substantial leeway to establish the contours of their judicial systems, they lack authority to

---

[3] The principle that the President is entitled to a stay pending appeal is so well recognized that, in *Trump v. Vance*, *supra*, after the Second Circuit granted an initial, administrative stay, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019), the parties -- including the New York County District Attorney, the Department of Justice, and the President -- all acknowledged that a stay pending President Trump's appeal was necessary. *See* Appellee's Letter, *Trump v. Vance*, No. 19-3204 (2d Cir. Oct. 21, 2019), ECF No. 136 (memorializing parties' agreement to a stay pending appeal and petition for *certiorari*). *See also Trump v. Mazars USA, LLP*, 940 F.3d 710, 718 (D.C. Cir. 2019) ("By agreement of the parties, Mazars need not comply with the subpoena during the pendency of this expedited appeal."), *cert. granted*, --- S.Ct. ----, 2019 WL 6797734 (Mem) (U.S. Dec. 13, 2019) (No. 19-715).

10

nullify a federal right. . . . A State's authority to organize its courts, while considerable, remains subject to the strictures of the Constitution."); *Felder v. Casey*, 487 U.S. 131, 151 (1988) ("Just as federal courts are constitutionally obligated to apply state law to state claims, *see* [*Erie R. Co. v. Tumpkins*, 304 U.S. 64 (1983)], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.'") (citation omitted); *Lerner v. Karageorgis Lines, Inc.*, 66 N.Y.2d 479, 485 (1985) ("[A] state court may not limit a party's [federal] substantive rights by applying its own procedural rules . . . .").

### D. The Requested Stay is Warranted Under CPLR § 2201.

The requested stay is thus unquestionably warranted under CPLR § 2201, which authorizes this Court to "grant a stay of proceedings in a proper case, upon such terms as may be just." Under CPLR § 2201, courts stay proceedings where, as here, "the point of law involved in the case, and potentially dispositive of it, is about to be definitively decided in another case presently on appeal before a court whose decisions bind the trial court." Patrick M. Connors, Practice Commentaries, McKinney's Cons. Laws of NY Annotated, CPLR C2201:11 (citation omitted). *See also In re Reynders v. Conway*, 79 A.D.2d 863, 864 (4th Dep't 1980) ("[T]he court had the power to stay petitioners['] . . . action until the . . . appeal was argued in the Court of Appeals."); *Belabarodaya*, *supra* at *2 (granting stay pending two appeals to the Court of Appeals in other cases on a dispositive issue); *Assenzio v A.O. Smith Water Prods.*, No. 190008/12, 2015 WL 5283301, at *1-2 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) (granting stay pending appeal in a separate case that would have a "significant impact" on the action.)

A stay would also avoid "the duplication of effort, waste of judicial resources, and possibility of inconsistent rulings in the absence of a stay [which] outweigh any prejudice to plaintiff." *OneBeacon Am. Ins. Co.*, *supra* at 541, 541 (affirming grant of stay under CPLR

11

§ 2201, and holding that "[t]he duplication of effort, waste of judicial resources, and possibility of inconsistent rulings in the absence of a stay [pending appeal in a related action in another state] outweigh any prejudice to plaintiff"); *see also Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP*, 116 A.D.3d 631, 631 (1st Dep't 2014) (affirming granting of a stay pending ruling in a separate case in federal court which presented "common question of law and fact"); *Belopolsky v. Renew Data Corp.*, 41 A.D.3d 322, 322 (1st Dep't 2007) (affirming stay pending resolution of related case between different parties where the resolution "may dispose of or limit issues which are involved in the subsequent action").[4]

The balance of the equities also favors granting a stay. Absent a stay, the President would be deprived of his constitutional right to immunity from this action while in office, including his immunity to the extensive and burdensome discovery requests plaintiff has served under the Court's scheduling order. (*See* Kasowitz Aff. ¶ 6.) In this regard, the U.S. Supreme Court has made clear that courts may not, consistent with the Constitution, require a President to "place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling . . . ." *United States v. Nixon*, 418 U.S. at 692. The only appropriate procedure, therefore, is to stay this action, including all discovery and scheduling orders, to enable the Court of Appeals to review and decide whether the President, under the Supremacy Clause, is subject to such discovery and orders in the first place.

Moreover, if this action proceeds, the burden would extend to the public interest. The unnecessary distraction of the "President from his public duties [works] to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve."

---

[4] Plaintiff herself argued that this action should be designated as a related case to *Zervos* and reassigned to Justice Schecter based on overlapping and novel legal issues and judicial economy. (*See supra* at 5.)

*Nixon v. Fitzgerald*, 457 U.S. at 753.  In such a circumstance, a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936); *see also Uptown Healthcare Mgmt.*, 116 A.D.3d at 631 ("[T]he duplication of effort, waste of judicial resources, and possibility of inconsistent rulings in the absence of a stay outweigh any prejudice to plaintiff resulting from the stay.") (citation omitted).

## <u>CONCLUSION</u>

A stay of all proceedings pending the decision of the Court of Appeals in *Zervos v. Trump* should be granted.

13

Dated: New York, New York.
      February 4, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP


By:   */s/ Marc E. Kasowitz*
      Marc E. Kasowitz
      Christine A. Montenegro
      Paul J. Burgo

      1633 Broadway
      New York, New York 10019
      T:  (212) 506-1700
      E:  mkasowitz@kasowitz.com
         cmontenegro@kasowitz.com
         pburgo@kasowitz.com

LAROCCA HORNIK ROSEN &
      GREENBERG LLP
      Lawrence S. Rosen
      Patrick McPartland
      Jared E. Blumetti

      40 Wall Street 32nd Floor
      New York, New York 10005
      T: (212) 530-4822, 4837, 4831
      E: lrosen@lhrgb.com
         pmcpartland@lhrgb.com
         jblumetti@lhrgb.com


*Attorneys for Defendant Donald J. Trump*

14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

Plaintiff,

-against-

DONALD J. TRUMP, in his personal capacity,

Defendant.

Index No. 160694/2019

Hon. Verna L. Saunders

## [PROPOSED] ORDER AND STIPULATED BRIEFING SCHEDULE

WHEREAS, on February 3, 2020, Defendant filed a Proposed Order and Stipulated Briefing Schedule wherein the parties agreed to a briefing schedule for a motion to stay that Defendant expected to bring;

WHEREAS, on February 4, 2020, the Court so-ordered that Proposed Order and Stipulated Briefing Schedule;

WHEREAS, on February 4, 2020, Defendant filed his motion to stay the present case pending the New York Court of Appeals' decision in *Zervos v. Trump*, APL-2020-00009 (N.Y.);

WHEREAS, the parties desire to modify their briefing schedule in connection with Defendant's motion to stay, but leave all other aspect of the prior Proposed Order and Stipulated Briefing Schedule in effect;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that the parties shall brief Defendant's motion to stay as follows:

1.  Plaintiff shall file opposition papers by February 18, 2020;

2.  Defendant shall file reply papers, if any, by February 27, 2020;

4.  The return date of the motion to stay shall be February 28, 2020; and

5.      The parties shall appear for oral argument on March 4, 2020, or such other future date as the Court may establish.


SO STIPULATED.

Dated: New York, New York
February 6, 2020

KAPLAN HECKER & FINK LLP

_____
Roberta A. Kaplan
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*


LAROCCA HORNIK ROSEN &
GREENBERG LLP

_____
Lawrence S. Rosen
Patrick McPartland
40 Wall Street, 32rd Floor
New York, New York 10005
Tel: (212) 530-4822, 4837
lroscn(ZiHhrgb.com
pmcpartland|a)lhrgb.com

*Counsel for Defendant Donald J Trump*


SO ORDERED.

Date: New York, New York
     February_,2020

_____
VERNAL. SAUNDERS, J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

*Plaintiff,*

  -against-

DONALD J. TRUMP, in his personal capacity,

*Defendant.*

---

Index No. 160694/2019

Hon. Verna L. Saunders

## [PROPOSED] ORDER AND STIPULATED BRIEFING SCHEDULE

WHEREAS, on February 3, 2020, Defendant filed a Proposed Order and Stipulated Briefing Schedule wherein the parties agreed to a briefing schedule for a motion to stay that Defendant expected to bring;

WHEREAS, on February 4, 2020, the Court so-ordered that Proposed Order and Stipulated Briefing Schedule;

WHEREAS, on February 4, 2020, Defendant filed his motion to stay the present case pending the New York Court of Appeals' decision in *Zervos v. Trump*, APL-2020-00009 (N.Y.);

WHEREAS, the parties desire to modify their briefing schedule in connection with Defendant's motion to stay, but leave all other aspect of the prior Proposed Order and Stipulated Briefing Schedule in effect;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that the parties shall brief Defendant's motion to stay as follows:

1.     Plaintiff shall file opposition papers by February 18, 2020;

2.     Defendant shall file reply papers, if any, by February 27, 2020;

4.     The return date of the motion to stay shall be February 28, 2020; and

5.     The parties shall appear for oral argument on March 4, 2020, or such other future

date as the Court may establish.

SO STIPULATED.

Dated: New York, New York
February 6, 2020

KAPLAN HECKER & FINK LLP

_____
Roberta A. Kaplan
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

LAROCCA HORNIK ROSEN &
GREENBERG LLP

_____
Lawrence S. Rosen
Patrick McPartland
40 Wall Street, 32rd Floor
New York, New York 10005
Tel: (212) 530-4822, 4837
lroscn(ZiHhrgb.com
pmcpartland¹a)lhrgb.com

*Counsel for Defendant Donald J. Trump*

SO ORDERED.

Date: New York, New York
       February 7 2020

_____
VERNAL SAUNDERS, J.S.C.

HON. VERNA L. SAUNDERS
                    J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

$\qquad$ *Plaintiff,*

-against-

DONALD J. TRUMP, in his personal capacity,

$\qquad$ *Defendant.*

---

Index No. 160694/2019

Hon. Verna L. Saunders

## [PROPOSED] ORDER AND STIPULATED BRIEFING SCHEDULE

WHEREAS, on February 3, 2020, Defendant filed a Proposed Order and Stipulated Briefing Schedule wherein the parties agreed to a briefing schedule for a motion to stay that Defendant expected to bring;

WHEREAS, on February 4, 2020, the Court so-ordered that Proposed Order and Stipulated Briefing Schedule;

WHEREAS, on February 4, 2020, Defendant filed his motion to stay the present case pending the New York Court of Appeals' decision in *Zervos v. Trump*, APL-2020-00009 (N.Y.);

WHEREAS, the parties desire to modify their briefing schedule in connection with Defendant's motion to stay, but leave all other aspect of the prior Proposed Order and Stipulated Briefing Schedule in effect;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that the parties shall brief Defendant's motion to stay as follows:

1.    Plaintiff shall file opposition papers by February 18, 2020;

2.    Defendant shall file reply papers, if any, by February 27, 2020;

4.    The return date of the motion to stay shall be February 28, 2020; and

5.    The parties shall appear for oral argument on March 4, 2020, or such other future date as the Court may establish.

SO STIPULATED.

Dated: New York, New York
February 6, 2020

KAPLAN HECKER & FINK LLP

*[signature]*

_____
Roberta A. Kaplan
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*


SO ORDERED.

Date: New York, New York
February 7, 2020

LAROCCA HORNIK ROSEN &
GREENBERG LLP

*[signature]*

_____
Lawrence S. Rosen
Patrick McPartland
40 Wall Street, 32rd Floor
New York, New York 10005
Tel: (212) 530-4822, 4837
lroscn@ZiHhrgb.com
pmcpartland a)lhrgb.com

*Counsel for Defendant Donald J. Trump*


*[signature]*
_____
VERNAL SAUNDERS, J.S.C.

HON. VERNA L. SAUNDERS
J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------

E. JEAN CARROLL,

      *Plaintiff,*

 -against-

DONALD J. TRUMP, in his personal capacity,

      *Defendant.*

--------------------------------------------------------

Index No. 160694/2019

**NOTICE OF APPEARANCE**

TO THE CLERK OF COURT:

 PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

 All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.

Dated: New York, NY
  February 18, 2020

      /s/ Louis W. Fisher

      Louis W. Fisher
      KAPLAN HECKER & FINK LLP
      350 Fifth Avenue, Suite 7110
      New York, New York 10118
      Telephone: (212) 763-0883
      Facsimile: (212) 564-0883
      lfisher@kaplanhecker.com

      *Counsel for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

E. JEAN CARROLL,

                       *Plaintiff*,

 -against-

DONALD J. TRUMP, in his personal capacity,

                       *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 160694/2019

Hon. Verna L. Saunders

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS

Roberta A. Kaplan
Matthew J. Craig
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com
lfisher@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND .......................................................................................... 2

    A. Trump's Initial Delay Tactics in This Case ........................................... 2

    B. Trump's Personal Jurisdiction Motion and First Request to Stay Discovery ......... 3

    C. Trump's Motion to Stay the Case Entirely............................................. 5

ARGUMENT ............................................................................................... 6

    I.   A STAY IS IMPROPER BECAUSE THERE IS A BINDING APPELLATE DECISION, WITH NO IMMINENT CHANGE IN LAW ........................................ 7

    II.  UNIQUE CIRCUMSTANCES OF THIS LITIGATION MAKE A STAY PARTICULARLY INAPPROPRIATE ..................................................... 11

    A. The Requested Stay Is Yet Another Effort at Delay ............................... 11

    B. Carroll Would Suffer Significant Prejudice If This Case Were Stayed ................. 14

    III.  TRUMP'S STATUS AS PRESIDENT DOES NOT ENTITLE HIM TO A STAY  15

    A. The Constitution Does Not Require a Stay Based Simply on Trump's Say-So .... 15

    B. The Presidency and the Public Would Not Suffer Absent a Stay ......................... 17

CONCLUSION............................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Assenzio v. A.O. Smith Water Prods.*,
　No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cty. Aug. 28, 2015) ............................... 10

*Belabarodaya v. Carepro of NY, Inc.*,
　No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cty. Aug. 1, 2018) ............................ 11

*Belopolsky v. Renew Data Corp.*,
　41 A.D.3d 322 (1st Dep't 2007) ............................................................................................. 10

*Celle v. Filipino Reporter Enters. Inc.*,
　209 F.3d 163 (2d Cir. 2000) ................................................................................................... 14

*Clinton v. Jones*,
　520 U.S. 681 (1997) ......................................................................................................... *passim*

*Festinger v. Edrich*,
　32 A.D.3d 412 (2d Dep't 2006) ............................................................................................. 13

*Golub v. Enquirer/Star Grp., Inc.*,
　89 N.Y.2d 1074 (1997) ................................................................................................... 14, 15

*Grisi v. Shainswit*,
　119 A.D.2d 418 (1st Dep't 1986) .......................................................................................... 16

*Hala v. Orange Reg'l Med. Ctr.*,
　60 Misc. 3d 274 (Sup. Ct., Orange Cty. 2018) ......................................................................... 7

*In re Trump*,
　781 F. App'x 1 (D.C. Cir. 2019) ............................................................................................ 16

*In re Trump*,
　928 F.3d 360 (4th Cir. 2019) ...................................................................................... 16, 17, 20

*In re Weinbaum's Estate*,
　51 Misc. 2d 538 (Surr. Ct., Nassau Cty. 1966) ..................................................................... 7, 8

*Kimmerle v. New York Evening Journal*,
　262 N.Y. 99 (1933) ................................................................................................................ 14

*Landmark Ins. Co. v. Virginia Sur. Co.*,
　16 Misc. 3d 1140(A), 2007 WL 2727773 (Sup. Ct., N.Y. Cty. 2007) ................................. 7, 11

ii

*Level 3 Commc'ns, LLC v. Essex Cty.*,
   54 Misc. 3d 291 (Sup. Ct., N.Y. Cty. 2016) ............................................................ 8

*Miller v. Miller*,
   109 Misc. 2d 982 (Sup. Ct., N.Y. Cty. 1981) .................................................. 8, 9, 10

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ............................................................................................. 17

*Nixon v. Sirica*,
   487 F.2d 700 (D.C. Cir. 1973) ............................................................................ 16

*OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*,
   96 A.D.3d 541 (1st Dep't 2012) ......................................................................... 10

*People ex rel. Schneiderman v. Coll. Network, Inc.*,
   53 Misc. 3d 1210(A), 2016 WL 6330584 (Sup. Ct., Albany Cty. 2016) ........................ *passim*

*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ............................................................................................. 20

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019) ............................................................................... 17

*Trump v. Deutsche Bank AG*,
   --- S. Ct. ---, 2019 WL 6797733 (Mem) (U.S. Dec. 13, 2019) ............................... 16

*Trump v. Mazars USA, LLP*,
   940 F.3d 710 (D.C. Cir. 2019) ............................................................................ 17

*Trump v. Mazars USA, LLP*,
   --- S. Ct. ---, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545) ........................ 16

*Trump v. Vance*,
   941 F.3d 631 (2d Cir. 2019) ............................................................................... 17

*Trump v. Vance*,
   No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019) (No. 19A640) ................................ 16

*Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP*,
   116 A.D.3d 631 (1st Dep't 2014) ......................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................ 17

*Zervos v. Trump*,
   59 Misc. 3d 790 (Sup. Ct., N.Y. Cty. 2018) ................................................. 5, 15, 17

iii

*Zervos v. Trump,*
   171 A.D.3d 110 (1st Dep't 2019)................................................................ 6, 9

**Statutes**

CPLR § 308 ........................................................................................................ 3

CPLR § 320 ........................................................................................................ 3

CPLR § 2201 ................................................................................................. 7, 16

CPLR § 3120 ...................................................................................................... 5

CPLR § 3121 ...................................................................................................... 5

**Secondary Sources**

Beth Reinhard, *New York Writer Who Accused Trump of Sexual Assault Sues Him for
   Defamation*, WASH. POST (Nov. 4, 2019) ...................................................... 3

Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*,
   NPR (Nov. 4, 2019)........................................................................................ 3

Erica Orden, *Columnist Sues Trump and Says He Defamed Her Over Sexual Assault Claim*,
   CNN (Nov. 4, 2019)........................................................................................ 3

Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book
   7B .................................................................................................... 7, 8, 16

Robert D. Sack, SACK ON DEFAMATION (5th ed. 2017)....................................... 14, 15

Siegel, N.Y. Prac. (6th ed. 2019) ..................................................................... 7, 8

William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the
   President for Defamation*, USA TODAY (Nov. 4, 2019) ................................. 3

iv

## PRELIMINARY STATEMENT

In the mid-1990s, Plaintiff E. Jean Carroll was sexually assaulted by Defendant Donald J. Trump in the dressing room of a luxury department store in Manhattan. After Carroll finally gained the courage to speak out, Trump responded with a series of false and defamatory statements, denying not only the assault, but also ever having met Carroll or even knowing who she was. Carroll filed this action to redress the injuries Trump's defamation caused and to vindicate her good name and reputation through a public airing of the truth.

Trump, for his part, has done everything he can to stop the truth from ever coming out. When the case began, he refused to accept service of the Complaint, forcing Carroll to seek leave to serve him through alternative means. Next, he filed a motion to dismiss based on the specious argument that he is not subject to jurisdiction in New York, just so that he could ask that discovery be halted. When that effort failed, Carroll served formal discovery requests on Trump, including one seeking a cheek swab for DNA to be compared against unidentified male DNA on the dress that Carroll wore during the attack. Not surprisingly, mere days after receiving the DNA request, Trump filed the instant motion to stay this action pending a decision in *Zervos v. Trump*—a case that he previously claimed was so different from this one that they should not be assigned to the same judge. Indeed, while Trump's takes on this case and *Zervos* have been remarkably inconsistent (even contradictory), Trump deserves credit for consistently doing everything possible to avoid discovery about and a jury determination of his conduct in both cases.

But this latest effort to stop Carroll's action in its tracks is too little, too late. The law is clear that stays are a drastic remedy reserved for extraordinary circumstances. The mere pendency of a separate appeal that could result in a change of law is insufficient, particularly where, as here, there is binding precedent on point and resolution of the appeal is by no means imminent. The

unique circumstances of this case make a stay all the more inappropriate: Trump's motion is just the latest attempt to prevent Carroll from having her day in court, and a stay would compound the harms to Carroll that Trump's defamatory statements continue to cause. Trump's status as president does not automatically entitle him to a stay either, and nothing in Trump's extensive history of personal litigation during his presidency supports his bald assertion that discovery into whether he lied about raping Carroll will harm the national interest.

## BACKGROUND

### A. Trump's Initial Delay Tactics in This Case

Within hours of the time Carroll's Complaint was posted on the NYSCEF website, Trump responded to this lawsuit through a statement issued by a spokesperson. The statement called Carroll's allegations "false" and "frivolous," suggested that "since [Carroll's] book did not make any money she's trying to get paid another way," and labeled Carroll a "fraud." Doc. No. 6 ¶ 6.

Although he was willing to double down on his defamation in the media, Trump has sought to stymie Carroll's quest for a day in court from the very beginning. After filing her Complaint, Carroll attempted to effect service of process on Trump at his long-time residence at Trump Tower in New York. A process server went to Trump Tower on four different occasions, at different times, and building staff and Secret Service agents blocked each attempt at service. *Id.* ¶¶ 7–12. On one occasion, a Secret Service agent informed the process server that they "had been instructed not to allow process servers" to effect service. *Id.* ¶ 9. Another process server was warned that if he tried to leave papers with the Trump Tower concierge, he would not be permitted to leave the building, and another was told that "papers have to go to DC." *Id.* ¶¶ 11–12. Yet when Carroll attempted to effect service of process at the White House, a Secret Service agent there turned the process server away. *Id.* ¶ 13.

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 143 of 201

Counsel for Carroll also reached out to Kasowitz Benson Torres LLP to see if they could

accept service on Trump's behalf. (Kasowitz Benson has represented Trump in other actions and

filed formal appearances in this action just moments before filing the instant motion to stay.) When

contacted in November, however, the firm said they could not provide any assistance. *Id.* ¶ 14.

Carroll thus found herself in the confounding position of having to seek permission to make

alternative service on a defendant who had already commented on the lawsuit to millions of

Americans.[1] After Carroll briefed her motion and submitted evidence in support, the Court

(Ling-Cohan, J.) found that standard methods of service had proven "impracticable" and issued an

order pursuant to CPLR § 308(5) permitting service on Trump by alternative means. Doc. No. 15.

Carroll successfully served Trump on November 13, 2019, making his response to the Complaint

due on December 13. *See* Doc. No. 17; CPLR § 320(a).

**B. Trump's Personal Jurisdiction Motion and First Request to Stay Discovery**

Even after he was served, however, Trump's efforts to slow this action did not end. On

November 26, Trump requested a significant extension of time to respond to the Complaint.

Trump's counsel represented that Trump intended to move to dismiss for failure to state a claim

on the theory that Trump's statements about Carroll were not defamatory. *See* Doc. No. 24 ¶ 10;

Doc No. 34 ¶ 6. In the interest of professional courtesy, Carroll acquiesced in Trump's request.

Under the parties' stipulated briefing schedule, Trump was not required to file his moving papers

---

[1] *See, e.g.*, Beth Reinhard, *New York Writer Who Accused Trump of Sexual Assault Sues Him for Defamation*, WASH. POST (Nov. 4, 2019), https://www.washingtonpost.com/politics/new-york-writer-who-accused-trump-of-sexual-assault-sues-him-for-defamation/2019/11/04/8ab2afb0-fcf7-11e9-9534-e0dbcc9f5683_story.html; William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the President for Defamation*, USA TODAY (Nov. 4, 2019), https://www.usatoday.com/story/news/politics/2019/11/04/trump-sued-defamation-e-jean-carroll/4155674002/; Erica Orden, *Columnist Sues Trump and Says He Defamed Her Over Sexual Assault Claim*, CNN (Nov. 4, 2019), https://www.cnn.com/2019/11/04/politics/e-jean-carroll-trump-lawsuit-defamation/index.html; Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4, 2019), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation.

until January 14, 2020, and his motion would not be returned until March 5. Doc. No. 20.

Once the briefing schedule for the motion to dismiss was in place, the Court (Ling-Cohan, J.) issued a Preliminary Conference Order that set forth various discovery deadlines and made clear that the "filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery." Doc. No. 27 at 2. The Order also required the parties to hold a telephone call to discuss the possibility of settlement before discovery would commence. *Id.*

Carroll's counsel initiated the requisite settlement call on January 3, 2020, thereby paving the way for formal discovery into the relevant facts. Kaplan Aff. ¶ 3. That same day—almost two weeks *before* the motion deadline that Trump had insisted he needed—Trump brought a motion to dismiss by order to show cause. Doc. No. 28. Rather than argue that Carroll had failed to state a claim, Trump submitted a five-page memorandum of law devoted exclusively to the argument that he was no longer subject to personal jurisdiction in New York because he had resided in the White House for the past three years. Doc. No. 33. Trump included in his proposed order a condition that the "discovery deadlines set forth in the Court's [Preliminary Conference] Order" be stayed pending a decision on Trump's motion to dismiss. Doc. No. 35 at 2.

Because Trump had failed to seek an appropriate time, date, and place to make his application and seek a stay, *see* Doc. No. 36 at 2, Carroll rushed to file an opposition just one business day later. Carroll argued that no stay was warranted given black-letter law that doomed Trump's motion on the merits: a plaintiff in New York is not required to plead the basis for personal jurisdiction, and Trump's temporary residence in Washington, D.C. has no legal bearing on his status as a lifelong New York domiciliary. Doc. No. 34 ¶¶ 11–14. Carroll further noted that, if anything, questions about Trump's amenability to suit in New York would necessitate discovery into Trump's extensive contacts with New York, rather than justify delaying it. *Id.* ¶ 15.

4

The Court agreed. On the same day that Carroll submitted her opposition, the Court (Ling-Cohan, J.) denied Trump's motion to dismiss. It held that Trump had provided no judicially cognizable evidence to support dismissal and that there was "no basis" for a stay of discovery. Doc. No. 36 at 2.

### C. Trump's Motion to Stay the Case Entirely

Following the denial of Trump's motion to dismiss, Carroll sought to move this action forward. On January 10, 2020, Carroll served a set of merits-related document requests pursuant to CPLR § 3120, and on January 30, Carroll served a notice pursuant to CPLR § 3121 for a "buccal, blood or skin cell sample from Defendant sufficient for DNA analysis and comparison against unidentified male DNA present on the dress that Plaintiff wore during the sexual assault at issue in this action." Ex. 1 to Kaplan Aff. Carroll attached to her DNA request a forensic report evidencing that there was DNA on the dress suitable for comparison. *Id.*

On January 23, 80 days after the Complaint was filed, and when the first deadlines for Trump to respond to discovery requests were imminent, Trump's counsel suggested for the first time that Trump was fully immune from suit in state court and that discovery should be stayed pending a decision by the Court of Appeals' in *Zervos v. Trump*. In that case, Summer Zervos claims that Trump lied when he denied having sexually assaulted her in 2007. 59 Misc. 3d 790, 791 (Sup. Ct., N.Y. Cty. 2018). Early in the litigation, Trump moved to dismiss Zervos's complaint on the ground that the president is immune from all state court actions, no matter their content, while in office. *Id.* at 795. On March 20, 2018, the court (Schecter, J.) denied Trump's motion, holding that state courts, like federal courts, may exercise jurisdiction over a sitting president sued for tortious unofficial conduct. *Id.* On March 14, 2019, the First Department agreed, holding that the Supremacy Clause "does not provide a basis for immunizing the President from state court

civil damages actions." *Zervos v. Trump*, 171 A.D.3d 110, 114 (1st Dep't 2019). Throughout this time, for more than a year a half, discovery in *Zervos* proceeded unabated. *See, e.g.*, Ex. 2 to Kaplan Aff. (discovery stipulation in *Zervos*); Ex. 3 to Kaplan Aff., at 1 (letter from B. Wilkinson to Court of Appeals Clerk of Court).

On November 18, 2019, Trump moved for reargument or, in the alternative, leave to appeal the First Department's *Zervos* decision to the Court of Appeals. Ex. 4 to Kaplan Aff. (Notice of Motion). He also requested a stay of that case pending reargument or appeal. *Id.* Although the First Department denied Trump's motion for leave to reargue, on January 7, 2020, it did grant him leave to appeal to the Court of Appeals. Ex. 5 to Kaplan Aff. (First Department order). It simultaneously entered a stay of the remaining discovery in *Zervos*, consisting only of depositions. *Id.*; Ex. 3 to Kaplan Aff.

When Trump raised the prospect in late January of halting this case pending the decision in *Zervos*, Carroll stated that she could not voluntarily agree to putting off the entirety of these proceedings. Kaplan Aff. ¶ 6. In an effort to be constructive, however, Carroll offered to wait to take Trump's deposition until the completion of all other discovery in this case (including a deposition of Carroll that Trump noticed on January 23, 2020) and, in the event that other discovery were completed before the Court of Appeals ruled in *Zervos*, to raise the matter of Trump's deposition with this Court prior to proceeding. *Id.* ¶¶ 5–6.

Trump, however, rejected that proposed accommodation. *Id.* After Carroll served her request for a DNA sample, the parties conferred on a briefing schedule for the stay motion that Trump had resolved to file. *See* Doc. No. 38. Just days later, three Kasowitz Benson partners entered formal appearances, and Trump filed the instant motion. Docs. No. 40–43.

## ARGUMENT

Trump's motion to stay this case pending the Court of Appeals' decision in *Zervos* is his

6

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 147 of 201

latest effort to impede the progress of Carroll's suit and avoid turning over discovery that would help prove her claims.

Although CPLR § 2201 permits "a stay of proceedings in a proper case, upon such terms as may be just," courts recognize that a "stay of an action can easily be a drastic remedy, on the simple basis that justice delayed is justice denied." *Hala v. Orange Reg'l Med. Ctr.*, 60 Misc. 3d 274, 280 (Sup. Ct., Orange Cty. 2018), *aff'd*, 178 A.D.3d 151 (2d Dep't 2019). Therefore, courts will not exercise their discretion to stay a case "unless the proponent shows good cause for granting it," *id.*, which requires "some excellent reason . . . to a halt a litigant's quest for a day in court," *Landmark Ins. Co. v. Virginia Sur. Co.*, 16 Misc. 3d 1140(A), 2007 WL 2727773, at *7 (Sup. Ct., N.Y. Cty. 2007). *See also In re Weinbaum's Estate*, 51 Misc. 2d 538, 539 (Surr. Ct., Nassau Cty. 1966) (explaining that court's discretion to stay a case "will be exercised sparingly and only when other remedies are inadequate and the equities involved are apparent and strong"); Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR 2201:7; Siegel, N.Y. Prac. § 255 (6th ed. 2019).

Trump cannot meet that burden here. *First*, it is well established that courts should generally not stay a case pending an appeal in another action, particularly where there is a binding appellate decision on point and no imminent change in the governing law. *Second*, unique circumstances present here—including Trump's consistent pattern of delay, and the harm that a stay would cause to a defamation plaintiff like Carroll—make a stay all the more inappropriate. *Third*, Trump's gestures to his status as president and a hypothetical burden to his office do nothing to swing the equities in his favor.

## I.    A STAY IS IMPROPER BECAUSE THERE IS A BINDING APPELLATE DECISION, WITH NO IMMINENT CHANGE IN LAW

Because the First Department's decision in *Zervos* remains binding upon this Court, and a

7

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 148 of 201

decision from the Court of Appeals is far from imminent, a stay of proceedings pending Trump's appeal in a different action would be improper.

"It is axiomatic that this Court is bound by the determination of the Appellate Division, First Department . . . and it must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date." *People ex rel. Schneiderman v. Coll. Network, Inc.*, 53 Misc. 3d 1210(A), 2016 WL 6330584, at *4 (Sup. Ct., Albany Cty. 2016); *accord In re Weinbaum's Estate*, 51 Misc. 2d at 539 ("[A] trial court must follow the last decision of the controlling appellate court and it may not hold in abeyance an adjudication pending a change in the law which may occur at some future date."); Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR 2201:11 ("The mere fact that the case that may enunciate the dispositive rule of law is before an appellate court is not sufficient to warrant the stay."); Siegel, N.Y. Prac. § 255 (6th ed. 2019) (same). Therefore, a stay pending appeal in another action "should be done sparingly," *Level 3 Commc'ns, LLC v. Essex Cty.*, 54 Misc. 3d 291, 292 (Sup. Ct., N.Y. Cty. 2016), and at a minimum requires that the decision in the other action be "imminent," *Miller v. Miller*, 109 Misc. 2d 982, 983 (Sup. Ct., N.Y. Cty. 1981).

*Miller* is particularly instructive. There, the defendant moved for a stay pending the Court of Appeals' decision on the constitutionality of a New York statute. *Id.* at 982. Because the Appellate Division had already rejected the defendant's constitutional argument in a prior case, the Supreme Court denied the stay request, concluding it was bound to follow the binding decision of the appellate court. *See id.* at 983. *Miller* further explained that a stay pending appeal "should only be done where decision is imminent," taking into consideration "when was the appeal taken, when arguments are to be heard, and when a decision is forthcoming." *Id.* at 983. The court

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 149 of 201

emphasized that to do otherwise would force "the unfortunate litigant [to] pay for . . . appeals unnecessarily," given binding appellate authority in her favor. *Id.* In *Miller*, no decision was imminent, and therefore, a stay was clearly inappropriate. *Id.*; *see also Schneiderman*, 2016 WL 6330584, at *6 (declining to stay proceedings pending a parallel appeal addressing the applicable statute of limitations on plaintiffs' fraud claim because a binding Appellate Division decision had decided the issue).

Here, a stay of proceedings is similarly inappropriate. As in *Miller* and *Schneiderman*, there is a binding Appellate Division decision directly on point, holding that Trump is not immune from suit in state court for his unofficial tortious conduct. *See Zervos*, 171 A.D.3d at 114. This fact alone is sufficient to dispose of Trump's motion to stay: where there is a governing appellate decision, courts "must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date." *Schneiderman*, 2016 WL 6330584, at *7; *accord Miller*, 109 Misc. 2d at 983.

But that's not all. Here, a decision from the Court of Appeals in *Zervos* is far from imminent. *See Miller*, 109 Misc. 2d at 983. Briefing in *Zervos* before the Court of Appeals will not be completed until May 11, 2020, and given the Court of Appeals' summer recess, oral argument will likely not occur until the fall of 2020, at the earliest. N.Y. Court of Appeals, Notice to the Bar (June 24, 2019)[2]; *see also* Ex. 6 to Kaplan Aff., at 1 (letter from Court of Appeals directing that *Zervos* "will proceed in the normal course of briefing and argument").

The cases on which Trump relies are easily distinguished. *See* Trump Mem. at 11–12. First, Trump cites several cases in which there was no binding appellate authority on point. *See Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP*, 116 A.D.3d 631 (1st Dep't 2014); *OneBeacon Am.*

---

[2] https://www.nycourts.gov/ctapps/news/nottobar/nottobar062419.pdf.

9

*Ins. Co. v. Colgate-Palmolive Co.*, 96 A.D.3d 541 (1st Dep't 2012); *Belopolsky v. Renew Data Corp.*, 41 A.D.3d 322 (1st Dep't 2007); *Assenzio v. A.O. Smith Water Prods.*, No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cty. Aug. 28, 2015). If there were, the courts in *Uptown Healthcare*, *OneBeacon*, *Belopolsky*, and *Assenzio* would have been required to rule the other way. *See Miller*, 109 Misc. 2d at 982–83; *Schneiderman*, 2016 WL 6330584, at *6.

Second, all of these cases, with the exception of *Assenzio*,[3] considered stays pending resolution of a parallel action between substantially identical parties sharing a common dispute; they did not consider a stay pending an appeal of an action between different parties with different claims. In *OneBeacon*, for example, the First Department affirmed a stay pending resolution of a parallel action in another state, in part because the "issues, relief sought, and parties in the two actions [were] substantially *identical*." 96 A.D.3d at 541 (emphasis added); *see also Uptown Healthcare*, 116 A.D.3d at 631 (upholding stay pending related federal district court action); *Belopolsky*, 41 A.D.3d at 322 (upholding stay pending resolution of previously commenced related action with "overlapping issues and common questions of law and fact"). But there is no such identity of the parties and claims here—as Trump himself has insisted. *See* Doc. No. 25 at 2 (arguing that this case and *Zervos* are "separate defamation cases—which involve different plaintiffs, different alleged statements that were made in different places, at different times, and in different contexts").

Finally, Trump points to *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cty. Aug. 1, 2018), a class action relating to compensation for home

---

[3] *Assenzio* arose in a unique procedural posture. There, the plaintiffs requested a stay of their deadline to make a post-trial submission. *Assenzio*, 2015 WL 5283301, at *1. A jury had already rendered a verdict, and all that remained was a potential post-trial stipulation relating to the amount of the jury's award. *Id.* A stay in such circumstances hardly delayed the plaintiffs' quest for a day in court. A stay here, by contrast, would be far more prejudicial to Carroll, as it would deprive her of any opportunity to move her action forward beyond the pleadings and would expose her to ongoing harm.

healthcare workers. In that case, the appeal "ha[d] been fully briefed before the Court of Appeals and [was] awaiting a date for oral argument," and would bear on the basic question of who was properly among the class of plaintiffs. *Id.* at *2. Here, by contrast, briefing before the Court of Appeals will not be completed for several months, the summer recess means that oral argument will be pushed back even further, and there is no question that Carroll and Trump are the proper parties to this dispute. What is more, neither *Belabarodaya* nor any of Trump's other authorities involved the unique considerations discussed in Section II below.

## II.    UNIQUE CIRCUMSTANCES OF THIS LITIGATION MAKE A STAY PARTICULARLY INAPPROPRIATE

### A.  The Requested Stay Is Yet Another Effort at Delay

Trump's motion should be denied for the further reason that it is dilatory and reflects nothing more than his latest effort to impermissibly delay Carroll's "quest for a day in court." *Landmark Ins. Co.*, 2007 WL 2727773, at *4; *see Schneiderman*, 2016 WL 6330584, at *5 (courts must consider whether "the stay is designed to delay proceedings").

As set forth above, this motion is just the latest example in a clear pattern of delay in this litigation. Trump obstructed the progress of this action from the outset by forcing Carroll to seek authorization for an alternative method of service to move forward. Doc. No. 6. ¶¶ 7–14; Doc. No. 15. Almost two weeks after he was served, Trump requested a prolonged briefing schedule on a straightforward motion to dismiss for failure to state a claim. Doc. No. 20; Doc. No. 24 ¶ 10. Once it was clear that discovery would nevertheless commence, Trump abandoned his anticipated motion and filed a hasty (and meritless) motion to dismiss for lack of personal jurisdiction. Doc. Nos. 28, 33. He coupled that new motion with a proposed order staying all discovery pending a decision regarding his amenability to suit in New York—ignoring the Court's prior determination that a stay upon such a motion was unwarranted. Doc. Nos. 27–28. After the Court denied his

11

motion to dismiss and Carroll served discovery requests for Trump's DNA and relevant documents, Trump filed the instant motion, his second attempt to obtain a stay in this case.

The dilatory nature of Trump's latest filing is underscored by the fact that Trump has never pressed a presidential immunity defense in this action before now. In sharp contrast to *Zervos*, Trump made no mention of presidential immunity in connection with his proposed or filed motions to dismiss.[4] The first, and only mention, of an immunity defense before this Court appeared in a footnote to the stipulated briefing schedule for this motion. Doc. No. 38 at 2 n.1. In other words, Trump is making the extraordinary request that this Court halt progress in Carroll's case based on the appeal of an issue he has not formally asserted in this litigation. Counsel is unaware of any case permitting a stay in such circumstances.

Trump's foot-dragging has been a reliable feature of his litigation strategy across other cases as well. In *Zervos*, after the First Department granted Trump leave to appeal, Summer Zervos sought to expedite review before the Court of Appeals given Trump's "repeated efforts . . . to delay th[e] action." Ex. 3 to Kaplan Aff., at 1 (letter to Court of Appeals describing how Zervos defended against numerous pretrial motions and six stay requests while making every effort to complete discovery on schedule). Zervos proposed that the Court of Appeals utilize its alternative review procedure to decide the single issue presented based on the more than 300 pages of substantive briefing in the lower courts or, in the alternative, that it set a schedule for expedited briefing and an argument no later than the Court of Appeals' March 2020 session. *Id.* at 1–2. Trump resisted Zervos's efforts to secure a prompt resolution, contending that "[t]here is no urgency to the appeal"

---

[4] Had Trump succeeded on his motion to dismiss for lack of personal jurisdiction, diversity jurisdiction would have allowed this case to proceed in federal court, where even Trump would agree presidential immunity would not apply. *See Clinton v. Jones*, 520 U.S. 681, 710 (1997) (holding President is not immune from suits during his presidency in federal district court for unofficial tortious conduct).

and "no reason to expedite it." Ex. 7 to Kaplan Aff., at 2 (letter from M. Kasowitz to Court of Appeals Clerk of Court). Trump's position stood not only to delay progress in that action, but also to maximize the length of any stay granted in this action as well.

Trump's shifting characterizations of the relationship between this case and *Zervos* are further evidence of his gamesmanship. Months ago, at the outset of the case, Carroll requested that this case be assigned to Justice Schechter, who presides over *Zervos*. Doc. No. 24. Carroll recognized that both cases present a similar fact pattern concerning Trump's response to the allegations of his victims and suggested that judicial economy would be achieved by having a single judge preside over the two cases. *Id.*; *see Clinton*, 520 U.S. at 708 (explaining that even though the president is not immune from suit over conduct committed in his personal capacity, courts should nonetheless manage litigation in a way that minimizes interference with presidential duties).

Trump resisted having *Zervos* and this action deemed related, characterizing them as "separate defamation cases—which involve different plaintiffs, different alleged statements that were made in different places, at different times, and in different contexts . . . [and] are 'unrelated' *in every respect*, except that the defendant is President Trump and the claims are for defamation." Doc. No. 25 at 2 (emphasis added). Trump succeeded in his opposition, and the cases were not marked as related. *See* Ex. 8 to Kaplan Aff. The only explanation for Trump's shift in perspective regarding *Zervos* is opportunism—an approach to litigation that implicates the judicial estoppel doctrine's prohibition against switching positions just because a litigant's interests have changed. *See Festinger v. Edrich*, 32 A.D.3d 412, 413 (2d Dep't 2006). This Court should not countenance Trump's attempt to capitalize on *Zervos*'s new procedural posture to serve his dilatory ends.

13

## B. Carroll Would Suffer Significant Prejudice If This Case Were Stayed

To decide whether to grant a stay pending an appeal, courts must consider whether "any prejudice will result from granting or denying a stay." *Schneiderman*, 2016 WL 6330584, at *5. Given the nature of Carroll's claim, staying this case would expose Carroll to ongoing harms.

In many business disputes or personal injury actions, monetary damages provide only retroactive compensation for past harm, and thus a stay may simply result in the delay of an exchange of money between the parties. The prejudice of a stay to a defamation plaintiff like Carroll, however, is much greater. The gravamen of an action alleging defamation is an injury to reputation, "expos[ing] an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induc[ing] an evil opinion of one in the minds of right-thinking persons, and depriv[ing] one of confidence and friendly intercourse in society.'" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. New York Evening Journal*, 262 N.Y. 99, 102 (1933)); *see also Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997) (defamation "expose[s] a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community"). Defamatory words "can cause severe and lasting harm" and can continue to cause harm unless and until a plaintiff has her opportunity to prove the falsity of the statements before a jury. Robert D. Sack, SACK ON DEFAMATION § 10:1, at 10-2 (5th ed. 2017) (hereinafter "*Sack on Defamation*").

That is the exact scenario in which Carroll now finds herself. Carroll's career success is inextricably tied to her popular, long-running advice column, "Ask E. Jean." Trump's defamatory comments about Carroll have damaged her reputation, upon which she depends to attract readers, and have diminished her readership's goodwill towards her. Doc. No. 2 ¶¶ 133–34. Since Trump

14

defamed her, some readers even stopped sending her letters altogether, thus impairing Carroll's column, which requires a steady flood of compelling letters to which she can respond. *Id.* ¶ 134. In the months of July, August, and September 2019, following Trump's smearing her reputation, Carroll received roughly 50 percent fewer letters than she received during the same period in 2018. *Id.* And the damages stemming from Trump's defamatory comments continue to accumulate: *Elle* magazine, which published "Ask E. Jean" for 26 years, declined to renew her contract in December 2019, and so ended her primary income. Ex. 9 to Kaplan Aff.

Through this action, Carroll does not only seek compensation for the injuries she had suffered as of the time of filing. She also seeks "a vindication of . . . her reputation in the form of a court's declaration that [Trump's] statement was false and defamatory." *Sack on Defamation*, at 10-7. To grant a stay under these circumstances would unnecessarily delay Carroll's opportunity to obtain that redress and compound the harm to which Trump's defamation has made her exposed.

## III.   TRUMP'S STATUS AS PRESIDENT DOES NOT ENTITLE HIM TO A STAY

In his moving papers, Trump does not seriously grapple with any of the circumstances discussed above. Instead, he suggests that his mere status as president justifies a stay, and warns of a burden to the presidency and the public without any reasoning or factual support.

### A.  The Constitution Does Not Require a Stay Based Simply on Trump's Say-So

Trump appears to contend that courts must always grant a stay requested by a president based on an amorphous conception of "constitutionally required deference." Trump Mem. at 2. To support this assertion, however, Trump offers nothing more than a string cite of inapposite cases, all of which arose in a distinct procedural posture, and none of which purport to abandon generally

applicable standards in favor of a rule commanding stays based on "deference."[5] *See id.* (citing *Trump v. Mazars USA, LLP*, --- S. Ct. ---, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545); *Trump v. Deutsche Bank AG*, --- S. Ct. ---, 2019 WL 6797733 (Mem) (U.S. Dec. 13, 2019) (No. 19A640); *Trump v. Vance*, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019); *In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019); *In re Trump*, 928 F.3d 360, 364 (4th Cir. 2019); *Nixon v. Sirica*, 487 F.2d 700, 721 (D.C. Cir. 1973); *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019)).

More specifically, all the cases that Trump cites were stayed pending an appeal *in the same case*. *See* Trump Mem. at 12. In such circumstances, a stay at the trial court level does not stay the action entirely, but rather ensures that a single action does not proceed simultaneously on two tracks. The question in such cases is not whether the case proceeds *at all*, but rather *where* the case shall proceed—that is, before the appellate court, the trial court, or both. Here, by contrast, Trump seeks to stay Carroll's action full stop, delaying all litigation until some unspecified time in the future. Different considerations and different statutes govern these distinct scenarios, and the standard for staying a case pending a determination in a separate action is, unsurprisingly, far more stringent. *Compare Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986) (decision whether "trial and disposition of cases [should] be deferred routinely pending appellate review of interlocutory orders . . . is, for the most part, a matter of discretion"), *with Schneiderman*, 2016 WL 6330584, at *6 (courts "must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date"). *See generally*

---

[5] The notion of a constitutionally required stay was soundly rejected in *Zervos*. 59 Misc. 3d at 797 ("A lengthy and categorical stay is not justified based on the possibility that, at a moment's notice, the President may have to attend to a governmental or international crisis. If and when he does, of course, important federal responsibilities will take precedence.").

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 157 of 201

Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR 2201:4 ("CPLR 2201 Stay Distinguished from Other Stays").

*Mazars*, *Deutsche Bank*, and *Vance* further illustrate this crucial difference. *See* Trump Mem. at 12. Each of these cases was stayed pending appeal of a denial of a preliminary injunction. *Trump v. Mazars USA, LLP*, 940 F.3d 710, 718 (D.C. Cir. 2019), *cert. granted*, 140 S. Ct. 660 (2019); *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), *cert. granted*, 140 S. Ct. 660 (Mem) (2019); *Trump v. Vance*, 941 F.3d 631, 636–37 (2d Cir. 2019), *cert. granted*, 140 S. Ct. 659 (Mem) (2019). An appeal of a determination whether to grant a preliminary injunction is inherently tied to the ultimate merits determination. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). It often makes little sense for two courts to consider the merits of a singular dispute simultaneously, and a stay may be the only practical way to proceed.

Rather than substantiate a constitutional right to a stay, Trump's authorities concern distinct procedural postures to which different standards apply. They therefore have little to no bearing on the stay requested here.

### B.  The Presidency and the Public Would Not Suffer Absent a Stay

Trump also argues that the "balance of equities" favors a stay. Trump Mem. at 12. But Trump fails to address any of the equities favoring Carroll as part of his purported "balancing," *see supra*, Section II, and offers no support for the claim that discovery would "distract" him from his public duties "'to the detriment of not only [himself] and his office but also the Nation.'" *Id.* (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)); *see Clinton v. Jones*, 520 U.S. 681, 702 (1997) (rejecting president's argument that denial of immunity for unofficial tortious acts would lead to unduly burdensome litigation).

17

Case 1:20-cv-07311  Document 1-4  Filed 09/08/20  Page 158 of 201

It is telling that Trump cannot point to any evidence that personal-conduct litigation burdens the presidency, given that he has litigated extensively in his personal capacity over the last three years while president. Once again, the *Zervos* case is instructive. There, Trump filed multiple motions for a stay, insisting that further proceedings would burden his performance of official duties. Early in that case, Trump made the exact argument he makes here: that a stay was "warranted given the significant risk that th[e] action will interfere with the President's executive responsibilities to the detriment of the public." Ex. 10 to Kaplan Aff., at 17 (Memorandum of Law). Trump's stay efforts in *Zervos* were rebuffed by both the Supreme Court and the First Department, *see* Ex. 3 to Kaplan Aff., and none of the risks of which Trump warned has ever materialized. *Zervos* proceeded without incident or effect on the presidency for almost three years, during which time the parties exchanged documents and litigated discovery disputes. Only when the First Department granted leave to appeal to the Court of Appeals on January 7, 2020, was a stay ultimately entered. But at that point, discovery in *Zervos* was nearly complete, and only depositions remained. In other words, neither the Supreme Court nor the First Department ever saw fit to halt discovery entirely, and the First Department sanctioned the exact outcome Carroll would agree to here: discovery proceeds, but Trump's deposition is put off until later in the action.

Perhaps even more importantly, *Zervos* is but one example of personal-conduct litigation against Trump during his presidency. *See Galicia v. Trump*, No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.); *Jacobus v. Trump*, No. 24973/2015E (Sup. Ct., New York Cty.); *Nwanguma v. Trump*, No. 16 Civ. 247 (W.D. Ky.); *Clifford v. Trump*, No. 18 Civ. 6893 (C.D. Cal.); *Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.); *Johnson v. Trump*, No. 19 Civ. 0475 (M.D. Fla.). Trump points to no discernible encumbrances that these other cases have imposed on Trump's official conduct either. In fact, Trump did not litigate presidential immunity in any of these

actions—undercutting any claim of serious burden on his official duties and underscoring the dilatory nature of his suspiciously timed stay motion here.[6] Trump cannot be permitted to cherry-pick the instances in which he invokes presidential immunity, especially where, as here, he invokes it solely for purposes of delay.[7]

*Zervos* and the other state court actions confirm the weakness of Trump's immunity argument on the merits as well. These cases differ from *Clinton* in only one respect: they were brought in state, not federal, court. But that does not change the clear force of the Supreme Court's logic. In *Clinton*, President Bill Clinton claimed that he was categorically immune from civil suit for the duration of his time in office, even when it concerned unofficial conduct unconnected to his presidency. 520 U.S. at 694–97. The Supreme Court explained that presidential immunity from suit extends to official acts, principally to "avoid rendering the President unduly cautious in the discharge of his official duties." *Id.* at 694 (internal quotation marks omitted). But the Court unanimously rejected any comparable immunity for unofficial conduct, to which the same concerns did not apply. *See id.* The Supreme Court emphasized that "we have never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity," and that the rationale for immunity "provides no support for an immunity for *unofficial* conduct." *Id.* at 694. The same remains true in state court.

---

[6] As noted in Trump's brief, Trump Mem. at 10, Trump did argue that he should not be required to sit for a deposition in *Galicia*. Doc. No. 397, No. 24973/2015E (Sup Ct., Bronx Cty. Aug. 22, 2019). But Trump did not claim presidential immunity from state court litigation, and discovery in that case took place over years without any discernable burden on Trump's official conduct. As explained above, Carroll is not opposed to putting off Trump's deposition until a later date.

[7] The suggestion that the "public interest" favors a stay fails for the same reason. Trump Mem. at 12–13. In addition, and more importantly, the public interest is not enhanced by permitting a president, accused of a violent sexual assault and having defamed his accuser, to avoid litigation simply because he is afraid of what discovery will reveal.

Trump relies heavily on the fact that *Clinton* did not involve a state court action, and that different arguments might be available in such a case. But he offers little explanation why that distinction is likely to matter, nor does he meaningfully press the arguments that *Clinton* reserved. The Supreme Court in *Clinton* noted that it had no occasion to address whether a president might invoke distinct "federalism and comity" grounds in state court with more success, *id.* at 691, then clarified that such arguments might have force where a state court attempted to exert "direct control" over a president, *id.* at 691 n.13. Nowhere in his motion here does Trump explain how any of the prior state litigation he has faced resulted in such "direct control," nor does he explain why the concerns he raises cannot be addressed by giving wide berth to his presidential responsibilities as this particular case proceeds.

Instead, Trump's stay motion rests entirely on the premise that *any* exercise of state court jurisdiction whatsoever is tantamount to interfering with Trump's faithful execution of federal law. *See* Trump Mem. at 7. But *Clinton* undercuts this argument; it carefully distinguished the minimal "burden on the President's time and energy that is a mere byproduct" of a straightforward civil suit from court orders that impose a "direct burden" on the president or "invalidation of his official actions." 520 U.S. at 705. Trump's history of personal-conduct ligation—and the lack of any detriment to the Nation as a result—only confirms the correctness of the Supreme Court's determination.

That is not to say that Trump's current status as president should be ignored entirely. In rejecting Clinton's overbroad assertion of presidential immunity, the Supreme Court saw "no reason to assume that the district courts will be either unable to accommodate the President's needs or unfaithful to the tradition—especially in matters involving national security—of giving 'the utmost deference to presidential responsibilities.'" *Id.* at 409 There is every reason to place similar

20

trust in this Court. *Cf. Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (noting that the Supreme Court "ha[s] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States"). And Carroll herself has been mindful that some special consideration is due in litigation involving a sitting president. Most notably, Carroll offered to defer Trump's deposition until after the Court of Appeals issues a decision in *Zervos* or seek leave of the Court. Such an accommodation would have addressed any concerns that Trump might identify, yet Trump, consistent with his dogged focus on delaying this action, rejected the accommodation out of hand.

## CONCLUSION

For the foregoing reasons, the Court should deny Trump's motion to stay.

Dated: New York, New York  
      February 18, 2020

By: _____

Roberta A. Kaplan  
Matthew J. Craig  
Louis W. Fisher  
KAPLAN HECKER & FINK LLP  
350 Fifth Avenue, Suite 7110  
New York, New York 10118  
Tel: (212) 763-0883  
Fax: (212) 564-0883  
rkaplan@kaplanhecker.com  
mcraig@kaplanhecker.com  
lfisher@kaplanhecker.com  

*Counsel for Plaintiff E. Jean Carroll*

21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

Plaintiff,

-against-

DONALD J. TRUMP, in his personal capacity,

Defendant.

Index No. 160694/2019

Hon. Verna L. Saunders

## AFFIRMATION OF ROBERTA A. KAPLAN
## IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.       I am a partner with the law firm of Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.       I submit this affirmation in opposition to Defendant Donald J. Trump's Motion to Stay Proceedings pursuant to CPLR § 2201 pending a decision of the Court of Appeals in *Zervos v. Trump*, No. APL-2020-00009 (N.Y.). *See* Doc. No. 43.

3.       On December 12, 2019, the Court issued a Preliminary Conference Order, directing that "[p]rior to the commencement of discovery, both sides shall discuss settlement, and/or the possibility of resolving this through ADR or mediation, by telephone call, to be initiated by plaintiff's counsel, on or before 2/13/20." Doc No. 27 at 2. Pursuant to that Order, Carroll's counsel initiated a settlement conference with Trump's counsel by telephone call on January 3, 2020. Later

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 163 of 201

that same day, Trump moved to dismiss on personal jurisdiction grounds by order to show cause. *See* Doc. No. 28.

4.     On January 6, 2020, Plaintiff's First Set of Document Requests, Notices to Admit, and Interrogatories, which relate to Trump's personal jurisdiction defense, was served on Trump pursuant to CPLR §§ 3120, 3123, and 3130-32. On January 10, 2020, Plaintiff's Second Set of Document Requests, which relate to the merits of this case, was served on Trump pursuant to CPLR § 3120. On January 30, 2020, Plaintiff's First Notice to Submit to Physical Examination was served on Trump pursuant to CPLR § 3121.

5.     On January 23, 2020, Trump served a Notice to Take Deposition on Oral Examination on Carroll pursuant to CPLR §§ 3101 and 3107.

6.     On January 23, 2020, counsel for Trump proposed staying this action pending a decision from the Court of Appeals in *Zervos v. Trump*. Carroll's counsel responded that Carroll could not agree to stay this action entirely, but offered to defer Trump's deposition until the completion of all other discovery and, in the event that other discovery was completed before the Court of Appeals ruled in *Zervos*, to raise the matter of Trump's deposition with this Court prior to proceeding. Trump rejected this proposed accommodation.

7.     Attached as Exhibit 1 is a true and correct copy of Plaintiff's First Notice to Submit to Physical Examination. Redactions of the names of irrelevant nonparties were made in the original attachment to Plaintiff's First Notice to Submit and were not made for purposes of submission to this Court.

8.     Attached as Exhibit 2 is a true and correct copy of a discovery stipulation, filed in *Zervos v. Trump*, No. 150522/2017 (Sup. Ct., N.Y. Cty.), dated March 21, 2019.

9.     Attached as Exhibit 3 is a true and correct copy of a letter from Beth A. Wilkinson,

2

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 164 of 201

Esq., to John P. Asiello, Esq., Clerk of Court, New York State Court of Appeals, regarding *Zervos v. Trump*, APL-2020-00009 (N.Y.), dated January 13, 2020.

10.     Attached as Exhibit 4 is a true and correct copy of the Notice of Motion, filed by Trump in *Zervos v. Trump*, No. 150522/2017 (1st Dep't), dated November 18, 2019.

11.     Attached as Exhibit 5 is a true and correct copy of the order of the Appellate Division, First Department, dated January 7, 2020, granting the defendant's motion for leave to appeal to the Court of Appeals in *Zervos v. Trump*, No. 150222/17 (1st Dep't).

12.     Attached as Exhibit 6 is a true and correct of a Letter from John P. Asiello, Esq., Clerk of Court, New York State Court of Appeals, to Beth A. Wilkinson, Esq., and Marc E. Kasowitz, Esq., regarding *Zervos v. Trump*, APL-2020-00009 (N.Y.), dated January 21, 2020.

13.     Attached as Exhibit 7 is a true and correct copy of a Letter from Marc E. Kasowitz, Esq., to John P. Asiello, Esq., Clerk of Court, New York State Court of Appeals, regarding *Zervos v. Trump*, APL-2020-00009 (N.Y.), dated January 16, 2020.

14.     Attached as Exhibit 8 is a true and correct copy of a letter from Joan Levenson, Esq., Principal Law Clerk to Administrative Judge Deborah A. Kaplan, to Roberta A. Kaplan, Esq., regarding *Carroll v. Trump*, No. 160694/2019, dated December 9, 2019.

15.     Attached as Exhibit 9 is a true and correct copy of an email from Erin Hobday of *Elle* magazine to Carroll, dated December 11, 2019.

16.     Attached as Exhibit 10 is a true and correct copy of the Memorandum of Law in Support of President Donald J. Trump's Motion to Dismiss and Strike the Complaint Pursuant to CPLR 3211 and Cal. Code Civ. P. § 425.16(B)(1) or, in the Alternative, for a Stay Pursuant to CPLR 2201, filed in *Zervos v. Trump*, No. 150522/2017 (Sup. Ct., N.Y. Cty.), dated July 7, 2017.

3

Dated: New York, New York          By: _____
       February 18, 2020          Roberta A. Kaplan
                                KAPLAN HECKER & FINK LLP
                                350 Fifth Avenue, Suite 7110
                                New York, New York 10118
                                Tel: (212) 763-0883
                                Fax: (212) 564-0883
                                rkaplan@kaplanhecker.com

                                *Counsel for Plaintiff E. Jean Carroll*

4

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 166 of 201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x
                                            :

E. JEAN CARROLL,               :   Index No. 160694/2019
                                            :
               Plaintiff,     :   Hon. Verna L. Saunders
                                            :
        - against-      :   Mot. Seq. No. 2
                                            :
DONALD J. TRUMP,        :   **REPLY AFFIRMATION OF**
                                          :   **MARC E. KASOWITZ**
             Defendant.     :
                                            :
---------------------------------------- x

Marc E. Kasowitz, an attorney duly admitted to practice before the courts of the State of New York, hereby affirms the following under penalty of perjury:

1.     I am a member of the firm Kasowitz Benson Torres LLP (the "Firm"), attorneys for defendant President Donald J. Trump in the above-referenced action. I respectfully submit this reply affirmation in further support of defendant's motion to stay pending the appeal in *Zervos v. Trump* ("Pl. Mem.").

2.     Attached as **Exhibit A** is a true and correct copy of Katherine Rosman and Jessica Bennett, *What Happened Between E. Jean Carroll and Elle Magazine?*, NEW YORK TIMES (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/style/ejean-carroll-fired-elle.html.

3.     Attached as **Exhibit B** is a true and correct copy of defendant's Answer, which was served on plaintiff's counsel by email on January 23, 2020.

4.     When plaintiff's counsel emailed on November 4, 2019, the firm did not represent President Trump in connection with this action, nor was the Firm or any of its lawyers authorized to accept service of the summons and complaint on the President's behalf. The firm entered an

appearance, as co-counsel, on February 4, 2020, nearly three months after service had been completed.  (*See* NYSCEF Doc. Nos. 40-42.)

5.      As of the time of the First Department's decision granting leave to appeal and a stay in *Zervos v. Trump*, 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7, 2020), there were numerous outstanding issues from the parties concerning document production as well as outstanding third-party document subpoenas.

6.      Attached as **Exhibit C** is a true and correct copy of the First Department's Order in *In re People ex rel. Schneiderman v. Trump Entrepreneur Initiative LLC*, No. 451463/13, M-1498 (1st Dep't May 17, 2016).


Dated: February 27, 2020
       New York, New York


                                        ____*/s/ Marc E. Kasowitz*____
                                        MARC E. KASOWITZ

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x

E. JEAN CARROLL,                              :    Index No. 160694/2019
                                             :
                    Plaintiff,               :    Hon. Verna L. Saunders
                                             :
           - against-                        :    Mot. Seq. No. 002
                                             :
DONALD J. TRUMP,                             :
                                             :
                    Defendant.               :
                                             :
------------------------------------------- x

<br>

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR A STAY

<br>

KASOWITZ BENSON TORRES LLP

Marc E. Kasowitz
Christine A. Montenegro
Paul J. Burgo
1633 Broadway
New York, New York 10019
(212) 506-1700

LAROCCA HORNIK ROSEN &
GREENBERG LLP

40 Wall Street, 32nd Floor
New York, New York 10005
(212) 530-4822

*Attorneys for Defendant,*
*President Donald J. Trump*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 6

I.    THE FIRST DEPARTMENT'S DECISION IN *ZERVOS*, SUPPORTS, RATHER
      THAN BARS, A STAY HERE. .................................................................... 7

      A.    This is a "Proper Case" for a Stay of Proceedings Under CPLR § 2201 ............... 7

      B.    The First Department's Decisions in *Zervos* Supports a Stay Here........................ 7

II.   THERE ARE NO "UNIQUE CIRCUMSTANCES" HERE TO JUSTIFY
      DENYING A STAY. ................................................................................. 10

      A.    There Has Been No Undue Delay........................................................ 10

      B.    A Stay Will Irreparably Harm the President and the Public Interest. .................. 12

      C.    A Stay Will Not Prejudice Plaintiff. .................................................... 15

III.  PLAINTIFF DOES NOT REBUT THE "UNIQUE CIRCUMSTANCES" HERE. ........ 16

      A.    The Appeal in *Zervos* Without Question Has Merit. ........................................ 16

      B.    Plaintiff Concedes that the President is Entitled to Judicial Deference................ 17

CONCLUSION....................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Artibee v. Home Place Corp.*,
   28 N.Y.3d 739 (2017) .........................................................................................11

*Assenzio v. A.O. Smith Water Prods.*,
   No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) .........................8, 9

*Behrens v. Pelletier*,
   516 U.S. 299 (1996).........................................................................................17

*Belabarodaya v. Carepro of NY, Inc.*,
   No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) .........................1, 8

*Broadway 500 W. Monroe Mezz II LLC v. Transwestern Mezzanine Realty
   Partners II, LLC*,
   80 A.D.3d 483 (1st Dep't 2011) .........................................................................4, 15

*Cheney v. U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004).......................................................................... *passim*

*Clifford v. Trump*,
   339 F. Supp.3d 915 (C.D. Cal. 2018) ...........................................................14

*Clinton v. Jones*,
   520 U.S. 681 (1997).......................................................................... *passim*

*Crawford-El v. Britton*,
   523 U.S. 574 (1998).........................................................................................17

*Feinstein v. Bergner*,
   48 N.Y.2d 234 (1979) .......................................................................................10

*Fin. Indus. Regulatory Auth., Inc. v. Fiero*,
   10 N.Y.3d 12 (2008) .........................................................................................11

*Goldstone v. Gracie Terrace Apartment Corp.*,
   110 A.D.3d 101 (1st Dep't 2013) ...................................................................15

*Grisi v. Shainswrit*,
   119 A.D.2d 418 (1st Dep't 1986) ...................................................................7, 9

*Jacobus v. Trump*,
   55 Misc.3d 470 (Sup. Ct., N.Y. Cnty. 2017..................................................6, 14

ii

*Jones v. Clinton*,
   No. 95-1167, BL-62 (8th Cir. Apr. 16, 1996)........................................................19

*In re Level 3 Commc'ns, LLC v. Essex Cnty.*,
   54 Misc.3d 291 (Sup. Ct., Essex Cnty. 2016)..........................................................9

*Miller v. Miller*,
   109 Misc.2d 982 (Sup. Ct., Suffolk Cnty. 1981) ...........................................2, 8, 9

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982)..............................................................................................13

*People v. Shakur*,
   215 A.D.2d 184 (1st Dep't 1995) ............................................................................8

*Pludeman v. Northern Leasing Systems*,
   No. 101059/04, 2015 WL 7008051 (Sup. Ct., N.Y. Cnty. Mar. 13, 2015) ..............9

*Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online*,
   8 Misc.3d 820 (Sup. Ct., N.Y. Cnty. 2005) ...........................................................16

*In re Reynders v. Conway*,
   79 A.D.2d 863 (4th Dep't 1980).............................................................................8

*Rinaldi v. Viking Penguin, Inc.*,
   52 N.Y.2d 422 (1981) ...........................................................................................15

*Trump v. Deutsche Bank AG*,
   140 S.Ct. 660 (U.S. Dec. 13, 2019) .................................................................18, 19

*Trump v. Mazars USA, LLP*,
   --- S.Ct. ----, 2019 WL 6328115 (U.S. Nov. 25, 2019) ...................................18, 19

*Trump v. Vance*,
   941 F.3d 631 (2d Cir. 2019)..................................................................................17

*Trump v. Vance*,
   No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019)............................17, 18, 19

*United States v. Nixon*,
   418 U.S. ................................................................................................................18

*In re Weinbaum's Estate*,
   51 Misc.2d 538 (Surr. Ct., Nassau Cnty. 1966) .....................................................8

*Williams v. Brooks*,
   996 F.2d 728 (5th Cir. 1993) .................................................................................18

iii

**Other Authorities**

CPLR § 2201.................................................................................................................6, 7

CPLR § 3211(e)..............................................................................................................11

iv

Defendant Donald J. Trump respectfully submits this memorandum of law in reply to plaintiff's memorandum of law in opposition to his motion to stay pending the appeal in *Zervos v. Trump* ("Pl. Mem." or "Opposition") and in further support of the motion.[1]

## PRELIMINARY STATEMENT

The threshold dispositive issue in this case is identical to the issue on appeal to the Court of Appeals in *Zervos* -- whether a state court's exercise of jurisdiction over the President while he or she is in office is permissible under the U.S. Constitution. *See Clinton v. Jones*, 520 U.S. 681, 690-91, 691 n.13 (1997) (state court jurisdiction over the President poses an "important constitutional issue[]"). As President Trump showed in his opening memorandum, just as a stay pending that appeal was granted by the First Department in *Zervos*, so, too, a stay should be granted here.

Plaintiff does not and cannot refute President Trump's showing. Instead, plaintiff resorts to mischaracterizations of the law and of the record. Plaintiff asserts that the motion should be denied because, she claims, this Court is bound by the First Department's 3-2 decision on the merits in *Zervos*. (Pl. Mem. 8.) That is not so. Courts, including this Court, have repeatedly recognized -- including where there is binding Appellate Division authority -- that "[i]f the point of law involved in the case, and potentially dispositive of it, is about to be definitively decided in another case presently on appeal before a court whose decisions bind the trial court, the action may be stayed to await the decision." *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018,

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in President Trump's opening memorandum of law ("Def. Mem."). Submitted herewith in support of the motion is the reply affirmation of Marc E. Kasowitz, dated February 27, 2020 ("Kasowitz Reply Aff."). References to "Reply Ex. __" are to exhibits to that affirmation. The affirmation of Roberta Kaplan, dated February 18, 2020, submitted in opposition to the motion is referred to as "Kaplan Aff."

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 174 of 201

2018 WL 3733304, at *1 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) (citation omitted).

The cases that plaintiff cites (Pl. Mem. 8) are wholly inapposite. Among other things, in those cases, unlike here: the Appellate Division had not stayed proceedings pending appeal in the separate action; the party seeking the stay would not be irreparably harmed if the action continued; there was no claim of official immunity; and the President, who is entitled to deference under the U.S. Constitution, was not seeking the stay. Indeed, plaintiff's "reliance on cases that do not involve [the President] is altogether misplaced." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385 (2004).

Plaintiff's contention that this Court may not stay the action pending the *Zervos* appeal because it is bound by the First Department's decision in *Zervos* thus makes no sense. Not only is the First Department decision set to be reviewed by the Court of Appeals, but the First Department itself decided to grant a stay in *Zervos* pending that same appeal. There is no principled reason, and plaintiff offers none, why this Court should not be bound by *that* First Department decision or why a stay is appropriate in *Zervos*, but not here, where precisely the same threshold issue is at stake.

Plaintiff also contends (Pl. Mem. 8) that a stay may be granted pending an appeal in another case only when the decision on the appeal is "imminent." But, in the single case to which plaintiff cites that denied a stay on this ground, *Miller v. Miller*, 109 Misc.2d 982, 983 (Sup. Ct., Suffolk Cnty. 1981), there was no appeal even pending; only a motion for leave to appeal had been filed, but not granted. Here, by contrast, leave to appeal and a stay pending appeal have been granted in *Zervos*, and the appeal will be fully briefed by May 11, 2020. Neither *Miller* nor any other case holds or even suggests that, under such circumstances, a stay pending an appeal on a threshold dispositive issue is not justified.

2

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 175 of 201

Plaintiff claims that "unique circumstances of this litigation" -- defendant's supposed "dilatory" behavior and plaintiff's purported prejudice from a stay -- make a stay here inappropriate. Again, that is not so. Plaintiff's complaints about delay (Pl. Mem. 11-13) are, apart from irrelevant, unfounded. Cutting through the verbiage, plaintiff appears to complain about the time it took to serve the complaint, but she filed her complaint on November 4, 2019, and served it only seven business days later. She also complains about the President's order to show cause to dismiss on jurisdictional grounds, but admits that he filed it two weeks before the agreed upon date for moving to dismiss, that she responded the next business day, and that the Court declined to sign the order the same day. (Pl. Mem. 3-4.) Plaintiff also falsely asserts that this motion to stay was in response to and an attempt to avoid a discovery request she served on January 30, 2020 (Pl. Mem. 1, 6), but she omits that she already knew, a week before, on January 23, when defendant's counsel asked her counsel to consent to this motion, which was filed promptly after the First Department granted leave to appeal and a stay in *Zervos* (*id.* at 5, 6; Kaplan Aff. ¶ 6, Ex. 1). In fact, it would be more accurate to say that plaintiff timed her discovery request so that she could make that false assertion. In short, there has been no undue delay here.[2]

Second, as in *Zervos*, the necessity for a resolution of this threshold jurisdictional issue under the U.S. Constitution -- which, the First Department recognized, is an issue of "first

---

[2] Plaintiff also makes misstatements concerning *Zervos*. She asserts, for example, that there, the First Department granted the stay pending appeal, when only depositions remained to be completed. (Pl. Mem. 6.) This is not so; there are numerous outstanding issues from the parties concerning document production as well as outstanding third-party document subpoenas. *See, e.g.*, Kasowitz Reply Aff. ¶ 5; *Zervos v. Trump*, Index. No. 150522/2017 NYSCEF Doc. No. 249 (discussing forthcoming privilege motion); Kaplan Aff. Ex. 3 at 2 n.2 (referring to remaining "fact discovery" other than depositions). Plaintiff also refers (Pl. Mem. 12-13) to the *Zervos* plaintiff's request to the Court of Appeals to expedite the appeal -- but omits to mention that the Court of Appeals *denied* that request (Kaplan Aff. Ex. 6).

3

impression," *Zervos*, 171 A.D.3d at 113 -- is a "unique consideration" far outweighs any burden

on plaintiff resulting from allowing the Court of Appeals to decide the issue (Def. Mem. 11-13).

As for prejudice, plaintiff cannot show -- indeed, her own admissions belie her claim --

that a stay would result in any significant burden.  She asserts conclusorily that the allegedly

defamatory statements are causing her continuing harm, including that *Elle* magazine to decline

to renew her contract to write a column.  (Pl. Mem. 14-15.)  Even if that were true, and *Elle*

magazine's publisher and other sources cited by the *New York Times* deny it,[3] by February 20,

2020, she had already, as she admitted to the *Times*, "received inquiries from four other

publications asking if she would consider writing for them."  (Kasowitz Reply Ex. A.)  Plaintiff's

claim that her alleged harm was continuing and compounding was always far-fetched, to say the

least, but is refuted by her own words.

In any event, the supposedly continuing harm that plaintiff claims is irrelevant to this

motion.  Plaintiff seeks damages for the alleged harm to her reputation.  Where the claimed

injury "can be compensated by damages [it] therefore cannot demonstrate irreparable harm" so

as to warrant equitable relief.  *Broadway 500 W. Monroe Mezz II LLC v. Transwestern*

*Mezzanine Realty Partners II, LLC*, 80 A.D.3d 483, 484 (1st Dep't 2011).  If, as plaintiff claims,

allegations of ongoing harm to reputation are so prejudicial that a court cannot grant a stay, then

defamation actions could never be stayed, but plaintiff does not and cannot point to a single case

in support of that erroneous proposition, and *Zervos* itself would not have been stayed.

---

[3]     *See* Kasowitz Reply Ex. A (Katherine Rosman and Jessica Bennett, *What Happened Between E. Jean Carroll and Elle Magazine?*, NEW YORK TIMES (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/style/ejean-carroll-fired-elle.html (citing sources attributing *Elle* magazine's termination to plaintiff's decision to publish excerpts from her book in another magazine, a decision at which, plaintiff admits, *Elle* was "extremely disappointed.").)

If there is a "unique circumstance" here, it is that the President is involved. Plaintiff fails to refute defendant's showing (Def. Mem. 7-11) that -- given the novel threshold official immunity issue claim on appeal in *Zervos* and the deference afforded the President's overriding responsibilities under Article II -- the U.S. Constitution mandates a stay here. Plaintiff asserts that "the Constitution does not require a stay based simply on Trump's say-so" (Pl. Mem. 15), but the requested stay here is required, not based on his "say-so," but on the "say-so" of numerous cases, including the First Department's decision granting a stay pending appeal in *Zervos*, and the U.S. Constitution (Def. Mem. 8-11).

Plaintiff seeks to distinguish the numerous cases that have granted Presidents stays pending appeal (Def. Mem. 9-10) on the ground that, in those cases, the appeals were pending in the same case. (Pl. Mem. 16.) That is a distinction without a difference. The stays in those cases were granted to prevent proceedings in the trial courts from abrogating the very relief the President sought to vindicate on appeal and to prevent an unnecessary "occasion for constitutional confrontation" with the Executive Branch, *Cheney*, 542 U.S. at 389-90 (citation omitted). A stay here would serve precisely the same purposes.

And, while plaintiff concedes, as she must, that the courts are constitutionally required to afford the President deference, plaintiff contends that this action should nonetheless proceed because state courts can accommodate the President in overseeing litigation. (Pl. Mem. 20-21.) That misses the point. The threshold issue in this case, which the Court of Appeals will resolve in *Zervos*, is not whether state courts can accommodate the President once they have asserted jurisdiction over him or her, but whether the very exercise of jurisdiction over the President by state courts is constitutionally permissible in the first place. (Def. Mem. 7-8.) The issue on this motion, on the other hand, is whether deference to the President mandates a stay while the Court

5

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 178 of 201

of Appeals resolves that threshold issue. As shown, and as numerous courts have held, it does. (Def. Mem. 9-10.)

Having no valid argument to oppose the President's motion, plaintiff argues that the motion should be denied because, she asserts, he "did not litigate presidential immunity" in six other cases against him. (Pl. Mem. 18-19.) Plaintiff's argument, even if it otherwise had any merit (and it does not), is completely misleading. Four of the six cases plaintiff cites are in federal court, where there can be no claim of presidential immunity, as the U.S. Supreme Court held in *Clinton v. Jones*, while recognizing that state court actions might very well present a "more compelling case." 520 U.S. 681, 691 (1997). And, as to the two state court cases plaintiff refers to: *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., Bronx Cnty.) was filed over a year before President Trump took office, the President *did* assert presidential immunity, and the First Department stayed the action pending the President's appeal, on constitutional grounds, among others, from an order compelling the President's trial deposition. *Jacobus v. Trump*, 55 Misc.3d 470, 486 (Sup. Ct., N.Y. Cnty. 2017), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017), *lv. denied*, 31 N.Y.3d 903 (2018) was dismissed before the President took office. Moreover, even in the federal actions -- in *every single federal court action* plaintiff cites -- the court granted the President stays of discovery, including on the ground that the President is owed judicial deference.

Accordingly, the President's motion for a stay should be granted.

## ARGUMENT

Plaintiff does not and cannot refute the President's showing that, under the U.S. Constitution, the caselaw, and CPLR § 2201, a stay is mandated here pending resolution by the Court of Appeals in the *Zervos* action of precisely the same threshold jurisdictional issue that is

6

dispositive here. Each of the arguments plaintiff does make is based on a fundamental misunderstanding of the law or the facts or both.

## I. THE FIRST DEPARTMENT'S DECISION IN *ZERVOS*, SUPPORTS, RATHER THAN BARS, A STAY HERE.

### A. This is a "Proper Case" for a Stay of Proceedings Under CPLR § 2201.

As the First Department has recognized, a stay pending the appeal in *Zervos* "provides for the opportunity for appellate review of certain orders" -- a "fundamental right[] to which a litigant is entitled . . . [which] cannot be ignored, no matter how pressing the need for the expedition of cases." *Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986). That applies to any litigant and, *a fortiori* to the President in deference to the President's overriding responsibilities under Article II of the Constitution.

### B. The First Department's Decisions in *Zervos* Supports a Stay Here.

Plaintiff asserts that, under New York law, a stay would be "improper" here because this Court is bound by decisions of the Appellate Division -- here, the First Department's 3-2 decision on the merits in *Zervos*. (Pl. Mem. 7-8.) But it was the First Department which, after that decision, decided to grant leave to appeal the decision and granted a stay pending that appeal. Under plaintiff's own logic, this Court should, if anything, be bound by the First Department's stay order here.[4]

But, in any event, by granting the stay, this Court would not contravene the First Department's decision on the merits. Rather, it would merely wait for the decision of the Court of Appeals on the merits -- a decision which is binding on all New York courts.[5]

---

[4]     Plaintiff cannot cite to a single case in which a party was denied a stay pending appeal in a separate action where -- as here -- the proceedings in the separate action were themselves stayed by an appellate court.

[5]     This was the procedural posture in cases cited by the President in his initial memorandum, which granted stays pending appeals in separate actions despite Appellate

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 180 of 201

Indeed, plaintiff's argument proves too much. All Appellate Division decisions are binding on all trial courts (absent a contrary decision in the Court of Appeals or in the Department in which the trial court sits). *See People v. Shakur*, 215 A.D.2d 184 (1st Dep't 1995) ("Trial courts within this department must follow the determination of the Appellate Division in another department until such time as this court or the Court of Appeals passes on the question."). Thus, under plaintiff's argument, a trial court would never be empowered to grant a stay pending any appeal to the Court of Appeals because the Appellate Division decision appealed from would be binding. As shown (Def. Mem. 11), that is not the law.

The cases plaintiff cites are readily distinguishable, and none supports her argument. (Pl. Mem. 8.) First, in none of those cases did the appellate court in the separate action stay proceedings pending appeal, as the First Department did in *Zervos*.[6] Second, in none of those cases would the movants have been irreparably harmed absent a stay.[7] Third, none of those

_____

Division authority. (Def. Mem. 11.) *See In re Reynders v. Conway*, 79 A.D.2d 863, 864 (4th Dep't 1980) ("court had the power to stay petitioners['] . . . action until the [separate] appeal was argued in the Court of Appeals"); *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018, 2018 WL 3733304, at *1 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) (staying discovery until the Court of Appeals resolved a joint appeal from two binding Second Department decisions) (internal quotations omitted); *Assenzio v. A.O. Smith Water Prods.*, No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) (granting stay pending appeal in Appellate Division that itself would turn on the outcome of an appeal in the Court of Appeals in a third separate action).

[6]      In *Schneiderman*, 53 Misc.3d 1210(A), 2016 WL 6330584, the case plaintiff relies most heavily on (Pl. Mem. 9), it is clear that the appellant in the separate action, did *not* seek or obtain a stay pending appeal. (Reply Ex. C (Order of First Department granting leave to appeal in *Trump Entrepreneur Initiative* without granting a stay); NYSCEF Doc. No. 285, Stipulated Briefing Schedule for Motion to Compel, *In re People ex rel. Schneiderman v. Trump Entrepreneur Initiative LLC*, index No. 451463/2013 (indicating that the case continued during the pendency of the appeal to the Court of Appeals).

[7]      Here because the issue on appeal will resolve the threshold issue of whether the court's very assertion of jurisdiction violates the President's constitutional right of immunity, and prevent a constitutional confrontation, the President, and the public, would be irreparably harmed absent a stay. (Def. Mem. 11-12.) Plaintiff's cases involve no such threshold constitutional issue. *See Schneiderman*, 53 Misc.3d 1210(A), 2016 WL 6330584 at *7 (defendant in summary proceeding denied stay pending appeal in separate action that would determine whether some of

8

cases involved the President and therefore plaintiff's reliance on them is "altogether misplaced," *see Cheney*, 542 U.S. at 385.

Plaintiff also contends (Pl. Mem. 8) that a stay may be granted pending an appeal in another case only when the decision on the appeal is "imminent."  But, in the single case to which plaintiff cites that denied a stay on this ground, *Miller*, 109 Misc.2d at 983, there was no appeal even pending; only a motion for leave to appeal had been filed, but not granted.  Here, by contrast, leave to appeal and a stay pending appeal have been granted in *Zervos* and the appeal will be fully briefed by May 11, 2020.  Neither *Miller* nor any other case holds or even suggests that, under such circumstances, a stay pending appeal on a threshold dispositive issue is not justified.  To the contrary, where, as here, the equities are strong or the appeal will have a "significant impact" on a case, it is irrelevant whether the appeal is imminent.  *See Assenzio*, 2015 WL 5283301, at *2 (staying proceedings even though appeal in separate action was not "imminent" because it would have a "significant impact" on the case); *Pludeman v. Northern Leasing Systems*, No. 101059/04, 2015 WL 7008051, *2 (Sup. Ct., N.Y. Cnty. Mar. 13, 2015) (granting stay pending an unperfected appeal because "'the equities involved [were] apparent and strong'" in avoiding a waste of judicial and party resources).

---

plaintiff's claims were valid); *Miller v. Miller*, 109 Misc.2d 982, 983 (Sup. Ct., Suffolk Cnty. 1981) (defendant denied stay pending potential appeal, which had not yet been granted leave, in separate action that would determine whether defendant was required to provide financial disclosure affidavit); *In re Weinbaum's Estate*, 51 Misc.2d 538, 539 (Surr. Ct., Nassau  Cnty. 1966) (court denied stay pending appeal involving whether claim against administratrix requiring an accounting was time-barred).  In *In re Level 3 Commc'ns, LLC v. Essex Cnty.*, 54 Misc.3d 291, 293 (Sup. Ct., Essex Cnty. 2016), the plaintiff was *granted* a stay pending appeal to the Appellate Division in a separate action, based on the chance that Appellate Division would overturn its own prior "binding authority," on whether plaintiff had properly asserted a claim for a tax refund.

And, contrary to plaintiff (Pl. Mem. 10), whether the parties are substantively identical and share a common dispute has no bearing on whether a stay pending an appeal in another action should be granted, and no case holds that it does. As shown, the applicable standard here focuses on whether there is a common, dispositive issue. (Def. Mem. 11-12.)

## II.     THERE ARE NO "UNIQUE CIRCUMSTANCES" HERE TO JUSTIFY DENYING A STAY.

Having failed to establish why a stay is not appropriate under relevant case law, plaintiff asserts that there are "unique considerations" justifying denial under these circumstances. (Pl. Mem. 11.) However, none of these so-called "unique circumstances" withstands scrutiny.

### A.     There Has Been No Undue Delay.

Plaintiff's complaints about delay (Pl. Mem. 11-13) are, apart from irrelevant, unfounded.

Cutting through the verbiage, plaintiff appears to complain about the time it took to serve the complaint, but she filed her complaint on November 4, 2019, and served it only seven business days later on November 13, 2019. (NYSCEF Doc. Nos. 2, 17.) And even if defendant was aware of the action, as plaintiff contends (Pl. Mem. 2-3), that is irrelevant to her obligation to effectuate service. *See Feinstein v. Bergner*, 48 N.Y.2d 234, 241-42 (1979) (notice of the complaint does not cure a defect in service of process because "notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court").[8]

Plaintiff also complains about the President's order to show cause to dismiss on

---

[8]     Plaintiff insinuates (Pl. Mem. 3) that defendant's new co-counsel in this action, Kasowitz Benson Torres, is to blame because plaintiff was told on or around November 4, 2019, that the firm could not accept service of her summons and complaint on the President's behalf. However, that was accurate; the firm -- which only entered an appearance, as co-counsel, on February 4, 2020 -- did not then represent the President in this action and was therefore not authorized to accept service. (Kasowitz Reply Aff. ¶ 5; NYSCEF Doc. Nos. 40-42.)

10

jurisdictional grounds, but admits that he filed it two weeks before the agreed upon date for
moving to dismiss, that she responded the next business day, and that the Court ruled the same
day. (Pl. Mem. 3-4; (NYSCEF Doc. No. 36.) The Court did not "agree[]" with the arguments
plaintiff made in opposition, as she claims (Pl. Mem. 4-5), but only "decline[d] to sign" the order
to show cause on the ground that the Court would not "take judicial notice that the President of
the United States has resided in the White House for the past three years." (NYSCEF Doc. No.
36.)

     Further, plaintiff falsely asserts that the President "has not formally asserted [immunity
under the Supremacy Clause] in this litigation" (Pl. Mem. 12) when, in fact, President Trump's
Answer, dated January 23, 2020, asserts as affirmative defenses, among others, immunity under
the Supremacy Clause and preserves his defense of lack of personal jurisdiction. (Reply Ex. B at
¶¶ 147, 155.) The timing for the President's assertion of this Court's lack of subject matter
jurisdiction is also irrelevant given that "a court's lack of subject matter jurisdiction is not
waivable, but may be raised at any stage of the action, and the court may, *ex mero motu* [on its
own motion], at any time." *Fin. Indus. Regulatory Auth., Inc. v. Fiero*, 10 N.Y.3d 12, 17 (2008)
(citation omitted); *see also* CPLR 3211(e) ("motion based upon [lack of subject matter
jurisdiction] may be made at any subsequent time or in a later pleading"); *Artibee v. Home Place
Corp.*, 28 N.Y.3d 739, 746 (2017) ("immunity from suit" stemming from the Constitution is a
"constitutional limitation on 'the jurisdiction of Supreme Court'").[9]

---

[9]    Defendant does not, as plaintiff claims (Pl. Mem. 13), engage in "gamesmanship" or
"opportunism" here, because he opposed plaintiff's request to designate this action as related to
*Zervos*, which has no bearing here. That opposition -- prior to the First Department's decision
granting a leave to appeal and a stay -- concerned the differences between the defamation claims,
not the threshold issue of whether a state court may exercise jurisdiction over the President
relevant to this motion. If anything, it is plaintiff who is engaged in opportunism by denying the
similarities between this case and *Zervos* after previously arguing this action and *Zervos* "present

Plaintiff also falsely asserts that this motion to stay was in response to and an attempt to

avoid a discovery request she served on January 30, 2020 (Pl. Mem. 1, 6), but she omits that she

already knew, a week before, on January 23, when defendant's counsel asked her counsel to

consent to this motion, which was filed promptly after the First Department, on January 7,

granted leave to appeal and a stay in *Zervos* (*id.* at 5, 6; Kaplan Aff. ¶ 6, Ex. 1).  In fact, it would

be more accurate to say that plaintiff timed her discovery request so that she could make that

false assertion.  In short, there has been no undue delay here.

Plaintiff also makes misstatements concerning *Zervos*.  She asserts, for example, that

there, the First Department granted the stay pending appeal, when only depositions remained to

be completed.  (Pl. Mem. 6.)   This is not so; there are numerous outstanding issues from the

parties concerning document production as well as outstanding third-party document subpoenas.

*See, e.g.*, Kasowitz Reply Aff. ¶ 5; *Zervos v. Trump*, Index. No. 150522/2017 NYSCEF Doc. No.

249 (discussing forthcoming privilege motion); Kaplan Aff. Ex. 3 at 2 n.2 (referring to remaining

"fact discovery" other than depositions).  Plaintiff also refers (Pl. Mem. 12-13) to the *Zervos*

plaintiff's request to the Court of Appeals to expedite the appeal -- but omits to mention that the

Court of Appeals *denied* that request (Kaplan Aff. Ex. 6).

### B.    A Stay Will Irreparably Harm the President and the Public Interest.

Plaintiff fails to refute President Trump's showing of irreparable harm and prejudice

absent a stay (Def. Mem. 11-13), which extends to the public interest. *See also Clinton v. Jones*,

520 U.S. at 697-98 (agreeing that the President "occupies a unique office with powers and

---

similar, and often novel, legal issues," including "the same argument[s] that Trump made, and
Justice Schecter considered, in *Zervos*," and that "[a]ssigning two different Justices to these
cases would both amplify the Court's workload unnecessarily and risk conflicting
rulings."  (Kasowitz Aff., Ex. A (NYSCEF Nos. 3 at ¶¶ 6, 8, 24 at ¶¶ 9, 10, 12).)

responsibilities so vast and important that the public interest demands that he devote *his undivided time and attention* to his public duties.") (emphasis added); *Nixon v. Fitzgerald*, 457 U.S. 731, 751-53, 754 (1982) (recognizing that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government," such that "a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch.").

Plaintiff's claim that the President has not provided "support for the claim that discovery would 'distract' him from his public duties" (Pl. Mem. 17) is both irrelevant and false. Absent a stay, the President would be deprived of his constitutional right to immunity from this action while in office, including his immunity to the extensive and burdensome discovery requests plaintiff has served under the Court's scheduling order. Failing to grant a stay further improperly imposes an unnecessary constitutional confrontation concerning whether this Court's exercise of jurisdiction violates the Constitution. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 389-90 (2004) (where the "Executive's Article II prerogatives" are at issue -- here whether the President's Article II prerogatives immunize him from suit in state court -- courts should "avoid[] whenever possible" "'occasion[s] for constitutional confrontation.'").

Having no valid argument to oppose the President's motion, plaintiff argues that the motion should be denied because, she asserts, he "did not litigate presidential immunity" in six other cases against him. (Pl. Mem. 18-19.) Plaintiff's argument, even if it otherwise had any merit (and it does not), is completely misleading. Four of the six cases plaintiff cites are in federal court, where there can be no claim of presidential immunity, as the U.S. Supreme Court held in *Clinton v. Jones*, while recognizing that state court actions might very well present a

"more compelling case." 520 U.S. 681, 691 (1997). Nonetheless, the federal "personal conduct" cases cited by plaintiff only further support a stay here, because in every single case cited by plaintiff, the President received stays of discovery, including stays that the President requested on the ground that he is owed judicial deference.[10] Accordingly, plaintiff's citations only add to the authority, cited at Mem. 9-10, that the President should be afforded a stay here.

In *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., Bronx Cnty.) -- which was filed on September 9, 2015, over a year before President Trump took office, the President asserted Presidential immunity in response to a trial subpoena. Moreover, the First Department has stayed that action pending the President's appeal, on constitutional grounds, among others, from an order compelling the President's trial deposition. *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019).

And in *Jacobus v. Trump*, No. 24973/2015E (Sup. Ct., N.Y. Cnty.), a defamation action against the President, the court granted the President's motion to dismiss on January 10, 2017, before the President took office. *Jacobus v. Trump*, 55 Misc.3d 470, 486, (Sup. Ct., N.Y. Cnty. Jan. 10, 2017), *aff'd* 156 A.D.3d 452 (1st Dep't 2017), *lv. denied* 31 N.Y.3d 903 (2018).

---

[10]     *See Nwanguma v. Trump*, No. 16 Civ. 247 (W.D. Ky.), Doc. No. 58 (Aug. 9, 2017) (Doc. No. 36-1 (Apr. 20, 2017) at 4, 6 (granting the President's request for interlocutory appeal and stay of discovery pending appeal, brought on grounds that included the burden imposed on the President); *Johnson v. Trump*, No. 8:19 Civ. 0475 (M.D. Fla. July 10, 2019) Doc. No. 73 at 8-10, Doc. No 83 at 4:3-14 (abating discovery following President Trump's motion for a protective order, including on the ground of the deference owed his office.); *Doe v. Trump Corp.*, No. 18-cv-9936, Doc. No. 54 (S.D.N.Y. Dec. 20, 2018) (staying discovery pending resolution of President's motion to dismiss); *Clifford v. Trump*, 339 F. Supp.3d 915, 922, 928 (C.D. Cal. 2018) (denying plaintiff's request to conduct discovery after President Trump brought a motion to strike the complaint).

14

Case 1:20-cv-07311   Document 1-4   Filed 09/08/20   Page 187 of 201

### C.    A Stay Will Not Prejudice Plaintiff.

Plaintiff cannot show -- indeed, her own admissions belie her claim -- that a stay would result in any significant burden.  She asserts conclusorily that the allegedly defamatory statements are causing her continuing harm, including that *Elle* magazine to decline to renew her contract to write a column.  (Pl. Mem. 14-15.)  Even if that were true, and *Elle* magazine's publisher and other sources cited by the *New York Times* deny it,[11] by February 20, 2020, she had already, as she admitted to the *Times*, "received inquiries from four other publications asking if she would consider writing for them."  (Kasowitz Reply Ex. A.)  Plaintiff's claim that her alleged harm was continuing and compounding was always far-fetched, to say the least, but is refuted by her own words.

In any event, the supposedly continuing harm that plaintiff claims is irrelevant to this motion.  Plaintiff seeks damages for the alleged harm to her reputation.  Where the claimed injury "can be compensated by damages [it] therefore cannot demonstrate irreparable harm" so as to warrant equitable relief.  *Broadway 500 W. Monroe Mezz II*, 80 A.D.3d at 484; *see also Goldstone v. Gracie Terrace Apartment Corp.*, 110 A.D.3d 101, 104, 106 (1st Dep't 2013) ("The balance of the equities does not weigh in plaintiff's favor" where the "claimed injury would be compensable by money damages").  If, as plaintiff claims, allegations of ongoing harm to reputation are so prejudicial that a court cannot grant a stay, then defamation actions could never be stayed, but plaintiff does not and cannot point to a single case in support of that erroneous proposition.  *Compare, e.g.*, *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 431 (1981)

---

[11]    *See* Kasowitz Reply Ex. A (Katherine Rosman and Jessica Bennett, *What Happened Between E. Jean Carroll and Elle Magazine?*, NEW YORK TIMES (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/style/ejean-carroll-fired-elle.html (citing sources attributing *Elle* magazine's termination to plaintiff's decision to publish excerpts from her book in another magazine, a decision at which, plaintiff admits, *Elle* was "extremely disappointed.").)

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 188 of 201

(discussing stay pending appeal granted by the Appellate Division in connection with leave to appeal in defamation action); *Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online*, 8 Misc.3d 820, 822 (Sup. Ct., N.Y. Cnty. 2005) (noting stay of judgment granted to defamation defendant). Indeed, under plaintiff's argument, *Zervos* itself would not have been stayed.

## III. PLAINTIFF DOES NOT REBUT THE "UNIQUE CIRCUMSTANCES" HERE.

If there are any "unique circumstances," it is that the case involves the President and appeal of a threshold claim of immunity.

### A. The Appeal in *Zervos* Without Question Has Merit.

Plaintiff argues that the appeal in *Zervos* has no merit because, she contends, First Department's decision in *Zervos* "confirm[s] the weakness of Trump's immunity argument on the merits" because this case and *Zervos* "differ[s] from *Clinton* in only one respect: they were brought in state, not federal court. But that does not change the clear force of the Supreme Court's logic." (Pl. Mem. 19.) In fact, the Supreme Court's logic in *Clinton v. Jones* was explicitly based on that critical difference. The Court took pains to differentiate the claim of immunity made in federal court -- which "relie[d] heavily on the doctrine of separation of powers that restrains each of the three branches of Federal Government from encroaching on the domain of the other two" -- from a claim of immunity in state court, which would rely on the Supremacy Clause. The Supreme Court recognized that the state court immunity claim "may implicate concerns that are *quite different* from the interbranch separation-of-powers questions addressed here," and therefore potentially "present a more compelling case for immunity." *Id.* at 691, 691 n.13 (emphasis added).

There is therefore no question that the President's appeal has merit. The First Department in *Zervos* confirmed precisely that by granting leave to appeal to the Court of Appeals and staying proceedings pending that appeal. *Zervos*, 2020 WL 63397, 2020 N.Y. Slip

16

Op. 60193(U). Likewise, the Court of Appeals for the Second Circuit in *Trump v. Vance* readily

acknowledged that "the President may be correct that state courts lack the authority to issue him

orders." 941 F.3d 631, 642-43 (2d Cir. 2019), *cert. granted*, 140 S.Ct. 659 (Mem) (U.S. Dec. 13,

2019) (No. 19-635). And, two Justices found in dissent that President Trump's appeal should

have been granted. *Zervos*, 171 A.D.3d at 131 (Mazzarelli, J., dissenting in part).

### B. Plaintiff Concedes that the President is Entitled to Judicial Deference.

Plaintiff concedes that, as shown (Def. Mem. 8-9), the courts are constitutionally required

to afford the President with at least "some special consideration" (Pl. Mem. 21) but nonetheless

contends that this action should proceed because state courts can be trusted as well as federal

courts to accommodate the President's needs (Pl. Mem. 20-21). This misses the point. The

issue, which the Court of Appeals will resolve, is not whether state courts can accommodate the

President in overseeing the litigation, but whether the very exercise of jurisdiction over the

President by state courts is constitutionally permissible in the first place. (Def. Mem. 7-8.)

Thus, under these circumstances, as President Trump has shown, federal courts (and indeed state

courts), accommodate the President by granting his requests for stays or interlocutory appeals on

constitutional issues the one presented here. (Def. Mem. 9-10.)[12]

Plaintiff seeks to distinguish the numerous cases that granted the President stays pending

appeal or interlocutory appeals (Def. Mem. 9-10) on the ground that, in those cases, the appeals

---

[12] Plaintiff also does not and cannot contest that official immunity claims -- like the one at issue here -- exist to protect government officials from "*pretrial* matters as discovery …, as '[i]nquiries of this kind can be peculiarly disruptive of effective government." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (emphasis in original) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Crawford-El v. Britton*, 523 U.S. 574, 598, 598 n.19 (1998) ("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery" and, if denied, "the official is entitled to bring an immediate interlocutory appeal of that legal ruling on the immunity question."); *see also* Def. Mem. 8 (citing cases).

INDEX NO. 160694/2019
RECEIVED NYSCEF: 02/28/2020

Case 1:20-cv-07311 Document 1-4 Filed 09/08/20 Page 190 of 201

were pending in the same case.  (Pl. Mem. 16.)[13]  That is a distinction without a difference.  The stays in those cases were granted to prevent proceedings in the trial courts from abrogating the very relief the President sought to vindicate on appeal.  *See Cheney*, 542 U.S. at 389-90 (courts should "avoid[] whenever possible" "'occasion[s] for constitutional confrontation.'"); *see also United States v. Nixon*, 418 U.S. at 691-92.  A stay here would serve precisely the same purpose.

Plaintiff claims that the standard for staying a case based on an appeal in a separate action is "unsurprisingly, far more stringent." (Pl. Mem. 16.)  Not only is plaintiff wrong that courts apply a more stringent standard under ordinary circumstances, but because this case involves the President, it is subject to a far *less* stringent standard.  *See, e.g.*, *Cheney*, 542 U.S. at 381-2 (Vice President was entitled to interlocutory review, by writ of mandamus, of a discovery order, given, among other things, the deference owed to the Executive Branch, even though "[w]ere the Vice President not a party in the case, the argument that the Court of Appeals should have entertained an action in mandamus . . . might present different considerations"); Def. Mem. 8-10 (citing cases).  Thus, plaintiff's "reliance on cases that do not involve [the President] is altogether misplaced."  *Cheney*, 542 U.S. at 385.

Plaintiff argues that *Trump v. Mazars USA, LLP*, --- S.Ct. ----, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545), *cert. granted*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19-715); *Trump v. Deutsche Bank AG*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19A640); and *Trump v. Vance*, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019), are inapplicable because they all involved a preliminary injunctions in a "singular dispute."  (Pl.

---

[13]       In federal court, "the filing of a non-frivolous notice of interlocutory appeal following a district court's denial of a defendant's immunity defense divests the district court of jurisdiction to proceed against that defendant," *Williams v. Brooks*, 996 F.2d 728, 730 (5th Cir. 1993) (collecting cases), and therefore in effect constitutes a stay pending appeal.

18

Mem. 17.)  That is incorrect.  While *Mazars* and *Deutsche Bank* both involved Congressional

subpoenas, *Vance* is a separate dispute, against a separate party, concerning the enforcement of

subpoenas in a state grand jury proceeding.  (*See* Def. Mem. 9-10.)  Plaintiff does not even

attempt to distinguish the remaining cases in which courts have granted stays to the President,

plainly applicable here, including, in particular, the First Department's stays in *Zervos* and

*Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019), and the Eighth Circuit's

stay in *Jones v. Clinton*, No. 95-1167, BL-62 (8th Cir. Apr. 16, 1996).  *See generally* Def. Mem.

8-11.

### <u>CONCLUSION</u>

A stay of all proceedings pending the decision of the Court of Appeals in *Zervos v.*

*Trump* should be granted.

Dated: New York, New York.
      February 27, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:   */s/ Marc E. Kasowitz*
      Marc E. Kasowitz
      Christine A. Montenegro
      Paul J. Burgo

      1633 Broadway
      New York, New York 10019
      T:  (212) 506-1700
      E:  mkasowitz@kasowitz.com
         cmontenegro@kasowitz.com
         pburgo@kasowitz.com

LAROCCA HORNIK ROSEN &
      GREENBERG LLP
      Lawrence S. Rosen
      Patrick McPartland
      Jared E. Blumetti

      40 Wall Street 32nd Floor
      New York, New York 10005
      T: (212) 530-4822, 4837, 4831
      E: lrosen@lhrgb.com
         pmcpartland@lhrgb.com
         jblumetti@lhrgb.com

*Attorneys for Defendant Donald J. Trump*

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

March 2, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York, New York County
80 Centre Street, Room 326
New York, NY 10013

> *Re:*    *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Saunders:

On behalf of Plaintiff E. Jean Carroll, we write to bring to the Court's attention the complaint in *Donald J. Trump for President, Inc. v. The New York Times Company*, Index No. 152099/2020 (Sup. Ct., N.Y. Cty.), attached hereto as Exhibit A.

The attached defamation complaint was filed by the Trump campaign on February 26, 2020, the day before Defendant Donald J. Trump filed his reply brief in support of his motion to stay this defamation action. We expect that this newly-filed case will come up at the oral argument in connection with the stay motion in the above-referenced action that is scheduled for 11:30 am on March 4, 2020.

Respectfully submitted,

Roberta A. Kaplan

cc:    Counsel of Record (via NYSCEF)

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

March 6, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York, New York County
80 Centre Street, Room 326
New York, NY 10013

     *Re:*     *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Saunders:

On behalf of Plaintiff E. Jean Carroll, we write to bring to the Court's attention two additional defamation complaints filed by the Trump campaign in recent days. The first, *Donald J. Trump for President, Inc. v. WP Company LLC*, No. 20 Civ. 626 (D.D.C.), attached hereto as Exhibit A, was filed against *The Washington Post* on March 3, 2020; the second, *Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*, No. 20 Civ. 1045 (D. Ga.), attached hereto as Exhibit B, was filed against CNN on March 6, 2020.

The attached complaints closely resemble the defamation complaint against *The New York Times* that we provided to the Court on March 2, 2020, *see* Docs. No. 71-72, and discussed during oral argument on March 4, 2020.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record (via NYSCEF)

# KASOWITZ BENSON TORRES LLP

PAUL J. BURGO
DIRECT DIAL: (212) 506-1865
DIRECT FAX: (212) 835-5265
PBurgo@Kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700

FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

March 10, 2020

<u>VIA NYSCEF</u>

The Honorable Verna L. Saunders
Supreme Court of the State of New York
New York County
80 Centre Street, Room 326
New York, New York 10013

Re: *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty)

Dear Justice Saunders:

We represent defendant President Donald Trump in the above-referenced action. We write to respond to plaintiff's letters to the Court, dated March 2 and March 6, 2020, to which plaintiff attaches three complaints filed by Donald J. Trump for President, Inc., in support of her waiver argument in opposition to defendant's motion to stay pending the appeal to the Court of Appeals in *Zervos v. Trump*, 171 A.D.3d 110 (1st Dep't 2019) (Mot. Seq. No. 2).

We note that: the complaints were filed, not by President Trump, but by Donald J. Trump for President, Inc., a Virginia corporation; when the plaintiff in *Zervos* made the same waiver argument to the First Department, the majority ignored it and the dissent rejected it, *Zervos v. Trump*, 171 A.D.3d 110, 131 (2019) (Mazarelli, J, dissenting); and the argument presumably will be made to and decided by the Court of Appeals.

Respectfully submitted,

Paul J. Burgo

cc:     Counsel of Record (via NYSCEF)

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

March 10, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York, New York County
80 Centre Street, Room 326
New York, New York 10013

  *Re:* *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Saunders:

  We write on behalf of Plaintiff E. Jean Carroll in brief response to the letter filed yesterday by Defendant Donald J. Trump. *See* Doc. No. 76. Our two prior submissions intentionally avoided legal argumentation and simply attached for Your Honor's information the Trump campaign's recent defamation complaints against the *New York Times*, the *Washington Post*, and CNN. *See* Docs. No. 71-75. This letter seeks to correct the mischaracterizations that Trump's letter makes.

  In yesterday's letter, Trump contends that Carroll submitted the recent defamation complaints in support of a "waiver argument" and that "the same waiver argument" will be decided by the Court of Appeals in *Zervos*. Doc. No. 76. at 1. That is incorrect. Nowhere in any of the briefs in this matter do we argue that Trump waived a defense of presidential immunity. Instead, we argue that Trump's unprecedented history of personal conduct litigation confirms that such litigation does not actually encumber his duties in office.

  That's why the recent lawsuits against media organizations are so relevant: they are further evidence of the emptiness of Trump's burden claim. Those lawsuits concern links between the Trump campaign and the Russian government, and Trump himself will be a key fact witness in all three cases. During the March 4 oral argument before Your Honor, Trump's counsel did not deny that Trump's campaign would file such lawsuits only with Trump's personal approval. If litigation (like this action) concerning Trump's unofficial conduct and requiring his participation were truly burdensome, those cases never would have been filed. Trump should not be heard to complain about speculative and marginal burdens here, even as he approves and initiates other civil cases that bear directly on his official acts and require extensive personal involvement.

KAPLAN HECKER & FINK LLP                                    2

At bottom, Trump's motion to stay this action and Trump's presidential immunity claim in *Zervos* both rest on a purported burden to the presidency. The Trump campaign's recent defamation suits only further confirm how illusory those claims of burden are.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record (via NYSCEF)

# K A S O W I T Z   B E N S O N   T O R R E S  LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

PAUL J. BURGO
DIRECT DIAL: (212) 506-1865
DIRECT FAX: (212) 835-5265
PBurgo@Kasowitz.com

March 11, 2020

<u>VIA NYSCEF</u>

The Honorable Verna L. Saunders
Supreme Court of the State of New York
New York County
80 Centre Street, Room 326
New York, New York 10013

      Re:     *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty)

Dear Justice Saunders:

We respectfully write, on behalf of defendant President Donald J. Trump, in reply to plaintiff's March 11, 2020 letter to the Court.

Plaintiff claims that she is not "argu[ing] that Trump waived a defense of presidential immunity," but that is precisely her argument: because of "Trump's . . . . personal conduct litigation" (in fact brought by the campaign), he "should not be heard" to argue burden here.

In any event, plaintiff's claim about burden misses the point. President Trump's appeal in *Zervos v. Trump* does not turn on the extent, if any, that a specific action in state court burdens the President, but rather on the unresolved "important constitutional issue[]," *Clinton v. Jones*, 520 U.S. 681, 690-91, 691 n.13 (1997), of whether, under Article II and the Supremacy Clause of the Constitution, a state court has jurisdiction over the President to make that determination in the first place.

Respectfully submitted,

Paul J. Burgo

cc:     Counsel of Record (via NYSCEF)

Supreme Court
of the
State of New York



NEW YORK COUNTY COURTHOUSE
60 CENTRE STREET
NEW YORK, NY 10007-1474

Pursuant to Chief Administrative Judge Marks' March 15, 2020 memorandum, Supreme Court, New York County-Civil Term is implementing the following temporary procedures, effective March 17, 2020 and continuing until further notice:

- Court facilities at 71 Thomas Street and 80 Centre Street, including the Public Access Law Library, are closed to the public;
- The court will hear only essential applications - all other matters and conferences will be adjourned to future dates;
- Essential applications will be heard at 60 Centre Street by the Ex Parte Judge;
- MHL/Hospital Hearings will be conducted remotely from 60 Centre Street;
- Jury selection is postponed as are all civil trials;
- Foreclosure auctions are postponed;
- Foreclosure conferences will be administratively adjourned;
- Fully briefed motions previously scheduled for oral argument will be marked submitted on the scheduled date without oral argument, unless otherwise directed by the assigned Justice at a later date;
- Motions returnable in room 130 requiring working copies will be adjourned for 30 days. Parties should not submit working copies in Room 130, either in person, or by mail, until directed to do so by the court;
- Motions returnable in room 130 and assigned to paperless parts will be marked fully submitted and the assigned Judge will be notified of such;
- There will be no automatic re- scheduling for oral argument in the IAS Parts until further notice

(Rev. March 19, 2020)

PART 36


Dear All,

We send our wishes and good thoughts, hoping that you and your loved ones have remained well these past weeks.  We also send our heartfelt prayers for the many who have suffered illness and the loss of family, friends, and colleagues during these times.  Our thoughts are with you.

As we begin to resume virtual court operations for non-essential matters here in New York State, please be advised that Part 36 is in the process of rescheduling matters previously calendared for conference in March and April 2020 which were administratively adjourned.  On your rescheduled conference date, please submit a fully executed stipulation of settlement with respect to outstanding discovery and compliance matters.  The submitted proposed stipulation will be reviewed and so-ordered, as appropriate.  In the interim, as to these matters which were scheduled for **conference** in March and April 2020, all discovery deadlines contained within the most recent preliminary or compliance conference stipulation/order are hereby extended for sixty days from April 13, 2020.

Please be advised as to **preliminary conferences**, a telephonic and/or video conference will be required. Parties for preliminary conference will be contacted by the Part as to scheduling, etc..

For all other matters, discovery deadlines which were to be met in March and/or April 2020 are hereby extended sixty days from April 13, 2020.

To the extent that additional issues arise, please advise the Part via e-mail to txchamber@nycourts.gov and kstewart@nycourts.gov.  (Please be reminded to copy all parties on e-mail messages to the court.)

As to settlement conferences and matters scheduled for mediation/alternative dispute resolution, these matters will be conferenced telephonically and/or by video conference.  Parties in these matters will be advised by chambers staff of their scheduled appearance date in the upcoming weeks.

As to pending motions, fully submitted matters will be marked "decision reserved" on the date of final submission in accordance with directives outlined in the Chief Administrative Judge's memorandum.  In the event parties seek adjournment of the court's determination of a pending motion, please contact the court and advise as to the basis for such request, i.e., ongoing settlement discussions, unforeseen circumstances, etc...

If any party is in need of additional assistance, please notify Part 36 via email at txchamber@nycourts.gov and kstewart@nycourts.gov.

Finally, please rest assured that we all understand the toll, seen and unseen, that this crisis has extracted upon us all.  We will endeavor to be flexible in meeting the needs of all parties and are here to administer justice and resolve the many issues that the public relies upon the Court to handle daily. Please be well and take good care.

Sincerely,

Justice Verna L. Saunders and Law Clerks Taisha L. Chambers, Esq. and Kamille Stewart, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------

E. JEAN CARROLL,

                    *Plaintiff*,

    -against-


DONALD J. TRUMP, in his personal capacity,

                    *Defendant*.

-------------------------------------------------------

Index No. 160694/2019


**NOTICE OF APPEARANCE**


TO THE CLERK OF COURT:

      PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

      All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.


Dated: New York, NY
      June 15, 2020

                    /s/ Joshua A. Matz

                    Joshua A. Matz
                    KAPLAN HECKER & FINK LLP
                    350 Fifth Avenue, Suite 7110
                    New York, New York 10118
                    Telephone: (212) 763-0883
                    Facsimile: (212) 564-0883
                    jmatz@kaplanhecker.com


                    *Counsel for Plaintiff E. Jean Carroll*