SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

                             *Plaintiff*,

      -against-

DONALD J. TRUMP, in his personal capacity,

                           *Defendant*.

Index No. 160694/2019

Hon. Verna L. Saunders

Mot. Seq. No. 003

## NOTICE OF MOTION TO STRIKE AN AFFIRMATIVE DEFENSE

PLEASE TAKE NOTICE that upon the accompanying memorandum of law, dated June 15, 2020, the accompanying affirmation of Roberta A. Kaplan, dated June 15, 2010, and the exhibits annexed thereto, Plaintiff E. Jean Carroll will move this Court, at the Motion Submissions Part Courtroom, Room 130, 60 Centre Street, New York, New York 10007, on July 1, 2020, at 9:30 am, or as soon thereafter as counsel may be heard, for an order pursuant to CPLR § 3211(b) striking Defendant Donald J. Trump's ninth affirmative defense, which asserts that he is not subject to personal jurisdiction in this Court, and for such other or further relief as this Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that, in accordance with CPLR § 2214(b), Defendant's opposition to this motion shall be served at least seven days before July 1, 2020, and Plaintiff's reply shall be served at least one day before such time.

Dated: New York, New York
      June 15, 2020

Roberta A. Kaplan
Joshua Matz
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
mcraig@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

2

Case 1:20-cv-07311 Document 1-5 Filed 09/08/20 Page 3 of 25

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

------------------------------------------------------------

Index No. 160694/2019

Hon. Verna L. Saunders

Mot. Seq. No. 003

### AFFIRMATION OF ROBERTA A. KAPLAN IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE AN AFFIRMATIVE DEFENSE

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.      I am a partner with the law firm of Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case. I submit this affirmation in support of Carroll's motion to strike an affirmative defense.

2.      Attached as Exhibit A is a true and correct copy of the logo used in connection with the television program, *The Apprentice*.

3.      Attached as Exhibit B is a true and correct copy of the entity information page for The Trump Corporation maintained by the New York Department of State, Division of Corporations.

4.      Attached as Exhibit C is a true and correct copy of the entity information page for The Trump Organization, Inc. maintained by the New York Department of State, Division of Corporations.

5.      Attached as Exhibit D is a true and correct copy of a Federal Election Commission filing by Donald J. Trump for President, Inc., dated May 20, 2020.

6.      Attached as Exhibit E are true and correct copies are three Department of Homeland Security reports titled *Expenditures Pursuant to the Presidential Protection Assistance Act of 1976*, dated August 2, 2019, November 20, 2019, and February 7, 2020. These reports were released by the Department of Homeland Security to governmentattic.org on May 11, 2020, pursuant to a Freedom of Information Act request, File Number 20190427.

7.      Attached as Exhibit F is a certified transcript of a telephone call involving Defendant Donald J. Trump and U.S. Governors on June 1, 2020. The audio of the call is in the public domain and is available at, *inter alia*, https://www.thedailybeast.com/listen-to-trumps-unhinged-rant-to-guvs.

8.      Attached as Exhibit G are true and correct copies of Florida Voter Registration Applications signed by Defendant, which were obtained by the Washington Post via a public records request.

9.      Attached as Exhibit H is a true and correct copy of the Declaration of Use Agreement between the Town of Palm Beach, the Mar-a-Lago Club, Inc., and Donald J. Trump, which was obtained by the Washington Post from the public files of Palm Beach, Florida.

Dated: New York, New York          By: _____
       June 15, 2020                   Roberta A. Kaplan
                                       KAPLAN HECKER & FINK LLP
                                       350 Fifth Avenue, Suite 7110
                                       New York, New York 10118
                                       Tel: (212) 763-0883
                                       Fax: (212) 564-0883
                                       rkaplan@kaplanhecker.com

                                       *Counsel for Plaintiff E. Jean Carroll*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------

E. JEAN CARROLL,

                    *Plaintiff*,

 -against-

DONALD J. TRUMP, in his personal capacity,

                   *Defendant*.

---------------------------------------

Index No. 160694/2019

Hon. Verna L. Saunders

Mot. Seq. No. 003

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO STRIKE AN AFFIRMATIVE DEFENSE

Roberta A. Kaplan
Joshua Matz
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
mcraig@kaplanhecker.com
*Counsel for Plaintiff E. Jean Carroll*

INDEX NO. 160694/2019
RECEIVED NYSCEF: 06/15/2020

Case 1:20-cv-07311   Document 1-5   Filed 09/08/20   Page 6 of 25

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND ................................... 2

ARGUMENT ................................................................................................................. 6

    I.   TRUMP'S PERSONAL JURISDICTION DEFENSE CONSISTS OF NOTHING
       MORE THAN AN BARE LEGAL CONCLUSION ........................................ 7

    II.  TRUMP'S PERSONAL JURISDICTION DEFENSE FAILS AS A FACTUAL
       MATTER AS WELL .......................................................................................... 8

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Am., N.A. v. 414 Midland Ave. Assocs., LLC,*
   78 A.D.3d 746 (2d Dep't 2010) ................................................................................. 7

*Chen v. Guo Liang Lu,*
   144 A.D.3d 735 (2d Dep't 2016) ............................................................................... 9

*Commissioners of the State Ins. Fund v. Ramos,*
   63 A.D.3d 453 (1st Dep't 2009) ................................................................................ 7

*Deer Consumer Prods., Inc. v. Little,*
   35 Misc. 3d 374 (Sup. Ct., N.Y. Cty. 2012) ............................................................ 7

*Hosley v. Curry,*
   85 N.Y.2d 447 (1995) ........................................................................................ *passim*

*In re Gelarie's Estate,*
   75 N.Y.S.2d 594 (Sur. Ct., Westchester Cty. 1947) ............................................... 12

*In re Hall's Estate,*
   120 N.Y.S.2d 886 (Sur. Ct., N.Y. Cty. 1953) ......................................................... 8

*In re Lynch's Estate,*
   170 Misc. 966 (Sur. Ct., N.Y. Cty. 1939) .............................................................. 10

*In re Newcomb's Estate,*
   192 N.Y. 238 (1908) ......................................................................................... 2, 11

*Laufer v. Hauge,*
   140 A.D.2d 671 (2d Dep't 1988) .............................................................................. 9

*Mississippi Band of Choctaw Indians v. Holyfield,*
   490 U.S. 30 (1989) ................................................................................................. 11

*People v. Settles,*
   46 N.Y.2d 154 (1978) .............................................................................................. 9

*Reed v. McCord,*
   160 N.Y. 330 (1899) ................................................................................................ 9

*Robbins v. Growney,*
   229 A.D.2d 356 (1st Dep't 1996) ......................................................................... 7, 8

*Wilke v. Wilke,*
   73 A.D.2d 915 (1980) ............................................................................................. 11

ii

## Constitution and Statutes

U.S. Const. amend. XXII, § 1 .................................................................................... 10

18 U.S.C. § 3056 .......................................................................................................... 3

## Rules

CPLR § 301 ................................................................................................................... 5

CPLR § 308 ................................................................................................................... 4

CPLR § 3211 ........................................................................................................ *passim*

## Other Authorities

Aamer Madhani & Darlene Superville, *As Trump Resumes Travel, Staff Takes Risks to Prepare Trip,* AP (May 5, 2020) ............................................................................... 11

*Celebrity Apprentice Intro / Credits*, YouTube. ........................................................... 3

Donald J. Trump (@realDonaldTrump)*,* Twitter (Oct. 31, 2019, 9:32 PM) ................ 10

Donald J. Trump, The Trump Organization ............................................................. 2, 3

Peter Baker & Maggie Haberman, *As Protests and Violence Spill Over, Trump Shrinks Back*, N.Y. Times (May 31, 2020).................................................................... 11

Scott Neuman*, Governors Push Back On Trump's Threat To Deploy Federal Troops To Quell Unrest,* NPR (June 2, 2020)................................................................... 5, 6

*See the Paperwork: Trump Changes Residence to Florida*, N.Y. Times (Oct. 31, 2019)............ 10

*The Apprentice 1 Official Intro*, YouTube.................................................................... 3

Transcript, *Trump: The Reality TV Years*, NPR (Mar. 3, 2016).................................... 2

Maggie Haberman*, Trump, Lifelong New Yorker, Declares Himself a Resident of Florida,* N.Y. Times (Oct. 31, 2019) ............................................................................ 10

iii

## PRELIMINARY STATEMENT

For better or for worse, depending upon how you look at it, New York has always been part of Defendant Donald Trump's story. Trump built his brand on the claim that he had conquered the New York real estate market; he prominently featured the Manhattan skyline, the Brooklyn Bridge, and Flushing Meadows–Corona Park in the introductions of his television shows, *The Apprentice* and *The Celebrity Apprentice*; he celebrated his election as President at the New York Hilton; and he put the headquarters of his reelection campaign at Trump Tower in Manhattan, just below his spacious penthouse apartment. Even as he temporarily resides at the White House, a permanent Secret Service presence, funded by U.S. taxpayers, protects Trump Tower for whenever Trump is in New York City. In other words, Trump's lifelong connection to New York is as strong as ever.

But as darker chapters of his story have begun catching up with him, Trump has worked hard to distance himself from New York. This case is one example of that retreat. Plaintiff E. Jean Carroll alleges that Trump sexually assaulted her at Bergdorf Goodman, a department store a couple of blocks away from Trump Tower, and then defamed her when she spoke out about her experience last year. In response to Carroll's particularized and credible allegations, Trump has done everything possible to try to stop discovery from moving forward. His tactics have ranged from attempting to avoid service to making meritless arguments for a stay. Although his argument that this case should be stayed because he cannot be sued while serving as President was heard by this Court on March 4, 2020, he has also asserted that this Court lacks jurisdiction altogether because he cannot be sued in New York. This motion is directed at that second (meritless) argument, which Trump now asserts as an affirmative defense.

1

In light of recent events, it's now time for the door to Trump's jurisdictional defense to be shut permanently. Two weeks ago, on a nearly hour-long phone call, Trump told a large group of U.S. Governors that they would "look like a bunch of jerks" if they didn't "dominate" the people protesting against racism and police misconduct, and he promised to do "something that people haven't seen before" in order to achieve "total domination." Of particular relevance here, during that same call, Trump openly admitted that he continues to "live in Manhattan." In addition, other new revelations have further confirmed that New York continues to be Trump's domicile and that no other jurisdiction (including Washington, D.C. or Florida) could possibly satisfy the strict standard that applies when a New Yorker wants to establish a new domicile outside of New York under New York law.

As the Court of Appeals recognized long ago, in order to effect such a change of domicile, "[r]esidence without intention, or intention without residence, is of no avail." *In re Newcomb's Estate*, 192 N.Y. 238, 250 (1908). Trump may reside now in Washington, D.C., but he has disavowed any intention of staying there after his Presidency. And while he may intend to move to Florida at some point in the future, there can be no question that he does not reside there now. Accordingly, Trump remains subject to jurisdiction in New York, and the Court should grant this motion to strike Trump's personal jurisdiction defense pursuant to CPLR § 3211(b).

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

"New York, my city," Donald Trump proudly declared on the very first episode of his famed television program, *The Apprentice*. Transcript, *Trump: The Reality TV Years*, NPR (Mar. 3, 2016).[1] And in that respect, he was telling the truth. Trump was born in Queens 74 years ago and has been associated with New York City his entire life. *See Donald J. Trump*, The Trump

---

[1] https://www.npr.org/transcripts/468560204?storyId=468560204?storyId=46856020.

Organization (last visited June 8, 2020).[2] The opening credits of both *The Apprentice* and *The Celebrity Apprentice* highlighted the City, featuring skyline views, the Brooklyn Bridge, and the Unisphere in Flushing Meadows–Corona Park. *See The Apprentice 1 Official Intro*, YouTube[3]; *Celebrity Apprentice Intro / Credits*, YouTube.[4] Moreover, the logo for *The Apprentice* depicted Trump with the City behind him:



Ex. A.[5]

For decades, Trump has maintained his home in the penthouse of Trump Tower in Manhattan. Both the Trump Organization and Trump's presidential reelection campaign are headquartered there, and Trump designated Trump Tower as the single residence to be "fully secured by the Secret Service on a permanent basis" under Section 3 of the Presidential Protection Assistance Act of 1976, 18 U.S.C. § 3056 note. *See* Exs. B–E; Doc. No. 6 ¶¶ 7–12.

In fact, it was due to the permanent Secret Service presence at Trump Tower that Carroll had such difficulty effecting service of process at the start of this action. A process server went to

---

[2] https://www.trump.com/leadership/donald-j-trump-biography.
[3] https://www.youtube.com/watch?v=9paNJJqMn3c.
[4] https://www.youtube.com/playlist?list=PL1iX0GymYlpbAEdGi2MK68etZxZl75UUy.
[5] All "Ex." references are to those exhibits attached to the Affirmation of Roberta A. Kaplan in Support of Plaintiff's Motion to Strike an Affirmative Defense.

3

Trump Tower on four different occasions, at different times, and each time, Secret Service agents and building staff blocked the process server. Doc. No. 6 ¶¶ 7–12. On one occasion, a Secret Service agent informed the process server that they "had been instructed not to allow process servers" to effect service. *Id.* ¶ 9. Another process server was warned that if he tried to leave papers with the Trump Tower concierge, he would not be permitted to leave the building. *Id.* ¶¶ 11.

Because the Secret Service had rendered service at Trump Tower "impracticable," Carroll filed a motion for an order permitting an alternative method of service pursuant to CPLR § 308(5). In support of her motion, Carroll submitted a copy of Trump's then-active New York voter registration dated November 4, 2019, which listed the Trump Tower penthouse as his home. Doc. No. 8. She sought leave to serve Trump by mail at Trump Tower, with copies of the Summons and Complaint to be sent to the White House and to six attorneys representing Trump in other ongoing personal capacity actions in New York. Doc. No. 6 ¶ 27. The Court granted that motion, and Trump eventually appeared in this action. Doc. Nos. 15, 19.

Once Trump had been properly served, however, his efforts to delay this case only intensified. Trump requested, and Carroll acquiesced in, a significant extension of time to file a motion to dismiss. Doc. No. 20; Doc. No. 24 ¶ 10; Doc No. 34 ¶ 6. Yet, well before that deadline, on the same day that discovery was set to commence, Trump filed a motion to dismiss focused exclusively on the argument that he was no longer subject to personal jurisdiction in New York because he had resided in the White House for the past three years. Doc. No. 33. Trump accompanied that motion to dismiss with an affirmation from his attorney that did not even purport to address the basis for Trump's personal jurisdiction defense, and requested that the Court stay all discovery deadlines pending a decision on the motion. Doc. Nos. 28, 29.

Case 1:20-cv-07311 Document 1-5 Filed 09/08/20 Page 13 of 25

Carroll opposed Trump's initial stay request, arguing that Trump was subject to general jurisdiction in New York under CPLR § 301 because, despite his temporary residence in Washington, D.C., he remained domiciled in New York City. Doc. No. 34. The Court (Ling-Cohan, J.) agreed, denying Trump's motion to dismiss and holding that Trump had provided no evidence demonstrating that he was no longer subject to jurisdiction in New York. In her opinion, Justice Ling-Cohan emphasized that "there is not even a tweet, much less an affidavit by defendant Trump in support of his motion." Doc. No. 36 at 1.

From there, Trump seemed to pivot to another delay tactic, arguing next that he is immune from suit in state court while he serves as President and asking that the Court stay this action pending the Court of Appeals' consideration of that issue in *Zervos v. Trump*. Doc. No. 43. The parties briefed that second stay motion, and the Court entered a temporary stay of discovery deadlines pending its decision. Doc. Nos. 39, 50.[6] In the course of briefing that motion, however, Trump filed his Answer to Carroll's Complaint. Doc. No. 68. As his ninth and final affirmative defense, Trump claimed, once again, that he is not subject to personal jurisdiction in this Court. Doc. No. 68 ¶ 155.

While Trump's second stay motion remains *sub judice*, recent events have shed additional light on the deficiencies of Trump's personal jurisdiction defense. More specifically, on June 1, 2020, Trump spoke with a large group of U.S. Governors (including Jared Polis of Colorado, Phil Murphy of New Jersey, Andrew Cuomo of New York, J.B. Pritzker of Illinois, Janet Mills of Maine, Charlie Baker of Massachusetts, Gretchen Whitmer of Michigan, Tim Walz of Minnesota, and Jay Inslee of Washington) about the protests against racial injustice and police misconduct sweeping the Nation. Ex. F; *see also* Scott Neuman, *Governors Push Back On Trump's Threat To*

---

[6] As noted above, oral argument on that motion took place on March 4, 2020.

5

Case 1:20-cv-07311   Document 1-5   Filed 09/08/20   Page 14 of 25

*Deploy Federal Troops To Quell Unrest*, NPR (June 2, 2020).[7] Trump spoke at length on that call, chastising the states whose response to the protestors (whom he characterized as "terrorists") had not been forceful enough: "You have to dominate. If you don't dominate, you're wasting your time. They're going to run all over you and you'll look like a bunch of jerks. You have to dominate." Ex. F at 1. Trump promised that the impending federal action would be forceful: "We're going to do something that people haven't seen before. But we're going to have total domination." *Id.* at 2.

Of relevance to this case, in commenting on the response of the New York City police during that call, Trump stated as follows:

> Now what happened in New York, I have to tell you, *I live in Manhattan*. What's going on in Manhattan, I have no idea. New York's finest, they've got be allowed. They need to do their jobs. I don't know what's happening in Manhattan, but it's terrible. And because it's New York, because it's Manhattan it gets a lot of press. So they really spend a lot of time on it. But New York is going to have to toughen up and we'll send you National Guard if you want.

*Id.* at 3 (emphasis added).

Based on that statement concerning his current residency, as well as the other undisputed facts and points of law set forth below, Carroll now files this motion to strike Trump's affirmative defense that he is not subject to jurisdiction in New York.

## ARGUMENT

Under CPLR § 3211(b), a plaintiff may "move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." CPLR § 3211(b) was made for a case like this since *both* reasons for striking a defense are fully applicable here. Trump has "not stated" the affirmative defense of personal jurisdiction because his Answer asserts nothing

---

[7] https://www.npr.org/2020/06/02/867565338/governors-push-back-on-trumps-threat-to-deploy-federal-troops-to-quell-unrest.

6

but a bare, and thus insufficient, conclusion of law. Trump's personal jurisdiction defense also has "no merit" because it is foreclosed by his own recent admission that he continues to "live in Manhattan" and by the patent insufficiency of any alternative domicile he might assert. For each of these independent reasons, the Court should grant Carroll's motion to strike.

## I.    TRUMP'S PERSONAL JURISDICTION DEFENSE CONSISTS OF NOTHING MORE THAN AN BARE LEGAL CONCLUSION

Trump's affirmative defense of lack of personal jurisdiction should be stricken for the simple reason that Trump has not pleaded a single fact to support it.

Although a court must construe the pleadings in favor of the nonmoving party, "[b]are legal conclusions are insufficient to raise an affirmative defense." *Robbins v. Growney*, 229 A.D.2d 356, 358 (1st Dep't 1996). Where "affirmative defenses merely plead conclusions of law without any supporting facts, the affirmative defenses should be dismissed pursuant to CPLR 3211(b)." *Bank of Am., N.A. v. 414 Midland Ave. Assocs., LLC*, 78 A.D.3d 746, 750 (2d Dep't 2010) (internal quotation marks omitted) (dismissing affirmatives defenses of equitable estoppel, laches, waiver, unclean hands, and culpable conduct on this basis); *see Comm'rs of the State Ins. Fund v. Ramos*, 63 A.D.3d 453, 453 (1st Dep't 2009) (dismissing affirmative defense on same ground).

With respect to the Court's purported lack of personal jurisdiction, a bare legal conclusion is all that Trump has asserted here. His ninth affirmative defense states, in full, that "[t]he Court lacks personal jurisdiction over President Trump." Doc. No. 68 ¶ 155. Trump does not even plead that Trump is no longer domiciled in New York and has established domicile somewhere else, let alone plead any facts that would allow the Court to reach such a conclusion. *See, e.g., Deer Consumer Prods., Inc. v. Little*, 35 Misc. 3d 374, 381 (Sup. Ct., N.Y. Cty. 2012).

Trump's wholly insufficient pleading is even more egregious given that, as outlined above, it came weeks *after* Justice Ling-Cohan had already put Trump on notice that his personal jurisdiction defense was devoid of any reliable factual foundation. In denying Trump's motion to dismiss for lack of jurisdiction, she emphasized that there was "not even a tweet, much less an affidavit by defendant Trump in support of his motion," and that "even the defendant's attorney affirmation does not assert a basis (evidentiary or otherwise) for dismissal." Doc. No. 36 at 1–2.

Yet Trump has done nothing to bolster his defense since that ruling. Trump could not prove any facts then, and he does not plead any facts now. On this basis alone, the Court should grant Carroll's motion and strike the affirmative defense of personal jurisdiction. *See Robbins*, 229 A.D.2d at 358.

## II. TRUMP'S PERSONAL JURISDICTION DEFENSE FAILS AS A FACTUAL MATTER AS WELL

Trump's personal jurisdiction defense should be also stricken for the additional reason that Trump could not support his bare legal conclusion with the requisite facts even if he tried. In other words, not only has Trump "not stated" the affirmative defense of personal jurisdiction, but that defense also has "has no merit." CPLR § 3211(b).

Because the issue comes up most often in the context of individuals seeking to avoid paying their taxes, the burden for a party to establish a new domicile outside of New York is understandably a heavy one. *See, e.g.*, *In re Hall's Estate*, 120 N.Y.S.2d 886, 889 (Sur. Ct., N.Y. Cty. 1953) (rejecting charge of domicile argument where the statements of the deceased that "were declarative of an intent to establish a Florida domicile were prompted by a purpose to avoid tax liabilities"). "For a change to a new domicile to be effected, there must be a union of residence in fact and an 'absolute and fixed intention' to abandon the former and make the new locality a fixed and permanent home." *Hosley v. Curry*, 85 N.Y.2d 447, 451 (1995). The party claiming a change

in domicile "has the burden to prove the change by clear and convincing evidence," *id.*, and "until a clear intention to change is established," the "residence established earlier in time remains the individual's domicile," *Laufer v. Hauge*, 140 A.D.2d 671, 673 (2d Dep't 1988). Moreover, for purposes of personal jurisdiction, the relevant inquiry is where the defendant was domiciled at the time the complaint was filed. *Chen v. Guo Liang Lu*, 144 A.D.3d 735, 737 (2d Dep't 2016).

The simplest reason why Trump cannot meet this demanding standard is that he recently admitted to a large group of the nation's Governors that he "live[s] in Manhattan." Ex. F at 3. That statement, which is indisputably admissible as a party statement against interest, *see, e.g.*, *People v. Settles*, 46 N.Y.2d 154, 167 (1978); *Reed v. McCord*, 160 N.Y. 330, 341 (1899), cannot be reconciled with the notion that Trump has established a residence elsewhere and intends to remain there permanently. And Trump certainly cannot prove by "clear and convincing evidence" that he has abandoned New York while he continues to hold himself out as a Manhattanite, especially when so much of his life—his business, his campaign, his permanent Secret Service protection—centers on a single address in Midtown. *Hosley*, 85 N.Y.2d at 451.

Even without Trump's recent admission, any claim to a changed domicile under New York law would fail because there is no alternative location that would allow Trump to satisfy the dual requirements of "residence in fact" and an "absolute and fixed intention to . . . make the new locality a fixed and permanent home." *Id.* at 451. As noted above, without the "union" of these two elements, Trump's domicile remains unchanged. *Id.*.

Although Trump's answer does not identify another state where he can properly be sued, his original motion to dismiss papers implied Washington, D.C., arguing that there was no general personal jurisdiction in New York because Trump "has resided in the White House for the past three years." Doc. No. 33 at 2. We obviously do not dispute that Trump currently resides at the

9

White House in Washington, D.C. But Trump's time at the White House is, as a matter of constitutional law, temporary. *See* U.S. Const. amend. XXII, § 1 ("No person shall be elected to the office of the President more than twice, and no person who has held the office of President, or acted as President, for more than two years of a term to which some other person was elected President shall be elected to the office of President more than once."). Without "an absolute and fixed intention" to make a temporary home "permanent," the "[m]ere change of residence *although continued for a long time* does not effect a change of domicile." *Hosley*, 85 N.Y.2d at 451.

It is possible that Trump might argue that his new domicile is Florida, especially since Trump has tweeted that although he "will stay for, hopefully, five more years" at the White House, he and his family "*will be making* Palm Beach, Florida, [their] Permanent Residence." Donald J. Trump (@realDonaldTrump), Twitter (Oct. 31, 2019, 9:32 PM), https://twitter.com/realdonaldtrump/ status/1190079191355670529 (emphasis added). Trump also purported to formalize that decision by filing a "Declaration of Domicile" that proclaimed Florida his "predominant and principal home." *See the Paperwork: Trump Changes Residence to Florida*, N.Y. Times (Oct. 31, 2019).[8]

Those acts in themselves, however, are irrelevant under New York law. Declaring that he "will" someday become a Florida permanent resident doesn't establish a new domicile; to the contrary, it confirms a *failure* to do so, since expressing a "prospective" intention of changing domicile is not enough to effect an actual change. *In re Lynch's Estate*, 170 Misc. 966, 967 (Sur. Ct., N.Y. Cty. 1939). Nor does a formal declaration suffice: given the eagerness of New Yorkers to avoid paying their taxes,[9] "[s]o-called 'formal declarations' of domicile . . . have lost their

---

[8] https://www.nytimes.com/interactive/2019/10/31/us/trump-residence-documents.html

[9] Indeed, at the time that Trump issued the above tweet, "a person close to the president said the reasons were primarily for tax purposes." Maggie Haberman, *Trump, Lifelong New Yorker, Declares Himself a Resident of Florida*, N.Y.

10

importance . . . as courts have recognized their self-serving nature." *Wilke v. Wilke*, 73 A.D.2d 915, 917 (1980); *see also In re Newcomb's Estate*, 192 N.Y. at 252 ("If she had made the most formal declaration of intention for the purpose of creating evidence of an apparent change, with no intention of making an actual change, it would have been a fraud and of no effect.").

Most fundamentally, however, a person cannot change his domicile to a state where he doesn't currently reside—and Trump doesn't *currently* reside in Florida. *See Hosley*, 85 N.Y.2d at 451 (domicile requires "residence in fact"); *In re Newcomb's Estate*, 192 N.Y. at 250 ("Residence is necessary, for there can be no domicile without it . . . ."); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (domicile requires "physical presence"). As noted above, Trump previously told this Court in this case that he "has resided *in the White House* for the past three years," Doc. No. 33 at 2 (emphasis added), and any attempt to backtrack from this prior position would not only be inconsistent with the facts, but also reflect the type of gamesmanship that courts as a general rule do not tolerate.[10] Thus, Trump fails to satisfy one of the single most important criteria for a change of domicile: actually moving to a new state.

But that is not all. Trump's efforts to register to vote in Florida further prove his lack of a permanent residence in that state. As noted above, at the time this lawsuit began, Trump maintained an active New York voter registration. Doc. No. 8. When he registered to vote in Florida (where he voted by mail in the March primary election), his first Florida voter registration application listed the White House as his place of residence. Ex. G. Although Trump later completed another

---

Times (Oct. 31, 2019), https://www.nytimes.com/2019/10/31/us/politics/trump-new-york-florida-primary-residence.html.
[10] Indeed, since the outbreak of Covid-19 in early spring, followed by the recent protests against racism and police brutality, Trump has understandably remained in the White House for longer periods of time than ever before during his Presidency. *See* Aamer Madhani & Darlene Superville, *As Trump Resumes Travel, Staff Takes Risks to Prepare Trip*, AP (May 5, 2020), https://apnews.com/fd846eb2c00ef1bb288699d1ee583aef; Peter Baker & Maggie Haberman, *As Protests and Violence Spill Over, Trump Shrinks Back*, N.Y. Times (May 31, 2020), https://www.nytimes.com/2020/05/31/us/politics/trump-protests-george-floyd.html.

11

Case 1:20-cv-07311 Document 1-5 Filed 09/08/20 Page 20 of 25

Florida voter registration application that changed the address to the Trump Organization's Mar-a-Lago Club in Palm Beach, Florida, *id.*, that address doesn't work either, since residing permanently at Mar-a-Lago is forbidden under Florida law. The land use agreement with Palm Beach County that permitted Trump to establish Mar-a-Lago in the first place makes this clear. That agreement explicitly limits the use of the rooms at Mar-a-Lago to "a maximum of three (3) non-consecutive seven (7) day periods by any one member during the year," and "any [other] usages not specifically" approved are prohibited. Ex. H at 2.[11] With this 21-day limitation, Mar-a-Lago cannot possibly qualify as Trump's "fixed and permanent home"—and until another such home is actually established, Trump cannot be domiciled in Florida. *Hosley*, 85 N.Y.2d at 451; *see also In re Gelarie's Estate*, 75 N.Y.S.2d 594, 595 (Sur. Ct., Westchester Cty. 1947) ("Therefore his residence at the hotel was only temporary and he never abandoned the residence he had established in Westchester County. It is well established that a domicile continues until it is superseded by a new one and the abandonment of an established domicile is a necessary prerequisite to the acquisition of a new one.").

Because Trump does not intend to reside permanently in Washington, D.C., and does not reside in Florida at all, he "lives in Manhattan" for purposes of personal jurisdiction under New York law. Any argument that he should be deemed domiciled elsewhere "has no merit," and his personal jurisdiction defense should be dismissed pursuant to CPLR § 3211(b).[12]

---

[11] Counsel express no opinion as to whether Trump's purported voter registration in Florida was valid—and whether he lawfully may vote in Florida in the upcoming Presidential election.

[12] Given the complete lack of merit to Trump's jurisdictional defense as well as the lack of any supporting evidence in the wake of Justice Ling-Cohan's prior ruling, Carroll reserves the right to seek an appropriate award of costs and fees in connection with this motion since Trump's personal jurisdictional defense is "completely without merit in law" and was made "primarily to delay or prolong the resolution of the litigation." Rules of the Chief Administrative Judge, Subpart 130-1.1(c)(1), (2).

## CONCLUSION

For the reasons set forth above, the Court should grant Carroll's motion and strike

Trump's ninth affirmative defense.

Dated: New York, New York
      June 15, 2020

                                          _____

                                          Roberta A. Kaplan
                                          Joshua Matz
                                          Matthew J. Craig
                                          KAPLAN HECKER & FINK LLP
                                          350 Fifth Avenue, Suite 7110
                                          New York, New York 10118
                                          Tel: (212) 763-0883
                                          Fax: (212) 564-0883
                                          rkaplan@kaplanhecker.com
                                          jmatz@kaplanhecker.com
                                          mcraig@kaplanhecker.com

                                          *Counsel for Plaintiff E. Jean Carroll*

13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

E. JEAN CARROLL,

                                         Index No.:  160694/19

                 Plaintiff,

              -against-                **Motion Seq. No. 003**

DONALD J. TRUMP, in his personal capacity,

                 Defendant.
-------------------------------------------------------------------X

## NOTICE OF VOLUNTARY
## <u>WITHDRAWAL OF AFFIRMATIVE DEFENSE</u>

      PLEASE TAKE NOTICE that defendant hereby voluntarily withdraws the ninth affirmative defense asserted in his Answer.

      PLEASE TAKE FURTHER NOTICE that the undersigned attorneys submitted a stipulation to plaintiff's attorneys proposing to withdraw the ninth affirmative defense asserted in defendant's Answer, but plaintiff's attorneys have refused to sign this stipulation.

Dated: New York, New York
       June 29, 2020

                                **LAROCCA HORNIK ROSEN**
                                **& GREENBERG LLP**

                                */s/ Patrick McPartland*
                                _____
                                Patrick McPartland
                                Jared E. Blumetti
                                40 Wall Street, 32nd Floor
                                New York, New York  10005
                                T:  (212) 530-4837; 4831
                                E: pmcpartland@lhrgb.com
                                      jblumetti@lhrgb.com

                                *Attorneys for defendant*
                                *Donald J. Trump*

To:     All counsel of record (*via ECF*)

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

June 29, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York, New York County
111 Centre Street, Room 934
New York, New York 10013

   Re:  *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Saunders:

  We write on behalf of Plaintiff E. Jean Carroll in response to the Notice of Voluntary Withdrawal of Affirmative Defense that Defendant Donald J. Trump filed earlier today. *See* Doc. No. 93. In his Notice, Trump withdraws his affirmative defense of lack of personal jurisdiction and states that his withdrawal moots Carroll's pending motion to strike. *Id.* Carroll does not oppose Trump's decision to withdraw that meritless defense, and she acknowledges that such a withdrawal, assuming it is with prejudice, moots Carroll's motion to strike. But Trump's Notice also states that "plaintiff's attorneys have refused to sign" a stipulation to facilitate Trump's withdrawal. Because that statement is misleading and inaccurate, we write to correct the record. *Id.*

  As Your Honor is aware, Trump first moved to dismiss this action on personal jurisdiction grounds on January 3, 2020. Doc. No. 33. In response, Carroll argued that Trump remained domiciled in New York and reserved her right to seek sanctions for frivolous conduct intended to delay proceedings. Doc. No. 34 at 6 n.2. The Court (Ling-Cohan, J.) agreed that Trump's motion to dismiss was baseless, holding that there was "not even a tweet, much less an affidavit by defendant Trump in support of his motion." Doc. No. 36 at 1.

  Weeks later, Trump reasserted personal jurisdiction as an affirmative defense in his Answer. Doc. No. 68 ¶ 155. Tellingly, although Trump necessarily has, and has always had, full knowledge of the facts relevant to his domicile, Trump made no effort to address any of the deficiencies of that defense that the Court had identified. And after Trump admitted to a group of U.S. governors that he "lives in Manhattan," enough was enough. Carroll moved to strike Trump's personal jurisdiction defense pursuant to CPLR § 3211(b). Doc. No. 82. Carroll again reserved the right to seek recovery of costs and fees in connection with the motion. Doc. No. 92 at 12 n.12.

KAPLAN HECKER & FINK LLP                                                    2

On the eve of Trump's opposition deadline, his attorney revealed that Trump did not intend to oppose the motion to strike. The next day, his attorney proposed a stipulation that would recognize Trump's withdrawal of his personal jurisdiction defense. As reflected in the communications between counsel attached as Exhibit A, Carroll was amenable to such a stipulation. Our only request was that the stipulation acknowledge that Carroll was reserving her right to seek costs and fees in connection with the motion to strike. After Trump resisted that acknowledgment, we offered on multiple occasions to make the reservation of rights mutual, such that Trump would reserve his right to oppose any motion for costs and fees that Carroll might make.

Accordingly, any suggestion that Carroll "refused" to sign a stipulation is false. Although Carroll was not willing to sign the stipulation in the exact form that Trump had drafted, stipulations in judicial proceedings are not take-it-or-leave-contracts that the more powerful party may hold over the other. Trump may have balked at a stipulation that would acknowledge the potential consequences of pushing a frivolous defense, but it was hardly inappropriate for Carroll's counsel to ensure that Carroll's rights were protected in any stipulation bearing her name.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record (via NYSCEF)

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. VERNA L. SAUNDERS** | PART | IAS MOTION 36 |

*Justice*

-----------------------------------------------------------------------------X

E. JEAN CARROLL,

                Plaintiff,

            - v -

DONALD J. TRUMP, in his personal capacity,

                Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160694/2019 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95

were read on this motion to/for            **DISMISS DEFENSE**    .

      Pursuant to defendant's Notice of Voluntary Withdrawal of Affirmative Defense dated

June 29, 2020 and annexed hereto, plaintiff's motion seeking to dismiss defendant's ninth

affirmative defense is denied as moot.

    **June 30, 2020**

HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

160694/2019   CARROLL, E. JEAN vs. TRUMP, DONALD J.
Motion No.  003

Page 1 of 1