SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

---

Index No. _____
Date Purchased: November 4, 2019

**SUMMONS**

TO THE ABOVE-NAMED DEFENDANT,

    Donald J. Trump
    725 Fifth Avenue
    New York, NY 10022:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

    Pursuant to NY CPLR §§ 503(a) and 509, Plaintiff designates as the place of trial New York County, the county of residence of the Defendant at the time this action was commenced.

Dated: November 4, 2019
New York, New York

KAPLAN HECKER & FINK LLP

_____
Roberta A. Kaplan

350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Attorneys for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

---

Index No. _____

**COMPLAINT AND
JURY DEMAND**

Plaintiff E. Jean Carroll ("Plaintiff" or "Carroll"), by and through her attorneys at Kaplan Hecker & Fink LLP, alleges as follows:

## INTRODUCTION

1.      Nobody in this nation is above the law. Nobody is entitled to conceal acts of sexual assault behind a wall of defamatory falsehoods and deflections. The rape of a woman is a violent crime; compounding that crime with acts of malicious libel is abhorrent. Yet that is what Defendant Donald J. Trump did to Plaintiff E. Jean Carroll.

2.      Roughly 23 years ago, playful banter at the luxury department store Bergdorf Goodman on Fifth Avenue in New York City took a dark turn when Trump seized Carroll, forced her up against a dressing room wall, pinned her in place with his shoulder, and raped her.

3.      In the aftermath, Carroll confided in two close friends. One urged her to report the crime to the police, but the other warned that Trump would ruin her life and livelihood if she reported it.

4.      Carroll chose silence—and remained silent for over two decades.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 3 of 114

5.      Carroll knew then that sexual assault was pervasive. She also knew that men have been assaulting women and getting away with it since before she was born. And she knew that while a woman who accused *any* man of rape was rarely believed, a woman who accused a rich, famous, violent man of rape would probably lose everything. She therefore reasonably concluded that if she accused Donald Trump of rape he would bury her in threats and lawsuits, and she would probably lose her reputation, not to mention everything she had worked for and achieved.

6.      Near the end of the 2016 presidential election, Carroll watched in horror as numerous women offered highly credible (and painfully familiar) accounts of Trump assaulting them; Trump responded with insults and denials; the public fractured; and Trump not only won the election, but grew *more* popular with some supporters as a result of the controversy.

7.      Carroll's mother, a respected Republican official in Indiana, was dying during the last six weeks of the presidential election. Carroll, wanting to make her mother's last days as pleasant as possible and avoid causing her any pain, decided to remain silent about what Trump had done to her.

8.      But that all changed in late 2017, when the Harvey Weinstein scandal and its aftermath signaled a profound shift in how American society responds to accusations of sexual misconduct by powerful men. It suddenly seemed possible that even Trump could be held to account.

9.      For Carroll, that project grew more urgent—and more personal—as the #MeToo era prompted a flood of new letters to her advice column seeking her counsel about how to respond to sexual assault and abuse. In her column, Carroll encourages her readers to be brave, to think clearly, and to seek justice. When readers overcome with the doubt and anxiety have turned to her seeking advice, Carroll has always advised taking action. But she never confessed her own

experiences. She never revealed that she, too, had been a victim of sexual assault. Over time, as described below, the contradiction between Carroll's words and her actions became increasingly untenable.

10.     Carroll is a journalist. She watched as a throng of women came forward and accused Trump of sexual assault, only to be denigrated and then brushed aside. When she felt she should finally come forward herself, Carroll wanted to do it differently. She decided to describe Trump's rape in a book she had already begun to write about her experiences with various men. She did not want to tell her story to the police, a newspaper, an elected official, or a fellow journalist, and be treated as a "victim." In other words, she wanted to tell her own story on her own terms.

11.     When Carroll's account was published, Trump lashed out with a series of false and defamatory statements. He denied the rape. But there was more: he also denied ever having met Carroll or even knowing who she was. Through express statements and deliberate implications, he accused Carroll of lying about the rape in order to increase book sales, carry out a political agenda, advance a conspiracy with the Democratic Party, and make money. He also deliberately implied that she had falsely accused other men of rape. For good measure, he insulted her physical appearance.

12.     Each of these statements was false. Each of them was defamatory.

13.     Trump knew that these statements were false; at a bare minimum, he acted with reckless disregard for their truth or falsity. Trump had recognized Carroll on sight at Bergdorf Goodman. He knew who she was when he raped her, and he knew who she was in 2019. He certainly knew that she was telling the truth. After he lied about attacking her, he surrounded that central lie with a swarm of related lies in an effort to explain why she would invent an accusation of rape. To do so, he smeared her integrity, honesty, and dignity—all in the national press.

3

14. These lies were familiar to Trump. He had used them before, when other women stated that he had grabbed, groped, or raped them.

15. Trump's defamatory statements injured Carroll. They inflicted emotional pain and suffering, they damaged her reputation, and they caused substantial professional harm.

16. Carroll filed this lawsuit to obtain redress for those injuries and to demonstrate that even a man as powerful as Trump can be held accountable under the law.

## THE PARTIES

17. Plaintiff E. Jean Carroll is a journalist, author, former writer for Saturday Night Live, and advice columnist for *Elle* magazine. She is a resident of the State of New York.

18. Defendant Donald J. Trump is currently the President of the United States, although he is sued here only in his personal capacity. Since taking office, Trump has filed several lawsuits in his personal capacity, including *Trump v. Vance, Jr. et al.*, No. 19 Civ. 8694 (S.D.N.Y.), *Trump et al. v. Deutsche Bank AG et al.*, No. 19 Civ. 3826 (S.D.N.Y.), *Donald J. Trump for President, Inc. et al. v. Padilla et al.*, No. 19 Civ. 1501 (E.D. Cal.), *Trump v. Committee on Ways and Means of the U.S. House of Representatives et al.*, No. 19 Civ. 2173 (D.D.C.), and *Trump et al. v. Committee on Oversight and Reform of the U.S. House of Representatives et al.*, No. 19 Civ. 1136 (D.D.C.). Trump is also defending a related case pending in this Court. *See Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.). Trump is a resident of the State of New York.

## JURY DEMAND

19. Plaintiff E. Jean Carroll hereby demands a trial by jury.

## JURISDICTION & VENUE

20. This Court has jurisdiction pursuant to NY CPLR § 301.

21. Venue is proper in this county pursuant to NY CPLR § 503 and § 509.

4

## FACTUAL ALLEGATIONS

### I.    TRUMP RAPES CARROLL AT BERGDORF GOODMAN

22.    One evening between the fall of 1995 and the spring of 1996, Carroll left work and went to Bergdorf Goodman, the luxury department store on Fifth Avenue in New York City. She was and remains a regular shopper at Bergdorf's.

23.    That evening, Carroll did not find whatever she was looking for and prepared to leave Bergdorf's empty-handed. As she exited through Bergdorf's revolving side door on 58th Street, Trump arrived and entered through that very same door, which was cater-cornered across from the Plaza Hotel.

24.    Trump instantly recognized Carroll on sight. They had met at least once before and had long traveled in the same New York City media circles. In this period, Carroll was doing the daily *Ask E. Jean* TV show, a small hit on the "America's Talking" network started by Roger Ailes. She was also on a frequent guest and commentator on the widely watched *Today* show.

25.    Trump put up his hand to stop her from exiting and said, "Hey, you're that advice lady!" Carroll, struck by his boyish good looks, responded by saying, "Hey, you're that real estate tycoon!"

26.    Trump said that he was at Bergdorf's to buy a present for "a girl" and asked Carroll to come advise him. Carroll was surprised but thrilled that Trump would want her advice. She stuck around, imagining the funny stories that she might later recount.

27.    Trump and Carroll began searching for a gift that Trump could give to the unnamed girl. As they stood just inside the door, Carroll pointed to the handbags. Trump made a face; he did not like that idea. Carroll instead suggested a hat. Trump walked over, going straight for a fur hat, prompting Carroll to object that no woman would wear a dead animal on her head.

Case 1:20-cv-07311-LAK Document 12-1 Filed 09/14/20 Page 7 of 114

28.     As Trump cuddled the fur hat, Carroll asked how old "the girl" was. Trump did not

answer, instead asking Carroll how old she was. When Carroll replied that she was fifty-two years

old, he taunted her, "You're so *old*!"

29.     Trump then had an idea: He would buy lingerie instead.

30.     Trump and Carroll rode up the escalator to the lingerie department. When they

arrived, it was uncharacteristically empty, with no sales attendant in sight. Sitting on the counter

near them were two or three boxes and a see-through bodysuit in lilac gray.

31.     Snatching the bodysuit, Trump insisted that Carroll try it on. Bemused, Carroll

responded that *he* should try it on himself, adding that it was his color. Trump and Carroll went

back and forth, teasing each other about who should try on the bodysuit.

32.     Suddenly, Trump grabbed Carroll's arm and said, "Let's put this on."

33.     Trump maneuvered Carroll to the dressing room. As they moved, Carroll laughed,

thinking to herself that she would make him put the bodysuit on over his pants.

34.     Strangely for Bergdorf's, the dressing room door was open and unlocked.

35.     Trump closed the door of the dressing room.

36.     Immediately, Trump lunged at Carroll, pushing her against the wall, bumping her

head quite badly, and putting his mouth on her lips.

37.     Carroll shoved him back. Utterly shocked by Trump's unexpected attack, Carroll

burst out in awkward laughter. She could hardly process the insanity of the situation. She also

hoped, at least at first, that laughter would bruise his ego and cause him to retreat.

38.     But Trump did not stop. He seized both of her arms and pushed her up against the

wall again, bumping her head a second time. While pinning Carroll against the wall with his

shoulder, Trump jammed his hand under her coatdress and pulled down her tights.

6

39.     Trump opened his overcoat and unzipped his pants. Trump then pushed his fingers around Carroll's genitals and forced his penis inside of her.

40.     Carroll resisted, struggling to break free. She tried to stomp his foot with her high heels. She tried to push him away with her one free hand (as she kept holding her purse with the other). Finally, she raised a knee up high enough to push him out and off her.

41.     Carroll ran out of the dressing room, out of Bergdorf's, and onto Fifth Avenue.

42.     The whole attack lasted two to three minutes.

## II.     CARROLL CONFIDES IN TWO FRIENDS ABOUT THE RAPE

43.     As soon as she was outside Bergdorf's, Carroll pulled her phone out of her purse and called her friend Lisa Birnbach, the author, journalist, and correspondent on TV morning shows.[1] Carroll was breathless and still reeling from the assault. She kept laughing, manically—her way of coping with the stress and trauma that she had just experienced.

44.     Carroll recounted to Birnbach how Trump had attacked her in Bergdorf's dressing room. She told Birnbach how Trump had pulled down her tights and put his penis inside of her.

45.     "He raped you," Birnbach kept repeating. She begged Carroll to go to the police and offered to accompany her. Still in shock and reluctant to think of herself as a rape victim, Carroll did not want to speak to the police. She told Birnbach that it was just a few minutes of her life and that it was over. She implored Birnbach never to tell anyone what had happened.

46.     Carroll drove home and crawled straight into bed.

47.     Over the next few days, Carroll confided in a second friend, the New York City journalist and news anchor Carol Martin. They sat together in the kitchen as Carroll described the

---

[1] Birnbach wrote a story about Trump's Mar-a-Lago that was published in February 1996. *See* Lisa Birnbach, *Mi Casa Es Su Casa*, NEW YORK (Feb. 12, 1996). Birnbach has suggested that it was because of her work on that article that Carroll called her immediately after the assault.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 9 of 114

rape. This time, Carroll did not laugh. Nobody laughed. The gravity of the assault had finally started to sink in.

48.      Martin solemnly advised Carroll to tell no one. Recognizing that Trump was a powerful man, Martin feared that if her friend came forward, disaster would ensue. Martin warned Carroll, in sum and substance: "Tell no one. Forget it! He has two hundred lawyers. He'll bury you."

49.      Carroll took Martin's advice. She knew how brutal and dangerous Trump could be.

50.      Carroll was also afraid of being dragged through the mud if she reported the rape. She was convinced that nobody would believe her if she came forward. And like so many other survivors of sexual assault, Carroll also blamed herself. She called herself "stupid." She told herself that she "deserved it" for agreeing to go lingerie shopping with Trump. She struggled with the guilt that, somehow, though she had fought to protect herself from his attack, it was her fault that Trump had raped her because she had entered that Bergdorf dressing room.

51.      Fundamentally, Carroll was raised to believe that strong women get by in the world with a stiff upper lip—*i.e.*, by putting hardship and suffering behind them. She believed that strong women laugh at disasters because feeling sad only doubles the burden. To Carroll, laughter is how women have dealt with calamity for thousands of years. So Carroll put her chin up and tried to move on.

52.      Carroll thus chose silence.

53.      Carroll did not mention the rape again for over twenty years. She did not want to be seen—or to see herself—as a victim of sexual assault.

54.      Carroll has not had sex with anyone since that day when Trump raped her.

8

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 10 of 114

## III. CARROLL REMAINS SILENT FOR TWENTY YEARS

55.     For the next twenty years, Carroll pursued her career as a writer and advice columnist. Over time, she built a loyal audience and enjoyed the support of her publisher. Her *Ask E. Jean* advice column in *Elle* magazine became the longest, still-active advice column in American publishing. Its success resulted in large part from the many letters sent to her by readers.

56.     Carroll's column in *Elle* was about life and love. Readers' questions ranged from the lighthearted to the deeply personal. From time to time, readers would ask questions about whether behavior that they experienced at work, at church, and in their relationships was appropriate. When Carroll detected sexism or abuse, she did her level best to call it out and to help women protect themselves.

57.     One reader, for example, despaired in 1994, "My boss is always rubbing up against me . . . . He scares me because he's very powerful and could ruin me." Carroll responded: "Darling, if the old snake has done so much to help your career, why are you still an assistant? Sex harassers are filthy yellow sneaking cowards and must be won over, or crushed . . . . If all else fails, next time the old waterhead touches you, give him a knee in the groin. You've got nowhere to go but up."[2]

58.     Another reader had been raped when thirteen years old and sought advice from Carroll because her rapist had just been hired as a co-worker. Carroll responded: "[T]he gentleness of your [letter] speaks strongly for your forgiving nature; however, it makes my duty *very* difficult. Because now I must harden your soul. I must twist a little bit of steel—I'd try a big block of metal

---

[2] *Reprinted in* E. JEAN CARROLL, A DOG IN HEAT IS A HOT DOG AND OTHER RULES TO LIVE BY 28-29 (1996).

INDEX NO. 160694/2019
RECEIVED NYSCEF: 11/04/2019
Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 11 of 114

if I could—around your backbone, and persuade you to report your friend to the police."[3] Carroll added:

> "First, call your rape crisis center and speak with a counselor. Second, join a group of rape survivors—with their hardy support, you'll start constructing a world for *yourself* and leave the world the rapist built for you. And, third, find another job at once. (Do *not* tell your employer about the rape. Do *not* inform the rapist of these steps. Stay cool. He's dangerous.)"[4]

59.     In her advice columns, Carroll sought to offer witty, wise, and worldly guidance, and to address her readers in a clear, straightforward manner. She often urged readers to speak the truth and to recognize patterns of rationalization and abuse. Readers' perception of Carroll as honest, thoughtful, frank, and well-meaning were essential to Carroll's professional success.

60.     But in responding to her readers, Carroll did not confess her own life experiences, including the sexual assault by Trump described above.

61.     During the last month of the election of 2016, Carroll watched a multitude of women reveal that Trump had engaged in sexual misconduct. She saw Trump brutally attacking his accusers on a national stage—denying their accusations, while also savaging their reputations and insulting their appearance.

62.     And as Carroll sat at the bedside of her dying mother in a Bloomington, Indiana hospital, watching numerous, credible women stun the nation with their stories of Trump's sexual brutality, Carroll briefly considered whether she, too, should reveal that Trump had raped her.  But she feared—just as she had for decades—that Trump would lie his way out of it, while destroying her life and reputation. He had done it before to plenty of women and, it seemed to Carroll, he would readily do it again. And, worst of all, coming forward with her story would also cause a

---

[3] *Id.* at 141-42.

[4] *Id.* at 142.

media storm in Indiana and destroy her mother's last happy days on the planet. Carroll feared that it would cost her and her family dearly without actually changing anything, especially since any accusation made during the presidential campaign would be characterized by Trump and his allies as a stunt to thwart his election.

63.  Indeed, Carroll worried that she might make Trump *more* popular in states like Indiana by revealing the rape, since his electoral fortunes had steadily improved despite credible allegations of sexual abuse. To Carroll, it appeared that some of Trump's political supporters actually admired the fact that Trump was rich enough, macho enough, and powerful enough to be sued by—and to pay off—all these women he had groped and penetrated (especially porn stars and *Playboy* models).

64.  Carroll, in honor of her mother's remarkable life, many years of which were spent as a local and loyal Republican elected official, and because she thought the publicity would help Trump win the election, warily persisted in her decades-old silence.

65.  Carroll's mother died on October 11, 2016. In 2017, Carroll decided to write a book drawing on her observations as an advice columnist, but focusing specifically on her own life and trying to understand why so many *Ask E. Jean* letter-writers complained about men. On the morning of October 5, 2017, Carroll set out on a road trip, traveling to towns named after women. When she arrived in each town named after a woman (Angelica, New York, Tallulah, Louisiana, Marianna, Arkansas, and so forth), she spoke to women from all walks of life about their relationships with men. She asked many of her subjects about the roles that men play in their lives.

## IV.  CARROLL DECIDES TO SPEAK OUT

66.  On the very day Carroll began her road trip for her book, October 5, 2017, the *New York Times* revealed that Harvey Weinstein had sexually assaulted and harassed dozens of women

11

in the film industry.[5] The news went off in Carroll's mind like a bomb. She could not stop reading. Painful memories of abuse at the hands of men, including Trump, swept over her.

67.     Days later, several women accused Weinstein of rape.[6] It soon became clear to Carroll, and to the American people, that Weinstein's abuses had been enabled for decades by a loose network of loyalists and lawyers, who had ensured that Weinstein evaded accountability for his exploitation of women—even though it was an open secret in Hollywood.

68.     As the Weinstein scandal persisted, Carroll saw society respond to the accusations with a seriousness and depth of self-reflection that she had never seen before; all too often, and as recently as the 2016 election, many Americans had brushed aside or marginalized accusations of sexual misconduct by powerful men. Carroll also saw other women suddenly feel emboldened to come forward with their own reports of harassment, exploitation, abuse, violence, and rape.

69.     Carroll was moved by this experience. The walls that she had erected in her mind— the fear that Trump would emerge unscathed, the wariness of allowing him and his allies to come after her, the doubt that speaking up would actually matter, and the nagging anxiety that she was somehow to blame for being raped—began to crumble. Decades of deflection, diversion, and denial dissolved, resurfacing memories and feelings that she had hidden away.

70.     Carroll was struck by the fact that Weinstein, for all his wealth and power, could still be held accountable for his sexual misconduct. She saw how women had at last changed the public conversation by saying "Me Too" and by demanding accountability.

---

[5] Jodi Kantor & Megan Twohey, *Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*, N.Y. TIMES (Oct. 5, 2017).

[6] Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, NEW YORKER (Oct. 10, 2017).

71.     These observations lead Carroll to reflect again on her column in *Elle* magazine, and to ask whether she was a hypocrite. For decades, she had paired her trademarked wit with steely resolve in confronting the everyday unfairness—and, all too often, the abuse—that her (largely female) readers confessed. Carroll's written persona was brave. But she *still* had not confessed her own experiences of abuse, her fear of coming forward, or her creeping self-doubt.

72.     These internal reflections loomed larger in her mind—and became inescapable—as more readers of Carroll's advice column began asking, "Should I come forward with my account of surviving sexual abuse or harassment?"

73.     Carroll finally decided that she owed her readers the truth. She also owed them (and many other women) solidarity in their efforts to bring justice and accountability to powerful men who had engaged in sexual assault and gotten away with it. She knew that it would be painful to speak up. But she also knew that it was the right thing to do so.

74.     While Carroll was on the road trip across the country talking to women as research for her book, she started a list of the 21 most hideous men she had ever encountered—men who had, each in his own way, left indelible and ugly marks on her story. This list grew into a book, *What Do We Need Men For?: A Modest Proposal*. In that book, Carroll interspersed the stories of women she had met while traveling the country with the men on her "Most Hideous List."

75.     Two men on the Most Hideous List haunted Carroll the most. The first was Cam Parks, the Waterfront Director at her Girl Scout camp, a man who sexually abused her every day during a two-week period when she was twelve. The second was Donald Trump, the man who raped her when she was 52. Carroll described that attack in detail.

76.     Carroll knew a book was the right place for her to come forward about Trump's assault. Writing is Carroll's lifeblood; she writes to process the world around her and to reveal her

inner self. It's her normal way of living: she writes about what happens to her, often in a confessional, idiosyncratic manner. She also believed that a book would allow her to control her narrative and speak directly to her readers. This was important. Carroll did not want to be, or to act like, a victim. She wanted to tell her story on her terms, rather than as filtered through journalists or social media. Her language was specific.

77.     In her book, Carroll truthfully described, in meticulous detail, the rape in Bergdorf Goodman:

> "The next moment, still wearing correct business attire, shirt, tie, suit jacket, overcoat, he opens the overcoat, unzips his pants, and, forcing his fingers around my private area, then thrusts his penis halfway—or completely—I'm not certain—inside me."[7]

78.     She also explained why she had not come forward earlier:

> "Receiving death threats, being driven from my home, being dismissed, being dragged through the mud, and joining the sixteen women who've come forward with credible stories about how the man grabbed, badgered, belittled, mauled, molested, and assaulted them, only to see the man turn it around, deny, threaten, and attack them, never sounded like much fun. Also, I'm a coward."[8]

79.     At noon on June 21, 2019, *New York* magazine published Carroll's account of the rape on NYMag.com as an excerpt of her forthcoming book. The excerpt first appeared on *The Cut,* a vertical on NYMag.com. The excerpt appeared on newsstands three days later in the June 24-July 7 print edition.

80.     Carroll's book was released by St. Martin's Press on July 2, 2019.

---

[7] E. JEAN CARROLL, WHAT DO WE NEED MEN FOR?: A MODEST PROPOSAL 248 (2019).

[8] *Id.* at 244.

## V.     TRUMP REPEATEDLY DENIES RAPING CARROLL AND MAKES A SLEW OF FALSE, INSULTING STATEMENTS ABOUT HER

81.     In three statements—published on June 21, 22, and 24 respectively—Trump responded to Carroll by publicly, falsely, and maliciously smearing her reputation.

82.     On June 21, 2019, Trump issued the following public statement:

"Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."

83.     Upon information and belief, Trump's June 21 statement was first given to the press, including Laura Litvan of *Bloomberg News*, who posted it on Twitter at 2:17 p.m.[9]

---

[9]     *See* Laura Litvan (@LauraLitvan), Twitter (June 21, 2019 2:17 PM), https://twitter.com/LauraLitvan/status/1142179819075121154.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 17 of 114

84.     Trump's June 21 statement was subsequently shared online by other journalists and covered by many leading news sources as Trump's statement in response to Carroll.[10]

85.     In the June 21 statement, Trump falsely stated that he did not rape Carroll.

86.     In the June 21 statement, Trump falsely stated that he had never met Carroll.

87.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that he had no idea who Carroll was.

---

[10] *See, e.g.*, AFP News Agency, *US Writer Says Trump Sexually Assaulted Her in Mid-1990s*, AL JAZEERA, (June 21, 2019); Alexandra Alter, *E. Jean Carroll Accuses Trump of Sexual Assault in Her Memoir*, N.Y. TIMES (June 21, 2019); Jenna Amatulli, *Trump on E. Jean Carroll Rape Allegation: "I've Never Met This Person in My Life"*, HUFFINGTON POST (June 21, 2019); Amber Athey, *Trump Responds to Rape Accuser: "People Should Pay Dearly for Such False Accusations"*, DAILY CALLER (June 21, 2019); Brian Bennet, *Trump Says He "Never Met" Author Who Has Accused Him of Sexual Assault*, TIME (June 21, 2019); Ellie Bufkin, *Trump Issues Blistering Denial of E. Jean Carroll's Rape Allegation*, WASH. EXAMINER (June 21, 2019); Adam Carlson, *Noted Advice Columnist Says Trump Raped Her in Manhattan Department Store in the '90s—"Never Happened," Trump Responds*, PEOPLE MAG. (June 21, 2019); Matthew Choi, *Trump Dismisses New Sexual Assault Allegation*, POLITICO (June 21, 2019); Casey Darnell, *Writer Says She Was Raped by Trump in 1990s*, YAHOO! NEWS (June 21, 2019); EJ Dickson, *E. Jean Carroll Alleges President Donald Trump Assaulted Her*, ROLLING STONE (June 21, 2019); Vivian Ho & Lauren Gambino, *Evening Summary: Trump Responds to E Jean Carroll's Allegations*, GUARDIAN (June 21, 2019); Colby Itkowitz, *Magazine Columnist Accuses Trump of Sexual Assault More than Two Decades Ago, an Allegation He Denies*, WASH. POST (June 21, 2019); Sarah Jones, *E. Jean Carroll: "Trump Attacked Me in the Dressing Room of Bergdorf Goodman."*, N.Y. MAG. (June 21, 2019); Hilary Lewis, *E. Jean Carroll Says Bringing Rape Charges Against Trump Would Be "Disrespectful" to Migrant Women*, HOLLYWOOD REP. (June 22, 2019); Caitlin Mac Neal, *Advice Columnist E. Jean Carroll Accuses Donald Trump Of Sexual Assault*, TALKING POINTS MEMO (June 21, 2019); Alex Pappas, *Longtime Advice Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FOX NEWS, (June 21, 2019); Daniel Politi, *Trump Goes on Tirade to Deny Latest Assault Allegation: Women Are "Paid Money" to Make False Claims*, SLATE (June 22, 2019); Christina Prignano, *Author E. Jean Carroll Accuses President Trump of Sexual Assault in 1990s*, BOS. GLOBE (June 21, 2019); Eliza Relman, *Trump Claims He's Never Met the Columnist Who Just Accused Him of Sexual Assault Despite Photo Evidence of Them Together*, BUS. INSIDER (June 21, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Jessica Taylor, *Trump Denies New Sexual Assault Allegation by Advice Columnist E. Jean Carroll*, NPR (June 21, 2019); Josh Wingrove, *Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FORTUNE (June 21, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019); Josh Wingrove, *Woman Accuses Trump of Sexual Assault at New York Store in 1990s*, BLOOMBERG (June 21, 2019).

88.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll had invented the rape accusation as a ploy for increased book sales.

89.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation to carry out a political agenda.

90.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation as part of a conspiracy with the Democratic Party.

91.     On June 22, 2019, Trump made the following statement to reporters:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that."[11]

92.    Like his first statement, Trump's June 22 statement regarding Carroll was widely reported in the national press.[12]

93.    In the June 22 statement, Trump falsely stated that he did not rape Carroll.

94.    In the June 22 statement, Trump falsely stated that he had no idea who Carroll was.

95.    In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had falsely accused other men of sexual assault.

96.    In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had been paid money to invent the rape accusation against him.

---

[11] *Remarks by President Donald Trump Before Marine One Departure*, WHITE HOUSE (June 22, 2019).

[12] *See, e.g.*, Matthew Chapman, *Trump Goes on Manic Tirade After Being Asked About New Rape Allegation: Women Get "Paid Money to Say Bad Things About Me"*, RAW STORY (June 22, 2019); William Cummings, *Writer E. Jean Carroll Made a Claim of Sexual Assault Against Trump. Here's What We Know*, USA TODAY (June 25, 2019); Gillian Edevane, *George Conway Says Trump's Credibility is "Annihilated" After President Denies Knowing Alleged Assault Victim*, NEWSWEEK (June 22, 2019); Lulu Garcia-Navarro, *"It Hurt. And It Was Against My Will": Trump Accuser Stands by Her Story*, NPR (June 22, 2019); Amanda Holpuch, *Trump Repeats Contested Claim He Does Not Know Latest Sexual Assault Accuser*, GUARDIAN (June 22, 2019); Colby Itkowitz et al., *Trump Compares Himself to Kavanaugh in Latest Sexual Assault Allegation*, WASH. POST (June 22, 2019); Darlene Superville, *Trump Denies Knowing E. Jean Carroll, Woman Accusing Him of Sexual Assault in Department Store*, ABC NEWS (June 22, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Mihir Zaveri, *Trump Emphatically Denies Sexual Assault Allegation by E. Jean Carroll*, N.Y. TIMES (June 22, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019).

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 20 of 114

97.     Two days later, on June 24, 2019, *The Hill* released an interview in which Trump made the following statement in response to Carroll: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[13]

98.     Trump's statement in *The Hill* was widely reported by the national press.[14]

99.     This insulting statement was consistent with Trump's response to other accusations of sexual assault. About one woman who claimed he groped her and tried to put his hand up her skirt while they were seated next to each other on an airplane, Trump told crowds at a rally,

---

[13] Jordan Fabian & Saagar Enjeti, *EXCLUSIVE: Trump Vehemently Denies E. Jean Carroll Allegation, Says "She's Not My Type"*, HILL (June 24, 2019).

[14] *See, e.g.*, Julia Arciga, *Trump on E. Jean Carroll's Assault Allegations: "She's Not My Type"*, DAILY BEAST (June 24, 2019); Associated Press, *Trump on E. Jean Carroll Sexual Assault Claim: "She's Not My Type"*, HOLLYWOOD REP. (June 25, 2019); Associated Press, *Trump Says Famed Advice Columnist Who Accused Him of Sexual Assault Is "Not My Type"*, CHI. TRIB. (June 24, 2019); Associated Press, *Trump: Woman Who Accused Him of Sexual Assault Not His Type*, DENVER POST (June 24, 2019); Amber Athey, *Trump Says Columnist Who Accused Him of Rape Is "Not My Type"*, DAILY CALLER (June 24, 2019); Peter Baker & Neil Vigdor, *Trump, Accused Again of Sexual Misconduct, Insults Woman Who Said He Assaulted Her*, BOS. GLOBE (June 25, 2019); Antonia Blumberg, *Trump on E. Jean Carroll Accusing Him of Rape: "She's Not My Type"*, HUFFINGTON POST (June 24, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, BUS. INSIDER (June 25, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, REUTERS (June 25, 2019); Burgess Everett & Melanie Zanona, *"I Believe the President": GOP Stands by Trump on Sexual Assault Allegation*, POLITICO (June 25, 2019); Rebecca Falconer, *Trump Says He Didn't Rape Author E. Jean Carroll: "She's Not My Type"*, AXIOS (June 24, 2019); Megan Garber, *The Real Meaning of Trump's "She's Not My Type" Defense*, ATLANTIC (June 25, 2019); Rebecca Morin, *"She's Not My Type": Trump Again Denies E. Jean Carroll's Sexual Misconduct Allegation*, USA TODAY (June 24, 2019); Ari Shapiro, *A Look at President Trump's Pattern of Responding To Accusations Of Sexual Misconduct*, NPR (June 25, 2019); Matt Stieb, *Trump Responds to E. Jean Carroll Rape Allegation: "She's Not My Type"*, CUT (June 25, 2019); Jia Tolentino, *E. Jean Carroll's Accusation Against Donald Trump, and the Raising, and Lowering, of the Bar*, NEW YORKER (June 25, 2019); Jay Willis, *Donald Trump Responds to E. Jean Carroll's Rape Allegation: "She's Not My Type"*, GQ (June 25, 2019); Anthony Zurcher, *Trump Says Sexual Assault Accuser E Jean Carroll "Not My Type"*, BBC NEWS (June 25, 2019).

19

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 21 of 114

"Believe me. She would not be my first choice. That I can tell you."[15] He reportedly called that same woman "the cunt on the airplane" when he ran into her at a charity gala years after the assault.[16] About a second woman, who claimed he forcibly pinned her to a wall and kissed her without consent while she was interviewing him for a magazine, Trump said to crowds at another rally, "Take a look. You take a look. Look at her, [then] look at her words. You tell me what you think. I don't think so. I don't think so."[17] Indeed, Trump often responds to claims that he has behaved inappropriately by simultaneously attacking the individual's credibility and attractiveness. When a female journalist quoted him as saying in a 1992 interview that "you have to treat women like shit," Trump insisted later, "The woman's a liar, extremely unattractive, lots of problems because of her looks."[18]

100.    In the June 24 statement, Trump falsely stated that he did not rape Carroll.

101.    On June 27, Birnbach and Martin went on the record to corroborate Carroll.[19]

102.    Speaking to Carroll, Martin, and a reporter, Birnbach said:

"I remember [Carroll] saying repeatedly, he pulled down my tights . . . . [Carroll] did say, he put his penis in me. And I said—my face just did it. What? He raped you? And [Carroll] said, eh, he kept pulling down—he pulled down my tights. He pulled down my tights . . . . It just—it was horrible. We fought. And I said, let's go to the police. No. Come to my house. No. I want to go home. I'll take you to the

---

[15] Jose A. DelReal, *Trump Mocks Sexual Assault Accusers: "She Would Not Be My First Choice"*, WASH. POST (Oct. 14, 2016).

[16] BARRY LEVINE & MONIQUE EL-FAIZY, ALL THE PRESIDENT'S WOMEN: DONALD TRUMP AND THE MAKING OF A PREDATOR 72 (2019).

[17] Naomi Lim, *Donald Trump on Accuser: "Take a Look at Her . . . I Don't Think So"*, CNN (Oct. 13, 2016).

[18] Nancy Collins, *Donald Trump Talks Family, Women in Unearthed Transcripts: "When I Come Home and Dinner's Not Ready, I Go Through the Roof"*, HOLLYWOOD REP. (Oct. 13, 2016).

[19] Michael Barbaro et al., *Corroborating E. Jean Carroll*, N.Y. TIMES (June 27, 2019).

20

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 22 of 114

police. No. It was 15 minutes of my life, it's over. Don't ever tell anybody. I just had to tell you."[20]

103.    Responding to Carroll, Birnbach, and a reporter, Martin said:

"From what I could sense of you, you were, A, you were handling it, as you handle things. She doesn't break down easily on anything. And there was none of that, as you told me. It wasn't like she started crying, or nothing that was a frantic kind of response to it. It was like, I can't believe this happened."[21]

104.    Martin added: "I said, don't tell anybody. I wouldn't tell anybody this."[22]

105.    Separately, Birnbach observed, "I believe E. Jean in this episode that she recounted

to me in 1996. Yes. Without hesitation. She's not a fabulist. She doesn't make things up."[23]

## VI.    TRUMP'S FALSE STATEMENTS ABOUT CARROLL WERE MADE WITH KNOWLEDGE OF FALSITY OR RECKLESS DISREGARD FOR THE TRUTH

106.    The false statements that Trump made about Carroll on June 21, 22, and 24, 2019,

were published with knowledge of their falsity and/or with reckless disregard for the truth.

107.    Trump knew who Carroll was at the time he raped her.

108.    Trump identified Carroll on sight when they met at Bergdorf Goodman.

109.    In that period, Trump moved in the same highly publicized New York City media

circles as Carroll, who also appeared on her own popular daily television program.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Jessica Bennett et al., *Why E. Jean Carroll, "the Anti-Victim," Spoke Up About Trump*, N.Y. TIMES (June 27, 2019).

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 23 of 114

110.    In 1987, Trump and Carroll were photographed at a party together:



111.    Trump has stated that he possesses "one of the great memories of all time."[24]

112.    Trump has also described himself as a "very stable genius."[25]

113.    In June 2019, Trump knew it was false to state that he had never met Carroll.

114.    In June 2019, Trump knew it was false to state that he had no idea who Carroll was.

115.    In June 2019, Trump knew it was false to state that he had never raped Carroll.

116.    Trump's other defamatory statements about Carroll in June 2019—that she had fabricated the rape accusation to increase her book sales, to carry out a political agenda, as part of a conspiracy with the Democratic Party, or in exchange for payment—rested on the express or deliberately-implied premise that Carroll's underlying accusation was false. Because Trump knew that the accusation was true, he also knew that his other statements about Carroll were false.

117.    Moreover, Trump lacked any factual basis for these highly specific statements regarding why Carroll had revealed to the public that he raped her at Bergdorf Goodman. And since all of these statements about Carroll were made to impute motives for lying, when in fact he

---

[24] Foreign Staff, *Donald Trump: I Have "One of the Greatest Memories of All Time"*, TELEGRAPH (Oct. 26, 2017).

[25] Daniella Diaz, *Trump: I'm a "Very Stable Genius"*, CNN (Jan. 6, 2018).

22

knew that Carroll had spoken the truth, Trump had strong reason to doubt the veracity of his own insulting claims. Trump thus published these statements with reckless disregard for the truth.

118.    Trump also lacked any factual basis for stating (or affirmatively implying) that Carroll had falsely accused other men of sexual assault. And since he knew that her accusation against him was truthful, he had strong reason to doubt the veracity of his statement that she was lying about other men. Trump thus made this statement with reckless disregard for the truth.

119.    Carroll did not reveal Trump's rape for any of the reasons imputed to her by Trump. Each and every statement that he made about her motives for coming forward—and her supposed conspiracy with political actors to fabricate a rape accusation—was false.

120.    To the contrary, Carroll feared that revealing Trump's rape would cause terrible damage to her reputation, career, and personal life. That was especially true given Trump's famed litigiousness and public abuse of those who criticize him. Carroll made this decision to honor her values and to inspire other sexually abused women to seek justice and accountability.

121.    With respect to politics, to the extent Carroll considered such things at all, it was principally to worry that coming forward might *benefit* Trump by firing up his base and affording him another opportunity to play the victim on national television.

122.    Trump's series of false, insulting, and defamatory statements about Carroll—and his actual malice in making those statements—are fully consistent with his tried-and-true playbook for responding to credible public reports that he sexually assaulted women.

123.     In 2005, Trump admitted—on a hot mic—to repeatedly sexually assaulting women in almost exactly the same manner that he had raped Carroll:

> "I'd better use some Tic Tacs just in case I start kissing her [the woman Trump was looking at, whom he had never met before]. You know, I'm automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything. Grab them by the pussy. You can do anything. . . . Oh, [she has] nice legs, huh?"[26]

124.     Based on Carroll's own experiences, Trump's 2005 statement was not "locker room talk" or mere braggadocio. It was a true description of how Trump believes he can treat women—and of how he *has* treated them on many occasions, including at Bergdorf Goodman.

125.     Indeed, Trump has openly suggested that sexual assault is inevitable when men and women interact. In 2013, for instance, he tweeted: "26,000 unreported sexual assults [sic] in the military . . . . What did these geniuses expect when they put men & women together?"[27]

126.     In addition to Carroll, Trump has been accused publicly by over a dozen women of forcibly kissing them, groping them above or below the waist, or attempting to rape them—often upon meeting him for the very first time. Those women include Jill Harth, Jessica Leeds, Cathy Heller, Temple Taggart McDowell, Karena Virginia, Bridget Sullivan, Tasha Dixon, Mindy McGillivray, Rachel Crooks, Natasha Stoynoff, Summer Zervos, and Cassandra Searles. Trump has responded to their accusations in a manner eerily similar to the statements he made about Carroll in June 2019.

127.     A recently published book by Barry Levine and Monique El-Faizy documents 67 incidents of alleged inappropriate behavior by Trump toward women, including 26 allegations of unwanted sexual contact. Forty-three of the allegations of inappropriate behavior in the book had

---

[26] *Transcript: Donald Trump's Taped Comments About Women*, N.Y. TIMES (Oct. 8, 2016).

[27] Daniella Diaz, *Trump Defends Tweet on Military Sexual Assault*, CNN (Sept. 8, 2016).

24

not been previously reported.[28] The book traces "Trump's transformation from a kid from Queens to high school 'ladies' man' into a womanizing, model-chasing, porn-star-frequenting philanderer," who "repeatedly and systematically engaged in aggressive sexual pursuit of women over the course of many decades."[29] In one instance, Karen Johnson describes Trump hiding behind a tapestry at his Mar-a-Lago home during a party and, when she walked by to use the restroom, grabbing her by the genitals, pulling her toward him, and kissing her without consent.[30] In another, Kristin Anderson describes Trump putting his hands up her skirt and touching her vagina through her underwear in a Manhattan nightclub. Trump denied that could have happened because he never would have been at a nightclub alone.[31]

128.    Trump thus knew he was lying when he said that Carroll had fabricated her rape accusation for a hodgepodge of unsavory reasons that he himself had invented out of whole cloth. He knew she was telling the truth because he knew who she was and he knew that he had raped her, just as he had sexually assaulted many other women over many years.

## VII.    CARROLL SUFFERS REPUTATIONAL AND OTHER HARM

129.    Trump's false and insulting statements about Carroll were defamation *per se*. They tended to (and did) damage Carroll in her trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information.

130.    Carroll has suffered harm as a direct result of Trump's false, defamatory statements.

131.    Carroll endured stoically when she kept secret the fact that Trump had raped her. But coming forward put her in the crosshairs of the most powerful man on the planet. He has since

---

[28] *See* LEVINE & EL-FAIZY, *supra* n.16, at 2.

[29] *Id.* at 2-3.

[30] *Id.* at 80-82, 88, 254.

[31] *Id.* at 250-51.

25

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 27 of 114

used that platform to attack her integrity, demean her appearance, condemn her as a liar, and accuse her of conspiring with political operatives in a despicable lie.

132.    These defamatory statements have caused Carroll emotional pain and suffering at the hands of the man who raped her, as well as injury to her reputation, honor, and dignity.

133.    Carroll has suffered professional harm as a direct result of Trump's defamatory statements. Carroll's professional success is inextricably bound up with her *Ask E. Jean* advice column, where readers look to her for wisdom, wit, honesty, integrity, and courage. By attacking Carroll, Trump has injured the reputation on which she makes her livelihood and attracts readers.

134.    Trump's defamatory statements caused Carroll to lose the support and goodwill of many of her readers. Many were turned off by even the idea of writing to a woman whom the President of the United States branded a "liar." Since Trump defamed her, some fans have stopped sending letters altogether—thus impairing Carroll's column, which requires a steady flood of compelling letters to which she can respond. In the months of July, August, and September 2019, Carroll received roughly 50% fewer letters than she received during the same period in 2018.

135.    Carroll is an advice columnist whose reputation is the very lifeblood of her trade, and Trump's defamatory statements have therefore inflicted wide-ranging and substantial harm.

136.    Carroll filed this lawsuit to obtain redress for those injuries.

## **CAUSE OF ACTION: DEFAMATION**

137.    Plaintiff Carroll incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

138.    Trump published statements to the media on June 21, 22, and 24, 2019.

139.    Each of those statements identified—and was "of or concerning"—Carroll.

140.     Each of those statements contained numerous falsehoods about Carroll, whether on their face and/or by virtue of a clear implication affirmatively intended by Trump.

141.     Trump's false statements regarding Carroll were defamatory *per se*.

142.     Trump's false and defamatory statements were published throughout New York State and around the world on television, in newspapers and magazines, on social media, and elsewhere in print and on the internet. Trump ensured that his false and defamatory statements about Carroll would receive a wide circulation by making them to the national press.

143.     Trump made these false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity.

144.     Trump made these false statements with ill will and spite, and with wanton, reckless, or willful disregard for their injurious effects on Carroll and Carroll's rights.

145.     Trump's false and defamatory statements caused Carroll to suffer reputational, emotional, and professional harm, as alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Carroll prays for relief as follows:

a.   Ordering Trump to retract any and all defamatory statements;

b.   Ordering Trump to pay compensatory damages in an amount to be determined at trial;

c.   Ordering Trump to pay punitive damages in an amount to be determined at trial; and

d.   Awarding pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

Dated:  November 4, 2019                    Respectfully submitted,


By:

_____

Roberta A. Kaplan
Matthew J. Craig
Martha E. Fitzgerald
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com
mfitzgerald@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 30 of 114

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

                    *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                    *Defendant*.

---

Index No. 160694/2019

**AFFIRMATION**

---

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.      I am a partner with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.      I submit this affirmation as a supplement to our Request for Judicial Intervention identifying the above-captioned action as related to another action, *Summer Zervos v. Donald J. Trump*, No. 150522/2017, currently pending before Justice Jennifer G. Schecter. For the reasons set forth below, the present action should be deemed related to *Zervos*, and Justice Schecter should be likewise assigned.

3.      Although Justice Schecter was reassigned to the Commercial Division after *Zervos* was filed on January 17, 2017, she has continued to preside over that case in the Civil Branch of the New York Supreme Court, New York County. This action, as with *Zervos*, is properly filed in the Supreme Court's Civil Branch.

4.      "[The] purpose of requiring identification of related actions is to ensure that related proceedings are resolved most expeditiously by assignment to the justice most familiar with the proceedings." *United Cmty. Ins. Co. v. State Farm Fire & Cas. Co.*, 143 Misc.2d 954, 956 (Sup. Ct., N.Y. Cty. 1989).

5.      It is in the interests of both the parties and the Court to assign Justice Schecter to this action, given the similarities between the two cases and the potential administrative demands that they present for the Court.

6.      The defendant, Donald J. Trump, is the same in both cases. He is being sued in his individual capacity by both plaintiffs for similar defamatory statements he made in response to similar—and grave—allegations by both plaintiffs of sexual misconduct. Both cases therefore present similar, and often novel, legal issues.

7.      Further, *Zervos* has received significant media attention, and we anticipate that similar attention will be paid to this lawsuit. Indeed, dozens of articles about the *Carroll* complaint were published on the day that it was filed.

8.      Assigning two different Justices to these cases would both amplify the Court's workload unnecessarily and risk conflicting rulings.

9.      Although *Zervos* was assigned to Justice Schecter before she was assigned to the Commercial Division, and the present action would not otherwise satisfy Section 202.70(b) of the Rules of the Commercial Division of the Supreme Court, the two cases are "sufficiently related to justify the assignment of both of them to the same judge," *Place v. Ciccotelli*, 121 A.D.3d 1378, 1379 (3d Dep't 2014), because, as explained above, "the efficient administration of the [C]ourt's business will be advanced thereby," 105 N.Y. Jur. 2d Trial § 8.

2

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 32 of 114

10.     Carroll has submitted this Request for Judicial Intervention without notice to Trump because she has been unable to effect service upon him pursuant to CPLR §§ 308(2) and 313, and other methods of service are impracticable. Concurrent with this filing, Carroll is also submitting an *ex parte* application for an order permitting alternative service pursuant to CPLR § 308(5). As further explained in my affirmation in that separate filing, Carroll, through a process server, has attempted to serve Trump with the summons, the complaint, a Notice of Electronic Filing, and a Request for Judicial Intervention and accompanying affirmation[1] on five separate occasions—four at Trump's Trump Tower residence, and one at the White House. Secret Service agents have frustrated the process servers' efforts on each occasion.

11.     Because this Request for Judicial Intervention identifies reasons to assign Justice Schecter to this action, and because Carroll's *ex parte* application for an order permitting alternative service may lead to the assignment of a Justice, we have made the two filings concurrent with one another.

Dated: New York, New York
           November 8, 2019

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

---

[1] The Request for Judicial Intervention and accompanying affirmation that Carroll attempted to serve on each of those five occasions were materially indistinguishable from the present submission, and sought to identify this action as related to *Zervos*.

3

**REQUEST FOR JUDICIAL INTERVENTION**

UCS-840
(rev. 07/29/2019)

SUPREME _____ COURT, COUNTY OF NEW YORK

Index No: 160694/2019    Date Index Issued: 11/04/2019

| For Court Use Only: |
| --- |
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Filed Date |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

E. Jean Carroll,

Plaintiff(s)/Petitioner(s)

-against-

Donald J. Trump, in his personal capacity,

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**    Check only one box and specify where indicated.

**COMMERICIAL**
- ○ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ○ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY**    Specify how many properties the application includes: _____
- ○ Condemnation
- ○ Mortgage Foreclosure (specify):    ○ Residential    ○ Commercial
  Property Address: _____
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ○ Tax Certiorari
- ○ Tax Foreclosure
- ○ Other Real Property (specify): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution    [see *NOTE* in **COMMERCIAL** section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (specify): _____

**MATRIMONIAL**
- ○ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- ○ Asbestos
- ○ Child Victims Act
- ○ Environmental (specify): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (specify): _____
- ○ Other Negligence (specify): _____
- ○ Other Professional Malpractice (specify): _____
- ◉ Other Tort (specify): Defamation

**SPECIAL PROCEEDINGS**
- ○ CPLR Article 75 (Arbitration) [see *NOTE* in **COMMERCIAL** section]
- ○ CPLR Article 78 (Body or Officer)
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 (Kendra's Law)
- ○ MHL Article 10 (Sex Offender Confinement-Initial)
- ○ MHL Article 10 (Sex Offender Confinement-Review)
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (specify): _____
- ○ Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
| --- | --- | --- | --- |
| Has a summons and complaint or summons with notice been filed? | ◉ | ○ | If yes, date filed: 11/04/2019 |
| Has a summons and complaint or summons with notice been served? | ○ | ◉ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.
- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ○ Notice of Motion    Relief Requested: _____    Return Date: _____
- ○ Notice of Petition    Relief Requested: _____    Return Date: _____
- ○ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ○ Other Ex Parte Application    Relief Requested: _____
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ◉ Other (specify): Identification, without notice, of the related case Summer Zervos v. Donald J. Trump, No. 150522/2017

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
| Summer Zervos v. Donald J. Trump | 150522/2017 | Supreme Court, New York County, NY | Justice Jennifer G. Schecter | See attached affirmation by Roberta A. Kaplan |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Un-Rep** | **Parties** List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | **Attorneys and Unrepresented Litigants** For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | **Issue Joined** For each defendant, indicate if issue has been joined. | **Insurance Carriers** For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: E. Jean Carroll  Role(s): Plaintiff | Roberta A. Kaplan  Kaplan Hecker & Fink LLP, 350 Fifth Avenue, Suite 7110, New York, New York 10118 Tel: (212) 763-0883; Email: rkaplan@kaplanhecker.com | ○ YES  ○ NO | n/a |
| ☐ | Name: Donald J. Trump  Role(s): Defendant | Unknown | ○ YES  ◉ NO | Unknown |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: _____11/08/2019_____

_____
Signature

_____2507093_____   Roberta A. Kaplan
Attorney Registration Number   Print Name

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------

E. JEAN CARROLL,

                              *Plaintiff*,

     -against-                                              Index No. 160694/2019

DONALD J. TRUMP, in his personal capacity,

                              *Defendant*.

-------------------------------------------------------------

## [PROPOSED] ORDER PERMITTING ALTERNATIVE SERVICE

Upon the annexed affirmation of Roberta A. Kaplan, Esq., dated November 8, 2019, and

all supporting papers annexed thereto, it is hereby:

ORDERED that service of process shall be directed pursuant to CPLR § 308(5) upon

Defendant Donald J. Trump as follows:

Until such time that counsel for Defendant in this action has been identified, Plaintiff E.

Jean Carroll shall be permitted to serve Defendant by mailing the summons and all other papers to

Defendant at the two addresses below, and emailing a copy of such papers to Defendant's attorneys

below:

> Donald J. Trump
> Trump Tower
> 725 Fifth Avenue
> New York, NY 10022
>
> Donald J. Trump
> White House
> 1600 Pennsylvania Ave NW
> Washington, DC 20500
>
> Richard F. Brueckner
> Law Offices of Alan S. Futerfas
> rbrueckner@futerfaslaw.com

Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

Once counsel for Defendant in this action has been identified, Plaintiff shall be permitted

to serve the summons and all papers on Defendant's counsel via email until such time that counsel

has entered a notice of appearance in this action.

Dated: November ___, 2019

ENTER:

_____
J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------

E. JEAN CARROLL,

                 *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                 *Defendant*.

---------------------------------------------------------

Index No. 160694/2019

**AFFIRMATION OF ROBERTA A. KAPLAN IN SUPPORT
OF *EX PARTE* APPLICATION FOR AN
<u>ORDER PERMITTING ALTERNATIVE SERVICE</u>**

       Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

       1.      I am a partner with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

       2.      I submit this affirmation in support of Plaintiff E. Jean Carroll's *ex parte* application for an order permitting alternative service upon Defendant Donald J. Trump pursuant to CPLR § 308(5). Pursuant to CPLR § 2217(b), I state that no prior request for the relief requested herein has been made.

**RELEVANT FACTUAL BACKGROUND**

       3.      Carroll filed this action on November 4, 2019. The summons and complaint are attached as Exhibit A.

       4.      As alleged in her complaint, roughly 23 years ago, Carroll unexpectedly encountered Defendant Trump at the luxury department store Bergdorf Goodman in New York

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 38 of 114

City. What began as playful banter between the two took a dark turn when Trump seized Carroll

in a dressing room and raped her. In the wake of Trump's election as President and the revelations

of the #MeToo era, Carroll published an account of the rape in the summer of 2019. Trump

responded with a series of false and defamatory statements, denying not only the rape, but also

ever having met Carroll or even knowing who she was. Carroll filed this action to obtain redress

for the injuries caused by Trump's defamation, and to demonstrate that even a man as powerful as

Trump can be held accountable under the law.

5.      Carroll's filing garnered immediate and widespread attention in the national and

international media. Scores of articles were published on the day of filing.[1]

---

[1] *See* Associated Press, *Advice Columnist E. Jean Carroll, Who Says Trump Sexually Assaulted Her in 1990s, Sues President for Defamation,* BALT. SUN (Nov. 4, 2019, 11:58 AM), https://www.baltimoresun.com/news/nation-world/ct-nw-e-jean-carroll-donald-trump-lawsuit-20191104-7ukqztmajnghtgbtx6yqb7h2su-story html; Associated Press, *Advice Columnist E. Jean Carroll, Who Says Trump Sexually Assaulted Her in 1990s, Sues President for Defamation,* CHI. TRIB. (Nov. 4, 2019, 10:58 AM), https://www.chicagotribune.com/nation-world/ct-nw-e-jean-carroll-donald-trump-lawsuit-20191104-7ukqztmajnghtgbtx6yqb7h2su-story html; Emily Alford, *E. Jean Carroll Becomes the Second Woman to Sue Donald Trump for Defamation*, JEZEBEL (Nov. 4, 2019, 2:07 PM), https://jezebel.com/e-jean-carroll-becomes-the-second-woman-to-sue-donald-1839612863?u; Kimberly Alters, *E. Jean Carroll Sues Trump for Saying She Lied About Her Assault Allegation*, MIC (Nov. 4, 2019), https://www.mic.com/p/e-jean-carroll-sues-trump-for-saying-she-lied-about-her-assault-allegation-19295373; Steve Benen, *Following Sexual Assault Allegation, Carroll Files Suit Against Trump*, MSNBC (Nov. 4, 2019, 2:52 PM), http://www msnbc.com/rachel-maddow-show/following-sexual-assault-allegation-carroll-files-suit-against-trump; Ryan Boysen, *Columnist Who Accused Trump of Rape Sues for Defamation*, LAW 360 (Nov. 4, 2019, 2:36 PM), https://www.law360.com/media/articles/1216692; Mike Brest, *E. Jean Carroll Sues Trump for Defamation After He Called Her Rape Allegation Against Him a Lie*, WASH. EXAMINER (Nov. 4, 2019, 11:13 AM), https://www.washingtonexaminer.com/news/e-jean-carroll-sues-trump-for-defamation-after-he-called-her-rape-allegation-against-him-a-lie; Kevin Breuniger & Dan Mangan, *Writer E. Jean Carroll Sues Trump for Defamation After He Calls Her Rape Claim a Lie*, CNBC (Nov. 4, 2019, 10:33 AM), https://www.cnbc.com/2019/11/04/e-jean-carroll-sues-trump-for-defamation-over-rape-claim.html; Adam Carlson, *Noted Advice Columnist Who Said Donald Trump Raped Her Sues Him Claiming Defamation*, PEOPLE (Nov. 4, 2019, 2:11 PM), https://people.com/politics/e-jean-carroll-donald-trump-defamation-after-rape-allegation/; Catherine Caruso, *E. Jean Carroll Sues Trump for Defamation*, MEDIUM (Nov. 4, 2019), https://medium.com/@catherineann.caruso/e-jean-carroll-sues-trump-for-defamation-b2db6b35aae0; Christina Cauterucci, *He Said, She Sued*, SLATE (Nov. 4, 2019, 6:28 PM), https://slate.com/news-and-politics/2019/11/e-jean-carroll-donald-trump-rape-lawsuit.html; Matthew Chapman, *E. Jean Carroll Sues Trump for Defaming Her over Rape Accusations*, RAW STORY (Nov. 4, 2019), https://www.rawstory.com/2019/11/e-jean-carroll-sues-trump-for-defaming-her-over-rape-accusations/; Laura Clawson, *E. Jean Carroll Sues Trump for Defamation After Sexual Assault Claim*, DAILY KOS (Nov. 4, 2019, 11:26 AM), https://www.dailykos.com/stories/2019/11/4/1897096/-E-Jean-Carroll-sues-Trump-for-defamation-after-sexual-assault-claim; Ashley Collman, *E. Jean Carroll, Who Accused Trump of Rape, Just Filed a Defamation*

2

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 39 of 114

*Lawsuit Against the President*, Bus. Insider by Pulse (Nov. 4, 2019, 5:25 PM), https://www.pulse.ng/bi/politics/e-jean-carroll-who-accused-trump-of-rape-just-filed-a-defamation-lawsuit-against-the/0114gec; Jay Connor, *Advice Columnist Who Accused Donald Trump of Sexual Assault Is Suing Him for Defamation*, Root (Nov. 4, 2019, 4:12 PM), https://www.theroot.com/advice-columnist-who-accused-donald-trump-of-sexual-ass-1839614579; William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the President for Defamation*, USA Today (Nov. 4, 2019, 1:47 PM), https://www.usatoday.com/story/news/politics/2019/11/04/trump-sued-defamation-e-jean-carroll/4155674002/; Igor Derysh, *E. Jean Carroll Sues Trump for Defamation After He Calls Her Rape Allegation "False,"* Salon (Nov. 4, 2019, 8:45 PM), https://www.salon.com/2019/11/04/e-jean-carroll-sues-trump-for-defamation-after-he-calls-her-rape-allegation-false/; Randy DeSoto, *E. Jean Carroll Sues Trump for Defamation After He Disputed Her Rape Allegation,* Western J. News (Nov. 4, 2019, 11:39 AM), https://www.westernjournal.com/e-jean-carroll-sues-trump-defamation-disputed-rape-allegation/; Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4, 2019, 2:03 PM), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation; Andrea Germanos, *Columnist E. Jean Carroll, Who Accused Trump of Rape, Files Defamation Suit Against President*, Common Dreams (Nov. 4, 2019), https://www.commondreams.org/news/2019/11/04/columnist-e-jean-carroll-who-accused-trump-rape-files-defamation-suit-against; Dave Goldiner, *Writer sues Trump for defamation over Bergdorf Goodman rape claim*, N.Y. Daily News (Nov. 4, 2019, 11:24 AM), https://www.nydailynews.com/news/politics/ny-jean-carroll-rape-trump-defamation-20191104-flf6i4k5snflbf4wpzcqy6unby-story.html; Aaron Homer, *E. Jean Carroll: Who Is the Journalist Suing Donald Trump After Accusing Him of Rape?*, Inquistr (Nov. 4, 2019), https://www.inquisitr.com/5727345/e-jean-carroll/; Molly Jong-Fast, *E. Jean Carroll Is a Hero for Stepping into the MAGA Meat Grinder*, Daily Beast (Nov. 4, 2019, 8:00 PM), https://www.thedailybeast.com/e-jean-carroll-is-a-hero-for-stepping-into-trumps-maga-meat-grinder; Vivian Kane, *Writer E. Jean Carroll Is Suing Donald Trump for Defamation After He Said Her Rape Allegations Were Lies*, Mary Sue (Nov. 4, 2019, 6:05 PM), https://www.themarysue.com/e-jean-carroll-suing-donald-trump/; Andy Kroll, *E. Jean Carroll Sues Trump for Lying About Sexually Assaulting Her*, Rolling Stone (Nov. 4, 2019, 9:21 AM), https://www.rollingstone.com/politics/politics-news/e-jean-carroll-trump-lawsuit-defamation-rape-allegation-907585/; Erik Larsen, *Trump Accuser E. Jean Carroll Sues President for Defamation over Rape Denial, "Conspiracy" Tweets*, Time (Nov. 4, 2019), https://time.com/5717679/e-jean-carroll-trump-defamation/; Abbey Marshall, *E. Jean Carroll Suing Trump for Defamation,* Politico (Nov. 4, 2019, 12:24 PM), https://www.politico.com/news/2019/11/04/e-jean-carroll-suing-trump-defamation-065423; Pilar Melendez, *E. Jean Carroll, Who Accused Trump of Raping Her in a Dressing Room, Sues Him for Defamation*, Daily Beast (Nov. 4, 2019, 12:32 PM), https://www.thedailybeast.com/e-jean-carroll-who-accused-trump-of-raping-her-in-bergdorfs-sues-him-for-defamation?s; Rose Minutaglio, *Elle Columnist E. Jean Carroll Sues Trump for Defamation*, Marie Claire (Nov. 4, 2019), https://www.marieclaire.com/culture/a29687718/elle-e-jean-carroll-sues-trump-defamation/?; *E. Jean Carroll Shares Details on Her Sexual Assault Allegations Against Donald Trump*, Digg (Nov. 4, 2019), https://digg.com/video/e-jean-carroll-donald-trump-assault-allegation; Tim O'Donnell, *E. Jean Carroll Is Suing Trump for Defamation over Rape Allegation*, Week (Nov. 4, 2019), https://theweek.com/speedreads/876228/e-jean-carroll-suing-trump-defamation-over-rape-allegation; Amanda Ottaway, *Trump Rape Accuser Brings Suit for Defamation*, Courthouse News Serv. (Nov. 4, 2019), https://www.courthousenews.com/trump-rape-accuser-brings-suit-for-defamation/; Dominic Patten, *Donald Trump Thumped with Defamation Suit by Writer E. Jean Carroll over Attaching Sexual Assault Claims*, Deadline (Nov. 4, 2019, 2:36 PM), https://deadline.com/2019/11/donald-trump-lawsuit-sexual-assault-e-jean-carroll-defamation-stephanie-grisham-summer-zervos-1202777367/; Jennifer Peltz, *Columnist Sues Trump for Calling Her Sex Assault Claim a Lie*, Portland Press Herald (Nov. 4, 2019), https://www.pressherald.com/2019/11/04/columnist-sues-trump-for-calling-her-sex-assault-claim-a-lie/; Corinne Ramey, *Elle Columnist Files Defamation Suit Against Trump*, Wall St. J. (Nov. 4, 2019, 10:52 AM), https://www.wsj.com/articles/elle-columnist-files-defamation-suit-against-trump-11572882744; Jan Ransom, *E. Jean Carroll, Who Accused Trump of Rape, Sues Him for Defamation*, N.Y. Times (Nov. 4, 2019), https://www.nytimes.com/2019/11/04/nyregion/jean-carroll-sues-trump.html; Beth Reinhard, *Advice Columnist E. Jean Carroll, Who Accused Trump of Sexual Assault, Sues Him for Defamation*, Wash. Post

3

6.      Just hours after Carroll's complaint became publicly available on the New York State Court's Electronic Filing website, Trump, through a statement issued by White House Press Secretary Stephanie Grisham, responded directly to the lawsuit as follows:

> Carroll is suing the president for defending himself against false allegations? . . . I guess since the book did not make any money she's trying to get paid another way. The story she used to try and sell her trash book never happened, period . . . . The lawsuit is frivolous, and the story is a fraud—just like the author.[2]

7.      Since then, Carroll, through a process server, has attempted to serve Trump with

---

(Nov. 4, 2019, 11:00 AM), https://www.washingtonpost.com/politics/new-york-writer-who-accused-trump-of-sexual-assault-sues-him-for-defamation/2019/11/04/8ab2afb0-fcf7-11e9-9534-e0dbcc9f5683_story.html; Brett Samuels, *Writer E. Jean Carroll Sues Trump for Defamation*, HILL (Nov. 4, 2019, 11:05 AM), https://thehill.com/homenews/administration/468845-writer-e-jean-carroll-sues-trump-for-defamation; Ashe Schow, *E. Jean Carroll Suing Trump for Defamation After He Claimed Her Sexual Assault Accusations Against Him Were False*, DAILY WIRE (Nov. 4, 2019), https://www.dailywire.com/news/e-jean-carroll-suing-trump-for-defamation-after-he-claimed-her-sexual-assault-accusations-against-him-were-false; Jazz Shaw, *So E. Jean Carroll Is Suing the President for Defamation*, HOT AIR (Nov. 4, 2019, 3:21 PM), https://hotair.com/archives/jazz-shaw/2019/11/04/e-jean-carroll-suing-president-defamation/; Chris Spargo, *Jean Carroll Sues President Donald Trump for Defamation After He Denies Raping Her in a Dressing Room—Despite the Advice Columnist Revealing She Has Dress with Possible DNA Evidence*, DAILYMAIL.COM (Nov. 4, 2019), https://www.dailymail.co.uk/news/article-7648183/E-Jean-Carroll-sues-President-Donald-Trump-defamation-denies-raping-NYC-store.html; Alexandra Svokos, *E. Jean Carroll Sues Trump for Defamation over Rape Accusation Denial*, ABC NEWS (Nov. 4, 2019), https://abcnews.go.com/Politics/jean-carroll-sues-trump-defamation-rape-accusation-denial/story?id=66740654; Dave Urbanski, *Advice Columnist Who Claimed President Trump Sexually Assaulted Her over Two Decades Ago Sues Trump for Defamation over His Denials*, BLAZE (Nov. 4, 2019), https://www.theblaze.com/news/advice-columnist-who-claimed-president-trump-sexually-assaulted-her-over-two-decades-ago-sues-trump-for-defamation-over-his-denials; Chris Walker, *Trump Accuser E. Jean Carroll Sues for Defamation Against President*, HILLREPORTER.COM (Nov. 4, 2019), https://hillreporter.com/trump-accuser-e-jean-carroll-sues-for-defamation-against-president-50195; Jane Wester, *Roberta Kaplan Files Lawsuit Alleging Trump Defamed Author as Liar in Wake of Rape Accusation*, LAW.COM (Nov. 4, 2019), https://www.law.com/newyorklawjournal/2019/11/04/roberta-kaplan-files-lawsuit-alleging-trump-defamed-author-as-liar-in-wake-of-rape-accusation/; *Trump Accuser Files Suit*, NEWSER.COM (Nov. 4, 2019, 1:42 PM), https://www.newser.com/story/282644/trump-accuser-files-suit.html; *Trump Sued by Rape Accuser E. Jean Carroll for Defamation*, CANOE.COM (Nov. 4, 2019), https://canoe.com/news/world/trump-sued-by-rape-accuser-e-jean-carroll-for-defamation; *Writer E. Jean Carroll Files Lawsuit Against Trump over Alleged Sexual Assault*, GUARDIAN (Nov. 4, 2019, 12:23 PM), https://www.theguardian.com/us-news/2019/nov/04/e-jean-carroll-sues-trump-defamation-alleged-rape-bergdorf-goodman; *Writer E. Jean Carroll Sues Donald Trump for Denials of Sexual Assault Accusation*, BREITBART (Nov. 4, 2019), https://www.breitbart.com/news/writer-e-jean-carroll-sues-donald-trump-for-denials-of-sexual-assault-accusation/.

        [2] Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4. 2019, 2:30 PM), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation.

4

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 41 of 114

the summons, the complaint, a Notice of Electronic Filing, and a Request for Judicial Intervention and accompanying affirmation on five separate occasions, through two different methods. Not one attempt, however, has been successful.

8.    More specifically, on the day of filing, a process server attempted to serve those papers on Trump by leaving them with a person of suitable age and discretion at his residence at Trump Tower, 725 Fifth Avenue, New York, NY 10022. That address corresponds to the address that Trump has provided in connection with his active New York voter registration. A copy of Trump's voter registration page from the date of filing is attached as Exhibit B.

9.    Upon arrival to Trump Tower, the process server passed through a Secret Service security checkpoint and spoke with the concierge. After making a call to a legal office, the concierge told the process server that they would not accept the papers. The process server then tried to leave the papers with the concierge himself. As the process server headed toward the exit, the concierge signaled to Secret Service agents to stop him. A Secret Service agent prevented the process server from leaving the papers at Trump Tower. The agent told him that the Secret Service "had been instructed not to allow process servers to leave papers with [the] concierge." When the process server asked how process was to be served, the agent replied, "I am not going to do your job for you." The Secret Service agent made the process server leave the building, papers in hand. Affidavits describing the November 4 service attempt are attached as Exhibit C.

10.    The next day, November 5, a process server again attempted to serve those same papers on Trump at Trump Tower. The experience was the same. The process server asked the concierge whether anyone was available to accept documents on behalf of Donald J. Trump. After making a phone call "upstairs" to inquire, the concierge stated that service would not be accepted by anyone at the building or by the concierge himself. When the process server nonetheless

5

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 42 of 114

attempted to leave the papers with the concierge and walk away, the concierge demanded that he wait and began speaking through a walkie-talkie. The process server turned to find Secret Service agents watching him. The process server felt forced to return to the concierge and retrieve the papers before exiting. Affidavits describing the November 5 service attempt are attached as Exhibit D.

11.     Finally, on November 6, a process server attempted to serve Trump twice at Trump Tower and once at the White House. All three attempts were unsuccessful. In the morning at Trump Tower, the process server passed through the security checkpoint manned by armed Secret Service agents. He again attempted to serve the concierge. The concierge informed him that no one at the building would accept service. When the process server asked what would happen if he left the papers on the concierge's podium, he was informed that security would stop him from leaving if he tried to do so. The process server ultimately took the documents from the podium and exited the building. Affidavits describing the November 6 morning service attempt at Trump Tower are attached as Exhibit E.

12.     In the evening that same day, a process server again attempted to effect service at Trump Tower. He was met at the door by New York City police officers and Secret Service agents, who told him that he would not be permitted to leave papers at the building. A Secret Service agent stated that "papers have to go to DC," but did not further specify where or how service could be made. Affidavits describing the November 6 evening service attempts at Trump Tower are attached as Exhibit F.

13.     At the White House, a process server went to the visitors' entrance where he spoke with a Secret Service agent about serving Trump. The agent informed him that he could not access the building nor would the agent or anyone else attempt to contact anyone inside at the process

6

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 43 of 114

server's request. The process server tried to leave a business card with the agent to see if his request

to make service could be passed on to anyone else, but the Secret Service agent refused to take it.

An affidavit describing the November 6 service attempt at the White House is attached as

Exhibit G.

14.     In addition to the process servers' attempts to serve Trump, I sent an email on

November 4 to Marc Kasowitz, who represents Trump in *Zervos v. Trump*, Index No. 150522/2017

(N.Y. Sup. Ct., N.Y. Cty.), inquiring as to whether he had been retained to represent Trump in this

similar action and whether he was able to accept service on his behalf. A colleague of Mr.

Kasowitz, Christine Montenegro, spoke with Matthew Craig of my firm, and informed him that

Kasowitz Benson Torres LLP had not been retained in connection with this action and could not

accept service. A copy of the email to Mr. Kasowitz is attached as Exhibit H.

## ARGUMENT

15.     Service of a summons is a necessary step in the prosecution of an action. Evading

process is no way to defend one.

16.     New York law provides for various ways to effect service of a summons. The

principal ways to serve a natural person within the state are: delivering the summons "to the person

to be served"; both delivering the summons "to a person of suitable age and discretion at the actual

place of business, dwelling place or usual place of abode" of the person to be served *and* mailing

the summons to the person's "last known residence" or "actual place of business"; and "affixing

the summons to the door of either the actual place of business, dwelling place or usual place of

abode" of the person to be served *and* mailing the summons to the person's "last known residence"

or "actual place of business." CPLR § 308(1), (2) & (4). In other words, those three subsections of

CPLR § 308 provide for service "by personal delivery, delivery and mail, and nail and mail."

7

*Contimortgage Corp. v. Isler*, 48 A.D.3d 732, 734 (2d Dep't 2008).

17.     When service of process is "impracticable" under CPLR § 308(1), (2), and (4), a plaintiff may file a motion without notice for leave to serve the defendant "in such manner as the court . . . directs." CPLR § 308(5); *see also Kozel v. Kozel*, 161 A.D.3d 700, 701 (1st Dep't 2018) ("CPLR 308(5) permits a court to direct another manner of service if the methods set forth in the statute prove impracticable.").

18.     "A showing of impracticability under CPLR 308(5) does not require proof of actual prior attempts to serve a party under the methods outlined pursuant to Subdivisions (1), (2), or (4)." *Franklin v. Winard*, 189 A.D.2d 717, 717 (1st Dep't 1993). Nor does it "require the applicant to satisfy the more stringent standard of 'due diligence'" that applies elsewhere under CPLR § 308. *Contimortgage Corp.*, 48 A.D.3d at 734 (internal quotation marks omitted). Instead, the plaintiff must "make competent showings as to factual efforts made to effect service," *Oglesby v. Barragan*, 135 A.D.3d 1215, 1216 (3d Dep't 2016), and an alternative method of service should be allowed when efforts pursuant to CPLR § 308(1), (2), and (4) "would be 'futile,'" *Liebeskind v. Liebskind*, 86 A.D.2d 207, 210 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 858 (1983).

19.     An order permitting an alternative method of service is more than warranted here.

20.     As outlined above, Carroll made four separate attempts to serve Trump by leaving the summons, the complaint, and other papers at his Trump Tower residence pursuant to CPLR § 308(2). Those successive, but unsuccessful, efforts are themselves sufficient to demonstrate impracticability. *See Kelly v. Lewis*, 220 A.D.2d 485, 486 (2d Dep't 1995) ("After the plaintiffs made three unsuccessful attempts at three different times on three different weekdays to serve the defendant . . . at his last known residence address, the court reasonably concluded that service was impracticable."). That each attempt failed because Secret Service would not permit the process

8

server to leave the documents provides an additional basis for finding impracticability. *See In re World Trade Diamond Corp. (Siegmann)*, 158 A.D.2d 300, 302 (1st Dep't 1990) (holding that service was impracticable when "security barred any normal means of personal service upon respondent at his office during normal business hours").

21.    The other relevant methods of service are not practicable either. The intensive security protocols associated with Trump's status as President of the United States make "personal delivery" to Trump himself virtually impossible. CPLR § 308(1); *see Emigrant Mortg. Co. v. Westervelt*, 105 A.D.3d 896, 896–97 (2d Dep't 2013) (observing that CPLR § 308 requires "strict compliance" with its terms and remanding for hearing on sufficiency of service under § 308(1)).

22.    Nor can the summons, the complaint, and other papers be physically affixed to Trump Tower as required by CPLR § 308(4). *See PacAmOr Bearings, Inc. v. Foley*, 92 A.D.2d 959, 960 (3rd Dep't 1983) ("[W]edging of the summons between the screen door and the door jamb is not an 'affixation' within the meaning of the statute," which is "to be accomplished by use of a nail, tack, tape, rubber band or some other device which will ensure a genuine adherence."). Given the presence and mandate of Secret Service agents posted to Trump Tower, anyone appearing to physically interfere with that building would surely be met with a swift, and potentially dangerous, response.

23.    Finally, although attempted service outside the state pursuant to CPLR § 313 is not required before a court authorizes an alternative method of service pursuant to CPLR § 308(5), Carroll's attempt to serve Trump at the White House, as well as her counsel's communication with an attorney representing Trump in a similar action, underscores her diligence. That Carroll was barred from serving Trump at the very location from which he released a statement deeming her lawsuit "frivolous" underscores the unfairness of the present situation.

9

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 46 of 114

24.     Because Trump has made it impracticable for Carroll to serve him through any of the methods set forth in CPLR § 308(1), (2), and (4), this Court should authorize service by alternative means.

25.     Once a plaintiff has satisfied the impracticability standard, courts have "broad" discretion over the alternative method they authorize, *Dobkin v. Chapman*, 21 N.Y.2d 490, 499 (1968), and are simply guided by the basic principal that the method "be 'reasonably calculated, under all the circumstances, to apprise the defendant of the action," *Jean v. Csencsits*, 171 A.D.3d 1149, 1150 (2d Dep't 2019) (internal quotation marks omitted).

26.     Here, given the widespread media attention that this action has drawn, and Trump's public response to the suit on the day it was filed, there is no doubt that Trump is already apprised of this action. In these circumstances, even a minimal further step would arguably suffice.

27.     Nevertheless, in an abundance of caution, Carroll respectfully requests that, until counsel for Trump in this action has been identified, she be permitted to serve Trump by mailing all papers to Trump at the two addresses below, and emailing a copy of such papers to the attorneys below, all of whom are presently representing Trump in actions that Trump has brought or is defending in his personal capacity in this State:

> Donald J. Trump
> Trump Tower
> 725 Fifth Avenue
> New York, NY 10022
>
> Donald J. Trump
> White House
> 1600 Pennsylvania Ave NW
> Washington, DC 20500

10

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 47 of 114

Richard F. Brueckner
Law Offices of Alan S. Futerfas
rbrueckner@futerfaslaw.com
Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

28.    Mailing papers to two known addresses for Trump and emailing papers to six

attorneys who continue to represent Trump in this State easily satisfies the requirement of an

alternative method of service "reasonably calculated" to "apprise" Trump of this action. *Jean*, 171

A.D.3d at 1150; *see also Born to Build, LLC v. Saleh*, 139 A.D.3d 654, 655–56 (2d Dep't 2016)

(finding alternative service on defendant's attorney proper under CPLR § 308(5)); *Kelly v. Lewis*,

11

220 A.D.2d 485, 486 (2d Dep't 1995) (same); *Esposito v. Ruggerio*, 193 A.D.2d 713, 713–14 (2d

Dep't 1993) (finding alternative service by mailing to defendant's last known address and serving

defendant's insurance carrier proper under CPLR § 308(5)).

29.    Once counsel for Trump in this action is identified, Carroll respectfully requests

that she be permitted to serve all papers on Trump's counsel via email until such time that counsel

has entered a notice of appearance in this action. *See, e.g.*, *Alfred E. Mann Living Trust v. ETIRC*

*Aviation S.A.R.L.*, 78 A.D.3d 137, 141 (1st Dep't 2010) ("Indeed, both New York courts and

federal courts have, upon application by plaintiffs, authorized e-mail service of process as an

appropriate alternative method when the statutory methods have proven ineffective."); *Baidoo v.*

*Blood-Dzraku*, 48 Misc.3d 309, 310 (Sup. Ct., N.Y. Cty. 2015) ("[C]ourts are now routinely

permitting [service of a summons by email] as a form of alternative service.").


WHEREFORE, Plaintiff E. Jean Carroll respectfully requests that the Court enter an order

permitting alternative service upon Defendant Donald J. Trump in the manner set forth above

pursuant to CPLR § 308(5).


Dated: New York, New York          By: _____
       November 8, 2019

                                   Roberta A. Kaplan
                                   KAPLAN HECKER & FINK LLP
                                   350 Fifth Avenue, Suite 7110
                                   New York, New York 10118
                                   Tel: (212) 763-0883
                                   Fax: (212) 564-0883
                                   rkaplan@kaplanhecker.com

                                   *Counsel for Plaintiff E. Jean Carroll*


12

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------

E. JEAN CARROLL,

                            *Plaintiff*,

        -against-

DONALD J. TRUMP, in his personal capacity,

                            *Defendant*.

--------------------------------------------------------

Index No. _____
Date Purchased: November 4, 2019


**SUMMONS**


TO THE ABOVE-NAMED DEFENDANT,

        Donald J. Trump
        725 Fifth Avenue
        New York, NY 10022:

        YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a
copy of your answer on the Plaintiff's attorney within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

        Pursuant to NY CPLR §§ 503(a) and 509, Plaintiff designates as the place of trial New
York County, the county of residence of the Defendant at the time this action was commenced.


Dated: November 4, 2019          KAPLAN HECKER & FINK LLP
New York, New York

                                 _____
                                 Roberta A. Kaplan

                                 350 Fifth Avenue, Suite 7110
                                 New York, New York 10118
                                 Tel: (212) 763-0883
                                 Fax: (212) 564-0883
                                 rkaplan@kaplanhecker.com

                                 *Attorneys for Plaintiff E. Jean Carroll*

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 51 of 114

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

E. JEAN CARROLL,

                             *Plaintiff*,

    -against-


DONALD J. TRUMP, in his personal capacity,

                             *Defendant*.

Index No. _____


**COMPLAINT AND
JURY DEMAND**

---

Plaintiff E. Jean Carroll ("Plaintiff" or "Carroll"), by and through her attorneys at Kaplan Hecker & Fink LLP, alleges as follows:

## INTRODUCTION

1.      Nobody in this nation is above the law. Nobody is entitled to conceal acts of sexual assault behind a wall of defamatory falsehoods and deflections. The rape of a woman is a violent crime; compounding that crime with acts of malicious libel is abhorrent. Yet that is what Defendant Donald J. Trump did to Plaintiff E. Jean Carroll.

2.      Roughly 23 years ago, playful banter at the luxury department store Bergdorf Goodman on Fifth Avenue in New York City took a dark turn when Trump seized Carroll, forced her up against a dressing room wall, pinned her in place with his shoulder, and raped her.

3.      In the aftermath, Carroll confided in two close friends. One urged her to report the crime to the police, but the other warned that Trump would ruin her life and livelihood if she reported it.

4.      Carroll chose silence—and remained silent for over two decades.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 52 of 114

5.      Carroll knew then that sexual assault was pervasive. She also knew that men have been assaulting women and getting away with it since before she was born. And she knew that while a woman who accused *any* man of rape was rarely believed, a woman who accused a rich, famous, violent man of rape would probably lose everything. She therefore reasonably concluded that if she accused Donald Trump of rape he would bury her in threats and lawsuits, and she would probably lose her reputation, not to mention everything she had worked for and achieved.

6.      Near the end of the 2016 presidential election, Carroll watched in horror as numerous women offered highly credible (and painfully familiar) accounts of Trump assaulting them; Trump responded with insults and denials; the public fractured; and Trump not only won the election, but grew *more* popular with some supporters as a result of the controversy.

7.      Carroll's mother, a respected Republican official in Indiana, was dying during the last six weeks of the presidential election. Carroll, wanting to make her mother's last days as pleasant as possible and avoid causing her any pain, decided to remain silent about what Trump had done to her.

8.      But that all changed in late 2017, when the Harvey Weinstein scandal and its aftermath signaled a profound shift in how American society responds to accusations of sexual misconduct by powerful men. It suddenly seemed possible that even Trump could be held to account.

9.      For Carroll, that project grew more urgent—and more personal—as the #MeToo era prompted a flood of new letters to her advice column seeking her counsel about how to respond to sexual assault and abuse. In her column, Carroll encourages her readers to be brave, to think clearly, and to seek justice. When readers overcome with the doubt and anxiety have turned to her seeking advice, Carroll has always advised taking action. But she never confessed her own

2

experiences. She never revealed that she, too, had been a victim of sexual assault. Over time, as described below, the contradiction between Carroll's words and her actions became increasingly untenable.

10.    Carroll is a journalist. She watched as a throng of women came forward and accused Trump of sexual assault, only to be denigrated and then brushed aside. When she felt she should finally come forward herself, Carroll wanted to do it differently. She decided to describe Trump's rape in a book she had already begun to write about her experiences with various men. She did not want to tell her story to the police, a newspaper, an elected official, or a fellow journalist, and be treated as a "victim." In other words, she wanted to tell her own story on her own terms.

11.    When Carroll's account was published, Trump lashed out with a series of false and defamatory statements. He denied the rape. But there was more: he also denied ever having met Carroll or even knowing who she was. Through express statements and deliberate implications, he accused Carroll of lying about the rape in order to increase book sales, carry out a political agenda, advance a conspiracy with the Democratic Party, and make money. He also deliberately implied that she had falsely accused other men of rape. For good measure, he insulted her physical appearance.

12.    Each of these statements was false. Each of them was defamatory.

13.    Trump knew that these statements were false; at a bare minimum, he acted with reckless disregard for their truth or falsity. Trump had recognized Carroll on sight at Bergdorf Goodman. He knew who she was when he raped her, and he knew who she was in 2019. He certainly knew that she was telling the truth. After he lied about attacking her, he surrounded that central lie with a swarm of related lies in an effort to explain why she would invent an accusation of rape. To do so, he smeared her integrity, honesty, and dignity—all in the national press.

3

14.     These lies were familiar to Trump. He had used them before, when other women stated that he had grabbed, groped, or raped them.

15.     Trump's defamatory statements injured Carroll. They inflicted emotional pain and suffering, they damaged her reputation, and they caused substantial professional harm.

16.     Carroll filed this lawsuit to obtain redress for those injuries and to demonstrate that even a man as powerful as Trump can be held accountable under the law.

## THE PARTIES

17.     Plaintiff E. Jean Carroll is a journalist, author, former writer for Saturday Night Live, and advice columnist for *Elle* magazine. She is a resident of the State of New York.

18.     Defendant Donald J. Trump is currently the President of the United States, although he is sued here only in his personal capacity. Since taking office, Trump has filed several lawsuits in his personal capacity, including *Trump v. Vance, Jr. et al.*, No. 19 Civ. 8694 (S.D.N.Y.), *Trump et al. v. Deutsche Bank AG et al.*, No. 19 Civ. 3826 (S.D.N.Y.), *Donald J. Trump for President, Inc. et al. v. Padilla et al.*, No. 19 Civ. 1501 (E.D. Cal.), *Trump v. Committee on Ways and Means of the U.S. House of Representatives et al.*, No. 19 Civ. 2173 (D.D.C.), and *Trump et al. v. Committee on Oversight and Reform of the U.S. House of Representatives et al.*, No. 19 Civ. 1136 (D.D.C.). Trump is also defending a related case pending in this Court. *See Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.). Trump is a resident of the State of New York.

## JURY DEMAND

19.     Plaintiff E. Jean Carroll hereby demands a trial by jury.

## JURISDICTION & VENUE

20.     This Court has jurisdiction pursuant to NY CPLR § 301.

21.     Venue is proper in this county pursuant to NY CPLR § 503 and § 509.

4

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 55 of 114

## FACTUAL ALLEGATIONS

### I.    TRUMP RAPES CARROLL AT BERGDORF GOODMAN

22.    One evening between the fall of 1995 and the spring of 1996, Carroll left work and went to Bergdorf Goodman, the luxury department store on Fifth Avenue in New York City. She was and remains a regular shopper at Bergdorf's.

23.    That evening, Carroll did not find whatever she was looking for and prepared to leave Bergdorf's empty-handed. As she exited through Bergdorf's revolving side door on 58th Street, Trump arrived and entered through that very same door, which was cater-cornered across from the Plaza Hotel.

24.    Trump instantly recognized Carroll on sight. They had met at least once before and had long traveled in the same New York City media circles. In this period, Carroll was doing the daily *Ask E. Jean* TV show, a small hit on the "America's Talking" network started by Roger Ailes. She was also on a frequent guest and commentator on the widely watched *Today* show.

25.    Trump put up his hand to stop her from exiting and said, "Hey, you're that advice lady!" Carroll, struck by his boyish good looks, responded by saying, "Hey, you're that real estate tycoon!"

26.    Trump said that he was at Bergdorf's to buy a present for "a girl" and asked Carroll to come advise him. Carroll was surprised but thrilled that Trump would want her advice. She stuck around, imagining the funny stories that she might later recount.

27.    Trump and Carroll began searching for a gift that Trump could give to the unnamed girl. As they stood just inside the door, Carroll pointed to the handbags. Trump made a face; he did not like that idea. Carroll instead suggested a hat. Trump walked over, going straight for a fur hat, prompting Carroll to object that no woman would wear a dead animal on her head.

Case 1:20-cv-07311-LAK Document 12-1 Filed 09/14/20 Page 56 of 114

28.     As Trump cuddled the fur hat, Carroll asked how old "the girl" was. Trump did not answer, instead asking Carroll how old she was. When Carroll replied that she was fifty-two years old, he taunted her, "You're so *old*!"

29.     Trump then had an idea: He would buy lingerie instead.

30.     Trump and Carroll rode up the escalator to the lingerie department. When they arrived, it was uncharacteristically empty, with no sales attendant in sight. Sitting on the counter near them were two or three boxes and a see-through bodysuit in lilac gray.

31.     Snatching the bodysuit, Trump insisted that Carroll try it on. Bemused, Carroll responded that *he* should try it on himself, adding that it was his color. Trump and Carroll went back and forth, teasing each other about who should try on the bodysuit.

32.     Suddenly, Trump grabbed Carroll's arm and said, "Let's put this on."

33.     Trump maneuvered Carroll to the dressing room. As they moved, Carroll laughed, thinking to herself that she would make him put the bodysuit on over his pants.

34.     Strangely for Bergdorf's, the dressing room door was open and unlocked.

35.     Trump closed the door of the dressing room.

36.     Immediately, Trump lunged at Carroll, pushing her against the wall, bumping her head quite badly, and putting his mouth on her lips.

37.     Carroll shoved him back. Utterly shocked by Trump's unexpected attack, Carroll burst out in awkward laughter. She could hardly process the insanity of the situation. She also hoped, at least at first, that laughter would bruise his ego and cause him to retreat.

38.     But Trump did not stop. He seized both of her arms and pushed her up against the wall again, bumping her head a second time. While pinning Carroll against the wall with his shoulder, Trump jammed his hand under her coatdress and pulled down her tights.

6

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 57 of 114

39.     Trump opened his overcoat and unzipped his pants. Trump then pushed his fingers around Carroll's genitals and forced his penis inside of her.

40.     Carroll resisted, struggling to break free. She tried to stomp his foot with her high heels. She tried to push him away with her one free hand (as she kept holding her purse with the other). Finally, she raised a knee up high enough to push him out and off her.

41.     Carroll ran out of the dressing room, out of Bergdorf's, and onto Fifth Avenue.

42.     The whole attack lasted two to three minutes.

## II.    CARROLL CONFIDES IN TWO FRIENDS ABOUT THE RAPE

43.     As soon as she was outside Bergdorf's, Carroll pulled her phone out of her purse and called her friend Lisa Birnbach, the author, journalist, and correspondent on TV morning shows.[1] Carroll was breathless and still reeling from the assault. She kept laughing, manically—her way of coping with the stress and trauma that she had just experienced.

44.     Carroll recounted to Birnbach how Trump had attacked her in Bergdorf's dressing room. She told Birnbach how Trump had pulled down her tights and put his penis inside of her.

45.     "He raped you," Birnbach kept repeating. She begged Carroll to go to the police and offered to accompany her. Still in shock and reluctant to think of herself as a rape victim, Carroll did not want to speak to the police. She told Birnbach that it was just a few minutes of her life and that it was over. She implored Birnbach never to tell anyone what had happened.

46.     Carroll drove home and crawled straight into bed.

47.     Over the next few days, Carroll confided in a second friend, the New York City journalist and news anchor Carol Martin. They sat together in the kitchen as Carroll described the

---

[1] Birnbach wrote a story about Trump's Mar-a-Lago that was published in February 1996. *See* Lisa Birnbach, *Mi Casa Es Su Casa*, NEW YORK (Feb. 12, 1996). Birnbach has suggested that it was because of her work on that article that Carroll called her immediately after the assault.

rape. This time, Carroll did not laugh. Nobody laughed. The gravity of the assault had finally started to sink in.

48.      Martin solemnly advised Carroll to tell no one. Recognizing that Trump was a powerful man, Martin feared that if her friend came forward, disaster would ensue. Martin warned Carroll, in sum and substance: "Tell no one. Forget it! He has two hundred lawyers. He'll bury you."

49.      Carroll took Martin's advice. She knew how brutal and dangerous Trump could be.

50.      Carroll was also afraid of being dragged through the mud if she reported the rape. She was convinced that nobody would believe her if she came forward. And like so many other survivors of sexual assault, Carroll also blamed herself. She called herself "stupid." She told herself that she "deserved it" for agreeing to go lingerie shopping with Trump. She struggled with the guilt that, somehow, though she had fought to protect herself from his attack, it was her fault that Trump had raped her because she had entered that Bergdorf dressing room.

51.      Fundamentally, Carroll was raised to believe that strong women get by in the world with a stiff upper lip—*i.e.*, by putting hardship and suffering behind them. She believed that strong women laugh at disasters because feeling sad only doubles the burden. To Carroll, laughter is how women have dealt with calamity for thousands of years. So Carroll put her chin up and tried to move on.

52.      Carroll thus chose silence.

53.      Carroll did not mention the rape again for over twenty years. She did not want to be seen—or to see herself—as a victim of sexual assault.

54.      Carroll has not had sex with anyone since that day when Trump raped her.

8

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 59 of 114

## III.    CARROLL REMAINS SILENT FOR TWENTY YEARS

55.    For the next twenty years, Carroll pursued her career as a writer and advice columnist. Over time, she built a loyal audience and enjoyed the support of her publisher. Her *Ask E. Jean* advice column in *Elle* magazine became the longest, still-active advice column in American publishing. Its success resulted in large part from the many letters sent to her by readers.

56.    Carroll's column in *Elle* was about life and love. Readers' questions ranged from the lighthearted to the deeply personal. From time to time, readers would ask questions about whether behavior that they experienced at work, at church, and in their relationships was appropriate. When Carroll detected sexism or abuse, she did her level best to call it out and to help women protect themselves.

57.    One reader, for example, despaired in 1994, "My boss is always rubbing up against me . . . . He scares me because he's very powerful and could ruin me." Carroll responded: "Darling, if the old snake has done so much to help your career, why are you still an assistant? Sex harassers are filthy yellow sneaking cowards and must be won over, or crushed . . . . If all else fails, next time the old waterhead touches you, give him a knee in the groin. You've got nowhere to go but up."[2]

58.    Another reader had been raped when thirteen years old and sought advice from Carroll because her rapist had just been hired as a co-worker. Carroll responded: "[T]he gentleness of your [letter] speaks strongly for your forgiving nature; however, it makes my duty *very* difficult. Because now I must harden your soul. I must twist a little bit of steel—I'd try a big block of metal

---

[2] *Reprinted in* E. JEAN CARROLL, A DOG IN HEAT IS A HOT DOG AND OTHER RULES TO LIVE BY 28-29 (1996).

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 60 of 114

if I could—around your backbone, and persuade you to report your friend to the police."[3] Carroll added:

> "First, call your rape crisis center and speak with a counselor. Second, join a group of rape survivors—with their hardy support, you'll start constructing a world for *yourself* and leave the world the rapist built for you. And, third, find another job at once. (Do *not* tell your employer about the rape. Do *not* inform the rapist of these steps. Stay cool. He's dangerous.)"[4]

59.     In her advice columns, Carroll sought to offer witty, wise, and worldly guidance, and to address her readers in a clear, straightforward manner. She often urged readers to speak the truth and to recognize patterns of rationalization and abuse. Readers' perception of Carroll as honest, thoughtful, frank, and well-meaning were essential to Carroll's professional success.

60.     But in responding to her readers, Carroll did not confess her own life experiences, including the sexual assault by Trump described above.

61.     During the last month of the election of 2016, Carroll watched a multitude of women reveal that Trump had engaged in sexual misconduct. She saw Trump brutally attacking his accusers on a national stage—denying their accusations, while also savaging their reputations and insulting their appearance.

62.     And as Carroll sat at the bedside of her dying mother in a Bloomington, Indiana hospital, watching numerous, credible women stun the nation with their stories of Trump's sexual brutality, Carroll briefly considered whether she, too, should reveal that Trump had raped her.  But she feared—just as she had for decades—that Trump would lie his way out of it, while destroying her life and reputation. He had done it before to plenty of women and, it seemed to Carroll, he would readily do it again. And, worst of all, coming forward with her story would also cause a

---

[3] *Id.* at 141-42.

[4] *Id.* at 142.

media storm in Indiana and destroy her mother's last happy days on the planet. Carroll feared that it would cost her and her family dearly without actually changing anything, especially since any accusation made during the presidential campaign would be characterized by Trump and his allies as a stunt to thwart his election.

63.     Indeed, Carroll worried that she might make Trump *more* popular in states like Indiana by revealing the rape, since his electoral fortunes had steadily improved despite credible allegations of sexual abuse. To Carroll, it appeared that some of Trump's political supporters actually admired the fact that Trump was rich enough, macho enough, and powerful enough to be sued by—and to pay off—all these women he had groped and penetrated (especially porn stars and *Playboy* models).

64.     Carroll, in honor of her mother's remarkable life, many years of which were spent as a local and loyal Republican elected official, and because she thought the publicity would help Trump win the election, warily persisted in her decades-old silence.

65.     Carroll's mother died on October 11, 2016. In 2017, Carroll decided to write a book drawing on her observations as an advice columnist, but focusing specifically on her own life and trying to understand why so many *Ask E. Jean* letter-writers complained about men. On the morning of October 5, 2017, Carroll set out on a road trip, traveling to towns named after women. When she arrived in each town named after a woman (Angelica, New York, Tallulah, Louisiana, Marianna, Arkansas, and so forth), she spoke to women from all walks of life about their relationships with men. She asked many of her subjects about the roles that men play in their lives.

## IV.    CARROLL DECIDES TO SPEAK OUT

66.     On the very day Carroll began her road trip for her book, October 5, 2017, the *New York Times* revealed that Harvey Weinstein had sexually assaulted and harassed dozens of women

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 62 of 114

in the film industry.[5] The news went off in Carroll's mind like a bomb. She could not stop reading. Painful memories of abuse at the hands of men, including Trump, swept over her.

67.     Days later, several women accused Weinstein of rape.[6] It soon became clear to Carroll, and to the American people, that Weinstein's abuses had been enabled for decades by a loose network of loyalists and lawyers, who had ensured that Weinstein evaded accountability for his exploitation of women—even though it was an open secret in Hollywood.

68.     As the Weinstein scandal persisted, Carroll saw society respond to the accusations with a seriousness and depth of self-reflection that she had never seen before; all too often, and as recently as the 2016 election, many Americans had brushed aside or marginalized accusations of sexual misconduct by powerful men. Carroll also saw other women suddenly feel emboldened to come forward with their own reports of harassment, exploitation, abuse, violence, and rape.

69.     Carroll was moved by this experience. The walls that she had erected in her mind— the fear that Trump would emerge unscathed, the wariness of allowing him and his allies to come after her, the doubt that speaking up would actually matter, and the nagging anxiety that she was somehow to blame for being raped—began to crumble. Decades of deflection, diversion, and denial dissolved, resurfacing memories and feelings that she had hidden away.

70.     Carroll was struck by the fact that Weinstein, for all his wealth and power, could still be held accountable for his sexual misconduct. She saw how women had at last changed the public conversation by saying "Me Too" and by demanding accountability.

---

[5] Jodi Kantor & Megan Twohey, *Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*, N.Y. TIMES (Oct. 5, 2017).

[6] Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, NEW YORKER (Oct. 10, 2017).

71.     These observations lead Carroll to reflect again on her column in *Elle* magazine, and to ask whether she was a hypocrite. For decades, she had paired her trademarked wit with steely resolve in confronting the everyday unfairness—and, all too often, the abuse—that her (largely female) readers confessed. Carroll's written persona was brave. But she *still* had not confessed her own experiences of abuse, her fear of coming forward, or her creeping self-doubt.

72.     These internal reflections loomed larger in her mind—and became inescapable— as more readers of Carroll's advice column began asking, "Should I come forward with my account of surviving sexual abuse or harassment?"

73.     Carroll finally decided that she owed her readers the truth. She also owed them (and many other women) solidarity in their efforts to bring justice and accountability to powerful men who had engaged in sexual assault and gotten away with it. She knew that it would be painful to speak up. But she also knew that it was the right thing to do so.

74.     While Carroll was on the road trip across the country talking to women as research for her book, she started a list of the 21 most hideous men she had ever encountered—men who had, each in his own way, left indelible and ugly marks on her story. This list grew into a book, *What Do We Need Men For?: A Modest Proposal*. In that book, Carroll interspersed the stories of women she had met while traveling the country with the men on her "Most Hideous List."

75.     Two men on the Most Hideous List haunted Carroll the most. The first was Cam Parks, the Waterfront Director at her Girl Scout camp, a man who sexually abused her every day during a two-week period when she was twelve. The second was Donald Trump, the man who raped her when she was 52. Carroll described that attack in detail.

76.     Carroll knew a book was the right place for her to come forward about Trump's assault. Writing is Carroll's lifeblood; she writes to process the world around her and to reveal her

13

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 64 of 114

inner self. It's her normal way of living: she writes about what happens to her, often in a confessional, idiosyncratic manner. She also believed that a book would allow her to control her narrative and speak directly to her readers. This was important. Carroll did not want to be, or to act like, a victim. She wanted to tell her story on her terms, rather than as filtered through journalists or social media. Her language was specific.

77.      In her book, Carroll truthfully described, in meticulous detail, the rape in Bergdorf Goodman:

> "The next moment, still wearing correct business attire, shirt, tie, suit jacket, overcoat, he opens the overcoat, unzips his pants, and, forcing his fingers around my private area, then thrusts his penis halfway—or completely—I'm not certain—inside me."[7]

78.      She also explained why she had not come forward earlier:

> "Receiving death threats, being driven from my home, being dismissed, being dragged through the mud, and joining the sixteen women who've come forward with credible stories about how the man grabbed, badgered, belittled, mauled, molested, and assaulted them, only to see the man turn it around, deny, threaten, and attack them, never sounded like much fun. Also, I'm a coward."[8]

79.      At noon on June 21, 2019, *New York* magazine published Carroll's account of the rape on NYMag.com as an excerpt of her forthcoming book. The excerpt first appeared on *The Cut,* a vertical on NYMag.com. The excerpt appeared on newsstands three days later in the June 24-July 7 print edition.

80.      Carroll's book was released by St. Martin's Press on July 2, 2019.

---

[7] E. JEAN CARROLL, WHAT DO WE NEED MEN FOR?: A MODEST PROPOSAL 248 (2019).

[8] *Id.* at 244.

14

## V.  TRUMP REPEATEDLY DENIES RAPING CARROLL AND MAKES A SLEW OF FALSE, INSULTING STATEMENTS ABOUT HER

81.  In three statements—published on June 21, 22, and 24 respectively—Trump responded to Carroll by publicly, falsely, and maliciously smearing her reputation.

82.  On June 21, 2019, Trump issued the following public statement:

"Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations."

83.  Upon information and belief, Trump's June 21 statement was first given to the press, including Laura Litvan of *Bloomberg News*, who posted it on Twitter at 2:17 p.m.[9]

---

[9]  *See* Laura Litvan (@LauraLitvan), Twitter (June 21, 2019 2:17 PM), https://twitter.com/LauraLitvan/status/1142179819075121154.

15

84.    Trump's June 21 statement was subsequently shared online by other journalists and covered by many leading news sources as Trump's statement in response to Carroll.[10]

85.    In the June 21 statement, Trump falsely stated that he did not rape Carroll.

86.    In the June 21 statement, Trump falsely stated that he had never met Carroll.

87.    In the June 21 statement, Trump falsely implied and affirmatively intended to imply that he had no idea who Carroll was.

---

[10] *See, e.g.*, AFP News Agency, *US Writer Says Trump Sexually Assaulted Her in Mid-1990s*, AL JAZEERA, (June 21, 2019); Alexandra Alter, *E. Jean Carroll Accuses Trump of Sexual Assault in Her Memoir*, N.Y. TIMES (June 21, 2019); Jenna Amatulli, *Trump on E. Jean Carroll Rape Allegation: "I've Never Met This Person in My Life"*, HUFFINGTON POST (June 21, 2019); Amber Athey, *Trump Responds to Rape Accuser: "People Should Pay Dearly for Such False Accusations"*, DAILY CALLER (June 21, 2019); Brian Bennet, *Trump Says He "Never Met" Author Who Has Accused Him of Sexual Assault*, TIME (June 21, 2019); Ellie Bufkin, *Trump Issues Blistering Denial of E. Jean Carroll's Rape Allegation*, WASH. EXAMINER (June 21, 2019); Adam Carlson, *Noted Advice Columnist Says Trump Raped Her in Manhattan Department Store in the '90s—"Never Happened," Trump Responds*, PEOPLE MAG. (June 21, 2019); Matthew Choi, *Trump Dismisses New Sexual Assault Allegation*, POLITICO (June 21, 2019); Casey Darnell, *Writer Says She Was Raped by Trump in 1990s*, YAHOO! NEWS (June 21, 2019); EJ Dickson, *E. Jean Carroll Alleges President Donald Trump Assaulted Her*, ROLLING STONE (June 21, 2019); Vivian Ho & Lauren Gambino, *Evening Summary: Trump Responds to E Jean Carroll's Allegations*, GUARDIAN (June 21, 2019); Colby Itkowitz, *Magazine Columnist Accuses Trump of Sexual Assault More than Two Decades Ago, an Allegation He Denies*, WASH. POST (June 21, 2019); Sarah Jones, *E. Jean Carroll: "Trump Attacked Me in the Dressing Room of Bergdorf Goodman."*, N.Y. MAG. (June 21, 2019); Hilary Lewis, *E. Jean Carroll Says Bringing Rape Charges Against Trump Would Be "Disrespectful" to Migrant Women*, HOLLYWOOD REP. (June 22, 2019); Caitlin Mac Neal, *Advice Columnist E. Jean Carroll Accuses Donald Trump Of Sexual Assault*, TALKING POINTS MEMO (June 21, 2019); Alex Pappas, *Longtime Advice Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FOX NEWS, (June 21, 2019); Daniel Politi, *Trump Goes on Tirade to Deny Latest Assault Allegation: Women Are "Paid Money" to Make False Claims*, SLATE (June 22, 2019); Christina Prignano, *Author E. Jean Carroll Accuses President Trump of Sexual Assault in 1990s*, BOS. GLOBE (June 21, 2019); Eliza Relman, *Trump Claims He's Never Met the Columnist Who Just Accused Him of Sexual Assault Despite Photo Evidence of Them Together*, BUS. INSIDER (June 21, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Jessica Taylor, *Trump Denies New Sexual Assault Allegation by Advice Columnist E. Jean Carroll*, NPR (June 21, 2019); Josh Wingrove, *Columnist E. Jean Carroll Accuses Trump of Sexual Assault in 1990s*, FORTUNE (June 21, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019); Josh Wingrove, *Woman Accuses Trump of Sexual Assault at New York Store in 1990s*, BLOOMBERG (June 21, 2019).

16

88.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll had invented the rape accusation as a ploy for increased book sales.

89.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation to carry out a political agenda.

90.     In the June 21 statement, Trump falsely implied and affirmatively intended to imply that Carroll invented the rape accusation as part of a conspiracy with the Democratic Party.

91.     On June 22, 2019, Trump made the following statement to reporters:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 68 of 114

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that."[11]

92.     Like his first statement, Trump's June 22 statement regarding Carroll was widely reported in the national press.[12]

93.     In the June 22 statement, Trump falsely stated that he did not rape Carroll.

94.     In the June 22 statement, Trump falsely stated that he had no idea who Carroll was.

95.     In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had falsely accused other men of sexual assault.

96.     In the June 22 statement, Trump falsely implied and affirmatively intended to imply that Carroll had been paid money to invent the rape accusation against him.

---

[11] *Remarks by President Donald Trump Before Marine One Departure*, WHITE HOUSE (June 22, 2019).

[12] *See, e.g.*, Matthew Chapman, *Trump Goes on Manic Tirade After Being Asked About New Rape Allegation: Women Get "Paid Money to Say Bad Things About Me"*, RAW STORY (June 22, 2019); William Cummings, *Writer E. Jean Carroll Made a Claim of Sexual Assault Against Trump. Here's What We Know*, USA TODAY (June 25, 2019); Gillian Edevane, *George Conway Says Trump's Credibility is "Annihilated" After President Denies Knowing Alleged Assault Victim*, NEWSWEEK (June 22, 2019); Lulu Garcia-Navarro, *"It Hurt. And It Was Against My Will": Trump Accuser Stands by Her Story*, NPR (June 22, 2019); Amanda Holpuch, *Trump Repeats Contested Claim He Does Not Know Latest Sexual Assault Accuser*, GUARDIAN (June 22, 2019); Colby Itkowitz et al., *Trump Compares Himself to Kavanaugh in Latest Sexual Assault Allegation*, WASH. POST (June 22, 2019); Darlene Superville, *Trump Denies Knowing E. Jean Carroll, Woman Accusing Him of Sexual Assault in Department Store*, ABC NEWS (June 22, 2019); Darlene Superville, *Trump Denies Knowing NY Woman Accusing Him of Sexual Assault*, ASSOCIATED PRESS (June 22, 2019); Mihir Zaveri, *Trump Emphatically Denies Sexual Assault Allegation by E. Jean Carroll*, N.Y. TIMES (June 22, 2019); *Trump Dismisses E. Jean Carroll Rape Allegation as "Fiction"*, BBC NEWS (June 22, 2019).

18

97.     Two days later, on June 24, 2019, *The Hill* released an interview in which Trump made the following statement in response to Carroll: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?"[13]

98.     Trump's statement in *The Hill* was widely reported by the national press.[14]

99.     This insulting statement was consistent with Trump's response to other accusations of sexual assault. About one woman who claimed he groped her and tried to put his hand up her skirt while they were seated next to each other on an airplane, Trump told crowds at a rally,

---

[13] Jordan Fabian & Saagar Enjeti, *EXCLUSIVE: Trump Vehemently Denies E. Jean Carroll Allegation, Says "She's Not My Type"*, HILL (June 24, 2019).

[14] *See, e.g.*, Julia Arciga, *Trump on E. Jean Carroll's Assault Allegations: "She's Not My Type"*, DAILY BEAST (June 24, 2019); Associated Press, *Trump on E. Jean Carroll Sexual Assault Claim: "She's Not My Type"*, HOLLYWOOD REP. (June 25, 2019); Associated Press, *Trump Says Famed Advice Columnist Who Accused Him of Sexual Assault Is "Not My Type'*, CHI. TRIB. (June 24, 2019); Associated Press, *Trump: Woman Who Accused Him of Sexual Assault Not His Type*, DENVER POST (June 24, 2019); Amber Athey, *Trump Says Columnist Who Accused Him of Rape Is "Not My Type"*, DAILY CALLER (June 24, 2019); Peter Baker & Neil Vigdor, *Trump, Accused Again of Sexual Misconduct, Insults Woman Who Said He Assaulted Her*, BOS. GLOBE (June 25, 2019); Antonia Blumberg, *Trump on E. Jean Carroll Accusing Him of Rape: "She's Not My Type"*, HUFFINGTON POST (June 24, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, BUS. INSIDER (June 25, 2019); Doina Chiacu, *Trump Denies Woman's Sexual Assault Accusation: "She's Not My Type"*, REUTERS (June 25, 2019); Burgess Everett & Melanie Zanona, *"I Believe the President": GOP Stands by Trump on Sexual Assault Allegation*, POLITICO (June 25, 2019); Rebecca Falconer, *Trump Says He Didn't Rape Author E. Jean Carroll: "She's Not My Type"*, AXIOS (June 24, 2019); Megan Garber, *The Real Meaning of Trump's "She's Not My Type" Defense*, ATLANTIC (June 25, 2019); Rebecca Morin, *"She's Not My Type": Trump Again Denies E. Jean Carroll's Sexual Misconduct Allegation*, USA TODAY (June 24, 2019); Ari Shapiro, *A Look at President Trump's Pattern of Responding To Accusations Of Sexual Misconduct*, NPR (June 25, 2019); Matt Stieb, *Trump Responds to E. Jean Carroll Rape Allegation: "She's Not My Type"*, CUT (June 25, 2019); Jia Tolentino, *E. Jean Carroll's Accusation Against Donald Trump, and the Raising, and Lowering, of the Bar*, NEW YORKER (June 25, 2019); Jay Willis, *Donald Trump Responds to E. Jean Carroll's Rape Allegation: "She's Not My Type"*, GQ (June 25, 2019); Anthony Zurcher, *Trump Says Sexual Assault Accuser E Jean Carroll "Not My Type"*, BBC NEWS (June 25, 2019).

19

"Believe me. She would not be my first choice. That I can tell you."[15] He reportedly called that same woman "the cunt on the airplane" when he ran into her at a charity gala years after the assault.[16] About a second woman, who claimed he forcibly pinned her to a wall and kissed her without consent while she was interviewing him for a magazine, Trump said to crowds at another rally, "Take a look. You take a look. Look at her, [then] look at her words. You tell me what you think. I don't think so. I don't think so."[17] Indeed, Trump often responds to claims that he has behaved inappropriately by simultaneously attacking the individual's credibility and attractiveness. When a female journalist quoted him as saying in a 1992 interview that "you have to treat women like shit," Trump insisted later, "The woman's a liar, extremely unattractive, lots of problems because of her looks."[18]

100.    In the June 24 statement, Trump falsely stated that he did not rape Carroll.

101.    On June 27, Birnbach and Martin went on the record to corroborate Carroll.[19]

102.    Speaking to Carroll, Martin, and a reporter, Birnbach said:

"I remember [Carroll] saying repeatedly, he pulled down my tights . . . . [Carroll] did say, he put his penis in me. And I said—my face just did it. What? He raped you? And [Carroll] said, eh, he kept pulling down—he pulled down my tights. He pulled down my tights . . . . It just—it was horrible. We fought. And I said, let's go to the police. No. Come to my house. No. I want to go home. I'll take you to the

---

[15] Jose A. DelReal, *Trump Mocks Sexual Assault Accusers: "She Would Not Be My First Choice"*, WASH. POST (Oct. 14, 2016).

[16] BARRY LEVINE & MONIQUE EL-FAIZY, ALL THE PRESIDENT'S WOMEN: DONALD TRUMP AND THE MAKING OF A PREDATOR 72 (2019).

[17] Naomi Lim, *Donald Trump on Accuser: "Take a Look at Her . . . I Don't Think So"*, CNN (Oct. 13, 2016).

[18] Nancy Collins, *Donald Trump Talks Family, Women in Unearthed Transcripts: "When I Come Home and Dinner's Not Ready, I Go Through the Roof"*, HOLLYWOOD REP. (Oct. 13, 2016).

[19] Michael Barbaro et al., *Corroborating E. Jean Carroll*, N.Y. TIMES (June 27, 2019).

20

police. No. It was 15 minutes of my life, it's over. Don't ever tell anybody. I just had to tell you."[20]

103.     Responding to Carroll, Birnbach, and a reporter, Martin said:

"From what I could sense of you, you were, A, you were handling it, as you handle things. She doesn't break down easily on anything. And there was none of that, as you told me. It wasn't like she started crying, or nothing that was a frantic kind of response to it. It was like, I can't believe this happened."[21]

104.     Martin added: "I said, don't tell anybody. I wouldn't tell anybody this."[22]

105.     Separately, Birnbach observed, "I believe E. Jean in this episode that she recounted

to me in 1996. Yes. Without hesitation. She's not a fabulist. She doesn't make things up."[23]

## VI.   TRUMP'S FALSE STATEMENTS ABOUT CARROLL WERE MADE WITH KNOWLEDGE OF FALSITY OR RECKLESS DISREGARD FOR THE TRUTH

106.     The false statements that Trump made about Carroll on June 21, 22, and 24, 2019,

were published with knowledge of their falsity and/or with reckless disregard for the truth.

107.     Trump knew who Carroll was at the time he raped her.

108.     Trump identified Carroll on sight when they met at Bergdorf Goodman.

109.     In that period, Trump moved in the same highly publicized New York City media

circles as Carroll, who also appeared on her own popular daily television program.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Jessica Bennett et al., *Why E. Jean Carroll, "the Anti-Victim," Spoke Up About Trump*, N.Y. TIMES (June 27, 2019).

21

110.    In 1987, Trump and Carroll were photographed at a party together:



111.    Trump has stated that he possesses "one of the great memories of all time."[24]

112.    Trump has also described himself as a "very stable genius."[25]

113.    In June 2019, Trump knew it was false to state that he had never met Carroll.

114.    In June 2019, Trump knew it was false to state that he had no idea who Carroll was.

115.    In June 2019, Trump knew it was false to state that he had never raped Carroll.

116.    Trump's other defamatory statements about Carroll in June 2019—that she had fabricated the rape accusation to increase her book sales, to carry out a political agenda, as part of a conspiracy with the Democratic Party, or in exchange for payment—rested on the express or deliberately-implied premise that Carroll's underlying accusation was false. Because Trump knew that the accusation was true, he also knew that his other statements about Carroll were false.

117.    Moreover, Trump lacked any factual basis for these highly specific statements regarding why Carroll had revealed to the public that he raped her at Bergdorf Goodman. And since all of these statements about Carroll were made to impute motives for lying, when in fact he

---

[24] Foreign Staff, *Donald Trump: I Have "One of the Greatest Memories of All Time"*, TELEGRAPH (Oct. 26, 2017).

[25] Daniella Diaz, *Trump: I'm a "Very Stable Genius"*, CNN (Jan. 6, 2018).

22

knew that Carroll had spoken the truth, Trump had strong reason to doubt the veracity of his own insulting claims. Trump thus published these statements with reckless disregard for the truth.

118.    Trump also lacked any factual basis for stating (or affirmatively implying) that Carroll had falsely accused other men of sexual assault. And since he knew that her accusation against him was truthful, he had strong reason to doubt the veracity of his statement that she was lying about other men. Trump thus made this statement with reckless disregard for the truth.

119.    Carroll did not reveal Trump's rape for any of the reasons imputed to her by Trump. Each and every statement that he made about her motives for coming forward—and her supposed conspiracy with political actors to fabricate a rape accusation—was false.

120.    To the contrary, Carroll feared that revealing Trump's rape would cause terrible damage to her reputation, career, and personal life. That was especially true given Trump's famed litigiousness and public abuse of those who criticize him. Carroll made this decision to honor her values and to inspire other sexually abused women to seek justice and accountability.

121.    With respect to politics, to the extent Carroll considered such things at all, it was principally to worry that coming forward might *benefit* Trump by firing up his base and affording him another opportunity to play the victim on national television.

122.    Trump's series of false, insulting, and defamatory statements about Carroll—and his actual malice in making those statements—are fully consistent with his tried-and-true playbook for responding to credible public reports that he sexually assaulted women.

123.    In 2005, Trump admitted—on a hot mic—to repeatedly sexually assaulting women in almost exactly the same manner that he had raped Carroll:

> "I'd better use some Tic Tacs just in case I start kissing her [the woman Trump was looking at, whom he had never met before]. You know, I'm automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything. Grab them by the pussy. You can do anything. . . . Oh, [she has] nice legs, huh?"[26]

124.    Based on Carroll's own experiences, Trump's 2005 statement was not "locker room talk" or mere braggadocio. It was a true description of how Trump believes he can treat women—and of how he *has* treated them on many occasions, including at Bergdorf Goodman.

125.    Indeed, Trump has openly suggested that sexual assault is inevitable when men and women interact. In 2013, for instance, he tweeted: "26,000 unreported sexual assults [sic] in the military . . . . What did these geniuses expect when they put men & women together?"[27]

126.    In addition to Carroll, Trump has been accused publicly by over a dozen women of forcibly kissing them, groping them above or below the waist, or attempting to rape them—often upon meeting him for the very first time. Those women include Jill Harth, Jessica Leeds, Cathy Heller, Temple Taggart McDowell, Karena Virginia, Bridget Sullivan, Tasha Dixon, Mindy McGillivray, Rachel Crooks, Natasha Stoynoff, Summer Zervos, and Cassandra Searles. Trump has responded to their accusations in a manner eerily similar to the statements he made about Carroll in June 2019.

127.    A recently published book by Barry Levine and Monique El-Faizy documents 67 incidents of alleged inappropriate behavior by Trump toward women, including 26 allegations of unwanted sexual contact. Forty-three of the allegations of inappropriate behavior in the book had

---

[26] *Transcript: Donald Trump's Taped Comments About Women*, N.Y. TIMES (Oct. 8, 2016).

[27] Daniella Diaz, *Trump Defends Tweet on Military Sexual Assault*, CNN (Sept. 8, 2016).

not been previously reported.[28] The book traces "Trump's transformation from a kid from Queens to high school 'ladies' man' into a womanizing, model-chasing, porn-star-frequenting philanderer," who "repeatedly and systematically engaged in aggressive sexual pursuit of women over the course of many decades."[29] In one instance, Karen Johnson describes Trump hiding behind a tapestry at his Mar-a-Lago home during a party and, when she walked by to use the restroom, grabbing her by the genitals, pulling her toward him, and kissing her without consent.[30] In another, Kristin Anderson describes Trump putting his hands up her skirt and touching her vagina through her underwear in a Manhattan nightclub. Trump denied that could have happened because he never would have been at a nightclub alone.[31]

128.    Trump thus knew he was lying when he said that Carroll had fabricated her rape accusation for a hodgepodge of unsavory reasons that he himself had invented out of whole cloth. He knew she was telling the truth because he knew who she was and he knew that he had raped her, just as he had sexually assaulted many other women over many years.

## VII.    CARROLL SUFFERS REPUTATIONAL AND OTHER HARM

129.    Trump's false and insulting statements about Carroll were defamation *per se*. They tended to (and did) damage Carroll in her trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information.

130.    Carroll has suffered harm as a direct result of Trump's false, defamatory statements.

131.    Carroll endured stoically when she kept secret the fact that Trump had raped her. But coming forward put her in the crosshairs of the most powerful man on the planet. He has since

---

[28] *See* LEVINE & EL-FAIZY, *supra* n.16, at 2.

[29] *Id.* at 2-3.

[30] *Id.* at 80-82, 88, 254.

[31] *Id.* at 250-51.

used that platform to attack her integrity, demean her appearance, condemn her as a liar, and accuse her of conspiring with political operatives in a despicable lie.

132.   These defamatory statements have caused Carroll emotional pain and suffering at the hands of the man who raped her, as well as injury to her reputation, honor, and dignity.

133.   Carroll has suffered professional harm as a direct result of Trump's defamatory statements. Carroll's professional success is inextricably bound up with her *Ask E. Jean* advice column, where readers look to her for wisdom, wit, honesty, integrity, and courage. By attacking Carroll, Trump has injured the reputation on which she makes her livelihood and attracts readers.

134.   Trump's defamatory statements caused Carroll to lose the support and goodwill of many of her readers. Many were turned off by even the idea of writing to a woman whom the President of the United States branded a "liar." Since Trump defamed her, some fans have stopped sending letters altogether—thus impairing Carroll's column, which requires a steady flood of compelling letters to which she can respond. In the months of July, August, and September 2019, Carroll received roughly 50% fewer letters than she received during the same period in 2018.

135.   Carroll is an advice columnist whose reputation is the very lifeblood of her trade, and Trump's defamatory statements have therefore inflicted wide-ranging and substantial harm.

136.   Carroll filed this lawsuit to obtain redress for those injuries.

## CAUSE OF ACTION: DEFAMATION

137.   Plaintiff Carroll incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

138.   Trump published statements to the media on June 21, 22, and 24, 2019.

139.   Each of those statements identified—and was "of or concerning"—Carroll.

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 77 of 114

140.     Each of those statements contained numerous falsehoods about Carroll, whether on their face and/or by virtue of a clear implication affirmatively intended by Trump.

141.     Trump's false statements regarding Carroll were defamatory *per se*.

142.     Trump's false and defamatory statements were published throughout New York State and around the world on television, in newspapers and magazines, on social media, and elsewhere in print and on the internet. Trump ensured that his false and defamatory statements about Carroll would receive a wide circulation by making them to the national press.

143.     Trump made these false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity.

144.     Trump made these false statements with ill will and spite, and with wanton, reckless, or willful disregard for their injurious effects on Carroll and Carroll's rights.

145.     Trump's false and defamatory statements caused Carroll to suffer reputational, emotional, and professional harm, as alleged above.

## **PRAYER FOR RELIEF**

WHEREFORE, Carroll prays for relief as follows:

a.   Ordering Trump to retract any and all defamatory statements;

b.   Ordering Trump to pay compensatory damages in an amount to be determined at trial;

c.   Ordering Trump to pay punitive damages in an amount to be determined at trial; and

d.   Awarding pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

27

Dated:  November 4, 2019                    Respectfully submitted,


                                            By:

                                            Roberta A. Kaplan
                                            Matthew J. Craig
                                            Martha E. Fitzgerald
                                            KAPLAN HECKER & FINK LLP
                                            350 Fifth Avenue, Suite 7110
                                            New York, New York 10118
                                            Tel: (212) 763-0883
                                            Fax: (212) 564-0883
                                            rkaplan@kaplanhecker.com
                                            mcraig@kaplanhecker.com
                                            mfitzgerald@kaplanhecker.com

                                            *Counsel for Plaintiff E. Jean Carroll*

# EXHIBIT B



## NYSVoter Public Information - Voter Registration and Poll Site Search Results

Close

County BOE Contact Information

## Polling Place Information

**Early Voting Poll Site**

For Early Voting locations and times in your area, please follow this link through to your county Board of Elections website County BOE Contact Information

**Election Day Poll Site**

Please click on the following link to find your polling place

**https://nyc.pollsitelocator.com/search**

## Voter Information

| | |
|---|---|
| **Name** | : DONALD J TRUMP |
| **Residential Address** | : 721 5 AVENUE PH, NEW YORK, NY 10022-1002 |
| **Mailing Address (if any)** | : |
| **Political Party** | : Republican |
| **Voter Status** | : Active |

## Voter District Information

| | | | |
|---|---|---|---|
| **Election District** | : 46 | **County Legislative District** | : 0 |
| **Senate District** | : 28 | **Assembly District** | : 73 |
| **Congressional District** | : 12 | **Town** | : NEW YORK |
| **Ward** | : | | |

# EXHIBIT C

P2550432

Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

                                        PLAINTIFF

                    - vs -

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

                                        DEFENDANT

index No. **160694/2019**
Date Filed
Office No.
Court Date.

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**    :SS:

**MICHAEL ROTH** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/04/2019, 2:46PM**

deponent attempted to make personal service of a true copy of the **REQUEST FOR JUDICIAL INTERVENTION, AFFIRMATION SUPPLEMENTING RJI** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE ABOVE-LISTED DOCUMENTS ON THE RECIPIENT, DONALD J. TRUMP. SERVER PASSED THROUGH SECRET SERVICE SECURITY CHECKPOINT AND SPOKE WITH CONCIERGE (MALE, WHITE SKIN, BROWN HAIR, 40 YRS, 6'1, 200 LBS) AT THE ADDRESS AND CONCIERGE CALLED UP TO LEGAL OFFICE TO QUESTION WHETHER OR NOT DOCUMENTS WOULD BE ACCEPTED. CONCIERGE WAS TOLD BY LEGAL OFFICE THAT THEY WOULD NOT ACCEPT PAPERS. CONCIERGE REFUSED TO PROVIDE HIS OWN NAME OR THE NAME OF THE INDIVIDUAL FROM LEGAL OFFICE ON THE PHONE. DEPONENT ATTEMPTED TO LEAVE THE PAPERS WITH THE CONCIERGE. DEPONENT THEN WALKED TOWARD EXIT OF BUILDING. CONCIERGE SIGNALED TO SECRET SERVICE OFFICERS TO STOP THE DEPONENT. DEPONENT TOLD SECRET SERVICE OFFICER THAT DEPONENT WAS REQUIRED TO LEAVE THE PAPERS WITH THE CONCIERGE. SECRET SERVICE OFFICER INFORMED DEPONENT THAT OFFICER HAD BEEN INSTRUCTED NOT TO ALLOW PROCESS SERVERS TO LEAVE PAPERS WITH CONCIERGE AND THAT DEPONENT WOULD HAVE TO FIND A DIFFERENT WAY TO EFFECTUATE SERVICE. SECRET SERVICE OFFICER INSTRUCTED DEPONENT TO TAKE THE PAPERS BACK FROM THE CONCIERGE. DEPONENT DID SO. DEPONENT THEN ASKED IF THE OFFICER KNEW HOW PROCESS SERVERS WERE SUPPOSED TO EFFECTUATE SERVICE IF UNABLE TO DO SO AT THE LOCATION, TO WHICH OFFICER REPLIED "I AM NOT GOING TO DO YOUR JOB FOR YOU." DEPONENT WAS ASKED TO LEAVE THE BUILDING AND DID SO.

Sworn to before me this
___ day of NOV, 2019

MICHAEL ROTH DCA LIC #2005859
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2550432

2a

SELENA INES ADAMES
NOTARY
NO. 01AD6365042
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
09-25-2021
PUBLIC
STATE OF NEW YORK

Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

                                                        PLAINTIFF

                        - vs -

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

                                                        DEFENDANT

index No. **160694/2019**
Date Filed
Office No.
Court Date.

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**        :SS:

**MICHAEL ROTH** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
11/04/2019, 2:46PM

deponent attempted to make personal service of a true copy of the **NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

**AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE ABOVE-LISTED DOCUMENTS ON THE RECIPIENT, DONALD J. TRUMP. SERVER PASSED THROUGH SECRET SERVICE SECURITY CHECKPOINT AND SPOKE WITH CONCIERGE (MALE, WHITE SKIN, BROWN HAIR, 40 YRS, 6'1, 200 LBS) AT THE ADDRESS AND CONCIERGE CALLED UP TO LEGAL OFFICE TO QUESTION WHETHER OR NOT DOCUMENTS WOULD BE ACCEPTED. CONCIERGE WAS TOLD BY LEGAL OFFICE THAT THEY WOULD NOT ACCEPT PAPERS. CONCIERGE REFUSED TO PROVIDE HIS OWN NAME OR THE NAME OF THE INDIVIDUAL FROM LEGAL OFFICE ON THE PHONE. DEPONENT ATTEMPTED TO LEAVE THE PAPERS WITH THE CONCIERGE. DEPONENT THEN WALKED TOWARD EXIT OF BUILDING. CONCIERGE SIGNALED TO SECRET SERVICE OFFICERS TO STOP THE DEPONENT. DEPONENT TOLD SECRET SERVICE OFFICER THAT DEPONENT WAS REQUIRED TO LEAVE THE PAPERS WITH THE CONCIERGE. SECRET SERVICE OFFICER INFORMED DEPONENT THAT OFFICER HAD BEEN INSTRUCTED NOT TO ALLOW PROCESS SERVERS TO LEAVE PAPERS WITH CONCIERGE AND THAT DEPONENT WOULD HAVE TO FIND A DIFFERENT WAY TO EFFECTUATE SERVICE. SECRET SERVICE OFFICER INSTRUCTED DEPONENT TO TAKE THE PAPERS BACK FROM THE CONCIERGE. DEPONENT DID SO. DEPONENT THEN ASKED IF THE OFFICER KNEW HOW PROCESS SERVERS WERE SUPPOSED TO EFFECTUATE SERVICE IF UNABLE TO DO SO AT THE LOCATION, TO WHICH OFFICER REPLIED "I AM NOT GOING TO DO YOUR JOB FOR YOU." DEPONENT WAS ASKED TO LEAVE THE BUILDING AND DID SO.**

Sworn to before me this
     day of NOV 2019

MICHAEL ROTH DCA LIC #2005859
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2550390

**2a**

SELENA INES ADAMES
NOTARY
NO.01AD6365042
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
09-25-2021
PUBLIC
STATE OF NEW YORK

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 84 of 114

# EXHIBIT D



Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

                                                        PLAINTIFF

                            - vs -

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

                                                        DEFENDANT

index No. **160694/2019**

Date Filed

Office No.

Court Date.

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**       :SS:

**FREDDI SIMON**  being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/05/2019, 10:00AM**

deponent attempted to make personal service of a true copy of the **NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE DEFENDANT, DONALD J. TRUMP AT THE ADDRESS OF 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY, WALKED STRAIGHT TO THE CONCIERGE AND ASKED IF THERE WAS ANYONE AVAILABLE TO ACCEPT DOCUMENTS ON BEHALF OF DONALD J. TRUMP. THE CONCIERGE TOLD DEPONENT TO WAIT A MINUTE AS HE CALLED UPSTAIRS. THE CONCIERGE STATED THE PERSONS UPSTAIRS REFUSED TO ACCEPT SERVICE. AFTER THE CONCIERGE STATED SERVICE WAS BEING REFUSED, DEPONENT ATTEMPTED TO LEAVE THE PAPERS WITH THE CONCIERGE, WHO ALSO REFUSED TO ACCEPT SERVICE. DEPONENT ADVISED HE HAD TO LEAVE THE PAPERS ANYWAY, BUT THE CONCIERGE KEPT INSISTING THE DEPONENT TAKE THE PAPERS BACK. AFTER REPEATED ATTEMPTS TO LEAVE THE PAPERS WITH THE CONCIERGE, DEPONENT ATTEMPTED TO WALK AWAY. THE CONCIERGE TOLD DEPONENT TO WAIT A MINUTE, AS HE WAS SPEAKING ON THE WALKIE-TALKIE. DEPONENT WAS UNABLE TO HEAR WHAT WAS BEING SAID; HOWEVER, AS DEPONENT TURNED TOWARDS THE EXIT, SECRET SERVICE WAS ALREADY WATCHING THE DEPONENT. DEPONENT FELT THAT SECRET SERVICE WAS NOT GOING TO LET HIM LEAVE THE PREMISES WITHOUT THE PAPERS IN HIS HAND. DEPONENT TURNED BACK TO THE CONCIERGE, TOOK THE PAPERS BACK AND EXITED THE PREMISES.

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

FREDDI SIMON 2066183
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2562353

**2a**



Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

                                                    PLAINTIFF

                        - vs -

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

                                                    DEFENDANT

index No. **160694/2019**

Date Filed

Office No.

Court Date.

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**          :SS:

**FREDDI SIMON**  being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
11/05/2019, 10:00AM

deponent attempted to make personal service of a true copy of the **REQUEST FOR JUDICIAL INTERVENTION, AFFIRMATION SUPPLEMENTING RJI** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

**AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE DEFENDANT, DONALD J. TRUMP AT THE ADDRESS OF 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY, WALKED STRAIGHT TO THE CONCIERGE AND ASKED IF THERE WAS ANYONE AVAILABLE TO ACCEPT DOCUMENTS ON BEHALF OF DONALD J. TRUMP. THE CONCIERGE TOLD DEPONENT TO WAIT A MINUTE AS HE CALLED UPSTAIRS. THE CONCIERGE STATED THE PERSONS UPSTAIRS REFUSED TO ACCEPT SERVICE. AFTER THE CONCIERGE STATED SERVICE WAS BEING REFUSED, DEPONENT ATTEMPTED TO LEAVE THE PAPERS WITH THE CONCIERGE, WHO ALSO REFUSED TO ACCEPT SERVICE. DEPONENT ADVISED HE HAD TO LEAVE THE PAPERS ANYWAY, BUT THE CONCIERGE KEPT INSISTING THE DEPONENT TAKE THE PAPERS BACK. AFTER REPEATED ATTEMPTS TO LEAVE THE PAPERS WITH THE CONCIERGE, DEPONENT ATTEMPTED TO WALK AWAY. THE CONCIERGE TOLD DEPONENT TO WAIT A MINUTE, AS HE WAS SPEAKING ON THE WALKIE-TALKIE. DEPONENT WAS UNABLE TO HEAR WHAT WAS BEING SAID; HOWEVER, AS DEPONENT TURNED TOWARDS THE EXIT, SECRET SERVICE WAS ALREADY WATCHING THE DEPONENT. DEPONENT FELT THAT SECRET SERVICE WAS NOT GOING TO LET HIM LEAVE THE PREMISES WITHOUT THE PAPERS IN HIS HAND. DEPONENT TURNED BACK TO THE CONCIERGE, TOOK THE PAPERS BACK AND EXITED THE PREMISES.**

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

FREDDI SIMON 2066183
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2562379

**2a**

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 87 of 114

# EXHIBIT E



Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

index No. **160694/2019**

PLAINTIFF

Date Filed

- vs -

Office No.

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

Court Date.

DEFENDANT

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**    :SS:

**FREDDI SIMON** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/06/2019, 10:20AM**

deponent attempted to make personal service of a true copy of the **NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE DEFENDANT, DONALD J. TRUMP, AT THE ADDRESS OF 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY, WALKED INTO THE BUILDING AND PASSED THROUGH THE SECURITY CHECKPOINT THAT WAS BEING MANNED BY ARMED SECRET SERVICE. DEPONENT THEN WALKED TOWARDS THE CONCIERGE AND ATTEMPTED TO SERVE THE PAPERS. THE CONCIERGE LOOKED AT THE DOCUMENTS AND TOLD DEPONENT THAT NO ONE IS GOING TO ACCEPT THE PAPERS. CONCIERGE ALSO EXPLAINED THAT ANOTHER SERVER ATTEMPTED SERVICE ON MONDAY. DEPONENT ASKED, "WHAT WOULD HAPPEN IF I LEFT THE PAPERS ON THE PODIUM", AND CONCIERGE JUST NODDED AT DEPONENT WITH NO RESPONSE. DEPONENT ASKED AGAIN AND EMPHASIZED THE QUESTION. WHILE QUESTIONING, DEPONENT PROCEEDED TO LEAVE THE DOCUMENTS ON THE PODIUM AND BEGAN TO TAKE A FEW STEPS TOWARDS THE EXIT. DEPONENT THEN ASKED,"IF I WALK TOWARDS THE EXIT NOW WITHOUT THE PAPERS WOULD I BE STOPPED BY SECURITY?" THE CONCIERGE STATED YES, HE WOULD BE STOPPED BY SECURITY. ONCE DEPONENT RECEIVED A DEFINITIVE ANSWER, HE TOOK THE DOCUMENTS FROM THE PODIUM AND EXITED THE BUILDING.

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

FREDDI SIMON 2066183
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2562387

**2a**

Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

**KAPLAN HECKER & FINK LLP**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

| E. JEAN CARROLL | | index No. **160694/2019** |
| | PLAINTIFF | Date Filed |
| - vs - | | Office No. |
| DONALD J. TRUMP, IN HIS PERSONAL CAPACITY | | Court Date. |
| | DEFENDANT | |

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**    :SS:

**FREDDI SIMON**  being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/06/2019, 10:20AM**

deponent attempted to make personal service of a true copy of the **REQUEST FOR JUDICIAL INTERVENTION, AFFIRMATION SUPPLEMENTING RJI** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

AT THE TIME LISTED ABOVE, DEPONENT ATTEMPTED TO SERVE THE DEFENDANT, DONALD J. TRUMP, AT THE ADDRESS OF 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY, WALKED INTO THE BUILDING AND PASSED THROUGH THE SECURITY CHECKPOINT THAT WAS BEING MANNED BY ARMED SECRET SERVICE. DEPONENT THEN WALKED TOWARDS THE CONCIERGE AND ATTEMPTED TO SERVE THE PAPERS. THE CONCIERGE LOOKED AT THE DOCUMENTS AND TOLD DEPONENT THAT NO ONE IS GOING TO ACCEPT THE PAPERS. CONCIERGE ALSO EXPLAINED THAT ANOTHER SERVER ATTEMPTED SERVICE ON MONDAY. DEPONENT ASKED, "WHAT WOULD HAPPEN IF I LEFT THE PAPERS ON THE PODIUM", AND CONCIERGE JUST NODDED AT DEPONENT WITH NO RESPONSE. DEPONENT ASKED AGAIN AND EMPHASIZED THE QUESTION. WHILE QUESTIONING, DEPONENT PROCEEDED TO LEAVE THE DOCUMENTS ON THE PODIUM AND BEGAN TO TAKE A FEW STEPS TOWARDS THE EXIT. DEPONENT THEN ASKED,"IF I WALK TOWARDS THE EXIT NOW WITHOUT THE PAPERS WOULD I BE STOPPED BY SECURITY?" THE CONCIERGE STATED YES, HE WOULD BE STOPPED BY SECURITY. ONCE DEPONENT RECEIVED A DEFINITIVE ANSWER, HE TOOK THE DOCUMENTS FROM THE PODIUM AND EXITED THE BUILDING.

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

FREDDI SIMON 2066183
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2562411

**2a**

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 90 of 114

# EXHIBIT F

Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

P2565729

**KAPLAN HECKER & FINK LLP**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

index No. **160694/2019**

PLAINTIFF

Date Filed

- vs -

Office No.

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

Court Date.

DEFENDANT

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**      :SS:

**CARL MILLER** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/06/2019, 8:51PM**

deponent attempted to make personal service of a true copy of the **NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

**ON THE AFOREMENTIONED DATE AND TIME DEPONENT ATTEMPTED TO SERVE DONALD J. TRUMP AT 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY AND WAS MET AT THE DOOR BY NYPD OFFICERS AND SECRET SERVICE OFFICERS. THE SECRET SERVICE OFFICERS REFUSED TO GRANT DEPONENT ACCESS INTO THE BUILDING AND TOLD HIM HE WAS NOT PERMITTED TO LEAVE PAPERS AT THIS LOCATION. ONE OF THE SECRET SERVICE OFFICERS SAID, "PAPERS HAVE TO GO TO DC". THE OFFICER DID NOT SPECIFY WHERE SERVICE COULD BE MADE.**

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

CARL MILLER DCA LIC #790101
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2565729

**2a**

**Scanned with CamScanner**

Form 09 - AFFIDAVIT OF ATTEMPTED SERVICE

P2565737

**KAPLAN HECKER & FINK LLP**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

E. JEAN CARROLL

Index No. **160694/2019**

PLAINTIFF      Date Filed
Office No.
- vs -
Court Date.
DONALD J. TRUMP, IN HIS PERSONAL CAPACITY

DEFENDANT

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**      :SS:

**CARL MILLER** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
**That on**
**11/06/2019, 8:51PM**

deponent attempted to make personal service of a true copy of the **REQUEST FOR JUDICIAL INTERVENTION, AFFIRMATION SUPPLEMENTING RJI** in the above entitled action upon
**DONALD J. TRUMP the DEFENDANT at**
**725 FIFTH AVENUE**
**NEW YORK NY 10022**
and was unable to do so.

**ON THE AFOREMENTIONED DATE AND TIME DEPONENT ATTEMPTED TO SERVE DONALD J. TRUMP AT 725 FIFTH AVENUE, NEW YORK, NY 10022. DEPONENT WENT TO THE PROPERTY AND WAS MET AT THE DOOR BY NYPD OFFICERS AND SECRET SERVICE OFFICERS. THE SECRET SERVICE OFFICERS REFUSED TO GRANT DEPONENT ACCESS INTO THE BUILDING AND TOLD HIM HE WAS NOT PERMITTED TO LEAVE PAPERS AT THIS LOCATION. ONE OF THE SECRET SERVICE OFFICERS SAID, "PAPERS HAVE TO GO TO DC". THE OFFICER DID NOT SPECIFY WHERE SERVICE COULD BE MADE.**

Sworn to before me this
07TH day of NOVEMBER, 2019

MICHAEL ROTH
Notary Public, State of New York
No. 01RO6268665
Qualified in NEW YORK COUNTY
Commission Expires 09/17/2020

CARL MILLER DBA LIC #790101
PM Legal, LLC
75 MAIDEN LANE 11TH FLOOR
NEW YORK, NY 10038
Reference No: 7-KHF-2565737

**2a**

**Scanned with CamScanner**

# EXHIBIT G

## AFFIDAVIT OF NON-SERVICE

### IN THE SUPREME COURT OF NEW YORK COUNTY IN THE STATE OF NEW YORK

Case Number: **160694/2019**

Date Filed:

Plaintiff:
**E. Jean Carroll**

vs

Defendant:
**Donald J. Trump, in his personal capacity**

Received on **11/5/2019** to be served on **Donald J. Trump, an individual, 1600 Pennsylvania Ave., NW, , Washington, DC 20500.**

**Joseph Koniowsky,** the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action.

**NON-SERVED** on **11/06/2019** at **11:45 AM** the **AFFIRMATION; REQUEST FOR JUDICIAL INTERVENTION; SUMMONS; COMPLAINT AND JURY DEMAND; NOTICE OF ELECTRONIC FILING** for the reason that I failed to find **Donald J. Trump, an individual** or any information to allow further search.  Read the comments below for further details.

11/06/2019 11:45 AM 1600 Pennsylvania Ave., NW, , Washington, DC 20500 Went to the 15th st visitors entrance. Spoke to a secret service officer at the gate. Was told there's no way to access the building or for him or anyone else in his position to attempt to contact anyone on the inside at my request. I tried to give him a business card to see if the query could be passed up the ranks but was told he was unable to take anything from anyone into the site.

Subscribed and Sworn to before me on NOU 6 , 20 19 .

X _____
**Joseph Koniowsky**

Job #: 1906436

Notary: Jessica Manzano
State of/Commonwealth of: Washington D.C.
County of: N/A
Expires: 10/14/2022

**PM Legal 75 Maiden Lane, 11th Floor New York, NY 10038**

INDEX NO. 160694/2019
Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 95 of 114
RECEIVED NYSCEF: 11/08/2019

# EXHIBIT H

| **From:** | Roberta Kaplan |
|---|---|
| **To:** | mkasowitz@kasowitz.com |
| **Cc:** | Martha E. Fitzgerald; Matthew Craig |
| **Subject:** | Service in Carroll v. Trump |
| **Date:** | Monday, November 4, 2019 3:30:52 PM |
| **Attachments:** | 160694_2019_E_Jean_Carroll_v_Donald_J_Trump_COMPLAINT_2.pdf |
|  | 160694_2019_E_Jean_Carroll_v_Donald_J_Trump_SUMMONS_1.pdf |
|  | Mandatory E-filing Notice.pdf |

Dear Marc:

As you may have seen, this morning, we filed a lawsuit on behalf of E. Jean Carroll against President Trump. The as-filed summons and complaint are attached, along with a notice of mandatory e-filing.

Given that you are representing President Trump in the related Zervos case in the same court (Supreme Court, County of New York Index No. 0150522/2017), we were wondering if you will also be representing the President in this case, and would therefore be willing to accept service on his behalf.

We have only just started our service efforts, but I thought we might save both sides (not to mention the secret service) a lot of trouble if you are able to accept.

Thanks in advance for your time,


Robbie


**Roberta ("Robbie") Kaplan, Esq.**
Kaplan Hecker & Fink LLP
350 Fifth Avenue | Suite 7110
New York, New York 10118
(212) 763-0883 | rkaplan@kaplanhecker.com

Case 1:20-cv-07311-LAK    Document 12-1    Filed 09/14/20    Page 97 of 114

**Hon.** Deborah A. **Kaplan**
Present : **J.S.C.**
Hn.    J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

At IAS/Part _____ of the Supreme
Court of the State of New York, held in
and for the County of New York, at the
Court _____ _____ _____ at the
New York, New York
of _____ November _____ 2019.

---

E. JEAN CARROLL,

         *Plaintiff,*

-against-

DONALD J. TRUMP, in his personal capacity,

         *Defendant.*

Index No. 160694/2019

---

### [PROPOSED] ORDER PERMITTING ALTERNATIVE SERVICE

Upon the annexed affirmation of Roberta A. Kaplan, Esq., dated November 8, 2019, and

all supporting papers annexed thereto, it is hereby:

ORDERED that service of process shall be directed pursuant to CPLR § 308(5) upon

Defendant Donald J. Trump as follows:

Until such time that counsel for Defendant in this action has been identified, Plaintiff E.

Jean Carroll shall be permitted to serve Defendant by mailing the summons and all other papers to
       by overnight mail and by first class mail
Defendant at the two addresses below, and emailing a copy of such papers to Defendant's attorneys

below:

      Donald J. Trump
      Trump Tower
      725 Fifth Avenue
      New York, NY 10022

      Donald J. Trump
      White House
      1600 Pennsylvania Ave NW
      Washington, DC 20500

      Richard F. Brueckner
      Law Offices of Alan S. Futerfas
      rbrueckner@futerfaslaw.com

Counsel to Respondent Donald J. Trump
*People v. Trump*, Index. No. 451130/2018 (N.Y. Sup. Ct.)

William S. Consovoy
Consovoy McCarthy PLLC
will@consovoymccarthy.com
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Vance*, No. 19-3204 (2d Cir.)

Joanna C. Hendon
Spears & Imes LLP
jhendon@spearsimes.com
Counsel to Defendant Donald J. Trump
*Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.)

Marc E. Kasowitz
Kasowitz Benson Torres LLP
mkasowitz@kasowitz.com
Counsel to Defendant Donald J. Trump
*Zervos v. Trump*, Index No. 15022/2017 (N.Y. Sup. Ct., N.Y. Cty.)

Lawrence S. Rosen
LaRocca Hornik Rosen Greenberg & Blaha LLP
LRosen@LHRGB.com
Counsel to Defendant Donald J. Trump
*Galicia v. Trump*, Index No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.)

Patrick Strawbridge,
Consovoy McCarthy PLLC
Patrick@consovoymccarthy.com;
Counsel to Plaintiff-Appellant Donald J. Trump
*Trump v. Deutsche Bank AG*, No. 19-1540 (2d Cir.)

Once counsel for Defendant in this action has been identified, Plaintiff shall be permitted

to serve the summons and all papers on Defendant's counsel via email until such time that counsel

has entered a notice of appearance in this action.

Dated: November 12, 2019

*It is further ORDERED that all mailings and emails must be accompanied by a copy of this ex parte order.*

ENTER:

J.S.C.

2

Hon. Deborah A. Kaplan
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------

E. JEAN CARROLL,

                              *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                              *Defendant*.

---------------------------------------------------

Index No.  160694/2019

**NOTICE OF APPEARANCE**

TO THE CLERK OF COURT:

    PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

    All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.

Dated: New York, NY
        November 13, 2019

                              /s/ Matthew J. Craig
                              _____

                              Matthew J. Craig
                              KAPLAN HECKER & FINK LLP
                              350 Fifth Avenue, Suite 7110
                              New York, New York 10118
                              Telephone: (212) 763-0883
                              Facsimile: (212) 564-0883
                              mcraig@kaplanhecker.com

                              *Counsel for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------

E. JEAN CARROLL,

                          *Plaintiff*,                    Index No. 160694/2019

      -against-

DONALD J. TRUMP, in his personal capacity,          AFFIRMATION OF SERVICE


                          *Defendant*.

--------------------------------------


       I, Matthew J. Craig, an attorney admitted to practice in the courts of the State of New York,

hereby affirm under penalty of perjury, pursuant to CPLR 2106, that on November 13, 2019, I

caused to be served upon Defendant Donald J. Trump the Summons (Doc. 1), Complaint (Doc. 2),

Notice of Mandatory E-Filing, and Order Permitting Alternative Service (Doc. 15). These

documents were sent by USPS First Class Mail as well as Overnight Mail to the following

addresses:


       Donald J. Trump
       Trump Tower
       725 Fifth Avenue
       New York, NY 10022

       Donald J. Trump
       White House
       1600 Pennsylvania Ave NW
       Washington, DC 20500

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 101 of 114

Further, I sent electronic copies of the Summons (Doc. 1), Complaint (Doc. 2), Notice of

Mandatory E-Filing, and Order Permitting Alternative Service (Doc. 15) to the following attorneys

for Defendant at the following email addresses:

Richard F. Bruekner
rbruekner@futeraslaw.com

William S. Consovoy
will@consovoymccarthy.com

Joanna C. Hendon
jhendon@spearsimes.com

Marc E. Kasowitz
mkasowitz@kasowitz.com

Lawrence S. Rosen
LRosen@LHRGB.com

Patrick Strawbridge
Patrick@consovoymccarthy.com

Dated: New York, New York
November 13, 2019

By: /s/ Matthew J. Craig

Matthew J. Craig
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
mcraig@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------

E. JEAN CARROLL,

                  *Plaintiff*,

   -against-

DONALD J. TRUMP, in his personal capacity,

                  *Defendant*.

---------------------------------------------------

Index No.  160694/2019

**NOTICE OF APPEARANCE**

TO THE CLERK OF COURT:

      PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

      All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.

Dated: New York, NY
       November 13, 2019

                              /s/ Martha E. Fitzgerald

                              Martha E. Fitzgerald
                              KAPLAN HECKER & FINK LLP
                              350 Fifth Avenue, Suite 7110
                              New York, New York 10118
                              Telephone: (212) 763-0883
                              Facsimile: (212) 564-0883
                              mfitzgerald@kaplanhecker.com

                              *Counsel for Plaintiff E. Jean Carroll*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
E. JEAN CARROLL,

                  Plaintiff,              Index No.: 160694/19

           -against-

                                  **NOTICE OF APPEARANCE**

DONALD J. TRUMP, in his personal capacity,

                  Defendant.
-------------------------------------------------------------------X

       **PLEASE TAKE NOTICE** that LaRocca Hornik Rosen & Greenberg LLP hereby appears

in the above-referenced action on behalf of defendant Donald J. Trump.

       **PLEASE TAKE FURTHER NOTICE** that copies of all pleadings and papers, shall be

served upon the undersigned, and that electronic service via e-mail is acceptable and preferred.

       This notice of appearance is not intended to confer jurisdiction, to admit any fact and/or to

waive any defense.

Dated: New York, New York
       November 25, 2019

                                **LAROCCA HORNIK ROSEN
                                & GREENBERG LLP**

                                _____
                                Lawrence S. Rosen, Esq.
                                40 Wall Street, 32nd Floor
                                New York, NY  10005
                                T:  (212) 530-4822
                                E:  lrosen@lhrgb.com
                                *Attorneys for defendant,
                                Donald J. Trump*

To:    Roberta Kaplan, Esq. (*Via NYSCEF*)
        KAPLAN HECKER & FINK LLP
        350 Fifth Avenue, Suite 7110
        New York, NY  10118

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
E. JEAN CARROLL,

                                Index No. 160694/2019

               Plaintiff,

            -against-                  **STIPULATION**

DONALD J. TRUMP, in his personal capacity,

               Defendant.
------------------------------------------------------------------X

WHEREAS, on November 4, 2019, plaintiff E. Jean Carroll ("plaintiff") commenced the above-captioned action against defendant Donald J. Trump ("defendant") by filing a Summons and Complaint via NYSCEF;

WHEREAS, on November 12, 2019, the Court issued an order permitting plaintiff to serve defendant with process under CPLR 308(5);

WHEREAS, LaRocca Hornik Rosen & Greenberg LLP has appeared as attorneys of record on behalf of defendant in this action;

WHEREAS, defendant intends to file a pre-answer motion to dismiss plaintiff's Complaint (the "Motion"); and

WHEREAS, counsel for the parties have conferred in good faith, and now desire to set a briefing schedule in connection with the Motion;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that the parties will brief the Motion as follows:

1.      Defendant shall file moving papers by January 14, 2020 via NYSCEF;

2.      Plaintiff shall file opposition papers by February 11, 2020 via NYSCEF;

3.      Defendant shall file reply papers, if any, by March 3, 2020 via NYSCEF;

4.      The return date of the Motion shall be March 5, 2020, or such other future date as

the Court may establish; and

5.      Electronic signatures shall serve as originals for the purposes of this stipulation.


Dated: New York, New York
        November 26, 2019


**KAPLAN HECKER & FINK LLP**

_____

Roberta A. Kaplan, Esq.
350 Fifth Avenue, Suite 7110
New York, New York 10118
T: (212) 763-0883
E: rkaplan@kaplanhecker.com

*Attorneys for plaintiff*
*E. Jean Carroll*

**LAROCCA HORNIK ROSEN
& GREENBERG LLP**

_____

Lawrence S. Rosen, Esq.
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822
E: lrosen@lhrgb.com

*Attorneys for defendant*
*Donald J. Trump*


2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------

E. JEAN CARROLL,

                   *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                  *Defendant*.

---------------------------------------------

Index No.  160694/2019

**NOTICE OF APPEARANCE**

TO THE CLERK OF COURT:

    PLEASE TAKE NOTICE that I am admitted to practice in this Court, and that I appear in this case as counsel for Plaintiff, E. Jean Carroll, in the above-captioned action.

    All pleadings, notices of hearing, and other filings in this matter should be served upon the undersigned counsel.

Dated: New York, NY
      November 26, 2019

                           /s/ Gabrielle E. Tenzer

                           Gabrielle E. Tenzer
                           KAPLAN HECKER & FINK LLP
                           350 Fifth Avenue, Suite 7110
                           New York, New York 10118
                           Telephone: (212) 763-0883
                           Facsimile: (212) 564-0883
                           gtenzer@kaplanhecker.com

                           *Counsel for Plaintiff E. Jean Carroll*

# NEW YORK COUNTY SUPREME COURT

60 CENTRE STREET • NEW YORK, NEW YORK 10007

_Nov. 26_, 20 _19_

Dear Counselor:

_Carroll v. Trump,_
_Index No.: 160694/2019_

Please be advised as to the following:    (only as to what is checked)

(__)1/Please be advised that your post-submission papers cannot be considered. Once a motion is submitted to the court, additional submissions are not accepted, unless by consent.

(✓)2/This is to acknowledge your letter dated _Nov. 21, 2019_.

(__) 3/Such letter references a court order/decision/prior letter, <u>which is not attached</u>, so it is being returned to you and cannot be considered. _This Part deals with approximately 1000 cases per year, and approximately 800 plus applications and motions per year, and has insufficient resources to pull the relevant order/letter(s) on each piece of correspondence received, which is generally in the Clerk's office in the basement, given no secretarial help, and extremely limited resources. NOTE: Correspondence should be limited to letters authorized by CPLR or Court/Part rules, as the court has no secretary, able to manage the 20 plus letters (and duplicate letters) received daily. See #8, below._

(__)4/Your letter is being returned to you as the court cannot consider your request made by letter as an application of such nature must be made by formal motion.

(—)5/Your letter is being returned to you as you did not send a copy to the other side. Your letter must indicate that a copy was sent to the other side, with the address it was sent to provided on the bottom of the letter.

(__)6/The court does not accept faxed documents. (There is no need to fax and send by mail.)

(__)7/Please be advised that all motions, decisions after trial, and any other matters are processed in the order in which they are received. Every matter before the court is very important, and thus your very important matter will be processed accordingly. Please be assured that all matters are expedited in accordance with the court's busy schedule and that some cases may take longer because of the complexity of the case submitted.

(__)8/ _On average, this Part deals with approximately 1000 or more cases per year with limited staffing and resources, including a decreased Law Dept. Please be reminded that the court's budget was cut by 170 million dollars in 2011 and has not been increased since then, which in effect is a further cut. Accordingly, the court has lost staff through layoffs and attrition and thus applications, mediation, trials, and motions take longer to resolve/schedule. In addition to staff cuts and numerous personnel changes, court hours have curtailed and staff required to leave by 6pm due to the closing of the building because of lack of court officers. Moreover, Part 36 has not had a regularly assigned Part clerk for several years and the Judge has been presiding over Supreme court cases and was also appointed as an Associate Justice of the Appellate Term, First Department, in March of 2014._

(✓)9/Please forward a copy of this letter to all parties within 5 days of receipt.

(✓)10/ _Processing of RJI's is done in the Clerk's office &_
_not by individual Justices. To the extent you wish_
_to have the case reassigned to Justice Schecter, the proper_
_procedure is to write to the A.J. Deborah Kaplan, attaching_
_your ~~application~~ Affirmation._

Sincerely,

_Donna Albe_

Donna M. Albano/Susanna Lee
Court Attorney to Justice Doris Ling-Cohan
J:\Judge_Ling-Cohan\gray sheets & forms\Form Inquiry Letters\form letter updated app term.wpd

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110

NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL 212.763.0883

DIRECT EMAIL rkaplan@kaplanhecker.com

November 21, 2019

VIA OVERNIGHT MAIL

Hon. Doris Ling-Cohan
60 Centre Street, Room 551
New York, NY 10007

Hon. Jennifer G. Schecter
60 Centre Street, Room 626
New York, NY 10007

      Re:    *Carroll v. Trump*, Index No. 160694/2019 (N.Y. Sup. Ct., N.Y. Cty.)

Dear Justices Ling-Cohan and Schecter:

      I write on behalf of Plaintiff E. Jean Carroll in the above-referenced action to confirm whether the Court has processed our Request for Judicial Intervention dated November 8, 2019, which identified this action as related to *Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct., N.Y. Cty.), and attached an affirmation setting forth the reasons for such identification. *See* Doc. Nos. 4 & 5. The public docket does not indicate whether the Court has made a determination of non-relatedness, or whether that issue remains to be determined. I am happy to provide any further information that the Court may require.

      Thank you for your attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc:    Defendant Donald J. Trump
       (via overnight mail to Trump Tower, 725 Fifth Avenue, New York, NY 10022, and
       White House, 1600 Pennsylvania Ave NW, Washington, DC 20500)

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

December 3, 2019

**VIA NYSCEF & OVERNIGHT MAIL**

Hon. Deborah A. Kaplan
Administrative Justice
New York Supreme Court, Civil Branch
60 Centre Street, Room 609
New York, NY 10007

     *Re:*    *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Kaplan:

     I write on behalf of Plaintiff E. Jean Carroll in the above-referenced action to advise the Court that this action is substantially related to another case, *Zervos v. Trump*, Index No. 150522/2017 (Sup. Ct., N.Y. Cty.), which is currently pending before Justice Schechter. The reasons why the two cases are related are set forth in my declaration, attached as Exhibit A hereto.

     An earlier version of this affirmation was filed in connection with a Request for Judicial Intervention ("RJI") on November 8, 2019. We submitted that RJI without notice to Defendant Donald J. Trump because we had been unable to serve him with the summons and complaint, and because it was unclear whether our submission of an *ex parte* application for an order permitting alternative service would prompt assignment of a Justice. After the Court granted the *ex parte* application and Trump was served, Justice Ling-Cohan was assigned to this action.

     On November 21, we wrote to the Court seeking clarification as to whether the Court had processed our RJI and, in fact, determined that *Carroll* and *Zervos* were unrelated. On December 3, Donna M. Albano, Court Attorney to Justice Ling-Cohan, instructed that a submission identifying the two cases as related should be directed to Your Honor. *See* Doc. No. 22. We submit this letter and updated affirmation in accordance with the Ms. Albano's guidance.

KAPLAN HECKER & FINK LLP                                                    2

Thank you for your attention to this matter.


Respectfully submitted,

Roberta A. Kaplan


cc:     Counsel of Record (via NYSCEF)

        Beth Wilkinson, Moira Kim Penza, Jaclyn Delligatti, and
        Meghan Cleary, *Counsel to Summer Zervos* (via email)

Case 1:20-cv-07311-LAK   Document 12-1   Filed 09/14/20   Page 111 of 114

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------

E. JEAN CARROLL,

*Plaintiff*,

-against-

DONALD J. TRUMP, in his personal capacity,

*Defendant*.

--------------------------------------------------------------

Index No. 160694/2019

**AFFIRMATION**

Roberta A. Kaplan, an attorney admitted to practice before the courts of the State of New York, authorized by law to practice in the State of New York, and not a party to this action, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2106:

1.      I am a partner with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiff E. Jean Carroll in the above-captioned action. I am familiar with the facts of this case.

2.      I submit this affirmation to identify the above-captioned action as related to another action, *Summer Zervos v. Donald J. Trump*, No. 150522/2017, currently pending before Justice Jennifer G. Schecter.

3.      On November 8, 2019, I filed a version of this affirmation in connection with a Request for Judicial Intervention without notice to Trump because Carroll had been unable to effect service upon him. *See* Docs. No. 3–4. On the same day, Carroll submitted an *ex parte* application for an order permitting alternative service pursuant to CPLR § 308(5). *See* Docs. No. 5–6. Because the Request for Judicial Intervention identified reasons to assign Justice Schecter to this action, and because Carroll's *ex parte* application for an order permitting alternative service might have led to the assignment of a Justice, we made the two filings concurrent with one another.

4.      The Court granted Carroll's application for an order permitting alternative service on November 12, 2019. *See* Doc. No. 15. Carroll served Trump in accordance with the Court's order on November 13, 2019. *See* Doc. No. 17. Counsel for Trump has since appeared in this action. *See* Doc. No. 19.

5.      For the reasons set forth below, the present action should be deemed related to *Zervos*, and Justice Schecter should be likewise assigned.

6.      Although Justice Schecter was reassigned to the Commercial Division after *Zervos* was filed on January 17, 2017, she has continued to preside over that case in the Civil Branch of the New York Supreme Court, New York County. This action, as with *Zervos*, is properly filed in the Supreme Court's Civil Branch.

7.      "[The] purpose of requiring identification of related actions is to ensure that related proceedings are resolved most expeditiously by assignment to the justice most familiar with the proceedings." *United Cmty. Ins. Co. v. State Farm Fire & Cas. Co.*, 143 Misc.2d 954, 956 (Sup. Ct., N.Y. Cty. 1989).

8.      It is in the interests of both the parties and the Court to assign Justice Schecter to this action, given the similarities between the two cases and the potential administrative demands that they present for the Court.

9.      The defendant, Donald J. Trump, is the same in both cases. He is being sued in his individual capacity by both plaintiffs for similar defamatory statements he made in response to similar—and grave—allegations by both plaintiffs of sexual misconduct. Both cases therefore present similar, and often novel, legal issues.

10.     Indeed, I met and conferred with defense counsel in this action on November 25, 2019, regarding a briefing schedule for Trump's anticipated motion to dismiss. A stipulation

regarding such a schedule was filed with the Court on November 26. *See* Doc. No. 20. According to defense counsel, Trump intends to argue that the statements alleged in Carroll's complaint are not capable of defamatory meaning—the same argument that Trump made, and Justice Schecter considered, in *Zervos. See Zervos v. Trump*, 59 Misc. 3d 790, 798 (Sup. Ct., N.Y. Cty. 2018), *aff'd*, 171 A.D.3d 110 (1st Dep't 2019).

11.     Further, *Zervos* has received significant media attention, and we anticipate that similar attention will be paid to this lawsuit. Indeed, dozens of articles about the *Carroll* complaint were published on the day that it was filed.

12.     Assigning two different Justices to these cases would both amplify the Court's workload unnecessarily and risk conflicting rulings.

13.     Although *Zervos* was assigned to Justice Schecter before she was assigned to the Commercial Division, and the present action would not otherwise satisfy Section 202.70(b) of the Rules of the Commercial Division of the Supreme Court, the two cases are "sufficiently related to justify the assignment of both of them to the same judge," *Place v. Ciccotelli*, 121 A.D.3d 1378, 1379 (3d Dep't 2014), because, as explained above, "the efficient administration of the [C]ourt's business will be advanced thereby," 105 N.Y. Jur. 2d Trial § 8.

Dated: New York, New York
      December 3, 2019

By: _____

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

3