# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

July 17, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York, New York County
111 Centre Street, Room 934
New York, New York 10013

   *Re:* *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty.)

Dear Justice Saunders:

   We write on behalf of Plaintiff E. Jean Carroll to provide the Court with notice of the submission that Summer Zervos made yesterday to the New York Court of Appeals in *Zervos v. Trump*. A copy is attached as Exhibit A. In her submission, Zervos makes clear why *Vance* forecloses Trump's claim to absolute immunity in her case, just as *Vance* forecloses Trump's claim to absolute immunity here.

   We will refrain from responding to the letter that Defendant Donald J. Trump filed in this case yesterday. Although there is much in that letter for us to take issue with, our prior letters explain the ways in which *Vance* rejected the core premises of Trump's claim that he is absolutely immune from civil proceedings in state court, *see* Doc. Nos. 97, 101, and we don't want to further burden the Court with what is starting to look like an endless exchange of correspondence.

          Respectfully submitted,

          Roberta A. Kaplan

cc:  Counsel of Record (via NYSCEF)

# EXHIBIT A



130 West 42nd Street, 24th Floor
New York, New York 10036

WWW.WILKINSONWALSH.COM
———
A LIMITED LIABILITY PARTNERSHIP

July 16, 2020

**<u>VIA FEDERAL EXPRESS</u>**

John P. Asiello, Esq.
Clerk of the Court
New York State Court of Appeals
20 Eagle Street
Albany, New York, 12207
Phone: (518) 455-7770

**Re:    *Zervos v. Trump*, APL-2020-00009, Notice of Supplemental Authority**

Dear Mr. Asiello:

Pursuant to Part 500.6 of the Court's Rules of Practice, we write on behalf of Plaintiff Summer Zervos to provide notice of supplemental authority relating to the above-referenced matter. On July 9, 2020, the Supreme Court of the United States issued its ruling in *Trump v. Vance*, 19-635 (2020), holding that "Article II and the Supremacy Clause do not categorically preclude, or require a heightened standard for, the issuance of a state criminal subpoena to a sitting President." Ex. A, Slip Op. at 1.

*Vance* effectively resolves Defendant's pending appeal before this Court. Defendant has asked this Court to determine whether "the United States Constitution bar[s] a state court from exercising jurisdiction over the President of the United States during his or her term in office." App. Br. at 8 (identifying question presented). Under *Vance*, the answer is no. Slip Op. at 17 ("[W]e cannot conclude that absolute immunity is necessary or appropriate under Article II or the Supremacy Clause.").

Notably, the *Vance* Court reached its holding after rejecting each of the arguments that Defendant has also made in this appeal. For example, President Trump argued in *Vance*—just as he has repeatedly in this case—that he is entitled to absolute immunity because the Supremacy Clause and Article II preclude a state court from exercising jurisdiction over a sitting president. Slip Op. at 10-11; *see also* App. Br. at 5 (arguing that because "the very exercise of jurisdiction by a state court over the President would constitute impermissible 'direct control' over the federal government[,] [s]tate courts therefore may not, consistent with the Supremacy Clause and Article II, exercise jurisdiction over the President while he or she is in office" (citation omitted)). In doing so, the President stressed—just as he has here—that actions that would unquestionably proceed against him in federal court cannot proceed in state court because the different forum "makes all the difference." Slip Op. at 10; *see also* App. Br. at 13 ("The federal judiciary, but not state courts, may exert control over the Executive Branch."); Reply Br. at 4 ("The second dispositive way that federal courts differ from state courts under *Clinton* is that federal courts are empowered to hear cases against the President," but "state courts are not

empowered" to do the same). The Supreme Court disagreed, holding that absolute immunity from the state court proceeding was not "necessary or appropriate under Article II or the Supremacy Clause." Slip Op. at 17.

The *Vance* Court also examined in detail and rejected President Trump's contention in support of his claim for blanket immunity "that complying with state criminal subpoenas would necessarily divert the Chief Executive from his duties." *Id.* at 12. The President premised this argument on the same unfounded and speculative fears that he has offered in this case. *See, e.g.*, Reply Br. at 20-21 (arguing that routine litigation procedures interfere with Defendant's presidential duties). But the Supreme Court disagreed again, confirming that there is no "immunity based on distraction alone." Slip Op. at 12. The Court acknowledged that "Presidents constantly face myriad demands on their attention," but explained such distractions "do not ordinarily implicate constitutional . . . concerns." *Id.* at 13 (citation omitted).[1] It observed that a state court could exercise its authority "if necessary to ensure that such 'interference with the President's duties would not occur,'" *id.* at 21 (citation omitted), just as the lower courts have promised to do here. *See Zervos v. Trump*, 171 A.D.3d 110, 127 (1st Dep't 2019).

The *Vance* case involved a criminal subpoena, but nothing in the Supreme Court's decision limits its analysis to criminal proceedings. To the contrary, the *Vance* Court—as did the courts below here—drew heavily on *Clinton v. Jones*, a civil action, in rejecting the President's claim to categorical immunity in state court. In fact, the *Vance* Court cited *Clinton* no fewer than 10 times in providing its reasoning. Defendant has repeatedly argued in this case that *Clinton v. Jones* either supports his position or, at a minimum, does not resolve the issues at hand. App. Br. at 15 ("The Supreme Court's reasoning in *Clinton v. Jones* has no application to state courts."); Reply Br. at 10 (same). But *Vance*—in its repeated reference to *Clinton's* dispositive impact—holds the exact opposite. Slip Op. at 13 ("Indeed, we expressly rejected immunity based on distraction alone 15 years later in *Clinton v. Jones*."); *id.* at 14 ("We have twice denied absolute immunity claims by Presidents in cases involving allegations of serious misconduct." (citing *Clinton*, 520 U. S., at 685; *Nixon*, 418 U. S., at 687)); *id.* at 15 ("Finally, the President and the Solicitor General warn that subjecting Presidents to state criminal subpoenas will make them 'easily identifiable target[s]' for harassment. But we rejected a nearly identical argument in *Clinton*." (citation omitted)).

Indeed, *Vance*'s applicability here is confirmed by Defendant himself. In opposing Ms. Zervos's request for expedited briefing, Defendant argued that this appeal should proceed in the normal course because doing so "may well provide [the] Court with the benefit of the U.S. Supreme Court's decision in *Trump v. Vance* . . . in which the President is challenging a state

---

[1] On the same day, the Court issued a separate decision in a related case, *Trump v. Mazars USA, LLP*, No. 19-715 (U.S. July 9, 2020). In quashing a Congressional subpoena for President Trump's financial records, the *Mazars* Court reiterated the Court's long-held respect for the unique demands placed on the President. *Mazars* Slip Op. at 17 ("The President is the only person who alone composes a branch of government."). But the decision in *Mazars* was based on federal separation-of-powers considerations, specifically concerns about Congressional overreach. *Id.* at 7-20. *Vance*, by contrast, affirmed the 200 years of precedent establishing that the President's official duties were not unduly burdened by participation in judicial process based on his private conduct. Slip Op. at 14.

prosecutor's subpoena on, among others, Supremacy Clause grounds." Doc. No. 62 at 3. *Vance* has now been decided. It confirms the First Department's decision must be affirmed.

Sincerely,

Beth Wilkinson
Jaclyn Delligatti
WILKINSON WALSH LLP
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Phone: (202) 847-4000
Fax: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
jdelligatti@wilkinsonwalsh.com

Moira Kim Penza
Meghan Cleary
WILKINSON WALSH LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Phone: (929) 264-7765
Fax: (202) 847-4005
mpenza@wilkinsonwalsh.com
mcleary@wilkinsonwalsh.com

*Attorneys for Plaintiff-Respondent*

cc: All counsel of record, via FedEx and Email

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 6 of 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
E. JEAN CARROLL,

                      Plaintiff,                      Index No.:  160694/19

              -against-                    **NOTICE OF WITHDRAWAL/**
                                              **SUBSTITUTION OF**
DONALD J. TRUMP, in his personal capacity,    **<u>COUNSEL</u>**

                      Defendant.
-------------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that Kasowitz Benson Torres LLP are substituted as attorneys

of record for defendant, Donald J. Trump on all matters pertaining to this case, in place and stead

of LaRocca Hornik Rosen & Greenberg LLP.

      Please be advised that all communications, pleadings, and other papers in the above-

captioned action shall be served and forwarded to: Marc E. Kasowitz, Esq., Christine A.

Montenegro, Esq., and Paul J. Burgo, Esq., Kasowitz Benson Torres LLP, 1633 Broadway, New

York, New York 10019.

Dated: New York, New York
       July 24, 2020

                                      **LaROCCA HORNIK ROSEN**
                                      **& GREENBERG LLP**

                                      Patrick McPartland, Esq.
                                      40 Wall Street, 32nd Floor
                                      New York, New York 10005
                                      *Outgoing Attorneys for defendant*
                                      *Donald J. Trump*

To:    Roberta Kaplan, Esq.
       Kaplan Hecker & Fink LLP
       350 Fifth Avenue, Suite 7110
       New York, New York 10118
       *Attorneys for plaintiff*
       *E. Jean Carroll*

Case 1:20-cv-07311-LAK Document 12-12 Filed 09/14/20 Page 7 of 24

Marc E. Kasowitz, Esq.
Christine A. Montenegro, Esq.
Paul J. Burgo, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
*Incoming Attorneys for defendant*
*Donald J. Trump*

2

# KASOWITZ BENSON TORRES LLP

Marc E. Kasowitz
Direct Dial: (212) 506-1710
Direct Fax: (212) 835-5010
MKasowitz@Kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

July 28, 2020

**VIA NYSCEF**

The Honorable Verna L. Saunders
Supreme Court of the State of New York
New York County
111 Centre Street, Room 934
New York, New York 10013

   Re: *Carroll v. Trump*, Index No. 160694/2019 (Sup. Ct., N.Y. Cty).

Dear Justice Saunders:

   I write on behalf of defendant President Donald J. Trump to provide the Court with the President's response to the July 16, 2020 letter to the Court of Appeals from the plaintiff in *Zervos v. Trump*.

Respectfully submitted,

Marc E. Kasowitz

cc: Counsel of Record

# EXHIBIT A

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 10 of 24

# KASOWITZ BENSON TORRES LLP

MARC E. KASOWITZ
DIRECT DIAL: (212) 506-1710
DIRECT FAX: (212) 835-5010
MKasowitz@Kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

July 28, 2020

<u>VIA FEDERAL EXPRESS</u>

John P. Asiello, Esq.
Clerk of the Court
New York State Court of Appeals
20 Eagle Street
Albany, New York 12207

Re:     *Zervos v. Trump*, APL-2020-00009, Response to Notice of Supplemental
Authority

Dear Mr. Asiello:

I write on behalf of defendant-appellant Donald J. Trump to respond to plaintiff-respondent's July 16, 2020 letter to the Court ("Pl. Ltr."), in which she asserts that the U.S. Supreme Court's recent decision in *Trump v. Vance*, 140 S. Ct. 2412 (2020) "effectively resolves Defendant's pending appeal before this Court." (Pl. Ltr. at 1.)

Plaintiff is incorrect. The decision in *Vance* -- holding that "Article II and the Supremacy Clause do not categorically preclude . . . the issuance of a state criminal subpoena to a sitting President," *id.* at 2412 -- does not address, let alone resolve, the issue on this appeal. The issue on this appeal -- the "important constitutional issue[]" the Supreme Court itself first raised but did not resolve in *Clinton v. Jones*, 520 U.S. 681, 690-91, 691 n.13 (1997) -- is whether Article II and the Supremacy Clause preclude state courts from exercising jurisdiction over a sitting President in a civil action.

## I.     The Supreme Court Itself Has Confirmed That *Vance* Does Not Apply to State Civil Actions.

The Supreme Court itself confirmed that *Vance* does not address civil actions. On the same day it handed down *Vance*, the Supreme Court, in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020), which concerned the ability of Congress to issue a subpoena to the President, explicitly described its holding in *Vance* as limited to criminal proceedings:

> Two hundred years ago, it was established that Presidents may be subpoenaed during a federal criminal proceeding, *United States v. Burr*, 25 F.Cas. 30 (No. 14,692d) (CC Va. 1807) (Marshall, Cir. J.),

# KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 2

> and earlier today we extended that ruling to state *criminal* proceedings, *Trump v. Vance* . . . .

*Id.* at 2026 (emphasis added) (citation omitted). The Supreme Court also confirmed in *Mazars* that its holding in *Clinton v. Jones*, 520 U.S. 681 (1997), was limited to civil actions against a sitting President in federal -- not state -- court:

> Nearly fifty years ago, we held that a federal prosecutor could obtain information from a President despite assertions of executive privilege, *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L.Ed.2d 1039 (1974), and more recently we ruled that a private litigant could subject a President to a damages suit and appropriate discovery obligations in *federal* court, *Clinton v. Jones*, 520 U.S. 681 (1997).

*Mazars*, 140 S. Ct. at 2026 (emphasis added).

Moreover, the Supreme Court has made clear that its holdings concerning the amenability of the President to criminal process do not, as plaintiff would have it, extend "in a mechanistic fashion to civil litigation." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 386 (2004). Thus, in holding that the President is entitled to absolute "immunity from damages liability for acts within the 'outer perimeter' of his official responsibility," in *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982), the Supreme Court rejected Justice White's argument in dissent that such immunity was foreclosed by *United States v. Burr*, 25 F.Cas. 30 -- a criminal case, cited extensively by the Supreme Court in *Vance*, 140 S. Ct. at 2425-2427 -- and *United States v. Nixon*, 418 U.S. 68. *Nixon v. Fitzgerald*, 457 U.S. at 782 (White, J., dissenting).[1]

## II. As *Vance* and *Mazars* Confirm, the Reasoning in *Clinton v. Jones* Did Not and Should Not Extend to State Courts.

As *Vance and Mazars* confirm, the reasoning in *Clinton v. Jones*, did not, and should not, extend to state court jurisdiction over civil actions against a sitting President.

First, in *Clinton v. Jones*, the Supreme Court held that, under the Separation of Powers doctrine, federal courts were empowered to exercise jurisdiction over President Clinton in that sexual harassment case arising from his unofficial conduct precisely because it already was firmly established that federal courts were empowered to exercise jurisdiction -- *i.e.*, control --

---

[1]     As Chief Justice Burger put it, "[i]t is one thing to say that a President must produce evidence relevant to a criminal case . . . and quite another to say a President can be held for civil damages for dismissing a federal employee. . . . ." *Nixon v. Fitzgerald*, 457 U.S. at 760, 763 (Burger, J., concurring).

# KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 3

over the President's official conduct.[2]  However, by contrast, state courts, under the Supremacy Clause, are *not* empowered to exercise any jurisdiction or control over the President's official conduct.  *Vance* reaffirms this principle:  because "'States have no power … to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress[,]' [i]t follows that States also lack the power to impede the President's execution of those laws." *See Vance*, 140 S. Ct. at 2425 (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 436 (1819)).

The reason the Supreme Court reached its decision in *Clinton v. Jones* is thus absent with respect to state courts.  Accordingly, because, under the Supremacy Clause, state courts may not exercise jurisdiction over a President's official conduct, they may not do so over his unofficial conduct while he is in office.

Second, *Mazars* also reaffirms that the principal basis for the First Department's decision below -- that *Clinton v. Jones* "unequivocally demonstrates that the presidency and the President are indeed separable," *Zervos v. Trump*, 171 A.D.3d 119, 124 (2019) -- was erroneous:

> The interbranch conflict here does not vanish simply . . . because the President sued in his personal capacity. ***The President is the only person who alone composes a branch of government.*** As a result, there is not always a clear line between his personal and official affairs. "The interest of the man" is often "connected with the constitutional rights of the place." Given the close connection between the Office of the President and its occupant, congressional demands for the President's papers can implicate the relationship between the branches regardless [*sic*] whether those papers are personal or official.

*Mazars*, 140 S. Ct. at 2034 (emphasis added) (citation omitted).[3]  Thus, *Mazars* confirms that, because "[t]he President is the only person who alone composes a branch of government," state courts may not exercise direct control over the President, "simply . . . because the President [is] sued in his personal capacity." *Id.*

Third, the fact that *Vance* cited *Clinton v. Jones*, as plaintiff notes (Pl. Ltr. at 2), does not make the reasoning in *Vance* apply to civil actions.  To the contrary, the fact that *Vance* addressed *Clinton v. Jones* without resolving the "important constitutional issue[]" it raised in that case over civil actions in state court, further demonstrates that reasoning does not apply here.

---

[2]     *See* Brief for Defendant-Appellant ("App. Br."), at 13-18 on this appeal.

[3]     The Supreme Court noted that "a subpoena for personal papers may pose a heightened risk of . . . impermissible purposes," such as harassment. *Mazars*, 140 S. Ct. at 2035.

# KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 4

    *Vance* found that *Clinton v. Jones* resolved only that "distraction alone," and the possibility that Presidents might become "'easily identifiable target[s]' for harassment," do not, in and of themselves, provide a basis for Presidential immunity from a grand jury subpoena. *See Vance*, 140 S. Ct. at 2426-27. However, while those grounds are examples of untoward potential results of exercising jurisdiction over the President, they are ***not*** the basis for temporary Presidential immunity here. The President does not argue that Presidents are entitled to immunity, because, as plaintiff says, "routine litigation procedures interfere with Defendant's presidential duties." (*See* Pl. Ltr. at 2 (citing Reply Brief for Defendant-Appellant ("Reply Br.") at 20-21).) Rather, the President's temporary immunity from state-court jurisdiction in civil actions is based on the structure of the Constitution and the fact that state courts, unlike federal courts, may not exercise direct control over the President in civil actions arising out of official or unofficial conduct. (*See* Reply Br. at 19 (Under the Constitution, "the exercise of jurisdiction itself amounts to impermissible direct control.").)

    Fourth, the Supreme Court has repeatedly recognized that the heightened public interest in criminal matters (such as *Vance*) justifies intrusions on the Executive Branch that would be impermissible in other contexts. *See Nixon v. Fitzgerald*, 457 U.S. at 754 n.37 ("The Court has recognized before that there is a lesser public interest in actions for civil damages than . . . in criminal prosecutions.") (citing *United States v. Gillock*, 445 U.S. 360, 371-73 (1980); *United States v. Nixon*, 418 U.S. at 711-12, 712 n.19); *see also Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 384, 386 (2004) ("[t]he need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*.").

    The Supreme Court applied this very principle in *Mazars*, in which it held that while *criminal* subpoenas may issue against the President, because "'[t]he very integrity of the judicial system' would be undermined without 'full disclosure of all the facts,'" Congress's "interests are not sufficiently powerful to justify access to the President's personal papers when other sources could provide Congress the information it needs." 140 S. Ct. at 2036 (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

    Here, the interest in pursuing this civil action now, as opposed to when the President is no longer in office, is plainly even less compelling than the Congressional interest the Court held was insufficient in *Mazars*. There is no pressing need for a state court to exercise control over a sitting President in a civil action, particularly because the action can be resumed when the President is no longer in office.

    Fifth, plaintiff's assertion that "nothing in the Supreme Court's [*Vance*] decision limits its analysis to criminal proceedings" (Pl. Ltr. at 2) is demonstrably false. Throughout its decision, the Supreme Court based its reasoning on facts unique to criminal proceedings. *See Vance*, 140 S. Ct. at 2422 (discussing history of Presidential compliance with criminal subpoenas in federal court); *id.* at 2426-27 (relying on the fact that President conceded that "state grand juries are free to investigate a sitting President with an eye toward charging him after the completion of his

# KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 5

term"); *id.* (discussing grand jury secrecy rules); *id.* at 2428 (noting limitations on grand jury investigations); *id.* at 2429 (noting heightened public interest in criminal proceedings); *id.* at 2432 (Kavanaugh, J., concurring) ("this case again entails a clash between the interests of the criminal process and the Article II interests of the Presidency").

Sixth, in *Vance*, the Supreme Court recognized that "harassing subpoenas could, under certain circumstances, threaten the independence or effectiveness of the Executive," but found that this threat was sufficiently mitigated by the fact that, among other things, "grand juries are prohibited from engaging in arbitrary fishing expeditions and initiating investigations out of malice or an intent to harass." *Vance*, 140 S. Ct. at 2428 (citations omitted). However, as the Supreme Court has also pointed out, while "[i]n the criminal justice system, there are various constraints, albeit imperfect, to filter out insubstantial legal claims," including the strict ethical constraints on a prosecutor, "there are no analogous checks in the civil discovery process." *Cheney*, 542 U.S. at 386.

Finally, in *Vance*, the Supreme Court declined to bar state prosecutors from subpoenaing the President in criminal matters, because if state criminal proceedings threatened the independence or effectiveness of the Executive, the President would "be entitled to the protection of federal courts," by availing him- or herself of the right, under 42 U.S.C. § 1983, to seek to enjoin the state prosecutor in federal court. *Vance*, 140 S. Ct. at 2428. However, no such relief would be available in state-court civil actions. In a civil action, there is no prosecutor to enjoin, and under Section 1983, federal courts may not issue injunctive relief against either the state-court judge hearing the action (unless there is no right to a state-court appeal or declaratory relief is unavailable) or against private litigants.[4]

---

[4]    *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970) ("Both sides agree that although this federal injunction is in terms directed only at the [party to the action] it is an injunction 'to stay proceedings in a State court.' It is settled that the prohibition of [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties . . . ."); *Ex parte Young*, 209 U.S. 123, 163, 180 (1908) ("[T]he right to enjoin . . . a state official[] [there, an attorney general] from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it . . . . [A]n injunction against a state court would be a violation of the whole scheme of our government."); *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019) (declaratory relief related to state court judge's prior actions not permitted by § 1983); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (prosecutors do not enjoy absolute immunity from declaratory and injunctive relief claims under § 1983); *Peters v. Noonan*, No. 12-CV-234-FPG, 2020 WL 1322573, at *1 (W.D.N.Y. Mar. 20, 2020) ("The Second Circuit has read [section 1983] to preclude both injunctive and declaratory relief against a judicial officer.") (citation omitted); *Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (because plaintiff could have appealed to the First Department, declaratory relief was not "unavailable" under § 1983 so as to permit injunctive relief), *appeal dismissed,* No. 19-365, 2019 WL 3774562 (2d Cir. Aug. 1, 2019).

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 15 of 24

# KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 6

Respectfully submitted,

Marc E. Kasowitz

cc:    Counsel of Record
       *Via Email and Federal Express*

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | **HON. VERNA L. SAUNDERS** | PART | **IAS MOTION 36** |
|---|---|---|---|
| | *Justice* | | |

-------------------------------------------------------------------------------X

E. JEAN CARROLL,

               Plaintiff,

- v -

DONALD TRUMP,

               Defendant.

-------------------------------------------------------------------------------X

**INDEX NO.**     160694/2019

**MOTION SEQ. NO.**     002

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 43, 44, 45, 46, 47, 48, 49, 52, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 97, 98, 101, 102, 105, 106 were read on this motion to/for           **STAY**        .

       Plaintiff, E. Jean Carroll, commenced this defamation action seeking damages stemming from defendant Donald Trump's alleged defamatory statements made in connection with plaintiff's allegations of sexual assault at the hands of defendant.

       Defendant, who is currently serving as President of the United States, moves the court pursuant to CPLR § 2201 seeking a stay of the proceedings pending the decision of the Court of Appeals on defendant's appeal from *Zervos v Trump*, 171 AD3d 110 ( 1st Dept 2019) wherein the Appellate Division, First Department affirmed an order of the Supreme Court, New York County denying defendant's motion seeking a dismissal of the defamation action. In the alternative, defendant seeks a stay of the action on the ground that he is currently sitting as President of the United States.

       Defendant, in sum and substance, argues that this action will not lie if it is barred by the Supremacy Clause of the United States Constitution prohibiting state court subject matter jurisdiction over a sitting United States President. Defendant asserts that this very issue is pending before the Court of Appeals in the *Zervos* action and that when granting leave to appeal, the First Department also granted a stay of those proceedings.[1] Defendant thus claims a stay of the instant proceeding is warranted as the outcome of the *Zervos* action will determine whether this court has jurisdiction over defendant while he is in office. Defendant further argues that New York courts often grant stays pending appeals in other actions where the decision on those appeals resolve a

---

[1] *Zervos v Trump*, 2020 WL 63397, 2020 NY Slip Op 60193(U).

**160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.**
**Motion No.  002**

               **Page 1 of 4**

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 17 of 24

dispositive issue, as is the case here. Defendant contends that due to the unique role of the President under Article II of the Constitution, deference is required, and a stay mandated.

In opposition, plaintiff argues that defendant's motion serves as a further delaying tactic and that stays are reserved for extraordinary circumstances. Plaintiff asserts that no such circumstances exist here where there is binding appellate precedent and the determination of the pending appeal is not imminent. Furthermore, plaintiff contends that defendant's reliance upon case law where a stay was granted pending an appeal in the same action is misplaced. Moreover, plaintiff argues that the constitutional immunity afforded to the President applies to official conduct, not personal or unofficial conduct as is alleged in this case. Plaintiff avers that defendant's engagement in other personal litigation during his presidency undermines the argument that a stay in this action is necessary.

In support of plaintiff's primary contention that a stay is inappropriate where binding appellate authority exists, plaintiff cites to *Miller v Miller*, 109 Misc 2d 982 [Sup Ct, Suffolk County 1981], wherein the court declined to issue a stay pending the Court of Appeals decision as it was bound by the Appellate Court decision and the Court of Appeals decision was not imminent. Plaintiff contends that the cases cited by defendant in support of a stay are easily distinguishable from this action as those matters either involved identical issues and parties; were fully briefed and awaiting oral argument at the time a stay was requested; or, there was no binding appellate authority on point.

In reply, defendant reiterates the arguments advanced in the moving papers and adds that as the *Zervos* appeal will be fully briefed by May 11, 2020 a stay of this action pending the appeal of the *Zervos* case is warranted as its decision will inform jurisdiction of this action.

In the *Zervos* case, this court held that:

"[n]othing in the Supremacy Clause of the United States Constitution even suggests that the President cannot be called to account before a state court for wrongful conduct that bears no relationship to any federal executive responsibility. Significantly, when unofficial conduct is at issue, there is no risk that a state will improperly encroach on powers given to the federal government by interfering with the manner in which the President performs federal functions. There is no possibility that a state court will compel the President to take any official action or that it will compel the President to refrain from taking any official action… [T]here is absolutely no authority for dismissing or staying a civil action related purely to unofficial conduct because defendant is the President of the United States. Resolution of an action unrelated to the President's official conduct is the responsibility of a state court and is not impermissible direct control . . . over the President." (*Zervos v Trump*, 59 Misc 3d 790 [Sup Ct, NY County 2018], internal citations omitted).

160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.                    Page 2 of 4
Motion No. 002

On appeal, the Appellate Division, First Department noted that the *Zervos* action presented a constitutional issue of first impression: "whether the Supremacy Clause of the United States Constitution requires a state court to defer litigation of a defamation action against a sitting President until his terms end." (*Zervos,* supra). Ultimately, the Appellate Division's decision to affirm the Supreme Court's ruling unequivocally resolved this issue holding that pursuant to the United States Supreme Court's decision in *Clinton v Jones,* 520 US 681 [1997] "the presidency and the President are indeed separable" and thus, "the President is presumptively subject to civil liability for conduct that has taken place in his private capacity." (*Zervos,* supra at 124).

At issue here is whether this action should be stayed pending a decision from the Court of Appeals regarding the First Department's decision to affirm this court's ruling on *Zervos*.

Pursuant to CPLR § 2201, which authorizes the granting of a stay "in a proper case, upon such terms as may be just," stays are in the sound discretion of the trial court. However, the First Department has ruled that stays should be exercised "sparingly and only when other remedies are inadequate and the equities invoked apparent and strong." (See generally, *Croker v NY Trust Co.,* 206 AD 11 [1st Dept 1923]). Nevertheless, it is axiomatic that this court is bound by the decisions of the Appellate Division, First Department unless same has been overturned by the Court of Appeals.

In this instance, defendant implores the court to stay this action until the Court of Appeals has ruled on a separate action, arguing that the appeal is fully briefed and thus, imminent. Conversely, plaintiff objects avowing that there is no immediate date set for arguments or likelihood that a decision is imminent and thus, the court is bound by the binding appellate precedent which specifically addresses the issue in contention. While the arguments advanced by both parties are compelling, they have been rendered moot in light of the recent United States Supreme Court decision in *Trump v Vance,* 591 U.S. __, __, 140 S Ct 2412 [2020]. In *Trump v Vance,* the U.S. Supreme Court held that "Article II and the Supremacy Clause do not categorically preclude, or require a heightened standard for, the issuance of a state criminal subpoena to a sitting President." (Slip Op at 1.) The *Vance* Court reasoned that as the Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties, absolute immunity is not necessary or appropriate under Article II or the Supremacy Clause as state courts and prosecutors are expected to observe constitutional limitations and, if they fail to

**160694/2019   CARROLL, E. JEAN vs. TRUMP, DONALD J.**
**Motion No. 002**

Page 3 of 4

3 of 4

do so, federal law allows a President to challenge any constitutional influence. (Slip Op at 17.) While the *Vance* Court's decision permits the issuance of a criminal subpoena to a sitting President, it's analysis and conclusions address the same issues and questions raised by defendant in this action, as well as, the *Zervos* action: whether the Supremacy Clause of the Constitution bars a state court from exercising jurisdiction over a sitting President of the United States during his term. No, it does not. Further, the holding in *Vance* is not limited solely to criminal proceedings. In fact, the *Vance* Court concluded,

> Two hundred years ago, a great jurist of our Court established that no citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding. We reaffirm that principle today and hold that the President is neither absolutely immune from state criminal subpoenas seeking his private papers nor entitled to a heightened standard of need. The "guard[ ] furnished to this high officer" lies where it always has—in "the conduct of a court" applying established legal and constitutional principles to individual subpoenas in a manner that preserves both the independence of the Executive and the integrity of the criminal justice system. (Slip Op at 21, internal citations omitted.)

This court construes the holding in *Vance* applicable to all state court proceedings in which a sitting President is involved, including those involving his or her unofficial/personal conduct. Accordingly, the application for a stay is denied and it is hereby

ORDERED, defendant's motion is denied in accordance with the foregoing; and it is further

ORDERED, that the parties are to appear for a telephonic compliance conference on September 30, 2020 at 11:00 AM; and it is further

ORDERED, that any requested relief not expressly addressed herein has been considered and is hereby denied.

This constitutes the decision and order of the court.

_____August 3, 2020_____                                      _____
                                                             HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | | | | | |
|---|---|---|---|---|---|
| | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.                          Page 4 of 4
Motion No. 002

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 20 of 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E. JEAN CARROLL,

                        *Plaintiff*,

    -against-

DONALD J. TRUMP, in his personal capacity,

                        *Defendant*.

Index No. 160694/2019
Hon. Verna L. Saunders

## NOTICE OF ENTRY

    Please take notice that within is a true and correct copy of the Decision and Order on

Motion of Justice Verna L. Saunders dated August 3, 2020, which was entered in the office of

the Clerk of the County of New York on August 7, 2020.

Dated:  New York, New York
          August 8, 2020

Respectfully submitted,

*[signature]*

Roberta A. Kaplan
Joshua Matz
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
mcraig@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

To: Counsel of Record (by NYSCEF)

Case 1:20-cv-07311-LAK    Document 12-12    Filed 09/14/20    Page 21 of 24

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    <u>HON. VERNA L. SAUNDERS</u> | **PART**        **IAS MOTION 36** |

*Justice*

-------------------------------------------------------------------------------X

**INDEX NO.**      <u>160694/2019</u>

E. JEAN CARROLL,

            Plaintiff,

**MOTION SEQ. NO.**     <u>002</u>

- v -

DONALD TRUMP,

            Defendant.

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 43, 44, 45, 46, 47, 48, 49, 52, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 97, 98, 101, 102, 105, 106

were read on this motion to/for                 **STAY**           .

       Plaintiff, E. Jean Carroll, commenced this defamation action seeking damages stemming from defendant Donald Trump's alleged defamatory statements made in connection with plaintiff's allegations of sexual assault at the hands of defendant.

       Defendant, who is currently serving as President of the United States, moves the court pursuant to CPLR § 2201 seeking a stay of the proceedings pending the decision of the Court of Appeals on defendant's appeal from *Zervos v Trump*, 171 AD3d 110 ( 1st Dept 2019) wherein the Appellate Division, First Department affirmed an order of the Supreme Court, New York County denying defendant's motion seeking a dismissal of the defamation action.  In the alternative, defendant seeks a stay of the action on the ground that he is currently sitting as President of the United States.

       Defendant, in sum and substance, argues that this action will not lie if it is barred by the Supremacy Clause of the United States Constitution prohibiting state court subject matter jurisdiction over a sitting United States President.  Defendant asserts that this very issue is pending before the Court of Appeals in the *Zervos* action and that when granting leave to appeal, the First Department also granted a stay of those proceedings.[1]  Defendant thus claims a stay of the instant proceeding is warranted as the outcome of the *Zervos* action will determine whether this court has jurisdiction over defendant while he is in office.  Defendant further argues that New York courts often grant stays pending appeals in other actions where the decision on those appeals resolve a

---

[1] *Zervos v Trump*, 2020 WL 63397, 2020 NY Slip Op 60193(U).

**160694/2019  CARROLL, E. JEAN vs. TRUMP, DONALD J.**
**Motion No.  002**

Page 1 of 4

Case 1:20-cv-07311-LAK   Document 12-12   Filed 09/14/20   Page 22 of 24

dispositive issue, as is the case here. Defendant contends that due to the unique role of the President under Article II of the Constitution, deference is required, and a stay mandated.

In opposition, plaintiff argues that defendant's motion serves as a further delaying tactic and that stays are reserved for extraordinary circumstances. Plaintiff asserts that no such circumstances exist here where there is binding appellate precedent and the determination of the pending appeal is not imminent. Furthermore, plaintiff contends that defendant's reliance upon case law where a stay was granted pending an appeal in the same action is misplaced. Moreover, plaintiff argues that the constitutional immunity afforded to the President applies to official conduct, not personal or unofficial conduct as is alleged in this case. Plaintiff avers that defendant's engagement in other personal litigation during his presidency undermines the argument that a stay in this action is necessary.

In support of plaintiff's primary contention that a stay is inappropriate where binding appellate authority exists, plaintiff cites to *Miller v Miller*, 109 Misc 2d 982 [Sup Ct, Suffolk County 1981], wherein the court declined to issue a stay pending the Court of Appeals decision as it was bound by the Appellate Court decision and the Court of Appeals decision was not imminent. Plaintiff contends that the cases cited by defendant in support of a stay are easily distinguishable from this action as those matters either involved identical issues and parties; were fully briefed and awaiting oral argument at the time a stay was requested; or, there was no binding appellate authority on point.

In reply, defendant reiterates the arguments advanced in the moving papers and adds that as the *Zervos* appeal will be fully briefed by May 11, 2020 a stay of this action pending the appeal of the *Zervos* case is warranted as its decision will inform jurisdiction of this action.

In the *Zervos* case, this court held that:

"[n]othing in the Supremacy Clause of the United States Constitution even suggests that the President cannot be called to account before a state court for wrongful conduct that bears no relationship to any federal executive responsibility. Significantly, when unofficial conduct is at issue, there is no risk that a state will improperly encroach on powers given to the federal government by interfering with the manner in which the President performs federal functions. There is no possibility that a state court will compel the President to take any official action or that it will compel the President to refrain from taking any official action... [T]here is absolutely no authority for dismissing or staying a civil action related purely to unofficial conduct because defendant is the President of the United States. Resolution of an action unrelated to the President's official conduct is the responsibility of a state court and is not impermissible direct control . . . over the President." (*Zervos v Trump*, 59 Misc 3d 790 [Sup Ct, NY County 2018], internal citations omitted).

160694/2019   CARROLL, E. JEAN vs. TRUMP, DONALD J.                                Page 2 of 4
Motion No. 002

3 of 5

On appeal, the Appellate Division, First Department noted that the *Zervos* action presented a constitutional issue of first impression: "whether the Supremacy Clause of the United States Constitution requires a state court to defer litigation of a defamation action against a sitting President until his terms end." (*Zervos,* supra). Ultimately, the Appellate Division's decision to affirm the Supreme Court's ruling unequivocally resolved this issue holding that pursuant to the United States Supreme Court's decision in *Clinton v Jones,* 520 US 681 [1997] "the presidency and the President are indeed separable" and thus, "the President is presumptively subject to civil liability for conduct that has taken place in his private capacity." (*Zervos,* supra at 124).

At issue here is whether this action should be stayed pending a decision from the Court of Appeals regarding the First Department's decision to affirm this court's ruling on *Zervos.*

Pursuant to CPLR § 2201, which authorizes the granting of a stay "in a proper case, upon such terms as may be just," stays are in the sound discretion of the trial court. However, the First Department has ruled that stays should be exercised "sparingly and only when other remedies are inadequate and the equities invoked apparent and strong." (See generally, *Croker v NY Trust Co.,* 206 AD 11 [1st Dept 1923]). Nevertheless, it is axiomatic that this court is bound by the decisions of the Appellate Division, First Department unless same has been overturned by the Court of Appeals.

In this instance, defendant implores the court to stay this action until the Court of Appeals has ruled on a separate action, arguing that the appeal is fully briefed and thus, imminent. Conversely, plaintiff objects avowing that there is no immediate date set for arguments or likelihood that a decision is imminent and thus, the court is bound by the binding appellate precedent which specifically addresses the issue in contention. While the arguments advanced by both parties are compelling, they have been rendered moot in light of the recent United States Supreme Court decision in *Trump v Vance*, 591 U.S. __, __, 140 S Ct 2412 [2020]. In *Trump v Vance*, the U.S. Supreme Court held that "Article II and the Supremacy Clause do not categorically preclude, or require a heightened standard for, the issuance of a state criminal subpoena to a sitting President." (Slip Op at 1.) The *Vance* Court reasoned that as the Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties, absolute immunity is not necessary or appropriate under Article II or the Supremacy Clause as state courts and prosecutors are expected to observe constitutional limitations and, if they fail to

160694/2019   CARROLL, E. JEAN vs. TRUMP, DONALD J.
Motion No. 002

Page 3 of 4

3 of 5

do so, federal law allows a President to challenge any constitutional influence.  (Slip Op at 17.) While the *Vance* Court's decision permits the issuance of a criminal subpoena to a sitting President, it's analysis and conclusions address the same issues and questions raised by defendant in this action, as well as, the *Zervos* action: whether the Supremacy Clause of the Constitution bars a state court from exercising jurisdiction over a sitting President of the United States during his term.  No, it does not.  Further, the holding in *Vance* is not limited solely to criminal proceedings. In fact, the *Vance* Court concluded,

> Two hundred years ago, a great jurist of our Court established that no citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding.  We reaffirm that principle today and hold that the President is neither absolutely immune from state criminal subpoenas seeking his private papers nor entitled to a heightened standard of need.  The "guard[ ] furnished to this high officer" lies where it always has—in "the conduct of a court" applying established legal and constitutional principles to individual subpoenas in a manner that preserves both the independence of the Executive and the integrity of the criminal justice system. (Slip Op at 21, internal citations omitted.)

This court construes the holding in *Vance* applicable to all state court proceedings in which a sitting President is involved, including those involving his or her unofficial/personal conduct. Accordingly, the application for a stay is denied and it is hereby

ORDERED, defendant's motion is denied in accordance with the foregoing; and it is further

ORDERED, that the parties are to appear for a telephonic compliance conference on September 30, 2020 at 11:00 AM; and it is further

ORDERED, that any requested relief not expressly addressed herein has been considered and is hereby denied.

This constitutes the decision and order of the court.

_____                    _____
**August 3, 2020**                                                    HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |