Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 1 of 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

E. JEAN CARROLL,

                      *Plaintiff*,

 -against-

DONALD J. TRUMP, in his personal capacity,

                      *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 160694/2019

Hon. Verna L. Saunders

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS

Roberta A. Kaplan
Matthew J. Craig
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com
lfisher@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 2 of 26

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

    A. Trump's Initial Delay Tactics in This Case ........................................................ 2

    B. Trump's Personal Jurisdiction Motion and First Request to Stay Discovery ......... 3

    C. Trump's Motion to Stay the Case Entirely............................................................. 5

ARGUMENT .............................................................................................................. 6

    I.    A STAY IS IMPROPER BECAUSE THERE IS A BINDING APPELLATE
        DECISION, WITH NO IMMINENT CHANGE IN LAW ......................................... 7

    II.   UNIQUE CIRCUMSTANCES OF THIS LITIGATION MAKE A STAY
        PARTICULARLY INAPPROPRIATE ...................................................... 11

    A. The Requested Stay Is Yet Another Effort at Delay............................................. 11

    B. Carroll Would Suffer Significant Prejudice If This Case Were Stayed................. 14

    III.  TRUMP'S STATUS AS PRESIDENT DOES NOT ENTITLE HIM TO A STAY  15

    A. The Constitution Does Not Require a Stay Based Simply on Trump's Say-So .... 15

    B. The Presidency and the Public Would Not Suffer Absent a Stay .......................... 17

CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Assenzio v. A.O. Smith Water Prods.*,
No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cty. Aug. 28, 2015)................................ 10

*Belabarodaya v. Carepro of NY, Inc.*,
No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cty. Aug. 1, 2018) ............................ 11

*Belopolsky v. Renew Data Corp.*,
41 A.D.3d 322 (1st Dep't 2007)............................................................................................. 10

*Celle v. Filipino Reporter Enters. Inc.*,
209 F.3d 163 (2d Cir. 2000)................................................................................................... 14

*Clinton v. Jones*,
520 U.S. 681 (1997) ......................................................................................................... *passim*

*Festinger v. Edrich*,
32 A.D.3d 412 (2d Dep't 2006) ............................................................................................. 13

*Golub v. Enquirer/Star Grp., Inc.*,
89 N.Y.2d 1074 (1997) .................................................................................................... 14, 15

*Grisi v. Shainswit*,
119 A.D.2d 418 (1st Dep't 1986) ........................................................................................... 16

*Hala v. Orange Reg'l Med. Ctr.*,
60 Misc. 3d 274 (Sup. Ct., Orange Cty. 2018)........................................................................ 7

*In re Trump*,
781 F. App'x 1 (D.C. Cir. 2019) ............................................................................................ 16

*In re Trump*,
928 F.3d 360 (4th Cir. 2019)...................................................................................... 16, 17, 20

*In re Weinbaum's Estate*,
51 Misc. 2d 538 (Surr. Ct., Nassau Cty. 1966) .................................................................. 7, 8

*Kimmerle v. New York Evening Journal*,
262 N.Y. 99 (1933) ................................................................................................................ 14

*Landmark Ins. Co. v. Virginia Sur. Co.*,
16 Misc. 3d 1140(A), 2007 WL 2727773 (Sup. Ct., N.Y. Cty. 2007)................................ 7, 11

ii

*Level 3 Commc'ns, LLC v. Essex Cty.,*
   54 Misc. 3d 291 (Sup. Ct., N.Y. Cty. 2016)............................................................. 8

*Miller v. Miller,*
   109 Misc. 2d 982 (Sup. Ct., N.Y. Cty. 1981)................................................... 8, 9, 10

*Nixon v. Fitzgerald,*
   457 U.S. 731 (1982) ........................................................................................... 17

*Nixon v. Sirica,*
   487 F.2d 700 (D.C. Cir. 1973) .......................................................................... 16

*OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.,*
   96 A.D.3d 541 (1st Dep't 2012)........................................................................ 10

*People ex rel. Schneiderman v. Coll. Network, Inc.,*
   53 Misc. 3d 1210(A), 2016 WL 6330584 (Sup. Ct., Albany Cty. 2016)........................ *passim*

*Tafflin v. Levitt,*
   493 U.S. 455 (1990) ........................................................................................... 20

*Trump v. Deutsche Bank AG,*
   943 F.3d 627 (2d Cir. 2019)............................................................................... 17

*Trump v. Deutsche Bank AG,*
   --- S. Ct. ---, 2019 WL 6797733 (Mem) (U.S. Dec. 13, 2019) .............................. 16

*Trump v. Mazars USA, LLP,*
   940 F.3d 710 (D.C. Cir. 2019)........................................................................... 17

*Trump v. Mazars USA, LLP,*
   --- S. Ct. ---, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545) ........................ 16

*Trump v. Vance,*
   941 F.3d 631 (2d Cir. 2019)............................................................................... 17

*Trump v. Vance,*
   No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019) (No. 19A640) .................. 16

*Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP,*
   116 A.D.3d 631 (1st Dep't 2014)....................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ............................................................................................... 17

*Zervos v. Trump,*
   59 Misc. 3d 790 (Sup. Ct., N.Y. Cty. 2018) ............................................... 5, 15, 17

iii

*Zervos v. Trump,*
   171 A.D.3d 110 (1st Dep't 2019)...................................................................... 6, 9

**Statutes**

CPLR § 308................................................................................................................ 3

CPLR § 320................................................................................................................ 3

CPLR § 2201........................................................................................................ 7, 16

CPLR § 3120............................................................................................................. 5

CPLR § 3121............................................................................................................. 5

**Secondary Sources**

Beth Reinhard, *New York Writer Who Accused Trump of Sexual Assault Sues Him for
   Defamation*, WASH. POST (Nov. 4, 2019) ............................................................ 3

Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation,*
   NPR (Nov. 4, 2019)............................................................................................... 3

Erica Orden, *Columnist Sues Trump and Says He Defamed Her Over Sexual Assault Claim,*
   CNN (Nov. 4, 2019).............................................................................................. 3

Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book
   7B .............................................................................................................. 7, 8, 16

Robert D. Sack, SACK ON DEFAMATION (5th ed. 2017)........................................ 14, 15

Siegel, N.Y. Prac. (6th ed. 2019) ..................................................................... 7, 8

William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the
   President for Defamation*, USA TODAY (Nov. 4, 2019) ...................................... 3

iv

## PRELIMINARY STATEMENT

In the mid-1990s, Plaintiff E. Jean Carroll was sexually assaulted by Defendant Donald J. Trump in the dressing room of a luxury department store in Manhattan. After Carroll finally gained the courage to speak out, Trump responded with a series of false and defamatory statements, denying not only the assault, but also ever having met Carroll or even knowing who she was. Carroll filed this action to redress the injuries Trump's defamation caused and to vindicate her good name and reputation through a public airing of the truth.

Trump, for his part, has done everything he can to stop the truth from ever coming out. When the case began, he refused to accept service of the Complaint, forcing Carroll to seek leave to serve him through alternative means. Next, he filed a motion to dismiss based on the specious argument that he is not subject to jurisdiction in New York, just so that he could ask that discovery be halted. When that effort failed, Carroll served formal discovery requests on Trump, including one seeking a cheek swab for DNA to be compared against unidentified male DNA on the dress that Carroll wore during the attack. Not surprisingly, mere days after receiving the DNA request, Trump filed the instant motion to stay this action pending a decision in *Zervos v. Trump*—a case that he previously claimed was so different from this one that they should not be assigned to the same judge. Indeed, while Trump's takes on this case and *Zervos* have been remarkably inconsistent (even contradictory), Trump deserves credit for consistently doing everything possible to avoid discovery about and a jury determination of his conduct in both cases.

But this latest effort to stop Carroll's action in its tracks is too little, too late. The law is clear that stays are a drastic remedy reserved for extraordinary circumstances. The mere pendency of a separate appeal that could result in a change of law is insufficient, particularly where, as here, there is binding precedent on point and resolution of the appeal is by no means imminent. The

unique circumstances of this case make a stay all the more inappropriate: Trump's motion is just the latest attempt to prevent Carroll from having her day in court, and a stay would compound the harms to Carroll that Trump's defamatory statements continue to cause. Trump's status as president does not automatically entitle him to a stay either, and nothing in Trump's extensive history of personal litigation during his presidency supports his bald assertion that discovery into whether he lied about raping Carroll will harm the national interest.

## BACKGROUND

### A. Trump's Initial Delay Tactics in This Case

Within hours of the time Carroll's Complaint was posted on the NYSCEF website, Trump responded to this lawsuit through a statement issued by a spokesperson. The statement called Carroll's allegations "false" and "frivolous," suggested that "since [Carroll's] book did not make any money she's trying to get paid another way," and labeled Carroll a "fraud." Doc. No. 6 ¶ 6.

Although he was willing to double down on his defamation in the media, Trump has sought to stymie Carroll's quest for a day in court from the very beginning. After filing her Complaint, Carroll attempted to effect service of process on Trump at his long-time residence at Trump Tower in New York. A process server went to Trump Tower on four different occasions, at different times, and building staff and Secret Service agents blocked each attempt at service. *Id.* ¶¶ 7–12. On one occasion, a Secret Service agent informed the process server that they "had been instructed not to allow process servers" to effect service. *Id.* ¶ 9. Another process server was warned that if he tried to leave papers with the Trump Tower concierge, he would not be permitted to leave the building, and another was told that "papers have to go to DC." *Id.* ¶¶ 11–12. Yet when Carroll attempted to effect service of process at the White House, a Secret Service agent there turned the process server away. *Id.* ¶ 13.

Counsel for Carroll also reached out to Kasowitz Benson Torres LLP to see if they could accept service on Trump's behalf. (Kasowitz Benson has represented Trump in other actions and filed formal appearances in this action just moments before filing the instant motion to stay.) When contacted in November, however, the firm said they could not provide any assistance. *Id.* ¶ 14.

Carroll thus found herself in the confounding position of having to seek permission to make alternative service on a defendant who had already commented on the lawsuit to millions of Americans.[1] After Carroll briefed her motion and submitted evidence in support, the Court (Ling-Cohan, J.) found that standard methods of service had proven "impracticable" and issued an order pursuant to CPLR § 308(5) permitting service on Trump by alternative means. Doc. No. 15. Carroll successfully served Trump on November 13, 2019, making his response to the Complaint due on December 13. *See* Doc. No. 17; CPLR § 320(a).

### B. Trump's Personal Jurisdiction Motion and First Request to Stay Discovery

Even after he was served, however, Trump's efforts to slow this action did not end. On November 26, Trump requested a significant extension of time to respond to the Complaint. Trump's counsel represented that Trump intended to move to dismiss for failure to state a claim on the theory that Trump's statements about Carroll were not defamatory. *See* Doc. No. 24 ¶ 10; Doc No. 34 ¶ 6. In the interest of professional courtesy, Carroll acquiesced in Trump's request. Under the parties' stipulated briefing schedule, Trump was not required to file his moving papers

---

[1] *See, e.g.*, Beth Reinhard, *New York Writer Who Accused Trump of Sexual Assault Sues Him for Defamation*, WASH. POST (Nov. 4, 2019), https://www.washingtonpost.com/politics/new-york-writer-who-accused-trump-of-sexual-assault-sues-him-for-defamation/2019/11/04/8ab2afb0-fcf7-11e9-9534-e0dbcc9f5683_story.html; William Cummings, *Columnist E. Jean Carroll, Who Alleges Trump Raped Her, Sues the President for Defamation*, USA TODAY (Nov. 4, 2019), https://www.usatoday.com/story/news/politics/2019/11/04/trump-sued-defamation-e-jean-carroll/4155674002/; Erica Orden, *Columnist Sues Trump and Says He Defamed Her Over Sexual Assault Claim*, CNN (Nov. 4, 2019), https://www.cnn.com/2019/11/04/politics/e-jean-carroll-trump-lawsuit-defamation/index.html; Colin Dwyer, *Columnist Who Accused Trump of Sexual Assault Is Suing Him for Defamation*, NPR (Nov. 4, 2019), https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation.

until January 14, 2020, and his motion would not be returned until March 5. Doc. No. 20.

Once the briefing schedule for the motion to dismiss was in place, the Court (Ling-Cohan, J.) issued a Preliminary Conference Order that set forth various discovery deadlines and made clear that the "filing of a dispositive motion, including a Motion to Dismiss, will not stay discovery." Doc. No. 27 at 2. The Order also required the parties to hold a telephone call to discuss the possibility of settlement before discovery would commence. *Id.*

Carroll's counsel initiated the requisite settlement call on January 3, 2020, thereby paving the way for formal discovery into the relevant facts. Kaplan Aff. ¶ 3. That same day—almost two weeks *before* the motion deadline that Trump had insisted he needed—Trump brought a motion to dismiss by order to show cause. Doc. No. 28. Rather than argue that Carroll had failed to state a claim, Trump submitted a five-page memorandum of law devoted exclusively to the argument that he was no longer subject to personal jurisdiction in New York because he had resided in the White House for the past three years. Doc. No. 33. Trump included in his proposed order a condition that the "discovery deadlines set forth in the Court's [Preliminary Conference] Order" be stayed pending a decision on Trump's motion to dismiss. Doc. No. 35 at 2.

Because Trump had failed to seek an appropriate time, date, and place to make his application and seek a stay, *see* Doc. No. 36 at 2, Carroll rushed to file an opposition just one business day later. Carroll argued that no stay was warranted given black-letter law that doomed Trump's motion on the merits: a plaintiff in New York is not required to plead the basis for personal jurisdiction, and Trump's temporary residence in Washington, D.C. has no legal bearing on his status as a lifelong New York domiciliary. Doc. No. 34 ¶¶ 11–14. Carroll further noted that, if anything, questions about Trump's amenability to suit in New York would necessitate discovery into Trump's extensive contacts with New York, rather than justify delaying it. *Id.* ¶ 15.

4

The Court agreed. On the same day that Carroll submitted her opposition, the Court (Ling-Cohan, J.) denied Trump's motion to dismiss. It held that Trump had provided no judicially cognizable evidence to support dismissal and that there was "no basis" for a stay of discovery. Doc. No. 36 at 2.

### C. Trump's Motion to Stay the Case Entirely

Following the denial of Trump's motion to dismiss, Carroll sought to move this action forward. On January 10, 2020, Carroll served a set of merits-related document requests pursuant to CPLR § 3120, and on January 30, Carroll served a notice pursuant to CPLR § 3121 for a "buccal, blood or skin cell sample from Defendant sufficient for DNA analysis and comparison against unidentified male DNA present on the dress that Plaintiff wore during the sexual assault at issue in this action." Ex. 1 to Kaplan Aff. Carroll attached to her DNA request a forensic report evidencing that there was DNA on the dress suitable for comparison. *Id.*

On January 23, 80 days after the Complaint was filed, and when the first deadlines for Trump to respond to discovery requests were imminent, Trump's counsel suggested for the first time that Trump was fully immune from suit in state court and that discovery should be stayed pending a decision by the Court of Appeals' in *Zervos v. Trump*. In that case, Summer Zervos claims that Trump lied when he denied having sexually assaulted her in 2007. 59 Misc. 3d 790, 791 (Sup. Ct., N.Y. Cty. 2018). Early in the litigation, Trump moved to dismiss Zervos's complaint on the ground that the president is immune from all state court actions, no matter their content, while in office. *Id.* at 795. On March 20, 2018, the court (Schecter, J.) denied Trump's motion, holding that state courts, like federal courts, may exercise jurisdiction over a sitting president sued for tortious unofficial conduct. *Id.* On March 14, 2019, the First Department agreed, holding that the Supremacy Clause "does not provide a basis for immunizing the President from state court

5

civil damages actions." *Zervos v. Trump*, 171 A.D.3d 110, 114 (1st Dep't 2019). Throughout this time, for more than a year a half, discovery in *Zervos* proceeded unabated. *See, e.g.*, Ex. 2 to Kaplan Aff. (discovery stipulation in *Zervos*); Ex. 3 to Kaplan Aff., at 1 (letter from B. Wilkinson to Court of Appeals Clerk of Court).

On November 18, 2019, Trump moved for reargument or, in the alternative, leave to appeal the First Department's *Zervos* decision to the Court of Appeals. Ex. 4 to Kaplan Aff. (Notice of Motion). He also requested a stay of that case pending reargument or appeal. *Id.* Although the First Department denied Trump's motion for leave to reargue, on January 7, 2020, it did grant him leave to appeal to the Court of Appeals. Ex. 5 to Kaplan Aff. (First Department order). It simultaneously entered a stay of the remaining discovery in *Zervos*, consisting only of depositions. *Id.*; Ex. 3 to Kaplan Aff.

When Trump raised the prospect in late January of halting this case pending the decision in *Zervos*, Carroll stated that she could not voluntarily agree to putting off the entirety of these proceedings. Kaplan Aff. ¶ 6. In an effort to be constructive, however, Carroll offered to wait to take Trump's deposition until the completion of all other discovery in this case (including a deposition of Carroll that Trump noticed on January 23, 2020) and, in the event that other discovery were completed before the Court of Appeals ruled in *Zervos*, to raise the matter of Trump's deposition with this Court prior to proceeding. *Id.* ¶¶ 5–6.

Trump, however, rejected that proposed accommodation. *Id.* After Carroll served her request for a DNA sample, the parties conferred on a briefing schedule for the stay motion that Trump had resolved to file. *See* Doc. No. 38. Just days later, three Kasowitz Benson partners entered formal appearances, and Trump filed the instant motion. Docs. No. 40–43.

## ARGUMENT

Trump's motion to stay this case pending the Court of Appeals' decision in *Zervos* is his

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 12 of 26

latest effort to impede the progress of Carroll's suit and avoid turning over discovery that would help prove her claims.

Although CPLR § 2201 permits "a stay of proceedings in a proper case, upon such terms as may be just," courts recognize that a "stay of an action can easily be a drastic remedy, on the simple basis that justice delayed is justice denied." *Hala v. Orange Reg'l Med. Ctr.*, 60 Misc. 3d 274, 280 (Sup. Ct., Orange Cty. 2018), *aff'd*, 178 A.D.3d 151 (2d Dep't 2019). Therefore, courts will not exercise their discretion to stay a case "unless the proponent shows good cause for granting it," *id.*, which requires "some excellent reason . . . to a halt a litigant's quest for a day in court," *Landmark Ins. Co. v. Virginia Sur. Co.*, 16 Misc. 3d 1140(A), 2007 WL 2727773, at *7 (Sup. Ct., N.Y. Cty. 2007). *See also In re Weinbaum's Estate*, 51 Misc. 2d 538, 539 (Surr. Ct., Nassau Cty. 1966) (explaining that court's discretion to stay a case "will be exercised sparingly and only when other remedies are inadequate and the equities involved are apparent and strong"); Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR 2201:7; Siegel, N.Y. Prac. § 255 (6th ed. 2019).

Trump cannot meet that burden here. *First*, it is well established that courts should generally not stay a case pending an appeal in another action, particularly where there is a binding appellate decision on point and no imminent change in the governing law. *Second*, unique circumstances present here—including Trump's consistent pattern of delay, and the harm that a stay would cause to a defamation plaintiff like Carroll—make a stay all the more inappropriate. *Third*, Trump's gestures to his status as president and a hypothetical burden to his office do nothing to swing the equities in his favor.

## I.     A STAY IS IMPROPER BECAUSE THERE IS A BINDING APPELLATE DECISION, WITH NO IMMINENT CHANGE IN LAW

Because the First Department's decision in *Zervos* remains binding upon this Court, and a

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 13 of 26

decision from the Court of Appeals is far from imminent, a stay of proceedings pending Trump's appeal in a different action would be improper.

"It is axiomatic that this Court is bound by the determination of the Appellate Division, First Department . . . and it must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date." *People ex rel. Schneiderman v. Coll. Network, Inc.*, 53 Misc. 3d 1210(A), 2016 WL 6330584, at *4  (Sup. Ct., Albany Cty. 2016); *accord In re Weinbaum's Estate*, 51 Misc. 2d at 539 ("[A] trial court must follow the last decision of the controlling appellate court and it may not hold in abeyance an adjudication pending a change in the law which may occur at some future date."); Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR 2201:11 ("The mere fact that the case that may enunciate the dispositive rule of law is before an appellate court is not sufficient to warrant the stay."); Siegel, N.Y. Prac. § 255 (6th ed. 2019) (same). Therefore, a stay pending appeal in another action "should be done sparingly," *Level 3 Commc'ns, LLC v. Essex Cty.*, 54 Misc. 3d 291, 292 (Sup. Ct., N.Y. Cty. 2016), and at a minimum requires that the decision in the other action be "imminent," *Miller v. Miller*, 109 Misc. 2d 982, 983 (Sup. Ct., N.Y. Cty. 1981).

*Miller* is particularly instructive. There, the defendant moved for a stay pending the Court of Appeals' decision on the constitutionality of a New York statute. *Id.* at 982. Because the Appellate Division had already rejected the defendant's constitutional argument in a prior case, the Supreme Court denied the stay request, concluding it was bound to follow the binding decision of the appellate court. *See id.* at 983. *Miller* further explained that a stay pending appeal "should only be done where decision is imminent," taking into consideration "when was the appeal taken, when arguments are to be heard, and when a decision is forthcoming." *Id.* at 983. The court

8

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 14 of 26

emphasized that to do otherwise would force "the unfortunate litigant [to] pay for . . . appeals unnecessarily," given binding appellate authority in her favor. *Id.* In *Miller*, no decision was imminent, and therefore, a stay was clearly inappropriate. *Id.*; *see also Schneiderman*, 2016 WL 6330584, at *6 (declining to stay proceedings pending a parallel appeal addressing the applicable statute of limitations on plaintiffs' fraud claim because a binding Appellate Division decision had decided the issue).

Here, a stay of proceedings is similarly inappropriate. As in *Miller* and *Schneiderman*, there is a binding Appellate Division decision directly on point, holding that Trump is not immune from suit in state court for his unofficial tortious conduct. *See Zervos*, 171 A.D.3d at 114. This fact alone is sufficient to dispose of Trump's motion to stay: where there is a governing appellate decision, courts "must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date." *Schneiderman*, 2016 WL 6330584, at *7; *accord Miller*, 109 Misc. 2d at 983.

But that's not all. Here, a decision from the Court of Appeals in *Zervos* is far from imminent. *See Miller*, 109 Misc. 2d at 983. Briefing in *Zervos* before the Court of Appeals will not be completed until May 11, 2020, and given the Court of Appeals' summer recess, oral argument will likely not occur until the fall of 2020, at the earliest. N.Y. Court of Appeals, Notice to the Bar (June 24, 2019)[2]; *see also* Ex. 6 to Kaplan Aff., at 1 (letter from Court of Appeals directing that *Zervos* "will proceed in the normal course of briefing and argument").

The cases on which Trump relies are easily distinguished. *See* Trump Mem. at 11–12. First, Trump cites several cases in which there was no binding appellate authority on point. *See Uptown Healthcare Mgmt., Inc. v. Rivkin Radler LLP*, 116 A.D.3d 631 (1st Dep't 2014); *OneBeacon Am.*

---

[2] https://www.nycourts.gov/ctapps/news/nottobar/nottobar062419.pdf.

*Ins. Co. v. Colgate-Palmolive Co.*, 96 A.D.3d 541 (1st Dep't 2012); *Belopolsky v. Renew Data Corp.*, 41 A.D.3d 322 (1st Dep't 2007); *Assenzio v. A.O. Smith Water Prods.*, No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cty. Aug. 28, 2015). If there were, the courts in *Uptown Healthcare*, *OneBeacon*, *Belopolsky*, and *Assenzio* would have been required to rule the other way. *See Miller*, 109 Misc. 2d at 982–83; *Schneiderman*, 2016 WL 6330584, at *6.

Second, all of these cases, with the exception of *Assenzio*,[3] considered stays pending resolution of a parallel action between substantially identical parties sharing a common dispute; they did not consider a stay pending an appeal of an action between different parties with different claims. In *OneBeacon*, for example, the First Department affirmed a stay pending resolution of a parallel action in another state, in part because the "issues, relief sought, and parties in the two actions [were] substantially *identical*." 96 A.D.3d at 541 (emphasis added); *see also Uptown Healthcare*, 116 A.D.3d at 631 (upholding stay pending related federal district court action); *Belopolsky*, 41 A.D.3d at 322 (upholding stay pending resolution of previously commenced related action with "overlapping issues and common questions of law and fact"). But there is no such identity of the parties and claims here—as Trump himself has insisted. *See* Doc. No. 25 at 2 (arguing that this case and *Zervos* are "separate defamation cases—which involve different plaintiffs, different alleged statements that were made in different places, at different times, and in different contexts").

Finally, Trump points to *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cty. Aug. 1, 2018), a class action relating to compensation for home

---

[3] *Assenzio* arose in a unique procedural posture. There, the plaintiffs requested a stay of their deadline to make a post-trial submission. *Assenzio*, 2015 WL 5283301, at *1. A jury had already rendered a verdict, and all that remained was a potential post-trial stipulation relating to the amount of the jury's award. *Id.* A stay in such circumstances hardly delayed the plaintiffs' quest for a day in court. A stay here, by contrast, would be far more prejudicial to Carroll, as it would deprive her of any opportunity to move her action forward beyond the pleadings and would expose her to ongoing harm.

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 16 of 26

healthcare workers. In that case, the appeal "ha[d] been fully briefed before the Court of Appeals and [was] awaiting a date for oral argument," and would bear on the basic question of who was properly among the class of plaintiffs. *Id.* at *2. Here, by contrast, briefing before the Court of Appeals will not be completed for several months, the summer recess means that oral argument will be pushed back even further, and there is no question that Carroll and Trump are the proper parties to this dispute. What is more, neither *Belabarodaya* nor any of Trump's other authorities involved the unique considerations discussed in Section II below.

## II.    UNIQUE CIRCUMSTANCES OF THIS LITIGATION MAKE A STAY PARTICULARLY INAPPROPRIATE

### A.  The Requested Stay Is Yet Another Effort at Delay

Trump's motion should be denied for the further reason that it is dilatory and reflects nothing more than his latest effort to impermissibly delay Carroll's "quest for a day in court." *Landmark Ins. Co.*, 2007 WL 2727773, at *4; *see Schneiderman*, 2016 WL 6330584, at *5 (courts must consider whether "the stay is designed to delay proceedings").

As set forth above, this motion is just the latest example in a clear pattern of delay in this litigation. Trump obstructed the progress of this action from the outset by forcing Carroll to seek authorization for an alternative method of service to move forward. Doc. No. 6. ¶¶ 7–14; Doc. No. 15. Almost two weeks after he was served, Trump requested a prolonged briefing schedule on a straightforward motion to dismiss for failure to state a claim. Doc. No. 20; Doc. No. 24 ¶ 10. Once it was clear that discovery would nevertheless commence, Trump abandoned his anticipated motion and filed a hasty (and meritless) motion to dismiss for lack of personal jurisdiction. Doc. Nos. 28, 33. He coupled that new motion with a proposed order staying all discovery pending a decision regarding his amenability to suit in New York—ignoring the Court's prior determination that a stay upon such a motion was unwarranted. Doc. Nos. 27–28. After the Court denied his

11

motion to dismiss and Carroll served discovery requests for Trump's DNA and relevant documents, Trump filed the instant motion, his second attempt to obtain a stay in this case.

The dilatory nature of Trump's latest filing is underscored by the fact that Trump has never pressed a presidential immunity defense in this action before now. In sharp contrast to *Zervos*, Trump made no mention of presidential immunity in connection with his proposed or filed motions to dismiss.[4] The first, and only mention, of an immunity defense before this Court appeared in a footnote to the stipulated briefing schedule for this motion. Doc. No. 38 at 2 n.1. In other words, Trump is making the extraordinary request that this Court halt progress in Carroll's case based on the appeal of an issue he has not formally asserted in this litigation. Counsel is unaware of any case permitting a stay in such circumstances.

Trump's foot-dragging has been a reliable feature of his litigation strategy across other cases as well. In *Zervos*, after the First Department granted Trump leave to appeal, Summer Zervos sought to expedite review before the Court of Appeals given Trump's "repeated efforts . . . to delay th[e] action." Ex. 3 to Kaplan Aff., at 1 (letter to Court of Appeals describing how Zervos defended against numerous pretrial motions and six stay requests while making every effort to complete discovery on schedule). Zervos proposed that the Court of Appeals utilize its alternative review procedure to decide the single issue presented based on the more than 300 pages of substantive briefing in the lower courts or, in the alternative, that it set a schedule for expedited briefing and an argument no later than the Court of Appeals' March 2020 session. *Id.* at 1–2. Trump resisted Zervos's efforts to secure a prompt resolution, contending that "[t]here is no urgency to the appeal"

---

[4] Had Trump succeeded on his motion to dismiss for lack of personal jurisdiction, diversity jurisdiction would have allowed this case to proceed in federal court, where even Trump would agree presidential immunity would not apply. *See Clinton v. Jones*, 520 U.S. 681, 710 (1997) (holding President is not immune from suits during his presidency in federal district court for unofficial tortious conduct).

and "no reason to expedite it." Ex. 7 to Kaplan Aff., at 2 (letter from M. Kasowitz to Court of Appeals Clerk of Court). Trump's position stood not only to delay progress in that action, but also to maximize the length of any stay granted in this action as well.

Trump's shifting characterizations of the relationship between this case and *Zervos* are further evidence of his gamesmanship. Months ago, at the outset of the case, Carroll requested that this case be assigned to Justice Schechter, who presides over *Zervos*. Doc. No. 24. Carroll recognized that both cases present a similar fact pattern concerning Trump's response to the allegations of his victims and suggested that judicial economy would be achieved by having a single judge preside over the two cases. *Id.*; *see Clinton*, 520 U.S. at 708 (explaining that even though the president is not immune from suit over conduct committed in his personal capacity, courts should nonetheless manage litigation in a way that minimizes interference with presidential duties).

Trump resisted having *Zervos* and this action deemed related, characterizing them as "separate defamation cases—which involve different plaintiffs, different alleged statements that were made in different places, at different times, and in different contexts . . . [and] are 'unrelated' *in every respect*, except that the defendant is President Trump and the claims are for defamation." Doc. No. 25 at 2 (emphasis added). Trump succeeded in his opposition, and the cases were not marked as related. *See* Ex. 8 to Kaplan Aff. The only explanation for Trump's shift in perspective regarding *Zervos* is opportunism—an approach to litigation that implicates the judicial estoppel doctrine's prohibition against switching positions just because a litigant's interests have changed. *See Festinger v. Edrich*, 32 A.D.3d 412, 413 (2d Dep't 2006). This Court should not countenance Trump's attempt to capitalize on *Zervos*'s new procedural posture to serve his dilatory ends.

13

## B.  Carroll Would Suffer Significant Prejudice If This Case Were Stayed

To decide whether to grant a stay pending an appeal, courts must consider whether "any prejudice will result from granting or denying a stay." *Schneiderman*, 2016 WL 6330584, at *5. Given the nature of Carroll's claim, staying this case would expose Carroll to ongoing harms.

In many business disputes or personal injury actions, monetary damages provide only retroactive compensation for past harm, and thus a stay may simply result in the delay of an exchange of money between the parties. The prejudice of a stay to a defamation plaintiff like Carroll, however, is much greater. The gravamen of an action alleging defamation is an injury to reputation, "expos[ing] an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induc[ing] an evil opinion of one in the minds of right-thinking persons, and depriv[ing] one of confidence and friendly intercourse in society.'" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. New York Evening Journal*, 262 N.Y. 99, 102 (1933)); *see also Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997) (defamation "expose[s] a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community"). Defamatory words "can cause severe and lasting harm" and can continue to cause harm unless and until a plaintiff has her opportunity to prove the falsity of the statements before a jury. Robert D. Sack, SACK ON DEFAMATION § 10:1, at 10-2 (5th ed. 2017) (hereinafter "*Sack on Defamation*").

That is the exact scenario in which Carroll now finds herself. Carroll's career success is inextricably tied to her popular, long-running advice column, "Ask E. Jean." Trump's defamatory comments about Carroll have damaged her reputation, upon which she depends to attract readers, and have diminished her readership's goodwill towards her. Doc. No. 2 ¶¶ 133–34. Since Trump

14

defamed her, some readers even stopped sending her letters altogether, thus impairing Carroll's column, which requires a steady flood of compelling letters to which she can respond. *Id.* ¶ 134. In the months of July, August, and September 2019, following Trump's smearing her reputation, Carroll received roughly 50 percent fewer letters than she received during the same period in 2018. *Id.* And the damages stemming from Trump's defamatory comments continue to accumulate: *Elle* magazine, which published "Ask E. Jean" for 26 years, declined to renew her contract in December 2019, and so ended her primary income. Ex. 9 to Kaplan Aff.

Through this action, Carroll does not only seek compensation for the injuries she had suffered as of the time of filing. She also seeks "a vindication of . . . her reputation in the form of a court's declaration that [Trump's] statement was false and defamatory." *Sack on Defamation*, at 10-7. To grant a stay under these circumstances would unnecessarily delay Carroll's opportunity to obtain that redress and compound the harm to which Trump's defamation has made her exposed.

## III.    TRUMP'S STATUS AS PRESIDENT DOES NOT ENTITLE HIM TO A STAY

In his moving papers, Trump does not seriously grapple with any of the circumstances discussed above. Instead, he suggests that his mere status as president justifies a stay, and warns of a burden to the presidency and the public without any reasoning or factual support.

### A. The Constitution Does Not Require a Stay Based Simply on Trump's Say-So

Trump appears to contend that courts must always grant a stay requested by a president based on an amorphous conception of "constitutionally required deference." Trump Mem. at 2. To support this assertion, however, Trump offers nothing more than a string cite of inapposite cases, all of which arose in a distinct procedural posture, and none of which purport to abandon generally

15

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 21 of 26

applicable standards in favor of a rule commanding stays based on "deference."[5] *See id.* (citing *Trump v. Mazars USA, LLP*, --- S. Ct. ---, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545); *Trump v. Deutsche Bank AG*, --- S. Ct. ---, 2019 WL 6797733 (Mem) (U.S. Dec. 13, 2019) (No. 19A640); *Trump v. Vance*, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019); *In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019); *In re Trump*, 928 F.3d 360, 364 (4th Cir. 2019); *Nixon v. Sirica*, 487 F.2d 700, 721 (D.C. Cir. 1973); *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019)).

More specifically, all the cases that Trump cites were stayed pending an appeal *in the same case. See* Trump Mem. at 12. In such circumstances, a stay at the trial court level does not stay the action entirely, but rather ensures that a single action does not proceed simultaneously on two tracks. The question in such cases is not whether the case proceeds *at all*, but rather *where* the case shall proceed—that is, before the appellate court, the trial court, or both. Here, by contrast, Trump seeks to stay Carroll's action full stop, delaying all litigation until some unspecified time in the future. Different considerations and different statutes govern these distinct scenarios, and the standard for staying a case pending a determination in a separate action is, unsurprisingly, far more stringent. *Compare Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986) (decision whether "trial and disposition of cases [should] be deferred routinely pending appellate review of interlocutory orders . . . is, for the most part, a matter of discretion"), *with Schneiderman*, 2016 WL 6330584, at *6 (courts "must not hold an adjudication in abeyance, or impede the course of litigation, pending a change in the law which may occur at some future date"). *See generally*

---

[5] The notion of a constitutionally required stay was soundly rejected in *Zervos*. 59 Misc. 3d at 797 ("A lengthy and categorical stay is not justified based on the possibility that, at a moment's notice, the President may have to attend to a governmental or international crisis. If and when he does, of course, important federal responsibilities will take precedence.").

16

Patrick M. Connors, 2012 Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B,

CPLR 2201:4 ("CPLR 2201 Stay Distinguished from Other Stays").

*Mazars*, *Deutsche Bank*, and *Vance* further illustrate this crucial difference. *See* Trump

Mem. at 12. Each of these cases was stayed pending appeal of a denial of a preliminary injunction.

*Trump v. Mazars USA, LLP*, 940 F.3d 710, 718 (D.C. Cir. 2019), *cert. granted*, 140 S. Ct. 660

(2019); *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), *cert. granted*, 140 S. Ct.

660 (Mem) (2019); *Trump v. Vance*, 941 F.3d 631, 636–37 (2d Cir. 2019), *cert. granted*, 140 S.

Ct. 659 (Mem) (2019). An appeal of a determination whether to grant a preliminary injunction is

inherently tied to the ultimate merits determination. *See Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20 (2008). It often makes little sense for two courts to consider the merits of a singular

dispute simultaneously, and a stay may be the only practical way to proceed.

Rather than substantiate a constitutional right to a stay, Trump's authorities concern distinct

procedural postures to which different standards apply. They therefore have little to no bearing on

the stay requested here.

### B.  The Presidency and the Public Would Not Suffer Absent a Stay

Trump also argues that the "balance of equities" favors a stay. Trump Mem. at 12. But

Trump fails to address any of the equities favoring Carroll as part of his purported "balancing,"

*see supra*, Section II, and offers no support for the claim that discovery would "distract" him from

his public duties "'to the detriment of not only [himself] and his office but also the Nation.'" *Id.*

(quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)); *see Clinton v. Jones*, 520 U.S. 681, 702

(1997) (rejecting president's argument that denial of immunity for unofficial tortious acts would

lead to unduly burdensome litigation).

17

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 23 of 26

It is telling that Trump cannot point to any evidence that personal-conduct litigation burdens the presidency, given that he has litigated extensively in his personal capacity over the last three years while president. Once again, the *Zervos* case is instructive. There, Trump filed multiple motions for a stay, insisting that further proceedings would burden his performance of official duties. Early in that case, Trump made the exact argument he makes here: that a stay was "warranted given the significant risk that th[e] action will interfere with the President's executive responsibilities to the detriment of the public." Ex. 10 to Kaplan Aff., at 17 (Memorandum of Law). Trump's stay efforts in *Zervos* were rebuffed by both the Supreme Court and the First Department, *see* Ex. 3 to Kaplan Aff., and none of the risks of which Trump warned has ever materialized. *Zervos* proceeded without incident or effect on the presidency for almost three years, during which time the parties exchanged documents and litigated discovery disputes. Only when the First Department granted leave to appeal to the Court of Appeals on January 7, 2020, was a stay ultimately entered. But at that point, discovery in *Zervos* was nearly complete, and only depositions remained. In other words, neither the Supreme Court nor the First Department ever saw fit to halt discovery entirely, and the First Department sanctioned the exact outcome Carroll would agree to here: discovery proceeds, but Trump's deposition is put off until later in the action.

Perhaps even more importantly, *Zervos* is but one example of personal-conduct litigation against Trump during his presidency. *See Galicia v. Trump*, No. 24973/2015E (N.Y. Sup. Ct., Bronx Cty.); *Jacobus v. Trump*, No. 24973/2015E (Sup. Ct., New York Cty.); *Nwanguma v. Trump*, No. 16 Civ. 247 (W.D. Ky.); *Clifford v. Trump*, No. 18 Civ. 6893 (C.D. Cal.); *Doe v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y.); *Johnson v. Trump*, No. 19 Civ. 0475 (M.D. Fla.). Trump points to no discernible encumbrances that these other cases have imposed on Trump's official conduct either. In fact, Trump did not litigate presidential immunity in any of these

18

Case 1:20-cv-07311-LAK    Document 14-54    Filed 09/15/20    Page 24 of 26

actions—undercutting any claim of serious burden on his official duties and underscoring the dilatory nature of his suspiciously timed stay motion here.[6] Trump cannot be permitted to cherry-pick the instances in which he invokes presidential immunity, especially where, as here, he invokes it solely for purposes of delay.[7]

*Zervos* and the other state court actions confirm the weakness of Trump's immunity argument on the merits as well. These cases differ from *Clinton* in only one respect: they were brought in state, not federal, court. But that does not change the clear force of the Supreme Court's logic. In *Clinton*, President Bill Clinton claimed that he was categorically immune from civil suit for the duration of his time in office, even when it concerned unofficial conduct unconnected to his presidency. 520 U.S. at 694–97. The Supreme Court explained that presidential immunity from suit extends to official acts, principally to "avoid rendering the President unduly cautious in the discharge of his official duties." *Id.* at 694 (internal quotation marks omitted). But the Court unanimously rejected any comparable immunity for unofficial conduct, to which the same concerns did not apply. *See id.* The Supreme Court emphasized that "we have never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity," and that the rationale for immunity "provides no support for an immunity for *unofficial* conduct." *Id.* at 694. The same remains true in state court.

---

[6] As noted in Trump's brief, Trump Mem. at 10, Trump did argue that he should not be required to sit for a deposition in *Galicia*. Doc. No. 397, No. 24973/2015E (Sup Ct., Bronx Cty. Aug. 22, 2019). But Trump did not claim presidential immunity from state court litigation, and discovery in that case took place over years without any discernable burden on Trump's official conduct. As explained above, Carroll is not opposed to putting off Trump's deposition until a later date.

[7] The suggestion that the "public interest" favors a stay fails for the same reason. Trump Mem. at 12–13. In addition, and more importantly, the public interest is not enhanced by permitting a president, accused of a violent sexual assault and having defamed his accuser, to avoid litigation simply because he is afraid of what discovery will reveal.

19

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 25 of 26

Trump relies heavily on the fact that *Clinton* did not involve a state court action, and that different arguments might be available in such a case. But he offers little explanation why that distinction is likely to matter, nor does he meaningfully press the arguments that *Clinton* reserved. The Supreme Court in *Clinton* noted that it had no occasion to address whether a president might invoke distinct "federalism and comity" grounds in state court with more success, *id.* at 691, then clarified that such arguments might have force where a state court attempted to exert "direct control" over a president, *id.* at 691 n.13. Nowhere in his motion here does Trump explain how any of the prior state litigation he has faced resulted in such "direct control," nor does he explain why the concerns he raises cannot be addressed by giving wide berth to his presidential responsibilities as this particular case proceeds.

Instead, Trump's stay motion rests entirely on the premise that *any* exercise of state court jurisdiction whatsoever is tantamount to interfering with Trump's faithful execution of federal law. *See* Trump Mem. at 7. But *Clinton* undercuts this argument; it carefully distinguished the minimal "burden on the President's time and energy that is a mere byproduct" of a straightforward civil suit from court orders that impose a "direct burden" on the president or "invalidation of his official actions." 520 U.S. at 705. Trump's history of personal-conduct ligation—and the lack of any detriment to the Nation as a result—only confirms the correctness of the Supreme Court's determination.

That is not to say that Trump's current status as president should be ignored entirely. In rejecting Clinton's overbroad assertion of presidential immunity, the Supreme Court saw "no reason to assume that the district courts will be either unable to accommodate the President's needs or unfaithful to the tradition—especially in matters involving national security—of giving 'the utmost deference to presidential responsibilities.'" *Id.* at 409 There is every reason to place similar

20

Case 1:20-cv-07311-LAK   Document 14-54   Filed 09/15/20   Page 26 of 26

trust in this Court. *Cf. Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (noting that the Supreme Court "ha[s] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States"). And Carroll herself has been mindful that some special consideration is due in litigation involving a sitting president. Most notably, Carroll offered to defer Trump's deposition until after the Court of Appeals issues a decision in *Zervos* or seek leave of the Court. Such an accommodation would have addressed any concerns that Trump might identify, yet Trump, consistent with his dogged focus on delaying this action, rejected the accommodation out of hand.

## CONCLUSION

For the foregoing reasons, the Court should deny Trump's motion to stay.

Dated: New York, New York
     February 18, 2020

By: _____

Roberta A. Kaplan
Matthew J. Craig
Louis W. Fisher
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mcraig@kaplanhecker.com
lfisher@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

21