Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 1 of 25

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x

E. JEAN CARROLL,                              :   Index No. 160694/2019
                                              :
                    Plaintiff,                :   Hon. Verna L. Saunders
                                              :
           - against-                         :   Mot. Seq. No. 002
                                              :
DONALD J. TRUMP,                              :
                                              :
                    Defendant.                :
                                              :
------------------------------------------- x

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR A STAY

KASOWITZ BENSON TORRES LLP

Marc E. Kasowitz
Christine A. Montenegro
Paul J. Burgo
1633 Broadway
New York, New York 10019
(212) 506-1700

LAROCCA HORNIK ROSEN &
GREENBERG LLP

40 Wall Street, 32nd Floor
New York, New York 10005
(212) 530-4822

*Attorneys for Defendant,*
*President Donald J. Trump*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 6

I.   THE FIRST DEPARTMENT'S DECISION IN *ZERVOS*, SUPPORTS, RATHER
     THAN BARS, A STAY HERE. .................................................................... 7

    A.   This is a "Proper Case" for a Stay of Proceedings Under CPLR § 2201 ............... 7

    B.   The First Department's Decisions in *Zervos* Supports a Stay Here ...................... 7

II.  THERE ARE NO "UNIQUE CIRCUMSTANCES" HERE TO JUSTIFY
     DENYING A STAY. ................................................................................... 10

    A.   There Has Been No Undue Delay ...................................................................... 10

    B.   A Stay Will Irreparably Harm the President and the Public Interest. ................... 12

    C.   A Stay Will Not Prejudice Plaintiff. ................................................................. 15

III. PLAINTIFF DOES NOT REBUT THE "UNIQUE CIRCUMSTANCES" HERE. ........ 16

    A.   The Appeal in *Zervos* Without Question Has Merit. ........................................ 16

    B.   Plaintiff Concedes that the President is Entitled to Judicial Deference ................ 17

CONCLUSION ...................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Artibee v. Home Place Corp.*,
28 N.Y.3d 739 (2017) ................................................................................11

*Assenzio v. A.O. Smith Water Prods.*,
No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) .........................8, 9

*Behrens v. Pelletier*,
516 U.S. 299 (1996)................................................................................17

*Belabarodaya v. Carepro of NY, Inc.*,
No. 152534/2018, 2018 WL 3733304 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) ........................1, 8

*Broadway 500 W. Monroe Mezz II LLC v. Transwestern Mezzanine Realty Partners II, LLC*,
80 A.D.3d 483 (1st Dep't 2011) ................................................................4, 15

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004)........................................................................ *passim*

*Clifford v. Trump*,
339 F. Supp.3d 915 (C.D. Cal. 2018) .................................................................14

*Clinton v. Jones*,
520 U.S. 681 (1997)........................................................................ *passim*

*Crawford-El v. Britton*,
523 U.S. 574 (1998)................................................................................17

*Feinstein v. Bergner*,
48 N.Y.2d 234 (1979) ................................................................................10

*Fin. Indus. Regulatory Auth., Inc. v. Fiero*,
10 N.Y.3d 12 (2008) ................................................................................11

*Goldstone v. Gracie Terrace Apartment Corp.*,
110 A.D.3d 101 (1st Dep't 2013) .................................................................15

*Grisi v. Shainswrit*,
119 A.D.2d 418 (1st Dep't 1986) .................................................................7, 9

*Jacobus v. Trump*,
55 Misc.3d 470 (Sup. Ct., N.Y. Cnty. 2017 .................................................................6, 14

ii

*Jones v. Clinton*,
    No. 95-1167, BL-62 (8th Cir. Apr. 16, 1996) .................................................................19

*In re Level 3 Commc'ns, LLC v. Essex Cnty.*,
    54 Misc.3d 291 (Sup. Ct., Essex Cnty. 2016) ...................................................................9

*Miller v. Miller*,
    109 Misc.2d 982 (Sup. Ct., Suffolk Cnty. 1981) ...........................................................2, 8, 9

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ........................................................................................................13

*People v. Shakur*,
    215 A.D.2d 184 (1st Dep't 1995) .....................................................................................8

*Pludeman v. Northern Leasing Systems*,
    No. 101059/04, 2015 WL 7008051 (Sup. Ct., N.Y. Cnty. Mar. 13, 2015) ..........................9

*Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online*,
    8 Misc.3d 820 (Sup. Ct., N.Y. Cnty. 2005) ....................................................................16

*In re Reynders v. Conway*,
    79 A.D.2d 863 (4th Dep't 1980) .......................................................................................8

*Rinaldi v. Viking Penguin, Inc.*,
    52 N.Y.2d 422 (1981) ....................................................................................................15

*Trump v. Deutsche Bank AG*,
    140 S.Ct. 660 (U.S. Dec. 13, 2019) ...........................................................................18, 19

*Trump v. Mazars USA, LLP*,
    --- S.Ct. ----, 2019 WL 6328115 (U.S. Nov. 25, 2019) ................................................18, 19

*Trump v. Vance*,
    941 F.3d 631 (2d Cir. 2019) ...........................................................................................17

*Trump v. Vance*,
    No. 19-3204, 2019 WL 5703884 (2d Cir. Oct. 7, 2019) ...........................................17, 18, 19

*United States v. Nixon*,
    418 U.S. .......................................................................................................................18

*In re Weinbaum's Estate*,
    51 Misc.2d 538 (Surr. Ct., Nassau Cnty. 1966) ..............................................................8

*Williams v. Brooks*,
    996 F.2d 728 (5th Cir. 1993) ..........................................................................................18

iii

**Other Authorities**

CPLR § 2201..................................................................................................................6, 7

CPLR § 3211(e)..................................................................................................................11

iv

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 6 of 25

Defendant Donald J. Trump respectfully submits this memorandum of law in reply to plaintiff's memorandum of law in opposition to his motion to stay pending the appeal in *Zervos v. Trump* ("Pl. Mem." or "Opposition") and in further support of the motion.[1]

## PRELIMINARY STATEMENT

The threshold dispositive issue in this case is identical to the issue on appeal to the Court of Appeals in *Zervos* -- whether a state court's exercise of jurisdiction over the President while he or she is in office is permissible under the U.S. Constitution.  *See Clinton v. Jones*, 520 U.S. 681, 690-91, 691 n.13 (1997) (state court jurisdiction over the President poses an "important constitutional issue[]").  As President Trump showed in his opening memorandum, just as a stay pending that appeal was granted by the First Department in *Zervos*, so, too, a stay should be granted here.

Plaintiff does not and cannot refute President Trump's showing.  Instead, plaintiff resorts to mischaracterizations of the law and of the record.  Plaintiff asserts that the motion should be denied because, she claims, this Court is bound by the First Department's 3-2 decision on the merits in *Zervos*.  (Pl. Mem. 8.)  That is not so.  Courts, including this Court, have repeatedly recognized -- including where there is binding Appellate Division authority -- that "[i]f the point of law involved in the case, and potentially dispositive of it, is about to be definitively decided in another case presently on appeal before a court whose decisions bind the trial court, the action may be stayed to await the decision."  *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018,

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning given to them in President Trump's opening memorandum of law ("Def. Mem.").  Submitted herewith in support of the motion is the reply affirmation of Marc E. Kasowitz, dated February 27, 2020 ("Kasowitz Reply Aff.").  References to "Reply Ex. __" are to exhibits to that affirmation.  The affirmation of Roberta Kaplan, dated February 18, 2020, submitted in opposition to the motion is referred to as "Kaplan Aff."

2018 WL 3733304, at *1 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) (citation omitted).

The cases that plaintiff cites (Pl. Mem. 8) are wholly inapposite. Among other things, in those cases, unlike here: the Appellate Division had not stayed proceedings pending appeal in the separate action; the party seeking the stay would not be irreparably harmed if the action continued; there was no claim of official immunity; and the President, who is entitled to deference under the U.S. Constitution, was not seeking the stay. Indeed, plaintiff's "reliance on cases that do not involve [the President] is altogether misplaced." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385 (2004).

Plaintiff's contention that this Court may not stay the action pending the *Zervos* appeal because it is bound by the First Department's decision in *Zervos* thus makes no sense. Not only is the First Department decision set to be reviewed by the Court of Appeals, but the First Department itself decided to grant a stay in *Zervos* pending that same appeal. There is no principled reason, and plaintiff offers none, why this Court should not be bound by *that* First Department decision or why a stay is appropriate in *Zervos*, but not here, where precisely the same threshold issue is at stake.

Plaintiff also contends (Pl. Mem. 8) that a stay may be granted pending an appeal in another case only when the decision on the appeal is "imminent." But, in the single case to which plaintiff cites that denied a stay on this ground, *Miller v. Miller*, 109 Misc.2d 982, 983 (Sup. Ct., Suffolk Cnty. 1981), there was no appeal even pending; only a motion for leave to appeal had been filed, but not granted. Here, by contrast, leave to appeal and a stay pending appeal have been granted in *Zervos*, and the appeal will be fully briefed by May 11, 2020. Neither *Miller* nor any other case holds or even suggests that, under such circumstances, a stay pending an appeal on a threshold dispositive issue is not justified.

2

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 8 of 25

Plaintiff claims that "unique circumstances of this litigation" -- defendant's supposed "dilatory" behavior and plaintiff's purported prejudice from a stay -- make a stay here inappropriate. Again, that is not so. Plaintiff's complaints about delay (Pl. Mem. 11-13) are, apart from irrelevant, unfounded. Cutting through the verbiage, plaintiff appears to complain about the time it took to serve the complaint, but she filed her complaint on November 4, 2019, and served it only seven business days later. She also complains about the President's order to show cause to dismiss on jurisdictional grounds, but admits that he filed it two weeks before the agreed upon date for moving to dismiss, that she responded the next business day, and that the Court declined to sign the order the same day. (Pl. Mem. 3-4.) Plaintiff also falsely asserts that this motion to stay was in response to and an attempt to avoid a discovery request she served on January 30, 2020 (Pl. Mem. 1, 6), but she omits that she already knew, a week before, on January 23, when defendant's counsel asked her counsel to consent to this motion, which was filed promptly after the First Department granted leave to appeal and a stay in *Zervos* (*id.* at 5, 6; Kaplan Aff. ¶ 6, Ex. 1). In fact, it would be more accurate to say that plaintiff timed her discovery request so that she could make that false assertion. In short, there has been no undue delay here.[2]

Second, as in *Zervos*, the necessity for a resolution of this threshold jurisdictional issue under the U.S. Constitution -- which, the First Department recognized, is an issue of "first

---

[2]    Plaintiff also makes misstatements concerning *Zervos*. She asserts, for example, that there, the First Department granted the stay pending appeal, when only depositions remained to be completed. (Pl. Mem. 6.) This is not so; there are numerous outstanding issues from the parties concerning document production as well as outstanding third-party document subpoenas. *See, e.g.*, Kasowitz Reply Aff. ¶ 5; *Zervos v. Trump*, Index. No. 150522/2017 NYSCEF Doc. No. 249 (discussing forthcoming privilege motion); Kaplan Aff. Ex. 3 at 2 n.2 (referring to remaining "fact discovery" other than depositions). Plaintiff also refers (Pl. Mem. 12-13) to the *Zervos* plaintiff's request to the Court of Appeals to expedite the appeal -- but omits to mention that the Court of Appeals *denied* that request (Kaplan Aff. Ex. 6).

impression," *Zervos*, 171 A.D.3d at 113 -- is a "unique consideration" far outweighs any burden on plaintiff resulting from allowing the Court of Appeals to decide the issue (Def. Mem. 11-13).

As for prejudice, plaintiff cannot show -- indeed, her own admissions belie her claim -- that a stay would result in any significant burden. She asserts conclusorily that the allegedly defamatory statements are causing her continuing harm, including that *Elle* magazine to decline to renew her contract to write a column. (Pl. Mem. 14-15.) Even if that were true, and *Elle* magazine's publisher and other sources cited by the *New York Times* deny it,[3] by February 20, 2020, she had already, as she admitted to the *Times*, "received inquiries from four other publications asking if she would consider writing for them." (Kasowitz Reply Ex. A.) Plaintiff's claim that her alleged harm was continuing and compounding was always far-fetched, to say the least, but is refuted by her own words.

In any event, the supposedly continuing harm that plaintiff claims is irrelevant to this motion. Plaintiff seeks damages for the alleged harm to her reputation. Where the claimed injury "can be compensated by damages [it] therefore cannot demonstrate irreparable harm" so as to warrant equitable relief. *Broadway 500 W. Monroe Mezz II LLC v. Transwestern Mezzanine Realty Partners II, LLC*, 80 A.D.3d 483, 484 (1st Dep't 2011). If, as plaintiff claims, allegations of ongoing harm to reputation are so prejudicial that a court cannot grant a stay, then defamation actions could never be stayed, but plaintiff does not and cannot point to a single case in support of that erroneous proposition, and *Zervos* itself would not have been stayed.

---

[3]    *See* Kasowitz Reply Ex. A (Katherine Rosman and Jessica Bennett, *What Happened Between E. Jean Carroll and Elle Magazine?*, NEW YORK TIMES (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/style/ejean-carroll-fired-elle.html (citing sources attributing *Elle* magazine's termination to plaintiff's decision to publish excerpts from her book in another magazine, a decision at which, plaintiff admits, *Elle* was "extremely disappointed.").)

4

If there is a "unique circumstance" here, it is that the President is involved. Plaintiff fails to refute defendant's showing (Def. Mem. 7-11) that -- given the novel threshold official immunity issue claim on appeal in *Zervos* and the deference afforded the President's overriding responsibilities under Article II -- the U.S. Constitution mandates a stay here. Plaintiff asserts that "the Constitution does not require a stay based simply on Trump's say-so" (Pl. Mem. 15), but the requested stay here is required, not based on his "say-so," but on the "say-so" of numerous cases, including the First Department's decision granting a stay pending appeal in *Zervos*, and the U.S. Constitution (Def. Mem. 8-11).

Plaintiff seeks to distinguish the numerous cases that have granted Presidents stays pending appeal (Def. Mem. 9-10) on the ground that, in those cases, the appeals were pending in the same case. (Pl. Mem. 16.) That is a distinction without a difference. The stays in those cases were granted to prevent proceedings in the trial courts from abrogating the very relief the President sought to vindicate on appeal and to prevent an unnecessary "occasion for constitutional confrontation" with the Executive Branch, *Cheney*, 542 U.S. at 389-90 (citation omitted). A stay here would serve precisely the same purposes.

And, while plaintiff concedes, as she must, that the courts are constitutionally required to afford the President deference, plaintiff contends that this action should nonetheless proceed because state courts can accommodate the President in overseeing litigation. (Pl. Mem. 20-21.) That misses the point. The threshold issue in this case, which the Court of Appeals will resolve in *Zervos*, is not whether state courts can accommodate the President once they have asserted jurisdiction over him or her, but whether the very exercise of jurisdiction over the President by state courts is constitutionally permissible in the first place. (Def. Mem. 7-8.) The issue on this motion, on the other hand, is whether deference to the President mandates a stay while the Court

Case 1:20-cv-07311-LAK Document 14-71 Filed 09/15/20 Page 11 of 25

of Appeals resolves that threshold issue. As shown, and as numerous courts have held, it does. (Def. Mem. 9-10.)

Having no valid argument to oppose the President's motion, plaintiff argues that the motion should be denied because, she asserts, he "did not litigate presidential immunity" in six other cases against him. (Pl. Mem. 18-19.) Plaintiff's argument, even if it otherwise had any merit (and it does not), is completely misleading. Four of the six cases plaintiff cites are in federal court, where there can be no claim of presidential immunity, as the U.S. Supreme Court held in *Clinton v. Jones*, while recognizing that state court actions might very well present a "more compelling case." 520 U.S. 681, 691 (1997). And, as to the two state court cases plaintiff refers to: *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., Bronx Cnty.) was filed over a year before President Trump took office, the President *did* assert presidential immunity, and the First Department stayed the action pending the President's appeal, on constitutional grounds, among others, from an order compelling the President's trial deposition. *Jacobus v. Trump*, 55 Misc.3d 470, 486 (Sup. Ct., N.Y. Cnty. 2017), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017), *lv. denied*, 31 N.Y.3d 903 (2018) was dismissed before the President took office. Moreover, even in the federal actions -- in *every single federal court action* plaintiff cites -- the court granted the President stays of discovery, including on the ground that the President is owed judicial deference.

Accordingly, the President's motion for a stay should be granted.

## **ARGUMENT**

Plaintiff does not and cannot refute the President's showing that, under the U.S. Constitution, the caselaw, and CPLR § 2201, a stay is mandated here pending resolution by the Court of Appeals in the *Zervos* action of precisely the same threshold jurisdictional issue that is

6

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 12 of 25

dispositive here.  Each of the arguments plaintiff does make is based on a fundamental

misunderstanding of the law or the facts or both.

## I.    THE FIRST DEPARTMENT'S DECISION IN *ZERVOS*, SUPPORTS, RATHER THAN BARS, A STAY HERE.

### A.    This is a "Proper Case" for a Stay of Proceedings Under CPLR § 2201.

As the First Department has recognized, a stay pending the appeal in *Zervos* "provides

for the opportunity for appellate review of certain orders" -- a "fundamental right[] to which a

litigant is entitled . . . [which] cannot be ignored, no matter how pressing the need for the

expedition of cases."  *Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986).  That applies to

any litigant and, *a fortiori* to the President in deference to the President's overriding

responsibilities under Article II of the Constitution.

### B.    The First Department's Decisions in *Zervos* Supports a Stay Here.

Plaintiff asserts that, under New York law, a stay would be "improper" here because this

Court is bound by decisions of the Appellate Division -- here, the First Department's 3-2

decision on the merits in *Zervos*.  (Pl. Mem. 7-8.)  But it was the First Department which, after

that decision, decided to grant leave to appeal the decision and granted a stay pending that

appeal.  Under plaintiff's own logic, this Court should, if anything, be bound by the First

Department's stay order here.[4]

But, in any event, by granting the stay, this Court would not contravene the First

Department's decision on the merits.  Rather, it would merely wait for the decision of the Court

of Appeals on the merits -- a decision which is binding on all New York courts.[5]

---

[4]    Plaintiff cannot cite to a single case in which a party was denied a stay pending appeal in a separate action where -- as here -- the proceedings in the separate action were themselves stayed by an appellate court.

[5]    This was the procedural posture in cases cited by the President in his initial memorandum, which granted stays pending appeals in separate actions despite Appellate

Indeed, plaintiff's argument proves too much. All Appellate Division decisions are binding on all trial courts (absent a contrary decision in the Court of Appeals or in the Department in which the trial court sits). *See People v. Shakur*, 215 A.D.2d 184 (1st Dep't 1995) ("Trial courts within this department must follow the determination of the Appellate Division in another department until such time as this court or the Court of Appeals passes on the question."). Thus, under plaintiff's argument, a trial court would never be empowered to grant a stay pending any appeal to the Court of Appeals because the Appellate Division decision appealed from would be binding. As shown (Def. Mem. 11), that is not the law.

The cases plaintiff cites are readily distinguishable, and none supports her argument. (Pl. Mem. 8.) First, in none of those cases did the appellate court in the separate action stay proceedings pending appeal, as the First Department did in *Zervos*.[6] Second, in none of those cases would the movants have been irreparably harmed absent a stay.[7] Third, none of those

---

Division authority. (Def. Mem. 11.) *See In re Reynders v. Conway*, 79 A.D.2d 863, 864 (4th Dep't 1980) ("court had the power to stay petitioners['] . . . action until the [separate] appeal was argued in the Court of Appeals"); *Belabarodaya v. Carepro of NY, Inc.*, No. 152534/2018, 2018 WL 3733304, at *1 (Sup. Ct., N.Y. Cnty. Aug. 1, 2018) (staying discovery until the Court of Appeals resolved a joint appeal from two binding Second Department decisions) (internal quotations omitted); *Assenzio v. A.O. Smith Water Prods.*, No. 190008/12, 2015 WL 5283301 (Sup. Ct., N.Y. Cnty. Aug. 28, 2015) (granting stay pending appeal in Appellate Division that itself would turn on the outcome of an appeal in the Court of Appeals in a third separate action).

[6]     In *Schneiderman*, 53 Misc.3d 1210(A), 2016 WL 6330584, the case plaintiff relies most heavily on (Pl. Mem. 9), it is clear that the appellant in the separate action, did *not* seek or obtain a stay pending appeal. (Reply Ex. C (Order of First Department granting leave to appeal in *Trump Entrepreneur Initiative* without granting a stay); NYSCEF Doc. No. 285, Stipulated Briefing Schedule for Motion to Compel, *In re People ex rel. Schneiderman v. Trump Entrepreneur Initiative LLC*, index No. 451463/2013 (indicating that the case continued during the pendency of the appeal to the Court of Appeals).

[7]     Here because the issue on appeal will resolve the threshold issue of whether the court's very assertion of jurisdiction violates the President's constitutional right of immunity, and prevent a constitutional confrontation, the President, and the public, would be irreparably harmed absent a stay. (Def. Mem. 11-12.) Plaintiff's cases involve no such threshold constitutional issue. *See Schneiderman*, 53 Misc.3d 1210(A), 2016 WL 6330584 at *7 (defendant in summary proceeding denied stay pending appeal in separate action that would determine whether some of

8

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 14 of 25

cases involved the President and therefore plaintiff's reliance on them is "altogether misplaced," *see Cheney*, 542 U.S. at 385.

Plaintiff also contends (Pl. Mem. 8) that a stay may be granted pending an appeal in another case only when the decision on the appeal is "imminent." But, in the single case to which plaintiff cites that denied a stay on this ground, *Miller*, 109 Misc.2d at 983, there was no appeal even pending; only a motion for leave to appeal had been filed, but not granted. Here, by contrast, leave to appeal and a stay pending appeal have been granted in *Zervos* and the appeal will be fully briefed by May 11, 2020. Neither *Miller* nor any other case holds or even suggests that, under such circumstances, a stay pending appeal on a threshold dispositive issue is not justified. To the contrary, where, as here, the equities are strong or the appeal will have a "significant impact" on a case, it is irrelevant whether the appeal is imminent. *See Assenzio*, 2015 WL 5283301, at *2 (staying proceedings even though appeal in separate action was not "imminent" because it would have a "significant impact" on the case); *Pludeman v. Northern Leasing Systems*, No. 101059/04, 2015 WL 7008051, *2 (Sup. Ct., N.Y. Cnty. Mar. 13, 2015) (granting stay pending an unperfected appeal because "'the equities involved [were] apparent and strong'" in avoiding a waste of judicial and party resources).

---

plaintiff's claims were valid); *Miller v. Miller*, 109 Misc.2d 982, 983 (Sup. Ct., Suffolk Cnty. 1981) (defendant denied stay pending potential appeal, which had not yet been granted leave, in separate action that would determine whether defendant was required to provide financial disclosure affidavit); *In re Weinbaum's Estate*, 51 Misc.2d 538, 539 (Surr. Ct., Nassau Cnty. 1966) (court denied stay pending appeal involving whether claim against administratrix requiring an accounting was time-barred). In *In re Level 3 Commc'ns, LLC v. Essex Cnty.*, 54 Misc.3d 291, 293 (Sup. Ct., Essex Cnty. 2016), the plaintiff was *granted* a stay pending appeal to the Appellate Division in a separate action, based on the chance that Appellate Division would overturn its own prior "binding authority," on whether plaintiff had properly asserted a claim for a tax refund.

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 15 of 25

And, contrary to plaintiff (Pl. Mem. 10), whether the parties are substantively identical and share a common dispute has no bearing on whether a stay pending an appeal in another action should be granted, and no case holds that it does. As shown, the applicable standard here focuses on whether there is a common, dispositive issue. (Def. Mem. 11-12.)

## II. THERE ARE NO "UNIQUE CIRCUMSTANCES" HERE TO JUSTIFY DENYING A STAY.

Having failed to establish why a stay is not appropriate under relevant case law, plaintiff asserts that there are "unique considerations" justifying denial under these circumstances. (Pl. Mem. 11.) However, none of these so-called "unique circumstances" withstands scrutiny.

### A. There Has Been No Undue Delay.

Plaintiff's complaints about delay (Pl. Mem. 11-13) are, apart from irrelevant, unfounded.

Cutting through the verbiage, plaintiff appears to complain about the time it took to serve the complaint, but she filed her complaint on November 4, 2019, and served it only seven business days later on November 13, 2019. (NYSCEF Doc. Nos. 2, 17.) And even if defendant was aware of the action, as plaintiff contends (Pl. Mem. 2-3), that is irrelevant to her obligation to effectuate service. *See Feinstein v. Bergner*, 48 N.Y.2d 234, 241-42 (1979) (notice of the complaint does not cure a defect in service of process because "notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court").[8]

Plaintiff also complains about the President's order to show cause to dismiss on

---

[8]     Plaintiff insinuates (Pl. Mem. 3) that defendant's new co-counsel in this action, Kasowitz Benson Torres, is to blame because plaintiff was told on or around November 4, 2019, that the firm could not accept service of her summons and complaint on the President's behalf. However, that was accurate; the firm -- which only entered an appearance, as co-counsel, on February 4, 2020 -- did not then represent the President in this action and was therefore not authorized to accept service. (Kasowitz Reply Aff. ¶ 5; NYSCEF Doc. Nos. 40-42.)

10

jurisdictional grounds, but admits that he filed it two weeks before the agreed upon date for moving to dismiss, that she responded the next business day, and that the Court ruled the same day. (Pl. Mem. 3-4; (NYSCEF Doc. No. 36.) The Court did not "agree[]" with the arguments plaintiff made in opposition, as she claims (Pl. Mem. 4-5), but only "decline[d] to sign" the order to show cause on the ground that the Court would not "take judicial notice that the President of the United States has resided in the White House for the past three years." (NYSCEF Doc. No. 36.)

Further, plaintiff falsely asserts that the President "has not formally asserted [immunity under the Supremacy Clause] in this litigation" (Pl. Mem. 12) when, in fact, President Trump's Answer, dated January 23, 2020, asserts as affirmative defenses, among others, immunity under the Supremacy Clause and preserves his defense of lack of personal jurisdiction. (Reply Ex. B at ¶¶ 147, 155.) The timing for the President's assertion of this Court's lack of subject matter jurisdiction is also irrelevant given that "a court's lack of subject matter jurisdiction is not waivable, but may be raised at any stage of the action, and the court may, *ex mero motu* [on its own motion], at any time." *Fin. Indus. Regulatory Auth., Inc. v. Fiero*, 10 N.Y.3d 12, 17 (2008) (citation omitted); *see also* CPLR 3211(e) ("motion based upon [lack of subject matter jurisdiction] may be made at any subsequent time or in a later pleading"); *Artibee v. Home Place Corp.*, 28 N.Y.3d 739, 746 (2017) ("immunity from suit" stemming from the Constitution is a "constitutional limitation on 'the jurisdiction of Supreme Court'").[9]

---

[9] Defendant does not, as plaintiff claims (Pl. Mem. 13), engage in "gamesmanship" or "opportunism" here, because he opposed plaintiff's request to designate this action as related to *Zervos*, which has no bearing here. That opposition -- prior to the First Department's decision granting a leave to appeal and a stay -- concerned the differences between the defamation claims, not the threshold issue of whether a state court may exercise jurisdiction over the President relevant to this motion. If anything, it is plaintiff who is engaged in opportunism by denying the similarities between this case and *Zervos* after previously arguing this action and *Zervos* "present

Plaintiff also falsely asserts that this motion to stay was in response to and an attempt to avoid a discovery request she served on January 30, 2020 (Pl. Mem. 1, 6), but she omits that she already knew, a week before, on January 23, when defendant's counsel asked her counsel to consent to this motion, which was filed promptly after the First Department, on January 7, granted leave to appeal and a stay in *Zervos* (*id.* at 5, 6; Kaplan Aff. ¶ 6, Ex. 1). In fact, it would be more accurate to say that plaintiff timed her discovery request so that she could make that false assertion. In short, there has been no undue delay here.

Plaintiff also makes misstatements concerning *Zervos*. She asserts, for example, that there, the First Department granted the stay pending appeal, when only depositions remained to be completed. (Pl. Mem. 6.) This is not so; there are numerous outstanding issues from the parties concerning document production as well as outstanding third-party document subpoenas. *See, e.g.*, Kasowitz Reply Aff. ¶ 5; *Zervos v. Trump*, Index. No. 150522/2017 NYSCEF Doc. No. 249 (discussing forthcoming privilege motion); Kaplan Aff. Ex. 3 at 2 n.2 (referring to remaining "fact discovery" other than depositions). Plaintiff also refers (Pl. Mem. 12-13) to the *Zervos* plaintiff's request to the Court of Appeals to expedite the appeal -- but omits to mention that the Court of Appeals *denied* that request (Kaplan Aff. Ex. 6).

### B.    A Stay Will Irreparably Harm the President and the Public Interest.

Plaintiff fails to refute President Trump's showing of irreparable harm and prejudice absent a stay (Def. Mem. 11-13), which extends to the public interest. *See also Clinton v. Jones*, 520 U.S. at 697-98 (agreeing that the President "occupies a unique office with powers and

---

similar, and often novel, legal issues," including "the same argument[s] that Trump made, and Justice Schecter considered, in *Zervos*," and that "[a]ssigning two different Justices to these cases would both amplify the Court's workload unnecessarily and risk conflicting rulings." (Kasowitz Aff., Ex. A (NYSCEF Nos. 3 at ¶¶ 6, 8, 24 at ¶¶ 9, 10, 12).)

12

responsibilities so vast and important that the public interest demands that he devote *his undivided time and attention* to his public duties.") (emphasis added); *Nixon v. Fitzgerald*, 457 U.S. 731, 751-53, 754 (1982) (recognizing that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government," such that "a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch.").

Plaintiff's claim that the President has not provided "support for the claim that discovery would 'distract' him from his public duties" (Pl. Mem. 17) is both irrelevant and false. Absent a stay, the President would be deprived of his constitutional right to immunity from this action while in office, including his immunity to the extensive and burdensome discovery requests plaintiff has served under the Court's scheduling order. Failing to grant a stay further improperly imposes an unnecessary constitutional confrontation concerning whether this Court's exercise of jurisdiction violates the Constitution. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 389-90 (2004) (where the "Executive's Article II prerogatives" are at issue -- here whether the President's Article II prerogatives immunize him from suit in state court -- courts should "avoid[] whenever possible" "'occasion[s] for constitutional confrontation.'").

Having no valid argument to oppose the President's motion, plaintiff argues that the motion should be denied because, she asserts, he "did not litigate presidential immunity" in six other cases against him. (Pl. Mem. 18-19.) Plaintiff's argument, even if it otherwise had any merit (and it does not), is completely misleading. Four of the six cases plaintiff cites are in federal court, where there can be no claim of presidential immunity, as the U.S. Supreme Court held in *Clinton v. Jones*, while recognizing that state court actions might very well present a

"more compelling case." 520 U.S. 681, 691 (1997).  Nonetheless, the federal "personal conduct" cases cited by plaintiff only further support a stay here, because in every single case cited by plaintiff, the President received stays of discovery, including stays that the President requested on the ground that he is owed judicial deference.[10]  Accordingly, plaintiff's citations only add to the authority, cited at Mem. 9-10, that the President should be afforded a stay here.

In *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., Bronx Cnty.) -- which was filed on September 9, 2015, over a year before President Trump took office, the President asserted Presidential immunity in response to a trial subpoena.  Moreover, the First Department has stayed that action pending the President's appeal, on constitutional grounds, among others, from an order compelling the President's trial deposition.  *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019).

And in *Jacobus v. Trump*, No. 24973/2015E (Sup. Ct., N.Y. Cnty.), a defamation action against the President, the court granted the President's motion to dismiss on January 10, 2017, before the President took office.  *Jacobus v. Trump*, 55 Misc.3d 470, 486, (Sup. Ct., N.Y. Cnty. Jan. 10, 2017), *aff'd* 156 A.D.3d 452 (1st Dep't 2017), *lv. denied* 31 N.Y.3d 903 (2018).

---

[10]     *See Nwanguma v. Trump*, No. 16 Civ. 247 (W.D. Ky.), Doc. No. 58 (Aug. 9, 2017) (Doc. No. 36-1 (Apr. 20, 2017) at 4, 6 (granting the President's request for interlocutory appeal and stay of discovery pending appeal, brought on grounds that included the burden imposed on the President); *Johnson v. Trump*, No. 8:19 Civ. 0475 (M.D. Fla. July 10, 2019) Doc. No. 73 at 8-10, Doc. No 83 at 4:3-14 (abating discovery following President Trump's motion for a protective order, including on the ground of the deference owed his office.); *Doe v. Trump Corp.*, No. 18-cv-9936, Doc. No. 54 (S.D.N.Y. Dec. 20, 2018) (staying discovery pending resolution of President's motion to dismiss); *Clifford v. Trump*, 339 F. Supp.3d 915, 922, 928 (C.D. Cal. 2018) (denying plaintiff's request to conduct discovery after President Trump brought a motion to strike the complaint).

14

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 20 of 25

### C.      A Stay Will Not Prejudice Plaintiff.

Plaintiff cannot show -- indeed, her own admissions belie her claim -- that a stay would result in any significant burden.  She asserts conclusorily that the allegedly defamatory statements are causing her continuing harm, including that *Elle* magazine to decline to renew her contract to write a column.  (Pl. Mem. 14-15.)  Even if that were true, and *Elle* magazine's publisher and other sources cited by the *New York Times* deny it,[11] by February 20, 2020, she had already, as she admitted to the *Times*, "received inquiries from four other publications asking if she would consider writing for them."  (Kasowitz Reply Ex. A.)  Plaintiff's claim that her alleged harm was continuing and compounding was always far-fetched, to say the least, but is refuted by her own words.

In any event, the supposedly continuing harm that plaintiff claims is irrelevant to this motion.  Plaintiff seeks damages for the alleged harm to her reputation.  Where the claimed injury "can be compensated by damages [it] therefore cannot demonstrate irreparable harm" so as to warrant equitable relief.  *Broadway 500 W. Monroe Mezz II*, 80 A.D.3d at 484; *see also Goldstone v. Gracie Terrace Apartment Corp.*, 110 A.D.3d 101, 104, 106 (1st Dep't 2013) ("The balance of the equities does not weigh in plaintiff's favor" where the "claimed injury would be compensable by money damages").  If, as plaintiff claims, allegations of ongoing harm to reputation are so prejudicial that a court cannot grant a stay, then defamation actions could never be stayed, but plaintiff does not and cannot point to a single case in support of that erroneous proposition.  *Compare, e.g.*, *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 431 (1981)

---

[11]      *See* Kasowitz Reply Ex. A (Katherine Rosman and Jessica Bennett, *What Happened Between E. Jean Carroll and Elle Magazine?*, NEW YORK TIMES (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/style/ejean-carroll-fired-elle.html (citing sources attributing *Elle* magazine's termination to plaintiff's decision to publish excerpts from her book in another magazine, a decision at which, plaintiff admits, *Elle* was "extremely disappointed.").)

15

(discussing stay pending appeal granted by the Appellate Division in connection with leave to appeal in defamation action); *Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online*, 8 Misc.3d 820, 822 (Sup. Ct., N.Y. Cnty. 2005) (noting stay of judgment granted to defamation defendant).  Indeed, under plaintiff's argument, *Zervos* itself would not have been stayed.

## III.    PLAINTIFF DOES NOT REBUT THE "UNIQUE CIRCUMSTANCES" HERE.

If there are any "unique circumstances," it is that the case involves the President and appeal of a threshold claim of immunity.

### A.    The Appeal in *Zervos* Without Question Has Merit.

Plaintiff argues that the appeal in *Zervos* has no merit because, she contends, First Department's decision in *Zervos* "confirm[s] the weakness of Trump's immunity argument on the merits" because this case and *Zervos* "differ[s] from *Clinton* in only one respect: they were brought in state, not federal court.  But that does not change the clear force of the Supreme Court's logic."  (Pl. Mem. 19.)  In fact, the Supreme Court's logic in *Clinton v. Jones* was explicitly based on that critical difference.  The Court took pains to differentiate the claim of immunity made in federal court -- which "relie[d] heavily on the doctrine of separation of powers that restrains each of the three branches of Federal Government from encroaching on the domain of the other two" -- from a claim of immunity in state court, which would rely on the Supremacy Clause.  The Supreme Court recognized that the state court immunity claim "may implicate concerns that are *quite different* from the interbranch separation-of-powers questions addressed here," and therefore potentially "present a more compelling case for immunity."  *Id.* at 691, 691 n.13 (emphasis added).

There is therefore no question that the President's appeal has merit.  The First Department in *Zervos* confirmed precisely that by granting leave to appeal to the Court of Appeals and staying proceedings pending that appeal.  *Zervos*, 2020 WL 63397, 2020 N.Y. Slip

Case 1:20-cv-07311-LAK    Document 14-71    Filed 09/15/20    Page 22 of 25

Op. 60193(U).  Likewise, the Court of Appeals for the Second Circuit in *Trump v. Vance* readily

acknowledged that "the President may be correct that state courts lack the authority to issue him

orders."  941 F.3d 631, 642-43 (2d Cir. 2019), *cert. granted*, 140 S.Ct. 659 (Mem) (U.S. Dec. 13,

2019) (No. 19-635).  And, two Justices found in dissent that President Trump's appeal should

have been granted.  *Zervos*, 171 A.D.3d at 131 (Mazzarelli, J., dissenting in part).

### B.    Plaintiff Concedes that the President is Entitled to Judicial Deference.

Plaintiff concedes that, as shown (Def. Mem. 8-9), the courts are constitutionally required

to afford the President with at least "some special consideration" (Pl. Mem. 21) but nonetheless

contends that this action should proceed because state courts can be trusted as well as federal

courts to accommodate the President's needs (Pl. Mem. 20-21).  This misses the point.  The

issue, which the Court of Appeals will resolve, is not whether state courts can accommodate the

President in overseeing the litigation, but whether the very exercise of jurisdiction over the

President by state courts is constitutionally permissible in the first place.  (Def. Mem. 7-8.)

Thus, under these circumstances, as President Trump has shown, federal courts (and indeed state

courts), accommodate the President by granting his requests for stays or interlocutory appeals on

constitutional issues the one presented here.  (Def. Mem. 9-10.)[12]

Plaintiff seeks to distinguish the numerous cases that granted the President stays pending

appeal or interlocutory appeals (Def. Mem. 9-10) on the ground that, in those cases, the appeals

---

[12]     Plaintiff also does not and cannot contest that official immunity claims -- like the one at
issue here -- exist to protect government officials from "*pretrial* matters as discovery ..., as
'[i]nquiries of this kind can be peculiarly disruptive of effective government."  *Behrens v.
Pelletier*, 516 U.S. 299, 308 (1996) (emphasis in original) (citing *Mitchell v. Forsyth*, 472 U.S.
511, 526 (1985)); *Crawford-El v. Britton*, 523 U.S. 574, 598, 598 n.19 (1998) ("[I]f the
defendant does plead the immunity defense, the district court should resolve that threshold
question before permitting discovery" and, if denied, "the official is entitled to bring an
immediate interlocutory appeal of that legal ruling on the immunity question."); *see also* Def.
Mem. 8 (citing cases).

were pending in the same case.  (Pl. Mem. 16.)[13]  That is a distinction without a difference.  The stays in those cases were granted to prevent proceedings in the trial courts from abrogating the very relief the President sought to vindicate on appeal.  *See Cheney*, 542 U.S. at 389-90 (courts should "avoid[] whenever possible" "'occasion[s] for constitutional confrontation.'"); *see also United States v. Nixon*, 418 U.S. at 691-92.  A stay here would serve precisely the same purpose.

Plaintiff claims that the standard for staying a case based on an appeal in a separate action is "unsurprisingly, far more stringent." (Pl. Mem. 16.)  Not only is plaintiff wrong that courts apply a more stringent standard under ordinary circumstances, but because this case involves the President, it is subject to a far *less* stringent standard.  *See, e.g.*, *Cheney*, 542 U.S. at 381-2 (Vice President was entitled to interlocutory review, by writ of mandamus, of a discovery order, given, among other things, the deference owed to the Executive Branch, even though "[w]ere the Vice President not a party in the case, the argument that the Court of Appeals should have entertained an action in mandamus . . . might present different considerations"); Def. Mem. 8-10 (citing cases).  Thus, plaintiff's "reliance on cases that do not involve [the President] is altogether misplaced."  *Cheney*, 542 U.S. at 385.

Plaintiff argues that *Trump v. Mazars USA, LLP*, --- S.Ct. ----, 2019 WL 6328115 (Mem) (U.S. Nov. 25, 2019) (No. 19A545), *cert. granted*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19-715); *Trump v. Deutsche Bank AG*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19A640); and *Trump v. Vance*, No. 19-3204, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019), are inapplicable because they all involved a preliminary injunctions in a "singular dispute."  (Pl.

---

[13]     In federal court, "the filing of a non-frivolous notice of interlocutory appeal following a district court's denial of a defendant's immunity defense divests the district court of jurisdiction to proceed against that defendant," *Williams v. Brooks*, 996 F.2d 728, 730 (5th Cir. 1993) (collecting cases), and therefore in effect constitutes a stay pending appeal.

18

Mem. 17.)  That is incorrect.  While *Mazars* and *Deutsche Bank* both involved Congressional subpoenas, *Vance* is a separate dispute, against a separate party, concerning the enforcement of subpoenas in a state grand jury proceeding.  (*See* Def. Mem. 9-10.)  Plaintiff does not even attempt to distinguish the remaining cases in which courts have granted stays to the President, plainly applicable here, including, in particular, the First Department's stays in *Zervos* and *Galicia v. Trump*, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019), and the Eighth Circuit's stay in *Jones v. Clinton*, No. 95-1167, BL-62 (8th Cir. Apr. 16, 1996).  *See generally* Def. Mem. 8-11.

## <u>CONCLUSION</u>

A stay of all proceedings pending the decision of the Court of Appeals in *Zervos v. Trump* should be granted.

19

Case 1:20-cv-07311-LAK   Document 14-71   Filed 09/15/20   Page 25 of 25

Dated: New York, New York.
       February 27, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP


By:    */s/ Marc E. Kasowitz*
       Marc E. Kasowitz
       Christine A. Montenegro
       Paul J. Burgo

       1633 Broadway
       New York, New York 10019
       T:  (212) 506-1700
       E:  mkasowitz@kasowitz.com
           cmontenegro@kasowitz.com
           pburgo@kasowitz.com

LAROCCA HORNIK ROSEN &
       GREENBERG LLP
       Lawrence S. Rosen
       Patrick McPartland
       Jared E. Blumetti

       40 Wall Street 32nd Floor
       New York, New York 10005
       T: (212) 530-4822, 4837, 4831
       E: lrosen@lhrgb.com
          pmcpartland@lhrgb.com
          jblumetti@lhrgb.com

       *Attorneys for Defendant Donald J. Trump*

20