# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

DONALD J. TRUMP FOR PRESIDENT, INC., a Virginia corporation,

    Plaintiff,

v.

THE NEW YORK TIMES COMPANY d/b/a *The New York Times*, a New York corporation,

    Defendant.

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION AND SUMMARY OF CASE

1. Defendant The New York Times Company d/b/a *The New York Times* ("*The Times*") knowingly published false and defamatory statements of and concerning plaintiff Donald J. Trump for President, Inc. (the "Campaign"), claiming it had an "overarching deal" with "Vladimir Putin's oligarchy" to "help in the campaign against Hillary Clinton" in exchange for "a new pro-Russian foreign policy, starting with relief from the Obama administration's burdensome economic sanctions."

2. *The Times* was well aware when it published these statements that they were not true. *The Times'* own previous reporting had confirmed the falsity of these statements. But *The Times* published these statements anyway, knowing them to be false, and knowing it would misinform and mislead its own readers, because of *The Times'* extreme bias against and animosity toward the Campaign, and *The Times'* exuberance to improperly influence the presidential election in November 2020.

1

3. The Campaign therefore files this lawsuit to: publicly establish the truth, properly inform *The Times*' readers (and the rest of the world) of the true facts, and seek appropriate remedies for the harm caused by *The Times*' intentional false reporting.

4. *The Times* has engaged in a systematic pattern of bias against the Campaign, designed to maliciously interfere with and damage its reputation and seek to cause the organization to fail.

## THE PARTIES

5. Plaintiff Donald J. Trump for President, Inc. is a Virginia corporation with its principal place of business in New York City, New York County, State of New York. The Campaign operated the presidential election campaign of Donald J. Trump commencing in 2015, and has operated his reelection campaign since the President's election.

6. On information and belief, defendant The New York Times Company d/b/a *The New York Times* is a New York corporation with its principal place of business in New York City, New York County, State of New York. On information and belief, The New York Times Company d/b/a *The New York Times* publishes *The New York Times*, including both its print and online editions.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over *The Times* under CPLR § 301 because *The Times* has offices in, has its principal place of business in and/or is domiciled in New York City, New York County, State of New York, and the cause of action alleged arises out of *The Times*' activities in New York City, New York County, State of New York.

8. Venue is proper in this county under CPLR § 503 because *The Times* has its principal place of business here and/or is domiciled here.

2

## STATEMENT OF FACTS

9. On or about March 27, 2019, *The Times* published an article by Max Frankel entitled "The Real Trump-Russia Quid Pro Quo" (the "Defamatory Article"), which claims, among other things, that "There was no need for detailed electoral collusion between the Trump campaign and Vladimir Putin's oligarchy because they had an overarching deal: the quid of help in the campaign against Hillary Clinton for the quo of a new pro-Russian foreign policy, starting with relief from the Obama administration's burdensome economic sanctions. The Trumpites knew about the quid and held out the prospect of the quo." On information and belief, *The Times* published the Defamatory Article in *The Times*' print and online editions.

10. The Defamatory Article does not allege or refer to any proof of its claims of a "quid pro quo" or "deal" between the Campaign and Russia. Rather, the Defamatory Article selectively refers to previously-reported contacts between a Russian lawyer and persons connected with the Campaign. The Defamatory Article, however, insinuates that these contacts must have resulted in a quid pro quo or a deal, and the Defamatory Article does not acknowledge that, in fact, there had been extensive reporting, including in *The Times*, that the meetings and contacts that the Defamatory Article refers to **did not** result in any quid pro quo or deal between the Campaign and Russia, or anyone connected with either of them.

11. *The Times*' story is false. The falsity of the story has been confirmed by Special Counsel Robert Mueller's *Report on the Investigation into Russian Interference in the 2016 Presidential Election* released on or about April 18, 2019 (the "Mueller Report"), and many other published sources, that there was **no conspiracy** between the Campaign and Russia in connection with the 2016 United States Presidential Election, or otherwise. Among other things,

3

there was no "deal," and no "quid pro quo," between the Campaign or anyone affiliated with it, and Vladimir Putin or the Russian government.

12. It is not entirely surprising that *The Times* would publish such a blatant false attack against the Campaign. There is extensive evidence that *The Times* is extremely biased against the Campaign, and against Republicans in general. This evidence includes, among other things, the fact that *The Times* has endorsed the Democrat in every United States presidential election of the past sixty (60) years. Also, Max Frankel, the author of the Defamatory Article, described himself in an interview as "a Democrat **with a vengeance**."

13. *The Times* obviously had a malicious motive, and also acted with reckless disregard for the truth. Extensive information, including stories in *The Times* published before the Defamatory Article, had put *The Times* and the world on notice that **there was no conspiracy between the Campaign and the Russian government**, and there was no "quid pro quo" or "deal" between them. Moreover, extensive information, including stories in *The Times* published before the Defamatory Article, established that, at most, there had been isolated contacts between individual Russians and some persons associated with the Campaign, which **did not result** in any "deal" or "quid pro quo." These prior statements in *The Times* included, among others:

    a. On July 9, 2017, *The Times* published an article which confirmed that, in fact, Russian lawyer Natalya Veselnitskaya, who has been alleged to have met with individuals connected with the Campaign in 2016, had no meaningful information about Hillary Clinton to provide to attendees of the meeting. *The Times* further reported Ms. Veselnitskaya's statement that she never worked on behalf of the Russian government.

4

    b. On July 11, 2017, *The Times* reported in an article that Ms. Veselnitskaya's statements at the meeting were described by attendees as "vague, ambiguous, and mak[ing] no sense," "generic" and "inane nonsense."

    c. On September 7, 2017, *The Times* reported Donald Trump, Jr.'s statement that the meeting "provided no meaningful information" and that he was "adamant" that he did not collude with the Russian government.

    d. On May 16, 2018, *The Times* reported that Ms. Veselnitskaya was disappointed that her meeting with associates of the Campaign **did not result** in a commitment to relax sanctions against Russia. *The Times* also reported that a second meeting with Ms. Veselnitskaya did not take place.

14. In other words, at the time the Defamatory Article was published, the public record, and *The Times*' own reporting, had **already confirmed** what Robert Mueller would eventually conclude: that there was no "deal" or "quid pro quo" between the Campaign and Russia. *The Times* and its writer, Mr. Frankel, consciously disregarded all such information, including information that had appeared in several of *The Times*' own past articles, in falsely accusing the Campaign of an "overarching deal" and a "quid pro quo" with the Russian government to "help in the campaign against Hillary Clinton" in exchange for "a new pro-Russian foreign policy, starting with relief from the Obama administration's burdensome economic sanctions." *The Times* thus published the statements at issue knowing that they were false at the time of publication, or at the very least, published them with reckless disregard for the truth.

15. *The Times* never informed the Campaign that it intended to publish the claims in the Defamatory Article, did not afford the Campaign an opportunity to verify the accuracy of the

5

claims before publication, and did not reach out to the Campaign for comment. This is further evidence of *The Times*' actual malice.

16. On information and belief, *The Times* decided to publish the Defamatory Article when it did, in advance of the Mueller Report, knowing that the Mueller Report was likely to exonerate the Campaign from allegations of collusion with Russia regarding the 2016 election. Once the Mueller Report was released, *The Times* knew that any claims of conspiracy would not be credible. Thus, by publishing the Defamatory Article in March 2019, *The Times* sought to damage the Campaign before the Mueller Report would be released debunking the conspiracy claims.

17. The Defamatory Article defamed the Campaign in its trade or profession, because it falsely accuses the Campaign of conducting an unethical and unpatriotic election campaign and colluding with a foreign adversary to improperly influence an election result.

18. The Defamatory Article has forced, and will continue to force, the Campaign to expend funds on corrective advertisements and to otherwise publicize the fact that the Campaign did not collude with, have a deal with, or have a "quid pro quo" with Russia regarding the 2016 election. The Campaign has been damaged in an amount to be proven at trial.

**FIRST CAUSE OF ACTION**

**(Defamation)**

19. The Campaign realleges and incorporates by this reference Paragraphs 1 through 18 as though fully set forth herein.

20. *The Times* published the Defamatory Article on or about March 27, 2019.

21. The Defamatory Article contains false statements of fact, including the following:

　　a. "The Real Trump-Russia Quid Pro Quo";

6

  b. "[T]hey had an overarching deal: the quid of help in the campaign against Hillary Clinton for the quo of a new pro-Russian foreign policy, starting with relief from the Obama administration's burdensome economic sanctions. The Trumpites knew about the quid and held out the prospect of the quo.";

  c. "Run down the known facts about the communications between Russians and the Trump campaign and their deal reveals itself.";

  d. "But no such speculation is needed to perceive the obvious bargain reached during the campaign of 2016."; and

  e. "And true to the campaign minuet, despite great resistance in Congress, President Trump has watered down the sanctions and otherwise appeased Russian interests, even at the expense of America's allies. Call it the art of the deal."

22. The false statements in the Defamatory Article are of and concerning the Campaign, in that they allege the Campaign specifically colluded with and reached a quid pro quo deal with the Russian government.

23. The Campaign is concededly a public figure, and the false statements were made with actual malice, as alleged herein.

24. The false statements defamed the Campaign in its trade or profession.

25. The false statements caused actual damage to the Campaign.

26. *The Times* acted with malice or reckless disregard for the Campaign's rights, thereby justifying an award of punitive damages.

7

## PRAYER FOR RELIEF

WHEREFORE, the Campaign prays for relief as follows:

    i.    Compensatory damages in the millions of dollars, according to proof;

    ii.    Presumed damages according to proof;

    iii.    Punitive damages according to proof;

    iv.    Costs of suit; and

    v.    Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

The Campaign hereby demands a trial by jury.

Dated: New York, New York
February 26, 2020

        HARDER LLP

        By: _____
        Charles J. Harder, Esq.
        HARDER LLP
        260 Madison Avenue, Sixteenth Floor
        New York, New York 10016
        Telephone: (212) 799-1400
        CHarder@HarderLLP.com

        *Attorneys for Plaintiff Donald J.*
        *Trump for President, Inc.*