# EXHIBIT H

# JONES, FOSTER, JOHNSTON & STUBBS, P.A.

ATTORNEYS AND COUNSELORS
FLAGLER CENTER TOWER
505 SOUTH FLAGLER DRIVE
ELEVENTH FLOOR
P. O. BOX 3475
WEST PALM BEACH, FLORIDA 33402-3475
(407) 659-3000
FAX: (407)832-1454

WRITER'S DIRECT LINE: _____

LARRY B. ALEXANDER
STEPHEN J. AUCAMP
TRACEY BIAGIOTTI
JOYCE A. CONWAY
MARGARET L. COOPER
EDWARD DIAZ
REBECCA G. DOANE
CHRISTOPHER S. DUKE
SCOTT G. HAWKINS
THORNTON M. HENRY
PETER S. HOLTON
MARK B. KLEINFELD
MICHAEL T. KRANZ

JOHN BLAIR McCRACKEN
SCOTT L. McMULLEN
JOHN C. RANDOLPH
JOHN C. RAU
ANDREW ROSS
STEVEN J. ROTHMAN
PETER A. SACHS
D. CULVER SMITH III
SIDNEY A. STUBBS, JR.
ALLEN R. TOMLINSON
JOHN S. TRIMPER
MICHAEL P. WALSH
H. ADAMS WEAVER

HENRY F. LILIENTHAL
1902-1962
HARRY ALLISON JOHNSTON
1895-1983
R. BRUCE JONES
1904-1966
PAUL C. WOLFE
1933-1991
RETIRED
WILLIAM A. FOSTER
OF COUNSEL
L. MARTIN FLANAGAN

November 15, 1993

Ms. Grace T. Peters
Town Clerk
Town of Palm Beach
Post Office Box 2029
Palm Beach, Florida 33480

RE: Town of Palm Beach/Mar-A-Lago Club
Declaration of Use Agreement
Our File No. 13156.6

Dear Grace:

Enclosed for the files of the Town is the original recorded Declaration of Use Agreement between the Town of Palm Beach, The Mar-A-Lago Club, Inc. and Donald J. Trump, as recorded in Official Record Book 7933, Page 22, public records of Palm Beach County, Florida.

Sincerely,

John C. Randolph

JCR/ssm
cc: Robert J. Doney

This instrument was prepared by:
    Alan J. Ciklin, Esq.
    John C. Randolph, Esq.
    Paul Rampell, Esq.

Please record and return to:
    Paul Rampell, Esq.
    125 Worth Avenue
    Suite 202
    Palm Beach, FL 33480

OCT-15-1993  4:18pm  93-330542
    ORB  7933 Pg  22

# DECLARATION OF USE AGREEMENT
by
## THE TOWN OF PALM BEACH,
## THE MAR-A-LAGO CLUB, INC.,
and
## DONALD J. TRUMP

Dated: _August_ _10_, 1993

ORB  7933 Pg  23

# TABLE OF CONTENTS

| | Page No. |
|---|---|
| ARTICLE I<br>Representation of Ownership | 2 |
| ARTICLE II<br>Club Use | 2 |
| ARTICLE III<br>Unity of Title | 3 |
| ARTICLE IV<br>Building Codes, Fire Protection and Utilities | 3 |
| ARTICLE V<br>Principles of Preservation and Critical Features | 4 |
| ARTICLE VI<br>Mitigation/North Boundary | 4 |
| ARTICLE VII<br>Club Membership Limitations | 4 |
| ARTICLE VIII<br>Traffic/Special Events | 5 |
| ARTICLE IX<br>Liability and Abandonment of Club Use | 6 |
| ARTICLE X<br>Reimbursement for Special Studies/Monitoring | 7 |
| ARTICLE XI<br>Remedies for Violation | 7 |
| ARTICLE XII<br>Provisions to Run with Land/Recording | 8 |
| ARTICLE XIII<br>Entire Agreement | 8 |
| ARTICLE XIV<br>Miscellaneous | 8 |

ORB 7933 Pg 24

Acknowledgements                                        10

Consent and Joinder of Mortgagee                        13

Exhibit "A"                                             14

Exhibit "B"                                             15

Exhibit "C"                                             17

ORB 7933 Pg 25

# DECLARATION OF USE AGREEMENT

THIS DECLARATION OF USE AGREEMENT is made and entered into this _10th_ day of _August_____, 1993 by and between the TOWN OF PALM BEACH, a Florida municipal corporation, 360 South County Road, Palm Beach, Florida 33480 (hereinafter called the "Town"); and THE MAR-A-LAGO CLUB, INC., a Florida corporation, c/o Paul Rampell, Esquire, 125 Worth Avenue, Palm Beach, Florida 33480 (hereinafter called the "Club"); and DONALD J. TRUMP, 725 Fifth Avenue, New York, New York 10022 (hereinafter called "Owner"), which terms Town, Club, and Owner will include and bind the successors and assigns of the parties, wherever the contact so requires or admits.

## W I T N E S S E T H :

WHEREAS, the land described in Exhibit "A" attached hereto and made a part hereof, together with improvements thereon (hereinafter referred to as the "Land") and known as Mar-a-Lago, is located within the municipal limits of the Town;

WHEREAS, Mar-a-Lago is unique and no other property in Palm Beach is like it in any way;

WHEREAS, the Land is owned by the Owner, and the Owner shall convey title to the Land to the Club;

WHEREAS, the Land is zoned RAA-Large Estate Residential and RA-Estate Residential and private social clubs are allowable Special Exception Uses within such zoning categories, subject to the approval of the Town Council;

WHEREAS, the Town has approved a Special Exception use for the Land as a private social club subject to the conditions set forth herein and on the basis that the approval of the Special Exception, in compliance with said conditions, will not be adverse to the public interest;

WHEREAS, the Town has approved the site plan for the Special Exception on the basis of the specific finding of the Town Council that said site plan meets the requirements of the Town's Code of Ordinances relating to same;

WHEREAS, in approving the Special Exception and site plan, the conditions of approval reflected herein are imposed in order to regulate the use and mitigate any impacts of the Club, as well as to insure that said use shall not be adverse to the public interest; and

WHEREAS, all of the representations made herein are true and accurate and the granting of the Special Exception and site plan review are conditioned upon the representations made herein and all of the conditions herein imposed.

NOW THEREFORE, in consideration of the mutual promises set forth herein, it is agreed as follows:

ORB 7933 Pg 26

# ARTICLE I

## REPRESENTATION OF OWNERSHIP

Owner is the fee simple title holder of the property described in Exhibit "A" attached hereto, is in sole possession of the property, and has full right to enter into this Agreement and to bind the property and himself to the terms hereof. Owner's interest is subject only to mortgages of record and all holders of said mortgages, by execution hereof, hereby consent to the terms and conditions of this Agreement as evidenced by their signatures hereto. There are no covenants, restrictions or reservations of record that will prevent the use of the property as a club in accordance with the terms and conditions of this Agreement. No consent to execution, delivery and performance hereunder is required from any person, partner, limited partner, creditor, investor, judicial or administrative body, governmental authority or other party other than any such consent which already has been unconditionally given or referenced herein. Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will violate any restriction, court order or agreement to which Owner or the real property is subject.

# ARTICLE II

## CLUB USE

The use of the Land shall be for a private social club in compliance with all of the information and exhibits included in the application not inconsistent with the terms set forth herein, and subject to such uses not inconsistent with the terms set forth herein, set forth in the Application for Special Exception No. 11-93 and The Mar-a-Lago Club: A Special Exception Use and Preservation Plan, as amended (hereinafter referred to as the "Plan") as submitted to the Town. Any usages not specifically set forth in the Plan (including, without limitation, docks, cabanas, gambling, helicopter operations or landings, animal circuses, and commercial or quasi-commercial uses) are excluded from the Town's approval of the Plan pursuant to that provision of the Town Code which provides that no subsequent deviation may be made from the application as approved by the Town Council except upon new application to and approval by the Town Council. Chapters 2, 3, 5, 6, 10 and 11 of the Plan are adopted herein by reference and made a part of this Agreement. Any additional uses of the Land shall be subject to approval by the applicable governmental authority including but not limited to the Town Council of the Town, the Landmarks Preservation Commission of the Town, the Architectural Review Commission of the Town, Palm Beach County, the State of Florida, the United States Government, and/or any agencies under any of the foregoing governmental authorities.

The guest suites as set forth in the Plan shall be limited to the use of Club members, shall be limited to ten (10) in number, shall not be open to the public, and shall not be advertised. No kitchen or other food preparation facilities shall be allowed in any of the guest suites. The use of guest suites shall be limited to a maximum of three (3) non-consecutive seven (7) day periods by any one member during the year. The operations of the Club shall not result in a nuisance to any of the neighboring properties.

ORB 7933 Pg 27

Club facilities may be used only by members and guests of the Club.

Photography at the Club shall be conducted in a manner consistent with the rules and regulations governing other clubs in the Town. This shall include but not be limited to the prohibition of film making, movie producing, magazine feature photography, newspaper photography, photography for public relations purposes for individual members and/or guests and other commercial photography and the like.

## ARTICLE III

## UNITY OF TITLE

The Land, as described herein, shall be considered as one (1) parcel and no portion thereof may be sold, transferred, devised or assigned except in its entirety, either voluntarily or involuntarily, by operation of law or otherwise. This provision shall not preclude the dedication of right-of-way for road improvements required by governmental authority. No portion of the Land or structures thereon shall be condominiumized or changed to a cooperative form of ownership. This provision shall survive the use of the property as a club and shall apply to any subsequent use of the property.

## ARTICLE IV

## BUILDING CODES, FIRE PROTECTION AND UTILITIES

The Owner and the Club hereby grant and convey to the Town an easement over the Land in order to have access to the real property described in Exhibit "B" for the purpose of operating and maintaining a sewage pump station and force main located thereon, and for any other governmental purpose related thereto.

The existing sewage overflow (manually valved) shall be eliminated by the Owner at the Owner's expense. The Town and the Owner shall calculate the sewage generation utilizing generally accepted engineering methodology. If it is reasonably determined by the Town engineer that the existing pump station needs to be upgraded or replaced, it shall be upgraded or replaced by the Owner.

The air-conditioning condensate presently discharging into the sanitary sewer system shall be rerouted by the Owner into the storm sewer system.

Exfiltration trenches subject to approval by the Town engineer shall be constructed along a portion of the perimeter of the Phase B parking area as depicted in the Plan, and intermittently along the soil stabilized cart path to dispose of any increase in stormwater runoff from those improvements.

The existing tunnel to the beach area shall be evaluated for structural soundness by a Florida registered engineer and shall be improved as required. Owner and Club shall save,

FILED: NEW YORK COUNTY CLERK 06/15/2020 08:36 AM

NYSCEF DOC. NO. 91

INDEX NO. 160694/2019

Case 1:20-cv-07311-LAK   Document 14-92   Filed 09/15/20   Page 9 of 22

RECEIVED NYSCEF: 06/15/2020

ORB 7933 Pg 28

defend and hold the Town, its officers, agents, representatives and employees, harmless from any and all claims which may arise as a result of the presence or use of the tunnel.

All applicable building, fire, and life safety codes shall be complied with prior to the commencement of Club operations. The Owner shall install an onsite fire hydrant as required by the Standard Fire Prevention Code. The Owner shall install an approved fire detection and extinguishing system.

All conditions herein are required to be met prior to commencement of Club operations and prior to the issuance of a Certificate of Occupancy for operation of a Club use.

## ARTICLE V

## PRINCIPLES OF PRESERVATION AND CRITICAL FEATURES

The principles of preservation and critical features specifically described in Chapters 2 and 3 of the Plan as amended shall be binding on the Owner and the Club and shall be enforceable in accordance with the terms of this Agreement. Prior to any changes to the grounds or exterior of the buildings, the Owner and/or the Club shall obtain a Certificate of Appropriateness from the Landmarks Preservation Commission prior to issuance of any permits. The outdoor loggia shall not be structurally enclosed.

## ARTICLE VI

## MITIGATION/NORTH BOUNDARY

The Owner shall install a solid masonry wall and landscaping along the Northern perimeter of the Land to serve as a noise and light buffer for the residents of Woodbridge Road, according to the specifications attached hereto and made a part hereof as Exhibit "C". Owner shall post surety in the amount of One Hundred Thirty-Five Percent (135%) of the cost of the improvements to be installed. The amount of the surety shall be provided through cost estimates from the Owner and shall be subject to approval by the Town. The mitigation set forth herein shall be completed prior to commencement of Club operations and prior to issuance of the Certificate of Occupancy for Club use. No additional lighting shall be installed in the parking area bordering the Northern boundary, and no accumulation of kitchen refuse shall be allowed to be held in this area.

## ARTICLE VII

## CLUB MEMBERSHIP LIMITATIONS

At least fifty percent (50%) of the members of the Club shall consist of individuals who maintain residences in the Town of Palm Beach or have places of employment in the Town of Palm Beach. An affidavit verifying this fact, and the guest suite occupancy interval and frequency limitations, and compliance with Article IX relating to establishment of the fiduciary

FILED: NEW YORK COUNTY CLERK 06/15/2020 08:36 AM    INDEX NO. 160694/2019
NYSCEF DOC. NO. 91    Case 1:20-cv-07311-LAK    Document 14-92    Filed 09/15/20    Page 10 of 22    RECEIVED NYSCEF: 06/15/2020

ORB 7933 Pg 29

account, shall be filed with the Town on an annual basis on or before a date each year which coincides with the date the Certificate of Occupancy is issued to the Club. The membership in the Club shall be limited to five hundred members; provided, however, such number may be adjusted in the reasonable discretion of the Town. In the event the trip generation limitation set forth in Article VIII is reached, membership at that time shall be frozen until measures are taken to reduce daily trips.

The Club shall not discriminate against any prospective member on the basis of race, color, religion, gender, national origin, handicap, age, or marital status.

All Club facilities such as dining, tennis and golf shall require advance reservations.

The Owners of Woodbridge Road residences shall have guest privileges at the Club without having to pay membership initiation fees; provided, however, they shall not be permitted to park on the Land while exercising their guest privileges. The foregoing shall run in perpetuity with the land of the Woodbridge Road residences.

## ARTICLE VIII

### TRAFFIC/SPECIAL EVENTS

The total trip generation of the Club shall be limited to three hundred thirteen (313) daily trips based on an annual average of daily trips of the Club. Traffic monitoring by a method approved by the Town for the Club shall be performed by the Club on a daily basis and shall be available to the Town upon request. Monitoring devices approved by the Town shall be in place prior to issuance of a Certificate of Occupancy. The results of the monitoring during the first and third quarters of each year shall be averaged to determine the average annual daily trips of the Club. The Club shall reimburse the Town for the reasonable expense incurred by the Town's traffic consultant in reviewing the monitoring results.

The monitoring results shall be supplied to the Town and the Palm Beach County Traffic Division to assure compliance.

The Club shall install, prior to commencement of Club operations and prior to issuance of a Certificate of Occupancy for Club use, a northbound left-turn storage lane to serve the Club's entrance drive on Ocean Boulevard, subject to obtaining a permit from the Florida Department of Transportation. The Town, Owner, and Club jointly shall obtain such permit at the sole expense of the Owner and the Club, and the Owner and Club shall hold the Town harmless from any liability caused by the initial design and construction of the turn lane. If, after the Club is opened it is reasonably determined by the Chief of Police in consultation with the Town's traffic consultant that a southbound right turn lane is necessary, the Owner and/or Club and the Town shall use their best efforts to obtain a permit and to install such right turn lane.

The Club shall utilize a shuttle van to transport approximately forty percent (40%)

ORB 7933 Pg 30

of the Club's staff to assist in complying with the three hundred thirteen (313) daily trip limitation on an average annual basis.

Dining area seating shall be limited to seventy-five (75) seats.

Special events shall be limited to three hundred ninety (390) individuals and shall occur strictly on weekends or after 6:00 p.m. on week days. At no time shall more than one (1) special event occur at the same time at the Club. Special events at the Club shall be coordinated with special events at the Bath and Tennis Club so that special events at the two (2) clubs scheduled on the same day shall commence at least one (1) hour apart, so that the overlap of peak traffic during special events is reasonably avoided. Tents may only be used for special events upon approval of the Town Building and Zoning Director after presentation of satisfactory assurance that the attendance limitations will not be exceeded.

Site ingress and egress shall be as proposed in the Plan. The existing main entrance on Ocean Boulevard shall be used as an entrance only for both regular activities and special events at the Club; two (2) lanes of ingress shall exist on this entrance drive inside the gate. The existing service access on Ocean Boulevard shall be used as an exit only for both such regular activities and special events; two (2) lanes of egress shall exist on this exit drive inside the gate. A gate West of the existing Southern Boulevard gate shall be provided prior to commencement of Club operations and receipt of an occupational license for Club use, and shall be aesthetically identical to the existing gate, and the Owner and Club shall hold the Town harmless from any liability caused by the initial design and construction of the gate and driveway connection to Southern Boulevard. The new Southern Boulevard gate shall serve as the primary entry and exit for staff and service vehicles. During special events the new Southern Boulevard gate may be used by members and guests for exiting if deemed necessary.

Valet parking services shall be used at all times for all club events. Town of Palm Beach off-duty police shall be engaged to supervise traffic at all special events. Parking shall occur only in those areas so identified in the Plan and shall provide two hundred fifty-two (252) spaces. Any grass areas to be used for parking as well as the existing cart path shall be stabilized with "grass-crete" or an equivalent treatment. Said cart path shall be eighteen (18) feet in width.

## ARTICLE IX

## LIABILITY AND ABANDONMENT OF CLUB USE

Until the Club operates at a break-even point, or profitability for three (3) consecutive years, the Owner shall pay any and all real estate taxes, maintenance costs, insurance premiums, and similar expenses to the extent the Club is unable to meet such obligations.

A separate fiduciary account shall be established by the Club into which ten percent (10%) of all gross revenues from the guest suites shall be deposited and used exclusively for maintenance and restoration purposes.

Case 1:20-cv-07311-LAK    Document 14-92    Filed 09/15/20    Page 12 of 22

ORB 7933 Pg 31

If the Club use is unintentionally abandoned for a period of one (1) year after the Club has been in operation, or is intentionally abandoned at any time, the use of the Land shall revert to a single family residence and the ownership of the Owner. Bylaws and or documents relating to the Club membership shall include an agreement to be executed by Club members acknowledging their understanding of and consent to the terms of this agreement, and specifically agreeing to the reversion of the Land to Owner, and its return of the Land to use as a single family residence, in the event of intentional or unintentional abandonment of the Club use. Owner, Club, and Club members shall agree to hold the Town harmless from any liability or claim against the Town resulting from the enforcement of the terms of this Agreement, the reversion to single family use, the reversion to Owner or any other claims resulting therefrom.

Additionally, the three (3) paragraphs set forth above shall be set forth in the Articles of Incorporation of the Club and said provisions of the Articles shall not be amended without consent of the Town.

## ARTICLE X

## REIMBURSEMENT FOR SPECIAL STUDIES/MONITORING

The Owner or Club shall reimburse the Town for any reasonable costs incurred by the Town's consultants in their review of monitoring in compliance with the conditions set forth herein and the reasonable costs associated with the review of the Application.

## ARTICLE XI

## REMEDIES FOR VIOLATION

The Town shall have all remedies available at law and equity in order to enforce the terms of this Agreement including but not limited to (a) the Town's code enforcement procedures of the Code of Ordinances through the Code Inspector, Code Enforcement Officer, and Code Enforcement Board; and (b) the Town may initiate action to revoke the Club's occupational license pursuant to applicable provisions of the Town Code, and (c) all remedies otherwise offered in the Town's Code of Ordinances; and (d) injunction, specific performance, and any and all other equitable relief through the civil courts in and for Palm Beach County for the State of Florida. In the event the Town is required to seek injunctive relief, it shall not be required to post bond and it shall not be required to demonstrate irreparable harm or injury to secure an injunction to enforce the terms of this Agreement. Additionally, in the event of any breach, default or non performance of this Agreement, or any of its covenants, agreements, terms or conditions, the Town shall be entitled to recover its costs, expenses and reasonable attorneys' fees insofar as the Town prevails, either before or as a result of litigation, including appeals.

FILED: NEW YORK COUNTY CLERK 06/15/2020 08:36 AM INDEX NO. 160694/2019
NYSCEF DOC. NO. 94 Case 1:20-cv-07311-LAK Document 14-92 Filed 09/15/20 Page 13 of 22 RECEIVED NYSCEF: 06/15/2020

ORB 7933 Pg 32

## ARTICLE XII

## PROVISIONS TO RUN WITH LAND/RECORDING

This Agreement shall run with the Land and shall be binding upon the Owner, the Club, and their respective heirs, legal representatives, successors and assigns. This Agreement shall be recorded in the Public Records of Palm Beach County, Florida upon full execution by the parties hereto.

## ARTICLE XIII

## ENTIRE AGREEMENT

This Agreement represents the entire agreement between the parties as to its subject matter and it may not be amended except by written agreement executed by both parties.

## ARTICLE XIV

## MISCELLANEOUS

Wherever the word "laws" appears in this Agreement it shall be deemed to include all ordinances, rules and regulations as well as laws of the appropriate governmental authorities.

This Agreement may not be amended except by written instrument signed by all parties hereto.

Paragraph headings are inserted for convenience only and shall not be read to enlarge, construe, restrict or modify the provisions hereof. All references to numbered or lettered paragraphs, subparagraphs and exhibits refer (unless the context indicates otherwise) to paragraphs and subparagraphs of this Agreement and to exhibits attached hereto, which exhibits are by this reference made a part hereof.

This Agreement shall be binding upon the parties hereto and upon their successors, assigns, heirs and personal representatives.

In the event of the invalidity of any provision of this Agreement, same shall be deemed stricken herefrom and this Agreement shall continue in full force and effect as if such invalid provision were never a part hereof.

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Case 1:20-cv-07311-LAK   Document 14-92   Filed 09/15/20   Page 14 of 22

ORB    7933 Pg    33

IN WITNESS WHEREOF the parties have hereunto set their hands and seals the day and year first written above.

Signed, sealed and delivered
in the presence of:

TOWN OF PALM BEACH

By: _____
Paul R. Ilyinsky, Mayor

By: _____
M. William Weinberg,
President, Town Council

By: _____
Robert Doney,
Town Manager

THE MAR-A-LAGO CLUB, INC.

By: _____
Donald J. Trump,
President

By: _____
Donald J. Trump

9

ORB   7933 P9   34

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _10_ day of _Oeeg_, 1993, by **Paul R. Ilyinsky,** the Mayor of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation. He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

_Grace J. Peters_
Signature of Notary Public

_GRACE I. PETERS_
Printed Name of Notary Public

Commission No.: _CC26123/_

Commission Expires:

OFFICIAL NOTARY SEAL
GRACE T PETERS
COMMISSION NO. C261231
MY COMMISSION EXP. MAR. 27,1997

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _10_ day of _august_, 1993, by **M. William Weinberg,** the President of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation. He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

_Grace Peters_
Signature of Notary Public

_GRACE I. PETERS_
Printed Name of Notary Public

Commission No.: _CC26123/_

Commission Expires:

OFFICIAL NOTARY SEAL
GRACE T PETERS
COMMISSION NO. C261231
MY COMMISSION EXP. MAR. 27,1997

10

ORB  7933 Pg  35

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _10_ day of _Aug._, 1993, by **Robert J. Doney,** the Town Manager of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation. He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

Signature of Notary Public

GRACE I · PETERS

Printed Name of Notary Public

Commission No.: _CC261231_

Commission Expires:

STATE OF _New York_

COUNTY OF _New York_

The foregoing instrument was acknowledged before me this _21st_ day of _July_, 1993, by **Donald J. Trump,** President of **The Mar-a-Lago Club, Inc.,** a Florida corporation, on behalf of the corporation. He is personally known to me or has produced ____his____ Driver's License Number _T-18792-35181-79406446_ as identification and who did not take an oath.

Signature of Notary Public

Norma I. Foerderer

Printed Name of Notary Public

Commission No.: _31-4743494_

Commission Expires: _9/30/93_

NORMA I FOERDERER
Notary Public, State of New York
No. 31-4743494
Qualified in New York Co.
Commission Expires Sept. 30, 1993

11

ORB    7933 Pg    36

STATE OF _New York_

COUNTY OF _New York_

      The foregoing instrument was acknowledged before me this 21st day of
_July_, 1993, by **Donald J. Trump**, who is personally known to me or has
produced _his_ Driver's License Number 18793-35181-36106446 as
identification and who did not take an oath.

_____

Signature of Notary Public

    Norma J. Foerderer
Printed Name of Notary Public

Commission No.: 31-4743494

Commission Expires: 9/30/93

NORMA I FOERDERER
Notary Public, State of New York
No. 31-4743494
Qualified in New York Co.
Commission Expires Sept. 30, 1993

APPROVED AS TO FORM AND
LEGAL SUFFICIENCY FOR THE
TOWN OF PALM BEACH

By: _____
   John C. Randolph, Esq.

12

Case 1:20-cv-07311-LAK   Document 14-92   Filed 09/15/20   Page 18 of 22

ORB    7933 Pg    37

## CONSENT AND JOINDER OF MORTGAGEE

The below referenced Mortgagee hereby consent to the Declaration of Use Agreement and its recordation.

MORTGAGEE

Herbert A. Kolben
Eric J. Ekeroth

By: _____
Ⓟ Vice President

District
~~STATE~~ OF Columbia
City
~~COUNTY~~ OF Washington

The foregoing instrument was acknowledged before me this 3 day of
Apri , 1995 by Thomas C. Perkins, of The Union Labor Life Ins. Co
on behalf of the _____ . Perkins is personally known to me or has
produced _____ Driver's License Number _____
as identification and who did not take an oath.

_____
Signature of Notary Public

Larolya R. Williams
Printed Name of Notary Public

Commission No.:    Lavolya R. Williams
                   Notary Public, District of Columbia
                   My Commission Expires Nov. 14, 1998
Commission Expires:

13

ORB  7933 Pg  38

EXHIBIT "A"

Being all that part of the North 610.00 feet of the South 1170.00 feet of Government Lot 2 of Section 35, Township 43, South, Range 43 East, in the Town of Palm Beach, Palm Beach County, Florida, lying West of Ocean Boulevard (State Road A1A) Right of Way and more particularly described as follows, to-wit:

Beginning at a point on the West face of an existing seawall on the East shore of Lake Worth, which point is 560.00 feet North of, measured at right angles, to the South line of Government Lot 2 of said Section 35; thence North 6°09'22" West along the West face of said seawall for a distance of 77.32 feet; thence North 10°23'23" East along the West face of said seawall for a distance of 539.50 feet to a point in the South line of BINGHAM-COPP TRACT, a subdivision recorded in Plat Book 18, Page 6, Palm Beach County Public Records; thence run South 88°12'07" East along the South line of said BINGHAM-COPP TRACT for a distance of 1134.10 feet to a point in the Westerly right-of-way line of Ocean Boulevard (State Road A1A); thence run South 0°09'07" East for a distance of 82.59 feet to a point of curvature; thence run Southerly along the arc of a curve concaved to the Southwest having a radius of 1412.69 feet and a central angle of 3°03'00" for a distance of 75.20 feet to a point of tangency; thence run South 2°53'53" West for a distance of 176.28 feet to a point of curvature; thence run Southwesterly along the arc of a curve concaved to the Northwest having a radius of 2968.36 feet and a central angle of 2°27'30" West for a distance of 127.36 feet to a point of compound curvature; thence continue Southwesterly along the arc of a curve, concaved to the Northwest having a radius of 158.68 feet and a central angle of 86°26'30" for a distance of 239.40 feet to a point of tangency; thence run North 88°12'07" West along the North line of Southern Boulevard (State Road 80) for a distance of 1040.43 feet to the POINT OF BEGINNING, containing 16.3760 Acres, more or less;

and

The West one-half (W 1/2) of Lot 20 and the South 15 feet of the East one-half (E 1/2) of Lot 20 and the South 15 feet of the West one-half (W 1/2) of Lot 21, all in BINGHAM-COPP TRACT, a subdivision in the Town of Palm Beach, Palm Beach County, Florida, as recorded in Plat Book 18, Page 6, Palm Beach County Public Records, containing 0.1894 acres, more or less;

Together with an easement for the use of the tunnel under South Ocean Boulevard (State Road A1A) as described in that certain Quit Claim Easement Deed recorded in Official Record Book 2327, Page 1970 of the Palm Beach County Public Records;

and

Being the South 358.00 feet of the North 403.00 feet of the South 1170.00 feet of Government Lot 2, Section 35, Township 43 South, Range 43 East, Palm Beach County, Florida, lying East of Ocean Boulevard (State Road A1A) as now laid out and in use; together with all riparian and littoral rights, if any, thereunto appertaining.

14

EXHIBIT "B"    ORB  7933 Pg    39

### LEGAL DESCRIPTION

A parcel of land lying within the North 610.00 feet of the South 1170.00 feet of Government Lot 2 of Section 35, Township 43 South, Range 43 East in the Town of Palm Beach, Palm Beach County, Florida, lying West of Ocean Boulevard (S.R. AIA) Right-of-Way and more particularly described as follows, to wit:

Commencing at a point in the West face of an existing seawall on the East shore of Lake Worth, which point is 560.00 feet North of, measured at Right Angles to, the South line of Government Lot 2 of said Section 35; Thence S 88° 12' 07" E, parallel to said South line of Government Lot 2 (all other bearings refer thereto) a distance of 443.27 feet, to the Point of Beginning of the centerline of a strip of land being 12 feet in width; thence N 15° 22' 28" E along said centerline, a distance of 58.28 feet to a point hereinafter called Point 'A' and the Point of Termination of said centerline.

### TOGETHER WITH

Beginning at the above described Point 'A'; Thence S 88° 58' 21" E a distance of 8.37 feet; Thence N 01° 01' 39" E a distance of 20.0 feet; Thence N 88° 58' 21" W a distance of 20.0 feet; Thence S 01° 01' 39" W a distance of 20.00 feet; Thence S 88° 58' 21" E a distance of 11.63 feet; To the Point of Beginning.

### CERTIFICATION

(NOT VALID UNLESS SEALED WITH EMBOSSED SURVEYOR'S SEAL)

I HEREBY CERTIFY that the Description and Sketch of the property shown hereon was completed under my direction on _MAY 27, 1993_, and that said description is true and correct to the best of my knowledge and belief.

I FURTHER CERTIFY that this Description and Sketch meets the MINIMUM TECHNICAL STANDARDS FOR SURVEYS set forth by the FLORIDA BOARD OF LAND SURVEYORS pursuant to Section 472.027 Florida State Statutes, NO SEARCH OF THE PUBLIC RECORDS has been made by this Office. The description is based on information furnished by client or client's representative.

Date of Signature: _5-27-93_

*Franklin A. Shutts*
Franklin A. Shutts
Registered Land Surveyor
Florida Certificate No. 2780

This legal description is to be attached to and made a part of the sketch.

| DRN. | SCALE | **Hutcheon Engineers** | DATE 5-27-93 | SHEET |
| F.S. | NOTEBOOK NO. PG. | A DIVISION OF KIMLEY-HORN AND ASSOCIATES, INC. © 1983 KIMLEY-HORN AND ASSOCIATES, INC. 4431 EMBARCADERO DRIVE, WEST PALM BEACH, FL 33407 WEST PALM BEACH    STUART | PLAT & DWG. NO. 93-1-7485.00 | 1 of 2 |

Case 1:20-cv-07311-LAK   Document 14-92   Filed 09/15/20   Page 21 of 22



ORB 7933 Pg 40

20.00'
N88°58'21"W

20.00'
S00°01'39"W

N01°01'39"E
20.00'

S88°58'21"E
20.00'

POINT "A"
TERMINUS POINT OF
112' STRIP

MAR·A·LAGO

N15°22'28"E  58.28'
& 12' STRIP

LAKE WORTH

N6°08'26"W 74.32'

EXISTING SEAWALL

443.27'
S88°12'07"E

POINT OF BEGINNING

POINT OF
COMMENCE-
MENT

90°00'00"

560'

90°00'00"

SOUTHERN BLVD.

S88°12'07"E

SOUTH LINE GOV'T. LOT 2 7   SEC. 35, TWP. 43 S0., RGE. 43 E.

SEC. 2, TWP. 44 S0., RGE. 43 E.

NOTE: THIS DRAWING DOES NOT REPRESENT A FIELD
SURVEY AND IS BASED ON OFFICE INFORMATION ONLY.

This sketch is to be attached to and made a part of the legal
description.

| | SCALE 1"=10' | **Hutcheon Engineers** | DATE 5-27-93 | SHEET |
| CHK. | NOTEBOOK | A DIVISION OF KIMLEY-HORN AND ASSOCIATES, INC. | FILE & DWG. NO. | |
| F.S. | NO.      PG. | © 1983 KIMLEY-HORN AND ASSOCIATES, INC. | 95-1.7485.00 | 2 or 2 |
| DRW. | | 4431 EMBARCADERO DRIVE, WEST PALM BEACH, FL 33407 | | |
| CK. | | WEST PALM BEACH                          STUART | | |

FILED: NEW YORK COUNTY CLERK 06/15/2020 08:36 AM          INDEX NO. 160694/2019
NYSCEF DOC. NO. 91   Case 1:20-cv-07311-LAK   Document 14-92   Filed 09/15/20   Page 22 of 22   RECEIVED NYSCEF: 06/15/2020

RECORD VERIFIED   DOROTHY H WILKEN
CLERK OF THE COURT - PB COUNTY, FL

## EXHIBIT "C"

## WOODBRIDGE ROAD MITIGATION SPECIFICATION

1.    Construct a 6'0" high solid, concrete block and stucco wall adjacent to the Loomis southern property line continuing along the Mar-a-Lago property line until it intersects the seawall at its western limits. This wall will be wholly constructed on Mar-a-Lago property.

2.    To remove the Australian pine hedge and fence currently in place behind the Loomis property on an East/West axis.

3.    To install a solid hedge row of Mimusops Roxberghiana (kanapali) or Conocarpus Erectus (silver buttonwood) var, sercius, the genus and species to be decided upon based on the availability at the time of installation. The hedge row will be 12' (twelve feet) at the time of planting. Spacing of plant materials will follow sound horticultural practices usual for the species selected in order to maximize the potential growth characteristics of each plant consistent with the buffering objective (i.e., Mimusops, 2 plants per hold at 30" o.c., buttonwood double staggered row at 4' o.c., calophyllum, 5' o.c.)

4.    A setback from the wall to the hedge row material, consistent with the location of the footing and its width. A 24-36" setback is anticipated.

5.    A maintained height of 20' (twenty feet) maximum, with periodic pruning during the warmer months on a twice yearly basis or more frequently if necessary to encourage growth and density. The minimum maintained height of 12' (twelve feet) used at installation, will be used as a minimum maintained height during pruning operations.

6.    That maintenance of the hedge will follow a prescribed schedule of fertilization; 4 times per year with an approved 50% organic 12-16-8 or equivalent formula which may vary with seasonal needs.

7.    Existing plant materials beyond the Loomis property in the buffer (moving in a westerly direction) will be retained unless they are in the way of construction. Some specimen trees in the rear yards of the neighboring properties are greater than 30' (thirty feet) in height. It would be almost impossible to replace this existing buffer. Replace current 4-1/2 to 5' Ficus Nitida hedge with a 6' concrete block wall as previously described.

8.    Further West from the existing 30' hedge, to continue the 6' masonry wall to the seawall while installing a 6' Ficus Nitide hedge on the South side of the hedge beyond the staff quarters building.