# Exhibit 1

*To be Argued by:*
MARC E. KASOWITZ
*(Time Requested: 30 Minutes)*

APL-2020-00009
New York County Clerk's Index No. 150522/17

# Court of Appeals

*of the*

# State of New York

SUMMER ZERVOS,

*Plaintiff-Respondent,*

– against –

DONALD J. TRUMP,

*Defendant-Appellant.*

## BRIEF FOR DEFENDANT-APPELLANT

KASOWITZ BENSON TORRES LLP
*Attorneys for Defendant-Appellant*
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

Date Completed: March 9, 2020

## RULE 500.13(a) RELATED LITIGATION STATEMENT

This appeal affects other actions against the President, including *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., N.Y. Cnty.), and *Carroll v. Trump*, No. 160694/2019 (Sup. Ct., N.Y. Cnty.), in which the President has moved for a stay pending this appeal; that motion is *sub judice*.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 8

QUESTION PRESENTED ..................................................................... 8

STATEMENT OF THE CASE................................................................. 9

ARGUMENT ......................................................................................... 10

I.     UNDER THE U.S. CONSTITUTION, THE PRESIDENT EMBODIES THE EXECUTIVE BRANCH................................................ 10

II.    THE FEDERAL JUDICIARY, BUT NOT STATE COURTS, MAY EXERT CONTROL OVER THE EXECUTIVE BRANCH ....................... 13

III.   ALLOWING STATE COURT JURISDICTION CONFLICTS WITH ARTICLE II.............................................................................. 15

      A.    State Courts Are Bound By Article II. ...............................................15

      B.    State Courts May Not Control the Official Conduct of Federal Officials. .........................................................................16

      C.    State Courts May Not Control the President in Any Capacity. ..........17

IV.   THE FIRST DEPARTMENT MISREAD THE SUPREMACY CLAUSE AND *CLINTON V. JONES* ........................................................ 19

      A.    The Constitution Itself Displaces State Court Jurisdiction Over the President. ......................................................................19

      B.    *Clinton v. Jones* Recognized That the Presidency and the President Are Not Separable. ..............................................................21

      C.    *Clinton v. Jones* Explicitly Stated That Its Reasoning Did Not Apply to State Court Actions. ...........................................................22

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 5 of 40

D.      The Concerns Raised by *Clinton v. Jones* in Footnote 13 Were
        Not Limited to Cases Involving the President's Official
        Conduct. ............................................................................................23

E.      The Mere Exercise of Jurisdiction Constitutes Impermissible
        Control Over the President. ...............................................................24

F.      Temporary State Court Immunity Does Not Place the President
        "Above the Law." ..............................................................................28

CONCLUSION ........................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ableman v. Booth*,
    62 U.S. 506 (1858)................................................................3, 16

*Alvarez v. Snyder*,
    264 A.D.2d 27 (1st Dep't 2000) ...................................8, 28

*In re Armand Schmoll, Inc. v. Fed. Reserve Bank of NY*,
    286 N.Y. 503 (1941) ......................................................3, 17

*Buchanan v. Alexander*,
    45 U.S. 20 (1846) ...............................................................16

*Cheney v. U.S. Dist. Court for D.C.*,
    542 U.S. 367 (2004)......................................................26, 28

*Clinton v. Jones*,
    520 U.S. 681 (1997).....................................................*passim*

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1983)........................................................3, 15

*Felder v. Casey*,
    487 U.S. 131 (1988)......................................................2, 15

*Fieger v. Glen Oaks Vill.*,
    309 N.Y. 527 (1956) ...........................................................17

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)......................................................4, 11

*Hancock v. Train*,
    426 U.S. 167 (1976)...........................................................20

*Haywood v. Drown*,
    556 U.S. 729 (2009)...........................................................19

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ....................................................5, 18

*In re Lindsey,*
    158 F.3d 1263 (D.C. Cir. 1998) .......................................................................12

*McClung v. Silliman,*
    19 U.S. 598 (1821) ..........................................................................................16

*McCulloch v. Maryland,*
    17 U.S. 316 (1819) ................................................................................2, 15, 25

*Mesa v. California,*
    489 U.S. 121 (1989) ........................................................................................27

*Mitchum v. Foster,*
    407 U.S. 225 (1972) ........................................................................................27

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) ..................................................................................*passim*

*Rogers v. Calumet Nat'l Bank of Hammond,*
    358 U.S. 331 (1959) ........................................................................................16

*Scripps-Howard Radio v. F.C.C.,*
    316 U.S. 4 (1942) ............................................................................................23

*In re Tarble,*
    80 U.S. 397 (1871) ..........................................................................................16

*Tennessee v. Davis,*
    100 U.S. 257 (1879) ........................................................................................27

*Trump v. Hawaii,*
    138 S.Ct 2392 (2018). .....................................................................................28

*Trump v. Mazars USA, LLP,*
    940 F.3d 710 (D.C. Cir. 2019) .....................................................................5, 12

*Trump v. Vance,*
    941 F.3d 631 (2d Cir. 2019) .........................................................................4, 18

*United States v. Curtiss-Wright Export Corp.,*
    299 U.S. 304 (1936) ........................................................................................11

*United States v. Nixon,*
    418 U.S. 683 (1974).................................................................26, 27

*Wasservogel v. Meyerowitz,*
    300 N.Y. 125 (1949).................................................................17

*Watson v. Philip Morris Companies, Inc.,*
    551 U.S. 142 (2007).................................................................27

*Youngstown Sheet and Tube Co. v. Sawyer,*
    343 U.S. 579 (1952).................................................................5, 11

*Zervos v. Trump,*
    171 A.D.3d 110 (1st Dep't 2019) ........................................*passim*

*Zervos v. Trump,*
    2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7,
    2020) ..........................................................................................10

*Zervos v. Trump,*
    59 Misc.3d 790 (Sup. Ct., N.Y. Cnty. 2018) ........................9

**Constitutional Provisions**

N.Y. Const. art. VI, § 3 .................................................................8

U.S. Const. art. II .................................................................*passim*

U.S. Const. art. VI, cl. 2 .................................................................*passim*

**Statutes**

28 U.S.C. § 1442(a) .................................................................27

CPLR § 5602(b).................................................................8

**Other Authorities**

Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and
    Immunities: The Nixon and Clinton Cases*, 108 Harv. L. Rev. 701,
    713 (1995).................................................................12

Brett M. Kavanaugh, *Separation of Powers During the Forty-Fourth
    Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1462 (2009) ..........28

Ken Gromley, *The Death of American Virtue: Clinton v. Starr* (2010) .................27

Jay S. Bybee, *Who Executes the Executioner?,* 2-SPG NEXUS: J. Opinion 53 (1997) ...............................................12

Laurence Tribe, *American Constitutional Law* (3d ed. 2000) .................................12

O'Connor & Hermann, *The Courts: The Perils of Paula, in* THE CLINTON SCANDAL AND THE FUTURE OF AMERICAN GOVERNMENT (Rozell & Wilcox ed. 2000) ................................................27

Richard A. Posner, *Law, Pragmatism, and Democracy* (2003) ............................27

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 10 of 40

Defendant-appellant President Donald J. Trump respectfully submits this brief in support of his appeal from the March 14, 2019 decision and order of the Appellate Division, First Department, *Zervos v. Trump*, 171 A.D.3d 110 (1st Dep't 2019) ("*Zervos*"), denying his motion to dismiss or stay the action while he is in office.

## PRELIMINARY STATEMENT

The question on this appeal -- an unresolved "important constitutional issue[]," *Clinton v. Jones*, 520 U.S. 681, 690-91 (1997) -- is whether state courts are barred by the U.S. Constitution from exercising jurisdiction over a U.S. President while he or she is in office. As shown below, the text and structure of the Constitution, including the Supremacy Clause, and the decisions of the U.S. Supreme Court, compel the conclusion that state court cases against a President -- who, under Article II of the Constitution, uniquely embodies an entire branch of the federal government (*see infra* Part I) -- must be dismissed or stayed while the President is in office.

In *Clinton v. Jones*, a lawsuit against President Clinton in federal court allegedly arising, like this one, from the President's unofficial conduct, President Clinton claimed that he was immune from suit while in office. The Supreme Court rejected the claim, holding that, under the Separation of Powers doctrine, while the President does have "vast and important" overriding duties and responsibilities

under Article II of the Constitution, 520 U.S. at 697-98, those duties and responsibilities do not override the "core Article III jurisdiction" of the federal judiciary, as a coequal branch of the federal government, to decide cases and controversies, including against the President. *Id.* at 701-06.[1]

By contrast, there is no basis, under the Separation of Powers doctrine or otherwise, for state courts to assert jurisdiction over the President. Unlike federal courts, state courts are not a coequal branch of the federal government and have no jurisdiction under the Constitution to hear cases and controversies against the President. To the contrary, state courts are expressly bound by the Constitution and, unlike federal courts, have no authority coequal to the authority granted the President or any other part of the federal government:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. *See McCulloch v. Maryland*, 17 U.S. 316, 436 (1819) (Under the Supremacy Clause, "the states have no power . . . to retard, impede, burden, or in any manner control" the federal government.). *See also Felder v.*

---

[1]      The Supreme Court noted that it did not need to decide and was not deciding the issue on this appeal, whether state court jurisdiction over the President would constitute impermissible direct control over the federal government. *Clinton v. Jones*, 520 U.S. at 690-91, 691 n.13. As shown herein, it does.

*Casey*, 487 U.S. 131, 151 (1988) ("Just as federal courts are constitutionally obligated to apply state law to state claims, *see* [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1983)], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.'") (citation omitted).

As this Court, like the U.S. Supreme Court, has long held, state courts thus may not, consistent with the Supremacy Clause, exercise jurisdiction over *any* federal official, let alone the President, in a manner which would interfere with his or her official duties.  *See, e.g.*, *Ableman v. Booth*, 62 U.S. 506, 524 (1858) (It would be unconstitutional for "the authority of a State, in the form of judicial process or otherwise, [to] attempt to control [any] authorized officer or agent of the United States, in any respect," in the performance of his or her official duties.); *In re Armand Schmoll, Inc. v. Fed. Reserve Bank of N.Y.*, 286 N.Y. 503, 509 (1941) (A state court may not "control the manner in which a federal agency performs or attempts to perform its functions and duties . . . .  Assumption of such power would hamper orderly government and ignore the division of fields of government of state and nation created by the Constitution."), *cert denied*, 315 U.S. 818 (1942).

The President, however, is unlike any other federal official: the President, under the Constitution, embodies the Executive Branch and any restriction on the President necessarily restrains the Executive Branch.

3

For this reason, as the Supreme Court made clear in *Clinton v. Jones*, a claim of Presidential immunity in state court may very well "present a more compelling case" than such a claim in federal court:

> Because the Supremacy Clause makes federal law "the supreme Law of the Land," any direct control by a state court over the President, who has principal responsibility to ensure that those laws are "faithfully executed," may implicate concerns that are quite different from the interbranch separation-of-powers questions addressed here.

520 U.S. at 691, 691 n.13 (citations omitted). *See also Trump v. Vance*, 941 F.3d 631, 642-43 (2d Cir. 2019) (acknowledging, without deciding, that "the President may be correct that state courts lack the authority to issue him orders"), *cert. granted*, 140 S.Ct. 659 (Mem) (U.S. Dec. 13, 2019) (No. 19-635).

The President's immunity while in office from being sued in state court -- including in cases arising from alleged unofficial conduct -- thus derives from the President's "unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). Article II of the Constitution, which vests "[t]he executive Power" in a single, elected "President of the United States of America," U.S. Const. art. II, § 1, cl. 1, "'makes a single President responsible for the actions of the Executive Branch,'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 496-97 (2010) (quoting *Clinton v. Jones*, 520 U.S. at 712-13 (Breyer, J., concurring)) -- the "'sole branch which the constitution requires to be

always in function,'" *Clinton v. Jones*, 520 U.S. at 717 (Breyer, J., concurring) (quoting 10 *Works of Thomas Jefferson* 401 (P. Ford ed. 1905) (Letter from Thomas Jefferson to George Hay (June 17, 1807))). *See also Clinton v. Jones*, 520 U.S. at 697 (The President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties."); *id.* at 698 ("[T]he Presidency concentrates executive authority 'in a single head in whose choice the whole Nation has a part . . . .'") (quoting *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 653 (1952) (Jackson, J., concurring)); *Trump v. Mazars USA, LLP*, 940 F.3d 710, 725-26 (D.C. Cir. 2019) (because "the constitutional authority assigned to the Office of the President can be exercised only by the flesh-and-blood human occupying that office, . . . as a practical matter, a restriction on the person might constrain the branch of government."), *cert. granted*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19-715).

And, as this Court has held, a court's exercise of jurisdiction over a person is "fundamentally about a court's control over the person of the defendant," *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (2012). Accordingly, the very exercise of jurisdiction by a state court over the President would constitute impermissible "direct control," *Clinton v. Jones*, 520 U.S. at 691 n.13, over the federal government.

State courts therefore may not, consistent with the Supremacy Clause and

Article II, exercise jurisdiction over the President while he or she is in office, and,

in holding otherwise, the court below fundamentally erred.  In doing so, the First

Department misread *Clinton v. Jones* as "clearly and unequivocally

demonstrat[ing] that the presidency and the President are indeed separable."

*Zervos*, 171 A.D.3d at 124.  *Clinton v. Jones* did no such thing.  In fact, whether

the Presidency and the President are "separable" was irrelevant to the Supreme

Court's Separation of Powers analysis, under which the federal courts can have

"*partial agency* in, or . . . *controul* over the acts" of the Presidency.  *Clinton v.

Jones*, 520 U.S. at 703 (emphasis in original) (citation omitted) ("The fact that a

federal court's exercise of its traditional Article III jurisdiction may significantly

burden the time and attention of the Chief Executive is not sufficient to establish a

violation of the Constitution.").  By contrast, there is no basis in the Constitution

for state courts to have any "agency in" or "controul over," or to place any burden

on, the Chief Executive, or any other branch of the federal government.

The First Department below also erroneously stated that "*Clinton v. Jones*

did not suggest that its reasoning would not apply to state court actions." *Zervos*,

171 A.D.3d at 126.  But that is *precisely* what *Clinton v. Jones* suggested:

> [B]ecause the claim of immunity is asserted in a federal
> court and relies heavily on the doctrine of separation of
> powers that restrains each of the three branches of the
> Federal Government from encroaching on the domain of

> the other two, it is not necessary to consider or decide whether a comparable claim might succeed in a state tribunal.

520 U.S. at 691 (citation omitted).  In fact, the Supreme Court took pains to note that a state court's exercise of jurisdiction over the President raised concerns under the Supremacy Clause "*quite different* from the interbranch separation-of-powers questions addressed here," *id.* at 691 n.13 (emphasis added) (citations omitted), which may "present a more compelling case for immunity," *id.* at 691.

The First Department also erroneously reasoned that "[s]ince there is no federal law conflicting with or displacing this defamation action, the Supremacy Clause does not provide a basis for immunizing the President from state court civil damages actions." *Zervos*, 171 A.D.3d at 114.  That misses the point.  This action is barred, not because there is conflicting federal defamation law, but because Article II of the Constitution, under which the President embodies the Executive Branch, "conflict[s] with" any state law allowing for state court jurisdiction over a President while he or she is in office.

And, contrary to the First Department's statement below, affording the President temporary immunity while in office in no way places the President "above the law." *Zervos*, 171 A.D.3d at 121.  In *Clinton v. Jones*, the Supreme Court specifically rejected that argument: it noted that the President "does not contend the occupant of the Office of the President is 'above the law'. . . [but]

argues merely for a postponement of the judicial proceedings that will determine whether he violated any law." 520 U.S. at 697. *See also Nixon v. Fitzgerald*, 457 U.S. at 758 n.41 (rejecting, as "rhetorically chilling but wholly unjustified," the contention that affording the President absolute immunity from suits relating to the "outer perimeter" of his or her official duties would place the President above the law, given the analogous absolute immunity from certain claims afforded to judges and members of Congress).  In short, affording the President temporary immunity in no way places the President "above the law" any more than the absolute immunity afforded Judges, *see generally Alvarez v. Snyder*, 264 A.D.2d 27, 34 (1st Dep't 2000), places them "above the law."

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal because the underlying action originated in the Supreme Court, New York County, the First Department granted leave to appeal the decision below, and the issue on appeal involves a question of law.  (R.1251 [Order Granting Leave To Appeal].)[2]  *See* N.Y. Const. art. VI, §§ 3(a), 3(b)(4); CPLR § 5602(b).

## QUESTION PRESENTED

Does the United States Constitution bar a state court from exercising jurisdiction over the President of the United States during his or her term in office?

---

[2]    Citations to the record on appeal are to "R.___."

The Appellate Division incorrectly answered this question in the negative.

## STATEMENT OF THE CASE

In her complaint, respondent asserts that she suffered $2,914 in lost earnings as a result of allegedly defamatory statements made by President Trump during his presidential campaign. (R.175 [Compl.] ¶ 81.) President Trump moved to dismiss or stay the action on the ground, among others, that the Supremacy Clause of the Constitution bars state-court jurisdiction against a President while he or she is in office. The trial court denied the motion, *Zervos v. Trump*, 59 Misc.3d 790 (Sup. Ct., N.Y. Cnty. 2018) (R.7 [Order Denying Motion to Dismiss]), and the President appealed.

On March 14, 2019, the First Department, in a 3-2 decision, affirmed, holding "that the Supremacy Clause was never intended to deprive a state court of its authority to decide cases and controversies under the state's constitution." *Zervos*, 171 A.D.3d at 114. Justice Mazzarelli dissented from this holding in an opinion joined by Justice Tom:

> [S]ubjecting the President to a state trial court's jurisdiction imposes upon him a degree of control by the State of New York that interferes with his ability to carry out his constitutional duty of executing the laws of the United States. Since the Supremacy Clause guarantees that any effort by the individual states to annul, minimize, or otherwise interfere with those laws will be struck down, it follows that any effort by a state court to control the President must likewise fail.

*Id.* at 131.

On October 18, 2019, the President filed and served notice of entry of the First Department's Order.  Notice of Entry, *Zervos v. Trump*, No. 150522/17 (Sup. Ct., N.Y. Cnty. Oct. 18, 2019), NYSCEF No. 248.

On January 7, 2020, the First Department granted President Trump's motion for leave to appeal to this Court and for a stay pending appeal.  *Zervos v. Trump*, 2020 WL 63397, 2020 N.Y. Slip Op. 60193(U) (1st Dep't Jan. 7, 2020) (R.1251 [Order Granting Leave To Appeal]).

## ARGUMENT

The text and structure of the Constitution, including the Supremacy Clause, and the decisions of the U.S. Supreme Court, compel the conclusion that state court cases against a President -- who, under Article II of the Constitution, uniquely embodies an entire branch of the federal government -- must be dismissed or stayed while the President is in office.

## I.   UNDER THE U.S. CONSTITUTION, THE PRESIDENT EMBODIES THE EXECUTIVE BRANCH

It is axiomatic that "[t]he President occupies a unique position in the constitutional scheme," given the President's duties and responsibilities under Article II of the Constitution.  *Nixon v. Fitzgerald*, 457 U.S. at 749-50.  Article II vests the nation's "executive Power" in a single, elected "President of the United States of America."  U.S. Const. art. II, § 1, cl. 1.  The President is "the sole organ

of the federal government in the field of international relations," *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936); is "Commander in Chief of the Army and Navy," U.S. Const. art. II, § 2, cl. 1; and alone is given the power to sign bills into law, the veto power, the appointment power, the treaty power and the duty to "take Care that the Laws be faithfully executed," *id.* art. I, § 7, art. II, §§ 2, 3.

Article II "makes a single President responsible for the actions of the Executive Branch." *Free Enter. Fund*, 561 U.S. at 496-97 ("[T]he President 'cannot delegate ultimate responsibility or the active obligation to supervise that goes with it[.]'") (quoting *Clinton v. Jones*, 520 U.S. at 712-13 (Breyer, J., concurring)); *Clinton v. Jones*, 520 U.S. at 698 ("[T]he Presidency concentrates executive authority 'in a single head in whose choice the whole Nation has a part . . . .'") (quoting *Youngstown Sheet and Tube Co.*, 343 U.S. at 653 (Jackson, J., concurring)).

Moreover, the Executive Branch, which is embodied by the President, "is the sole branch which the constitution requires to be always in function." *Id.* at 717 (Breyer, J., concurring) (quoting 10 *Works of Thomas Jefferson* 401 (P. Ford ed. 1905) (Letter from Thomas Jefferson to George Hay (June 17, 1807))); *see also Clinton v. Jones*, 520 U.S. at 697-98 (recognizing that the President must "devote his undivided time and attention to his public duties" as "grounded in the character

of the office that was created by Article II of the Constitution"). Unlike the President, Congress and the Judiciary, for example, can and do adjourn, and even when in session, they can and do function without all members having to be present. By contrast, "interference with a President's ability to carry out his public responsibilities is constitutionally equivalent to interference with the ability of the entirety of Congress, or the Judicial Branch, to carry out its public obligations." *Id.* at 713 (Breyer, J., concurring). *See also Trump v. Mazars USA, LLP*, 940 F.3d at 725-26 (because "the constitutional authority assigned to the Office of the President can be exercised only by the flesh-and-blood human occupying that office, . . . as a practical matter, a restriction on the person might constrain the branch of government.") (citing *In re Lindsey*, 158 F.3d 1263, 1286 (D.C. Cir. 1998) (Tatel, J. concurring in part and dissenting in part)), *cert. granted*, 140 S.Ct. 660 (Mem) (U.S. Dec. 13, 2019) (No. 19-715); R.327 [Laurence Tribe, *American Constitutional Law* § 4-1 (3d ed. 2000)] ("[U]nlike [the other branches of federal government], the President . . . is a person as well as an institution; and unlike other institutions, the Presidency is led by an individual . . . ."); Jay S. Bybee, *Who Executes the Executioner?*, 2-SPG NEXUS: J. Opinion 53, 60 (1997) ("The President is the only person who is also a branch of government."); Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and*

*Clinton Cases*, 108 Harv. L. Rev. 701, 713 (1995) ("Constitutionally speaking, the President never sleeps.").

## II. THE FEDERAL JUDICIARY, BUT NOT STATE COURTS, MAY EXERT CONTROL OVER THE EXECUTIVE BRANCH

In *Clinton v. Jones*, a lawsuit against President Clinton in federal court allegedly arising, like this one, from the President's unofficial conduct, President Clinton claimed that he was immune from suit while in office. The Supreme Court rejected the claim, holding that while the President does have "vast and important" overriding duties and responsibilities under Article II of the Constitution, 520 U.S. at 697-98, those duties and responsibilities do not override the "core Article III jurisdiction" of the federal judiciary, as a coequal branch of the federal government under the Separation of Powers doctrine, to decide cases and controversies. *Id.* at 701-06.

The Supreme Court reasoned that under the Separation of Powers doctrine, "interactions between the Judicial Branch and the Executive, even quite burdensome interactions" are permitted because the Constitution "'imposes upon the Branches a degree of overlapping responsibility.'" *Id.* at 702 (citations omitted). Inasmuch as the co-equal branches of the federal government thus have "*partial agency* in, or . . . *controul* over the acts of each other," *id.* at 703 (emphasis in original) (citation omitted), the Supreme Court noted, "a federal court's exercise of its traditional Article III jurisdiction *may* significantly burden

the time and attention of the Chief Executive," *id.* (emphasis added). In fact, it was precisely because federal courts *do* have jurisdiction over cases involving the President's official conduct that the Supreme Court found that federal courts may also exercise jurisdiction over cases involving unofficial conduct:

> In sum, "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." If the judiciary may severely burden the Executive Branch by reviewing the legality of the President's official conduct, and if it may direct appropriate process to the President himself, it must follow that the federal courts have power to determine the legality of his unofficial conduct.

*Clinton v. Jones*, 520 U.S. at 705 (citation omitted).

The Supreme Court in *Clinton v. Jones* thus plainly and explicitly held that the Constitution authorized federal court jurisdiction only under the Separation of Powers doctrine. The Supreme Court's Separation of Powers analysis, and its acknowledgement of the scope of Article II, demonstrate that the Supreme Court did *not*, as the First Department erroneously put it, "effectively recognize[] that the President is presumptively subject to civil liability" for private conduct. *Zervos* 171 A.D.3d at 124. If anything, the Supreme Court effectively presumed that the President is *not* subject to such civil liability -- but overcame that presumption only because the federal judiciary (unlike state courts) is a coequal branch permitted to burden the President.

14

## III. ALLOWING STATE COURT JURISDICTION CONFLICTS WITH ARTICLE II

### A. State Courts Are Bound By Article II.

The Supreme Court's reasoning in *Clinton v. Jones* has no application to state courts; there is no basis in the Constitution for state courts, unlike federal courts, to have any "agency in" or "control over," or to place any burden on, the Chief Executive. Unlike federal courts, state courts are not a coequal branch of the federal government and, accordingly, are not authorized by the Constitution to assert control or jurisdiction over the President. To the contrary, under the Supremacy Clause, state courts are expressly bound by the Constitution, including Article II:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. *See McCulloch v. Maryland*, 17 U.S. at 436 (Under the Supremacy Clause, "the states have no power . . . to retard, impede, burden, or in any manner control" the federal government.). *See also Felder*, 487 U.S. at 151 ("Just as federal courts are constitutionally obligated to apply state law to state claims, *see* [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1983)], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 25 of 40

that all the substantial rights of the parties under controlling federal law [are]

protected.'") (citation omitted).

**B.     State Courts May Not Control the Official Conduct of Federal Officials.**

Moreover, under the Supremacy Clause, as the U.S. Supreme Court has long

held, state courts may not exercise jurisdiction over *any* federal official, let alone

the President, in a manner which would interfere with his or her duties.  *See Rogers*

*v. Calumet Nat'l Bank of Hammond*, 358 U.S. 331, 331 (1959) ("[A] state court is

without power to review the discretion exercised by the Attorney General of the

United States under federal law."); *In re Tarble*, 80 U.S. 397, 409 (1871) ("It is

manifest that the powers of the National government could not be exercised with

energy and efficiency at all times, if its acts could be interfered with and controlled

for any period by . . . tribunals of another [state] sovereignty."); *Ableman v. Booth*,

62 U.S. 506, 524 (1858) (It would be unconstitutional for "the authority of a State,

in the form of judicial process or otherwise, [to] attempt to control [any] authorized

officer or agent of the United States, in any respect," in the performance of his or

her duties.); *Buchanan v. Alexander*, 45 U.S. 20, 20 (1846) (federal funds in the

hands of agent of the government may not "be diverted and defeated by state

process"); *McClung v. Silliman*, 19 U.S. 598, 605 (1821) (the "conduct [of an

officer of the federal government] can only be controlled by the power that created

him," *i.e.*, the federal government).

This Court has a long history of enforcing that principle. As this Court has held, a state court may not "control the manner in which a federal agency performs or attempts to perform its functions and duties . . . . Assumption of such power would hamper orderly government and ignore the division of fields of government of state and nation created by the Constitution." *In re Armand Schmoll, Inc. v. Fed. Reserve Bank of N.Y.*, 286 N.Y. 503, 509 (1941), *cert denied*, 315 U.S. 818 (1942). *See also Fieger v. Glen Oaks Vill.*, 309 N.Y. 527, 533 (1956) ("[S]tate courts have no power whatever to revise such official acts performed by Federal officials . . . ."); *Wasservogel v. Meyerowitz*, 300 N.Y. 125, 134 (1949) ("The courts of this State have never afforded, and do not now afford, any such remedies [in] . . . reviewing the acts of Federal officers . . . .").

## C. State Courts May Not Control the President in Any Capacity.

The President is unlike any other federal official: the President, under the Constitution, embodies the Executive Branch and any restriction on the President necessarily restrains the Executive Branch. (*See supra* Part I.)

For this reason, as the Supreme Court made clear in *Clinton v. Jones*, a claim of Presidential immunity in state court may very well "present a more compelling case" than such a claim in federal court:

> Because the Supremacy Clause makes federal law "the supreme Law of the Land," any direct control by a state court over the President, who has principal responsibility to ensure that those laws are "faithfully executed," may

> implicate concerns that are quite different from the interbranch separation-of-powers questions addressed here.

520 U.S. at 691, 691 n.13 (citations omitted).  *See also Trump v. Vance*, 941 F.3d at 642-43 (acknowledging, without deciding, that "the President may be correct that state courts lack the authority to issue him orders").

The President's immunity while in office from being sued in state court -- including in cases arising from alleged unofficial conduct -- thus derives from the President's "unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); *see supra* Part I.

And, because, as this Court has held, a court's exercise of jurisdiction over a person is "fundamentally about a court's control over the person of the defendant," *Licci*, 20 N.Y.3d at 340, the exercise of jurisdiction by a state court over the President would in itself constitute impermissible control over the federal government, because, as shown (*supra* Part I), the President embodies the Executive Branch.  Accordingly, the very exercise of jurisdiction by a state court over the President would constitute impermissible "direct control," *Clinton v. Jones*, 520 U.S. at 691 n.13, over the federal government.

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 28 of 40

## IV.   THE FIRST DEPARTMENT MISREAD THE SUPREMACY CLAUSE AND *CLINTON V. JONES*

In reaching its erroneous conclusion that state courts may exercise jurisdiction over the President, the First Department misread the Supremacy Clause and *Clinton v. Jones.*

### A.   The Constitution Itself Displaces State Court Jurisdiction Over the President.

The First Department erroneously reasoned that "[s]ince there is no federal law conflicting with or displacing this defamation action, the Supremacy Clause does not provide a basis for immunizing the President from state court civil damages actions." *Zervos*, 171 A.D.3d at 114.  That misses the point.  This action is barred, not because there is conflicting federal defamation law, but because Article II of the Constitution, under which the President embodies the Executive Branch, "conflict[s] with" and "displace[s]" any state law allowing for state court jurisdiction over a President while he or she is in office.[3]

Under the plain text of the Supremacy Clause, the U.S. Constitution itself supersedes state law: "[t]his Constitution . . . shall be the supreme Law of the

---

[3]    The First Department also erroneously concluded that "the Supremacy Clause confers 'supreme' status on federal laws, not on the status of a federal official," *Zervos*, 171 A.D.3d at 120, based on a dissenting opinion of Justice Thomas in *Haywood v. Drown*, 556 U.S. 729, 752 (2009), which the Supreme Court had previously rejected and rejected again in that case.  *Id.* at 740 n.7 (noting that "we again reject" the theory raised by the dissent).

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 29 of 40

Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. And, as shown (*supra* Part I), it is paramount to the U.S. Constitution itself that the President embodies the entire Executive Branch, is granted express and implicit powers, privileges, and immunities, and must be "always in function." No federal law is needed. Thus, in footnote 13 of *Clinton v. Jones*, the Supreme Court explicitly stated that the Supremacy Clause -- which "makes federal law 'the supreme Law of the Land,' Art. VI, cl. 2" -- may itself prohibit "any direct control by a state court over the President" because of Article II, which, the Court noted, gives the President "principal responsibility to ensure that those laws are 'faithfully executed.'" 520 U.S. at 691 n.13; *see also id.* at 697-98 (recognizing that the President must "devote his undivided time and attention to his public duties" as "grounded in the character of the office that was created by Article II of the Constitution").[4]

Indeed, where, as here, "the rights and privileges of the Federal Government at stake . . . find their origin in the Constitution," "*[p]articular* deference should be accorded that 'old and well-known rule'" that "the instruments of the United

---

[4]      Thus, no other federal law is required. *See also Nixon v. Fitzgerald*, 457 U.S. at 748 n.27, 756 (President's absolute immunity for conduct within the "outer perimeter" of his or her official duties stems from the incidental powers conveyed to the President by Article II as a "constitutional issue" and without any "explicit affirmative action by Congress.").

States" have "immunity . . . from state control in the performance of their duties."

*Hancock v. Train*, 426 U.S. 167, 178-79 (1976) (quoting *Johnson v. Maryland*, 254

U.S. 51, 57 (1920) (Holmes, J.) (emphasis added)) (a state regulation requiring

environmental permits could not, under the Supremacy Clause, apply to federal

installations in the absence of clear and unambiguous Congressional action

explicitly allowing states to require permits for federal installations).

### B.   *Clinton v. Jones* Recognized That the Presidency and the President Are Not Separable.

The First Department stated that *Clinton v. Jones* "clearly and unequivocally

demonstrat[ed] that the Presidency and the President are indeed separable."

*Zervos*, 171 A.D.3d at 124.  *Clinton v. Jones* did no such thing.  To the contrary,

the Supreme Court expressly agreed that the President "occupies a unique office

with powers and responsibilities so vast and important that the public interest

demands that he devote his undivided time and attention to his public duties."  520

U.S. at 697-98.

In fact, whether the Presidency and the President are "separable" was

irrelevant to the Supreme Court's Separation of Powers analysis.  Under that

analysis, as the Supreme Court held, federal courts can exercise jurisdiction over

the President because the Federal Judicial Branch can have "*partial agency* in, or

. . . *controul* over the acts" of the Executive Branch.  *Clinton v. Jones*, 520 U.S. at

703 (emphasis in original) (citation omitted) ("The fact that a federal court's

exercise of its traditional Article III jurisdiction may significantly burden the time and attention of the Chief Executive is not sufficient to establish a violation of the Constitution.").  By contrast, there is no basis in the Constitution for state courts to have any "agency in" or "controul over," or to place any burden on, the President as the embodiment of the Executive Branch of the federal government.

The First Department's erroneous conclusion that the "presidency and the President are indeed separable," was based, in large part, on its contention that the Supreme Court had "credited" the plaintiff's "historical evidence" concerning Presidential immunity. *Zervos*, 171 A.D.3d at 123-24 (quoting *Clinton v. Jones*, 520 U.S. at 696).  Again, that is not so.  In fact, the Supreme Court explicitly rejected the conflicting historical evidence submitted both by the plaintiff and President Clinton, concluding that it "yields no net result" and "largely cancel[s] each other." *Clinton v. Jones*, 520 U.S. at 696-97 (citation omitted).

### C. *Clinton v. Jones* Explicitly Stated That Its Reasoning Did Not Apply to State Court Actions.

The First Department below also erroneously stated that "*Clinton v. Jones* did not suggest that its reasoning would not apply to state court actions." *Zervos*, 171 A.D.3d at 126.  But that is *precisely* what *Clinton v. Jones* suggested:

> [B]ecause the claim of immunity is asserted in a federal court and relies heavily on the doctrine of separation of powers that restrains each of the three branches of the Federal Government from encroaching on the domain of the other two, it is not necessary to consider or decide

Case 1:20-cv-07311-LAK    Document 14-101    Filed 09/15/20    Page 32 of 40

> whether a comparable claim might succeed in a state
> tribunal.

520 U.S. at 691 (citation omitted).  In fact, the Supreme Court took pains to note

that a state court's exercise of jurisdiction over the President raised concerns under

the Supremacy Clause "*quite different* from the interbranch separation-of-powers

questions addressed here," *id.* at 691 n.13 (emphasis added) (citations omitted),

which may "present a more compelling case for immunity," *id.* at 691.[5]

### D. The Concerns Raised by *Clinton v. Jones* in Footnote 13 Were Not Limited to Cases Involving the President's Official Conduct.

The First Department deemed the concerns raised by the Supreme Court in

footnote 13 of *Clinton v. Jones* -- "any direct control by a state court over the

President . . .  may implicate [Supremacy Clause] concerns," 520 U.S. at 691 n.13

-- inapplicable to this state court action, because, the court below stated, the cases

cited in that footnote "suggest only that the Supreme Court was concerned with a

---

[5]      The First Department also erroneously relied on the fact that Congress did not "'respond [to *Clinton v. Jones*] with appropriate legislation.'" *Zervos*, 171 A.D.3d at 126 (quoting *Clinton v. Jones*, 520 U.S. at 709).  First, following *Clinton v. Jones*, there was no need, let alone a pressing need, for Congress to pass a law immunizing the President from actions in state court, inasmuch as the Supreme Court had noted in *Clinton v. Jones* that the Supremacy Clause likely already accomplished the same result.  Moreover, as the U.S. Supreme Court has recognized, "[t]he search for significance in the silence of Congress is too often the pursuit of a mirage.  [Courts] must be wary against interpolating [their] notions of policy in the interstices of legislative provisions." *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 11 (1942).

state's exercise of control over the President in a way that would interfere with his execution of federal law." *Zervos*, 171 A.D.3d at 125.

But that cannot be so. As shown (*supra* at 16-17), it has long been firmly established by the Supreme Court and this Court that state courts may not interfere with the "execution of federal law" by *any* federal official. If, as the First Department held, the Supreme Court had been concerned only with state court cases involving the President's official conduct, footnote 13, and the discussion in the accompanying text, would have been entirely superfluous. Rather, the Supreme Court made clear that it was referring to state court jurisdiction over cases involving *unofficial* conduct by the President. The Supreme Court in *Clinton v. Jones* explicitly stated that the issue it did not need to decide was "whether a *comparable claim* might succeed in a state tribunal," 520 U.S. at 691 (emphasis added) -- *i.e.*, a claim comparable to the claim at issue in *Clinton v. Jones*, which involved President Clinton's private, unofficial conduct.[6]

### E.    The Mere Exercise of Jurisdiction Constitutes Impermissible Control Over the President.

The First Department erroneously concluded that state courts could exercise jurisdiction without engaging in impermissible "direct control" over the President,

---

[6]    As the First Department itself acknowledged: "aside from the forum, plaintiff's case is materially indistinguishable from *Clinton v. Jones*" and, as in *Clinton v. Jones*, "Plaintiff's state law claims . . . are based purely on [the President's] pre-presidential unofficial conduct." 171 A.D.3d at 125.

so long as they avoided finding the President in contempt, because state courts could make "reasonable accommodations . . . with respect to the President's schedule" and manage discovery so as to "minimize the impact on his ability to carry out his official duties." *Zervos*, 171 A.D.3d at 127-28.  That misses the point.  As shown (*supra* at 18), the exercise of jurisdiction is fundamentally about control, and because the President embodies the Executive Branch and must "be always in function," a state court's exercise of jurisdiction in itself would constitute impermissible state control over the Executive Branch.

In any event, a state court may not, under the Supremacy Clause, determine what constitutes "reasonable accommodations" for the President or what is a constitutionally permissible "impact" on the President's "ability to carry out his official duties."  By contrast, federal courts, as a coequal branch, may do so; as shown, they are permitted to intrude into the authority and functions of -- or have "*partial agency* in, or [] *controul* over" -- the Executive Branch in the first place. *Clinton v. Jones*, 520 U.S. at 703.  State courts, on the other hand, "have no power . . . to retard, impede, burden, or in any manner control" the federal government, *McCulloch v. Maryland*, 17 U.S. at 322.

Likewise, while the First Department correctly recognized that "[i]t is likely that holding the President in contempt would be the kind of impermissible 'direct control' contemplated by *Clinton v. Jones* and violative of the Supremacy Clause,"

*Zervos*, 171 A.D.3d at 127 (quoting *Clinton v. Jones*, 520 U.S. at 691 n.13), it failed to recognize that the power of the courts to issue contempt or other orders itself also constitutes impermissible direct control.  "To require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government."  *United States v. Nixon*, 418 U.S. at 691-92; *see also Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 389-90 (2004) (courts should "avoid[] whenever possible" "'occasion[s] for constitutional confrontation'" with the Executive Branch) (citations omitted).

As the dissent in *Zervos* correctly concluded, "once personal jurisdiction is conferred over the President," the Supremacy Clause is violated by the "immediate and ever-present power to issue an order requiring him to take some action, as mundane as directing him to produce discovery or as consequential as mandating his appearance in court on a date certain," as well as by "the very power to [hold the President in contempt]" -- which acts as a "sword of Damocles hanging over the President's head." *Zervos*, 171 A.D.3d at 137 (Mazzarelli, J., dissenting in part).[7]

---

[7]     Another instance of impermissible "direct control" that clearly violates the Supremacy Clause would be a state court ordering a President to produce "Presidential communications," which are "presumptively privileged." *United*

26

Case 1:20-cv-07311-LAK   Document 14-101   Filed 09/15/20   Page 36 of 40

The appropriate answer is to postpone lawsuits against the President until he

or she is no longer in office.  It is not an appropriate answer, as the dissent pointed

out, to allow "the litigation to proceed until such time as a constitutional crisis is at

hand." *Zervos*, 171 A.D.3d at 137 (Mazzarelli, J., dissenting in part).[8]

---

*States v. Nixon*, 418 U.S. at 711-12.  Once the President asserts executive privilege
over his or her communications -- a privilege which "derive[s] from the supremacy
of [Executive Branch] within its own assigned area of constitutional duties," *id.* at
705-06 -- courts evaluating that privilege are placed on a constitutional "collision
course" with the Executive Branch, *Cheney*, 542 U.S. at 389.  While this places a
federal court -- as a "coequal branch[] of the Government" -- in an "awkward
position of evaluating the Executive's claims of confidentiality and autonomy,
[that] pushes to the fore difficult questions of separation of powers and checks and
balances," *id.*, a state court -- which is not a coequal branch of government -- under
the Supremacy Clause, may not control the President in an area where the
President is constitutionally "suprem[e]," *United States v. Nixon*, 418 U.S. at 705-
06.

[8]     As the Supreme Court in *Clinton v. Jones* explained, a state court's exercise
of jurisdiction over the President raises concerns over protecting federal officers
from "possible local prejudice."  520 U.S. at 691 (citing 28 U.S.C. § 1442(a); *Mesa
v. California*, 489 U.S. 121, 125-26 (1989)); *see also Watson v. Philip Morris
Companies, Inc.*, 551 U.S. 142, 150 (2007) (State-court proceedings may reflect
"'local prejudice' against unpopular . . . federal officials."); *Mitchum v. Foster*, 407
U.S. 225, 242 (1972) (federal courts are the "guardians of the people's federal
rights"); *Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (requiring federal executive
branch officials to submit to state court jurisdiction could "paralyze the operations
of the government").  As numerous commentators have pointed out, "the normal
incentive structures that we have to keep civil litigation in check don't apply" to
lawsuits against the President because of those "who would have enormous
amounts to gain by destabilizing [a] presidency."  R.565 [Ken Gormley, *The Death
of American Virtue: Clinton v. Starr* 223 (2010)]; *see also* R.560 [O'Connor &
Hermann, *The Courts: The Perils of Paula, in* THE CLINTON SCANDAL AND THE
FUTURE OF AMERICAN GOVERNMENT 40, 56 (Rozell & Wilcox ed. 2000)]; R.317
[Richard A. Posner, *Law, Pragmatism, and Democracy* 319 (2003)].  These

**F.      Temporary State Court Immunity Does Not Place the President
"Above the Law."**

Contrary to the First Department's statement below, affording the President

temporary immunity while in office in no way places the President "above the

law." *Zervos*, 171 A.D.3d at 121.  In *Clinton v. Jones*, the Supreme Court

specifically rejected that argument: it noted that the President "does not contend

the occupant of the Office of the President is 'above the law'. . . [but] argues

merely for a postponement of the judicial proceedings that will determine whether

he violated any law."  520 U.S at 697.  *See also Cheney*, 542 U.S. at 382

(principles that provide the President unique deference "do not mean that the

'President is above the law.'  Rather they simply acknowledge that a coequal

branch of Government . . . [must] give recognition to the paramount necessity of

protecting the Executive Branch from vexatious litigation that might distract it

from the energetic performance of its constitutional duties") (citation omitted);

*Nixon v. Fitzgerald*, 457 U.S. at 758 n.41 (rejecting, as "rhetorically chilling but

wholly unjustified," the contention that affording the President absolute immunity

from suits relating to the "outer perimeter" of his or her official duties would place

the President above the law, given the analogous absolute immunity from certain

claims afforded to judges and members of Congress); Brett M. Kavanaugh,

---

concerns go beyond any "particular President" to "the Presidency itself."  *Trump v.
Hawaii*, 138 S.Ct 2392, 2402 (2018).

*Separation of Powers During the Forty-Fourth Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1462 (2009) ("The point is not to put the President above the law . . . but simply to defer litigation . . . until the President is out of office.").

Thus, the President, who may be sued in state court after leaving office, is no more "above the law" than is a debtor granted an automatic stay during bankruptcy proceedings. Indeed, Judges enjoy absolute, not just temporary immunity, *Alvarez*, 264 A.D.2d at 34, but that does not mean that they are above the law either. In all these cases, the immunity is there for compelling reasons and itself is part of the "law."

## **CONCLUSION**

For the foregoing reasons, the First Department's decision in *Zervos* should be reversed, and this action should be dismissed or stayed while the President is in office.

Respectfully submitted,

Dated: March 9, 2020

KASOWITZ BENSON TORRES LLP

By: _____

Marc E. Kasowitz
Daniel R. Benson
Christine A. Montenegro
Paul J. Burgo

1633 Broadway

29

New York, New York 10019
(212) 506-1700
mkasowitz@kasowitz.com
dbenson@kasowitz.com
cmontenegro@kasowitz.com
pburgo@kasowitz.com

*Attorneys for Defendant-Appellant Donald J. Trump*

# NEW YORK STATE COURT OF APPEALS
## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to 22 NYCRR PART 500.l(j) that the foregoing brief was

prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:

> Name of Typeface:  Times New Roman
> Point size:  14
> Line spacing:  Double

*Word Count.*  The total number of words in this brief, inclusive of point headings

and footnotes and exclusive of pages containing the table of contents, table of

citations, proof of services, certificate of compliance, corporate disclosure

statement, question presented, statement of related cases, or any authorized

addendum containing statutes, rules, regulations, etc., is 7,177 words.

Dated:  March 9, 2020

> Marc E. Kasowitz
> Daniel R. Benson
> Christine A. Montenegro
> Paul J. Burgo
> KASOWITZ BENSON TORRES LLP
> 1633 Broadway
> New York, New York 10019
> (212) 506-1700
>
> *Attorneys for Defendant-Appellant*
> *Donald J. Trump*