# Exhibit 1

*To be Argued by:*
MARC E. KASOWITZ
*(Time Requested: 30 Minutes)*

APL-2020-00009
New York County Clerk's Index No. 150522/17

# Court of Appeals

*of the*

# State of New York

SUMMER ZERVOS,

*Plaintiff-Respondent,*

– against –

DONALD J. TRUMP,

*Defendant-Appellant.*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

KASOWITZ BENSON TORRES LLP
*Attorneys for Defendant-Appellant*
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

Date Completed: May 8, 2020

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................................................. 1

ARGUMENT ....................................................................................... 6

    I.    THE SUPREME COURT'S REASONING IN *CLINTON V. JONES* IN NO WAY SUPPORTS RESPONDENT'S POSITION. ........................................................................... 6

    II.    DUAL SOVEREIGNTY IS CONSISTENT WITH AND INDEED SUPPORTS PRESIDENTIAL IMMUNITY HERE. ........ 11

    III.    CONGRESSIONAL SILENCE IS IRRELEVANT WHERE THE CONSTITUTION ITSELF PRECLUDES STATE-COURT JURISDICTION. ................................................. 16

    IV.    THE CONSTITUTION BARS STATE-COURT JURISDICTION OVER THE PRESIDENT RELATED TO UNOFFICIAL CONDUCT. ........................................... 17

    V.    THE CONTEMPT POWER IS INDICATIVE OF THE COURT'S DIRECT CONTROL OVER THE PRESIDENT. ........... 21

    VI.    THE LAWSUITS CITED BY RESPONDENT ARE IRRELEVANT. ................................................................ 22

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Cheney v. U.S. Dist. Court for D.C,*
542 U.S. 367 (2004).................................................................17, 19

*Clinton v. Jones,*
520 U.S. 681 (1997)...............................................................*passim*

*Erie R. Co. v. Tompkins,*
304 U.S. 64 (1938)..........................................................................11

*Felder v. Casey,*
487 U.S. 131 (1981)........................................................................12

*Fieger v. Glen Oaks Vill.,*
309 N.Y. 527 (1956)......................................................................15

*Galicia v. Trump,*
65 Misc.3d 653 (Sup. Ct., Bronx Cnty. 2019).................................20

*Gregory v. Ashcroft,*
501 U.S. 452 (1991)...................................................................3, 12

*Guice v. Charles Schwab & Co.,*
89 N.Y.2d 31 (1996)......................................................................15

*McClung v. Sillman,*
19 U.S. 598 (1821).........................................................................13

*Nixon v. Fitzgerald,*
457 U.S. 731 (1982)..........................................................4, 5, 17, 19

*Norfolk S. Ry. Co. v. Shanklin,*
529 U.S. 344 (2000)......................................................................15

*Scripps-Howard Radio v. F.C.C.,*
316 U.S. 4 (1942)...........................................................................16

*Shiamili v. Real Estate Grp. of N.Y., Inc.,*
17 N.Y.3d 281 (2011).....................................................................15

*Stewart v. Hertz Vehicles, LLC,*
  18 Misc. 3d 1139(A), 2008 N.Y. Slip Op. 50373(U) (Sup. Ct.,
  Kings Cnty. 2008) ................................................................................................. 15

*Stone v. Powell,*
  428 U.S. 465 (1976) ....................................................................................... 19, 20

*In re Tarble,*
  80 U.S. 397 (1871) ......................................................................................... 12, 13

*Teal v. Felton,*
  3 U.S. 284 (1851) ................................................................................................. 18

*Tennessee v. Davis,*
  100 U.S. 257 (1879) ............................................................................................. 13

*U.S. v. Burr,*
  25 F. Cas. 187 (C.C. Va. 1807) ........................................................................... 18

*United States v. Darby,*
  312 U.S. 100 (1941) ......................................................................................... 2, 14

*United States v. Lopez,*
  514 U.S. 549 (1995) ............................................................................................. 12

*United States v. Nixon,*
  418 U.S. 683 (1974) ............................................................................................. 19

*Zervos v. Trump,*
  31 N.Y.3d 1113 (2018) ............................................................................. 14, 21, 22

**Statutes and Other Authorities**

28 U.S.C. § 1442(a) ................................................................................................. 16

U.S. Const. amend X........................................................................................ 2, 13, 14, 15

David D. Siegel & Patrick M. Connors, *New York Practice* § 526 (6th
  ed. 2018) .............................................................................................................. 20

17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4213 (3d ed.) ........................... 18

Richard S. Arnold, *The Power of State Courts to Enjoin Federal
  Officers*, 73 Yale L.J. 1385 (1964) .................................................................... 18

Appellant President Donald J. Trump respectfully submits this reply brief in further support of, and in response to respondent's brief ("Resp. Br.") in opposition to, his appeal.[1]

## PRELIMINARY STATEMENT

Respondent asserts that "all of [the President's] arguments boil down to one -- that in this instance, state courts are inferior to and less capable than federal courts." (Resp. Br. 3.) That is not so. No one questions the capability of state courts. And while there is "every reason to trust" (*id.*) that respondent's assertion is not meant as an appeal to "local prejudice," *Clinton v. Jones*, 520 U.S. at 681, 691 (1997), it plainly is an effort to distract from the real question at stake here -- the "important constitutional issue[]," *id.* at 690 -- whether state courts are authorized under the Constitution to hear cases against a sitting President in the first place.

Perhaps because respondent thus misreads or misstates the President's argument, she does not refute his showing that state courts are not so authorized. She claims that the "reasons" for the U.S. Supreme Court's holding in *Clinton v. Jones* as to federal courts "apply equally well here." (Resp. Br. 2.) But that also is not so. As the Supreme Court itself made clear, its Separation of Powers analysis

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meaning given to them in President Trump's opening brief ("App. Br.").

in *Clinton* in fact does *not* apply here.  Under that analysis, federal courts differ

from state courts in two dispositive ways.  First, Article III of the Constitution

expressly grants federal courts "judicial power," so there is a constitutional basis

for their authority, as a coequal branch of the federal government, to exercise

"agency in" or "controul over" the President as the embodiment of the Executive

Branch under Article II.  *See* App. Br. at 21-22; *Clinton*, 520 U.S. at 701

("Respondent is merely asking the courts to exercise their core Article III

jurisdiction to hear cases and controversies.").  For state courts, there is no such

authority in the Constitution, and the Tenth Amendment does not, and has never

been held by any court to, grant such authority.

Indeed, contrary to respondent's contention, the Tenth Amendment -- which

is nothing "more than declaratory of the relationship between the national and state

governments as it had been established by the Constitution before the amendment,"

*United States v. Darby*, 312 U.S. 100, 124 (1941) -- does *not* bar the federal

government from preempting the "heartland of state court jurisdiction" (Resp. Br.

12) -- tort lawsuits.  Belying respondent's fallacious argument (Resp. Br. 19-20)

that the Constitution bars "[s]ubordinating a state court by denying it jurisdiction

over a claim which it is presumed competent to adjudicate," and as decades of

preemption jurisprudence confirms, Congress can and does pass laws permanently

preempting state tort lawsuits.  And if Congress can do so, whether or not the states

2

consent, then *a fortiori* the Constitution itself -- which the states themselves ratified -- can, and does, temporarily preempt state lawsuits against a President while he or she is in office.

Citing *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991), respondent also asserts that the "balance of power between the states and the federal government is as critical to the integrity of the Constitution as the separation of powers." (Resp. Br. 19.) Whether or not that is true, and the Supreme Court in *Ashcroft* did not say that, respondent neglects to mention what the Supreme Court did say: "The Federal Government holds a decided advantage in this delicate balance: the Supremacy Clause." 501 U.S. at 460. Respondent nonetheless claims that the Supremacy Clause "generally operates as a conflict-of-laws rule, not a source of immunity for federal officials." (Resp. Br. 10.) Even assuming that claim is true, respondent misses the point: as shown (App. Br. 19-21), inasmuch as the President, under Article II, embodies the Executive Branch and "must be always in function," Article II conflicts with state laws or constitutions which would otherwise provide for jurisdiction over a sitting President. Accordingly, state courts may not, consistent with the Supremacy Clause, which makes the Constitution itself the "supreme Law of the Land," exercise any control (*i.e.*, jurisdiction) over the President while he or she is in office.

The second dispositive way that federal courts differ from state courts under *Clinton* is that federal courts are empowered to hear cases against the President arising from his or her official conduct -- and that, as the Supreme Court held, is precisely why federal courts are empowered to hear cases against the President arising from his or her unofficial conduct:

> In sum, "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." *If the Judiciary may severely burden the Executive Branch by reviewing the legality of the President's official conduct, and if it may direct appropriate process to the President himself, it must follow that the federal courts have power to determine the legality of his unofficial conduct.*

520 U.S. at 705 (emphasis added) (citation omitted). By contrast, as respondent must concede (Resp. Br. 16), state courts are not empowered to review the President's official conduct, so, again contrary to respondent's argument, the reasoning underlying *Clinton* does not and cannot apply here.

Contrary to respondent's argument "that Article II [does not] confer[] on [the President] broader immunity from suit than other federal officials" (Resp. Br. 17), the fact that state courts may hear lawsuits against such federal officials arising from their nonofficial conduct has no bearing on whether they can constitutionally hear such suits against the President. In deciding the extent of Presidential immunity in cases involving official conduct, the Supreme Court, in

4

Case 1:20-cv-07311-LAK   Document 14-105   Filed 09/15/20   Page 10 of 30

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982), rejected precisely the kind of argument

respondent advances:

> In arguing that the President is entitled only to qualified immunity, the respondent relies on cases in which we have recognized immunity of this scope for governors and cabinet officers.  We find these cases to be inapposite. *The President's unique status under the Constitution distinguishes him from other executive officials.*

*Id.* at 750 (emphasis added) (citations omitted).

Nor does the President's immunity mean, as respondent would have it

(Resp. Br. 10), that the President would "escape liability," or "render citizens like

[respondent] unable to turn to state courts" (Resp. Br. 20).  The immunity

mandated by the Constitution for the President's unofficial conduct (unlike, say,

the immunity afforded for the President's official conduct or for judges and others)

is temporary, applicable only while the President is in office.  *See Clinton*, 520

U.S. at 697 (Presidential immunity entails "merely . . . a postponement of the

judicial proceedings"); *see also* App. Br. 28.

In short, the fundamental flaw in respondent's opposition is that it ignores

the dispositive difference between the Separation of Powers doctrine, which

controls in a case in federal court, and the Supremacy Clause, which controls here.

As the Supreme Court noted in *Clinton*, "[i]f this case were being heard in a state

forum, instead of advancing a separation-of-powers argument, [the President]

would presumably rely on federalism and comity concerns, as well as the interest

in protecting federal officials from possible local prejudice." *Id.* at 691 ("Whether those concerns would present a more compelling case for immunity is a question that is not before us.") (citations omitted).  And, as the Supreme Court explained:

> Because the Supremacy Clause makes federal law 'the supreme Law of the Land,' any direct control by a state court over the President, who has principal responsibility to ensure that those laws are "faithfully executed," Art. II, § 3, may implicate concerns that are quite different from the interbranch separation-of-powers questions addressed here.

*Id.* at 691 n.13.  So much for respondent's claim (Resp. Br. 2) that the President's position here -- the same position the Supreme Court suggested might "present a more compelling case" -- is "radical."

Accordingly, this action should be dismissed or stayed during President Trump's presidency.

## **ARGUMENT**

## I.   THE SUPREME COURT'S REASONING IN *CLINTON V. JONES* IN NO WAY SUPPORTS RESPONDENT'S POSITION.

The Supreme Court in *Clinton v. Jones* held that, under the Separation of Powers doctrine, federal courts may exercise jurisdiction over a sitting President in actions arising from his or her unofficial conduct.  520 U.S. at 705-06.  Respondent contends that that holding applies equally to state courts, arguing that "[t]he fact that Ms. Zervos brought a similar lawsuit in state rather than federal court is a distinction that makes no difference" (Resp. Br. 8-9), and that the Supreme Court

"considered several of the arguments [the President] has made throughout this litigation and rejected them for reasons that apply equally well here." (*id.* 8.) In fact, however, the Supreme Court itself expressly disagrees and, far from rejecting the arguments the President has made, itself raised them.

Thus, as shown (App. Br. 13-14, 22-23), the Supreme Court in *Clinton* expressly differentiated between, on the one hand, President Clinton's "claim of immunity . . . asserted in federal court [which] relie[d] heavily on the doctrine of separation of powers that restrains each of the three branches of the Federal Government" -- the immunity claim the Court rejected -- and, on the other hand, a "comparable claim" of immunity asserted, as here, in state courts. 520 U.S. at 691. The Court pointed out that, while that "important constitutional issue[]," *id.* at 690, as to state courts was not before it, state court actions "may implicate concerns that are *quite different*," *id.* at 691 n.13 (emphasis added), and might "present a *more compelling* case for immunity," *id.* at 691 (emphasis added). In fact, the Supreme Court outlined those very concerns, including whether "any direct control by a state court over the President" violates the Supremacy Clause, *id.* at 691 n.13, as well as "possible local prejudice," *id.* at 691.[2]

---

[2]     The President does not argue that *Clinton* "does not control *simply* because this case was not filed in federal court." (Resp. Br. 9) (emphasis added). Rather, the President, like the Supreme Court itself, raises the concerns -- the different constitutional concerns -- that are implicated because the case was filed in state court and that mandate immunity while the President is in office.

7

Respondent correctly points out that with respect to the "constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions," *Clinton*, 520 U.S. at 702, the President "makes virtually identical arguments here, even citing the same cases as President Clinton." (Resp. Br. 9.) But, of course, it is those same cases, based on the same constitutional provisions -- in Article II -- which establish the President's "constitutionally mandated functions." Yet again, respondent misses the point -- the crucial distinction between federal and state courts recognized by the Supreme Court itself in *Clinton*. In the case of federal courts, the Separation of Powers doctrine means that, as a coequal branch, they can assert jurisdiction over the President, whereas the Supremacy Clause means that state courts, which are not a coequal branch, may not.

Respondent incorrectly asserts that the Supreme Court in *Clinton* held that "'neither the 'President, [n]or any official, has an immunity that extends beyond the scope of any action taken in an official capacity.'" (Resp. Br. 8 (quoting *Clinton*, 520 U.S. at 694).) That statement, which respondent quotes out of context, does not stand for what respondent seems to claim it does, does not address the part of the Supreme Court's decision relevant here, and addressed only the first of three grounds President Clinton advanced -- namely, that the President's temporary immunity from suit in federal court can "be sustained on the basis of

precedent," *see Clinton*, 520 U.S. at 692.  The full sentence from which respondent

extracted the quote, and the context in which it appears, make clear that it is

addressing whether there is such precedent, not reciting the rule respondent

advances:  "*But we have never suggested* that the President, or any other official

has an immunity that extends beyond the scope of any action taken in an official

capacity."  *Id.* at 694 (emphasis added for words respondent elided).

The second ground President Clinton advanced was that "evidence from the

historical record" supports according the President immunity.  The Court found

that ground equally unpersuasive, particularly given the conflicting historical

evidence.  *Id.* at 695-97.

President Clinton's third ground -- the "strongest argument supporting his

immunity claim," *id.* at 697 -- gave rise to the Supreme Court's principal holding

in *Clinton*.  That holding is the one relevant here, because it is the holding that the

Court, as shown, *supra* at 5-7, expressly indicated is inapplicable to actions in state

court.  That argument was "grounded in the character of the office that was created

by Article II of the Constitution, and relie[d] on separation-of-powers principles."

*Id.* at 697.  The Supreme Court had "no dispute with the initial premise of the

argument," *id.* at 698 -- that the President "occupies a unique office with powers

and responsibilities so vast and important that the public interest demands that he

devote his undivided time and attention to his public duties," *id.* at 697.  (*See also* App. Br. 11-12, 21.)

While agreeing with President Clinton's premise, the Supreme Court held that "[i]t does not follow, however, that separation-of-powers principles would be violated by allowing this action to proceed."  *Clinton*, 520 U.S. at 699.  The Supreme Court reasoned that, inasmuch as "separation of powers does not mean that the branches [of the federal government] 'ought to have no *partial agency* in, or no *controul* over the acts of each other,'" *id.* at 703 (emphasis in original) (citation omitted), "a federal court's exercise of its traditional Article III jurisdiction may significantly burden the time and attention of the Chief Executive . . . ." *Id.* at 705-06.  (*See* App. Br. 13-14, 21-22.)  And, after noting that "when the President takes official action, the Court has the authority to determine whether he has acted within the law," the Court explained:

> In sum, "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States."  *If the Judiciary may severely burden the Executive Branch by reviewing the legality of the President's official conduct, and if it may direct appropriate process to the President himself, it must follow that the federal courts have power to determine the legality of his unofficial conduct.*

*Clinton*, 520 U.S. at 705 (emphasis added) (citation omitted).

As shown (App. Br. 15-18), and as the Supreme Court itself indicated (*see supra* at 5-7), that reasoning has no application to state courts: there is no basis in

the Constitution for state courts to have any "agency in" or "controul over," or to place any burden on, the President who embodies the Executive Branch of the federal government.  And because the Executive Branch, which is embodied by the President, must "be always in function," *Clinton*, 520 U.S. at 717 (Breyer, J., concurring) (citation omitted), *any* exercise of jurisdiction by a state court over the President amounts to impermissible "direct control," *see Clinton*, 520 U.S. at 691 n.13, over the office of the President.[3]

## II.  DUAL SOVEREIGNTY IS CONSISTENT WITH AND INDEED SUPPORTS PRESIDENTIAL IMMUNITY HERE.

Respondent makes much of the principle of federal and state "dual sovereignty" (Resp. Br. 12) inherent in our federal system.  But that principle is entirely consistent with, and in fact supports, affording the President of the United States immunity from state-court jurisdiction while he or she is in office.

First, as noted (App. Br.  15-16), dual sovereignty cuts both ways:

> Just as federal courts are constitutionally obligated to apply state law to state claims, *see* [*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.

---

[3]     *See Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (2012) (A court's exercise of jurisdiction over a person is "fundamentally about a court's control over the person."). Thus, as shown (App. Br. 24-25), because the mere exercise of jurisdiction over the President constitutes impermissible direct control, whether a state court is willing to make reasonable accommodations (Resp. Br. 20) is irrelevant.  Further, a state court may not, under the Supremacy Clause, determine whether an accommodation is "reasonable." (*See* App. Br. 25-26.)

*Felder v. Casey*, 487 U.S. 131, 151 (1988) (citation omitted).

A century and a half ago, the Supreme Court explained how the dual sovereignty principle, as limited by the Supremacy Clause, in fact prevents states from enjoining federal officials:

> [N]o State can authorize one of its judges or courts to exercise judicial power . . . within the jurisdiction of another and independent government. And although the State . . . is sovereign within its territorial limits to a certain extent, yet that sovereignty is limited and restricted by the Constitution of the United States. . . . And the sphere of action appropriated to the United States, is as far beyond the reach of the judicial process issued by a State judge or a State court, as if the line of division was traced by landmarks and monuments visible to the eye.

*In re Tarble*, 80 U.S. 397, 405-08 (1871). The Supreme Court thus held that "[i]t is manifest that the powers of the National government could not be exercised with energy and efficiency at all times, if its acts could be interfered with and controlled for any period by officers or tribunals of another sovereignty." *Id.* at 409.[4]

---

[4] Citing *Ashcroft*, 501 U.S. at 458, respondent also asserts that the "balance of power between the states and the federal government is as critical to the integrity of the Constitution as the separation of powers." (Resp. Br. 19.) Whether or not that is true, and the Supreme Court in *Ashcroft* did not say that, respondent neglects to mention what the Supreme Court did say: "The Federal Government holds a decided advantage in this delicate balance: the Supremacy Clause." 501 U.S. at 460. *United States v. Lopez*, 514 U.S. 549, 552 (1995) (Resp. Br. 19) is also inapposite. There, the Supreme Court held that Congress, in enacting a statute which made it illegal to possess a firearm in a school zone, exceeded its authority under the Commerce Clause, because the statute had nothing to do with interstate commerce. This action, by contrast, has nothing to do with Congress's limited powers, but with the President's overriding responsibilities under Article II. (App. Br. 10.)

Accordingly, a state court's exercise of jurisdiction "for any period," *Tarble*, 80 U.S. at 409, over the President -- who must "be always in function," *Clinton*, 520 U.S. at 717 (Breyer, J., concurring) (citation omitted) -- impermissibly interferes with "the powers of the National government," *Tarble*, 80 U.S. at 409. *See also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (the federal government "can act only through its officers and agents" and "[n]o State government can . . . obstruct its authorized officers against its will . . . ."); *McClung v. Sillman*, 19 U.S. 598, 605 (1821) (state courts cannot control the federal land office register because "he is to be regarded either as an officer of that government, or as its private agent. In the one capacity or the other, his conduct can only be controlled by the power that created him . . . ."); App. Br. 18.[5]

Nor is the Tenth Amendment -- which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States . . . ." -- relevant here, as respondent suggests. (Resp. Br. 12.)  The Tenth Amendment is "declaratory of the relationship between the national and state governments as it had been established by the Constitution

---

[5]    Respondent erroneously asserts that "[s]ubordinating a state court by denying it jurisdiction over a claim which it is presumed competent to adjudicate would destroy [the] balance" between the federal and state governments and leave "citizens like Ms. Zervos unable to turn to state courts to resolve their disputes" (Resp. Br. 19-20).  To the contrary, confirming Presidential immunity here would, under Supreme Court precedent, including *Tarble*, preserve that balance, and it would merely postpone, not deny, state-court jurisdiction and respondent's access to state court.

before the amendment." *Darby*, 312 U.S. at 124. The Constitution before the amendment established the Article II duties of the President and the supremacy of the Constitution itself, including Article II. Therefore the ability to assert jurisdiction or otherwise control the President is not a power "reserved to the States," and the Tenth Amendment has no application here.

It is likewise irrelevant that, as respondent argues (Resp. Br. 12-13), state courts are presumed to have concurrent jurisdiction with federal courts. As the *Zervos* dissent pointed out in addressing this argument, that a particular federal statute does not preempt state courts from exercising jurisdiction in the absence of explicit contrary congressional intent, has no bearing on "whether the state court's exercise of jurisdiction would interfere with the very ability of the President to execute federal law." *Zervos*, 171 A.D.3d at 136 (Mazzarelli, J., dissenting). Moreover, it is well-established that this presumption gives way, under the Supremacy Clause, to the right of federal officers to perform their duties without interference from state courts. (App. Br. 16-17.)[6]

It is also irrelevant that, as respondent asserts, "[t]ort lawsuits fall within the heartland of state court jurisdiction." (Resp. Br. 12.) Belying respondent's

---

[6]     Respondent argues that "concurrent jurisdiction extends even to cases brought against federal officials for violations of federal law under color of their *official* authority" (Resp. Br. 13 (emphasis in original)). However, those cases are inapposite because they do not involve the President. *See supra* 8-9 and *infra* 17-19.

fallacious argument (Resp. Br. 19-20) that the Constitution bars "[s]ubordinating a state court by denying it jurisdiction over a claim which it is presumed competent to adjudicate," and as decades of preemption jurisprudence confirms, Congress can and does pass laws permanently preempting state tort lawsuits.  *See, e.g., Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 359 (2000) (state law negligence claims preempted by the Federal Railroad Safety Act); *Shiamili v. Real Estate Grp. of N.Y., Inc.*, 17 N.Y.3d 281, 286 (2011) (state law defamation and unfair competition claims preempted by federal Communications Decency Act); *Guice v. Charles Schwab & Co.*, 89 N.Y.2d 31, 39, 44-48 (1996) (state breach of fiduciary duty claims preempted by SEC regulations); *Fieger v. Glen Oaks Vill.*, 309 N.Y. 527, 531, 534 (1956) (state court lacked jurisdiction to hear tort claims amounting to a "collateral attack on a determination" of the Federal Housing Authority).[7]

And if Congress can preempt state tort laws, then *a fortiori* the Constitution itself -- which the states themselves ratified -- can, and does, preempt state lawsuits against a President while he or she is in office.  Moreover, unlike Congressional

---

[7]     Given the preemption cases, *Stewart v. Hertz Vehicles, LLC*, 18 Misc. 3d 1139(A), 2008 N.Y. Slip Op. 50373(U), *5 (Sup. Ct., Kings Cnty. 2008), cited by respondent for the proposition that "'[t]he Tenth Amendment generally reserves to the States traditional police powers, such as the powers to proscribe or punish conduct through state tort laws'" (Resp. Br. 12), does not support her position.  Moreover, that case recognized that "[i]f a power is delegated . . . in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."  As shown, here, the President's immunity stems from his Article II powers.  (App. Br. 20 n.4.)

preemption, the preemption here does not bar the application of state tort laws

permanently, but merely while the President is in office.

## III. CONGRESSIONAL SILENCE IS IRRELEVANT WHERE THE CONSTITUTION ITSELF PRECLUDES STATE-COURT JURISDICTION.

Respondent argues that state courts may exercise jurisdiction over the

President because "Congress has enacted no such law allowing federal officials,

including the President, to escape state court jurisdiction for suits involving their

unofficial conduct." (Resp. Br. 13-14.)  Congress's silence has no bearing on the

immunity afforded the President by the Constitution because the President's

immunity stems from the Constitution itself.  *See* App. Br. 19-21; *see also Clinton*

*v. Jones*, 520 U.S. at 691 n.13 ("'[A]bsent explicit congressional *consent* no state

may command federal officials ... to take action in derogation of their ... federal

responsibilities'") (emphasis added) (quoting L. Tribe, American Constitutional

Law 513 (2d ed. 1988)).[8]

---

[8]     That the federal removal statute, 28 U.S.C. § 1442(a), allows lower federal officers to
remove a lawsuit brought in state court "relating to any act under color of such office," does not
imply any Congressional affirmation of state-court jurisdiction over the President (Resp. Br. 13).
In fact, as the Supreme Court recognized in *Clinton*, 520 U.S. at 691, the "authority to remove
certain cases brought against federal officers from a state to a federal court," is based on a
concern militating in favor of Presidential immunity.  It is also irrelevant that, as respondent
argues (Resp. Br. 13-14), Congress has not enacted legislation barring state-court jurisdiction
over the President.  Following *Clinton*, there was no need for Congress to do so, inasmuch as the
Supreme Court had suggested that the Supremacy Clause already accomplished the same result.
*See also Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 11 (1942) ("The search for significance in
the silence of Congress is too often the pursuit of a mirage.  [Courts] must be wary against
interpolating [their] notions of policy in the interstices of legislative provisions.").

## IV.   THE CONSTITUTION BARS STATE-COURT JURISDICTION OVER THE PRESIDENT RELATED TO UNOFFICIAL CONDUCT.

Respondent, in attempting to distinguish cases that bar state-court

jurisdiction over federal officials on the ground that they involve unofficial

conduct (Resp. Br. 16-17), again ignores the President's unique status under the

Constitution.

First, that state courts may hear lawsuits against lower federal officials

arising from their nonofficial conduct has no bearing on whether they can

constitutionally hear such suits against the President.  In deciding the extent of

Presidential immunity in cases involving official conduct, the Supreme Court, in

*Nixon v. Fitzgerald*, 457 U.S. 731, rejected precisely the kind of argument

respondent advances:

> In arguing that the President is entitled only to qualified
> immunity, the respondent relies on cases in which we have
> recognized immunity of this scope for governors and
> cabinet officers.  We find these cases to be inapposite. *The
> President's unique status under the Constitution
> distinguishes him from other executive officials.*

*Id.* at 750 (emphasis added) (citations omitted).  *See also Cheney v. U.S. Dist.*

*Court for D.C*, 542 U.S. 367, 385 (2004) ("Respondent['s] reliance on cases that

do not involve senior members of the Executive Branch is altogether misplaced.");

*U.S. v. Burr*, 25 F. Cas. 187, 192 (C.C. Va. 1807) (Marshall, C.J., by designation)

17

("In no case of this kind would a court be required to proceed against the president as against an ordinary individual.").[9]

Respondent's claim that *Clinton's* "rejection of any claim to Article II exceptionalism is not limited to lawsuits filed in federal court" (Resp. Br. 18) is thus doubly wrong. Not only did *Clinton* explicitly embrace "Article II exceptionalism," 520 U.S. at 697-98, but its holding that federal courts could exercise jurisdiction notwithstanding such exceptionalism has no application to state courts. *Id.* at 691 n.13.

Respondent argues next that the President is not immune from state-court jurisdiction related to unofficial conduct, because, she claims, the purpose of affording lower federal officials immunity is so that they may "perform their designated functions effectively without fear that a particular decision may give rise to personal liability." (Resp. Br. 16-17.) However, the broader immunity afforded the President reflects broader concerns. The Supreme Court has

---

[9] For the same reason, respondent's cases holding that state courts have jurisdiction to hear damages claims against lower federal officials -- to the extent those claims are not otherwise barred by the officials' qualified immunity -- have no application to the President. (*See* Resp. Br. 14 (citing *Teal v. Felton*, 53 U.S. 284 (1851) (allowing conversion action for damages against postmaster who acted outside of the scope of his authority in refusing to deliver mail without additional postage); 17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4213 (3d ed.) ("It is settled that state courts may entertain actions against federal officers for damages . . . . On the other hand, it has been clear since 1821 that a state court cannot issue a writ of mandamus against a federal officer."); Richard S. Arnold, *The Power of State Courts to Enjoin Federal Officers*, 73 Yale L.J. 1385 (1964) (noting the "line of New York cases that deny the power of state courts to enjoin federal officers").)

Case 1:20-cv-07311-LAK   Document 14-105   Filed 09/15/20   Page 24 of 30

repeatedly stressed that even federal-court jurisdiction over the President raises unique concerns.[10]

Respondent's argument that "Defendant has provided no explanation as to how this suit would interfere with his Constitutional duties (Resp. Br. 17), thus misses the point. As shown (App. Br. 18), the exercise of jurisdiction itself amounts to impermissible direct control. Further, because the President's official duties stem directly from Article II, state courts may not even assess a President's explanation of how a particular suit interferes with the President's constitutional duties. (*See* App. Br. 25-26.)[11]

Respondent cites *Stone v. Powell*, 428 U.S. 465, 493 n.35 (1976), for the proposition that state court judges are as competent as federal court judges to manage their cases. But the Supreme Court's concern in *Clinton* with "possible

---

[10]     *See, e.g.*, *Cheney*, 542 U.S. at 382 ("[T]he public interest requires that a coequal branch of Government . . . give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties."); *Clinton*, 520 U.S. at 707 ("[T]he potential burdens on the President . . . are appropriate matters for the District Court to evaluate in its management of the case. The high respect owed the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding . . . ."); *Fitzgerald*, 457 U.S. at 753 ("Courts traditionally have recognized the President's constitutional responsibilities and status as factors counseling judicial deference and restraint."); *United States v. Nixon*, 418 U.S. 683, 692 (1974) (federal courts should avoid where possible an "occasion for constitutional confrontation" with the Executive Branch); App. Br. 26-27.

[11]     Respondent cites Justice Breyer's concurrence in *Clinton*, but his reasoning has no application in state court, as was the Second Circuit's similar reasoning in *Trump v. Vance* (Resp. Br. 18). *See* 941 F.3d 631, 642-43 (2d Cir. 2019) ("the President may be correct that state courts lack the authority to issue him orders . . . ."), *cert. granted*, 140 S. Ct. 659 (2019).

Case 1:20-cv-07311-LAK   Document 14-105   Filed 09/15/20   Page 25 of 30

local prejudice" is not that state court judges are less competent, but rather with the potential for conflict between the local interests of the states with those of the federal government. *Clinton*, 520 U.S. at 691. *Stone v. Powell* -- which held that state courts are equally competent to hear a defendant's Fourth Amendment defense -- is irrelevant to this concern.

In fact, pending actions have already indicated the difficulties with subjecting the President to the varying procedural rules of state courts. In *Galicia v. Trump*, the trial court ordered the President to appear for a videotaped deposition within three business days, during the week in which the President was set to address the United Nations General Assembly. *Galicia v. Trump*, 65 Misc.3d 653, 658 (Sup. Ct., Bronx Cnty. 2019). While the President was able to obtain an emergency stay pending the determination of his interlocutory appeal -- now *sub judice* before the First Department, No. 24973/15E, M-7413 (1st Dep't Oct. 24, 2019) -- it exemplifies the control a state court asserting jurisdiction can wield over the President. Further, many state courts do not even afford such interlocutory relief. *See* David D. Siegel & Patrick M. Connors, *New York Practice* § 526 (6th ed. 2018) ("New York is unique in its generosity, making a broad range of nonfinal -- also called 'intermediate' or 'interlocutory' -- orders immediately appealable without waiting for final judgment").

Case 1:20-cv-07311-LAK   Document 14-105   Filed 09/15/20   Page 26 of 30

And in this action, when the President was initially unable to obtain a stay pending appeal of the trial court's denial of his motion to dismiss from the First Department, he then was unable to obtain review of that decision from this Court, due to the constitutional limitations on its jurisdiction. *See Zervos v. Trump*, 31 N.Y.3d 1113, 1114 (2018). Had the case been in federal court, he would have been able to obtain an interlocutory appeal and stay from the District Court's denial. *See* Appellant's Mem. in Opposition to Mot. to Vacate Stay, in *Zervos v. Trump*, APL-2020-00009, Mo. No. 2020-115, at 8, 24 n.11, 26-29 (collecting cases).

## V. THE CONTEMPT POWER IS INDICATIVE OF THE COURT'S DIRECT CONTROL OVER THE PRESIDENT.

Respondent claims that there is no basis for "indefinitely delaying Ms. Zervos's day in court based on the mere possibility that Defendant may engage in conduct over the course of the litigation that would trigger contempt, as the dissent below feared." (Resp. Br. 21.) But the dissent was not concerned with some hypothetical future contempt-triggering conduct. Rather, the dissent explained that the mere power to hold the President in contempt acts as "sword of Damocles hanging over the President's head," such that a state court's exercise of jurisdiction in and of itself amounts to impermissible direct control. (*See* App. Br. 26 (citing *Zervos*, 171 A.D.3d at 137)). Moreover, as shown (App. Br. 25-26), it would be

improper to wait for a constitutional confrontation in the form of a contempt finding to rule on the permissibility of jurisdiction.

## VI.   THE LAWSUITS CITED BY RESPONDENT ARE IRRELEVANT.

Respondent incorrectly claims that "Defendant's concern about state court jurisdiction appears to wax and wane depending on the subject matter of the lawsuit," because, she claims, he "has actively participated in numerous lawsuits across the country, including in state court." (Resp. Br. 24.)[12]

Respondent's counsel, who was not involved in those actions, is incorrect about the extent of the President's involvement and the objections to subject-matter jurisdiction that he raised.[13]   The President did not "actively participate" in *Galicia v. Trump*, No. 24973/2015E (Sup. Ct., Bronx Cnty.) -- filed over a year *before* President Trump took office, against numerous defendants.   To the contrary, the trial court refused the plaintiffs' request to allow his deposition in discovery.

---

[12]      Respondent does not, as she cannot, explicitly argue that the President has waived his right to assert the Supremacy Clause.  Even if there were a factual basis for such an argument, and, as shown, there is not, there is no basis for concluding that the jurisdiction issue here arising under the Supremacy Clause is waivable at all.  Such a conclusion was soundly rejected by the dissent below, *Zervos*, 171 A.D.3d at 131, and was not addressed in the majority decision.

[13]      Respondent's counsel, who until recently, was not involved in this action, is also incorrect about the procedural posture in this action.  She states that "[a]t the time the stay was ordered[ by the First Department,] document discovery was nearly complete . . . ." (Resp. Br. 7.)  Not so.  In fact, there is significant document discovery outstanding.  As respondent herself acknowledged, if appellant were unsuccessful on his appeal, there is a "long road ahead" and "the parties will spend significantly more time completing discovery, litigating motions, and, then, trying this case to final judgment."  (Respondent's Mem. in Support of Mot. to Vacate Stay Under N.Y. C.P.L.R § 5519(c), in *Zervos v. Trump*, APL-2020-00009, Mo. No. 2020-115, at 7.)

Case 1:20-cv-07311-LAK    Document 14-105    Filed 09/15/20    Page 28 of 30

(NYSCEF 125.)  When plaintiffs subsequently served a trial subpoena, President Trump did, in fact, assert immunity from state-court jurisdiction (NYSCEF 390) and, as noted (*supra* 20), his appeal of the order allowing that deposition on constitutional grounds, among others, is *sub judice*.

Nor did President Trump "actively participate" in *Garcia v. Bayrock/Sapir Org., LLC*, No. 601495/2015 (Sup. Ct. Suffolk Cnty.) -- an action by an employee of a staffing agency against 12 defendants alleging that she was owed gratuities from a Trump hotel.  (NYSCEF 2.)  Discovery was completed *before* President Trump's inauguration (NYSCEF 55), and there was little to no motion practice following it (NYSCEF 88, 96), before the plaintiff voluntarily discontinued the action (NYSCEF 122).[14]

\* \* \*

---

[14]    The President is not a party to the lawsuits filed by his campaign.

## **CONCLUSION**

For the foregoing reasons, and those in the President's opening brief, this action should be dismissed or stayed while the President is in office.

Respectfully submitted,

Dated:  May 8, 2020

KASOWITZ BENSON TORRES LLP

By: _____
    Marc E. Kasowitz
    Daniel R. Benson
    Christine A. Montenegro
    Paul J. Burgo

1633 Broadway
New York, New York 10019
(212) 506-1700
mkasowitz@kasowitz.com
dbenson@kasowitz.com
cmontenegro@kasowitz.com
pburgo@kasowitz.com

*Attorneys for Defendant-Appellant*
*Donald J. Trump*

# NEW YORK STATE COURT OF APPEALS
## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to 22 NYCRR PART 500.l(j) that the foregoing brief was prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:
Name of Typeface: Times New Roman
Point size: 14 (footnotes in 12 point)
Line spacing: Double

*Word Count.* The total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of services, certificate of compliance, corporate disclosure statement, question presented, statement of related cases, or any authorized addendum containing statutes, rules, regulations, etc., is 6,094 words.

Dated: May 8, 2020

> Marc E. Kasowitz
> Daniel R. Benson
> Christine A. Montenegro
> Paul J. Burgo
> KASOWITZ BENSON TORRES LLP
> 1633 Broadway
> New York, New York 10019
> (212) 506-1700
>
> *Attorneys for Defendant-Appellant*
> *Donald J. Trump*