# EXHIBIT A

# KASOWITZ BENSON TORRES LLP

<table>
<tr><td>

MARC E. KASOWITZ
DIRECT DIAL: (212) 506-1710
DIRECT FAX: (212) 835-5010
MKASOWITZ@KASOWITZ.COM

</td><td>

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

</td><td>

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

</td></tr>
</table>

July 28, 2020

<u>VIA FEDERAL EXPRESS</u>

John P. Asiello, Esq.
Clerk of the Court
New York State Court of Appeals
20 Eagle Street
Albany, New York 12207

Re: *Zervos v. Trump*, APL-2020-00009, Response to Notice of Supplemental Authority

Dear Mr. Asiello:

I write on behalf of defendant-appellant Donald J. Trump to respond to plaintiff-respondent's July 16, 2020 letter to the Court ("Pl. Ltr."), in which she asserts that the U.S. Supreme Court's recent decision in *Trump v. Vance*, 140 S. Ct. 2412 (2020) "effectively resolves Defendant's pending appeal before this Court." (Pl. Ltr. at 1.)

Plaintiff is incorrect. The decision in *Vance* -- holding that "Article II and the Supremacy Clause do not categorically preclude . . . the issuance of a state criminal subpoena to a sitting President," *id.* at 2412 -- does not address, let alone resolve, the issue on this appeal. The issue on this appeal -- the "important constitutional issue[]" the Supreme Court itself first raised but did not resolve in *Clinton v. Jones*, 520 U.S. 681, 690-91, 691 n.13 (1997) -- is whether Article II and the Supremacy Clause preclude state courts from exercising jurisdiction over a sitting President in a civil action.

**I. The Supreme Court Itself Has Confirmed That *Vance* Does Not Apply to State Civil Actions.**

The Supreme Court itself confirmed that *Vance* does not address civil actions. On the same day it handed down *Vance*, the Supreme Court, in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020), which concerned the ability of Congress to issue a subpoena to the President, explicitly described its holding in *Vance* as limited to criminal proceedings:

> Two hundred years ago, it was established that Presidents may be subpoenaed during a federal criminal proceeding, *United States v. Burr*, 25 F.Cas. 30 (No. 14,692d) (CC Va. 1807) (Marshall, Cir. J.),

KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 2

> and earlier today we extended that ruling to state **criminal** proceedings, *Trump v. Vance* . . . .

*Id.* at 2026 (emphasis added) (citation omitted). The Supreme Court also confirmed in *Mazars* that its holding in *Clinton v. Jones*, 520 U.S. 681 (1997), was limited to civil actions against a sitting President in federal -- not state -- court:

> Nearly fifty years ago, we held that a federal prosecutor could obtain information from a President despite assertions of executive privilege, *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L.Ed.2d 1039 (1974), and more recently we ruled that a private litigant could subject a President to a damages suit and appropriate discovery obligations in *federal* court, *Clinton v. Jones*, 520 U.S. 681 (1997).

*Mazars*, 140 S. Ct. at 2026 (emphasis added).

Moreover, the Supreme Court has made clear that its holdings concerning the amenability of the President to criminal process do not, as plaintiff would have it, extend "in a mechanistic fashion to civil litigation." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 386 (2004). Thus, in holding that the President is entitled to absolute "immunity from damages liability for acts within the 'outer perimeter' of his official responsibility," in *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982), the Supreme Court rejected Justice White's argument in dissent that such immunity was foreclosed by *United States v. Burr*, 25 F.Cas. 30 -- a criminal case, cited extensively by the Supreme Court in *Vance*, 140 S. Ct. at 2425-2427 -- and *United States v. Nixon*, 418 U.S. 68. *Nixon v. Fitzgerald*, 457 U.S. at 782 (White, J., dissenting).[1]

II.     **As *Vance* and *Mazars* Confirm, the Reasoning in *Clinton v. Jones* Did Not and Should Not Extend to State Courts.**

As *Vance and Mazars* confirm, the reasoning in *Clinton v. Jones*, did not, and should not, extend to state court jurisdiction over civil actions against a sitting President.

First, in *Clinton v. Jones*, the Supreme Court held that, under the Separation of Powers doctrine, federal courts were empowered to exercise jurisdiction over President Clinton in that sexual harassment case arising from his unofficial conduct precisely because it already was firmly established that federal courts were empowered to exercise jurisdiction -- *i.e.*, control --

---

[1]    As Chief Justice Burger put it, "[i]t is one thing to say that a President must produce evidence relevant to a criminal case . . . and quite another to say a President can be held for civil damages for dismissing a federal employee. . . ." *Nixon v. Fitzgerald*, 457 U.S. at 760, 763 (Burger, J., concurring).

KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 3

over the President's official conduct.² However, by contrast, state courts, under the Supremacy Clause, are *not* empowered to exercise any jurisdiction or control over the President's official conduct. *Vance* reaffirms this principle: because "'States have no power … to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress[,]' [i]t follows that States also lack the power to impede the President's execution of those laws." *See Vance*, 140 S. Ct. at 2425 (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 436 (1819)).

The reason the Supreme Court reached its decision in *Clinton v. Jones* is thus absent with respect to state courts. Accordingly, because, under the Supremacy Clause, state courts may not exercise jurisdiction over a President's official conduct, they may not do so over his unofficial conduct while he is in office.

Second, *Mazars* also reaffirms that the principal basis for the First Department's decision below -- that *Clinton v. Jones* "unequivocally demonstrates that the presidency and the President are indeed separable," *Zervos v. Trump*, 171 A.D.3d 119, 124 (2019) -- was erroneous:

> The interbranch conflict here does not vanish simply . . . because the President sued in his personal capacity. **The President is the only person who alone composes a branch of government.** As a result, there is not always a clear line between his personal and official affairs. "The interest of the man" is often "connected with the constitutional rights of the place." Given the close connection between the Office of the President and its occupant, congressional demands for the President's papers can implicate the relationship between the branches regardless [*sic*] whether those papers are personal or official.

*Mazars*, 140 S. Ct. at 2034 (emphasis added) (citation omitted).³ Thus, *Mazars* confirms that, because "[t]he President is the only person who alone composes a branch of government," state courts may not exercise direct control over the President, "simply . . . because the President [is] sued in his personal capacity." *Id.*

Third, the fact that *Vance* cited *Clinton v. Jones*, as plaintiff notes (Pl. Ltr. at 2), does not make the reasoning in *Vance* apply to civil actions. To the contrary, the fact that *Vance* addressed *Clinton v. Jones* without resolving the "important constitutional issue[]" it raised in that case over civil actions in state court, further demonstrates that reasoning does not apply here.

---

²     *See* Brief for Defendant-Appellant ("App. Br."), at 13-18 on this appeal.

³     The Supreme Court noted that "a subpoena for personal papers may pose a heightened risk of . . . impermissible purposes," such as harassment. *Mazars*, 140 S. Ct. at 2035.

# Kasowitz Benson Torres llp

John P. Asiello, Esq.
July 28, 2020
Page 4

  *Vance* found that *Clinton v. Jones* resolved only that "distraction alone," and the possibility that Presidents might become "'easily identifiable target[s]' for harassment," do not, in and of themselves, provide a basis for Presidential immunity from a grand jury subpoena. *See Vance*, 140 S. Ct. at 2426-27. However, while those grounds are examples of untoward potential results of exercising jurisdiction over the President, they are *not* the basis for temporary Presidential immunity here. The President does not argue that Presidents are entitled to immunity, because, as plaintiff says, "routine litigation procedures interfere with Defendant's presidential duties." (*See* Pl. Ltr. at 2 (citing Reply Brief for Defendant-Appellant ("Reply Br.") at 20-21).) Rather, the President's temporary immunity from state-court jurisdiction in civil actions is based on the structure of the Constitution and the fact that state courts, unlike federal courts, may not exercise direct control over the President in civil actions arising out of official or unofficial conduct. (*See* Reply Br. at 19 (Under the Constitution, "the exercise of jurisdiction itself amounts to impermissible direct control.").)

  Fourth, the Supreme Court has repeatedly recognized that the heightened public interest in criminal matters (such as *Vance*) justifies intrusions on the Executive Branch that would be impermissible in other contexts. *See Nixon v. Fitzgerald*, 457 U.S. at 754 n.37 ("The Court has recognized before that there is a lesser public interest in actions for civil damages than . . . in criminal prosecutions.") (citing *United States v. Gillock*, 445 U.S. 360, 371-73 (1980); *United States v. Nixon*, 418 U.S. at 711-12, 712 n.19); *see also Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 384, 386 (2004) ("[t]he need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*.").

  The Supreme Court applied this very principle in *Mazars*, in which it held that while *criminal* subpoenas may issue against the President, because "'[t]he very integrity of the judicial system' would be undermined without 'full disclosure of all the facts,'" Congress's "interests are not sufficiently powerful to justify access to the President's personal papers when other sources could provide Congress the information it needs." 140 S. Ct. at 2036 (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

  Here, the interest in pursuing this civil action now, as opposed to when the President is no longer in office, is plainly even less compelling than the Congressional interest the Court held was insufficient in *Mazars*. There is no pressing need for a state court to exercise control over a sitting President in a civil action, particularly because the action can be resumed when the President is no longer in office.

  Fifth, plaintiff's assertion that "nothing in the Supreme Court's [*Vance*] decision limits its analysis to criminal proceedings" (Pl. Ltr. at 2) is demonstrably false. Throughout its decision, the Supreme Court based its reasoning on facts unique to criminal proceedings. *See Vance*, 140 S. Ct. at 2422 (discussing history of Presidential compliance with criminal subpoenas in federal court); *id.* at 2426-27 (relying on the fact that President conceded that "state grand juries are free to investigate a sitting President with an eye toward charging him after the completion of his

KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 5

term"); *id.* (discussing grand jury secrecy rules); *id.* at 2428 (noting limitations on grand jury investigations); *id.* at 2429 (noting heightened public interest in criminal proceedings); *id.* at 2432 (Kavanaugh, J., concurring) ("this case again entails a clash between the interests of the criminal process and the Article II interests of the Presidency").

Sixth, in *Vance*, the Supreme Court recognized that "harassing subpoenas could, under certain circumstances, threaten the independence or effectiveness of the Executive," but found that this threat was sufficiently mitigated by the fact that, among other things, "grand juries are prohibited from engaging in arbitrary fishing expeditions and initiating investigations out of malice or an intent to harass." *Vance*, 140 S. Ct. at 2428 (citations omitted). However, as the Supreme Court has also pointed out, while "[i]n the criminal justice system, there are various constraints, albeit imperfect, to filter out insubstantial legal claims," including the strict ethical constraints on a prosecutor, "there are no analogous checks in the civil discovery process." *Cheney*, 542 U.S. at 386.

Finally, in *Vance*, the Supreme Court declined to bar state prosecutors from subpoenaing the President in criminal matters, because if state criminal proceedings threatened the independence or effectiveness of the Executive, the President would "be entitled to the protection of federal courts," by availing him- or herself of the right, under 42 U.S.C. § 1983, to seek to enjoin the state prosecutor in federal court. *Vance*, 140 S. Ct. at 2428. However, no such relief would be available in state-court civil actions. In a civil action, there is no prosecutor to enjoin, and under Section 1983, federal courts may not issue injunctive relief against either the state-court judge hearing the action (unless there is no right to a state-court appeal or declaratory relief is unavailable) or against private litigants.[4]

---

[4] *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970) ("Both sides agree that although this federal injunction is in terms directed only at the [party to the action] it is an injunction 'to stay proceedings in a State court.' It is settled that the prohibition of [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties . . . ."); *Ex parte Young*, 209 U.S. 123, 163, 180 (1908) ("[T]he right to enjoin . . . a state official[] [there, an attorney general] from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it . . . . [A]n injunction against a state court would be a violation of the whole scheme of our government."); *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019) (declaratory relief related to state court judge's prior actions not permitted by § 1983); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (prosecutors do not enjoy absolute immunity from declaratory and injunctive relief claims under § 1983); *Peters v. Noonan*, No. 12-CV-234-FPG, 2020 WL 1322573, at *1 (W.D.N.Y. Mar. 20, 2020) ("The Second Circuit has read [section 1983] to preclude both injunctive and declaratory relief against a judicial officer.") (citation omitted); *Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (because plaintiff could have appealed to the First Department, declaratory relief was not "unavailable" under § 1983 so as to permit injunctive relief), *appeal dismissed,* No. 19-365, 2019 WL 3774562 (2d Cir. Aug. 1, 2019).

KASOWITZ BENSON TORRES LLP

John P. Asiello, Esq.
July 28, 2020
Page 6

                                                         Respectfully submitted,

                                                         Marc E. Kasowitz

cc:     Counsel of Record
          *Via Email and Federal Express*