# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ ) | |
| E. JEAN CARROLL, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | ECF Case |
| v. ) | |
| ) | No. 1:20-cv-7311 (LAK) |
| DONALD J. TRUMP, ) | |
| in his personal capacity, ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## MOTION OF GOVERNMENT ACCOUNTABILITY PROJECT FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION OF THE UNITED STATES TO SUBSTITUTE ITSELF AS THE DEFENDANT

John A. Kolar
D.C. Bar No. 292953
Litigation Director
Government Accountability Project
1612 K Street, NW — Suite 1100
Washington, DC 20006
202-457-0034
JackK@whistleblower.org

Ned Miltenberg
National Legal Scholars Law Firm, P.C., and
Of Counsel to the Government Accountability Project
5410 Mohican Road — Suite 200
Bethesda, MD 20816-2162
202/656-4490
NedMiltenberg@gmail.com

October 5, 2020

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………………………. i

INTRODUCTION ................................................................................................. 1

GROUNDS FOR GRANTING THE MOTION ........................................................i

CONCLUSION ……………………………………………………………………. 5

CERTIFICATE OF SERVICE ……………………………………………………. 6

PROPOSED ORDER

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Associated Press v. Meltwater U.S. Holdings, Inc*., 931 F. Supp. 2d 537, 553 (S.D.N.Y. 2013) ....................................................................................................................................... 12

*Auto. Club of N.Y. Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 Civ. 6746 (RJH), 2011 WL 5865296, at \*1–2 (S.D.N.Y. Nov. 22, 2011) ......................................................................... 12

*C & A Carbone, Inc. v. County of Rockland, NY*, 78 ERC 2037 (ER), 2014 WL 1202699, at \*3 (S.D.N.Y. Mar. 24, 2014) ................................................................................................ 12

*Coalition for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 561 (S.D.N.Y. 2017), aff'd sub nom., 906 F.3d 41 (2d Cir. 2018) .............................................................. 12

*Consumer Finan. Protec. Bureau v. RD Leg. Funding, LLC*, 332 F. Supp. 3d 729, 750 (S.D.N.Y. 2018) ..................................................................................................................... 11

*Floyd v. City of New York*, 283 F.R.D. 153, 159, 82 (S.D.N.Y. 2012) (Scheindlin, J.) ........... 11

*Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018) ........ 11

*In re American Intern. Group, Inc. Securities Litig*., 916 F. Supp. 2d 454, 462 (S.D.N.Y. 2013) ....................................................................................................................................... 12

*In re Lehman Bros. Holdings Inc. v. Intel Corp*., No. 08-13555, 2015 WL 7194609, at \*4 (S.D.N.Y. Sept. 16, 2015) ..................................................................................................... 12

*In re Terrorist Attacks on September 11, 2001*, 689 F. Supp. 2d 552, 558 (S.D.N.Y. 2010); *United States v. IBM*., 539 F. Supp. 473, 475 (S.D.N.Y. 1982) .......................................... 11

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F. Supp. 842, 860 (S.D.N.Y. 1986), aff'd as modified, 809 F.2d 195 (2d Cir. 1987) ............. 12

*Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc.*, 12 CIV. 7935 (ALC), 2014 WL 265784, at \*2 (S.D.N.Y. Jan. 23, 2014) ................................................. 12

*Nat. Resources Def. Council, Inc. v. U.S. Envtl. Protec. Agency*, 438 F. Supp. 3d 220, 224 n.1 (S.D.N.Y. 2020) ..................................................................................................................... 11

*Ognibene v. Parkes*, 08 CIV. 1335 LTS FM, 2013 WL 1348462, at \*1 (S.D.N.Y. Apr. 4, 2013); *American Broad. Companies, Inc. v. AEREO, Inc*., 874 F. Supp. 2d 373, 404

ii

(S.D.N.Y. 2012), aff'd sub nom. *WNET, Thirteen v. Aereo, Inc*., 712 F.3d 676 (2d Cir. 2013), rev'd and remanded on other grnds, 573 U.S. 431 (2014)..........................12

*Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 745 n.3 (S.D.N.Y. 2019) ...............11

*Russell v. Bd. of Plumbing Examiners of Cty of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) (citing MOORE'S FEDERAL PRACTICE DIGEST 3D § 24.23 [2]), aff'd, 1 Fed. Appx. 38 (2d Cir. 2001) ..........................................................................................12

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.) ......................................................................................................................................12

*State of New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 225 n.21 (S.D.N.Y. 2020) ........................................................................................................................................11

*State of New York v. U.S. Immig. and Cust. Enf't*, 431 F. Supp. 3d 377, 382 (S.D.N.Y. 2019) ........................................................................................................................................11

*Texaco, Inc. v. Pennzoil Co*., 626 F. Supp. 250, 252 (S.D.N.Y. 1986), aff'd as modified and remanded, 784 F.2d 1133 (2d Cir. 1986), rev'd, 481 U.S. 1 (1987).....................................12

*United States v. Apple, Inc*., 889 F. Supp. 2d 623, 630 (S.D.N.Y. 2012) ...............................11

*United States v. KPMG LLP*, 99 A.F.T.R.2d 2007-1118 (LAK), 2007 WL 541956, at *2 (S.D.N.Y. Feb. 15, 2007)..........................................................................................................11

*Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 n.2 (S.D.N.Y. 2000) (LAK), aff'd, 273 F.3d 429 (2d Cir. 2001) ..........................................................................11

*Women for Am. First v. De Blasio*, 20 CIV. 5746 (LGS), 2020 WL 4904057, at *2 (S.D.N.Y. Aug. 18, 2020) ...................................................................................................................12

## Statutes

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745 (2002)........................................5

Whistleblower Protection Act of 1989 (WPA), Pub. L. 101-12, 103 Stat. 16 (1989)...............5

## Other Authorities

Asher Stockler, *Former Barr Deputy Says Intervention in 'Crony' Roger Stone Case Reeks of 'Favoritism'*, NEWSWEEK (Feb. 25, 2020) (emphasis added) available at https://www.newsweek.com/william-barr-stuart-gerson-roger-stone-1489095...................8

Benjamin Weiser, Ben Protess, Katie Benner and William K. Rashbaum, *Inside Barr's Effort to Undermine Prosecutors in N.Y.: The firing of the top federal prosecutor in Manhattan was foreshadowed by a disagreement over a case linked to President Trump*, The New York Times (June 25, 2020; updated July 22, 2020) available at https://www.nytimes.com/2020/06/25/nyregion/geoffrey-berman-william-barr-michael-cohen.html ........................................................................................................... 10

Bill Baer, *Think the DOJ's Antitrust Division is immune from political meddling? Think again*, THE WASHINGTON POST (June 24, 2020) available at https://www. washingtonpost.com/ opinions/2020/06/24/think-dojs-antitrust-division-is-immune-political-meddling-think-again/ ........................................................................................ 11

Donald B. Ayer, Bill Barr Must Resign, THE ATLANTIC (Feb. 17, 2020) (emphasis added) available at https://www.the atlantic.com/ideas/archive/2020/02/donald-ayer-bill-barr-must-resign/606670/. ..................................................................................................... 7

Donald B. Ayer, *The Fanatic: Bill Barr is convinced that the country is betraying its founding—and that it's up to him to stop it*, The Atlantic (Sept. 24, 2020) available at https://www.theatlantic.com/ideas/archive/2020/09/bill-barr-founders/616445/ ................... 7

Harry Litman, *Bill Barr has more ways to politicize the Department of Justice*, L.A. TIMES (June 25, 2020) available at https://www.latimes.com/opinion/story/2020-06-25/willima-barr-vote-by-mail-antitrust-google-department-of-justice .................................................... 6

Jacob Schultz, *What Did Geoffrey Berman Tell the House Judiciary Committee?*, Lawfare (July 16, 2020) (emphasis added) available at https://www.lawfareblog.com/what-did-geoffrey-berman-tell-house-judiciary-committee. ............................................................. 10

Jonathan Kravis, *I left the Justice Department after it made a disastrous mistake. It just happened again*, THE WASHINGTON POST (May 11, 2020) (emphasis added) available at https://www.washingtonpost.com/opinions/2020/05/11/i-left-justice-department-after-it-made-disastrous-mistake-it-just-happened-again/. ................................................................. 9

Matt Perez, *Accusations Mount Against Bill Barr Of Politicizing The Justice Department*, FORBES (June 23, 2020) (summarizing eleven (11) examples of politically based actions by Mr. Barr) available at https://www.forbes.com/sites/mattperez/ 2020/06/23/accusations-mount-against-bill-barr-of-politicizing-the-justice-department/ #66c3ccf93440 ................... 6

Matt Zapotosky, *More than 1,900 former Justice Dept. employees again call for Barr's resignation*, THE WASHINGTON POST (May 11, 2020) (emphasis added) available at https://www.washingtonpost.com/national-security/attorney-general-william-barr-michael-flynn/2020/05/11/d798302e-92da-11ea-82b4-c8db161ff6e5_story.html .............................. 6

Nicholas Fandos, Katie Benner and Charlie Savage, *Justice Dept. Officials Outline Claims of Politicization Under Barr*, THE NEW YORK TIMES (June 24, 2020; updated July 10, 2020)

available at https://www.nytimes.com/2020/06/24/us/politics/justice-department-politicization.html................................................................................................................11

*Oversight of the Department of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the House Committee on the Judiciary,* 116 Cong. XX (2020) (Statement of John W. Elias) (June 24, 2020) available at https://docs.house.gov/meetings/JU/JU00/20200624/110836/HHRG-116-JU00-Wstate-EliasJ-20200624-U8.pdf...............................................................................................11

*Oversight of the Dept. of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the House Committee on the Judiciary,* 116 Cong. XX (2020) (Statement of John W. Elias) (June 24, 2020) at 1, available at https://docs.house.gov/meetings/JU/JU00/20200624/ 110836/HHRG-116-JU00-Wstate-EliasJ-20200624-U8.pdf...............................................................................................10

*Oversight of the Dept. of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the House Committee on the Judiciary,* 116 Cong. XX (2020) (Statement of John W. Elias) (June 24, 2020) at 2, 6 available at https://docs.house.gov/ meetings/JU/JU00/20200624/110836/HHRG-116-JU00-Wstate-EliasJ-20200624-U8.pdf...............................................................................................11

Stuart M. Gerson, *Let the Rule of Law Rule Law Enforcement: Reflections on the Current Attorney General's Tenure* (Feb. 25, 2020) available at https://www.justsecurity. org/68803/let-the-rule-of-law-rule-law-enforcement-reflections-on-the-current-attorney-generals-tenure/ ................................................................................................................9

*Amicus curiae,* Government Accountability Project, respectfully moves this Court for leave to file the attached brief in support of Plaintiff E. Jean Carroll's opposition to the Motion of the United States to substitute itself as the Defendant in this matter.

## GROUNDS FOR GRANTING THIS MOTION FOR LEAVE

In support of its motion for leave to file the attached brief, *amicus curiae* states:

*Amicus curiae,* Government Accountability Project is a non-partisan, non-profit human and civil rights defense organization specializing in legal advocacy for people who use free speech rights to expose and challenge abuses of power that betray the public trust.[1] Government Accountability Project is an unusually independent and non-partisan organization.[2]

---

[1]    Over the last four decades, Government Accountability Project has represented or informally assisted more than 8,000 whistleblowers and other truthtellers in actions that have exposed injustice and corruption in public agencies of almost every State and in the administrations of every President, Republican and Democrat alike. Since opening in 1977, Government Accountability Project has become the nation's leading champion of whistleblowers' rights, defending them against retaliation that ranges from professional demotions to criminal prosecutions. Government Accountability Project has a deep understanding of the factors that encourage and discourage whistleblowers and other truthtellers, and their supporting witnesses, from coming forward with important information about our government.

[2]    Government Accountability Project's independence is reflected in the clients it represents, the misconduct it opposes, and the variety of institutions that help fund it (e.g., Carnegie Foundation, Ford Foundation, Open Society Foundations, and Rockefeller Family Fund). Government Accountability Project has joined with organizations of all political and ideological perspectives in amicus briefs in this Court and other federal and state courts (*e.g.,* the ACLU, Friends of the Earth, the Liberty Coalition, the Association of American Physicians & Surgeons, Inc., the League of Women Voters, the American Library Association, the Anti-Defamation League, and C-SPAN).

Government Accountability Project's independence also is reflected in the nearly unique bipartisan support it enjoys in Congress. Government Accountability Project helped to create two bipartisan caucuses in Congress — the House Whistleblower Protection Caucus and the Senate Whistleblower Protection Caucus, both of which are equally divided between Democrats and Republicans — and it has played a leading role in landmark legislation, including the Whistleblower Protection Act of 1989 (WPA), Pub. L. 101-12, 103 Stat. 16

Government Accountability Project is keenly interested in this case because granting the United States' motion to substitute will have two baleful effects. First, granting the motion will chill whistleblowers and other truthtellers who seek to use the courts to hold prominent individuals to account for their wrongdoing. Second, granting the motion will embolden those who hide behind their governmental positions because such a decision will deprive the courts and the public of the opportunity to judge the merits of the underlying allegations of sexual abuse and defamation.

Government Accountability Project is alarmed about the pervasive — and highly credible — allegations regarding the politicization of the Department of Justice by the Trump Administration and Attorney General William P. Barr, including their attacks on the judiciary, and are worried that the instant case represents another example of this troublesome trend.[3]

_____

(1989), the WPA's 1994 and 2012 amendments, and the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745 (2002).

[3] As THE WASHINGTON POST explained in May, 2020:

   More than 1,900 former Justice Department employees on Monday repeated a call for William P. Barr to step down as attorney general, asserting in an open letter he had "once again assaulted the rule of law" by moving to drop the case against President Trump's former national security adviser Michael Flynn.
   The letter, organized by the nonprofit Protect Democracy, was signed by Justice Department staffers serving in Republican and Democratic administrations dating back to President Dwight D. Eisenhower. The vast majority were former career staffers — rather than political appointees — who worked as federal prosecutors or supervisors at U.S. Attorney's Offices across the country or the Justice Department in downtown Washington.
   Protect Democracy, which counts Justice Department alumni among its members, has organized several similar letters critical of Barr's decisions or other Trump administration actions. Most recently, in February, the group collected more than 2,600 signatures on a letter calling for Barr to resign after he intervened to reduce career prosecutors' sentencing recommendation for Roger Stone, a longtime friend of Trump.

2

Among the DOJ alumni who protested Mr. Barr's unprincipled and unprecedented intervention in the *Stone* case were four who had served in high posts in the DOJ: (1) **Donald B. Ayer**, (2) **Stuart M. Gerson**, (3) **Jonathan Kravis**, and (4) **Geoffrey S. Berman**, as well as a client of the Government Accountability Project, (5) **John W. Elias**, who, as described below, is a long-tenured, high-ranking, and current DOJ employee who recently testified to Congress about the unprecedented and alarming politicization of DOJ's Antitrust Division.

Thus:

(1)    In February, 2020, **Donald B. Ayer** — who had served as former Principal Deputy Solicitor General and Deputy Attorney General under President George H.W. Bush — called for Mr. Barr's resignation on politicization grounds, explaining "Bill Barr's America is not a place that anyone, including Trump voters, should want to go. It is a banana republic where all are subject to the whims of a dictatorial president and his henchmen."[4]

---

Matt Zapotosky, *More than 1,900 former Justice Dept. employees again call for Barr's resignation*, THE WASHINGTON POST (May 11, 2020) (emphasis added) available at https://www.washingtonpost.com/national-security/attorney-general-william-barr-michael-flynn/2020/05/11/d798302e-92da-11ea-82b4-c8db161ff6e5_story.html. See generally Matt Perez, *Accusations Mount Against Bill Barr Of Politicizing The Justice Department*, FORBES (June 23, 2020) (summarizing eleven (11) examples of politically based actions by Mr. Barr) available at https://www.forbes.com/sites/mattperez/ 2020/06/23/accusations-mount-against-bill-barr-of-politicizing-the-justice-department/ #66c3ccf93440; Harry Litman, *Bill Barr has more ways to politicize the Department of Justice*, L.A. TIMES (June 25, 2020) available at https://www.latimes.com/opinion/story/2020-06-25/willima-barr-vote-by-mail-antitrust-google-department-of-justice.

[4]    Donald B. Ayer, *Bill Barr Must Resign*, THE ATLANTIC (Feb. 17, 2020) (emphasis added) available at https://www.the atlantic.com/ideas/archive/2020/02/donald-ayer-bill-barr-must-resign/606670/.

In September, 2020, Mr. Ayer wrote that Mr. Barr has abused "the office of attorney general and the resources of the Justice Department to do the personal bidding of President Donald Trump, to undermine the evenhanded rule of law, and to work in countless other ways to put the president in a position of nearly autocratic power."[5] According to Mr. Ayer, Mr. Barr believes that

> the president "alone is the Executive Branch," possessing literally "all Federal law enforcement power, and hence prosecutorial discretion." That includes, Barr is perfectly clear, "supervisory authority over [all] cases," including the right to direct the handling of cases involving himself, his friends, or his enemies.[6]

Finally, Mr. Ayer writes that

> in Barr's mind, **the courts are the principal culprit** in unjustifiably limiting the extraordinarily broad powers that the president is constitutionally entitled to exercise. … Barr complains that the judiciary "has appointed itself the ultimate arbiter of separation of powers disputes between Congress and Executive." Indeed, he says that courts should play no role whatsoever in "constitutional disputes between the other two branches" … **[and] should refrain from second-guessing the executive** whenever its conduct involves the exercise of "prudential judgment," on claims of improper "motivation behind government action," or indeed any time when review would not be guided by "tidy evidentiary standards and specific quantums of proof." In sum, Barr would foreclose judicial review of executive action in pretty much any case where there is a debatable issue.[7]

---

[5] Donald B. Ayer, *The Fanatic: Bill Barr is convinced that the country is betraying its founding—and that it's up to him to stop it*, The Atlantic (Sept. 24, 2020) available at https://www.theatlantic.com/ideas/archive/2020/09/bill-barr-founders/616445/

[6] *Id.* (emphasis added; citation omitted).

[7] *Id.* (emphasis added).

4

(2)     Also in February, 2020, **Stuart M. Gerson** — who had headed the

DOJ's Civil Division under Mr. Barr during the entirety of the Administration of President

George H.W. Bush and had served as the Acting Attorney General in the Administrations of

both the first President Bush and President William J. Clinton — likewise lamented the DOJ's

astonishing politicization, questioning "'<u>whether DOJ stands for the rule of law or for the rule</u>

<u>of an authoritarian administration.</u>'"[8] Mr. Gerson wrote that Mr. Barr's "low-ball

recommendation [regarding Mr. Stone's sentencing] gives more of a whiff of favoritism than

it does of principle. Indeed, one cannot recall any similar leniency being ordered in any other

case, particularly in the host of cases that the government brings against members of minority

groups or those who are economically disadvantaged."[9]

(3)     In May, **Jonathan Kravis** — who had been Deputy Chief of the Fraud

and Public Corruption Section of the U.S. Attorney's Office for the District of Columbia and,

in that role, had been the lead prosecutor on *United States v. Roger Stone* before Mr. Barr

intervened in that case  — explained why he resigned from the DOJ after Barr's

unprecedented and unprincipled intervention in the *Stone* case. In an op-ed in THE

WASHINGTON POST, Kravis asserted that in both the Michael Flynn and Roger Stone cases <u>Mr.</u>

<u>Barr's DOJ "put political patronage ahead of its commitment to the rule of law,</u>" which "will

do lasting damage to the institution."[10] Mr. Kravis wrote:

---

[8]     Asher Stockler, *Former Barr Deputy Says Intervention in 'Crony' Roger Stone Case Reeks of 'Favoritism'*, NEWSWEEK (Feb. 25, 2020) (emphasis added) available at https://www.newsweek.com/william-barr-stuart-gerson-roger-stone-1489095.

[9]     Stuart M. Gerson, *Let the Rule of Law Rule Law Enforcement: Reflections on the Current Attorney General's Tenure* (Feb. 25, 2020) available at https://www.justsecurity.org/68803/let-the-rule-of-law-rule-law-enforcement-reflections-on-the-current-attorney-generals-tenure/

[10]     Jonathan Kravis, *I left the Justice Department after it made a disastrous mistake. It*

In both cases, <u>the department undercut the work of career employees to protect an ally of the president, an abdication of the commitment to equal justice under the law</u>. Prosecutors must make decisions based on facts and law, not on the defendant's political connections. When the department takes steps that it would never take in any other case to protect an ally of the president, it betrays this principle.[11]

(4)     Similarly, on July 9, 2020, **<u>Geoffrey S. Berman</u>** — the former U.S. attorney for the Southern District of New York — expressed "serious concerns" to the House Judiciary Committee about Mr. Barr's sudden, devious, and unethical behavior in removing him from the U.S. Attorney Office's which had been supervising the investigations and prosecutions of several of Mr. Trump's former and current political associates, including Michael D. Cohen and Rudolph W. Giuliani.

Referring to Barr's decision to release a memo that erroneously stated that Berman had resigned and would be replaced on a temporary basis by someone outside the office, Berman told committee Chair Jerrold Nadler, "I do not know what the Attorney General's motives were, but the <u>irregular and unexplained actions by the Attorney General raised serious concerns</u> for me."[12]

Government Accountability Project has a unique perspective on the DOJ's

---

*just happened again*, THE WASHINGTON POST (May 11, 2020) (emphasis added) available at https://www.washingtonpost.com/opinions/2020/05/11/i-left-justice-department-after-it-made-disastrous-mistake-it-just-happened-again/.

[11]   *Id.* (Emphasis added).

[12]   Jacob Schultz, *What Did Geoffrey Berman Tell the House Judiciary Committee?*, Lawfare (July 16, 2020) (emphasis added) available at https://www.lawfareblog.com/what-did-geoffrey-berman-tell-house-judiciary-committee. See Benjamin Weiser, Ben Protess, Katie Benner and William K. Rashbaum, *Inside Barr's Effort to Undermine Prosecutors in N.Y.: The firing of the top federal prosecutor in Manhattan was foreshadowed by a disagreement over a case linked to President Trump*, The New York Times (June 25, 2020; updated July 22, 2020) available at https://www.nytimes.com/2020/06/25/nyregion/geoffrey-berman-william-barr-michael-cohen.html

politicization under Mr. Barr. Thus, for example, Government Accountability Project recently represented a fifth long-tenured and high-ranking DOJ employee — **John W. Elias**, who remains a DOJ Antitrust Division employee — with respect to his June 24, 2020 testimony before Congress.[13]

Mr. Elias testified that "at the direction of Attorney General Barr, the [DOJ's] Antitrust Division launched ten full-scale reviews of merger activity taking place in the marijuana, or cannabis, industry," investigations that "do not meet established criteria for antitrust investigations," such as any credible threat to competition, but instead were prompted solely by Mr. Barr's moralistic and "[p]ersonal dislike of the [cannabis] industry …."[14]

This Court often has granted non-parties leave to file *amicus* briefs in cases

---

[13]   Mr. Elias "held leadership positions both in the Trump Administration, where [he] acted as Chief of Staff in the Antitrust Division from January 2017 to October 2018, and in the Obama Administration, where [he] served as a Deputy Associate Attorney General and Chief of Staff in the Office of the Associate Attorney General." *Oversight of the Dept. of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the House Committee on the Judiciary,* 116 Cong. XX (2020) (Statement of John W. Elias) (June 24, 2020) at 1, available at https://docs.house.gov/meetings/JU/JU00/20200624/ 110836/HHRG-116-JU00-Wstate-EliasJ-20200624-U8.pdf.

[14]   *Oversight of the Dept. of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the House Committee on the Judiciary,* 116 Cong. XX (2020) (Statement of John W. Elias) (June 24, 2020) at 2, 6 available at https://docs.house.gov/ meetings/JU/JU00/20200624/110836/HHRG-116-JU00-Wstate-EliasJ-20200624-U8.pdf. See Bill Baer, *Think the DOJ's Antitrust Division is immune from political meddling? Think again,* THE WASHINGTON POST (June 24, 2020) available at https://www.washingtonpost.com / opinions/2020/06/24/think-dojs-antitrust-division-is-immune-political-meddling-think-again/ (summarizing (discussing Mr. Elias' allegations); Nicholas Fandos, Katie Benner and Charlie Savage, *Justice Dept. Officials Outline Claims of Politicization Under Barr,* THE NEW YORK TIMES (June 24, 2020; updated July 10, 2020) available at https://www.nytimes.com/ 2020/06/24/us/politics/justice-department-politicization.html (discussing the allegations of, *inter alia,* Mr. Elias)

implicating the public interest.[15] This principle applies even when—as now—matters of broad

public concern are raised in disputes between private parties.[16]

"Participation as amicus curiae … is appropriate when the party cares only about the

legal principles of the case, and has no personal, legally protectable interest in the outcome of

the litigation."[17] As Judge Carter suggested— quoting Judge Posner "'[a]n amicus brief

---

[15]   See, e.g., *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 n.2 (S.D.N.Y. 2000) (LAK), aff'd, 273 F.3d 429 (2d Cir. 2001); *United States v. KPMG LLP*, 99 A.F.T.R.2d 2007-1118 (LAK), 2007 WL 541956, at *2 (S.D.N.Y. Feb. 15, 2007).

Other courts in this District frequently do the same, especially in cases — as here — involving "an issue of great public concern." *Floyd v. City of New York*, 283 F.R.D. 153, 159, 82 (S.D.N.Y. 2012) (Scheindlin, J.). See also *Natural Resources Def. Council, Inc. v. U.S. Envtl. Protec. Agency*, 438 F. Supp. 3d 220, 224 n.1 (S.D.N.Y. 2020); *State of New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 225 n.21 (S.D.N.Y. 2020); *State of New York v. U.S. Immig. and Customs Enf't*, 431 F. Supp. 3d 377, 382 (S.D.N.Y. 2019); *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 745 n.3 (S.D.N.Y. 2019); *Consumer Finan. Protec. Bureau v. RD Leg. Funding, LLC*, 332 F. Supp. 3d 729, 750 (S.D.N.Y. 2018); *United States v. Apple, Inc*., 889 F. Supp. 2d 623, 630 (S.D.N.Y. 2012); *In re Terrorist Attacks on September 11, 2001*, 689 F. Supp. 2d 552, 558 (S.D.N.Y. 2010); *United States v. IBM*., 539 F. Supp. 473, 475 (S.D.N.Y. 1982).

[16]   See *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018); *Coalition for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 561 (S.D.N.Y. 2017), aff'd sub nom., 906 F.3d 41 (2d Cir. 2018). See also *In re Lehman Bros. Holdings Inc. v. Intel Corp*., No. 08-13555, 2015 WL 7194609, at *4 (S.D.N.Y. Sept. 16, 2015); *Associated Press v. Meltwater U.S. Holdings, Inc*., 931 F. Supp. 2d 537, 553 (S.D.N.Y. 2013); *In re American Intern. Group, Inc. Securities Litig*., 916 F. Supp. 2d 454, 462 (S.D.N.Y. 2013); *Ognibene v. Parkes*, No. 08 Civ. 1335(LTS)(FM)., 2013 WL 1348462, at *1 (S.D.N.Y. Apr. 4, 2013); *American Broad. Companies, Inc. v. AEREO, Inc*., 874 F. Supp. 2d 373, 404 (S.D.N.Y. 2012), aff'd sub nom. *WNET, Thirteen v. Aereo, Inc*., 712 F.3d 676 (2d Cir. 2013), rev'd and remanded on other grnds, 573 U.S. 431 (2014); *Texaco, Inc. v. Pennzoil Co*., 626 F. Supp. 250, 252 (S.D.N.Y. 1986), aff'd as modified and remanded, 784 F.2d 1133 (2d Cir. 1986), rev'd, 481 U.S. 1 (1987); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F. Supp. 842, 860 (S.D.N.Y. 1986), aff'd as modified, 809 F.2d 195 (2d Cir. 1987).

[17]   *Russell v. Bd. of Plumbing Examiners of Cty of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) (citing MOORE'S FEDERAL PRACTICE DIGEST 3D § 24.23 [2]), aff'd, 1 Fed. Appx. 38 (2d Cir. 2001).

should normally be allowed when … the amicus has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide.'"[18]

The proposed, attached brief of *amicus curiae* plainly satisfies these standards. *Amicus* have no personal, legally cognizable interest in the outcome of the pending litigation. Instead, it cares exclusively in safeguarding the public's interest in the legal principles at stake in the case. Furthermore, *amicus*' experience has given it unique insights and perspectives that can assist the Court in ways the parties' and movant's counsel may not be able to do.

Counsel for Ms. Carroll has consented to the filing of the attached *amicus* brief. Counsel for the United States has advised the undersigned that it will oppose this filing.

---

[18]   *Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc.*, 12 CIV. 7935 (ALC), 2014 WL 265784, at *2 (S.D.N.Y. Jan. 23, 2014) (emphasis added; quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.)). See *Women for Am. First v. De Blasio*, 20 CIV. 5746 (LGS), 2020 WL 4904057, at *2 (S.D.N.Y. Aug. 18, 2020); *C & A Carbone, Inc. v. Cty. of Rockland, NY*, 78 ERC 2037 (ER), 2014 WL 1202699, at *3 (S.D.N.Y. Mar. 24, 2014); *Auto. Club of N.Y. Inc. v. Port Auth. of N.Y. & N.J.*, 11 Civ. 6746 (RJH), 2011 WL 5865296, at *1–2 (S.D.N.Y. Nov. 22, 2011).

## **CONCLUSION**

For the foregoing reasons, *amicus curiae,* Government Accountability Project, urges this Court to grant it leave to file the attached brief.

A proposed order is enclosed with this motion.

Respectfully submitted by:

/s/ Jack Kolar
John A. Kolar
D.C. Bar No. 292953
Litigation Director
Government Accountability Project
1612 K Street, NW — Suite 1100
Washington, DC 20006
202-457-0034
JackK@whistleblower.org

Ned Miltenberg
National Legal Scholars Law Firm, P.C., and
Of Counsel to the Government Accountability Project
5410 Mohican Road — Suite 200
Bethesda, MD 20816-2162
202/656-4490
NedMiltenberg@gmail.com

Dated: October 5, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2020, the foregoing document was filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: October 5, 2020                          /s/ Jack Kolar
                                                John A. Kolar

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                    )
                                    )
E. JEAN CARROLL,                    )
                                    )
                    *Plaintiff,*    )
                                    )       ECF Case
        v.                          )
                                    )       No. 1:20-cv-7311 (LAK)
DONALD J. TRUMP,                    )
 in his personal capacity,          )
                                    )
                    *Defendant.*    )
_____)

## **ORDER**

Upon due consideration of the motion of the Government Accountability Project for

leave to file its proposed brief *amicus curiae* in support of the Plaintiff, it is hereby

ORDERED that the motion is GRANTED.


Dated: _____          _____
                                     Lewis A. Kaplan
                                     United States District Judge

1