# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| E. JEAN CARROLL, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) ECF Case |
| v. | ) |
| | ) No. 1:20-cv-7311 (LAK) |
| DONALD J. TRUMP, | ) |
| in his personal capacity, | ) |
| | ) |
| *Defendant.* | ) |

_____

**BRIEF, *AMICUS CURIAE*, OF GOVERNMENT
ACCOUNTABILITY PROJECT IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO THE MOTION OF THE UNITED STATES TO
SUBSTITUTE ITSELF AS THE DEFENDANT**

John A. Kolar
Litigation Director
Government Accountability Project
1612 K Street, NW — Suite 1100
Washington, DC 20006
202-457-0034
JackK@whistleblower.org

Ned Miltenberg
National Legal Scholars Law Firm, P.C., and
Of Counsel to the Government Accountability Project
5410 Mohican Road — Suite 200
Bethesda, MD 20816-2162
202-656-4490
NedMiltenberg@gmail.com

October 5, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

IDENTIFICATION AND INTEREST OF *AMICUS CURIAE* .................................................... 1

ARGUMENT ................................................................................................................... 1

    I.   Introduction and Summary of Argument ……………………………………………… 1

    II.  Procedural Background ………………………………………………………………… 2

    III. The Applicable Federal and State Legal Standards …………………………………… 3

        A.  Certification Under the Westfall Act …………………………………………… 3

        B.  "Scope of Employment" Under New York Law ………………………………... 6

        C.  This Court Should Deny the Motion of the United States to Substitute Itself as the Defendant Because Mr. Trump's Substantially Similar Pre-Presidential Wrongs Show He Was Acting on His "Own Behalf" and "Not in [His] Employer's Service" When He Allegedly Defamed Ms. Carroll …………………………… 8

CONCLUSION.................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aryai v. Forfeiture Support Associates*, 25 F. Supp. 3d 376 (S.D.N.Y. 2012) ...................... 6, 9

*Awan v. United States*, 16CIV871CBAVMS, 2020 WL 1172634 (E.D.N.Y. Feb. 3, 2020) ..... 7

*Bello v. United States*, 93 Fed. Appx. 288, 289, 2004 WL 605268 (2d Cir. 2004) (unpublished summary order ......................................................................................................................... 5

*Benacquista v. Spratt*, 217 F. Supp. 3d 588 (N.D.N.Y. 2016) ..................................................... 9

*Bouveng v. NYG Capital LLC*, 14 Civ. 5474(PGG), 2015 WL 3503947 (S.D.N.Y. June 2, 2015) ................................................................................................................................................... 9

*Bowles v. United States*, 685 Fed. Appx. 21 (2d Cir. 2017) ....................................................... 5

*Brotherhood. Mut. Ins. Co. v. Ludwigsen*, 16-CV-6369 (CS), 2018 WL 4211319 (S.D.N.Y. Sept. 4, 2018) ................................................................................................................................... 9

*Castracane v. Campbell*, 300 A.D.2d 704, 751 N.Y.S.2d 121 (N.Y. App. Div. 2002) ............ 19

*Council on American Islamic Relations v. Ballenger (CAIR)*, 444 F.3d 659 (D.C. Cir. 2006) 11

*Crawford v. Tribeca Lending Corp.*, 815 F.3d 121 (2d Cir. 2016) .......................................... 19

*Cronin v. Hertz Corp.*, 818 F.2d 1064 (2d Cir. 1987) ............................................................... 5

*De Masi v. Schumer*, 608 F. Supp. 2d 516 (S.D.N.Y. 2009) ...................................................... 6

*Dilworth v. Goldberg*, 914 F. Supp. 2d 433 (S.D.N.Y. 2012) ................................................... 9

*D'Lima v. Cuba Mem'l. Hosp., Inc.*, 833 F. Supp. 2d 383 (W.D.N.Y. 2011) ............................ 9

*Does 1-10 v. Haaland*, No. 19-6347, 2020 WL 5242402, at *5 (6th Cir. Sept. 3, 2020) .... 5, 11

*Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008) ...................................................... 6

*Ello v. Singh*, 531 F. Supp. 2d 552, 581 (S.D.N.Y. 2007) ........................................................ 9

*Green v. Hinds*, 17CV5422DRHARL, 2018 WL 7063165 (E.D.N.Y. Dec. 10, 2018) ........ 7, 10

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) ......................................................... 4

*Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95, 96 (N.Y. 1999) ..................................... 7

*Maldonado v. Colon*, No. 97 Civ. 3966, 1998 WL 240479 (S.D.N.Y. May 12, 1998) ............. 6

*McHugh v. Univ. of Vermont*, 966 F.2d 67 (2d Cir. 1992) ........................................................ 5

*New York v. Denson*, 42 N.E.3d 676 (N.Y. 2015) .................................................................... 19

*Operation Rescue Nat'l v. United States*, 975 F. Supp. 92 (D. Mass. 1997), aff'd, 147 F.3d 68 (1st Cir. 1998) ...................................................................................................................... 12

*Osborn v. Haley*, 549 U.S. 225 (2007) ..................................................................................... 4

*Rausman v. Baugh*, 248 A.D.2d 810, 682 N.Y.S.2d 42 (N.Y. App. Div. 1998) ................... 8, 9

*Rivera v. New York*, 142 N.E.3d 641 (N.Y. 2019)......................................................6

*Riviello v. Waldron*, 391 N.E.2d 1278 (N.Y. 1979).................................................7

*Rosenfeld v. Lenich*, 370 F. Supp. 3d 335 (E.D.N.Y. 2019).....................................9

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191 (2d Cir. 2015) ....................19

*Smith v. Brown*, 296 F. Supp. 3d 648, 656 (S.D.N.Y. 2017) .....................................7, 9, 10, 20

*Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009)................................................11

*Zervos v. Trump*, 147 N.E.3d 594 (N.Y. March 31, 2020) .......................................1

## Statutes

Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), Pub. L. No. 100–694, § 2(b), 102 Stat. 4563, 4564, 28 U.S.C. § 2679 ........................................ *passim*

## Rules

Fed.R.Evid. 404(b)(2) ...............................................................................19

Fed.R.Evid. Rule 406 ...............................................................................19

## Treatises

Dan B. Dobbs, Robert E. Keeton, & David G. Owen, eds., PROSSER AND KEETON ON TORTS § 70 (5th ed. 1984)...........................................................................................8

Richard T. Farrell, PRINCE, RICHARDSON ON EVIDENCE § 4–517 (11th ed., 1995) .................19

## Other Authorities

Eliza Relman, *The 26 women who have accused Trump of sexual misconduct*, BUSINESS INSIDER (Sept. 17, 2020) available at https://www.businessinsider.com/women-accused-trump-sexual-misconduct-list-2017-12 .....................................................................................17

Forest Hanson and Geoff Earle, *White House says all the women who accused Trump of sexual assault are LIARS,* Daily Mail (Oct. 28, 2016) available at https://www.dailymail.co.uk/news/article-5026013/White-House-claims-Trump-sexual-harassment-accusers-lie.html ..................................................................................18

Jia Tolentino, *Trump and the Truth: The Sexual-Assault Allegations*, THE NEW YORKER (Oct. 20, 2016) available at https://www.newyorker.com/ news/news-desk/trump-and-the-truth-the-sexual-assault-allegations ...............................................................................16

Karen Tumulty, *Woman says Trump reached under her skirt and groped her in early 1990s*, THE WASHINGTON POST (Aug. 14, 2016) available at https://www.washingtonpost.com/politics/woman-says-trump-reached-under-her-skirt-and-groped-her-in-early-1990s/2016/10/14/67e8ff5e-917d-11e6-a6a3-d50061aa9fae_story.html ................................15

Katie Benner and Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says*, NY TIMES (Sept. 9, 2020), available at https://www.nytimes.com/2020/09/09/us/politics/ trump-e-jean-carroll-lawsuit.html...............2

Matt Viser, *The pageant of Donald Trump's dreams*, BOSTON GLOBE (April 16, 2016), available at https://www.bostonglobe.com/news/politics/2016/04/16/trump/P6jVWXAzaG12Ou5dPXYCDL/story.html ...........................................................................................................14

Megan Twohey, *Former "Apprentice" Contestant Files Defamation Suit Against Trump,* N.Y. TIMES, Jan. 17, 2017 (available at https://www.nytimes.com/2017/01/17/us/former-apprentice-contestant-files-defamation-suit-against-trump.html.........................................................13, 14

Naomi Lin, *Donald Trump on accuser: "Take a look at her ... I don't think so,"* CNN (Oct. 13, 2016 (emphasis added; available at https://www.cnn. com/ 2016/10/13/politics/natasha-stoynoff-donald-trump-women/index.html ...............................................................................16

Tessa Berenson & Charlotte Alter, *Here's Everything You Need to Know About the Sexual Allegations Against Donald Trump*, TIME (Oct. 24, 2016), available at https://time.com/4530242/donald-trump-sexual-allegations/ ..................................................15

*Amicus curiae,* Government Accountability Project, provides its identification and describes its interests in this matter in its accompanying motion, at ¶¶ 1-5.

**ARGUMENT**

## I.   **Introduction and Summary of Argument**

The United States insists that Westfall certification and removal were proper, that Plaintiff E. Jean Carroll's defamation action against Defendant Donald J. Trump belongs in this Court, and that this Court must allow the United States to substitute itself as the Defendant. The United States says this is so because regardless of how one characterizes what Mr. Trump said about Ms. Carroll, he uttered his words after he was inaugurated and because anything a president says after inauguration automatically and inexorably lies within the "scope" of his public employment. The United States is wrong. Under New York scope-of-employment law, which controls the present dispute, the "overriding question" in determining if an employee was acting within the scope of their employment is whether the employee was "acting not on his or her own behalf, but in the employer's service." *Smith v. Brown*, 296 F. Supp. 3d 648, 656 (S.D.N.Y. 2017) (emphasis added; summarizing New York law).

In this case, the answer to that "overriding question" is plain. As detailed below in Section III-C, the words Mr. Trump used in defaming Ms. Carroll were identical to ones he used in defaming eight other women in the nine months before he was inaugurated. Pursuant to Fed.R.Evid. 406, Mr. Trump's prior words are admissible to establish he had a long-standing "habit" of defaming women who had challenged his sexual abuse, a habit that

predated his presidency, and a habit he indulged in those nine months repeatedly, consistently, and solely "on his … own behalf." Mr. Trump's pre-inaugural habit shows the identical, post-inaugural words he used to defame Ms. Carroll were likewise "on his … own behalf" — and not within the scope of his employment, as the United States contends.

For these reasons, *amicus* respectfully urges this Court to hold Westfall certification was improper, to deny the motion of the United States to substitute itself for Defendant Trump in this action, and to remand this case to the Supreme Court of the State of New York.

## II.     Procedural Background

Plaintiff E. Jean Carroll ("Ms. Carroll") instituted this action against Defendant Donald J. Trump ("Mr. Trump") in the Supreme Court for the State of New York, New York County, on November 4, 2019. Ms. Carroll sued Mr. Trump solely in his personal capacity and solely under New York common law, specifically a single cause of action for defamation. Carroll Complaint at pages 26-27.

Mr. Trump never answered or filed a dispositive motion regarding Ms. Carroll's Complaint. Instead, on February 4, 2020, he moved to stay the state court case pending the decision of the Court of Appeals of New York in a similar defamation suit that had been filed against Trump by another woman, a decision that court rendered last March. *Zervos v. Trump*, 147 N.E.3d 594 (N.Y. March 31, 2020).

On August 8, 2020, the N.Y. Supreme Court denied Mr. Trump's motion for a stay and ordered the parties to proceed with discovery forthwith, which Ms. Carroll represented would include taking Mr. Trump's deposition and obtaining a sample of his DNA. Mr. Trump

never provided any discovery.

On September 8, 2020, the United States, which neither was a party to nor intervenor in Ms. Carroll's case, purported to remove the state court action to this Court pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100–694, § 2(b), 102 Stat. 4563, 4564, 28 U.S.C. § 2679, commonly known as the Westfall Act. See *Carroll v. Trump,* No. 1:20-cv-7311 (LAK), ECF 1. The Westfall Act allows the United States to substitute itself for a federal employee as defendant upon the Attorney General's certification "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 8 U.S.C. § 2679(d)(2). On September 8, 2020, Attorney General William H. Barr said "[t]he White House asked the Justice Department to replace President Trump's private lawyers to defend against" Ms. Carroll's "accusations that he defamed her last year …." Katie Benner and Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says,* NY TIMES (Sept. 9, 2020), available at https://www.nytimes.com/2020/09/09/us/politics/ trump-e-jean-carroll-lawsuit.html. "Mr. Barr said the department was responding to a memorandum from the White House requesting that it take over the case under a law called the Westfall Act …." *Id.* At the same time, the United States moved this Court to substitute the United States as the party defendant in Mr. Trump's place. ECF 3.

# III.    The Applicable Federal and State Legal Standards

## A.  Certification Under the Westfall Act

The Westfall Act accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake pursuant to their official duties. Section 2679(b)(1) of that Act provides:

> The remedy against the United States provided by [the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

Section 2679(b)(d)(1) further provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Finally, § 2679(b)(d)(2) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such

4

> claim in a State court shall be removed without bond at any
> time before trial by the Attorney General to the district court of
> the United States for the district and division embracing the
> place in which the action or proceeding is pending.

The Supreme Court of the United States has explained that if "a federal employee is sued for wrongful or negligent conduct, the [Westfall] Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn v. Haley*, 549 U.S. 225, 229–30 (2007) (citing § 2679(d)(1)–(2)). Significantly, "the Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant." 549 U.S. at 246 (emphasis added; quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995)).

Thus, pursuant to *Osborn,* regardless of whether the tort action had been commenced in federal or state court, a plaintiff is entitled to *de novo* review of a § 2679(d) certification "and the district court may strike such certification to the extent it finds that the defendant employee was not in fact acting within the scope of her employment." *Bowles v. United States*, 685 Fed. Appx. 21, 23 (2d Cir. 2017)(unpublished summary order; citing *Lamagno*, 515 U.S. at 420, and *McHugh v. Univ. of Vermont*, 966 F.2d 67, 72, 74 (2d Cir. 1992)).

In undertaking *de novo* review of a case removed from state court, federal district courts are required to apply "state law principles pertaining to when intentional tort[ious] conduct falls within the scope of a party's employment," *Bello v. United States*, 93 Fed. Appx. 288, 289, 2004 WL 605268, at *1 (2d Cir. 2004) (unpublished summary order; citing *McHugh*, 966 F.2d at 75, and *Cronin v. Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir. 1987)), specifically the scope-of-employment principles of the state "embracing the place in which

the action or proceeding is pending." 28 U.S.C. § 2679(d)(2). As the Sixth Circuit recently explained: "For purposes of the Westfall Act, 'whether the federal employee was acting within the scope of his or her employment, is governed by the agency law of the forum state.'" *Does 1-10 v. Haaland*, No. 19-6347, 2020 WL 5242402, at *5 (6th Cir. Sept. 3, 2020) (quoting *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008)). This Court has agreed.[1]

In this case, all of the alleged events relevant to Ms. Carroll's state-law defamation claim occurred in New York. Mr. Trump never has contested that that claim properly lies in that state and that New York law governs those claims. As such, this Court should look to New York scope-of-employment jurisprudence in assessing whether Westfall certification was proper.

**B.** **"Scope of Employment" Under New York Law**

Under New York law, pursuant to "the common-law doctrine of respondeat superior, an employer … may be held vicariously liable for torts, including intentional torts, committed by employees" only if the employees were "acting within the scope of their employment." *Rivera v. New York*, 142 N.E.3d 641, 645 (N.Y. 2019) (citing *Riviello v. Waldron*, 391 N.E.2d 1278 (N.Y. 1979)).

---

[1]   "'To determinate [sic] whether a federal employee was or was not acting within the scope of his employment, the Court looks to the state law in which the allegedly wrongful conduct took place.'" *Aryai v. Forfeiture Support Associates*, 25 F. Supp. 3d 376, 388 (S.D.N.Y. 2012) (quoting *Maldonado v. Colon*, No. 97 Civ. 3966, 1998 WL 240479, at *3 (S.D.N.Y. May 12, 1998)). See *De Masi v. Schumer*, 608 F. Supp. 2d 516, 522 (S.D.N.Y. 2009).

Hence, "if an employee 'for purposes of [their] own departs from the line of ... duty so that for the time being [their] acts constitute an abandonment of ... service, the [employer] is not liable.'" *Rivera,* 142 N.E.3d at 645 (brackets in the original; quoting *Judith M. v. Sisters of Charity Hosp.,* 715 N.E.2d 95, 96 (N.Y. 1999)).

No simple test or criterion enables a court to determine if an employee was acting within the scope of her or his employment. *Smith v. Brown,* 296 F. Supp. 3d 648, 656 (S.D.N.Y. 2017) (citations omitted). See *Awan v. United States,* 16CIV871CBAVMS, 2020 WL 1172634, at *4 (E.D.N.Y. Feb. 3, 2020); *Green v. Hinds,* 17CV5422DRHARL, 2018 WL 7063165, at *7 (E.D.N.Y. Dec. 10, 2018). "That is not to say there are no useful guidelines for assessing whether the conduct of a particular employee, overall, falls within the permissible ambit of the employment." *Riviello v. Waldron,* 391 N.E.2d 1278, 1281 (N.Y. 1979).

Thus, since the New York Court of Appeals' definitive decision in *Riviello* forty years ago, New York courts have "consider[ed], among other factors," five elements:

> "[1] the connection between the time, place and occasion for the act; [2] the history of the relationship between employer and employee as spelled out in actual practice; [3] whether the act is one commonly done by such an employee; [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated" (*i.e.*, whether it was foreseeable).

*Rivera,* 142 N.E.3d at 645 (quoting *Riviello*, 391 N.E.2d at 1281).

Twenty years after *Riviello* was decided, an intermediate New York appellate court found that New York state "decisional law has yielded [six more] formulations," all "of which are instructive," specifically:

> [6] Did the employee's act ... fall within the direction and control of the employer? [7] Did the employee act under the express or implied authority of the employer? [8] Was the employee's act in furtherance of the employer's interests? [9] Were the employee's acts in the "discharge of duty" to the employer? [10] Was it an act in the execution of the employer's orders or part of the work assigned by the employer? [11] Were the acts "so closely connected" with what the employee was hired to do, and "so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment"?

*Rausman v. Baugh*, 248 A.D.2d 8, 10-11, 682 N.Y.S.2d 42 (N.Y. App. Div. 1998) (citing Dan B. Dobbs, Robert E. Keeton, & David G. Owen, eds., PROSSER AND KEETON ON TORTS § 70, at 502 (5th ed. 1984); other citations omitted). Numerous district courts in this Circuit have relied on *Rausman's* "formulations," in whole or in part.[2]

In light of these eleven non-exhaustive and overlapping *Riviello/Rausman* "factors" and "formulations" it is unsurprising that "[t]here is no single mechanical test to determine whether at a particular moment an employee is engaged in the employer's business ...." *Aryai v. Forfeiture Support Associates*, 25 F. Supp. 3d 376, 389 (S.D.N.Y. 2012) (quoting *Rausman*, 682 N.Y.S.2d at 43). Nevertheless, federal courts have discerned one fundamental, "overriding question" for courts to consider, which is whether the employee was "acting not

---

[2]    See *Brotherhood. Mut. Ins. Co. v. Ludwigsen*, 16-CV-6369 (CS), 2018 WL 4211319, at *10 (S.D.N.Y. Sept. 4, 2018); *Smith v. Brown*, 296 F. Supp. 3d 648, 656 (S.D.N.Y. 2017); *Bouveng v. NYG Capital LLC*, 14 Civ. 5474(PGG), 2015 WL 3503947, at *10 (S.D.N.Y. June 2, 2015); *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 456 (S.D.N.Y. 2012); *Aryai v. Forfeiture Support Associates*, 25 F. Supp. 3d 376, 389 (S.D.N.Y. 2012); *Ello v. Singh*, 531 F. Supp. 2d 552, 581 (S.D.N.Y. 2007). See also *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 350, (E.D.N.Y. 2019); *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 603 (N.D.N.Y. 2016); *D'Lima v. Cuba Mem'l. Hosp., Inc.*, 833 F. Supp. 2d 383, 39 (W.D.N.Y. 2011).

8

on his or her own behalf, but in the employer's service." *Smith v. Brown*, 296 F. Supp. 3d 648,

656 (S.D.N.Y. 2017) (emphasis added; citing *Rausman* and summarizing New York law).

Accord *Green v. Hinds*, 17CV5422DRHARL, 2018 WL 7063165, at *7 (E.D.N.Y. Dec. 10,

2018).

>    **C.    This Court Should Deny the Motion of the United States to Substitute Itself as the Defendant Because Mr. Trump's Substantially Similar Pre-Presidential Wrongs Show He Was Acting on His "Own Behalf" and "Not in [His] Employer's Service" When He Allegedly Defamed Ms. Carroll**

In this case, the answer to the single "overriding question," *Smith,* 296 F. Supp. 3d at

656, of whether Mr. Trump defamed Ms. Carroll "on his own behalf" or behalf of the people

of the United States is clear: he did so entirely for his sake. For this reason, Westfall

certification and removal were improper and this Court should deny the pending motion of the

United States to substitute itself for Mr. Trump as the defendant in this case.

The United States contends this Court should grant its motion because "[n]umerous

courts have" done so on purportedly apposite facts and thus "have recognized that elected

officials act within the scope of their office or employment when speaking with the press,

including with respect to personal matters, and have therefore approved the substitution of the

United States in defamation actions." U.S. Brief at 4. The United States cites five decisions

for this proposition. *Id.* at 4-5. None of them are helpful, as each one involved single, isolated

torts by defendants while they were employed by the government, in contrast to the serial

torts committed by Mr. Trump against eight other women before he became President, acts of

defamation that were close kin to one Ms. Carroll alleges he committed against her.

None of the five cases the United States cites provides precedential authority for, or even a useful comparison to the one at bar because none of them applied New York law and none examined whether the government-employee's activities were within the scope of his employment in light of his conduct before or outside his employment.

Thus, for example, in assessing Kentucky's scope-of-employment law in the first case the United States cites, *Does 1-10, supra*, neither the U.S. District Court for the Eastern District of Kentucky nor the Sixth Circuit ever considered whether the defendants who sought and won Westfall Act certification and removal for defamatory tweets they made while in government employ ever had made comparable tweets before or outside government work, *i.e.,* defamatory comments made on their own behalf before the defendants were elected to Congress.[3] The same narrow focus on a solitary event held true for the other four decisions the United States relies on here: *Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009); *Council on American Islamic Relations (CAIR) v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995); and *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92 (D. Mass. 1997), aff'd, 147 F.3d 68 (1st Cir. 1998).

In this case, by contrast, *amicus'* review of the numerous derogatory and defamatory statements Mr. Trump made to and about eight women <u>before</u> he became President demonstrates that the nearly identical comments he made about Ms. Carroll <u>after</u> he became President were made on his behalf and not his employer's. Indeed, the only difference

---

[3]     The U.S. District Court for the Eastern District of Kentucky and the Sixth Circuit relied on Kentucky scope-of-employment law "because Plaintiffs live in Kentucky."  *Does 1-10,* 2020 WL 5242402, at *5).

between defamatory comments Mr. Trump made about Ms. Carroll in 2019, after he was inaugurated, and the dozens of defamatory statements he made about eight other women in 2016, before he could plausibly claim any sort of governmental immunity, is where and when he made them — while ensconced in the White House, after he was inaugurated — which is immaterial for scope-of-employment and Westfall Act purposes.

Simply put, the defamatory comments Mr. Trump made about Ms. Carroll, as set forth in her state court complaint, are indistinguishable — in subject matter, tone, and wording — from the ones he made in 2016 about eight other women who, just like Ms. Carroll, had accused him of rape, sexual abuse, sexual harassment, and generally louche, rude, misogynistic, and vulgar behavior.

Ms. Carroll's complaint alleges that shortly after noon on June 21, 2019, when "*New York* magazine published Carroll's account of [his] rape" of her, Carroll Complaint, ¶ 79, Mr. Trump began "respond[ing] to Carroll by publicly, falsely, and maliciously smearing her reputation." *Id., ¶* 81. Thus, "[o]n June 21, 2019, Mr. Trump issued [a] public statement" in which he asserted:

> "I've never met this person in my life. She <u>is trying to sell a new book</u>—that should indicate her motivation. It should be sold in the fiction section. Shame on those who make up <u>false stories of assault to try to get publicity for themselves</u>, or sell a book, or <u>carry out a political agenda</u>."

*Id., ¶* 82 (emphasis added).

The next day, Mr. Trump reiterated and amplified his defamatory remarks by "ma[king] the following statement[s] to reporters" about Ms. Carroll: "'I <u>have no idea who she is</u>. What she did is—it's terrible, what's going on. <u>So it's a total false accusation</u> and I

don't know anything about her. And she's made this charge against others. … I was one of the many men that she wrote about. It's a totally false accusation'" and Ms. Carroll was just one of several "'women [who] were actually paid money to say bad things about me.'" *Id., ¶* 91 (emphasis added).

Mr. Trump made substantively and linguistically similar defamatory statements about eight women between April 2016 and January 2017. Thus:

- **Summer Zervos:** On January 17, 2017, three days before Mr. Trump was inaugurated, THE NEW YORK TIMES reported that Summer Zervos, "[a] former contestant on 'The Apprentice' who accused Donald J. Trump of sexual assault during the presidential race filed a lawsuit against him on [January 15, 2017], alleging that Mr. Trump defamed her when he claimed that she fabricated the assault. … [Zervos' suit] was filed in New York State Supreme Court." Megan Twohey, *Former "Apprentice" Contestant Files Defamation Suit Against Trump,* N.Y. TIMES, Jan. 17, 2017 (available at https://www.nytimes.com/2017/01/17/us/former-apprentice-contestant-files-defamation-suit-against-trump.html ). (*Amicus* attaches a copy of Zervos' Complaint as Ex. 1). According to that complaint, "[o]n October 14, 2016, … [Summer] Zervos publicly described her interactions with Mr. Trump in detail, including his unwanted sexual" assault on her. Zervos Complaint, ¶ 53. That same day, "within hours of Ms. Zervos coming forward, Mr. Trump shouted at a [campaign] rally in Charlotte, North Carolina that 'These allegations are 100% false … They are made up … for financial reasons, political purposes.'" *Id.,* ¶ 59. On October 15, 2006, Mr. Trump caused his campaign team to state "'Summer's actions today are nothing more than an attempt to regain the spotlight at Mr. Trump's expense.'" *Id.,* ¶ 62. That same day Mr. Trump tweeted Zervos' allegations were "'[t]otally made up nonsense to steal the election.'" *Id.,* ¶ 63. Again, on October 15, at a campaign rally in Bangor, Maine, Mr. Trump described Zervos' claims as nothing but "'false allegations and outright lies, in an effort to elect Hillary Clinton President … False stories, all made-up. Lies. Lies.'" *Id.,* ¶ 65. "At 5:24 a.m., October 17, 2016, Mr. Trump retweeted a statement that included a picture of Summer

Zervos, stating 'This is all <u>yet another hoax</u>.' Mr. Trump commiserated in agreement, adding: 'Terrible.'" *Id.,* ¶ 69. Finally, "[a]t approximately 11:30 a.m., October 22, 2016, at a [campaign] rally at Gettysburg, Pennsylvania, Mr. Trump stated: 'Every woman lied when they <u>came forward to hurt my campaign, total fabrication</u>. The events never happened. Never.'" *Id.,* ¶ 73 (emphasis added).

- **<u>Jill Harth:</u>** On April 16, 2016, THE BOSTON GLOBE reported that in the early 1990s, Mr. Trump "continually made aggressive, unwanted sexual advances toward [Jill] Harth, who was vice president of American Dream," a private corporation which had unsuccessfully negotiated to be a co-venturer with him. Matt Viser, *The pageant of Donald Trump's dreams*, BOSTON GLOBE (April 16, 2016), available https://www.bostonglobe.com/news/politics/2016/04/16/trump/P6jV WXAzaG12Ou5dPXYCDL/story.html). "Harth alleged in court documents that Trump repeatedly came on to her and groped her under the table during dinner." *Id.* In response, during an interview with the GLOBE, "Trump said of the allegations in Harth's complaint: '"It was false,"' "'<u>Her claims are extortion</u>, pure and simple,'" and <u>Harth and her business partner "'were losing the business dispute angle, so they brought that up</u>.'" *Id.* See Tessa Berenson & Charlotte Alter, *Here's Everything You Need to Know About the Sexual Allegations Against Donald Trump*, TIME (Oct. 24, 2016), available at https://time.com/4530242/donald-trump-sexual-allegations/

- **<u>Kristin Anderson:</u>** On October 14, 2016, THE WASHINGTON POST reported that when was "at a crowded Manhattan nightspot" Mr. Trump slid "his fingers … under her miniskirt, moved up her inner thigh and touched her vagina through her underwear." Karen Tumulty, *Woman says Trump reached under her skirt and groped her in early 1990s*, THE WASHINGTON POST (Aug. 14, 2016) (emphasis added; available at https://www.washingtonpost.com/politics/woman-says-trump-reached-under-her-skirt-and-groped-her-in-early-1990s/2016/10/14/67e8ff5e-917d-11e6-a6a3-d50061aa9fae_story.html). In response to this allegation, Mr. Trump directed a spokesperson to "strongly den[y] this phony allegation by <u>someone looking to get some free publicity</u>." *Id.* See Jia Tolentino, *Trump and the Truth: The Sexual-Assault Allegations*, THE NEW YORKER, Oct. 20, 2016 (available at https://www.newyorker.com/news/news-desk/trump-and-the-truth-the-sexual-assault-allegations).

- **Natasha Stoynoff:** On October 13, 2016, CNN reported that a correspondent for PEOPLE magazine, "claimed she had been physically attacked by Trump while on assignment at his Mar-A-Lago property in December 2005," to which he responded: "'Take a look, you take a look. Look at her … you tell me what you think. I don't think so'" and that he then directed a spokesperson to say "'There is no merit or veracity to this fabricated story.'" Naomi Lin, *Donald Trump on accuser: "Take a look at her ... I don't think so,"* CNN (Oct. 13, 2016 (emphasis added; available at https://www.cnn. com/ 2016/10/13/politics/natasha-stoynoff-donald-trump-women/index.html)

- **Mariah Billado** and **Victoria Hughes:** In October 2016, two "Miss Teen USA contestants,", "told BUZZFEED NEWS … that Trump walked in on them while they were changing in their dressing rooms during the 1997 pageant." Eliza Relman, *The 26 women who have accused Trump of sexual misconduct*, BUSINESS INSIDER (Sept. 17, 2020) available at https://www.businessinsider.com/women-accused-trump-sexual-misconduct-list-2017-12. Although Mr. Trump initially "appeared to admit to this behavior when he boasted in an April 2005 interview with radio host Howard Stern that he regularly walked into contestants' dressing rooms on the beauty pageants he owned while women were unclothed," in October 2016 Mr. Trump directed his spokesperson to decry these allegations as empty, "merit[less]," "disproven," and "'politically motivated' lies." *Id.* (emphasis added).

- **Tasha Dixon** and **Samantha Holvey**: Also in October 2016, "Tasha Dixon, a former Miss Arizona who competed in the 2001 Miss USA pageant, told CBS … that Trump walked into the contestants' dressing room while they were changing." Eliza Relman, *The 26 women who have accused Trump of sexual misconduct*, BUSINESS INSIDER (Sept. 17, 2020), available at https://www.businessinsider. com/women-accused-trump-sexual-misconduct-list-2017-12). "Samantha Holvey, a contestant in the 2006 Miss USA pageant, which Mr. Trump owned, told CNN in October 2016 that Mr. Trump personally inspected each of the pageant contestants individually." *Id.* As with Ms. Billado and Ms. Hughes, Mr. Trump's spokesperson derided Ms. Dixon's and Ms. Holvey's accusations as nothing but meritless, "'politically motivated' lies." *Id.* (emphasis added). "'All I can say is it's totally fake news. It's

fake and <u>made-up stuff</u> and it's disgraceful what happens … <u>happens</u>
<u>in the world of politics</u>,' Trump told reporters at the White House"
on October 16, 2016. Forest Hanson and Geoff Earle, *White House*
*says all the women who accused Trump of sexual assault are LIARS,*
DAILY MAIL (Oct. 28, 2016) (emphasis added; available at
https://www.dailymail.co.uk/news/article-5026013/White-House-
claims-Trump-sexual-harassment-accusers-lie.html)

Mr. Trump made these facially defamatory comments about each of these eight other

women "on his own behalf" and in his own employ, and not within the "scope" of his

hypothetical, non-existent federal employment. Mr. Trump's defamatory statements about

these eight other women in 2016 and early 2017 — prior to his inauguration as president —

are relevant to the question of whether the defamatory comments he made about Ms. Carroll

in 2019 were made within the scope of his government employment — and therefore properly

subject to certification and substitution under the Westfall Act — or whether he made them on

his own behalf, in which case removal, certification, substitution, and dismissal are

unwarranted.

Mr. Trump's earlier, pre-Presidential statements about other women  demonstrate that

his defamatory response to Ms. Carroll's allegations about him are part and parcel of his

"habit" and "routine practice" of responding to women's allegations of his sexual misconduct,

a pattern formed long before he entered upon his duties as president.[4] As a civilian, Mr.

---

[4]     Rule 406 of the Federal Rules of Evidence provides: "Evidence of a person's habit or
… routine practice may be admitted to prove that on a particular occasion the person or
organization acted in accordance with the habit or routine practice. The court may admit this
evidence regardless of whether it is corroborated or whether there was an eyewitness." The
Court of Appeals has recognized that Rule 406 provides an appropriate vehicle for assessing
multiple and habitual defamatory statements. *Sleepy's LLC v. Select Comfort Wholesale*

Trump for many years has acted purely in his own personal interests – not in the interest of the people of the United States – in defaming women who exposed on his misbehaviors in this regard. This makes it clear that his defamation of Ms. Carroll — occurring subsequent to the happenstance of Mr. Trump having been elected to his government office — was not in the interests of the public, and he therefore was acting outside the scope of his presidency in so defaming her.

Even a cursory comparison of the defamatory comments Mr. Trump made about numerous women before he became President — comments which, by definition, did not and could not come within the scope of any public employment — and the similar, nearly identical and identically defamatory comments Mr. Trump made about Ms. Carroll after he became President makes clear why he made those comments in every instance: "on his own behalf and not in his employer's interest." *Smith,* 296 F. Supp. 3d at 656.

## CONCLUSION

For the reasons set forth above, *amicus curiae,* Government Accountability Project. respectfully urges this Court to hold that Westfall certification was improper, to deny the

---

*Corp.,* 779 F.3d 191, 201-02 (2d Cir. 2015). Cf. *Crawford v. Tribeca Lending Corp.,* 815 F.3d 121, 125 (2d Cir. 2016). Mr. Trump's pattern and practice of defamatory statements about women also may be admissible under Fed.R.Evid. 404(b)(2) to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," see *United States v. Siddiqui,* 699 F.3d 690, 702 (2d Cir. 2012); *Huddleston v. United States*, 485 U.S. 681, 687–88 (1988), and New York's uncodified "general rule of evidence" regarding "similar act[s]." *Castracane v. Campbell*, 300 A.D.2d 704, 705, 751 N.Y.S.2d 121, 123 (N.Y. App. Div. 2002). See *New York v. Denson*, 42 N.E.3d 676, 681 (N.Y. 2015). See generally Richard T. Farrell, PRINCE, RICHARDSON ON EVIDENCE § 4–517 (11th ed., 1995).

motion of the United States to substitute itself for Defendant Trump in this action, and to remand this case to the Supreme Court of the State of New York.

Respectfully submitted by:

/s/ Jack Kolar
John A. Kolar
Litigation Director
Government Accountability Project
1612 K Street, NW — Suite 1100
Washington, DC 20006
202-457-0034
JackK@whistleblower.org

Ned Miltenberg
National Legal Scholars Law Firm, P.C., and
Of Counsel to the Government Accountability Project
5410 Mohican Road — Suite 200
Bethesda, MD 20816-2162
202-656-4490
NedMiltenberg@gmail.com

Dated: October 5, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2020, the foregoing document was filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: October 5, 2020                    /s/ Jack Kolar
                                          John A. Kolar