JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

DOUGLAS G. SMITH
Deputy Assistant Attorney General

WILLIAM K. LANE III
Counsel

JAMES G. TOUHEY, JR.
Director
STEPHEN R. TERRELL (CA Bar No. 210004)
Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 888
Washington, DC  20044
Telephone:    (202) 353-1651
Facsimile:    (202) 616-5200
Email:        stephen.terrell2@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>                     Plaintiff,<br><br>        -against-<br><br> DONALD J. TRUMP, in his personal<br>capacity,<br><br>                     Defendant. | **ECF Case**<br><br>No. 1:20-cv-7311-LAK-JLC |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO SUBSTITUTE THE UNITED STATES AS DEFENDANT**

# TABLE OF CONTENTS

ARGUMENT .......................................................................................................................... 1

I.    The President's Statements are Covered by the FTCA for Multiple Reasons. ....................... 1

II.   Plaintiff's Assertion that "the FTCA Does Not Cover the President" is Meritless. ................ 7

III.  While Immaterial to the Outcome, D.C. Scope of Employment Law Applies. ................... 12

IV.  Plaintiff Has Not Overcome the Prima Facie Validity of the Certification .......................... 15

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Alexander v. FBI*, 691 F. Supp. 2d 182 (D.D.C. 2010)................................................... 11

*Ali Jaber v. United States,* 155 F. Supp. 3d 70 (D.D.C. 2016), *aff'd,* 861 F.3d 241 (D.C. Cir.

2017) ........................................................................................................................ 9

*Al-Tamimi v. Adelson*, 264 F. Supp. 3d 69 (D.D.C. 2017) ........................................... 11

*Anderson v. Gov't of the V.I.*, 199 F. Supp. 2d 269 (D.V.I. 2002) ................................. 3

*Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376 (S.D.N.Y. 2012).................... 13

*Bailey v. J&B Trucking Servs., Inc.*, 590 F. Supp. 2d 4 (D.D.C. 2008) ....................... 12

*Bello v. United States*, 93 F. App'x 288 (2d Cir. 2004)........................................... 4, 15

*Borawski v. Henderson*, 265 F. Supp. 2d 475 (D.N.J. 2003)......................................... 3

*Bowles v. United States*, 685 F. App'x 21 (2d Cir. 2017).......................................... 13

*Budik v. Ashley*, 36 F. Supp. 3d 132 (D.D.C. 2014) ...................................................... 3

*Chapman v. Rahall*, 399 F. Supp. 2d 711 (W.D. Va. 2005) ...................................... 2, 3

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156 (2012)...................... 9

*Clark v. McGee*, 404 N.E.2d 1283 (N.Y. 1980) .......................................................... 14

*Clark v. Wells Fargo Bank*, 585 Fed. App'x 817 (3d Cir. 2014)................................... 15

*Clinton v. Jones*, 520 U.S. 681, 117 S. Ct. 1636 (1997)............................................... 4

*Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006).................... 2, 4, 6, 13

*Cronin v. Hertz Corp.*, 818 F.2d 1064 (2d Cir. 1987) .................................................. 12

*Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58 (1st Cir. 2001) ....................... 3, 15

*De Masi v. Schumer*, 608 F. Supp. 2d 516  (S.D.N.Y. 2009) ............................... 4, 10, 15

*Does 1-10 v. Haaland*, 973 F.3d 591 (6th Cir. 2020) ........................................ 2, 10, 14

*Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995) ............................................................ 15

*Fenster v. Ellis*, 71 A.D.3d. 1079 (2d Dept. 2010) ...................................................... 14

*Gibbs v. City of New York*, 714 F. Supp. 2d 419 (E.D.N.Y. 2010)................................ 14

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 115 S. Ct. 2227 (1994) ................... 8

*Hawver v. United States*, 808 F.3d 693 (6th Cir. 2015)................................................. 15

*Heindel v. Bowery Sav. Bank*, 138 A.D.2d 787 (3d Dept. 1988)................................... 14

*Hui v. Castaneda*, 559 U.S. 799, 130 S. Ct. 1845 (2010) ............................................... 8

*James v. United States*, 48 F. Supp. 3d 58 (D.D.C. 2014) ............................................... 3

*Jacobs v. Vrobel*, 724 F.3d 217 (D.C. Cir. 2013) ................................................... 12, 14

*Khatami v. Compton*, 844 F. Supp. 2d 654 (D. Md. 2012)............................................... 3

*Klayman v. Obama*, 125 F. Supp. 3d 67 (D.D.C. 2015)................................................ 3, 9

*Levin v. United States*, 568 U.S. 503, 133 S. Ct. 1224 (2013)........................................ 8

*Maldonado v. Colon*, No. 97-3966, 1998 WL 240479 (S.D.N.Y. May 12, 1998) ....... 12

*McLaurinn v. United States*, 392 F.3d 774 (5th Cir. 2004) .......................................... 15

*Meagher v. Heggemeier*, 513 F. Supp. 2d 1083 (D. Minn. 2007) ................................... 3

*Moreno v. Small Bus. Admin.*, 877 F.2d 715 (8th Cir. 1989) .......................................... 3

*Nixon v. Fitzgerald*, 457 U.S. 731, 102 S. Ct. 2690 (1982)............................................ 8

*Operation Rescue Nat'l v. United States*,  975 F. Supp. 92 (D. Mass. 1997) ................ 3

*Osborn v. Haley*, 549 U.S. 225, 127 S. Ct. 881 (2007) .......................................... 11, 15

*Overton v. Ebert*, 180 A.D.2d 955 (3d Dept. 1992)...................................................... 14

*Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ......................... 14

*Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) .............................................................. 3

*Richards v. United States*, 369 U.S. 1, 82 S. Ct. 585 (1962) ................................... 12, 13

*Riviello v. Waldron*, 391 N.E.2d 1278 (N.Y. 1979) ........................................................ 13

*Saleh v. Bush,* 848 F.3d 880 (9th Cir. 2017) .................................................... 9, 11, 13

*SAS Inst., Inc. v. Iancu*, ___ U.S. ___, 138 S. Ct. 1348 (2018) ................................ 7

*Schneider v. Kissinger*, 310 F. Supp. 2d 251 (D.D.C. 2004), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005)

........................................................................................................................................ 11

*Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002) ........................................... 15

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) ....................................................... 3, 4

*Sullivan v. United States*, 21 F.3d 198 (7th Cir. 1994) ............................................... 15

*Trump v. Hawaii*, ___ U.S. ___, 138 S. Ct. 2392 (2018) ............................................ 4

*Trump v. Mazars*, ___ U.S. ___, 140 S. Ct. 2019 (2020) ........................................... 4

*United States v. Hatter*, 532 U.S. 557, 121 S. Ct. 1782 (2001) ................................. 8

*United States v. Smith*, 499 U.S. 160, 111 S. Ct. 1180 (1991) .................................. 7

*West v. Trump,* No. 19-2522, 2020 WL 4721291 (N.D. Tex. July 23, 2020) ................. 9

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008) ...................................................... 9, 11

*Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009) ............................................... 2, 15

## Statutes

28 U.S.C. § 1346 ....................................................................................................... 7, 12

28 U.S.C. § 2671 ....................................................................................................... 8, 9

28 U.S.C. § 2679 .................................................................................................. 7, 8, 15

28 U.S.C. § 2680 .......................................................................................................... 11

Pub. Law No. 100-694 ................................................................................................. 8

**Other Authorities**

Federal Tort Claims Act—Applicability to Agencies in Other Than Executive Branch of

    Government, 26 Comp. Gen. 891 (1947) ................................................................. 11

Oxford English Dictionary (3d ed., Mar. 2016)........................................................... 7

Restatement (Second) of Agency § 228..................................................................... 13

Restatement (Second) of Agency § 229..................................................................... 13

S. Rep. No. 79-1400 (1946)........................................................................................ 7

Webster's New Int'l Dictionary (2d ed. 1943) ............................................................ 8

**Constitutional Provisions**

U.S. Const., art. II, § 1 ............................................................................................... 8

Every court that has considered the issue has held that the United States may substitute itself as the defendant in a defamation lawsuit against a Federal elected official arising out of a statement made while in office on a matter of concern or interest to the official's constituents. Plaintiff cites no contrary authority, and to the United States' knowledge, there is none. Rather, the cases uniformly recognize Federal elected officials' responsibility to communicate regarding matters of concern or interest to their constituents and the unacceptable litigation exposure that would result in the absence of this protection. This is even clearer with respect to the defendant here—the President of the United States—and under the circumstances here, where the President addressed matters relating to his fitness for office as part of an official White House response to press inquiries. Nonetheless, plaintiff attempts to argue, contrary to the statutory text, consistent interpretation, and established practice, that (1) the President is uniquely excluded from the Federal Tort Claims Act ("FTCA"), or (2) the result here should be different from every other case involving defamation by Federal elected officials because New York law allegedly applies and is somehow materially different than other states' laws. Both assertions are wrong and if endorsed by this Court would have profoundly adverse consequences outside this case. In sum, the test under the FTCA is *not* whether, as plaintiff argues, "slander" or "defamation" is part of a Federal elected official's "job description." It is whether the official was acting within the scope of employment—e.g., making statements to the press while on duty responding to allegations of impropriety—when the alleged defamatory statement was made. That test applies to the President just as it would any other Federal officer or employee. Plaintiff has offered no valid basis to deny the motion, much less overcome the prima facie validity accorded the certification.

## ARGUMENT

### I.      The President's Statements are Covered by the FTCA for Multiple Reasons.

The President's statements fall within the scope of his employment for multiple reasons.

- 1 -

*First*, plaintiff does not dispute that courts have uniformly held that Federal elected officials act within the scope of their employment when they communicate with the public about a matter of "concern" or "interest" to their constituents, including about matters that may be deemed "personal." Mot. at 4, ECF No. 3-1. As these courts have explained, "[c]omments by elected officials on an event of widespread public interest" fall within the scope of their employment for purposes of the FTCA. *Does 1-10 v. Haaland*, 973 F.3d 591, 600 (6th Cir. 2020). This includes "comments about [a Federal elected official's] personal life that would be of concern to his constituents." *Chapman v. Rahall*, 399 F. Supp. 2d 711, 713 (W.D. Va. 2005) (citing *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006)).

This rule has been applied broadly. For example, *Ballenger* arose from the claim a member of Congress defamed a Muslim advocacy organization by telling a reporter his wife was "uncomfortable" living across from the headquarters of a "fund-raising arm" of a "foreign terrorist organization." 444 F.3d at 662. The Congressman made the statement in addressing his separation from his wife, and the D.C. Circuit rejected the plaintiff's argument that these statements were "purely private" as "at odds with reality" given the "level of public interest" in the matter. *Id.* at 665–66. In *Haaland*, the Sixth Circuit affirmed substitution, holding that social media posts from members of Congress that asserted that high school students displayed "blatant hate, disrespect, and intolerance" toward a Native American veteran fell within the scope of their employment. 973 F.3d at 594. In *Wuterich v. Murtha*, the court upheld certification of a Marine's claims that a congressman falsely stated for "his own private purposes" that the Marine's squad "deliberately murdered innocent Iraqi civilians in a cold-blooded massacre" and committed "war crimes." 562 F.3d 375, 378–79 (D.C. Cir. 2009). In *Operation Rescue National v. United States*, the court upheld certification in a lawsuit alleging that a senator defamed an anti-abortion organization at a

fundraising luncheon, noting that "personal and public motives are often closely related" and "[i]t is natural for public officials to believe that their own success, and that of their political parties, is inextricably linked with the public interest." 975 F. Supp. 92, 108 (D. Mass. 1997).[1]  And in *Rahall*, the court upheld certification where a congressman responded to a reporter's allegations by calling him a "bigoted, right wing, redneck, racist wacko," concluding that the response "was clearly in the scope of his employment as a legislator, and was necessary to ensure his effectiveness as a legislator and maintain the support of his constituents." 399 F. Supp. 2d at 715.

Plaintiff's argument that "slandering women" is not part of the President's "job description," Opp'n at 1, ECF No. 16, is indistinguishable from the arguments of the plaintiffs in the above cases.  Indeed, "[e]xtensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment—including specific allegations of defamation or of potentially criminal activities—does not take the conduct outside the scope of employment." *Smith*, 886 F.3d at 126.  That is because whether a statement is "slanderous" or otherwise "wrongful" is not the relevant test; all tort plaintiffs allege "wrongful" conduct.  Rather, it is the "type of act" at issue—in this case, a Federal elected official speaking to the press about a matter of concern to constituents—that is dispositive. *Klayman v. Obama*, 125 F. Supp. 3d 67, 83 (D.D.C. 2015).  That is why courts have upheld certification, for example, in cases alleging that President Obama funded terrorists or the Secretary of Defense oversaw torture of prisoners held at Guantanamo Bay. *Id.* at 73, 78; *Rasul v. Myers*, 512 F.3d 644, 658–59 (D.C. Cir. 2008); *see also*

---

[1] Indeed, the government routinely certifies, and courts routinely uphold certification in, defamation cases against employees and officials whose jobs do not require regular communication with the public.  *See Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 67 (1st Cir. 2001) (postal worker); *Moreno v. Small Bus. Admin.*, 877 F.2d 715, 717 (8th Cir. 1989) (Small Business Administration employees); *James v. United States*, 48 F. Supp. 3d 58, 62 n.4 (D.D.C. 2014) (U.S. Marshals and FBI agent); *Budik v. Ashley*, 36 F. Supp. 3d 132, 139 (D.D.C. 2014) (medical supervisor), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014); *Khatami v. Compton*, 844 F. Supp. 2d 654, 662 (D. Md. 2012) (agency director); *Meagher v. Heggemeier*, 513 F. Supp. 2d 1083, 1093 (D. Minn. 2007) (National Guard member); *Borawski v. Henderson*, 265 F. Supp. 2d 475, 483 (D.N.J. 2003) (Postmaster General); *Anderson v. Gov't of the V.I.*, 199 F. Supp. 2d 269, 277 (D.V.I. 2002) (police commissioner).

*Bello v. United States*, 93 F. App'x 288, 290 (2d Cir. 2004) (allegedly slanderous statements of EEOC attorney within scope of employment).

"The appropriate question, then, is whether [the] *conversation*—not the allegedly *defamatory sentence*—was the kind of conduct . . . [the President] was employed to perform." *Ballenger*, 444 F.3d at 664 (emphasis added). "What matters is whether the underlying activity itself was part of the employee's duties"—not whether the conduct was wrongful or tortious—and courts have repeatedly held that communicating with the public about matters of interest or concern to constituents falls "within the scope of employment even when defamatory." *Smith*, 886 F.3d at 127; *see also De Masi v. Schumer*, 608 F. Supp. 2d 516, 522 (S.D.N.Y. 2009) ("[M]embers of Congress engage in a wide range of legitimate '"errands' performed for constituents' including 'news releases' and 'speeches delivered outside the Congress'"; "employee's tortious acts fall within the scope of his or her employment if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions") (citations omitted).

These principles apply with even greater force here. Given the President's position in our constitutional structure, his role in communicating with the public is especially significant. As plaintiff acknowledges, "the President . . . 'possesses an extraordinary power to speak to his fellow citizens.'" Opp'n at 26, ECF No. 16 (quoting *Trump v. Hawaii*, ___ U.S. ___, 138 S. Ct. 2392, 2417–18 (2018)). And, due to the nature of the position, "there is not always a clear line between his personal and official affairs." *Trump v. Mazars*, ___ U.S. ___, 140 S. Ct. 2019, 2034 (2020). Indeed, as plaintiff concedes, the President "must be available, at all times, to lead the Nation" and therefore "'"never adjourns.'"" Opp'n at 26 (quoting *Clinton v. Jones*, 520 U.S. 681, 713, 117 S. Ct. 1636, 1653 (1997) (Breyer, J., concurring)).

Here, there can be no dispute that allegations that the President assaulted someone are a

- 4 -

matter of concern or interest to constituents. *See*, *e.g.*, Compl. ¶ 126 (describing public accusations), ECF No. 1-1. That is doubly true where a journalist and long-running advice columnist with a widespread audience promoting a book marketed by a major publisher made the accusations. *Id.* ¶¶ 17, 55, 80. Through her *New York* magazine article and the release of her book two weeks later, plaintiff sought to "reveal[] *to the public* that Trump had sexually assaulted her." Opp'n at 28 (emphasis added). Indeed, based on the publicity surrounding prior allegations made by other women, she understood that "coming forward with her story would also cause a media storm." Compl. ¶ 62. And, that is precisely what happened: the complaint cites articles from "leading news sources" across the country and "around the world" that reported on plaintiff's allegations and the White House denial. *Id.* ¶¶ 84, 98, 142 & nn.10, 14.

*Second*, the President's comments fall within the FTCA's scope because plaintiff's allegations sought to call into question the President's fitness for office and a response was necessary for the President to effectively govern. As stated in the complaint, "[t]he rape of a woman is a violent crime," *id.* ¶ 1, and, if believed, even false allegations that the President committed such a crime could obviously impact the President's ability to effectively govern. Indeed, here, at least one member of Congress went so far as to argue that plaintiff's allegations showed that "Donald Trump is not fit to be president" and Congress should commence impeachment proceedings against him immediately.[2] Under such circumstances, responding to these allegations was within the official duties of the President—i.e., the President's challenged statements were directly relevant to his role as President and leader of the Executive Branch—and more generally is a necessary part of a Federal elected official's job:

A member's ability to do his job as a legislator effectively is tied, as in this case, to

---

[2] Rebecca Klar, *Moulton Says New Trump Rape Accusation Furthers Need for Impeachment Proceedings*, Hill (June 24, 2019), https://thehill.com/homenews/administration/449989-2020-democrat-moulton-says-new-rape-allegations-against-trump-prove.

> the member's relationship with the public and in particular his constituents and colleagues in the Congress.  In other words, there was a clear nexus between the congressman answering a reporter's question about [his] personal life and the congressman's ability to carry out his representative responsibilities effectively.

*Ballenger*, 444 F.3d at 665–66.  Elected office "is not a job like any other," as elected officials are frequently called upon to publicly address private matters that may negatively affect their ability to represent their constituents.  *Id.* (citation omitted).  The same is true of the President who must maintain an effective relationship with both the public and Congress in order to govern.

   *Finally*, the President's statements fall within the scope of the FTCA because plaintiff's own filings make clear the statements were part of an official White House response to inquiries from the press.  As reflected in plaintiff's *New York* magazine article cited in the complaint, Compl. ¶ 79, the White House issued a statement denying the allegations in response to an inquiry made before plaintiff's excerpt was even published: "Here's what the White House said: 'This is a completely false and unrealistic story surfacing 15 years after allegedly taking place and was created simply to make the President look bad.'"[3]  Thus, before the President made any of the statements cited in the complaint, the excerpt published by plaintiff had already stated publicly, in a manner designed to make the allegations particularly newsworthy, that (1) the "President" sexually assaulted her (2) the "White House" denied the allegations, (3) the "White House" denial was equivalent to a denial by the "President" and (4) the official "White House" denial was false. Thus, in the June 21 statement issued by the Deputy White House Press Secretary[4] and in answering "question[s] from . . . reporter[s]" on the White House grounds, the President simply

---

[3] E. Jean Carroll, *Hideous Men Donald Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago*, Cut (June 21, 2019), https://www.thecut.com/2019/06/donald-trump-assault-e-jean-carroll-other-hideous-men.html.

[4] Daily Comp. Pres. Docs., 2019 DCPD No. 00410 (June 21, 2019), http://www.govinfo.gov/content/pkg/DCPC-201900410/pdf/DCPD-201900410.pdf.  Nonetheless, such comments are within scope "whether they are freestanding or made in response to a press inquiry"; as the *Haaland* court observed in upholding certification where there was no press inquiry, "it is the act of communicating one's views to constituents and not the manner of communication that justifies application of the Westfall Act."  973 F.3d at 601.

was participating the formal White House response to press inquiries that followed plaintiff's publication of the allegations and the White House denial.  Opp'n at 4–7; Compl. ¶¶ 91–97.

## II.     Plaintiff's Assertion that "the FTCA Does Not Cover the President" is Meritless.

In the face of this uniform law, plaintiff asks this Court to be the first and only court in the country to hold that the President is uniquely excluded from the FTCA.  Opp'n at 10–20.  Quite simply, there is no such exclusion.  Indeed, this argument is contrary to the statute's plain language, history, and consistent interpretation, and would have adverse consequences outside this case.

As plaintiff concedes, the FTCA contains a "broad phrase" covering "'*any* employee of the Government.'"  Opp'n at 4 (emphasis added) (quoting 28 U.S.C. § 1346(b)(1)).  As this language makes clear, the statute "states that, with respect to a tort committed by '*any* employee of the Government' within the scope of employment, the FTCA provides the exclusive remedy." *United States v. Smith*, 499 U.S. 160, 173, 111 S. Ct. 1180, 1189 (1991) (quoting 28 U.S.C. § 2679(b)(1)).

Indeed, "the word 'any' naturally carries 'an expansive meaning.'" *SAS Inst., Inc. v. Iancu*, ___ U.S. ___, 138 S. Ct. 1348, 1354 (2018) (citation omitted).  "When used (as here) with a 'singular noun in affirmative contexts,' the word 'any' ordinarily 'refer[s] to a member of a particular group or class *without distinction or limitation*' and in this way 'impl[ies] *every* member of the class or group.'" *Id.* at 1354 (first emphasis added) (quoting Oxford English Dictionary (3d ed., Mar. 2016)).

The FTCA's legislative history reinforces the statute's universal coverage.  In describing the statutory definition section, the Senate report accompanying the FTCA explained:  "This section defines the terms used in the title and makes it clear that its provisions cover all Federal agencies, including Government corporations, *and all Federal officers and employees* . . . ." S. Rep. No. 79-1400, at 31 (1946) (emphasis added).  Likewise, when Congress passed the Westfall Act, it reiterated that the statute prevented "the prospect of personal liability and the threat of

protracted personal tort litigation *for the entire Federal workforce*."  Pub. Law No. 100-694, § 2, 102 Stat. 4563–64, note following 28 U.S.C. § 2671 (emphasis added).

Accordingly, the Supreme Court has repeatedly observed that the Act applies to "*all federal employees*."  *See Levin v. United States*, 568 U.S. 503, 509, 133 S. Ct. 1224, 1229–30 (2013) (Act "shield[s] all federal employees from personal liability without regard to agency affiliation or line of work"); *Hui v. Castaneda*, 559 U.S. 799, 809–10, 130 S. Ct. 1845, 1853 (2010) ("[W]e noted in *Smith* that § 2679(b) applies to all federal employees."); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425–26, 115 S. Ct. 2227, 2232 (1994) (Act overturns *Westfall* decision that "'created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce'" (quoting § 2(a)(5), 102 Stat. 4563)).

The broad and sweeping language of the FTCA covers the President, who is fairly characterized as both an "officer" and "employee" of the government.  The Supreme Court has recognized that Article II, Section 1 of the Constitution "establishes the President as the chief constitutional officer of the Executive Branch," and indeed plaintiff acknowledges as much.  *Nixon v. Fitzgerald,* 457 U.S. 731, 750, 102 S. Ct. 2690, 2701 (1982); *see also* Opp'n at 14 (describing "President as the sole officer under 'executive'"); U.S. Const. art. II, § 1, cl. 1, 8 (discussing President's "Office").  Likewise, contemporaneous definitions of the term "employee" encompass "one who works for wages or salary in the service of an employer," which would likewise apply to the President, who receives a salary for services rendered to the United States.  *See Employee* Webster's New Int'l Dictionary (2d ed. 1943); U.S. Const. art. II, § 1, cl. 7 ("The President shall, at stated Times, receive for his Services, a Compensation . . . ."); *United States v. Hatter*, 532 U.S. 557, 563, 121 S. Ct. 1782, 1788 (2001) (President falls in "class of current federal employees").

Accordingly, multiple courts have substituted the United States for the President pursuant

to the plain language in the FTCA.  *See*, *e.g.*, *Saleh v. Bush,* 848 F.3d 880, 891 (9th Cir. 2017) (United States substituted for President and Vice President); *Ali Jaber v. United States,* 155 F. Supp. 3d 70, 73 (D.D.C. 2016) (United States substituted for President), *aff'd,* 861 F.3d 241 (D.C. Cir. 2017); *Klayman*, 125 F. Supp. 3d at 85 (same); *West v. Trump,* No. 19-2522, 2020 WL 4721291, at *3 n.6 (N.D. Tex. July 23, 2020) (same); *see also Wilson v. Libby*, 535 F.3d 697, 712 (D.C. Cir. 2008) (affirming certification as to Vice President and his chief of staff).  Accepting plaintiff's argument would be a clear split from authority from at least two other Circuits.

Despite this plain language and this settled understanding, plaintiff attempts to argue that the FTCA's definition section, 28 U.S.C. § 2671, contains a "narrower definition" of "Employee of the Government" that covers only "officers or employees of any federal agency" and defines "federal agency" to include only certain specified entities such as "the executive departments, the judicial and legislative branches, the military, [and] independent establishments of the United States."  Opp'n at 10–11 (quoting 28 U.S.C. § 2671).  However, plaintiff omits that this statutory definition lists these entities merely as illustrative examples, stating that "'[e]mployee of the government' *includes* [inter alia] . . . officers or employees of any Federal agency" as well as "persons acting on behalf of a federal agency in an official capacity" and that "[t]he term 'Federal agency' *includes* the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States."  28 U.S.C. § 2671 (emphasis added).

The use of the word "includes" in these definitions "is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162, 132 S. Ct. 2156, 2170 (2012). Accordingly, the FTCA's coverage is not limited to Federal officers or employees who work in an

"executive department," an "independent establishment," or a "federal agency." While "employee of the Government" "includes" such individuals, the list does not purport to be exclusive. Nor would providing an exhaustive list make sense when the drafters knew that the structure of the federal government might well change over time to include different kinds of entities.

Indeed, plaintiff concedes that "several courts" interpreting the statute have indicated that the President is in fact covered by the FTCA. Opp'n at 10. While plaintiff asserts without discussion that these courts have simply "assumed" or "suggested (in dicta)" that the President is covered, *id.* at 10 n.4, in fact these courts have held that that the statute provides "a universal grant of immunity . . . to all employees [and] to all officers, up to the president.'" *Haaland*, 973 F.3d at 598; *see also Schumer*, 608 F. Supp. 2d at 521 (affirming substitution for Senator).

Courts have consistently rejected attempts to carve out exceptions for members of congress, judges, or other officials, and in doing so have noted the broad and encompassing language covering all Federal officers and employees (including the President). As the court in *Haaland* recently explained in rejecting a similar attempt to exclude members of Congress, this comprehensive coverage was intentional: Congress "passed *broad* legislation to extend the benefit of sovereign immunity to *all* federal employees." 973 F.3d at 597 (emphasis added).

In rejecting plaintiffs' attempt to carve out exceptions, the court observed: "'[w]hy would Congressmen vote to exclude themselves from a universal grant of immunity given to all others, to all employees below them; to all officers, up to the president, above them?'" *Id.* at 598. Why would the President, who signed the Westfall Act into law, similarly exclude himself from the universal grant of immunity given to all others? As such decisions recognize, the FTCA is "universal," it applies to "all employees," to "all officers," and to "the president" in particular. Plaintiff's position here is at odds with this consistent interpretation.

Moreover, plaintiff's position would have profoundly adverse consequences that are contrary to the intent of Congress. If deprived of the statutory protections afforded other Federal employees and officers, a President would face a strong disincentive from answering media inquiries involving any private party. A President could quickly be the subject of a raft of lawsuits that could consume his time and impose significant litigation costs, draining a significant share of the President's annual salary. *See Osborn v. Haley*, 549 U.S. 225, 238–39, 127 S. Ct. 881, 893 (2007) (Westfall Act "spares" federal employees from "the burden of defending a suit"). As with judges and members of Congress, the fact that the President may assert an immunity does not save him from having to litigate the issue in court. Indeed, plaintiff's arguments would deprive not only the President, but also the Vice President and the entire staff of Federal employees working at the White House and the Executive Office of the President of the benefit of the statute. While plaintiff argues that courts have incorrectly assumed that White House staff such as electricians are covered by the statute, Opp'n at 18 n.11, courts have routinely upheld certifications as to such individuals,[5] and there is no basis in the text of the statute or its legislative history to conclude that Congress intended to exclude not only the President and Vice President, but the entire White House staff from the scope of the statute: in fact, the statutory text, legislative history, and the courts' and Department of Justice's longstanding interpretation is the opposite.[6]

---

[5] *See, e.g.*, *Wilson*, 535 F.3d at 712 (upholding certification of Vice President and his Chief of Staff); *Saleh*, 848 F.3d at 891 (certification of Vice President); *Alexander v. FBI*, 691 F. Supp. 2d 182, 196–97 (D.D.C. 2010) (Director of White House Office of Personal Security and White House Counsel), *aff'd*, 456 Fed. App'x 1 (D.C. Cir. 2011); *Al-Tamimi v. Adelson*, 264 F. Supp. 3d 69, 82 (D.D.C. 2017) (U.S. substituted for National Security Advisor); *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 255–56 (D.D.C. 2004) (same), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005) (same).

[6] Where the drafters intended to exclude claims involving certain Federal agencies from the coverage of the statute, they said so expressly. Accordingly, there are narrow and specific provisions carving out claims arising from the activities of certain entities—i.e., the Tennessee Valley Authority, 28 U.S.C. § 2680(l), Panama Canal Company, *id.* § 2680(m), and Federal land banks, *id.* § 2680(n). Accordingly, as recognized at the time, "an examination of the entire act and its legislative history requires a conclusion that *no agencies or employees are excluded* from the operation of the act save in the case of the *specific exceptions enumerated* in section 421 thereof, 60 Stat. 845 [now 28 U.S.C. § 2680(l)-(n)]." Federal Tort Claims Act—Applicability to Agencies in Other Than Executive Branch of Government, 26 Comp. Gen. 891, 892 (1947) (emphasis added).

### III.     While Immaterial to the Outcome, D.C. Scope of Employment Law Applies.

Plaintiff also argues that the outcome here should be different because New York, rather than D.C., law applies to the scope of employment question.  Both assertions are incorrect.

***D.C. law applies.***     As a threshold manner, plaintiff's argument is premised on a fundamental error of law.  The law is clear that, under the FTCA, the Court must apply "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), not the law of the state where the alleged tort had its "operative effect," *Richards v. United States*, 369 U.S. 1, 10, 82 S. Ct. 585, 591 (1962); *see also Cronin v. Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir. 1987) (FTCA "looks to 'the law of the place where the act or omission occurred'" for law governing "scope of employment"); *Maldonado v. Colon*, No. 97-3966, 1998 WL 240479, at *3 (S.D.N.Y. May 12, 1998) (law where "alleged tortious conduct occurred" applies to scope of employment).

Here, the complaint alleges that all three of the President's statements were made from the White House in Washington, D.C.  Compl. ¶¶ 81, 82, 85–91, 93–97, 100.  Accordingly, D.C. law applies—not New York—because the "acts or omissions" occurred in D.C.  While plaintiff cites diversity cases that do not involve claims under the FTCA to support her assertion that New York law applies, Opp'n at 21–22, this is a case under the FTCA, and the FTCA directs courts to look to "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).[7]  Indeed, "it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in

---

[7] Moreover, because the FTCA "requires application of the *whole* law of the States where the act or omission occurred," the court must also apply D.C.'s choice-of-law rules.  *Richards*, 369 U.S. at 11 (emphasis added).  Those rules, in turn, likewise dictate that D.C. law applies because it is "the jurisdiction where the employment relationship exists."  *See Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) ("In determining whether an employee acted within the scope of his employment [under Westfall Act], we consider the substantive law of the jurisdiction where the employment relationship exists—here, the law of the District of Columbia."); *Bailey v. J&B Trucking Servs., Inc.*, 590 F. Supp. 2d 4, 10 (D.D.C. 2008) (applying D.C. choice-of-law and concluding scope of employment is determined by law of State where allegedly negligent conduct occurred and the employment relationship was centered).

the Tort Claims Act." *Richards*, 369 U.S. at 9, 82 S. Ct. at 591.[8]

***The outcome under New York law would be no different.*** More fundamentally, as is illustrated by the cases uniformly holding that Federal elected officials' statements regarding matters of concern or interest to constituents fall within the scope of employment under various states' laws, there is no difference in state law that would be material to the outcome here. To the contrary, "there is little indication that a different result would follow from applying the law of the District of Columbia" as opposed to that of New York, *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 388 n.8 (S.D.N.Y. 2012), and indeed in a footnote, plaintiff acknowledges that "the ultimate outcome would be the same under D.C. law," Opp'n at 31 n.18.

As is evident from the uniform decisions applying various states' laws and upholding certification in cases alleging defamation by Federal elected officials, the issue does not turn on a matter of state law. Rather, these cases are based on the recognition that part of a Federal elected official's job is to speak to the public about matters of concern or interest to constituents.

Nonetheless, while plaintiff suggests that New York law would dictate a different outcome from that in D.C. because the President was allegedly acting for "personal" reasons, Opp'n at 22–31, "[t]he Restatement's text [which both New York and D.C. have adopted] reveals that even a *partial* desire to serve the master is sufficient." *Ballenger*, 444 F.3d at 665 (quoting Restatement § 228(1)(c)); *see also Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) (citing Restatement (Second) of Agency § 229). Accordingly, as the New York cases plaintiff cites make clear, "[a]n act is considered to be within the scope of employment if it is performed while the employee is

---

[8] Indeed, the one FTCA plaintiff cites recognizes that "[w]hether an officer or employee acted 'within the scope of his or her employment for purposes of the Westfall Act is determined by reference to principles of *respondeat superior* of the state in which the alleged tort occurred'"—not where "injury" occurred. Opp'n at 21, quoting *Bowles v. United States*, 685 F. App'x 21, 24 (2d Cir. 2017). Here, that is D.C. In fact, *Bowles* itself relied on *Saleh*, which applied D.C. law to defamatory statements made in D.C. *Id.* (citing *Saleh*, 848 F.3d at 888). While plaintiff also cites *Haaland*, the court there simply got the choice-of-law analysis wrong by ignoring the provisions in the FTCA, ruling in a manner contrary to the statutory text, the Supreme Court's decision in *Richards* and the Second Circuit's decision in *Bowles*.

engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or *incidental* to such employment." *Fenster v. Ellis*, 71 A.D.3d. 1079, 1080 (2d Dept. 2010). Thus, an employee does not act outside the scope of employment *unless* the employee "was acting for his own personal convenience and benefit and *not* in the furtherance of any duty owed to [his employer]," Opp'n at 24 (quoting *Overton v. Ebert*, 180 A.D.2d 955, 957 (3d Dept. 1992)), and was acting "for personal motives *unrelated* to the furtherance of the employer's business," *id.* at 23 (emphasis added) (quoting *Heindel v. Bowery Sav. Bank*, 138 A.D.2d 787, 788 (3d Dept. 1988)). As under D.C. law, the inquiry is an objective—not subjective—one. *Compare Gibbs v. City of New York*, 714 F. Supp. 2d 419, 422 (E.D.N.Y. 2010) *with Jacobs*, 724 F.3d at 221.

As noted above, courts have repeatedly held that Federal elected officials who issue statements to the public on matters of concern or interest to constituents are acting within the scope of employment even where the comments relate to "personal" or "private" matters. As those decisions recognize, and as plaintiff concedes, providing information to constituents is part of the "business" of an elected official and "elected officials may sometimes need to comment on their private lives to do their jobs effectively." Opp'n at 33 (citing *Haaland*, 973 F.3d at 601). Such activities certainly constitute an authorized activity that is part of their position or, at a minimum, "relate" to or are "incidental" to such an authorized activity—even where the official is talking about a personal matter such as separation from his wife (e.g., as in *Ballenger*) or decides to communicate his personal view that a reporter is a "redneck, racist wacko" (e.g., as in *Rahall*).[9]

---

[9] The cases plaintiff cites are not to the contrary. None address a Federal elected official's scope of employment. For example, *Clark v. McGee* addressed whether a town supervisor was entitled to complete immunity under New York law, not scope of employment. 404 N.E.2d 1283, 1285–87 (N.Y. 1980). The FTCA provides the President absolute immunity regardless of whether presidential immunity bars plaintiff's claims, in the same way it immunized Congress members in *Haaland* and *Williams* even though their assertions of Speech and Debate clause immunity were unsuccessful. Similarly, *Perks v. Town of Huntington* addressed vicarious liability relating to a town board member, not a Federal elected official. 251 F. Supp. 2d 1143, 1166–68 (E.D.N.Y. 2003). Moreover, unlike here, where the United States approved certification, the town denied that the board member's statement was within the scope of her employment because it "attack[ed] the Town Board itself" and was not in the town's "interest." *Id.* at 1171.

As courts applying New York law have observed, "an employee's tortious acts fall within the scope of his or her employment if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions," *Schumer*, 608 F. Supp. 2d at 552, and accordingly, "commit[ing] slander" while speaking to the press does not take the employee's conduct "outside the scope of his employment." *Bello*, 93 F. App'x at 290–91. That is particularly true of the President who, as plaintiff concedes, "must be available, at all times, to lead the Nation" and "never adjourns," Opp'n at 26, and thus is continuously performing "his master's work."[10]

## IV.    Plaintiff Has Not Overcome the Prima Facie Validity of the Certification.

Finally, plaintiff has not, and cannot, make the requisite showing to obtain discovery. To overcome the prima facie validity of the certification and obtain limited and targeted discovery, a plaintiff must establish facts "that, if true, would demonstrate that [the defendant] had been acting outside the scope of his employment." *Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002), *overruled on other grounds by Hawver v. United States*, 808 F.3d 693, 694 (6th Cir. 2015); *Davric*, 238 F.3d at 67; *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995). Plaintiff has not done so. To the contrary, for the reasons above, the complaint demonstrates the President acted within the scope of his authority. As the court in *Murtha* held in overturning such a discovery order, discovery in a case like this one would be tantamount to decertification and would "effectively deny" the President the absolute immunity afforded under the FTCA. 562 F.3d at 382.

## CONCLUSION

The United States respectfully requests that the Court grant its motion.

---

[10] Nonetheless, as plaintiff notes, regardless of the Court's ruling, the certification remains "conclusive of this Court's removal jurisdiction," and the case remains in federal court. Opp'n at 9 (citing *Osborn*, 549 U.S. at 233–34. Likewise, while plaintiff suggests the certification's timing was "irregular" (*id.*), certification and removal may occur "at any time before trial." 28 U.S.C. § 2679(d)(2); *see also Sullivan v. United States*, 21 F.3d 198, 205-06 (7th Cir. 1994) ("at any time before trial" is the only temporal limitation on certification); *McLaurinn v. United States*, 392 F.3d 774, 778-79 & n.17 (5th Cir. 2004) (collecting cases); *Clark v. Wells Fargo Bank*, 585 Fed. App'x 817, 820 (3d Cir. 2014).

Dated: October 19, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

DOUGLAS G. SMITH
Deputy Assistant Attorney General

WILLIAM K. LANE III
Counsel

JAMES G. TOUHEY, JR.
Director

 S/ Stephen R. Terrell
STEPHEN R. TERRELL (CA Bar No.
210004)
Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 888
Washington, DC  20044
Telephone:     (202) 353-1651
Facsimile:     (202) 616-5200
Email: stephen.terrell2@usdoj.gov