**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

E. JEAN CARROLL,

*Plaintiff*

RAJ PATEL,                                                        No. 1:20-cv-07311-LAK

*Intervenor-Plaintiff*

v.

DONALD J. TRUMP, in his personal
capacity,

*Defendant*

**RAJ PATEL'S (*PRO SE*) MOTION FOR PERMISSIVE INTERVENTION**

I, Raj K. Patel (*pro se*), respectfully move this Southern District Court of New York to

grant Fed. R. Civ. P. 24(b)(1)(B) permissive intervention because I "share" with Ms. E. Jane

Carroll's main action a "common" question of law or fact related to defamation, slanderous

statements. Fed. R. Civ. P. 24(b)(1)(B); Notice of Removal, *Carroll v. Trump*, No. 1:20-cv-

07311-LAK (S.D.N.Y. 20___), Dkt. 1; and 28 U.S.C. § 2674 ("Federal Torts Claims Acts")

("FTCA"). In addition, I argue that Mr. Trump violated laws of of R.I.C.O., honest services

fraud, intellectual property, and the unjust use of a stress weapon (i.e. battery with sound). Art.

17, § 2 of the Universal Declaration of Human Rights (UDHR) of the United Nations; 18 U.S.C.

§§ 1961–1968 and 1343–1346; *United States v. Nixon*, 418 U.S. 683 (1974); *see also* Compl. at

131 and 137-160, *Doe et al. v. The Trump Corp. et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y.

____), Dkt. 1. Motions drafted by *pro se* plaintiffs "are construed liberally and held to a less

stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768,

776 (7th Cir. 2015) cited in *Cobb v. Benjamin*, 1:20-cv-01303-JPH-DML, ROSS 13521336 (S.D. Ind. 2020); *see also Gould v. Schneider*, 448 F. App'x. 615 (7th Cir. 2011) quoting *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993). For the reasons discussed herein, I respectfully request that this Southern District Court of New York to allow my motion for permissive intervention. In this motion, I include a factual background and an argument in favor of granting my appeal.

## FACTUAL BACKGROUND

Ms. E. Jean Carroll, the plaintiff in the main case, published a book excerpt, in 2019, in which she wrote Mr. Donald J. Trump, who was not yet elected to the United States Presidency, raped her in a dressing room of a New York City department store, in the 1990's. Opinion, *Carroll v. Trump*, No. 1:20-cv-07311-LAK (S.D.N.Y. 20__), Dkt. 32 at 3, para. 1. After the book was published, now-President Trump called Ms. Carroll "a liar," in addition to stating that she "had made up the rape story" and "he never met her." *Id*. at 3, para. 1. In response to Mr. Trump's comment, Ms. Carroll sued Trump for "libelous and slanderous" defamatory statements. *Id*. at 3, para. 1. Material to the defamation case, "[t]he question whether Mr. Trump in fact raped Ms. Carroll appears to be at the heart of her lawsuit. That is so because the truth or falsity of a defendant's alleged defamatory statements can be dispositive of any defamation case." *Id*. at 3, para. 2. Ms. Carroll seeks damages from Mr. Trump rather than the United States. *Id*. at 3, para. 3.

While Mr. Trump and I might agree that we have never met, except in a political convention in which I was in the general audience and which he was the keynote speaker, I do not agree that he did not batter me or slander or defame me. In the alternative, to answer the

question to my slander and defamation in fact, Donald J. Trump in his presidential capacity or in his presidential capacity, might have to plead state-induced "pains," for which I was not given Due Process. 42 U.S.C. § 1981 ("…pains…") (currently, a ringing sound which mocks a tinnitus infection). *See infra*, p. 4.

On October 27, 2020, I read the news coverage about Ms. Carroll's action, which serves as the main action in my motion for intervention.

In a related case, on October 29, 2018, Doe and her co-plaintiffs ("Doe et al.") filed a class action lawsuit of eight counts against now-President Trump, in his personal capacity, Donald Trump, Jr., Ivanka Trump, Eric Trump, and the Trump Corporation, and I argue that of the eight counts are common, per the Fed. R. Civ. P. 24(b)(1)(B), with my matter. Compl., *Doe et al. v. The Trump Corp. et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y. ____), Dkt. 1. Doe et al. seek various forms of damages, including equitable relief and compensatory and actual damages. *Id*.

In 2016, I noticed a few times on television that Mr. Trump eluted to a scenario which made me further suspicious about my privacy. At this point, I thought that President Trump (1) engaged in an "enterprise" with Notre Dame Law School and others, which breached my privacy, (2) embedded in the aforementioned (1) and independently, defrauded and "deprive[d]" me of honest services, through a "scheme or artifice," under sections 1341–1351 of Title 18 of the United States Code (within a governmental system that is for and by the people), and (3) together with aforementioned (1) and (2) and independently, took my intellectual property (my unique word patterns, including what I said in seclusion with no other person or hearing device in plain eye-sight). 18 U.S.C. §§ 1961(4) and 1346 and *see infra,* p. 6 (comment on "just compensation" and disciplinary efforts and "slavery" and "involuntary servitude") and *see*

*generally infra* (other possible claims). I seek identical relief as mentioned in Doe et al.'s main complaint.

In 2017, I do not remember, at this time, President Trump's role in the enterprise, but I remember a few Notre Dame professors saying my word patterns before class started, and some of those word patterns came from a conversation, with an insubordinate undertone, in 2014 with Dr. Ajay Nair (as far as I know, Pennsylvania State University with Ph.D. degree in Education and bachelor's degree in psychology) (Ajay calls judges and justices "mentally disabled, not smart," which I, after legal provocation, verbally-attack him; I solemnly believe that a transcript exists of this conversation and that Mr. Trump, Emory Law School, Notre Dame Law School professors, corporate police, and the enforcers of this slander have imminent access to it.), now-President of Arcadia University in Glenside, Pennsylvania and former Dean of Campus Life at Emory University, Inc. in Atlanta, GA and my then-horizontal and vertical subordinate, the institution where I served as a corporate officer/President of the Student Government Association/Student Body President and graduated with an "A" average (3.72/4.0 G.P.A.) and with a Bachelor of Arts in Political Science and with Honors in the Academic Study of Religion. Art. 26, § 2 of the Universal Declaration of Human Rights (UDHR) of the United Nations. At the Oxford College of Emory University, from 2011 to 2012, I was also a politically independent member of the Oxford College Republicans and served as the club's Vice President of Finance. I was also a supplemental instructor of probability and statistics at Oxford College. Most importantly, for the times I served in student government or in a club leadership, I felt like that my rights as a co-leader from The Declaration of Independence (U.S. 1776) (i.e. right to represent in a charter and freedom from interference in a charter) and my rights as a student from the Declaration of Independence (1776) (i.e. right to be represented in a charter) were violated,

which are fundamentally essential for my "[S]afety and [H]appiness." The Declaration of

Independence (U.S. 1776). *Bostock v. Clayton County of Georgia*, 590 U.S. ___ (2020) (literal

and ordinary debate).

      In 2018, I noticed that President Trump used my exact word patterns, an identical

phenomena, as aforementioned, to what was happening in his environs at the University of Notre

Dame Law School in Notre Dame, Indiana prior to the time period I took a voluntary separation

in good standing, in November 2017, during my fifth semester of law school, which I started in

August 2015, with a scholarship from the Notre Dame Law School and a scholarship from the

Indiana Conference of Legal Education Opportunity administered by the State of Indiana

Supreme Court. My classmates and roommates would be able to serve as witnesses, though I

think that some of my roommates were asked to participate in this situation. Needless to say,

because the United State Secret Service, along with the Federal Bureau of Investigations

("F.B.I."), and other federal military and civilian agencies, shares responsibility for the security

of the many United States Presidential Candidates and the President of the United States, I knew

that federal law enforcement is aware that my words patterns were being transferred to President

Trump, with or without legal authorization. The transfer of word/data can be happening through,

including but limited to, beaming (e.g., satellite, radio, soundwaves, etc.) or wire (e.g. internet,

telecommunications, etc.). *Cf.* To-be-First Lady Melina Trump recites, at the 2016 Republican

National Convention, identical word patterns from First Lady Michelle Obama's speech at the

2008 Democrat National Convention, in which word patterns are not exactly identical but might

be paraphrased, which demonstrates a campaign and Administration style. I also think that

telecommunication companies (including cell-site simulator companies) or the F.B.I. is

facilitating this enterprise; alternatively, state or local authorities, National Guard, community

informants (As former U.S. Vice President, former U.S. Senate President, and current 2020 U.S.

Presidential Candidate Joe Biden might ask, do the selected community informants create or aim

to create monolithism, with the use of a stress weapon, as being one of their tactics to create their

ideal, utopian monolith? For instance, do the F.B.I.-Multi-Cultural Engagement Council

(MCEC) and the community informants have social targets to re-rank their monoliths?), a private

business, cultural police, or any person with paramilitary technologies can be facilitating this

enterprise with President Trump is and was partaking. U.S. const. amend. II. *See also*

"monolithism" in Merriam-Webster.com Dictionary (1828) ("the quality or state of being

monolithic… where political monolithism inevitably leads"). *See also* "umma" Lexico.com

powered by Oxford U. Press (2020) ("The whole community of Muslims bound together by ties

of religion"…'In Medina, [Prophet] Mohammed established an ummah, a Muslim community,

with every aspect of life - political, religious, social and economic - subject to Islamic

teaching.'"). *See also* "Community Outreach" webpage at

https://www.fbi.gov/about/community-outreach:

> The Multi-Cultural Engagement Council (MCEC) is composed of community
> ethnic, religious, and minority leaders who help the FBI better understand the
> cultures and committees they represent. The mission of the MCEC is to provide a
> trusting environment that allows council members to discuss issues and concerns
> within their communities and collaborate with the FBI to identify solutions. The
> MCEC helps build strong relationships between communities and the Bureau.

*But see* Declaration of Independence (Ajay Nair and many other non-elected and non-appointed

officials as community informants would be in violation of this Text, "deriving their just powers

from the consent of the governed…To prove this, let Facts be submitted to a candid world."). *See*

*also* Art. 18 & 29 of the Universal Declaration of Human Rights (UDHR) of the United Nations.

Sometimes, though never from President Trump (R) nor Speaker Pelosi (D), the

sound/tones of the words is supposed to trigger a whip/battery. The academic study of political

6

science and political psychology calls this phenomena "word whipping" or "word lash" (a person

must first be infected with a psycho-tech) and military psychology has analogous applied and

executed functions. As a side note, I am not sure if the initiative of word whipping/lashing, as a

matter of policy, belongs to a political party, a corporation, a home-grown terrorist group (i.e.

within and from person's home, within the Homeland, etc.), a charted cultural group, a state of

the United States, the United States, or a foreign power. *See also Goldwater v. Ginzburg*, 414

F.2d 324, 337 (2d Cir. 1969), *cert. denied*, 396 U.S. 1049 (defendants found guilty for

compensatory and punitive damages for actual malice libel case with the use of tactical

psychology). Nonetheless, as in aforementioned (3), my verbatim word patterns were taken from

me, but if they were taken for public use, including but not limited to disciplinary or correctional

efforts, I did not have "just compensation," pursuant to the Fifth Amendment or the Fourteenth

Amendment of the United States Constitution. U.S. const. amend. V and XIV. Theft or taking

also necessitates a breach of the Fourth Amendment. U.S. const. amend. IV. Overall, I think that

some thing [sic] has been misapplied or mis-enforced, and I do not know what I did to deserve

this inducement and delay in my career. I also think that this situation violates the prohibition on

"cruel and unusual" punishment because it permanently lowers my grades and impacts my career

and social status, in the domestic and foreign contexts. U.S. const. amend. VIII; U.S. const. art.

IV, § 2, cl. 2 ("Comity Clause" or "Doctrine of Comity" or "Privileges & Immunities Clause");

U.S. const. amend. XIV, § 1 ("Privileges & Immunities Clause"); and U.S. const. art. IV, § 2

("Full Faith & Credit Clause"). I believe that all behavior was unlicensed or illegal some other

way. *See also Id.* and 42 U.S.C. § 1981 ("…pains…"). *See generally* 42 U.S.C. §§ 9501 *et seq.*

(Mental Health "Bill of Rights"), 9501(1)(A)(i) – (ii), & (2)(A). <u>Based on my observations, I am</u>

<u>able to send a possible implementation of depression/anxiety/stress, to this court</u>.

In many folds, should this be a Taking, because the Taking was continuous or forcibly used for corrections, in addition to other crimes, I feel that my situation is one of "slavery" or "involuntary servitude." U.S. const. amend. XIII; *see also* 42 U.S.C. §§ 1981(a)-(c) ("Equal rights under the law"), 1982 ("Property rights of citizens"), and 1983 ("Civil action for deprivation of rights"). *See also* "slavery" in Merriam-Webster.com Dictionary (1828) ("the practice of slaveholding…the state of a person who is a chattel of another…submission to a dominating influence") and "involuntary servitude" in West's Encyclopedia of American Law, retrieved August 2020 from Encyclopedia.com ("slavery; the condition of an individual who works for another individual against his or her will as a result of force, coercion, or imprisonment, regardless of whether the individual is paid for the labor."). *See also* Arts. 1-12 & 22 of the Universal Declaration of Human Rights.

Should my case at hand entail medical attention, all medical attention was unconsented and unnecessary and based on false information. *Collins v. Thakkart*, 552 N.E.2d 507 (Ind. Ct. App. 1990) (intentional, unconsented medical procedure through intimately connected object was battery, unlawful touching of another person). Section 9501 preempts Indiana State constitution and law, per the Supremacy Clause, and is a part of Due Process and Amendment IX, and furthers the general United States constitutional rights to medical privacy and to refuse medical care. *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 270 (1990); U.S. const. art. VI, cl. 2; and *Id*. amends. V, IX, & XIV. *See also* 42 U.S.C. § 9501(2)(A). Section 9501 refers to the President's Commission on Mental Health. 42 U.S.C. § 9501, para. 1.

President Trump, who succeeded President Obama, is the Head of State of the United States and the Head of Government of the United States who took an oath, administered by Chief

Justice of the United States John Glover Roberts Jr., to Take Care and Enforce the United States Constitution and its laws. U.S. const. art. II, § 3. Defendants Donald Trump Jr. and Ivanka Trump are both policy advisors at the White House with the Trump Administration. Defendant Eric Trump is continuing his work at The Trump Corporation, and he is not listed as a policy advisor for the White House. Moreover, Vice President Pence could have brought this situation from Indiana, where we both live, or Indiana State Capitol, where we both used to work, to the White House.

The privacy breach has not only defrauded me of President Trump's honest public service to protect me but also caused a loss in business opportunity and harassment by knowing that my intellectual property has been taken from me. *See* 42 U.S.C. § 1982.

Several times in 2018, 2019, and 2020, I contacted the White House through its website to ask President Trump, both in his official capacity as President of the United States and in his personal capacity, to see whether he was aware of my situation, but I received no explicit answer.

President Trump can trigger "need to know" and terminate the on-going privacy breach and electronic battery; or, President Trump should have ordered the United States Attorney General, as is President Trump's power, to investigate this on-going R.I.C.O. enterprise and situation. 18 U.S.C. § 1968 and 42 U.S.C. § 1983.

In 2018 and 2019, I moved President Trump, the Oval Office, and the Court of the West Wing to Order a restoration of my rights and to be free from this privacy breach and enterprise and to ensure that private enforcement companies, working for a political or personal rival, were not harassing me, including for the reason to reduce the chances of me holding political office one day, which is a form of unlawful political succession planning. 18 U.S.C. §§ 1964(b), 1968,

9

and 1343. *See also* Arts. 12, 13, 17, 20, 25, 26, and 27, International Covenant on Civil and Political Rights (ICCPR), United Nations General Assembly Resolution 2200A (XXI). I also moved the United States Senate and its committees and the United States House of Representative and its committees. As I informed President Trump and Speaker Pelosi, I co-founded the Indiana High School Democrats-Young Democrats of America (Y.D.A.) and was later Vice Chair of the Indiana High School Democrats. While I want to keep the word patterns and scenario as sensitive information, I would like to state that the content of the word patterns is non-profane and non-explicit. Nonetheless, the word patterns were used to batter/whip me via the soundwaves as a part of this enterprise or scheme.

Other knowledgeable parties include Vice President Mike Pence (who is from the same state, Indiana, as me, the Intervenor), Emory University, Inc. (Atlanta, Georgia) officials, University of Notre Dame (South Bend, Indiana) administration and professors, F.B.I., family members, family friends, and acquaintances, and I sued many of them in the Southern District of Indiana in Indianapolis, Indiana. *See generally Raj Patel v. Pikul Patel, Indianapolis Metro. Police Dep't, Governor Eric Holcomb, Claire Sterk, United States, Ne[a]l Patel, Shiven Patel, Vice President Michael R. Pence, Kartik Patel, Brownsburg Police Dep't, State of Indiana, Veronica Root Martinez, Kusum Patel, Speaker Nancy Pelosi, Ajay Nair, Mick Mulvaney, Emory Univ., Brownsburg Cmty. Sch. Corp., F.B.I., Lloyd H. Mayer, Barbara J. Fick, Kristin Pruitt, Ramesh Patel, Manisha Patel, Univ. of Notre Dame Law Sch., Kshitij ["Situ"] Mistry, and President Donald J. Trump*, No. 1:2020-cv-00758 (S.D. Ind. Mar. 9, 2020); *see also Patel v. Trump. et al.*, No. 1:2020-cv-00454 (S.D. Ind. Feb. 19, 2020); *Raj Patel v. F.B.I., Univ. of Notre Dame Law Sch., Emory Univ., Indianapolis Metro. Police Dep't, and Brownsburg Police Dep't*, No. 1:2018-cv-03442 (S.D. Ind. Nov. 13, 2018); *Raj Patel v. F.B.I., Kartik Patel, Indianapolis*

*Metro. Police Dep't, and Brownsburg Police Dep't*, No. 1:2018-cv-03443 (S.D. Ind. Nov. 13, 2018); *Raj Patel v. F.B.I., Indianapolis Metro. Police Dep't, and Brownsburg Police Dep't*, No. 1:2018-cv-03441 (S.D. Ind. Nov. 13, 2018). Prior to suing in the Indiana federal court, on August 23, 2018, the Superior Court of Hendricks County, Indiana granted me a protective order against Mr. Kartik Patel, my father. *Patel, Raj v. Patel, Kartik*, No. 32D05-1808-PO-000372 (Ind. Super. Ct. 2018). At the time I filed for a protection order against Kartik, I should have also moved the court for a protective order against Manisha Patel, my mother. Nonetheless, on July 7, 2020, I did move the Indiana Superior Court for a protective order against Manisha, and the court denied my complaint for a protective order, on August 4, 2020. *Patel, Raj v. Patel, Manisha*, No. 32D04-2007-PO-000276 (Ind. Super. Ct. 2020).

These other knowledgeable parties are the individuals that President Trump, with or without actual knowledge, engaged in an "enterprise" with to defraud me and put me in a state of psychological warfare and deprived me of honest services. 18 U.S.C. §§ 1961 and 1346 and 42 U.S.C. § 1983. Nonetheless, the application and enforcement of a stress weapon on a citizen of the United States, including those in civil incapacitation, violated Original Intent of the Founding Fathers and Framers of the Constitution (1789) and appears in the Privileges and Immunities Clause, Article IV, Section 2, applicable to states and the federal governments and their chartered entities. Thomas Jefferson introduced in the Virginia General Assembly and the Assembly passed "A Bill for Establishing Religious Freedom, 18 June 1779":

> *Well aware that the opinions and belief of men depend not on their own will, but follow involuntarily the evidence proposed to their minds; that* Almighty God hath created the mind free, *and manifested his supreme will that free it shall remain by making it altogether insusceptible of restraint*; that all attempts to influence it by temporal punishments, or burthens, or by civil incapacitations, tend only to beget habits of hypocrisy and meanness, and are a departure from the plan of the holy author of our religion,...that our civil rights have no dependance [sic] on our religious opinions, any more than our opinions in physics or

geometry; that therefore the proscribing any citizen as unworthy the public confidence by laying upon him an incapacity of being called to offices of trust and emolument, unless he profess or renounce this or that religious opinion, is depriving him injuriously of those privileges and advantages to which, in common with his fellow citizens, he has a natural right; that it tends also to corrupt the principles of that *very* religion it is meant to encourage, by bribing, with a monopoly of worldly honours and emoluments, those who will externally profess and conform to it; that though indeed these are criminal who do not withstand such temptation, yet neither are those innocent who lay the bait in their way; *that the opinions of men are not the object of civil government, nor under its jurisdiction*; that to suffer the civil magistrate to intrude his powers into the field of opinion and to restrain the profession or propagation of principles on supposition of their ill tendency is a dangerous falacy [sic], which at once destroys all religious liberty, because he being of course judge of that tendency will make his opinions the rule of judgment, and approve or condemn the sentiments of others only as they shall square with or differ from his own; that it is time enough for the rightful purposes of civil government for its officers to interfere when principles break out into overt acts against peace and good order; and finally, that truth is great and will prevail if left to herself; that she is the proper and sufficient antagonist to error, and has nothing to fear from the conflict unless by human interposition disarmed of her natural weapons, free argument and debate; errors ceasing to be dangerous when it is permitted freely to contradict them.

*We the General Assembly of Virginia do enact* that no man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer, on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and that the same shall in no wise diminish, enlarge, or affect their civil capacities.

And though we well know that this Assembly, elected by the people for the ordinary purposes of legislation only, have no power to restrain the acts of succeeding Assemblies, constituted with powers equal to our own, and that therefore to declare this act irrevocable would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby asserted are of the natural rights of mankind, and that if any act shall be hereafter passed to repeal the present or to narrow its operation, such act will be an infringement of natural right. *Acts passed at a General Assembly of the Commonwealth of Virginia*, Richmond: Dunlap and Hayes [1786], 26–7 cited in "82. A Bill for Establishing Religious Freedom, 18 June 1779," *Founders Online,* National Archives, https://founders.archives.gov/documents/Jefferson/01-02-02-0132-0004-0082 citing *The Papers of Thomas Jefferson*, vol. 2, 1777–18 June 1779, ed. Julian P. Boyd. Princeton: Princeton University Press, 1950, 545–553.

In Federalist No. 42, James Madison, Father of the Constitution, states that "[t]hose who come under the denomination of free inhabitants of a State, although not citizens of such State, are entitled, in every other State, to all the privileges of free citizens of the latter; that is, to greater privileges than they may be entitled to in their own State…" Federalist No. 42. In Federalist No. 80, James Madison states that the Privileges and Immunities Clause is "the basis of the union." Federalist No. 80. The Supreme Court, in *Corfield v. Coryell*, 6 F. Cas. 546 (1823), also states that the Privileges and Immunities Clause, U.S. Constitution Article IV, Section 2, Clause 2 also includes the "Protection by the government; the enjoyment of life and liberty, *with the right to acquire and possess property of every kind*, and to pursue and obtain happiness and safety; subject nevertheless to such restraints as the government may justly prescribe for the general good of the whole." *Corfield v. Coryell*, 6 F. Cas. 546 (1823) (Washington, J.) (emphasis added) and U.S. const. art. IV, § 2, cl. 2 ("Privileges & Immunities Clause"); *see also* U.S. const. amend. XIV, § 1 ("Privileges & Immunities Clause"), 42 U.S.C. §§ 1981-1983. On July 12, 1816, Thomas Jefferson said to Samuel Kercheval, also known as H. Tompkinson, the following, which advocates for remedying the use of psychological weapons, such as the stress weapon:

> I am certainly not an advocate for frequent and untried changes in laws and constitutions. I think moderate imperfections had better be borne with; because, when once known, we accommodate ourselves to them, and find practical means of correcting their ill effects. But I know also, that laws and institutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths disclosed, and manners and opinions change with the change of circumstances, institutions must advance also, and keep pace with the times. We might as well require a man to wear still the coat which fitted him when a boy, as civilized society to remain ever under the regimen of their barbarous ancestors. Thomas Jefferson to Samuel Kercheval. *The Thomas Jefferson Papers at the Library of Congress*, Series 1: General Correspondence 1651 to 1827, Retrieved from the Library of Congress, https://www.loc.gov/item/mtjbib022494/.

As aforementioned, this enterprise was ongoing when I was enrolled at the University of Notre Dame Law School, from August 2015 to November 2017, in order to decrease my academic performance and social performance. Per my academic performance, grade deflation happened by inducing stress, via a "stress weapon," rather than by professors lowering my grade, although that too could have happened along with the inducement of stress. Materially put, on the Notre Dame Law School grading curve, which limits the number of honorable grades (e.g. "A," "A-," and "B+") and which varies based on class size, scientifically-statistically stated, a handful of my fellow gradees and classmates, effectively, have a higher grade than they otherwise would but for the inducement of stress, and many of my fellow gradees and classmates have a relatively higher academic and social standing than they otherwise would but for the inducement of stress, which all also entails to appropriating my identity. *Contra* "dyslexia" as a political disease; *see* "dyslexia" in Lexico.com powered by Oxford U. Press (2020) ("A general term for disorders that involve difficulty in learning to read or interpret words, letters, and other symbols, but that do not affect general intelligence."); *see also* "stress" in *Id.* ("Pressure or tension exerted on a material object…'the distribution of stress is uniform across the bar'…'The degree of stress differs in each specific case'…'he's obviously under a lot of stress'…'the stresses and strains of public life'…'he has started to lay greater stress on the government's role in industry'"). *Compare Id. with* "terrorist" in Lexico.com powered by Oxford U. Press (2020) ("The search is on for the terrorists and politicians are trying to calm the public down.'…'Terrorism is not a nation and terrorists are not an army that you can send troops against.'…'The great and the good are telling us that we must not change policy in deference to terrorists.'…'Most terrorists know exactly what they are doing and the effect they want to produce.'…'The biggest danger to society is what would happen if these terrorists did get their

own way.'…'I believe what they mean is that they are fighting terrorists and leaving them no

safe haven.'…'I could see real terror on their faces and thought it might be a terrorist attack.')

*and* (Is the word "stressors" an euphemism for "terrorizers" or "terrorists?"). *See* Foreign Com.

Cl., U.S. const. art. I, § 8, cl. 3. But for this peril/conspiracy/assault/battery, I would have easily

had a cumulative grade point average of 4.0 to 3.5 out of a 4.0, while maintaining my rigorous

exercise schedule. 18 U.S.C. §§ 111 *et seq*.; 175 *et seq*., 1961 *et seq*., 1951 *et seq*., and 2510 *et*

*seq*. and 42 U.S.C. §§ 1981-1983. Nonetheless, I was elected by my law school peers as a

Representative to the Indiana State Bar Association from the Notre Dame Law School Student

Bar Association.

In addition, one of the purposes of the enterprise might be to target me politically,

especially because my honor's thesis, titled "Weight Loss as a Religion," was supported by Faith

Spotted Eagle, a 2016 United States Presidential Candidate from the Democratic National

Committee and receiver of one (1) vote from the constitutionally-established Electoral College

(my honors thesis and Faith's activism to end biological-warfare and heal post-traumatic stress

disorder can be categorized under Commander-in-Chief Barack Obama's policy or law on

identity politics). In fact, I had lost 50 pounds during the freshman year of my high school, from

200 pounds to 150 pounds. During the first two years of my college, I gained weight, about 30 to

40 pounds, and I lost this weight, before my junior year, which was primarily through P90X.

Therefore, because of my recent severe weight gain (almost 150 pounds of fat mass) caused by

this stress weapon, which started a few months prior to my voluntary separation of leave in good

standing, but exceptionally after May 2018, I feel a loss of legitimacy, personal achievement,

embarrassment, health, athleticism, beauty, and personal satisfaction. In fact, I was at my fittest,

through cardiovascular activities and weight lifting, from April 2015 to February 2016. As this

situation was on-going prior to writing and getting approved my honors thesis, I do not think that my scholarship made me a target of this stress weapon, but maybe a group read my scholarship incorrectly. U.S. const. amend. I. Maybe the stress weapon is the next edition of discrimination at universities, including against Asian-Americans. Anemona Hartocollis and Giulia McDonnell Nieto del Rio, "Justice Dept. Says Yale Discriminates. Here's What Students Think.," *New York Times*: https://www.nytimes.com/2020/08/14/us/yale-asian-american-discrimination.html.

Overall, since November 2017, I have taken unplanned and unwanted time off of law school which unduly and unwantedly effects my career timeline and unjustly limits my career choices, which all also causes me extreme emotional distress. Interestingly, the average cost of keeping a state prisoner is $31,000, from the year 2010 to 2015, across the Sister States. Chris Mai and Ram Subramanian, *The Price of Prisons, Examining State Spending Trends*, 2010-2015, Vera Institute of Justice: https://www.vera.org/publications/price-of-prisons-2015-state-spending-trends. In federal prison, the average cost per inmate, in FY 2017, was $36,299.25. "Annual Determination of Average Cost of Incarceration," Bureau of Prisons, Department of Justice, 83 FR 18863 (April 30, 2018). Although state and federal prison and civil incapacitation and civil confinement are different, I had the undue burdens of paying for the cost of this civil incapacitation, which unduly changes my commercial participation for this time period and afterwards, and, unlike in federal or state prison cases, taxpayers only paid mild costs. U.S. const. amends. XIII and XIV. Mind you, I neither abused study drugs nor have committed any crime which could have caused this situation.

On May 22, 2020, I filed a Motion of Intervention with the Clerk of the Southern District Court of New York in *Doe et al. v. The Trump Corp. et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y.

_____). *Id.*, Dkt. 268. On May 26, 2020, Judge Lorna G. Schofield DENIED my application and

motion for intervention, and she said, entirely, that

> Mr. Patel's allegation that President Trump "engaged in an 'enterprise' with Notre
> Dame Law School, which breached his privacy, defrauded and 'deprive[d]' Mr.
> Patel of honest services, through a "scheme or artifice…and took his intellectual
> property (his unique word patterns, including what he said in seclusion with no
> other person or hearing device in plain eye-sight)" does not demonstrate a
> common question of law or fact sufficient to grant permissive intervention. See
> Fed. R. Civ. P. 24(b).

*Doe v. The Trump Corp.*, No. 20-1706 (2d Cir. _____), Dkt. 2 at 6; *see also Doe et al. v. The*

*Trump Corp. et al.,* No. 1:18-cv-09936-LGS (S.D.N.Y. _____)*,* Dkt. 272 at 6.

On May 27, 2020, I filed a Notice of Appeal, with the Clerk of the Southern District of

Court of New York. Notice of Appeal, *Doe et al. v. The Trump Corp. et al.,* No. 1:18-cv-09936-

LGS (S.D.N.Y. _____) at Dkt. 275 (docketed on May 28, 2020). On May 28, 2020, the Clerk of

the Southern District of Court of New York transferred to this Court's clerk the Notice of

Appeal. Notice of Appeal at 3, *Doe v. The Trump Corp.*, No. 20-1706 (2d Cir. _____), Dkt. 1 and

*Doe et al. v. The Trump Corp. et al.,* No. 1:18-cv-09936-LGS (S.D.N.Y. _____) at Dkt. 275.

On June 9, 2020, I filed Dkt. No. 8, the original Motion in Support of My Notice of

Appeal (*Pro Se*) seeking to Overturn the Southern District Court of New York's Denial of My

Motion for Permissive Intervention. Mot. in Support of Dkt. 1, *Doe v. The Trump Corp.*, No. 20-

1706 (2d Cir. _____), Dkt. 8.

On June 18, 2020, I filed Dkt. No. 28, a motion for expedited decision on Dkt. No. 8. *Doe*

*v. The Trump Corp.*, No. 20-1706 (2d Cir. _____), Dkt. 28 and *see also Id.* at Dkt. 8.

On July 1, 2020, I sued Manisha and others for acts related to assault/battery, extreme

emotional distress, damages to reputation, slander, honest services fraud, R.I.C.O. with

assault/battery as the predicate crime. 28 U.S.C. § 2674; Arts. 12 & 22 of the Universal

Declaration of Human Rights (UDHR) of the United Nations and *Raj Patel v. Manisha Patel, Kartik Patel, Charmi Patel, Nina Patel, Neal Patel, Dhaval Patel, Ajay Nair, Emory Univ., and President Donald J. Trump*, No. 1:20-cv-1772-TWP-MPB (S.D. Ind. ____), Dkt. 1 at 7-9. I sued President Trump because I wanted him to know about these happenings, while I could have been under surveillance, and maybe the Presidency is a co-conspirator in this action. *Id. Patel v. Patel et al.*, No. 20-2713 (7th Cir. ____).

On July 9, 2020, I filed Dkt. No. 32, a three-page letter addressed to Hon. Victor Marrero with copies sent to this court and two other courts. *Doe v. The Trump Corp.*, No. 20-1706 (2d Cir. ____), Dkt. 32; *Trump v. Vance*, No. 1:19-cv-08694-VM (S.D.N.Y. ____), Dkt. 45; *Doe et al. v. The Trump Corp. et al.,* No. 1:18-cv-09936-LGS (S.D.N.Y. ____) at Dkt. 289; and *Trump v. Vance*, No. 19-3204 (2d Cir. ____) (not appearing on public docket). On July 13, 2020, Judge Schofield ordered that I "shall file no further substantive filings in this action, pending resolution of the appeal of this Court's Order at Dkt. No. 272." Order at 2, *Doe et al. v. The Trump Corp. et al.,* No. 1:18-cv-09936-LGS (S.D.N.Y. ____) at Dkt. 290.

On July 19, 2020, I filed an Amended Motion in Support of My Notice of Appeal (*Pro Se*) Seeking to Overturn the Southern District Court of New York's denial of My Motion for Permissive Intervention. Amended Dkt. 8, Mot. in Support of Dkt. 1, *Doe v. The Trump Corp.*, No. 20-1706 (2d Cir. ____), Dkt. 33 (docketed July 20, 2020).

On October 9, 2020, the Court of Appeals for the Second Circuit DENIED my motion to overturn the Southern District Court of New York and DISMISSED because it lacks an arguable basis either in law or in fact. *Doe v. The Trump Corp.*, No. 20-1706 (2d Cir. ____), Dkts. 47 and 48.

On October 12, 2020, I moved the United States Supreme Court for court-appointed counsel and a writ of certiorari. *Doe et al. v. The Trump Corp. et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y. 20__), *appeal denied* No. 20-1706 (2d Cir. 20__), *pending cert.*, No. __-___ (U.S. 20__) and Motion for Court-Appointed Counsel, *Doe et al. v. The Trump Corp. et al.*, No. __-___ (U.S. 20__).

As of October 27, 2020, in distribution of Peace and Order, this enterprise and situation is mildly ongoing and began fifteen years ago (i.e. 2005 or before), which is approximately the amount of time Doe et al. say they have been defrauded by President Trump's enterprise with the American Communication Network (A.C.N.). This motion for intervention follows.

## ARGUMENT

Motions for Permissive Intervention drafted by *pro se* plaintiffs "are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) cited in *Cobb v. Benjamin*, 1:20-cv-01303-JPH-DML, ROSS 13521336 (S.D. Ind. Aug. 07, 2020); *see also Gould v. Schneider*, 448 F. App'x. 615 (7th Cir. 2011) quoting *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Motions for permissive intervention "must be construed so as to do justice." Fed. R. Civ. P. 7(b) and 8(e). In the second circuit, a district court's decision to deny permissive intervention is reviewed for abuse of discretion. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) and *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 854 (2d Cir. 1998). *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 385 (2d Cir. 2006). "On timely motion, the court may permit anyone to intervene who....has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). As a general matter, a question may

be of either law or fact, or both—law and fact. A district court has a duty to grant permissive intervention where the "legal issues are the same." *United States v. Local 638, Enterprise Ass'n of Steam, etc.,* 347 F.Supp. 164, 166 (S.D.N.Y. 1972) (hereunto "*Enterprise Ass'n*") and *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967). In other words, when the legal issues are the "same," the legal issues are to be treated as if they are "common." *Cf.* Fed. R. Civ. P. 24(b)(1)(A); *Enterprise Ass'n*, 347 F.Supp. at 166. *Enterprise Ass'n* (S.D.N.Y. 1972) also implies that "common" does not mean "same," and "common" does not require a question from the main action to be strongly analogous with the question in the intervenor's claim for permissive intervention to be granted. *Id.* at 166 and *Nuesse*, 385 F.2d at 694-704. The element in the Fed. R. Civ. P. 24(b)(1)(B) that the intervenor shares with the main action a "claim or defense" has not been interpreted strictly to preclude permissive intervention. *Nuesse*, 385 F.2d at 704 and Fed. R. Civ. P. 24(b)(1)(B). Nor has this element that the intervenor shares with the main action a "claim or defense" been "read in a technical sense." *Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 415 (S.D.N.Y. 1974) and Fed. R. Civ. P. 24(b)(1)(B). When a material fact in the intervenor's claim is shared with a fact in the main action, a common question of fact exists for permissive intervention to be granted. *See generally Nationwide Mut. Ins. v. Nat'l Reo Mgmt., Inc.*, 205 F.R.D. 1 (D.D.C. 2000) (internal citations omitted) (single similarity of facts between the original plaintiff's main action and the intervenor's action satisfies the element of common question of fact); *see also EEOC v. Nat'l Child. Center*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (identity of defendants, functions of a space, and patterns of misconduct may constitute common question of facts between the main action and the intervenor's action); *cf.* when a material law in the intervenor's claim is shared with a law in the main action, a common question of law, fact, or both, exists for permissive intervention to be granted. Therefore, intervention is "allowed" even

in situations where the existence of any "nominate" 'claim' or 'defense' is difficult to find. *Nuesse*, 385 F.2d at 704. A mere "presence of a question of law or fact" "common" with the main action is sufficient for the District Court to grant intervention. *Id*. and Fed. R. Civ. P. 24(b)(1)(B). Overall, an intervenor can share a "common" claim or defense with the original plaintiff through four (4) main possibilities. First, at plain reading, when the intervenor's claim or defense is "common" with the main action. Or, by satisfying one of the alternative legal standards for interpreting "common" in the Fed. R. Civ. P. 24(b)(1)(B): (1) when the questions are "common" because they are the "same", (2) when the questions are "common" because they are "nominate"-difficult-to-find (i.e. not-specific), or (3) when the questions are "common" because there is a "presence" of alikeness between the main action and intervenor's claim. *Nuesse*, 385 F.2d at 704 and *Enterprise Ass'n*, 347 F.Supp. at 166. Intervention rests on the policy that like matters be resolved together and that all parties are able to exercise their right to sue. *See generally Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857), *United States v. Nixon*, 418 U.S. 683 (1974) (no person or no project/experiment is above the law, the Federalist Project/Experiment), *Clinton v. Jones*, 520 U.S. 681 (1997) (president's acts before becoming president are not subject to immunity), and *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (immunity limited to official acts).

1.  <u>My motion for intervention is timely for the District Court to allow permissive intervention.</u>

The timeliness of an application for intervention is evaluated "in the context of all relevant circumstances," including:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after

they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990); *see United States v. City of Detroit, 712 F.3d 925, 930-31* (6th Cir. 2013) (same).

Here, the case is this is still pending and a final opinion has not been issued in Ms. Carroll's case. I seek intervention against the President of the United States, in his personal, campaign and presidential capacity, to restore constitutional and legal protections and damages for slander, battery, theft of intellectual property, and others. I decided to file this motion *pro se* after I failed to find counsel and am waiting a decision from the Supreme Court in a related case. *Doe et al. v. The Trump Corp. et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y. 20__), *appeal denied* No. 20-1706 (2d Cir. 20__), *pending cert.*, No. __-___ (U.S. 20__). Because of the material common questions of law and fact related to Federal Torts Claims Act, the initial plaintiffs are not likely to be prejudiced by me, who is filing as soon as I read the news coverage. In this motion and the cases referenced above, I have represented myself, which is why I reason that permissive intervention is favored. If required to file a separate suit, I would risk losing my right to sue President Trump, which originates from the Magna Carta.

2.   Ms. Carroll and I share "common" questions of law or fact that Mr. Trump slandered or defamed us, sufficient for permissive intervention to be granted.

A district court has a duty to grant permissive intervention when the "legal issues are the same" in the main action and the intervenor's action. *Enterprise Ass'n*, 347 F.Supp. at 166 and *Nuesse*, 385 F.2d at 704. In other words, when the legal issues are the "same," the legal issues are to be treated as if they are "common." *Enterprise Ass'n*, 347 F.Supp. at 166; *cf*. Fed. R. Civ. P. 24(b)(1). The element in the Fed. R. Civ. P. 24(b)(1) that the intervenor shares with the main action a "claim or defense" has not been interpreted strictly to preclude permissive intervention.

*Nuesse*, 385 F.2d at 704. Nor has this element that the intervenor shares with the main action a "claim or defense" been "read in a technical sense." *Brooks*, 63 F.R.D. at 415. Permissive intervention requires only the existence of a "nominate" or a "presence" question of law or fact in the intervenor's action or the original plaintiff's action which is shared with the other's action. *Nuesse*, 385 F.2d at 704.

Here, Ms. Carroll sued Trump for "libelous and slanderous" defamatory statements, but the Southern District Court of New York states that it remains unclear whether the rape happened. Opinion, *Carroll v. Trump*, No. 1:20-cv-07311-LAK (S.D.N.Y. 20__), Dkt. 32 at 3, para. 1. Likewise, I sued President Trump for defamation-slander, and a court has not yet found whether the facts material to the defamatory statements happened. *Id*. Both allegations are made in Mr. Trump's personal capacity, although I have also added allegations to Mr. Trump's United States Presidential capacity. *Compare EEOC*, 146 F.3d at 1047 (identity of defendants, functions of a space, and patterns of misconduct may constitute common question of facts between the main action and the intervenor's action) *with here* (identity of defendant-Trump and patterns of defamation-related law misconducts). *Compare Nationwide*, 205 F.R.D. at 1-6 (the presence of the same fact, carbon monoxide, in a main-contracts action and intervenor's non-contracts action constituted a common question of fact for permissive intervention) *and EEOC*, 146 F.3d at 1047 (common facts between the main action and the intervenor's claim were the individual defendants themselves) *with here* (Donald J. Trump, in his personal capacity, is present in both the main action and throughout my intervention; a common question of fact is about the existence of Trump when in his personal capacity).

Therefore, Ms. Carroll and I share a "common" question of law or fact that is either alike as "common," "the same," "nominate"-difficult-to-find (i.e. not-specific), or with "presence." Fed.

R. Civ. P. 24(b)(1); *Enterprise Ass'n*, 347 F.Supp. at 166; and *Nuesse*, 385 F.2d at 704.

Currently, I feel like that my right to sue, Due Processes, and Equal Protection Clause, and this District Court's its own authority and precedent, per *Enterprise Association*, and my rights under international law, permit permissive intervention. *Enterprise Ass'n*, 347 F.Supp. at 166 and Universal Declaration of Human Rights.

## **CONCLUSION**

For the foregoing reasons, I, Raj K. Patel, respectfully request that Southern District

Court of New York grant my permissive intervention.


Dated: October 27, 2020


Respectfully submitted,


/s/ Raj K. Patel
1239 Spring Lake Drive
Brownsburg, IN 46112
Hendricks County
317-450-6651 (cell)
rajp2010@gmail.com
raj@rajpatel.live

*Pro se*


J.D. Candidate, Notre Dame L. Sch. 2021 or
      2022
President/Student Body President, Student
      Gov't Ass'n of Emory U., Inc. 2013-
      2014
Student Body President, Brownsburg Cmty.
      Sch. Corp./President, Brownsburg High
      Sch. Student Gov't 2009-2010
Rep. from the Notre Dame L. Sch. Student
      B. Ass'n to the Ind. St. B. Ass'n 2017
Deputy Regional Director, Young
      Democrats of Am.-High Sch. Caucus
      2008-2009
Co-Founder & Vice Chair, Ind. High Sch.
      Democrats 2009-2010
Vice President of Fin. (Indep.), Oxford C.
      Republicans of Emory U., Inc. 2011-
      2012

25

## CERTIFICATE OF SERVICE

I, Raj K. Patel, certify that I filed the preceding Motion for Intervention by e-mail, and I certify that I provided notice of filing to all counsel of record listed below by e-mail:

Roberta Ann Kaplan
Joshua Adam Matz
Kaplan Hecker & Fink LLP
350 Fifith Avenue, Suite 7110
New York, NY 10118
212-763-0883
Fax: 212-564-0883
Email: rkaplan@kaplanhecker.com
Email: jmatz@kaplanhecker.com


William Kerwin Lane, III
DOJ-Civ
950 Pennsylvania Avenue, NW
Ste Main 3138
Washington, DC 20530
202-305-7920
Email: william.lane2@usdoj.gov

Stephen Terrell
DOJ-Enrd
Civil Division, Torts Branch
P.O. Box 888
Washington, DC 20044
202-353-1651
Email: stephen.terrell2@usdoj.gov


John A. Kolar
Government Accountability Project, Inc.
1612 K Street, NW
Ste 1100
Washington, DC 20006
202-457-0034
Email: jackk@whistleblower.org


Dated: October 27, 2020


Respectfully submitted,



/s/ Raj K. Patel
1239 Spring Lake Drive
Brownsburg, IN 46112
Hendricks County
317-450-6651 (cell)
rajp2010@gmail.com
raj@rajpatel.live

*Pro se*