KCBKCARC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  E. JEAN CARROLL,

4              Plaintiff,

5         v.                          20 CV 7311 (LAK)
                                      Telephone Conference
6  DONALD J. TRUMP, in his
   personal capacity,
7
                 Defendant.
8
   ------------------------------x
9                                     New York, N.Y.
                                      December 11, 2020
10                                    9:30 a.m.

11 Before:

12                   HON. LEWIS A. KAPLAN,

13                                    District Judge

14                        APPEARANCES

15 KAPLAN HECKER & FINK LLP
        Attorneys for Plaintiff
16 BY:  ROBERTA ANN KAPLAN
        JOSHUA ADAM MATZ
17      MARCELLA COBURN

18 KASOWITZ BENSON TORRES & FRIEDMAN LLP
        Attorneys for Defendant
19 BY:  CHRISTINE A. MONTENEGRO
        PAUL J. BURGO

20

21

22

23

24

25

1            (The Court and all parties appearing telephonically)

2            THE COURT:  Good morning.  This is Judge Kaplan.

3            Am I audible, Andy?

4            THE DEPUTY CLERK:  Yes, Judge, you are audible.  And

5    you were probably listening while I just took attendance.  I

6    believe everyone is on the line.

7            THE COURT:  Good.

8            All right.  Let me hear from the parties about where

9    we are.

10            Ms. Kaplan?

11            MS. KAPLAN:  Your Honor, my partner, Mr. Matz, is

12    going to address most of the argument this morning.

13            So go ahead, Mr. Matz.

14            MR. MATZ:  Good morning, your Honor.  This is Joshua

15    Matz, of Kaplan Hecker & Fink, for plaintiff, Ms. Carroll.

16            Where we are, your Honor, I suppose, is a little bit

17    confounded by the fact that Mr. Trump's private counsel waited

18    until 7:58 p.m. last night to file a motion to stay the case

19    and to adjourn this proceeding.  Obviously, the request for an

20    adjournment is now moot.

21            So if it would be helpful, what I would respectfully

22    suggest is that I briefly describe how we came to that point,

23    including some of our interactions with Mr. Trump's counsel,

24    and then indicate that we do oppose that motion to stay and

25    perhaps offer some thoughts on that in service of a request for

1    us to have the opportunity to submit briefing on it at some

2    point next week.

3              Thank you very much.

4              So, to start out with some basics here, it's a bit

5    much to hear Mr. Trump's lawyers say that it would be unfair

6    for him to have to proceed with this case when he has bent and

7    broken virtually every rule to avoid doing so and has already

8    attempted to abuse the Justice Department in pursuit of that

9    personal errand.

10             For someone who has so emphatically denied sexually

11   assaulting Ms. Carroll and has so brazenly slandered her for

12   daring to speak up, Mr. Trump sure seems desperate to avoid the

13   justice system.  That aspiration is a sign of weakness and

14   fear.  In fact, Mr. Trump is so desperate, that his counsel

15   here have undertaken the kind of gamesmanship that gives the

16   rest of us lawyers a bad name, and, as I'll emphasize in just a

17   minute, that conduct is relevant to the question that

18   Mr. Trump's lawyers have now put before the Court, namely,

19   whether Mr. Trump is entitled to a stay of the proceedings

20   while he pursues an appeal in the Second Circuit.  But, of

21   course, to get to that point, I think it's very helpful to

22   understand how that motion came to be filed at 7:58 p.m. last

23   night.

24             And in argue, having now lived with this case and

25   litigated it for over a year, that is just the latest chapter

1    in a story that goes back to when we first filed the case.

2    When we filed it in November of 2019, the President and his

3    lawyers refused to accept service of the complaint,

4    gratuitously complicating what should have been a

5    straightforward process. They then used every stall tactic in

6    the book. They filed a motion to dismiss based on the spurious

7    assertion that Mr. Trump wasn't even subject to personal

8    jurisdiction as a resident of New York. Six days after we

9    served discovery requests, they sought a stay in light of

10    *Zervos v. Trump*, a case pending in the state court, even though

11    they had already argued that that case was so different, that

12    it couldn't even be considered related.

13        Then, when those efforts failed, and the stay was

14    lifted, they refused to produce any documents in response to

15    Ms. Carroll's second set of document requests, while still

16    somehow managing -- despite their insistence now that discovery

17    cannot proceed, they still somehow managed in state court,

18    while not responding to our document requests, to serve

19    requests for document production and interrogatories on

20    Ms. Carroll. And, of course, in that period — and this is

21    really August and September of 2020 — they consistently

22    communicated to us, the lawyers that are on the line right now

23    communicated to us, their intent to litigate the case in state

24    court, including their intent to seek an appeal as of right

25    from the denial of their motion to stay the proceedings.

1    But, as we all know, on the very last possible day for

2    them to take that appeal, it turned out that their client has

3    been working behind the scenes to arrange for a direction to be

4    issued to the Justice Department to seek removal of the case to

5    federal court on the improbable grounds that President Trump

6    was acting within the scope of his office and employment at the

7    time he slandered Ms. Carroll.

8    Of course, even then, it seems like the gamesmanship

9    continued.  The Justice Department, acting as President Trump's

10   counsel, attempted to reschedule the argument on the day it was

11   supposed to happen, and then refused to argue the case by

12   phone, and then waived most of their case, reciting all of the

13   arguments in their reply brief, rather than allow Ms. Carroll

14   an opportunity to present any argument or even to respond to

15   all those newly-raised contentions.

16   Now, after this Court ultimately rejected the Justice

17   Department's motion to substitute defendant, on November 11th,

18   this Court issued an order rescheduling the initial pretrial

19   conference.  To ensure that there was not any confusion, I

20   personally served that order by email and sent hard copy

21   versions of that order to the Kasowitz firm along with a

22   proposed scheduling order, but I did not receive any response

23   to that email.

24   On November 20th, this Court issued a follow-up order

25   indicating that in light of its ruling on the Justice

1    Department's motion to substitute, that Mr. Trump's state court

2    present counsel, which is to say the Kasowitz firm, would

3    continue to represent President Trump here and should appear on

4    the docket.  That same day, I served the Court's order on

5    Mr. Kasowitz and his colleagues and requested the favor of a

6    response to my earlier email by no later than November 24th,

7    2020.  And although Mr. Trump's private lawyers later filed a

8    notice of appeal, they never actually responded to our proposed

9    schedule until Wednesday of this week.

10          Now, in the interim, on Tuesday of this week,

11    December 8th, your Honor's courtroom deputy contacted counsel

12    regarding the logistics for the conference.  On Wednesday, at

13    2:00 p.m., Mr. Burgo, of the Kasowitz firm, responded in an

14    email in which he requested adjournment of this conference and

15    indicated that it was his decision that the Court should stay

16    proceedings, and, in that email, he cited essentially all of

17    the cases that its argument relies upon, so we know that they

18    have formed the opinion that a stay was warranted and had

19    apparently concluded all or most of their legal research on

20    that by Wednesday at 2:00 p.m.  Thirty minutes after Mr. Burgo

21    sent that email, your Honor's courtroom deputy responded to say

22    that this request, and I quote, "needs to be promptly filed as

23    a motion on ECF."

24          Notwithstanding that instruction, on Wednesday

25    afternoon, at which point they had already formed their

1   position, Mr. Trump's lawyers delayed until 7:58 p.m. last

2   night — I should say inexplicably delayed — to actually file

3   that motion, which is the reason why Ms. Carroll has not yet

4   had an opportunity to submit a written response to it.  And, in

5   our view, that -- to call that gamesmanship, I think, would be

6   an act of charity.

7        Our position, respectfully, is that, first, we would

8   appreciate the opportunity, if the Court would allow it, for us

9   to submit a written response to that motion by Friday of next

10  week, although we can certainly submit a written response

11  earlier, if your Honor would allow it and if that would be the

12  Court's preference, and, more fundamentally, what I would

13  emphasize is that our position is that a complete stay of

14  proceedings in this Court pending appeal is not warranted.  We

15  think that, at the very least, it would be appropriate to

16  continue with document discovery, given that document discovery

17  proceedings already began in state court, where the proceedings

18  were against Mr. Trump, and where he was represented by the

19  same counsel, and where those very counsel have already served

20  document requests on Ms. Carroll.  It seems hard for us to

21  understand how any immunity or argument that they might raise

22  would be consistent with the fact that they have already

23  undertaken a document discovery process at a time where they

24  knew, or darn well should have known, that these arguments were

25  available to them.  And it's our position that under the Second

1   Circuit's decision in the World Trade Center disaster site

2   litigation case, as well as subsequent authority, this Court

3   would have jurisdiction, and it would be appropriate, under the

4   applicable stay standards, to deny the request for a stay, at

5   least with respect to document discovery, during the pendency

6   of the Second Circuit appeal.

7           THE COURT:  When you say "document," are you speaking

8   generically, everything but depositions, or are you speaking

9   literally of documents and documents only?

10          MR. MATZ:  Your Honor, I'm speaking of documents and

11  documents only.  So, for example, that would not include our

12  request for a DNA sample, it would not include, as your Honor

13  points out, depositions or expert discovery.  We really do have

14  in mind documents, which discovery process already began below.

15          THE COURT:  Okay.

16          Who wants to respond on behalf of the President?

17          MR. BURGO:  Good morning, your Honor.  Good morning,

18  Robbie.  Good morning, Joshua.  This is Paul Burgo and

19  Christine Montenegro, from Kasowitz Benson Torres & Friedman,

20  for President Trump.

21          First of all, I do apologize, we were under the

22  mistaken impression that following the notices of appeal, that

23  the Court would not want to proceed with the discovery

24  conference based on what we thought was a pretty clear point of

25  law that the notice of appeal is a jurisdictional event that

1    essentially transfers jurisdiction from the district court to

2    the Court of Appeals over all aspects involved in the appeal.

3            We learned that we were mistaken on that point.  We

4    informed, from Mr. Mohan's email, about the conference, then we

5    informed plaintiff's counsel that we would be filing a motion

6    shortly.  In response to Mr. Mohan, we put forth all of our

7    authorities, and, of course, we're not opposed to the plaintiff

8    submitting whatever they need to submit, although we don't

9    think it's really necessary.

10           And then we learned that the Court wanted us to file a

11   motion.  We did that.  I think it's a pretty clear rule here,

12   the Supreme Court held in *Osborn v. Haley* that when a court

13   denies a certification or a substitution under the Westfall

14   Act, that person is entitled to an immediate appeal because the

15   Westfall Act is designed to immunize covered employees, not

16   simply from liability, but from suit.  Courts repeatedly hold

17   that that is a -- that notice of appeal following that is a

18   matter of jurisdictional significance that divests the Court of

19   jurisdiction.

20           THE COURT:  Mr. Burgo, immunity from liability and

21   immunity from discovery are two different things, aren't they?

22           MR. BURGO:  Well, I think the Supreme Court has

23   repeatedly held, and courts from this district have also

24   recognized, that liability from suit includes, and, for

25   example, *Mitchell v. Forsyth*, from the Supreme Court, held that

KCBKCARC

1   the immunity constitutes an entitlement not in the same trial

2   or face the other burdens of litigation.  *Harlow v. Fitzgerald*,

3   another Supreme Court case --

4           THE COURT:  I suppose your position would be that if a

5   motorist injured in an accident with a post office truck

6   brought a negligence action against the driver of the truck,

7   and the Attorney General moved to substitute the United States

8   on the ground that the post office truck driver was a

9   government employee acting within the scope of his employment,

10  that would terminate any discovery from the post office driver,

11  right?

12          MR. BURGO:  I believe that the discovery could

13  proceed.  However, once the notice of appeal is filed, then the

14  district court no longer has the authority to order that

15  discovery because the issues involved is an immunity for that

16  post office driver.  In other words --

17          THE COURT:  It's an immunity from liability.

18          MR. BURGO:  Your Honor, I think, respectfully, the

19  Court in *Osborn* -- the Supreme Court in *Osborn v. Haley* said

20  it's not simply from liability, but from suit.  I think there

21  really aren't many exceptions that can be pointed to.  I

22  think -- I expected plaintiff's counsel to reference the World

23  Trade Center case, because I think that is a very limited

24  exception, but it's not really applicable here.  First of all,

25  it's not a Westfall Act case.  Second of all, the Court of

1  Appeals actually did initially stay proceedings, I think the

2  district court refused to do that, but then the Second Circuit

3  ruled that because there was arguably an argument of immunity,

4  that even that arguable case of immunity would divest the Court

5  of jurisdiction.

6  Later, there was a motion in the Second Circuit, and

7  the Second Circuit was asked to either restore jurisdiction to

8  the district court or to vacate the stay.  And it didn't really

9  address, at that stage, what it was doing, whether it was

10  vacating the stay or restoring the jurisdiction, which is

11  something only the Second Circuit could do, but it did end up

12  allowing discovery to proceed because it found that absent the

13  extraordinary circumstances of that case, in other words, there

14  could be hundreds, if not thousands, of people who had died

15  before -- who had been World Trade Center victims who had died

16  before there was a resolution that had allowed discovery to

17  continue, the court later found that, in fact, in that case,

18  unlike here, it was simply a case of immunity from liability

19  and not suit.  And, therefore, in fact, the notice of appeal

20  did not divest the district court of jurisdiction, and

21  discovery could proceed because it was not liability from --

22  excuse me, it was not an immunity from suit.

23  Here, the Supreme Court has been very clear, on

24  numerous occasions, not just in *Osborn v. Haley*, but in

25  *Gutiérrez*, the Second Circuit has recognized that in *Gold v.*

1    *United States* and *Bello v. United States*, that it's immunity

2    from suit, not just liability.

3            THE COURT:  Okay.  Mr. Matz.  Or I guess I should ask

4    if counsel for the Justice Department wants to be heard.

5            Is there counsel for the Justice Department on this

6    call?

7            MR. BURGO:  Your Honor, I'm not sure that they are on

8    the call.

9            MR. MATZ:  Your Honor, it's my understanding that

10   they're not on the call, or at least I haven't seen any

11   communication from them or to them indicating that they would

12   be, since they are no longer a party to the proceedings.

13           THE COURT:  Interesting.

14           Okay.  Mr. Matz, anything in response?

15           MR. MATZ:  Yes, your Honor, very quickly.

16           So the first point is that we appreciate Mr. Burgo's

17   agreement that it would be appropriate for us to submit a brief

18   opposing their motion for a stay, which we think is the fair

19   thing to do, given their tardiness in filing their motion.

20           I guess the second point I'd make is, it's interesting

21   that they knew about the World Trade Center case, but declined

22   to brief it to the Court or identify it in their motion.  In

23   that opinion, the court expressly said that it wasn't deciding,

24   and wasn't relying upon, the jurisdictional and immunity

25   determinations that Mr. Burgo just identified in an effort to

1    distinguish the case, and, instead, the World Trade Center

2    court pretty clearly indicated that it was not making,

3    ultimately, a decision, as Mr. Burgo put it, about restoring

4    jurisdiction to the district court to proceed, but was, rather,

5    just applying the ordinary state factors rather than some kind

6    of formalistic tests to determine whether or not it was

7    appropriate for district court proceedings to continue during

8    the pendency of that interlocutory appeal.

9           And, ultimately, we think that that's exactly what

10   ought to happen here, that, rather than apply some kind of

11   formalistic jurisdictional analysis, it makes a lot more sense

12   to think of -- to address the question of a stay of discovery,

13   and particularly of document discovery, which has already begun

14   and in which Mr. Trump's counsel have already participated.  We

15   think it makes a lot more sense to think of that through the

16   lens of the ordinary stay factors.  And as we'll explain in our

17   briefs, viewed through that lens, we think that all four of the

18   factors cut quite strongly in favor at least denying a stay as

19   to document discovery while the appeal proceeds, and then

20   revisiting that question down the line at an appropriate point,

21   if one arises, before the Second Circuit reaches a disposition

22   of the appeal.

23           THE COURT:  Is there any issue of whether there's been

24   a waiver?

25           MR. MATZ:  Your Honor, a waiver of their right to seek

1  a stay in light of the fact that they have already undertaken

2  document and other discovery proceedings in the state court

3  against Ms. Carroll?

4          THE COURT:  Not to mention of any right to appeal.

5          MR. MATZ:  Well, you know, it's sort of peculiar, your

6  Honor — and this is something that we are looking into —

7  Mr. Trump and his private counsel did not involve themselves in

8  the proceedings surrounding the Justice Department's motion to

9  substitute.  And, of course, in those proceedings, the Justice

10  Department itself waived significant parts of their argument

11  rather than allow Ms. Carroll an opportunity to be heard.  And

12  so we do believe that there are, at least potentially,

13  significant waiver issues arising out of that procedural course

14  of conduct, in addition to whatever waiver might be thought to

15  result from the fact that even after they had unsuccessfully

16  attempted to assert an immunity defense in the state court,

17  rather than take an immediate appeal of that in the state

18  courts, Mr. Trump and his attorneys on the call here actively

19  engaged in discovery and served intrusive discovery requests on

20  our client.  And so for them to come to the Court now, and

21  throw up their hands and say, your Honor, it'd be crazy to

22  allow anything to happen while the appeal proceeds seems to us

23  rather improbable.

24          MR. BURGO:  Your Honor, if I could just briefly

25  respond to that?  This is Paul Burgo.

1          I think in federal court, it's pretty generally

2     accepted that following a notice of removal, no discovery is

3     allowed prior to the 26(f) conference.  The Rule 26(b) states

4     that, and courts recognize that no discovery can continue until

5     the 26(f) conference.  So, I think discovery in the state

6     court, to the limited extent that it occurred, is more or less

7     irrelevant here and certainly cannot constitute waiver.

8          There also can't be a waiver of the right to appeal

9     under these circumstances.  That right to appeal is more or

10    less sacred, it was filed within the requisite time frame, and

11    it was proper.  And I think the fact that both the President

12    individually and the Department of Justice filed notices of

13    appeal establishes that all parties thought it was proper.  My

14    understanding is that they are not here today because of your

15    Honor's order, which made very clear that the Court would like

16    individual counsel to appear before the district court

17    following your Honor's ruling, and we're all respecting that

18    order, of course, and proceeding accordingly.

19         To briefly respond about that World Trade Center

20    point, to defend ourselves, we didn't cite it because it's

21    simply not relevant here.  It's not a Westfall Act case.  The

22    Second Circuit did, in fact, grant a stay.  The grounds for

23    that stay is that there was an arguable basis for immunity --

24         THE COURT:  I think you're repeating yourself now.

25         MR. BURGO:  Yes, fair enough.  But I just wanted to

1   make clear that we didn't cite that case to the Court because

2   it simply isn't relevant, and there certainly was no trying to

3   hide any ball here.  There are many, many cases that we could

4   have cited that we also didn't cite, but that also support our

5   case.

6          THE COURT:  Okay.

7          Mr. Matz, when do you want to submit your papers?

8          MR. MATZ:  Your Honor, we respectfully suggest next

9   Thursday.

10         THE COURT:  Okay.  That's December 17th?  Is that what

11  it is?

12         MR. MATZ:  That is proof that I should have my

13  calendar open when I propose a date.

14         Yes, it is the 17th, your Honor.

15         THE COURT:  Okay.

16         And, Mr. Burgo, do you want an opportunity to reply?

17         MR. BURGO:  Yes, we would appreciate that, your Honor.

18         THE COURT:  Let's have that by December 21st.

19         Now, Mr. Burgo, when do you propose to file your brief

20  in the Second Circuit?

21         MR. BURGO:  We have a few days to set the deadline for

22  our briefing yet, and so we're still conferring, but we expect

23  to do so expeditiously.

24         THE COURT:  Define "expeditiously."

25         MR. BURGO:  Well, this is the point where we need to

1    discuss further with the Department of Justice, as we would

2    like to coordinate and file it on the same date, but --

3              THE COURT:  I think it's very much in your interests

4    for that to happen soon.

5              MR. BURGO:  Yes, your Honor.

6              THE COURT:  Very soon.

7              Okay.  Anything else?

8              MR. MATZ:  Nothing from the plaintiff, your Honor.

9              THE COURT:  Fine.

10             MR. BURGO:  No.  Thank you for your time.

11             THE COURT:  Thank you.

12                              *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25