UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>                         Plaintiff,<br><br>      v.<br><br>DONALD J. TRUMP,<br>  in his personal capacity,<br><br>                         Defendant. | Case No. 1:20-cv-7311 (LAK) |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT DONALD J. TRUMP'S MOTION TO STAY PENDING APPEAL**

Roberta A. Kaplan
Joshua Matz
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Counsel to Plaintiff E. Jean Carroll*

**INTRODUCTION**

President Trump's motion to stay proceedings pending appeal is the latest entry in his long list of stall tactics. Like all his earlier efforts, it too should fail. Under binding Second Circuit law, this Court has jurisdiction to decide whether a stay is warranted. And all four factors relevant to that determination cut against President Trump's position: he is not likely to succeed on the merits of his appeal; he cannot credibly claim to suffer irreparable harm when he has already initiated the document discovery process and engaged in procedural chicanery; further delay would injure Ms. Carroll; and the public interest would be ill-served by yet another stay. Accordingly, Ms. Carroll should be allowed to proceed with document discovery while President Trump seeks review of this Court's decision that he must answer under the law for his own personal misconduct.

**ARGUMENT**

Second Circuit precedent forecloses President Trump's contention that this Court lacks jurisdiction to proceed with document discovery. *See In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Under that same precedent, the correct analytical framework is the familiar, four-factor standard for a stay pending appeal. And an application of that standard confirms that the Court should allow document discovery to continue while President Trump and the Department of Justice pursue their interlocutory appeals in the Second Circuit.

**I.     President Trump Has No Absolute Right to a Stay Pending Appeal**

Relying on *Griggs v. Provident Consumer Discount Co.*, President Trump contends that his filing of an interlocutory appeal divested this Court of jurisdiction over "those aspects of the case involved in the appeal." 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982). And in his view, that rule require a complete stay of proceedings because "all 'aspects of the case' are 'involved in the appeal.'" Stay Mot. at 1. In an effort to support this view, President Trump cites cases that had

1

nothing to do with stays or district court jurisdiction, but that instead addressed the underlying question of when to allow interlocutory appeals. *See Osborn v. Haley*, 549 U.S. 225, 127 S. Ct. 881 (2007) (allowing interlocutory appeals from denials of Westfall Act substitution); *Wuterich v. Murtha*, 562 F.3d 375, 378 (D.C. Cir. 2009) (same); *see also Behrens v. Pelletier*, 516 U.S. 299, 301, 116 S. Ct. 834, 836 (1996) (right to appeal denial of qualified immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 513, 105 S. Ct. 2806, 2807 (1985) (same); *Locurto v. Safir*, 264 F.3d 154, 162 (2d Cir. 2001) (same). President Trump also cites *Harlow v. Fitzgerald*, which is even further afield and simply defined the standard for qualified immunity. *See* 457 U.S. 800, 817-19, 102 S. Ct. 2727, 2738-39 (1982).[1]

The fundamental flaw in President Trump's position is that "[t]he divestiture of jurisdiction rule is . . . not a per se rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). "It is a judicially crafted rule" grounded in "concerns of efficiency." *Id.* (citation omitted). In *In re World Trade Center Disaster Site Litigation*, the Second Circuit held that whether district court proceedings should continue pending an appeal from a denial of immunity is guided by the same four factors that usually apply to stays pending appeal—likelihood of success on the merits, irreparable harm, balance of hardships, and the public interest. *See* 503 F.3d at 170. Applying those well-established factors to the case before it, *World Trade Center* vacated a previously entered stay because after full briefing there appeared to be a "lesser probability" that the defendants would ultimately succeed on the merits of their immunity claims. *Id.*

---

[1] President Trump also cites several district court cases that granted stays pending appeal following the denial of qualified immunity. *See Edrei v. City of New York*, No. 16 Civ. 1652, 2017 WL 3822744, at *3 (S.D.N.Y. Aug. 31, 2017) (Sweet, J.); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp. 3d 556, 558-61 (S.D.N.Y. 2014) (Sweet, J.) (denying a motion to compel discovery); *Garcia v. Bloomberg*, No. 11 Civ. 6957, 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) (Rakoff, J.). None of these cases considers the Second Circuit's decision in *World Trade Center*. The summary order in *Abrahams v. Inc. Village of Hempstead* did not consider *World Trade Center* either; it stated only that the district court lacked jurisdiction to dismiss a complaint where an appeal from the denial of a motion to dismiss that same complaint on qualified immunity grounds remained pending. 390 F. App'x 4, 5 (2d Cir. 2010).

The defendants in *World Trade Center*, like President Trump here, argued that the district court lacked jurisdiction while the Second Circuit considered an appeal from the denial of an immunity defense. *See id.* at 169-70. But the Second Circuit made clear that, in an immunity case, that argument does not necessitate an inquiry separate from the traditional four-factor test. *Id.* at 170. Indeed, the Second Circuit undertook no stand-alone "jurisdictional" analysis in its *World Trade Center* decision and, by virtue of finding that a stay was no longer warranted under the four-factor test, the Circuit held that the district court had jurisdiction to proceed. *Id.* at 170-71. President Trump's formalistic arguments about jurisdiction are thus foreclosed.[2] *See id.*; *see also Loria v. Gorman*, 306 F.3d 1271, 1279-80 (2d Cir. 2002) (recognizing that the district court had denied motions for a stay pending appeal of an order denying a qualified immunity defense).

## II.  A Stay Pending Appeal Is Not Warranted

An application of the *World Trade Center* factors to the unique circumstances of this case confirms that the Court should deny President Trump's request for a complete stay of proceedings.

### A.  President Trump Is Unlikely to Succeed on the Merits of his Appeal

For all the reasons given in this Court's opinion denying the motion to substitute the United States as defendant, President Trump has no likelihood of success on the merits. *See* Doc. No. 32 ("Op."). That is particularly true in light of the fact that President Trump must show that he is likely to succeed in overturning each and every one of the independent grounds on which this Court concluded that Westfall Act substitution is forbidden. *See In re Albicocco*, No. 06 Civ. 3409,

---

[2] President Trump cites only a single case that grapples with *World Trade Center*: namely, Judge Sweet's decision in *Bradley v. Jusino*, No. 04 Civ. 8411, 2009 WL 1403891 (S.D.N.Y. May 18, 2009). There, Judge Sweet wrote off *World Trade Center* in a footnote, suggesting that it was "distinguishable . . . in that the Court of Appeals applied the four factors to vacate a stay granted by the Court of Appeals itself in light of the lower court's decision to proceed with pretrial proceedings." *Id.* at *1 n.2. But as the Second Circuit itself recognized in *World Trade Center*, the factors for deciding whether to grant a stay or vacate a stay are the "same." 503 F.3d at 170. If anything, the Second Circuit's recognition that evaluation of those factors may change over the course of a litigation cuts against President Trump's suggestion that *Griggs* automatically entitles him to a stay of district court proceedings.

2006 WL 2620464, at *2 (E.D.N.Y. Sept. 13, 2006) (Bianco, J.); *see also* Op. at 14-33 (holding that the applicable provisions of the FTCA and the Westfall Act do not cover the President at all); *id.* at 41-45 (holding that, even if the FTCA and Westfall Act do cover the President, President Trump is not covered here because he fails the master-servant requirement of *respondeat superior* liability); *id.* at 45-57 (holding that, even if the FTCA and Westfall Act do cover the President, President Trump is not covered here because he fails the scope-of-employment requirement of *respondeat superior* liability); *id.* at 57-59 (holding that the same conclusions would follow if New York rather than D.C. *respondeat superior* law supplied the relevant test for certification).[3]

### B. President Trump Will Not Be Irreparably Harmed By Document Discovery

President Trump cannot establish irreparable harm sufficient to require a stay merely because he has appealed the denial of an immunity defense. After all, the defendants in *World Trade Center* stood in the same shoes, but failed to persuade the Second Circuit that they were entitled to a stay. *See* 503 F.3d at 169. And whatever weight the irreparable harm factor might usually bear in immunity cases is weakened by several unique circumstances of this case.

*First*, President Trump has *already* engaged in substantial document discovery. In state court—where he was represented by the same counsel—President Trump served extensive document requests and interrogatories on Ms. Carroll (even as he stonewalled in responding to the requests that Ms. Carroll had served on him). Moreover, President Trump made a choice to serve all this document discovery at a time when he could, instead, have pursued an interlocutory appeal in state court from the denial of his absolute immunity arguments or sought removal to pursue his

---

[3] In addition, President Trump's odds of success on appeal are limited by the fact that precious few arguments remain for appeal. All of the arguments for substitution raised for the first time in the United States' reply brief were knowingly, expressly, and unequivocally waived in an on-the-record proceeding. Op. at 17 n.48. And President Trump himself declined to either participate in those proceedings or to seek leave to present any arguments after the United States deliberately decided to waive the many new arguments it had raised for the first time in its reply brief.

4

novel Westfall Act theories in federal court. Given that President Trump chose to initiate document discovery rather than press his position on any immunity defense, he should not be heard to claim that it would be "irreparable harm" to continue that process. It is gamesmanship rather than injury for President Trump to voluntarily seek intrusive discovery into Ms. Carroll in state court, but now to claim (having lost on his immunity arguments) that further discovery is forbidden. *See New York v. U.S. Dep't of Commerce*, 339 F. Supp. 3d 144, 149 (S.D.N.Y. 2018) (delay in seeking a stay, during which the parties conducted discovery, "belies Defendants' conclusory assertions of irreparable harm"). Moreover, this case is unlikely to involve many documents and any burden on President Trump's official duties will end when he leaves office in a few weeks.[4]

*Second*, as noted, Ms. Carroll would agree that discovery should be limited to documents (including interrogatories). Depositions can wait until the Second Circuit has decided the appeal, as can Ms. Carroll's request for a DNA sample for comparison against the genetic material retrieved from the dress that she was wearing when Trump sexually assaulted her. Carrying on with the document discovery process that began months ago in state court should not impose a significant burden on President Trump and his many private lawyers.

*Finally*, President Trump's broader pattern of obstinacy and stonewalling throughout this litigation undermines any claim of irreparable injury. At every turn, President Trump has waited until the "eleventh hour" to raise supposedly dispositive arguments that have always been available to him. *See Hirschfeld v. Bd. of Elec. in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993). He refused to accept service, Doc. No. 6-4 at 38-51, filed a baseless motion contesting personal jurisdiction, *id.* at 72-77, sought a stay in light of a case he had previously argued was not related, *id.* at 64-65, 104-05, failed in his obligation to respond to Ms. Carroll's discovery requests, Doc.

---

[4] President Trump may take the position that he has in fact been re-elected to a second term in office. The Court need not indulge such dangerous nonsense in deciding whether to stay proceedings here.

5

Nos. 16-2 to 16-9, and (without any explanation whatsoever for his delay) waited until ten months into the case for the White House to prevail upon the Justice Department to seek an improper Westfall Act substitution. President Trump's delay then continued through the filing of this very motion. Even though his asserted basis for seeking a stay should have been known to him for weeks, he requested a stay by email less than 48 hours before the December 11, 2020 hearing and—in clear violation of guidance from chambers to promptly submit that request on the docket—did not file his written motion until 7:58pm on December 10, 2020. Accordingly, any irreparable harm that President Trump now claims to suffer from participation in this case is very much a reflection and result of his own improper stall tactics. A stay is ultimately a form of equitable relief and should not be awarded to a litigant who approaches this Court with unclean hands.

### C. A Stay Pending Appeal Would Injure Ms. Carroll

With each passing day that President Trump's defamatory statements about Ms. Carroll evade judicial adjudication, Ms. Carroll suffers additional reputational and psychological injury. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (defamation exposes an individual to "public hatred, shame . . . degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons"); Robert D. Sack, *Sack on Defamation: Libel, Slander and Related Problems* § 10:1, at 10-2 (5th ed. 2017) (defamatory words "can cause severe and lasting harm" that can continue until a plaintiff has her opportunity to prove falsity). Unlike in the typical tort case where a plaintiff seeks to recover only for past harm, continued delay in the resolution of this matter will compound and exacerbate Ms. Carroll's injuries even further.

Moreover, discovery in this case "has been an uphill battle from the beginning." *Daniels v. City of New York*, 138 F. Supp. 2d 562, 565 (S.D.N.Y. 2001). "To now postpone production of

key discovery in the hope of obtaining an unlikely reversal would only serve to further delay the progress of this lawsuit. Such delay, in and of itself, would constitute substantial injury to plaintiffs." *Id.* For that reason, too, Ms. Carroll deserves the opportunity to move her case forward.

### D. The Public Interest Weighs Against a Stay

Finally, the public interest weighs strongly against a complete stay pending appeal. By preventing President Trump's procedural tactics from further delaying Ms. Carroll's case, this Court would affirm that judicial proceedings can afford justice—rather than years of procedural quagmire—to victims of sexual assault who seek redress against even powerful wrongdoers. By contrast, the public has no interest in allowing President Trump to put this case off any longer.

### CONCLUSION

President Trump's motion for a stay pending appeal should be denied.

Dated: New York, New York
December 17, 2020

Respectfully submitted,

Roberta A. Kaplan
Joshua Matz
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Counsel to Plaintiff E. Jean Carroll*