M2m3carm

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   E. JEAN CARROLL,

4                    Plaintiff,              New York, N.Y.

5            v.                              20 CV 7311 (LAK)

6   DONALD J. TRUMP,

7                    Defendant.

8   ------------------------------x         Motion

9                                           February 22, 2022
                                            4:00 p.m.
10
    Before:
11
                         HON. LEWIS A. KAPLAN,
12
                                            District Judge
13

14                            APPEARANCES
15

16
    KAPLAN HECKER & FINK, LLP
17       Attorneys for Plaintiff
    BY:  ROBERTA A. KAPLAN
18       JOSHUA A. MATZ
         ADAM BRESGI
19

20  HABBA MADAIO & ASSOCIATES, LLP
         Attorneys for Defendant
21  BY:  ALINA HABBA
         MICHAEL MADAIO
22

23

24

25

M2m3carm

1          THE DEPUTY CLERK:  E. Jean Carroll v. Donald J. Trump.

2          Counsel for movant, are you ready?

3          MS. HABBA:  Yes, your Honor.  Alina Habba representing

4    Donald J. Trump.  I'm here with co-counsel Michael Madaio.

5          THE COURT:  Good afternoon.

6          THE DEPUTY CLERK:  Counsel for respondent, are you

7    ready?

8          MS. KAPLAN:  We are.  Roberta Hecker.  I'm here with

9    my colleagues Adam Matz and Adam Bresgi, and my client E. Jean

10   Carroll.

11         THE COURT:  Good afternoon, everyone.  For the benefit

12   of people who are listening on the telephone connection, it is

13   unlawful to record or broadcast in any way this proceeding.

14         This is your motion, Ms. Habba.  I'll hear you.

15         MS. HABBA:  Yes, your Honor.

16         THE COURT:  I'd appreciate it if you'd go to the

17   lectern.

18         MS. HABBA:  Sure.

19         Thank you, your Honor.

20         In November 2020, New York significantly expanded its

21   anti-SLAPP law.  The law protects defendants in legal actions

22   involving public petition and participation.  Under the revised

23   law, a defendant is entitled to additional rights and remedies

24   including attorneys' fees, costs, and punitive damages, among

25   other things.

M2m3carm

1          Here we have requested leave to amend our answer to

2     include the new broader anti-SLAPP law and preserve defendant's

3     rights accordingly.

4          Courts have regularly applied an extremely flexible

5     standard of freely grant leave to amend an answer when justice

6     so requires, absent a showing of undue delay, bad faith,

7     futility or prejudice to the plaintiff.  In this circumstance,

8     none of these exist.

9          THE COURT:  Why isn't amendment futile?

10          MS. HABBA:  Well, your Honor, in this case --

11          THE COURT:  Isn't it true that every court that has

12     yet ruled on the question has found this New York anti-SLAPP

13     law as amended to be inapplicable in federal courts?

14          MS. HABBA:  No, your Honor.  In the *Goldman* case as

15     well as the *Harris* case they found that this could be applied

16     in federal courts.

17          THE COURT:  In all respects?

18          MS. HABBA:  Yes.  In all respects.  And it was not

19     futile.

20          THE COURT:  What about all the other cases?

21          MS. HABBA:  This is the thing with this, your Honor.

22     The New York anti-SLAPP law was put in November 2020.  We have

23     cases that go both ways, but the more recent cases do apply it

24     in federal court.  I also think we should remember that this

25     case started in state court where it is applied.  And was

M2m3carm

```
 1   removed --
 2              THE COURT:  That's of absolutely no significance at
 3   all.  You are in federal court now.
 4              MS. HABBA:  Correct.  And there are cases that apply.
 5              THE COURT:  In state court, your time for filing a
 6   jury demand is when you file a statement of readiness.  In
 7   federal court, it's got to be filed much, much, much earlier.
 8   Case gets removed from state court to federal court, you are
 9   subject to the federal rule.
10              MS. HABBA:  Your Honor, there's a couple of things you
11   mentioned.  First in terms of timing, we are very early here in
12   this litigation.  There has not been discovery exchanged, there
13   have not been depositions.  It is not futile because even if
14   you take away the motion to dismiss or a possible motion for
15   summary judgment, we get attorneys' fees when we go to trial
16   under the anti-SLAPP law.  So to prejudice us --
17              THE COURT:  Maybe.
18              MS. HABBA:  -- by not allowing it in at this point.
19              THE COURT:  Maybe.  Maybe you don't.  Maybe you lose
20   at trial.
21              MS. HABBA:  Which is fine, and then she won't be
22   paying our attorneys' fees.  That's why I say it is not futile
23   and we get to preserve our interests at this point.  We want
24   the ability to have those available to us.
25              THE COURT:  The proposition I'm putting to you is
```

M2m3carm

| | |
|---|---|
| 1 | there is very substantial authority for the proposition that |
| 2 | that statute does not apply in federal court.  Exclamation |
| 3 | point.  So what are you preserving? |
| 4 | MS. HABBA:  I disagree with you, your Honor.  As I |
| 5 | said, *Goldman* and *Harris* did apply it in federal court. |
| 6 | THE COURT:  Hmm-hmm, and how many others said no? |
| 7 | MS. HABBA:  I don't have the exact number, your Honor. |
| 8 | THE COURT:  It is a lot. |
| 9 | MS. HABBA:  Regardless, I don't see how amending our |
| 10 | answer at this point prejudices anyone, especially -- |
| 11 | THE COURT:  Except that then the plaintiff has to |
| 12 | litigate with you over the applicability of discrete provisions |
| 13 | of the anti-SLAPP law. |
| 14 | Are you saying, for example, that if I allow leave to |
| 15 | amend, you won't seek to stay all proceedings here until the |
| 16 | anti-SLAPP law claim is resolved?  Are you committing to that |
| 17 | now? |
| 18 | MS. HABBA:  No, because that's not procedurally how |
| 19 | this would work.  We would -- |
| 20 | THE COURT:  That's the point. |
| 21 | MS. HABBA:  Yes, but she would have an opportunity to |
| 22 | be heard on each of those motions at that time.  We can |
| 23 | litigate it and argue those points. |
| 24 | THE COURT:  She's having an opportunity to be heard on |
| 25 | it now.  So are you. |

M2m3carm

1          MS. HABBA:  All due respect, your Honor, all I am

2     asking to be heard on is leave to amend the answer.  Not the

3     applicability of the ins and outs of anti-SLAPP.

4          THE COURT:  As you said yourself, in order to get

5     leave, you have to show that the amendment would not be futile.

6     And I'm saying to you that if I conclude that this statute

7     can't be applied in federal court, amendment would be futile by

8     definition.  Isn't that true?

9          MS. HABBA:  That is their argument, your Honor, yes.

10    But --

11         THE COURT:  If I conclude that that argument is

12    correct, then it would be futile and I don't have to consider

13    anything else.

14         MS. HABBA:  But I believe that you're prejudicing my

15    client by not allowing us the opportunity to go in --

16         THE COURT:  How so?

17         MS. HABBA:  Because we haven't delved into and it is

18    not ripe at this point to delve into an argument --

19         THE COURT:  How can I decide futility without deciding

20    those questions?

21         MS. HABBA:  Basically, your Honor, I think you're

22    thinking it more in terms of how the California law was

23    applied.

24         THE COURT:  No, I'm not.  I'm thinking of how in terms

25    of the plaintiff is urging me to decide it here.

M2m3carm

1          MS. HABBA:  But plaintiff's resorting to misstating

2     and misapplying the law in an attempt to morph a routine

3     procedural issue into an examination of the merits of every

4     claim, which we're not ready to do yet.

5          THE COURT:  Except that when you moved for leave to

6     amend, it became your obligation, if challenged, to defeat

7     their argument that the amendment would be futile.

8          And I could cite you I think something of the nature,

9     because I asked my law clerk to look for them, and I stopped

10    her when we lost count, at least dozens and probably hundreds

11    of cases in the Second Circuit and in this court that decided

12    the merits of the legal sufficiency of a proposed amended

13    complaint or counterclaim on the issue of leave to amend,

14    because it is essential to deciding whether the amendment would

15    be futile.

16         MS. HABBA:  Judge, if I may.  In the *Goldman* case, and

17    I would like to read an excerpt of it because I think it's on

18    point with what you are saying.

19         Mrs. Reddington simply seeks to amend her pleading to

20    include anti-SLAPP counterclaim and affirmative defense.  There

21    was not an invocation of special summary judgment procedures

22    and they offered no argument as to why a litigant would be

23    unable to bring an anti-SLAPP counterclaim at all, merely

24    because a portion of the anti-SLAPP statute containing special

25    summary judgment rules asserted conflicts with Rule 56.

M2m3carm

1          THE COURT:  The argument here is a lot broader.

2          MS. HABBA:  I'm not following why it's broader, your

3    Honor.

4          THE COURT:  As I understand the argument is the whole

5    thing can't be applied in federal court.  Period.  Exclamation

6    point.

7          MS. HABBA:  But I have case law that says the opposite

8    in New York.

9          THE COURT:  I may or may not agree with it.

10          MS. HABBA:  You have that right.  I agree with the

11    cases that do.

12          THE COURT:  I'm glad.

13          Answer this question.  Let's get away for the moment

14    from the special procedural provisions.  One respect in which

15    this statute is debatable, to say the least, is that it

16    purports to set its own standard for what a plaintiff has to

17    have on day one of a case that is otherwise covered by the law.

18    Right?  Higher than in other cases, isn't that true?

19          MS. HABBA:  I don't follow what you are saying.

20          THE COURT:  You don't follow.

21          MS. HABBA:  Is the Court to say in the first case -- I

22    don't think amending an answer puts her in a position where she

23    has to completely argue her complaint.  That's later in the

24    litigation.  We are not there yet, your Honor.

25          THE COURT:  I understand your timing argument.  That's

M2m3carm

1    not what I'm talking about.

2              Your position is that the SLAPP law applies to this

3    case, proposition one.  Yes?

4              MS. HABBA:  My position is that we should be able to

5    preserve the right to bring up the SLAPP law defenses when the

6    time is appropriate, yes.

7              THE COURT:  Regardless of whether as a matter of law

8    you have any rights at all.

9              MS. HABBA:  I have rights, but I think this is

10   applicable here.  It is exactly for this.  When somebody

11   mentions something about a public figure, and she has admitted

12   she is also a public figure in this limited purpose, you are

13   allowed under the First Amendment to respond to those claims.

14             THE COURT:  Nobody is talking about that.

15             MS. HABBA:  That's anti-SLAPP.

16             THE COURT:  The statute purports to change the

17   standard and require a plaintiff, if challenged, to demonstrate

18   without the benefit of discovery even that the claim has a

19   substantial basis in fact and law, failing which, the case gets

20   thrown out, and there is liability for damages.  Right?

21             MS. HABBA:  If you apply anti-SLAPP to a motion, if we

22   file a motion, yes, that would be the standard, substantial law

23   of fact.

24             THE COURT:  All right.  Now, Rule 11 of the Federal

25   Rules of Civil Procedure governs the standard that has to be

M2m3carm

1    met in a federal case with respect to a pleading.  It has to be

2    supported by reasonable basis in law and fact, to briefly

3    summarize it without quoting it all.  Right?

4              MS. HABBA:  Yes.

5              THE COURT:  That standard is lower than you claim the

6    anti-SLAPP statute requires, right?

7              MS. HABBA:  Correct.

8              THE COURT:  Now, in *Pappas v. Philip Morris* just a

9    couple of years ago, the Second Circuit reiterated the

10   principle of the *Erie* case and *Hanna v. Plumer* in the Supreme

11   Court, both of them, and said, not surprisingly, to anyone who

12   has been to law school, in a case in federal court where there

13   is a conflict between state and federal law, federal courts

14   apply federal law, not the state law.  True?  You agree so far?

15             MS. HABBA:  Yes.

16             THE COURT:  And according to the Second Circuit,

17   quoting *Hanna v. Plumer*, procedure is the legal process for

18   enforcing rights and duties recognized by substantive law and

19   for justly administering remedy and redress for disregard or

20   infraction of them.

21             That's what it says, quoting the Supreme Court.

22             Now, how can you reconcile the substantial basis in

23   law and fact standard purportedly created by the New York

24   statute with applying it -- let's put it a different way --

25   with the Rule 11 standard which is more forgiving, but which

M2m3carm

1   also creates remedies for failure to comply?

2              MS. HABBA:  Your Honor, I think that every litigant is

3   entitled to have all options, both federal options that you

4   mention, that we are entitled to if we did not have anti-SLAPP.

5   And in this case, where anti-SLAPP is applicable, we should be

6   able if we so choose to use those remedies.

7              THE COURT:  Well, I understand that's your position.

8   I think it comes as a huge surprise to the Supreme Court and

9   the Second Circuit.

10             MS. HABBA:  Other courts themselves have found this in

11  this exact situation and stated the provision creating a cause

12  of action also makes it clear that an anti-SLAPP litigant may

13  obtain costs and attorneys' fees without using these

14  procedures.

15             THE COURT:  What court's language are you quoting

16  there?

17             MS. HABBA:  I'm quoting the Eastern District of New

18  York, your Honor.

19             THE COURT:  Last time I looked, the commission on my

20  wall is every bit as good on the commission on the wall of that

21  judge.  Right?

22             MS. HABBA:  You're right, your Honor.

23             THE COURT:  I'm clearly not bound by that, right?

24             MS. HABBA:  Nope.

25             THE COURT:  All right.  So let's go on from there.

M2m3carm

```
 1   Let's assume for the sake of argument that I gave you leave to
 2   amend.  Ms. Carroll would have to respond to that pleading,
 3   right?
 4              MS. HABBA:  To the amended answer?
 5              THE COURT:  And counterclaim.
 6              MS. HABBA:  And the counterclaim, yes.
 7              THE COURT:  Would you agree that her answer to that
 8   pleading, if you're right about the SLAPP law applying in
 9   federal court, would have to include any compulsory
10   counterclaim she might have?
11              MS. HABBA:  Correct.
12              THE COURT:  And wouldn't such a compulsory
13   counterclaim, if she chose to assert it, include a counterclaim
14   against Mr. Trump asserting that your assertion of the SLAPP
15   standard applies to his pleading?
16              MS. HABBA:  She absolutely can assert that.
17              THE COURT:  Okay.
18              MS. HABBA:  That would be right.
19              THE COURT:  If you're right about this applying in
20   federal court, then isn't what happens this.  In order to
21   decide whether she has a substantial basis in order to respond
22   to your motion, I also have to decide whether Mr. Trump has a
23   substantial basis for asserting that she lacked a substantial
24   basis.  Isn't that true?
25              MS. HABBA:  No, your Honor.  At this point you just
```

M2m3carm

| | |
|---|---|
| 1 | have to grant leave to amend the answer, and then when we file |
| 2 | a motion for summary judgment or a motion to dismiss, we will |
| 3 | go into the merits of the case, and those claims. |
| 4 | THE COURT:  But, even before that, she could file a |
| 5 | motion, if you're right about the SLAPP statute, to stay your |
| 6 | proceedings and in any case to proceed with her anti-SLAPP |
| 7 | claim against Mr. Trump. |
| 8 | MS. HABBA:  How could she have a defense for |
| 9 | anti-SLAPP when she is the plaintiff in this case?  I'm not |
| 10 | following.  Against my counterclaim, yes. |
| 11 | THE COURT:  Against your counterclaim.  That's exactly |
| 12 | what I am talking about. |
| 13 | MS. HABBA:  Which is actually -- thank you for |
| 14 | saying -- I feel brings up the point this in no way prejudices |
| 15 | Ms. Carroll and her counsel. |
| 16 | THE COURT:  So if you're right about this |
| 17 | applicability of the statute, in order to decide who had a |
| 18 | substantial basis, we pretty much have to decide the merits of |
| 19 | the underlying case.  Don't we? |
| 20 | MS. HABBA:  I don't think so, your Honor, I don't |
| 21 | think so. |
| 22 | THE COURT:  Except that what you would have |
| 23 | accomplished by it is that if she prevailed, she would be |
| 24 | entitled not only potentially for damages, to get damages from |
| 25 | Mr. Trump, but to cause him to pay her attorneys' fees; yes? |

M2m3carm

| | |
|---|---|
| 1 | MS. HABBA:  Absolutely.  And if that is what happens, |
| 2 | that is what happens.  That is what litigation is.  It is about |
| 3 | giving us the right to litigate these issues.  That is all I'm |
| 4 | asking today.  Not to get into the merits. |
| 5 | THE COURT:  I know you want not to get into the |
| 6 | merits.  I do understand that.  I've got that on board. |
| 7 | Repetition isn't going to get it any more firmly on board.  I |
| 8 | question whether you have the right to do what you are seeking |
| 9 | to do.  Because it seems to me it is entirely inconsistent with |
| 10 | the notion of futility. |
| 11 | Now, it's lovely that you have, you know, a minority |
| 12 | view among my colleagues that you are entitled to do that.  I'd |
| 13 | argue it too if I were in your shoes, but it may not be the way |
| 14 | I resolve this matter. |
| 15 | MS. HABBA:  Okay, your Honor. |
| 16 | THE COURT:  Okay.  Anything else you want to say on |
| 17 | the motion? |
| 18 | MS. HABBA:  I did want to mention the timing issue |
| 19 | that counsel for Ms. Carroll brought up. |
| 20 | THE COURT:  Go ahead. |
| 21 | MS. HABBA:  Thank you.  Well, despite the misleading |
| 22 | statements by plaintiff upon examination of procedural |
| 23 | history -- |
| 24 | THE COURT:  If you spoke any faster, it would be |
| 25 | simply a blur and it's close already. |

M2m3carm

1          MS. HABBA:  Okay.  The delay here that she claims

2     exists does not exist.  He was the sitting president, we filed

3     this a year after the amendment.  He was a sitting president

4     for a portion of that.  And as the Court knows, the Department

5     of Justice stepped in and we were waiting on the Second

6     Circuit, which we're still waiting on, a decision which would

7     effectively dismiss Ms. Carroll's case.

8          THE COURT:  How is that an excuse?

9          MS. HABBA:  I'm not giving an excuse.  I am going

10    through the procedure to respond to their papers on the record.

11         THE COURT:  But, look, if it's not an excuse, then it

12    doesn't matter.  The fact of the matter is, you didn't file

13    this application to amend for something like 14 months after

14    the statute was amended and became effective.  That's the delay

15    they're complaining about.  And to tell me that he was the

16    sitting president, I don't see how it excuses the delay.

17         MS. HABBA:  We can't litigate when there is a sitting

18    president, your Honor, that's the first thing.

19         THE COURT:  You can't litigate while you are a sitting

20    president?  Are you kidding?

21         MS. HABBA:  When she filed it, it was stayed until --

22    and then the Department of Justice stepped.

23         THE COURT:  When was it stayed?

24         MS. HABBA:  From January until November, I can look at

25    the procedural history, your Honor.

M2m3carm

```
 1          THE COURT:  When was it removed to this court?

 2          MS. HABBA:  When the Department of Justice stepped in,

 3   which was a few months -- let's see.  Even if you take that

 4   away, and I'm sorry I don't have the date right in front of me.

 5   My co-counsel can give it to me.  But, we are talking about a

 6   year.  In New York, leave to amend is freely given.  A year is

 7   not a long time.

 8          THE COURT:  Sometimes.

 9          MS. HABBA:  Okay.  But in this case, we had a few

10   months where the Department of Justice stepped in, the Second

11   Circuit just heard our argument, and we are waiting on that.

12   Intentionally we filed this as soon as we stepped in.

13          THE COURT:  You say you are waiting on it.

14          MS. HABBA:  We are.

15          THE COURT:  Well, you know, that's a tactical decision

16   you made.

17          MS. HABBA:  I didn't make the decision.

18          THE COURT:  Somebody did.  It doesn't matter who made

19   it.  I mean, the question is not whether you delayed unduly.

20   The question is whether your client is chargeable with an undue

21   delay.

22          MS. HABBA:  Right.  And I'm telling you that a year in

23   New York courts is not undue delay.  Courts have found in New

24   York that four years is not even a delay.

25          THE COURT:  Courts have found that periods shorter
```

M2m3carm

1    than a year is an undue delay.  Depends on the circumstances.

2          MS. HABBA:  Of course, your Honor.

3          THE COURT:  And the fact your previous counsel either

4    elected or decided not to do it is not an excuse.  The Second

5    Circuit has said that.

6          MS. HABBA:  Your Honor, if I could just give you a

7    public policy argument in closing.

8          The defendant is perfectly willing to argue as to the

9    applicability of each and every aspect of the law at the

10   appropriate time.  But a ruling to the contrary --

11         THE COURT:  This is your time.

12         MS. HABBA:  Okay, your Honor.  But a ruling to the

13   contrary -- this is my argument when it comes to public policy

14   here -- would be a slippery slope, which would render the

15   anti-SLAPP law toothless in federal court.  And that would

16   encourage any SLAPP case that's filed in federal court,

17   effectively people would be forum shopping.  If somebody wants

18   to file a defamation suit and I go in federal court, then I

19   know anti-SLAPP's not going to be used against me, and I am

20   going to bring my case in federal court.  That's what we would

21   like to prevent, your Honor.  New York courts should be a

22   unified system.  I understand there is a difference between the

23   federal and the state levels.

24         THE COURT:  That was a losing argument in *Erie v.*

25   *Tompkins*.

M2m3carm

1          MS. HABBA:  Your Honor, I think that we have to

2    recognize when New York State did this a year ago, there was a

3    reason.  They expanded it exactly for this reason.

4          THE COURT:  I'm sure they did.  But, if New York State

5    decides to say that we shouldn't allow people under 35 to

6    practice law in federal courts, or that we shouldn't allow

7    non-residents to practice in federal courts, or people should

8    have to post a security deposit to bring a medical malpractice

9    case, or that the standard for stockholder derivative actions

10   are different in New York, that the demand futility argument is

11   governed by different rules in New York, it doesn't affect

12   litigation in federal courts.

13         MS. HABBA:  No, your Honor.  But my argument would

14   still stand that people would forum shop and bring a federal

15   court defamation case because they can't bring the anti-SLAPP

16   defense here.

17         THE COURT:  Sometimes it is a product of a federalist

18   system.

19         MS. HABBA:  Your Honor, we respectfully --

20         THE COURT:  In state court, a dispositive motion --

21   forget about SLAPP cases -- absent a contrary order, stays

22   discovery.  Am I right in New York?

23         MS. HABBA:  Yes, your Honor.

24         THE COURT:  Federal court not so.  People do shop for

25   forums because of that rule all the time.  In state court, any

M2m3carm

1    order affecting substantial rights is immediately appealable as

2    of right.  Isn't that true?

3            MS. HABBA:  Yes.

4            THE COURT:  Federal court has a final judgment rule.

5    You can't appeal anything until the case is over, with rare

6    exceptions.  Now, do you deny that that substantially affects

7    choices of forums?

8            MS. HABBA:  No, your Honor.  I'm just raising the

9    public policy concerns that would be a result of your decision,

10   that's all.

11           THE COURT:  Well, the public policy concerns are

12   exactly the same in all of those cases.

13           MS. HABBA:  Okay, your Honor.  So, in closing we

14   respectfully request the motion to amend be granted.

15           THE COURT:  Thank you.

16           MS. HABBA:  Thank you.

17           THE COURT:  Ms. Kaplan.

18           MS. KAPLAN:  Good afternoon, your Honor.  Let me start

19   with I think the last point.

20           THE COURT:  Before we get to the last point.  Let's

21   get to something that I want to be sure about, because it's not

22   consistent with what I understand, and I'd like to see if you

23   agree with your adversary or not.

24           Was any portion of this period from the November 10,

25   2020, effective date of the amendments to the anti-SLAPP law,

M2m3carm

1    up until the removal to federal court, a period during which

2    there was a stay of proceedings in effect?

3              MS. KAPLAN:  There was a stay, your Honor.  The stay

4    that she referred to was not in federal court.  It was in state

5    court.  The stay was lifted just before defendant invoked the

6    Westfall Act to bring it here.  We had about two weeks, one or

7    two weeks of discussion about discovery, and then the case was

8    removed.  They removed it promptly upon the lifting of that

9    stay.

10             THE COURT:  When was the stay interposed in state

11   court?

12             MS. KAPLAN:  I can get you those dates, your Honor.

13   But it had to do with the application to the court of appeals

14   in the *Zervos* case as I recall.

15             THE COURT:  Was that after the effective date of the

16   SLAPP law or before?

17             MS. KAPLAN:  I think it was before, your Honor.  But

18   my colleagues will check and I'll get that you answer.

19             THE COURT:  So when you claimed an excused delay of

20   whatever it was, 12 or 14 months, I don't think you mentioned

21   that.

22             MS. KAPLAN:  No, we did not mention that.  It wasn't,

23   it wasn't more than two or three months, your Honor, but we did

24   not mention that, and for that I apologize.

25             THE COURT:  In other words, two or three of the 12 or

M2m3carm

1    14 months?

2          MS. KAPLAN:  Yes.  It was a relatively short period

3    and then the Supreme Court decided the Vance case, and

4    immediately upon the Supreme Court granting the Vance case, the

5    trial court judge in New York Supreme lifted the stay and then

6    we were here two weeks later.

7          THE COURT:  I would appreciate a joint letter from

8    counsel with the facts concerning that stay.

9          MS. KAPLAN:  We absolutely will get that to you, your

10   Honor.  It was a stay that they requested.

11         THE COURT:  Well, yes, I understand that.  But, I

12   certainly can't fault them for not bringing a motion in a

13   period in which proceedings were stayed, if those were the

14   terms of the stay.  I don't know what the terms were either.

15   It may have been a stay of discovery.  I just have no idea.  I

16   need to know what the facts are.

17         MS. KAPLAN:  They did, your Honor -- we could address

18   this in a letter too -- they did make a motion on these precise

19   grounds in the *Zervos* case in the Commercial Division back in

20   October.

21         THE COURT:  Of which year?

22         MS. KAPLAN:  October 2021.  So it was three months

23   before they made it here.  They were well aware of these

24   issues.  We could get you those papers if your Honor would like

25   them.

M2m3carm

1          THE COURT:  I think both sides should submit them

2     together.

3          MS. KAPLAN:  Absolutely.

4          THE COURT:  As a matter of record.

5          MS. KAPLAN:  The only other thing I would point out on

6     timing, your Honor, is in every single case that my friend on

7     the other side cited, every single one of those cases, the

8     applications to amend or to insert New York anti-SLAPP in the

9     case were made well before they were made here.  So in terms of

10    when people were on knowledge, either about the passage of the

11    statute or about retroactivity after Judge Rakoff issued his

12    decision, every single one of the cases she cites, even the

13    ones she says are on her side, were brought to the court's

14    attention well before December 2021 when they brought it to

15    your attention here.

16         THE COURT:  Okay.

17         MS. KAPLAN:  With respect to forum shopping, I was

18    going to start with that.  A couple of things.  One, as your

19    Honor said, *Erie* squarely deals with the forum shopping point.

20    Two, it is more than a little ironic that the party that

21    actually brought the case to federal court by invoking the

22    Westfall Act is complaining of forum shopping in federal court.

23    But, I think your Honor obviously understands those arguments.

24         In terms of futility, let me see if I can correct the

25    record.  We are not aware of any court that has applied the

M2m3carm

1   procedures of 70-a, which is the procedural aspect of this law

2   in federal court -- in the Second Circuit.  There is a Maine

3   decision that's cited applying First Circuit law under *Erie*.

4   It gets a little confusing because they are applying the New

5   York statute, but for *Erie* purposes it is First Circuit law.

6   And that First Circuit law was expressly cited and disagreed

7   with by the Second Circuit in *La Liberte* where they dealt with

8   *Erie* for the purposes of the California anti-SLAPP statute.

9   There are cases that apply 76-a which is not the procedural

10  part of the New York anti-SLAPP law.  That's the malice

11  standard.  And apply --

12          THE COURT:  It is the what standard?

13          MS. KAPLAN:  That's the standard that applies malice

14  to these cases.  The *New York Times v. Sullivan* standard.  But

15  as we say in our papers, your Honor, that standard clearly

16  already applies.  We concede it applies.  This case is with all

17  respect not going to SCOTUS on that issue.

18          On whether *New York Times v. Sullivan* should be

19  overruled, I'll point out that the defendant Trump has made

20  statements criticizing *New York Times v. Sullivan*, but that is

21  what it is.  Parties obviously have a right to make

22  inconsistent statements.

23          The one part of the statute that the courts are

24  uniform does not apply in this district in federal court under

25  Second Circuit law are the procedural standards.  The CPLR

M2m3carm

1    motion to dismiss and the CPLR summary judgment that my

2    colleague on the other side keeps referring to.  Judge Caproni

3    in the *National Academy of Television* case following the very

4    clear reasoning by Judge Jacobs, Chief Judge Jacobs I believe

5    he was.

6              THE COURT:  By judge who?

7              MS. KAPLAN:  Jacobs wrote the decision in *La Liberte*.

8    Squarely applying that reasoning said that for exactly the

9    reasons your Honor expressed you cannot --

10             THE COURT:  Could you slow down, too.

11             MS. KAPLAN:  I apologize.

12             THE COURT:  It is my old ears.

13             MS. KAPLAN:  It is my too fast speaking.  I apologize.

14             That you cannot displace the federal rules for a

15   motion to dismiss, the standards for a motion to dismiss, the

16   federal rules for summary judgment under 56, with the New York

17   CPLR standard.

18             THE COURT:  What about Rule 11?

19             MS. KAPLAN:  I think, your Honor, it is unclear at all

20   whether attorneys' fees provision.

21             THE COURT:  Slower.

22             MS. KAPLAN:  It is unclear -- I think Judge McMahon

23   points this out in the *Planned Parenthood* case, it is unclear

24   whether the attorneys' fees provision applies in federal court.

25   Because it is to be found in the procedural part of the

M2m3carm

1   statute.  The 70-a part of the statute, not the 76-a part of

2   the statute.

3           But as your Honor points out, there are standards that

4   apply to seeking fees in federal court under Rule 11, that are

5   very, very different than the no substantial basis in fact or

6   law standard set forth in the New York anti-SLAPP law.  That

7   issue has not been squarely decided in this district.  But I

8   think what your Honor is saying is the better reasoning.

9           THE COURT:  Isn't the standard whether it can

10  reasonably be characterized as procedural, and that applies to

11  remedies?

12          MS. KAPLAN:  Correct, your Honor.  So what's

13  substantive here is the malice standard.  That applies under

14  76-a, but is completely futile here because we concede it

15  applies.  And it applied anyway.  And the rest of the New York

16  anti-SLAPP statute, certainly the procedural provisions under

17  CPLR 3211 and I forget what the summary judgment is.  3216.

18  Those clearly do not apply in federal court, and I don't think

19  there is any disagreement with that, other than this Maine

20  decision applying First Circuit law for *Erie* purposes.

21          THE COURT:  Now, what about the question I asked your

22  adversary.  Put aside the question of whether you would forfeit

23  it or not forfeit it.  If I allowed her to amend, and if your

24  client claimed that there was no substantial basis for Trump's

25  counterclaim against you under the statute law, would you or

M2m3carm

1    would you not be obliged under Rule 13 to file such a claim

2    against him for bringing this application or forfeit it?

3            MS. KAPLAN:  We would certainly have to answer.  We'd

4    certainly forfeit the claim if we didn't file it.  I haven't

5    thought about the question, your Honor, of whether we have the

6    right to file it.  But I can guarantee if we do, we will for

7    sure.

8            THE COURT:  Let's just hypothesize that you would have

9    the right and that you would.  Can you conceive of any way to

10   resolve the conflicting claims that each side's position lacked

11   a substantial basis, without getting to the merits of the

12   underlying case?

13           MS. KAPLAN:  I don't, your Honor.  I've been thinking

14   about this quite a bit in another context, which is how, even

15   if they could make the arguments they wanted to make here, how

16   would they properly be made.  And I think in this case, given

17   where we are, 12(c) won't do them any good because if you look

18   at --

19           THE COURT:  Slower, slower.

20           MS. KAPLAN:  Rule 12(c), they've already answered.

21   Rule 12(c) doesn't do them any good because if you look at

22   their proposed amended answer and counterclaim, it is all upon

23   information and belief.  So your Honor can't look at that and

24   say no substantial basis in law or fact obviously.

25           And Judge Castel in the *Zalmayev* case basically held

M2m3carm

1     quite correctly that once a case goes to a jury -- let me put

2     it this way.  You are not going to let a case go to a jury that

3     has no substantial basis in law or fact.  So even in the I

4     think impossible event that Ms. Carroll were to lose this case

5     before a jury, that would not be no substantial in law or fact.

6                 THE COURT:  At the end of the day, doesn't it

7     probably, maybe inevitably but I'm not sure, come down to this.

8     It is a classic, at least as far as I understand the facts, a

9     he-said-she-said case.  And Mr. Trump denies it ever happened

10    and says various other things.  And Ms. Carroll says it

11    happened.

12                Now, surely if she prevails on the merits that it

13    happened, there was a substantial basis, that's obvious.  Now,

14    I imagine there are ways in which the claim might be defeated,

15    irrespective of whether it happened.  But I haven't, you know,

16    I don't know exactly what they might be.  I suspect if the

17    claim is ultimately resolved by your position on the Westfall

18    Act being rejected in the circuit and maybe the Supreme Court,

19    and the government being substituted and the claim dismissed

20    under the defamation exception to the Federal Tort Claims Act,

21    the case, the claim would be defeated, but I can't imagine how,

22    given the enormously unsettled nature of all of the questions.

23    And also the fact that the attorney general did not remove the

24    case for well over a year, that it would be very difficult to

25    say with a straight face that that rendered the claim without

M2m3carm

1    substantial basis.  So, I wonder what the heck we're talking

2    about here.

3              MS. KAPLAN:  I agree, your Honor.  And I think we are

4    getting to the same place.  What I was going to say, you heard

5    Ms. Habba talk about a summary judgment motion.  If she wants

6    to make a summary judgment motion in this case, I think it

7    would be for sure denied.  But if she wants to make a summary

8    judgment motion, and show somehow applying the Rule 56

9    standard, but show somehow so there is no material dispute of

10   fact, but show somehow that this case has no substantial basis

11   in law or fact, I think she is certainly free to make the Rule

12   56 motion.

13             To be honest, your Honor, I heard her say that.  We

14   would be happy for her to make that motion because we'd like to

15   get on with discovery.  So, and we think discovery in this case

16   is very, very fast.  We do not seek to depose President Trump.

17   He can depose our client.  He can depose the other two women

18   who she told contemporaneously when it happened.  And we'd like

19   his DNA.  That's it.

20             And based on that discovery, they want to make a Rule

21   56 motion, with respect, they should be our guest and do that,

22   because we'd like to get this case going and we think that

23   discovery should happen.

24             That's the only possible basis in the procedural

25   context of this case that they could properly establish,

M2m3carm

```
 1    assuming you were to allow them to amend.  They could possibly
 2    establish the standard that's required under the New York
 3    statute that there is no substantial basis in law and fact in
 4    this case.  In fact, it is not law.  It would have to be fact.
 5    On the law question, I agree with your Honor under Westfall Act
 6    all you have to do is listen to the questions of Judge
 7    Calabresi on the Second Circuit to understand how unsettled the
 8    law in this area is.
 9              THE COURT:  Yeah.  Yeah.  Okay.  Anything else you'd
10    like to say on your side?
11              MS. KAPLAN:  I'm looking to my colleague who is
12    shaking his head no.  So I think that's it from us, your Honor.
13              THE COURT:  Thank you, Ms. Habba.  Brief rebuttal if
14    you care to.
15              MS. HABBA:  My co-counsel will take rebuttal, your
16    Honor.
17              THE COURT:  Okay.
18              MS. HABBA:  Michael Madaio.
19              THE COURT:  Thank you.
20              MR. MADAIO:  Your Honor, I just wanted to address a
21    couple points that opposing counsel raised.  The first issue is
22    in terms of a substantial basis in law.  Defamation you have to
23    plead either special damages or defamation per se.  Neither are
24    pled in the complaint.  That's exactly how we would show there
25    is no substantial basis in law for this case, which is why we
```

M2m3carm

1    would be entitled to bring such a motion under anti-SLAPP.

2              In terms of the case law, there is no Second Circuit

3    case that's on point dealing with anti-SLAPP.  I understand

4    there is *La Liberte*, but that dealt with California's

5    anti-SLAPP law.  Not New York's.  There has not been a Second

6    Circuit decision on that case that's on point in terms of New

7    York's anti-SLAPP.  So again, that remains unsettled.  And at

8    this point in the litigation, again, to echo what Ms. Habba

9    said, we are only seeking to preserve our right for this point

10   for our client.

11             And these are issues that we would like to raise down

12   the road.  For example, the attorneys' fees.  This is something

13   that it can't possibly be considered futile if down the road

14   our client would be entitled to receive attorneys' fees if he

15   wins at trial, which could potentially be hundreds of

16   thousands, a significant amount of money in terms of --

17             THE COURT:  But it would be futile if the statute

18   doesn't apply in federal court.

19             MR. MADAIO:  Well, I believe the question is whether

20   or not the motions apply in federal court, you know, in terms

21   of the Federal Rule 56 and Federal Rule 12(b)(6).  But, the

22   attorneys' fees is a separate issue.  And I don't believe that

23   that would be in conflict with federal law.

24             THE COURT:  Rule 11 sets a federal standard for when

25   you get sanctions for what I'll loosely refer to as filing or

M2m3carm

1    continuing a baseless claim.  And it sets out what the remedies

2    are.  And they're different than New York does.

3          MR. MADAIO:  Right.  But under 70 anti-SLAPP, the

4    attorneys' fees are a statutory right to recover attorneys'

5    fees which I believe would be in addition to Rule 11.  I don't

6    see it as being inconsistent.  There are cases that have

7    held --

8          THE COURT:  Sure they're inconsistent.  Because 76-a

9    says -- if I can find it quickly -- that you may recover

10   damages where it is established that the communication which

11   gives rise to the action was made with knowledge of falsity or

12   reckless disregard.  Right?  That's what you're referring to.

13         MR. MADAIO:  I believe it is actually 70-a.

14         THE COURT:  70-a.  Thank you.  So, in 70-a, it says

15   attorneys' fees shall be recovered, mandatory, upon a

16   demonstration no substantial basis.  Right?  That's what you

17   are talking about.

18         MR. MADAIO:  Yes.

19         THE COURT:  And Rule 11 says, Federal Rules of Civil

20   Procedure says by presenting to the court any pleading, motion,

21   or other paper, an attorney or unrepresented party certifies

22   that to the best of the person's knowledge, etc., it is not

23   being presented for any improper purpose, the claims or

24   defenses are warranted by existing law or non-frivolous

25   argument to extend it, the factual contentions have evidentiary

M2m3carm

1    support, or if specifically so identified will likely have

2    evidentiary support.  And there is another provision that's not

3    particularly germane.  But that's their standard in the Federal

4    Rule 11.

5              And then it says, that if there has been a violation

6    of 11(b), which is what I just summarized, the Court may impose

7    an appropriate sanction on any attorney, law firm, or party

8    that violated the rule or is responsible.

9              Now the first point of difference is New York says

10   "shall" and the federal rule is "may" and leaves it up to the

11   judge.  So, that's a fundamental difference.  It is a conflict.

12   And then, under Rule 11(c)(4), it says a sanction imposed under

13   this rule must be limited to what suffices to deter repetition

14   of the conduct.  It may include non-monetary directives, an

15   order to pay a penalty into court, or if imposed on motion,

16   etc., an order directing payment to the movant of all or part

17   of the attorneys' fees.

18             Now, so the federal standard is more protective of the

19   party asserting the claim.  The imposition of sanctions is

20   entirely discretionary with the Court, not mandatory.  And the

21   extent of the remedies is circumscribed, unlike the state

22   provision.  Flat conflict up and down the line.  Now, then

23   *Pappas* says in dealing with the question of when something is

24   substantive and when it's procedural, procedure is the judicial

25   process for enforcing rights and duties recognized by

M2m3carm

1   substantive law and for justly administering remedy and redress

2   for disregard or infraction of them.

3       Now, it certainly seems to me that the whole process

4   of sanctions under Rule 11 is the process for justly

5   administering remedy and redress for disregard or infraction of

6   Rule 11(b).  That's what it is all about.  Isn't it?

7       MR. MADAIO:  Your Honor, I would say there are two

8   different questions that are being asked.  Sanctions are not

9   the same as what anti-SLAPP offers in terms of attorneys' fees.

10  It is just an additional way to get that recovery.  There are

11  many ways to get attorneys' fees.  Just like there are many

12  ways to get any sort of recovery in terms of if you are talking

13  about punitive damages or something like that.

14      Just because there is one route you can get it, that

15  that doesn't mean that's the only way you can get it.

16      THE COURT:  Except that *Erie v. Tompkins* and *Hanna v.*

17  *Plumer* says that in a federal court, there is one way.  One

18  way.  The federal way.

19      MR. MADAIO:  Right.  But in anti-SLAPP, it is an

20  affirmative counterclaim that we are seeking here, so it is

21  essentially a claim on its own where you are seeking the

22  attorneys' fees.

23      THE COURT:  You can call it a zebra but it is still

24  inconsistent with the federal law.

25      MR. MADAIO:  I think it is important that it is a

M2m3carm

1    counterclaim that you are filing.

2              THE COURT:  Why?

3              MR. MADAIO:  Because it is affirmative relief that you

4    are gaining as opposed to being sanctioned for bad faith

5    conduct.

6              THE COURT:  So what?

7              MR. MADAIO:  So I think that makes --

8              THE COURT:  It need not be bad faith conduct under

9    Rule 11.

10             MR. MADAIO:  Well, I think it asks different

11   questions.  I think therefore it is not inconsistent with what

12   the federal rules say.

13             THE COURT:  I understand your position.

14             MR. MADAIO:  Again, I understand they are not binding

15   decisions, but there have been courts that have found the same

16   exact thing.

17             THE COURT:  Mostly not, though.

18             MR. MADAIO:  Correct.  But there hasn't been any

19   Second Circuit decision directly on point.

20             THE COURT:  I understand that.  That's why I can do

21   what I think is the right result here, and maybe the Second

22   Circuit will agree with it and maybe not.

23             MR. MADAIO:  Our position is that given how unsettled

24   the law is on this issue and how new the law is, that we think

25   it would prejudice our client very much to completely foreclose

M2m3carm

1    his ability to raise any of these possibilities at this point

2    in the case.  That includes the attorneys' fees, that includes

3    motion to dismiss, motion for summary judgment.  All the

4    remedies under anti-SLAPP.

5             THE COURT:  I have your point.  Thank you very much.

6             MS. KAPLAN:  Very briefly, your Honor, at paragraph

7    129 of the complaint in response to what my colleague said, we

8    said that Trump's false and insulting statements about Carroll

9    were defamation per se.  They tended to and did damage Carroll

10   and her trade, occupation and her business.  And then we go on

11   to detail all the evidence and allegations about that, so that

12   would not be correct.

13            THE COURT:  Okay.  All right.  I thank you.  I have a

14   deliberating jury.  I'd love to continue talking about this,

15   but I have to get back to the other case.

16            Thank you, folks.

17            (Adjourned)

18

19

20

21

22

23

24

25