UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                    Plaintiff,


          -against-                                        20-cv-7311 (LAK)


DONALD J. TRUMP, in his personal capacity,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/2022

## MEMORANDUM OPINION

          Appearances:

                         Roberta Kaplan
                         Joshua Matz
                         KAPLAN HECKER & FINK LLP
                         *Attorneys for Plaintiff*


                         Alina Habba
                         HABBA MADAIO & ASSOCIATES LLP
                         *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

          This is a defamation action against Donald J. Trump.  Mr. Trump, purely in his

individual capacity and represented by private counsel,[1] has moved for leave to amend his answer

---

[1]      Long after this action was commenced in the state courts, the United States removed it to
this Court and moved to be substituted as defendant in place of Mr. Trump, who then was
president.  This Court denied the motion to substitute.  *Carroll v. Trump,* 498 F. Supp. 3d
422 (S.D.N.Y. 2020).  That ruling is pending on appeal.

to assert an affirmative defense and counterclaim alleging that plaintiff's claim is baseless and interposed for harassment and other improper purposes. He proposes to seek damages and other relief under New York's so-called anti-SLAPP law. Plaintiff contends that the motion should be denied because (1) defendant has delayed unduly in seeking leave, (2) he seeks leave for dilatory purposes, (3) granting leave would be unduly prejudicial to her and, in any case, (4) leave would be futile because defendant's proposed affirmative defense and counterclaim would be subject to dismissal on motion. The Court assumes familiarity with its prior opinion, which describes the underlying factual dispute.

*Legal Standard*

The standards governing this motion are clear.

*First,* as defendant concedes, futility of amendment warrants denial of leave to amend.[2] In other words, a court may deny leave to assert a counterclaim or defense that would not withstand a motion to dismiss or to strike.

*Second,* futility of amendment is not the only basis for denying leave to amend. While "leave to amend 'shall be freely given when justice so requires,' . . . a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."[3]

So we turn to these considerations.

---

[2]  Def. Reply Mem. (Dkt. 66) at 1, 5; Transcript, Feb. 22, 2022 (Dkt. 71) (hereinafter "Tr.") 3:4-7. All docket citations are to 20-cv-7311 (LAK) unless otherwise specified.

[3]  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d. Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

*Futility of Amendment*

    *The Availability of a Futility Argument*

      As noted, defendant conceded, both in motion papers and at argument, that futility of amendment is a ground upon which leave to amend properly may be denied.  Indeed, he went well beyond that.  His motion papers assert, correctly, that:

> "it is undisputed that '[a]n amendment is futile if the proposed amended claim would not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"[4]

Yet he argues that "it would be a fool's errand, and not to mention a waste of judicial time and resources, to defend the substantive merits of every potential use of the anti-SLAPP law that Defendant may have in this case."[5]

      These two assertions – made on consecutive pages of defendant's memorandum – are inconsistent.  In order to grant leave to amend, the Court may insist that the proposed amendment would not be futile, which requires the conclusion that the amended claim would be sufficient to withstand a motion to dismiss.[6]  And in order to determine whether it would withstand a motion to dismiss, the Court must determine whether it pleads facts which, if proven, "plausibly

---

[4]    Dkt. 66 at 5 (citation omitted).

[5]    *Id.* at 6.

[6]    *E.g.*, *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (noting a proposed amendment is futile if it "would fail . . . to state a claim under Rule 12(b)(6)") (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); 3 MOORE'S FEDERAL PRACTICE § 15.15 (2021); 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1487 (3d ed. 2021).

give rise to an entitlement to relief."[7]  It follows, therefore, that one cannot decide whether a proposed amendment would be futile without deciding its legal sufficiency.

But rejection of defendant's position is not warranted only by logic.  His position simply is wrong.  Federal courts – including courts in this circuit – regularly decide the legal sufficiency of proposed amended pleadings in order to decide whether leave to amend would be futile.  And "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."[8]  It routinely is applied to deny motions for leave to amend.

For example, in *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Group, PLC,*[9] the Second Circuit reviewed the district court's denial of leave to amend *de novo*[10] – because the district court's ruling was based on futility, an issue of law – and affirmed.  In so doing, it necessarily determined that the plaintiffs' proposed amended complaint, which had been before the district court,[11] did not state a legally sufficient claim under Section 10(b) of the Securities Exchange Act of 1934.

The Second Circuit similarly affirmed the district court's denial of leave to amend on grounds of futility in *Thea v. Kleinhandler*.[12]  Following dismissal of their first amended

---

[7]      *Panther Partners Inc.,* 681 F.3d at 119.

[8]      *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund,* 783 F.3d at 389.

[9]      *Id.*

[10]     *Id.* (citing *Panther Partners Inc.,* 681 F.3d at 119).

[11]     *Id.* at 387.

[12]     807 F.3d 492 (2d Cir. 2015).

complaint, plaintiffs moved for leave to file a proposed second amended complaint.[13] The district court denied the motion, concluding that amendment would be futile because "the claims alleged in the proposed second amended complaint would not withstand a motion to dismiss."[14] And the Court of Appeals reviewed that determination *de novo* and affirmed.

These are not outlier cases. In fact, it is unexceptional for federal courts to deny leave to amend on the basis of futility where the proposed amended pleading would not withstand a motion to dismiss.[15]

The defendant nevertheless argues that it would be unfair to consider the legal sufficiency of his proposed amended pleading on this motion for leave "because we [*i.e.*, his counsel] haven't delved into it and it is not ripe at this point . . . ."[16] But that contention is entirely without merit. If defendant has not "delved into" the sufficiency of his proposed amended pleading, it is only because he ignored his own statements that "[a] court may only deny leave 'for good

---

[13]

     *Id.* at 494.

[14]

     *Id.* at 496; *see also Thea*, 2014 WL 3812231, at *6, 9.

[15]

     *See, e.g., Hay v. N.Y. Media LLC*, ___ F. App'x ___, No. 21-1727 (2d Cir. Mar. 10, 2022) (summary order); *Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 WL 5549039, at *27 (S.D.N.Y. Sept. 16, 2020); *ACR Sys., Inc. v. Woori Bank*, No. 14-cv-2817 (JFK), 2018 WL 1757019, at *7 (S.D.N.Y. Apr. 10, 2018); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15-cv-6369 (JFK), 2018 WL 1449206, at *8 (S.D.N.Y. Mar. 23, 2018); *Manhattan Rev. LLC v. Yun*, No. 16-cv-0102 (LAK), 2017 WL 3034350, at *1 (S.D.N.Y. July 17, 2017); *United States v. N.Y. City Dep't of Educ.*, No. 16-cv-4291 (LAK) (JCF), 2017 WL 1169653, at *4 (S.D.N.Y. Mar. 28, 2017); *In re Sling Media Slingbox Advert. Litig.*, No. 15-cv-05388 (GBD), 2017 WL 5558679, at *1-2 (S.D.N.Y. Mar. 22, 2017); *Lin v. Toyo Food, Inc.*, No. 12-cv-7392 (KMK), 2016 WL 4502040, at *6 (S.D.N.Y. Aug. 26, 2016).

[16]

     Tr., at 6:16-18.

reason, *including futility*'"[17] and that courts "freely grant leave to amend . . . *absent a showing of*

. . . *futility* . . . ,"[18] not to mention the decades of authority and practice that support those statements.

In fact, he has had a full opportunity to address these issues.

      In consequence, we turn to the question of whether defendant's proposed amendment

would be futile.


### The anti-SLAPP Law

      "SLAPP" is an acronym for "strategic lawsuits against public participation." Anti-

SLAPP laws are intended to deter actions filed to punish or harass a defendant for participating in

public life. New York long has had such a statute, which at the outset permitted a defendant in a

covered claim to "maintain an action, claim, cross claim or counterclaim" against the plaintiff and

to recover if the plaintiff's action lacked sufficient basis.[19] As originally enacted, however, the

coverage of the statute was narrow.

      That changed in 2020 when the Legislature amended Sections 70-a and 76-a of the

Civil Rights Law and Rules 3211 and 3212 of the Civil Practice Law and Rules to broaden the

applicable standards and to provide additional procedural rights to make those standards more

effective.[20] The key points are that the law as amended

---

[17]      Dkt. 66 at 1 (citation omitted and emphasis added).

[18]      Tr., at 3:5-7 (emphasis added).

[19]      N.Y. Civ. Rts. L. § 70-a (McKinney 2009).

[20]      N.Y. Law 2020, chap. 250 (2020), *as codified in* N.Y. Civ. Rts. L. §§ 70-a, 76-a, and N.Y. CPLR 3211-12.

- Extends coverage to "any communication in a place open to the public or a public forum in connection with an issue of public interest" or based upon "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest . . . ."[21]

- Requires the plaintiff in any covered action to establish by clear and convincing evidence that "any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue,"[22] *i.e.*, that the defendant acted with actual malice in the First Amendment sense of that term.[23]

- Requires courts, in considering motions to dismiss complaints and other pleadings in actions within the coverage of the statute, to consider supporting and opposing factual affidavits rather than limiting their consideration to the pleadings.[24]

- Requires courts to stay all discovery, pending hearings, and motions from the

---

[21]    N.Y. Civ. Rts. L. § 76-a, subd. 1(a).

[22]    *Id.*, subd. 2.

[23]    *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 182-84 (2d Cir. 2000) (noting that "actual malice means 'with knowledge that [the defamatory statement] was false or with reckless disregard of whether it was false or not'" and must be "supported by clear and convincing proof") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) and *Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511 n.30 (1984)).

[24]    N.Y. CPLR 3211(g), subd. 2.

filing until the determination of any motion to dismiss pursuant to the statute.[25]

- Shifts the burden of proof from the defendant to the plaintiff and heightens the standard a plaintiff must meet to avoid dismissal on motion.  Whereas an ordinary complaint or counterclaim typically withstands a motion to dismiss for failure to state a cause of action if it states "a claim to relief that is plausible on its face,"[26] the amended anti-SLAPP law requires dismissal of a covered complaint or counterclaim unless the plaintiff establishes that the proposed pleading "has a substantial basis in law or is supported by a substantial argument for extension, modification or reversal of existing law."[27]

- Requires a court to award costs and attorney's fees in any covered action in which the defendant demonstrates that such a substantial basis in law and fact was lacking.[28]

- Provides for the recovery of compensatory damages by the defendant upon an additional demonstration that the suit was "commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously

---

[25] *Id.*, subd. 3.

[26] *See e.g., Honickman v. BLOM Bank SAL*, 6 F.4th 487, 495 (2d Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Lynch v. City of N.Y.*, 952 F.3d 67, 74 (2d Cir. 2020).

[27] N.Y. CPLR 3211(g), subd. 1.

[28] N.Y. Civ. Rts. L. § 70-a, subd. 1(a).

inhibiting the free exercise of speech, petition or association rights," and punitive damages upon a demonstration that the action was commenced or continued *solely* for that purpose.[29]

*The Proposed Affirmative Defense*

Defendant proposes first to amend his answer to assert a new purported affirmative defense: viz., a defense that alleges, in its entirety, that "[p]laintiff's claim is barred by New York's anti-SLAPP laws, NY Civil Rights Law §§ 70-a and 76-a."[30] But that is not a legally sufficient affirmative defense.

As the Second Circuit has written:

> "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, *even if all allegations in the complaint are true*.' Black's Law Dictionary 430 (7th ed.1999); *see also Wolf* [*v. Reliance Standard Life Ins. Co.,* 71 F.3d 444, 448-49 (1st Cir.1995)]."[31]

But defendant's proposed additional defense raises no new facts. And while it does assert the new argument that the amended anti-SLAPP law bars plaintiff's claim, that argument is without merit. The amendments to Sections 70-a and 76-a of the Civil Rights Law expand the availability of monetary relief for the institution and continuation of baseless lawsuits in certain circumstances. The amendments to CPLR 3211 and 3212 alter some New York procedures when applied to actions covered by the new law. But none of them creates a defense that would knock plaintiff out of court

---

[29]
    *Id.,* subd. 1(b)-(c).

[30]
    Def. Proposed Am. Answer (Dkt. 63-1) at 12.

[31]
    *Saks v. Franklin Covey Co.,* 316 F.3d 337, 349 (2d Cir. 2003) (emphasis added).

if all the allegations of her complaint are true.

Ms. Carroll's complaint, briefly summarized, alleges that the defendant raped her years ago and that his much more recent denial – coupled with other disparaging and insulting remarks – defamed her.[32]  If all of that is true, then this action would not have been "commenced or continued without a substantial basis in fact and law."[33]  To put it another way, assuming that the facts are as plaintiff claims them to be, nothing in the anti-SLAPP law would defeat her complaint.

Accordingly, amendment to assert the new purported "affirmative defense" would be entirely futile.

### The Proposed Counterclaim

In addition to the purported affirmative defense, defendant seeks to amend his answer to assert a counterclaim against the plaintiff under the same provisions of the amended anti-SLAPP law.

When a party brings a state law claim in federal court, the federal court must apply state substantive law and federal procedural law.[34]  In the event of a conflict between a Federal Rule of Civil Procedure and a provision of state law, the Federal Rule governs unless it is "inapplicable or invalid."[35]  A Federal Rule is applicable if it is "sufficiently broad to control the issue before the

---

[32] *See generally Carroll*, 498 F. Supp.3d at 425, 430-32.

[33] *See* N.Y. Civ. Rts. L. § 70-a.

[34] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).

[35] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (citing *Hanna v. Plumer*, 380 U.S. 460, 469-71 (1965)).

Court"[36] or, in other words, if it is capable of "answer[ing] the question in dispute."[37] The Federal Rules are presumed valid under the Constitution and the Rules Enabling Act.[38] The Supreme Court long has held that a Federal Rule is valid under the Rules Enabling Act if it "regulate[s] matters rationally capable of classification as procedure," including matters which fall within "the uncertain area between substance and procedure."[39] "Procedure" for this purpose means "the judicial process for enforcing rights and duties recognized by substantive law . . . that governs the rights and obligations of individuals within a given jurisdiction."[40]

The Second Circuit's recent decision in *La Liberte v. Reid*[41] requires the conclusion that the defendant cannot here invoke any of the relevant New York anti-SLAPP law's provisions.

*La Liberte* dealt with a California anti-SLAPP law that permitted a defendant in a covered case to make a "special motion to strike," the making of which required the court to dismiss plaintiff's case unless the plaintiff could "establish[] a probability that he or she will prevail on the claim."[42] The Court of Appeals, however, held that those provisions, along with an additional

---

[36]

    *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980).

[37]

    *Shady Grove*, 559 U.S. at 398 (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987)).

[38]

    *Burlington N. R.R. Co.*, 480 U.S. at 6 (citing *Hanna*, 380 U.S. at 471).

[39]

    *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019) (citing *Shady Grove*, 559 U.S. at 406 and *Hanna*, 380 U.S. at 472).

[40]

    *Id.* (quoting *Hanna*, 380 U.S. at 464 and *Shady Grove*, 559 U.S. at 407).

[41]

    966 F.3d 79 (2d Cir. 2020).

[42]

    *Id.* at 87 (quoting Cal. Civ. Proc. Code § 425.16(b)(3)).

provision that awarded attorneys' fees to defendants who prevail "on a special motion to strike,"[43]

could not be applied in federal court because they conflicted with Federal Rules of Civil Procedure

12 and 56:

> "The test is whether 'a Federal Rule of Civil Procedure "answer[s] the same question" as the [special motion to strike].' *Abbas* [*v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015)] (alteration in original) (quoting *Shady Grove*[, 559 U.S. at 398-99]). If so, the Federal Rule governs, unless it violates the Rules Enabling Act. *Id.* Applying that test, we first conclude that the special motion to strike in California's anti-SLAPP statute answers the same question as Federal Rules 12 and 56.

> "The special motion to strike requires outright dismissal unless the plaintiff can 'establish[] a probability that he or she will prevail on the claim.' Cal. Civ. Pro. Code § 425.16(b)(3). The statute thus 'establishes the circumstances under which a court must dismiss a plaintiff's claim before trial,' a question that is already answered (differently) by Federal Rules 12 and 56. *Abbas*, 783 F.3d at 1333-34. Under Rule 12(b)(6), the pleading burden is to allege 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 [] (2007). This 'does not impose a probability requirement at the pleading stage. . . . [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.' *Id.* at 556[]. California's anti-SLAPP statute, however, 'abrogates that entitlement . . . by requiring the plaintiff to establish that success is not merely plausible but probable.' *Carbone* [*v. Cable News Network, Inc.*, 910 F.3d 1345, 1353 (11th Cir. 2018)].

> "It also conflicts with Rule 56, which permits summary judgment only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). The Rule thus enables plaintiffs to proceed to trial by identifying any genuine dispute of material fact, whereas California's anti-SLAPP statute 'nullif[ies] that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor.' *Carbone*, 910 F.3d at 1353. Together, Rules 12 and 56 'express "with unmistakable clarity" that proof of probability of success on the merits "is not required in federal courts" to avoid pretrial dismissal.' *Id.* at 1351 (quoting *Hanna*[, 380 U.S. at 470]). Therefore, California's special motion requires the plaintiff to make a showing that the Federal Rules do not

---

[43] Cal. Civ. Proc. Code § 425.16(c)(1).

require."[44]

And the Second Circuit is not alone in reaching such conclusions.[45]

In this case, CPLR 3211(g), subd. 1, of the anti-SLAPP law, as amended, requires that a court grant an anti-SLAPP law motion to dismiss "unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law."  Moreover, CPLR 3211(g), subd. 2, as amended, provides that a motion to dismiss made under the anti-SLAPP law shall be decided on the basis not only of the pleadings, but also of "supporting and opposing affidavits." These provisions conflict with Federal Rule of Civil Procedure 12 for two reasons.

First, in resolving a Rule 12(b)(6) motion, a district court must construe the complaint liberally, accept all the factual allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  If the complaint – so viewed – "plead[s] 'enough facts to state a claim to relief that is plausible on its face,'"[46] the motion must be denied.  CPLR Section 3211(g), subds. 1 and 2, in contrast, demand that a plaintiff in a covered action satisfy a higher standard –

---

[44]

966 F.3d at 87.

[45]

*See, e.g.*, *Klocke v. Watson,* 936 F.3d 240, 242-46 (5th Cir. 2019) (Texas anti-SLAPP statute does not apply in federal court because it "deals only with the conduct of the lawsuit; it creates no rights independent of existing litigation"); *Carbone*, 910 F.3d at 1347-54 (Georgia anti-SLAPP statute does not apply in federal court because it merely provides "a special procedural device . . . that applies a heightened burden to the claims that fall within its ambit"); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668-73 (10th Cir. 2018) (New Mexico anti-SLAPP statute does not apply in federal court); *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 729-32 (7th Cir. 2015) (Washington anti-SLAPP statute does not apply in federal court); *Abbas*, 783 F.3d at 1333-34 (Washington, D.C. anti-SLAPP statute does not apply in federal court).

[46]

*Green v. Dep't of Educ. of the City of N.Y.*, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting *Twombly*, 550 U.S. at 570).

both legally and factually – to avoid dismissal than is required by Rule 12(b)(6).

Second, and closely related to the first point, CPLR 3211(g), subd. 2, as amended by the anti-SLAPP law, provides that a motion to dismiss made under the anti-SLAPP law shall be decided on the basis not only of the pleadings, but also of "supporting and opposing affidavits." It thus suggests that (a) the substantiality of the law upon which a covered action is based depends at least in part on an evidentiary showing, and (b) the court is not required to treat the complaint in the same liberal manner as Rule 12 requires. In any case, the requirement of consideration of affidavits conflicts with Federal Rule 12, which permits consideration only of the pleadings and documents incorporated therein by reference[47] unless affidavits are submitted to and not excluded by the court.[48]

Subdivisions 1 and 2 of CPLR 3211(g) thus are inapplicable in federal court by parity of reasoning with *La Liberte*. And since the stay required by CPLR 3211, subd. 3, applies only during the pendency of a motion to dismiss under CPLR 3211, which itself is inapplicable in federal court, subdivision 3 likewise is inapplicable.

Much the same analysis is fatal to the applicability of CPLR 3212(h). It provides that a motion under the anti-SLAPP law, as amended, for summary judgment of dismissal in a covered action "shall be granted unless the party responding to the motion demonstrates that the action . . . has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law." It therefore makes summary judgment more readily available in covered actions than would Federal Rule 56, which permits summary judgment of

---

[47]     *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

[48]     Fed. R. Civ. P. 12(d).

dismissal only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49]

This analysis leaves only a question regarding the anti-SLAPP statute amendment to Section 70-a of the Civil Rights Law, which requires the imposition of liability for costs and attorney's fees upon a demonstration that a covered action was "commenced or continued without a substantial basis" and of compensatory and punitive damages upon demonstration of additional circumstances.[50]

One of my colleagues already has applied *La Liberte* to find a conflict between the Federal Rules 12 and 56, on the one hand, and amended Section 70-a of the New York anti-SLAPP statute and, implicitly, amended CPLR 3211(g) and 3212(h).[51] In *National Academy of Television Arts and Sciences v. Multimedia System Design, Inc.*, she ruled that "[Section] 70-a is inapplicable in federal court" because its "'substantial basis' standard . . . conflicts with the standards under

---

[49]    Fed. R. Civ. P. 56(a).

[50]    N.Y. Civ. Rts. L. § 76-a , subd. 2, as amended, which requires a *plaintiff* in a covered action to prove actual malice in the First Amendment sense in order to recover damages, is academic in this case. Ms. Carroll concedes that she is at least a limited purpose public figure that she would have to prove constitutional actual malice by clear and convincing evidence to recover against the defendant without regard to the anti-SLAPP law. Pl. Mem. (Dkt. 65) at 10; *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) ("Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."). In these circumstances, the applicability of the state law provision need not be addressed.

[51]    *See Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, ___ F. Supp. 3d ___, No. 20-cv-7269 (VEC), 2021 WL 3271829, at *13 (S.D.N.Y. July 30, 2021).

Federal Rules of Civil Procedure 12 and 56."[52]  I agree with her analysis, which is dispositive as to Section 70-a.  And that makes it unnecessary to consider whether New York's anti-SLAPP law is inapplicable in federal courts for the additional reason that it is inconsistent with Federal Rule 11 and, indeed, whether the New York statute is an unconstitutional infringement on the First Amendment right to petition.

*Undue Delay, Dilatory Motive, Bad Faith and Prejudice*

As noted previously, leave to amend may be denied on the basis of undue delay in seeking leave, dilatory motive, bad faith and/or prejudice to the opposing party.  In this case, all of these factors are present.

*Undue Delay*

The current version of the anti-SLAPP statute was enacted and became effective on November 10, 2020.  This motion was filed on January 11, 2022.  Plaintiff contends that there is no satisfactory excuse for this 14 month delay and that it weighs in favor of denial of leave to amend. Plaintiff is right.

To be sure, "mere delay," in the absence of bad faith, dilatory motive or undue prejudice ordinarily will not foreclose leave to amend.[53]  But when there has been a delay and the

---

[52]  *Id.* at *12-13.  *See also Ginx, Inc. v. Soho All.*, 720 F. Supp.2d 342, 366 (S.D.N.Y.2010), *as corrected* (Aug. 19, 2020) ("New York's legislature may have adopted the Anti-SLAPP law to elevate a plaintiff's burden at the pleading stage above 'plausibility' . . . to 'substantial basis,' but the United States Congress has thus far declined to follow suit.")

[53]  *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

nonmoving party has made a showing of bad faith or undue prejudice, "the burden is on the party who wishes to amend to provide a satisfactory explanation for the delay."[54] "[T]he longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."[55]

The defendant has not offered a satisfactory reason for the length of his delay in this case.   He waited over a year after the anti-SLAPP statute was amended before moving for leave to amend his answer.   The closest his moving papers came to offering an excuse for this delay is the assertion that his newly retained counsel "was substituted into this action on or about November 11, 2021, and now, promptly thereafter, . . . makes the instant application."[56]   But that is not a satisfactory explanation, especially in view of the fact that the defendant previously was represented in this action for two full years by a very large and prominent law firm.

At oral argument, defendant tried a new tack.   His counsel argued first that the delay "does not exist" because defendant "was a sitting president for a portion of that . . . [and w]e can't litigate when there is a sitting president . . . ."[57]   But even if that were true, and it is not,[58] Mr. Trump

---

[54]
    *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d. Cir. 1990).

[55]
    *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir.1983)).

[56]
    Def. Mem. (Dkt. 64) at 7.   Interestingly, defendant's new attorney submitted an affirmation in support of the motion. Dkt. 63-1.   But it is silent as to the reason for the delay.   It does no more than authenticate copies of the original and proposed amended answers and attach a proposed order.

[57]
    Tr., at 15:1-4, 17-18.

[58]
    *See Clinton v. Jones,* 520 U.S. 681 (1997); *see also Trump v. Vance*, 140 S. Ct. 2412 (2020) (holding Article II and the Supremacy Clause do not categorically prohibit the issuance of

was president for only two months between the enactment of the anti-SLAPP amendment and the end of his term.[59]  Moreover, this action was removed from the state court *before* the anti-SLAPP amendments were enacted.  Accordingly, whatever happened in the state court is entirely immaterial to the delay upon which plaintiff relies, *i.e.*, the 14 month delay between the enactment of that legislation and the filing of the motion for leave to amend.[60]  What matters is why the defendant did not make this motion between November 2020 and January 11, 2022.  So defendant's position reduces to the proposition that this delay was justified because he moved in December 2020 for a stay of proceedings pending appeal from this Court's denial of the government's motion to substitute the United States for Mr. Trump.  But the mere filing of that motion did not stay the proceedings,[61] and it ultimately was denied months ago.[62]

Accordingly, defendant has offered no satisfactory justification for failing to move for leave to amend for a 14 month period.

---

[59]   a state criminal subpoena to a sitting president).

November 10, 2020 until January 20, 2021.

[60]   As will appear, the proceedings in the state court are quite relevant for the issues of dilatory motive, bad faith, and prejudice.

[61]   *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007).  In that case, after defendants filed a motion to stay the proceedings pending interlocutory appeal, an applications judge granted "a temporary stay pending panel consideration of the stay motion." *Id.* at 169.  If the filing of the motion to stay alone sufficed to stay the proceedings pending a decision on the motion, there would have been no need for the temporary stay.

[62]   Dkt. 56.

*Dilatory Motive, Bad Faith and Prejudice*

As plaintiff contends, defendant's actions have been dilatory throughout the litigation. As she aptly puts it, he "has slow-rolled his defenses, asserting or inventing a new one each time his prior effort to delay the case fails."[63]

This action was filed in state court on November 4, 2019.[64]  In the days following, defendant, then the president of the United States, attempted to evade service of the complaint at his New York City residence and the White House.[65]  Service was completed only by mail after the state court granted plaintiff's application for alternative service.[66]  Defendant then attempted to delay the progress of the lawsuit through frivolous motions practice.  First, he filed a motion to dismiss and to stay discovery on January 3, 2020, alleging that the court lacked personal jurisdiction over him.[67]  The court denied his motion, holding that defendant had failed to meet the procedural prerequisites to contest personal jurisdiction and concluding that his arguments were baseless.[68]  Defendant later

---

[63]

Dkt. 65 at 9.

[64]

Complaint, NYSCEF Doc. No. 2.  All state court docket citations are to *Carroll v. Trump*, Index No. 160694/2019.

[65]

*See* Aff. in Support of *Ex Parte* App., NYSCEF Doc. No. 6 (describing law enforcement interference – including by Secret Service agents and officers of the New York City Police Department – with attempted service of process on defendant at Trump Tower in Manhattan and at the White House in Washington, D.C.); Order Permitting Alt. Serv., Doc. No. 15 (granting *ex parte* application).

[66]

Aff. of Serv., NYSCEF Doc. No. 17.

[67]

Mem. in Support of Mtn. to Dismiss and Stay Discovery, NYSCEF Doc. No. 33.

[68]

Order, NYSCEF Doc. No. 36.

reasserted the same defense in his answer, forcing plaintiff to make a motion to strike,[69] after which defendant voluntarily withdrew the defense.[70]

Meanwhile, defendant moved to stay the case pending an appeal in another action arising from alleged sexual misconduct by defendant with another woman, *Zervos v. Trump*.[71] In support of that motion, defendant here argued that the outcome of the *Zervos* appeal would be dispositive in this case because, should he prevail, the court would be divested of jurisdiction to consider the action while he served as president.[72] But that argument at least suggested a dilatory motive, as defendant previously had disclaimed any relation between this case and the *Zervos* matter in a request for this case to be assigned randomly rather than sent to the judge overseeing the *Zervos* case.[73]

Next, on August 7, 2020, after the state court rejected defendant's effort to stay the state court litigation,[74] defendant reportedly instructed William Barr, then Attorney General, to cause the United States to intervene and remove the case to this Court under the Westfall Act.[75] The

---

[69]

Mem. in Support of Mtn. to Strike, NYSCEF Doc. No. 92.

[70]

Notice of Withdrawal, NYSCEF Doc. No. 93.

[71]

171 A.D.3d 110 (1st Dep't 2019); Notice of Mtn. to Stay, NYSCEF Doc. No. 43.

[72]

Mem. in Support of Mtn. to Stay, NYSCEF Doc. No. 49 at 6.

[73]

Letter App. for Reassignment, NYSCEF Doc. No. 25.

[74]

*See* Order, NYSCEF Doc. No. 110.

[75]

Notice of Removal, NYSCEF Doc. No. 112; *see also* Katie Brenner & Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says*, N.Y. TIMES (Sept. 9, 2020).

Department of Justice then moved, unsuccessfully, to substitute the United States as the defendant in place of Mr. Trump.[76]

Taken together, these actions demonstrate that defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him. That conclusion draws further support from the facts that (1) the plaintiff is the only percipient witness (other than the defendant) to the alleged rape, and (2) she is 78 years of age. The relevance of these facts is obvious.

Finally, if there were serious doubt about defendant's dilatory purpose, it would be eliminated or vastly diminished by his contention that the Court should not pass on the futility of amendment in ruling on the motion for leave to amend.

Defendant argues his motion should be granted because the anti-SLAPP law opens "multiple avenues for redress" that otherwise would be unavailable to him,[77] which include a motion to dismiss under CPLR 3211(g), a motion for summary judgment under CPLR 3212(h), and the accompanying stay of discovery and special award of costs and attorneys' fees. He argues that leave to amend should be granted without considering the futility of the amendment in order to leave him free to attempt to use these procedural mechanisms at "any point during the litigation."[78] He wishes to engage in separate motion practice whenever he might seek to take advantage of one of those

---

[76]  *See* Notice of Mtn. to Substitute (Dkt. 3).

   This Court denied the motion. Opinion (Dkt. 32). Appeals from that decision are *sub judice* in the Second Circuit.

[77]  Dkt. 64 at 9.

[78]  *Id.*

"multiple avenues,"[79] thus needlessly delaying the case further and driving up the cost of litigating it.   Moreover, when asked whether defendant, if allowed to amend,  would "seek to stay all proceedings here until the anti-SLAPP law claim is resolved," defendant's counsel deflected the Court's question by insisting that that issue should be addressed only after an anti-SLAPP motion was filed.[80]  Thus, the effect of granting defendant leave to amend without determining whether the proposed amendment would be futile – and quite likely the purpose of advocating that course – almost certainly would be to delay this action for no legitimate purpose.

In the Court's view, characterization of defendant's previous and threatened future actions as dilatory, in bad faith or unduly prejudicial would be a bootless exercise.  They are, in varying degrees, all three.

Plaintiff's only claim in this case is a single count of defamation.  It could have been tried and decided – one way or the other – long ago.  The record convinces this Court that the defendant's litigation tactics, whatever their intent, have delayed the case to an extent that readily could have been far less.  Granting leave to amend without considering the futility of the proposed amendment needlessly would make a regrettable situation worse by opening new avenues for significant further delay.  That would unduly prejudice plaintiff which, in my view, is a motive for defendant's position on this motion.

---

[79]     Tr., at 5:21-23, 13:22-14:4; Dkt. 66 at 6.

[80]     Tr., at 5:9-6:3.

23

*Conclusion*

Defendant's motion, in his personal capacity, for leave to amend (Dkt. 63) is denied on the ground that the proposed amendment would be futile.  In the alternative, it is denied in the exercise of discretion on the grounds that the defendant delayed unduly in seeking leave to amend, that the motion for leave is made at least in part for a dilatory purpose and thus at least in part in bad faith, and that granting the motion would prejudice the plaintiff unduly.

SO ORDERED.

Dated:          March 10, 2022

_____

Lewis A. Kaplan
United States District Judge