

**DOCKET**

## KAPLAN HECKER & FINK LLP



360 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0881
DIRECT EMAIL    rkaplan@kaplanhecker.com

August 8, 2022

**VIA COURIER**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    *Re:* *Carroll v. Trump*, No. 20 Civ. 07311 (LAK) (JLC)

Dear Judge Kaplan:

  We write on behalf of Plaintiff to: (1) provide the Court a brief update on discovery; and (2) inform the Court of a case that Plaintiff plans to file against Defendant pursuant to New York's Adult Survivors Act as soon as that statute authorizes us to do so on November 24, 2022.[1] We will file the case in this District and, as required by the Local Rules, mark it as related to the present action. Although we recognize that it is unusual to preview a yet-to-be-filed lawsuit for an adversary or judge, we wanted Your Honor to be aware of Plaintiff's anticipated filing so that the Court has full information as it considers scheduling and case management issues.

  **Status of Discovery.** To date, discovery in the above-referenced defamation case has been entirely one way. Upon entry of a protective order,[2] Plaintiff is prepared to produce 30,267 pages of material responsive to Defendant's documents requests. She has already provided substantive responses to 19 interrogatories.

---

[1] Pursuant to the provision on letters in Your Honor's Individual Practices, we have filed this letter by having a commercial courier deliver a hardcopy to the Daniel Patrick Moynihan United States Courthouse.

[2] On August 1, 2022, Plaintiff filed a letter motion requesting that the Court enter a standard protective order after Defendant refused to engage on the matter for five weeks. *See* ECF 82. On August 3, two days after we filed that motion, Defendant's counsel sent proposed edits to a draft protective order that we had originally shared on June 27. Within the hour, we followed up with two clarifying questions about those edits. As of today, we have not heard back from Defendant's counsel.

KAPLAN HECKER & FINK LLP                                                                                2

Defendant, by contrast, has barely participated in the discovery process at all. He served his responses to Plaintiff's requests for production 17 days late, asserting an identical boilerplate response to each and every request. Included in his pro forma objections were overbroad and inexplicable privilege assertions, such as his invocation of the deliberative process and executive privileges in response to requests covering time periods before and after Defendant's presidency. Although we met and conferred with Defendant's counsel on July 21 and 22 in order to better understand Defendant's position, his responses remained murky. So we followed up by letter on July 29, asking whether Defendant was taking the position that there was not a single document in his possession, custody, or control responsive to any one of Plaintiff's 45 document requests, or whether Defendant was instead withholding documents on the basis of one or more objections. We made clear that if there were responsive documents that Defendant was not producing, he should state "with specificity the grounds for objecting to the request, including the reasons," and "whether any responsive materials are being withheld on the basis of [each] objection." Fed. R. Civ. Proc. 34(b)(2)(B)–(C); *see Michael Kors, L.L.C. v. Su Yan Ye*, No. 18 Civ. 2684, 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("A number of courts have held that an objection that does not appropriately explain its grounds is forfeited."). While we followed up on our letter on August 4, we still have not received a response. Our understanding is that Defendant remains unwilling to produce any documents in discovery, even once a protective order is in place.[3]

True to form, Defendant's late responses to Plaintiff's interrogatories were similarly deficient. Each response contained nearly identical boilerplate objections, with Defendant purporting to provide answers only to two interrogatories.[4] Of particular relevance here, Defendant contended that each of our interrogatories exceeded the scope of Local Rule 33.3 because "a *request for production or deposition*" is a "*more practical method of obtaining the information sought*" (emphasis added). The irony of this objection is obvious given that Defendant has stated that he does not intend to produce a single document.

That takes us to the issue of Defendant's deposition. While it is true that I stated back in February in Your Honor's courtroom that we did not need to take Defendant's deposition, we based that decision on our expectation that document discovery and interrogatory responses would be sufficient to elucidate Defendant's defenses in this case. But a deposition now appears to be the only way to do so, especially since we seek to avoid further delay by way of Rule 30(b)(6) depositions regarding document collection efforts or motions to compel, as even those steps, which may involve attempts at interlocutory appeal, still may not lead to the production of relevant information. To be clear, the deposition of Defendant need not take very long—what Plaintiff seeks to understand at this point is Defendant's theory of the case and the facts underlying it before the close of fact discovery. Accordingly, we plan to notice Defendant's deposition and will work with his counsel to facilitate that deposition, just as we have in another matter in this District in

[3] During one of our meet-and-confers, counsel for Defendant suggested that we should seek documents from the Trump Campaign. Although it is our position that documents held by the Trump Campaign, even if not in Defendant's possession, are certainly within Defendant's control, we have engaged in several meet-and-confers with counsel for the Campaign. We have not yet received any documents from the Trump Campaign either.
[4] In response to an interrogatory seeking the identification of witnesses with knowledge relating to Plaintiff's defamation claims, Defendant referred only to categories of witnesses associated with Plaintiff or Bergdorf Goodman, and he refused to provide any information about any witnesses with whom he has spoken about Plaintiff or this action. The only other interrogatory Defendant answered sought identification of physical evidence of Defendant's sexual assault, to which he stated that the assault "did not occur."

KAPLAN HECKER & FINK LLP                                                3

which we are counsel. *See* Joint Letter to M.J. Cave, *McKoy v. Trump Corp.*, No. 18 Civ. 9936 (S.D.N.Y. July 25, 2022), ECF 448 (updating court on efforts to complete party depositions).

**The ASA Action.** As noted above, we also wish to inform the Court that Plaintiff intends to file an action against Defendant pursuant to the Adult Survivors Act on the earliest possible filing date, or November 24, 2022. *See* N.Y. C.P.L.R. § 214-J. Like the Child Victims Act, N.Y. C.P.L.R. § 214-g, the Adult Survivors Act provides a one year "look back" in which adult survivors of sexual misconduct may bring civil claims that would otherwise be time-barred. In her ASA case, Plaintiff will assert causes of action for battery and intentional infliction of emotional distress (IIED)—the types of claims that the Adult Survivors Act was intended to cover. *Cf., e.g., Giuffre v. Andrew*, No. 21 Civ. 6702, 2022 WL 118645, at \*15–\*16 & n.98 (S.D.N.Y. Jan. 12, 2022) (Kaplan, J.) (denying motion to dismiss battery and IIED claims brought pursuant to parallel Child Victims Act).

Although we appreciate that it is unorthodox to preview a plan to file a new complaint before it is filed, we thought it would be useful to do so here given the significant factual overlap between the two cases. The allegations in the ASA complaint will be nearly identical to allegations already contained in Plaintiff's existing defamation complaint since both cases have at their core the same factual question: namely, did Defendant sexually assault Plaintiff in a Bergdorf Goodman dressing room in the mid-1990s. In fact, the only real differences between the two pleadings will be: (1) the absence of allegations concerning Defendant's defamatory statements in her ASA complaint; and (2) the nature of Plaintiff's damages, which is obviously different in a case for battery/IIED than it is in a case for defamation.[5]

Upon filing Plaintiff's ASA case, we will mark the two cases related under Local Civil Rule 1.6. Given the similarities between the two cases, we think that coordination of the actions will be appropriate. In our view, because the parties will already have substantially completed the discovery in this case by November 24, and the facts between the two cases overlap to such a significant degree, we believe that there is no reason why both actions could not be tried together starting on February 6, 2023, in accordance with the schedule established by the Court. ECF 77.

\*       \*       \*

We are available to answer any questions and of course would be happy to participate in a status/scheduling conference if Your Honor believes that would be useful.

Respectfully submitted,

Roberta A. Kaplan

cc:    Counsel of Record (via email)

[5] In the ASA case, Plaintiff will rely on a psychological expert for testimony regarding the harms that she experienced as a result of the underlying sexual assault. Plaintiff commits to providing Defendant that expert's report at the outset of her new action and will make that expert available for a deposition.