1    GUIDO CALABRESI, *Circuit Judge,* concurring:

2         I write a few words separately, and additionally, because lying behind the

3    certified question there is a question that – as far as I know – has not been answered

4    anywhere, and that raises profound problems as to judicial behavior and tort law.

5         Many jurisdictions have gone out of their way to broaden what behavior,

6    which is intentionally wrongful, is deemed to be within the scope of the

7    wrongdoer's employment. They have done so at times implicitly, *see, e.g., Ira S.*

8    *Bushey & Sons, Inc. v. United States,* 398 F.2d 167, 170 (2d Cir. 1968) (Friendly, J.),

9    and at times explicitly, *see, e.g, Taber v. Maine,* 67 F.3d 1029, 1031 (2d Cir. 1995),[1] in

10   order to place the loss on an employer who is able to pay, thereby assuring that

11   the loss is fully borne by the employee-employer nexus.[2] They have done this, as

---

[1] *See also Farmers Ins. Grp. v. County of Santa Clara,* 906 P.2d 440, 448 (Cal. 1995) ("In California, the scope of employment has been interpreted broadly . . . . [A]cts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment.").

[2] *See, e.g., Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.,* 755 F.2d 599, 605 (7th Cir. 1985) ("the employer, not the [employee,] should bear the cost of the torts of its employees as a required cost of doing business, insofar as such torts are reasonably foreseeable and the employer is a more efficient cost avoider than the injured plaintiff."); *Rodgers v. Kemper Constr. Co.,* 124 Cal. Rptr. 143, 148 (Ct. App. 1975) ("[E]mployer's liability should extend beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise because he, rather than the innocent injured party, is best able to spread the risk through prices, rates of liability insurance.").

CERTIFIED COPY ISSUED ON 09/27/2022

1    they have said, to "internalize" the loss completely. There are, though, a few rare

2    cases – and the one before us is one – where if the employee misbehavior is deemed

3    to be within the scope of employment, the opposite occurs. This is so when – as in

4    the instant case – the employer is for some reason immune from liability and the

5    employee is shielded from liability because employee's actions that are in the

6    scope of employment are treated as solely those of the employer.

7         I know of no court that has considered expressly whether, in such cases,

8    actions that would normally be deemed to be in the scope of employment should

9    not be so deemed – thereby leaving the employee liable. The effect of that would

10   be that the loss – though perhaps not fully internalized in the wrongdoing

11   employee-employer nexus because the employee is not capable of paying all of it

12   –would, nonetheless, be internalized to some extent. It would not be left totally on

13   the alleged victims.

14        There are obvious legal process problems with such an approach. The same

15   term "scope of employment" would be given different, inconsistent meanings,

16   solely because of the different liability result of applying a consistent meaning.

17   And that is certainly troublesome. But courts may nonetheless be tempted to do

18   this, if the reason their jurisdiction had broadened the meaning of scope of

1    employment was, in part, to *achieve* a liability-placing result. And it is not

2    inconceivable (though not necessarily desirable) that courts, in cases that under

3    their scope of employment precedents are close, might be affected by these

4    considerations in deciding what – in a particular case – was within the scope of

5    employment.

6    Since the law of the District of Columbia is unclear as to how broadly it

7    views scope of employment, we have certified that question to it. It is not for us

8    even to suggest that they should consider the above mentioned difficult

9    underlying tort law question. Hence, I did not raise it in the majority opinion. But

10   since I have, for nearly seventy years, been a torts scholar, and since this case is

11   about Torts and not Trump – its ultimate decision will affect ordinary people,

12   parties who are neither Presidents nor controversial – I have deemed it

13   appropriate to point to the existence of this recurring and troublesome question,

14   which the D.C. Court of Appeals is, of course, totally free to ignore.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

3