DENNY CHIN, *Circuit Judge*, dissenting:

On June 21, 2019, in a book excerpt published in *New York Magazine*, plaintiff E. Jean Carroll publicly accused former President Donald Trump of raping her some thirty years ago. Within hours and over the course of the next several days, Trump addressed the accusations publicly, saying, among other things, "[she] is trying to sell a new book -- that should indicate her motivation"; "[s]hame on those who make up false stories of assault to try to get publicity for themselves"; "she's made this charge against others"; and "she's not my type."

Carroll sued Trump for defamation in the New York State Supreme Court. About ten months later, the Government intervened in the action, certified that Trump had acted "within the scope of his office as President of the United States" when making the statements about Carroll, and removed the case to the federal court below. The Government thereafter moved to substitute the United States as party defendant and to dismiss Trump from the case under the Federal Employees Liability Reform and Tort Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679(d)(2), which modified the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. *See generally Levin v. United States*, 568 U.S. 503, 505-07 (2013). Through the FTCA, the United States waives its sovereign immunity

CERTIFIED COPY ISSUED ON 09/27/2022

for certain torts committed by "employee[s] of the Government" in the scope of their employment, 28 U.S.C. § 1346(b)(1), but, crucially, not for the tort of defamation, *id.* § 2680(h). If the Government is correct that the United States must be substituted for Trump in this case under the Westfall Act, then Carroll is left without any remedy, even if Trump indeed defamed her.

      The district court held that, first, the Westfall Act does not apply to the President of the United States because he is not an "employee of the Government" for these purposes and, second, even assuming the President is an employee for these purposes, Trump was not acting within the scope of his employment. The district court therefore denied the Government's motion. The majority now reverses as to the statute's applicability and holds as a matter of first impression that the FTCA encompasses the President.

      The President is "the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity." *Nixon v. Fitzgerald*, 457 U.S. 731, 751 (1982). The U.S. Constitution vests the "executive Power" in the President and empowers the President to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The "primary control" on the President is "dependence on the people" -- that

2

is, the electoral system.  *See The Federalist No. 51* (James Madison).  Our tripartite system of government "divide[s] and arrange[s]" the executive, legislative, and judicial branches so that "each may be a check on the other."  *Id.*  And, of course, the President may be impeached for high crimes and misdemeanors.  U.S. Const. art. II, § 4.  But save these constitutional "precautions," *The Federalist No. 51*, no one controls the President.  The hallmark of whether someone is an employee is the extent to which another controls him.  *See* Restatement (Second) of Agency § 220(1) (Am. L. Inst. 1958); Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006).  And, as discussed further below, Congress surely did not have the President in mind when it passed the Westfall Act, a statute intended to protect low-level, rank-and-file government employees and not the chief executive of the country who was already absolutely immune from damages for official acts.

Accordingly, in my view, the President is not an "employee of the Government" as the term is used in the FTCA.  I would therefore hold that the FTCA does not apply to the President under the plain meaning of the statute and affirm the district court's order denying the motion to substitute on that basis alone.  Moreover, if we were to reach the second issue, I would hold that at least

3

some of the statements here were not made within the scope of Trump's duties as President of the United States. I respectfully dissent.

I.

If Trump is an "employee of the Government" for FTCA purposes, he is not subject to Carroll's defamation suit, provided he was acting within the scope of his employment. If he is not an employee, he may be personally answerable. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 423 (1995).

I pay particular heed to the Supreme Court's admonition that courts should neither expand nor limit the scope of Congress's waiver of immunity. *See Smith v. United States*, 507 U.S. 197, 203 (1993); *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). A waiver of sovereign immunity must be "unequivocally expressed." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992); *see United States v. Mitchell*, 445 U.S. 535, 538 (1980). "[I]f Congress has not spoken or taken a position on a question through the language of the [FTCA], . . . the court should not, for to do so would be to legislate rather than to interpret." 1 Lester S. Jayson & Robert C. Longstreth, *Handling Federal Tort Claims* § 3.09 (2022 ed.).[1] Although "I seek to interpret the statute in ways that realize Congress's meanings and

---

[1] The House of Representatives relied on an earlier edition of this learned treatise when drafting the Westfall Act. *See* H.R. Rep. No. 100-700, at 5-6 (1988).

4

purposes to the best I can discern them," Robert A. Katzmann, *Judging Statutes* 91 (2014), I will not read it to cover something not found in the statutory language. Accordingly, if the President does not reside within the plain meaning of "employee," as the term is used in the FTCA, then the question of whether the President is covered must be left to Congress.

## II.

The FTCA and the Westfall Act are codified in scattered sections in titles 16 and 28 of the U.S. Code.[2] Through the FTCA, Congress granted the federal district courts exclusive jurisdiction over civil actions on claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "Employee of the Government" is defined to

> include[] (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . , and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when

---

[2] Section 831c-2 of title 16 concerns the Tennessee Valley Authority and is not pertinent here.

5

such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

*Id.* § 2671 (entitled "Definitions"). "Federal agency," in turn, "includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." *Id.*

The provision of the FTCA commonly called the Westfall Act then provides the mechanism by which the United States becomes the party defendant in a tort case brought against a Government employee: the Attorney General may certify "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* § 2679(d)(1)-(2).³ Upon that certification, the United States is "substituted as the party defendant," *id.*, and the action against the United States becomes the plaintiff's "exclusive" remedy, *id.* § 2679(b)(1).

---

³   The Attorney General's certification is conclusive for purposes of removal but subject to judicial review for purposes of determining scope of employment. *See* 28 § 2679(d)(2); *Osborn v. Haley*, 549 U.S. 225, 231 (2007); *Gutierrez de Martinez*, 515 U.S. at 434-35.

6

Finally, Congress enumerated claims for which the United States has not waived sovereign immunity. *See* 28 U.S.C. § 2680(h) (entitled "Exceptions"). As pertinent here, the exceptions include claims arising out of libel or slander.

### III.

The issue before the Court is whether the term "any employee of the Government" encompasses the President. I believe it does not.

"When interpreting a statutory provision, we begin with the language of the statute." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). "We determine whether the statutory language is ambiguous by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Zepeda-Lopez v. Garland*, 38 F.4th 315, 320 (2d Cir. 2022) (internal quotation marks omitted). "We consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Id.* (internal quotation marks omitted).

As an initial matter, the majority gives little weight to the work of the FTCA's definitional section, § 2671, which has been amended no fewer than six times since its enactment in 1948. *See* Pub. L. No. 81-72, ch. 139, sec. 124, § 2671, 63 Stat. 89, 106 (1949); Pub. L. No. 89-506, sec. 8, § 2671, 80 Stat. 306, 307

7

(1966); Pub. L. No. 97-124, § 2671, 95 Stat. 166, 1666 (1981); Pub. L. No. 100-694, 102 Stat. 4563, 4563-67 (1988); Pub. L. No. 106-398, sec. 665(b), § 2671, 114 Stat. 1654, 1654A-169 (2000); Pub. L. No. 106-518, sec. 401, § 2671, 114 Stat. 2410, 2421 (2000). The majority opines that § 2671 sets out an illustrative list of examples of people covered by the statute because the list is preceded by the word "includes." Maj. Op. at 23. It apparently then concludes that the examples have little bearing on the statute's compass, because it focuses next on the ordinary meaning of the term "employee" without further analyzing the detailed definitions set out in § 2671, save for one small point, discussed below. Maj. Op. at 26.

In my view, the FTCA's definitional section bears some meaning. I agree that the examples are illustrative rather than exhaustive. In other words, the meaning of "employee of the Government" includes, but is not limited to, federal agency officers or employees, members of the armed forces, and public defenders. *See* 28 U.S.C. § 2671. But I disagree that our analysis of the definitions ends there. I would look to the words illuminating "employee of the Government" to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015); *see United*

8

*States v. Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated."). Accordingly, I begin the search for the President in the definitional section, § 2671, before turning to the catch-all, "any employee of the Government," *see* § 1346(b)(1).

### A.

The President is not to be found in any of the detailed definitions provided by § 2671, which, as the majority observes, we are bound to follow. Maj. Op. at 20 (citing *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020)).

The President is not an officer or employee of "any federal agency" as that term is defined in the statute. The majority correctly notes that the "one category of covered employees under § 2671 that may apply to the President" is "officers or employees" of "the executive departments." Maj. Op. at 22. But the President is not an officer or employee of "the executive departments." In title 28, "department" means one of the executive departments enumerated in 5 U.S.C. § 101, which in turn defines "Executive departments" as Cabinet-level agencies. *See* 28 U.S.C. § 451.[4] The President is not an officer or employee of the

---

[4] Section 451 of title 28 refers to "section 1 of Title 5," which is now codified at 5 U.S.C. § 101. *See Hubbard v. United States*, 514 U.S. 695, 700 (1995).

9

Department of State, the Department of the Treasury, or any of the other agencies listed in § 101.[5]

Trump and the Government argue that "executive departments" means, simply, the "executive branch." But this interpretation does not withstand scrutiny. First, the FTCA defines "Federal agency" as including, among other things, "the executive departments" and "the judicial and legislative branches." 28 U.S.C. § 2671. This is a meaningful variation, and we must respect Congress's decision to use "different terms to describe different categories of people or things." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012). Second, the phrase "judicial and legislative branches" was added by amendment decades later, *see* Pub. L. No. 100-694, § 3, 102 Stat. 4563, 4564 (1988), reinforcing that Congress intended "executive departments" to be narrower than the entire executive branch. Third, if "executive departments" meant "executive branch," then the term "military departments" would be superfluous because the executive branch encompasses the military departments. *See* U.S. Const. art. II;

---

[5] Although the Supreme Court has narrowly expanded the meaning of "departments" to include the Securities and Exchange Commission, an entity not enumerated, it expressly cabined that expansion to "the purposes of the Appointments Clause." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010). That case does not invite us to interpret § 101 as harboring the President.

10

*see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). And fourth, the amendment of the FTCA to include "military departments" would be meaningless if "executive departments" meant "executive branch." *See Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

For these reasons, none of the definitions detailed in § 2671 encompasses the President.

B.

Failing to find the President within § 2671's ambit, I turn to whether the President is "any employee of the Government." *See* 28 U.S.C. §§ 1346(b)(1), 2679. I believe he (and, someday, she) is not, as the term is used in the FTCA.

I start with the statute's text. *See Zepeda-Lopez*, 38 F.4th at 320. As the majority observed, the word "employee" had roughly the same meaning when the FTCA was enacted as it does today: "one who works for wages or salary in the service of an employer." *Employee, Webster's New International Dictionary of the English Language* (2d ed. 1943); *see* Maj. Op. at 26-27. Here,

11

because the President works and receives a salary, the decisive element is whether he does so "in the service of an employer."

I would look to well-established agency principles to determine whether the United States and the President have an employer-employee relationship. *See United States v. Orleans*, 425 U.S. 807, 815 (1976). In *Orleans*, to assess whether a community action agency was an employee or a contractor for FTCA purposes, the Supreme Court asked not whether the agency "receive[d] federal money and must comply with federal standards and regulations, but whether its day-to-day operations [were] supervised by the Federal Government." *Id.* To use the archaic language of the Restatements, "the presence of those characteristics that traditionally determine the existence of the common-law relationship of master and servant will generally determine whether the wrongdoer is an employee of the Government for whose torts the United States must respond." 1 Jayson & Longstreth, *supra*, § 8.04. The Restatement (Second) of Agency defines a servant as follows: "A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right of control." Restatement (Second) of Agency § 220(1); *see also* Restatement (Third)

12

of Agency § 1.01 ("[T]he agent shall act on the principal's behalf and subject to the principal's control.").

Applying these principles, I conclude that the President is not an employee for FTCA purposes. To be clear, I would not hold that the President is a contractor instead of an employee -- rather, agency principles tell us that the nature of the President's constitutional role means that it does not "fit[] comfortably" within the FTCA's term "employee." *But see* Maj. Op. at 28.

The President is in no respect the "servant" of a "master." Although he earns a salary, that point is extinguished by the FTCA's "with or without compensation" clause. 28 U.S.C. § 2671. No one exerts control over the President, and no one supervises the President's day-to-day operations. The President is a constitutional officer who occupies the highest office in the United States. And the only discipline or punishment a President may face is impeachment for high crimes and misdemeanors. *See* U.S. Const. art. II, § 4. By contrast, when an employer opts to internalize costs flowing from an employee's tortious conduct, the employer has the authority to discipline the employee. Suppose a deli routinely pays a sum to customers who slip and fall, and a deli clerk routinely leaves a puddle of water on the deli floor after mopping. The deli

13

manager may give the clerk more definite instructions, reprimand him, and, if all else fails, fire him. The deli manager has recourse. Under the majority's holding, the United States would have no recourse against a golfing President who wallops one too many dignitaries. *See* Maj. Op. at 32 n.9. That the President cannot readily be punished by a supervisor indicates, to me, that Congress did not intend to include the President in the FTCA's compass when it moved to internalize costs.

The majority examines the ordinary meaning of "employee" as the word was used in 1946. It consults contemporaneous dictionaries and finds that they suggest "payment of consideration and formal service to an employer were the hallmarks of an employee relationship at the time of the FTCA's enactment." Maj. Op. at 27. But it then finds that Congress must have intended the term "employee" to sweep more broadly because § 2671 includes "persons acting on behalf of a Federal agency . . . whether *with or without compensation*." *Id.* Accordingly, the majority holds, the President "fits comfortably" within the statute's plain language. Maj. Op. at 28. To me, the inferential step between "employee should be broadly construed" to "employee includes the President" is too great a leap.

14

As to "the specific context in which [the] language is used," *Zepeda-Lopez*, 38 F.4th at 321, and as discussed above, the FTCA's definitional section illuminates what Congress meant by "employee."[6] *See* 28 U.S.C. § 2671. The variation between "executive departments" and "legislative and judicial" branches is strong evidence that Congress did not intend "employee" to mean every single person receiving a salary and benefits from the Government in a literal sense. *See Yates*, 574 U.S. at 536 (holding that, in light of a statute's illustrative list, "tangible object" covers "only objects one can use to record or preserve information, not all objects in the physical world"). If "employee" were meant to sweep so broadly, Congress could have changed the term "executive departments" to "executive branch" in one of its many amendments, thereby embracing everyone in all three branches of our tripartite system. It did not do so, and we must respect that decision.

This interpretation is also supported by "the broader context of the statute as a whole." *Zepeda-Lopez*, 38 F.4th at 322. In 1988, the Supreme Court

---

[6] As mentioned above, the majority does not analyze the definitions in § 2671 and instead concludes that the "focus of [its] inquiry" must rest on the ordinary meaning of "employee." Maj. Op. at 26. However, the majority cherry-picks the term "with or without compensation" from § 2671 when it wishes to broaden the dictionary definition of "employee." I would not be so selective and would let the entire definitional section clarify the term's meaning.

15

held that "federal employees" do not enjoy "absolute immunity from state-law tort actions." *Westfall v. Erwin*, 484 U.S. 292, 300 (1988). That same year, Congress enacted the Westfall Act "to address the potential liability of Federal employees" resulting from that decision. H.R. Rep. No. 100-700, at 2. In other words, Congress sought to restore federal employees to the status they had before the *Westfall* decision. But the *Westfall* decision had no effect on the potential liability of the President, who, as the Supreme Court held in 1981, is shielded by "absolute Presidential immunity from damages liability" for official acts. *Nixon*, 457 U.S. at 756. Accordingly, Congress had nothing to restore with respect to the President. There was no need for the Westfall Act to cover the President, for the President already had absolute immunity for actions taken within the scope of the presidency.

The legislative history also reveals that the House of Representatives was particularly concerned with the *Westfall* decision's "severe" potential impact on "lower-level," "rank and file workers," who might face claims related to filing errors or misplaced electrical cords. H.R. Rep. No. 100-700, at 3. This highly specific purpose strongly suggests Congress did not have the President in mind.

16

Finally, to the extent the FTCA is silent as to whether the President is covered, I would not interpret that silence to cover the President. The Supreme Court determined that the Administrative Procedure Act did not apply to the President because "textual silence [was] not enough to subject the President" to the statute. *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992). Instead, the Court "would require an express statement by Congress" before applying the statute to the President. *Id.*; *cf. Nixon*, 457 U.S. at 748 & n.27 (noting that Court would require "express legislative action" by Congress before assuming it meant to include President in certain federal statutes). I would require the same here.

The text of the FTCA is "far from clear." *Gutierrez de Martinez*, 515 U.S. at 434. But under the authorities cited above, Congress must have made an "express" or "unequivocal" statement before I would conclude that the President's official acts are subject to judicial review, even if that review is urged by the United States. Congress does not hide Presidents in mouseholes. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). For all these reasons, I believe my reading of the statute is the better reading.

IV.

Because I would hold that the FTCA does not apply to the President, I would not certify the scope-of-employment question to the D.C. Court of Appeals. Nevertheless, the issue merits a few words, in case the Court of Appeals chooses to answer the majority's call.

I agree with the majority and the parties that the law of the District of Columbia applies. The majority thoroughly details the lack of clarity in the District's law with respect to whether it follows "the traditional, narrower, view of *respondeat superior* [or] the more modern, broader, internalization view." Maj. Op. at 54-55. *See generally id.* at 38-55. All that may be true but, assuming the President is an employee for FTCA purposes, there is no question that Trump was acting outside the scope of his employment when he made at least some of the alleged defamatory remarks about Carroll's accusations.

The D.C. Court of Appeals applies agency principles to determine scope of employment. *See, e.g., FDS Rest., Inc. v. All Plumbing Inc.*, 241 A.3d 222, 236-38 (D.C. 2020). In 2020, the court applied the Third Restatement to "clarify principles of agency law," *see id.*, and so that is what I reference here. The Restatement (Third) of Agency provides, in pertinent part, that "[a]n employee's

18

act is not within the scope of employment when it occurs within an independent

course of conduct not intended by the employee to serve any purpose of the

employer." Restatement (Third) of Agency § 7.07.

Trump was not acting in the scope of his employment when he

made comments about Carroll and her accusations because he was not serving

any purpose of the federal government. Carroll alleges that Trump knew who

she was when he raped her; knew in June 2019 that he had assaulted her and that

his denials were false; deliberately lied, or spoke with no concern for the truth, in

accusing her of fabricating the accusation as part of a political conspiracy, a plot

to increase book sales, or in exchange for payment; deliberately lied, or spoke

with no concern for the truth, in charging that Carroll had falsely accused other

men of sexual assault; and made these comments because they were part of his

"playbook" of public response to credible reports that he had assaulted women.

In the context of an accusation of rape, the comment "she's not my type" surely is

not something one would expect the President of the United States to say in the

course of his duties. Carroll's allegations plausibly paint a picture of a man

pursuing a personal vendetta against an accuser, not the United States' "chief

19

constitutional officer" engaging in "supervisory and policy responsibilities of utmost discretion and sensitivity." *Nixon*, 457 U.S. at 751.

Despite its denial at oral argument, *see* Tr. at 3:9-11, the Government essentially urges adoption of a categorical rule: the President acts within the scope of employment whenever he "respond[s] to questions from the media on matters of public concern" and "to public critics." Gov't Brief at 33. Under this logic, so long as a President looks like he is engaged in conduct that is of the kind he is expected to perform -- like speaking to a reporter or attending a government meeting -- he is acting in the scope of his employment. But if that were so, then the mere presence of others would neutralize whatever a President did or said, for no President could be held accountable for damage done in front of a microphone or in an official meeting -- whether defaming a citizen, exposing classified national security information, or inciting a riot. This is not, and should not be, the law.

\* \* \* \* \*

The district court correctly denied the Government's motion to substitute because the President is not covered by the FTCA. I dissent.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

20