# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     rkaplan@kaplanhecker.com

September 30, 2022

**VIA ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

     Re: *Carroll v. Trump*, No. 20 Civ. 07311 (LAK) (JLC)

Dear Judge Kaplan:

  We write on behalf of Plaintiff E. Jean Carroll in opposition to Defendant Donald J. Trump's letter motion for a stay dated September 28, 2022. ECF 92. For the reasons below, we believe the motion should be denied.

  ***Defendant seeks to unilaterally reap the benefits of discovery by invoking an appeal that has been pending for twenty months.*** Defendant claims that discovery should be stayed because there is a "case-dispositive" appeal pending. But that has been true since November 2020, and current circumstances are not materially different now that the scope-of-employment issue has been certified to the D.C. Court of Appeals. In that time, Defendant has not hesitated to litigate in pursuit of his own advantage. On December 1, 2021, he moved to expand the scope of this action by adding an anti-SLAPP counterclaim against Plaintiff. ECF 59. And on April 1, 2022, after the Court denied that motion, Defendant affirmatively proposed to Plaintiff (and Plaintiff agreed) that the parties resume discovery. ECF 75. On May 5, the parties *jointly* stipulated to a schedule, which the Court adopted that same day. ECF 75-1, 76. Once again, all of this occurred while Defendant knew that a "case-dispositive" appeal was pending. *See* Letter from A. Habba, *Carroll v. Trump*, No. 20-3977 (2d Cir. July 20, 2022) (informing Second Circuit of ongoing discovery and acknowledging that "issues raised in this appeal are dispositive as to the underlying case").

  Moreover, Defendant has spent four months taking advantage of the very discovery process that he set in motion. He has obtained 30,469 pages of records from Plaintiff, obtained hundreds more pursuant to nonparty subpoenas, obtained 19 substantive interrogatory responses, and recently deposed a key nonparty witness. In contrast, Defendant produced just *eight* documents and four incomplete interrogatory responses; he otherwise stonewalled every document request and interrogatory, refused to turn over basic information about witnesses required by Local Civil

KAPLAN HECKER & FINK LLP

Rule 26.3(c)(3),[1] and violated every deadline that applied to his discovery responses without any credible excuse for his failure. Throughout, Defendant has objected to discovery requests on the ground that it was "more practical" to obtain the information Plaintiff seeks at "a deposition"—and so Plaintiff finally had to schedule Defendant's deposition for the first half of October.[2]

Now that Defendant has benefited substantially from a discovery process that he actively set in motion—and now that he faces the prospect of his own deposition, having stonewalled every other discovery mechanism—he suddenly says that the continued pendency of a "case-dispositive" appeal changes everything. Nonsense. The Second Circuit's ruling changed hardly anything: it left open the ultimate question that has been on appeal for twenty months—namely, whether the United States should have been substituted for Defendant. Defendant initiated discovery while the scope-of-employment question was on appeal, he sought to add a counterclaim while it was on appeal, and he obtained documents and testimony while it was on appeal. He should not be permitted to assert at the last minute that he is entitled to avoid a deposition because it remains on appeal.

***The argument that the Second Circuit decision requires substitution and a stay is both self-defeating and legally flawed.*** Defendant does not address any of the factors that a party typically must satisfy to obtain a stay. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Instead, he principally argues that because the Second Circuit vacated this Court's scope-of-employment decision and certified the scope-of-employment question to the D.C. Court of Appeals, the United States is now the proper defendant in this case. ECF 92 at 1–2.

As an initial matter, if Defendant were correct that the United States is now the defendant, then he would lack standing to seek a stay. Where a person "is not a party to [a] civil action," that person "does not have standing to move for a stay." *Doe v. Indyke*, No. 20 Civ. 00484, 2020 WL 5518384, at *2 (S.D.N.Y. Sept. 14, 2020). If the Court were to hold that the Second Circuit's decision somehow resulted in substitution of the United States, and if a party at that point were to seek a stay of proceedings, a different set of issues would arise. But for now, there is no basis for Defendant to seek both substitution and a stay of all proceedings in the case.

More fundamentally, Defendant is mistaken that substitution must occur "[b]y virtue of the Second Circuit's Decision." ECF 92 at 1. Although the language of the Westfall Act refers to what "shall" happen "[u]pon certification" by the Attorney General, 28 U.S.C. § 2679(d)(2), that language does not leave judges with the sole job of "rubber-stamp[ing]" the Attorney General's scope-of-employment certification. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 429, 115 S. Ct. 2227, 2234 (1995). In holding that such certifications are subject to judicial review, the

---

[1] For example, Defendant identified his son-in-law Jared Kushner as one of only six people with whom Defendant has purportedly ever spoken about Plaintiff or this action. We have requested the address and employer of Mr. Kushner and the other five witnesses—information that Defendant must disclose under Local Civil Rule 26.3(c)(3)—on six occasions since August 23. Defendant's counsel have repeatedly dodged our request, writing recently that they "have reached out to the appropriate parties and are still working to obtain this information."

[2] The current schedule for confirmed depositions is as follows: Plaintiff's deposition of Cande Carroll (October 4), Plaintiff's deposition of Stephanie Grisham (October 6), Plaintiff's deposition of Roberta Myers (October 12), Defendant's deposition of Carol Martin (October 12), Plaintiff's deposition of Jessica Leeds (October 13), Plaintiff's deposition of Natasha Stoynoff (October 13), Defendant's deposition of Plaintiff (October 14), and Plaintiff's deposition of Defendant (October 19).

KAPLAN HECKER & FINK LLP

Supreme Court disagreed that "[u]pon certification . . . the United States would automatically become the defendant." *Id*. In so ruling, the Supreme Court emphasized that "shall" does not always mean "must," and it sometimes means "should, will, or even may." *Id.* at 432 n.9. Accounting for statutory text and purpose, the Supreme Court held that certification "does not conclusively establish as correct the substitution of the United States as defendant." *Id.* at 434.

Indeed, many cases (including several cited by Defendant on appeal) demonstrate that when certification is contested, it occurs *after* the United States prevails on a motion to substitute. In *Council on American Islamic Relations v. Ballenger*, for example, the D.C. Circuit stated that "[*o*]*nce a court determines* that the federal employee acted within the scope of employment, the case is, *inter alia*, restyled as an action against the United States that is governed by the Federal Tort Claims Act." 444 F.3d 659, 662 (D.C. Cir. 2006) (emphasis added). The D.C. Circuit similarly explained in *Wuterich v. Murtha* that "*where a plaintiff fails* to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit." 562 F.3d 375, 381 (D.C. Cir. 2009) (emphasis added).

Tellingly, the United States followed that exact procedure here. On September 8, 2020, the United States filed a motion requesting "an order substituting the United States as defendant for President Donald J. Trump." ECF 3 at 1. It reiterated its "request[]" in its reply, ECF 21 at 15, and, in seeking adjournment of oral argument, referred to its "pending motion to substitute," ECF 25.[3] In Defendant's view, the United States never had to file any motion at all, and apparently seasoned Department of Justice lawyers misunderstood Westfall Act procedure. But the record is clear: the United States still has not obtained the relief it expressly requested, and the Second Circuit has not resolved the motion in its favor. Instead, it vacated (rather than reversed) this Court's ruling on the United States' motion to substitute, which at most reverts the status of that motion to "pending." *See, e.g.*, *Halebian v. Berv*, 869 F. Supp. 2d 420, 424 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 641 (2d Cir. 2013) (upon vacatur of original decision, issues raised by underling motion remained to be decided). In these circumstances, the United States has not been substituted in lieu of Defendant.

The language that Defendant quotes from *Osborn v. Haley*, 549 U.S. 225, 127 S. Ct. 881 (2007), is not to the contrary. *See* ECF 92 at 2. *Osborn* concerned whether certification is proper when a federal officer denies the occurrence of the allegedly tortious conduct. *Id.* at 231. Although the Court stated that the United States remained the defendant "unless and until the District Court determines that the employee, *in fact*, . . . engaged in conduct beyond the scope of his employment," the Court was a drawing contrast with a situation in which the employee "simply as alleged by the plaintiff" engaged in such conduct. *Id.* In other words, the Court was focused on what it took to rebut the certification as an evidentiary matter, and it did not depart from its reasoning in *Gutierrez* (discussed above). *Accord Bowles v. United States*, 685 F. App'x 21, 24 (2d Cir. 2017) (quoting *Osborn* in stating that certification "constitutes '*prima facie* evidence'").

---

[3] The United States and Defendant presented the same account on appeal. *E.g.*, U.S. Appellate Br. at 2 ("The district court rejected the United States' motion to be substituted as the defendant."); *id.* at 3 ("[T]he United States filed . . . a motion to have the United States substituted as the sole defendant."); *id.* at 23 ("In its opening motion papers, the United States sought substitution . . . ."); *id.* at 24 ("[T]he relevant claim is that the United Sates should properly be substituted . . . ."); Trump Appellate Br. at 2 ("[T]he United States moved in the District Court to substitute . . . ."); *id.* at 3 ("[T]he United States . . . filed a motion in that court to substitute the United States as defendant.").

KAPLAN HECKER & FINK LLP

4

***The traditional stay factors cut strongly against a stay.*** Defendant argues that because the D.C. Court of Appeals' "forthcoming ruling will be case-dispositive," it would be "highly prejudicial and inequitable for Defendant to engage in time-consuming and expensive pre-trial preparation—much less proceed to trial—until this issue has been conclusively resolved." ECF 92 at 2. That argument echoes many of the points that Defendant raised in his first motion to stay, which this Court denied, and for which Defendant did not seek reconsideration. ECF 47, 56; Text Order dated Sept. 15, 2021. Moreover, as explained above, it would be inequitable for Defendant now to obtain a stay based on the pendency of the same case-dispositive appeal that has been pending throughout his own efforts to add a counterclaim and engage in substantial discovery practice. A mere change in venue to D.C. for that ongoing appeal does not explain—and certainly does not justify—Defendant's about-face on whether discovery should continue while the appellate process unfolds.

The impracticality of cutting off discovery now that Defendant finally faces the prospect of satisfying his discovery obligations is only heightened by one more consideration: the relevance of the discovery here to the Adult Survivors Act case that Plaintiff will file in November. *See* ECF 89. The underlying dispute in both cases encompasses a single core disagreement—did Defendant sexually assault Plaintiff—and Defendant will have to testify under oath about his actions either way. To assuage concerns about duplicative discovery, and to the extent it wasn't already clear, Plaintiff agrees that any depositions in the present action may be used for Plaintiff's forthcoming action, thereby promoting efficiency and obviating the need for do-overs.

\*    \*    \*

This case began on November 4, 2019, and it could hardly be clearer that Defendant hopes to "run out the clock" until he is elected president again. Defendant's motion to stay represents more of the same delay tactics he has long used, *see* ECF 16 at 7–8—and reflects his broader pattern of contorting the law and facts to avoid any legal repercussions for his misconduct. It also reflects his continued bad faith. Indeed, even as Defendant's lawyers insisted in this case that "Presidents plainly are employees of the Government," Trump Appellate Br. at 6, his lawyers told the Justice Department on May 25, 2022, that he could not face criminal liability for misappropriating classified documents to Mar-a-Lago because "an element of this offense . . . is that the accused is 'an officer, employee, contractor, or consultant of the United States'" and "[t]he President is none of these," Ex. 1 to Unsealed Search Warrant at 2, *In re: Sealed Search Warrant*, No. 22 M.J. 8332 (S.D. Fla. Aug. 26, 2022), ECF 102-1. To hear Defendant tell it, he acted as an employee of the government in retaliating against Plaintiff for revealing that he had raped her decades earlier, and in declaring that she was too ugly to rape, but he could not possibly have been an employee of the government when he absconded from the White House with national security secrets.

Defendant's inconsistencies continue here. He cannot seek a stay based on a theory of substitution that would deprive him of standing to argue for a stay in the first place. He cannot obtain automatic substitution of the United States when the very cases he has previously cited describe a very different order of operations. And he cannot rely on the pendency of an appeal to block any further discovery when he has aggressively pursued counterclaims, document requests, and depositions during the pendency of that very same appeal.

KAPLAN HECKER & FINK LLP                                                                 5

                                                              Respectfully submitted,

                                                              /s/ Roberta A. Kaplan

                                                              Roberta A. Kaplan

cc:    Counsel of Record