UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                              Plaintiff,

              -against-                                      20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED: 10/12/2022               │
└─────────────────────────────────────┘
```

## MEMORANDUM OPINION

Appearances:

> Roberta Kaplan
> Joshua Matz
> Shawn Crowley
> Matthew Craig
> KAPLAN HECKER & FINK LLP
> *Attorneys for Plaintiff*
>
> Alina Habba
> HABBA MADAIO & ASSOCIATES LLP
> *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

              This is a defamation action against Donald J. Trump.  The question whether Mr.

Trump defamed the plaintiff depends largely upon whether Mr. Trump, as plaintiff claims, raped

her in a department store fitting room.  The matter is before the Court on a motion by Mr. Trump

to substitute the United States for him as the defendant and to stay the action.  A previous motion

by the United States to substitute itself for Mr. Trump was denied, so this is a second bite at that apple.

*Facts*

As this Court previously has observed, Mr. Trump has litigated this case since it began in 2019 with the effect and probably the purpose of delaying it.[1] Among the actions with this effect was this. After litigating the case in the state court for almost a year without any suggestion that the government of the United States had anything whatever to do with it, Mr. Trump "reportedly instructed William Barr, then [Mr. Trump's appointee as] Attorney General, to cause the United States to intervene and remove the case to this Court under the Westfall Act."[2] The Department of Justice ("DOJ") then moved "to substitute the United States as the defendant in place of Mr. Trump."[3] It did so on the basis of a DOJ certification (the "DOJ Certification") that (1) then President Trump was an "employee" of the United States as defined in the Westfall Act, and (2) the conduct of which the plaintiff complained was within the scope of that employment. Under the relevant statute, the DOJ certification "conclusively establish[es] scope of employment *for purposes of removal*"[4] – i.e., only for the purpose of effecting transfer of such a case from a state to a federal

---

[1]    *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2022 WL 748128, at *8-10 (S.D.N.Y. Mar. 11, 2022).

[2]    *Id.* at *9 & n.75.

[3]    *Id.* at *9.

[4]    28 U.S.C. § 2679(d)(2) (emphasis added).

court.  The legal correctness of the DOJ Certification was and remains subject to judicial review and ultimate determination of the courts.

This Court denied the government's motion to substitute on two independent grounds.  First, it held that Mr. Trump was not an "employee" of the United States within the meaning of the Westfall Act, a prerequisite to the substitution sought by the government.  Second, even if he were such an "employee," the alleged defamation was not committed within the scope of his employment – also a prerequisite to that substitution.[5]  Neither Mr. Trump nor DOJ suggested that the DOJ Certification *ipso facto* substituted the United States for Mr. Trump as the defendant.

Both the government and Mr. Trump appealed from that ruling.  Neither contended before the Court of Appeals that the DOJ Certification *ipso facto* substituted the United States for Mr. Trump as the defendant.  Mr. Trump, but not the government, moved in this Court for a stay pending appeal, but did not make the *ipso facto* substitution argument.  That motion was denied on September 15, 2021.[6]  Mr. Trump did not seek a stay from the Court of Appeals.

Since the denial of the government's substitution motion, this action has proceeded for more than a year without any claim that the government was substituted for Mr. Trump as the defendant simply by fact that the DOJ filed the DOJ Certification.  For example:

---

[5]    *See Carroll v. Trump*, 498 F. Supp.3d 422 (S.D.N.Y. 2020).

[6]    Dkt. 56.  All docket citations are to 20-cv-7311 (LAK) unless otherwise specified.

4

- Mr. Trump, in his individual capacity, caused his private attorneys to move, unsuccessfully, for leave to amend to assert a so-called SLAPP counterclaim against the plaintiff.[7]

- Mr. Trump, in his individual capacity, stipulated to a scheduling order pursuant to which he and his adversary obligated themselves, *inter alia*, to complete all depositions and fact discovery by agreed and court-ordered dates.[8]

- Mr. Trump, in his individual capacity, made no objection to the Court setting the case for trial, unless it were disposed of previously, for February 6, 2023.

These and other actions by Mr. Trump all were flatly inconsistent with any suggestion that the United States had been substituted as the party defendant. *If the DOJ Certification had the effect he now claims, Mr. Trump no longer was a party to this case and had no standing to do any of those things.*

On September 27, 2022, a divided panel of the Court of Appeals reversed this Court's holding that the president of the United States is not an "employee" of the government under the Westfall Act. While the Circuit vacated this Court's holding that Mr. Trump had not acted within the scope of employment, it did not do so on the merits. Instead, it certified that question to the Court of Appeals of the District of Columbia (the "D.C. Court of Appeals"), as the scope of

---

[7]

Dkt. 63 (mtn.); *Carroll v. Trump,* No. 20-cv-7311 (LAK), 2022 WL 748128 (S.D.N.Y. Mar. 11, 2022).

[8]

Dkt. 76.

employment issue is governed by the local law of the District.[9]  The question whether this Court's scope of employment holding was correct therefore remains open.

On the following day – 22 days before Mr. Trump's scheduled deposition in this case – Mr. Trump abruptly reversed course.  He moved before this Court to substitute the United States as defendant and immediately stay all proceedings in light of the Court of Appeals' decision.[10]  He now claims that the DOJ Certification, in and of itself, substituted the government for Mr. Trump as the defendant.  He contends that this action – and certainly his deposition – should be stayed because the resolution of the scope of employment issue might result in dismissal of this case.

The premise upon which Mr. Trump's motion rests – that the DOJ Certification, in and of itself, substituted the government for Mr. Trump as the defendant – is inconsistent with Mr. Trump's own actions, the actions of the government, the statute upon which Mr. Trump  relies, and the case law.  He nevertheless asserts it with such certitude that he characterizes his adversary's contrary argument as "asinine."[11]

---

[9]

See Carroll v. Trump, ___ F.4th ___, 2022 WL 4475079 (2d Cir. Sept. 27, 2022).

[10]

Letter Mtn. to Substitute and Stay Proceedings [Dkt. 92], at 1.

Defendant incorrectly persists in referring to the Court of Appeals' decision as "case dispositive."  It is nothing of the sort.  A case dispositive issue is one that will resolve a case, one way or the other, regardless of how it is decided.  The Court of Appeals decision resolving the "employee" question was not "case dispositive" at least because the scope of employment question remains unresolved.

[11]

Reply [Dkt. 94], at 1.

The Court will not tolerate by counsel such inappropriate language again.

*Discussion*

A.    *Substitution*

Mr. Trump contends that the Second Circuit's decision means that "the United States must automatically be substituted as the party defendant in this case."[12]   He relies on Section 2679(d)(1) of the Federal Tort Claims Act which, in relevant part, reads:

> "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action . . . commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."[13]

But he ignores Section 2679(d)(2) which, in relevant part, provides:

> "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action . . . commenced upon such claim in a State court shall be removed . . . to the [appropriate] district court of the United States . . . . Such action or proceeding shall be deemed to be an action . . . brought against the United States . . . , and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment *for purposes of removal.*"[14]

Taken as a whole, the statute makes clear that the DOJ Certification is conclusive only for purposes of removal and that it is subject to judicial review.

The consequences of reading the relevant provisions of the statute together are clear. As plaintiff responded to Mr. Trump's argument:

---

[12]

Dkt. 92, at 2 (internal quotation marks and citation omitted).

[13]

28 U.S.C. § 2679(d)(1).

[14]

*Id.* § 2679(d)(2) (emphasis added).

"Defendant is mistaken that substitution must occur '[b]y virtue of the Second Circuit's Decision.' ECF 92 at 1. Although the language of the Westfall Act refers to what 'shall' happen '[u]pon certification' by the Attorney General, 28 U.S.C. § 2679(d)(2), that language does not leave judges with the sole job of 'rubber-stamp[ing]' the Attorney General's scope-of-employment certification. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 429 [] (1995). In holding that such certifications are subject to judicial review, the Supreme Court disagreed that '[u]pon certification . . . the United States would automatically become the defendant.' *Id.* In so ruling, the Supreme Court emphasized that 'shall' [the word upon which Mr. Trump's entire argument depends] does not always mean 'must,' and it sometimes means 'should, will, or even may.' *Id.* at 432 n.9 [internal quotation marks omitted]. Accounting for statutory text and purpose, the Supreme Court held that certification 'does not conclusively establish as correct the substitution of the United States as defendant.' *Id.* at 434.

"Indeed, many cases (including several cited by Defendant on appeal) demonstrate that when certification is contested, it occurs *after* the United States prevails on a motion to substitute. In *Council on American Islamic Relations v. Ballenger*, for example, the D.C. Circuit stated that '*[o]nce a court determines* that the federal employee acted within the scope of employment, the case is, *inter alia*, restyled as an action against the United States that is governed by the Federal Tort Claims Act.' 444 F.3d 659, 662 (D.C. Cir. 2006) (emphasis added). The D.C. Circuit similarly explained in *Wuterich v. Murtha* that '*where a plaintiff fails* to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit.' 562 F.3d 375, 381 (D.C. Cir. 2009) (emphasis added).

"Tellingly, the United States followed that exact procedure here. On September 8, 2020, the United States filed a motion requesting 'an order substituting the United States as defendant for President Donald J. Trump.' ECF 3 at 1. It reiterated its 'request[]' in its reply, ECF 21 at 15, and, in seeking adjournment of oral argument, referred to its 'pending motion to substitute,' ECF 25. In Defendant's view, the United States never had to file any motion at all, and apparently seasoned Department of Justice lawyers misunderstood Westfall Act procedure. But the record is clear: the United States still has not obtained the relief it expressly requested, and the Second Circuit has not resolved the motion in its favor. Instead, it vacated (rather than reversed) this Court's ruling on the United States'[s] motion to substitute, which at most reverts the status of that motion to 'pending.' *See, e.g.*, *Halebian v. Berv*, 869 F. Supp. 2d 420, 424 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 641 (2d Cir. 2013) (upon vacatur of original decision, issues raised by underl[y]ing

motion remained to be decided).  In these circumstances, the United States has not been substituted in lieu of Defendant."[15]

Plaintiff's argument is correct.  At least where, as here, the correctness of a DOJ certification is disputed, the government need not be substituted for Mr. Trump unless *two* conditions are satisfied, viz. that the courts hold that defendant was an employee of the government and he is found to have acted within the scope of that employment.

The Second Circuit recently concluded that the answer to the first question in this case is "yes."[16]  But it did not resolve the second question, certifying it instead for decision by the D.C. Court of Appeals because "the District's law regarding vicarious liability is sufficiently unclear that [the Second Circuit is] unable to predict with any confidence how the District's highest court . . . would resolve this issue."[17]  The D.C. Court of Appeals may refuse to accept the certification, in which case the question would return to the Second Circuit for decision.  It may decide the question, one way or another.[18]  How the question ultimately will be resolved remains unknown. In the meantime, substitution would be premature, as judicial review of the DOJ Certification has not concluded.

Mr. Trump nevertheless quibbles with the procedure through which the Court took up the substitution issue when this case was removed to federal court.  He now – for the first time

---

[15]     Opp. [Dkt. 93], at 2-3.

[16]     Of course, even that decision is subject to the possibility of review.

[17]     *Carroll*, 2022 WL 4475079, at *6.

[18]     It conceivably might conclude that the scope of employment issue raises issues of fact requiring further district court proceedings.

– contends that the United States automatically was substituted as the party defendant on a "provisional" basis by virtue of the DOJ Certification. If the courts ultimately were to decide that he did not act within the scope of his employment, Mr. Trump then should be "resubstituted" as the defendant for the United States.[19]

　　　　　To be sure, Mr. Trump has identified at least one case in which a district court apparently followed such a procedure.[20] But the appellate decision in that case did not deal with the issue. Moreover, as explained by plaintiff in the passage quoted above, the United States here did not argue that it already had been substituted, provisionally or otherwise, for Mr. Trump. It instead made a motion to be substituted, a motion that required the Court's disposition.[21] Nor did it make an *ipso facto* substitution argument in its reply to plaintiff's opposition to its motion. Instead, it responded to the substance of plaintiff's arguments in opposition to substitution.[22] Mr. Trump took

---

[19]　　　Dkt. 94, at 2 (quoting *Aversa v. United States*, 99 F.3d 1200, 1208 (1st Cir. 1996)).

[20]　　　In that case, *Aversa v. United States*, the First Circuit reviewed *de novo* the district court's scope of employment determination. 99 F.3d at 1210. It observed that the district court had "provisionally substituted [the United States] as party defendant" and then permitted plaintiff to contest substitution with the aid of special discovery. *Id.* at 1206. The Circuit did not comment on the procedure beyond a conclusory reference to the potential for "the employee [to] be resubstituted" after judicial review. *Id.* at 1208. But the court's authority in support of the resubstitution mechanism is inapposite. The Circuit cited *Gutierrez de Martinez* but, in that very case – which stands for the proposition that scope of employment certification must be subject to judicial review – the Supreme Court noted that, "to avoid the consequences of *unrecallable substitution of the United States as the party defendant*, petitioners asked the District Court to review certification." 515 U.S. at 422 (emphasis added). In *Gutierrez de Martinez* of course, as in this case, substitution likely would "cause the demise of the action" because the claims at issue "fell within an exception to the FTCA's waiver of . . . sovereign immunity." *Id.*

[21]　　　Dkt. 3.

[22]　　　Reply in Support of Mtn. to Substitute [Dkt. 21].

10

no issue with the government's position or with the Court's determination that the government's

motion required the Court's leave for substitution of the United States for the defendant.  As noted,

neither the United States nor Mr. Trump made such an argument on appeal.[23]

In all the circumstances, the Court concludes that Mr. Trump's argument that the

government automatically was substituted for him as the defendant in this case, or even now must

be substituted for him, simply by virtue of the DOJ Certification is incorrect.  Moreover, even if

there were greater merit to his substantive contention, it would not lie with him to advance that

argument in the unusual circumstances of this case.


B.      *Stay of Proceedings*

Next, defendant urges the Court to issue an immediate stay of the proceedings for the

principal reason that "a dispositive issue" – namely, whether defendant was acting within the scope

of his employment – "remains pending and unresolved before the D.C. Court of Appeals . . . ."[24]

In so doing, he does not directly address the standard that governs this application.

In general, the question whether to stay proceedings is addressed to the trial court's

discretion:

> "[T]he power to stay proceedings is incidental to the power inherent in every court
> to control the disposition of causes on its docket with economy of time and effort for
> itself, for counsel, and for the litigants.  How this can best be done calls for the

---

[23]

            *See* No. 20-3977, Dkts. 45 (Brief of Appellant United States of America), 48 (Brief and Special Appendix for Defendant-Appellant [Donald J. Trump]).

[24]

            Dkt. 94, at 4.

exercise of judgment, which must weigh competing interests and maintain an even balance."[25]

In this case, the factors relevant to the grant or denial of a motion for a stay pending appeal provide guidance as to relevant considerations.  In ruling on such an application, a court considers four "well known" factors "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[26]  Read generously, defendant contends that he would be injured irreparably – through completing discovery and conceivably an eventual trial – unless the Court stays the proceedings.  We consider each factor in turn.

First, Mr. Trump has not shown the requisite strong likelihood of success.  His bare assertion that "a dispositive issue remains pending"[27] is not a "strong showing that he is likely to succeed on the merits."[28]  The question that has been certified to the D.C. Court of Appeals obviously could go either way, either in that forum or elsewhere.  Indeed, the fact that the District of Columbia law on scope of employment was unclear to the Circuit is the precise reason that two members of the Circuit concluded that they could not predict how it would be resolved and therefore would not itself decide the entire appeal.  And Mr. Trump has offered no reason for this Court to

---

[25]

    *Landis v. North Am. Corp.*, 299 U.S. 248, 254-55 (1936).

[26]

    *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[27]

    Dkt. 94, at 4.

[28]

    *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170.

conclude that the D.C. Court of Appeals or the Second Circuit will rule in his favor on scope of employment. Indeed, as Mr. Trump is aware from my prior decision, my view is that he did not act within the scope of his employment within the meaning of the law of the District of Columbia.

The bulk of Mr. Trump's arguments that are relevant to the stay question go to the second relevant factor, whether he would suffer irreparable injury if a stay were denied. He contends that the Westfall Act protection extended to many government employees sued for actions within the scope of their employment is intended to protect covered employees from both liability and the burdens of defending lawsuits, including those associated with pretrial discovery and trial.[29] That of course is true. But it begs the question.

Westfall Act protection requires both that the individual in question have been an "employee" of the government, an issue on which Mr. Trump thus far as prevailed, and also that he have acted within the scope of his employment. The latter issue remains unresolved. If it were resolved in his favor, any proceedings from now until such a determination, those proceedings – subject to the important comments made below – might prove to have been unnecessary. But any threat of "injury" as a result of further proceedings depends entirely on whether Mr. Trump prevails on the scope of employment issue, which at this juncture cannot be said to be likely. So the threat of any injury is quite uncertain. And that uncertainty is magnified by view of other circumstances.

As an initial matter, discovery in this case has virtually concluded. Mr. Trump has conducted extensive discovery of the plaintiff, yet produced virtually none himself. The principal open items, as the Court understands it, are the depositions of Ms. Carroll and Mr. Trump, scheduled

---

[29] Dkt. 92, at 2 (collecting cases).

for October 14 and 19, respectively.  Completing those depositions – which already have been delayed for years – would impose no undue burden on Mr. Trump, let alone any irreparable injury.

In any case, even Mr. Trump's contention that denial of a stay irreparably would injure what he characterizes as his immunity from suit – an "immunity" that would apply only if he prevails on the scope of employment – does not remedy the failure to show a meaningful threat of irreparable injury.

In *In re World Trade Center Disaster Site Litigation*, the Second Circuit held that the prospect that "any proceedings in the District Court pending appeal will irreparably impair, at least to some extent, [defendants'] alleged claim to immunity from suit" was to be balanced against the other factors under consideration.[30]  And, in that case, the Court of Appeals vacated the stay of proceedings in the district court pending appeal in light of its conclusions on the other factors and their relevant weights.[31]

Given his conduct so far in this case, Mr. Trump's position regarding the burdens of discovery is inexcusable.  On December 10, 2020, he moved for a stay pending appeal.[32]  His arguments then in support of that motion were almost identical to those advanced here.  This Court denied the motion on September 15, 2021.[33]  And since that motion was denied, he has taken discovery against plaintiff when the circumstances were not materially different.

---

[30]

    *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170.

[31]

    *Id.* at 171.

[32]

    Letter Mtn. for Stay [Dkt. 47].

[33]

    Text Order [Dkt. 56] (denying without prejudice defendant's motion for stay).

14

Third, a stay would cause substantial injury to plaintiff.  As the Court noted in an earlier opinion in this case, "defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him."[34]  Delay is a more serious concern in this case than usual for several reasons.  First, the appeal from my order denying substitution already has consumed 20 months from the day it was noticed and it is not over yet.  The remaining question has been certified to the D.C. Court of Appeals, a process that reasonably may be expected to be lengthy.  Perhaps most significant, both plaintiff and defendant – and perhaps other witnesses – already are of advanced age.  The defendant should not be permitted to run the clock out on plaintiff's attempt to gain a remedy for what allegedly was a serious wrong.

Finally, as noted at the outset, plaintiff claims that the defendant raped her years ago. As the statute of limitations had long since expired when she brought this action, the claim she asserts here is that which still was timely when this case was filed – a claim for defamation that allegedly occurred in the context of Mr. Trump's far more recent denial that he raped the plaintiff. That was the only remaining timely claim.  But the world has changed since this case began.

New York has enacted a revival statute, the Adult Survivors Act.  Effective November 24, 2022, a claim for damages for the alleged rape will be revived, free of the existing bar of the statute of limitations.  And plaintiff intends to sue Mr. Trump for the alleged rape itself.

---

[34] *Carroll v. Trump*, 2022 WL 748128, at *10.

The question whether Mr. Trump in fact raped Ms. Carroll is central to this case.[35] But it will be central also to the new case that almost certainly will be filed on November 24, 2022 or soon thereafter.  Accordingly, discovery and evidence relating to whether or not the alleged rape occurred is relevant to both cases.  Mr. Trump has pointed to no discovery or other proceedings that would occur in this case absent a stay that would not be relevant also to the imminent new case.

Mr. Trump argues that the Court should not consider the imminent new case in its analysis because plaintiff "has no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."[36] But the argument, in this context, is both incorrect and beside the point.  It is incorrect because calling the imminent new case a "new claim" blinks reality. The question whether Mr. Trump raped Ms. Carroll is the paramount issue in both cases.  And it is beside the point because discovery here would not "develop" evidence for a "new claim," even if the anticipated suit for damages for the alleged rape properly were so characterized, because the discovery that would occur here would go directly to the claim in *this* case.  Staying discovery in this case on the ground that it might be of use in a future litigation would make no sense.

---

[35] *Carroll*, 498 F. Supp. 3d at 426.

[36] Dkt 94, at 4.

For all of the foregoing reasons, Mr. Trump has not established that he has a strong likelihood of success.  In any event, the balance of the equities tips decidedly against him.

*Conclusion*

The defendant's letter motion [Dkt. 92] is denied.


SO ORDERED.

Dated:  October 12, 2022

_____

Lewis A. Kaplan
United States District Judge