**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
          -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>*Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
          -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT ..................................................................................................................1

    I.      DEFENDANT DID NOT WAIVE HIS ENTITLEMENT TO PRESIDENTIAL IMMUNITY .......................................................................................................1

    II.    ALTERNATIVELY, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE CONSTRUED AS A MOTION TO AMEND HIS ANSWER ........5

    III.   DEFENDANT'S ENTITLEMENT TO PRESIDENTIAL IMMUNITY IS WELL ESTABLISHED.............................................................................................7

    IV.   PLAINTIFF'S DEFAMATION PER SE CLAIM FAILS A MATTER OF LAW .7

          A.  Plaintiff Cannot Meet The Elements Necessary to Plead Defamation Per Se ...9

          B.  Plaintiff Consented to the Defamation.............................................................9

CONCLUSION..............................................................................................................10

**<u>TABLE OF AUTHORITIES</u>**

*Cases*

*Albert v. Loksen*,

239 F.3d 256, 265 (2d Cir. 2001) ...........................................................................8

*Anthony v. City of N.Y.*,

339 F.3d 129, 138, n. 5 (2d Cir. 2003). ...................................................................5

*Barret v. Harrington*,

130 F.3d 246, 254-55 (6th Cir. 1997);.....................................................................7

*Block v. First Blood Assocs.*,

988 F.2d 344, 350 (2d Cir. 1993). ...........................................................................5

*Carroll v. Trump*,

2-cv-10016 (LAK), 2023 U.S. Dist. LEXIS 6953, at *2 (S.D.N.Y. Jan. 13, 2023) ................6

*Clapper v. Amnesty Int'l USA*,

568 U.S. 398, 408, 133 S. Ct. 1138, 1146 (2013*)* ...................................................3

*Clinton v. Jones*,

520 U.S. 681, 694, 117 S.Ct. 1636, 1644 (1997)..................................................3, 7

*Trs. of ALA-Lithographic Pension Plan v. Crestwood Printing Corp.*,

127 F. Supp. 2d at 479 ............................................................................................5

*Dickson v. Slezak*,

73 A.D.3d 1249, 902 N.Y.S.2d 206, 208 (3d Dep't 2010) ......................................9

*Gonzalez v. Thaler*,

565 U.S. 134, 141, 132 S.Ct. 641, 648 (2012)........................................................5

*Harlow v. Fitzgerald*,

457 U.S. 800, n. 17 (1982)...................................................................................1, 2

*Ins. Corp. of Ireland, Ltd. v Cie. des Bauxites de Guinee,*

    456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982).....................................................4

*Kendall v. United States,*

    12 Pet. 524, 610, 9 L.Ed. 1181 (1838)..................................................................1

*Klayman v. Obama,*

    125 F.Supp.3d 67, 86 (D.D.C. 2015).....................................................................7

*Loving v. United States,*

    517 U.S. 748, 757 (1996).........................................................................................3

*Mandelblatt v. Perelman,*

    683 F. Supp. 379, 383 (S.D.N.Y. 1988) ...............................................................9

*Monahan v. N.Y.C. Dep't of Corr.,*

    214 F.3d 275, 283 (2d Cir. 2000) ..........................................................................6

*Nixon v. Fitzgerald,*

    57 U.S. 731, 743, 102 S.Ct 2690, 2698 (1982)............................................1, 2, 3, 5, 8, 9

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*

    813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) .........................................................9

*Raines v. Byrd,*

    521 U.S. 811, 820 (1997)........................................................................................3

*Rinaldi v. Holt, Rinehart & Winston, Inc.,*

    42 N.Y.2d 369, 379 (1977) ...................................................................................9

*Sleepy's LLC v Select Comfort Wholesale Corp.,*

    779 F3d 191, 199 (2d Cir 2015) ...........................................................................9

*State Teachers Ret. Bd. v. Fluor Corp.,*

    654 F.2d 843, 856 (2d Cir. 1981). ........................................................................5

*Teichner v. Bellan*,

    181 N.Y.S.2d 842, 846 (App. Div. 1959) ................................................................9

*Thompson v. Cty. of Franklin*,

    15 F.3d 245 (2d Cir. 1994). ......................................................................................4

*Thompson v. Trump,*

    590 F. Supp. 3d 46 (D.D.C. 2022) ............................................................................8

*Trump v. Mazars USA LLP,*

    140 S.Ct. 2019, 2035 (2020) ....................................................................................4

*Trump v. Vance,*

    140 S. Ct. 2412, 2426 (2020) ..................................................................................2

*United States v. Nixon,*

    418 U.S. 683, 703-713, 94 S.Ct. 3090, 3105-3110 (1974) ......................................3

*Youngstown Sheet & Tube Co. v. Sawyer*,

    343 U.S. 579, 72 S.Ct. 863 (1952) ..........................................................................3

**Rules and Statutes**

Rule 56 of the Federal Rules of Civil Procedure .............................................................1

Commentaries on the Constitution of the United States § 1563 ......................................2

Fed. R. Civ. P. 12(h)(3) ....................................................................................................4

Rule 15(a)(2) ................................................................................................................5, 6

Restatement (Second) of Torts, § 583 (1977) ..................................................................9

Defendant, Donald J. Trump ("Defendant") respectfully submits this memorandum of law in further support of his motion for summary judgment against Plaintiff, E. Jean Carroll ("Plaintiff").

## ARGUMENT

### I.   PRESIDENTIAL IMMUNITY CANNOT BE WAIVED

In her opposition brief, Plaintiff contends that Defendant waived his entitlement to absolute immunity by neglecting to raise it in his Answer, which was filed in the state court proceedings. However, this argument is flawed in its premise since the type of absolute immunity at issue here— presidential immunity—is a "functionally mandated incident of the President's unique office" which, when applicable, inherently precludes the judiciary from exercising jurisdiction over the head of the Executive Department for acts taken within the scope of his official duties. *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct 2690, 2698 (1982). Thus, given its unique rooting in the separation of powers doctrine, presidential immunity is not waivable.

The Supreme Court has declared that "[t]he President's unique status under the Constitution distinguishes him from other executive officials." *Nixon*, 457 U.S. at 750, 102 S.Ct at 2701; *see also Harlow v. Fitzgerald*, 457 U.S. 800, n. 17 (1982) (noting that presidential immunity "derives in principle part from factors unique to [the President's] constitutional responsibilities and station."). Indeed, "[t]he executive power is vested in [the] President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power." *Nixon*, 457 U.S. at 754, 102 S.Ct. at 2703 (citing *Kendall v. United States*, 12 Pet. 524, 610, 9 L.Ed. 1181 (1838)). In view of the "singular importance of his duties," there exists an overarching concern that "diversion of [the President's] energies by concern with private lawsuits would raise unique risks to the effective functioning of government." *Nixon*, 457 U.S. at 751, 102 S.Ct. at 2702; *see also Trump v. Vance*,

140 S. Ct. 2412, 2426 (2020) (noting that the "dominant concern" which justifies presidential immunity is the risk of "distortion of the [President's] 'decisionmaking process' with respect to official acts that would stem from 'worry as to the possibility of damages.'") (citation omitted).

Thus, unlike "[s]uits against other officials [which] . . . generally do not invoke separation-of-powers considerations," *Harlow*, 457 U.S. at n. 17 (1982), presidential immunity is an "essential Presidential prerogative" that is firmly "rooted in the constitutional tradition of the separation of powers," *Nixon*, 457 U.S. at 743, 749, 102 S.Ct. at 2698, 2701. As explicated by the Supreme Court in *Nixon v. Fitzgerald*:

> "There are . . . incidental powers, belonging to the executive department, which are necessarily implied from the nature of the functions, which are confided to it. Among these, must necessarily be included the power to perform them . . . The president ***cannot***, therefore, be liable to arrest, imprisonment, or detention, while he is in the discharge of the duties of his office; and for this purpose his person must be deemed, in civil cases at least, to possess an ***official inviolability***."

*Id.* at 749, 2701 (citations omitted) (emphasis added).

The *Nixon* court went on to explain that a court is divested of jurisdiction in cases where presidential immunity applies, as the separation of powers doctrine flatly prohibits a court from imposing civil liability upon a President for his official acts:

> [O]ur cases [] have established that a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests—as when the Court acts, not in derogation of the separation of powers, but to maintain their proper balance . . . or to vindicate the public interest in an ongoing criminal prosecution . . . the exercise of jurisdiction has been held warranted. ***In the case of [a] merely private suit for damages based on a President's official acts, we hold it is not.***

*Id.* at 754, 2703 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863 (1952); *United States v. Nixon*, 418 U.S. 683, 703-713, 94 S.Ct. 3090, 3105-3110 (1974)) (emphasis added).

2

The synthesis between presidential immunity and the separation of powers doctrine was further confirmed in *Clinton v. Jones*, when the Supreme Court clarified that the "dominant concern" in *Nixon* was not that a sitting President might be "distracted by the need to participate in litigation during the pendency of his office" but that his "decisionmaking process" may be distorted due to "needless worry as to the possibility of damages actions stemming from any particular official decision." *Clinton*, 520 U.S. at 694, 117 S.Ct. at 1636. While the *Clinton* court concluded that President Clinton was not entitled to presidential immunity, the Court's decision was premised upon its finding that the conduct at issue had taken place *before* President Clinton was in office; therefore, the Court reasoned, "[w]hatever the outcome of this case, there is ***no possibility*** that the decision will curtail the scope of the official powers of the Executive Branch." *Clinton*, 520 U.S. at 682, 117 S.Ct. at 1638 (emphasis added); *see also Loving v. United States*, 517 U.S. 748, 757 (1996) (stating "the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties" (citations omitted)).

The Supreme Court's holdings in *Nixon* and *Clinton* are consistent with the principle that the separation of powers doctrine is a creature of Article III standing which "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 1146 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."); *see also Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers.") (internal quotation marks omitted). Article III standing, in turn, is an issue of subject matter jurisdiction. *Ins. Corp. of Ireland, Ltd. v. Cie. des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982) ("Subject-matter jurisdiction, then, is an Art. III as well as a statutory

requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."); *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 n.3 (2d Cir. 1994) (noting that courts have an "independent obligation to insure that federal jurisdiction is not extended beyond the limits of Article III.").

Subject matter jurisdiction, critically, is a jurisdictional necessity that cannot be waived. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S.Ct. 641, 648 (2012) ("Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety.")*; Ins. Corp. of Ireland*, 456 U.S. at 702, 102 S.Ct. at 2099 ("No action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.") (citations omitted)).

Here, even though Defendant has been sued in his individual capacity, the separation of powers concerns are implicated all the same. Indeed, the "interbranch conflict here does not vanish simply because . . . the President sued in his personal capacity." *Trump v. Mazars USA LLP*, 140 S.Ct. 2019, 2035 (2020). "The President is the only person who alone composes a branch of government," and therefore "'[t]he interest of the man' is often 'connected with the constitutional rights of the place.'" *Id.* (quoting *The Federalist* No. 51). Nor is it of any moment that Defendant is a former President, as opposed to a sitting President, since the Supreme Court has affirmed that "a *former* President of the United States is entitled to absolute immunity from damages liability predicated on his official acts." *Nixon*, 457 U.S. at 749; *see also Clinton*, 520 U.S. at 693 ("[T]hat

rationale provided the principal basis for our holding that a *former* President of the United States was 'entitled to absolute immunity for damages liability predicated on his official acts.'") (citing *Nixon*, *supra*) (emphasis added).

In short, whether presidential immunity applies in this case is a non-waivable question of subject matter jurisdiction. If it does not apply, the case may properly proceed to trial. If it does, however, then judicial review of Defendant's official acts as President would "inevitably inhibit the processes of the Executive Branch decision making and impede the functioning of the Office of the President." *Nixon*, 457 U.S. at 763 (Burger, J., concurring). Therefore, this Court is "obligated to consider *sua sponte*" this issue, and to consider whether exercising its jurisdiction is proper under the separation of powers doctrine. *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S.Ct. 641, 648 (2012) (citations omitted).

## II.  ALTERNATIVELY, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE CONSTRUED AS A MOTION TO AMEND HIS ANSWER

In the alternative, should this Court accept Plaintiff's position regarding waiver, Defendant should be permitted to assert presidential immunity as a defense in the interest of justice. Pursuant to Rule 15(a)(2), a "court has discretion, when a party omits a defense, to nevertheless allow the defense at any time 'when justice so requires.'" *Trs. of ALA-Lithographic v. Crestwood Printing*, 127 F. Supp. 2d 475, 478-79 (S.D.N.Y. 2001). Further, a "district court may, in its discretion, construe a motion for summary judgment as a motion pursuant to Fed. R. Civ. P. 15(a) for leave to amend the defendant's answer." *Anthony v. City of N.Y.*, 339 F.3d 129, 138, n. 5 (2d Cir. 2003).

In deciding whether to exercise such discretion, a court considers "the presence or absence of such factors as undue delay, bad faith, undue prejudice to opposing party, or futility of amendment." *Crestwood Printing Corp.*, 127 F. Supp. 2d at 479 (citations omitted). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district

court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Instead, a court must consider whether amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Each factor weighs heavily in favor of permitting the Defendant to raise the defense of presidential immunity. *First*, Plaintiff would not be required to expend any additional resources to conduct discovery and prepare for trial. Indeed, Plaintiff's counsel has already represented that "discovery in the present action has already addressed almost all of the issues relevant to the Second Action." *See* ECF No. 98. *Second*, permitting Plaintiff to raise this affirmative defense would not delay resolution of the dispute, but instead accelerate it. If indeed Defendant was acting within the "outer perimeter" of his presidential duties when addressing the media on a matter of public concern—a point which is firmly supported by decades of constitutional jurisprudence— then this matter is resolved and the litigation is concluded. *Third*, Plaintiff would not be prevented from bringing a timely action in another action. Indeed, Plaintiff has already filed a second action, *Carroll v. Trump*, No. 22-cv-10016 (Carroll II), in which this Court stated that the issues in both cases are "exactly the same." *See Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 U.S. Dist. LEXIS 6953, at *2 (S.D.N.Y. Jan. 13, 2023).

Further, under Rule 15(a)(2), the Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) Here, as recognized by the Supreme Court, there exists "the greatest public interest in providing an official "the maximum ability to deal

fearlessly and impartially with the duties of his office." *Nixon*, 457 U.S. at 749. This overriding

constitutional concern necessitates a determination on the merits.

As such, Defendant respectfully requests that, in the alternative, this Court should construe

Defendant's Motion for Summary Judgment as a motion pursuant to Fed. R. Civ. P. 15(a) for leave

to amend his answer.

### III.   DEFENDANT'S ENTITLEMENT TO PRESIDENTIAL IMMUNITY IS WELL ESTABLISHED

As set forth in considerable length in Defendant's moving papers, Defendant's entitlement

to presidential immunity is firmly supported by Supreme Court precedent. Plaintiff attempts to

circumvent this fact by characterizing Defendant's alleged conduct as malicious, retaliatory or

otherwise wrongful. Yet, in doing so, Plaintiff fails to recognize that "immunities are grounded in

'the nature of the function performed," rather than in the lawful or unlawful motivations of the

person performing them. *Clinton*, 520 U.S. at 693. Indeed, presidential immunity is "not overcome

by 'allegations of bad faith or malice.'" *Klayman v. Obama*, 125 F.Supp.3d 67, 86 (D.D.C. 2015)

(quoting *Barret v. Harrington*, 130 F.3d 246, 254-55 (6th Cir. 1997); even "alleged wrongful acts

. . . lay well within the outer perimeter" of the President's authority. *Nixon*, 457 U.S. at 757. Thus,

despite Plaintiff's best effort to argue otherwise, inquiry into the subjective motive or intent

underlying Defendant's alleged conduct is simply improper. *See Nixon*, 457 U.S. at 756 ("[A]n

inquiry into the President's motives could not be avoided under the kind of 'functional' theory

asserted both by respondent and the dissent. Inquiries of this kind could be highly intrusive.").

Plaintiff's remaining contentions that presidential immunity should not apply here are

unavailing. Indeed, the Supreme Court has stressed that presidential immunity it is "a functionally

mandated incident of the President's unique office, rooted in the constitutional tradition of the

separation of powers and supported by our history" and has acknowledged that there "exists the

greatest public interest" in upholding the protections afforded thereunder. *Nixon*, 457 U.S. at 749. In fact, the Supreme Court has specifically noted that the *lack* of presidential immunity would be a "detriment[] not only [to] the President and his office, but also the Nation that the Presidency was designed to serve." *Id.* at 753. It has also squarely rejected Plaintiff's contention that the application of presidential immunity here would "dishonor the Constitution." Pl. Mem. at 27; *compare to Nixon*, 457 U.S. at 758 ("The existence of alternative remedies and deterrents *will not place the President 'above the law*.'") (emphasis added).

Further, Plaintiff misstates the holding of *Thompson v. Trump*, 590 F. Supp. 3d 46 (D.D.C. 2022). Contrary to Plaintiff's arguments, the *Thompson* court affirmed that the president's speech is an "unquestionably a critical function of the presidency." *Id.* at 79. It further recognized that "to deny a President immunity from civil damages is no small step." *Id*. at 83. In *Thompson*, the court ultimately determined that the Defendant was not entitled to absolute immunity because they were done in his capacity as a candidate and "***entirely*** concern his efforts to remain in office for a second term." *Id*. at 84 (emphasis added).

At bottom, it cannot conceivably be argued that the Defendant's statements bore "no relation to the operation and administration of government." *See* Pl. Mem. at 20. Indeed, Plaintiff made her accusations a matter of public concern, by publishing a magazine article and book levying serious accusations against Defendant which undoubtedly brought his fitness to govern into question. Defendant's rebuttals were then issued in a White House press release and in response to reporters' questions at the White House. A holding limiting the President's ability to defend himself from grave accusations of this kind, which bring into question his fitness for office and ability to lead, would forever fetter the Presidency.

IV.     **PLAINTIFF'S DEFAMATION PER SE CLAIM FAILS A MATTER OF LAW**

**A. Plaintiff Cannot Meet The Elements Necessary to Plead Defamation Per Se.**

Plaintiffs argument that the challenged statements are defamatory per se similarly fail.  A claim for "defamation" is an umbrella term that incorporates the "twin torts of libel and slander." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citations omitted). To invoke the exceptional case of a per se defamatory statement, the allegation must be: "(1) a statement charging an individual with a serious crime; (2) a statement that tends to injure another in his or her trade, business, or profession; (3) a statement that claims an individual has a 'loathsome disease;' or (4) a statement 'imputing unchastity to a woman.'" *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011).  Libel per se, on the other hand, consists of a statement that "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart*, 42 N.Y.2d 369, 379 (1977).

Of the three challenged statements, only the June 21 statement can be considered under the libel per se standard, while the remaining two, which were spoken to reporters in response to their questions, should be considered under the more stringent slander per se standard. It is respectfully submitted that the challenged statements fail to meet either standard. As set forth in Defendant's original motion, the Statements do not reference Plaintiff's profession as an advice columnist, nor do they touch upon Plaintiff's "Ask E. Jean" column. The Statements are instead serve as a direct rebuttal to Plaintiff's allegations and serve as no more than a general characterization of Plaintiff's characters or qualities. As such, the Statements cannot constitute defamation per se.

**B. Plaintiff Intentionally Solicited the Alleged Defamatory Statements.**

It is well established that consent is a valid defense to defamation under New York law. *Sleepy's LLC v Select Comfort Wholesale Corp.*, 779 F3d 191, 199 (2d Cir. 2015) (citation

omitted); s*ee also Teichner v. Bellan,* 181 N.Y.S.2d 842, 846 (App. Div. 1959) (describing consent as "an absolute immunity or an absolute privilege upon the defendant."); Restatement (Second) of Torts, § 583 (1977) ("[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation.").

Plaintiff's conduct here squarely falls within this sphere, as Plaintiff's conduct demonstrates that she sought to gain maximum exposure for her claims and place Defendant into a position where he was forced to defend himself against her heinous allegations. Despite claiming that her assault took place in 1995, she waited over two decades before bringing these allegations to light, when the Defendant was two years into his presidency. She chose to publicize her claims in a manner that would receive maximum publicity – by releasing them through New York magazine "which knows how to break news." *See* Habba Dec., Ex. D. at 3. As such, the Defendant was compelled to respond and rebut Plaintiff's accusations. Her intent to further inflame the public was made evident when Plaintiff made rounds through the media to advance her claims even after the challenged statements were made.[1] Therefore, Defendant has successfully demonstrated that Plaintiff intentionally solicited the alleged defamatory statements from Defendant.

## **CONCLUSION**

For the foregoing reasons, Defendant, Donald J. Trump, respectfully requests that summary judgment be awarded in his favor.

Dated: January 19, 2023                    Respectfully submitted,

                                                            Alina Habba, Esq.
                                                            Michael T. Madaio, Esq.
                                                            HABBA MADAIO & ASSOCIATES LLP

---

[1] By way of example, Plaintiff was interviewed on primetime CNN by well-known commentator Anderson Cooper on June 24, 2019,. *See https://cnn.it/3XLaHrF.*