UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff*,

v.

DONALD J. TRUMP, in his personal capacity,

        *Defendant*.

No. 20 Civ. 7311 (LAK) (JLC)

**PLAINTIFF E. JEAN CARROLL'S SURREPLY BRIEF IN OPPOSITION
TO DEFENDANT DONALD J. TRUMP'S MOTION FOR SUMMARY JUDGMENT**

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................. 1
ARGUMENT ................................................................................................................................ 1
CONCLUSION ............................................................................................................................. 6

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Beechwood Restorative Care Center v. Leeds*,
  436 F.3d 147 (2d Cir. 2006) ............................................................................................. 2

*Boyd v. Carroll*,
  624 F.2d 730 (5th Cir. 1980) ............................................................................................ 2

*Bradley v. Fisher*,
  80 U.S. 335, 20 L. Ed. 646 (1871) ................................................................................... 2

*Burnham v. Friedland*,
  No. 21-3888, 2022 WL 3046966 (6th Cir. Aug. 2, 2022) ................................................ 2

*Clinton v. Jones*,
  520 U.S. 681, 117 S. Ct. 1636 (1997) .............................................................................. 3

*Cohen v. United States*,
  2022 WL 16925984 (S.D.N.Y. Nov. 14, 2022) ................................................................ 3

*Collyer v. Darling*,
  98 F.3d 211 (6th Cir. 1996) .............................................................................................. 2

*Cozzo v. Tangipahoa Parish Council*,
  279 F.3d 273 (5th Cir. 2002) ............................................................................................ 2

*Desi's Pizza, Inc. v. City of Wilkes-Barre*,
  321 F.3d 411 (3d Cir. 2003) ............................................................................................. 2

*District of Columbia v. Trump*,
  959 F.3d 126 (4th Cir. 2020) ............................................................................................ 3

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428, 131 S. Ct. 1197 (2011) .............................................................................. 4

*Imbler v. Pachtman*,
  424 U.S. 409, 96 S. Ct. 984 (1976) .................................................................................. 2

*In re Kendall*,
  712 F.3d 814 (3d Cir. 2013) ............................................................................................. 2

*K&D, LLC v. Trump Old Post Office, LLC*,
  2018 WL 6173449 (D.D.C. Nov. 26, 2018) ..................................................................... 3

*McCray v. Biden*,
    574 F. Supp. 3d 1 (D.D.C. 2021) .................................................................................. 4

*Nevada v. Hicks*,
    533 U.S. 353, 121 S. Ct. 2304 (2001) ...................................................................... 1, 2

*Nixon v. Fitzgerald*,
    457 U.S. 731, 102 S. Ct. 2690 (1982) .................................................................. 1, 3, 4

*Shmueli v. City of New York*,
    424 F.3d 231 (2d Cir. 2005) ......................................................................................... 2

*Thompson v. Trump*,
    590 F. Supp. 3d 46 (D.D.C. 2022) ............................................................................... 4

*Trump v. Thompson*,
    20 F.4th 10 (D.C. Cir. 2021) ........................................................................................ 4

*Trump v. Vance*,
    140 S. Ct. 2412 (2020) ....................................................................................... 1, 3, 5

*Tully v. Barada*,
    599 F.3d 591 (7th Cir. 2010) ....................................................................................... 2

*United States v. Reynolds*,
    345 U.S. 1, 73 S. Ct. 528 (1953) .................................................................................. 4

**Other Authorities**

Memorandum in Support of Motion to Dismiss on Behalf of Defendant in His Individual
    Capacity, ECF 112-1, *District of Columbia v. Trump*,
    No. 8:17 Civ. 01596 (D. Md. May 1, 2018) ................................................................ 4

Reply in Support of Motion to Dismiss on Behalf of Defendant in His Individual Capacity,
    ECF 118, *District of Columbia v. Trump*,
    No. 8:17 Civ. 01596 (D. Md. May 25, 2018) .............................................................. 4

**PRELIMINARY STATEMENT**

Defendant Donald J. Trump does not deny that he waived his absolute immunity defense. Nor does he deny that he sought strategic advantage in state court from his assurance that "no one is seeking to 'escape accountability here'" because "Plaintiff is free to pursue this action when the President is no longer in office." NYSCEF No. 103 at 3 (cleaned up). Instead, Trump asserts that absolute presidential immunity is jurisdictional and therefore cannot be waived. Reply at 1-5. This position is mistaken: it misreads *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 102 S. Ct. 2690, 2701 (1982); it departs from separation of powers principles and common law traditions; it is at odds with Trump's own filings in numerous cases; and it would produce anomalous consequences.

**ARGUMENT**

*Nixon v. Fitzgerald* held that absolute presidential immunity is a "functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." 457 U.S. at 749, 102 S. Ct. at 2701. In arriving at this view, the Supreme Court first surveyed its common law precedents concerning official immunity for judges and prosecutors. *See id.* at 744-48, 102 S. Ct. at 2698-2700. It then drew upon those same cases while discussing the "policies and principles" that supported its understanding of presidential immunity as a constitutional matter. *See id.* at 748-54, 102 S. Ct. at 2700-03; *see also Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020) (noting that the *Nixon* Court "drew a careful analogy to the common law absolute immunity of judges and prosecutors"). These common law cases thus constitute the background against which *Nixon* developed its presidential immunity doctrine.

Under those cases, absolute immunity (including for judges and prosecutors) has long been treated as non-jurisdictional in nature. *See* Carroll Br. at 10-11. As the Supreme Court emphasized in *Nevada v. Hicks*, "[t]here is no authority whatever for the proposition that absolute- and

1

qualified-immunity defenses pertain to the court's jurisdiction." 533 U.S. 353, 373, 121 S. Ct. 2304, 2317 (2001); *accord Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966, at *2 (6th Cir. Aug. 2, 2022) (Thapar, J., concurring) ("[J]udicial immunity isn't a jurisdictional doctrine; it's an affirmative defense that goes to the merits."). Consistent with that principle, courts have repeatedly explained that absolute immunity can be waived and forfeited based on litigation conduct. *See, e.g.*, *In re Kendall*, 712 F.3d 814, 822 n.4 (3d Cir. 2013) (Virgin Islands judge); *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010) (prosecutor); *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) (health department officials); *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 283 (5th Cir. 2002) (police); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) (state attorney general); *Boyd v. Carroll*, 624 F.2d 730, 732-33 (5th Cir. 1980) (judge). And federal courts have uniformly described absolute immunity as an affirmative defense that must be pleaded by the defendant-officer. *See* Carroll Br. at 11; *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005); *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 428 (3d Cir. 2003) (Alito, J.).

Those principles apply even though the absolute immunity of judges and prosecutors rests on traditions and justifications grounded in our constitutional structure. Judges enjoy absolute immunity to protect a core Article III principle: "[T]hat independence without which no judiciary can be either respectable or useful." *Bradley v. Fisher*, 80 U.S. 335, 347, 20 L. Ed. 646 (1871). Similarly, prosecutors (as quasi-judicial agents) are cloaked with immunity to avoid harassment that may lead them to "shade [their] decisions instead of exercising the independence of judgment required by [their] public trust." *Imbler v. Pachtman*, 424 U.S. 409, 422-23, 96 S. Ct. 984, 991 (1976). In both cases, the importance of the justifications for absolute immunity has not led courts to transmute the immunity into a jurisdictional rule; instead, courts have applied absolute immunity within its scope while recognizing that it may be waived or forfeited if not properly invoked.

Nothing about *Nixon* suggests a rupture from this established understanding of absolute immunity. To the contrary, *Nixon* flows from the same tradition—though rather than ground its immunity directly in the common law (which developed before the institution of the Presidency), it invoked our "constitutional heritage and structure." 457 U.S. at 748, 102 S. Ct. at 2700.

Since *Nixon*, moreover, courts and litigants have broadly evinced an understanding that absolute immunity is *not* jurisdictional in nature. In both *Clinton v. Jones* and *Trump v. Vance*, neither the briefs submitted by the parties nor the opinion issued by the Supreme Court described absolute presidential immunity as implicating subject matter jurisdiction. *See generally Clinton*, 520 U.S. 681, 117 S. Ct. 1636 (1997); *Vance*, 140 S. Ct. 2412. Nor has any federal appellate court held that absolute presidential immunity bears on subject matter jurisdiction—and when the issue has arisen, respected jurists have suggested that it does not. *See, e.g.*, *District of Columbia v. Trump*, 959 F.3d 126, 141 (4th Cir. 2020) (en banc) (Niemeyer, J., dissenting) ("[A]ny question of subject matter jurisdiction—including, as relevant here, the issue of Article III standing—must be considered *before* the merits of the [President's] immunity defense." (emphasis added)).

This logic is also reflected in district court decisions that have dismissed claims on the merits without first considering an absolute presidential immunity defense (which, if it were jurisdictional, would have to precede the merits). *See, e.g.*, *Cohen v. United States*, No. 21 Civ. 10774, 2022 WL 16925984, at *10 n.6 (S.D.N.Y. Nov. 14, 2022) (Liman, J.). Indeed, in at least one such case, the court noted that Trump had expressly agreed at oral argument that "absolute presidential immunity" was *not* a "threshold issue[] that must be decided before reaching the merits." *K&D, LLC v. Trump Old Post Off., LLC*, No. 17 Civ. 731, 2018 WL 6173449, at *3 n.2 (D.D.C. Nov. 26, 2018) (Leon, J.). And in the Emoluments Clause litigation, Trump raised an absolute immunity defense independently of his defenses framed as "jurisdictional," without once

3

referring to that defense as bearing on the court's jurisdiction. *See District of Columbia v. Trump*, No. 8:17 Civ. 01596 (D. Maryland), at ECF 112-1 and 118 (Trump's motion to dismiss briefing).[1]

To be sure, the *Nixon* Court styled part of its discussion as referring to "jurisdiction." *See* 457 U.S. at 753-54, 102 S. Ct. at 2703. But that was long before the Supreme Court's modern effort to "bring some discipline to the use of this term." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435, 131 S. Ct. 1197, 1202 (2011). Indeed, in this part of its discussion, *Nixon* did not invoke cases understood as addressing subject matter jurisdiction. *See* 457 U.S. at 753-54, 102 S. Ct. at 2703 (discussing the Steel Seizure case, the Nixon tapes case, and a case upholding the Presidential Recordings and Materials Preservation Act). *Nixon* instead referred to "jurisdiction" in the informal sense characteristic of that period—and as part of its broader weighing of interests to decide whether to recognize absolute immunity at all. This part of its reasoning does not reflect the articulation of a formal jurisdictional rule and has not since been understood as doing so.[2]

Nor would the separation of powers principles cited by *Nixon* support treating absolute presidential immunity as jurisdictional. As noted above, absolute immunity doctrines that secure other constitutional values are subject to waiver. *See supra* at 2. And other incidents of Article II, such as executive privilege, have also been interpreted as requiring affirmative invocation and being subject to intentional waiver. *See United States v. Reynolds*, 345 U.S. 1, 7-8, 73 S. Ct. 528, 532 (1953); *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021). More fundamentally, the policy concerns that led the Supreme Court to recognize absolute immunity in this setting—the risk of distracting a sitting President, or diverting him from fearless and impartial attention to his duties—

---

[1] In *Thompson v. Trump*, 590 F. Supp. 3d 46, 69 (D.D.C. 2022), though, Judge Mehta did include absolute immunity within his discussion of subject matter jurisdiction, seemingly in response to Trump's framing of the issue.

[2] The leading modern jurisdictional question in this context concerns not the absolute immunity of a former officeholder, but instead the very different question of when courts possess jurisdiction to issue declaratory or injunctive relief against the incumbent President. *See McCray v. Biden*, 574 F. Supp. 3d 1, 8-11 (D.D.C. 2021).

do not require that the immunity be nonwaivable. *See Vance*, 140 S. Ct. at 2425-26. Until this case, no current or former President has waived his absolute immunity from a civil damages suit, and only in rare cases would that be expected to occur. So there is little risk that Article II functions would be undermined or infringed by application of the traditional rule that absolute immunity is a non-jurisdictional affirmative defense that must be properly invoked by the President.

Further, if Trump's view were right, strange consequences would follow: courts would be obliged to *sua sponte* raise and adjudicate absolute immunity even if it were deliberately waived or disavowed (which might itself spark concerns about judicial intrusion on Article II prerogatives), and a court's failure to raise this issue *sua sponte* at the very outset of a lawsuit before addressing any merits defenses would be reversible error (in which case numerous federal courts have overstepped their jurisdiction). Given all this, where a President waives their absolute immunity, it is proper to hold them to it, particularly where that waiver is expressed in clear terms and was undertaken as part of a calculated gambit for some discernible strategic advantage.

Of course, that is what happened here: Trump not only failed to raise absolute immunity, but affirmatively told the state court that he did not seek to "escape accountability" and that Carroll was "free to pursue this action" after his tenure in office. NYSCEF No. 103 at 3. He made those representations as part of a calculated effort to increase the odds that the state court would stay all proceedings until the conclusion of his presidential term. After that tactic failed, he then waited until three full years into the case before even mentioning absolute immunity, and in the interim borrowed the power of the Court to undertake intrusive discovery into Carroll (and her friends and family) and sought to countersue her within this very proceeding on anti-SLAPP grounds. In these circumstances, whether applying ordinary waiver rules or any heightened standard (though Trump does not advocate for one), the Court should conclude that Trump has waived this defense.

5

## CONCLUSION

For the foregoing reasons, Trump's motion for summary judgment should be denied.

Dated: New York, New York
January 24, 2023

Respectfully submitted,

/s/ Roberta A. Kaplan

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*