# EXHIBIT 17

CONFIDENTIAL

Page 1

1   UNITED STATES DISTRICT COURT
            FOR THE
2      SOUTHERN DISTRICT OF NEW YORK
3   CIVIL ACTION NO. 20 Civ. 7311 (LAK)(JLC)
4         *** CONFIDENTIAL ***
5                                    VIDEOTAPED
    E. JEAN CARROLL,              DEPOSITION UPON
6                                 ORAL EXAMINATION
              Plaintiff,                OF
7                                 STEPHANIE GRISHAM
         v.
8
    DONALD J. TRUMP, in his
9   personal capacity,
10            Defendant.
    -------------------------------
11
12
13
14       TRANSCRIPT of the stenographic notes of
15   ANDREA F. NOCKS, a Certified Court Reporter and
16   Certified Realtime Court Reporter, Certificate No.
17   XI01573, taken virtually on Thursday, October 6,
18   2022, commencing at 11:52 a.m., Central Standard
19   Time.
20
21
22
23
24   Job No. P1-5497396
25

1   please let me know.  I'm used to it, you won't
2   offend me.
3              And if, for any reason, you don't
4   understand one of my questions, also just ask me and
5   I'll try to clarify.  It's important that the court
6   reporter which is on Zoom has the ability to take
7   down my questions and your answers, and every
8   question and answer has to be in words, no nodding
9   your head or something like that.  If you can
10  remember.
11       A.     Um-hum.
12       Q.     And I'll just key off the question,
13  or you probably heard the colloquy between me and
14  Ms. Habba about your mental state.
15             Is there anything that you, any kind
16  of medication or anything else that you are on right
17  now that would in any way impair your ability to
18  testify?
19       A.     I am on Tramadol right now.
20       Q.     What is Tramadol?
21       A.     It's a pain medication.
22       Q.     Why are you taking that?
23       A.     Because my foot is broken.
24       Q.     And when did you break your foot?
25       A.     Three weeks ago-ish.

CONFIDENTIAL

Page 10

1        Q.      Have you experienced any
2    hallucinations on Tramadol?
3        A.      No.
4        Q.      Have you had any blackouts on
5    Tramadol?
6        A.      No.
7        Q.      Have you experienced any other
8    symptoms -- how many days have you been on Tramadol?
9        A.      As needed, since I broke my foot.
10       Q.      And during that time, have you had
11   any other symptoms from Tramadol that would affect
12   your cognition, your ability to think, hear and
13   answer questions?
14       A.      No, I took a very low dose --
15       Q.      Thank you.
16       A.      -- for this purpose.
17       Q.      The other thing I want to tell you
18   especially --
19               (Court Reporter clarification.)
20    BY MS. KAPLAN:
21       Q.      The other thing I want to tell you,
22   Ms. Grisham, is that to the extent you need a break,
23   I hope not, but if you're in pain or need a break,
24   just let us know and we'll accommodate you.
25       A.      Thank you.

1   Ms. Kaplan, not you, Ms. Grisham is under the
2   influence of drugs, narcotics.  She just admitted
3   that on the record.
4                I understood from her attorney, Adam,
5   that she was not going to be deposed while she was
6   under the influence of any narcotics.  That was a
7   letter that she sent not only to me but on other
8   cases, and I understood that she would not be on
9   medication.
10               MR. VanHo:  No, my understanding is,
11  is that she's on medication, she's disclosed the
12  medication.  She took a lower dose this morning for
13  it.  And at the time we sent the letter with regards
14  to the other cases, it also had a travel
15  restriction.  Depositions were supposed to be in
16  Cleveland, not in Kansas.  And the problem with
17  travel had to do with the plane flight and all that
18  information.
19               There was an attempt to reschedule it
20  for Kansas; however, it was on such short notice, we
21  were not able to do so and fit in everybody's trial
22  calendar.  So it was a combination of factors that
23  went into it.
24               My understanding is she goes back on
25  the 29th for reevaluation and, but for right now

Page 13

1  she's taking a low dose and I've talked to her this
2  morning, I haven't had any problems communicating
3  with her.  She's answered all my questions.  She
4  does not appear to be under the influence of
5  anything that would impact her.
6              MS. HABBA:  All due respect to you,
7  you did state that part of the problem on another
8  case was the fact that she was on pain medication so
9  you did not want her to testify.  That was on an
10 unrelated case.  Isn't that correct?
11             MR. VanHo:  It was a combination, it
12 was a combination of factors.
13             MS. HABBA:  Right.
14             MR. VanHo:  And then she was on a
15 higher level at that point, too.
16             MS. HABBA:  All due respect, we are
17 not physicians, but I would prefer to postpone this
18 deposition until Ms. Grisham is not on medication
19 that impairs.  Drugs and narcotics are going to.
20 We're not physicians.  It's not your place or mine,
21 frankly, or Ms. Kaplan's.  I'm speaking to --
22             MS. KAPLAN:  You want me to call
23 Judge Kaplan, Ms. Habba?  This is my deposition.
24 I --
25             MS. HABBA:  I actually think we

CONFIDENTIAL

Page 29

```
 1   have occasion in that job to meet with Mr. Trump
 2   one-on-one.
 3              Did you also participate in meetings
 4   with other members of the administration?
 5        A.    Yes.
 6              MR. SWIFT:  Objection to form.
 7              MS. KAPLAN:  And what's the objection
 8   there, sir?
 9              MR. SWIFT:  I'm objecting as I did
10   previously due to her mental capacity based upon
11   Ms. Habba's prior statement.
12              MS. KAPLAN:  Okay.  That's an
13   objection that's noted for the record.  That's not
14   an objection to form.  An objection to form has to
15   do with how I ask the question.
16              MR. SWIFT:  Understood.  But you said
17   before, said now it has to be form and then -- or
18   privilege, so I am objecting based upon mental
19   capacity, and I could just keep that objection
20   throughout the proceeding 'cause I'm going to object
21   to every question until Judge Kaplan gets on the
22   line.
23              MS. KAPLAN:  Okay.  Can I have the
24   last Q and A read back?
25              (The following Question and Answer
```

1    Q.    And were you entitled to any other
2    compensation in connection with the book?
3    A.    I believe there's some kind of
4    royalties that happen after a certain period of
5    time, but I honestly don't know the ins and outs of
6    it.
7    Q.    Have you received any?
8    A.    No, I haven't received any.
9    Q.    Okay.  Have you received any money
10   other than the advance since the book has been
11   published from the publisher?
12   A.    No, no.
13   Q.    Okay.  And have you ever been
14   arrested before?
15   A.    Yes, twice.
16   Q.    Okay.  What was the first time?
17   A.    Reckless driving.
18   Q.    And what was the approximate time
19   period?
20   A.    Oh, gosh.  It was probably -- it's in
21   my book.  I wrote about it extensively in my book.
22   Like eight, nine years ago.  It's a guess.
23   Q.    Okay.  That's okay if you're
24   estimating.  That's fine.
25         And was there any sort of conviction

```
 1   in connection with that arrest?
 2        A.    We settled for -- we settled and we
 3   settled for reckless driving, so yes, I guess.
 4        Q.    Okay.  And what were the
 5   circumstances that led to the reckless driving?
 6        A.    I had had -- I was driving home from
 7   a movie, I had had two glasses of wine.  The speed
 8   limit was 45 and then it went to 35 very quickly and
 9   I didn't know, so I got pulled over 'cause I was
10   still going 45 in a 35.
11              The policeman asked me if I had been
12   drinking, I said yes and he gave me a breathalyzer,
13   and it's a no tolerance state in Arizona and I was
14   arrested.
15        Q.    And what was your blood alcohol
16   content?
17        A.    .08.  The very minimum.
18        Q.    And then what about the second time
19   when you were arrested?
20        A.    The second time was a DUI and that
21   was in 2014 or 2015.
22        Q.    Okay.  And where was it that that
23   arrest occurred?
24        A.    Scottsdale, Arizona.
25        Q.    And were you breathalyzed in
```

Page 90

```
 1    connection with the arrest?
 2            A.      Yes.
 3            Q.      And what was your blood alcohol?
 4            A.      .08.
 5            Q.      And were you ultimately convicted of
 6    a crime in connection with the arrest?
 7            A.      Yes, DUI.
 8            Q.      And have you, have you ever, have you
 9    ever had any substance abuse problems?
10            A.      No.
11            Q.      Have you ever treated for any
12    substance abuse problems?
13            A.      No.  Well, I had to take
14    court-ordered AA and a class that was court ordered,
15    so yes.
16            Q.      Okay.  And was that in connection
17    with the DUI?
18            A.      Correct, the second one, yes.
19            Q.      And have you ever sued anybody
20    before?
21            A.      No.
22            Q.      Have you ever been sued before?
23            A.      No.
24            Q.      Have you ever -- you've never been a
25    party to a lawsuit before?
```