# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff*,

    v.

DONALD J. TRUMP, in his personal capacity,

        *Defendant*.

No. 20 Civ. 7311 (LAK) (JLC)

## PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION IN LIMINE

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 1

   I.   THE COURT SHOULD ADMIT THE TESTIMONY OF STOYNOFF AND LEEDS ................................................................................................................................. 1

       A.   Stoynoff's and Leeds' Testimony About Trump's Sexual Assault Are Admissible Under Rule 415 .................................................................................. 1

       B.   Stoynoff's and Leeds' Testimony About Trump's Sexual Assault Are Admissible Under Rule 404(b)(2) as Evidence of Trump's *Modus Operandi* ............ 8

   II.   THE COURT SHOULD ADMIT THE ACCESS HOLLYWOOD TAPE ...................... 10

   III.   THE COURT SHOULD ADMIT THE VIDEOS FROM TRUMP'S CAMPAIGN SPEECHES ............................................................................................ 13

       A.   The Campaign Videos Are Admissible Under Rule 404(b)(2) ................................. 14

       B.   The Campaign Videos Do Not Raise Rule 403 Concerns ......................................... 16

   IV.   THE COURT SHOULD ADMIT EVIDENCE CONCERNING CARROLL'S EMOTIONAL HARM FOLLOWING THE UNDERLYING SEXUAL ASSAULT ..... 17

CONCLUSION ........................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Ardolf v. Weber*,
  332 F.R.D. 467 (S.D.N.Y. 2019) ........................................................................ 16

*Boyce v. Weber*,
  No. 19 Civ. 3825, 2021 WL 2821154 (S.D.N.Y. July 7, 2021) ..................................... 2, 11, 16

*Carroll v. Trump*,
  No. 20 Civ. 7311, 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022) ............................................. 3

*Carroll v. Trump*,
  No. 22 Civ. 10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) ........................................... 3

*Lombardo v. Stone*,
  No. 99 Civ. 4603, 2002 WL 113913 (S.D.N.Y. Jan. 29, 2002)................................................ 9

*Montanez v. City of Syracuse*,
  No. 16 Civ. 00550, 2019 WL 4328872 (N.D.N.Y. Sept. 12, 2019) .......................... 7, 8, 11, 17

*New York Times Co. v. Sullivan*,
  376 U.S. 254, 84 S. Ct. 710 (1964) ........................................................................... 16

*Orr v. Lynch*,
  60 A.D.2d 949, 401 N.Y.S.2d 897 (3d Dep't 1978) .................................................... 16

*Osorio v. Source Enterprises, Inc.*,
  No. 05 Civ 10029, 2007 WL 683985 (S.D.N.Y. Mar. 2, 2007) ............................................. 17

*Rapp v. Fowler*,
  No. 20 Civ. 9586, 2022 WL 5243030 (S.D.N.Y. Oct. 6, 2022) ............................................. 8

*Stockett v. Tolin*,
  791 F. Supp. 1536 (S.D. Fla. 1992) ......................................................................... 5

*United States v. Ahmed*,
  No. 21 Cr. 4087, 2022 WL 782024 (N.D. Iowa Mar. 14, 2022) ............................................. 2

*United States v. Barnason*,
  852 F. Supp. 2d 367 (S.D.N.Y. 2012)................................................................... 1, 2

*United States v. Brooks*,
  723 F. App'x 671 (11th Cir. 2018) ......................................................................... 2

*United States v. Cadet*,
  664 F.3d 27 (2d Cir. 2011)................................................................................... 9

*United States v. Cohen,*
    No. 07 Cr. 5561, 2008 WL 5120669 (2d Cir. Dec. 8, 2008) ................................................ 4

*United States v. Crowley,*
    318 F.3d 401 (2d Cir. 2003).................................................................................................. 5

*United States v. Davis,*
    624 F.3d 508 (2d Cir. 2010).................................................................................................. 7

*United States v. Delva,*
    12 Cr. 802, 2014 WL 4460360 (S.D.N.Y. Sept. 10, 2014)................................................ 11

*United States v. Delva,*
    858 F.3d 135 (2d Cir. 2017)........................................................................................... 11, 12

*United States v. Erramilli,*
    788 F.3d 723 (7th Cir. 2015) .............................................................................................. 4, 5

*United States v. Foley,*
    740 F.3d 1079 (7th Cir. 2014) ................................................................................................ 2

*United States v. Graham,*
    No. 14 Cr. 500, 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) ......................................... 12, 16

*United States v. Larson,*
    112 F.3d 600 (2d Cir. 1997).................................................................................................. 7

*United States v. LeMay,*
    260 F.3d 1018 (9th Cir. 2001) ............................................................................................... 7

*United States v. Mohamed,*
    148 F. Supp. 3d 232 (E.D.N.Y. 2015) ............................................................................. 9, 15

*United States v. O'Connor,*
    650 F.3d 839 (2d Cir. 2011).................................................................................................. 7

*United States v. Pascal,*
    610 F. App'x 791 (10th Cir. 2015) ....................................................................................... 4

*United States v. Pitre,*
    960 F.2d 1112 (2d Cir. 1992)............................................................................................... 16

*United States v. Roldan-Zapata,*
    916 F.2d 795 (2d Cir. 1990)............................................................................................. 8, 12

*United States v. Schaffer,*
    851 F.3d 166 (2d Cir. 2017).......................................................................................... 2, 12, 16

*United States v. Schohn*,
602 F. Supp. 3d 447 (W.D.N.Y. 2022) ................................................................................. 4

*United States v. Serrano*,
No. 13 Cr. 58, 2014 WL 2696569 (S.D.N.Y. June 10, 2014) ................................................ 12

*United States v. Sliker*,
751 F.2d 477 (2d Cir. 1984) ............................................................................................. 9, 15

*United States v. Spoor*,
904 F.3d 141 (2d Cir. 2018) ................................................................................................. 6

*United States v. Stroming*,
838 F. App'x 624 (2d Cir. 2021) .......................................................................................... 6

*United States v. Wager*,
No. 21 Cr. 396, 2023 WL 29519 (N.D.N.Y. Jan. 4, 2023) ................................................... 8

**Statutes**

18 U.S.C. Chapter 109A ........................................................................................................ 3

18 U.S.C. § 2246 ................................................................................................................... 4

49 U.S.C § 46506 .................................................................................................................. 4

Fla. Stat. § 784.03 ................................................................................................................. 5

**Rules**

Fed. R. Evid. 403 ................................................................................................. 5, 12, 14, 16

Fed. R. Evid. 404 ........................................................................................................... *passim*

Fed. R. Evid. 413 ................................................................................................... 2, 3, 4, 5

Fed. R. Evid. 414 .................................................................................................................. 2

Fed. R. Evid. 415 ........................................................................................................... *passim*

Fed. R. Evid. 609 .................................................................................................................. 7

N.Y. C.P.L.R. 214-j .............................................................................................................. 3

**Other Authorities**

140 Cong. Rec. S12990–01 (daily ed. Sept. 20, 1994) ......................................................... 2

137 Cong. Rec. 6034 (daily ed. Mar. 13, 1991) ................................................................... 6

**PRELIMINARY STATEMENT**

Defendant Donald J. Trump has asked the Court to exclude certain evidence that bears directly on the central question in this action—whether he sexually assaulted Plaintiff E. Jean Carroll. Despite his efforts, Trump cannot escape the reality that all the evidence he takes issue with is admissible under the Federal Rules of Evidence and relevant caselaw. For all the reasons set forth below, and as already discussed in Carroll's own omnibus motion in limine, ECF 134, Trump's motion should be denied.

**ARGUMENT**

**I.    THE COURT SHOULD ADMIT THE TESTIMONY OF STOYNOFF AND LEEDS**

As Carroll explained in her motion in limine, what happened to her at Bergdorf's was not an isolated incident. She thus seeks to introduce the testimony of two other women, Natasha Stoynoff and Jessica Leeds, whom Trump sexually assaulted in a similar fashion. *See* ECF 134 ("Carroll MIL") at 4–10. Trump, for his part, moves in limine to preclude Stoynoff's and Leeds' testimony under both Rule 415 and Rule 404(b). None of his arguments succeeds.

**A.    Stoynoff's and Leeds' Testimony About Trump's Sexual Assault Are Admissible Under Rule 415**

Stoynoff's and Leeds' testimony are admissible under Rule 415 as evidence of Trump's prior sexual assaults. That is because the present action is "based on" a "sexual assault," and the conduct alleged by Stoynoff and Leeds meets the definition of "sexual assault." *United States v. Barnason*, 852 F. Supp. 2d 367, 372 (S.D.N.Y. 2012). *See* Carroll MIL at 5–8. Each of Trump's arguments resisting this conclusion falls short.

*First*, Trump argues that Carroll's case is not "based on" a sexual assault for purposes of Rule 415 because it involves a claim for defamation. ECF 131 ("Trump MIL") at 5–6. In assessing whether a case is "based on" a sexual assault, however, most courts follow a "fact-specific

approach," which asks, "whether an alleged sexual assault constitutes a factual premise of the plaintiff's claim." *Boyce v. Weber*, No. 19 Civ. 3825, 2021 WL 2821154, at *9 (S.D.N.Y. July 7, 2021); *see Barnason*, 852 F. Supp. 2d at 373. Here, as this Court has already recognized, "whether [] Trump raped [] Carroll is the paramount issue" in this proceeding, so that standard is surely met. ECF 96 at 15.

Given this clear authority, Trump pushes instead for a minority position—the "categorical approach"—under which courts ask whether proving the defendant committed a sexual assault is an element of the plaintiff's claim. Trump MIL at 6. This test looks only to the statutory or common law elements, not the defendant's actual conduct. But the very case that Trump relies on in making this argument explicitly rejected such an approach. *Boyce*, 2021 WL 2821154, at *9. So, too, have most courts when confronted with the issue. *E.g.*, *United States v. Brooks*, 723 F. App'x 671, 681 (11th Cir. 2018) (in context of Rule 414); *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014) (in context of Rule 413); *United States v. Ahmed*, No. 21 Cr. 4087, 2022 WL 782024, at *5 (N.D. Iowa Mar. 14, 2022) (collecting cases).

And for good reason: a "fact-based approach" is more "faithful to Congress's intent." *Boyce*, 2021 WL 2821154, at *9. In promulgating Rules 413, 414, and 415, Congress recognized that proving the occurrence of a sexual assault often "turns on difficult credibility determinations" and "unresolvable swearing matches." 140 Cong. Rec. S12990–01, S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Robert Dole). To remedy this problem, Congress "considered knowledge that the defendant has committed [sexual assault] on other occasions to be critical in assessing the relative plausibility of sexual assault claims." *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017) (citation omitted). As a result, these rules permit the introduction of evidence to show "that a person who has engaged in the covered conduct is likely to engage in it again." *Foley*, 740 F.3d

at 1087 (noting that the Rules focus "on conduct" not "how the [claims] have been drafted"). For cases like this one that indisputably turn on whether the defendant committed a sexual assault, it makes little sense to exclude the very evidence that Congress deemed highly probative.

Considering both of Carroll's cases in tandem only underscores the lack of merit in Trump's position. In the present action, *Carroll I*, Carroll brings a claim for defamation relating to Trump's June 2019 denial of the underlying sexual assault. In *Carroll II*, Carroll brings another claim for defamation relating to a similar October 2022 statement, as well as a battery claim pursuant to New York's Adult Survivors Act, which requires proof of conduct that would constitute a sexual offense under New York law. N.Y. C.P.L.R. 214-j. Though separate actions, everyone agrees that the central issue is the same: did Trump rape Carroll? *E.g.*, *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023); *Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *7 (S.D.N.Y. Oct. 12, 2022). Yet, under Trump's proposed approach, Rule 415 evidence *could* be allowed in *Carroll II*, but not in *Carroll I*. That outcome not only runs contrary to Congress's purpose in promulgating Rule 415, but it also defies common sense. This Court should follow the majority of courts in rejecting a categorical approach, and hold that this action is "based on" a sexual assault for the purposes of Rule 415.

*Second*, Trump argues that his alleged misconduct toward Stoynoff and Leeds did not rise to the level of a "sexual assault" as defined by Rule 413(d). *See* Trump MIL at 7–9. But Trump's argument in this regard is based on an erroneous view of the law.

Regarding Rule 413(d)(1), Trump does not dispute that Stoynoff and Leeds allege "sexual contact" for purposes of 18 U.S.C. Chapter 109A. Nor could he. "Sexual conduct" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse

or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). Stoynoff alleges that Trump grabbed her shoulders, pushed her against the wall, and started "kissing and groping [her] without consent." Ex. 1 ("Stoynoff Dep.") at 21:2–8, 38:9–10. Leeds alleges that Trump attacked her by "grabbing [her] breasts," "pulling himself onto [her]," and "putting his hand up [her] skirt." Ex. 2 ("Leeds Dep.") at 19:3–15. Trump's conduct plainly qualifies as "sexual contact." *See* Carroll MIL at 6–7; *see also United States v. Cohen*, No. 07 Cr. 5561, 2008 WL 5120669, at *1 (2d Cir. Dec. 8, 2008) (touching victim's thigh and groin during domestic flight qualified as "sexual contact"); *United States v. Erramilli*, 788 F.3d 723, 726 (7th Cir. 2015) (same for "slid[ing] … hand up [woman's] shorts and squeez[ing] her inner thigh"); *United States v. Pascal*, 610 F. App'x 791, 794 (10th Cir. 2015) (same for touching "bottom of [a woman's] back to the top of [her] buttocks").

Instead, Trump argues that Rule 413(d)(1) has no application here because he did not assault Stoynoff or Leeds within "the special maritime and territorial jurisdiction of the United States." Trump MIL at 7. But that is not what the Rule requires. Rule 413(d)(1) defines "sexual assault" as a "crime under federal law or under state law … involving any conduct prohibited by 18 U.S.C. chapter 109A." A party, in other words, need only identify a federal or state crime that the other party committed by virtue of engaging in any of the conduct that Chapter 109A prohibits. *Cf. United States v. Schohn*, 602 F. Supp. 3d 447, 461 & n.8 (W.D.N.Y. 2022).

That standard is clearly satisfied here. Trump assaulted Leeds on a domestic flight from Texas to New York. Federal law criminalizes any conduct identified in Chapter 109A if that conduct occurs "on an aircraft in the special aircraft jurisdiction of the United States," which includes domestic flights. 49 U.S.C § 46506(1). Trump's conduct toward Leeds thus qualified as a federal crime. *E.g.*, *Cohen*, 2008 WL 5120669, at *1; *Erramilli*, 788 F.3d at 726; *Pascal*, 610 F. App'x at 794. And Trump assaulted Stoynoff in Florida. In Florida, not surprisingly, it is a crime

when a person "[a]ctually and intentionally touches or strikes another person against the will of the other." Fla. Stat. § 784.03(1)(a)1. That captures Trump's groping and kissing of Stoynoff. *See Stockett v. Tolin*, 791 F. Supp. 1536, 1555–56 (S.D. Fla. 1992) ("Tolin's groping and kissing of Stockett constituted both an offensive and unwelcome touching," thereby violating § 784.03.); *cf. Erramilli*, 788 F.3d at 727 (permitting nonparty testimony regarding defendant's state generic battery charge because the underlying conduct qualified as "sexual contact" for purposes of Rule 413(d)(1)).

If there were any doubt, Stoynoff's and Leeds' testimony also clearly show that Trump "attempt[ed] … to engage in" sexual contact and thus may be admitted on that basis alone. *See* Fed. R. Evid. 413(d)(5). Specifically, Stoynoff testified that she pushed Trump back twice and he stopped assaulting her only after a member of his staff walked in. Stoynoff Dep. at 21:20–21, 22:3–4. And Leeds likewise testified that Trump was on top of her and starting to put his hand up her skirt before she "wheel[ed] [her] way out of the chair" to escape. Leeds Dep. at 19:17. Their testimony shows that Trump intended to engage in "sexual contact" that would be criminalized under federal and Florida law, and took substantial steps to achieve that goal. *Cf. United States v. Crowley*, 318 F.3d 401, 408 (2d Cir. 2003) (describing the test for attempt for analogous provision).

*Finally*, Trump argues that Rule 403 mandates the exclusion of Stoynoff's and Leeds' testimony. *See* Trump MIL at 9–12. It does not. In determining the probative value of evidence under Rule 415, courts have considered: "(1) 'the similarity of the prior acts to the acts charged,' (2) the 'closeness in time of the prior acts to the acts charged,' (3) 'the frequency of the prior acts,' (4) the 'presence or lack of intervening circumstances,' and (5) 'the necessity of the evidence

beyond the testimonies already offered at trial.'" *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018) (citation omitted). The weight of those factors is strongly in Carroll's favor.

With respect to the first factor, Stoynoff's and Leeds' accounts are sufficiently similar to Trump's assault of Carroll. Together, all three accounts illustrate Trump's pattern of suddenly and without warning lunging at a woman, pushing his body against her, grabbing at her, and kissing her, in what constitutes a knowing and intentional sexual assault, and later categorically denying the allegations and declaring that the accuser was too ugly for him to have sexually assaulted her. *See* Carroll MIL at 9; *United States v. Stroming*, 838 F. App'x 624, 626 (2d Cir. 2021) ("The district court need not find the defendant's prior acts … nearly identical … to find [them] admissible [under Rule 415].").

With respect to the second factor, there is sufficient temporal proximity between all three assaults to warrant admission. Trump complains that "the events are so detached in time that they simply have no relevance to the subject incident." Trump MIL at 10. This argument effectively criticizes Carroll for not filling in all the temporal gaps with accounts from some of the dozens of other women who have also accused Trump publicly. *See* Carroll MIL at 8. In those circumstances, Trump, of course, would have raised an objection on the grounds that such testimony was grossly cumulative. He cannot have it both ways. And here, Leeds' and Stoynoff's testimony about attacks in 1979 and in 2005 show a consistent pattern of behavior both before and after the Carroll's attack in the mid-1990s, bolstering the probative value of the evidence.

Nor are Stoynoff's and Leeds' accounts too old to be relevant. *See* Trump MIL at 10. There is no expiration date for when a prior sexual assault loses its probative value. This is supported by the legislative history, *see* 137 Cong. Rec. 6034 (daily ed. Mar. 13, 1991) ("There is no magic line in time beyond which similar crimes evidence generally ceases to be relevant to the determination

of a pending charge."), and the Rule's text, which does not establish a time limit or direct courts to consider the passage of time in assessing admissibility. *Cf.* Fed. R. Evid. 609(b) (presumption against admission of a witness's prior conviction if more than 10 years old). Courts therefore regularly admit testimony concerning events of a similar age as those here. *See, e.g.*, *United States v. O'Connor*, 650 F.3d 839, 853–54 (2d Cir. 2011) (30 years); *United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (19 years); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (16 to 20 years).

With respect the third factor, the frequency of events also favors admission. In Trump's view, because he assaulted Stoynoff and Leeds only once each, the assaults did not occur with sufficient frequency to be relevant. Trump MIL at 11. But that is just one type of frequency that courts consider. A second type concerns the total number of allegations against the defendant as a whole, even if those allegations are not themselves admissible (or even offered for admissibility). *See Montanez v. City of Syracuse*, No. 16 Civ. 00550, 2019 WL 4328872, at *6–*8 (N.D.N.Y. Sept. 12, 2019) (noting that "the number of allegations against Thompson weighs in favor of admitting the evidence" even though only three of the four were proper Rule 415 evidence); *see also United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001) (similar because "[a]lthough it was not introduced at trial, the government also had evidence of a third [related] incident"). Here, according to Trump's own campaign, twenty-four women have accused him of sexual misconduct, *see* Carroll MIL at 8, illustrating that Stoynoff's and Leeds' assaults were not isolated occurrences.

As for the fourth factor, Trump argues that "presence or lack of intervening circumstances" is not applicable here, while simultaneously emphasizing that Stoynoff and Leeds came forward only after he "became a leading presidential candidate." Trump MIL at 11. But Trump cannot pick and choose when the fact of his presidency is a relevant consideration. *Compare id.* at 13–14. And

7

this argument is nothing more than his usual pattern of dismissing sexual assault allegations by accusing women of fabricating their stories for personal gain. The fact of when these women came forward does not weigh against their admissibility.

As for the fifth factor, the testimony will be helpful to the jury in evaluating whether, as Carroll alleges, Trump raped her and then lied when he denied doing so. *E.g.*, *Montanez*, 2019 WL 4328872, at *6. Rule 415 explicitly contemplates the use of such evidence for this legitimate purpose—especially where, like here, the jury will be asked to make credibility determinations. *Rapp v. Fowler*, No. 20 Civ. 9586, 2022 WL 5243030, at *3 (S.D.N.Y. Oct. 6, 2022).

At bottom, Stoynoff's and Leeds' testimony is highly probative evidence in this action. Although Trump complains of its apparent "overwhelmingly prejudicial effect," Trump MIL at 12, he cannot ignore the simple fact that "virtually all relevant evidence is prejudicial in some respect," *United States v. Wager*, No. 21 Cr. 396, 2023 WL 29519, at *6 (N.D.N.Y. Jan. 4, 2023). And there is little danger of *unfair* prejudice where the conduct Stoynoff and Leeds allege is not "any more sensational or disturbing" than the conduct already at issue in the case. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

### B. Stoynoff's and Leeds' Testimony About Trump's Sexual Assault Are Admissible Under Rule 404(b)(2) as Evidence of Trump's *Modus Operandi*

Stoynoff's and Leeds' testimony are independently admissible under Rule 404(b)(2). By depicting a *modus operandi*, the testimony serves a proper purpose and is plainly relevant to the dispute. *See* Carroll MIL at 9–10.

Trump's only contrary argument is that Stoynoff's and Leeds' accounts "involve substantially different circumstances" and therefore do not suffice to establish a *modus operandi*. Trump MIL at 3. But the testimony of Stoynoff and Leeds are "sufficiently similar" to establish a *modus operandi*, especially when compared to what evidence courts have found to satisfy that

standard in other circumstances. *See United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) ("There is no necessity for synonymity but there must be substantial relevancy.").

Take, for example, *United States v. Mohamed*, 148 F. Supp. 3d 232 (E.D.N.Y. 2015). There, the criminal charges concerned two assailants' use of a Toyota pick-up truck to target a Toyota Land Cruiser in 2013; when the driver refused to "immediately" hand over his keys, the assailants shot him, causing fatal injury, and then drove away with the vehicle. *Id.* at 240. The prior bad act occurred in 2004, involved three assailants who used and targeted a Toyota Land Cruiser; the assailants "brandished a gun at the victims' vehicle"; and "when the victims did not stop immediately, the assailants shot at the vehicle, causing a severe injury," and then drove away. *Id.* Both incidents also involved the targeting of "Westerners" while abroad. *Id.* Despite the "relative commonality of carjackings," the court found that the two events shared enough overlap to establish a common *modus operandi* because they permitted "a fair inference of pattern's existence." *Id.* at 241 (quoting *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984)).

*Lombardo v. Stone* is an example on the other side of the line. There, the court considered the plaintiff's two prior occasions of assault and whether they sufficiently supported a *modus operandi*. During the first incident, the plaintiff had become "agitated, banged on the door and pushed the Aide assigned to him, continued to struggle with staff and had to be placed in four-point restraints." No. 99 Civ. 4603, 2002 WL 113913, at *3 (S.D.N.Y. Jan. 29, 2002) (quotation marks omitted). In the second incident, the plaintiff "was involved in an incident of aggressive assault against another patient." *Id.* The court rejected these assaults as "too 'varied,'" explaining that "[s]hoving an Aide on one occasion and being involved in a fight with a patient on another occasion, are different types of events which share only commonplace characteristics." *Id.* at *5.

Here, Stoynoff's and Leeds' testimony go beyond sharing only "commonplace characteristics" with Carroll's allegations, and all three permit "a fair inference of pattern's existence." All three accounts share core details—Trump's abrupt and sudden kissing and groping of women, his use of force to overcome their lack of consent, and his later categorical denials and insistence that allegations could not have occurred due to the women's physical appearances. *See supra* at 6; Carroll MIL at 9–10. And all three accounts share the further characteristic that the assault did not occur in a wholly private setting, but rather in a semi-public space when Trump had a fleeting moment alone with his victim. Contrary to Trump's suggestion otherwise, *see* Trump MIL at 3, that he succeeded in his sexual assault of Carroll but was thwarted in the others should be of no consequence. Accordingly, because Stoynoff's and Leeds' testimony are "sufficiently similar" to establish a *modus operandi*, their accounts are admissible and proper evidence under Rule 404(b).

## II.   THE COURT SHOULD ADMIT THE ACCESS HOLLYWOOD TAPE

In 2016, the Washington Post published a video recorded in 2005 that captured Trump boasting about sexually assaulting women. Specifically, he said: "You know I'm automatically attracted to beautiful [women]. … I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star they let you do it. You can do anything, grab them by the pussy, you can do anything." Ex. 3 (PX-25).[1] Trump authenticated the tape at his deposition and doubled down on the comments caught on the hot mic. Ex. 4 ("Trump Dep.") at 168:20–169:9, 174:5–21.

---

[1] During the second presidential debate of 2016, Trump received a question from one of the debate moderators about his comments in the Access Hollywood tape. Ex. 5 (PX-26). Both Stoynoff and Leeds decided to speak out after they heard Trump's answer to the moderator's question. *See* Stoynoff Dep. at 34:17–35:15; Leeds Dep. at 23:4–19. Though Trump includes this exhibit in his list of videos that should be excluded, *see* Trump MIL at 13, he makes no arguments as to why this video should be excluded in particular. As a result, any such objection is not properly presented.

Trump argues that the so-called "Access Hollywood tape" should be excluded because it "can serve only one [improper] purpose: to suggest to the jury that Defendant had a propensity for sexual assault." Trump MIL at 15. But evidence of *modus operandi* is not propensity evidence and may properly be considered under Rule 404(b). *See supra* at 8.

And evidence of *modus operandi* is exactly what the Access Hollywood tape is in this case. On the tape, Trump described the precise conduct that he engaged in here with respect to Carroll. He didn't wait before he kissed Carroll. He didn't wait before he grabbed her vagina. And he acted throughout the encounter as if he was entitled to do whatever he pleased with Carroll. Ex. 6 at 109:9–124:25. In other words, the tape is "highly probative evidence regarding the existence of a plan or pattern of behavior." *Boyce*, 2021 WL 2821154, at *5 (cleaned up). And it is thus relevant to this action, as it tends to make the falsity of Trump's denial more probable. *See Montanez*, 2019 WL 4328872, at *4 ("Given that [Defendant] disputes Plaintiff's assertion that he exposed himself and told Plaintiff to give him oral sex, evidence that [Defendant] made very similar advances on [Non-Party Accuser] during a call less than two years before, tends to make more probable the alleged fact that [Defendant] acted in the same manner with Plaintiff.").

In fact, this is the rare case in which a party admits to his *modus operandi*, rather than leaving it to the other party to establish a *modus operandi* solely through evidence of individual instances of misconduct. Unsurprisingly, courts in this District have not hesitated to admit such admissions under Rule 404(b). For example, in *United States v. Delva*, the defendant was charged with several counts related to an alleged robbery and kidnapping. No. 12 Cr. 802, 2014 WL 4460360, at *1 (S.D.N.Y. Sept. 10, 2014), *aff'd*, 858 F.3d 135 (2d Cir. 2017). Before trial, the government sought an order in limine admitting a statement by the defendant to a witness where he said, "the kidnapping and robbery were not his typical style because of the amount of time spent

11

at the location, and that he preferred quick in and out jobs." *Id.* at *9. The court granted the motion because the statement helped explain the defendant's "typical modus operandi" and was therefore offered for a proper purpose under 404(b)(2). *Id.* Similarly, in *United States v. Serrano*, the court permitted the admission of a taped recording between the defendant and criminal informant where the defendant described his "modus operandi [] from prior crimes," which was the same pattern "he [was] alleged to have followed in connection with the charged robbery conspiracy." No. 13 Cr. 58, 2014 WL 2696569, at *7–*8 (S.D.N.Y. June 10, 2014).[2]

At the very least, the Court should defer a decision on the admissibility of the Access Hollywood tape until trial. Part of Trump's defense in this action is that he has never behaved inappropriately toward women, so he could not have done what Carroll alleges he did. *See, e.g.*, Trump Dep. at 168:11–18 ("Q. Is it your testimony today, sir, that every single woman who has accused you of sexual improprieties, whether the number is 24 or a different number, was lying about it? … A. Yeah, they were lying. I would say every single one of them would be lying."), 218:3–4 ("But I act appropriately with people. I act appropriately with women."). There is every reason to believe that Trump will continue to press that broad defense at trial. And if he does, Carroll should be permitted to impeach him with his own description of his predatory conduct toward women in any event.

---

[2] Although Trump refers to the tape as "highly prejudicial," he does not make any specific arguments for excluding it under Rule 403. Trump MIL at 15. Nor could he. Even if evidence is "highly prejudicial," that "does not necessarily mean that it is 'unfairly prejudicial.'" *Schaffer*, 851 F.3d at 182. Indeed, the Second Circuit recently affirmed a district court's decision to admit "excerpts from four videos showing [the Defendant] sexually assaulting two other minor girls," when the case itself concerned the "coercing and enticing a minor to engage in illegal sexual activity." *Id.* at 168, 182. As the court explained, "the conduct portrayed in the videos was not more inflammatory than the conduct for which [the Defendant] was being tried. Rather, all of the sexual conduct was essentially identical." *Id.* at 183. *Accord Roldan-Zapata*, 916 F.2d at 804; *cf. United States v. Graham*, No. 14 Cr. 500, 2015 WL 6161292, at *4 (S.D.N.Y. Oct. 20, 2015). The same is true here.

## III.    THE COURT SHOULD ADMIT THE VIDEOS FROM TRUMP'S CAMPAIGN SPEECHES

After watching the Access Hollywood tape and hearing Trump's attempts to explain it away, Stoynoff and Leeds independently decided that they had to come forward to share their experiences with Trump. Stoynoff Dep. at 34:17–35:13; Leeds Dep. at 23:4–19. Their public allegations, along with the more than twenty other women who accused him of sexual misconduct, sparked comments from Trump during three events over the next week:

- At a campaign rally in West Palm Beach on October 13, 2016, Trump said: "These vicious claims, about me, of inappropriate conduct with women are totally and absolutely false. And the Clintons know it—and they know it very well. These claims are all fabricated. They're pure fiction and they're outright lies. These events never ever happened and the people who said them meekly fully understand. You take a look at these people, you study these people, and you'll understand also. The claims are preposterous, ludicrous, and defy truth, commonsense, and logic. We already have substantial evidence to dispute these lies, and it will be made public in an appropriate way and at an appropriate time very soon." Ex. 7 (PX-27).

- He continued, first taking aim at Leeds: "Now today, the same two discredited writers, who should have been fired from the New York Times for what they did, tell another totally fabricated and false story that supposedly took place on an airplane more than thirty years ago. Another ridiculous tale. No witnesses, no nothing." Ex. 8 (PX-28).

- And then setting his sights on Stoynoff: "Then there was a writer from People Magazine who wrote a story on Melania and myself on our first anniversary. The story was beautiful—it was beautiful, it was lovely. But last night we hear that after twelve years— this took place twelve years ago, this story—a new claim that I made inappropriate advances during the interview to this writer. And I ask [a] very simple question: why wasn't it part of the story that appeared twenty or twelve years ago? Why wasn't it part of the story? Why didn't they make it part of the story? I was one of the biggest stars on television with The Apprentice, and it would have been one of the biggest stories of the year. Think of it, she's doing a story on Melania, who's pregnant at the time, and Donald Trump, our one year anniversary, and she said I made inappropriate advances. And by the way, the area was a public area, people all over the place. Take a look. You take a look. Look at her, look at her words. You tell me what you think. I don't think so. I don't think so." Ex. 9 (PX-29).

- Then, at a rally in Greensboro, North Carolina the next day, Trump again attacked Stoynoff: I have "a question about the dishonest writer from People Magazine. Why didn't she write what she said happened before she wrote the story—why didn't she put it in the story? The story would have been one of the big stories. I was the big star of The Apprentice. Why didn't she do it twelve years ago? Twelve years ago, she's writing a

story—now think of this. That's right she's a liar. She is a liar. She's writing a story. Check out her Facebook page. You'll understand. She's writing a story about a beautiful love story, Melania and Donald, and she said I made inappropriate move. Now, just so you understand, that's a big story, if I did. She wrote the most beautiful story—honestly, the most beautiful story. 100% story, like beautiful. Why wouldn't she have put this into the story? Now, two nights ago I get a call. Oh, People Magazine. I say it's okay. No, no, it's not okay. It's about a story that was written twelve years ago. She was on last night—or one of the top people at People was on—and he said, 'no, we were just informed about it.' Well, did you hear about it twelve years ago? Did you hear about it five years ago? 'No, no, we never—we just heard about it recently.' These people are sick." Ex. 10 (PX-30).

- And then he attacked Leeds: "Hopefully, our great movement—and there's never been anything like this in the United States, and the only way they figure they can slow it down is if they come up with people willing to say 'oh I was with Donald Trump in 1980. I was sitting with him on an airplane. And he went after me on the plane.' Yeah, I'm going to go after you. Believe me, she would not be my first choice. That I can tell you. Man. You don't know. That would not be my first choice." Ex. 11 (PX-31).

- Finally, less than a week later, Trump made similar comments at a rally in Gettysburg, Pennsylvania: "Every woman lied when they came forward to hurt my campaign. Total fabrication. The events never happened. Never. All of these liars will be sued after the election is over." Ex. 12 (PX-32).

Trump argues that these videos are irrelevant and without a proper purpose under Rule 404(b), and should otherwise be precluded under Rule 403. *See* Trump MIL at 13–14. He is wrong on both counts.

## A.     The Campaign Videos Are Admissible Under Rule 404(b)(2)

To start, the videos are offered for a proper purpose, to establish Trump's *modus operandi* of categorically denying accusations and his intent and knowledge when making those statements. Indeed, this *modus operandi* is plain to see. When a woman accuses Trump, he unconditionally denies the allegations, accuses the woman of fabricating her story, and declares that she was too ugly for him to have sexually assaulted in the first place. Ex. 7 (PX-27); Ex. 12 (PX-32). This is the exact pattern Trump followed when he first responded to Carroll's accusations in June 2019: he denied that he raped Carroll, said he never met her, claimed she was a fraud and liar who fabricated being raped to sell a book, was conspiring with the Democratic party, and to top it off,

14

was too ugly for him to have raped. Exs. 13, 14, 15. And in October 2022, he did it again: Trump blasted Carroll for spreading a "Hoax and a lie"—insisting that she was "not telling the truth," the rape "never happened," he "ha[d] no idea who she is," she "completely made up a story," and once again "[t]his woman is not my type!" Ex. 16.

The campaign videos provide clear evidence of Trump engaging in this pattern. In the West Palm Beach video, Trump responds to Stoynoff's accusation by denying the attack, questioning why she did not come forward sooner, and insulting her appearance, saying "you take a look, look at her," "I don't think so." Ex. 9 (PX-29). In the Greensboro video, Trump again ridicules Stoynoff, telling the crowd at the rally that she was a liar, and to look at her Facebook page, implying she was not his type. Ex. 10 (PX-30). And the campaign videos demonstrate that Trump responded to the allegations made by Leeds in an identical way, complaining that her story was a complete "fabrication," Ex. 8 (PX-28), and saying, "Believe me, she would not be my first choice. That I can tell you. Man. You don't know. That would not be my first choice," explicitly insulting her appearance, Ex. 11 (PX-31).

Taken together, the videos contain "sufficiently idiosyncratic" characteristics "to permit a fair inference of a pattern's existence." *Mohamed*, 148 F. Supp. at 240–41 (quoting *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984)). Moreover, this *modus operandi* of categorically denying accusations and disparaging accusers is highly relevant to the material issue in dispute here. Given the similarities between how Trump responded to all three women, the pattern makes it *more likely* that Trump lied when he denied assaulting Carroll.

The videos are also evidence of Trump's knowledge regarding the falsity of his statements about Carroll, and his intent to lie and act with malice when making those statements. "Where a defendant's intent or knowledge is clearly at issue, evidence of prior acts may be admissible to

prove intent or knowledge." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992); *cf. United States v. Graham*, No. 14 Cr. 500, 2015 WL 6161292, at *3 (S.D.N.Y. Oct. 20, 2015) (introduction of prior bad acts can "tend[] to make 'more probable'" the existence of the requisite mens rea elements). Trump's intent and knowledge are both material to Carroll's defamation claim—under New York law, Carroll must prove that Trump acted with actual malice in issuing his statements. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726 (1964); *Orr v. Lynch*, 60 A.D.2d 949, 950, 401 N.Y.S.2d 897, 899 (3d Dep't 1978). And the campaign videos are probative evidence relating to that issue—Trump's pattern of unconditional denials, no matter the nature of an allegation, makes it more likely that he knowingly and intentionally issues false statements in response to *any* allegation, and did so here.

### B.      The Campaign Videos Do Not Raise Rule 403 Concerns

The prejudicial effect of the videos does not substantially outweigh the probative value. Trump's core argument for exclusion is that these videos will "unnecessarily politicize the trial," contending that "[a]ny reference to [Trump's] political career, his political views, or statements he made and actions he took while in office are immaterial and will not aid [Carroll] in proving her case-in-chief at trial." Trump MIL at 14. But that request is plainly unrealistic—Trump seems to ignore that fact that the very statements at issue in this action are ones that he made while President of the United States. No jury will somehow forget that Trump was once President (or a candidate for office) in the absence of the campaign videos. Plus, Carroll has "limited the potential for unfair prejudice by showing the jury only short portions of the videos." *Schaffer*, 851 F.3d at 183.

Nor is there risk of jury confusion. Juries are regularly called upon to "keep track of multiple events," such as the multiple short video clips that Carroll seeks to introduce, many of them from the same campaign rally. *Boyce*, 2021 WL 2821154, at *6; *cf. Ardolf v. Weber*, 332 F.R.D. 467, 481 (S.D.N.Y. 2019) ("[J]urors are perfectly capable of separating fact patterns that

16

pertain to each individual [p]laintiff, while understanding that they may have certain elements in common."). There is no reason to think the jury will not be able to do so here. And, once again, to mitigate any possible concern, the jury can be instructed on the permissible uses of the other acts evidence admitted under Rule 404(b)(2). *Montanez*, 2019 WL 4328872, at *4.

## IV.   THE COURT SHOULD ADMIT EVIDENCE CONCERNING CARROLL'S EMOTIONAL HARM FOLLOWING THE UNDERLYING SEXUAL ASSAULT

Trump's final argument is that the Court should preclude evidence regarding the emotional harm that Carroll "suffered as a result of the alleged underlying incident." Trump MIL at 16.

To the extent that Trump seeks only to preclude Carroll from claiming as *compensatory damages* the emotional and psychological harm that the sexual assaulted caused her, Carroll does not disagree. This is a case for defamation, and her separate claim for battery in her Adult Survivors Act action will allow her to recover for all of the harm resulting from the underlying rape.[3]

But, as worded, Trump's motion seems to sweep far more broadly and would preclude any testimony about why Carroll did not speak publicly about Trump's attack until 2019. Such evidence certainly implicates the emotional and psychological effects of the underlying rape, and Trump makes no argument for why such evidence is irrelevant. *See* Trump MIL at 16. Nor could he. Trump has used Carroll's decision not to report the assault or speak out sooner to call her credibility into question. *E.g.*, Trump Dep. at 202:4–10. Carroll's response to such arguments— including evidence of her emotional and psychological state in the intervening years—is plainly admissible.

---

[3] Carroll is, however, entitled to seek damages in this action for any emotional harm caused by Trump's June 2019 defamatory statements. She alleged such damages in her complaint, ECF 6-1 ¶¶ 15, 132, 145, and the jury is entitled to award them. *E.g.*, *Osorio v. Source Enterprises, Inc.*, No. 05 Civ 10029, 2007 WL 683985, at *1, *10 (S.D.N.Y. Mar. 2, 2007) (upholding jury verdict of $3.5 million for "emotional distress and harm to reputation" on account of defendant's defamation).

## CONCLUSION

For the foregoing reasons, the Court should deny Trump's motion and:

- Admit the testimony of Stoynoff and Leeds regarding their own experiences with Trump;

- Admit the Access Hollywood tape;

- Admit the videos of Trump's campaign speeches; and

- Admit testimony relating to Carroll's emotion and psychological harm.


Dated: New York, New York
       February 23, 2023

Respectfully submitted,

Roberta A. Kaplan
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*