UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                    Plaintiff,

         -against-                                20-cv-7311 (LAK)

DONALD J. TRUMP,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                    Roberta Kaplan
                    Joshua Matz
                    Shawn Crowley
                    Matthew Craig
                    Trevor Morrison
                    KAPLAN HECKER & FINK LLP
                    *Attorneys for Plaintiff*

                    Alina Habba
                    Michael T. Madaio
                    HABBA MADAIO & ASSOCIATES LLP
                    *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Donald J. Trump is accused in this and a second very closely related civil case of

having raped E. Jean Carroll in the mid 1990s. Ms. Carroll claims, in this action, that Mr. Trump

defamed her in 2019 in a series of public responses to the first public appearance of her accusation.[1] Her claim in the second case is for damages for the alleged rape as well as for a different allegedly defamatory statement.

The matter now is before the Court on Mr. Trump's motion to exclude from evidence at the trial of this case an excerpt from the so-called *Access Hollywood* tape that was broadcast nationwide repeatedly during the 2016 presidential campaign, the testimony of two witnesses – Mss. Leeds and Stoynoff – who previously have claimed that Mr. Trump sexually assaulted them, and extremely short excerpts of videos of campaign remarks by Mr. Trump. He seeks also to exclude any evidence regarding emotional harm that Ms. Carroll may have suffered as a result of the underlying incident.

Before proceeding to the analysis, it is appropriate to set out the legal framework that applies at this stage of the case to the bulk of the motion and the Court's limited role in ruling on Mr. Trump's principal evidentiary objections.

*The Framework and the Court's Limited Role*

Most of the evidence that Mr. Trump seeks to keep from the trial jury is to the effect that Mr. Trump allegedly has abused or attempted to abuse women *other than Ms. Carroll* in ways

---

[1] The Court assumes familiarity with its decisions in both actions. *See* Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023). Unless otherwise indicated, Dkt references are to the docket in 20-cv-7311 (*Carroll I*).

that are the comparable to what he allegedly did to Ms. Carroll. In other words, Ms. Carroll offers the evidence to show that Mr. Trump has a propensity for such behavior.

Mr. Trump correctly points out that the Federal Rules of Evidence ordinarily preclude propensity evidence. In 1994, however, Congress enacted Rule 415, which created an important exception to that principle. In a civil case "based on a party's alleged sexual assault," as that term is defined in the rules, "evidence that the [defendant] committed any other sexual assault" may be admitted in such cases.[2] So the initial questions presented by Mr. Trump's motion are (a) whether this is a case "based on [an] alleged sexual assault," (b) whether the evidence Mr. Trump seeks to

---

[2]

The exception created in Rule 415 applies also in civil child molestation cases. Fed. R. Evid. 414. There is a comparable exception for criminal cases. Fed. R. Evid. 413.

The purpose of these amendments to the Federal Rules of Evidence was to make it easier to convict and hold civilly liable alleged perpetrators of such assaults. *See* 140 Cong. Rec. S12990-01, S12990 (1994) (statement of Sen. Robert Dole) ("The reform effected by these rules is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases to which it applies. . . . In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant-a sexual or sado-sexual interest in children-that simply does not exist in ordinary people. . . . Similarly, sexual assault cases, where adults are the victims, often turn on difficult credibility determinations. . . . The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule."); *United States v. Schaffer*, 851 F.3d 166, 181 n.81 (2d Cir. 2017) ("'[David J. Karp's article] explain[s] that one of the primary arguments in favor of Rule 413 was that 'the past conduct' of '[a] person with a history of rape or child molestation . . . provides evidence that he has the combination of aggressive and sexual impulses that motivates the commission of such crimes, that he lacks effective inhibitions against acting on these impulses, and that the risks involved do not deter him. A charge of rape or child molestation has greater plausibility against a person with such a background.'") (quoting David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 CHI.–KENT L. REV. 15, 20 (1994)); *id.* (noting that "Sen. Robert Dole, principal sponsor of Rule 413, referr[ed] to David Karp's work as 'provid[ing] a detailed account of the views of the legislative sponsors and the administration concerning the proposed reform, and should also be considered an authoritative part of its legislative history'") (quoting 140 Cong. Rec. at S12990).

exclude is evidence of "other sexual assault[s]," and, even if both are so, (c) whether Rule 403 warrants exclusion of that evidence.

Moreover, it is relevant to emphasize that the Court's role with respect to evidence of prior sexual assaults in a case like this is limited.  The Court does not itself decide what Mr. Trump meant in making his various statements.  It does not decide whether Mr. Trump or Mss. Leeds and Stoynoff are more credible. All of that is for the trial jury. The Court's role is to determine whether the evidence regarding these alleged prior incidents and Mr. Trump's statements would permit a jury reasonably to find that Mr. Trump has a history of sexual assaults that could be probative of whether he committed the alleged attack on Ms. Carroll.


*The Access Hollywood Tape*

Mr. Trump first seeks to exclude from evidence an excerpt from (a) the so-called *Access Hollywood* tape, an excerpt that records an exchange among Mr. Trump and others as the group arrived for the shooting of a television episode, as well as (b) a brief taped excerpt from a question to and response by Mr. Trump during a 2016 presidential debate regarding his statements on the *Access Hollywood* tape. He contends that his statements on the *Access Hollywood* video could be taken to support the allegation that he committed the alleged sexual attack on Ms. Carroll and therefore should not be heard by the jury.

The audio of the excerpt offered by Ms. Carroll reads as follows:

**Unknown**: "She used to be great. She's still very beautiful."

**Trump**: "You know and I moved on her actually. You know she was down on Palm Beach. *I moved on her and I failed. I'll admit it. I did try and fuck her. She was*

*married.*"

**Unknown**: "That's huge news."

**Trump**: "No, no, Nancy. No this was [(inaudible)]. And I moved on her very heavily in fact I took her out furniture shopping. She wanted to get some furniture. I said I'll show you where they have some nice furniture. I took her out furniture [sic]. *I moved on her like a bitch*, but I couldn't get there, and she was married. Then all of a sudden I see her, she's now got the big phony tits and everything. She's totally changed her look."

**Bush**: "Sheesh, your girl's hot as shit. In the purple."

**Multiple voices**: "Whoa! Yes! Whoa!"

**Bush**: "Yes! The Donald has scored. Whoa, my man!"

**[Crosstalk]**

**Trump**: "Look at you. You are a pussy."

**[Crosstalk]**

**Trump**: "Maybe it's a different one."

**Bush**: "It better not be the publicist. No, it's her. It's"

**Trump**: *"Yeah that's her. With the gold. I better use some Tic Tacs just in case I start kissing her. You know I'm automatically attracted to beautiful – I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star they let you do it. You can do anything."*

**Bush**: *"Whatever you want."*

**Trump**: *"Grab them by the pussy. You can do anything."*

. . .

*Ms. Carroll's Case is "Based On" An Alleged Sexual Assault*

As previously stated, Mr. Trump almost certainly is correct in arguing that the quoted statements on the *Access Hollywood* tape are offered by plaintiff for "only one purpose: to suggest to the jury that Defendant has a propensity for sexual assault and therefore the alleged incident [with Ms. Carroll] must have in fact occurred."[3] He is correct also that the Federal Rules of Evidence ordinarily preclude propensity evidence. As noted above, however, Rule 415 provides that "evidence that the [defendant] committed any other sexual assault" may be admitted in "a civil case involving a claim for relief based on a party's alleged sexual assault," as that term is defined in Rule 413(d).[4]

Mr. Trump nevertheless claims that this is not a case *"based on* a party's alleged sexual assault" because Ms. Carroll's claim in this case – as distinguished from *Carroll II*, which asserts both battery and defamation claims – is exclusively for defamation, not rape or some other form of sexual assault. He contends that there are two schools of legal thought as to the meaning of "based on" as used in Rule 415 and that the narrower and, in his submission, better view – referred to as the "categorical approach" – is that a case is "based on" a sexual assault only if proof of the sexual assault is an element of the claim for relief. Proof of defamation, he says, does not require proof of a sexual assault. But there is no need in this case to debate the preferable interpretation of the phrase "based on" as used in Rule 415. For whatever the theoretical merits of the categorical approach as applied in other cases, this particular case is "based on" an alleged sexual

---

[3]     Def. Mem. (Dkt 131) at 15.

[4]     Fed. R. Evid. 415(a).

assault under either approach for a very simple reason: proof of sexual assault is an essential element of Ms. Carroll's defamation claim given the nature of the alleged defamation.

The core of the alleged defamation in this case, although it is broader, is that Mr. Trump's statements in words and in substance included the assertions that Ms. Carroll lied in claiming that Mr. Trump raped her, that her accusation is a "hoax." Thus, in order to prevail on her libel claim, Ms. Carroll must prove that Mr. Trump sexually assaulted her.[5]  Unless she proves that sexually assault, she cannot establish that Mr. Trump's charge that her story was a lie and a hoax was false.  In consequence, this indeed is a case "based on" a sexual assault even under the categorical approach.  In any event, as Judge Furman recently explained in a thoughtful opinion, the alternative view of the meaning of "based on" – a view under which a case is "based on" a sexual assault if a sexual assault is a premise of a plaintiff's claim – is preferable to the categorical approach,[6] an analysis with which I agree.  And under that test there is no serious question that Ms. Carroll's claim is "based on" an alleged sexual assault.

*The Access Hollywood Tape Satisfies Rule 415*

The next question is whether the *Access Hollywood* tape contains evidence of one or more other "sexual assaults" by Mr. Trump.  This requires further consideration of the definition of

---

[5]
> *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) ("Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) *falsity of the defamatory statement*, and (5) special damages or *per se* actionability.") (emphasis added) (citation omitted).  For Ms. Carroll to establish the "falsity of [Mr. Trump's allegedly] defamatory statement," she must prove that Mr. Trump sexually assaulted her.

[6]
> *Boyce v. Weber*, 19-cv-3825, 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021).

8

"sexual assault" in Rule 413(d).

Rule 413(d) defines "sexual assault" as "a crime under federal law or under state law . . . involving" any of five categories of conduct, the relevant portions of at least two of which have a bearing here:

- "contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus" - Rule 413(d)(2).

- "an attempt . . . to engage in conduct described in subparagraph[]"(2) - Rule 413(d)(5).

The first italicized portion of the *Access Hollywood* tape excerpt evidences Mr. Trump stating that he "moved on" a woman named Nancy[7] "like a bitch," that he "tried to fuck her." The second italicized portion evidences Mr. Trump said that he just starts kissing beautiful women, he does not first obtain consent, that the women just let one do it when one is a "star," and that a "star" can "grab" beautiful women by their genitals or do anything the "star" wants. Moreover, he testified in his deposition:

"Q    And you consider yourself to be a star?

A    I think you can say that, yeah."[8]

The Court acknowledges that Mr. Trump has claimed that his statements were "locker room talk" – presumably meaning that they were not true – and that he has denied that he has behaved in the manner described by his statements.  Although he has not so argued, some of the

---

[7]    Possibly Nancy O'Dell, then a television personality.

[8]    Trump Dep. (Dkt 135-3) at 174:20-21.

statements perhaps may be susceptible of varying interpretations – including in some respects interpretations that may be inconsistent with sexual misconduct by Mr. Trump. Possibly, for example, he may claim that he was speaking of what other "stars" have done, not his own conduct. But that is not what is required to justify exclusion for failure to satisfy Rule 415.

While Rules 413 and 415 do not articulate the standard for the admission of evidence of sexual assaults, those courts that have addressed the question have held that "a trial court considering evidence offered under Rule 415 must decide under Rule 104(b) *whether a reasonable jury could find* by a preponderance of the evidence that the past act was an 'offense of sexual assault' under Rule 413(d)'s definition and that it was committed by the defendant."[9]   It simply is not the Court's function in ruling on the admissibility of this evidence to decide what Mr. Trump meant or how to interpret his statements.

In this case, a jury reasonably could find, even from the *Access Hollywood* tape alone, that Mr. Trump admitted in the *Access Hollywood* tape that he in fact has had contact with women's genitalia in the past without their consent, or that he has attempted to do so.  And that conclusion is supported by the other evidence discussed below.  Accordingly, the tape satisfies Rule 415 by virtue of Rule 413(d)(2) and (d)(5).

---

9

E.g., *Johnson v. Elk Lake School District,* 283 F.3d 138, 154-55 (3d Cir. 2002) (emphasis added).  *Accord, United States v. Keen,* No. 4:21-CR-00052, 2023 WL 2226796, at *3 (M.D. Pa. Feb. 24, 2023); *A.R. v. Pohlman,* Civ. No. 16-17865, 2019 WL 468528, at *1 (E.D. La. Feb. 6, 2019); *McMahon v. Valenzuela,* Case No. 2:14-cv-02085-CAS(AGRx), 2015 WL 7573620, at *4 (C.D. Cal. Nov. 25, 2015); *United States v. Levinson,* No. 10–80166–CR, 2011 WL 1102841, at *3 (S.D. Fla. Jan. 31, 2011) (in the context of Rule 414, whether the defendant committed a prior child molestation offense); CHRISTOPHER MUELLER AND LAIRD KIRKPATRICK, FEDERAL EVIDENCE § 4:84, at 346-37 (3d ed. 2007).

*The Two Alleged "Other Victim" Witnesses*

*Jessica Leeds*

Ms. Leeds testified at her deposition that she was seated beside Mr. Trump on a flight from Texas to New York in 1979.  After they finished eating the served airline meal, Mr. Trump assaulted her:

"[H]e was with his hands grabbing me, trying to kiss me, grabbing my breasts, pulling me towards him, pulling himself on me.  It was kind of a struggle going on.  *  *  *  That went on for what seemed like a terribly long time, but it probably was just a few seconds.

"It was when he started putting his hand up my skirt that I realized that nobody was going to save me but me, and I was on the aisle, I managed to wheel my way out of the chair, and grabbed my purse, and I went back to my seat in the back."[10]

Some time later, Ms. Leeds testified, she was at prominent retail store in New York for an event at which guests were seated at tables. Ms. Leeds was working at a table distributing "chits" (table assignments) to those attending. Mr. Trump and his wife came up to the table.  Ms. Leeds handed him his "chit" whereupon "he looked at [her] and[, according to Ms. Leeds,] he said, 'I remember you.  You're the cunt from the airplane."[11]

Mr. Trump has claimed that Ms. Leeds is a liar and that no such event over occurred.

---

[10]     Leeds Dep. (Dkt 135-5)  at 19:3-18.

[11]     *Id.* at 22.

11

And he will be entitled to make that argument to the jury. But that is not now the issue. Even considered alone, Ms. Leeds' account, if credited by the jury, reasonably could be regarded as describing unconsented-to sexual contact by Mr. Trump and also as an attempt by Mr. Trump to bring at least his hands, and perhaps other parts of his body, into contact with Ms. Leeds' genitalia, in each case in violation of federal law.[12]   It therefore satisfies at least Rule 413(d)(2) and 413(d)(5) and thus Rule 415.

---

[12]

In order to be admissible under Rule 415, evidence of a sexual assault of a person other than the plaintiff must also have been a federal or state crime. That requirement is satisfied here.

49 U.S.C. §§ 46506 and 46501(2) make it a crime to commit an act on an "aircraft in the United States" that would violate any provision of chapter 109A of title 18 of the United States Code if the act had been committed in the special maritime and territorial jurisdiction of the United States.

18 U.S.C. 2246(3), which is part of chapter 109A, defines "sexual contact" in relevant part as "the intentional touching, either directly or through the clothing, of the genitalia, . . . groin, breast, [or] inner thigh . . . of any person with an intent to . . . arouse or gratify the sexual desire of any person." Mr. Trump's alleged non-consensual grabbing of Ms. Leeds' breasts and putting his hand up her skirt, if it occurred, therefore would have been forced "sexual contact" or, at least, an attempt to make such contact, under chapter 109A.

That takes us to 18 U.S.C. § 2244(a)(1), which makes it unlawful knowingly to cause another person to engage in a "sexual contact" by force, or to attempt to do so, in the special maritime and territorial jurisdiction of the United States if so to do would violate section 2241(a) or (b) had the "sexual contact" been a "sexual act." 18 U.S.C. § 2241(a)(1) makes it a crime knowingly to engage in a "sexual act" with another within the special maritime jurisdiction of the United States.2241(a).

Accordingly, the alleged assault on Ms. Leeds while on an "aircraft in the United States," attempted or completed, if it occurred, thus would have been a federal crime under 49 U.S.C. § 46506 and 46501(2).

*Natasha Stoynoff*

Ms. Stoynoff, then a writer for *People* magazine, traveled to Mar-a-Lago, Mr.

Trump's residence in Florida, to interview him and his wife, Melania.  Mr. Trump offered to show

Ms. Stoynoff a painting that he said was hanging in a certain room, and took her there.  As she began

looking around, she heard him close the door behind her.  Then, she testified:

> "I turn around and he's right here (indicating), and he grabs my shoulders and
>
> pushes me against this wall and starts kissing me.

Q   Did he say anything before?

A   Not that I recall.

Q   And what was going through your mind when Donald Trump did this?

A   Complete shock.  Thank you.  Complete shock because it was very fast and

I was taken – taken by surprise.

Q   And do you recall how you reacted?

A   I do recall pushing him back twice.  I recall trying to say something, but not

really being able to.  I was so flustered.

Q   And when you pushed him back the first time do you recall how Donald

Trump reacted?

A   Yes.  He just came toward me again.

Q   And what about after the second time?

A   He started coming toward me again, but then someone came into the room.

Q   Do you recall who came into the room?

A   Yes.  It was the butler.

* * *

Q    And did you see the butler have any reaction to what Mr. Trump was doing?

A    Yes, I did.

Q    And how would you describe that?

A    Well, all I know is that when I looked at his face, to me he had the look on his face like thank God I got in here, like he's done this before, like he knew that he saw a shut door and he had to get in there. That's my perception of his . . ."[13]

Later in the deposition, she further testified:

Q    [earlier portion of question not in record] there a particular piece of the video you're referring to?

A    Lying about never groping or kissing women without their consent and how he had the utmost respect for women.

Q    You consider what he did to you lying and groping women without their consent?

A    I consider that he lied about kissing and groping me without consent."[14]

Ms. Stoynoff's deposition presents a different factual situation that Ms. Leeds'. Nevertheless, the legal analysis is similar.

Rule 413(d)(5) defines as "sexual assault" for purposes of Rule 415 an attempt to

---

[13]    Stoynoff Dep. (Dkt 135-4) at 21:5-22:25.

[14]    *Id.* at 38:2-10.

14

engage in conduct described in Rule 413(d)(2), among other provisions.  Rule 413(d) requires also that any such attempt to constitute a crime under federal or state law.  There are at least two ways that Mr. Trump's conduct as described by Ms. Stoynoff, if it occurred, would have been a crime under the law of Florida, where the incident allegedly took place.

First, under Florida law, "[t]o establish an attempt to commit a specific intent crime, the State must prove a specific intent to commit that crime and an overt act toward the commission of the crime."[15]  It is a crime under Florida law "[a]ctually and intentionally [to] touch[] or strike[] another person against the will of the other."[16]  This clearly covers Mr. Trump's alleged kissing and groping of Ms. Stoynoff, as Mr. Trump tacitly concedes.[17]  Rule 415 therefore is satisfied if (1) Mr. Trump's conduct included an "overt act" toward the commission of a state crime (2) taken for the purpose of committing a state crime "involving" "contact, without consent, between any part of [Mr. Trump]'s body . . . and [Ms. Stoynoff]'s genitals or anus . . . ."[18]

Second, in the alternative, Florida law makes it a crime for "[a] person 18 years of age or older [to] commit[] sexual battery upon a person 18 years of age or older, without that person's consent, and in the process does not use physical force and violence likely to cause serious

---

15

*Neal v. State*, 854 So. 2d 666, 670 (Fla. Dist. Ct. App. 2003).

16

Fla. Stat. § 784.03(1)(a)1.

17

*See, e.g., Stockett v. Tolin,* 791 F. Supp. 1536, 1555-56 (S.D. Fla. 1992) (groping and kissing).

18

Fed. R. Evid. 413(d)(2).

15

personal injury . . . ."[19]  Florida law defines "sexual battery" as "oral, anal, or female genital penetration by, or union with, the sexual organ of another or the anal or female genital penetration of another by any other object,"[20] and that definition "makes no mention of intent at all."[21]  For a crime that does not have an intent requirement, "[a]ttempt under Florida law requires the defendant to commit 'any act toward the commission of such [crime], but fails in the perpetration or is intercepted or prevented in the execution thereof.'"[22]  As a result, Rule 415 also is satisfied if Mr. Trump's conduct included "an[] act toward the commission" of a state crime "involving" "contact, without consent, between any part of [Mr. Trump]'s body . . . and [Ms. Stoynoff]'s genitals or anus . . . ."[23]

Ms. Stoynoff described Mr. Trump kissing her without her consent and against her will.  That alone would not satisfy any part of Rule 413(d).  But Ms. Stoynoff, however, testified also that Mr. Trump was lying when he denied "groping" her without her consent – in other words, that he "groped" her.

The word "grope" in the context of human contact means "[t]o touch or fondle (a person or part of the body) clumsily or forcefully for one's sexual gratification, (in later use) esp.

---

[19]

Fla. Stat.§ 794.011(5)(b).

[20]

Fla. Stat.§ 794.011(1)(j).

[21]

*United States v. Bemis*, No. 8:19-CR-458-T-33AAS, 2020 WL 1046827, at *3 (M.D. Fla. Mar. 4, 2020).

[22]

*United States v. Lockley*, 632 F.3d 1238, 1245 n.6 (11th Cir. 2011) (quoting Fla. Stat. § 777.04(1)) (alteration in original).

[23]

Fed. R. Evid. 413(d)(2).

without consent."[24]   And while "groping" anyone without consent is sexual misconduct, and colloquially might be referred to as sexual assault, Rule 413(d) is not that broad.  It defines "sexual assault" as unwanted contact, or attempted unwanted contact, only with particular parts of the anatomy.  The portion of Ms. Stoynoff's deposition now before the Court does not specify what part of her anatomy she claims that Mr. Trump groped or attempted to grope.  And if Ms. Stoynoff's account of the parts of her body that Mr. Trump allegedly touched were the only relevant evidence, it would be debatable whether that conduct alone would satisfy Rules 413(d) and 415.[25]  But it is not alone.

As an initial matter, the circumstances of the alleged encounter are relevant.  Mr. Trump, she says, invited Ms. Stoynoff – who was at Mar-a-Lago to interview Mr. Trump and his wife – to an unoccupied room and closed the door behind her, actions indicative of a desire for privacy.  She went on to say that he immediately, and without her consent, began kissing Ms. Stoynoff and pressed on as she resisted his advances. These actions are suggestive of a plan, formed

---

[24]   "Grope." OXFORD ENGLISH DICTIONARY (available at https://www.oed.com/view/Entry/81745?rskey=awTI5e&result=3&isAdvanced=false#eid) (last visited Feb. 28, 2023); *see also* "Grope." MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY (available at https://unabridged.merriam-webster.com/unabridged/grope) ("to pass the hands over (the person of another) for the sake of sexual pleasure") (last visited Feb. 28, 2023).

[25]   In any case, the Court may not assume for purposes of Mr. Trump's motion that the plaintiff could not lay a better foundation for admissibility of Ms. Stoynoff's account by adducing evidence concerning the particular parts of Ms. Stoynoff's anatomy Mr. Trump groped or attempted to grope.  Mr. Trump therefore would not have satisfied his burden, on the *in limine* motion, to establish that "the evidence is clearly inadmissible on all potential grounds." *Jean–Laurent v. Hennessy,* 840 F. Supp.2d 529, 536 (E.D.N.Y. 2011) (internal quotation marks and citation omitted).  It is worth noting that Mr. Trump concedes that this is the applicable standard. Def. Mem. (Dkt 131) at 1 (citing *Highland Capital Mgmt. v. Schneider,* 379 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) ( "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.") (citation omitted).

before Mr. Trump invited Ms. Stoynoff to the unoccupied room and closed the door behind her, to take advantage of that privacy and to do so without regard to Ms. Stoynoff's wishes. Moreover, the *Access Hollywood* tape and the testimony of Ms. Leeds are additional evidence that a jury would be entitled to consider in deciding whether to infer that the ultimate goal of Mr. Trump's alleged actions with Ms. Stoynoff was to bring his hands or other parts of his anatomy into contact with Ms. Stoynoff's most private parts.

To be sure, the Court does not now draw any such inference. And Mr. Trump has denied publicly any such occurrence ever happened. He of course will be entitled to do so before the jury. And the jury could credit Mr. Trump's testimony in preference to Ms. Stoynoff's. But that is for another day. The Court's only function at this stage is to decide whether the evidence of record is sufficient for a jury reasonably to conclude that Mr. Trump at least attempted to have contact with Ms. Stoynoff that, if it had occurred, would have met the requirements of Rule 413(d). That standard has been satisfied.[26]

*Rule 403*

Mr. Trump contends that the testimony of Mss. Leeds and Stoynoff, even if otherwise admissible under Rules 415 and 413(d), should be excluded under Rule 403. He argues that the circumstances of the alleged assaults on these two women are "vastly different" from those on Ms. Carroll, that the events allegedly involving these women were not close in time to the alleged incident with Ms. Carroll, that each was the only alleged assault on the alleged victim, and that the testimony of Mss. Leeds and Stoynoff is unnecessary because it "is relevant only to the extent

---

26

Plaintiff lacks sufficient evidence to independently establish the merit of her claims."[27]

> Rule 403, upon which Mr. Trump relies, provides:

> "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[28]

And Mr. Trump correctly points out that courts considering Rule 403 objections to relevant evidence consider a number of factors, including

> "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." [29]

But, as the text of the rule itself makes clear, the probative value of the evidence that the movant seeks to exclude weighs heavily in the equation. And that is the appropriate starting point here.

> This is, in the vernacular, is a "he said, she said" case, and it is one that turns on an alleged event more than two decades ago. There will be no physical evidence supporting either side at trial. Mr. Trump repeatedly has denounced Ms. Carroll as a liar and the perpetrator of a hoax, and he has done so on national television and with the benefit of his status in the public and political

---

[27]   Def. Mem. (Dkt 131) at 9-11.

[28]   Fed. R. Evid. 403.

[29]   *United States v. Spoor*, 904 F.3d 141, 153-55 (2d Cir. 2018).

spheres. Ms. Carroll's case, absent these witnesses, likely will depend upon her personal credibility in the courtroom, the credibility of two witnesses whom she allegedly told of the alleged rape contemporaneously, and the jury's assessment of Mr. Trump's personal credibility. Mr. Trump's alleged sexual assaults on Mss. Leeds and/or Stoynoff, if the jury is permitted to hear their testimony and believes it, is likely to weigh heavily in the jury's determination. In consequence, their testimony, if received, could prove quite important. Indeed, that surely is why Mr. Trump seeks to exclude it. So it is in that context that the usual Rule 403 factors warrant attention.

Mr. Trump's attempt to minimize the similarity between his alleged actions with respect to Ms. Leeds and Ms. Stoynoff, on the one hand, and Ms. Carroll on the other is not very persuasive. The alleged acts are far more similar than different in the important aspects. In each case, the alleged victim claims that Mr. Trump suddenly attacked her sexually. In the cases of Ms. Carroll and Ms. Stoynoff, he allegedly did so in a location after closing a door behind him, which gave him privacy. In all three cases, he allegedly did so without consent. So it is only Ms. Leeds' case that differs in an important particular -- the fact that the alleged assault occurred on an airplane in circumstances in which, despite the fact that both she and Mr Trump were in bulkhead seats, afforded little privacy.

Mr. Trump effectively concedes that there were no intervening circumstances here that weigh in his favor.[30] Nor is the fact that Mr. Trump did not allegedly assault either Ms. Leeds or Ms. Stoynoff more than once each of any significance. There is no reason to suppose that he encountered either of them with sufficient frequency for repeated assaults on either to have been

---

[30] Def. Mem. (Dkt 131) at 11.

within realm of possibility.

His best argument is that these three alleged incidents were widely separated in time: Ms. Leeds in 1979, Ms. Carroll in the mid-1990s, and Ms. Stoynoff in 2005. And that weighs in his favor. On the other hand, Rule 415, unlike other provisions of the Rules of Evidence, contains no temporal limits on the admissibility of evidence of other sexual assaults in a sexual assault case. The legislative history makes clear that this was no accident.[31] So, while the limitations of Rule 403 certainly apply with respect to sexual assault evidence in cases like this, they perhaps must be applied with due regard for Congress's deliberate failure to impose temporal limits.

In all the circumstances, Mr. Trump has not demonstrated persuasive reason to believe that there is any risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," let alone any risks that would substantially outweigh the probative value of the evidence of Mss. Leeds and Stoynoff.

*The Campaign Excerpts*

Ms. Carroll seeks to offer in evidence seven excerpts from statements by Mr. Trump during the 2016 presidential campaign. The excerpts vary in length and average 47 seconds each. And all of them share similar characteristics – assertions by Mr. Trump that women who have accused him of sexual assaults were lying and, in several of the cases, words or implications that the women's looks are not appealing to Mr. Trump. In short, he spoke of these other women essentially

---

[31]   140 Cong. Rec. at S12990 (statement of Sen. Robert Dole) ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.").

in the same terms as he allegedly defamed Ms. Carroll.  Mr. Trump seeks to exclude them as irrelevant and under Rule 403.

These excerpts do not allege sexual assault, so Rules 413 and 415 are irrelevant.  And, except under Evidence Rules 413 through 415,  "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[32]  But Rule 404(b) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[33]  And that is where Ms. Carroll hangs her hat.  She argues that these excerpts are appropriate

> "to establish Trump's *modus operandi* of categorically denying accusations and his intent and knowledge when making those statements.  Indeed, this *modus operandi* is plain to see.  When a woman accuses Trump, he unconditionally denies the allegations, accuses the woman of fabricating her story, and declares that she was too ugly for him to have sexually assaulted in the first place. [citations omitted]  This is the exact pattern Trump followed when he first responded to Carroll's accusations in June 2019 . . ."[34]

She goes on to contend that this evidence is "highly relevant" because, "[g]iven the similarities between how Trump responded to all three women, the pattern makes it more likely that Trump lied

---

[32] Fed. R. Evid. 404(b)(1).

[33] Fed. R. Evid. 404(b)(2).

[34] Pl. Mem. (Dkt 138) at 14.

when he denied assaulting Carroll."[35]

The problem with Ms. Carroll's argument, even assuming sufficient similarities, is that these speech excerpts would not tend to make it more likely that Mr. Trump lied when he denied assaulting Ms. Carroll *unless* perhaps the evidence establishes that he lied when he denied assaulting each of the other women to whom he responded. The jury might or might not so find with respect to Ms. Leeds and Ms. Stoynoff, who are the obvious subjects of some of the excerpts. But it is not now clear that Ms. Leeds and Ms. Stoynoff were the only subjects of these remarks. Nor is it clear that the jury could make similar findings with respect to any others.[36]

In the circumstances, the Court will defer any ruling on the admissibility of these excerpts until trial.

*Emotional Harm*

This action is exclusively for defamation allegedly committed in 2019. Ms. Carroll here seeks damages solely for that defamation. In *Carroll II*, in contrast, the alleged rape itself as well as for a different allegedly defamatory statement allegedly made in October 2022. Mr. Trump seeks to preclude in this case, the case limited to alleged defamation, "any evidence of purported emotional harm related to the alleged incident," referring to the sexual assault.[37] On this point, the

---

[35]

*Id.* at 15.

[36]

Ms. Carroll's fallback position – *i.e.*, that the excerpts are "evidence of Trump's knowledge regarding the falsity of his statements about Carroll, and his intent to lie and act with malice when making those statements", *id.* -- amounts to the same argument

[37]

Dkt 131 at 10.

parties are speaking past each other.

"To the extent that Trump seeks only to preclude Carroll from claiming as *compensatory damages*, the emotional and psychological harm that the sexual assault caused her, Carroll does not disagree."[38]  Compensatory damages for the sexual assault are available, if at all, only in Carroll II, which is brought under New York's Adult Survivors Act.  But evidence of emotional and psychological harm allegedly caused by the alleged sexual assault may be relevant in this action, as it may go to why Ms. Carroll did not report or speak out about the alleged sexual assault earlier than she did and perhaps for other reasons.  Mr. Trump does not suggest any reason that such evidence should be excluded.

*Conclusions*

For the foregoing reasons, Mr. Trump's *in limine* motion (Dkt 130) is denied in all other respects.  This ruling is without prejudice to renewing his objection to the campaign speech excerpts in the event they are offering at trial.  Unless otherwise ordered, those excerpts shall not be mentioned in opening statements.

SO ORDERED.

Dated:          March 10, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[38]     Pl. Mem. (Dkt 138) at 17 (emphasis in original).