**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>              *Plaintiff,*<br><br>   v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>             *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**<u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND</u>**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

FACTS ............................................................................................................................... 1

ARGUMENT ...................................................................................................................... 8

    I.      Plaintiff's Amended Allegations Unduly Prejudice Defendant .............................. 8

    II.     Plaintiff's Motion Should Be Denied Because of Plaintiff's Undue Delay .......... 13

    III.    Plaintiff's Motion Should Be Denied Due to Futility .......................................... 16

    IV.    This Court Should Permit Defendant to File a Supplemental Motion for Summary
          Judgment in Light of the Carroll II Verdict ........................................................ 19

CONCLUSION ................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*,
    626 F.3d 699, 725 (2d Cir. 2010) ........................................................................8

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566, 604-05 (2d Cir. 2005) ..................................................................8

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
    760 F.2d 442, 446 (2d Cir. 1985) ........................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)..........................15

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)...........15

*Bymoen v. Herzog, Heine, Geduld, Inc.*,
    No. 88-CV-1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) .....................13

*Canon Inc. v. Tesseron Ltd.*,
    No. 14-cv-5462-DLC, 2015 WL 4508334, at *2 (S.D.N.Y. July 24, 2015) .........................15

*Carroll v. Trump*,
    49 F.4th 759 (2d Cir. 2022) ..................................................................2

*Cortes v. Twenty-First Century Fox America, Inc.*,
    285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) ........................................................18

*Cresswell v. Sullivan & Cromwell*,
    922 F2d 60, 72 (2d Cir 1990) ..................................................................12

*Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*,
    99 F.3d 401, 401 (2d Cir. 1995) ........................................................................9

*Cummins, Inc. v. New York Life Ins.*,
    2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012).......................................12, 14

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83, 88 (2d Cir. 2002) ........................................................................15

*Fine v. ESPN, Inc.*,
    11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014).......................................................16

*Halpert v. Wertheim & Co., Inc.*
    81 F.R.D. 734, 735 (S.D.N.Y., 1979) ..............................................................15

*Holmes v. Grubman*,
    568 F.3d 329, 334 (2d Cir. 2009) ..........................................................................7

*In re Agent Orange Prod. Liab. Litig.*,
    220 F.R.D. 22, 24-25 (E.D.N.Y. 2004) ................................................................14

*James v. Universal Motown Records, Inc.*,
    2005 U.S. Dist. LEXIS 4442, at *4 (S.D.N.Y. Mar. 22, 2005) ...........................13

*Juncewicz v Patton*,
    2002 US Dist LEXIS 22651, at *29 (W.D.N.Y. Oct. 8, 2002) ..............................9

*Kinsey v. New York Times Co.*,
    991 F.3d 171, 178 (2d Cir. 2021) ........................................................................16

*Krumme v. WestPoint Stevens, Inc.*,
    143 F.3d 71, 88 (2d Cir. 1998) ..............................................................................9

*Lee v. Regal Cruises, Ltd.*,
    916 F. Supp. 300, 302, 304 (S.D.N.Y. 1996) ..................................................13,15

*Lerner v. Immelt*,
    No. 10-cv-1807-DLC, 2012 WL 2197456, at *3 (S.D.N.Y. June 15, 2012)..........7

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395, 416 (2d Cir. 2014) ........................................................................15

*Luellen v Hodge*,
    2013 US Dist LEXIS 141484, at *16 (W.D.N.Y. Sep. 30, 2013) .........................10

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280, 288 (2d Cir. 2002) ........................................................................17

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184, 200 (2d Cir. 2007) ......................................................................7, 8

*Parrish v Sollecito*,
    2003 US Dist LEXIS 29001, at *4 (SDNY Apr. 7, 2003).....................................9

*PI, Inc. v. Quality Prods., Inc.*,
    907 F. Supp. 752, 764–65 (S.D.N.Y. 1995) ........................................................13

*Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*,
    93 Civ. 5375 (SAS), 1996 U.S. Dist. LEXIS 2177, at *7 (S.D.N.Y. Feb. 23, 1996)...............9

*Pomerance v McTiernan*,
    51 AD3d 526, 528 (1st Dept 2008) ......................................................................17

*Ruotolo v. City of New York*,

514 F.3d 184, 192 (2d Cir. 2008) ........................................................................9

*Sala v. Gates Constr. Co.*,
155 F.R.D. 414, 415 (E.D.N.Y. 1994).......................................................14

*Sanders v. Thrall Car Mfg. Co.*,
582 F. Supp. 945, 952 (S.D.N.Y.1983.......................................................12

*SCS Commc'ns, Inc. v. Herrick Co.*,
360 F.3d 329, 345 (2d Cir. 2004) .............................................................8

*Sommer v PMEC Assoc. & Co.*,
1993 US Dist LEXIS 12749, at *13 (S.D.N.Y. Sep 14, 1993)...............10

*Trump v. Carroll*,
No. 22-SP-745, 2023 WL 2920882 ...........................................................6

*United States v. Cardroom Int'l, LLC*,
726 F. App'x 98 (2d Cir. 2018) .................................................................13

*United States v. Pokerstars*,
No. 11-CV-2564 (KMW), 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016)..................13

*Wexler v. Allegion (UK) Ltd.*,
374 F. Supp. 4 302, 311 (S.D.N.Y. 2019) ...............................................16

*Williams v. Columbia Univ.*,
No. 11-cv-8621-WHP, 2012 WL 3879895, at *5 (S.D.N.Y. Aug. 28, 2012) .......................15

*Wyly v. Weiss*,
697 F.3d 131, 141 (2d Cir. 2012) (quoting *Marvel Characters, Inc.*, 310 F.3d at 288-89) ...18

*Youngers v. Virtus Inv. Partners Inc.*,
2017 U.S. Dist. LEXIS 198944, 2017 WL 5991800, at *7 (S.D.N.Y. Dec. 4, 2017) .............8

## **Rules and Statutes**

N.Y. Civ. Rights Law § 74 ..............................................................................15, 16

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in opposition to the Motion to Amend (the "Motion") the Complaint filed by the plaintiff, E. Jean Carroll ("Plaintiff"). For the reasons set forth herein, the Motion should be denied in its entirety.

## FACTS

On June 21, 2019, Plaintiff published an excerpt from her upcoming book, *What Do We Need Men For?: A Modest Proposal* in *New York Magazine* entitled "Trump assaulted me in a Bergdorf Goodman dressing room 23 years ago. But he's not alone on the list of awful men in my life." *See* Declaration of Alina Habba ("Habba Dec."), Ex. A. In the article, she wrote that, on an unspecified date in the 1990's, Defendant raped her in a dressing room of Bergdorf Goodman, a prominent New York City department store. When describing the alleged event, Plaintiff asserts the following:

> I am astonished by what I'm about to write: I keep laughing. The next moment, still wearing correct business attire, shirt, tie, suit jacket, overcoat, he opens the overcoat, unzips his pants, and, forcing his fingers around my private area, *thrusts his penis halfway — or completely, I'm not certain — inside me*.

*Id*. (emphasis added).

Shortly thereafter, Defendant—who at that time was the sitting president of the United States—issued three separate statements to the media refuting Plaintiff's allegations.

Plaintiff filed her initial complaint (the "Complaint") in the Supreme Court of the State of New York on November 4, 2019. Habba Dec., Ex. B. The key allegation, which was repeated throughout the Complaint, was that Defendant defamed Plaintiff when he denied raping her in the Bergdorf dressing room in the 1990s. For instance, at the outset of the Complaint, Plaintiff declared that "The rape of a woman is a violent crime; compounding that crime with acts of malicious libel is abhorrent. Yet that is what Defendant Donald J. Trump did to Plaintiff E. Jean Carroll." *See*

Habba Dec., Ex. B, at ¶1 (emphasis added). Thereafter, the word 'rape' is repeated approximately 71 times throughout the Complaint. Plaintiff's entire theory of liability rests on her assertion that Defendant is liable for defamation because he "*falsely stated that he did not rape Carroll*." *Id*. at ¶¶ 85, 93, 100 (emphasis added).

On September 8, 2020, the United States removed the action to this court upon certification from James G. Touhey, Director, Torts Branch, Civil Division, United States Department of Justice, that Defendant was acting within the scope of his office at the time that the challenged statements were made. *See* ECF No. 1. On same date, the United States filed a motion to have the United States substituted as the sole defendant. Plaintiff opposed the substitution motion, and on October 27, 2020, this Court issued an opinion denying the motion to substitute. ECF 32. Importantly, as part of this opinion, this Court assessed the case and stated that, "the question of whether Mr. Trump in fact raped Ms. Carroll appears to be at the heart of her lawsuit." *Id*. at 3.

Both Defendant and the United States timely appealed this Court's decision to the United States Court of Appeals for the Second Circuit, arguing that the President is a covered government employee for the purposes of the Westfall Act and that Defendant acted within the scope of his employment when he made the purportedly defamatory statements denying Plaintiff's sexual assault allegations. Thereafter, the Second Circuit issued its decision on September 27, 2022. *See Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022), wherein it reversed this Court's prior decision, holding that that the President of the United States is not an employee of the government, in conjunction with the Westfall Act.  The Court also vacated this Court's holding that Defendant did not act within the scope of his employment and certified the scope of employment issue to the D.C. Court of Appeals.

On November 24, 2022, Plaintiff filed a second action against Defendant captioned under *E. Jean Carroll v. Donald J. Trump*, Case No. 1:22-cv-1001 (S.D.N.Y 2022) ("*Carroll II*"). *See* Habba Dec. Ex. C. The Complaint in *Carroll II* is virtually identical to the one filed in the instant matter, except that it included an additional count of battery under the recently passed Adult Survivor's Act, as well as an additional defamation claim based on a statement issued by Defendant on October 12, 2022 concerning the instant litigation.

Shortly after filing her suit, Plaintiff made the following announcement: "Dearest friends, tonight, a few minutes after midnight, we filed the rape suit against the former president. I give thanks to the greatest civil rights attorneys in the nation: Robbie Kaplan! Matt Craig! Joshua Matz! Shawn Crowley! Rachel Tuchman!"[1]

*Carroll II* proceeded to trial on April 25, 2022. Throughout the course of the trial, Plaintiff repeatedly asserted that she had been raped by Defendant. Indeed, at the outset of her direct examination, Plaintiff testified as follows: "I am here because Donald Trump raped me, and when I wrote about it, he said it didn't happen. He lied and shattered my reputation, and I am here to try to get my life back." *See* Habba Dec. Ex. D, at 148. Plaintiff repeatedly and emphatically stood by this accusation during both her direct examination and the subsequent cross examination. For instance, when responding to a question as to why she did not scream during the purported incident, Plaintiff responded as follows:

> I wasn't coming up with a story. It's usually -- I would say more than usually under discussion when a woman is raped and she doesn't scream. It's usually discussed, why didn't she scream. Why didn't you scream, E. Jean? Why didn't you scream? It's what a woman -- you better have a good excuse why you didn't scream. Because if you didn't scream, you weren't raped. *I'm telling you, he raped me, whether I screamed or not*.

*Id*. at 408. (emphasis added).

---

[1] E. Jean Carroll (@ejeancarroll), Twitter (Nov. 24, 2022, 12:58 AM) https://bit.ly/3qhI7m3.

The jury entered its verdict in *Carroll II* on May 9, 2023. *See* Habba Dec. Ex. F. Importantly, and contrary to the repeated claims made by Plaintiff, the jury found that Defendant did not rape Plaintiff. *Id*. Despite this finding, the jury somehow found Defendant liable for battery under the premise that he had purportedly sexually abused Plaintiff and defamed her in his October 12 statement. Defendant has since timely filed a notice of appeal on May 11, 2023 and the appeal remains pending before the Second Circuit. *See* Habba Dec., Ex. F.

Plaintiff, accompanied by her counsel, Roberta Kaplan, appeared on the program "CNN This Morning" on May 10, 2023. During the interview, she expressed her immediate response to the jury's finding that she failed to satisfy the burden of proof with respect to her allegation that Defendant had raped her:

> Q: "But I just wonder, E. Jean, what went on through your head when you heard that."
>
> A: "Well, I just immediately say in my own head, oh yes he did, oh yes he did. See that's my response."[2]

Following the conclusion of the *Carroll II* trial, Defendant, in connection with his candidacy for the 2024 President Election, participated in a town hall event hosted by CNN on May 10, 2023 (the "Town Hall"). During the Town Hall, which was moderated by CNN Host, Kaitlan Collins, Defendant answered questions concerning a range of political issues at the forefront of the national dialogue. Among them was the verdict entered in *Carroll II*. When directly asked about his opinion on the jury's finding, Defendant maintained the position that he has held from the outset of this litigation – that he does not know Plaintiff and that he did not commit the act he had been accused of. *See* Habba Dec. Ex. G.

---

[2] CNN, "E. Jean Carroll says Trump is 'incorrect' about civil trial jury," YouTube (May 10, 2023), https://bit.ly/3WRSXeF

With respect to the proceedings that occurred in the matter *sub judice*, following this Court's Order, the parties commenced discovery in this action, and the Court issued a Scheduling Order which set deadlines governing discovery between the parties on May 5, 2022. ECF. 76. Among other things, the Scheduling Order directed the parties to complete all fact discovery on or before October 19, 2022. *Id*. On July 19, 2022, this Court supplemented the existing scheduling order, and set deadlines for the parties to file their respective motions for summary judgment, the exchange of pre-marked trial exhibits, and motions *in limine*. The parties proceeded with discovery, exchanging written discovery responses, subpoenaed third parties, and conducted numerous depositions. This Court subsequently scheduled this matter for trial on April 10, 2023. ECF No. 100.

Plaintiff was deposed on October 14, 2022. *See* Habba Dec, Ex. H. Throughout her deposition, Plaintiff repeatedly testified that she perceived the alleged attack as a rape. For instance, when asked whether she believed that Defendant was trying to hurt her head when he purportedly advanced on her in the dressing room, Plaintiff testified that "No, no. No. He was not trying to hurt me. He was trying to rape me . . ." *Id*. at 121:11-18. When describing the alleged attack, she explained: "And then I felt his fingers rummaging around my vagina and this huge weight against me. My head hurt, this huge weight, I'm in a situation where I can't -- I can't -- at one point I remember saying this is Donald Trump, what the heck is going on? And then I felt his penis inside of me." *Id*. at 123:5-13. Further, when asked whether Plaintiff ever questioned whether the alleged attack qualified as a rape, Plaintiff unequivocally testified that "I question whether he thought it was a rape. *I never questioned what I thought*. *Id*. at 145:2-8 (emphasis added).

Thereafter, on December 22, 2022, Defendant filed a Motion for Summary Judgment, which has been fully briefed and pending adjudication since January 19, 2022. *See* ECF 107.

On March 17, 2023, Plaintiff submitted a letter motion on behalf of the parties, requesting that both *Carroll I* and *Carroll II* be consolidated in furtherance of judicial economy. *See* ECF 147. In that letter, Plaintiff cited to this Court's opinion on October 12, 2022, wherein the Court noted that "the question whether Mr. Trump in fact raped Ms. Carroll is central to this case," in support of her argument that the two matters should be consolidated." The Court ultimately denied the parties' application and adjourned this matter while the scope of employment issue remained pending before the Second Circuit and D.C. Court of Appeals. *See* ECF 148.

On April 13, 2023, the D.C. Court of Appeals answered the certified question from the Second Circuit. *See Trump v. Carroll*, No. 22-SP-745, 2023 WL 2920882. In its decision, the D.C. Court of Appeals stated that, in determining an employer's liability under respondeat superior for a tortfeasor's actions, the District of Columbia generally adheres to the scope-of-employment section of the Restatement (Second) of Agency. *Id.* at 225. The D.C. Court of Appeals noted, however, that it would refrain from issuing a determination as to whether Defendant was acting within the scope of his employment when making the challenged statements, and instead sought only to clarify the scope of employment question as it related to this matter. *Id*. at 226. Shortly after the D.C. Court of Appeals issued its decision, the Second Circuit remanded the scope of employment question to this Court for further proceedings. ECF 149.

Following the Second Circuit's remand and the conclusion of the *Carroll II* trial, Plaintiff filed the instant application. *See* ECF 155. In support of her motion, Plaintiff submitted clean and red-lined versions of the proposed amendments to the Complaint. *See* ECF 157, Declaration of Roberta Kaplan, Ex. A, B.

Of the amendments proposed by Plaintiff, the most significant change to her Complaint is the sudden, *ex post facto* revision of what she claims occurred in the Bergdorf Goodman dressing

room. Indeed, in her Amended Complaint, Plaintiff seeks to abandon her accusation that Defendant raped her—which she has claimed since 2019 and continues to maintain publicly to this day—in an attempt to re-characterize the alleged incident as a "sexual assault." Her reason for doing so is clear—she is attempting to comport her Complaint with the jury's verdict from *Carroll II* to capitalize on the favorable aspect of the ruling while minimizing the impact of the adverse portion. Consequently, the Plaintiff has substituted approximately 71 mentions of the previous assault as a rape with various iterations of "sexual assault" and "sexual abuse." *See generally, id*.

The Amended Complaint also sets forth a number of other substantive changes, including, but not limited to, the following:

- The proposed Amendments include the comments made by Defendant at the Town Hall and has characterized those comments as "defamatory". *Id*. at ¶¶ 18, 168-174;

- The October 12, 2022 statement, which was the subject of *Carroll II*, is now included in the Complaint; *Id*. at ¶ 152.

- Instead of stating that it was strange for the lingerie department of Bergdorf Goodman to be empty, the Complaint now states that it was not uncommon for this to occur; *Id* at ¶ 34.

- The Complaint now states that the attack lasted for "only a few minutes" as opposed to "two to three minutes." at ¶ 46.

- The references to accounts from readers of the Ask E. Jean advice column, who allegedly contacted the Plaintiff to share their experiences as rape victims, along with the Plaintiff's subsequent responses to those inquiries, have been completely eliminated. *Id*. at 12-13;

- Plaintiff now alleged that she was "profoundly" moved by the "Me Too" movement. *Id*. at ¶ 70.

- The Complaint now incorporates a section asserting that the Defendant made the contested statements solely based on personal motivations and not in the capacity of his role as President of the United States. *Id*. at ¶¶ 128-140.

- The Complaint has been amended to include a demand for $10,000,000 in compensatory damages. *Id*. at ¶ 147.

- The Complaint has been amended to include Plaintiff's characterization of the events that transpired in the *Carroll II* trial and the subsequent jury verdict. *Id*. at 155-163.

## ARGUMENT

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A motion for leave to amend may be denied for 'good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Lerner v. Immelt*, No. 10-cv-1807-DLC, 2012 WL 2197456, at *3 (S.D.N.Y. June 15, 2012) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)). "[L]eave to amend a pleading may only be given when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commcns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy*, 482 F.3d at 200.

Here, there is no question that the Motion should be denied. *First*, Plaintiff's proposed amendments unduly prejudice Defendant because they are designed to alter the very nature of this case in response to the jury's verdict in *Carroll II*, which effectively negates her claim. *Second*, Plaintiff's motion, filed on the eve of trial, should be denied on the basis of undue delay and improper gamesmanship. *Third*, the amended allegations which reference Defendant's Town Hall comments must be rejected on the basis of futility because those comments are safeguarded by the fair reporting privilege. Accordingly, the Motion should be denied in its entirety.

## I.   PLAINTIFF'S AMENDED ALLEGATIONS UNDULY PREJUDICE DEFENDANT

It is well established that "prejudice to the opposing party resulting from a proposed amendment [is] among the most important reasons to deny leave to amend." *AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604-05 (2d Cir. 2005) (leave to amend may

be denied for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.) (internal quotation omitted).

With respect to the instant application, Plaintiff's proposed amendment is unduly prejudicial because it seeks to fundamentally alter the nature of this action, at the eleventh hour, in response to a jury verdict that directly undercuts the viability of her claim. As such, the proposed amendment is inherently prejudicial to Defendant.

At the outset, the timing of Plaintiff's motion, on its own, is enough to warrant its denial. The instant litigation was commenced on November 4, 2019, nearly four years ago. All discovery has been completed, all motions—including Defendant's motion for summary judgment and the parties' motions *in limine*—have been filed, experts and witnesses have been identified, and the joint pre-trial order has been submitted. In other words, for all intents and purposes, the case is ready to proceed to trial. New York courts have consistently denied motions to amend which are filed at such a late stage in litigation. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (affirming denial of leave to amend and noting that "[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof."); *Youngers v. Virtus Inv. Partners Inc.*, 2017 U.S. Dist. LEXIS 198944, 2017 WL 5991800, at *7 (S.D.N.Y. Dec. 4, 2017) ("The most obvious situation in which such prejudice arises is where the motion to amend comes on the eve of trial after many months or years of pre-trial activity."); *Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 99 F.3d 401, 401 (2d Cir. 1995) (affirming the lower court's "denial of an eve-of-trial motion to amend the complaint to add a negligence claim."); *Parrish v Sollecito*, 2003 US Dist LEXIS 29001, at *4 (S.D.N.Y. Apr. 7, 2003) ("The Court finds that [the plaintiff's] unexplained delay in amending the Complaint, waiting until the eve of trial to make such an application, is prejudicial to [the] [d]efendants and would cause undue delay to the trial that is

about to begin."); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend as "especially prejudicial given the fact that discovery had been completed and [the defendant] had already filed a motion for summary judgment"); *see also Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (same where "case was near resolution and discovery had been completed"); *Juncewicz v Patton*, 2002 US Dist LEXIS 22651, at *29 (W.D.N.Y. Oct. 8, 2002) (denying leave to amend complaint on "eve of trial" as amendment would "unduly delay the final disposition of this action.").

Further, the prejudicial effect of Plaintiff's last-minute filing is significantly compounded by the way the Amended Complaint seeks to radically, and arbitrarily, shift the nature of the allegations being levied against Defendant. In this Circuit, it is well established that undue prejudice results when a proposed complaint "dramatically changes the nature of the allegations and the extent of a defendant's liability." *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, 93 Civ. 5375 (SAS), 1996 U.S. Dist. LEXIS 2177, at *7 (S.D.N.Y. Feb. 23, 1996); *see also, Sommer v PMEC Assoc. & Co.*, 1993 US Dist LEXIS 12749, at *13 (S.D.N.Y. Sep 14, 1993) ("Where a proposed complaint would dramatically change the nature of the allegations and the exposure claimed against a defendant, prejudice results."); *Luellen v Hodge*, 2013 US Dist LEXIS 141484, at *16 (W.D.N.Y. Sep. 30, 2013) (finding that newly discovered information by a party did not explain "a complete transformation of the legal claims" asserted against the opposing party.).

Of the many proposed edits that Plaintiff has included in her Amended Complaint, the most prevalent change—and, conspicuously, one which she fails to even address in her motion papers— is the substitution of the word "rape" with the word "sexual assault" a total of seventy-one times throughout the Amended Complaint. Indeed, minus a few trivial exceptions, the word "rape" is substituted for "sexual assault" in every single instance that it was previously alleged in the

Complaint. This change has an extraordinary impact on the substance of Plaintiff's allegations, particularly in light of the jury verdict in *Carroll II*, which precludes a finding that Defendant defamed Plaintiff by denying that he raped her.  In essence, by substituting the word "rape" for "sexual assault," Plaintiff is attempting to improperly 'retrofit' this lawsuit to conform to the portion of the *Carroll II* verdict which favors her, while blatantly ignoring the portion which does not.

Since the inception of this case, it has been unanimously accepted that liability hinges on one question – whether a rape occurred in the Bergdorf dressing room in the 1990s. Indeed, this Court has consistently recognized that "the question whether Mr. Trump in fact raped Ms. Carroll is central to this case." *See* ECF 96; *see also*, *Carroll II*, ECF 38 ("As is obvious, the central issue in both Carroll I and Carroll II is exactly the same – whether Mr. Trump raped Ms. Carroll. If he did not, then Ms. Carroll's sexual assault claim in Carroll II and her libel claims in both cases likely would fail.").

Likewise, from the genesis of this case to present, Plaintiff has repeatedly and emphatically stated that she was raped by the Defendant and has insisted that this very question lies at the heart of the case. The innumerable pleadings filed by Plaintiff, and the statements contained therein, drive this point home. For instance, in her initial Complaint, Plaintiff proclaimed that "[t]he rape of a woman is a violent crime; compounding that crime with acts of malicious libel is abhorrent. *Yet that is what Defendant Donald J. Trump did to Plaintiff E. Jean Carroll*." *See* Habba Dec., Ex. B, at ¶1 (emphasis added). Moreover, when attempting to establish the basis for her claim, Plaintiff repeatedly alleged that Defendant was liable for defamation because he "*falsely stated that he did not rape Carroll*." *Id*. at ¶ 85, 93, 100 (emphasis added). Further, through motion practice, Plaintiff has overtly acknowledged that the question of whether a rape occurred is determinative in this

11

case. *See e.g.,* ECF 134 at 6; ("This Court has already recognized that "whether Mr. Trump raped Ms. Carroll is the paramount issue" in this proceeding."); ECF 138 at 8 ("Though separate actions, everyone agrees that the central issue is the same: did Trump rape Carroll?"); *Carroll II*, ECF No. 20 ("Trump directly attacked an author—who specializes in honest advice to women about sex, men, and relationships—with false claims that she lied about an experience of being raped [which she had revealed in her book] and claims that she spread those lies while appearing on TV to discuss her book (conduct that obviously involved her trade and profession)."); *Carroll II*, ECF 73 at 7. ("As this Court has repeatedly recognized, the "central" question in both cases is exactly the same: "whether Mr. Trump in fact raped Ms. Carroll.").

Thus, the operative question in this case is, and has always been, whether a rape occurred in the Bergdorf Goodman dressing room. The jury in *Carroll II* found that one did not. Tellingly, Plaintiff's proposed Amended Complaint omits any reference to the jury's finding in this regard, instead opting to retroactively erase the theme of "rape" and proceed as if her case had been about something else entirely all along. In doing so, Plaintiff's intentions are clear – she is attempting to reverse-engineer her Complaint to comport with the jury's finding in *Carroll II* in the hopes of obtaining a favorable finding on liability, all while disregarding a crucial portion of the same verdict. Worse, she attempts to do so at the eleventh hour, after all pre-trial proceedings have been concluded. It is difficult to envision a more prejudicial amendment to a Complaint than one that is designed to shift liability from one party to the other, at the tail end of litigation, based on cherrypicked portions of a verdict. Yet, that is precisely what Plaintiff is attempting to do.

Accordingly, it is beyond dispute that allowing Plaintiff to amend her Complaint in such an inappropriate manner—fundamentally shifting the nature of the case to evade the consequence

of a jury verdict which undermines the viability of her claim—would cause Defendant to suffer extreme prejudice. Therefore, Plaintiff's Motion to Amend must be denied in its entirety.

## II.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE OF PLAINTIFF'S UNDUE DELAY

Courts in the Second Circuit have consistently held that where a party seeks to amend after an inordinate delay, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Cresswell v. Sullivan & Cromwell*, 922 F2d 60, 72 (2d Cir 1990) (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y.1983), affd, 730 F.2d 910 (2d Cir. 1984)). Indeed, "The focus of the good cause inquiry is on the diligence of the party seeking to amend, and the court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint." *Cummins, Inc. v. New York Life Ins.*, 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012).

As outlined above, Plaintiff seeks to retroactively change the central issue of this case by modifying the substance of her claim, claiming that the defamation arose from Defendant's denial of sexual assault, as opposed to his denial of rape. However, contrary to Plaintiff's assertion, there are no new facts which justify the late amendment of Plaintiff's Complaint.

Simply put, a jury verdict cannot conceivably have any effect on Plaintiff's personal knowledge about what she claims occurred in a Bergdorf Goodman dressing room nearly 30 years ago. Plaintiff fails to offer any explanation—and, in fact, largely ignores the question—as to how a jury's decision in a correlated case could radically transform her narrative to the point where she thought it necessary to modify the central accusation in her Complaint. Indeed, Plaintiff would have presumably known at the time of the filing of her Complaint whether or not her accusations were true, and to what extent. The jury's finding that her principal claim (i.e., that she had been raped) does not withstand scrutiny is not "new" information, but merely a determination that her

13

story is not credible. Thus, Plaintiff has failed to put forth any viable justification for amending her Complaint. *See e.g.*, *United States v. Pokerstars*, No. 11-CV-2564 (KMW), 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016) ("[D]enial of leave to amend is proper when a party attempts to assert new facts or theories that it could have raised sooner."), *aff'd sub nom. United States v. Cardroom Int'l, LLC*, 726 F. App'x 98 (2d Cir. 2018); *see also Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88-CV-1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (denying leave to amend where "plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims" and the new claim "required no new information and could have been raised years ago"); *James v. Universal Motown Records, Inc.*, 2005 U.S. Dist. LEXIS 4442, at *4 (S.D.N.Y. Mar. 22, 2005) (Kaplan, J.) (finding that motion to amend on the eve of trial was inappropriate because the principal's alleged role had been known to the owners for months and the prejudice to the defendant of adding parties on the eve of trial was patent.).

Indeed, New York courts routinely prohibit parties from curing pleading deficiencies in response to an adverse ruling. *See e.g., Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 302, 304 (S.D.N.Y. 1996) (denying cross-motion to amend when leave was sought after defendant's motion for summary judgment revealed a flaw in plaintiff's legal theory which "evidently caused the plaintiffs to rethink their case," and noting that "the circumstances suggest that the request for leave to amend reflects an evolutionary development in plaintiff's case that falls under the heading of bad faith."), *aff'd*, 116 F.3d 465 (2d Cir. 1997); *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 764–65 (S.D.N.Y. 1995) (denying leave to amend when timing of the motion revealed that it was designed to avoid dismissal of the action). This is precisely what Plaintiff is seeking to do here—she wants to retrofit her Complaint to avoid the unfavorable ruling in *Carroll II.*

14

The level of gamesmanship being employed by Plaintiff is further evidenced by her recent public statements, which make clear that she staunchly rejects the jury's finding in *Carroll II* – the very same verdict which she now seeks to rely upon in establishing liability in her favor. Indeed, shortly after the *Carroll II* jury verdict was issued, Plaintiff appeared for an interview on CNN and, when asked about the jury's finding that there was no rape, she immediately responded "oh yes he did."[3]

Moreover, as a practical matter, Plaintiff's proposed amendment is simply untenable at this stage of the litigation. The parties have expended considerable time and resources in the completion of fact discovery, exchanging thousands of documents, the completion of non-party subpoena practice, and have fully briefed a pending Motion for Summary Judgment filed by Defendant. Further, witnesses and experts have been identified, reports have been exchanged, and the parties have even filed their respective motions *in limine*, which have already been ruled upon. Now, nearly four years after the commencement of her suit, and on the brink of trial, Plaintiff seeks to upend this entire case by filing an Amended Complaint which constitutes a stark and dramatic departure from the Complaint that was initially filed in this case, without any proper justification for doing so. *See e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 220 F.R.D. 22, 24-25 (E.D.N.Y. 2004) (plaintiffs unable to justify five-year delay in moving to amend); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (counsels lack of awareness of statute was unsatisfactory excuse for 17-month delay in asserting new claim); *Sala v. Gates Constr. Co.*, 155 F.R.D. 414, 415 (E.D.N.Y. 1994) (denying plaintiff's motion for leave seeking to assert new legal theory four years after plaintiff's injury and more than two years after plaintiff filed complaint).

---

[3] CNN, "E. Jean Carroll says Trump is 'incorrect' about civil trial jury," YouTube (May 10, 2023), https://bit.ly/3WRSXeF.

Therefore, in accordance with the well-developed body of case law concerning undue delay, Plaintiff's motion must be denied.

## III.    PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED DUE TO FUTILITY.

Plaintiff's Motion should be rejected for another standalone reason: the remarks made by the Defendant during the Town Hall meeting are safeguarded by the fair reporting privilege, which consequently prevents them from being used as a foundation to enhance the punitive damages sought by Plaintiff in this case, and the amendment is therefore futile.

The Second Circuit has expressly held that "motions to amend should generally be denied in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Williams v. Columbia Univ.*, No. 11-cv-8621-WHP, 2012 WL 3879895, at *5 (S.D.N.Y. Aug. 28, 2012); *Lee*, 916 F. Supp. at 304–05. An amendment is futile if it would not withstand a Rule 12(b)(6) motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *see also Canon Inc. v. Tesseron Ltd.*, No. 14-cv-5462-DLC, 2015 WL 4508334, at *2 (S.D.N.Y. July 24, 2015) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6).") (citing *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 416 (2d Cir. 2014)). Thus, an amendment will be precluded as futile to the extent that it fails to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Halpert v. Wertheim & Co., Inc*. 81 F.R.D. 734, 735 (S.D.N.Y. 1979) ("If the complaint, as amended, could not withstand a motion to dismiss, a motion to amend need not be granted.").

Among the numerous changes Plaintiff has proposed in the Complaint, Plaintiff has included numerous references to Defendant's remarks in a CNN "Town Hall" event, which she alleges are defamatory, and seeks to incorporate them as a means of amplifying any punitive

damages that might be awarded in this matter. However, such a change would be futile, as Defendant's "Town Hall" comments are protected by the absolute privilege pursuant to N.Y. Civ. Rights Law § 74.

Under Section 74 of the New York Civil Rights Law, "a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74. Section 74's protections "include[ ] statements published not only by the media, but also by parties or their counsel." *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019). "A statement comes within the privilege and 'is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021) (quotation omitted).

"A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether 'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Kinsey*, 991 F.3d at 178-79 (quotation omitted). "In other words, '[i]f the context in which the statement [is] made make[s] it impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply.'" *Id*. at 179. "New York courts 'adopt a liberal interpretation of the fair and true report standard of [Section] 74 so as to provide broad protection to news accounts of judicial proceedings.'" Id.

"In addition, 'Section 74 applies only where the challenged report is 'of' a proceeding.'" *Wexler*, 374 F. Supp. 3d at 311 (alterations omitted) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d

17

209, 216 (N.D.N.Y. 2014)). "An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding." *Fine*, 11 F. Supp. 3d at 216 (citations omitted). In other words, "there must be some perceptible 'connection between the challenged report and the . . . proceeding.'" *Id*. (quotation omitted). "'It is for the Court to determine as a matter of law if a publication is a "fair and true" report under section 74, unless the Court determines that an issue of fact remains.'" *Wexler*, 374 F. Supp. 3d at 312 (quotation omitted). The Appellate Division, First Department has also held that, to be pertinent to the litigation, "'the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices.'" *Pomerance v McTiernan*, 51 AD3d 526, 528 (1st Dept 2008) (internal quotations omitted).

Applying this extremely liberal standard, it cannot be seriously disputed that the statements made by Defendant at the "Town Hall" event are pertinent to the litigation in *Carroll II*, which remains pending on appeal. The defendant, being a party involved in the litigation, was addressing a specific question about the jury's decision in *Carroll II*. He neither denied nor misrepresented the jury's verdict but merely voiced his disagreement with the finding and restated his position—which he had asserted throughout the duration of the proceedings—that the claimed event never happened. The average listener would have had no difficulty ascertaining that the comments were made in response to, and in connection with, the *Carroll II* proceeding. Consequently, Plaintiff's proposed inclusion of the "Town Hall" comments would be dismissed based on the 12(b)(6) standard, rendering it futile.

For this reason, and all others set forth herein, Plaintiff's motion to amend must be denied in its entirety.

**IV.    THIS COURT SHOULD PERMIT DEFENDANT TO FILE A SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT IN LIGHT OF THE *CARROLL II* VERDICT.**

Should the Court properly deny Plaintiff's Motion to Amend, Defendant respectfully requests this Court's leave to file a supplemental motion for summary judgment on the grounds that Plaintiff is estopped from pursuing her defamation claim.

Collateral estoppel prevents a party "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). The Second Circuit has repeatedly held that issue preclusion applies only in the presence of the following four elements: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (quoting *Marvel Characters, Inc.*, 310 F.3d at 288-89).

At bottom, based on the jury verdict in *Carroll II*, Plaintiff's defamation claim must fail. As substantiated by the jury's finding, Defendant's denial of Plaintiff's rape allegations was truthful, and truth "is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018). Plaintiff's principal allegation, as set forth in both her book, *What Do We Need Men For*, and the original Complaint, is that she was raped by the Defendant. Whether the rape occurred is an issue that was actually litigated and decided in *Carroll II*, and the jury found in the negative. Thus, since these facts have arisen after the deadline for the filing of motions for summary judgment in this matter, Defendant should be permitted to file a

19

supplemental motion for summary judgment which incorporates the jury's finding in *Carroll II*, as the issue of liability has been conclusively decided in Defendant's favor.

## V.    CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that Plaintiff's Motion to Amend be dismissed in its entirety and that Defendant be granted leave to file a supplemental motion for summary judgment in light of the verdict issued in *Carroll II*.

Dated: June 5, 2023

Respectfully submitted,

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*