## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

E. JEAN CARROLL,

       *Plaintiff,*

    v.

DONALD J. TRUMP, in his personal capacity,

       *Defendant.*

No. 20 Civ. 7311 (LAK)

---

## PLAINTIFF E. JEAN CARROLL'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF HER MOTION TO AMEND

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

## PRELIMINARY STATEMENT

Defendant Donald J. Trump uses his opposition brief to try to dream up an alternate reality within—to use an expression popularized by recent Oscar winner *Everything Everywhere All at Once*—a "multiverse." In that other world, Trump wasn't actually found liable in *Carroll II*, but was instead somehow vindicated by the jury. But no one in these cases has hot dogs for fingers, and nothing in the *Carroll II* verdict supports Trump's position. What the jury found is that Trump sexually abused Carroll—and that he later defamed her when he said (falsely and with actual malice) that he did not know who she was, that he never met her at Bergdorf Goodman, and that she completely made up their encounter as part of a "con job" and "hoax." As a result, the jury awarded Carroll $5 million in compensatory and punitive damages.

Carroll's amended pleading incorporates that verdict and adds allegations, taken largely from Trump's deposition, concerning Trump's motivation for defaming Carroll in June 2019—allegations that are relevant to the Westfall Act scope-of-employment question now before the Court in *Carroll I*. Carroll moved to amend just weeks after amendment became relevant and appropriate and after she was able to engage in a meet-and-confer on the issue with Trump's counsel. Carroll's proposed amendment will not only facilitate the efficient resolution of this long-pending action, but easily meets the permissive standard under Rule 15. At bottom, Trump offers no credible arguments for why leave to amend should be denied.

## ARGUMENT

### I.     THE PROPOSED AMENDMENT SATISFIES RULE 15

Rule 15 provides that courts should "freely give" leave to amend pleadings. Fed. R. Civ. P. 15(a)(2). Plaintiff's proposed amendment makes three groups of changes to the operative complaint. It adds allegations: (1) drawing from Trump's deposition in this action that demonstrate

his personal motive for defaming Carroll in June 2019; (2) accounting for the verdict in *Carroll II*; and (3) describing Trump's various public statements about Carroll following that verdict.

Because Trump does not argue that any of these proposed additions reflects undue delay or causes him prejudice, he has waived any arguments in that regard. *See Wells Fargo Bank, N.A. v. U.S. Life Ins. Co. in City of N.Y.*, No. 22 Civ. 8606, 2023 WL 3091676, at *3 n.3 (S.D.N.Y. Apr. 26, 2023) ("[B]ecause Plaintiff only argues that amendment would be futile, and does not argue undue prejudice, undue delay, or bad faith, the Court only examines the proposed amendment for futility."). In any event, there can be no doubt on either score. The amendments are responsive to the D.C. Court of Appeals' recent *respondeat superior* decision, *see Trump v. Carroll*, 292 A.3d 220 (D.C. 2023) (en banc), the recent jury verdict in *Carroll II*, and the even more recent statements that Trump made in the wake of that verdict. Carroll could not have proposed these amendments any sooner than she did. And Trump faces no prejudice as a result of the aforementioned changes, since they implicate no new discovery, arguments, or claims.

Trump's only response to the substance of Carroll's motion to amend is a limited futility argument that both mischaracterizes the new allegations and misunderstands the law. More specifically, Trump argues that the proposed amendment would be futile because his statement during the May 10 CNN town hall—repeating his prior claims about Carroll—is not actionable under Section 74 of the New York Civil Rights Law. As the Court no doubt recalls from its decision in *Carroll II* denying Trump's motion for summary judgment on that basis in that case, Section 74 provides that "a civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding." *See generally Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023).

"Futility is a determination, as a matter of law, that proposed amendments would fail . . . to state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Yet the sole legal claim in this case—Carroll's cause of action for defamation arising out of Trump's June 2019 statements—remains unaltered by the proposed amendment. *See* ECF 157-2 ¶¶ 175-83. Carroll's amended complaint does not assert a new cause of action arising from Trump's statements at the May 10 CNN town hall. Instead, it alleges Trump's recent statements because they bear on the personal motive for Trump's statements in June 2019, as well as on the issue of punitive damages. *See, e.g.*, *Trump*, 292 A.3d at 237 (a factfinder "is free to consider any probative, relevant evidence tending to establish the employee's purpose behind their conduct, regardless of how temporally remote that may be from the moment of the tort"); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 184 (2d Cir. 2000) ("prior or subsequent defamations" *and* "subsequent statements of the defendant" are relevant to punitive damages for defamation (citation omitted)). Any defense under Section 74 that Trump might think he possesses against a hypothetical, unasserted cause of action is irrelevant to the issues in this case. Because Section 74 has no bearing on whether the amended complaint would survive a motion to dismiss, Carroll's motion is not futile and should be granted. *See Berrio v. City of New York*, No. 15 Civ. 9570, 2018 WL 2388537, at *8 (S.D.N.Y. May 9, 2018) (no futility where proposed amendment "added no different causes of action" to complaint that already stated a claim).

## II.    TRUMP MISCHARACTERIZES CARROLL'S PROPOSED PLEADING TO PRESENT UNPERSUASIVE ARGUMENTS FOR DENYING LEAVE TO AMEND

Rather than engage with the substantive (and limited) reasons for amendment discussed above, Trump insists that Carroll's proposed amendment is an attempt to "fundamentally alter the nature of this action, at the eleventh hour, in response to a jury verdict that directly undercuts the

3

viability of her claim." ECF 164 at 9. In advancing this claim, Trump blatantly mischaracterizes both the proposed amendment and the *Carroll II* verdict—and presents assertions that are, in any event, wholly irrelevant to deciding this motion. Trump's argument is nothing more than an absurd attempt to manufacture "fake news" of vindication from the jury verdict in *Carroll II*, a verdict finding that he forcibly inserted his fingers into Carroll's vagina and then maliciously defamed her when he lied about the assault decades later. And yet, without a hint of irony, Trump accuses Carroll of "attempting to improperly 'retrofit' this lawsuit to conform to the portion of the *Carroll II* verdict which favors her, while blatantly ignoring the portion which does not." *Id.* at 11.

Setting aside Trump's distortions, the proposed amendment does not "fundamentally alter" this case in any way. To the contrary, Carroll's amended complaint includes precisely the same allegations about what happened in the Bergdorf Goodman dressing room as the original complaint did. *See* ECF 157-2 ¶¶ 39-45. Those allegations are consistent with Carroll's account of the assault in her book, ECF 164 at 1; at her deposition, *id.* at 5; and at trial, *Carroll II* Trial Tr. at 177-82. Most essentially, the single legal claim in the original complaint and proposed amendment is identical. This case is—and has always been—a defamation case arising from Trump's June 2019 statements in which he denied knowing Carroll and accused her of inventing the sexual assault out of whole cloth. *See* ECF 157-2 ¶¶ 175-83. Thus, the core question underlying the defamation claim in both this case and *Carroll II* is "whether Mr. Trump sexually assaulted Ms. Carroll." *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 3000562, at *3 (S.D.N.Y. Mar. 20, 2023).

Trump, however, would have this Court believe that Carroll seeks to drastically change the nature of her claim by using the term "sexual assault" or "sexual abuse" in place of "rape" in certain parts of her amended pleading. These amendments do nothing to change Carroll's account of what happened at Bergdorf's. Instead, they simply seek to minimize any confusion that might

arise from circumstances that have changed since Carroll filed her original complaint in November 2019. At that time, the Adult Survivors Act did not exist, and the complaint's use of the word "rape" was untethered from any specific criminal statute or definition. Indeed, and in contrast to the relatively narrow definition under New York law, other jurisdictions define rape to encompass the full range of sexual misconduct Carroll alleges. *Compare Carroll II* Trial Tr. 1417 ("'Sexual intercourse' [for purposes of New York's definition of rape] means any penetration, however slight, of the penis into the vaginal opening."), *with, e.g.*, 10 U.S.C. § 920 (defining rape to include "the penetration, however slight, of the vulva . . . of another by any part of the body or any object"). For this reason, sexual assault and rape at times have been used interchangeably throughout this litigation. *Compare, e.g.*, *Carroll*, 2023 WL 3000562, at *3 ("[T]he core issue in this case [is] whether Mr. Trump sexually assaulted Ms. Carroll"), *with Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *7 (S.D.N.Y. Oct. 12, 2022) ("The question whether Mr. Trump in fact raped Ms. Carroll is central to this case.").

The jury verdict in *Carroll II* reflects this point. Consistent with Carroll's complaint in that action, the Court instructed the jury that "Carroll claims that Mr. Trump is liable to her for battery on three different and alternative bases, each of which corresponds to a criminal law definition of a *different sex crime*." *Carroll II* Trial Tr. 1416 (emphasis added). Adhering to those instructions, the jury found that Trump sexually abused Carroll in the Bergdorf Goodman dressing room. *Carroll II*, ECF 174. This means the jury at least found that Trump used physical force to grab Carroll's vagina against her will in order to gratify his own sexual desire. *See Carroll II* Trial Tr. 1418-20; N.Y.P.L. § 130.65. The jury may have also determined that Trump gratified himself sexually by forcibly touching the outside of Carroll's vagina with his penis. While it is true that the jury did not find that Trump penetrated her with his penis, that determination does not mean

that the jury rejected Carroll's claims or accepted Trump's denials.[1] Indeed, the jury found that Trump defamed Carroll by falsely stating that the sexual assault never happened, and the jury's $5 million judgment puts to rest any question about who the jury believed.

Trump implies that the jury's findings are inconsistent, but as the Court explained in the jury charge, "whether Mr. Trump's statement is false or true depends largely or entirely on whether you find that Mr. Trump raped *or* sexually abused *or* forcibly touched *or* otherwise sexually attacked Ms. Carroll." *Carroll II* Trial Tr. 1431 (emphasis added). Trump did not object to that instruction, and his own proposed verdict form reflected the range of sexual misconduct that would make him liable for battery under the ASA. *Carroll II* Trial Tr. 1208, 1212-13; *Carroll II*, ECF 101. The reason is clear: Trump's position has never been that he *did* sexually assault Carroll but *did not* penetrate her with his penis. Instead, Trump has always maintained that Carroll invented her story in its entirety out of whole cloth. *See* ECF 164 at 4 (describing Trump's position from the outset of the litigation "that he does not know Plaintiff and that he did not commit the act he had been accused of").

It is therefore beyond dispute that this case does not turn on the specific definition of rape under New York law, but on the broader set of allegations concerning what happened in that Bergdorf Goodman dressing room in the spring of 1996. Carroll's use of more generalized language to describe the assault in her amended pleading simply reflects this fact and does nothing to alter the basis for this action. Trump's focus on these changes—to the exclusion of arguing against the stated purposes for amendment—is nothing more than a strawman intended to distract

---

[1] This verdict makes sense given Carroll's testimony at trial. While Carroll described repeatedly and in great detail Trump's use of his fingers to touch and invade Carroll's vagina, *Carroll II* Trial Tr. at 180-81, 406, Carroll freely acknowledged that while she believes she felt Trump's penis inside her, *id.* at 181, 636, she could not see it because Trump's body was pressed up so closely against hers, *id.* at 181. She also testified that she managed to escape shortly after his penis entered her. *Id.* at 182. And for many years, Carroll testified, she resisted using the word "rape" to describe the attack by Trump. *Id.* at 545.

from the damning result in *Carroll II. See, e.g.*, Larry Neumeister et al., *Jury finds Trump liable for sexual abuse, awards accuser $5M*, AP (May 9, 2023) (quoting Trump's counsel as saying he was "obviously very happy that Donald Trump was not branded a rapist").

Regardless, none of Trump's arguments about the proposed amendment's use of the terms "rape," "sexual assault," and "sexual abuse" provides any basis to deny leave to amend.

While Trump argues that allowing these changes at this stage of the litigation causes him substantial prejudice, ECF 164 at 9-10, courts have rejected the proposition that "leave to amend should not be granted after discovery has been completed and a motion for summary judgment has been filed." *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986); *accord Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 368 (S.D.N.Y. 2016). This is especially true where, as here, the proposed amendments are "merely variations on the original theme" and "aris[e] from the same set of operative facts as the original complaint." *Hanlin*, 794 F.2d at 841. Instead, prejudice would occur only if Carroll's amendment were to "'(i) require [Trump] to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute.'" *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation omitted). That clearly is not the case here. Carroll's single cause of action remains unchanged, and the discovery already taken has "fully explored the question whether the defendant sexually assaulted the plaintiff as she alleges." *Carroll II*, ECF 19 at 1. In other words, the amendment presents no "new problems of proof," *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008), and would cause no delay of these proceedings.

Alternatively, Trump insists that the amendment was proposed in bad faith because Carroll could have made these changes previously. In support of this position, Trump argues that the amendment is an attempt to cure "pleading deficiencies in response to an adverse ruling." ECF

164 at 14. But there has been no adverse ruling (and the *Carroll II* verdict was adverse only to Trump). Moreover, this argument rests on the same category error that runs through Trump's entire opposition brief. Trump would have the Court believe that "the request for leave to amend reflects an evolutionary development in plaintiff['s] case that falls under the heading of bad faith." *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996) (Kaplan, J.), *aff'd*, 116 F.3d 465 (2d Cir. 1997). But, as detailed above, the nature of Carroll's defamation claim remains unchanged, and the principal purpose of Carroll's amendments is to add allegations about Trump's subjective motivation for making the June 2019 statements that bear on the Westfall Act and punitive damages. Those allegations only recently became ripe and relevant.

## III.   TRUMP'S REQUEST FOR ADDITIONAL SUMMARY JUDGMENT BRIEFING IS BOTH PROCEDURALLY IMPROPER AND SUBSTANTIVELY MISTAKEN

Tacked on to the end of Trump's opposition brief is a request for leave to file a supplemental motion for summary judgment. That request has no relevance to Carroll's request to amend and is made in a manner that is procedurally improper. *See, e.g.*, *Burdyn v. Old Forge Borough*, No. 3:12 Civ. 2236, 2017 WL 382304, at *2 (M.D. Pa. Jan. 26, 2017) ("The purpose of a brief in opposition to another party's motion is not to make a separate motion.").

However, because Trump raises the issue, Carroll agrees that additional briefing on the preclusive effect of the *Carroll II* verdict will be necessary to narrow the issues for an eventual trial in this action. Carroll respectfully defers to the Court on when and under what circumstances that limited summary judgment briefing should take place. But what is clear yet again is that Trump misunderstands the verdict in *Carroll II* and the claims at issue in this case.

Under New York law, which controls the preclusive effect of the jury's verdict, *see Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 n.3 (2d Cir. 2020), collateral estoppel may be invoked when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding

was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding*, LLC, 25 N.Y.3d 1, 17 (2015). Applying this test, the effect of the *Carroll II* jury verdict is obvious: Trump will be collaterally estopped from relitigating the merits of the *Carroll I* defamation claim because the identical issues were litigated in *Carroll II* and the jury found Trump liable. The only remaining issue will be damages.

To be sure, Trump makes the outlandish argument that the jury's finding *of liability* on Carroll's *Carroll II* battery claim collaterally estops Carroll from litigating her *Carroll I* defamation claim. But the issue for the *Carroll I* defamation claim is not whether Trump engaged in conduct meeting a specific definition of rape under New York law, but rather whether Trump lied when he denied sexually assaulting Carroll in any way. Those issues are thus not identical, as the law requires. *See, e.g.*, *Friedman v. New York City Admin. for Children's Servs.*, 502 F. App'x 23, 28 (2d Cir. 2012). The issue of whether Trump raped Carroll was not necessary to the *Carroll II* verdict either. A "determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835, 129 S. Ct. 2145, 2152 (2009). The outcome in *Carroll II* did not hinge on the jury finding that Trump did not penetrate Carroll with his penis. Had that been the case, then the jury would not have found Trump liable for battery or defamation. *See* N.Y. C.P.L.R. 214-j (reviving tort claim where underlying conduct "would constitute a sexual offense" under New York law); *Carroll II* Trial Tr. 1416 (instructing jury on three separate sexual offenses that independently would suffice); *id.* at 1431 (instructing jury that falsity for defamation "depends largely or entirely on whether you find that Mr. Trump raped or sexually abused or forcibly touched or otherwise sexually attacked Ms. Carroll"). As a result, any supplemental summary judgment motion proposed by Trump would be frivolous.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff leave to amend her complaint.

Dated: New York, New York                                  Respectfully submitted,
      June 12, 2023

                                           Roberta A. Kaplan
                                           Michael Ferrara
                                           Shawn G. Crowley
                                         Trevor W. Morrison (admitted *pro hac vice*)
                                           Matthew J. Craig
                                         Kaplan Hecker & Fink LLP
                                         350 Fifth Avenue, 63rd Floor
                                         New York, New York 10118
                                         Telephone: (212) 763-0883
                                         Fax: (212) 564-0883
                                         rkaplan@kaplanhecker.com
                                         mferrara@kaplanhecker.com
                                         scrowley@kaplanhecker.com
                                         tmorrison@kaplanhecker.com
                                         mcraig@kaplanhecker.com

                                         Joshua Matz
                                         Kaplan Hecker & Fink LLP
                                         1050 K Street NW, Suite 1040
                                         Washington, DC 20001
                                         Telephone: (212) 763-0883
                                         Fax: (212) 564-0883
                                         jmatz@kaplanhecker.com

                                         *Counsel for Plaintiff E. Jean Carroll*

10