# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

        *Plaintiff,*

    v.

DONALD J. TRUMP, in his personal capacity

        *Defendant.*

No. 20 Civ. 7311 (LAK)

 

**PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO DISMISS AND MOTION TO STRIKE**

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 8

   I.   TRUMP FAILS TO STATE A CLAIM ........................................................................ 9

      A.  Carroll's Real-Time Reaction to the Jury's Determination on Rape Did Not
          Constitute Defamation ........................................................................................ 10

          1.  Carroll's Statement Is Substantially True ....................................................... 10

          2.  Carroll's Statement Was Not Made with Actual Malice ................................ 15

          3.  Carroll's Statement Is a Fair and True Report of the *Carroll II* Trial............. 16

      B.  Carroll Did Not Commit Defamation When She Described Her Conversation with
          Opposing Counsel........................................................................................... 20

   II.   TRUMP'S COUNTERCLAIM IS IMPROPER AT THIS STAGE OF THE CASE....... 22

   III. TRUMP'S AFFIRMATIVE DEFENSES THAT HAVE ALREADY BEEN
       REJECTED SHOULD BE STRICKEN ........................................................................ 27

CONCLUSION..................................................................................................................... 28

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Abkco Music, Inc. v. William Sagan*,
  No. 15 Civ. 4025, 2016 WL 2642224 (S.D.N.Y. May 6, 2016) ............................................. 17

*Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*,
  No. 17 Civ. 1338, 2021 WL 3269010 (E.D.N.Y. July 30, 2021) ............................................. 27

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001) .............................................................................................. 9

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016) ................................................................................................ 9

*Aronson v. Wiersma*,
  65 N.Y.2d 592 (1985) ......................................................................................................... 22

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................... 8

*Barbash v. STX Fin., LLC*,
  No. 20 Civ. 123, 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) ........................................... 9

*Bauer v. Baud*,
  No. 22 Civ. 1822, 2023 WL 2307413 (S.D.N.Y. Mar. 1, 2023) ........................................... 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................................ 8, 22

*Birkenfeld v. UBS AG*,
  172 A.D.3d 566 (1st Dep't 2019) ...................................................................................... 10

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) .......................................................................... 15, 22

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) .......................................................................................... 10, 15

*Brimelow v. N.Y. Times Co.*,
  No. 20 Civ. 222, 2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020) ........................................... 9

*Brimelow v. N.Y. Times Co.*,
  No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ............................................ 9, 15, 16

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
   478 F. Supp. 3d 417 (E.D.N.Y. 2020) ................................................................. 27

*Calvin Klein Trademark Tr. v. Wachner*,
   129 F. Supp. 2d 248 (S.D.N.Y. 2001) ............................................................. 18, 19

*Carroll v. Trump*,
   No. 22 Civ. 10016, 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023) ................. 16, 17, 18, 19, 20

*Carroll v. Trump,*
   No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ...................... *passim*

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ............................................................................... 8

*Chau v. Lewis*,
   935 F. Supp. 2d 644 (S.D.N.Y. 2013) .............................................................. 2, 10

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) .......................................................................... 2, 10, 11

*Clark v. Clark*,
   No. 93-47-CA, 1993 WL 528464 (Fla. Cir. Ct. June 22, 1993) .......................... 14

*Clark v. Clark*,
   641 So. 2d 866 (Fla. Dist. Ct. App. 1994) .......................................................... 14

*Conason v. Megan Holding, LLC*,
   25 N.Y.3d 1 (2015) ............................................................................................ 14

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ................................................................ 21

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,
   981 F. Supp. 112 (E.D.N.Y. 1997) ..................................................................... 11

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021) ............................................................ 17, 19

*Cummings v. City of New York*,
   No. 19 Civ. 7723, 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .......................... 19

*Daleiden v. Planned Parenthood Fed'n of Am.*,
   No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) ..................................... 17

*Davitashvili v. Grubhub Inc.*,
  No. 20 Civ. 3000, 2022 WL 958051 (S.D.N.Y. Mar. 30, 2022)................................. 8

*DiStiso v. Cook*,
  691 F.3d 226 (2d Cir. 2012)................................................................................. 15

*Donoghue v. Gad*,
  No. 21 Civ. 7182, 2022 WL 3156181 (S.D.N.Y. Aug. 8, 2022)............................. 5

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*,
  No. 17 Civ. 124, 2020 WL 1031271 (S.D.N.Y. Mar. 2, 2020)............................. 27

*Fine v. ESPN, Inc.*,
  11 F. Supp. 3d 209 (N.D.N.Y. 2014) .................................................................... 18

*Fossil Grp., Inc. v. Angel Seller LLC*,
  627 F. Supp. 3d 180 (E.D.N.Y. 2022)............................................................. 23, 25

*Franklin v. Daily Holdings, Inc.*,
  135 A.D.3d 87 (1st Dep't 2015).......................................................................... 111

*Free Holdings Inc. v. McCoy*,
  No. 22 Civ. 881, 2023 WL 2561576 (S.D.N.Y. Mar. 17, 2023)........................... 21

*GEOMC Co. v. Calmare Therapeutics Inc.*,
  918 F.3d 92 (2d Cir. 2019)............................................................. 9, 23, 24, 25, 28

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016)................................................................................... 5

*Gonzalez v. Gray*,
  69 F. Supp. 2d 561 (S.D.N.Y. 1999).................................................................... 18

*Gonzalez v. Gray*,
  216 F.3d 1072 (2d Cir. 2000)......................................................................... 18, 20

*Guccione v. Hustler Mag., Inc.*,
  800 F.2d 298 (2d Cir. 1986)................................................................................. 12

*Harrell v. Miller*,
  No. 21 Civ. 6714, 2022 WL 375289 (S.D.N.Y. Feb. 8, 2022)............................. 13

*Holy Spirit Ass'n v. N.Y. Times Co.*,
  49 N.Y.2d 63 (1979)....................................................................................... 18, 19

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018) ................................................................... 16

*Hybrid Athletics, LLC v. Hylete, Inc.*,
    No. 3:17 Civ. 1767, 2019 WL 6358246 (D. Conn. Nov. 27, 2019) ......................................... 24

*In re Livent, Inc. Noteholders Secs. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................... 21

*James v. Gannett Co.*,
    40 N.Y.2d 415 (1976) ......................................................................................... 22

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998) ........................................................... 10, 11

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ................................................................................. 18

*Konikoff v. Prudential Ins. Co. of Am.*,
    No. 94 Civ. 6863, 1999 WL 688460 (S.D.N.Y. Sept. 1, 1999) ............................................. 16

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ................................................................................. 16

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014) .................................................................................. 8

*Mulder v. Donaldson, Lufkin & Jenrette*,
    611 N.Y.S.2d 1019 (Sup. Ct., N.Y. Cty. 1994) ............................................................ 19

*Mulder v. Donaldson, Lufkin & Jenrette*,
    623 N.Y.S.2d 560 (1995) ..................................................................................... 19

*Nunes v. NBCUniversal Media, LLC*,
    No. 22 Civ. 1633, 2022 WL 17251981 (S.D.N.Y. Nov. 28, 2022) ................................... 10, 11

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017) ................................................................................. 24

*People v. Blodgett*,
    37 A.D.2d 1035 (3d Dep't 1971) ........................................................................... 4

*People v. Starnes*,
    206 A.D.3d 1133 (3d Dep't 2022) ......................................................................... 13

*People v. Velett*,
    205 A.D.3d 1143 (3d Dep't 2022) ................................................................ 2, 13

*Pepper v. United States*,
    562 U.S. 476, 131 S. Ct. 1229 (2001) ............................................................ 27

*Printers II, Inc. v. Pros. Pub., Inc.*,
    784 F.2d 141 (2d Cir. 1986) ........................................................................ 11

*Ramsay-Nobles v. Keyser*,
    No. 16 Civ. 5778, 2018 WL 6985228 (S.D.N.Y. Dec. 18, 2018) .................... 24

*Sheindlin v. Brady*,
    597 F. Supp. 3d 607 (S.D.N.Y. 2022) ........................................................... 17

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
    No. 06 Civ. 11407, 2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007) ................. 17

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*,
    No. 17 Civ. 8528, 2022 WL 836890 (S.D.N.Y. Mar. 21, 2022) ................. 23, 24

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    No. 18 Civ. 5075, 2020 WL 3472597 (S.D.N.Y. June 25, 2020) .................... 27

*Vetere v. Associated Press, Inc.*,
    No. 88 Civ. 4115, 1989 WL 39664 (S.D.N.Y. Apr. 17, 1989) ....................... 12

*Wheeler v. Twenty-First Century Fox*,
    322 F. Supp. 3d 445 (S.D.N.Y. 2018) ........................................................... 15

**STATUTES**

10 U.S.C. § 920 ............................................................................................... 13

Cal. Penal Code § 263.1 ................................................................................... 13

N.Y. C.P.L.R. § 214-j ................................................................................... 3, 4

N.Y. Civ. Rights Law § 74 ................................................................. 17, 18, 19, 22

N.Y. Correct. Law § 168-a ................................................................................. 2

N.Y.P.L. § 70.02 .............................................................................................. 2

N.Y.P.L. § 130.65 ....................................................................................... 2, 123

vi

**Rules**

Federal Rule of Civil Procedure 12 .................................................................. 8, 9, 15, 22

Federal Rule of Civil Procedure 15 ...................................................................... 9, 28

**Other Authorities**

Ben Protess et al., *Donald Trump Faces Several Investigations. Here's Where They Stand.*, N.Y. Times (June 16, 2023) ....................................................................................... 26

David Aaron, *How Much Prison Time Does Former President Trump Face? Applying the U.S. Sentencing Guidelines*, Just Security (June 12, 2023) ...................................... 26

Erica Orden, *Trump Now Faces Four Trials Over Six-Month Span During Critical Phase of 2024 Campaign*, Politico (June 15, 2023) ................................................................. 26

*Important Dates in the 2024 Presidential Race,* Ballotpedia ....................................... 26

Katelyn Polantz, *Special Counsel Asks for December Trial Date for Trump in Mar-a-Lago Documents Case*, CNN (June 23, 2023) ................................................................. 26

New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Governor Andrew M. Cuomo Statement of Appproval ............................................................................................................. 13

New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Senator Joseph A. Griffo Letter in Support ...... 13

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.) ......................................... 23

## PRELIMINARY STATEMENT

In May 2023, Donald J. Trump lost a two-week trial in the related case known as *Carroll II*, No. 22 Civ. 10016 (S.D.N.Y.), after the jury had deliberated for less than three hours. In light of E. Jean Carroll's gut-wrenching testimony describing how Trump sexually assaulted her in a department store dressing room—as well as testimony from *ten* other witnesses, not one of whom testified on behalf of Trump—the unanimous jury found that Trump had sexually abused Carroll and that he had subsequently defamed her when he claimed that she had made up her story to sell a book. In essence, the jury in *Carroll II* found that Carroll was telling the truth and that Trump was not. Since that time, Trump has alternated between calling the trial in *Carroll II* a complete sham and illogically claiming vindication based on the jury verdict.

Trump's "tit for tat" counterclaim is nothing more than his latest effort to spin his loss at trial. Trump alleges that Carroll defamed him and caused him "inordinate" harm by implying in a post-trial interview that when he sexually assaulted her, he not only used his fingers, but also his penis. While that might read like an article penned by Andy Borowitz in the *New Yorker* or by a writer at the *Onion*, it's actually the theory of the counterclaim that Trump now purports to assert in this action. But here in federal court, where logic and reason rather than satire prevail, it is clear that Trump's new counterclaim for defamation should be dismissed with prejudice.

First and foremost, Trump's counterclaim should be dismissed because it fails to state a claim upon which relief can be granted. Trump alleges that Carroll falsely asserted that he raped her during a television interview on the morning of May 10, the day after the trial ended. But the two statements Trump picks out from that ten-minute interview cannot possibly constitute defamation as a matter of law. Read in their entirety—as the law requires—Carroll's statements are not plausibly susceptible of a defamatory meaning, are substantially true, were uttered without

actual malice, and are protected by the fair reporting privilege. Indeed, the New York criminal statute that corresponds to the claim on which the jury found Trump liable (sexual abuse) not only carries a prison sentence of up to seven years, but requires a convicted defendant to register as a sex offender for the rest of his life. *See* N.Y.P.L. § 70.02(1)(c), (3)(c); N.Y. Correct. Law § 168-a(3)(a)(i), (7)(b). It is most commonly associated in New York with the prosecution of child sex offenses. *See, e.g.*, N.Y.P.L. § 130.65(c), (d); *People v. Velett*, 205 A.D.3d 1143, 1143 (3d Dep't 2022). In other words, the fact that the civil jury found by a preponderance of the evidence that Trump engaged in that offense does not differ substantially from a statement that Trump engaged in rape. The "gist" and the "sting" of both—especially in the context of the CNN interview here—are substantially the same. *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014).

Trump's counterclaim should also be dismissed on the independent and alternative ground that a new counterclaim asserted this late in an action should, as a general rule, not be permitted if it exceeds the scope of the new claims set forth in a plaintiff's amended pleading. Here, Carroll's recently amended complaint contains no new claims. There is thus no basis for allowing Trump to proceed with a counterclaim, which would impose on Carroll undue burden and significant expense, not to mention hold up yet again this otherwise trial-ready, much-delayed case.

## BACKGROUND

This Court is familiar with the parties' history. In June 2019, when Trump was still President of the United States, Carroll spoke publicly for the first time about how Trump had sexually assaulted her in a Bergdorf Goodman dressing room in the mid-1990s. *See Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *2 (S.D.N.Y. July 5, 2023). In response, Trump lashed out, issuing a series of defamatory statements over the course of four days in which he

denied Carroll's "accusation, stated that he 'has no idea who this woman is,' and suggested that she fabricated her accusation for ulterior and improper purposes, including to increase sales of her then-forthcoming book in which she discusses having been sexually assaulted by [] Trump and other men." *Id.* at *1. Based on these statements, Carroll sued Trump for defamation in November 2019. *Id.* at *4. Largely due to Trump's dilatory tactics, Carroll's single defamation claim based on Trump's June 2019 statements has now been pending for more than three and a half years. *Id.* at *12.

During that time, the New York legislature passed the Adult Survivors Act ("ASA"), which temporarily revived certain battery claims so long as they satisfied the definition of a sexual offense under New York law. *See* C.P.L.R. § 214-j. Shortly before the ASA took effect, Trump also found occasion to defame Carroll yet again, this time in a statement he posted to Truth Social on October 12, 2022. *Carroll*, 2023 WL 4393067, at *1. Therefore, on Thanksgiving of last year, Carroll filed another suit against Trump, bringing a battery claim for the sexual assault and for defamation based on his October 2022 statement. *See Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*").

Capitalizing on the discovery that had already taken place in the current action, *Carroll II* went to trial on April 25, 2023. The jury heard an overwhelming amount of credible evidence describing Trump's violent sexual assault, his subsequent defamatory statements, and the harms that Carroll suffered. On the stand, Carroll recounted the relevant events in graphic and painful detail. She testified that after a chance encounter in the spring of 1996, she accompanied Trump to the lingerie department to help him pick out a gift for a "girl." *See* Ex. A ("*Carroll II* Trial Tr.") at 170–73, 356. Trump ultimately led her into a dressing room and, once inside, "immediately shut the door and shoved [her] up against the wall," banging her head. *Id.* at 177. Trump then "pulled

down [her] tights" and inserted his fingers into her vagina. *Id.* at 179–80. Carroll testified that "it was a horrible feeling because … he put his hand inside of [her] and curved his finger," which "was extremely painful, extremely painful." *Id.* at 180–81. Carroll also testified that she then felt Trump's penis inside her, but also acknowledged that she could not see it because Trump's body was pressed up so closely against hers, and she managed to push Trump off her and escape seconds later. *Id.* at 181, 636. Carroll went on to explain how the attack and Trump's defamatory statements denying it had negatively impacted her life. *See, e.g.*, *id.* at 181, 215–16, 221, 225–26, 320, 322–24. Carroll's testimony was supported by the consistent testimony of eight additional fact witnesses and two expert witnesses. Trump chose not to present any witnesses and decided not to testify on his own behalf.

At the end of the two-week trial in *Carroll II*, on May 9, 2023, the jury deliberated for approximately two and a half hours. On the first count of battery, the jury was asked to evaluate whether Trump had, by a preponderance of the evidence, committed an ASA predicate sex offense, thereby reviving Carroll's claim. *See* C.P.L.R. § 214-j. Consistent with the parties' proposals, the jury was presented with three possible ASA predicates under New York's criminal code: rape, sexual abuse, and forcible touching. *Carroll II*, ECF 174. The Court instructed the jury to address each predicate in that order until they found that Trump's conduct fit one of those offenses, if at all. *Id*. The jury answered "no" on rape and "yes" on sexual abuse—and it awarded Carroll a total of $2.02 million in damages on that claim. *Id.*[1]

---

[1] As the Court instructed the *Carroll II* jury, under the New York Penal Law, rape requires proof that the defendant engaged in sexual intercourse with the victim and did so without the victim's consent by the use of forcible compulsion. *Carroll II* Trial Tr. at 1416. "Sexual intercourse" is defined as "any penetration, however slight, of the penis into the vaginal opening." *Id.* at 1417. Sexual abuse, by contrast, similarly requires proof that the defendant subjected the victim to sexual contact and did so without the victim's consent by the use of forcible compulsion. *Id.* at 1418. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying the sexual desire of either person." *Id.* "Sexual part" is defined as "an organ of human reproduction." *Id.*; *see People v. Blodgett,* 37 A.D.2d 1035, 1036 (3d Dep't 1971).

On the second count of defamation, the jury found that Trump's October 2022 Truth Social post—in which Trump again denied knowing Carroll, claimed he "had nothing to do with" her, and insisted that the incident at Bergdorf's "never happened" and was "completely made up"— was defamatory. *Id.* In order to do so, the jury determined by clear and convincing evidence that Trump's statement was false, meaning that it was "highly probable" and "beyond any 'substantial doubt'" that his statement was not substantially true, and that Trump had made this false statement with actual malice. *Carroll II* Trial Tr. at 1439. The jury awarded Carroll a total of $2.98 million for this claim, including $280,000 in punitive damages based on a finding that Trump had made the October 2022 statement about Carroll "with deliberate intent to injure, or … hatred or ill will or spite," or "with willful or wanton or reckless disregard of another's rights." *Carroll II*, ECF 174; *Carroll II* Trial Tr. at 1435.

The next morning, on May 10, Carroll participated in a live televised interview on CNN. ¶ 3.[2] The segment was just over ten minutes long and involved Carroll, her counsel, and two CNN reporters. *See* Ex. B (CNN interview video); Ex. C (CNN interview transcript).[3] The segment opened with one reporter providing background on the case, including that the jury had found that "Trump sexually abused Carroll in a department store dressing room in the '90s and then defamed her by denying her claim." Ex. B. The reporter then played a video clip released by Trump shortly after the verdict where he states as follows: "What else can you expect from a Trump hating,

---

[2] Standalone "¶ __" references are to the counterclaim that Trump included in his answer to Carroll's amended complaint. *See* ECF 171.

[3] Trump's counterclaim references the interview Carroll gave on CNN on May 10, 2023. ¶¶ 3–8. But the counterclaim does not include or attach the full transcript from that interview. Because the CNN interview is incorporated by reference in the counterclaim, the Court can consider it fully, along with any other matters of which judicial notice may be taken such as what happened at the *Carroll II* trial. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Donoghue v. Gad*, No. 21 Civ. 7182, 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022). The interview is available at https://www.youtube.com/watch?v=PPrBo2_fyAI&t=144s. The transcript of the interview is available at https://transcripts.cnn.com/show/ctmo/date/2023-05-10/segment/05 and https://transcripts.cnn.com/show/ctmo/date/2023-05-10/segment/06.

Clinton appointed judge, who went out of his way to make sure that the result of this trial was as negative as it could possibly be? Speaking to and in control of a jury from an anti-Trump area, which is probably the worst place in the United States for me to get a fair trial, will be appealing this decision, it's a disgrace." *Id.* With the end of that video, the interview began.

What followed during the interview was a series of questions from the two CNN reporters about the case, the jury verdict, and the trial. One reporter started off by reminding Carroll how she had said at one point that she was "here to try and get my life back." *Id.* Carroll responded, "That was why yesterday … I was such a happy woman. I felt like we had accomplished that." *Id.* The same reporter then asked Carroll to "talk about what you were thinking as the jury's decisions were read off in your mind." *Id.* Carroll and her counsel responded with comments about the makeup of the jury and the overall excitement of the moment. *Id.* The following exchange then occurred:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Carroll: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Carroll: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.
>
> Counsel: So, look, New York law on sexual crimes like this is complicated, and it's not probably appropriate for morning viewers. But the truth of the matter is, is that sexual abuse, which he was found guilty of, is a very, very serious offense. I'm not going to get into the body parts situation with you, but people go to jail for sexual abuse. It's a very serious offense, and most importantly, E. Jean brought this case because she wanted her name back, as you said at the very beginning, she got her name back and the jury found that he lied. And he lied about her maliciously.

*Id.*

The conversation then shifted to other issues in the case, such as the eleven witnesses presented by Carroll and their testimony. *Id.* The conversation also addressed how the verdict destroyed the false narrative of the "perfect victim" of sexual assault—one "who always screamed, a woman who immediately reported, a woman whose life is supposed to fold up, and she's never supposed to experience happiness again." *Id.* Of course, all of these topics were the subject of questioning by Trump's lawyer at trial and were discussed by Carroll's counsel during his closing rebuttal argument at the end of trial. *See, e.g.*, *Carroll II* Trial Tr. at 405–08, 411–12, 434–35, 437–38, 550–52, 646–47, 1406–08. At this point, the interview turned to a post-verdict exchange between Carroll and Trump's lawyer in the courtroom:

> Reporter: There in the courtroom was an encounter, an exchange, between you and the president's lawyer, Joe Tacopina. He came up, you shook hands, I believe. What did he say?
>
> Carroll: Well, Joe Tacopina is very likeable. He's sort of like an 18th century strutting peacock. And people like him. So, when he sticks out his hand to—first, he congratulated Robbie. And then, he was congratulating people on the team. And as I put my hand forward, I said, "he did it and you know it." Then we shook hands, and I passed on.

Ex. B.

Throughout the interview, the chyron on the bottom of the screen read, "TRUMP FOUND LIABLE," with two additional sentences underneath it: "TRUMP CALLS VERDICT A 'WITCH HUNT,' VOWS TO APPEAL $5M JUDGMENT," and "E. Jean Carroll | Won Sexual Abuse, Defamation Case Against Donald Trump." *Id.* That chyron continued to display these words as the panelists turned away from Tacopina and toward other topics, such as the impact of the jury's verdict, potential avenues for Trump to appeal, Trump's failure to attend the trial or testify, and the ASA. *Id.*

On May 22, 2023, Carroll moved to amend her complaint in this action. ECF 155. Her proposed amendment included allegations: (1) drawing from Trump's deposition in this action that demonstrate his personal motive for defaming Carroll in June 2019; (2) accounting for the verdict in *Carroll II*; and (3) describing Trump's statements about Carroll following that verdict. The proposed amendment did not add any new claims. The Court granted Carroll's motion. ECF 169.

On June 27, Trump answered Carroll's first amended complaint. His answer largely duplicated his previous answer in *Carroll II*, but this time, he added a counterclaim for defamation based on Carroll's post-trial CNN interview. *See* ECF 171. In a barebones pleading, Trump now alleges that Carroll defamed him by saying "oh yes he did, oh yes he did" when asked by a reporter what she was thinking when she heard the first part of the jury's verdict. ¶ 5. Trump also alleges that Carroll defamed him by recounting that she told Trump's lawyer that "[Trump] did it and you know it" during their brief courtroom exchange following the jury verdict. ¶ 7.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Although a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor," *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014), it "does not credit 'mere conclusory statements' nor 'threadbare recitals of the elements of a cause of action.'" *Davitashvili v. Grubhub Inc.*, No. 20 Civ. 3000, 2022 WL 958051, at *4 (S.D.N.Y. Mar. 30, 2022) (Kaplan, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). In deciding a motion to dismiss, a court may also consider documents "incorporated by reference" in or "integral to" the complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and may take

"judicial notice of facts that are publicly available if their accuracy cannot reasonably be questioned," *Barbash v. STX Fin., LLC*, No. 20 Civ. 123, 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020) (citing *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016)). As many courts have recognized, "[b]ecause a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Brimelow v. N.Y. Times Co.*, No. 20 Civ. 222, 2020 WL 7405261, at *4 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).

Where a new counterclaim is improper, the counterdefendant may move to dismiss it pursuant to Rule 12(b)(6). That procedure is necessary because a counterclaim asserted in an answer to an amended complaint would not have been the subject of a motion to amend pursuant to Rule 15, and the counterdefendant would thus have had no "opportunity to oppose" the counterclaim before it was asserted. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 (2d Cir. 2019). In deciding such a motion to dismiss, a court may "exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim." *Id.*

## I.   TRUMP FAILS TO STATE A CLAIM

To properly state a cause of action for defamation, a plaintiff must plausibly allege "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001) (citation omitted). Because he is a public figure, the level of fault Trump must show to satisfy (v) is that the allegedly defamatory "statements were made with 'actual malice'—that is, with knowledge that the statements were

false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). As demonstrated below, Trump's counterclaim does not satisfy parts (ii), (v), and (vii) of this standard.

### A.   Carroll's Real-Time Reaction to the Jury's Determination on Rape Did Not Constitute Defamation

### 1.   Carroll's Statement Is Substantially True

In response to a reporter's question about her immediate reaction to the jury's rape determination, Carroll initially referred to her lawyer to "explain the legal." Ex. B. She then added that she "[said] in [her] own head, oh, yes, he did—oh, yes, he did." *Id.* This statement about Carroll's recollection was not defamatory as a matter of law because it was substantially true.

Truth is a complete defense to defamation. *See Birkenfeld v. UBS AG*, 172 A.D.3d 566 (1st Dep't 2019). Assessing whether a statement is true—and thus non-defamatory—is not a "binary" question. *Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). "Some statements are held to be non-actionable because they are completely true." *Id.* But, as relevant here, some statements are "held to be substantially true where the admitted truth becomes more tenuous, but still the overall 'gist' or 'sting' cannot be said to be 'substantially' different." *Id.* (cleaned up). Under this substantial truth principle, a statement cannot qualify as defamatory unless "the difference between the statement and reality is 'plainly substantial.'" *Id.* (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 367 (S.D.N.Y. 1998)).

In conducting that analysis, "[c]ourts typically compare the complained of language with the alleged truth." *Nunes v. NBCUniversal Media, LLC*, No. 22 Civ. 1633, 2022 WL 17251981, at *4 (S.D.N.Y. Nov. 28, 2022) (citation omitted). They then assess whether "the overall 'gist or substance of the challenged statement' is true," *Chau*, 771 F.3d at 129, and "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced,"

*Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015). "Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss." *Nunes*, 2022 WL 17251981, at *4.

*Chau v. Lewis* exemplifies this approach. There, the Second Circuit evaluated a defamation claim arising from a statement concerning "Plaintiffs' investment 'in nothing but CDOs backed by the triple-B tranche of a mortgage bond.'" 771 F.3d at 130–31. Although this characterization was inaccurate, the Second Circuit held the statement to be non-defamatory as a matter of law. *Id.* It reasoned that even if the defendant had published the strict truth—*i.e.*, that not even half of the plaintiffs' portfolios were backed by A-/A3 securities or better—"the effect on the reader would have been appreciably the same." *Id.* at 130. In other words, when considered in the context in which the statement was made, no reader would come away with a "different impression" of the plaintiff's business. *Id.*; *see also id.* at 131 (same for statement that plaintiff took home $26 million a year in fees from selling these securities, when he actually took home considerably less than that).

Similar conclusions have been reached under various other different fact patterns. Courts, for example, have considered the following statements to be "substantially true": (1) making the "literally false" statement that the defendant was overdue in paying debts, when the defendant had disputed the "bill with such vigor that it was apparent that [it] would not pay the bill when due," *Printers II, Inc. v. Pros. Pub., Inc.*, 784 F.2d 141, 146–47 (2d Cir. 1986); (2) labeling plaintiff a "prime suspect" and "main suspect," when he was in fact just "a suspect," *Jewell*, 23 F. Supp. 2d at 369; (3) reporting that plaintiff was "forced to leave the military … for less than satisfactory service," when he had submitted a request for discharge "for the good of the service" in order to avoid a court martial, *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 120–

11

21 (E.D.N.Y. 1997); (4) stating that plaintiff was a member of the American Nazi Party, when he had in fact participated in a march organized by the National Socialist White People's Party, *Vetere v. Associated Press, Inc.*, No. 88 Civ. 4115, 1989 WL 39664, at *1–*2 (S.D.N.Y. Apr. 17, 1989); and (5) implying that plaintiff was an adulterer, even though he had stopped cheating on his wife, but had committed adultery for more than a decade prior, *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 302–03 (2d Cir. 1986).

Under that line of authority, Trump's defamation claim cannot stand. For starters, Trump does not allege that Carroll lied about her own recollections. In other words, he does not claim that she lied when she told CNN's reporters that she had thought "oh, yes, he did—oh, yes, he did" while listening to the jury verdict. Nor does Trump claim that Carroll falsely told the CNN reporters that the jury found Trump liable for rape. Instead, Trump alleges that by reciting her own undisputed internal thoughts, Carroll falsely implied that Trump had raped her. ECF 171 ¶ 5.

In assessing whether that implication is defamatory, the question is not whether it was defamatory to claim that Trump raped Carroll in a context where he had never met her. Rather, the real question is whether it is defamatory to claim that Trump raped her as that term is used in the New York Penal Law, when a jury had found not only that Trump had in fact met Carroll, but that he had also sexually abused her, as that term is used in the New York Penal Law. And the answer to this question is straightforward: Carroll's statement on CNN was substantially true because its overall gist and substance was true, and because there is no meaningful difference in the effect that would be produced in the minds of viewers.

As noted above, the jury found Trump liable for inserting his fingers into Carroll's vagina (sexual abuse), but not for inserting his penis into her vagina (rape). First degree sexual abuse in New York is a class D felony that carries a potential prison term of up to seven years. *See* N.Y.P.L.

§§ 70.02(1)(c), (3)(c), 130.65. A conviction for sexual abuse in the first degree requires the defendant to register as a sex offender for life. N.Y. Correct. Law § 168-a(3)(a)(i), (7)(b) (defining "sexually violent offender" as someone who is convicted of, *inter alia*, sexual abuse in the first degree); *id.* § 168-h(2) (requiring sexually violent offender to be registered and verified "annually for life"). It is frequently used to indict child sex offenders. *See, e.g.*, *People v. Velett*, 205 A.D.3d 1143, 1143 (3d Dep't 2022); *People v. Starnes*, 206 A.D.3d 1133, 1136 (3d Dep't 2022) (upholding sexual abuse in the first degree conviction where thirteen year-old victim testified that defendant "reached his hand into the bath and digitally penetrated the victim's vagina" against her consent); *Harrell v. Miller*, No. 21 Civ. 6714, 2022 WL 375289, at *1 (S.D.N.Y. Feb. 8, 2022) (describing conviction for sexual abuse in the first degree, among other sexual crimes, where habeas petitioner pulled down the fifteen year-old victim's pants and "inserted two fingers into [her] vagina," which caused the victim to "cr[y] in pain," and then "took out his penis," "rubbed it against" the victim's vagina, and "unsuccessfully tried to penetrate her"). *See also* New York Bill Jacket, 2011 S.B. 1882, Ch. 26, Governor Andrew M. Cuomo Statement of Approval (explaining that N.Y.P.L § 130.65 was amended in 2011 to provide "greater protections … to young sexual abuse victims"); *id.*, Senator Joseph A. Griffo Letter in Support (the amended legislation added "a new subdivision to Sexual Abuse in the First Degree [§ 130.65(d)], making it a class D violent felony offense for a child under the age of thirteen to be subjected to sexual contact by a person who is twenty-one years old or older"). In other jurisdictions, forcibly inserting a finger into a woman's vagina, as the jury found Trump did here, would, in fact, constitute rape. *See, e.g.*, 10 U.S.C. § 920 (defining rape to include "the penetration, however slight, of the vulva ... of another by any part of the body or any object"); Cal. Penal Code § 263.1 ("[A]ll forms of nonconsensual sexual assault may be considered rape for purposes of the gravity of the offense."). As a result, the

13

truth (that Trump sexually abused Carroll) did not differ so substantially from Carroll's statement on CNN (that she recalled thinking he had raped her) so as to render her remark defamatory. *See Bauer v. Baud*, No. 22 Civ. 1822, 2023 WL 2307413, at *6  (S.D.N.Y. Mar. 1, 2023); *see also Clark v. Clark*, No. 93-47-CA, 1993 WL 528464, at *2 (Fla. Cir. Ct. June 22, 1993) (report was substantially true when newspaper said a deputy sheriff had been arrested for rape when he had actually been charged with sexual battery), *aff'd*, 641 So. 2d 866 (Fla. Dist. Ct. App. 1994).

Any doubt on that score is resolved by all of the contemporaneous circumstances surrounding Carroll's statement: listeners of the CNN interview were informed of exactly what the jury had found, and Carroll was simply sharing the immediate (and non-legal) thoughts that had entered her head as the verdict was read. Ex. B. If it can be substantially true to call someone an adulterer when he has stopped cheating on his wife, or to call someone a member of the American Nazi Party when he had marched with a different fascist group, then any implication from Carroll's account of her internal thoughts was also substantially true in context. *See Bauer*, 2023 WL 2307413, at *6 (rejecting plaintiff's "wrong distinction" for substantial truth analysis when it contradicted objective (and incorporated) documentary evidence). At bottom, the "*true* bridge between" Trump's conduct and Carroll's statement is "small enough to render the 'gist' or 'sting' of the statements unchanged." *Id*. (emphasis in original).

This conclusion is independently supported by the principle of collateral estoppel. *See Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (elements of collateral estoppel). The jury in *Carroll II* found by clear and convincing evidence that Trump defamed Carroll when he denied her allegation of sexual assault. *Carroll II*, ECF 174. In other words, the jury found that there was a high probability that Carroll's account of what happened at the department store was itself substantially true. For that reason, Carroll's repeating her reaction to the jury verdict—a

reaction that reflected the very account that she had testified to in court and that was disputed in connection with the *Carroll II* defamation claim—represented a substantially true statement. And for the reasons already given, a substantially true statement cannot be defamatory.

### 2.    Carroll's Statement Was Not Made with Actual Malice

Trump's counterclaim must be dismissed under Rule 12(b)(6) for still another reason: Trump fails to plausibly allege that Carroll made the challenged statement "with knowledge that [it was] false or with reckless disregard of whether [it was] false or not." *Brimelow v. N.Y. Times Co.*, No. 21-66, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (citation omitted). "[G]iven the difficulty of proving [such] actual malice, as well as the fact that actual malice must be proven by clear and convincing evidence in order for a plaintiff to succeed, it stands to reason that Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation claim." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (citation omitted).

Here, Trump alleges only that "[Carroll] made these false statements with actual malice and ill will with an intent to significantly and spitefully harm and attack [Trump's] reputation, as these false statements were clearly contrary to the jury verdict in *Carroll II* whereby [Trump] was found not liable for rape by the jury." ¶ 10. But it is black letter law that such conclusory and boilerplate allegations "must be discarded at the outset." *Biro*, 963 F. Supp. 2d at 279–81; ("[P]leading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery."); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("A court cannot credit a plaintiff's merely speculative or conclusory assertions."); *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 456 n.9 (S.D.N.Y. 2018) ("[c]onclusory statements" of actual malice "will not suffice").

Once Trump's conclusory allegation is set aside, nothing remains. "The element of actual malice in a defamation claim focuses primarily on what a defendant knew or believed at the time

15

a purportedly false statement was made." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018). Yet here, Trump offers no allegations about Carroll's own thought process when she made the allegedly defamatory statement. Nor does he offer any allegations meant to support an inferential finding of actual malice. Instead, the facts he pleads, and the facts incorporated by reference into his pleading, render it *implausible* to conclude that Carroll acted with actual malice. During the CNN interview, Carroll answered a question that asked her to explain what she was thinking at the time she heard the verdict on her battery claim. Ex. B. Trump does not allege that she lied or misrepresented her own recollection. *See* ECF 171. Moreover, Carroll expressly deferred discussion of the legal issues to her counsel—and offered her memory of events during a segment that otherwise fully described the jury verdict (including its finding that Trump had not raped her within the meaning of the New York Penal Law). *See* Ex. B. Nothing about these allegations makes it plausible to believe that Carroll lied or acted without regard for the truth. *See Konikoff v. Prudential Ins. Co. of Am.*, No. 94 Civ. 6863, 1999 WL 688460, at *28 (S.D.N.Y. Sept. 1, 1999) ("[I]naccurate or imprecise language, even if critical of the plaintiff, does not suffice to demonstrate malice where the underlying facts have been disclosed." (collecting cases)), *aff'd*, 234 F.3d 92 (2d Cir. 2000). As a result, there is "no combination of allegations from which one could plausibly infer that [Carroll] was purposely avoiding the truth" when she was asked to recite what she was thinking when she heard the jury's verdict. *Brimelow*, 2021 WL 4901969, at *3.

### 3. Carroll's Statement Is a Fair and True Report of the *Carroll II* Trial

Trump's counterclaim also fails for a third reason: it seeks to impose liability on a statement that is clearly shielded by the fair and true reporting privilege. *See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2669790, at *5 (S.D.N.Y. Mar. 28, 2023) (addressing this privilege in the *Carroll II* case).

"New York law recognizes certain privileges that shield an individual from liability for defamation." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022). Under Section 74 of the New York Civil Rights Law, "a civil action cannot be maintained against any person for the publication of a fair and true report of any judicial proceeding." *Carroll*, 2023 WL 2669790, at *5 (quoting N.Y. Civ. Rights Law § 74). This privilege exists to encourage the public dissemination of information about judicial proceedings and extends beyond the institutional press to "any person, firm or corporation." *Id.* (citation omitted). Moreover, it is not limited to comments made at any particular point in a judicial proceeding. *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 331–32 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

As this Court has recognized, a statement falls within the fair and true reporting privilege where two elements are met: (1) it constitutes a report on a judicial proceeding, and (2) it is fair and true. *Carroll*, 2023 WL 2669790, at *5–*7. Unlike Trump's October 2022 statement at issue in *Carroll II*, Carroll's statement here satisfies both requirements. *See Abkco Music, Inc. v. William Sagan, Norton LLC*, No. 15 Civ. 4025, 2016 WL 2642224, at *4, *7 (S.D.N.Y. May 6, 2016) (granting motion to dismiss where statement was protected by fair reporting privilege and collecting cases doing same); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, No. 06 Civ. 11407, 2007 WL 4820968, at *3 (S.D.N.Y. Sept. 18, 2007) ("It is for the Court to determine as a matter of law if a publication is a 'fair and true' report under section 74, unless the Court determines that an issue of fact remains.").

Carroll's statement about the jury verdict certainly qualifies as a "report" of a judicial proceeding. For a statement to qualify as a "report" under Section 74, an "ordinary viewer or reader" must be able to "determine from the [statement] itself that the [statement] is reporting on

[a judicial] proceeding." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021) (final alterations in original) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014)). Where context makes it "impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply." *Carroll*, 2023 WL 2669790, at *5 (alterations in original) (quoting *Kinsey*, 991 F.3d at 178). But a "report" can otherwise take many forms and can encompass even "statements or allegations that go beyond matters in a proceeding." *Fine*, 11 F. Supp. 3d at 216–17; *see also Gonzalez v. Gray*, 69 F. Supp. 2d 561, 568 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) (collecting cases). Thus, the privilege applies wherever the "content or context" confirm that a statement is "sufficiently connected" to a legal proceeding and is not merely an independent attack focused "exclusively on underlying events." *Carroll*, 2023 WL 2669790, at *6.

Applying those principles here, Carroll's statement is clearly a "report" of the *Carroll II* trial proceeding—which was the overriding, unmistakable subject of her CNN interview. Indeed, this was clear in context: Carroll made her statement during a post-trial interview about the trial verdict, on a screen plastered with chyrons about the trial verdict, in which reporters asked Carroll and her lawyer questions about the trial proceedings and Trump's stated intention to appeal the verdict. There is no plausible basis for inferring that Carroll's statement was not a "report" of the trial: she was quite literally reporting on her thought process as the jury issued its verdict on her own claim. This was not an independent attack focused on the "underlying events." Any viewer would instantly grasp that CNN's interview and Carroll's statements were reporting on the case.

And that report was both fair and true. For purposes of Section 74, a report is considered fair and true "if its substance is substantially accurate." *Id.* at *7 (quoting *Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001); *accord Holy Spirit Ass'n v. N.Y. Times*

*Co.*, 49 N.Y.2d 63, 67 (1979)). The question is only whether a statement "is a substantially accurate description of the claims *made in the … proceeding*." *Mulder v. Donaldson, Lufkin & Jenrette*, 611 N.Y.S.2d 1019, 1023–24 (Sup. Ct., N.Y. Cty. 1994), *aff'd*, 623 N.Y.S.2d 560 (1995) (emphasis added). That holds true even if the "allegations are erroneous," since "section 74's privilege is purposely designed to immunize reporting on the allegations made in proceedings regardless of the veracity of those underlying allegations." *Cummings v. City of New York*, No. 19 Civ. 7723, 2020 WL 882335, at *19 (S.D.N.Y. Feb. 24, 2020) (cleaned up). A report is "substantially accurate" if it "suggest[s] [no] more serious conduct than that actually suggested in the official proceeding." *Carroll*, 2023 WL 2669790, at *7 (quoting *Calvin Klein Trademark Tr.*, 129 F. Supp. 2d at 253). To gauge the accuracy of the statement, "the language … should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n*, 49 N.Y.2d at 68; *see also Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 (litigant "cannot cherry-pick one of several definitions of a word, take the word entirely out of context, and claim that such definition precludes a finding that the Challenged Statements were substantially accurate").

Trump alleges that Carroll's comment—"oh yes he did, oh yes he did"—"disregarded the jury's finding that [Trump] did not rape her." ¶ 5. But whether her single statement accurately reflected the jury's finding is not the relevant inquiry. The question is whether Carroll's comment suggests "conduct more serious than the conduct *alleged* in the underlying court case[]." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 (emphasis added). Clearly, it does not. When Carroll took the witness stand just a few days prior to hearing the jury's verdict, she explained to the jury that she thought Trump had inserted his penis into her vagina. *Carroll II* Trial Tr. at 181, 636. Both at opening and closing argument, her counsel asked the jury to find that Trump had raped Carroll under the New York Penal Law. *Id.* at 46, 1258. Carroll's report of her thoughts in hearing the jury

verdict was thus "substantively equivalent" to her position in the case. *Gonzalez v. Gray*, 216 F.3d 1072, at *1 (2d Cir. 2000).

As the Court no doubt recalls, Trump moved for summary judgment in *Carroll II* on the ground that his October 2022 Truth Social statement was a fair and true report of his answer in *Carroll I. See Carroll*, 2023 WL 2669790, at *6. The Court denied that motion, concluding that no reasonable juror could find "the content or context" of Trump's statement to be a report of a judicial proceeding. *Id.* The Court reached that conclusion because Trump's statement was "an amalgamation of Mr. Trump's personal views and comments on a wide range of subjects," with only "passing references" to the judicial proceeding, and Trump's comments about Carroll focused "exclusively on underlying events" rather than a "judicial proceeding relating to those events." *Id.* at *6–*7 (cleaned up). Here, Carroll's statement on CNN could hardly be more different. The interview was styled as a report on the very judicial proceeding between Carroll and Trump that had just concluded the day before. Carroll's comment concerned the jury verdict specifically. Moreover, whereas Trump's statement in *Carroll II* implied "a far broader and more corrosive conspiracy than anything that was at issue in *Carroll I*," *id.* at *9, the statement at issue here was perfectly consistent with (and merely described) Carroll's own testimony in *Carroll II*. Carroll simply repeated on CNN her recollection that Trump had used his penis to penetrate her—a position that had been fully aired and explored at trial, and that was therefore shielded by Section 74.

## B.   Carroll Did Not Commit Defamation When She Described Her Conversation with Opposing Counsel

Trump separately alleges that Carroll defamed him in the CNN interview by describing an in-court, post-verdict exchange with his lawyer, Joseph Tacopina, where she stated: "[H]e did it and you know it." ¶ 7. Trump does not (and could not) allege that Carroll's statement was literally

false in the sense that she inaccurately described her conversation with Tacopina. Nor does Trump allege that Carroll falsely characterized Tacopina's actual beliefs about Trump's guilt—a theory that would turn on Carroll's opinion about Tacopina's subjective state of mind. Carroll did not "imply that [she] [was] aware of any undisclosed facts that would lend a factual connotation to [her] speculation," *Condit v. Dunne*, 317 F. Supp. 2d 344, 369 (S.D.N.Y. 2004), nor does Trump allege that Carroll somehow commented on Tacopina's own subjective beliefs with actual malice, *Free Holdings Inc. v. McCoy*, No. 22 Civ. 881, 2023 WL 2561576, at *15 (S.D.N.Y. Mar. 17, 2023).

Instead, Trump alleges that Carroll's retelling of her exchange with Tacopina "reaffirm[ed] her claim that [Trump] raped her." ¶ 7. But this allegation stumbles at the start, since it depends on a characterization of Carroll's statement that is inconsistent with the statement itself. *See In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted … by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." (citation omitted)).

Neither Carroll's statement about what she said to Tacopina, nor the question posed to her by the CNN interviewer, used the word "rape." Ex. B. So there is nothing on the face of her statement that suggests she was specifically referring to rape when she said "he did it." And the context of her statement renders any such inference implausible. As Carroll related it on CNN, her exchange with Tacopina occurred right after the verdict was announced. At that time, Tacopina congratulated Carroll's counsel and then Carroll herself on the trial victory; Carroll (in the statement here at issue) responded to Tacopina's congratulations by telling him, "He did it and you know it." *Id.* On its face, this statement was a reaction to—and an endorsement of—the jury verdict

21

that Trump had sexually abused and defamed her. *See Carroll II*, ECF 174. In other words, Trump *did* do it (and, in Carroll's subjective estimation, Tacopina knew that he did it). A reasonable viewer of the CNN interview would not understand this statement as a claim that Trump raped Carroll.

In asserting otherwise, Trump would have this Court conclude that by using the pronoun "it," Carroll specifically meant "rape," as that term is defined in the New York Penal Law. But the "it" as used by Carroll at the time is not "susceptible of the meaning" that Trump "ascribe[s]" to it. *James v. Gannett* Co., 40 N.Y.2d 415, 419 (1976). Trump's interpretation requires "straining to place a particular interpretation on the published words" that, as discussed, is untethered to the context and the content of Carroll's statement. *Id.* at 420; *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) (defamation claims cannot be supported by "strained or artificial construction"). In that crucial sense, Trump's defamation claim is not "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

But there is more: Trump's defamation claim based on this statement fails for the same two additional reasons given above. *First*, it fails for want of any plausible allegation of malice, since all that Trump pleads are "actual-malice buzzwords." *Biro*, 963 F. Supp. 2d at 279–80 (citation omitted). And *second*, it fails by virtue of Section 74's fair and true reporting privilege, since Carroll's statement was a report of events that occurred in the courtroom and Trump does not deny that her account is accurate.

## II.    TRUMP'S COUNTERCLAIM IS IMPROPER AT THIS STAGE OF THE CASE

Trump's counterclaim not only fails on the merits (and should therefore be dismissed for failure to state a claim under Rule 12(b)(6)), but it is also procedurally improper.

The Second Circuit recently clarified the standard that applies when a counterclaim is asserted in response to an amended complaint. More specifically, the Second Circuit addressed

whether the counterclaim "may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint." *GEOMC Co.*, 918 F.3d at 99. For a counterclaim "presented at an early stage of the litigation," the Second Circuit held that "the new counterclaim may normally be as broad as those filed in response to an original complaint." *Id.* at 100. But the opposite rule applies to a counterclaim asserted "[a]t a late stage of the litigation." *Id*. At that point, "a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation that the court is charged with managing." *Id.* Thus, a late-stage counterclaim that "exceeds the scope of the plaintiff's new claims" should "normally not be permitted." *Id*; *accord Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17 Civ. 8528, 2022 WL 836890, at *8 (S.D.N.Y. Mar. 21, 2022) (dismissal of late-stage counterclaim turns on "(1) how far into the litigation the new counterclaim[ is] asserted," and "(2) whether the counterclaim raises issues beyond the scope of the new claims made in the … [a]mended [c]omplaint" (citation omitted)).

Trump's counterclaim indisputably arrives at a late stage of this nearly four-year litigation. Discovery has been closed since November 2022; Trump's summary judgment motion has been decided; motions *in limine* are fully briefed and substantially resolved; a joint pretrial order has been submitted; and trial is scheduled to begin on January 15, 2024. ECF 77, 100, 129, 145, 170, 173. Trump himself has acknowledged that this case is "ready to proceed to trial." ECF 164 at 9. The Second Circuit has recognized that "the risk of substantial prejudice increases with the passage of time," *GEOMC Co.*, 918 F.3d at 100 (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.)), and courts have found far less mature cases to still be at "a late stage" in determining that dismissal of a counterclaim is warranted, *see Fossil Grp., Inc. v. Angel Seller LLC*, 627 F.

Supp. 3d 180, 196 (E.D.N.Y. 2022) (counterclaim came at late stage where "fact discovery [was] largely complete"); *Thor 680 Madison Ave. LLC*, 2022 WL 836890, at *8 (same where counterclaim was filed "eighteen months after this action was filed and after the close of fact discovery" and while "the parties were in the midst of briefing cross-motions for summary judgment"); *see also Hybrid Athletics, LLC v. Hylete, Inc.*, No. 3:17 Civ. 1767, 2019 WL 6358246, at *5 (D. Conn. Nov. 27, 2019) (counterclaim came at "advanced stage" even though discovery was ongoing).

Nor can there be any dispute that Trump's counterclaim raises issues "beyond the scope of the new claims" in Carroll's amended pleading. *GEOMC Co.*, 918 F.3d at 100. This is explained by the simple fact that Carroll's "amended complaint did not add any new claims or otherwise change the focus of her original complaint." *Carroll*, 2023 WL 4393067, at *2 n.6; *see* ECF 156 at 2 (explaining limited nature of new allegations, which respond to the scope-of-employment issue as recently clarified by the D.C. Court of Appeals). In the absence of any new claims against him, Trump's counterclaim obviously fails the Second Circuit's test. *See, e.g.*, *Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778, 2018 WL 6985228, at *5 (S.D.N.Y. Dec. 18, 2018) (rejecting counterclaim that "add[ed] a whole new issue for litigation" in response to an amended complaint that "did not generate new issues or theories" or alter claims against the counterdefendant, but instead "simply added more detail to the original allegations").

And if Trump's counterclaim is not dismissed, Carroll will be forced "to expend significant additional resources to conduct discovery and prepare for trial." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation omitted). Although discovery has fully explored whether Trump sexually assaulted Carroll, *Carroll II*, ECF 19, Carroll would need (and be entitled) to take discovery to defend against Trump's new claim that Carroll's "repeated falsehoods and defamatory

statements" have caused "significant harm to his reputation, which, in turn, has yielded an inordinate amount of damages." ¶ 12. That, in turn, would probably include, at a minimum, document discovery relating to Trump's financial situation before and after the alleged defamation, another deposition of Trump, and expert discovery.[4] It may also require nonparty discovery of Trump's presidential campaign (to respond to any claim that Trump was injured in his political pursuits) and of Trump's *Carroll II* counsel (as one of the allegedly defamatory statements concerned comments Carroll made to him).

Following that additional discovery, there would be additional summary judgment briefing and, if Trump survived summary judgment, trial. A trial that included Trump's counterclaim would be far broader than a trial on Carroll's single claim of defamation. By virtue of collateral estoppel, the jury verdict in *Carroll II* resolved most of the triable issues present in this action, leaving only a narrow dispute as to damages. *See* ECF 168 at 8–9. Trying the counterclaim, by contrast, would require resolution of additional factual questions and the participation of additional witnesses whose testimony would not otherwise be needed. *See GEOMC Co.*, 918 F.3d at 102 (affirming rejection of counterclaims that "greatly expand the relatively narrow scope of [the] case" (citation omitted)); *Fossil Grp., Inc.*, 627 F. Supp. 3d at 188 (denying leave to assert counterclaim that "would necessitate a lengthy period of time for additional fact and expert discovery").

All of this would substantially delay resolution of Carroll's original defamation claim against Trump even in the best of circumstances. But here the circumstances are actually far worse. Trump is running for president, with 56 primary elections and caucuses expected to take place

---

[4] Trump would presumably take the position that discovery on his counterclaim would involve four other statements, identified by Trump for the first time dating back to April 2020. ¶ 2. The statute of limitations on those alleged instances of defamation has passed, and Trump has not once sought to raise them in this action, even when he previously sought leave to amend his answer. ECF 59. For the avoidance of doubt, Trump has confirmed in writing that "the cause of action set forth in the Counterclaim is solely premised on the statements made by the plaintiff/counterclaim-defendant, E. Jean Carroll, during her May 10, 2023 appearance on CNN."

between January and June 2024. *Important Dates in the 2024 Presidential Race*, Ballotpedia.[5]

Trump already has four other trials scheduled between now and March 2024. Erica Orden, *Trump*

*Now Faces Four Trials over Six-Month Span During Critical Phase of 2024 Campaign*, Politico

(June 15, 2023);[6] Katelyn Polantz, *Special Counsel Asks for December Trial Date for Trump in*

*Mar-a-Lago Documents Case*, CNN (June 23, 2023).[7] Trump currently faces two separate criminal

indictments, *United States v. Trump*, No. 9:23 Cr. 80101 (S.D. Fl. 2023); *People v. Trump*, Ind.

No. 71543-23 (N.Y. Sup. Ct., N.Y. Cty. 2023), with a sentencing guidelines range on his federal

charges of potentially 210 to 262 months, even if all sentences were to run concurrently, *see* David

Aaron, *How Much Prison Time Does Former President Trump Face? Applying the U.S.*

*Sentencing Guidelines*, Just Security (June 12, 2023).[8] And there is the possibility of at least two

more criminal indictments in the coming months. Ben Protess et al., *Donald Trump Faces Several*

*Investigations. Here's Where They Stand.*, N.Y. Times (June 16, 2023).[9]

    Delay, of course, is exactly what Trump wants. Carroll "now has litigated this case for

more than three and a half years[,] completed discovery, engaged in extensive motion practice,

resisted the government's attempt to defeat her claim before [this] Court, the Second Circuit and

the D.C. Court of Appeals, and devoted untold hours and resources to pursuing her claim." *Carroll*,

2023 WL 4393067, at *12. Trump's own actions, however, "have been dilatory throughout the

litigation." *Id.* (citation omitted). He has pursued a strategy of "slow-rolling his defenses, asserting

or inventing a new one each time his prior effort to delay the case fails." *Id.* (citation omitted). His

---

[5] https://ballotpedia.org/Important_dates_in_the_2024_presidential_race.

[6] https://www.politico.com/news/2023/06/15/trump-trial-date-carroll-lawsuit-00102328.

[7] https://www.cnn.com/2023/06/23/politics/trump-federal-trial-date-special-counsel/index.html.

[8] https://www.justsecurity.org/86901/how-much-prison-time-does-former-president-trump-face-applying-the-u-s-sentencing-guidelines.

[9] https://www.nytimes.com/article/trump-investigations-civil-criminal.html.

"conduct both in this case and in *Carroll II*" has "only [] corroborated the Court's earlier hypothesis of his dilatory motive." *Id.* The Court has already acknowledged these considerations in its recent decision denying Trump's request to amend his answer to add the affirmative defense of absolute immunity, *id.* at *9–*13, and should take them into account again in dismissing Trump's counterclaim as procedurally improper at this time.

## III. TRUMP'S AFFIRMATIVE DEFENSES THAT HAVE ALREADY BEEN REJECTED SHOULD BE STRICKEN

Although courts generally proceed cautiously in deciding whether to strike affirmative defenses, courts routinely strike affirmative defenses that raise issues that were previously decided in the case. *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2020 WL 3472597, at *5, *13–*14 (S.D.N.Y. June 25, 2020) (invoking law of the case doctrine and striking affirmative defense "to the extent that it seeks to relitigate the legal sufficiency of claims already decided"). *See also, e.g.*, *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, No. 17 Civ. 124, 2020 WL 1031271, at *2 (S.D.N.Y. Mar. 2, 2020) (striking affirmative defense because "[t]here is no need to litigate the same issue again"); *Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 17 Civ. 1338, 2021 WL 3269010, at *3 (E.D.N.Y. July 30, 2021) (striking affirmative defense where it was based on an argument that was already "considered and rejected"); *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 437 (E.D.N.Y. 2020) (striking affirmative defense that the court had "already determined … [was] not warranted"). This is so because "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506, 131 S. Ct. 1229, 1250 (2001) (citation omitted).

Here, the Court should strike Trump's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses because the Court considered and rejected each of these defenses in denying

Trump's motion for summary judgment. *Compare Carroll*, 2023 WL 4393067, at \*5–\*13 (rejecting Trump's presidential immunity defense); *id.* at \*13–\*14 (holding that "Carroll adequately has alleged that Mr. Trump's statements are libelous *per se*"); *id.* at \*15–\*17 (holding that "Trump's statements were factual assertions rather than expressions of opinion"); *id.* at \*19–\*20 (rejecting Trump's argument that Carroll "failed to establish … the prerequisites to a punitive damages award" as a matter of law), *with* ECF 171 at 20–21 ¶ 1 (asserting presidential immunity defense); *id.* at 21 ¶ 3 (asserting defense based on Constitutional immunities); *id.* at 21 ¶ 5 (asserting that Trump's statements are non-actionable opinion); *id.* at 22 ¶ 12 (asserting that plaintiff is not entitled to punitive damages as a matter of law); *id.* at 22 ¶ 15 (asserting that plaintiff "has not sufficiently pled" defamation or defamation *per se*).

## CONCLUSION

The Court should grant Carroll's motion to dismiss on both independent grounds discussed above: (1) Trump fails to state a claim for defamation; and (2) his counterclaim is procedurally improper. In doing so, the Court will avoid the possibility of piecemeal resolution of the issues and resolve a claim that implicates Carroll's First Amendment rights. *GEOMC Co.*, 918 F.3d at 101 ("In ruling on a motion to dismiss a new counterclaim, a district court can either assess the new counterclaim's legal sufficiency or exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim."). In addition, the Court should grant Carroll's motion to strike Trump's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses.

Dated:  New York, New York
       July 11, 2023

Respectfully submitted,

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

29