UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

E. JEAN CARROLL,

                Plaintiff,

-against-                          20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                Defendant.

------------------------------------------x

**MEMORANDUM REGARDING PLAINTIFF'S
MOTION TO FILE AN AMENDED COMPLAINT**

LEWIS A. KAPLAN, *District Judge.*

        This is a defamation case against Donald Trump brought by writer E. Jean Carroll based on certain statements Mr. Trump made in 2019 shortly after Ms. Carroll first publicly accused him of sexually assaulting ("raping") her in the mid 1990s. The Court granted Ms. Carroll's motion for leave to amend her complaint on June 13, 2023.[1] This memorandum sets forth in brief its reasons for doing so.

        The amended complaint made three main sets of changes. First, it added allegations based upon the jury's verdict in a second very closely related case ("*Carroll II*"), including substitution of the phrase "sexual assault" (or derivatives of that phrase) for the word "rape" (or derivatives of that word) wherever that word (or its derivatives) appeared in the original complaint.[2]

---

[1] Dkt 169.

[2] The Court assumes familiarity with its prior decisions, which describe in detail the facts and procedural histories of both this case ("*Carroll I*") and *Carroll II*. Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir.

2

Second, it set forth alleged facts concerning Mr. Trump's recent statements following the *Carroll II* verdict in which he again claimed that he does not know Ms. Carroll and that no such incident occurred between them. Third, it added allegations drawn from Mr. Trump's deposition in this case that allegedly demonstrate his personal motive in defaming Ms. Carroll.[3] Importantly, as the Court noted in its decision denying Mr. Trump's motion for summary judgment, "[t]he amended complaint did not add any new claims or otherwise change the focus of [Ms. Carroll's] original complaint."[4]

Mr. Trump opposed Ms. Carroll's motion. He sought to justify a denial of leave to amend chiefly on the ground that the substitution of "sexual assault" for the word "rape" would have

---

2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); Dkt 145, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt Dkt 173, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 (S.D.N.Y. July 5, 2023); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Except where preceded by *"Carroll II"*, "Dkt" references are to the docket in this case.

[3] The amended complaint specified also that "the minimum appropriate corrective campaign" to repair the alleged harm to Ms. Carroll's reputation allegedly caused by Mr. Trump's statements, as calculated by her damages expert, "would cost at least $10 million." Dkt 157-1 (Pl. Amend. Compl.) at 29 ¶ 147.

The allegations in the amended complaint that allegedly demonstrate Mr. Trump's personal motive presumably were added in relation to the then-pending issue of the United States government's decision with respect to certifying under the Westfall Act that Mr. Trump was acting within the scope of his employment as President when he made the allegedly defamatory statements. On July 11, 2023, the United States informed the Court and parties of its decision not to make that certification in this case. Dkt 177.

[4] *Carroll*, 2023 WL 4393067, at *2 n.6.

"an extraordinary impact on the substance of [Ms. Carroll's] allegations, particularly in light of the jury verdict in *Carroll II*, which [(Mr. Trump claimed)] preclude[d] a finding that [Mr. Trump] defamed [Ms. Carroll] by denying that he raped her."[5]

Mr. Trump's principal argument is just wrong. As this Court explained in its recent decision denying Mr. Trump's motion in *Carroll II* for a new trial on damages or other relief, the *Carroll II* jury's answer to the special verdict question concerning whether Mr. Trump "raped" Ms. Carroll established *only* that she had failed to prove that he penetrated her vagina *with his penis*. Indeed, the jury's finding that Mr. Trump sexually abused her implicitly determined that he had penetrated her vagina with his fingers, a form of "rape" as that word often is used.[6] In consequence, even if the jury's response to the "rape" question in *Carroll II* had issue preclusive effect (*i.e.*, were binding) in this case, a matter on which the Court does not now express any view, it would not have the effect that Mr. Trump contends.

Mr. Trump argued also that leave to amend should have been denied because the substitution of the phrase "sexual assault" for the word "rape" in the amended complaint would fundamentally alter or transform the nature of this case. But that argument too is without merit.

Ms. Carroll's claim that Mr. Trump defamed her in his 2019 statements never has hinged on the precise manner in which she claimed he raped here, "rape" being a term of various meanings.[7] It instead has been centered on whether Mr. Trump defamed her by asserting that she

---

[5] Dkt 164 (Def. Opp. Mem.) at 11.

[6] *Carroll*, 2023 WL 4612082, at *2 n.2-4.

[7] *Id.*

made up an entirely fictitious account of a forcible sexual assault by Mr. Trump in order to increase sales of her new book and/or carry out a political agenda, among other things. While Ms. Carroll has used the word "rape," the controversy between the parties always has centered on whether Mr. Trump attacked Ms. Carroll sexually, thus rendering his 2019 statements false and defamatory, not about the specific anatomical details of the assault. Nor did Mr. Trump's response to the allegation draw any such distinctions. He contended that he had never met Ms. Carroll, did not even know who she was, and that nothing at all ever had happened between them. She was, in his assertion, simply a liar acting out of improper motives. Moreover, all of the details concerning the alleged encounter between Mr. Trump and Ms. Carroll, if any, were explored in discovery in excruciating detail. Mr. Trump has not been prejudiced by granting Ms. Carroll leave to amend with respect to this or any of the other changes.

Next, Mr. Trump's argument that the additional allegations with respect to Mr. Trump's remarks concerning Ms. Carroll during the CNN Town Hall event the night after the jury's verdict in *Carroll II* should have been denied as futile because they are protected by the fair reporting privilege is without merit. The fair reporting privilege, which provides that "[a] civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding," bears no application here.[8] The amended complaint does not make any claim or cause of action based on Mr. Trump's statements during CNN's town hall. Instead, the allegations concerning Mr. Trump's post-*Carroll II* remarks are included as "subsequent statements of the defendant," which may be considered to establish that Mr. Trump made the 2019 statements that

---

[8] N.Y. Civ. Rights Law § 74.

allegations concerning Mr. Trump's post-*Carroll II* remarks are included as "subsequent statements of the defendant," which may be considered to establish that Mr. Trump made the 2019 statements that always have been the subject of this action with the deliberate intent to injure or out of hatred, ill will, or spite ("common law malice") in order for Ms. Carroll to obtain punitive damages.[9] Mr. Trump did not cite any authority, and the Court has found none, for the proposition that statements that might be privileged if they were the subject of a defamation claim – which Mr. Trump's remarks are not – cannot be considered for the distinct purpose of assessing punitive damages.

There accordingly is no merit to any of Mr. Trump's arguments in opposition to Ms. Carroll's motion for leave to amend her complaint.

Dated:      July 25, 2023

*[signature]*
Lewis A. Kaplan
United States District Judge

---

[9] *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 184–85 (2d Cir. 2000) ("Punitive damages may only be assessed under New York law if the plaintiff has established common law malice in addition to the other elements of libel. . . . Common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote. *See, e.g., Herbert v. Lando*, 441 U.S. 153, 164 n. 12 . . . (1979) ('any competent evidence, either direct or circumstantial, can be resorted to [to establish common law malice], and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, *subsequent statements of the defendant,* circumstances indicating the existence of rivalry, [and] ill will, or hostility between the parties')." (alterations in original) (emphasis added)). *See also* Dkt 157-1 (Pl. Amend. Compl.) at 38-39 ¶ 174 ("Trump's defamatory statements post-verdict show the depth of his malice toward Carroll since it is hard to imagine defamatory conduct that could possibly be more motivated by hatred, ill will, or spite.").