**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>   *Plaintiff,*<br><br> v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>   *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
  -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
   mmadaio@habbalaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

BACKGROUND ......................................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I.   Plaintiff Post-Verdict Statements Were Defamatory and Not Privileged ......................... 4

       A.  Plaintiff's Statement that Defendant "Did" Rape Her is Defamatory ........................... 4

          1.  Plaintiff's Statements Were Unequivocally False and Directly Contradicted the Jury's Verdict .................................................................................................. 5

          2.  Defendant Has Sufficiently Alleged Actual Malice .......................................... 8

          3.  The Fair and True Reporting Privilege Does Not Apply ................................... 11

             i.   Plaintiff's Statements are Not a "Report of an Official Proceeding .... 12

             ii.   Plaintiff's Statements are Not "Fair and True" .................................. 15

       B.  Plaintiff's Publication of Her Post-Verdict Statements to Defense Counsel is Defamatory ...................................................................................................... 18

   II.   DEFENDANT'S COUNTERCLAIM IS PROCEDURALLY PROPER ......................... 19

   III.   NONE OF DEFENDANT'S AFFIRMATIVE DEFENSES SHOULD BE STRICKEN .22

CONCLUSION ......................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.,*
606 N.Y.S.2d 114, 115 (4th Dep't 1993) ...............................................................6

*Biro v. Conde Nast,*
807 F.3d 541, 545 (2d Cir. 2015) .........................................................................5

*Bose Corp. v. Consumers Union of United States, Inc.,*
692 F.2d 189, 196 (1st Cir. 1982)........................................................................5

*Branca v. Mayesh,*
101 A.D.2d 872, 476 N.Y.S.2d 187, 188–89 (2d Dep't 1984) ..............................15

*Cafferty v. Southern Tier Publishing Co.,*
226 N.Y. 87, 93 (1919)........................................................................................7

*Carroll v. Trump,*
No. 22-CV-10016 (LAK), 2023 WL 2669790, at *6 (S.D.N.Y. Mar. 28, 2023) ..................11

*Carroll v. Donald J. Trump,*
Case No. 1:22-cv-1001 (S.D.N.Y 2022)..................................................................5

*Celle v. Filipino Rep. Enterprises Inc.,*
209 F.3d 163, 176 (2d Cir. 2000) .............................................................7, 8, 9, 10

*Cholowsky v. Civiletti,*
69 A.D.3d 110, 114 (2d Dept. 2009) .....................................................................12

*Clark v. AII Acquisition, LLC,*
886 F.3d 261, 264 (2d Cir. 2018) ....................................................................27, 28

*Cohen v. Stephen Wise Free Synagogue,*
No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *5 (S.D.N.Y. Apr. 4, 1996) .......................24

*Conti v. Doe,*
535 F. Supp. 3d 257, 272 (S.D.N.Y. 2021) .............................................................5

*Davis v. Boeheim,*
4 N.Y.3d 262, 272, 22 N.E.3d 999, 1006 (2014)...........................................6, 7, 18

*D'Annunzio v. Ayken, Inc.,*
876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) ............................................................5

*Daniel Goldreyer, Ltd. V. Van de Wetering,*
   217 A.D.2d 434, 436 (1st Dep't 1995) ...................................................................17

*Deutsch v. Health Ins. Plan of Greater New York,*
   573 F. Supp. 1443, 1445 (S.D.N.Y. 1983) .......................................................25, 26

*Dillon v. City of New York*,
   261 A.D.2d 34, 37–38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)....................................9

*Easton v. Pub. Citizens, Inc.,*
   No. 91-cv-1639 (JSM), 1991 WL 280688, at *7 (S.D.N.Y. Dec. 26, 1991) .........14

*Enigma Software Group USA v. Bleeping Computer,*
   194 F.Supp. 3d 263, 286 (S.D.N.Y. 2016) ............................................................7

*Feldman v. Comp. Trading, LLC,*
   *No.* 19-CV-4452 (RPK) (RLM), 2021 WL 930222, at *2 (E.D.N.Y. Mar. 11, 2021) ..........26

*Flamm v. Am. Ass'n of Univ. Women*,
   201 F.3d 144, 152 (2d Cir. 2000) ............................................................................6

*Fine v. ESPN, Inc.,*
   11 F.Supp. 3d, 209, 216-218 (N.D.N.Y. 2014) .....................................................14

*Fossil Grp., Inc. v. Angel Seller LLC,*
   No. 20-CV-2441(WFK) (TAM), 2021 WL 5409605, at *4 (E.D.N.Y. Aug. 27, 2021) ........19

*Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York,*
   101 A.D.2d 175, 475 N.Y.S.2d 383, 388–89 (1st Dep't 1984).................................5

*Fine v. ESPN, Inc.,*
   11 F.Supp. 3d, 209, 216-218 (N.D.N.Y. 2014) .......................................................5

*Geiger v. Town of Greece,*
   311 F. App'x 413, 417 (2d Cir. 2009) ....................................................................15

*GEOMC Co. v. Calmare Therapeutics Inc.,*
   918 F.3d 92, 100 .............................................................................................19, 23, 24

*Gilmore v. Shearson/American Express, Inc.*,
   811 F.2d 108, 112 (2d Cir. 1987) ...........................................................................27

*Goldman v. Reddington,*
   417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) .............................................................6

*Guiffre v. Maxwell,*
   165 F.Supp.3d 147, 151 (S.D.N.Y. 2013). ........................................................6, 18

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
 491 U.S. 657, 667 (1989) ...................................................................................8

*Harris v. City of N.Y.,*
 186 F.3d 243, 249 (2d Cir. 1999) ........................................................................25

*Harris v. Steinem*,
 571 F.2d 119, 123 (2d Cir. 1978) ........................................................................21

*Jewell v. NYP Holdings, Inc.,*
 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998) ...........................................................8

*Jones v. Ford Motor Credit Co.,*
 358 F.3d 205, 209 (2d Cir.2004) ..........................................................................21

*Karedes v. Ackerly Group, Inc.*,
 423 F.3d 107, 114 (2d Cir. 2005) ........................................................................15

*Karp v. Hill & Knowlton, Inc.,*
 631 F. Supp. 360, 363 (S.D.N.Y. 1986) .........................................................14, 15

*Katz v. Donna Karan Co. Store, L.L.C.*,
 872 F.3d 114, 118 (2d Cir. 2017). .........................................................................9

*Kinsey v. New York Times Co.,*
 991 F.3d 171, 178 (2d Cir. 2021) ........................................................................16

*Levine v. Merrill Lynch,*
 No. 09 CIV. 304 (PGG), 2009 WL 10691070, at *1, 4 (S.D.N.Y. Dec. 22, 2009)...............23

*Lipsky v. Commonwealth United Corp.,*
 551 F.2d 887, 893 (2d Cir. 1976) ........................................................................23

*McFadden v. Monroe Cty. Sheriff,*
 No. 00 Civ. 6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) .............................25

*McRedmond v. Sutton Place Rest. & Bar, Inc.,*
 851 N.Y.S.2d 478, 480 (2008)...............................................................................15

*Meloff v. New York Life Ins. Co.*,
 240 F.3d 138, 146 (2d Cir.2001) ...........................................................................5

*Milkovich v. Lorain J. Co.*,
 497 U.S. 1, 2, 110 S. Ct. 2695, 2697, 111 L. Ed. 2d 1 (1990)..................................6

*New York Times Co. v. Sullivan,*

376 U.S. 254, 279–80 (1964) ................................................................................................8

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC,*
No. 20CV2875LDHPK, 2022 WL 900604, at *9 (E.D.N.Y. Mar. 28, 2022) ........................9

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.,*
No. 96 CIV. 9469 (RWS), 1999 WL 191527, at *19 (S.D.N.Y. Apr. 7, 1999) ...................24

*Palin v. New York Times Company,*
940 F.3d 804, 815 (2d Cir. 2019) ........................................................................................9

*Pfeffer v. Mark,*
No. 98-CV-6771(ILG), 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16, 2000) .........................5

*Pisani v. Staten Island Univ. Hosp.,*
440 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) ...............................................................15, 17

*Porsch v. LLR, Inc.,*
380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ........................................................................22

*Rodriguez v City of New York,*
18 CIV. 4805 (NRB), 2021 WL 5360120, at *4 (S.D.N.Y. Nov. 16, 2021) ........................26

*Ramsay-Nobles v. Keyser,*
No. 16-CV-5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) .....................19

*Rosenblum v. Thomson Reuters (Markets) LLC,*
984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013) .........................................................................9

*Salcer v. Envicon Equities Corp.,*
478 U.S. 1015 (1986) ...................................................................................................22, 25

*Shields v. Citytrust Bancorp, Inc.,*
25 F.3d 1124, 1128 (2d Cir. 1994) ...............................................................................25, 26

*Tardif v. City of New York,*
302 F.R.D. 31, 32 (S.D.N.Y. 2014) ....................................................................................23

*Town & Country Linen Corp. v. Ingenious Designs LLC,*
No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) .................9, 10

*United Mine Workers v. Gibbs,*
383 U.S. 715, 725 (1966) ....................................................................................................5

*US Dominion, Inc. v. Fox News Network, LLC,*
No. 21 Civ. 03- 257, 2021 WL 5984265, at *25 (Del. Super. Ct. Dec. 16, 2021) ................21

*VNB Realty, Inc. v. Bank of Am. Corp.,*
No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013).......................5

*Wenz v. Becker,*
948 F. Supp. 319, 322 (S.D.N.Y. 1996) ........................................................................11, 12

*Wexler v. Alegion,*
*(UK) Ltd.,* 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019)...........................................................13

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,*
744 F.2d 935, 939 (2d Cir. 1984) .........................................................................................22

Young v. Gannett Satellite Info. Network, Inc.,
734 F.3d 544, 548 (6th Cir. 2013) ..........................................................................................1

## Rules, Statutes, and Miscellaneous

Federal Rule of Civil Procedure 12 .............................................................................................3

Federal Rule of Civil Procedure 13 ....................................................................................20, 21

Federal Rule of Civil Procedure 15 .............................................................................................5

N.Y. Civ. Rights Law § 74 ................................................................................11, 12, 13, 15, 16

Restatement (Second) of Torts § 558 (1976)..............................................................................4

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430.................................................................21

6 Wright & Miller, § 1488 .........................................................................................................19

Defendant/Counterclaimant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in opposition to the Motion to Dismiss and Motion to Strike (the "Motion") filed by the plaintiff and Counterclaim Defendant, E. Jean Carroll ("Plaintiff"), on July 11, 2023 (ECF 174). For the reasons set forth herein, the Motion should be denied in its entirety.

## **BACKGROUND**

Defendant recognizes the Court's familiarity with the parties' history and procedural posture of this action and the companion case, *E. Jean Carroll v. Donald J. Trump*, No. 1:22-cv-1001 (S.D.N.Y 2022) ("*Carroll II*").

In June of 2019, Plaintiff, for the first time, launched public accusations against Defendant, then-sitting President of the United States, claiming that he raped her at some point in the mid-1990s. *See generally* ECF 1. In response, Defendant issued three separate statements refuting Plaintiff's allegations. Plaintiff then filed her action in the Supreme Court of the State of New York on November 4, 2019. Plaintiff's single-count complaint alleged that Defendant defamed her when he made the challenged statements. *Id.*

Thereafter, on November 24, 2022, Plaintiff filed *Carroll II*, a second civil action against Defendant. The *Carroll II* complaint also detailed Plaintiff's account of the alleged Bergdorf Goodman incident and included a cause of action under the Adult Survivor's Act, as well as a new defamation claim stemming from Defendant's October 12, 2022 statement relating to the litigation *sub judice*.

Trial commenced in *Carroll II* on April 25, 2022. The consistent theme throughout Plaintiff's testimony was her claim that she had been raped by Defendant in the mid-1990s. After hearing the testimony of Plaintiff and her "outcry" witnesses, as well as all other evidence in the

case, the jury found that Defendant had not raped Plaintiff within the relevant definition of New York's Penal Law. *Carroll II*, ECF 174. Thereafter, Defendant timely filed a notice of appeal of the *Carroll II* judgment, and the matter is pending before the Second Circuit. *Carroll II*, ECF 179.

On May 10, 2023, the morning following the *Carroll II* verdict, Plaintiff and her counsel, Roberta Kaplan, appeared on the televised news program, *CNN This Morning*.[1] During the interview, Plaintiff was asked to comment on the jury's finding that she was not raped by Defendant, and the following interaction took place:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Plaintiff: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Plaintiff: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.

ECF 175 at 6.

After answering a series of additional questions, the interview shifted towards Plaintiff's recollection of an exchange between her and Defendant's trial counsel, Joseph Tacopina.

> Reporter: There in the courtroom was an encounter, an exchange, between you and the president's lawyer, Joe Tacopina. He came up, you shook hands, I believe. What did he say?
>
> Plaintiff: Well, Joe Tacopina is very likeable. He's sort of like an 18th century strutting peacock. And people like him. So, when he sticks out his hand to—first, he congratulated Robbie. And then, he was congratulating people on the team. And as I put my hand forward, I said, "he did it and you know it." Then we shook hands, and I passed on.

ECF 175 at 7.

---

[1] CNN, "E. Jean Carroll says Trump is 'incorrect' about civil trial jury," YouTube (May 10, 2023), https://bit.ly/3WRSXeF.

Shortly thereafter, Plaintiff moved to amend her complaint in the instant action. *See* ECF 155. The proposed allegations included in her amendments were substantial which included: (1) removing virtually every reference to her original allegation that Defendant raped her; (2) certain allegations pertaining to whether Defendant was acting within the scope of his office as President of the United States when making the challenged statements; and (3) Plaintiff alleges that Defendant's post-verdict statements made during a televised CNN Town Hall program should serve as grounds to increase any punitive damages awarded against the Defendant. *Id*. This Court granted Plaintiff's motion. *See* ECF 169.

In response to Plaintiff's Amended Complaint, Defendant filed an Amended Answer with Counterclaim on June 27, 2023. *See* ECF 171. Defendant answered each of Plaintiff's amended allegations, put forth various affirmative defenses, and raised a counterclaim based on the defamatory statements that Plaintiff made during her CNN interview.

## ARGUMENT

In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint. *See, Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020). When considering a motion to dismiss a complaint under Rule 12, the Court must "accept[ ] all of the [counterclaim's] factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor." *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). A claim should not be dismissed if the plaintiff has stated facts sufficient to state a claim to relief that is plausible on its face. *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013). Furthermore, plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 145 (S.D.N.Y. 2013).

I. **DEFENDANT ASSERTS A COGNIZABLE CLAIM FOR DEFAMATION**

Defendant's counterclaim sets forth a viable claim for defamation with respect to two statements that Plaintiff made during her May 10, 2023 interview on CNN.

The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii)  that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege. *See, e.g., Dillon v. City of New York*, 261 A.D.2d 34, 37–38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (citing Restatement (Second) of Torts § 558 (1976)); *see also Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001) (setting forth the same elements for a slander claim under New York law).

In the instant matter, it is readily apparent that Defendant's counterclaim satisfies all of the above elements. Therefore, for the reasons set forth below, Defendant has asserted a cognizable claim for defamation.

A. **Plaintiff's Statement that Defendant "Did" Rape Her is Defamatory**

Defendant has satisfied each of the elements for defamation when pleading that Plaintiff defamed him by repudiating the jury's finding in *Carroll II* and declaring that Defendant raped her. First, Defendant sufficiently pled that Plaintiff made a false statement by reaffirming her previous assertion that Defendant had committed rape, even after the jury's verdict in Carroll II. Second, Plaintiff knew it was false or acted in reckless disregard of its truth or falsity when she again accused Defendant of rape. Third, Plaintiff's statements are not protected by the fair and true reporting privilege. Therefore, Defendant's counterclaim sets forth a valid claim for defamation.

1.  **Plaintiff's Statements Were Unequivocally False and Directly Contradicted the Jury's Verdict.**

Plaintiff contends that her statement repudiating the jury's verdict was "substantially true" because she was simply "reciting her own undisputed internal thoughts" when she repudiated a key aspect of the jury's verdict on a nationally syndicated news program. *See* ECF 175 at 12. This argument, however, is misguided and inconsistent with binding authority as to what constitutes defamation under New York law.

"Substantial truth" is assessed on "the understanding of the 'average reader.'" *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir.2001). In this way, a "statement is 'substantially true' only if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Conti v. Doe,* 535 F. Supp. 3d 257, 272 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998)).

New York courts have developed a three-prong test for determining whether a statement should be considered to be "substantially true." First, courts "must give the disputed language a fair reading in the context of the publication as a whole." *Karedes v. Ackerly Group, Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000). Second, courts "are not to strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." *Id*. Third, courts are to read statements "as they would be read and understood by the public to which they are addressed" and not with the precision with which judges and lawyers read documents. *Id*.

Here, Plaintiff's statement was demonstrably false. Plaintiff does not dispute, nor can she, that the jury in *Carroll II* determined that Defendant did not rape her. Notwithstanding the jury's

finding, Plaintiff appeared on national television the next day and clearly, and unequivocally, contradicted that finding:

> Reporter: . . . [W]hat went through your head when you heard that [the jury found that Trump did not rape you]?

> Plaintiff: Well, I just immediately say in my own head, oh, yes, he did—oh, yes, he did. So that's my response.

ECF 175 at 6.

It is undeniable that, in making the above statement, the message Plaintiff communicated to CNN viewers is that Defendant raped her. *See Arrow Commc'ns Labs., Inc. v. Pico Prods., Inc.*, 606 N.Y.S.2d 114, 115 (4th Dep't 1993) (finding statements defamatory because "read in context, [they] convey the unmistakable impression that they are statements of fact."); *see also Guiffre v. Maxwell*, 165 F.Supp.3d 147, 151 (S.D.N.Y. 2013) (Kaplan, J.) ("'The dispositive inquiry is whether, on the basis of the overall context in which the assertion were made, a reasonable reader could have concluded that the statements were *conveying facts about the plaintiff*.'") (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014)). Plaintiff's statement unambiguously conveyed a simple fact – the jury got it wrong because, as Plaintiff put it, the rape "did" occur. *See Goldman v. Reddington*, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (finding plaintiff adequately pleaded falsity where plaintiff "unambiguously disavow[ed]" the defamatory statement and "present[ed] specific facts ... to plausibly allege" the statements were not true). In view of the jury's finding, there is simply no argument that Plaintiff's statement was "substantially true" as a matter of law.

In attempting to counter this point, Plaintiff disingenuously argues that she was merely "reciting her own undisputed internal thoughts" because her statement was couched as being "in her own head." *See* ECF 175 at 12. However, this argument is merely a red herring, as it is squarely

foreclosed by binding precedent. Indeed, the Second Circuit has clarified that "[t]he mere recitation of prefatory phrases such as 'in my opinion' or 'I think' will not render innocent an otherwise defamatory statement," *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) (citations omitted). Similarly, the Supreme Court has confirmed that "[s]imply couching a statement . . . in terms of opinion . . . does not dispel the factual implications contained in the statement." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 2, 110 S. Ct. 2695, 2697, 111 L. Ed. 2d 1 (1990). Likewise, the New York Court of Appeals has consistently rejected these types of 'technical' arguments, noting that "libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about any one." *Cafferty v. S. Tier Pub. Co.*, 226 N.Y. 87, 93 (1919). Thus, "notwithstanding [Plaintiff's] qualifier phrases, '[t]he impression created by [her] words in the mind of a reasonable person could be that they were purporting to state the truth of the matter, not merely [her] opinion.'" *Enigma Software Group USA v. Bleeping Computer*, 194 F.Supp. 3d 263, 286 (S.D.N.Y. 2016) (citing *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F.Supp. 661, 688 (S.D.N.Y. 1991). In other words, simply because Plaintiff attempted to couch her statement as being her "own internal thoughts," the defamatory effect is not lost.

Further, Plaintiff's attempt to distinguish the various uses of the term "rape" is similarly unavailing. While it is true that "rape" has different meanings in different jurisdictions, and in different context, that fact is wholly irrelevant here. In her motion papers, Plaintiff concedes that her statement on CNN "concerned the jury verdict specifically." *See* ECF 175 at 20. In other words, she was not commenting on whether she was 'raped' as the term is used colloquially or in other jurisdictions; she was directly responding to the jury's finding in *Caroll II* that there was no 'rape' as the term is defined in N.Y. Penal Law. Thus, it is beyond dispute that her statement runs contrary

to the *Carroll II* jury's finding, or that, at a minimum, a reasonable jury could interpret her statement as applying in this context. *Celle*, 209 F.3d at 178 ("If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood."); *see also*, *Davis*, 24 N.Y.3d at 272 (2014) ("It may well be that [the challenged statements] are subject to defendants' interpretation ... the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation.") (internal quotation omitted).

Therefore, Plaintiff has no basis to contend that the challenged statement was substantially true, and Defendant should be permitted to proceed with his counterclaim.

### 2. Defendant Has Sufficiently Alleged Actual Malice

To show actual malice, a plaintiff must prove that the defendant either knew her statements were false or acted with reckless disregard as to whether they were false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). As the Supreme Court has explained, while "the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks, citations, and alterations omitted).

Although the "actual malice" standard is demanding, the Second Circuit has made clear that it is not an "insurmountable" hurdle, especially at the pleadings stage. *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Rather, "at the pleading stage" actual malice may be inferred "from allegations that refer[] to the nature and circumstances of the alleged defamation or previous

dealings with the defendant." *Id*. at 546. In this way, a person acts with reckless disregard when she publishes the statement at issue entertaining serious doubts as to the truth of the statement or having a high degree of awareness that the statement is probably false. *Harte–Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). "Although actual malice is subjective, a 'court typically will infer actual malice from objective facts.'" *Celle*, 209 F.3d at 183 (quoting *Bose Corp. v. Consumers Union, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982)).

Plaintiff argues that Defendant's allegation of actual malice fails because it is conclusory. *See* ECF 175 at 15. However, Plaintiff's contention is entirely off base. Defendant pleaded actual malice with specificity by alleging that "[c]ounterclaim Defendant made these false statements with actual malice and ill will with an intent to significantly and spitefully harm and attack Counterclaimant's reputation, as these false statements were *clearly contrary to the jury verdict in Carroll II* whereby Counterclaimant was found not liable for rape by the jury." ECF 171 at 26, ¶ 10 (emphasis added). On this motion to dismiss, drawing all inferences in Defendant's favor, there is little doubt that Defendant has put forth a sufficient showing of actual malice, especially where the jury's verdict leaves no room for doubt as to whether or not Defendant was found liable of rape. This is particularly true at the pleading stage, given that defendants to a defamation claim rarely admit their true state of mind. *See Celle*, 209 F.3d at 183 ("whether [defendant] in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts.") (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982)).

While a showing of actual malice often turns on the sufficiency of circumstantial evidence, this case is unique in that there is already a prevailing authority that has found Plaintiff's statement to be false — the jury's verdict in *Carroll II*. As per a well-established body of case law, defamatory

statements made in direct contradiction to publicly available information are deemed to be made with actual malice. *See*, *e.g.*, *NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC,* No. 20-CV-2875, 2022 WL 900604, at *9 (E.D.N.Y. Mar. 28, 2022), reconsideration denied, No. 20-CV-2875, 2023 WL 2667006 (E.D.N.Y. Mar. 27, 2023) (finding actual malice where the challenged statements were readily contradicted in public documents); *Palin v. New York Times Company,* 940 F.3d 804, 815 (2d Cir. 2019) (evidence that the editor of the column was editor-in-chief of a major magazine and reviewed numerous articles rejecting any connection of plaintiff to the shooting at issue, was evidence of the editor's "opportunity to know the journalistic consensus that the connection was lacking gives rise to the inference that he actually did know); *Celle*, 209 F.3d at 186–87 (a variance between the text and headline and the defamatory sub-headline was circumstantial evidence he knew that the thrust of the sub-headline was false); *Young v. Gannett Satellite Info. Network, Inc.,* 734 F.3d 544, 548 (6th Cir. 2013) (newspaper author had read an arbitrator's report containing several items she should have seen as "red flags" contradicting her conclusion).

Turning to the case at hand, Plaintiff made her statement with full knowledge that a jury of her peers rejected her assertion that Defendant raped her, as defined under New York Penal Law, and expressly disavowed this finding on national television. Plaintiff's contention that she relied on counsel to explain the legal implication of the verdict only weakens her argument. In *Carroll II,* this Court issued an opinion detailing how Plaintiff's prior understanding of rape came from a broader definition that is understood in society to go beyond sexual intercourse. *Carroll II*, ECF 212 at 3-5. Even if this was her original understanding (which is not conceded), it is not conceivable that Plaintiff was referring to the colloquial definition of the term since she was responding to a specific question about the verdict rendered by the jury in *Carroll II*. Indeed, after instructing her counsel to provide a 'legal' explanation as to the jury's verdict, Plaintiff went on to

emphatically claim that Defendant had raped her in *direct response* to a question regarding the jury's finding as it related to the definition of rape in the New York Penal Law. Thus, it is readily apparent that Plaintiff acted with knowing falsity or, at a minimum, reckless disregard for the truth when she knowingly repudiated the jury's determination that this specific act had not occurred.

Based on the foregoing, Defendant has sufficiently alleged that Plaintiff acted with actual malice in making her defamatory statements.

### 3.   The Fair and True Reporting Privilege Does Not Apply

Civil Rights Law § 74 provides, in pertinent part: "A civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding." N.Y. Civ. Rights Law § 74.

"The purpose of providing immunity to fair and true reports of judicial proceedings is said to be to encourage the dissemination of information concerning the judicial branch of government and thereby to serve the public interest 'in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice.'" *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790, at \*6 (S.D.N.Y. Mar. 28, 2023) ("*Carroll II*") (citing *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012)). "Originally 'a qualified privilege for newspapers publishing 'a fair and true report' of 'any judicial, legislative, or other public official proceedings,'" the law was amended in 1930 "to make the privilege absolute" and ten years later "was extended from newspapers to 'any person, firm or corporation.'" *Id.* (citing *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dept. 2009))

Pursuant to Section 74, out-of-court statements are privileged only if two requirements are met: "(1) the allegedly defamatory statement is connected to a judicial proceeding; and (2) the

statement fairly and accurately reports the judicial proceeding." *See Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996).

In the instant matter, Plaintiff is unable to satisfy either requirement. First, the subject statements are not a 'report' on a judicial proceeding since it is focused exclusively on underlying events and are accurately described as 'commentary' on the jury's verdict. Second, the statements are not "fair and true" accounts because the content of said statements are not substantially accurate. Therefore, the fair and true reporting privilege does not apply.

### i.   Plaintiff's Statements are Not a "Report" of an Official Proceeding

"Allegedly defamatory statements are protected by Section 74 only where the statements report on a judicial proceeding." *Wenz*, 948 F. Supp. at 323. The party asserting the privilege bears the burden of demonstrating that this requirement is met. *See Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009). "Doubt regarding whether the report is 'of' a proceeding is resolved against the privilege." *US Dominion, Inc. v. Fox News Network, LLC*, No. 21 Civ. 03-257, 2021 WL 5984265, at *25 (Del. Super. Ct. Dec. 16, 2021) (applying New York law).

The standard to determine "whether a report qualifies for the fair and true reporting privilege is whether 'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Carroll II*, 2023 WL 2669790, at *6 (S.D.N.Y. Mar. 28, 2023) (citing *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021)). "In other words, '[i]f the context in which the statement [is] made make[s] it impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply.'" *Id.* As this Court noted previously:

> "'An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding . . . Thus, there must be some perceptible connection between the challenged report and

the[ ] proceeding . . . How 'direct' this connection must be has not been clearly defined . . . And, in light of the broad construction of § 74 . . . reports that bear a more attenuated relationship to a proceeding have been deemed sufficiently connected. [(citing cases)]'

'However, a report's mere mention of [a judicial] proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others . . . If context indicates that a challenged portion of a publication ***focuses exclusively on underlying events***, rather than [a judicial] proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding. . . . Furthermore, [t]he privilege ***does not extend to commentary on the proceeding*** or to additional facts not established in the proceedings.'"

*Id.* (citing *Fine v. ESPN, Inc.*, 11 F.Supp. 3d, 209,  216-218 (N.D.N.Y. 2014) (emphasis added).

Here, the fair and true reporting privilege is not applicable because an "ordinary viewer" of the CNN interview would not have been able to determine that Plaintiff's statements were "reporting on [a judicial] proceeding" in light of the context in which they were made. *Kinsey*, 991 F.3d at 178. Far from merely "reporting on" the *Carroll II* trial in any objective sense, Plaintiff— a party to those proceedings—was providing commentary on the jury's findings based upon her purported personal knowledge of the underlying facts. As Plaintiff previously argued, in taking the contrary position in *Carroll II*, "there is particularly good reason to doubt that a statement qualifies as a 'report' on a judicial proceeding when the statement is made by a party to the case, rather than by a reporter," *Carroll II*, ECF 79 at 8, because, in such a scenario, "the odds are much greater—given their obvious interest—that they have . . . engaged in 'commentary on the proceeding,' *id.* (citing *Fine*, 11 F. Supp. 3d at 218), or have 'focused on underlying events," *Wexler v. Alegion (UK) Ltd.,* 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019). Both exceptions to the fair and true reporting privilege are applicable here.

*First*, it is readily apparent that Plaintiff's statements—responding "oh yes he did, oh yes he did" when asked about the jury's finding "that [Defendant] did not rape [her]"; and telling opposing counsel "he did it, and you know it"—are "focus[ed] exclusively on underlying events." *Fine*, 11 F.Supp. 3d at 218. These comments are directed towards the underlying conduct that is alleged to have occurred in Bergdorf Goodman dressing room in the mid-1990s, and, more specifically, whether Defendant "did" commit these acts.

As such, there is no material difference between these statements and the alleged defamatory statement that was the subject of *Carroll II*, wherein Defendant stated, in pertinent part, that Plaintiff had "completely made up a story that [he] met her at the doors of this crowded New York City [d]epartment [s]tore." *See Carroll II*, 2023 WL 2669790, at *17. In assessing whether Defendant's statement was covered by the fair and true reporting privilege, this Court determined that it was not because it was "'focus[ed] exclusively on underlying events' – namely, the substance of Ms. Carroll's rape accusation – 'rather than a[] [judicial] proceeding relating to those events.'" *Id.* (citing *Fine*, 11 F.Supp. 3d at 217; *Easton v. Pub. Citizens, Inc.*, No. 91-cv-1639 (JSM), 1991 WL 280688, at *7 (S.D.N.Y. Dec. 26, 1991), *aff'd sub nom.*, 969 F.2d 1043 (2d Cir. 1992); *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986)). The same holds true for Plaintiff's statements here, as they go towards "the substance of Ms. Carroll's rape accusation" in an identical fashion. *Id.*

*Second*, Plaintiff's statements constitute commentary on the *Carroll II* proceedings by setting forth Plaintiff's evaluation of—and rejection of—the jury's verdict.

In *Karp v. Hill & Knowlton, Inc.*, after the Second Circuit issued a decision in a related fraud action, the defendant released a public statement claiming that "[t]he [Second Circuit's] ruling supports our claim[ ] that [the plaintiff] defrauded Buckingham[.]" 631 F. Supp. at 362. In

determining that this statement was not protected by the fair and true reporting privilege, the district court explained:

> "[The defendant's] one word assessment of the Second Circuit's opinion does not publish that opinion, or otherwise expose the public to the workings of the judicial system. Rather, it conclusionally evaluates the circuit court's opinion. The Civil Rights Law does not protect such bald-faced commentary about the judicial branch and the proceedings therein."

*Id.* at 363 (citing *Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York,* 475 N.Y.S.2d 383, 388–89 (1st Dep't 1984); *Branca v. Mayesh,* 476 N.Y.S.2d 187, 188–89 (2d Dep't 1984)).

Here, similarly, Plaintiff's statements "conclusionally evaluates" the jury's verdict in *Carroll II*. *Id.* By disputing the jury's finding that Defendant did not rape her—through her assertion that the underlying event in question did in fact occur—Plaintiff is providing "bald-faced commentary" as to the accuracy of the verdict in *Carroll II*. *Id.* Thus, Plaintiff's statements cannot be considered a "report" on *Carroll II* since they are accurately described as "commentary" on the case.

Based on the foregoing, Plaintiff's statements do not fall within the purview of Section 74 because they do not constitute a "report" on *Carroll II*.

### ii. Plaintiff's Statements are Not "Fair and True"

For a report to be "fair and true" within the meaning of Section 74, the substance of the publication must also be "substantially accurate." *McRedmond v. Sutton Place Rest. & Bar, Inc.,* 851 N.Y.S.2d 478, 480 (2008); *Geiger v. Town of Greece*, 311 F. App'x 413, 417 (2d Cir. 2009). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Grp., Inc.,* 423 F.3d 107, 119 (2d Cir. 2005). A report, for purposes of Section 74, is not fair and true if it

"transform[s] allegations … into fact." *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) (emphasis omitted).

"When a report of a pleading is the subject of a request for immunity under section 74, a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis." *Carroll II*, 2023 WL 2669790, at *19 (citing *Karp*, 631 F. Supp. at 363).

With respect to Plaintiff's statement recounting her interaction with defense counsel, Plaintiff fails to identify *any* official proceeding or pleading that she purports to have been reporting on. Instead, she merely claims, in conclusory fashion, that her statement was a "report of events that occurred in the courtroom and [Defendant] does not deny that her accounts is accurate." *See* ECF 175 at 22. Yet, Plaintiff fails to reckon with the fact that her statement refers to a casual interaction between herself and opposing counsel that occurred *after* the *Carroll II* verdict had been rendered and outside of any official proceeding. *See* ECF 171 at 26 (alleging that Plaintiff's statement referred to an interaction that took place "following the conclusion of the trial in *Carroll II*."). Plaintiff cannot credibly argue that pleasantries exchanged after the close of trial should be construed as part of the court's official proceedings merely because the interaction "occurred in the courtroom." *Id.; see Kinsey v. New York Times Co.*, 991 F.3d 171, 180 (2d Cir. 2021) ("The key question is whether the reader is able to determine that the report is *of a proceeding*.") (emphasis added). Therefore, this statement is clearly outside the purview of Section 74.

As for Plaintiff's other statement, "oh yes he did, oh yes he did," Plaintiff admits that this "comment concerned the jury verdict specifically." *See* ECF 175 at 20. Thus, the proper analysis involves a "comparison" of Plaintiff's statement and the contents of the jury verdict form. *Karp*, 631 F. Supp. at 363; *see also Carroll II*, 2023 WL 2669790, at *19 (performing "[a] comparison

of [Defendant's] comments about [Plaintiff] in his October 12 statement and his assertions in his answer *in Carroll*[.]").

The jury verdict form, states, in pertinent part, "Did [Plaintiff] prove, by a preponderance of the evidence, that . . . [Defendant] raped [Plaintiff]," to which the jury answered, "No." *Carroll II*, ECF 174 at 1. Meanwhile, the statement Plaintiff claims was a "report" on the jury verdict was the following interaction during the CNN interview:

> Reporter: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?
>
> Plaintiff: Robbie can explain the legal.
>
> Reporter: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?
>
> Plaintiff: Well, I just immediately say in my own head, ***oh, yes, he did—oh, yes, he did. So that's my response***.

*See* ECF 175 at 6 (emphasis added).

Plaintiff's statement is not a "substantially accurate" report of the jury verdict; to the contrary, Plaintiff expressly disavows the jury's finding that the rape did not occur and claims that it is incorrect. In doing so, Plaintiff "transform[s] *allegations* . . . into *fact." Pisani*, 440 F. Supp. 2d at 178. Thus, her statement undoubtedly has a "different effect on the mind" of CNN viewers than the "actual truth" of what the jury recorded in its verdict form. In other words, her statement "suggests more serious conduct than that actually suggested" in the verdict form. *Daniel Goldreyer, Ltd. V. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dep't 1995).

Therefore, Plaintiff's statements do not qualify as a "fair and true" report of any of the proceedings held in *Carroll II*.

**B. Plaintiff's Publication of Her Post-Verdict Statements to Defense Counsel is Defamatory**

In her motion papers, Plaintiff argues that her second statement—recounting on CNN her post-verdict interaction with defense counsel when she told him "he did it, and you know it"—is not defamatory. But Plaintiff is mistaken; this statement, like the first, presents a cognizable claim for defamation.

Plaintiff chiefly argues that the "it" referred to in her statement was sexual abuse, not rape, and that her statement to Mr. Tacopina was "[o]n its face . . . a reaction to—and endorsement of— the jury verdict." But the context in which the statement was made indicates otherwise. Indeed, moments earlier in the same CNN interview, Plaintiff had just described how her initial reaction to the jury's verdict was not an endorsement but a *rejection* of the finding that Defendant had not raped her. She then goes on to describe her interaction with opposing counsel—which occurred "right after the verdict was announced"—and told him "he did it, and you know it." The substance of this statement can easily be interpreted to be conveying the same thought she had moments earlier: the jury was wrong to find that the rape had not occurred, and, in Plaintiff's estimation, Mr. Tacopina knew it. *See Davis*, 24 N.Y.3d at 268 ("[I]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action" that survives a motion to dismiss.") (collecting citations); *see also Guiffre*, 165 F.Supp.3d at 154 ("It is a reasonable reading that in 'referring to the statement that was made,' Defendant was implying the content of the previous day's press release . . . [w]hether another listener could interpret Defendant's self-described reference merely as a declination to comment does not defeat the fact that Plaintiff's alleged reading is plausible.").

As for Plaintiff's arguments concerning substantial truth, actual malice and the fair and true reporting privilege, those arguments fail for the same reasons described *supra.*

Therefore, the second portion of Defendant's counterclaim, pertaining to Plaintiff's statements regarding her interactions with defense counsel, put forth a cognizable claim for defamation.

## II.    DEFENDANT'S COUNTERCLAIM IS PROCEDURALLY PROPER

"The timing as to when and how a party must file counterclaims is not specified in [Fed. R. Civ. P.] 15, or [Fed. R. Civ. P.] 13, which addresses counterclaims." *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441(WFK) (TAM), 2021 WL 5409605, at *4 (E.D.N.Y. Aug. 27, 2021), report and recommendation adopted, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021) (citing *Ramsay-Nobles v. Keyser*, No. 16-CV-5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018)). As a result, the Federal Rules of Civil Procedure do "not provide clear guidance as to whether and/or when a Defendant can assert a new counterclaim or defense in an amended pleading as a matter of right, when the Defendant did not raise these claims in response to earlier pleadings." *Ramsay-Nobles*, 2018 WL 6985228, at *3.

Recently, in *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), the Second Circuit clarified the proper method by which a Defendant should present new counterclaims. Specifically, the Second Circuit provided that a party is permitted to include a new counterclaim without leave of the court or otherwise consent of the opposing party when it is made within 14 days after service of an amended complaint. *Id*. at 101. Further, the Second Circuit made clear that a new counterclaim may be permitted at a later stage in the litigation as long as the counterclaim does not "exceed the scope of Plaintiff's new claims" and does not unduly prejudice a plaintiff. *Id*. at 100 (quoting 6 Wright & Miller, § 1488).

In filing his counterclaim, Defendant acted in accordance with the Second Circuit's guidance. The counterclaim arises from statements Plaintiff made in a televised interview on May

10, 2023. Plaintiff did not delay in bringing this counterclaim, and indeed it was timely filed within 14 days after Plaintiff filed her amended complaint. ECF 171.

Further, the counterclaim does not in any way exceed the scope of Plaintiff's original complaint. In her amended complaint, Plaintiff elected to include post-verdict statements made by Defendant as a way of amplifying her entitlement to damages. Specifically, in her Amended Complaint, Plaintiff states that his post-verdict comments were intended to "demean and mock [Plaintiff]". ECF 157, Ex. A, at ¶173. Plaintiff then goes on to restate the jury instructions provided in *Carroll II* with respect to punitive damages and alleged that Defendant's "defamatory statements post-verdict show the depth of his malice toward [Plaintiff]. *Id*. at ¶ 174. She then concludes that these statements merit a "very substantial punitive damages award in [Plaintiff's] favor" which would be designed to "punish [Defendant], to deter him from engaging in further defamation, and to deter others from doing the same." *Id*. Plaintiff's Amended Complaint thus seeks to modify her entitlement to damages by incorporating post-verdict statements of the opposing party. Defendant, in response, is seeking to do precisely the same thing, albeit in the form of a counterclaim since that is his only available form of relief at this stage in litigation. Thus, the scope of the changes are identical, and Defendant has not "exceeded" the scope of the amended complaint.

Moreover, at this juncture, the Defendant is not only permitted but *compelled* to raise his defamation claim because it qualifies as a compulsory counterclaims Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as a claim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claims; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). In differentiating compulsory from permissive counterclaims, the Second Circuit looks to the "logical relationship" between the claim and counterclaim, analyzing whether essential facts

20

of various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit, and thus precise identity of issues and evidence between claim and counterclaim is not required. *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). Counterclaims based on state law are part of the same case or controversy when they share a "common nucleus of operative fact" with the plaintiff's claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, there can be no reasonable dispute that Defendant's counterclaim is compulsory, as it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir.2004) (quoting Fed. R. Civ. P. 13(a)). The counterclaim stems from the parties' competing accounts as to the nature and existence of the purported sexual assault at Bergdorf Goodman and goes to the heart of Plaintiff's original allegations. As Defendant's counterclaim is plainly compulsory, it would be waived if not raised in the instant action. This provides a "compelling" reason to permit its inclusion in the case at bar. *See Pfeffer v. Mark*, No. 98-CV-6771(ILG), 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16, 2000) (explaining that because compulsory counterclaims "would not be assertable in a subsequent case were they omitted here . . . the argument for allowing amendment here is especially compelling" (internal quotation marks omitted)); Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2013) ("When the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases [at least in the federal courts] and the pleader will lose the opportunity to have the claim adjudicated."). Defendant would therefore be unduly prejudiced should this Court strike his counterclaim.

Further, Plaintiff's argument that Defendant's counterclaim should be dismissed because it would expand the scope of this litigation is wholly unavailing. Pending this Court's decision on the preclusive effect of the jury's verdict in *Carroll II*, discovery would likely be largely confined to the damages sustained by Defendant as a result of the defamatory statement. With trial scheduled for January 15, 2024, there appears to be ample time for the parties to engage in the necessary discovery practice without moving back the trial date. Therefore, Plaintiff will not be unduly prejudiced by the inclusion of Defendant's counterclaim.

## III.    None of Defendant's Affirmative Defenses Should be Stricken

Plaintiff's contention that five of the affirmative defenses set forth in Defendant's Amended Answer—the First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses—should be stricken is misplaced. These defenses remain valid and, therefore, must be preserved.

Pursuant to Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike an affirmative defense are disfavored and are routinely denied unless there is no chance, on any set of facts or any interpretation of the law, that the defense is colorable. *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds sub nom, *Salcer v. Envicon Equities Corp.*, 478 U.S. 1015 (1986); *see also Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) ("Motions to strike under Rule 12(f) 'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'") (quoting *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)).

"In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co., Ltd.*, 918 F.3d at 96. This standard is "demanding," *Tardif v. City of New York,* 302 F.R.D. 31, 32 (S.D.N.Y. 2014), and the Second Circuit has cautioned that "courts should not tamper with the pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted).

Here, Plaintiff argues, without elaboration, that "the Court should strike [Defendant's] First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses because the Court considered and rejected each of these defenses in denying [Defendant's] motion for summary judgment." *See* ECF 175 at 27-28. At the outset, since Plaintiff fails to address the third prong—prejudice—she has waived any argument in this regard.

Further, Plaintiff is mistaken that the Court's Order dated July 5, 2023 is sufficient grounds to strike Defendant's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses. *See generally Carroll*, No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) (the "MSJ Order"). In the MSJ Order, the Court came short of finding that there was "*no* question of fact" and "*no* question of law" that "might allow the defense[s] to succeed." *GEOMC Co., Ltd.,* 918 F.3d at 96 (emphasis added); *see also Tardif v. City of New York*, 302 F.R.D. 31, 36 (S.D.N.Y. 2014) (denying motion to strike affirmative defense because "there are questions of fact and law that might allow the defense to succeed"); *Levine v. Merrill Lynch*, No. 09 CIV. 304 (PGG), 2009 WL 10691070, at *1, 4 (S.D.N.Y. Dec. 22, 2009) (holding that "Plaintiffs have failed to demonstrate that there is no question of fact or substantial question of law that might permit these

defenses to succeed" and noting, "Defendants are not, at this stage, required to prove their affirmative defenses"); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, No. 96 CIV. 9469 (RWS), 1999 WL 191527, at *19 (S.D.N.Y. Apr. 7, 1999) ("Because DST's affirmative defenses may raise issues of fact and law, the motion to strike DST's affirmative defenses is denied"); *Cohen v. Stephen Wise Free Synagogue*, No. 95 CIV. 1659 (PKL), 1996 WL 159096, at *5 (S.D.N.Y. Apr. 4, 1996) ("[B]ecause it is far from certain that defendant's statute of limitations affirmative defense with respect to the § 8-502 claim is legally insufficient, plaintiff's motion to strike must be denied").

For instance, with respect to Defendant's Twelfth Affirmative Defense, this Court determined only that Defendant "failed to establish that there is not a genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case have been satisfied." *Carroll*, 2023 WL 4393067 at *20. This Court did not find that there is "no question of fact" which could potentially lead to Defendant successfully raising this defense at trial. *GEOMC Co., Ltd.,* 918 F.3d at 96 (emphasis added). In addition, Plaintiff's Amended Complaint adds an entirely new theory of punitive damages, relating to statements Defendant made on May 10, 2023, which Defendant has not yet had an opportunity to challenge. Therefore, it would be inappropriate to strike Plaintiff's Twelfth Affirmative Defense at this time.

Likewise, with respect to Defendant's Fifth Affirmative Defense, the Court specifically declined to rule as to whether the June 24, 2019 statement ("I'll say it with great respect: Number one, she's not my type. Number two, it never happened."), could be considered as non-actionable opinion. *Carroll*, 2023 WL 4393067 at *17 n. 85 ("Neither party addresses specifically [Defendant's] June 24, 2019 statement . . . [a]s the parties have not adequately addressed this point,

the Court does not now decide it."). Thus, striking Defendant's Fifth Affirmative Defense would be similarly premature.

Moreover, with respect to Defendant's Fifteenth Affirmative Defense, the Court found only that Plaintiff had "sufficiently pleaded a claim of libel *per se*." *Carroll*, 2023 WL 4393067 at *14, but did not go so far as to find that there is "no chance, on any set of facts or any interpretation of the law, that the defense is colorable." *Salcer*, 744 F.2d at 939. Thus, Defendant's Fifteenth Affirmative Defense must also survive.

As for Defendant's First and Third Affirmative Defenses—asserting the defense of presidential immunity—although this Court has held that the presidential immunity defense was waived when it was not raised in Defendant's initial Answer, *see generally Carroll*, 2023 WL 4393067, this defense has now been properly and timely raised since it was asserted in connection with Defendant's Amended Answer.

It is well settled that an amended complaint "supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977)); *see also Harris v. City of N.Y.,* 186 F.3d 243, 249 (2d Cir. 1999) (an "Amended Complaint is the legally effective pleading for Rule 12(b)(6) purposes") (citation omitted). Thus, "an answer to an amended complaint is not itself an amended pleading . . . [a] defendant filing such an answer is not amending his original answer, he is instead responding for the first time to new issues raised in the plaintiff's amended pleading." *Deutsch v. Health Ins. Plan of Greater New York*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983); *see also McFadden v. Monroe Cty. Sheriff*, No. 00 Civ. 6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) (explaining that defendants' response to the amended complaint "was not an amended answer, but merely an answer" and so defendants were permitted to raise previously

unpled affirmative defense); *Rodriguez v City of New York*, 18 CIV. 4805 (NRB), 2021 WL 5360120, at *4 (S.D.N.Y. Nov. 16, 2021) ("Just as plaintiff asserted new allegations in his [amended complaint], defendants are also permitted to assert new defenses in response."). In other words, "[a]n amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege." *Deutsch,* 573 F. Supp. at 1445.

In this context, the only "defenses and objections that are irrevocably waived by answering an original complaint are those that 'involve the core issue of a party's willingness to submit a dispute to judicial resolution,' such as objections to 'lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.' *Id.*" *Shields*, 25 F.3d at 1124; *see also Feldman v. Comp. Trading, LLC*,   No. 19-CV-4452 (RPK) (RLM), 2021 WL 930222, at *2 (E.D.N.Y. Mar. 11, 2021) ("When an amended complaint has been filed, "the only defenses that are waived because they were not contained in an earlier answer are 'those that involve the core issue of a party's willingness to submit a dispute to judicial resolution, such as objections to lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.'") (citing *Shields*, 25 F.3d at 1128); *see also* 5C Charles Alan Wright & Arthur A. Miller, Federal Practice & Procedure § 1392 (3d ed. 2020) (explaining that defenses set out in Rule 12(h)(2) are not waived merely because they were not raised in the first responsive pleading).

In the matter *sub judice*, this Court has already determined that presidential immunity is not a jurisdictional matter. *See Carroll*, 2023 WL 4393067 at *7 ("[T]he fact that presidential immunity is grounded in separation of powers principles does not convert it into a jurisdictional issue. Mr. Trump relies chiefly on two points in support of his argument to the contrary. Neither withstands analysis."); *id.* at *8 ("Mr. Trump's argument that absolute presidential immunity is jurisdictional runs afoul of many of the same principles on which the immunity is based."). While

Defendant does not concur with or adopt the Court's ruling,[2] the Court's determination has been clearly stated. Given the Court's holding that presidential immunity is not jurisdictional in nature, it follows that said immunity is not a "core issue of a party's willingness to submit a dispute to judicial resolution." *Shields*, 25 F.3d at 1124. Therefore, consistent with the Court's reasoning, Defendant's presidential immunity defense could not have been "irrevocably waived," *id.*, by any failure to raise it in his initial Answer, and Defendant's subsequent assertion of this defense in his Amended Answer effectively "revive[d]" it, *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987).

Moreover, given the position she advanced in opposition to Defendant's motion for summary judgment, Plaintiff is judicially estopped from arguing that absolute presidential immunity is not a merits-based, non-jurisdictional defense. *See* ECF 125 at 1 ("[A]bsolute immunity [including for judges and prosecutors] has long been treated as non-jurisdictional in nature."); *id.* at 3 ("Since Nixon, moreover, courts and litigants have broadly evinced an understanding that absolute immunity is not jurisdictional in nature."); *id.* at 3 ("This logic is also reflected in district court decisions that have dismissed claims on the merits without first considering an absolute presidential immunity defense [which, if it were jurisdictional, would have to precede the merits]) (citing *Cohen v. United States*, No. 21 Civ. 10774, 2022 WL 16925984, at *10 n.6 (S.D.N.Y. Nov. 14, 2022) (Liman, J.); *id.* at 5 (Referring to "the traditional rule that absolute immunity is a non-jurisdictional affirmative defense that must be properly invoked by the President."); *see also Clark v. AII Acquisition, LLC*, 886 F.3d 261, 264 (2d Cir. 2018) ("[T]he equitable doctrine of judicial estoppel . . . 'prevents a party from asserting a factual position in one

---

[2] Defendant has appealed the Court's July 5, 2023 Order and reserves all rights and arguments on appeal.

legal proceeding that is contrary to a position that it successfully advanced in another proceeding.").

Based on the foregoing, Plaintiff's motion to strike Defendant's First, Third, Fifth, Twelfth, and Fifteenth Affirmative Defenses must be denied in its entirety.

## **CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that Plaintiff's Motion to Dismiss and Motion to Strike be denied in its entirety.

Dated: New York, New York
      July 25, 2023

Respectfully submitted

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
          -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
          mmadaio@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*