UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

                Plaintiff,

-against-

DONALD J. TRUMP, in his personal capacity,

                Defendant.

Civil Action No.: 1:20-cv-7311-LAK-JLC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO STAY PENDING APPEAL**

Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th St, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: mmadaio@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.     The Stay Factors Weigh Heavily in Favor of Granting Defendant Relief ............... 2

        A.    Defendant Has Shown Sufficient Probability of Success on the Merits ........................ 2

        B.    Defendant Will Suffer Irreparable Harm If No Stay Is Granted ................................. 7

        C.    Plaintiff Will Not Suffer Harm from a Stay Pending Appeal ..................................... 10

        D.    The Public Interest Favors a Stay ................................................................................ 11

    II.    This Court Has Been Divested of Jurisdiction Pending Appeal ............................ 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

*Cases*

*Ashcroft v. Iqbal,*
    556 U.S. 662, 685 (2009)..................................................................................................7

*Behrens v. Pelletier,*
    516 U.S. 299, 308 (1996)................................................................................................7, 9

*Blue Ridge Investments, L.L.C. v Republic of Argentina,*
    735 F.3d 72, 79-81 (2d Cir. 2013) ....................................................................................6

*Bradley v. Jusino,*
    No. 04 Civ. 8411, 2009 WL 1403891, at *2 (S.D.N.Y. May 18, 2009)...................................9

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
    598 F3d 30, 37 (2d Cir 2010) ...........................................................................................3

*Clinton v. Jones,*
    520 U.S. 681, 694 (1997).................................................................................................5

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541, 69 S.Ct. 1221 (1949); ............................................................................6, 8

*Compare Barea v. State Univ. of New York at Albany*,
    1:05CV1523(GLS/DRH), 2005 WL 3531463, at *1 (N.D.N.Y. 2005)..................................3

*District of Columbia v. Jones,*
    919 A.2d 604, 611 (D.C. 2007) .......................................................................................7

*Dubose v. Pierce*,
    761 F2d 913, 920 (2d Cir 1985) .......................................................................................3

*Eddy v Virgin Is. Water and Power Auth.,*
    256 F.3d 204, 209 (3d Cir 2001) ..................................................................................6, 7

*EM Ltd. v Banco Cent. De La Republica Argentina,*
    800 F3d 78, 82 (2d Cir 2015) ......................................................................................6, 8

*Ferri v. Ackerman,*
    444 U.S. 193, 203, 100 S.Ct. 402, 408, 62 L.Ed.2d 355 (1979)...........................................12

*Free Ent. Fund v. Public CO. Acctg.,*
    561 U.S. 477 (2010)....................................................................................................5, 10

*Freytag v. Commissioner,*
    501 U.S. 868, 879-880, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ........................................... 6

*Garcia v. Bloomberg,*
    No. 11 Civ. 6957(JSR), 2012 WL 3127173, at *1 (S.D.N.Y. 2012) ....................................... 9

*Goshtasby v. Bd. of Trs.,*
    123 F.3d 427, 428 (7th Cir 1997) ........................................................................................... 9

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56, 58 (1982) ......................................................................................................... 13

*Gunter v. Carrion,*
    335 Fed Appx 130, 131 (2d Cir 2009) ................................................................................... 3

*Harlow v. Fitzgerald,*
    457 U.S. 800, n. 17 (1982) ................................................................................................. 4, 5

*Helstoski v. Meaner,*
    442 U.S. 500, 99 S. Ct. 2445 (1979) ...................................................................................... 6

*Hernandez v Cook County Sheriff's Off.,*
    634 F.3d 906, 912-13 (7th Cir 2011) ..................................................................................... 7

*Imbler v. Pachtman,*
    424 U.S. 409, 419 n.13 (1976) ............................................................................................... 8

*In re World Trade Ctr. Disaster Site Litig.,*
    503 F3d 167, 170 (2d Cir 2007) ................................................................................... 1, 8, 11

*In re Country Squire Assoc. of Carle Place, L.P.,*
    203 B.R. 182, 183 (B.A.P. 2d Cir 1996) ................................................................................ 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
    42 F. Supp.3d 556, 558 (S.D.N.Y. 2014) ............................................................................... 9

*Ins. Corp. of Ireland, Ltd. v. Cie. des Bauxites de Guinee,*
    456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982) ................................................................... 5

*Kendall v. United States*,
    12 Pet. 524, 610, 9 L.Ed. 1181 (1838) ................................................................................... 4

*Locurto v. Safir,*
    264 F.3d 154, 164 (2d Cir 2001) ............................................................................................ 9

*Maricultura del Norte, S. de R.L. de C.V. v. WorldBusiness Capital, Inc.*,
   No. 14 CIV. 10143 (CM), 2019 WL 2117645, at *3-4, 6 (S.D.N.Y. Apr. 26, 2019) ............13

*Minotti v. Lensink*,
   98 F.2d 607, 608 (2d Cir. 1986) ...........................................................................................6

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ..............................................................................................6, 7, 8, 9

*Mohammed v. Reno*,
   309 F3d 95, 100 (2d Cir 2002) .........................................................................................1, 2

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F3d 190, 192 (2d Cir 2004) ..........................................................................................3

*New York v. United States*,
   505 U.S. 144, 182, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) .............................................6

*Nixon v. Fitzgerald*,
   457 U.S. 731, 744, 102 S. Ct. 2690, 2698, 73 L. Ed. 2d 349 (1982) ..............4, 5, 6, 10, 12, 13

*Pasco ex rel. Pasco v. Knoblauch*,
   566 F.3d 572, 577 (5th Cir. 2009) .......................................................................................7

*Pierson v. Ray*,
   86 U.S., at 554, 87 S.Ct., at 1218 .......................................................................................12

*Raines v. Byrd*,
   521 U.S. 811, 820 (1997) .....................................................................................................5

*San Filippo v U.S. Tr. Co. of New York, Inc.*,
   737 F2d 246, 254 (2d Cir 1984) ..........................................................................................8

*Siegert v. Gilley*,
   500 U.S. 226, 232 (1991) .....................................................................................................8

*Trump v. Mazars USA LLP*,
   140 S.Ct. 2019, 2035 (2020) ................................................................................................4

*Trump v. Vance*,
   481 F Supp 3d 161, 164 (S.D.N.Y. 2020) ..............................................................3, 4, 5, 12

*United States v. Rodgers*,
   101 F.3d 247, 251 (2d Cir 1996) ........................................................................................13


*Williams v. Brooks,*
    996 F.2d 728, 730 n.2 (5th Cir 1993) .................................................................................. 9

**Rules and Statutes**

28 U.S.C. § 1291 ............................................................................................................................ 7

Fed. R. Civ. P. 12(h)(3) ................................................................................................................. 5

Rule 8(a)(1)(A) .............................................................................................................................. 1

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in support of his motion, pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure to stay this case pending resolution of his appeal of this Court's July 5, 2023 Order (ECF No. 173) (the "Order") denying Defendant's motion for summary judgment filed on December 22, 2022 (ECF No. 107) (the "Motion for Summary Judgment"), which is currently pending before the United States Court of Appeals for the Second Circuit under case no. 23-0793 (the "Appeal"). For the reasons discussed herein, Defendant's motion should be granted in its entirety.

## PRELIMINARY STATEMENT

Pursuant to the instant application, Defendant seeks a stay of this action pending resolution of his appeal of this Court's denial of his Motion for Summary Judgment. As outlined herein, the factors for determining whether a stay is appropriate weigh heavily in Defendant's favor. First, Defendant has a substantial likelihood of success on that appeal because—as fully set forth in Defendant's underlying motion papers—the claims asserted by the plaintiff, E. Jean Carroll ("Plaintiff") against Defendant are wholly barred by the doctrine of absolute presidential immunity, which is a non-waivable issue of subject matter jurisdiction by way of the separation of powers doctrine. Second, absent a stay of proceedings, Defendant will be irreparably harmed since his immunity defense will be rendered moot, while Plaintiff will sustain little, if any, prejudice. Third, given the important public policy considerations at play, there is an immense public interest in staying this action to permit the Second Circuit to issue a ruling on Defendant's presidential immunity defense.

Therefore, for the reasons set forth herein, a stay of this action pending resolution of the Appeal is warranted, necessary, and appropriate at this time.

1

**ARGUMENT**

**I. THE STAY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING DEFENDANT RELIEF.**

"The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007).

While these four factors are relatively settled, the exact phrasing differs between opinions even in this Circuit—especially regarding the first factor. *See Mohammed v. Reno,* 309 F.3d 95, 100 (2d Cir. 2002) ("Although courts have discussed and applied these four criteria on numerous occasions, some uncertainty has developed as to the first factor because of the various formulations used to describe the *degree* of likelihood of success that must be shown"). Regardless of the standard applied, the factors clearly support granting a stay based on the specific circumstances at hand.

    **A.**    **Defendant Has Shown Sufficient Probability of Success on the Merits**

As recognized above, the Second Circuit has formulated the relevant test for likelihood of success in various ways:

> "[o]n occasion [this Circuit has] required 'a probability of the movant's prevailing that is better than 50 percent.' . . . On the other hand, we have also used 'possibility' rather than 'probability,' usually requiring a 'substantial possibility' of success. . . *Dubose* expressed the standard as "a substantial possibility, although less than a likelihood, of success.' "

*Mohammed,* 309 F.3d at 101 (internal quotations and revisions omitted) (citing *Dubose v. Pierce,* 761 F.2d 913, 920 (2d Cir. 1985), overturned on grounds unrelated to the stay).

2

Ultimately, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Mohammed*, 309 F.3d at 101 (internal quotation marks omitted).

More recent holdings have gone even further, recognizing the appropriateness of staying litigation where there is at least a "serious question going to the merits" pending appeal. *See Trump v. Vance*, 481 F.Supp.3d 161, 164 (S.D.N.Y. 2020) (movants seeking a stay pending appeal must show "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation.") (quoting *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)).

This is significantly less than the "substantial likelihood of success" test necessary for obtaining injunctive relief that has the effect of granting substantially all of the relief requested. *Compare Barea v. State Univ. of New York at Albany,* No. 1:05-CV-1523(GLS/DRH), 2005 WL 3531463, at *1 (N.D.N.Y. 2005) with *Gunter v. Carrion,* 335 Fed. Appx. 130, 131 (2d Cir. 2009). In fact, the Second Circuit has explicitly held that even where decisions regarding stays pending appeal utilize phrasing such as "likely to succeed on the merits," this "[does] not suggest that this factor requires a showing that the movant is more likely than not to succeed on the merits." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010) (internal quotations omitted).

Here, it is virtually beyond dispute that an important question has been presented to the Second Circuit to resolve on appeal, as the issue of whether presidential immunity can be waived is a novel question of law which has significant ramifications on the level of autonomy afforded to the Executive Branch.

As an initial matter, there is no question that the Second Circuit has jurisdiction to immediately review the Court's finding that Defendant waived the defense of presidential immunity pursuant to the collateral order doctrine. *See generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221 (1949); *see also Nixon*, 457 U.S. at 731, 102 S.Ct. 2690 (denial of presidential immunity was immediately appealable); *Helstoski v. Meaner*, 442 U.S. 500, 99 S. Ct. 2445 (1979) (denial of Congressman's claim for absolute immunity under the Speech or Debate Clause was immediately appealable); *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (denial of claim of qualified immunity by former attorney general was immediately appealable); *Will v. Hallock*, 564 U.S. 345, 353, 126 S. Ct. 952, 959 (2006) ("In *Nixon*, *supra*, we stressed the 'compelling public ends, rooted in . . . the separation of powers,' that would be compromised by failing to allow immediate appeal of a denial of absolute Presidential immunity[.]") (citing *Nixon*, *supra*). Indeed, the Second Circuit has routinely held that denials of immunity based on a theory of *waiver* are immediately appealable just as any other denial of such immunity. *See*, *e.g.*, *EM Ltd. v Banco Cent. De La Republica Argentina*, 800 F.3d 78, 82 (2d Cir. 2015) (holding denial of foreign sovereign immunity as waived was immediately appealable); *Blue Ridge Investments, L.L.C. v Republic of Argentina*, 735 F.3d 72, 79-81 (2d Cir. 2013) (holding denial of foreign sovereign immunity as waived was immediately appealable); *Minotti v. Lensink*, 798 F.2d 607, 608 (2d Cir. 1986) (holding denial of Eleventh Amendment immunity as waived was immediately appealable).

Numerous other circuits have also held that an order finding that an immunity has been waived is immediately appealable. *See Eddy v Virgin Is. Water and Power Auth.*, 256 F.3d 204, 209 (3d Cir 2001) ("The district court's holding that the [immunity] defense was waived can be considered an appealable final order for purposes of 28 U.S.C. § 1291, under which we have jurisdiction to review 'final orders' of a district court, because it conclusively forecloses the

4

defendants' entitlement not to stand trial and is separate from the merits of Henricks's claim.") (brackets added); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (Holding that the Fifth Circuit had jurisdiction under the collateral order doctrine to determine whether individual defendants waived the defense of quailified immunity by failing to raise it until their motion for summary judgment); *Hernandez v Cook County Sheriff's Off.*, 634 F.3d 906, 912-13 (7th Cir 2011) ("Accordingly, a finding of waiver is a legal determination which enables appellate review of the denial of qualified immunity."). Therefore, appealability does not present a procedural hurdle for Defendant; he is entitled to an immediately appeal the Order pursuant to the collateral order doctrine.

As for the substantive merits of Defendant's appeal, while Defendant's arguments are set forth at length in his underlying moving and reply papers, *see* ECF Nos. 109 and 122, which are incorporated by reference herein, Defendant reiterates both that presidential immunity is a fundamentally unique and important form of immunity which is intended to shield against the "threatened breach of essential Presidential prerogatives under the separation of powers," and, thus, is non-waivable by its very nature. *Nixon v. Fitzgerald*, 457 U.S. 731, 744, 102 S. Ct. 2690, 2698 (1982). Indeed, "[t]he President is the only person who alone composes a branch of government," and therefore "'[t]he interest of the man' is often 'connected with the constitutional rights of the place.'" *Trump v. Mazars USA LLP*, 140 S.Ct. 2019, 2035 (2020) (quoting *The Federalist* No. 51).

The Supreme Court has declared that "[t]he President's unique status under the Constitution distinguishes him from other executive officials." *Nixon*, 457 U.S. at 750, 102 S. Ct. at 2701; *see also Harlow v. Fitzgerald*, 457 U.S. 800, n. 17 (1982) (noting that presidential immunity "derives in principle part from factors unique to [the President's] constitutional responsibilities and

5

station."). Indeed, "[t]he executive power is vested in [the] President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power." *Nixon*, 457 U.S. at 754, 102 S. Ct. at 2703 (citing *Kendall v. United States*, 12 Pet. 524, 610, 9 L.Ed. 1181 (1838)). In view of the "singular importance of his duties," there exists an overarching concern that "diversion of [the President's] energies by concern with private lawsuits would raise unique risks to the effective functioning of government." *Nixon*, 457 U.S. at 751, 102 S. Ct. at 2702; *see also Vance*, 140 S. Ct. at 2426 (noting that the "dominant concern" which justifies presidential immunity is the risk of "distortion of the [President's] 'decision making process' with respect to official acts that would stem from 'worry as to the possibility of damages.'") (citation omitted).

Hence, unlike "[s]uits against other officials [which] . . . generally do not invoke separation-of-powers considerations," *Harlow*, 457 U.S. at n. 17, presidential immunity is an "essential Presidential prerogative" that is firmly "rooted in the constitutional tradition of the separation of powers," *Nixon*, 457 U.S. at 749. This point was further elaborated on in *Clinton v. Jones*, when the Supreme Court clarified that the "dominant concern" in *Nixon* was not that a sitting President might be "distracted by the need to participate in litigation during the pendency of his office" but that his "decision making process" may be distorted due to "needless worry as to the possibility of damages actions stemming from any particular official decision." *Clinton*, 520 U.S. 681, 694 (1997); *see also Loving v. United States*, 517 U.S. 748, 757 (1996) (stating "the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties" (citations omitted).

Thus, given the interplay between the separation of powers doctrine, Article III standing, and subject matter jurisdiction—as set forth at length in Defendant's motion papers, *see* ECF

6

122—there is a compelling argument that presidential immunity is a non-waivable issue of subject matter jurisdiction. *See Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers.") (internal quotation marks omitted); *Ins. Corp. of Ireland, Ltd. v. Cie. des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982) ("Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Free Ent. Fund v. Public CO. Acctg.*, 561 U.S. 477 (2010) ("[T[he separation of powers does not depend on the views of individual Presidents . . . nor on whether 'the encroached-upon branch approves the encroachment[.]'") (citing *Freytag v. Commissioner,* 501 U.S. 868, 879-880, 111 S.Ct. 2631 (1991); *New York v. United States,* 505 U.S. 144, 182, 112 S.Ct. 2408 (1992)).

In short, Defendant has set forth a substantial likelihood of success on the Appeal, and, at a minimum, there certainly is an important, novel and compelling argument as to the viability of his presidential immunity defense. Therefore, this prong weighs heavily in Defendant's favor.

### B. Defendant Will Suffer Irreparable Harm If No Stay Is Granted

Given the immunity-based question at the heart of the Appeal, the risk that Defendant will be irreparably harmed absent a stay is patent.

"The purpose of conferring absolute immunity is to protect officials not only from ultimate liability but also from all the time-consuming, distracting, and unpleasant aspects of a lawsuit . . ." *District of Columbia v. Jones*, 919 A.2d 604, 611 (D.C. 2007); *see also Mitchell*, 472 U.S. at 525 ("[T]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action."). Assertions of immunity provide protection "not merely

7

to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (interior quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.") (interior quotation marks and citation omitted).

Immunity provisions, whether absolute or qualified, serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn-out lawsuit," and are "effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting in part *Mitchell*, 472 U.S. at 525). It follows that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). This is the very reason that denials of immunity are one of the few categories of orders subject to interlocutory appeals. *See*, *e.g.*, *San Filippo v U.S. Tr. Co. of New York, Inc.*, 737 F2d 246, 254 (2d Cir 1984) ("The Supreme Court has held on several occasions that interlocutory orders denying claims of absolute immunity are appealable under *Cohen* . . .") (gathering cases); *EM Ltd. v Banco Cent. De La Republica Argentina*, 800 F3d 78, 82 (2d Cir 2015) (decision that defendant had waived foreign sovereign immunity was immediately appealable).

In other words, the entire purpose of an immunity is inherently and unavoidably frustrated when a Court acknowledges the viability of an immunity only *after* the conclusion of litigation, at which point the immunity from suit has already been irreparably and indisputably forfeited. *See In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (noting that it is the "quintessential form of prejudice" when "absent a stay pending appeal . . . the appeal will be rendered moot."); *see also Mitchell,* 472 U.S. at 526 ("The entitlement [of qualified

8

immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial") (emphasis in original); *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("any proceedings in the District Court pending appeal will irreparably impair, at least to some extent, [defendants'] alleged claim to immunity from suit."); *Locurto v. Safir*, 264 F.3d 154, 164 (2d Cir. 2001) (holding that qualified immunity explicitly includes the right to avoid trial and "pre-trial burdens," including discovery) (citing to *Behrens v. Pelletier*, 516 U.S. 299 (1996)); *Garcia v. Bloomberg*, No. 11 Civ. 6957(JSR), 2012 WL 3127173, at *1 (S.D.N.Y. 2012) (finding that "qualified immunity is an entitlement to 'immunity from suit,' including the right to avoid even pre-trial discovery"); *see also Mitchell*, 472 U.S. at 526 ("The entitlement [of qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial") (emphasis added).

In this context, it is axiomatic that irreparable harm results when a defendant is forced to proceed forward with a matter while the issue of whether an immunity applies has yet to be resolved. *Goshtasby v. Bd. of Trs.*, 123 F.3d 427, 428 (7th Cir. 1997) ("[I]f the defendant is correct that it has immunity, its right to be free of litigation is compromised, and lost to a degree, if the district court proceeds while the appeal is pending."); *see also, e.g., Williams v. Brooks*, 996 F.2d 728, 730 n.2 (5th Cir 1993) (immunity "'is effectively lost' if a case is erroneously permitted to proceed at the district court level while an interlocutory appeal of a denial of immunity is pending.") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)*; In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp.3d 556, 558 (S.D.N.Y. 2014) (holding that "[a]s a general rule, when an appeal of the denial of . . . immunity is under consideration, discovery should not proceed" and rejecting the argument that divestiture is not automatic in the qualified immunity context);

9

*Bradley v. Jusino*, No. 04 Civ. 8411, 2009 WL 1403891, at *2 (S.D.N.Y. May 18, 2009) (recognizing district court was divested of jurisdiction pending appeal of qualified immunity claim).

Here, Defendant has raised the defense of absolute presidential immunity since the Complaint seeks to impose liability for conduct Defendant is alleged to have undertaken while he was a sitting President. At present, trial is currently schedule for January 15, 2024. If this case proceeds forward absent a stay, it is all but certain that Defendant will be required to proceed to trial without final resolution as to whether his presidential immunity defense is viable. In such a scenario, the presidential immunity defense will be "effectively lost." *Mitchell,* 472 U.S. at 526; see also *Nixon*, 457 US at 749, 102 S. Ct. at 2701 (noting that a President is entitled to "absolute immunity from damages liability predicated on [his] official acts," and that such immunity is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history.").

Therefore, the immediately appealable nature of Defendant's presidential immunity defense, his substantial likelihood of success on the merits of his Appeal, and the imminent harm that will result without the imposition of a stay, all weigh in favor of granting the instant application.

### C.    Plaintiff Will Not Suffer Harm from a Stay Pending Appeal

It is axiomatic that where harm to the plaintiff is a factor to be considered before staying an appeal, the very existence of a stay, without more, cannot constitute that harm or it would otherwise be a meaningless factor. While no delay is ideal, here Plaintiff will suffer no more harm than any other litigant and less than many.

Plaintiffs must show significant and particularized hardship to outweigh the irreparable harm defendants will suffer when litigation is not stayed pending review of their claim for immunity, and Plaintiff is unable to make this unique showing. See e.g., *In Re World Trade Ctr.*, 503 F.3d at 170. In the case of *In Re World Trade Ctr.,* regarding toxic fumes inhaled by workers at the "ground zero site" of the World Trade Center disaster, the court recognized that the defendants faced irreparable harm if litigation was not stayed pending appeal of their claim of immunity. *Ibid.* In order to overcome that irreparable harm, it took a showing that many of the plaintiffs faced life-threatening injuries and that other plaintiffs had already died while litigation was pending. *Id.* at 171.

Here, Plaintiff is unable to demonstrate that the harm she would suffer should this Court grant a stay of proceedings. While it is true that this action has been pending for several years, Plaintiff was able to utilize discovery gathered in this action to proceed to trial in an expedited basis in the related matter of *Carroll II*. In this context, the harm of delay is significantly diminished. Indeed, it cannot be reasonably disputed that Defendant's entitlement to be heard on the threshold question of whether he is entitled to absolute immunity from liability outweighs Plaintiff's desire to expeditiously hold a *second* trial on similar and related claims. Therefore, this factor tips in Defendant's favor.

      **D.**    **The Public Interest Favors a Stay**

When an appeal to determine whether immunity applies remains pending, "there is a public interest in vindicating the immunity of any of the defendants who might be entitled to immunity from suit" by staying litigation until the question of that immunity has been resolved. *In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d at 170 (finding that such public interest was only

11

overcome upon a showing of a competing public interest in allowing the litigation to reach trial and possibly "result in compensation for at least some Plaintiffs during their lifetimes").

With respect to the interests involved in the instant matter, the immunity claimed by Defendant is "rooted in the constitutional tradition of the separation of powers and supported by our history," based on the President's "unique position in the constitutional scheme." *Nixon*, 457 U.S. at 749, 102 S. Ct. at 2701. The Supreme Court has confirmed that there "exists the greatest public interest in providing" the President immunity from his official acts, and that deprivation of such immunity would be to the "detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.* at 752 (internal quotations omitted).

Indeed, in *Nixon v. Fitzgerald*, the Supreme Court emphasized the indispensable nature of this protection, noting that, without it, a President's ability to effectively serve his country would be severely hindered. In particular, the Supreme Court reasoned:

> Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government. As is the case with prosecutors and judges—for whom absolute immunity now is established—a President must concern himself with matters likely to "arouse the most intense feelings." *Pierson v. Ray*, 386 U.S., at 554, 87 S.Ct., at 1218. Yet, as our decisions have recognized, it is in precisely such cases that there exists the greatest public interest in providing an official "the maximum ability to deal fearlessly and impartially with" the duties of his office. *Ferri v. Ackerman*, 444 U.S. 193, 203, 100 S.Ct. 402, 408, 62 L.Ed.2d 355 (1979). This concern is compelling where the officeholder must make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system. Nor can the sheer prominence of the President's office be ignored. In view of the visibility of his office and the effect of his actions on countless people, the President would be an easily identifiable target for suits for civil damages. Cognizance of this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.

*Id.* at 752-753; *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (explaining that immunity serves the public interest in preserving the independence and decisiveness necessary of government

officials); *Vance*, 140 S.Ct. at 2425 (noting that the President's duties "are of unrivaled gravity and breadth.").

Thus, given the "compelling public ends" served by the doctrine of presidential immunity, it is incontrovertible that there are immense public interests at play, and that the public interest weighs heavily in favor of a stay pending resolution of these vital questions. *Nixon*, 457 U.S. at 758, 102 S. Ct. at 2705.

## II. THIS COURT HAS BEEN DIVESTED OF JURISDICTION PENDING APPEAL

This action must also be stayed on the independent basis that this Court is currently divested of jurisdiction. Interlocutory appeals divest trial courts of jurisdiction "over those aspects of the case involved in the appeal," and as presidential immunity confers immunity from suit in its entirety, appeals involving immunity from suit therefore pertain to—and divest jurisdiction from the trial court over—the entirety of the litigation. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance— it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

It has ultimately been established that because this appeal involves immunity from suit, which protects a defendant from the expense of pre-trial litigation, an appeal from that denial of that immunity divests the Court of jurisdiction to oversee litigation of that appeal. *See, United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir 1996) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals."); *Maricultura del Norte, S. de R.L. de C.V. v. WorldBusiness Capital, Inc.*, No. 14 CIV. 10143 (CM), 2019 WL 2117645, at *3-4, 6 (S.D.N.Y. Apr. 26, 2019) (denying motion to compel because "ordering discovery at this stage would be premature" until "the Court of Appeals issues its mandate"). Thus, as demonstrated

above, the finding that Defendant waived the defense of presidential immunity has divested this Court of jurisdiction until the Court of Appeals resolves the outstanding question of whether Defendant is immune from having to engage in this lawsuit.

## CONCLUSION

For all the reasons above, Defendant respectfully requests that this Court grant a stay of this action pending resolution of the Appeal.

Dated: July 27, 2023
      New York, New York

Respectfully submitted,

_____
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Fax: (908) 450-1881
Email: mmadaio@habbalaw.com
*Attorneys for Defendant Donald J. Trump*