## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

E. JEAN CARROLL,

         *Plaintiff,*

v.

DONALD J. TRUMP, in his personal capacity

         *Defendant.*

</td><td>

No. 20 Civ. 7311 (LAK)

</td></tr>
</table>

## PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW
## IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 1

    A.  Proceedings in *Carroll I* ................................................................................... 1

    B.  Proceedings in *Carroll II* .................................................................................. 5

SUMMARY JUDGMENT STANDARD ................................................................................... 9

ARGUMENT ........................................................................................................................... 10

   I.  FACTS PRECLUDED BY THE *CARROLL II* TRIAL JUDGMENT ........................... 10

    A.  Legal Standard ................................................................................................. 10

    B.  List of Precluded Facts .................................................................................... 12

  II.  CARROLL IS ENTITLED TO SUMMARY JUDGMENT ON EVERY MERITS ELEMENT OF HER DEFAMATION CLAIM IN *CARROLL I* ..................................... 14

    A.  Publication ....................................................................................................... 15

    B.  Of and Concerning the Plaintiff ...................................................................... 15

    C.  Defamatory Meaning ....................................................................................... 16

    D.  Falsity .............................................................................................................. 18

    E.  Actual Malice .................................................................................................. 19

CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Abele v. City of Albany*,
   214 A.D.3d 1107 (3d Dep't 2023) ........................................................ 11

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001)................................................................. 15

*Am. Airlines, Inc. v. Transp. Express, Inc.*,
   55 A.D.2d 513 (1st Dep't 1976)........................................................... 10

*Am. Ins. Co. v. Messinger*,
   43 N.Y.2d 184 (1977).......................................................................... 11

*Bank of N.Y. Mellon v. Treitel*,
   217 A.D.3d 911 (2d Dep't 2023) ........................................................ 11

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
   117 F.3d 674 (2d Cir. 1997)................................................................. 19

*Carroll v. Trump*,
   No. 20 Civ. 7311, 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022).................... 1, 4, 9

*Carroll v. Trump*,
   No. 20 Civ. 7331, 2023 WL 4393067 (S.D.N.Y. July 5, 2023)....................... *passim*

*Carroll v. Trump*,
   No. 22 Civ. 10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023)....................... 1, 6

*Carroll v. Trump*,
   No. 22 Civ. 10016, 2023 WL 4612082 (S.D.N.Y. July 19, 2023)............... 6, 8, 12, 16

*Celle v. Filipino Rep. Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000)................................................... 14, 15, 22

*Celotex Corp v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548 (1986) .................................................. 9

*Century Indem. Co. v. Brooklyn Union Gas Co.*,
   74 Misc. 3d 1221(A) (N.Y. Sup. Ct., N.Y. Cnty 2022) ......................... 11

*Conason v. Megan Holding, LLC*,
   25 N.Y. 3d 1 (2015)..................................................................... 10, 11

*Conti v. Doe*,
  535 F. Supp. 3d 257 (S.D.N.Y. 2021) ................................................................. 19, 20

*Cullen v. Moschetta*,
  207 A.D. 3d 699 (2d Dep't 2022) ............................................................................. 11

*Elias v. Rolling Stone LLC*,
  872 F.3d 97 (2d Cir. 2017)...................................................................................... 15

*Epic W14 LLC v. Malter*,
  212 A.D.3d 575 .......................................................................................................... 11

*Gunn v. Beschler*,
  No. 22-971, 2023 WL 2781295 (2d Cir. Apr. 5, 2023)......................................... 11

*Harte-Hanks Commc'ns v. Connaughton*,
  491 U.S. 657, 109 S. Ct. 2678 (1989) .................................................................... 20

*Howard v. Stature Elec., Inc.*,
  20 N.Y.3d 522 (2013).............................................................................................. 11

*In re Dunn*,
  24 N.Y.3d 699 (2015).............................................................................................. 11

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006).................................................................................... 15

*Kret by Kret v. Brookdale Hosp. Med. Ctr.*,
  93 A.D.2d 449 (2d Dep't 1983) .............................................................................. 19

*Kret by Kret v. Brookdale Hosp. Med. Ctr.*,
  61 N.Y.2d 861 (1984).............................................................................................. 19

*Lowes v. Anas*,
  195 A.D.3d 1579 (4th Dep't 2021) ......................................................................... 11

*Manhattan Rev. LLC v. Yun*,
  No. 16 Civ. 0102, 2017 WL 1330334 (S.D.N.Y. Apr. 10, 2017) .......................... 12

*Manhattan Rev. LLC v. Yun*,
  No. 16 Civ. 0102, 2017 WL 3034350 (S.D.N.Y. July 17, 2017)........................... 12

*Matusick v. Erie Cnty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014)...................................................................................... 11

*McClellan v. Smith*,
  439 F.3d 137 (2d Cir. 2006) ................................................................. 9

*Misek-Falkoff v. Am. Law. Media, Inc.*,
  300 A.D.2d 215 (1st Dep't 2002) ......................................................... 16

*Monaco v. Sullivan*,
  737 F. App'x 6 (2d Cir. 2018) .............................................................. 11

*Napoli v. Breaking Media, Inc.*,
  187 A.D.3d 1026 (2d Dep't 2020) ........................................................ 16

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
  66 F.4th 365 (2d Cir. 2023) ................................................................. 11

*Phoenix Light SF Ltd. v. HSBC Bank USA, Nat'l Ass'n*,
  No. 14 Civ. 10101, 2022 WL 1266632 (S.D.N.Y. Apr. 28, 2022) ......................... 12

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
  988 F.3d 634 (2d Cir. 2021) ................................................................. 10

*Reddington v. Staten Island Univ. Hosp.*,
  511 F.3d 126 (2d Cir. 2007) ................................................................. 10

*Rodriguez v. Cnty. of Nassau*,
  No. 18 Civ. 03845, 2023 WL 2667076 (E.D.N.Y. Mar. 28, 2023) ......................... 12

*Rojas v. Romanoff*,
  186 A.D.3d 103 (1st Dep't 2020) ...................................................... 10, 11

*Santagata v. DiGregorio*,
  No. 17 Civ. 3053, 2023 WL 2613606 (E.D.N.Y. Mar. 23, 2023) .......................... 12

*Save Monroe Ave., Inc. v. Town of Brighton*,
  217 A.D.3d 1389 (4th Dep't 2023) ........................................................ 11

*Schuh v. Druckman & Sinel, L.L.P.*,
  No. 07 Civ. 366, 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008) ............................ 12

*Schuh v. Druckman & Sinel, L.L.P.*,
  602 F. Supp. 2d 454 (S.D.N.Y. 2009) ...................................................... 12

*Simmons v. Trans Express Inc.*,
  37 N.Y.3d 107 (2021) ......................................................................... 11

*State St. Glob. Advisors Tr. Co. v. Visbal,*
    No. 19 Civ. 1719, 2023 WL 4053170 (S.D.N.Y. June 16, 2023) ............................................ 12

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.,*
    84 N.Y.2d 786 (1995) ......................................................................................... 20, 21

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
    864 F.3d 236 (2d Cir. 2017) ................................................................................. 18

*Wayne Ctr. for Nursing & Rehab., LLC v. Zucker,*
    197 A.D.3d 1409 (3d Dep't 2021) ........................................................................ 11

*Zappin v. Cooper,*
    No. 16 Civ. 5985, 2018 WL 708369 (S.D.N.Y. Feb. 2, 2018) ................................. 11

**Rules**

Federal Rule of Civil Procedure 56 ............................................................................ 9

**Other Authorities**

N.Y. Pattern Jury Instr.–Civil 3:23 .......................................................................... 14

N.Y. Pattern Jury Instr.–Civil 3:26 .......................................................................... 15

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (3d ed.) .................................. 19

## PRELIMINARY STATEMENT

*Carroll I* and *Carroll II* both concern the same central question: whether Defendant Donald J. Trump sexually assaulted Plaintiff E. Jean Carroll. *See Carroll v. Trump*, No. 20 Civ. 7311, 2022 WL 6897075, at *1, *7 (S.D.N.Y. Oct. 12, 2022); *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2006312, at *2 (S.D.N.Y. Feb. 15, 2023). That question has now been answered by the jury in *Carroll II*, which found that Trump sexually assaulted Carroll and defamed her after she spoke up.

Because New York law bars the proverbial second bite at the apple, Your Honor directed the parties to address how doctrines of preclusion affect this case in light of the *Carroll II* verdict. As set forth below, that verdict established numerous critical propositions that must now be taken as true here by virtue of issue preclusion. After we describe the governing standard and enumerate those precluded propositions, we further explain that Carroll is entitled to summary judgment on all merits elements of her defamation claim: taking precluded facts in combination with undisputed evidence leaves no doubt that the *Carroll I* trial need only address the narrow issue of damages.

## BACKGROUND

### A.      Proceedings in *Carroll I*

On June 21, 2019, *New York Magazine* published an excerpt of Carroll's forthcoming book in which she revealed that Trump had sexually assaulted her over two decades earlier. *See* Plaintiff E. Jean Carroll's Statement of Undisputed Material Facts ("Pl. 56.1") ¶ 1. In response, Trump sought to humiliate and punish Carroll by making three statements attacking her—all three of which rested on the premise that Carroll had fabricated her account of the assault. *See id.* ¶¶ 2-5.

On June 21, 2019, Trump released his first statement to a reporter, who posted it to Twitter shortly after Carroll's accusation became public. *See id.* ¶¶ 3, 6. That statement read:

> Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying

to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations.

*See id.* ¶ 3.

The next day, on June 22, 2019, Trump fielded questions from reporters before departing from the White House to Camp David. *See id.* ¶ 4. These questions veered toward Carroll's recently published accusation, at which point Trump once again attacked Carroll:

[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more.

When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do that.

*See id.*

Finally, on June 24, 2019, during an Oval Office interview where Carroll's accusation came up, Trump stated as follows to reporters: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?" *See id.* ¶ 5.

Trump's statements caused Carroll significant harm—including to her hard-won reputation as an honest, trusted journalist and advice columnist. *See id.* ¶¶ 25-27. Carroll therefore filed suit against Trump in state in court in November 2019, alleging that his statements constituted unlawful defamation. *See Carroll v. Trump*, No. 20 Civ. 7311 (S.D.N.Y.) ("*Carroll I*"), ECF 157-1. As this Court has previously recognized, the core theory underlying Carroll's claim is that "Trump lied in accusing her of fabricating her sexual assault allegation against him in order to increase sales of her book and for other improper purposes." *Carroll v. Trump*, No. 20 Civ. 7331, 2023 WL

4393067, at *4 (S.D.N.Y. July 5, 2023). In that respect, "the question whether Mr. Trump in fact raped Ms. Carroll is central to this case." *Carroll*, 2022 WL 6897075, at *7.

Following developments not relevant to this motion, the parties engaged in discovery. The discovery process included an expert analysis of the dissemination of Trump's three statements and the impact of those statements on Carroll's reputation. This analysis showed that many millions of people read the statements and were influenced by Trump's accusations. *See* Pl. 56.1 ¶ 26 (finding that the statements generated between 142,334,424 and 188,155,507 impressions).

The discovery process also included a deposition of Trump. That deposition covered many issues, four of which are particularly relevant here. *First*, Trump confirmed that he made each of the June 2019 statements himself and asserted that he stood by them without qualification. *See id.* ¶¶ 7, 9. Trump testified that he gave a copy of the June 21 statement to his staff to distribute to the press, adding that he made the June 22 and 24 statements directly to reporters. *See id.* ¶ 6. *Second*, Trump testified that all three statements were in fact about Carroll. *See id.* ¶ 8. *Third*, Trump testified about the actions that he took (and failed to take) before making the June 2019 statements. Specifically, he testified that at the time he made all three of the statements:

- He had not read Carroll's book or the excerpt published in *New York Magazine*;[1]

- Nobody in the White House had undertaken any research into Carroll or her allegations;[2]

- Neither Trump nor (to his knowledge) any of his White House aides had looked into Carroll's financial arrangements, publication contract, book sales, or political leanings;[3]

---

[1] *See* Pl. 56.1 ¶ 16.

[2] *See* Pl. 56.1 ¶¶ 13, 17.

[3] *See* Pl. 56.1 ¶¶ 13, 17, 19-20.

- Neither Trump nor (to his knowledge) any of his White House aides had contacted Bergdorf Goodman about this matter (despite Trump publicly claiming otherwise);[4] and

- Trump did not discuss Carroll's allegations—or his June 2019—with *any* White House personnel or administration official (apart from his wife and daughter).[5]

*Finally*, Trump's testimony shed light on his animus toward Carroll. Several times, Trump went beyond the question posed to assert that he had never met Carroll and that she was "not [his] type. … in any way, shape, or form." *Id.* ¶ 21. But when Carroll's counsel showed Trump a photo that included Carroll, Trump, John Johnson, and Ivana Trump at a party together several years before the assault, Trump twice misidentified Carroll as his ex-wife Marla Maples. *Id.* ¶¶ 22-23. Trump also repeatedly degraded Carroll during the deposition, calling her a "liar," a "[whack] job," "crazy," "mentally sick," and a "very deranged, sick person" who has "something wrong with her" and who he "really look[ed] forward" to "suing very strongly as soon as this case ends." *Id.* ¶ 24.

### B.     Proceedings in *Carroll II*

Several days before his deposition in *Carroll I*, Trump decided to defame Carroll once again. On October 12, 2022, he posted the following statement on Truth Social:

> This 'Ms. Bergdorf Goodman case' is a complete con job …. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie …. She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. … In the meantime, and for the record, E. Jean Carroll is not telling

---

[4] *See* Pl. 56.1 ¶ 18. In addition, at the end of the June 21 statement, Trump said: "If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible." *Id.* ¶ 3. Trump testified at his deposition that he had no memory of anyone contacting him with such information. *See id.* ¶ 15.

[5] *See* Pl. 56.1 ¶¶ 13-14.

the truth, is a woman who I had nothing to do with, didn't know, and would have
no interest in knowing her if I ever had the chance.

Pl. 56.1 ¶ 28. When asked about the October 2022 statement at his deposition, Trump confirmed

that he drafted and posted it "all myself" and that it was about Carroll. *Id.* ¶ 31. Trump also testified

that at the time, he "still didn't know [Carroll]" and "[knew] nothing about her." *Id.* ¶ 34.

Carroll subsequently filed a second lawsuit against Trump in federal court, alleging a

defamation claim based on the October 2022 statement and a battery claim that had been revived

by the New York Adult Survivors Act (ASA). *See Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.).

The "crux" of Carroll's second defamation claim mirrored her claim in *Carroll I*: "Trump defamed

[Carroll] by stating that she lied about him sexually assaulting her in order to increase sales of her

new book or for other inappropriate purposes." *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL

4612082, at *10 (S.D.N.Y. July 19, 2023). This defamation claim similarly turned on whether the

assault had in fact occurred. *See* Pl. 56.1 ¶ 43; *Carroll*, 2023 WL 2006312, at *2.

As the Court is aware, *Carroll II* went to trial from April 25 and May 9 of this year. Over

two weeks, Carroll called nine fact witnesses and two expert witnesses—and Carroll herself

testified for nearly three days. Trump, for his part, did not call a single witness and did not take

the stand. Instead, the jury heard from Trump solely through his videotaped deposition testimony.[6]

As summarized in their respective closing arguments, the parties presented diametrically

opposed theories of the case. Carroll maintained that her account of the sexual assault was credible;

that it was confirmed by her near-contemporaneous statements to two other witnesses; that it was

consistent with Trump's sexual abuse of two other women (both of whom testified); that it matched

testimony from two store employees about the layout, hours, and operations of Bergdorf Goodman

---

[6] The Court detailed much of the testimony and evidence aired during the *Carroll II* trial in its decision denying
Trump's Rule 59 motion. *See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 4612082 (S.D.N.Y. July 19, 2023).

at the time; and that it was supported by testimony from an expert psychiatrist. *See* Pl. 56.1 ¶ 36. Carroll further argued that Trump's testimony, his failure to testify in person at trial, and his confession on the "Access Hollywood" tape (among other evidence) confirmed that he was lying when he denied sexually assaulting Carroll. *See id.* ¶ 37. Carroll emphasized that because Trump was lying, his October 2022 statement—which accused her of fabricating a sexual assault allegation and of doing so for assorted nefarious reasons—was false and defamatory. *See id.*

In contrast, Trump maintained that he had never met Carroll (apart from a short interaction on a receiving line); that he had no idea who she was; and that he had neither sexually assaulted her nor had any sexual interaction of any kind with her. *See id.* ¶ 38. This defense rested partly on the argument that Carroll's testimony about the details of the sexual assault was not credible. *See id*. But just like his June 2019 statements, Trump's defense at trial rested fundamentally on an insistence that Carroll had nefarious motives for fabricating an allegation of sexual assault. As his lawyer put it to the jury: "She has abused this system by bringing a false claim for, amongst other things, money, status, political reasons." *Id.* ¶ 39. Starting with "money," Trump's counsel claimed that Carroll lied to increase sales of her book. *See id.* ("[T]he genesis of the story is Ms. Carroll's book. She told you people would be interested in Donald Trump's story and selling books was important to her."). Turning to "status," Trump's counsel declared that "status … was important to [Carroll] … [a]nd her accusing Donald Trump definitely gave her [] status and media exposure, which she loved." *Id.* Finally, with respect to "political reasons," Trump's counsel repeatedly told the jury that Carroll had "political motivations" for making a false accusation of sexual assault because she "hated … Donald Trump with a passion." *Id*. Trump's defense at the *Carroll II* trial was thus—in principal part—an effort to prove the truth of his own June 2019 statements.

In rebuttal, Carroll addressed Trump's theory of the case head on. Most fundamentally, she emphasized the powerful and credible evidence supporting her allegation that Trump had sexually assaulted her, as well as the utter lack of evidence supporting Trump's position. *See id.* ¶ 40. But she also highlighted glaring flaws in Trump's efforts to impugn her motives. To note just a few: Carroll had given away this book chapter *for free* (not for money) by posting an excerpt in *New York Magazine, id.*; Carroll had come forward years after Trump won the 2016 election, by which point it was already clear that revelations of sexual misconduct would not thwart his re-election or alienate him from his political base, *id.*; and Carroll's communications with key witnesses (Lisa Birnbach and Carol Martin) were wholly inconsistent with any claim that they fabricated this allegation for political reasons, *id*. At bottom, Carroll explained, there was no evidence that she had fabricated her allegations—let alone for any of the nefarious reasons that Trump's lawyers had featured in their defense—and all the evidence instead proved Trump's liability.

After deliberating for less than three hours, the jury returned a verdict "almost entirely in favor of Carroll." *Carroll*, 2023 WL 4612082, at *1. As to Carroll's battery claim, the jury found that Trump had sexually abused Carroll. *Carroll II*, ECF 174. Consistent with the evidence heard at trial, as well as the parties' arguments, this meant the jury found that Trump had "digitally penetrated Ms. Carroll's vagina." *Carroll*, 2023 WL 4612082, at *19 n.70; *see also id.* at *1-*3. Next, the jury found that Trump had injured Carroll by sexually abusing her and that his conduct was "willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of [] Carroll, or was so reckless as to amount to such disregard." *Carroll II*, ECF 174. For Trump's battery, the jury awarded Carroll $2.02 million in compensatory and punitive damages. *Id.*

As to Carroll's defamation claim, the jury found that Trump's October 12, 2022 statement carried a defamatory meaning, was false, and that Trump acted with "actual malice"—meaning he

"knew that it was false," "had serious doubts as to its truth," or "had a high degree of awareness that the statement probably was false." *Id*. The jury further found that Trump had injured Carroll by defaming her, and that he had "acted maliciously, out of hatred, ill will, spite or wanton, reckless, or willful disregard of the rights of another" when he did so. *Id*. On this claim, the jury awarded Carroll $2.98 million in compensatory and punitive damages. *Id.*

* * *

Following the jury verdict in *Carroll II*, the parties resumed proceedings in *Carroll I*. The trial in *Carroll I* is now set to begin on January 15, 2024. The Court recently directed each party to "file a motion setting forth precisely each fact or proposition of law, if any, as to which the moving party claims *Carroll II* has preclusive effective in this action." ECF 178. As explained below, summary judgment (by virtue of preclusion or otherwise) is warranted on all merits elements of Carroll's defamation claim in *Carroll I*, leaving only damages for trial.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). "A material fact is one that might affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party." *Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *4 (S.D.N.Y. July 5, 2023) (cleaned up). "In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (quoting *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)).

## ARGUMENT

Consistent with the Court's recent order, we first address the standard for preclusion and identify facts as to which preclusion applies in *Carroll I*. We then explain why summary judgment is warranted on all merits elements of Carroll's defamation claim, leaving only damages for trial.

## I.     FACTS PRECLUDED BY THE *CARROLL II* TRIAL JUDGMENT

### A.     Legal Standard

The Supreme Court has "instructed [that] federal diversity judgments should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (citation omitted). Here, that means the preclusive effect of the *Carroll II* judgment is governed by New York law as articulated by the New York Court of Appeals. *See Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007).

Under New York law, issue preclusion prevents a "right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction" from being "disputed in a subsequent suit between the same parties." *Am. Airlines, Inc. v. Transp. Express, Inc.*, 55 A.D.2d 513, 514 (1st Dep't 1976); *accord Rojas v. Romanoff*, 186 A.D.3d 103, 114 (1st Dep't 2020). This doctrine—also known as collateral estoppel—achieves important goals by "ensur[ing] finality, prevent[ing] vexatious litigation and promot[ing] judicial economy." *Rojas*, 186 A.D.3d at 114.

Under the traditional legal standard in New York, there are four requirements for issue preclusion: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (cleaned up). The party seeking to invoke preclusion has the burden of persuasion on the first, second, and fourth

factors, while "the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate." *In re Dunn*, 24 N.Y.3d 699, 704 (2015). "The consequences of issue preclusion between the same parties are not to be vitiated by lack of enthusiasm or effort on the part of the loser." *Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 192 (1977).

New York courts are divided on whether there is an additional, fifth requirement: namely, that the specific issue must also be decisive of the present action to have preclusive effect. *See, Century Indem. Co. v. Brooklyn Union Gas Co.*, 74 Misc. 3d 1221(A), at *2-*3 (N.Y. Sup. Ct., N.Y. Cnty 2022) (noting that this conflict is decades old and that "[n]either line [of precedent] acknowledges the other"); *see also Zappin v. Cooper*, No. 16 Civ. 5985, 2018 WL 708369, at *16 n.11 (S.D.N.Y. Feb. 2, 2018). The New York Court of Appeals last applied the decisiveness factor in 2013, *see Howard v. Stature Elec., Inc.*, 20 N.Y.3d 522, 525 (2013), but has not applied or even mentioned it in any opinions since then, *see, e.g.*, *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 112 (2021); *Conason*, 25 N.Y.3d at 17; *In re Dunn*, 24 N.Y.3d at 704. Intermediate courts in New York are divided on this issue,[7] the Second Circuit has articulated both versions of the legal standard in recent published and unpublished decisions,[8] and judges in the Southern and Eastern

---

[7] *Compare Rojas*, 186 A.D.3d at 108-09 (four-factor test); *Bank of N.Y. Mellon v. Treitel*, 217 A.D.3d 911, at *2 (2nd Dep't 2023) (same); *Abele v. City of Albany*, 214 A.D.3d 1107, 1109 (3d Dep't 2023) (same); *Save Monroe Ave., Inc. v. Town of Brighton*, 217 A.D.3d 1389, at *1 (4th Dep't 2023) (same), *with Epic W14 LLC v. Malter*, 212 A.D.3d 575, 576 (1st Dep't 2023) (including decisiveness); *Cullen v. Moschetta*, 207 A.D.3d 699, 700 (2d Dep't 2022) (same); *Wayne Ctr. for Nursing & Rehab., LLC v. Zucker*, 197 A.D.3d 1409, 1411 (3d Dep't 2021) (same); *Lowes v. Anas*, 195 A.D.3d 1579, 1580 (4th Dep't 2021) (same). Few courts have sought to resolve the issue, though one has explained that there is no good reason to include a decisiveness requirement. *See Century Indem*, 74 Misc. 3d 1221(A), at *4 n.7 ("A decisiveness requirement is not necessary to ensure that the party sought to be precluded has at least one full and fair opportunity to litigate an issue before it is definitively resolved against them. Nor is it fair to require the party seeking to apply preclusion to litigate an issue twice, notwithstanding that the issue was resolved and necessary to support a final judgment the first time. Moreover, permitting relitigation of a fully contested issue whose resolution underlies the first judgment would waste litigant and judicial resources, and would risk inconsistent results.").

[8] *Compare Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (decisiveness); *Monaco v. Sullivan*, 737 F. App'x 6, 13 (2d Cir. 2018) (same), *with Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 45-46 (2d Cir. 2014) (four-factor test); *Gunn v. Beschler*, No. 22-971, 2023 WL 2781295, at *1 (2d Cir. Apr. 5, 2023) (same).

Districts of New York have followed suit.[9] While Your Honor has not addressed the issue, this Court has endorsed reports and recommendations that apply both accounts of New York preclusion law.[10] Ultimately, it does not matter whether the decisiveness requirement applies. We therefore note where it is relevant to the analysis and otherwise apply the traditional doctrinal framework.

### B.   List of Precluded Facts

After two weeks of trial proceedings, where each party had a full and fair opportunity to litigate the issues underlying Carroll's defamation and sexual battery claims, the *Carroll II* jury returned a special verdict form. That form consisted "of factual questions going to liability and damages, organized by the two claims," and delivered "instructions and explanations necessary to enable the jury to make its findings on each submitted issue contained in the verdict form." *Carroll*, 2023 WL 4612082, at *12 (cleaned up). In following those instructions, the jury completed the verdict form, which resolved issues that were actually litigated and decided, and that were necessary to support the entry of a valid and final judgment in *Carroll II*. *See Carroll II*, ECF 174. By virtue of the jury's findings as reflected on that special verdict form, the doctrine of issue preclusion requires as follows in *Carroll I*:[11]

> The following issues have already been decided under a preponderance of the evidence standard and therefore must be accepted as true here under that standard:

---

[9] *Compare State St. Glob. Advisors Tr. Co. v. Visbal*, No. 19 Civ. 1719, 2023 WL 4053170, at *10 (S.D.N.Y. June 16, 2023) (decisiveness); *Santagata v. DiGregorio*, No. 17 Civ. 3053, 2023 WL 2613606, at *5 (E.D.N.Y. Mar. 23, 2023) (same), *with Phoenix Light SF Ltd. v. HSBC Bank USA, Nat'l Ass'n*, No. 14 Civ. 10101, 2022 WL 1266632, at *3 (S.D.N.Y. Apr. 28, 2022) (four-factor test); *Rodriguez v. Cnty. of Nassau*, No. 18 Civ. 03845, 2023 WL 2667076, at *6 n.6 (E.D.N.Y. Mar. 28, 2023) (same).

[10] *Compare Manhattan Rev. LLC v. Yun*, No. 16 Civ. 0102, 2017 WL 1330334, at *4 (S.D.N.Y. Apr. 10, 2017) (decisiveness), *report and recommendation adopted*, No. 16 Civ. 0102, 2017 WL 3034350 (S.D.N.Y. July 17, 2017), *with Schuh v. Druckman & Sinel, L.L.P.*, No. 07 Civ. 366, 2008 WL 542504, at *11 n.5 (S.D.N.Y. Feb. 29, 2008) (four-factor test), *report and recommendation adopted*, 602 F. Supp. 2d 454, 468 (S.D.N.Y. 2009).

[11] Subject, as warranted, to the application of a decisiveness requirement.

1. Trump sexually abused Carroll.[12]

2. Trump injured Carroll by sexually abusing her.[13]

3. Trump's conduct in sexually abusing Carroll was willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of Ms. Carroll, or was so reckless as to amount to such disregard.[14]

4. Trump's statement that Carroll fabricated her sexual assault allegation was defamatory.[15]

5. Trump's statement that Carroll fabricated her sexual assault allegation for nefarious purposes was defamatory.[16]

6. Trump's statement that he had never met Carroll, and that he did know who she was, was defamatory.[17]

7. Carroll was injured by Trump's publication of the October 2022 statement.[18]

8. Trump acted maliciously, out of hatred, ill will, spite or wanton, reckless, or willful disregard of the rights of Carroll when he made the October 2022.[19]

The following issues have already been decided under a clear and convincing evidence standard and therefore must be accepted as true here under that standard:

9. Trump's claim that he did not sexually assault Carroll was false.[20]

10. Trump's claim that Carroll fabricated her sexual assault allegation was false.[21]

---

[12] *Carroll II*, ECF 174 at 1; Pl. 56.1 ¶ 41 (Jury Instruction #2 (Sexual Abuse)).

[13] *Carroll II*, ECF 174 at 1; Pl. 56.1 ¶ 41 (Jury Instruction #4 (Damages)).

[14] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #4 (Damages)).

[15] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #5 (Defamatory)).

[16] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #5 (Defamatory)).

[17] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #5 (Defamatory)).

[18] *Carroll II*, ECF 174 at 3; Pl. 56.1 ¶ 41 (Jury Instruction #8 (Compensatory Damages)).

[19] *Carroll II*, ECF 174 at 3; Pl. 56.1 ¶ 41 (Jury Instruction #9 (Punitive Damages)).

[20] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #6 (Falsity)).

[21] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #6 (Falsity)).

11. Trump's claim that Carroll fabricated the sexual assault allegation for nefarious purposes was false.[22]

12. Trump's claim that that he had never met Carroll, and that he did know who she was, was false.[23]

13. When Trump made the October 2022 statement, he acted in reckless disregard of its truth or falsity, meaning he had serious doubts as to the truth of the statement or made the statement with a high degree of awareness that it probably was false.[24]

Each of these specific points was at issue in *Carroll II*, was actually litigated and decided there, was fully and fairly litigated, and was necessary to support a valid and final judgment. Accordingly, under New York law as applicable here, they cannot be relitigated in the *Carroll I* proceeding and Carroll is entitled to rely on these precluded issues in seeking summary judgment.[25]

## II. CARROLL IS ENTITLED TO SUMMARY JUDGMENT ON EVERY MERITS ELEMENT OF HER DEFAMATION CLAIM IN *CARROLL I*

Under New York law, a public-figure plaintiff must satisfy five elements to prevail on a defamation claim: that the challenged statement (1) was published; (2) was of and concerning the plaintiff: (3) carried a defamatory meaning; (4) was false; and (5) was made with actual malice. *See* N.Y. Pattern Jury Instr.–Civil 3:23; *accord Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). The first three elements must be shown by a preponderance of the evidence; the final two elements must be shown by clear and convincing evidence. *See* N.Y. Pattern Jury

---

[22] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #6 (Falsity)).

[23] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #6 (Falsity)).

[24] *Carroll II*, ECF 174 at 2; Pl. 56.1 ¶ 41 (Jury Instruction #7 (Actual Malice)).

[25] As explained in Part II, all these factual findings are decisive in *Carroll I* except for 2, 3, 7, 8, and 13.

Instr.–Civil 3:23. Here, by virtue of the precluded issues and the record, no reasonable juror could find for Trump on any of these elements. Carroll is therefore entitled to summary judgment.[26]

### A.      Publication

For a statement to be defamatory, it must have been published to a third party. *See Celle*, 209 F.3d at 176. A statement is "published" as soon as someone other than the plaintiff has read it. *See* N.Y. Pattern Jury Instr. Civil 3:26; *see also Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001). This element was not disputed in *Carroll II* and cannot be disputed here: all of the June 2019 statements were obviously published to third parties and Trump recognized as much in his deposition. *See* Pl. 56.1 ¶¶ 2, 6, 7-8. No reasonable juror could find that these statements—which garnered between 142,334,424 and 188,155,507 total impressions, *id.* ¶ 26—were not published. *See also Carroll*, 2023 WL 4393067, at *13 ("Mr. Trump made the other two June 2019 statements to individuals he knew to be reporters. He does not argue that he did not understand his remarks would be publicly reported in writing.").

### B.      Of and Concerning the Plaintiff

A claim for defamation requires that the challenged statement be "of and concerning" the plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). A statement is "of and concerning" the plaintiff when "the reading public acquainted with the parties and the subject would recognize the plaintiff as a person to whom the statement refers." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017) (cleaned up). In *Carroll II*, the Court did not instruct the jury on this element, since it was undisputed. *See Carroll II*, ECF 174. Neither party objected to that omission and neither party requested that this element be included on the special verdict form.

---

[26] The plaintiff also must demonstrate special damages or instead show that the statements are defamatory *per se*, and must separately establish that the statements are not covered by a legal privilege. Here, the Court has already ruled that the June 2019 statements satisfy the standard of defamation *per se*, *see Carroll*, 2023 WL 4393067, at *13, and Trump has not asserted (and could not credibly assert) any legal privilege over any of the June 2019 statements.

Issue preclusion may well prevent Trump from asserting here that June 2019 statements—which were in many respects substantively identical—were not of and concerning Carroll.

Regardless, Trump testified at his deposition that the June 2019 statements were about Carroll. Pl. 56.1 ¶ 8. Moreover, the June 21 statement refers to Carroll on its face, *id.* ¶ 3, and the defamatory portions of the June 22 and 24 statements plainly refer to Carroll by virtue of the context in which they were uttered (namely, questions from reporters about Carroll's recent allegation that Trump had sexually assaulted her decades earlier), *id.* ¶¶ 4-5. Accordingly, no reasonable juror could find that the June 2019 statements were not of and concerning Carroll.

### C.      Defamatory Meaning

The question of defamatory meaning is controlled by preclusion. *First*, the content of the June 2019 statements and the October 2022 statements are "substantially the same." *Napoli v. Breaking Media, Inc.*, 187 A.D.3d 1026, 1028 (2d Dep't 2020); *see also Misek-Falkoff v. Am. Law. Media, Inc.*, 300 A.D.2d 215, 215-16 (1st Dep't 2002). The theories advanced by the parties in *Carroll I* and *Carroll II* regarding defamation are also substantially the same. *Compare Carroll*, 2023 WL 4393067, at *4 ("The core of Ms. Carroll's [*Carroll I*] defamation claim is that Mr. Trump lied in accusing her of fabricating her sexual assault allegation against him in order to increase sales of her book and for other improper purposes."), *with Carroll*, 2023 WL 4612082, at *25 ("The crux of Ms. Carroll's [*Carroll II*] defamation claim was that Mr. Trump defamed her by stating that she lied about him sexually assaulting her in order to increase sales of her new book or for other inappropriate purposes."). The issues in both proceedings are thus identical.

*Second*, the jury in *Carroll II* was asked to determine whether the October 2022 statement carried a defamatory meaning. *See Carroll II*, ECF 174. Your Honor instructed the jury as follows: "[a] statement is defamatory if it tends to disparage a person in the way of his or her business, office, profession or trade. It also is defamatory if it tends to expose a person to hatred or contempt

or aversion or to induce an evil or an unsavory opinion of that person in the minds of a substantial number of the community, even though it may impute no moral turpitude to the person." Pl. 56.1 ¶ 42. By returning a finding that the October 2022 statement was defamatory, the jury necessarily decided that the statement—where Trump denied meeting or knowing Carroll, denied sexually assaulting her, and accused Carroll of fabricating the sexual assault allegation for nefarious reasons—carried a defamatory meaning. *See Carroll II*, ECF 174 at 2. Of course, Trump could not have been held liable for defamation without this finding. *See, e.g.*, *id.*; Pl. 56.1 ¶ 41.

*Finally*, the *Carroll II* finding is decisive here. In his June 2019 statements, Trump denied meeting or knowing Carroll, denied sexually assaulting her, and accused Carroll of fabricating the sexual assault allegation for nefarious reasons. Because Trump had a full and fair opportunity to litigate whether it was defamatory to make these statements about Carroll—and because he lost— issue preclusion bars him from relitigating the issue here. Therefore, the question whether the June 2019 statements are defamatory is precluded by the *Carroll II* trial judgment.[27]

In the alternative, Carroll is entitled to summary judgment because no reasonable juror could find that Trump's June 2019 statements lacked defamatory meaning: he accused Carroll of fabricating a sexual assault allegation in order to make money, advance political goals, and achieve other plainly improper purposes. Pl. 56.1 ¶¶ 3-5. Such statements, especially when issued by the sitting President and broadcast widely, would inevitably tend to expose Carroll to hatred and contempt or to induce an unsavory opinion of her in the minds of a substantial number of people in the community. That is particularly true given Carroll's professional endeavors as a journalist and advice columnist. *See Carroll*, 2023 WL 4393067, at *14 (denying summary judgment to

---

[27] Since the defamatory meaning of the June 2019 statements is necessary to resolve the *Carroll I* defamation claim and can be resolved based on the *Carroll II* verdict, the decisiveness requirement (if it applies) it satisfied.

Trump and observing that "Mr. Trump's 2019 statements reasonably can be construed as tending to disparage Ms. Carroll in the way of her profession and/or by exposing her to hatred, contempt or aversion or inducing an evil or unsavory opinion of her in the minds of a substantial number of the community"). Thus, under both issue preclusion and a straightforward application of the summary judgment standard, there can be no genuine dispute that Trump's June 2019 statements carried a defamatory meaning.

### D.      Falsity

Like defamatory meaning, the issue of falsity is resolved by issue preclusion. Under New York law, a statement is false if it is not substantially true. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017). In his June 2019 statements, Trump made provable factual assertions that he did not sexually assault Carroll, that he had never met Carroll and did not know who she was, and that she had invented the sexual assault allegation to make money, to carry out a political agenda, or for other nefarious reasons. *See Carroll*, 2023 WL 4393067, at *15 ("Considering each statement as a whole, there is nothing vague or ambiguous about the statements that would make it difficult for an average reader to appreciate their main point: that Ms. Carroll lied and her motives for lying."). The *Carroll II* jury necessarily reached these exact issues—and decided them against Trump—when it concluded that his October 2022 statement was false.

In his October 2022 statement, like his June 2019 statements, Trump stated that he did not sexually assault Carroll, he had never met Carroll and did not know who she was, and that she had invented the sexual assault allegation for nefarious reasons (*e.g.*, to sell a "really crummy book"). At trial in *Carroll II*, Trump doubled down on these claims, resting major parts of his defense on the assertion that Carroll had fabricated the sexual assault allegation to make money, increase book sales, advance a political conspiracy, or enhance her own public status. *See supra* at 7-8. In short, Trump's trial defense in *Carroll II* amounted to little more than a regurgitation of his June 2019

statements. Your Honor subsequently instructed the jury as follows: "[a] statement is false if it is not substantially true. You will determine from the evidence presented what the truth was and then compare that with Mr. Trump's October 12, 2022 statement, taking that statement according to its ordinary meaning, the ordinary meaning of its words. … [W]hether Mr. Trump's statement is false or true depends largely or entirely on whether you find that Mr. Trump raped, sexually abused, forcibly touched or otherwise sexually attacked Ms. Carroll." Pl. 56.1 ¶ 43. Guided by these instructions, the jury found Trump's statement to be false, rejecting Trump's defenses and necessarily finding that Carroll was telling the truth and did not fabricate the accusation (let alone for nefarious reasons). *See Carroll II*, ECF 174, 212 at 37. Of course, this jury finding actually decided the issue, was necessary to the verdict, and followed full and fair litigation at trial.

The *Carroll II* jury verdict therefore precludes any subsequent relitigation of the issue. *See, e.g.*, *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997); *accord Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 460 (2d Dep't 1983), *aff'd*, 61 N.Y.2d 861 (1984); Charles A. Wright & Arthur R. Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (3d ed.). Because a jury has already determined that Trump spoke falsely in denying sexually assaulting Carroll, in denying that he knew who she was or had met her, and in claiming that she had falsified an allegation for nefarious purposes, that issue must be treated as resolved for purposes of *Carroll I*.[28] Carroll is therefore entitled to summary judgment on this element by virtue of issue preclusion.

### E.    Actual Malice

This leaves only actual malice. A defendant acts with actual malice when he "either knew his statements were false or acted with reckless disregard as to whether they were false." *Conti v.*

---

[28] As with defamatory meaning, the issue of falsity is decisive to the *Carroll I* defamation claim. Thus, if decisiveness is a factor under New York's issue preclusion analysis, the outcome would not change.

*Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021). A defendant acts with reckless disregard for the truth when "he publishes the statement at issue entertaining serious doubts as to the truth of the statement or having a high degree of awareness that the statement is probably false." *Id.* (citing *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667, 109 S. Ct. 2678 (1989)). While "the failure to investigate [the] truth, standing alone, is not enough to" satisfy this standard, "evidence that defendant[] purposefully avoided the truth may support a finding of actual malice if supported by evidence that [his] inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the published statement." *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 84 N.Y.2d 786, 793 (1995) (cleaned up).

Carroll is entitled to summary judgment on this element. If New York does *not* apply a decisiveness requirement to issue preclusion, the starting point is the *Carroll II* jury finding that Trump made the October 2022 statement with actual malice. In that event, the question is whether a reasonable juror could conclude that Trump acted with actual malice in October 2022, but did not act with actual malice in making a substantively identical series of statements in June 2019. The answer to that question is straightforward: no reasonable juror could reach such a conclusion. To do so, they would have to believe that Trump willfully lied (or doubted the truth of his own statement) in October 2022, but somehow did not willfully lie (or doubt his own statements) in June 2019, even though the statements were substantively identical, even though Trump's attacks on Carroll never wavered and never varied, and even though Trump (by his own admission) made absolutely no effort in this time period to investigate the issue or to discover any new information about the truth of Carroll's underlying allegations. That sort of reasoning is fantastical and bizarre; it does not give rise to a genuine dispute of material fact. No reasonable person could believe that Trump acted with actual malice in October 2022, but lacked it in June 2019—especially since the

*Carroll II* trial centered on whether Trump was affirmatively, willfully lying in his October 2022 statement, and the jury found against him on every element of Carroll's defamation claim.

To be clear, even if New York *does* apply a decisiveness requirement (in which case the jury's finding regarding Trump's actual malice in October 2022 is not treated as preclusive for *Carroll I*), the result would be the same. As explained above, the *Carroll II* finding of falsity is preclusive here even with a decisiveness requirement. *See supra* at 18-20. Therefore, the jury in *Carroll I* must take it as true—and as established by clear and convincing evidence—that Trump spoke falsely in denying that he had sexually assaulted Carroll, in denying that he had met her or knew her, and in claiming that she had falsified her allegation of sexual assault for nefarious reasons. Taking those propositions as a starting point, any reasonable juror would find that Trump was either willfully lying in June 2019 or must have entertained serious doubts as to the truth of his statements at the time: if Trump's October 2022 statement about his own prior behavior and his own knowledge of Carroll were false, then Trump would surely have known that in June 2019, in which case his June 2019 statements were necessarily uttered with actual malice. In other words, because Trump's October 2022 statement concerned his own personal conduct and knowledge, no reasonable juror could find that Trump's October 2022 statement was false, but also conclude that Trump was unaware of the relevant facts in June 2019. For that reason alone, summary judgment is warranted on the actual malice issue whether or not a decisiveness requirement applies.

But there is more. The record makes clear that Trump's conduct in 2019 reflected gross and willful disregard for the truth. As Trump testified, he never read Carroll's book or the excerpt of it published in *New York Magazine*, Pl. 56.1 ¶ 16; he never contacted Bergdorf's despite representing otherwise in his public statements, *id.* ¶ 18; Trump had absolutely no personal knowledge as to Carroll's financial circumstances, the details of Carroll's book deal, or her

political affiliation or party registration, *id.* ¶¶ 19-20, nor did he remember anyone contacting him with such information despite asking for people do to so in his June 21 statement, *id.* ¶ 15; Trump took no steps to investigate Carroll's account, nor did he direct anyone in the White House or the administration to do so, *id.* ¶¶ 13, 17; and Trump did not consult with any other White House or administration official (apart from his wife and daughter) in making the June 2019 statements, *see id.* ¶ 14. If this does not reveal reckless disregard for the truth, it is hard to imagine what would—especially given Trump's demonstrated animosity and spite toward Carroll, whom he called "crazy," "mentally sick," and a "whack job" in his deposition. *Id.* ¶ 24; *see, e.g.*, *Celle*, 209 F.3d at 183 (explaining that "[e]vidence of ill will combined with other circumstantial evidence" indicating reckless disregard "may also support a finding of actual malice").

All told, any reasonable juror would find that Trump acted with actual malice in making the June 2019 statements, and Carroll is therefore entitled to summary judgment on this element, leaving only the question of damages for the jury trial scheduled to begin on January 15, 2024.

## CONCLUSION

For the foregoing reasons, the Court should enter an order: (1) declaring the specific issues enumerated in section I.B of Carroll's memorandum of law to be subject to the doctrine of preclusion in *Carroll I* based on the jury trial verdict in *Carroll II*; and (2) granting partial summary judgment to Carroll on her defamation claim in this action as set forth in section II of her memorandum of law.


Dated: New York, New York
      August 2, 2023

Respectfully submitted,

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*