# EXHIBIT 12

Court Ex. E
an 5/9/23

UNITED STATES DISTRICT COURT                    JURY ROOM COPY
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
E. JEAN CARROLL,

               Plaintiff,

      -against-                                     22-cv-10016 (LAK)


DONALD J. TRUMP,

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x




**JURY INSTRUCTIONS**

*Table of Contents*

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE LAW AND THE VERDICT FORM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.     The Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.     The Adult Survivors Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     C.     Verdict Form Part One: Battery Questions . . . . . . . . . . . . . . . . . . . . . . . . . 3
         1.     Question 1: Rape . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
         2.     Question 2: Sexual abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         3.     Question 3: Forcible touching . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
         4.     Questions 4 and 5:  Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
             (a)     Question 4: Compensatory damages . . . . . . . . . . . . . . . . . 9
             (b)     Question 5: Punitive damages . . . . . . . . . . . . . . . . . . . . . . 10
                 (1)     Willful or wanton negligence, recklessness, or conscious disregard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                 (2)     Punitive damages - amount . . . . . . . . . . . . . . . . . . . . . . . 11
     D.     Verdict Form Part Two: Defamation Questions . . . . . . . . . . . . . . . . . . . . 13
         5.     Question 6: Defamatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         6.     Question 7: Falsity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         7.     Question 8: Actual malice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         8.     Question 9: Compensatory damages . . . . . . . . . . . . . . . . . . . . . . . 16
         9.     Question 10: Punitive damages . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   TRIAL PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     A.     Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     B.     Role of the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     C.     Role of the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.   EVALUATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     A.     What Is and Is Not Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     B.     Evidence of Sexual Assault on Other Persons . . . . . . . . . . . . . . . . . . . . . 22
     C.     Law & Order Exhibit and Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     D.     Direct and Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     E.     Witness Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     F.     Expert Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.    DELIBERATION OF THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     A.     Duty to Deliberate / Unanimous Verdict . . . . . . . . . . . . . . . . . . . . . . . . . 27
     B.     Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     C.     Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     D.     All Jurors Required for Deliberation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     E.     Selection of Foreperson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     F.     Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     G.     Return of Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

H.    Media . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
I.    Communications Between Court and Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
J.    Juror Oath . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
K.    Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

1    **I.    INTRODUCTION**

2              Members of the jury, we have reached that point in the trial where you are about to

3    begin your function as jurors. My instructions to you will be in four parts.

4              First, I will describe the verdict form that you will use to address the factual questions

5    that you are to decide and the law to be applied in doing so. Second, I will instruct you about the trial

6    process, including the burden of proof. Third, I will give you instructions concerning your evaluation

7    of the evidence. The fourth and final section of these instructions will relate to your deliberations.

8

9    **II.    THE LAW AND THE VERDICT FORM**

10             Your verdict in this case will be in the form of answers principally to "Yes" or "No"

11    questions. I ask my staff to distribute the verdict form to you now so it may help you to follow the

12    instructions that I am about to give you.

13

14         **A.    The Nature of the Case**

15             You of course know that the plaintiff in this case, E. Jean Carroll, is suing the

16    defendant, Donald Trump, for money damages for injuries she claims to have suffered as a result of

17    an alleged incident with Mr. Trump at a New York department store in the mid 1990s and as a result

18    of an allegedly defamatory statement Mr. Trump made about her in October 2022.

19             In support of the first claim, Ms. Carroll alleges that Mr. Trump recognized her at the

20    department store and asked her to help him select a present for a woman who was not at the store.

21    The two allegedly went to the lingerie department, where Mr. Trump allegedly insisted that Ms.

22    Carroll try on a bodysuit, and she allegedly responded that he should try it on himself. According to

23    Ms. Carroll, the pair allegedly went to a dressing room and Mr. Trump allegedly closed the dressing

1    room door. Ms. Carroll claims that Mr. Trump then pushed her against the wall and kissed her

2    without her consent. After she allegedly pushed him away and laughed at him, she claims that he

3    pushed her against the wall again, pulled down her tights, and forcibly raped her before she managed

4    to push him away and flee the store. Ms. Carroll claims that this alleged conduct by Mr. Trump

5    constituted a battery as that term is used in the civil context of this case. Mr. Trump, as you know,

6    denies that this ever happened.

7            The second claim is based on a statement Mr. Trump posted on social media on

8    October 12, 2022 in which he stated that he did not know Ms. Carroll, that her story is a "Hoax and

9    a lie," and that she changed her story from beginning to end in an interview on CNN while she was

10    promoting her book in which she described the alleged incident with Mr. Trump, among other things.

11    Ms. Carroll claims that Mr. Trump's statement was false and defamatory, and that she suffered

12    reputational, emotional, and professional harm as a result of his statement. Mr. Trump denies that

13    his statement was false or defamatory.

14

15    **B.**      **The Adult Survivors Act**

16            Ms. Carroll's first claim is called a claim for battery. At the beginning of this trial, I

17    explained to you what a battery claim is in the context of a civil lawsuit. Ms. Carroll's claim that Mr.

18    Trump raped her is a civil battery claim that she was permitted to bring in this case because it falls

19    under a new law New York enacted in 2022, called the Adult Survivors Act. Under the Adult

20    Survivors Act, persons who allegedly were abused sexually as adults, but whose time within which

21    to sue for damages for any such abuse had expired, were given a new one-year period within which

22    to sue their alleged abusers. The Adult Survivors Act thus "revived" claims that otherwise might

1   have been expired.

2             New York has defined the kinds of sexual misconduct for which the Adult Survivors

3   Act temporarily revived the ability to bring civil lawsuits for damages. It has done so by reference

4   to the criminal law definitions of certain sex crimes. Ms. Carroll claims that Mr. Trump is liable to

5   her for battery on three different and alternative bases, each of which corresponds to a criminal law

6   definition of a different sex crime. Mr. Trump denies that he is liable to her for battery on any of

7   those three alternative bases. Accordingly, the first set of questions in the verdict form has to do with

8   whether or not Ms. Carroll has established that Mr. Trump's conduct, if any, came within any one

9   of those criminal law definitions. But I reiterate to you that this is a civil case for damages, not a

10  criminal case.

11

12        **C.**       **Verdict Form Part One: Battery Questions**

13              **1.**       **Question 1: Rape**

14             The first of the three definitions is that of rape. That is the subject of Question 1 on

15  the verdict form. Question 1 asks you to decide whether Ms. Carroll has proved, by a preponderance

16  of the evidence, that Mr. Trump raped her. I will explain later the preponderance of the evidence

17  standard. Right now, I will focus on the required elements of rape under New York law.

18             In order to establish that Mr. Trump raped her, Ms. Carroll must prove each of two

19  elements by a preponderance of the evidence.

20             The first element is that Mr. Trump engaged in sexual intercourse with her.

21             The second element is that Mr. Trump did so without Ms. Carroll's consent by the use

22  of forcible compulsion.

1       Let me define those terms for you.

2       "Sexual intercourse" means any penetration, however slight, of the penis into the

3       vaginal opening. In other words, any penetration of the penis into the vaginal opening, regardless of

4       the distance of penetration, constitutes an act of sexual intercourse. Sexual intercourse does not

5       necessarily require erection of the penis, emission, or orgasm.

6                   [*People v. Berardicurti*, 167 A.D.2d 840, 841 (4th Dept. 1990); N.Y.
7                   Criminal Jury Instr. & Model Colloquies § 130.35(1)]
8
9       "Forcible compulsion" means intentionally to compel by use of physical force.

10       If you find that Ms. Carroll has proven by a preponderance of the evidence both of

11       those elements, you will answer "Yes" to Question 1. If you answer Question 1 "Yes," I instruct you

12       that Mr. Trump thus committed battery against Ms. Carroll. There will be no need to consider

13       whether he committed battery on the other two alternative bases. So if you answer Question 1 "Yes,"

14       you will skip Questions 2 and 3 and go on to Question 4. If you find Ms. Carroll has not proven

15       either of the two elements of rape by a preponderance of the evidence, you must answer "No" to

16       Question 1 and proceed to Question 2, which deals with the second of the three alternative bases for

17       the battery claim.

18

19       **2.**      **Question 2: Sexual abuse**

20       The second theory of battery corresponds to something called sexual abuse. Sexual

21       abuse has two elements. In order to establish that Mr. Trump sexually abused her, Ms. Carroll must

22       prove each of these two elements by a preponderance of the evidence.

23       The <u>first element</u> is that Mr. Trump subjected Ms. Carroll to sexual contact.

24       The <u>second element</u> is that Mr. Trump did so without Ms. Carroll's consent by the use

1    of forcible compulsion.

2              Sexual contact for this purpose means any touching of the sexual or other intimate

3    parts of a person for the purpose of gratifying the sexual desire of either party. It includes the

4    touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly

5    or through clothing.

6              I just used the term "sexual or intimate part" in defining sexual contact. For this

7    purpose, a "sexual part" is an organ of human reproduction.

8                        [*People v. Blodgett*, 37 A.D.2d 1035, 1036 (3d Dept. 1971).]

9              The law does not specifically define which specific parts of the body are "intimate."

10   Intimacy, moreover, is a function of behavior and not simply anatomy. Therefore, if any touching

11   occurred, the manner and circumstances of the touching may inform your determination whether Mr.

12   Trump touched any of Ms. Carroll's intimate parts. You should apply your common sense to

13   determine whether, under general societal norms and considering the circumstances, any area or areas

14   Mr. Trump touched, if he touched any, were sufficiently personal or private that it would not have

15   been touched in the absence of a close relationship between the parties.

16                        [*People v. Sene*, 66 A.D.3d 427, 427-28 (1st Dept. 2009); *Rapp v. Fowler*,
17                        No. 20-CV-9586 (LAK), 2022 WL 1997176, at *2 (S.D.N.Y. June 6, 2022)].
18
19
20             I mentioned also that the touching, if any, of any sexual or intimate parts must have

21   been for the purpose of gratifying the sexual desire of either party. Sexual gratification is a subjective

22   determination which may be inferred from the nature of the acts committed and the circumstances

23   in which they occurred. There is no requirement that actual gratification occur, but only that the

24   touching, if any, was for that purpose.

6

1    [*People v. Rodriguez*, 764 N.Y.S.2d 301, 302 (2d Dept. 2003); *People v.*
2    *Teicher*, 52 N.Y.2d 638, 646 (1981).]

3        "Forcible compulsion," as I defined for you a few minutes earlier, means intentionally

4    to compel by the use of physical force.

5        If you find that Ms. Carroll has proven by a preponderance of the evidence both of

6    those elements, you will answer "Yes" to Question 2.  If you answer Question 2 "Yes," I instruct you

7    that Mr. Trump thus committed battery against Ms. Carroll. There will be no need to consider

8    whether he committed battery on the third alternative basis.  So if you answer Question 2 "Yes," you

9    therefore will skip Question 3 and go on to Question 4. If you find Ms. Carroll has not proven either

10   of the two elements of sexual abuse by a preponderance of the evidence, you must answer "No" to

11   Question 2 and proceed to Question 3, which deals with the third of the three alternative bases for

12   the battery claim.

13

14   **3.      Question 3: Forcible touching**

15       The third alternative theory of battery is something called forcible touching.

16       Forcible touching occurs when a person intentionally, and for no legitimate purpose,

17   forcibly touches the sexual or intimate parts of another person for the purpose of degrading or

18   abusing such person *or* for the purpose of gratifying the actor's sexual desire.  It has five elements.

19       The first element is that Mr. Trump touched a sexual or intimate part or parts of Ms.

20   Carroll. I already have defined for you the terms "sexual or intimate parts." You will apply that

21   instruction here in deciding whether Ms. Carroll has proved this element of forcible touching.

22       The second element of forcible touching, as the name implies, is that the touching of

23   any of Ms. Carroll's sexual or intimate part or parts, if any occurred, must have been forcible.

7

1   Forcible touching includes squeezing, grabbing, pinching, rubbing, or other bodily contact that

2   involves the application of some level of pressure to the victim's sexual or intimate part or parts.

3   Any bodily contact involving the application of some level of pressure to another person's sexual or

4   intimate part qualifies as forcible touching.

5        [*People v. Hatton*, 26 N.Y.3d 364, 369 (2015); *People v. Guaman*, 22 N.Y.3d
6        678, 684 (2014).]

7            The <u>third element</u> of forcible touching is that the forcible touching, if any, was

8   intentional. Intent means conscious objective or purpose. Thus, a person intentionally forcibly

9   touches the sexual or other intimate parts of another person when that person's conscious objective

10  or purpose is to do so.

11           The <u>fourth element</u> of forcible touching requires that the forcible touching, if any, of

12  Ms. Carroll by Mr. Trump must have been for the purpose of degrading or abusing her *or* for the

13  purpose of gratifying Mr. Trump's sexual desire. I already have defined the term "sexual

14  gratification," and you will apply that instruction here in deciding whether Ms. Carroll has proved

15  Mr. Trump forcibly touched her for the purpose of gratifying his sexual desire. If you do not find that

16  the forcible touching of Ms. Carroll, if any, was for the purpose of gratifying Mr. Trump's sexual

17  desire, you must consider whether the forcible touching, if any, was for the purpose of degrading or

18  abusing Ms. Carroll.

19           The <u>fifth and final element</u> is that the forcible touching, if any, was committed without

20  consent. Forcible touching takes place without a person's consent when it results from any

21  circumstances in which a person does not expressly or impliedly acquiesce to the actor's conduct.

22        [N.Y. Criminal Jury Instr. & Model Colloquies § 130.52(1)].

23           If you find that Ms. Carroll has proved by a preponderance of the evidence all five of

8

1 these elements, you will answer "Yes" to Question 3. If you answer Question 3 "Yes," I instruct you

2 that Mr. Trump thus committed battery against Ms. Carroll. In that event, you will go on to Question

3 4. If you find Ms. Carroll has not proven one or more of the elements of forcible touching by a

4 preponderance of the evidence, you must answer "No" to Question 3. You will skip Questions 4 and

5 5 and proceed to Question 6, which begins the questions relating to Ms. Carroll's defamation claim.

6

7    **4. Questions 4 and 5: Damages**

8    Questions 4 and 5 deal with the subject of damages in relation to Ms. Carroll's battery

9 claim. My instructions to you on the law of damages should not be taken by you as a hint that you

10 should find for the plaintiff. That is for you to decide by answering the questions I have put to you

11 based on the evidence presented. But if you answer "Yes" to any of Questions 1, 2, or 3, you will

12 have determined that Ms. Carroll has prevailed on her claim of battery. In that case, it will be your

13 task to determine from the evidence a dollar amount, if any, that would justly and adequately

14 compensate Ms. Carroll for any physical injury, pain and suffering, and mental anguish, as well as

15 emotional distress, fear, personal humiliation, and indignation that she has suffered, or will suffer

16 in the future, as a result of Mr. Trump's alleged rape, sexual abuse, or forcible touching, as the case

17 may be.

18    You may award damages only for those injuries that you find Ms. Carroll has proven

19 by a preponderance of the evidence. Compensatory damages must not be based on speculation or

20 sympathy. They must be based on the evidence presented at trial and only on that evidence.

21     [*Lewis v. City of New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010)].

22

1                 **(a)**       **Question 4: Compensatory damages**

2                 If you answer "Yes" to Question 4 – in other words, if you conclude that Ms. Carroll

3 has proved by a preponderance of the evidence that she was injured as a result any of the three

4 theories of battery by Mr. Trump that I have explained already – she would  be entitled to a dollar

5 amount to compensate her adequately and fairly for any physical injury, pain and suffering, mental

6 anguish, emotional distress, fear, personal humiliation, and/or indignation she suffered by virtue of

7 Mr. Trump's alleged battery (that is his alleged rape, sexual abuse or forcible touching of Ms.

8 Carroll, as the case may be).  Damages may be awarded based on a plaintiff's subjective testimony

9 of pain, but the plaintiff's proof must satisfactorily establish that the injury is more than minimal.

10                            [*A.B. v. Staropoli*, No. 08-cv-4585 (LMS), 2013 WL 12441525, at \*6
11                            (S.D.N.Y. Dec. 11, 2013); N.Y. Pattern Jury Instr. § 3:3].

12 So if you answer Question 4 "Yes," you will determine the amount that would fairly and adequately

13 compensate her for the injuries she allegedly sustained as a result of Mr. Trump's battery and enter

14 that amount in the space provided in Question 4 of the verdict form.

15                            [*McWeeney v. Lambe*, 138 A.D.3d 796, 796 (2d Dept. 2016); *Poulos v. City*
16                            *of New York*, No. 14CV03023LTSBCM, 2018 WL 3750508, at \*9 (S.D.N.Y.
17                            July 13, 2018), *report and recommendation adopted*, No. 14 CV
18                            3023-LTS-BCM, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018)*; Brooker v.*
19                            *State*, 206 A.D.2d 712, 712 (3d Dept. 1994); *Wright v. Musanti*, 887 F.3d
20                            577, 583 (2d Cir. 2018).]
21
22
23                 On the other hand, if you answer "No" to Question 4 – that is,  if you determine that

24 Ms. Carroll has not proved by a preponderance of the evidence that she was injured as a result of Mr.

25 Trump's conduct, if any – you will write down in the blank space provided on your form "$1" in

26 nominal damages.

27                 Regardless of your answers to Question 4, you will go on to Question 5.

1           **(b)    Question 5: Punitive damages**

2           Question 5 deals with the subject of punitive damages.

3           In the event you find Mr. Trump liable to Ms. Carroll for battery – that is, for rape,

4   sexual abuse or forcible touching – you may, but you are not required to, award Ms. Carroll punitive

5   damages in addition to any compensatory damages that you may award.

6           You may award punitive damages if Ms. Carroll proved, by a preponderance of the

7   evidence, that Mr. Trump's conduct, if any, that caused Ms. Carroll's alleged injury was wanton and

8   reckless or done with a conscious disregard for the rights of Ms. Carroll. Punitive damages may be

9   awarded for conduct that reflects a high degree of immorality. The purpose of punitive damages is

10  not to compensate the plaintiff.  It is to punish the defendant for wanton and reckless acts or acts

11  done with a conscious disregard for the rights of the plaintiff, and thereby to discourage the defendant

12  and other people like him from acting in a similar way in the future.

13              [N.Y. Pattern Jury Instr. Civil § 2:278; *Action House, Inc. v. Koolik*, 54 F.3d
14              1009, 1013 (2d Cir. 1995); *Payne v. Jones*, 711 F.3d 85, 102 & n.16 (2d Cir.
15              2013); *Juniper Ent., Inc. v. Calderhead*, No. 07-CV-2413 ADS AKT, 2013
16              WL 120636, at *4 (E.D.N.Y. Jan. 9, 2013); *Ligo v. Gerould*, 244 A.D.2d 852
17              (4th Dept.1997)].
18

19          **(1)    Willful or wauton negligence, recklessness, or conscious**
20                  **disregard**
21
22          The first part of Question 5 asks you to determine whether Ms. Carroll has proved,

23  by a preponderance of the evidence, that Mr. Trump's conduct, if any, was done with willful or

24  wanton negligence, or recklessness, or a conscious disregard of the rights of Ms. Carroll, or was so

25  reckless as to amount to such conscious disregard. "Wantonly" means causelessly, without restraint,

26  and in reckless disregard of the rights of others. "Willfully" means with knowledge that the conduct

11

1   will result in a violation of a known legal duty. "Negligence" means the omission to perform a duty,

2   as well as the commission of an act which would violate a duty. You are instructed that Mr. Trump

3   had a duty to exercise reasonable care not to injure Ms. Carroll. A person acts "recklessly" when he

4   or she is aware of and consciously disregards a substantial and unjustifiable risk – a risk that is of

5   such a nature and degree that disregarding it constitutes a gross deviation from the standard of

6   conduct that a reasonable person would observe in the situation.

7       *[Chauca v. Abraham,* 30 N.Y.3d 325, 334 (2017); *Home Ins. Co. v. Am. Home*
8       *Prods. Corp.,* 75 N.Y.2d 196, 203-04 (1990).]

9

10                      **(2)      Pnnitive damages - amount**

11           If you answer "Yes" to the first part of Question 5 – in other words, that Ms. Carroll

12   has proved by a preponderance of the evidence that Mr. Trump's conduct, if any, was willfully or

13   wantonly negligent, reckless, or done with a conscious disregard of the rights of Ms. Carroll, or was

14   so reckless as to amount to such disregard – you will write down an amount, if any, that you find Mr.

15   Trump should pay to Ms. Carroll in punitive damages.

16           In arriving at your decision as to the amount of punitive damages, you should consider

17   the nature and reprehensibility of what Mr. Trump allegedly did. That would include:

18           •     the character of the alleged wrongdoing,

19           •     whether Mr. Trump's alleged conduct demonstrated an indifference to, or a

20                 reckless disregard of, the health, safety or rights of others,

21           •     whether Mr. Trump's alleged conduct was done with an improper motive or

22                 vindictiveness,

23           •     whether the alleged act or acts constituted outrageous or oppressive

12

1                             intentional misconduct,

2             •     how long the alleged conduct went on,

3             •     Mr. Trump's awareness of what harm the alleged conduct caused or was

4                             likely to cause,

5             •     Mr. Trump's financial condition and the impact your punitive damages award,

6                             if any, would have on Mr. Trump,

7             •     whether and how often Mr. Trump has committed similar acts of this type in

8                             the past and the actual and potential harm created by Mr. Trump's alleged

9                             conduct, including the harm to individuals or entities other than Ms. Carroll.

10             Importantly, with respect to the last consideration, although you may consider the

11 harm, if any, to individuals or entities other than Ms. Carroll in determining the extent to which Mr.

12 Trump's conduct was reprehensible, and to that extent relevant to whether to award punitive damages

13 and any amount thereof, you may not add a specific amount to your punitive damages award to

14 compensate persons other than Ms. Carroll or to punish Mr. Trump for any harm Mr. Trump caused,

15 if any, to others. The amount of punitive damages that you award must be both reasonable and

16 proportionate to the actual and potential harm suffered by Ms. Carroll, and to the compensatory

17 damages, if any, you awarded Ms. Carroll.

18                             [*Wright v. Musanti*, No. 14-cv-8976 (KBF), 2017 WL 253486, at *13
19                             (S.D.N.Y. Jan. 20, 2017), *aff'd*, 887 F.3d 577 (2d Cir. 2018); *Brink's Inc v.*
20                             *City of N.Y.*, 717 F.2d 700, 706-07 (2d Cir. 1983); N.Y. Pattern Jury Instr.
21                             Civil § 2:278].
22
23

13

**D.     Verdict Form Part Two: Defamation Questions**

The next set of questions in the verdict form, Questions 6 through 10, deal with Ms.

Carroll's defamation claim in relation to Mr. Trump's October 12, 2022 statement, specifically the

portions of that statement about Ms. Carroll. Under New York law, there are two categories of

defamation, one of which is called libel. Written statements constitute "libel." I am telling you this

because I might use the terms defamation and libel interchangeably in my instructions.

You have heard and seen Mr. Trump's October 12, 2022 statement at various points

in this trial. To remind you, that statement, which Ms. Carroll alleges was defamatory, is set forth

as follows:

> "This 'Ms. Bergdorf Goodman case' is a complete con job. . . . She
> completely made up a story that I met her at the doors of this crowded New York City
> Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie . . . . She
> has no idea what day, what week, what month, what year, or what decade this
> so-called 'event' supposedly took place. The reason she doesn't know is because it
> never happened, and she doesn't want to get caught up with details or facts that can
> be proven wrong. If you watch Anderson Cooper's interview with her, where she was
> promoting a really crummy book, you will see that it is a complete Scam. She
> changed her story from beginning to end, after the commercial break, to suit the
> purposes of CNN and Andy Cooper. . . . In the meantime, and for the record, E. Jean
> Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know,
> and would have no interest in knowing her if I ever had the chance."

There are several elements Ms. Carroll has the burden of proving for her to recover

1   damages for libel. I will instruct you on each on those elements as we go over the questions in the

2   verdict form.

3

4                    **5.**        **Question 6: Defamatory**

5                    Question 6 on the verdict form asks whether Ms. Carroll has proved by a

6   preponderance of the evidence that Mr. Trump's statement was defamatory. A statement is

7   defamatory if it tends to disparage a person in the way of his or her business, office, profession, or

8   trade. It also is defamatory if it tends to expose a person to hatred, contempt or aversion, or to induce

9   an evil or unsavory opinion of that person in the minds of a substantial number of the community,

10  even though it may impute no moral turpitude to the person.

11                                   [*Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985); *Conti v. Doe*, 535 F. Supp. 3d
12                                   257, 267 (S.D.N.Y. 2021)]
13
14                   Not every unpleasant or uncomplimentary statement is defamatory. A statement that

15  is merely unpleasant, offensive or embarrassing, or that hurts the plaintiff's feelings, is not

16  necessarily defamatory. Because language often has different meanings, the law imposes upon the

17  plaintiff the burden of proving that the October 12, 2022 statement about the plaintiff in fact would

18  have been understood by the average person as defamatory.

19                   If Ms. Carroll has proved, by a preponderance of the evidence, that Mr. Trump's

20  October 12, 2022 was defamatory, you will answer "Yes" to Question 6 and go on to Question 7.

21  If you answer it "No," your task ends there and you will return your verdict in the manner that I will

22  describe later.

23

1              **6.**     **Question 7: Falsity**

2              Question 7 asks whether Ms. Carroll has proved, by clear and convincing evidence,

3 that Mr. Trump's statement was false. I will explain later the clear and convincing standard of proof.

4 A statement is false if it is not substantially true. You will determine from the evidence presented

5 what the truth was and then compare that with Mr. Trump's October 12, 2022 statement, taking that

6 statement according to the ordinary meaning of its words.

7              As you probably already have guessed, whether Mr. Trump's statement is false or true

8 depends largely or entirely on whether you find that Mr. Trump raped, sexually abused, forcibly

9 touched or otherwise sexually attacked Ms. Carroll.

10              If Ms. Carroll has proved, by clear and convincing evidence, that Mr. Trump's

11 October 12, 2022 statement was false, you will answer "Yes" to Question **7** and go on to Question

12 8. If you answer it "No," your task ends there and you will return your verdict in the manner that I

13 will describe later.

14

15              **7.**     **Question 8: Actual malice**

16              Question 8 in substance asks you to determine whether Ms. Carroll has proved, by

17 clear and convincing evidence, that Mr. Trump made the statement with what the law calls actual

18 malice. Actual malice in this context means that when Mr. Trump made the statement, he knew it

19 was false or acted in reckless disregard of its truth or falsity. Reckless disregard means that when Mr.

20 Trump made the October 12, 2022 statement, he had serious doubts as to the truth of the statement

21 or made the statement with a high degree of awareness that it probably was false. So Question 8 asks

22 you to decide whether Ms. Carroll proved by clear and convincing evidence that Mr. Trump knew

1   that his October 12, 2022 statement was false, had serious doubts as to the truth of his statement, or

2   had a high degree of awareness that his statement probably was false.

3          If you so find, you will answer "Yes" to question 8 and go on to Questions 9 and 10,

4   which deal with damages for the defamation claim.  If you answer Question 8 "No," your task ends

5   there and you will return your verdict in the manner that I will describe later.

6

7          **8.    Question 9: Compensatory damages**

8          Questions 9 and 10 deal with damages for defamation. As I stated to you before when

9   I instructed you on damages for Ms. Carroll's battery claim, the fact that I instruct you on the law of

10  damages must not be taken as an indication that you should decide for Ms. Carroll. You will decide

11  on the evidence presented and the rules of law that I have given you whether Ms. Carroll is entitled

12  to recover from Mr. Trump for her defamation claim.

13         Question 9 deals with the subject of compensatory damages for the alleged October

14  12, 2022 defamation, and of course you will be answering it only if you have found Mr. Trump liable

15  for that alleged defamation.

16         In the event that Mr. Trump is liable for defamation, you will award an amount that,

17  in the exercise of your good judgment and common sense, you decide is fair and just compensation

18  for the injury to plaintiff's reputation and the humiliation and mental anguish in her public and

19  private life which you decide was caused by defendant's statement. In fixing that amount you should

20  consider the plaintiff's standing in the community, the nature of defendant's statement made about

21  the plaintiff, the extent to which the statement was circulated, the tendency of the statement to injure

22  a person such as the plaintiff, and all of the other facts and circumstances in the case. These damages

17

1    cannot be proved with mathematical accuracy. Fair compensation may vary, ranging from one dollar,

2    if you decide that there was no injury, to a substantial sum if you decide that the injury was

3    substantial.

4                        [N.Y. Pattern Jury Instr. Civil 3:29 (modified); *Ferri v. Berkowitz*, 561 F.
5                        App'x 64, 65 (2d Cir. 2014).]

6          In this case, I have divided the damages determination into parts.  The first part asks

7    you whether or not Ms. Carroll has proved by a preponderance of the evidence that she was injured

8    in any of the respects I just described.  That is the "Yes" or "No" question.  If the answer is "Yes,"

9    you first will fill in the amount you award for all defamation damages <u>excluding</u> the reputation repair

10   program that was discussed during Professor Humphreys's testimony.  Second, you will fill in the

11   amount, if any, that you award for the reputation repair program only.

12          On the other hand, if your answer to the first part of Question 9 is "No" – that is, if

13   you determine that Ms. Carroll has not proved by a preponderance of the evidence that she was

14   injured as a result of Mr. Trump's October 12, 2022 statement – you will write down in the blank

15   space provided on your form "$1" in nominal damages.

16          Regardless of your answer to Question 9, you will go on to Question 10.

17

18   **9.**      **Question 10: Punitive damages**

19          In addition to her claim for compensatory damages, which I covered while discussing

20   Question 9, Ms. Carroll asks also that you award punitive damages.  Similar to my earlier instructions

21   to you regarding punitive damages in relation to Ms. Carroll's battery claim, punitive damages in

22   relation to a libel claim may be awarded to punish a defendant who has acted maliciously and to

18

1    discourage others from doing the same. Now please bear in mind that I previously instructed you on

2    the meaning of the term "actual malice" in connection with Question 8.  With respect to this Question

3    10, however, I am using the word "malice" or "maliciously," not the phrase "actual malice."  And

4    the word "malice" or "maliciously" for this Question 10 means something different from the term

5    "actual malice." A statement is made maliciously for purposes of this Question 10 if it is made with

6    deliberate intent to injure or made out of hatred, ill will, or spite or made with willful, wanton or

7    reckless disregard of another's rights.

8                        [*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 174 (2d Cir. 2000).]

9                        If you answer "Yes" to that first part of Question 10 – that is, you find that Mr. Trump

10   acted maliciously, as I have just defined that term for you, in making the October 12, 2022 statement

11   about Ms. Carroll – you will write down an amount, if any, that you find Mr. Trump should pay to

12   Ms. Carroll in punitive damages. If you answer "No" to that first part of Question 10 – that is, you

13   find that Mr. Trump's statement was not made maliciously – you may not award punitive damages.

14   Ms. Carroll bears the burden of proving by a preponderance of the evidence that Mr. Trump acted

15   in accordance with this standard.

16                       [*Greenbaum v. Svenska Handelsbanken*, N.Y., 979 F. Supp. 973, 976
17                       (S.D.N.Y. 1997), *on reconsideration sub nom. Greenbaum v. Handelsbanken*,
18                       26 F. Supp. 2d 649 (S.D.N.Y. 1998); *Celle v. Filipino Rep. Enterprises Inc.*,
19                       209 F.3d 163, 184 (2d Cir. 2000)].
20
21                       In arriving at your decision as to the amount of punitive damages, you should

22   consider:

23                       •      The nature and reprehensibility of what Mr. Trump did. That would include

24                              the character of the wrongdoing and Mr. Trump's awareness of what harm the

1   conduct caused or was likely to cause. In considering the amount of punitive

2   damages to award, you should weigh this factor heavily.

3   •   The actual and potential harm created by Mr. Trump's conduct.

4   •   Mr. Trump's financial condition and the impact your punitive damages award

5   will have on the defendant.

6   The amount of punitive damages that you award, if any, must be both reasonable and

7   proportionate to the actual and potential harm suffered by the plaintiff, and to the compensatory

8   damages, if any, you awarded the plaintiff.

9   Once you have answered Question 10, if you answer that question, you will return

10  your verdict in the manner I will describe to you later.

11

12  **III.   TRIAL PROCESS**

13  I have described to you the law to be applied to the facts and put to you the questions

14  that require answers in order to resolve the claims in this case. Now I will instruct you about the trial

15  process, beginning with the burden of proof.

16

17  **A.   Burden of Proof**

18  Ms. Carroll bears the burden of proving her claim by a preponderance of the evidence

19  with respect to all questions except Questions 7 and 8, which I will address in a moment. As I told

20  you at the outset, proof beyond a reasonable doubt, which is the proper standard of proof in a

21  criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

22  To establish something by a preponderance of the evidence means to prove that the

1    contention of the party with the burden of proof on that question is more likely true than not true.

2    In other words, a "preponderance" of the evidence means that the party with the burden of proof on

3    a particular question has demonstrated that the odds of that party being right is more than 50-50, even

4    if only by a very tiny amount. It refers to the quality and persuasiveness of the evidence, not to the

5    number of witnesses or documents. In determining whether a claim has been proved by a

6    preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless

7    of which party may have called them, and all the relevant exhibits received in evidence, regardless

8    of which party may have produced them.

9            If, after considering all of the evidence, you find the evidence of both parties to be

10    exactly in balance – in other words, that the chances of the plaintiffs' contention or the defendants'

11    contention being correct with respect to any question I have put to you are exactly equal – then the

12    party with the burden of proof on that question has failed to sustain his or her burden and you must

13    find for the other party on that issue.  On the other hand, if the party with the burden of proof on a

14    particular question has persuaded you that its contention is more likely correct than the chances that

15    its opponent is right, even if only by a little, then you must find for the party with the burden of proof

16    on that particular question.

17            For Questions 7 and 8, Ms. Carroll bears the burden of proving her claim by clear and

18    convincing evidence.  If you conclude that Ms. Carroll has failed to establish her claim with respect

19    to the issues in Questions 7 (falsity) and 8 (actual malice) by clear and convincing evidence, you must

20    decide against her on those issues.  What does "clear and convincing evidence" mean?  Clear and

21    convincing evidence is a more exacting standard than proof by a preponderance of the evidence,

22    where you need believe only that a party's claim is more likely true than not true. On the other hand,

1   "clear and convincing" proof is not as high a standard as the burden of proof applied in criminal

2   cases, which is proof beyond a reasonable doubt. Clear and convincing proof leaves no substantial

3   doubt in your mind. It is proof that establishes in your mind, not only the proposition at issue is

4   probable, but also that it is highly probable. It is enough if Ms. Carroll establishes that Mr. Trump's

5   statement was false (Question 7) and that he made the statement with actual malice (Question 8)

6   beyond any "substantial doubt"; she does not have to dispel every "reasonable doubt."

7
8   　　　　　　　　　　　　　　[Sand, 4 Modern Federal Jury Instructions-Civil P 73.01 (2023); *Waran v.*
9   　　　　　　　　　　　　　　*Christie's Inc.*, 315 F. Supp. 3d 713, 718 (S.D.N.Y. 2018)].

10

11   **B.**　　　**Role of the Jury**

12   　　　　　　You are the sole and exclusive judges of the facts. I do not mean to indicate any

13   opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are

14   not any indication of my views of what your decision ought to be or as to who should prevail here.

15   　　　　　　You are expressly to understand that the Court expresses no opinion as to the verdict

16   you should render in this case.

17

18   **C.**　　　**Role of the Court**

19   　　　　　　Now, as I have told you, it is my duty to instruct you as to the law, and it is your duty

20   to accept these instructions of law and apply them to the facts as you determine them.

21   　　　　　　You are to draw no inferences from the fact that I may have asked questions of some

22   of the witnesses or made comments to counsel about the manner in which they made their

23   presentations. I did that to bring out the evidence more quickly, to save time, and to ensure the proper

1  conduct of the trial. I did not intend to suggest any view concerning the credibility of any witness or

2  as to which side should prevail here, and you must not take my comments or questions as doing so.

3  In addition, you must not draw any inferences or take into account any comments or remarks I made

4  to any of the lawyers in your deliberations. Nor should you consider the fact that I took notes and

5  from time to time made entries on my computer. Whatever I may have noted or any use by me of the

6  computer may have had nothing to do with what you are concerned with. You are to decide the case

7  fairly and impartially based solely on the evidence and these instructions.

8

9  **IV.     EVALUATION OF EVIDENCE**

10          **A.     What Is and Is Not Evidence**

11                  The evidence in this case is the sworn testimony of the witnesses, the exhibits

12  received in evidence, and the stipulations between counsel.

13                  What is not evidence, however, is questions, arguments, and objections by lawyers.

14  You are not to consider statements that I struck or told you to disregard.

15                  In deciding this case, I remind you that you are obliged to consider only the evidence

16  you have seen and heard in this courtroom. Anything that you may have learned elsewhere that has

17  a bearing on this case must be disregarded.

18

19          **B.     Evidence of Sexual Assault on Other Persons**

20                  Before moving on to instructions for your deliberations, I will discuss with you some

21  specific evidence that was presented during the trial.

22                  Evidence was received during the trial that plaintiff claims shows that Mr. Trump

1    sexually assaulted women other than Ms. Carroll. A sexual assault or an attempted sexual assault on

2    a person other than Ms. Carroll – in other words, on someone else – may be considered by you in

3    deciding whether Mr. Trump raped, sexually abused, or forcibly touched Ms. Carroll as she alleges

4    provided that Ms. Carroll has proved by a preponderance of the evidence that Mr. Trump sexually

5    assaulted or attempted to sexually assault the other person. To illustrate the point, if you find that Ms.

6    Carroll proved by a preponderance of the evidence that Mr. Trump sexually assaulted, or attempted

7    to sexually assault, Ms. Leeds, then you may consider that fact in deciding whether Ms. Carroll

8    proved also that Mr. Trump raped or sexually abused or forcibly touched Ms. Carroll – in other

9    words, in answering Questions 1, 2, and 3 on the verdict form. If you do not find that Ms. Carroll

10    proved by a preponderance of the evidence that Mr. Trump sexually assaulted, or attempted to

11    sexually assault, Ms. Leeds, then you may not consider the alleged incident involving Ms. Leeds in

12    deciding whether Ms. Carroll proved also that Mr. Trump raped or sexually abused or forcibly

13    touched Ms. Carroll – in other words, in answering Questions 1, 2, and 3 on the verdict form. That

14    same analysis would apply also to the testimony of Ms. Stoynoff.

15            Now, there are three points I need to make in relation to the evidence of alleged sexual

16    assaults or attempted sexual assaults on women other than Ms. Carroll.

17            First, the term "sexual assault," solely for purposes of considering whether Mr. Trump

18    sexually assaulted or attempted to sexually assault women other than Ms. Carroll, has a different

19    meaning than the other definitions of sex offenses throughout the rest of my instructions. In

20    determining whether Mr. Trump sexually assaulted or attempted to sexually assault Ms. Leeds or Ms.

21    Stoynoff, he must have brought himself into contact, or attempted to bring himself into contact,

22    without the other women's consent, with the sexual or reproductive organs of the other women – *i.e.*,

1 their genitalia -- and not merely other parts of the body.

2    Second, the term "attempt" in this context means that Mr. Trump (1) intended to make

3 contact with a woman's genitalia and (2) did some act that was a substantial step in an effort to make

4 such contact. A substantial step is something more than mere preparation or planning.

5    Third, a sexual assault on a person other than Ms. Carroll on its own would not be

6 sufficient to prove that the defendant committed the alleged rape, sexual abuse or forcible touching

7 of Ms. Carroll. As you consider this evidence, bear in mind at all times that Ms. Carroll has the

8 burden of proving that Mr. Trump raped, sexually abused, or forcibly touched her.

9    Those are my instructions concerning your consideration of evidence of alleged sexual

10 assaults or attempted sexual assaults on women other than Ms. Carroll. But just to be sure that I am

11 clear, the definition of "sexual assault" that I have just given you applies only to your determination

12 of whether to consider the evidence concerning alleged assaults or attempted assaults on those

13 women. It has no application to anything else in these instructions.

14    [Sand, 4 Modern Federal Jury Instructions-Civil P 74.03, Instruction 74-8.1
15    (2023); Sand, 1 Modern Federal Jury Instructions-Criminal P 10.01 (2022);
16    *United States v. McHorse*, 179 F.3d 889, 903 (10th Cir. 1999); 3 Fed. Jury
17    Prac. & Instr. § 104:41 (6th ed.)].
18
19
20 **C. Law & Order Exhibit and Testimony**

21    There is other specific evidence I now will address. During the cross-examination of

22 Ms. Carroll, you heard several questions directed to her concerning an email Ms. Carroll received

23 from another person in which the other person purported to describe an alleged episode of Law &

24 Order SVU and Ms. Carroll's response to that email. The email from the other person was not

25 offered for the truth of the statements made by that person. Hence, you may consider the email as

25

1    evidence that someone wrote to Ms. Carroll telling her that there was such an episode, but not as

2    evidence that there in fact was any such episode or what the episode may have contained.  You may

3    also consider Ms. Carroll's response to that email to the extent, if any, that you believe Ms. Carroll's

4    response bears on her state of mind or credibility.

5

6        **D.    Direct and Circumstantial Evidence**

7               Now that I have covered the instructions for certain specific evidence, I now will give

8    you instructions with respect to the evidence more generally.  There are two types of evidence which

9    you properly may use in reaching your verdict.

10              One type of evidence is direct evidence.  Direct evidence is when a witness testifies

11   about something he or she knows by virtue of his or her own senses – something he or she has seen,

12   felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.

13              Circumstantial evidence is evidence which tends to prove a disputed fact by proof of

14   other facts.  Circumstantial evidence is of no less value than direct evidence.  It is a general rule that

15   the law makes no distinction between direct evidence and circumstantial evidence but simply requires

16   that your verdict must be based on a preponderance of *all* the evidence presented.

17

18       **E.    Witness Credibility**

19              You have had the opportunity to observe the witnesses. It is up to you to decide how

20   believable each witness was in his or her testimony. You are the sole judges of the credibility of each

21   witness and of the importance of each witness's testimony. In deciding the weight to give to the

22   testimony of a witness, you should use all the tests for truthfulness that you would use in determining

26

1    matters of importance to you in your everyday life.

2              Your decision whether or not to believe a witness may depend on how that witness

3    impressed you. You watched each witness testify. Everything a witness said or did on the witness

4    stand or in depositions you saw counts in your determination.  Did the witness appear to be frank,

5    forthright, and candid?  Or did the witness answer questions on direct examination in a responsive

6    and forthcoming manner but answer questions on cross-examination evasively or unresponsively?

7    You should consider the opportunity the witness had to see, hear, and know the things about which

8    he or she testified, the accuracy of the witness's memory, the reasonableness and probability of the

9    witness's testimony and its consistency or lack of consistency and its corroboration or lack of

10   corroboration with other credible testimony.

11             In evaluating a witness's credibility, always remember that you should use your

12   common sense, your good judgment, and your own life experience.  Further, you are to perform the

13   duty of evaluating witnesses without bias or prejudice as to any party, and you are to perform that

14   duty in an attitude of complete fairness and impartiality.

15             Finally, should you, in the course of your deliberations, conclude that any witness has

16   intentionally testified falsely to a material fact during the trial, you are at liberty to disregard all of

17   his or her testimony on the principle that one who testifies falsely as to one material fact may also

18   testify falsely to other facts. But credibility is not necessarily an all or nothing proposition.  You may

19   accept so much of any witness's testimony as you believe to be true and accurate and reject only such

20   part, if any, that you conclude is false or inaccurate.

21

22

1    F.    **Expert Witnesses**

2        You also have heard over the course of this trial from expert witnesses, specifically

3    Dr. Lebowitz and Professor Humphreys. An expert witness is a person who, by education and

4    experience, has become expert in some art, science, profession, or calling. Under the rules of

5    evidence, expert witnesses may state their opinions as to matters in which they profess to be an expert

6    and may also state the reasons for their opinions. The purpose of expert testimony is to assist you

7    in understanding the evidence and in reaching an independent decision.

8        In weighing an expert's testimony, you may consider the expert's qualifications, his

9    or her opinions, the bases for the expert's opinions, and all of the other considerations I described

10   to you above in evaluating a witness's credibility. You may give the expert testimony whatever

11   weight, if any, you find it deserves in light of all the evidence in this case. You should not accept the

12   expert witness's testimony just because he or she is an expert. Even with an expert witness, you

13   should use your common sense, your good judgment, and your own life experience.

14       You may give each expert's testimony as much weight, if any, you think it deserves

15   in light of all the evidence. You also may reject the testimony of any expert witness in whole or in

16   part if you conclude the reasons given in support of an opinion are unsound or if you for other

17   reasons do not believe the expert witness.

18

19   **V.    DELIBERATION OF THE JURY**

20       A.    **Duty to Deliberate / Unanimous Verdict**

21       You now will retire to decide the issues submitted for your consideration. It is your

22   duty as jurors to consult with one another and to deliberate with the goal of reaching an agreement.

28

1    Each of you must decide for yourself the answers to the questions I have posed, but you should do

2    so only after considering the case with your fellow jurors, and you should not hesitate to change an

3    opinion when convinced that it is mistaken.  Your answers to each question must be unanimous, but

4    you are not required to give up your honest convictions concerning the effect or weight of the

5    evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.

6    Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without

7    regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience

8    appears to be in accordance with the truth.

9

10        **B.    Notes**

11            Let me remind you, members of the jury, that any notes you may have taken during

12   the trial are for your personal use only.  You each may consult your own notes during deliberations,

13   but any notes you may have taken are not to be relied upon during deliberations as a substitute for

14   your collective memory.  Your notes should be used as memory aids but should not be given

15   precedence over your independent recollection of the evidence.  If you did not take notes, you should

16   rely on your own independent recollection of the proceedings and you should not be influenced by

17   the notes of other jurors.  I emphasize that notes are not entitled to any greater weight than the

18   recollection or impression of each juror as to what the testimony may have been.

19            Again, each of you must make your own decision about the proper answer to each

20   question based on your consideration of the evidence and your discussions with your fellow jurors.

21   No juror should surrender his or her conscientious beliefs solely for the purpose of returning a

22   unanimous verdict.

1   **C.    Citations**

2          During your deliberations you will have access to a printed copy of the instructions

3   I am now reading to you.  You will see that the printed copy of the instructions contains a number

4   of legal citations, which appear in brackets.  Those citations were included to aid the lawyers and me

5   and you are to ignore them in your deliberations.  I have instructed you on the principles of law

6   applicable to this case, and you must apply them in the manner that I have explained them to you.

7   I will describe in a moment what you should do if you require a further explanation of any of my

8   instructions.

9

10  **D.    All Jurors Required for Deliberation**

11         You are not to discuss the case until all jurors are present.  Four or five jurors together

12  is only a gathering of individuals.  Only when all jurors are present do you constitute a jury, and only

13  then may you deliberate.

14

15  **E.    Selection of Foreperson**

16         When you retire, you should elect one member of the jury as your foreperson.  That

17  person will preside over the deliberations and speak for you here in open court.

18         The foreperson will send out any notes and, when the jury has reached a verdict, he

19  or she will notify the Officer that the jury has reached a verdict.

20

21  **F.    Verdict Form**

22         As you have seen, the verdict form that each of you has consists of questions

1    concerning the important issues in this case.  As I have explained, your answer to one question will

2    determine whether you answer a subsequent question, and the verdict form indicates how you should

3    proceed through the form.  It is important to follow these instructions, because you should answer

4    every question except where the verdict form indicates otherwise.  Further, please do not add

5    anything that is not called for by the verdict form.

6

7        **G.        Return of Verdict**

8                    After a unanimous decision has been reached, you will record your answers on one

9    copy of the verdict form.  The foreperson will fill in the form. Then each juror will write his or her

10   juror number -- no names, please! -- at the bottom of it and advise the Officer that a verdict has been

11   reached.  Do not give the verdict form to the Officer.  The foreperson should place it in an envelope

12   and bring it with him or her when you return to the courtroom.

13                   I stress that each of you should be in agreement with the verdict which is announced

14   in court.  Once your verdict is announced by the foreperson in open court and/or officially recorded,

15   it ordinarily cannot be revoked.

16

17       **H.        Media**

18                   As you know, this case has attracted a great deal of media attention.  Until a verdict

19   is released and you are discharged, you must insulate yourself from all information about this case,

20   except what has come to you in this courtroom.  That means no reading, watching, or listening to

21   media coverage or commentary about the case or comments from your friends or loved ones.  You

22   are sealed from other information.  And if anything happens that results in some exposure to some

31

1  outside source, you are obligated to report it to the Court.

2

3  **I.    Communications Between Court and Jury**

4  If during your deliberations you want me to discuss further some of the instructions

5  on the law that I have given you, the foreperson should send out a note through the Officer in a sealed

6  envelope asking for anything you may wish to hear again.

7  If you wish to have testimony read to you, it can be done, but I ask you to do so only

8  when you have exhausted your collective recollection and are certain that you need it.  If you do need

9  to have testimony read, then I ask you to state precisely in your note what you want.

10  We will be sending the exhibits into the jury room with you.

11  If you communicate with the Court before reaching a verdict, you must never indicate

12  in a note to the Court how you are divided.

13

14  **J.    Juror Oath**

15  You are reminded that you took an oath to render judgment impartially and fairly,

16  without prejudice or sympathy and without fear, solely upon the evidence in the case and the

17  applicable law.  And I want to elaborate for a moment upon your obligation under that oath to render

18  judgment "solely upon the evidence in the case and the applicable law."

19  You, as jurors, are the judges of the facts. I remind you that nothing I have said or

20  done should be taken by you as indicating any view on my part as to what your conclusion should

21  be about the facts – about what actually happened. But in determining what actually happened – that

22  is, in reaching your decision as to the facts – it is your sworn duty to follow all of the rules of law as

32

1    I have explained them to you. You have no right to disregard or to question the wisdom or

2    correctness of any rule I have stated to you. You must not substitute or follow your own notion or

3    opinion as to what the law is or ought to be. It is your duty to apply the law as I have explained it to

4    you, regardless of the consequences. And that applies to all of the law I have given you, including

5    the fact that all or most of the issues of fact that I have put to you must be decided according to the

6    preponderance of the evidence and the meaning of preponderance of the evidence.

7             I know that you will do your duty under your oath and render a just and true verdict

8    according to the facts as you find them and the law that I have given you.

9                                     [Tenth Circuit Criminal Pattern Jury Instructions § 1.04 (2021) (modified)].

10

11   **K.**     **Exceptions**

12             Members of the jury, I ask you to remain seated for a moment while I confer with the

13   attorneys.