UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. JEAN CARROLL,

    *Plaintiff*,

v.

DONALD J. TRUMP, in his personal capacity,

    *Defendant*.

No. 20 Civ. 7311 (LAK)

# PLAINTIFF E. JEAN CARROLL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION TO STAY

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ......................................................................................................................................... 2

    I.    TRUMP IS NOT ENTITLED TO A STAY PENDING APPEAL ................................. 2

        A.    Trump Is Unlikely to Succeed on the Merits of His Appeal ....................... 2

        B.    Trump Will Not Suffer Irreparable Injury Absent a Stay ............................ 4

        C.    A Stay Will Cause Carroll to Suffer Substantial Injury .............................. 8

        D.    The Public Interest Weighs Against a Stay ............................................... 10

    II.   THIS COURT HAS NOT BEEN DIVESTED OF JURISDICTION .............................. 11

CONCLUSION .................................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                           **Page(s)**

*Barretta v. Wells Fargo Bank, N.A.*,
   693 F. App'x 26 (2d Cir. 2017) .................................................................................... 11

*Carroll v. Trump*,
   590 F. Supp. 3d 575 (S.D.N.Y. 2022) ............................................................................. 7

*Carroll v. Trump*,
   635 F. Supp. 3d 229 (S.D.N.Y. 2022) ....................................................... 2, 5, 8, 9, 12

*Carroll v. Trump*,
   No. 20 Civ. 7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) .............................. 3, 4, 6, 9, 11

*Carroll v. Trump*,
   No. 22 Civ. 10016, 2023 WL 4612082 (S.D.N.Y. July 19, 2023) ............................................ 6

*Clinton v. Jones*,
   520 U.S. 681, 117 S. Ct. 1636 (1997) .............................................................................. 4

*Cohen v. United States*,
   No. 21 Civ. 10774, 2022 WL 16925984 (S.D.N.Y. Nov. 14, 2022) ......................................... 3

*District of Columbia v. Trump*,
   No. 8:17 Civ. 1596 (D. Md.) .............................................................................................. 4

*District of Columbia v. Trump*,
   959 F.3d 126 (4th Cir. 2020) ............................................................................................. 3

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56, 103 S. Ct. 400 (1982) .......................................................................... 11, 12

*Hirschfeld v. Bd. of Elections*,
   984 F.2d 35 (2d Cir. 1993) ................................................................................................ 7

*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007) ................................................................................ 2, 11, 12, 12

*K&D, LLC v. Trump Old Post Off., LLC*,
   No. 17 Civ. 731, 2018 WL 6173449 (D.D.C. Nov. 26, 2018) ................................................. 4

*Leroy v. Hume*,
   563 F. Supp. 3d 22 (E.D.N.Y. 2021) ................................................................................. 11

*Loria v. Gorman*,
    306 F.3d 1271 (2d Cir. 2002) .................................................................................................. 12

*New York v. United States Dep't of Com.*,
    339 F. Supp. 3d 144 (S.D.N.Y. 2018) ........................................................................................ 7

*Nken v. Holder*,
    556 U.S. 418, 129 S. Ct. 1749 (2009) ....................................................................................... 2

*Owens v. Taliban*,
    No. 22 Civ. 1949, 2023 WL 2368981 (S.D.N.Y. Mar. 6, 2023) ................................................ 2

*People v. Trump*,
    Ind. No. 71543-23 (N.Y. Sup. Ct., N.Y. Cnty. 2023) ............................................................... 9

*Plummer v. Quinn*,
    No. 07 Civ. 6154, 2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) .............................................. 12

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806, 65 S. Ct. 993 (1945) ........................................................................................... 5

*S.E.C. v. Daspin*,
    557 F. App'x 46 (2d Cir. 2014) ................................................................................................. 8

*S.E.C. v. WorldCom, Inc.*,
    452 F. Supp. 2d 531 (S.D.N.Y. 2006) ....................................................................................... 4

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) ........................................................................................................ 8

*Trump v. Vance*,
    140 S. Ct. 2412 (2020) .............................................................................................................. 4

*Trump v. Vance*,
    481 F. Supp. 3d 161 (S.D.N.Y. 2020) ....................................................................................... 2

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
    No. 16 Civ. 8507, 2020 WL 359907 (S.D.N.Y. Jan. 21, 2020) ............................................ 8, 9

*United States v. Rodgers*,
    101 F.3d 247 (2d Cir. 1996) .................................................................................................... 12

*United States v. Trump*,
    No. 9:23 Cr. 80101 (S.D. Fl.) .................................................................................................... 9

*V.S. v. Muhammad*,
   No. 07 Civ. 213, 2008 WL 5068877 (E.D.N.Y. Nov. 24, 2008) ........................................... 12

**OTHER AUTHORITIES**

Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 Harv. L. Rev. 701 (1995) ............................................................................. 3

Erica Orden, *Trump Now Faces Four Trials over Six-Month Span During Critical Phase of 2024 Campaign*, Politico (June 15, 2023) .................................................................................. 9

Hugo Lowell & Chris Stein, *Trump's Mar-a-Lago Classified Documents Trial to Begin in May 2024*, Guardian (July 21, 2023) ....................................................................................... 9

*Important Dates in the 2024 Presidential Race*, Ballotpedia .......................................................... 9

*Keeping Track of the Trump Investigations*, N.Y. Times (last updated Aug. 1, 2023) ................... 9

## PRELIMINARY STATEMENT

Defendant Donald J. Trump comes nowhere close to justifying his request for a stay of proceedings pending the resolution of his latest interlocutory appeal. Most fundamentally, he fails to show any likelihood of success on appeal. In asserting otherwise, Trump neither cites nor quotes (nor otherwise addresses) the Court's thorough opinion explaining that his immunity defense was both waivable and waived. Nor does Trump challenge the Court's alternative holding that his immunity defense fails on the merits. Trump's decision not to engage with this Court's analysis, or to address the underlying futility of his position, is reason enough to deny his motion.

But there is more. With respect to irreparable injury, Trump's conduct defeats any claim that it would be inequitable for him to see this case through to its end. Trump affirmatively waived his immunity in pursuit of strategic advantage in state court; he zealously litigated in federal court for years without mentioning this issue; during that time, he attempted to lodge a counterclaim against Carroll and borrowed this Court's power to undertake intrusive discovery; even after he first sought to raise an absolute immunity argument, Trump tried to lodge a second counterclaim; and when the Court finally rejected his position, Trump did not immediately file an appeal and seek a stay, but instead waited *a full month* for overtly strategic and self-serving reasons. This conduct eviscerates Trump's insistence that continued litigation would work irreparable harm.

That leaves only two remaining considerations, both of which further undermine Trump's position. *First*, granting a stay would substantially harm Carroll, who has waited years for justice in this case, is of an advanced age, and has endured continued outrageous attacks by Trump even since the *Carroll II* verdict. *Second*, the public maintains a powerful interest in finality, which would be poorly served by the effectively indefinite delay that would result from granting Trump's motion. For these reasons, Trump's motion for a stay of proceedings should be denied.

1

**ARGUMENT**

I.     **TRUMP IS NOT ENTITLED TO A STAY PENDING APPEAL**

"In general, the question whether to stay proceedings is addressed to the trial court's discretion." *Carroll v. Trump*, 635 F. Supp. 3d 229, 235 (S.D.N.Y. 2022). In exercising that discretion, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("*In re WTC*") (cleaned up). Courts balance the stay factors so that "the degree to which a factor must be present varies with the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.'" *Id.* (citation omitted). A stay is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Owens v. Taliban*, No. 22 Civ. 1949, 2023 WL 2368981, at *1 (S.D.N.Y. Mar. 6, 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 427, 129 S. Ct. 1749, 1757 (2009)). Here, every factor cuts against Trump's motion.

   A.     **Trump Is Unlikely to Succeed on the Merits of His Appeal**

First and foremost, Trump's motion should be denied because he has not established "the requisite strong likelihood of success." *Carroll*, 635 F. Supp. 3d at 235. Trump works hard to lower the bar for himself in describing this obligation, *see* Trump Br. 3, but the bottom line is that he utterly fails to show any error in the Court's decision denying his summary judgment motion. *See Nken*, 556 U.S. at 434, 129 S. Ct. at 1761 (requiring more than a "mere possibility" of success).[1]

---

[1] In citing *Trump v. Vance*, 481 F. Supp. 3d 161 (S.D.N.Y. 2020), Trump selectively lifts some language without including an important caveat. Read properly, *Vance* does not hold that a movant need only show "at least 'a serious question going to the merits' pending appeal." Trump Br. 3 (quoting *Vance*, 481 F. Supp. 3d at 164). Rather, *Vance* explained that a "movant must show '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *Vance*, 481 F. Supp. 3d at 164 (citation

2

Indeed, Trump stumbles at the outset by failing to address this Court's reasoned holding that his assertion of absolute presidential immunity is meritless. *See Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *9–*11 (S.D.N.Y. July 5, 2023). Although the Court addressed this point while denying leave to amend based on futility, its reasoning constitutes an independent and adequate basis for the denial of Trump's summary judgment motion. Yet Trump says nothing about this holding in his motion for a stay—and has thus waived and forfeited any such arguments. *See* Trump Br. 5–7. Trump cannot show a strong likelihood of success on the merits of his interlocutory appeal when he offers no response at all to the Court's unequivocal holding that his claim of absolute presidential immunity fails as a matter of law.

Trump fares no better on the waiver issue. Rather than engage with the Court's analysis, he asserts in broad strokes that he was right, and the Court was wrong. He does not include a single quotation of (or citation to) the Court's opinion, and he makes no effort to state with specificity where and how he believes the Court erred. Nor does he address any of the other authorities that disagree with his position: he does not explain what Judge Niemeyer got wrong in describing absolute presidential immunity as non-jurisdictional,[2] what Judge Liman missed in reaching the merits of a claim without first considering such an immunity defense,[3] why Akhil Amar and Neal Katyal were mistaken in their study of the issue,[4] or how this supposedly obvious theory of

---

omitted). Here, given the numerous flaws in Trump's merits position and the other stay factors that decidedly favor Carroll (as discussed below), Trump's motion fails under either version of the legal standard as articulated in *Vance*.

[2] *See District of Columbia v. Trump*, 959 F.3d 126, 141 (4th Cir. 2020) (en banc) (Niemeyer, J., dissenting).

[3] *Cohen v. United States*, No. 21 Civ. 10774, 2022 WL 16925984, at *10 n.6 (S.D.N.Y. Nov. 14, 2022).

[4] Akhil Reed Amar & Neal Kumar Katyal, *Executive Privileges and Immunities: The Nixon and Clinton Cases*, 108 HARV. L. REV. 701, 726 n.53 (1995).

jurisdiction escaped mention in the last two on-point Supreme Court decisions.[5] Trump also makes the choice to ignore cases in which he personally proceeded with the opposite legal position.[6]

More fundamentally, Trump offers no direct rejoinder to the Court's reading of precedent. In a stay posture, that choice is all but fatal. It also contrasts starkly with the Court's own careful study of Trump's arguments—a study that led the Court to describe Trump's position as deviating from "well-settled norms," *Carroll*, 2023 WL 4393067, at *5, as "present[ing] its own separation of powers concerns," *id.* at *6, as advancing a premise that "lacks logical coherence," *id.* at *7, and as running "afoul of many of the same principles on which the immunity is based," *id.* at *8. At the risk of stating the obvious, a position beset by so many (and such grave) flaws is unlikely to prevail on appeal, especially where its advocate declines to respond to judicial analysis.

For these reasons—and for those set forth in Carroll's summary judgment stage briefs—Trump has not established a strong likelihood of success on appeal. No appellate court has accepted the position he now advances; numerous respected authorities have expressly rejected it; and this Court's constitutional analysis correctly stated and applied the governing legal principles.

B.  **Trump Will Not Suffer Irreparable Injury Absent a Stay**

Trump's motion should also be denied on the independent ground that any injury ensuing from the denial of a stay will be self-inflicted and the result of his own strategic gamesmanship. *See, e.g.*, *S.E.C. v. WorldCom, Inc.*, 452 F. Supp. 2d 531, 532 (S.D.N.Y. 2006) (denying stay motion that "fail[ed] to comport with the most elementary principles of equity").

Where absolute presidential immunity applies, it is virtually always invoked at the very outset of a case. Such diligent invocation is necessary for it to serve its core purpose as a shield

---

[5] *Clinton v. Jones*, 520 U.S. 681, 117 S. Ct. 1636 (1997); *Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020).

[6] *K&D, LLC v. Trump Old Post Off., LLC*, No. 17 Civ. 731, 2018 WL 6173449, at *3 n.2 (D.D.C. Nov. 26, 2018) (Leon, J.); *District of Columbia v. Trump*, No. 8:17 Civ. 1596 (D. Md.), at ECF 112-1 and 118.

from litigation and not just a defense to liability. *See* Trump Br. 7–8. Here, however, Trump's conduct of the case has made a self-serving mockery of that purpose, undermining his last-minute assertion that proceeding to trial (which is all that remains) would inequitably or intolerably burden him. *See, e.g.*, *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S. Ct. 993, 997 (1945) ("[H]e who comes into equity must come with clean hands.").

After this case was first filed in state court, Trump waived his immunity from suit as part of a strategic effort to bolster his request for a temporary stay of proceedings; to that end, he stated that "no one is seeking to escape accountability here" because Carroll was "free to pursue this action when [he was] no longer in office." NYSCEF No. 103 at 3 (cleaned up). When that effort failed, Trump pressured the Department of Justice to remove this case to federal court under the Westfall Act. *See* ECF 1. After Your Honor denied the ensuing motion to substitute, *see* ECF 32, Trump and the Department of Justice filed notices of appeal, *see* ECF 45, 46. But then, during the pendency of those interlocutory appeals, Trump moved to substantially expand the scope of this action—and to gain a tactical advantage—by adding an anti-SLAPP counterclaim against Carroll. *See* ECF 59. Following the denial of that motion, *see* ECF 73, Trump proposed (and Carroll agreed) to undertake discovery, *see* ECF 75. Trump thereupon borrowed this Court's power to obtain over 30,000 pages of records from Carroll, to issue a volley of nonparty subpoenas, and to depose Carroll and 5 additional witnesses. Meanwhile, Trump himself produced a pittance of documents and stonewalled Carroll's requests. Although he sat for a deposition, it was only after a last-minute motion to stay pending appeal was denied. ECF 96. In denying that motion, this Court emphasized Trump's weak showing of irreparable injury, noting that his odds of success on appeal "cannot be said to be likely," "discovery in this case has virtually concluded," and Trump's "conduct so far" had undercut his position. *Carroll*, 635 F. Supp. 3d at 236.

5

Since then, Trump has only further eviscerated any credible assertion of irreparable injury. In December 2022, he sought summary judgment based partly on presidential absolute immunity, despite never mentioning this issue in over three years of litigation and waiving it in state court. ECF 107, 109. While that motion was pending, Trump conferred with Carroll and the parties submitted a joint pretrial order, which the Court adopted. ECF 128, 129. Trump also litigated numerous motions *in limine*, many of which the Court resolved. ECF 130–145.[7] The parties then submitted a joint motion to consolidate trial in this matter with the *Carroll II* trial. ECF 147, 148 (denying motion). After the trial in *Carroll II*, Trump opposed Carroll's motion to amend her complaint and sought to bolster his position by proposing to lodge a counterclaim against Carroll. ECF 164, 171. Thus, even after first seeking to raise his immunity defense, Trump actively litigated the case and once again attempted to allege an entirely new claim against Carroll.

On June 29, 2023, the Court denied Trump's summary judgment motion. *Carroll*, 2023 WL 4393067, at *20; ECF 172. At that point, Trump could have immediately filed a notice of interlocutory appeal and sought a stay. Instead, he waited 28 days. Four full weeks. This delay was overtly strategic: Trump apparently hoped that the Justice Department would issue a new Westfall Act certification and was willing to wait on that potential benefit. ECF 177 (declining new certification on July 11, 2023). He perhaps also hoped that his newly asserted counterclaim would improve his position—a hope that was dashed eight days later, when the Court denied his motion for a new trial in *Carroll II* in an opinion that rejected the core premise of his counterclaim in *Carroll I* (namely, that the *Carroll II* jury had found that he did not rape Carroll). *See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 4612082 (S.D.N.Y. July 19, 2023). Finally, in the days that

---

[7] If cross-applied to this proceeding, as they should be, the Court's decisions on the motions *in limine* submitted in *Carroll II* would resolve the bulk of the outstanding *Carroll I* evidentiary issues (though of course the parties may wish to submit additional motions *in limine* in advance of the trial scheduled for January 2024).

6

immediately preceded Trump's decision to seek a stay, it became much clearer to him that he faced substantial legal risk in *Carroll I*: the Court issued an order on July 19, 2023 directing the parties to address whether the *Carroll II* verdict precluded any issues in *Carroll I*, ECF 178; and on July 25, 2023, Carroll filed a letter setting forth her view that summary judgment would be warranted on all merits elements of her claim, leaving only a damages trial in *Carroll I*, ECF 182. Trump then filed his stay motion the very next day—on July 26, 2023—after these intervening procedural and substantive developments had weakened rather than strengthened his litigation position.

Putting it together: Trump could have raised absolute presidential immunity when this suit was filed in November 2019. Instead, he affirmatively and strategically waived it in state court. He then zealously litigated the case in federal court—including through aggressive party and non-party discovery, and an attempted counterclaim against Carroll—until December 2022. At that point, having never mentioned presidential absolute immunity as a defense, he sought to raise it on a novel theory of non-waivability that was inconsistent with his litigating position in other recent cases. While this summary judgment motion was pending, Trump pressed ahead and attempted to lodge yet another counterclaim against Carroll. When the Court ultimately denied his summary judgment motion, Trump did not seek immediate equitable relief. He instead waited a full month, during which time he apparently hoped to obtain multiple strategic advantages in the litigation. Only after he came up short did Trump finally submit a motion to stay.

This behavior reflects Trump's pattern of bad-faith, dilatory conduct. *See Carroll v. Trump*, 590 F. Supp. 3d 575, 587 (S.D.N.Y. 2022). It also takes the wind out of his sails on the issue of irreparable injury. *See, e.g.*, *New York v. United States Dep't of Com.*, 339 F. Supp. 3d 144, 148 (S.D.N.Y. 2018) (holding that "'inexcusable delay in filing' a motion to stay 'severely undermines the … argument that absent a stay irreparable harm would result'" (quoting *Hirschfeld v. Bd. of*

7

*Elections*, 984 F.2d 35, 39 (2d Cir. 1993)); *see also Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."). Indeed, as a result of Trump's own litigation strategy, many of the irreparable harms that he warns against are already in the rear-view mirror. *See* Trump Br. 7–9 (discussing discovery).

Looking ahead, little remains. Discovery is complete. A joint pretrial order has been adopted. ECF 129. The Court has resolved Trump's counterclaim and ruled on amendments to the pleadings. ECF 169, 200. The Court will soon be set to resolve the parties' motions concerning preclusion—a determination that could significantly narrow the case. *See* ECF 189, 193. This leaves only motions *in limine*, many of which have already been decided, and the trial itself, which should be much shorter and more straightforward than the two-week jury trial in *Carroll II*.

In these unusual circumstances, Trump's complaint about irreparable injury rings hollow and hypocritical. It certainly comes nowhere close to justifying the entry of a stay. Indeed, even if Trump has made out some showing of harm based on the prospect of standing trial, that showing fails to carry his motion—particularly given the weakness of his merits position and his own unclean hands in seeking to raise these arguments. *See Carroll*, 635 F. Supp. 3d at 236; *see also, e.g.*, *S.E.C. v. Daspin*, 557 F. App'x 46, 49 (2d Cir. 2014); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 16 Civ. 8507, 2020 WL 359907, at *4, *6 (S.D.N.Y. Jan. 21, 2020) (denying stay pending appeal despite concluding that movant "will be irreparably harmed absent a stay").

**C.    A Stay Will Cause Carroll to Suffer Substantial Injury**

Granting a stay would not only unjustly reward Trump's gamesmanship, but it would also inflict substantial harm on Carroll, who "has litigated this case for more than three and a half years[,] completed discovery, engaged in extensive motion practice, resisted the government's attempt to defeat her claim before [this] Court, the Second Circuit and the D.C. Court of Appeals,

8

and devoted untold hours and resources to pursuing her claim." *Carroll*, 2023 WL 4393067, at *12. In contrast, Trump has waged a war of attrition designed to impede these proceedings. *Id.* at *12 & n.61. Requiring Carroll to endure further delay—possibly years of it—would thus be deeply unfair. As the Court has already found, Trump "should not be permitted to run the clock out on plaintiff's attempt to gain a remedy for what allegedly was a serious wrong," especially given that "both plaintiff and defendant … already are of advanced age." *Carroll*, 635 F. Supp. 3d at 237.[8]

The burdens of delay are especially concerning here because a stay could cause a spiral of further delays. Trump is running for president and, if he prevails in the Republican primary, he may well seek to stay any trials scheduled for mid-to-late 2024. *See Important Dates in the 2024 Presidential Race*, Ballotpedia. In addition, Trump has four other trials scheduled between now and May 2024. *See* Hugo Lowell & Chris Stein, *Trump's Mar-a-Lago Classified Documents Trial to Begin in May 2024*, Guardian (July 21, 2023); Erica Orden, *Trump Now Faces Four Trials over Six-Month Span During Critical Phase of 2024 Campaign*, Politico (June 15, 2023). And Trump currently faces three criminal indictments, with the reported possibility of at least one more. *United States v. Trump*, 23 Cr. 257 (D.D.C.); *United States v. Trump*, No. 9:23 Cr. 80101 (S.D. Fl.); *People v. Trump*, Ind. No. 71543-23 (N.Y. Sup. Ct., N.Y. Cnty. 2023); *Keeping Track of the Trump Investigations*, N.Y. Times (last updated Aug. 1, 2023). If trial in this case is stayed until after the resolution of Trump's most recent interlocutory appeal, a rescheduled trial may have to compete with the end of Trump's presidential campaign, any number of other civil and criminal trials, the possibility of a prison sentence, and/or conceivably the start of a second Trump presidency.

---

[8] Trump asserts that the burden is on Carroll to demonstrate "significant and particularized hardship to outweigh the irreparable harm defendant[] will suffer." Trump Br. 11. He is mistaken. The "moving party bears the heavy burden of establishing that" the stay factors support his position. *U.S. Bank Nat'l Ass'n*, 2020 WL 359907, at *1.

The current trial date avoids those pitfalls; a stay inevitably triggers them. Accordingly, granting a stay would substantially burden Carroll, who filed this case nearly four years ago.

This leads to one final point. Trump suggests that the jury verdict in *Carroll II* mitigates any harm of delay. Trump Br. 11. Not so. Carroll endured distinct, significant harm from Trump's June 2019 statements—which were issued not by a former officeholder on social media years after Carroll spoke up, but rather by a sitting President at the White House in virtually immediate response to her revelation that he had sexually assaulted her. As the record establishes, Carroll's damages from the June 2019 statement are substantial in their own right. She has an independent right to remedy for that harm. A jury verdict affirming this point is essential to make her whole. Such a verdict would also serve two separate, vital purposes in remedying Carroll's injuries: (1) confirming that Trump does not stand above the law and may be held accountable for abusing his bully pulpit to seek to punish and humiliate her; and (2) affording an opportunity for Carroll to obtain punitive damages against Trump based upon conduct including (though not limited to) the many outrageous public attacks he has leveled against her since the *Carroll II* verdict.[9] It is crystal clear that the compensatory and punitive damages awarded in *Carroll II* were insufficient to deter Trump from repeating the very same defamatory statements as before. A jury trial in *Carroll I* will afford the justice system an opportunity to more fully remedy and protect Carroll; staying these proceedings all but indefinitely would reward Trump's behavior and exacerbate injuries to Carroll.

### D. The Public Interest Weighs Against a Stay

This leaves only consideration of the public interest, which weighs against a stay for three reasons. *First*, "the Second Circuit has recognized that 'there is a public interest in having plaintiffs who might be entitled to recovery receive compensation while still living and able to use it to

---

[9] Indeed, it is offensive for Trump to claim that the *Carroll II* verdict mitigates harm to Carroll when he has gone out of his way to trash that verdict, attack the Court, and willfully repeat statements found to be false and defamatory.

10

improve the quality of their lives.'" *Leroy v. Hume*, 563 F. Supp. 3d 22, 31 (E.D.N.Y. 2021) (cleaned up) (quoting *In re WTC*, 503 F.3d at 170–71). For the reasons given above, granting a stay risks unduly prolonging this matter, which Carroll has been litigating for many years. *See Carroll*, 2023 WL 4393067, at *13 ("[Carroll] now is 79 years old and . . . has been litigating this case for more than three and a half years. There is no basis to risk prolonging the resolution of this litigation further by permitting Mr. Trump to raise his absolute immunity defense now at the eleventh hour when he could have done so years ago."). *Second*, more generally, "there is a public interest in finality" of litigation that supports the denial of a stay. *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017). *Finally*, the public interest would be served by the resolution of this matter, in which Trump (a current candidate for elected office) is alleged to have used the bully pulpit to defame a private citizen for revealing his personal misconduct.

Together, these interests outweigh Trump's claim that the public is interested in vindicating claims of official immunity. *See* Trump Br. 11–13. As Trump concedes, the Second Circuit found this immunity-related interest "overcome upon a showing of a competing public interest in allowing the litigation to reach trial and possibly 'result in compensation for at least some Plaintiffs during their lifetimes.'" *Id.* at 12 (quoting *In re WTC*, 503 F.3d at 170). Moreover, Trump's own conduct throughout this litigation has been at odds with any commitment on his part to vindicating a public interest in official immunities—and that interest is obviously lessened when the official in question has made (but later comes to regret) a strategic choice to waive their own immunity.

## II.     THIS COURT HAS NOT BEEN DIVESTED OF JURISDICTION

In a single page at the very end of his brief (which makes clear what he really thinks of the argument), Trump asserts that his filing of an interlocutory appeal divested the Court of jurisdiction over the "entirety" of this action because this appeal involves immunity from suit. Trump Br. 13 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982)).

11

Trump is mistaken—as this Court necessarily recognized when it denied Trump's motion to stay proceedings following the initial interlocutory appeal of the Westfall Act question. *See* ECF 56 (denying without prejudice a stay motion based on a similar misreading of *Griggs*).

Simply put, the Second Circuit has made clear that "[t]he divestiture of jurisdiction rule is … not a *per se* rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (emphasis added). Instead, "it is a judicially crafted rule" grounded in "concerns of efficiency." *Id.* Consistent with that understanding, the Second Circuit held in *In re WTC* that the question whether district court proceedings should continue pending an appeal from a denial of immunity is guided by the same four factors that usually apply to stays pending appeal. *See* 503 F.3d at 169–70; *see also Carroll*, 635 F. Supp. 3d at 236 ("In [*In re WTC*], the Second Circuit held that the prospect that 'any proceedings in the District Court pending appeal will irreparably impair, at least to some extent, [defendants'] alleged claim to immunity from suit' was to be balanced against the other factors under consideration." (citation omitted)). Applying that traditional test, *In re WTC* vacated a previously entered stay because it had come to perceive there to be a "lesser probability" that the defendants would succeed on the merits of their immunity claims. 503 F.3d at 170. Notably, the Second Circuit reached this conclusion even though the defendants in that case (like Trump here) argued that *Griggs* precluded the district court from exercising jurisdiction. *See id.* at 169–70; *accord Loria v. Gorman*, 306 F.3d 1271, 1279–80 (2d Cir. 2002) (recognizing the district court had denied motions for a stay pending appeal of an order denying a qualified immunity defense); *Plummer v. Quinn*, No. 07 Civ. 6154, 2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) (applying four-factor test to motion to stay pending appeal of denial of qualified immunity); *V.S. v. Muhammad*, No. 07 Civ. 213, 2008 WL 5068877 (E.D.N.Y. Nov. 24, 2008) (applying four-factor analysis even though some defendants had appealed the denial of qualified immunity defenses). Under *In re*

12

*WTC*—which Trump properly treats as the controlling framework for all but a single page of his brief—the traditional test applies here and (as explained above) forecloses Trump's motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Trump's motion for a stay.

Dated: New York, New York
August 10, 2023

Respectfully submitted,

_____
Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

14