UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

E. JEAN CARROLL,

        *Plaintiff,*

v.

DONALD J. TRUMP, in his personal capacity,

        *Defendant.*

No. 20 Civ. 7311 (LAK)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF AN ORDER LIMITING THE ISSUES TO BE LITIGATED ON GROUNDS OF COLLATERAL ESTOPPEL**

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................................ 1

ARGUMENT ......................................................................................................................................... 4

   I.  THE *CARROLL II* JUDGMENT DOES NOT IMPOSE A CAP ON CARROLL'S COMPENSATORY DAMAGES IN *CARROLL I* ................................................................. 4

   II.  THE *CARROLL II* JUDGMENT DOES NOT REQUIRE A REDUCTION OF ANY AWARD FOR A REPUTATION REPAIR CAMPAIGN IN *CARROLL I* ....................... 8

CONCLUSION ..................................................................................................................................... 9

i

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bender v. City of N.Y.*,
 78 F.3d (2d Cir. 1996) ................................................................................................ 8

*Bouveng v. NYG Cap. LLC*,
 175 F. Supp. 3d (S.D.N.Y. 2016) ............................................................................... 7

*Carroll v. Trump*,
 No. 20 Civ. 7311, 2023 WL 5017230 (S.D.N.Y. Aug. 7, 2023) ................................ 1

*Carroll v. Trump*,
 No. 22 Civ. 10016, 2023 WL 4612082 (S.D.N.Y. July 19, 2023) ........................ 1, 4, 6, 7, 9

*Conason v. Megan Holding, LLC*,
 25 N.Y.3d (2015) .......................................................................................... 5, 6, 7, 8

*Ryan v. New York Tel. Co.*,
 62 N.Y.2d (1984) ........................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 59 .............................................................................. 4

## PRELIMINARY STATEMENT

The Court has already heard and rejected Defendant Donald J. Trump's argument that the jury in *Carroll II* awarded Plaintiff E. Jean Carroll damages not only for Trump's October 2022 defamatory statement, but also for his June 2019 defamatory statements. *See Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 4612082, at *24 (S.D.N.Y. July 19, 2023) ("There accordingly is no basis to assume that the jury award for the 2022 statement improperly included damages for the 2019 statements."). Here, Trump repackages that same argument under the banner of collateral estoppel and asks this Court to preemptively limit the damages that the jury may award in this action.

Trump's motion should be denied. The damages issues resolved by *Carroll II* are distinct from the damages issues in *Carroll I*, and the *Carroll II* jury did not actually, fairly, or necessarily resolve Carroll's entitlement to damages based on Trump's June 2019 statements at issue here. Simply put, this action concerns different statements that caused different injuries at a different point in time—and Trump's attempts to argue otherwise are riddled with factual and legal error.[1]

## RELEVANT BACKGROUND

Most of the relevant background is set forth in Carroll's recent motion for partial summary judgment, which we hereby incorporate by reference. *See* ECF 190 at 1–8. Because Trump's motion relates to damages, however, we address a few specific points in that regard.

In this case (*Carroll I*), Carroll seeks damages arising from three defamatory statements that Trump—during his tenure as President—made from the White House in June 2019. ECF 157-1 ¶¶ 175–83. The first of those three statements was made the very same day (June 21)

---

[1] Trump also contends that the *Carroll II* verdict established the falsity element of his counterclaim. *See* Trump Br. 4–6. Because the Court has since dismissed Trump's counterclaim, that argument is now moot. *Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 5017230, at *2 (S.D.N.Y. Aug. 7, 2023); ECF 201.

1

that Carroll publicly accused Trump of having previously sexually assaulted her in a Bergdorf Goodman dressing room. *Id.* ¶¶ 80, 176. In his June 2019 statements, Trump denied sexually assaulting Carroll and attributed to her a series of false motives for why she had supposedly fabricated her accusation. According to Professor Ashlee Humphreys—a defamation damages expert—Trump's three June 2019 statements collectively generated between 142,334,424 and 188,155,507 impressions across various forms of media. ECF 195-2 at 26–35. Between 34,075,512 and 42,936,354 of those impressions were "negative"—that is, likely received by people who were receptive to believing Trump's statements about Carroll. *Id.* at 58–64. In her expert report, Professor Humphreys designed a program to remedy the negative impressions associated with Trump's June 2019 statements; she estimated that the cost of such a reputation repair program would fall between $3,333,058.72 and $20,998,861.18, depending upon factors she described, with a conservative, middle range between $9,999,176.17 and $12,599,316.71. *Id.* at 64–71.

*Carroll II* was filed more than three years into the *Carroll I* litigation. There, Carroll sued Trump for battery (based on the underlying sexual assault) and defamation (based on an additional statement that Trump posted on Truth Social in October 2022). *See Carroll II*, ECF 1. At the *Carroll II* trial, the jury heard substantial evidence relating to damages. In connection with her defamation claim, Carroll testified that, by October 2022, she had "thought [she] was gaining back a bit of ground" following the harm caused by Trump's June 2019 statements, but "then, boom, he knock[ed] [her] back down again." Ex. 1 to Kaplan Decl. ("Tr.") at 322. Carroll testified that after Trump's October 2022 statement, she was buried in "a wave of slime," facing "very seedy" and "very denigrating" comments online. *Id.* at 323.

The jury in *Carroll II* also heard from Professor Humphreys, who had prepared a separate report for *Carroll II* specifically relating to Trump's October 2022 defamatory statement. *See*

2

ECF 195-1. Professor Humphreys testified that Trump's October 2022 statement generated between 13.7 million and 18 million impressions across online and print media, of which between 3.7 million and 5.6 million were "receptive impressions." Tr. 1127, 1134. Professor Humphreys explained that it would cost between $368,000 and $2.7 million to run a targeted reputation repair campaign to counteract the harmful impressions caused by the October 2022 statement. *Id.* at 1141. Professor Humphreys made clear that her analysis and proposed reputation repair budget did not incorporate harms flowing from Trump's earlier June 2019 defamatory statements, testifying that "the statement that [she] looked at in [*Carroll II*] was only the October 2022 statement." *Id.* at 1148.

During the *Carroll II* proceedings, the Court instructed the jury as follows: "The question of whether there was any adverse effect by virtue of the 2019 statements and, if there was, how much adverse effect is not at issue in this case. It is not for you to determine." *Id.* at 1158. Later, while instructing the jury in *Carroll II*, the Court again emphasized that Carroll's defamation claim concerned only "Trump's October 12, 2022 statement, and more specifically [] the parts of that statement about Ms. Carroll." *Id.* at 1428. To avoid doubt, the Court read all relevant excerpts of Trump's October 2022 statement during the jury charge. *Id.* at 1428–29. The Court added that the jury was to decide the amount of damage caused by "the defendant's statement," accounting for "plaintiff's standing in the community, the nature of Mr. Trump's statement made about Ms. Carroll, the extent to which the statement was circulated, the tendency of the statement to injure a person such as Ms. Carroll, and all of the other facts and circumstances in the case." *Id.* at 1433.

Ultimately, the jury decided for Carroll on both the battery and defamation counts. With respect to the defamation count, the jury awarded Carroll $2.7 million in compensatory damages, $1.7 million of which (based on the special verdict form) was related to the cost of running the

3

reputation repair campaign that Professor Humphreys had developed for *Carroll II*. *Carroll II*, ECF 174.

Following entry of judgment, Trump moved for a new trial pursuant to Federal Rule of Civil Procedure 59. Among other things, Trump argued that the jury's compensatory damages award on the defamation claim should be reduced because the award was "based upon alleged harms caused by the June 2019 statements"; because it was "duplicative of any compensatory damages awarded in *Carroll I*"; and because it was based on opinion testimony from Professor Humphreys, who supposedly "must have included the alleged harm from the June 2019 Statements as part of her damages analysis." *Carroll II*, ECF 205 at 18–19.

The Court denied Trump's Rule 59 motion, finding that "there [] is no basis to assume that the jury award for the 2022 statement improperly included damages for the 2019 statements," and explaining that Trump's contentions were "contradicted by the record." *Carroll*, 2023 WL 4612082, at *24. The Court added that its own "instruction to the jury to ignore any harm arising from the 2019 statements overrides Mr. Trump's concern in this respect." *Id.* at *25 n.100.

## ARGUMENT

Carroll has already described the governing legal standards. *See* ECF 190 at 9–12. Under those standards, Trump's motion—which seeks to revive his rejected Rule 59 arguments—should be denied in its entirety. *See* ECF 194 ("Trump Br.") at 6–16.

### I. THE *CARROLL II* JUDGMENT DOES NOT IMPOSE A CAP ON CARROLL'S COMPENSATORY DAMAGES IN *CARROLL I*

Trump argues that Carroll is "precluded from seeking relief in excess of $1,000,000 for compensatory damages 'other than the reputation repair program.'" Trump Br. 8. But when tested against the familiar elements of collateral estoppel, the *Carroll II* judgment does not "operate to limit [Carroll's] entitlement to damages in the instant action." *Id.* at 6.

4

*First*, Trump cannot show that "the issues in both proceedings [are] identical." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015). In *Carroll II*, the jury was asked to assess the harm that Carroll suffered from a single defamatory statement that Trump posted on his privately-owned social media platform in October 2022, at which point he was no longer President and had already defamed Carroll three times prior. In contrast, the *Carroll I* jury will be asked to assess the harm that Carroll suffered from Trump's original three defamatory statements in June 2019, all of which were issued while he was President, in direct response to the initial revelation of his personal sexual misconduct, and at a point when Carroll's reputation for honesty and integrity had not sustained prior presidential attack. Whereas the October 2022 statement caused between 3.7 million and 5.6 million negative impressions of Carroll, the June 2019 statements caused between 34 million and 42.9 million such negative impressions (or approximately 650 to 820% more impressions than the October 2022 statement). ECF 195-1 at 49; ECF 195-2 at 63. The actions thus involve distinct injuries, suffered at distinct times, caused by distinct statements, under distinct circumstances—and thus they are not "identical." Even if Carroll seeks similar "types of defamation damages" in both actions, *see* Trump Br. 8, that does not make the *issues* in both cases identical. Indeed, as the Court instructed the jury in *Carroll II*, the appropriate measure of defamation damages requires an intensely individualized assessment of all the "facts and circumstances." Tr. 1433. Trump's motion can be denied on this ground alone.

*Second*, for similar reasons, Trump cannot show that any issue relating to the appropriate measure of damages in *Carroll I* was "actually litigated and decided" in *Carroll II*. *Conason*, 25 N.Y.3d at 17. In fact, the *Carroll II* jury was unequivocally *forbidden* from deciding that issue, as the Court instructed the jury to decide Carroll's defamation claim only "in relation to Trump's October 12, 2022 statement, and more specifically to the parts of that statement about Carroll." *Id*.

5

at 1428; *accord Carroll*, 2023 WL 4612082, at *25 n.100 (rejecting Trump's argument that jury awarded damages based on June 2019 statements in light of "the Court's instruction to the jury to ignore any harm arising from the 2019 statements"). Trump insists that he satisfies this element because Carroll "participated in the *Carroll II* litigation, engaged in extensive motion practice, and participated in trial." Trump Br. 9. But the mere fact that a party participated in a proceeding obviously does not answer the question of what a jury in that proceeding actually decided.

*Third*, Carroll did not have "a full and fair opportunity to litigate" the appropriate amount of damages caused by Trump's June 2019 statements as part of the *Carroll II* trial. *Conason*, 25 N.Y.3d at 17. This element requires "consideration of "the 'realities of the prior litigation', including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501 (1984) (cleaned up). The reality here is clear: the *Carroll II* trial concerned only the damages caused by the underlying sexual assault and by the falsehoods that Trump spread about Carroll in October 2022. Although the jury learned that Trump had spoken about Carroll in June 2019, the Court—at the urging of both parties—made clear to the jury that Carroll's separate suit for "defamation that Mr. Trump allegedly committed in 2019" is "not the one we are dealing with." Tr. 537; *see also id.* at 1158 (whether and how much harm was caused by 2019 statements "is not at issue in this case" and "is not for [the jury] to determine"). While Trump insists that "*Carroll II* provided ample and repeated opportunities for Plaintiff to litigate the appropriateness of a compensatory damage award in that case," Trump Br. 9, that is exactly the point: Carroll litigated compensatory damages *in that case*, not in *this one*. Indeed, had Carroll tried to recover damages in *Carroll II* based on Trump's June 2019 defamatory statements, then Trump's counsel would have objected vociferously, and they would have been

6

right to do so. *See Carroll II*, ECF 99-1 at 34; *Carroll II*, ECF 102 at 26 (proposed jury instructions reflecting parties' agreement that *Carroll II* damages were limited to harm caused by October 2022 statement).

*Finally*, Trump cannot show that any determination concerning damages in this action was "necessary to support a valid and final judgment on the merits" in *Carroll II*. *Conason*, 25 N.Y.3d at 17. As this Court's prior decision upholding the *Carroll II* jury's damages award confirms, no aspect of that award hinged on any jury finding regarding the harm to Carroll caused by Trump's June 2019 defamatory statements. *See Carroll*, 2023 WL 4612082, at *24–*25.

Trump grounds his argument on one cherry-picked sentence from Carroll's testimony at the *Carroll II* trial. *See* Trump Br. 8. There, Carroll was asked how certain messages she received after Trump's October 2022 statement "compare[d] to tweets or messages [she] received after Mr. Trump made his first remarks in June 2019"; she replied, "They were equally, equally disparaging and hurtful, but these particularly hurt because I thought I had made it through and here they are again." Tr. 329. Cribbing from this exchange, Trump argues that because the jury determined that "fair compensation for the harm [Carroll] suffered from the October 2022 statement" was $1 million, damages for Trump's June 2019 statement cannot be any greater because "the response to the October 2022 statement was 'equally disparaging and hurtful.'" Trump Br. 11.

This gets both the law and the facts wrong. The *Carroll II* jury was not asked to compare the relative harm caused by Trump's June 2019 and October 2022 statements, and there is absolutely no basis for preclusion based on what the parties litigated, the jury decided, or the verdict required. *See Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 339 n.29 (S.D.N.Y. 2016) ("[A] jury's compensatory damage award in a defamation case is 'peculiarly within the jury's province.'"). Moreover, in the statement that Trump seeks to highlight, Carroll wasn't making a

7

quantitative comparison of the damage that each of Trump's defamatory statements caused. She was simply commenting on the qualitative character of some online comments triggered by each of his defamatory attacks. That Carroll considered the content of certain online messages to be "equally disparaging and hurtful" does not mean that her total damages in this case must be the same (or less) than in *Carroll II*. Trump's assertion otherwise reflects a distortion of Carroll's testimony and a plain misapplication of collateral estoppel principles under New York law.

## II. THE *CARROLL II* JUDGMENT DOES NOT REQUIRE A REDUCTION OF ANY AWARD FOR A REPUTATION REPAIR CAMPAIGN IN *CARROLL I*

Trump fares no better with his argument that "any award in the instant action for a reputational repair program in the instant action [sic] must be reduced by $1.7 million"—the amount the jury awarded specifically for Carroll's reputational repair program in *Carroll II*—"to prevent Plaintiff from obtaining double recovery for the same harm." Trump Br. 15–16.

For starters, Trump does not even attempt to ground this argument in collateral estoppel. Nor could he. There is no identity of issues because the *Carroll II* jury was not asked to determine the cost of running a campaign to repair the reputational harm caused by Trump's June 2019 statements. *Conason*, 25 N.Y.3d at 17. Moreover, the cost of running a campaign relating to the June 2019 statements was not actually decided by, fully and fairly litigated in connection with, or necessary to the judgment in *Carroll II*. The *Carroll II* jury never even heard the estimated cost of the reputation repair campaign Professor Humphreys developed for *Carroll I*. *See* ECF 195-2 at 5.

Trump's argument based on a theory of "double recovery" also fails. *See* Trump Br. 12. Double recovery occurs where a plaintiff presents two legal theories "for compensating one injury." *Bender v. City of N.Y.*, 78 F.3d 787, 793 (2d Cir. 1996). Here, Carroll brought separate cases to address separates injuries arising from separate statements published more than three years apart. Carroll has tried one case concerning Trump's later-in-time statement, and the jury awarded

8

her damages for the harms at issue in that case—and for that set of harms alone. It would not be "double compensation" to also compensate Carroll for the distinct (and much greater) harms that she suffered from Trump's June 2019 statements. And as we have already explained, the Court has rightly rejected Trump's baseless claim that the "the jury award for the 2022 statement improperly included damages for the 2019 statements."[2] *Carroll*, 2023 WL 4612082, at *24.

## CONCLUSION

For the foregoing reasons, Trump's collateral estoppel motion should be denied.

Dated: New York, New York
August 16, 2023

Respectfully submitted,

/s/ Roberta A. Kaplan

Roberta A. Kaplan
Michael Ferrara
Shawn G. Crowley
Trevor W. Morrison (admitted *pro hac vice*)
Matthew J. Craig
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
mferrara@kaplanhecker.com
scrowley@kaplanhecker.com
tmorrison@kaplanhecker.com
mcraig@kaplanhecker.com

Joshua Matz
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Telephone: (212) 763-0883
jmatz@kaplanhecker.com

*Counsel for Plaintiff E. Jean Carroll*

---

[2] Given the manifest frivolity of Trump's legal arguments here, as well as Trump's continued pattern of asserting arguments squarely at odds with the Court's prior rulings in this litigation, we respectfully contend that it would be appropriate for the Court to consider drawing on its inherent authority to issue an order to show cause why Trump's counsel should not be required to pay our attorneys' fees in connection with responding to his motion.