```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
E. JEAN CARROLL,

                    Plaintiff,

        -against-                                    20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                    Defendant.
------------------------------------------x
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-18-2023

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO STAY

Appearances:

>            Roberta Kaplan
>            Joshua Matz
>            Shawn Crowley
>            Matthew Craig
>            Trevor Morrison
>            Michael Ferrara
>            KAPLAN HECKER & FINK LLP
>            *Attorneys for Plaintiff*
>
>            Alina Habba
>            Michael T. Madaio
>            HABBA MADAIO & ASSOCIATES LLP
>            *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        A little less than four years ago, writer E. Jean Carroll commenced this defamation lawsuit against then-president Donald Trump for certain statements he made in 2019 shortly after

2

Ms. Carroll publicly accused him of sexually assaulting ("raping") her in the mid 1990s. This case was largely stalled for years due in large part to Mr. Trump's repeated efforts to delay, which are chronicled in the Court's prior decisions.[1] Mr. Trump's latest motion to stay – his *fourth* such request – is yet another such attempt to delay unduly the resolution of this matter.

After litigating this case for over three years, Mr. Trump, in his motion for summary judgment filed in December 2022, for the first time asserted that he has absolute presidential immunity for his 2019 statements about Ms. Carroll. This Court rejected the argument. It first held that Mr. Trump had waived his absolute presidential immunity defense by failing to plead or otherwise raise it earlier. It denied also, on two independent grounds, Mr. Trump's alternative request to amend his answer to raise the defense now: (1) the proposed amendment would be futile because the presidential immunity defense would be without merit, and (2) Mr. Trump in any case delayed unduly in raising the defense, and granting his request would prejudice Ms. Carroll unfairly.

Mr. Trump filed an interlocutory appeal of that decision. He now seeks to stay this case pending resolution of his appeal. For the reasons stated below, his request is denied.

### *Facts*

The Court assumes familiarity with its prior decisions in this case ("*Carroll I*") and in a second closely related case ("*Carroll II*"), which detail the facts and procedural histories of both

---

[1] *E.g.*, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067, at *12 (S.D.N.Y. July 5, 2023); *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2022 WL 6897075 (S.D.N.Y. Oct. 12, 2022); *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022).

3

cases.²

*Ms. Carroll Files This Lawsuit In November 2019*

In the hours and days immediately after Ms. Carroll first publicly accused Mr. Trump of sexually assaulting ("raping") her in a department store in New York in the mid 1990s, Mr. Trump issued public statements in which he denied the accusation, stated that he did not know and never had met Ms. Carroll, and claimed that she fabricated the accusation for ulterior and improper purposes. Approximately five months later, in November 2019, Ms. Carroll brought this lawsuit alleging that Mr. Trump defamed her in his statements and seeking damages and other relief. The case was filed originally in a state court in New York before being removed to this Court in September 2020 in circumstances discussed previously.

*Mr. Trump's Previous Motions To Stay This Case*

This motion is Mr. Trump's fourth attempt to stay this case.

---

² 
*E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll*, 590 F. Supp. 3d 575; Dkt 96, *Carroll*, 2022 WL 6897075; Dkt 145, *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll*, 2023 WL 4393067; Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-cv-100l6 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

4

He first moved to stay it while it still was in state court, where he moved to stay the proceedings pending a decision by the New York Court of Appeals in a different lawsuit against him.³ The state court denied that motion, and the case was removed to this Court a month later.

Mr. Trump's second and third motions to stay, made before this Court, also were denied. Both were related to a motion by the Department of Justice to substitute the United States for Mr. Trump as the defendant in this case pursuant to the Westfall Act based on the theory that Mr. Trump was an "employee" of the United States within the meaning of the Westfall Act and that he had acted within the scope of his employment as president when he made the allegedly defamatory statements. In October 2020, this Court denied the government's then motion to substitute the United States in place of Mr. Trump.⁴ Both Mr. Trump and the government appealed, and Mr. Trump moved in this Court to stay all proceedings pending appeal. He argued that this Court was "divested of jurisdiction" because its "'rejection of certification and substitution effectively denied [defendant] the protection afforded by the Westfall Act, a measure designed to immunize covered federal employees *not simply from liability, but from suit*.'"⁵ The Court denied Mr. Trump's motion to stay

---

3

*Carroll v. Trump*, Index No. 160694/2019 (NY. Sup. Ct.), Dkt 43.

4

In June 2023, the government stated that in its view, "the prior certification [under the Westfall Act] and motion to substitute have been overtaken" by developments subsequent to the government's initial certification, which included decisions on the substitution issue by the Second Circuit and the District of Columbia Court of Appeals. Dkt 166. On July 11, 2023, the government informed the Court and the parties of its decision not to renew its Westfall Act certification in this case. Dkt 177.

5

Dkt 47 (Def. Letter Request to Stay) at 1 (emphasis and alteration in original) (quoting *Osborn v. Haley*, 549 U.S. 225, 238 (2007)).

5

without prejudice.[6] Mr. Trump neither sought a stay from the Second Circuit nor renewed his motion in this Court.

Mr. Trump moved a third time to stay this case in conjunction with a second motion, that one filed by Mr. Trump, to substitute the United States in his place. Both requests came shortly after the Second Circuit's decision on Mr. Trump's and the government's appeal of this Court's Westfall Act decision, in which the Circuit certified the question of the whether Mr. Trump had acted within the scope of his employment to the District of Columbia Court of Appeals. This Court denied both motions – the stay motion and Mr. Trump's motion to substitute the United States, and explained:

> "As an initial matter, discovery in this case has virtually concluded. Mr. Trump has conducted extensive discovery of the plaintiff, yet produced virtually none himself. The principal open items, as the Court understands it, are the depositions of Ms. Carroll and Mr. Trump, scheduled for October 14 and 19, respectively. Completing those depositions – which already have been delayed for years – would impose no undue burden on Mr. Trump, let alone any irreparable injury. . . . Given his conduct so far in this case, Mr. Trump's position regarding the burdens of discovery is inexcusable. On December 10, 2020, he moved for a stay pending appeal. His arguments then in support of that motion were almost identical to those advanced here. This Court denied the motion on September 15, 2021. And since that motion was denied, he has taken discovery against plaintiff when the circumstances

---

[6] Dkt 56.

were not materially different.

"[A] stay [also] would cause substantial injury to plaintiff. As the Court noted in an earlier opinion in this case, 'defendant's litigation tactics have had a dilatory effect and, indeed, strongly suggest that he is acting out of a strong desire to delay any opportunity plaintiff may have to present her case against him.' Delay is a more serious concern in this case than usual for several reasons. First, the appeal from my order denying substitution already has consumed 20 months from the day it was noticed and it is not over yet. The remaining question has been certified to the D.C. Court of Appeals, a process that reasonably may be expected to be lengthy. Perhaps most significant, both plaintiff and defendant – and perhaps other witnesses – already are of advanced age. The defendant should not be permitted to run the clock out on plaintiff's attempt to gain a remedy for what allegedly was a serious wrong."[7]

*Current Status Of This Case*

There have been several developments relevant to this case following the Court's October 2022 denial of Mr. Trump's third motion to stay. Most significantly, in November 2022, Ms. Carroll filed a second lawsuit against Mr. Trump in a case now known as "*Carroll II*" in which she brought two claims. The first was a sexual battery claim under the Adult Survivors Act ("ASA"), a new law enacted by New York in 2022 that created a one-year period within which persons who were sexually assaulted as adults could sue their alleged assaulters even if their claims otherwise

---

[7] *Carroll*, 635 F. Supp. 3d at 236-37.

would have been untimely. She brought also a defamation claim for a statement Mr. Trump published on social media in 2022 that was substantially similar to his 2019 statements.

By the time *Carroll II* was filed, discovery in this case had been completed.[8] The parties submitted a joint pretrial order, which this Court approved, and decided Mr. Trump's motion for summary judgment and both parties' pretrial *in limine* motions.[9] This case originally was set for trial on February 6, 2023, and later was adjourned until April 10, 2023. The Court subsequently adjourned the April 10, 2023 trial date *sine die* given the then still pending certified questions in the District of Columbia Court of Appeals on the Westfall Act issue. Following the D.C. court's ruling on the certified questions, a remand of this case by the Second Circuit, and completion of the trial in *Carroll II*, the Court set a new trial date of January 15, 2024 in this case. At present, the only matter that remains open prior to trial is completion of reply memoranda on the issue of preclusive effect, if any, of the findings in *Carroll II* in this action.

*Carroll II* was tried in this Court from April 25, 2023 to May 9, 2023. The jury in that case unanimously determined that Mr. Trump "sexually abused" Ms. Carroll and that he defamed her in his 2022 statement, awarding her $2.02 million for her sexual battery claim and $2.98

---

[8] The deadline to complete all discovery in this case was November 16, 2022. Dkt 77.

[9] Ms. Carroll notes that "[i]f cross-applied to this proceeding, as they should be, the Court's decisions on the motions *in limine* submitted in *Carroll II* would resolve the bulk of the outstanding *Carroll I* evidentiary issues (though of course the parties may wish to submit additional motions in limine in advance of the trial scheduled for January 2024)." Dkt 202 (Pl. Opp. Mem.) at 6 n.7. As this issue is not presently before the Court, it does not now decide or take any position with respect to it.

8

million for her defamation claim.[10]

## *Discussion*

*Legal Standard*

The legal standards governing a motion to stay are well settled:

"'The proponent of a stay bears the burden of establishing its need.' *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Even where irreparable injury might result, a stay is 'not a matter of right.' *Virginian Ry. Co.*, 272 U.S. 658, 672 (1926). Rather, it is 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.' *Id.* at 672–73. Yet the Court's discretion is not unguided. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Courts weighing motions to stay consider four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Sailor v. Scully*, 666 F.Supp. 50, 51 (S.D.N.Y.1987) (describing the four factors regulating issuance of a stay pursuant to Federal Rule of Civil Procedure 62). Courts treat these four factors 'like a sliding scale.' *Thapa v. Gonzales*, 460 F.3d 323, 334

---

[10] The precise meaning of the jury's "sexual abuse" finding has been detailed in the Court's prior decisions and need not be repeated here. *E.g.*, *Carroll*, 2023 WL 5017230; *Carroll*, 2023 WL 4612082.

(2d Cir.2006). '[M]ore of one excuses less of the other.' *Id.* (quoting *Mohammed v. Reno*, 309 F.2d 95, 101 (2d Cir.2002))."[11]

Mr. Trump contends that this case should be stayed pending appeal because (1) there is a substantial likelihood he will succeed in his appeal, (2) he would suffer irreparable harm in the absence of a stay, (3) a stay would not harm Ms. Carroll, and (4) the public interest favors a stay. His argument fails on each criterion.

*Likelihood of Success*

Mr. Trump argues that there is a sufficient probability of success on the merits of his

---

[11]

*Whitehaven S.F., LLC v. Spangler*, No. 13-CV-8476 (ER), 2014 WL 5510860, at *1 (S.D.N.Y. Oct. 31, 2014) (footnote omitted). *See also, e.g.*, *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) ("The factors relevant in assessing a motion for a stay pending appeal are the applicant's 'strong showing that he is likely to succeed on the merits,' irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest.") (citation omitted); *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'") (footnote omitted) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Mr. Trump points out that courts in this Circuit have differed in the "exact phrasing" of the four factors relevant to a motion to stay, specifically with respect to the first factor on likelihood of success. Dkt 186 (Def. Mem.) at 2. The Second Circuit has acknowledged that "some uncertainty has developed as to the first factor because of the various formulations used to describe the *degree* of likelihood of success that must be shown," and has stated that "'[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (emphasis in original) (quoting *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir.1977)). Mr. Trump identifies "[m]ore recent holdings" that he claims have "recogniz[ed] the appropriateness of staying litigation where there is at least a 'serious question going to the merits' pending appeal." Dkt 186 (Def. Mem.) at 3 (citing *Trump v. Vance*, 481 F.Supp.3d 161, 164 (S.D.N.Y. 2020)). The Court need not and does not now decide between these various formulations because it finds that Mr. Trump's motion would fail under any of the applicable formulations.

appeal of the absolute presidential immunity decision principally for the same reasons he advanced unsuccessfully in his summary judgment motion. Indeed, many of Mr. Trump's points in his current motion repeat almost verbatim those offered in his prior briefing in support of his assertion that presidential immunity is a non-waivable issue of subject matter jurisdiction. But he does not address any of this Court's reasoning in rejecting his argument. Nor does he engage in any meaningful way with this Court's conclusion that permitting him amend to raise his purported presidential immunity defense at this late date in any event would be futile because the defense is legally insufficient. His only other argument – that the Second Circuit has jurisdiction immediately to review the Court's decision that he waived his presidential immunity defense – is irrelevant to the question of whether he has any significant likelihood of success on appeal.

In sum, Mr. Trump has not provided a single reason for the Court to find that there is any likelihood that he will succeed on appeal, let alone a "strong showing." Accordingly, this factor weighs against Mr. Trump.[12]

*Irreparable Harm*

Mr. Trump's arguments with respect to irreparable harm also are unpersuasive. He contends that he would be subjected to irreparable harm in the absence of a stay because, he argues,

---

[12] To the extent Mr. Trump relies on the court's articulation of the standard in *Trump v. Vance*, 481 F.Supp.3d 161 (S.D.N.Y. 2020), that "[t]he movant must show . . . either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,'" his argument fares no better. *Id.* at 164 (citation omitted). Even accepting for the sake of argument that the latter standard would apply here and that Mr. Trump's appeal presents "sufficiently serious questions going to the merits," the "balance of hardships" in this case is far from "decidedly in the movant's favor" for the reasons discussed below. *Id.* Indeed, the balance of hardships in these circumstances strongly disfavors a stay.

"the entire purpose of an immunity is inherently and unavoidably frustrated when a Court acknowledges the viability of an immunity only *after* the conclusion of litigation, at which point the immunity from suit has already been irreparably and indisputably forfeited."[13] While that argument is convincing in many circumstances, it entirely is without merit in the unusual circumstances in this case.

First, by litigating this case for *over three years* before even raising his presidential immunity defense – and waiting another *seven months* between first raising his immunity defense and moving to stay this case on that basis – Mr. Trump effectively has forfeited any claim to irreparable harm in the absence of a stay. He has not offered any explanation for either delay despite ample opportunity to do so.[14] Although he now argues that his "presidential immunity defense will be 'effectively lost'" without a stay because he otherwise "will be required to proceed to trial without final resolution as to whether his presidential immunity defense is viable," his loss of that defense was the product of his own decision not to raise it until the tail end of this litigation.[15] In other words, any purported harm resulting from his having to stand trial despite a potential claim to immunity would be entirely of his own doing.

Second, Mr. Trump's argument for irreparable harm is even weaker in this case's current posture. As noted above, discovery in this case was completed in November 2022. Almost

---

[13] Dkt 186 (Def. Mem.) at 8 (emphasis in original).

[14] *New York v. United States Dep't of Com.*, 339 F. Supp. 3d 144, 148 (S.D.N.Y. 2018) ("'[I]nexcusable delay in filing' a motion to stay 'severely undermines the . . . argument that absent a stay irreparable harm would result.'") (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)).

[15] Dkt 186 (Def. Mem.) at 10 (citation omitted).

12

all of the pretrial litigation is complete, and trial is less than five months away. Moreover, while the precise scope of the trial in this case is yet to be determined, the Court already has concluded that the jury's finding in *Carroll II* that Mr. Trump sexually abused Ms. Carroll "is conclusive with respect to this case."[16] Thus, having completed already the pretrial burdens to which he refers in his argument, the only purported harm Mr. Trump reasonably may claim he would suffer in this case would be having to stand trial. In these somewhat unusual and extraordinary circumstances where immunity is being litigated essentially on the eve of trial, Mr. Trump has not satisfied his burden of establishing that he would suffer irreparable harm in the absence of a stay.

*Injury to Plaintiff and Public Interest*

By contrast, a stay almost certainly would injure both Ms. Carroll and the public interest.

Mr. Trump contends that a stay would cause minimal harm, if any, to Ms. Carroll. He argues that:

> "While it is true that this action has been pending for several years, Plaintiff was able to utilize discovery gathered in this action to proceed to trial in an expedited basis in the related matter of *Carroll II*. In this context, the harm of delay is significantly diminished. Indeed, it cannot be reasonably disputed that Defendant's entitlement to be heard on the threshold question of whether he is entitled to absolute immunity from liability outweighs Plaintiff's desire to expeditiously hold a second

---

[16] *Carroll*, 2023 WL 5017230, at *7.

trial on similar and related claims. Therefore, this factor tips in Defendant's favor."[17] But his argument mistakenly conflates the relief Ms. Carroll was awarded in *Carroll II* (which now is pending on appeal) and the relief she seeks for the distinct injuries she allegedly suffered as a result of the alleged defamation asserted in this case. The fact that the claims in both cases are "similar and related" has nothing to do with whether Ms. Carroll would be injured by a stay in this case. And for reasons this Court has discussed previously, she almost certainly would. As the Court explained in denying Mr. Trump's request for leave to raise his absolute immunity defense on the alternative basis of undue delay and unfair prejudice:

> "Ms. Carroll now has litigated this case for more than three and a half years. She has completed discovery, engaged in extensive motion practice, resisted the government's attempt to defeat her claim before [this] Court, the Second Circuit and the D.C. Court of Appeals, and devoted untold hours and resources to pursuing her claim. . . . [A]n appeal likely would cause 'significant additional delays in this litigation arising from a defense that Trump chose not to assert for the first three years of the proceedings.' Were this Court's rejection of his defense upheld on appeal, those additional delays would further prejudice Ms. Carroll unfairly. She now is 79 years old and, as just mentioned, has been litigating this case for more than three and a half years. There is no basis to risk prolonging the resolution of this litigation further by permitting Mr. Trump to raise his absolute immunity defense

---

[17] Dkt 186 (Def. Mem.) at 11.

14

now at the eleventh hour when he could have done so years ago."[18]

That analysis applies here too. In addition to all of these reasons that delaying trial would injure Ms. Carroll, a stay in these circumstances also could – as Ms. Carroll points out – "cause a spiral of further delays" given that "a rescheduled trial may have to compete with the end of [Mr.] Trump's presidential campaign, any number of other civil and criminal trials [that Mr. Trump currently faces], the possibility of a prison sentence, and/or conceivably the start of a second Trump presidency."[19] The injury likely to result to Ms. Carroll therefore counsels against a stay.

Finally, public interest considerations disfavor a stay. Mr. Trump contends that "there 'exists the greatest public interest in providing' the President immunity from his official acts, and that deprivation of such immunity would be to the 'detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.'"[20] His argument again fails to take into account the fact that this Court already has held that his immunity defense, even if his answer were amended to assert it at this late date, would fail on the merits, a determination with which Mr. Trump has not engaged at all other than by incorporating his prior unsuccessful arguments by reference. While there is a public interest in immunizing presidents for actions properly taken within the scope of their duties, there is a public interest also in ensuring that even presidents will be held accountable for actions that – as this Court already has determined in this case – do not come within

---

[18] *Carroll*, 2023 WL 4393067, at *12-13.

[19] Dkt 202 (Pl. Opp. Mem.) at 9.

[20] Dkt 186 (Def. Mem.) at 12 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 752 (1982)).

that scope.[19]  Moreover, although the Second Circuit has acknowledged "a public interest in vindicating the immunity of [a defendant] who might be entitled to immunity from suit," it has recognized also – as Mr. Trump concedes – "a public interest in having [a plaintiff] who might be entitled to recovery receive compensation while still living and able to use it to . . . improve the quality of [his or her life]."[20]  As noted above, both parties are of advanced age, and a stay of this case pending resolution of Mr. Trump's appeal would threaten delaying any compensation to which Ms. Carroll might be entitled by at least several months, if not a year or more.  The public interest therefore weighs against a stay.

Given that all four factors weigh against Mr. Trump's request to stay this case, his motion is denied on that basis.

*This Court Has Not Been Divested Of Jurisdiction*

In a one page argument at the end of his brief, Mr. Trump contends that this action "must also be stayed on the independent basis that this Court is currently divested of jurisdiction" because "as presidential immunity confers immunity from suit in its entirety, appeals involving immunity from suit therefore pertain to – and divest jurisdiction from the trial court over – the

---

[19] Mr. Trump argues also that the public interest favors a stay because he claims his appeal raises "important and novel questions concerning the doctrine of presidential immunity, the separation of powers doctrine, and the interplay between the Executive Branch and Judicial Branch." Dkt 207 (Def. Reply Mem.) at 1-2.  His bare assertion that the issues raised by his immunity defense are "important and novel," without demonstrating that there is any merit to those issues, plainly is irrelevant to the question of where the public interest lies.

[20] *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170.

entirety of the litigation."[21]  His argument is without merit.

Without now deciding the issue, the Court assumes *arguendo* that its decision that Mr. Trump waived his immunity defense properly is immediately appealable under the collateral order doctrine.[22]  It does not follow, however, that this Court is divested of jurisdiction as a result of that appeal. Even where an interlocutory appeal of a denial of an immunity defense otherwise might divest a district court of jurisdiction, "[c]ourts having considered this question have uniformly applied the 'dual jurisdiction rule'. . . , under which 'the filing of an appeal under the collateral order doctrine respecting a right not to be tried divests the district court of jurisdiction to proceed with the trial [against the appealing defendant] *unless the district court certifies that the appeal is*

---

[21] Dkt 186 (Def. Mem.) at 13.

[22] Ms. Carroll contends that "the Second Circuit has made clear that '[t]he divestiture of jurisdiction rule is … not a *per se* rule'" and instead "'is a judicially crafted rule' grounded in 'concerns of efficiency.'" Dkt 202 (Pl. Opp. Mem.) at 12 (emphasis in original) (quoting *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)).  The question in *Rodgers*, however, was "whether filing a notice of appeal from a district court order that is *patently nonappealable* divested the district court of jurisdiction to resentence." 101 F.3d at 251 (emphasis added). *See also  In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp. 3d 556, 561 (S.D.N.Y. 2014) ("*Rodgers,* . . . however, is not directly on point as it does not bear directly on cases involving the appeal of a denial of qualified immunity."). Ms. Carroll does not argue that Mr. Trump's appeal is "patently nonappealable." Moreover, courts in this Circuit have adopted the principle, as discussed above, that *unless an appeal is frivolous*, a district court is divested of jurisdiction "immediately upon the filing of a request for interlocutory review under the collateral order doctrine . . . in cases 'respecting a right not to be tried,' such as double jeopardy, foreign sovereign immunity, Eleventh Amendment immunity, and qualified immunity." *In re S. Afr. Apartheid Litig.*, No. 02-CV-4712 (SAS), 2009 WL 5183832, at *1 (S.D.N.Y. July 7, 2009) (citation omitted) (emphasis added). Accordingly, and in the absence of fuller briefing by the parties on this issue, the Court assumes without now deciding that Mr. Trump's appeal is immediately reviewable but nonetheless determines that it is not divested of jurisdiction because the appeal is frivolous.

*frivolous*[.]'"[23]

As stated above, Mr. Trump has not made any argument different from the points contained in his summary judgment briefing – all of which this Court has rejected – that would permit a determination that absolute presidential immunity is a nonwaivable question of subject matter jurisdiction. What is more, even if the Circuit were to disagree on that question, this Court already has determined also that Mr. Trump's immunity defense would fail on the merits. He has not engaged with this Court's analysis of either question and thus shown no likelihood of success on appeal.  Accordingly, this Court certifies that Mr. Trump's appeal is frivolous and therefore has not divested this Court of jurisdiction.

### *Conclusion*

For the foregoing reasons, Mr. Trump's motion for a stay pending appeal (Dkt 185) is denied.  This Court certifies that the appeal itself is frivolous.

SO ORDERED.

Dated:          August 18, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[23] *New York v. Locke*, No. 08-CV-2503 (CPS) (RLM), 2009 WL 2413463, at *3 (E.D.N.Y. Aug. 3, 2009) (second and third alterations in original) (emphasis added) (citation omitted). *See also, e.g.*, *Davis v. City of New York*, No. 12-CV-3297 (PGG), 2018 WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018) ("The Supreme Court has approved the 'dual jurisdiction' approach as an appropriate method to deal with frivolous interlocutory appeals. *Behrens v. Pelletier*, 516 U.S. 299, 310 (1996). Accordingly, this Court must determine whether [defendant's] appeal [(including of the denial of qualified immunity)] is frivolous."); *Garcia v. Bloomberg*, No. 11-CV-6957 (JSR), 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) ("An interlocutory appeal, *unless frivolous*, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal . . . .") (emphasis added); *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 137 (S.D.N.Y. 2007) ("I hold, following full consideration of Defendants' arguments, that their notice of appeal is legally ineffective to divest the district court of its jurisdiction."); *City of New York v. Beretta U.S.A. Corp.,* 234 F.R.D. 46, 51-53 (E.D.N.Y. 2006) (Weinstein, J.).