**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E. JEAN CARROLL,

       *Plaintiff,*

    v.

DONALD J. TRUMP, in his personal capacity,

       *Defendant.*

Civil Action No.: 1:20-cv-7311-LAK-JLC

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION
FOR ENTRY OF AN ORDER LIMITING THE ISSUES TO BE LITIGATED
ON GROUNDS OF COLLATERAL ESTOPPEL**

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
     -and-
112 West 34th St, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Defendant, Donald J. Trump*

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in further support of his motion for entry of an order limiting the issues to be litigated on the grounds of collateral estoppel with respect to certain findings of fact and law in the corresponding matter of *Carroll v. Trump*, Case No. 1:22-cv-1001 (S.D.N.Y 2022) ("*Carroll II*"). For the reasons set forth herein, Defendant's motion should be granted in its entirety.

**ARGUMENT**

## I.     PLAINTIFF MISCHARACTERIZES DEFENDANT'S LEGAL THEORIES

Notably, in her opposition papers, Plaintiff offers no direct retort to Defendant's collateral estoppel arguments. Instead, she mischaracterizes the nature of Defendant's legal theories and offers up a distorted version of Defendant's arguments which, she claims, are clearly foreclosed by this Court's prior rulings. However, with respect to Defendant's *actual* collateral estoppel arguments, this is simply not the case.

To be clear, Defendant's two collateral estoppel arguments are not premised on the idea that the damages award in *Carroll II* improperly included damages from the June 2019 statements.[1] Indeed, no such position was advanced in Defendant's moving papers. *See generally* ECF 194. Thus, contrary to Plaintiff's contention, Defendant has not simply "repackage[d]" this argument "under the banner of collateral estoppel." *See* ECF 204 at 1. Rather, as explained below, the two arguments advanced by Defendant involve legal theories that are entirely distinct from the issue of whether the jury improperly included the June 2019 statements in its damages determination.

---

[1] This argument was raised in Defendant's motion for a new trial or remittitur in *Carroll II*, *see Carroll II*, ECF 205 at 16-22, and, while not re-reraised in the instant motion, Defendant expressly reserves all rights to pursue this argument in connection with the pending appeal in *Carroll II*.

*First*, Defendant contends that Plaintiff's testimony that the impact of the October 2022 statement was "equally disparaging and hurtful" as that of the June 2019 statements is a pertinent issue of fact that should be carried over to ensure a consistent and properly limited damages award in the instant action. Even the Court noted the importance of this testimony when finding that the damages from the June 2019 statements and October 2022 statements had been adequately differentiated at trial. *See Carroll II*, ECF 212 at 56, n.100 (". . . Ms. Carroll in fact did compare the post-2022 messages she received to the post-2019 messages and stated that the post-2022 messages were "equally disparaging and hurtful, but these particularly hurt because [she] thought [she] had made it through and there they are again.") (citing *Carroll II*, ECF 189 at 329:5-7).

*Second*, Defendant contends that a damages offset is necessary to avoid a 'double recovery' in the instant action as Plaintiff has sought to be compensated for an identical remedy—a 'reputation repair program'—which entirely overlaps with the relief she was granted in *Carroll II*. Importantly, Defendant does not contend that the 'double recovery' results from any intermingling of damages from the October 2022 statement and the June 2019 statements in *Carroll II*; rather, the theory is that Plaintiff will be dually compensated if she is awarded the full spectrum of recovery sought in this action since she has already been awarded $1.7 million for a 'reputation repair program,' which, by Plaintiff's expert's own admission, is identical in all facets—including the mode and method in which it will be utilized to restore Plaintiff's reputation—as the 'reputation repair program' that she seeks to be compensated for here. Thus, irrespective of whether damages for the June 2019 statements were included in the *Carroll II* award, the compensation Plaintiff received for the 'reputation repair program' in *Carroll II* must be considered in this action to accurately reflect an award that will make Plaintiff "whole" and nothing more.

Consequently, Plaintiff's main contention—that Defendant has merely "repackage[d]" the argument that "the jury in *Carroll II* awarded . . . damages not only for [Defendant's] October 2022 defamatory statement, but also for his June 2019 defamatory statements," *See* ECF 204 at 1—is entirely off base. The arguments set forth in Defendant's motion are unique and viable on wholly separate grounds. Since Plaintiff has failed to offer any direct rebuttal these arguments, she has waived any objection to them.

II.    **PLAINTIFF'S TESTIMONY THAT THE OCTOBER 2022 STATEMENT IS "EQUALLY DISPARAGING AND HURTFUL" AS THE JUNE 2019 STATEMENTS LIMITS HER ENTITLEMENT TO COMPENSATORY DAMAGES**

As set forth above, Plaintiff largely fails to address Defendant's argument that her damages should be limited based on facts adduced at the trial in *Carroll II*. The arguments she does manage to advance are flawed for several reasons.

First, Plaintiff attempts to argue that preclusive effect is not warranted under the traditional collateral estoppel factors, which require that: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

With respect to the first prong, whether the issues raised in both proceedings are identical, Plaintiff fails to meaningfully grapple with this question. Instead, she merely states, in conclusory fashion, that *Carroll I* and *Carroll II* "involve distinct injuries, suffered at distinct times, caused by distinct statements, under different circumstances[.]" ECF 204 at 5. Even assuming that to be true, it does nothing to undercut Defendant's argument that the first prong is satisfied. Simply put, the precise fact at issue here—which Defendant contends should be given preclusive effect—is

3

Plaintiff's testimony that the October 2022 statement was "equally disparaging and harmful" as the June 2019 statements. Plaintiff provided this testimony in *Carroll II* and it unequivocally relates to the measure of damages available in *Carroll I*. Therefore, with respect to this specific point in fact, the issues are identical in both cases.

As for the second prong, whether the issue was "actually litigated and decided," Plaintiff attempts to argue that the *Carroll II* jury was "forbidden" from deciding the total amount of damages attributable to the June 2019 statements but, again, this argument misses the point. All that is necessary with respect to the factual point in question is that the jury considered Plaintiff's testimony that the harm resulting from the October 2022 statement was at least equally damaging to that resulting from the June 2019 statements. As recognized by this Court, the jury did just that. *See Carroll II*, *supra*, ECF 212 at 56, n.100 (citing *Carroll II*, ECF 189 at tr. at 329:5-7). Thus, the second prong is satisfied.

The same holds true for the third prong, whether the parties had a "full and fair opportunity to litigate" the issue. Again, in this regard, the issue in question is exceedingly narrow – whether the harm from the October 2022 statement was, in fact, at least equal to the harm from the June 2019 statements. The parties not only had a full and fair opportunity to litigate this issue, it was in fact litigated, as evidenced by the following testimony given by Plaintiff:

> Q. How, if at all, were these similar to Tweets or messages you received after Mr. Trump made his initial statements in 2019?
>
> A. Can you repeat that?
>
> Q. Sure. Sorry. These statements all came after the October 2022 denial by Mr. Trump?
>
> A. Yes.
>
> Q. How, if at all, do they compare to tweets or messages you received after Mr. Trump made his first remarks in June of 2019?
>
> A. They were *equally, equally disparaging and hurtful, but these particularly hurt because I thought I had made it through and here they are again.*

ECF 189 at 328:19-329:7 (emphasis added). Therefore, this prong is clearly satisfied.

As for the fourth and final prong, whether the issue was "necessary to support a valid and final judgment on the merits," this prong is similarly satisfied. Plaintiff contends that "no aspect of [the *Carroll II*] award hinged on any jury findings regarding the harm to [Plaintiff] caused by [Defendant's] June 2019 defamatory statements," ECF 204 at 7, but this is simply true. Indeed, even when "the issue of damages [is] not necessary to decide the merits of [a] claim[], making a damages determination became a necessary consequence of [a party's] victory on the merits." *Howard v. City of Coos Bay, an Or. Mun. Corp.*, 871 F.3d 1032, 1044 (9th Cir. 2017). And issue preclusion does not attach "only to the narrowest definition of the issue that need be resolved to reach the same result under the same general legal theory"; rather, "[o]nce the issue actually decided has been identified, and it is shown that decision was treated as necessary, there is no need to inquire whether the first case could have been disposed of by resolving some narrower issue." 18 Wright & Miller § 4417; *accord id.* at § 4421 ("Courts occasionally have been tempted to speculate that a prior decision could have been rested on narrower grounds than those actually chosen, so that resolution of the broader issues was not necessary to the decision. For the most part, such speculation should be resisted.") (footnote omitted); *see also Courtney v. LaSalle Univ.*, 124 F.3d 499, 504 (3d Cir. 1997) ("We have previously rejected the 'notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided.'").

Here, by affirming that the October 2022 statement was "equally" damaging as the June 2019 statements, Plaintiff relieved the jury of any need to consider whether the fact that the June 2019 statements occurred first had any mitigating effect on the damage caused by the October 2022 statement. Plaintiff even acknowledges in her opposition papers that, prior to the June 2019

statements, her "reputation for honesty and integrity had not sustained prior presidential attack,"

emphasizing that, at that time, she was most susceptible to reputational harm. ECF 204 at 5. Which

is why it was so pivotal that Plaintiff testified that the October 2022 statement was *equally* as

harmful as the June 2019 statements; in doing so, Plaintiff significantly magnified the impact of

the October 2022 statement, elevating it to the same level of harm as the initial statements in June

2019 which first called her credibility into question. In other words, the jury in *Carroll II* was

effectively operating with a clean slate, and they decided the damage caused by the October 2022

statement anew – as if Plaintiff's "reputation for honesty and integrity *had not* sustained prior

presidential attack." *Id.* (emphasis added).

Beyond that, Plaintiff contends that her testimony that the October 2019 statement is

"equally disparaging and harmful" to the June 2019 statements is merely "one cherry-picked

sentence," which, in her view, is irrelevant because "[t]he *Carroll II* jury was not asked to compare

the relative harm caused by Trump's June 2019 and October 2022 statements[.]" ECF 204 at 7.

Yet, Plaintiff's position is entirely at odds with this Court's prior ruling in *Carroll II*, where it

relied on this *exact* testimony to find that Plaintiff "in fact *did compare* the post-2022 messages

she received to the post-2019 messages and stated that the post-2022 messages were 'equally

disparaging and hurtful, but these particularly hurt because [she] thought [she] had made it through

and there they are again.'" *See Carroll II*, ECF 212 at 56, n.100 (citing *Carroll II*, ECF 189 at tr.

at 329:5-7) (emphasis added). Thus, Plainitff's throwaway argument should be summarily

dismissed.

Based on the foregoing, Plaintiff has failed to rebut Defendant's contention that the fact

adduced at trial that the October 2022 statement was, at a minimum, "*equally disparaging and*

*hurtful*" as the June 2019 statements should be afforded preclusive effect in the instant action.

Accordingly, Plaintiff should be precluded from recovering relief in excess of $1,000,000 for compensatory damages "other than the reputation repair program."

### III.   PLAINTIFF CANNOT BE PERMITTED TO RECEIVE A 'DOUBLE RECOVERY' FOR THE DUAL REPUTATION REPAIR PROGRAMS

As set forth in Defendant's motion papers, Plaintiff should be precluded from receiving a "double recovery" for the identical and overlapping relief that she would receive by virtue of implementing the carbon-copy 'reputation repair programs' developed by her expert, Professor Ashlee Humphreys.

In attempting to counter this point, Plaintiff seeks to distinguish the *Carroll I* damages from the *Carroll II* damages by arguing that she "brought separate cases to address separate injuries arising from separate statements published more than three years apart." ECF 205 at 8. In so arguing, Plaintiff misapprehends the nature of Defendant's argument. Contrary to Plaintiff's contention, Defendant's theory is not premised on the concept that the *harm* in *Carroll I* and *Carroll II* is the same; rather, Defendant's theory is that the *relief* she will receive in both cases is entirely congruent given the duplicate nature of the reputation repair programs in each case. In this context, it is clear that Plaintiff is seeking to utilize the *same* remedy to send the *same* message to the *same* audience for the *same* purpose to achieve the *same* result. Further, the three-year time gap is irrelevant for the purposes of collateral estoppel since "a different time period alone does not necessarily preclude application of collateral estoppel." *B-S Steel of Kansas, Inc. v Texas Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) (citation omitted); *see also Pignons S.A. de Mecanique v. Polaroid Corp.,* 701 F.2d 1, 2 (1st Cir. 1983) (applying collateral estoppel in a false advertising case based on advertisements published after 1980 where the prior case involved advertisements published prior to 1980 which did not "differ in any significant respect.").

Further, while Plaintiff is correct that the 'double recovery' rule is typically applied in cases where a plaintiff has sought to bring multiple causes of action to compensate for a single injury, the principle underlying the rule—that "courts should preclude double recovery by an individual," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S. Ct. 754 (2002)—also applies in a broader sense to prohibit plaintiffs from receiving a windfall that compensates them in excess of the actual harm suffered. Indeed, it is well established that "an injured party may recover damages only for the actual loss he suffered and no more; he is to be made whole, but not entitled to be put in a better condition than he would be in had the wrong not been committed." *Zarcone v. Perry*, 78 A.D.2d 70, 80 (2d Dep't 1980) (citation omitted); *see also Rohring v. Niagara Falls*, 638 N.E.2d 62, 67 (1994) ("Plaintiffs are entitled to be made whole, as determined by the trier of fact, but have no right to overcompensation.").

These principles apply in full force in the instant action. Should Plaintiff be permitted to recover the full quantum of damages sought for her 'reputation repair program,' she will be receiving the same benefit twice. Plaintiff testified in *Carroll II* that she had "gain[ed] back" her reputation and was "back on [her] feet" as of October 12, 2022, demonstrating that any harm emanating from the June 2019 statements had already subsided. Thus, in awarding $1.7 million in 'reputation repair damages,' the *Carroll II* jury already made Plaintiff "whole," *i.e.*, awarded her the monetary means to restore her reputation, with respect to any reputational harm suffered from October 12, 2022 to the present. This proposition is only bolstered by the fact that the  two 'reputation repair programs' developed by Professor Humphreys for *Carroll I* and *Carroll II* are *identical* in all relevant respects, including the mode and manner in which the a restorative campaign will be carried out and the target audience of such campaign.

Given the unique procedural history of this case, there appears to be a dearth of on-point case law with respect to this precise issue. However, Defendant respectfully submits that an analogy may prove helpful in illustrating the 'double recovery' concerns at play here. Imagine a plaintiff who was involved in two motor vehicle accidents, both of which caused injury to her left shoulder. The plaintiff proceeds to file two separate lawsuits, one for each accident ("*MV I*" and "*MV II*"). *MV II* proceeds to trial before *MV I*, but the defense is prohibited from referencing the earlier accident or how it may have negatively affected the condition of the plaintiff's left shoulder as of the date of the second accident. The *MV II* jury then proceeds to award $1.7 million in compensatory damages for the plaintiff's left shoulder injury. Subsequently, the *MV I* case proceeds to trial and the jury awards plaintiff a similar, or perhaps even larger, sum, without consideration of the $1.7 million judgment that the plaintiff had already received in the second accident. In this scenario, even though there are two distinct *harms* (*i.e.,* two separate motor vehicle accidents) the plaintiff has received a "double recovery" because she has been "made whole" two times over.

The same risk is present here. If Plaintiff is permitted to recover for reputational harm from October 12, 2022 to the present—which she was already compensated $1.7 million to repair—she will receive overlapping and duplicative relief. Under the principles of the 'double recovery' rule, this type of windfall is inequitable and impermissible. Therefore, any award in the instant action for a reputational repair program in the instant action must be reduced by $1.7 million to account for the corresponding relief awarded to Plaintiff in *Carroll II*.

## CONCLUSION

Based upon the foregoing reasons of fact and law and the reasons set forth in the moving papers, Defendant, Donald J. Trump, respectfully requests that his motion for entry of an order limiting the issues to be litigated on the grounds of collateral be granted in its entirety.

Dated: New York, New York
       August 23, 2023

Respectfully submitted,

Alina Habba, Esq.
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
           -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Fax: (908) 450-1881
Email: ahabba@habbalaw.com
       mmadaio@habbalaw.com

*Attorneys for Defendant Donald J. Trump*