**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>    *Plaintiff,*<br><br> v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>    *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

<u>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**</u>
<u>**PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE**</u>

Alina Habba, Esq.
Michael T. Madaio, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
   -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.     PLAINTIFF'S SUMMARY JUDGMENT MOTION SEEKS RELIEF ON ISSUES THAT EXCEED THE JURY'S FINDING IN CARROLL II AND THEREFORE MUST BE DENIED IN IT'S ENTIRETY ................................................................... 4

    A. The Jury's Battery Verdict is Not Preclusive Because It Was Decided Under a Less Stringent Burden of Proof ................................................................................ 6

    B. The Jury Verdict in Carroll II Does Not Establish That the June 2019 Statements are Defamatory. ........................................................................................................ 8

     i. Plaintiff Has Not Established that the June 2019 Statements Have Defamatory Meaning ....................................................................................................... 9

     ii. Plaintiff Is Unable To Satisfy Her Burden as to the Falsity of the June 2019 Statements .................................................................................................... 13

     iii. It Has Never Been Established That Defendant Acted With Actual Malice With Respect to the June 2019 Statements ........................................................... 15

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

*Cases*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 255-56 (1986) ................................................................16

*Aronson v. Wiersma*,
    65 N.Y.2d 592, 594 (1985) .................................................................10

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) ........................................8, 9

*Boguslavsky v. Kaplan*,
    159 F.3d 715, 720 (2d Cir. 1998) ..........................................................5

*Carroll v. Trump*,
    Case No. 1:22-cv-1001 (S.D.N.Y 2022) .................................................1

*Celle v. Filipino Rep. Enterprises Inc.*,
    209 F.3d 163, 178 (2d Cir. 2000) ..........................................................9

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168, 174 (2d Cir. 2001) .........................................................15

*Church of Scientology Int'l v. Time Warner, Inc.*,
    903 F. Supp. 637, 641 (S.D.N.Y. 1995) ..............................................16

*Clark v. Bear Stearns & Co.*,
    966 F.2d 1318, 1322 (9th Cir.1992) ......................................................6

*Cobb v. Pozzi*,
    363 F. 3d 89, 113 (2d Cir. 2000) ........................................................6, 7

*Contemp. Mission, Inc. v. New York Times Co.*,
    842 F.2d 612, 623-27 (2d Cir. 1988) ...................................................16

*DiBella v. Hopkins*,
    403 F.3d 102, 115 (2d Cir. 2005) ..........................................................7

*Dongguk Univ. v. Yale Univ.*,
    734 F.3d 113, 124 (2d Cir. 2013) .........................................................18

*Faulkner v. Nat'l Geographic Enters. Inc.*,
    409 F.3d 26, 37 (2d Cir. 2005) ..............................................................5

*Franklin v. Daily Holdings, Inc.*,
    35 A.D.3d 87, 94 (1st Dept. 2015) ...................................................................13

*Gertz v. Welch*,
    418 U.S. 323, 342, 94 S.Ct. 2997, 3008 (1974)......................................................7

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146, (1993)...................................................................................13

*Guenther v. Holmgreen*,
    738 F.2d 879, 888 (7th Cir.1984) ......................................................................6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)................................18

*Herbert v. Lando*,
    781 F.2d 298,305-07 (2d Cir. 1986) ................................................................16

*Karedes v. Ackerley Grp., Inc.*,
    423 F.3d 107, 114 (2d Cir.2005) .....................................................................15

*Kaufman v. Eli Lilly & Co.*,
    65 N.Y.2d 449, 457 (N.Y. 1985) .....................................................................10

*Kipper v. NYP Holdings Co., Inc.*,
    12 N.Y.3d 348, 354-55 (2009)........................................................................17

*Jack Faucett Assocs., Inc. v. Am. Tel, & Tel. Co.*,
    744 F.2d 118, 124 (D.C. Cir. 1984)....................................................................5

*James v. Gannett Co.*,
    40 N.Y.2d 415, 419 (1976)...............................................................................9

*Liberman v. Gelstein*,
    80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992).........................................................16

*Lindsay v. Ass'n of Prof'l Flight Attendants*,
    581 F.3d 47, 50 (2d Cir. 2009) .........................................................................5

*Mahmood v. Research in Motion Ltd.*,
    905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012) .......................................................10

*Misek-Falkoff v. Am. Law. Media, Inc.*,
    300 A.D.2d 215, 216, 752 N.Y.S.2d 647 (2002).................................................11

*Napoli v. Breaking Media*,

187 A.D.3d 1026, 1027 (2020) ...............................................................................11

*Neal v. Asta Funding, Inc.*,
2014 U.S. Dist. LEXIS 113142, 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) ...........8

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254, 283 (1964)...................................................................................15

*Palin v. New York Times Co.*,
940 F.3d 804, 809 (2d Cir. 2019) ........................................................................15

*Phila. Newspapers v. Hepps*,
475 U.S. 767, 773, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).................................15

*Postlewaite v. McGraw-Hill, Inc.*,
333 F.3d 42, 49 (2d Cir. 2003). .............................................................................6

*SCR Joint Venture L.P. v. Warshawsky*,
559 F.3d 133, 137 (2d Cir. 2009) ..........................................................................5

*Senno v. Elmsford Union Free Sch. Dist.*,
812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) ..............................................................5

*Silsdorf v. Levine*,
59 N.Y.2d 8, 13 (1983). ......................................................................................13

*Sneddon v. Koeppel Nissan, Inc.*,
46 A.D.3d 869, 870-71 (2d Dept. 2007)................................................................10

*Tah v. Glob. Witness Publ'g, Inc.*,
991 F.3d 231, 240 (D.C. Cir. 2021) ......................................................................15

## **Rules and Statutes**

Civil Rights Law § 74 ........................................................................................11

Fed. R. Civ. P. 56(a) ............................................................................................5

Federal Practice and Procedure § 4422 at 592 (2002) ......................................6

Federal Practice, § 132.02[4][e] (3d ed.1997) ...................................................7

Restatement (Second) of Judgments § 28(4) (1982)..........................................7

18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4422 at 592 (2002)....6, 7

18 James Wm. Moore et al., Moore's Federal Practice, § 132.02[4][e] (3d ed.1997) ....................7

Defendant, Donald J. Trump ("Defendant"), by and through his undersigned attorneys, Habba Madaio & Associates LLP, respectfully submits this memorandum of law in opposition to the motion for partial summary judgment (the "Motion") filed by the plaintiff, E. Jean Carroll ("Plaintiff"), on August 2, 2023 (ECF 190).[1] For the reasons set forth herein, the Motion should be denied in its entirety.

## **BACKGROUND**

Defendant recognizes the Court's familiarity with the extensive history surrounding this case and the related action of *Carroll II*. *See* ECF 208 at 2 ("The Court assumes familiarity with its prior decisions in this case ('*Carroll I*') and in a second closely related case ('*Carroll II*')."). For the Court's convenience, and for ease of reference, below is a brief recitation of the statements that form the basis of the instant motion.

In June of 2019, Plaintiff alleged that Defendant sexually assaulted and raped her at a Bergdorf Goodman sometime in the 1990s. In response to these allegations, Defendant issued three separate statements as sitting President of the United States.

On June 21, 2019, Defendant issued a statement, which was circulated by the Deputy White House Press Secretary, in response to Plaintiff's allegations:

> Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago, I've never met this person in my life. She is trying to sell a new book – that should indicate her motivation. It should be sold in the fiction section. Shame on those people who make up false stories of assault to try to get publicly for themselves, or sell a book, or carry out a political agenda – like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news – it's an epidemic. Ms. Carroll & New York Magazine. No pictures? No surveillance? No video? No

---

[1] In line with this Court's prior directive, *see* ECF 191, Defendant submitted a motion on August 16, 2023 in opposition to Plaintiff's request for a determination as to the facts established in *Carroll v. Trump*, Case No. 1:22-cv-10016 (S.D.N.Y 2022) ("*Carroll II*") (ECF 210). Defendant incorporates his prior motion herein.

reports? No sales attendants around?? I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened. False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms. If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations.

*See* Plaintiff's First Amended Complaint, ECF 157-1 ("Complaint") at ¶ 83.

On June 22, 2019, Defendant issued a second statement to the White House press:

"[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—
[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.
And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's happening more and more. When you look at what happened to Justice Kavanaugh and you look at what's happening to others, you can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of business, from what I hear. They'll do anything they can. But this was about many men, and I was one of the many men that she wrote about. It's a totally false accusation. I have absolutely no idea who she is. There's some picture where we're shaking hands. It looks like at some kind of event. I have my coat on. I have my wife standing next to me. And I didn't know her husband, but he was a newscaster. But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New York—which is one of the reasons it's failing. People don't read it anymore, so they're trying to get readership by using me. It's not good.

You know, there were cases that the mainstream media didn't pick up. And I don't know if you've seen them. And they were put on Fox. But there were numerous cases where women were paid money to say bad things about me. You can't do that. You can't do that. And those women did wrong things—that women were actually paid money to say

2

bad things about me. But here's a case, it's an absolute disgrace that she's allowed to do that.

*Id.* at ¶ 92.

Thereafter, on June 24, 2019, Defendant issued a third statement in response to Plaintiff's allegations against him: "I'll say with great respect: Number one, she's not my type. Number two, It never happened. It never happened, OK?" *Id.* at ¶ 97.

These three statements (the "June 2019 Statements") subsequently became the subject of the instant suit.

Subsequently, thereafter, Defendant issued a statement on October 12, 2022 (the "October 12 Statement"), commenting on the instant litigation:

> This 'Ms. Bergdorf Goodman case' is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country."

> "In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to 'Trump'!"

3

*Id*. at 152.

Thereafter, on November 24, 2022, Plaintiff filed a second defamation case against Defendant entitled *E. Jean Carroll v. Donald J. Trump*, Case No. 1:22-cv-1001 (S.D.N.Y 2022) ("*Carroll II*"). The *Carroll II* complaint also detailed Plaintiff's account of the alleged Bergdorf Goodman incident, but included a cause of action under the Adult Survivor's Act, as well as a new defamation claim stemming from Defendant's October 12, 2022 statement relating to the litigation sub judice.

*Carroll II* commenced trial on April 25, 2022. Throughout the duration of the trial, the jury was repeatedly instructed by this Court to consider only the October 12 statement, and to entirely disregard the June 2019 statements. *See* ECF 191 at 537:13-18 ("Members of the jury, there are two lawsuits between Ms. Carroll and Mr. Trump. This is one of them. The first lawsuit was brought in 2019. That's not the one we are dealing with. It's still alive, but you don't have to worry about why or where or whatever. That was brought solely for alleged defamation that Mr. Trump allegedly committed in 2019").The jury subsequently issued its verdict on May 9, 2023, finding that Plaintiff was not raped by Defendant, instead finding that Plaintiff was "sexually abused." *See* ECF 174 at 1. Further, as it relates to the October 12, 2022 statement, the jury found by a preponderance of the evidence that the statement was defamation, and by clear and convincing evidence that it was (1) false and (2) made with actual malice.

## ARGUMENT

I.   **PLAINTIFF'S SUMMARY JUDGMENT MOTION SEEKS RELIEF ON ISSUES THAT EXCEED THE JURY'S FINDING IN CARROLL II AND THEREFORE MUST BE DENIED IN IT'S ENTIRETY**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." S*enno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* (internal quotation marks omitted). In considering a motion for summary judgment, the Court resolves all ambiguities and draws all reasonable inferences against the moving party. *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009).

Further, to invoke the doctrine of collateral estoppel, the following factors must be met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). This is because the doctrine is "detailed, difficult, and potentially dangerous." *Jack Faucett Assocs., Inc. v. Am. Tel, & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984). Moreover, the use of offensive collateral estoppel is particularly dangerous, and is narrowly circumscribed, because it can produce "extraordinarily harsh and unfair results," enshrine errors from previous cases, and "may have a and fair opportunity for litigation in the prior proceeding; and 4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *See*, *e.g.*, *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (setting forth above requirements "[i]n order for a plaintiff to bar a defendant from litigating an issue on collateral estoppel grounds."). As the party seeking to invoke collateral estoppel, Plaintiff bears the burden of demonstrating "with clarity and certainty" each element. *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 49 (2d Cir. 2003).

Here, for the reasons outlined below, as well as in Defendant's previously-filed opposition papers,[2] Plaintiff's motion for partial summary judgment must be denied in its entirety. Plaintiff has failed to establish that any substantial issues of fact or law have preclusive effect in this action and, even if there are certain findings that can be applied to the instant action, they are not sufficient to foreclose any genuine dispute of material fact as to the pertinent issues in this case.

## A.    The Jury's Battery Verdict is Not Preclusive Because It Was Decided Under a Less Stringent Burden of Proof

The finding of battery in *Carroll II* has no bearing on the case at bar because it was determined under a different burden of proof—the 'preponderance of the evidence' standard—whereas two of the critical and determinative elements here, falsity and actual malice, must be established by the heightened 'clear and convincing' standard.

It is recognized that a shift or change in the burden of proof can render the issues in two different proceedings non-identical, and thereby make collateral estoppel inappropriate. *See*, *e.g.*, *Cobb v. Pozzi*, 363 F. 3d 89, 113 (2d Cir. 2000) ("Courts and commentators alike have recognized that a shift or change in the burden of proof can render the issues in two different proceedings non-identical, and thereby make collateral estoppel inappropriate."); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1322 (9th Cir.1992) ("[C]ollateral estoppel does not preclude claims that have a different burden of proof than previously decided claims[.]"); *Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir.1984) ("It is, of course, well established that issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required." (citation omitted)); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4422 at 592 (2002) ("Failure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in

---

[2] *See* ECF 210.

later litigation."); 18 James Wm. Moore et al., Moore's Federal Practice, § 132.02[4][e] (3d ed.1997) (noting that "issue preclusion does not apply when the party seeking to benefit from preclusion has a significantly heavier burden in the subsequent action than in the prior action."); Restatement (Second) of Judgments § 28(4) (1982) ("[R]elitigation of the issue in a subsequent action between the parties is not precluded ... [where] [t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; ... or the adversary has a significantly heavier burden than he had in the first action.").

Indeed, as the Second Circuit has explained, "a party's success in an earlier proceeding where it faced a lower burden of proof does not mean that, against a higher burden of proof in a subsequent proceeding, that party would achieve the same result." *Cobb*, 363 F.3d at 114. "To apply issue preclusion [when the burden of proof is heavier in the second litigation] would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden [been] imposed." *Id.* (citing Restatement (Second) of Judgments § 28, cmt. f (1982)). "Since the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden, preclusive effect is properly denied." *Id.*

Here, the *Carroll II* jury's finding that a sexual assault occurred was made under the preponderance of the evidence standard. In the instant action, at least two of the primary elements of Plaintiff's defamation claim, falsity and actual malice, must be proven by a 'clear and convincing' standard. *See Gertz v. Welch*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008 (1974) (A plaintiff must prove actual malice by clear and convincing evidence.); *see also DiBella v. Hopkins*, 403 F.3d 102, 115 (2d Cir. 2005) (noting that "[w]hether the federal Constitution requires plaintiffs to prove falsity by clear and convincing evidence is an open question," but ultimately determining

that "there is significant and persuasive evidence from which to conclude that the New York Court of Appeals would hold that falsity must be proved by clear and convincing evidence."). Thus, for the purposes of the instant motion, the jury's finding relating to the sexual assault—and any other findings arising from the battery claim in *Carroll II*—cannot be afforded preclusive effect and, therefore, are irrelevant.

**B.    The Jury Verdict in *Carroll II* Does Not Establish That the June 2019 Statements are Defamatory.**

Under New York law, Plaintiff must establish the following elements to prevail on her defamation claim: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] per se, and (vii) not protected by privilege." *Neal v. Asta Funding, Inc.*, 2014 U.S. Dist. LEXIS 113142, 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) (citations and internal quotation marks omitted). Notably, when multiple defamatory statements are involved, these elements must be satisfied as to *each* individual claim. *See*, *e.g.*, *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (explaining that "the [c]ourt [would] evaluate each allegedly defamatory statement (or set of statements) and determine whether it is actionable, granting dismissal of claims based on nonactionable statements and denying dismissal with respect to claims based on actionable statements.").

Yet, instead of engaging in this claim-specific analysis, Plaintiff instead attempts to rely upon the *Carroll I* verdict in the broadest sense, merely contending, in complete conclusory fashion, that the statements in *Carroll I* and *Carroll II* are "substantially similarly," without any further analysis as to how the jury's finding can be applied to any of the three particular statements made on  21, 22, or 24.  and wholly ignores the fact that the jury was not tasked with—and, in fact,

was specifically precluded from—assessing the particularized allegations contained in the June 2019 statements. This is a fatal error since each allegedly defamatory statement must be evaluated on an individual basis to determine whether it is actionable, *see Conde Naste*, *supra*, and Plaintiff's arguments fail for this reason alone.

In addition, for the reasons set forth below, Plaintiff also fails to meaningfully analogize the October 2022 statement to the June 2019 statements, or otherwise establish that the jury's finding that the October 2022 statement was defamatory is able to satisfy each and every defamation element for the June 2019 statements, much less to a level that sufficient to grant partial summary judgment in her favor.

### i. Plaintiff Has Not Established that the June 2019 Statements Have Defamatory Meaning

Contrary to Plaintiff's contention, the jury's verdict does not conclusively establish that the June 2019 statements are capable of a defamatory meaning. As the Second Circuit explained:

> A plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement or publication. If the statement is susceptible of only one meaning the court must determine, as a matter of law, whether that one meaning is defamatory. If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood.

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) (internal quotation marks and citations omitted)

Importantly, in determining whether a statement is susceptible of a defamatory meaning, this Court must examine not only the particular words of the alleged defamatory statement but the *entire communication* in which those words appeared. *See James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976) (noting that a "court will not pick out and isolate particular phrases, but will consider the publication as a whole."); *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) ("the words

must be construed in the context of the entire statement or publication as a whole"). Accordingly, courts must evaluate each allegedly defamatory statement, and the full context of the challenged portion therein, to determine whether it is actionable. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012).

Moreover, "[i]dentity of issues" exists when "the legal theory in both actions is the same and [] there are no significant factual differences between them." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 457 (N.Y. 1985). By contrast, issues are "discrete and not identical" if they rely on identical facts but present a different legal theory. *Sneddon v. Koeppel Nissan, Inc.*, 46 A.D.3d 869, 870-71 (2d Dept. 2007). "If a new context changes the legal analysis, then the issue may not be sufficiently 'identical' to bind a party to a decision in the prior action." *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012), aff'd by 515 F. App'x 891 (Fed. Cir. 2013) (unpublished).

Here, Plaintiff contends that the June 2019 statements are defamatory as a result of the purported preclusive effect of *Carroll II*. Yet, this argument lacks merit for the simple reason that the jury in *Carroll II* was specifically instructed *not to consider* the contents of the June 2019 statements in reaching its verdict, and, instead, was directed to focus solely on the claims contained in the October 2022 statement. *See* ECF 191 at 537:13-18 ("Members of the jury, there are two lawsuits between Ms. Carroll and Mr. Trump. This is one of them. The first lawsuit was brought in 2019. That's not the one we are dealing with. It's still alive, but you don't have to worry about why or where or whatever. That was brought solely for alleged defamation that Mr. Trump allegedly committed in 2019")*; See also*, ECF 197 at 1158:3-7 ("Look, members of the jury, the question of whether there was any adverse effect by virtue of the 2019 statements and, if there was, how much adverse effect is not at issue in this case. It is not for you to determine.").

Further, the cases that Plaintiff relies upon in support of her argument that the June 2019 statements and the October 2022 statements are "substantially the same" are inapposite. *See* ECF 190 at 16. In *Napoli v. Breaking Media, Inc.*, 187 A.D.3d 1026, 1027 (2020), the court was tasked with determining whether an article that was republished by the defendant was precluded under the doctrine of collateral estoppel, given a prior court's finding that the original article issued by the New York Post was protected under Civil Rights Law § 74. Critically, the *Napoli* court did not review the contents of the statements themselves to determine whether there was a defamatory meaning that could be construed, nor did it parse out each of the allegations in the challenged statement. Rather, it found that, since the alleged defamatory article was a republication of the Post's article, it was inherently "substantially the same" and thus similarly protected under Civil Rights Law § 74. *Id*. at 1028.

Likewise, the second case that Plaintiff relies upon, *Misek-Falkoff v. Am. Law. Media, Inc.*, 300 A.D.2d 215, 216, 752 N.Y.S.2d 647 (2002), dealt with the same issue of whether Civil Rights Law § 74 attached to a second article that commented on the same legal action. *Id*. at 216. In neither case was a court asked to analyze the substance or content of two separate statements, containing different factual allegations, and made years apart, to determine whether they were similar enough to invoke the doctrine of collateral estoppel.

Here, the numerous distinctions between the two sets of statements militate against applying collateral estoppel. Indeed, Plaintiff herself has tacitly acknowledged that *Carroll I* and *Carroll II* involve "separate cases to address separate injuries arising from separate statements published more than three years apart." *See* ECF 204 at 8. In her amended Complaint, Plaintiff alleges that each of the statements issued in June of 2019 are defamatory. As it specifically relates to the June 21 statement, Plaintiff alleges that the statement is false on the basis that (1) Defendant

never met Plaintiff; (2) he didn't know who she was at the time that he made the statement; (3) Plaintiff made the allegations to increase her book sales; and (4) that Plaintiff made the allegations to further a political agenda. *See* ECF 157-1, ¶¶ 86-90.  Similarly, Plaintiff contends that the June 22, 2019 statement is defamatory for the same reasons, but includes that Defendant falsely stated that Plaintiff "falsely accused other men of sexual assault" and that Plaintiff "had been paid money to invent the allegations against him."

Yet, Plaintiff fails to recognize that the substance of the June 2019 statements differs in several significant respects from the October 2022 statement. First, the October 2022 statement does not contain any allegation that Plaintiff fabricated the allegations in order to promote her book. Rather, it asserts that she appeared on a televised interview with Anderson Cooper to promote her book. Second, the statement made no mention of Plaintiff furthering a political agenda, nor did it assert that she was receiving funding from outside sources to further her claims. Since the statements differ in these respects, Plaintiff has failed to demonstrate that the issues in *Carroll I* and *Carroll II* are identical, as is required under the collateral estoppel test. Further, since the *Carroll II* jury was specifically instructed not to consider the June 2019 statements, it cannot be reasonably disputed that the contents of those statements were not adjudicated in *Carroll II*.

Simply put, it is not enough for Plaintiff to merely state that the challenged statements in both *Carroll I* and *Carroll II* imply that Plaintiff's allegations were made to advance undefined "nefarious reasons." Rather, each statement must be assessed in isolation, and as the *Carroll II* jury did not have an opportunity to review each facet of the June 2019 statements to determine what portions carry a defamatory meaning, the *Carroll II* verdict does not have preclusive effect in the instant action.

**ii.    Plaintiff Is Unable To Satisfy Her Burden as to the Falsity of the June 2019 Statements**

For many of the same reasons delineated above, Plaintiff also fails to demonstrate that the *Carroll II* verdict is controlling on the issue of falsity.

In order to determine whether a statement is false, a court must consider the entire publication as well as the circumstances of its issuance. *See Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983). "Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, (1993) (internal quotation marks omitted). To satisfy the falsity element of a defamation claim, a plaintiff must allege that the challenged is 'substantially false'" (*Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dept. 2015).

As stated above, the October 2022 statement and the June 2019 statements are not identical, and therefore the specific allegations contained in the June 2019 statements were not individually assessed to determine whether the allegations contained therein were false. Indeed, in the context of the October 2022 statement, the jury was singularly tasked with determining whether the sexual assault occurred; the Court's jury charge in *Carroll II* is illustrative of that point: "As you probably already have guessed, whether Mr. Trump's statement is false or true depends *largely or entirely* on whether you find that Mr. Trump raped or sexually abused or forcibly touched or otherwise sexually attacked Ms. Carroll." *See* ECF 201 at 1431:2-6 (emphasis added).

The complete absence of the jury's consideration of whether Defendant made the October 2022 statement for "nefarious reasons" demonstrates that the issues dealt with in *Carroll II* issues are not substantially the same as the instant matter, let alone identical. Further, as the jury was specifically tasked to consider whether the sexual assault occurred, as reflected in the Court's

13

instruction, there is no indication that the bevy of "nefarious reasons" purportedly underlying the June 2019 statements were necessary to support a valid and final judgment on the merits. An issue is "necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835, 129 S.Ct. 2145. Thus, a finding that Defendant lied when he asserted that Plaintiff may have been motivated for financial or political purposes was clearly not essential to the ultimate judgment, given that the jury had not been instructed as such, nor were these assertions even contained in the October 12 Statement. *See United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (explaining that when an issue was unnecessary to a judgment, the parties may have had "limited incentive to litigate [it] fully," and it may have been "less likely to receive close judicial attention.") (citation omitted)).

Additionally, the question of whether Defendant's June 24, 2019 statement, namely that Plaintiff is not his type, was similarly not considered by the *Carroll II* jury. Recently, this Court refused to strike Defendant's affirmative defense that "some or all of the statements at issue are matters of opinion that are not capable of being proven true or false", ECF 171 at 21, ¶ 5, noting that the Court has not yet considered whether the June 24 statement carries a defamatory meaning. ECF 200 at 20. Plaintiff similarly fails to address this statement in her moving papers, instead lazily grouping this portion in as part of Defendant's "June 2019 Statements. *See* ECF 190 *generally*.

At bottom, the only true question the *Carroll II* jury was tasked with finding is whether it believed that the sexual assault occurred. As the other issues, namely, Plaintiff's motivations underlying her allegations, were not considered, no preclusive effect may apply and Plaintiff's summary judgment motion must fail.

14

### iii.   It Has Never Been Established That Defendant Acted With Actual Malice With Respect to the June 2019 Statements

With respect to actual malice, Plaintiff argues, in essence, that because a jury found that a particular statement made by Defendant in October 2022 was made with actual malice, that it must naturally follow that three separate statements, made nearly *three* years prior, were also made with actual malice. This argument is wholly unavailing and unsupported by a wealth of case law.

It is well established that when a defamation claim is brought by a public figure, the First Amendment independently requires a showing that the defendant acted with actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). It is undisputed that Plaintiff here is a public figure, and she must prove that the statements made in June 2019 were made with actual malice. As such, Plaintiff carries the burden of demonstrating that each statement that she contends is defamatory was made "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (internal quotation marks omitted). *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021) (quotation marks omitted). "The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication[.]" *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001). "The actual malice showing 'must be made with convincing clarity, or, in a later formulation, by clear and convincing proof.'" *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *Phila. Newspapers v. Hepps*, 475 U.S. 767, 773, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)).

The actual malice standard imposes a "heavy burden," and the burden to plead and prove a defendant's subjective awareness of falsity applies separately to each statement challenged as

false and defamatory. *Contemp. Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 623-27 (2d Cir. 1988) (analyzing each statement); *Herbert v. Lando,* 781 F.2d 298,305-07 (2d Cir. 1986) (same); *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995) ("the Court considers *each* allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence"), aff'd sub nom *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). "The actual malice standard is famously daunting."

"As the New York Court of Appeals has stated, 'there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action.'" *County Vanlines Inc.*, 317 F. Supp. 2d 383 (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992)). Thus, "malice ... means more than mere negligence or want of sound judgment ... It means more than hasty or mistaken action." *Id.* "Even a negligent investigation, without more, does not create an inference that a defendant suspected the falsity of the information and purposefully avoided seeking out facts that would confirm its falsity." *Present*, 253 A.D.2d at 188. *See Sanderson*, 259 A.D.2d at 890, 686 ("the failure to investigate its truth, standing alone, is not enough to prove actual malice even if a prudent person would have investigated before publishing the statement ... unless it evinces a deliberate attempt to avoid the truth").

In line with the established standard, this Court instructed the jury that:

> "Reckless disregard means that when he made the October 12 statement, he had serious doubts as to the truth of the statement or made the statement with a high degree of awareness that it was probably false. So Question 8 asks you to decide whether Ms. Carroll proved by clear and convincing evidence that Mr. Trump, when he made his October 12 statement, knew that it was false, had serious doubts

as to its truth, or had a high degree of awareness that the statement probably was
false."

*See* ECF 201 at 1431:20-1432:3.

Here, the record does not establish with convincing clarity that Defendant published the
June 2019 statements with actual malice. As stated above, the jury in *Carroll II* was specifically
precluded from considering the statements made in June 2019, and was instructed not to consider
the content of the June 2019 statements when arriving at their verdict. This point is illustrated
above, where the Court repeatedly instructed the jury to only consider the October 12 statement
with respect to whether Plaintiff meets her burden under the demanding standard of actual malice.
The jury could not focus on the Defendant's state of mind at the time of the publication since they
were not allowed to consider those statements in the first instance. *See Kipper v. NYP Holdings
Co., Inc*., 12 N.Y.3d 348, 354-55 (2009) ("The inquiry is thus a subjective one, focusing upon the
state of the mind of the publisher of the allegedly libelous statements at the time of publication.")

Plaintiff also asks this Court to abandon the well-established rule that a court must analyze
"each statement" to determine whether Plaintiff has satisfied the weighty burden of establishing
actual malice, *Contemporary Mission, Inc.*, 842 F.2d at 623-27; instead, Plaintiff asks the Court to
automatically carry over the actual malice finding from *Carroll II* to the case at bar, in spite of the
fact that this specific issue was not at issue, litigated, or decided in *Carroll II* . Simply put, this
approach defies common sense and flies in the face of the purpose of the collateral estoppel
doctrine. Plaintiff consistently couches her description of the June 2019 statements as
"substantively identical" to the October 2022 statement because she cannot, in good faith, point to
any actual solidarity between the two statements. As illustrated above, The October 12 statement
does not contain a single reference to Plaintiff's potential political motivations, nor does it directly
state that Plaintiff made her allegations to advance her book sales, two points that Plaintiff has

affirmatively alleged are defamatory. *See* ECF 157-1 at ¶¶ 86-90. Moreover, these points were not actually litigated, as is required under the doctrine of collateral estoppel. In short, the Court is now considering two different statements, made at dramatically different times, and motivated for different reasons. It is therefore axiomatic that they should not be construed as being one and the same.

Furthermore, Plaintiff's contention that Defendant acted with "gross and willful disregard for the truth" for purportedly failing to investigate Carroll's account simply does not move the needle. ECF 190 at 21-22. It is well-established that "[g]enerally, 'mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (quoting *Gertz*, 418 U.S. at 332, 94 S.Ct. 2997); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *New York Times*, 376 U.S. at 288, 84 S.Ct. 710 ("[T]he evidence against the Times supports at most a finding of negligence in failing to discover the misstatements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice."). Nor does his supposed animosity for Plaintiff establish actual malice. (case law) In short, the jury in the upcoming trial must be permitted to assess each statement, along with each of the challenged portions at trial to avoid unduly prejudicing Defendant and upending decades of case law.

Based on the foregoing, Plaintiff has not established that she is entitled to summary judgment on this element, and Defendant must be permitted to demonstrate to a jury that the June 2019 statements were not made with actual malice.

## **CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that Plaintiff's motion for

partial summary judgment be denied in its entirety.


Dated: New York, New York
      August 23, 2022

Respectfully submitted

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
          -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
         mmadaio@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*