**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>*Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**DEFENDANT DONALD J. TRUMP'S RESPONSE TO PLAINTIFF E. JEAN CARROLL'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Defendant Donald J. Trump ("Defendant") submits the following responses to Plaintiff E. Jean Carroll's Local Rule 56.1 Statement of Undisputed Material Facts, ECF 191.

## I.    TRUMP'S JUNE 2019 STAMENTS

1.    On June 21, 2019, *New York Magazine* published an excerpt of a forthcoming book by Carroll in which she revealed that Trump had sexually assaulted her over two decades earlier. *See* Ex. 1 to the Kaplan Decl.

**Response:** Undisputed.

2.    In response, Trump made three public statements about Carroll on June 21, 22, and 24, 2019, respectively. *See* Ex. 2 to the Kaplan Decl. ("Trump Dep.") at 58:14-70:7; *see also* Ex. 3 to the Kaplan Decl. at 5-6, 16-17, 21 (Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission).

**Response:** Undisputed.

3.    On June 21, 2019, Trump released the following statement to a reporter, who posted it to Twitter shortly after Carroll's accusation became public:

Regarding the 'story' by E. Jean Carroll, claiming she once encountered me at Bergdorf Goodman 23 years ago. I've never met this person in my life. She is trying to sell a new book—that should indicate her motivation. It should be sold in the fiction section.

Shame on those who make up false stories of assault to try to get publicity for themselves, or sell a book, or carry out a political agenda—like Julie Swetnick who falsely accused Justice Brett Kavanaugh. It's just as bad for people to believe it, particularly when there is zero evidence. Worse still for a dying publication to try to prop itself up by peddling fake news—it's an epidemic.

Ms. Carroll & New York Magazine: No pictures? No surveillance? No video? No reports? No sales attendants around I would like to thank Bergdorf Goodman for confirming that they have no video footage of any such incident, because it never happened.

False accusations diminish the severity of real assault. All should condemn false accusations and any actual assault in the strongest possible terms.

If anyone has information that the Democratic Party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible. The world should know what's really going on. It is a disgrace and people should pay dearly for such false accusations.

Ex. 4 to the Kaplan Decl.; *see also* Trump Dep. at 57:15-58:2, 59:20-23.

**Response:** Undisputed.

4.     On June 22, 2019, Trump made the following statement to reporters about Carroll before departing from the White House to Camp David:

[Reporter]: [Y]ou had said earlier that you never met E. Jean Carroll. There was a photograph of you and her in the late 1980's—

[Trump]: I have no idea who this woman is. This is a woman who has also accused other men of things, as you know. It is a totally false accusation. I think she was married—as I read; I have no idea who she is—but she was married to a, actually, nice guy, Johnson—a newscaster.

[Reporter]: You were in a photograph with her.

[Trump]: Standing with coat on in a line—give me a break—with my back to the camera. I have no idea who she is. What she did is—it's terrible, what's going on. So it's a total false accusation and I don't know anything about her. And she's made this charge against others.

And, you know, people have to be careful because they're playing with very dangerous territory. And when they do that—and it's

2

happening more and more. When you look at what happened to
Justice Kavanaugh and you look at what's happening to others, you
can't do that for the sake of publicity.

New York Magazine is a failing magazine. It's ready to go out of
business, from what I hear. They'll do anything they can. But this
was about many men, and I was one of the many men that she wrote
about. It's a totally false accusation. I have absolutely no idea who
she is. There's some picture where we're shaking hands. It looks like
at some kind of event. I have my coat on. I have my wife standing
next to me. And I didn't know her husband, but he was a newscaster.
But I have no idea who she is—none whatsoever.

It's a false accusation and it's a disgrace that a magazine like New
York—which is one of the reasons it's failing. People don't read it
anymore, so they're trying to get readership by using me. It's not
good.

You know, there were cases that the mainstream media didn't pick
up. And I don't know if you've seen them. And they were put on
Fox. But there were numerous cases where women were paid money
to say bad things about me. You can't do that. You can't do that.
And those women did wrong things—that women were actually paid
money to say bad things about me.

But here's a case, it's an absolute disgrace that she's allowed to do
that.

Ex. 5 to the Kaplan Decl.; *see also* Trump Dep. at 61:15-64:10.

**Response:** Undisputed.

5.      On June 24, 2019, Trump stated the following to reporters in the Oval Office about

Carroll's allegation: "I'll say it with great respect: Number one, she's not my type. Number two,

it never happened. It never happened, OK?" Ex. 6 to the Kaplan Decl.; *see also* Trump Dep. at

68:3-69:20.

**Response:** Undisputed.

6.      Trump published his June 21 statement by giving a copy of it to his staff for

distribution to the press and published his June 22 and June 24 statements by speaking directly to

reporters. *Id.* at 57:15-58:2, 59:20-23, 61:15-64:10, 68:3-18; *see also* Ex. 3 to the Kaplan Decl. at

5-7, 16-18, 21.

7.     In his deposition, Trump confirmed that he made all three statements himself. *See* Trump Dep. at 59:20-23, 66:24-67:4, 69:16-20.

**Response:** Undisputed.

8.     Trump acknowledged that all three statements were about Carroll and her allegations. *Id.* at 70:9-25.

**Response:** Undisputed.

9.     In his deposition, Trump reaffirmed and stood by his three June 2019 statements:

Q. Sitting here today, do you stand by this [June 21] statement?

A. Yes.

Q. Sitting here today, are there any inaccuracies in this statement that you now know of?

A. Not that I can see, no.

…

Q. I take it you stand by that [June 22] statement today?

A. Yes.

Q. Sitting here today, are you aware of any inaccuracies in your statement? …

A. No. … [T]he statement is, in my opinion, correct.

…

Q. … I take it, sir, that you stand by that [June 24] statement today?

A. Yes, I do.

Q. And I take it that from what we've been discussing so far that you don't see any inaccuracies in that statement?

…

A. No. No.

*Id.* at 60:3-60:8, 67:7-18, 69:21-70:5.

**Response:** Undisputed.

10.     Trump confirmed that he said he never met Carroll:

Q. In your June 21 statement that's marked as Exhibit 20, you say— and this is the Littman tweet—"I never met this person in my life."

A. Yes.

4

Q. Was that a true statement when you made it on June 21, 2019?

A. It was a true statement when I made it.

…

Q. So if I can understand your testimony, sir, you're saying that at the time you made the statement …, you were not aware of ever having met Ms. Carroll? You have since seen a photograph that shows you with Ms. Carroll on a receiving line; correct?

A. Along with a lot of other people.

…

Q. So the answer to my question is yes, that after you made the statement, you became aware that there's a photo of you with Ms. Carroll in a receiving line; correct?

A. At some point … I saw there was a photo on a receiving line, yes.

*Id.* at 80:4-10, 80:17-23, 81:7-14. Trump repeated this point at his deposition, often unprompted.

*See id.* at 76:4-8, 78:3-5, 110:22-24, 130:8-131:2, 141:24-142:14, 142:22-143:9.

**Response:** Undisputed.

11.     Trump confirmed that he said Carroll made up the sexual assault to sell a book:

Q. [I]n your June 21 statement ... you said that Ms. Carroll was trying to sell a new book and that you said shame on those who make up false stories of assault to try to get publicity for themselves or sell a book?

A. Yeah, that's right.

*Id.* at 87:6-12.

**Response:** Undisputed.

12.     Trump confirmed that he said that Carroll made up the sexual assault to carry out a political agenda:

Q. Another thing that you say in your June 21 statement is that Ms. Carroll was trying to carry out a political agenda?

A. Yeah.

Q. How did you know she had a political agenda if you didn't know who she was?

A. Somebody told me early on that she was somehow aligned with

5

> Hillary Clinton. She was either aligned with her or—I thought aligned with her.
>
> Q. Who told you that?
>
> …
>
> A. I don't know. I don't know who said it, but somebody had mentioned it since, that she was somehow into that whole world.

*Id.* at 88:14-24, 89:6-9.

**Response:** Undisputed.

13.     Trump made his June 2019 statements on his own, without any guidance or direction from anyone else, and without any research or investigation into Carroll or her accusations. *Id.* at 60:3-60:8, 67:7-18, 69:21-70:5, 78:6-10, 79:4-7, 81:7-11, 87:13-90:11. He was unable to identify any White House personnel involved in investigating, preparing, strategizing, or creating the defamatory statements he made about Carroll in June 2019. *Id.* at 99:4-103:23; 108:18-111:17.

**Response:** Disputed. Defendant objects to this proffered fact to the extent that it contains legal conclusions, unsubstantiated opinions, and argumentative statements that are improper in a Local Civil Rule 56.1 statement, including but not limited to the statement that the statements are "defamatory".

14.     The only people with whom Trump recalled speaking about Carroll's allegations are his daughter and his current wife. *See id.* at 102:16-22, 103:4-5.

**Response:** Disputed. Not supported by the cited materials as required by Local Rule 56.1(d) insofar as the cited deposition testimony of Defendant can support only that he could not recall each and every person he may have spoken with about Plaintiff's allegations.

15.     Trump acknowledged that he had no memory of anyone contacting him with information about Carroll after asking people to do so in his June 21 statement. *See id.* at 90:2-11.

**Response:** Undisputed.

16.     Trump issued all three of his June 2019 statements without reading the excerpt in

*New York Magazine* or Carroll's book itself—indeed, until his deposition, Trump had never even

seen the book:

> Q. [T]his is the excerpt from Ms. Carroll's book that was published
> in New York Magazine online [] on June 21, 2019. … At any point
> in time, did you read this article?
>
> …
>
> A. No, I don't believe I did.
>
> …
>
> Q. [This is] a book by E. Jean Carroll. It says What Do We Need
> Men For, and if you look at the publication date, it says first edition
> July 2019…. Sitting here today, sir, have you ever read this book
> either in its entirety or any portion of this book?
>
> A. No, never have. I've never seen the book actually.

*Id.* at 54:17-55:18.

**Response:** Undisputed.

17.     Neither Trump nor (to his knowledge) anyone working for him did any research on

Carroll:

> Q. Before you made this [June 21, 2019] statement …, do you know
> whether you or anyone working for you did any research on Ms.
> Carroll?
>
> A. … [N]ot that I know of.

*Id.* at 88:7-13.

**Response:** Disputed. Not supported by the cited materials as required by Local Rule 56.1(d)

insofar as the cited deposition testimony of Defendant can support only that he could not

whether a member of his team performed research as it relates to Plaintiff's claims.

18.     Trump admitted that no one ever reached out to Bergdorf's.

> Q. So before you made your statements that it never happened in 2019, did you or anyone on your staff reach out to anyone at Bergdorf Goodman?
>
> A. I didn't have to reach out to anybody because it didn't happen.
>
> …
>
> Q. After you made the statements that you made in June of 2019, did you or anyone working for you reach out to Bergdorf Goodman?
>
> A. After the statement was made? No.

*Id.* at 78:6-10, 79:4-9.

**Response:** Undisputed.

19.     At the time of his statements, Trump had no knowledge regarding Carroll's financial situation, the arrangement between Carroll and her publisher, or her book sales:

> Q. Before you made that statement, did you have any knowledge one way or the other of the financial arrangements between Ms. Carroll and the publisher of her book?
>
> A. No.
>
> Q. Did you even know who her publisher was?
>
> A. No.
>
> Q. Did you ever see her book contract?
>
> A. No.
>
> Q. Did you know anything about Ms. Carroll's financial situation?
>
> A. No.
>
> Q. Did you know anything about her expected book sales?
>
> A. No idea.

*Id.* at 87:13-88:3.

**Response:** Undisputed.

20.     He similarly had no evidence to support his accusation that she was carrying out a political agenda or working with the Democratic party:

> Q. Before issuing your statement on June 21, did you learn what political party Ms. Carroll belonged to?
>
> A. No, I didn't know that.
>
> Q. Before you issued your June 21 statement, did you have any

8

documents indicating that she was pursuing a political agenda?

A. No.

Q. At the end of your statement, your June 21 statement, you say: "If anyone has information that the Democratic party is working with Ms. Carroll or New York Magazine, please notify us as soon as possible." Did anyone ever notify you[?]

A. I don't know.

Q. Sitting here today, you can't recall anyone who notified you?

A. I don't know, yeah.

*Id.* at 89:18-90:11.

**Response:** Disputed. Defendant objects to this proffered fact to the extent that it contains legal conclusions, unsubstantiated opinions, and argumentative statements that are improper in a Local Civil Rule 56.1 statement, including but not limited to the statement that Defendant had "no evidence to support his accusation that she was carrying out a political agenda or working with the Democratic party."

21.     When pressed on his statement suggesting that Carroll was too ugly to sexually assault, Trump testified that "physically she's not my type, and now that I've gotten indirectly to hear things about her, she wouldn't be my type in any way, shape, or form." *Id.* at 94:10-13. He further testified that "that's 100 percent true. She's not my type. … There's no way I would ever be attracted to her." *Id.* at 142:13-143:3.

**Response:** Disputed as to materiality. Defendant's protected opinion of Plaintiff does not advance her legal theory.

22.     When confronted with the photo of Carroll and himself from a party before the assault, Trump twice misidentified Carroll as his ex-wife Marla Maples, insisting it was Maples smiling at him in the photo, when in fact the woman he was pointing to was Carroll herself:

A: [I]t's Marla.

Q. You're saying Marla is in this photo?

A. That's Marla, yeah. That's my wife.

Q. Which woman are you pointing to?

MS. HABBA: No, that's Carroll.

THE WITNESS: Oh, I see.

Q. The person you just pointed to was E. Jean Carroll.

*Id.* at 82:9-17.

> **Response:** Disputed as to materiality, as the purported misidentification of Plaintiff does
>
> not advance her legal theory.

23.     The photo did not depict Maples, but rather Carroll, Carroll's then-husband John

Johnson, Trump, and Trump's then-wife Ivana Trump. Ex. 7 at 49:11-15; Ex. 8 to the Kaplan Decl.

> **Response:** Disputed as to materiality as the purported misidentification of Plaintiff does
>
> not advance her legal theory.

24.     Trump continuously insulted Carroll in his deposition, stating: "It's a big, fat hoax.

She's a liar and she's a sick person in my opinion. Really sick," Trump Dep. at 148:11-13; "[S]he

made it up probably to sell her book or for her own ego, because she's … a very deranged, sick

person, to make it up," *id.* at 216:4-8; "And I think that's her big claim to fame, you know, that

she shook my hand at some celebrity event," *id.* at 81:3-5; "There's something a little off with her

mentally, *id.* at 121:16-17; "I will sue her after this is over, and that's the thing I really look forward

to doing," *id.* at 130:18-19; "I'll be suing her very strongly as soon as this case ends," *id.* at 130:25-

131:2; "I think she's a wack job," *id.* at 137:14-15; "I know nothing about this nut job," *id.* at

141:19-20; "[W]hen people accuse me of something, I think I have a right to be insulting," *id.* at

192:10-11; "That's a sick woman that would say that. Only a sick—there's something wrong with

her," *id.* at 217:2-4.

> **Response:** Disputed. Defendant objects to this proffered fact to the extent that it contains
>
> legal conclusions, unsubstantiated opinions, and argumentative statements that are
>
> improper in a Local Civil Rule 56.1 statement, including but not limited to the statement

that Defendant "insulted Carroll."

25.     Carroll received significant negative attention (both publicly and privately) following Trump's June 2019 statements. Ex. 9 to the Kaplan Decl. at 49-58.

**Response:** Disputed and not supported by the cited materials as required by Local Rule 56.1(d). Further, Plaintiff cannot offer Professor Humphrey's report as evidence at trial to prove the asserted facts.

26.     The quantitative data shows that Trump's June 2019 statements were widely disseminated. Based on a comprehensive analysis conducted by Professor Ashlee Humphreys and using conservative estimates, Trump's statements generated between 142,334,424 and 188,155,507 impressions across various forms of media. *See id.* at 26-30 & Appxs. D, E, F, G.

**Response:** Disputed for the same reasons delineated in Response 25.

27.     Professor Humphreys completed a quantitative impact analysis that showed approximately 25.25% of readers and listeners were likely to believe Trump's statements. *Id.* at 58-63 & Appx. L. As a result, between 34,075,512 and 42,936,354 of the impressions generated by Trump's statements were likely received by people who were receptive to them. *Id.*

**Response:** Disputed for the same reasons delineated in Response 25.

## II.     TRUMP'S OCTOBER 2022 STATEMENT AND TRIAL IN *CARROLL II*

28.     On October 12, 2022, Trump posted the following on Truth Social:



- October 12, 2022 -

## Statement by Donald J. Trump, 45th President of the United States of America

This "Ms. Bergdorf Goodman" case is a complete con job, and our legal system in this Country, but especially in New York State (just look at Peekaboo James), is a broken disgrace. You have to fight for years, and spend a fortune, in order to get your reputation back from liars, cheaters, and hacks. This decision is from the Judge who was just overturned on my same case. I don't know this woman, have no idea who she is, other than it seems she got a picture of me many years ago, with her husband, shaking my hand on a reception line at a celebrity charity event. She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, "swooned" her. It is a Hoax and a lie, just like all the other Hoaxes that have been played on me for the past seven years. And, while I am not supposed to say it, I will. This woman is not my type! She has no idea what day, what week, what month, what year, or what decade this so-called "event" supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. Our Justice System is broken along with almost everything else in our Country. Her lawyer is a political operative and Cuomo crony who goes around telling people that the way to beat Trump is to sue him all over the place. She is suing me on numerous frivolous cases, just like this one, and the court system does nothing to stop it. In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance. Now all I have to do is go through years more of legal nonsense in order to clear my name of her and her lawyer's phony attacks on me. This can only happen to "Trump"!



Ex. 10 to the Kaplan Decl.; *see also* Trump Dep. at 127:9-15, 132:9-134:13.

    **Response:** Undisputed

29.    Truth Social is a social media platform launched by Trump as an alternative to Twitter. *Id.* at 125:22-24.

    **Response:** Undisputed.

30.    When Trump posted his October 2022 statement, he had over 4 million followers on Truth Social. *Id.* at 126:4-20.

    **Response:** Undisputed.

31.    Trump testified that he wrote and posted the entire statement "all myself" without talking to anyone. *Id.* at 127:9-15, 134:10-18.

    **Response:** Undisputed.

32.    Trump also testified that he had people distribute the October 2022 statement to the press, including to an email list of reporters. *Id.* at 127:16-129:2.

    **Response:** Undisputed.

33.    Trump admitted that his October 2022 statement was about Carroll. *Id.* at 136:24-137:3.

    **Response:** Undisputed.

34.    Trump acknowledged that he did not learn any additional information about Carroll after he made his June 2019 statements, and explained that, at the time he made the October 2022 statement, "I still don't know this woman. I think she's a wack job. I have no idea. I don't know about this woman other than what I read in stories and what I hear. I know nothing about her." *Id.* at 137:9-17; *see also id.* at 137:18-138:3.

    **Response:** Undisputed.

35.     Later in 2022, Carroll sued Trump for battery for the underlying sexual assault and defamation for the October 2022 statement, respectively. *Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*"). Trial in *Carroll II* lasted from April 25 to May 9, 2023.

   **Response**: Undisputed.

36.     During closing arguments, Carroll's counsel argued that Carroll's account of the sexual assault was credible; that it was confirmed by her near-contemporaneous statements to two other witnesses; that it was consistent with Trump's sexual assault of two other women (both of whom testified); that it matched testimony from two store employees about the layout, hours, and operations of Bergdorf Goodman at the time; and that it was supported by testimony from an expert psychologist. Ex. 11 to the Kaplan Decl. at 1225-58; *see generally id.* at 1263-65

   **Response**: Undisputed.

37.     Carroll's counsel further argued that Trump's testimony, his failure to testify in person at trial, and his confession on the "Access Hollywood" tape (among other evidence) confirmed that he was willfully lying when he denied sexually assaulting Carroll. *See id.* at 1225-27. Carroll's counsel emphasized that because Trump was lying, his October 2022 statement— which accused her of fabricating a sexual assault allegation and of doing so for assorted nefarious reasons—was false and defamatory. *See id.* at 1272.

   **Response**: Undisputed.

38.     In his closing argument, Trump's counsel maintained that Trump had never met Carroll (apart from a short interaction on a receiving line); that he had no idea who she was; and that he had neither sexually assaulted her nor had any sexual interaction of any kind with her. *See id.* at 1284-90. Trump's defense included the argument that Carroll's testimony about the details of the sexual assault was not credible. *See id.*

   **Response**: Undisputed.

39.     Trump's defense at trial also attacked Carroll's credibility on the ground that she had nefarious motives for fabricating an allegation of sexual assault. As his lawyer put it: "She has abused this system by bringing a false claim for, amongst other things, money, status, political reasons." *Id.* at 1284. Starting with "money," Trump's counsel claimed that Carroll lied to increase sales of her book: "[T]he genesis of the story is Ms. Carroll's book. She told you people would be interested in Donald Trump's story and selling books was important to her." *Id.* at 1322. Turning to "status," Trump's counsel declared that "status … was important to [Carroll] … [a]nd her accusing Donald Trump definitely gave her [] status and media exposure, which she loved." *Id.* at 1325. Finally, with respect to "political reasons," Trump's counsel repeatedly told the jury that Carroll had "political motivations" for making a false accusation, *id.* at 1330, because she "hated … Donald Trump with a passion," *id.* at 1349.

**Response:** Disputed as the term "nefarious motives" is vague and ambiguous.

40.     In rebuttal, Carroll's counsel addressed Trump's theory of the case (including his fabrication claim) head on. Most fundamentally, her attorney emphasized the powerful and credible evidence supporting her allegation that Trump had sexually assaulted her, as well as the utter lack of evidence supporting Trump's position. *See id.* at 1379-83, 1393-98. Carroll's counsel also highlighted many glaring flaws in Trump's efforts to impugn her motives. To note just a few examples: Carroll had given away this book chapter for free (not for money) by posting an excerpt in New York Magazine, *id.* at 1401-02; Carroll had come forward years after Trump won the 2016 election, by which point it was already clear that revelations of sexual misconduct would not thwart his re-election or alienate him from his political base, *id.* at 1385-86; and Carroll's communications with key witnesses (Lisa Birnbach and Carol Martin) were wholly inconsistent with any claim that they fabricated this allegation for political reasons, *id.* at 1389-91. At bottom, Carroll explained, there was no evidence that she had fabricated her allegations—let alone for any of the nefarious

reasons that Trump's lawyers had featured in their defense—and all the evidence instead proved Trump's liability.

> **Response:** Disputed. Defendant objects to this proffered fact to the extent that it contains legal conclusions, unsubstantiated opinions, and argumentative statements that are improper in a Local Civil Rule 56.1 statement, including but not limited to the statement that Plaintiff "emphasized the powerful and credible evidence supporting her allegation, that Plaintiff "highlighted the many glaring flaws in Trump's efforts to impugn her motives. Further, there is nothing in the record that suggests the jury concluded there were no "nefarious reasons" underlying Carroll's testimony.

41.     Following summations, the Court instructed the jury. *See* Ex. 12 to the Kaplan Decl. (Jury Charge). The Court's charge included instructions on the following topics, among others: sexual abuse, damages for battery, the general theory of liability for defamation, defamatory meaning, falsity, actual malice, and damages for defamation. *See id.* at 4-6 (instruction #2), 8-12 (instruction #4), 14 (instruction #5), 15 (instruction #6), 15-16 (instruction #7), 16-19 (instructions #8 & #9).

> **Response:** Undisputed.

42.     Regarding defamatory meaning specifically, the Court instructed the jury that "[a] statement is defamatory if it tends to disparage a person in the way of his or her business, office, profession or trade. It also is defamatory if it tends to expose a person to hatred or contempt or aversion or to induce an evil or an unsavory opinion of that person in the minds of a substantial number of the community, even though it may impute no moral turpitude to the person." *Id.* at 14.

> **Response:** Undisputed.

43.     Regarding falsity, the Court instructed the jury that "[a] statement is false if it is not substantially true. You will determine from the evidence presented what the truth was and then

compare that with Mr. Trump's October 12, 2022 statement, taking that statement according to its ordinary meaning, the ordinary meaning of its words. … [W]hether Mr. Trump's statement is false or true depends largely or entirely on whether you find that Mr. Trump raped, sexually abused, forcibly touched or otherwise sexually attacked Ms. Carroll." *Id.* at 15.

**Response:** Undisputed.

44.     After less than three hours of deliberation, the jury returned a verdict for Carroll on both her battery and defamation claims. *See Carroll II*, ECF 174.

**Response:** Undisputed.

45.     On the batter claim, the jury found that:

- Trump sexually abused Carroll;

- Trump injured her in doing so;

- Trump's conduct was willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of Carroll, or was so reckless as to amount to such disregard;

- Carroll was entitled to $2 million compensatory damages on the sexual battery claim; and

- Carroll was entitled to $20,000 in punitive damages.

**Response**: Undisputed

46.     On the defamation claim, the jury found that:

- Trump's October 2022 statement was defamatory;

- Trump's October 2022 statement was false;

- Trump made that statement "with actual malice"—that is, that when he made the statement, Trump "knew that it was false", "had serious doubts as to its truth", or "had a high degree of awareness that the statement probably was false";

- Carroll was injured as a result of Trump's publication of the October 2022 statement;

- Trump acted maliciously, out of hatred, ill will, spite or wanton,

reckless, or willful disregard of the rights of another;

- Carroll was entitled to $2.7 million in compensatory damages; and

- Carroll was entitled to $280,000 in punitive damages.

**Response:** Undisputed.

Dated: New York, New York
         August 23, 2022

Respectfully submitted

Alina Habba, Esq.
Michael T. Madaio, Esq.
Habba Madaio & Associates LLP
1430 US Highway 206, Suite 240
Bedminster, New Jersey 07921
                    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
         mmadaio@habbalaw.com

*Attorneys for Defendant, Donald J. Trump*