UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                            Plaintiff,

            -against-                                                        20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

            Appearances:

                                        Roberta Kaplan
                                        Joshua Matz
                                        Shawn Crowley
                                        Matthew Craig
                                        Trevor Morrison
                                        Michael Ferrara
                                        KAPLAN HECKER & FINK LLP
                                        *Attorneys for Plaintiff*

                                        Alina Habba
                                        Michael T. Madaio
                                        HABBA MADAIO & ASSOCIATES LLP
                                        *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

            This is one of two actions against Donald Trump brought by writer E. Jean Carroll.

This one ("*Carroll I*"), filed in 2019, is for defamation based on certain statements Mr. Trump made

in 2019 shortly after Ms. Carroll publicly accused him of sexual assaulting her in the mid 1990s. The

other, referred to as *Carroll II* and filed in 2022, was for sexual assault and defamation and was tried to a plaintiff's verdict earlier this year.

This case, *Carroll I,* will be tried on January 16, 2024.  Mr. Trump now moves to add a new expert witness, almost one year after the close of discovery and virtually on the eve of trial.

### *Facts*

In order fully to contextualize the parties' positions, it is essential to understand the relevant procedural history of these two cases.

Ms. Carroll brought this case in November 2019.  Her sole claim was for defamation for statements Mr. Trump made on June 21, 22, and 24, 2019 in relation to Ms. Carroll's sexual assault accusation, as any claim for the sexual assault itself almost certainly would have been barred by the statute of limitations.

For several years, the parties litigated in this Court and in the Second Circuit and the District of Columbia Court of Appeals whether the United States should be substituted for Mr. Trump as the defendant in *Carroll I* under the Westfall Act based on the theory that Mr. Trump was an "employee" of the United States within the meaning of the Westfall Act who acted within the scope of his employment in making the allegedly defamatory statements in 2019.  This Court did not proceed to trial in *Carroll I* while those issues remained unresolved.  Nevertheless, the parties engaged in discovery during the intervening period.  All discovery, including the exchange of expert reports on the issue of damages – by Professor Ashlee Humphreys for Ms. Carroll and a rebuttal report by Robert J. Fisher for Mr. Trump – was substantially completed by mid-November 2022.  Mr. Trump deposed Professor Humphreys on November 15, 2022, and Ms. Carroll deposed Mr. Fisher

on December 14 and 20, 2022.[1]

In May 2022, New York enacted the Adult Survivors Act ("ASA"), which, effective in late November 2022, gave adult victims of sexual assault a one-year period within which to bring previously time-barred tort claims for sexual offenses against the alleged perpetrators.  Ms. Carroll then brought *Carroll II,* in which she asserted claims against Mr. Trump for battery based on the alleged sexual assault and for defamation based on an October 2022 statement by Mr. Trump.  Thus, by the time *Carroll II* was commenced in late November 2022, discovery in *Carroll I* – which had fully explored the issue of whether Mr. Trump sexually assaulted Ms. Carroll – had been substantially completed.  Accordingly, discovery in *Carroll II* was limited to damages.  The proposed damages experts for Ms. Carroll's defamation claim in *Carroll II* were the same as in *Carroll I* – Professor Humphreys and Mr. Fisher.[2]

By early February 2023, both *Carroll I* and *Carroll II* had been scheduled for trial in

---

[1]    Ms. Carroll's counsel explains that "Mr. Fisher's deposition occurred over two days because [Mr.] Trump's counsel had a scheduling conflict that prevented the parties from completing the deposition in one day."  Dkt 223 (Pl. Opp. Letter) at 1, n.1.

[2]    Professor Humphreys' reports were substantially identical from a methodological standpoint but differed in that the methodology was applied in *Carroll I* to Mr. Trump's 2019 statements but in *Carroll II* to the October 2022 statement.  *See Carroll II*, Doc. No. 22-cv-10016, Dkt 81 (Decl. of Roberta A. Kaplan), Ex. 3 (Expert Report of Ashlee Humphreys, Ph.D.) at 3 ("In the present report I estimate the impressions, impact, and damages for only the October 12, 2022 [s]tatement using the same methodology adopted in my prior analysis [(in her expert report in *Carroll I*)].");  *Carroll I*, Doc. No. 20-cv-7311, Dkt 194 (Def. Mem. in Support of Mtn. for Entry of Order Limiting Issues to be Litigated on Grounds of Collateral Estoppel) at 14-15 ("[I]t is readily apparent that Dr. Humphreys utilized the same methodologies and criteria to determine how the reputation repair programs in both *Carroll I* and *Carroll II* would broadcast [Ms. Carroll's] corrective messaging, what media outlets they would use, and what target audience they would be directed towards. In fact, practically every aspect of the reputation repair program that Dr. Humphreys constructed for *Carroll II* is lifted from the reputation repair program that she designed for *Carroll I*.").

April 2023.[3]  Later that month, Ms. Carroll moved *in limine* in each case to preclude testimony by Mr. Fisher on the ground, among others, that his analysis was unreliable.[4]  But by late March, the Westfall Act issues in *Carroll I* remained unresolved.  So on March 20, 2023, the Court adjourned the *Carroll I* trial *sine die* in view of the still unresolved Westfall Act issues and the possibility that issue preclusion as a result of a judgment in *Carroll II* conceivably could make a trial of *Carroll I* unnecessary.[5]  Trial of *Carroll II* remained scheduled to begin on April 25, 2023.

With the *Carroll II* trial less than a month away, the Court turned to plaintiff's motion to preclude testimony by Mr. Fisher in that case and granted the motion on March 27, 2023.  It excluded the testimony on the grounds that parts of his proposed testimony were not "proper subject[s] of expert testimony either on a party's case-in-chief or in rebuttal" and other parts that arguably were proper rebuttal testimony were not based on reliable methodology.[6]  And while there was no need for an immediate ruling on plaintiff's motion in *Carroll I* in view of the unresolved and potentially case dispositive Westfall Act issues in that case, the handwriting was on the wall with respect to the motion in *Carroll I*, as the basis for the ruling in *Carroll II* was obviously applicable to *Carroll I.*

*Carroll II* was tried in this Court in April and May 2023.  The jury unanimously

---

[3]

    *Carroll I* had been set for trial on April 10, 2023.  *Carroll I*, Doc. No. 20-cv-7311, Dkt 100. *Carroll II* originally was set for trial on April 17, 2023, and later was adjourned until April 25, 2023.  *Carroll II*, Doc. No. 22-cv-10016, Dkt 19, 49.

[4]

    *Carroll II,* Doc. No. 22-cv-10016, Dkt 72, 73 at 7-10; *Carroll I,* Doc. No. 20-cv-7311, Dkt 133, 134 at 10-15.

[5]

    Dkt 148.

[6]

    *Carroll v. Trump,* No. 22-cv-10016, 2023 WL 2652636, at *3-5 (S.D.N.Y. Mar. 27, 2023).

determined that Mr. Trump sexually abused Ms. Carroll and defamed her in his October 2022 statement.[7]  And on July 11, 2023, following decisions in *Carroll I* by the Second Circuit and the District of Columbia Court of Appeals, the government informed the parties and the Court of its decision not to renew its Westfall Act certification in this case, thus paving the way for the long delayed trial of *Carroll I*.[8]  On September 6, 2023, this Court determined that Ms. Carroll was entitled to summary judgment on each liability element of her defamation claim in this case, based in part upon the jury's verdict in *Carroll II*.[9]  The trial in this case therefore is limited to the issue of damages.  The Court granted summary judgment, however, only with respect to Mr. Trump's June

---

[7]

The case now is on appeal.

The Court assumes familiarity with its prior decisions in this case and in *Carroll II*, which detail the facts and procedural histories of both cases. *E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, 635 F. Supp. 3d 229 (S.D.N.Y. 2022); Dkt 145, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 (S.D.N.Y. July 5, 2023); Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Dkt 208, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894, (S.D.N.Y. Aug. 18, 2023); Dkt 214, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152, (S.D.N.Y. Sep. 6, 2023); Doc. No. 22-cv-10016 (*Carroll II*), Dkt 38, *Carroll v. Trump*, No. 22-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

[8]

Dkt 177.

[9]

*Carroll*, 2023 WL 5731152.

21 and 22, 2019 statements because neither party adequately addressed whether or not summary judgment should be granted with respect to the June 24, 2019 statement.[10]

On October 5, 2023, the Court granted plaintiff's long pending motion to preclude testimony by Mr. Fisher in this case as well, relying almost entirely on the March 27 decision reaching the same result in *Carroll II*.[11]  On October 17, 2023, Ms. Carroll informed the Court and Mr. Trump that she "does not intend to pursue defamation liability in connection with [Mr. Trump's] June 24[, 2019] [s]tatement[.]"[12]  The matter now is before the Court on Mr. Trump's request "for leave to substitute a new rebuttal expert [on the issue of damages] in this matter."[13]

On October 27, 2023, Mr. Trump's counsel requested to a meet and confer with Ms. Carroll's counsel "to discuss several issues involving the parties' expert reports."[14]  In an email dated November 1, 2023, the day after the parties met and conferred, Ms. Carroll's counsel stated that:

"In light of [Ms. Carroll's] decision not to pursue defamation liability for the June 24, 2019, statement, we agree to submit a brief supplemental expert report [by Professor Humphreys] recalculating damages based on [Mr. Trump's] June 21 and 22, 2019, statements alone. The supplemental report will neither change Dr. Humphreys' analysis nor incorporate any new information. . . . [W]e expect the

---

[10] *Carroll*, 2023 WL 5731152, at *3 n. 6,*11.

[11] Dkt 217 (Order) at 2-3.

[12] Dkt 220 (Pl. Letter).

[13] Dkt 221 (Def. Letter) at 1.

[14] 223-1 (Pl. Opp. Letter), Ex. A, at 8-9.

supplemental report will decrease Dr. Humphreys' damages estimate.  We therefore do not agree that you are entitled to file yet another rebuttal report."[15]

Mr. Trump's counsel responded that they "would consent to the submission of a supplemental report which is modified only to account for the withdrawal of the June 24 [s]tatement and does not otherwise change Dr. Humphrey's [*sic*] analysis or incorporate any new information."[16]  Ms. Carroll's counsel agreed to Mr. Trump's counsel's request to depose Professor Humphreys on her supplemental report, which they agreed to provide to Mr. Trump's counsel by November 13, 2023. Given that the parties did not reach an agreement with respect to Mr. Trump's request to substitute a new rebuttal expert, Mr. Trump sought this Court's intervention.

### *Discussion*

*Legal Standard*

Mr. Trump frames his application as a request for leave to "substitute a new rebuttal expert."[17]  As Ms. Carroll states, however, "[t]here is no expert left [for whom] to 'substitute'" given that the Court excluded Mr. Trump's previous proposed rebuttal expert's testimony.[18]  In any case, Mr. Trump purportedly brings his request pursuant to Federal Rule of Civil Procedure 26(a)(2)(D), which provides that "[a] party must [make expert disclosures] at the times and in the sequence that

---

[15]    *Id.* at 6 (emphasis omitted).

[16]    *Id.* at 5.

[17]    Dkt 221 (Def. Mem.) at 1.

[18]    Dkt 223 (Pl. Opp. Letter) at 3.

the court orders."[19]  In so doing, however, he ignores the fact that both parties were required to make their expert disclosures in this case over a year ago, by October 14, 2022.  Mr. Trump's application therefore properly is considered under Federal Rule of Civil Procedure 16(b)(4), which states that a "[pretrial] schedule may be modified only for good cause and with the judge's consent."[20]

"District courts in this Circuit generally consider six factors in deciding whether [there is] good cause to re-open discovery:

'(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.'"[21]

Courts often have placed particular importance on the moving party's diligence in determining whether good cause exists.[22]  It accordingly is the starting point of the Court's analysis here.

---

[19]  Fed. R. Civ. P. 26(a)(2)(D).

[20]  Fed. R. Civ. P. 16(b)(4).  *See Exist, Inc., v. Tokio Marine America Insurance Co.*, No. 22-CV-1679 (AT) (BCM), 2023 WL 7117369, at *3 (S.D.N.Y. Oct. 5, 2023) ("The question is whether plaintiff has shown good cause, as required by Rule 16(b)(4), to reopen the discovery schedule so that it can serve a new expert report in hopes of meeting the admissibility standards of Rule 702 and *Daubert* on its second try.").

[21]  *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023) (quoting *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011)).

[22]  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009), *certified question answered*, 286 Ga. 636 (2010) ("Whether good cause exists turns on the 'diligence of the moving party.'"); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with*

*Mr. Trump Has Not Been Diligent in Proposing a Suitable Rebuttal Expert*

Mr. Trump contends that he has acted diligently in relation to this request because "[t]he need for [him] to substitute a new expert only became apparent after the issuance of the Court's October 5, 2023 [o]rder excluding the testimony of his prior rebuttal expert."[23]  Indeed, he states that it "it was entirely unforeseeable that [he] would need to substitute a new expert until the Court issued its October 5, 2023 decision."[24]  His assertion plainly is untrue.

Mr. Trump was on notice that his previous proposed rebuttal expert, Mr. Fisher, was not qualified to testify as a rebuttal expert since at least March 27, 2023, when the Court precluded Mr. Fisher's proposed testimony in *Carroll II*.[25]  As noted above, the Court there explained in detail its reasoning for finding Mr. Fisher's proposed rebuttal expert testimony unreliable. Given that Mr.

---

[23]    *Kinectiv Tech. & VerSys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 4251906, at *4 (S.D.N.Y. Sept. 17, 2021), *appeal withdrawn sub nom. Nutting v. Zimmer, Inc.*, No. 21-2502, 2023 WL 2771500 (2d Cir. Mar. 10, 2023) ("The primary focus of this good cause inquiry is 'upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment.'") (citation omitted).

Dkt 224 (Def. Reply Letter) at 2.

[24]    *Id.*

[25]    Indeed, even before the Court's decision in March, Mr. Trump arguably did not act diligently in finding a qualified rebuttal expert before the close of expert discovery in this case, given that he, as Ms. Carroll notes, "hired an expert just days before his report was due, who drafted his report 'overnight,' and his proposed expert provided testimony that 'does not explain how his experience or any other data or facts inform his criticisms.'" Dkt 223 (Pl. Opp. Letter) at 3 (citations omitted).  *See also* Dkt 134 (Pl. Mem. Mtn. in Lim.) at 13 ("Despite having several years' notice that [Ms.] Carroll intended to seek defamation damages (and thirty days from the issuance of Professor Humphreys' report), [Mr.] Trump hired [Mr.] Fisher five days before the rebuttal report was due. . . . [Mr.] Fisher then wrote his report 'overnight,' . . . with the entirety of his research consisting of 'four or five' news articles about the case.") (citations omitted).

Fisher's report in this case suffered from essentially the same infirmities that convinced the Court to preclude his testimony in *Carroll II*, Mr. Trump should have known that the same outcome was inevitable with respect to Ms. Carroll's motion to preclude Mr. Fisher's testimony in *Carroll I*. Whether it was an inadvertent failure to appreciate that fact and to prepare accordingly, or a strategic litigation choice, Mr. Trump knew for *six months* before the Court's decision in October that Mr. Fisher's testimony likely would be precluded in this case and made no effort to substitute a new rebuttal expert.  In these circumstances, he cannot be said to have acted diligently in pursuing the instant application.

*Granting Mr. Trump's Application at this Late Date Would Prejudice Ms. Carroll Unduly*

Mr. Trump argues that if the Court were to grant his application, "the only prejudice to [Ms. Carroll] would be the cost of reviewing the new expert's report and deposing the new expert."[26]  Mr. Trump underestimates, however, the weight of such burdens on Ms. Carroll in these circumstances.  As Ms. Carroll points out, she "spent significant time preparing for and deposing Trump's [previous] expert" and "is now in the midst of preparing for trial."[27]  Although Mr. Trump states that he "is *not* asking to extend or delay the start of trial," there is a strong likelihood – given

---

[26] Dkt 221 (Def. Letter) at 4.

[27] Dkt 223 (Pl. Opp. Letter) at 3.

his past actions in these cases[28] – that he would do so if his application were granted.[29]  Indeed, based on his submission, Mr. Trump has yet to "identify his new expert," let alone "submit a rebuttal report, and make the new expert available for a deposition."[30]

Moreover, even assuming that all of those steps could be accomplished reasonably in advance of trial, Ms. Carroll might seek to exclude the new rebuttal expert's testimony, which would require further time to permit briefing from both parties and for the Court to evaluate any such request. By contrast, the purported "extreme prejudice" Mr. Trump claims he "would suffer in having to conduct a trial solely on the issue of damages without his own expert to challenge the calculation of damages espoused by [Ms. Carroll's] damages expert" would be of his own doing.[31]  Mr. Trump had sufficient time to procure a qualified rebuttal expert, both before the close of expert discovery and after the Court's decision in March 2023. Whether by mistake or on purpose, he simply chose

---

28

See, e.g., Carroll, 2023 WL 4393067, at *12; Carroll v. Trump, No. 22-CV-10016 (LAK), 2023 WL 2960061, at *4-5 (S.D.N.Y. Apr. 17, 2023); Carroll, 635 F.Supp.3d 229 at 236-37; Carroll, 590 F. Supp. 3d 575 at 587-88.

29

Dkt 221 (Def. Letter) at 4 (emphasis in original).

30

Id.

31

Id.

Moreover, this would not be the first time Mr. Trump would be challenging Professor Humphreys' damages calculations without the use of a rebuttal expert.  Indeed, in the trial of Carroll II, Mr. Trump's counsel "attempted to draw out on cross examination and in summation" certain "purported flaws" in Professor Humphreys' testimony, which ultimately was considered by the jury in addition to the entirety of her testimony in its determination of the damages, if any, to award. Carroll, 2023 WL 4612082, at *24. Mr. Trump's argument with respect to the purported necessity of a rebuttal expert therefore is weakened in these circumstances by the fact that he did not make the same argument for a new rebuttal expert in advance of the trial in Carroll II.

not to.

*Other "Good Cause" Factors*

The other factors identified above also weigh against granting Mr. Trump's request. The trial is close at hand. Ms. Carroll "strongly opposes [Mr.] Trump's request."[32]  As stated above, Mr. Trump had adequate time before expert discovery closed to find a qualified rebuttal expert. Although expert discovery closed before March 2023, Mr. Trump could have moved at that time – or, at least, several months before his current application – to reopen discovery and propose a new rebuttal expert to substitute Mr. Fisher in this case.

Lastly, it is possible that any proposed new rebuttal expert also would be precluded from testifying – if, for example, his or her testimony also would be unreliable.  Indeed, as noted above, Mr. Trump has not even identified who his proposed new rebuttal expert would be or disclosed that person's qualifications or anything with respect to the expected substance of the proposed rebuttal testimony.  It therefore is far from certain at this stage whether a new rebuttal expert in fact "would be vital to [Mr. Trump's] defense at trial."[33]

Accordingly, each factor weighs against reopening discovery to permit Mr. Trump to submit a new rebuttal expert.

---

[32]  Dkt 223 (Pl. Opp. Letter) at 3.

[33]  Dkt 224 (Def. Reply Letter) at 2.

*Mr. Trump's "Fairness" Argument*

Mr. Trump argues, independent from the Rule 16 "good cause" analysis, that his application should be granted because, he claims, "allowing [Ms. Carroll] to proceed with a discovery 'do-over' [(by submitting a supplemental report by Professor Humphreys)] while denying [Mr. Trump] an opportunity to do the same would result in patent unfairness to [Mr. Trump]."[34]  His argument is unpersuasive for several reasons.

First, Professor Humphreys' supplemental report is a product largely of Mr. Trump's own doing and ultimately is for his own benefit. Mr. Trump's submission indicates that it was at *his request* that Ms. Carroll was prompted to offer a supplemental report in order to reflect Ms. Carroll's decision not to pursue compensatory damages with respect to the June 24 statement. As Mr. Trump states, his counsel "reached out to [Ms. Carroll's] counsel to . . . meet and confer to . . . address the impropriety of the report of . . . Professor Ashlee Humphreys given [Ms. Carroll's] recent decision to withdraw the June 24 [s]tatement from her cause of action."[35]  "Thereafter, . . . [Ms. Carroll's] counsel advised that they were willing to submit a supplemental expert report[,]"[36] to which Mr. Trump's counsel responded that they "would consent."[37] Professor Humphreys' supplemental report therefore was prompted originally by Mr. Trump, was consented to by him, and is for his benefit, given that exclusion of the June 24 statement is likely to decrease Professor Humphreys' damages

---

[34]      *Id.* at 1.

[35]      Dkt 221 (Def. Letter) at 1.

[36]      *Id.*

[37]      223-1 (Pl. Opp. Letter), Ex. A, at 5.

14

calculations.[38]  Mr. Trump's request, by contrast, entirely is self-serving and is unrelated to any

concern or request by Ms. Carroll.

Second, Mr. Trump's arguments with respect to the supplemental report are based on

unfounded speculation. Mr. Trump predicts that Professor Humphreys' supplemental report "will

necessarily contain some amount (and likely a significant amount) of new expert analysis."[32]  He

contends that:

> "Dr. Humphreys's original report does not ascribe a damages estimate to any
> particular statement nor attempt to address them in an individualized fashion. It is
> therefore not possible to simply remove one of the statements from the report without
> providing any insight or analysis into how this change affects the overall damages
> calculation.  By Dr. Humphrey's own admission, the June 24, 2019 statement was the
> most widely-viewed of the three statements and the most impactful. . . . In addition,
> nearly all of the data subsets and 'impression models' utilized by Dr. Humphreys
> were inclusive of the June 24 statement and will need to be reworked entirely to
> account for its removal. Without a rebuttal expert, Defendant will have had no
> opportunity to consider these new data points or to challenge the methodology and

---

[38]    Indeed, Ms. Carroll arguably was obligated to produce a supplemental report by Professor Humphreys pursuant to Federal Rule of Civil Procedure 26(e), which states that "[a] party who has made a disclosure under Rule 26(a) [(including an expert report)] . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A).  Given that Ms. Carroll decided not to pursue a defamation claim for Mr. Trump's June 24, 2019 statement, she arguably was required to supplement Professor Humphreys' report to reflect that change given that the original report would have been incorrect for its inclusion of the June 24 statement.

[32]    Dkt 224 (Def. Reply Letter) at 3.

analysis employed by Dr. Humphreys in differentiating which harm was caused by the June 24 statement as compared to the June 21 and 22 statements. In fact, given the pervasive nature of the June 24 statement, one could argue that an entirely new rebuttal report would be needed just to analyze whether the damages recalculation analysis properly accounts for its removal."[33]

Mr. Trump fails to explain, however, why or how Professor Humphreys' supplemental report would involve anything more than a mere subtraction of the data and assessments associated with the June 24 statement from Professor Humphreys' models. He does not identify any way in which removing the June 24 statement from the analysis would change anything about Professor Humphreys' methodology or her conclusions, other than a likely reduction in the damages and other calculations. In any event, his arguments are premature, given that Ms. Carroll stated she would provide the supplemental report to Mr. Trump's counsel by November 13, 2023.

In these circumstances, there accordingly would be nothing unfair about permitting Ms. Carroll to submit a supplemental report – one that was prompted at Mr. Trump's request and is for his own benefit – while denying Mr. Trump's request to submit a new rebuttal expert report. Mr. Trump had the opportunity to consider and challenge Professor Humphreys' methodology – which

---

[33] *Id.* (citation and footnote omitted).

Although Mr. Trump states that "[b]y Dr. Humphreys' own admission, the June 24, 2019 statement was the most widely-viewed of the three statements and the most impactful," the portion of Professor Humphreys' report to which he cites does not in fact support his conclusion. *Id.* Professor Humphreys' report states that a "spike" "occurred on June 24, the day that Mr. Trump made the third [s]tatement[,]" in reference to her analysis of the "search interest" in Ms. Carroll based on a Google Trends assessment. Dkt 135 (Decl. of Roberta A. Kaplan), Ex. 8 (Expert Report of Ashlee Humphreys, Ph.D.) at 46-47. It does not show that Mr. Trump's June 24 statement was the "most widely-viewed" or the "most impactful."

will be unchanged by her supplemental report – for many, many months. The fact that his chosen expert – for both cases – was unreliable and would not testify had been known to him for months. Yet he did nothing. A supplemental expert report is not an automatic invitation for a second bite at a rebuttal expert report. He has made his own bed and now must lie in it.

        To be sure, Mr. Trump speculates that Professor Humphreys' supplemental report will contain some unspecified new methodology or analysis. Sufficient to the day. If that occurs, Mr. Trump may renew his request to submit a rebuttal report limited to rebutting any such new methodology or analysis. Any such request must demonstrate precisely how Professor Humphreys' analysis or methodology in the supplemental report is different from her original report.

### *Conclusion*

        For the foregoing reasons, Mr. Trump's application to submit a new rebuttal expert (Dkt 221) is denied, subject to the caveat stated in the penultimate paragraph.

        SO ORDERED.

Dated:        November 16, 2023

                                    Lewis A. Kaplan
                             United States District Judge