**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL   rkaplan@kaplanhecker.com

November 20, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

     Re: *Carroll v. Trump*, No. 20 Civ. 07311 (LAK)

Dear Judge Kaplan:

  We write on behalf of Plaintiff E. Jean Carroll to request that Your Honor resolve certain evidentiary issues in advance of trial—most of which have already been decided, and none of which, in our view, should require lengthy, and largely duplicative, motion practice. We are of course available to address these issues in person at a conference, should the Court wish to do so.

  During a meet-and-confer on October 31, 2023, Carroll's counsel raised several evidentiary issues with counsel for Defendant Donald J. Trump from the first trial, but Trump declined to take a position and requested that Carroll follow up in writing. Carroll then provided a written list of evidentiary issues and asked Trump to confirm that he was not intending to introduce evidence that this Court had previously precluded in *Carroll v. Trump*, No. 22 Civ. 10016 (S.D.N.Y.) ("*Carroll II*"), or that would run afoul of the Court's collateral estoppel decision limiting the upcoming trial to "damages only," ECF 214 at 4. As discussed further below, Trump refused our proposals at almost every turn. *See* Ex. A (emails between counsel).

**I. Evidentiary Rulings from *Carroll II***

  This Court has held that the analysis of evidentiary issues resolved in *Carroll I* is "entirely applicable" to *Carroll II*. *Carroll II*, ECF 95 at 1. The analysis flows in the opposite direction as well: evidence ruled inadmissible in *Carroll II* is properly deemed inadmissible in *Carroll I*.

KAPLAN HECKER & FINK LLP                                                                                                    2

Trump, however, insists that he somehow has the right to introduce evidence that was precluded in *Carroll II*—namely, evidence relating to Carroll's choice of counsel, litigation funding, DNA, and Carroll's prior relationships, sexual assaults, and sexual predisposition. Such evidence would be inadmissible even if the scope of the *Carroll I* trial were as broad as the *Carroll II* trial. But because the scope of the upcoming trial will be much narrower, the scope of admissible evidence is narrower as well. There is therefore no reason why these previously inadmissible categories of evidence should suddenly be admitted now.

Choice of Counsel. Earlier in this action, when Carroll moved *in limine* to preclude inquiry into Carroll's choice of counsel, ECF 134 at 34–35, Trump did not oppose, ECF 136. Then, in *Carroll II*, this Court explicitly held—both in an opinion and from the bench—that Trump and his counsel were "precluded from commenting upon or eliciting any evidence regarding plaintiff's choice of counsel or her counsel's activities outside the litigation between plaintiff and defendant." *Carroll II*, ECF 95 at 21–22; *see also* Trial Tr. 75:2–13.

It is no secret that Trump's defense strategy includes attempts to put both the conduct and politics of Carroll's counsel at issue. *See* ECF 134 at 34 (providing examples of disparaging remarks made by Trump about Carroll's counsel during his deposition). Trump has not even attempted to explain why these previously excluded and potentially prejudicial topics would be relevant in any way to the narrowed set of issues that the jury will consider in this damages-only trial. The Court should therefore apply the same ruling here as it did in *Carroll II*. *See Allen v. Royce*, No. 19 Civ. 3672, 2022 WL 125367, at *9 (E.D.N.Y. Jan. 13, 2022) ("[A]ttacks on the credibility or motives of defense counsel are not permissible."); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 273 (S.D.N.Y. 2015) (granting motion to exclude commentary or arguments related to "lawyer-driven lawsuits" because "the jury's attitudes about … the business model, role, or ethics of [] counsel, have no bearing" on the merits of the case and "can serve only to confuse, inflame, and introduce unfair prejudice").

Litigation Funding. Evidence relating to litigation funding was entirely precluded in *Carroll II*. Trial Tr. 240:3–19. There is nothing at issue in *Carroll I* that would alter the premise on which the Court based its earlier decision—which came after this Court allowed Trump to obtain additional discovery on litigation funding and depose Carroll a *third* time in advance of trial. While Trump insists that such evidence "may be admissible for other purposes (*i.e.*, damages)," Ex. A at 1, he offers no explanation for that assertion. As the Court held, the subject is irrelevant "in general" and the "unfair prejudicial effect of going into the subject would very substantially outweigh any probative value whatsoever." Trial Tr. 240:6–17; *see also Carroll II*, ECF 110 at 2 (noting that "whether and when plaintiff or her counsel have obtained financial support in [*Carroll II*] has nothing directly to do with the ultimate merits of the case"). Indeed, the grounds for precluding this evidence are even stronger today, since the *Carroll I* litigation was commenced long before the funding in question was secured. *Carroll II*, ECF 109 at 2; *see also Carroll II*, ECF 133.

DNA. Despite the fact that the underlying sexual assault is not at issue in this case, ECF 214, and the Court's clear instruction in *Carroll II* that "DNA will not be uttered in this

**KAPLAN HECKER & FINK LLP**                                                                                                     3

courtroom," Trial Tr. at 109:1–2, Trump maintains that taking a position on evidence relating to DNA is "premature in light of the pending motion to substitute a new rebuttal expert." Ex. A at 1.[1]

Since that motion has now been denied, ECF 232, these topics are irrelevant and would be irrelevant to defamation damages in any event. The damages issues in this case relate to Trump's June 2019 defamatory statements, not whether there is physical evidence that serves as further proof that Trump sexually assaulted Carroll. Moreover, as the Court held in *Carroll II*, argument or examination about the existence of DNA would result in unfair prejudice to Carroll that "substantially" outweighs any probative value. *See Carroll II*, ECF 95 at 17; *see also, e.g.*, *Carroll II*, Trial Tr. 473:24–474:2 (prohibiting discussion of laundering the dress). For all the reasons in *Carroll II* and more here, DNA evidence should be precluded.

Prior Relationships, Prior Assaults, and Sexual Disposition. Because neither the underlying assault nor the harm that it caused Carroll are at issue in *Carroll I*, any evidence relating to prior relationships, sexual assaults, or Carroll's sexual predisposition should be precluded as irrelevant, in addition to being strictly prohibited by Federal Rule of Evidence 412.[2] *See Carroll II*, ECF 157 ("defendant should not be permitted to violate" Rule 412); Trial Tr. 642:1–643:5; *Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000). Although Trump responded that he "does not contest the applicability of Rule 412 to this action," he claimed that taking a position the admissibility of evidence regarding Carroll's prior relationships, sexual assaults, or sexual relationships was "premature in light of the pending motion to substitute a new rebuttal expert." Ex. A at 1, 6. But, again, that motion has now been denied, ECF 232, and these topics have nothing whatsoever to do with defamation damages.

This category of inadmissible evidence includes evidence relating to any fights or altercations Carroll had with her ex-husband. Trump's counsel agreed "to not present evidence or testimony relating to Plaintiff's fight with John Johnson," but made this agreement contingent on "Plaintiff's confirmation that she will not seek damages for emotional or psychological harm." Ex. A at 1. Carroll is not seeking emotional or psychological damages for harm arising from Trump's sexual assault; she is, however, seeking the same kind of damages for defamation that she sought in *Carroll II*, which include (as set forth in the New York Pattern Jury Instructions) "humiliation and mental anguish in her public and private life … caused by [Trump's] statements." Trial Tr. 1432:25–1433:15; *see also* N.Y. Pattern Jury Instr. Civil 3:29. The Court should preclude evidence regarding Carroll's relationship and altercations with John Johnson, without condition. *See, e.g.*, Trial Tr. 208:20–209:4 (noting evidence relating to verbal exchange prior to altercation was "outrageously" prejudicial).

---

[1] Trump's position is in certain ways unsurprising. He referenced the dress Carroll wore when he assaulted her in social media posts both during and after the *Carroll II* trial. *See, e.g.*, Trial Tr. at 106:14–107:9 (quoting @realDonaldTrump (Apr. 26, 2023, 8:51 AM) (since deleted)); @realDonaldTrump (May 23, 2023, 7:50 AM). But the fact that Trump thinks touting a lack of DNA evidence helps his relentless press campaign does not make it relevant or proper at trial.

[2] Rule 412 would also prohibit introduction of Trump's Truth Social posts, made after trial, that re-post prior statements by Carroll that relate to sexual predisposition.

KAPLAN HECKER & FINK LLP

4

**II.    Evidentiary Issues Precluded by Collateral Estoppel**.

As a result of this Court's collateral estoppel decision, ECF 214, the jury at the upcoming trial will have to determine: (1) the amount of damages to award in connection with Trump's June 21 and 22 defamatory statements, and (2) Trump's common law malice, for purposes of punitive damages. Yet Trump's position on evidentiary issues makes clear that he hopes to relitigate matters that have already been conclusively resolved, including the truth about the underlying assault. Straightforward evidentiary rulings on these issues are therefore necessary to prevent any effort by Trump to turn the upcoming trial into a circus.

<u>Underlying Assault</u>. The Court should preclude all testimony, evidence, examination, and argument suggesting that the assault did not occur or seeking to undermine Carroll's account by implication (*e.g.*, asking Carroll on cross whether she screamed or called the police). That is the simple consequence of the Court's collateral estoppel decision, and it defies logic for Trump to insist that "evidence intended to prove whether the incident occurred … may be admissible" as relevant to defamation damages. Ex. A at 2. Indeed, in deciding such damages, the jury *must* take as true that Trump sexually assaulted Carroll.

<u>Fabrication of Assault</u>. This Court specifically held that the verdict in *Carroll II* "necessarily implies that [the jury] determined by clear and convincing evidence that Ms. Carroll did not fabricate her sexual assault accusation." ECF 214 at 16; *see also id.* at 16 n.29 (Defendant "does not dispute, and implicitly concedes by his repeated assertions, that the jury in *Carroll II* … determined that Ms. Carroll did not fabricate her sexual assault accusation"). The Court should thus preclude all evidence relating to whether Carroll fabricated her account of the assault or had a motive to do so. This includes evidence relating to any alleged political or financial motivation (including an effort to sell copies of her book), as well as the Law & Order: Special Victims Unit episode discussed in *Carroll II*, the purported relevance of which stemmed solely from Trump's charge of fabrication. *See* Trial Tr. at 1366:25–1367:15.

<u>Defendant's Proposed Witnesses</u>. This Court's ruling on collateral estoppel also renders four of Trump's proposed witnesses—David Haskell, Sarah Lazin, Lisa Birnbach, and Carol Martin—irrelevant because they have nothing to offer on the issues remaining in this action.

David Haskell is the Editor in Chief of *New York* magazine and held that role when the magazine published the excerpt of Carroll's book. Carroll listed Haskell in her response to Trump's first interrogatory as a "[p]erson[] with whom she communicated—prior to publication of the Article—about the fact that Trump had sexually assaulted her." Ex. B at 5. The sum total of her description of David Haskell was "Publisher of the Article." *Id.* Trump never deposed or obtained other discovery from Haskell, and any knowledge he has about the underlying sexual assault is irrelevant to the damages issues to be addressed at the upcoming trial.

The same is true of Sarah Lazin. Carroll's interrogatory response identifies Lazin as a "[p]erson[] with whom she communicated—prior to publication of the Article—about the fact that Trump had sexually assaulted her." *Id*. Carroll's answer describes Lazin as someone who "[a]ssisted in selling [Carroll's] Book to St. Martin's Press," *id.*, which happened long before

KAPLAN HECKER & FINK LLP

5

Trump made his defamatory statements. Trump did not depose or obtain discovery from Lazin, and, as with Haskell, any knowledge that Lazin has relating to the underlying assault does not make her testimony relevant to damages.

Finally, there is Lisa Birnbach and Carol Martin. Both witnesses were exhaustively examined at the *Carroll II* trial, and their examinations concerned the underlying sexual assault and whether Carroll fabricated her account. Birnbach testified that Carroll called her the night of the assault and told her that Trump assaulted her; Trump's counsel cross-examined her on the same, as well as on her memory and political leanings. Trial Tr. 687:12–690:5, 716:4–721:23, 724:8–725:5. Martin testified that, a few days after the assault, Carroll told her that Trump had assaulted her; Trump's counsel similarly cross-examined her about the assault, her political affiliations, and certain messages to and about Carroll. *Id.* at 1026:21–1034:14, 1051:9–1073:21, 1087:3–1093:12. Such testimony obviously has no bearing on the narrow issues that the *Carroll I* jury must decide.[3]

Defendant's Testimony. Once again, Trump includes himself on his list of potential witnesses. While it is Trump's right to submit to questioning, he does not have the right to say whatever he pleases. Trump cannot, for instance, claim that he did not sexually assault Carroll; argue that he was telling the truth in his statements about her; suggest that Carroll fabricated her account due to a political agenda, financial interests, or mental illness; or offer any other testimony that would be inconsistent with the Court's collateral estoppel decision determining that Trump, with actual malice, lied about sexually assaulting Carroll. Nor can Trump be permitted to comment on the Court, the jury, or counsel in *Carroll II*, or suggest in any way (as he has in the media) that he received an unfair trial. The Court should enter an order explaining this prior to trial to avoid any possibility of prejudice before the jury.

Such an order is especially warranted in light of Trump's recent testimony at the ongoing trial in *People v. Trump*, Index No. 452564/2022 (N.Y. Sup. Ct., N.Y. Cnty.). There, Trump repeatedly offered testimony contradicting the state court's earlier summary judgment ruling, which resolved key factual issues before trial. *See, e.g.*, Ex. C at 3558:1–3559:13 (offering testimony contradicting summary judgment decision, including value of Mar-a-Lago; declaring the court's decision to be "fraudulent"; and opining that the court's decision "didn't value the property correctly"); *id.* at 3614:22–3615:7 (testifying that Trump Organization's Statements of Financial Condition undervalued assets, even though the court had already determined on summary judgment that the Statements fraudulently overvalued them). In addition, Trump continually flouted court orders by editorializing and providing non-responsive, repetitive

---

[3] Although Trump has included two communications between Carroll and Birnbach on the Joint Pretrial Order, ECF 227 at 25, Trump does not need Birnbach to introduce those messages; to the extent they are admissible in the first place, he is free to question Carroll about them on cross-examination.

answers,[4] discrediting the court and the legitimacy of the proceeding,[5] accusing the presiding judge of partiality,[6] and attacking opposing counsel.[7]

Accordingly, any testimony that Trump provides at trial should be carefully circumscribed to the relevant issues in this case. Trump should be reminded that, if he takes the stand, he will do so as someone who committed a sexual assault who the jury will be told knowingly lied about sexually assaulting Carroll, and he will not be allowed to contest those facts in any way.

### III.   Evidentiary Issues Specific to *Carroll I*

We understand that Trump has renewed objections to evidence that was admitted by the Court at the prior trial—specifically, the Access Hollywood video and the testimony of Natasha Stoynoff and Jessica Leeds. Despite the narrowed issues for the *Carroll I* trial, this evidence remains relevant for the following reasons.

Access Hollywood. In this video, Trump says he "just start[s] kissing" women and doesn't "even wait," and states that "star[s]," like himself, can "grab [women] by the pussy." This video is admissible for at least independent two reasons.

First, the Access Hollywood video contains statements made by Trump that make it more probable that Trump acted with reckless disregard for the truth, as well as hatred, ill will, and spite, when he denied taking the very same actions against Carroll that he claimed to have done in the video. The "focus[]" of common-law malice is on "the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity." *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 480 (1993); *see also* 25A C.J.S. Damages § 308 ("[E]vidence of other acts of the defendant … is admissible if … tending to show the defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed."). Trump's comments in the video go to his mental state and disposition—both toward women generally (stating he can

---

[4] *See id.* at 3493:7–3495:4; *see also id.* at 3502:8-13 ("The Court: In addition to the answers being nonresponsive, they are repetitive, and we don't have time to waste. We have one day with this witness. Mr. Kise, can you control your witness, because I am considering drawing a negative inference to any questions that might be asked."); *id.* at 3505:20–3507:7 ("The Court: Mr. Kise That was a simple yes or no question. … We got another speech. I would beseech you to control him if you can. If you can't, I will. I will excuse him and draw every negative inference that I can."); *id.* at 3495:4 (observation by the court that Trump "doesn't abide by [the rules]").

[5] *See id.* at 3510:9–10 ("Witness: This is a very unfair trial, very, very. And I hope the public is watching it."); *id.* at 3627:18–3628:6 ("I think this case is a disgrace. I think it is a disgrace for people looking to move their business into New York or out of New York.... And we sit here all day, and it is election interference because you want to keep me in this courthouse all day long, and let's keep going.").

[6] *Id.* at 3557:20–3559:15. ("It's a terrible thing [Justice Engoron] did. [He] knew nothing about me. [He] believed this political hack back there, and that's unfortunate."); *id.* at 3628:7–8 ("And we have a very hostile Judge, extremely hostile Judge, and it is sad."); *id.* at 2415:13–20 ("The Court: As the trier of fact, I find that the witness is not credible; that he was referring to my law clerk, who is principal law clerk . . . whom I believe has been accused by the defendant of being partisan or Democrat or partisan Democrat. I hereby fine you $10,000.").

[7] *See, e.g.*, *id.* at 3555:16–3556:8 ("Witness: I think [AG James is] a political hack, and this is a disgrace that a case like this is going on …. This is a political witch-hunt, and I think she should be ashamed of herself.").

"grab them by the pussy") and specifically toward Carroll (knowingly lying about the fact he did that very thing to her)—and thus are relevant to determining his common law malice.

Second, Trump addressed the Access Hollywood video in the midst of statements that he made about Carroll on CNN after the *Carroll II* trial. *See* Ex. D (PX-100, redactions in original) (Interviewer: "There was a taped deposition of you from October, and in it, you defended the comments that you made on that 'Access Hollywood' tape about being able to grab women how you want. Do you stand by those comments?" Trump: "… Now, they said will you take that back? I said, look, for a million years, this is the way it's been. I want to be honest. This is the way it's been… [F]ortunately or unfortunately for her."). This Court held that the comments Trump made on CNN "may be considered to establish … [Trump's] deliberate intent to injure or out of hatred, ill will, or spite ('common law malice') in order for Ms. Carroll to obtain punitive damages," ECF 180 at 4–5, and Carroll intends to offer them at trial for this purpose. The Access Hollywood video may thus be offered to provide the necessary context for what Trump said on CNN after the first trial.[8]

Natasha Stoynoff and Jessica Leeds. The Court has already admitted the testimony of Stoynoff and Leeds under Federal Rule of Evidence 415. *See* ECF 145. There is no reason to change the Court's ruling and preclude their testimony now that trial concerns only damages. Under Federal Rule of Evidence 413, Rule 415 evidence can be admissible to "any matter to which it is relevant"—including to support an inference of Trump's mental state in making the defamatory statements. Stoynoff's and Leeds's testimony is highly relevant to the issue of Trump's common law malice: they will testify not only that Trump sexually assaulted them, but that Trump denied their allegations in the exact manner in which he denied Carroll's. *See Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 346 (S.D.N.Y. 2016) (noting that "evidence at trial [that] established that Defendants acted with extreme malice" for purposes of punitive damages included evidence that Defendants made other "attacks" in the same manner).

Furthermore, Stoynoff's and Leeds's testimony is also admissible, for the same purpose, under Rule 404(b) because it helps establish Trump's *modus operandi*: when a woman accuses Trump of sexual assault, he unconditionally denies the allegations, accuses the woman of fabricating her story, and declares that she was too ugly for him to have sexually assaulted in the first place. Evidence of this pattern is highly relevant to proving Trump acted with malice in denying Carroll's allegations in the same way here. *Cf. United States v. Graham*, No. 14 Cr. 500, 2015 WL 6161292, at *3 (S.D.N.Y. Oct. 20, 2015) (introduction of prior bad acts can "tend[] to make 'more probable'" the existence of the requisite mens rea elements); *see also Boyce v. Weber*, No. 19 Civ. 3825, 2021 WL 2821154, at *4 (S.D.N.Y. July 7, 2021) ("The Second Circuit 'has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate ... propensity.'" (citation omitted)); 25A C.J.S. Damages § 308 ("Evidence of prior offenses may be admissible to support an award of exemplary damages.").

---

[8] To the extent Trump argues the Access Hollywood video is inadmissible under Federal Rule of Evidence 404 as improper character evidence, Carroll is not offering the video to show that Trump's assault of Carroll was in conformity with those statements. It has already been established that Trump sexually assaulted Carroll.

KAPLAN HECKER & FINK LLP                                                                                                8

 

Respectfully submitted,

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan

cc: Counsel of Record (via ECF)