**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E. JEAN CARROLL,

                              *Plaintiff,*

         v.                                                     No. 20 Civ. 7311 (LAK) (JLC)

DONALD J. TRUMP, in his personal capacity,

                              *Defendant.*

---

**PROPOSED PRELIMINARY INSTRUCTION**

On November 14, 2023, this Court directed the parties to submit a joint proposed preliminary instruction by November 22, 2023. *See* ECF 226. According to the Court's order, the proposed preliminary instruction should include: "(a) an agreed statement as to the facts determined by virtue of the collateral estoppel effect of *Carroll II* in this case, (b) any facts as to which the parties stipulate with respect to the scope of the issues to be tried in this case, and (c) any other facts to which the parties stipulate that, in their view, should be conveyed to the jury at the outset." *Id.*

The parties' respective positions are reflected below, with the "Y" and "N" in brackets reflecting Defendant's position on the preliminary instruction covering the aforementioned topics that Plaintiff has proposed, as well as the counterproposals that Defendant has made. Where Defendant does not stipulate to a portion of the proposed instruction but does not set forth a counterproposal, it is his position that the language proposed by Plaintiff should not be included in the Court's preliminary instruction to the jury.

**Plaintiff's Proposed Instruction with Defendant's Position**

This case involves two parties: the plaintiff, E. Jean Carroll, and the defendant, Donald J. Trump, former President of the United States. [Stip: Y].

Ms. Carroll is a writer and advice columnist. [Stip: Y]

On June 21, 2019, New York Magazine published an excerpt of a forthcoming book by Ms. Carroll, a portion of which contained her account of being sexually assaulted by Defendant Donald J. Trump. [Stip: Y]

According to Ms. Carroll, in the mid-1990s, Ms. Carroll encountered defendant Donald Trump at the Bergdorf Goodman department store in Manhattan, where he assaulted her. [Stip: Y]

On June 21 and 22, 2019, after that excerpt was published, Mr. Trump publicly denied knowing Ms. Carroll, denied sexually assaulting her in the mid-1990s, and accused her of fabricating the assault for ulterior and improper purposes. [Stip: N – Defendant's Counterproposal: On June 21 and 22, 2019, after that excerpt was published, Mr. Trump, who at the time was the sitting President, publicly denied Ms. Carroll's account.]

On October 12, 2022, Mr. Trump issued an additional statement about Ms. Carroll, in which he stated:

> This 'Ms. Bergdorf Goodman case' is a complete con job. … She completely made up a story that I met her at the doors of this crowded New York City Department Store and, within minutes, 'swooned' her. It is a Hoax and a lie, …. She has no idea what day, what week, what month, what year, or what decade this so-called 'event' supposedly took place. The reason she doesn't know is because it never happened, and she doesn't want to get caught up with details or facts that can be proven wrong. If you watch Anderson Cooper's interview with her, where she was promoting a really crummy book, you will see that it is a complete Scam. She changed her story from beginning to end, after the commercial break, to suit the purposes of CNN and Andy Cooper. … In the meantime, and for the record, E. Jean Carroll is not telling the truth, is a woman who I had nothing to do with, didn't know, and would have no interest in knowing her if I ever had the chance.

[Stip: N]

Ms. Carroll is now suing the Mr. Trump for money damages for injuries she claims to have suffered as a result of the defamatory statements that Mr. Trump made about her on June 21 and June 22, 2019. [Stip: Y]

This is a damages only trial. [Stip: Y] You are not being asked in this case to determine whether Mr. Trump is liable for defamation due to his June 2019 statements or whether the underlying sexual assault in fact occurred. [Stip: Y]

In this case, only the question of assessing damages to Ms. Carroll for the June 2019 defamatory statements is at issue. [Stip: Y]

In other words, you must accept as established as a matter of fact that Mr. Trump lied in June 2019 when he denied sexually assaulting Ms. Carroll and that his June 2019 statements about Ms. Carroll were false and defamatory. [Stip: N]

The reason why you must accept these facts as established is because another jury has already decided them. [Stip: N – Defendant's Counterproposal: The reason why you must accept these facts as established is because another jury has already decided them in accordance with the applicable standards of proof in a civil case.]

In addition to bring a defamation claim relating to Mr. Trump's June 2019 statements, Ms. Carroll sued Mr. Trump for defamation based on Mr. Trump's October 2022 statement that I described before. [Stip: N]

She also sued him for sexual battery in connection with the incident at Bergdorf Goodman. [Stip: N]

The earlier trial focused on the claims relating to that October 2022 statement and the underlying sexual assault. [Stip: N]

At that trial, Ms. Carroll testified for a full day on direct examination and for nearly two full days on cross-examination. [Stip: N] (Defendant takes the position that trial testimony is not subject to issue preclusion, and should not be included in the preliminary instruction, based on the Court's prior holding that "issue preclusion is available only with respect to determinations by the Court or jury of issues necessary to support the judgment. It has nothing to do with testimonial statements by parties." ECF 214 at 23. Therefore Defendant objects to all references to trial testimony or other evidence presented in *Carroll I*. Plaintiff states that she is not proposing that trial testimony be "subject to issue preclusion." Instead, a description of the *Carroll II* trial is necessary context for the *Carroll I* jury to properly understand the Court's application of collateral estoppel. *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 571-72 (1951) ("It is the task of the trial judge to make clear to the jury the issues that were determined against the defendant in the prior suit …. He must be free to exercise 'a well-established range of judicial discretion.' He is not precluded from resorting to such portions of the record, including the pleadings and judgment, in the antecedent case as he may find necessary or appropriate to use in presenting to the jury a clear picture of the issues decided there and relevant to the case on trial. … [I]n his instructions to the jury [he should] reconstruct that case in the manner and to the extent he deems necessary to acquaint the jury fully with the issues determined therein." (citation omitted)). That is especially true here, where it is impossible to understand the meaning the prior jury's determination regarding the defamatory nature of Trump's statements without some understanding of the underlying conduct that occurred. Indeed, without that appropriate context, there is arguably a greater risk that jurors may be tempted to improperly to consult materials outside the courtroom in order to better understand what happened.)

She testified that she ran into Mr. Trump one Thursday evening as she was leaving the Manhattan department store Bergdorf Goodman, and that Mr. Trump recognized her. [Stip: N]

Ms. Carroll testified that at the doorway to Bergdorf Goodman, Mr. Trump called her the "advice lady," and asked her to help him pick out a gift for a "girl." [Stip: N]

Ms. Carroll testified that she had met Mr. Trump at a party before and presented a photograph from that party, showing herself, Mr. Trump, and their spouses together at that party. [Stip: N]

Ms. Carroll testified that in the Spring of 1996, she had her own advice column and TV show. [Stip: N]

Ms. Carroll testified that she agreed to help Mr. Trump, and after looking at hats and handbags together on the ground floor, Mr. Trump suggested that they go to the lingerie department on the sixth floor. [Stip: N]

Ms. Carroll testified that there was no one in the lingerie department when they arrived and that there was a bodysuit on top of a glass display case. [Stip: N]

Ms. Carroll testified that after they engaged in banter about who should try on the bodysuit, Mr. Trump took her by the arm and led her toward the dressing room. [Stip: N]

Ms. Carroll testified that after she walked into the dressing room, Mr. Trump immediately shut the door and pushed her up against the wall. [Stip: N]

Ms. Carroll testified that her head hit the wall, she pushed him back, but he pushed her back against the wall, and she banged her head again. [Stip: N]

Ms. Carroll testified that Mr. Trump then put his shoulder against her and held her against the wall with his weight. [Stip: N]

Ms. Carroll testified that Mr. Trump initially pressed his mouth on her mouth, then he leaned down and pulled down her tights. [Stip: N]

Ms. Carroll testified that she felt Mr. Trump shove his fingers into her vagina. [Stip: N]

Ms. Carroll testified that after a struggle she was able to get away and leave the store. [Stip: N]

Ms. Carroll testified that once she left the store, she called her friend Lisa Birnbach and told her what happened. [Stip: N]

Ms. Carroll also testified that one or two days later, she told a second friend, Carol Martin. [Stip: N]

Ms. Carroll testified that she did not go to the police or tell anyone else what had happened for over twenty years because she was ashamed and blamed herself for what Mr. Trump had done to her. [Stip: N]

Ms. Carroll testified that on June 21, 2019, she published an excerpt from her forthcoming book that included a description of her encounter with Mr. Trump. [Stip: N]

Ms. Carroll testified how over the next several days, Mr. Trump responded to her allegations with a series of statements, denying her allegations, attacking her motives for coming forward, and stating that she was "not [his] type." [Stip: N]

She also testified how several years later, on October 12, 2022, Mr. Trump made a similar statement on the social media platform, Truth Social. [Stip: N]

Ms. Carroll testified about how Mr. Trump's assault had negatively affected her, how Mr. Trump's statements affected her reputation, and the public backlash that she received. [Stip: N]

Ms. Carroll called ten witnesses to support her case. [Stip: N]

Lisa Birnbach testified that Ms. Carroll had called her one evening and told her that Mr. Trump had assaulted her in the dressing room at Bergdorf Goodman. [Stip: N]

Carol Martin testified that Ms. Carroll had told her about the attack two days after it had occurred. [Stip: N]

Cheryl Beall and Robert Salerno, who worked for Bergdorf Goodman at the time of the assault, testified that Ms. Carroll's account was consistent with their experience of the store at that time, including the absence of a salesperson in the lingerie department and the availability of an unlocked dressing room. [Stip: N]

Jessica Leeds testified that Mr. Trump assaulted her on an airplane, pressing his body against her and trying to reach his hands up her skirt. [Stip: N]

Ms. Leeds testified that when she came forward in 2016, Mr. Trump accused her of making her story up and insulted her appearance. [Stip: N]

Natasha Stoynoff testified how, in 2005, when she was writing a story about the Trumps for People magazine, Mr. Trump took her into an empty room at Mr. Trump's Mar-a-Lago property, then shut the door behind them, pushed her up against the wall, kissed her, and attempted to go further before his butler walked in and interrupted the altercation. [Stip: N]

Ms. Stoynoff testified that when she came forward publicly in 2016 about the assault, Mr. Trump attacked her motives for coming forward and insulted her appearance. [Stip: N]

Cande Carroll, Ms. Carroll's sister, testified that she and Ms. Carroll were raised to never speak about negative experiences, and to instead always present a positive attitude to the world. [Stip: N]

Roberta Myers, the former editor-in-chief of Elle Magazine and Ms. Carroll's long-time boss, testified about Ms. Carroll's integrity as a journalist and popularity as a columnist. [Stip: N]

Dr. Leslie Lebowitz, a clinical psychologist and expert on victims of sexual assault, testified that Ms. Carroll exhibits symptoms consistent with her account of being sexually assaulted. [Stip: N]

Dr. Ashlee Humphreys, a Professor at Northwestern University, testified about the amount of money it would take to help repair Ms. Carroll's reputation from the damage caused by Ms. Trump's October 2022 statement. [Stip: N]

Through the trial, the parties entered into evidence seventy-eight total documents and videos as exhibits. [Stip: N]

One of those videos included a video known as the Access Hollywood tape. [Stip: N]

On the Access Hollywood tape, Mr. Trump is recorded saying that he is "automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star they let you do it. You can do anything. … Grab them by the pussy. You can do anything." [Stip: N]

Mr. Trump did not present any witnesses in his own defense. [Stip: N]

Nor did he testify. [Stip: N]

The jury heard video of sworn testimony that Mr. Trump gave during a deposition, in which he denied that he ever assaulted Ms. Carroll, and confirmed that he wrote the October 2022 statement denying Ms. Carroll's allegations and disseminated it to various news publications. [Stip: N]

On May 9, 2023, the jury unanimously held Mr. Trump liable for battery based on a finding that he had sexually abused Ms. Carroll and for defamation based on his October 2022 statement. [Stip: N – Defendant's Counterproposal: Specifically, on May 9, 2023, another jury found that Ms.

Carroll had shown, by a preponderance of the evidence, that Mr. Trump had sexually abused her in the mid-1990s.]

In reaching this verdict, the jury made the following determinations. [Stip: N]

The jury found that Mr. Trump had committed a sexual battery against Ms. Carroll, and injured Ms. Carroll by sexually abusing her. [Stip: N]

The jury found that Mr. Trump's conduct in sexually abusing Ms. Carroll was willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of Ms. Carroll, or was so reckless as to amount to such disregard. [Stip: N – Defendant's Counterproposal: That jury also determined that Ms. Carroll had shown, by a preponderance of evidence, that Mr. Trump's conduct was willfully or wantonly negligent, reckless, or done with a conscious disregard of the rights of Ms. Carroll, or was so reckless as to amount to such disregard.]

The jury found that Mr. Trump's October 2022 statement, in which he claimed that Ms. Carroll fabricated her sexual assault allegation, that she did so for nefarious purposes, that he had never met Ms. Carroll, and that he did know who she was, was defamatory. [Stip: N – Defendant's Counterproposal: The jury further found that Ms. Carroll had established, by a preponderance of the evidence, that a separate statement published by Mr. Trump in October 2022, in which he denied Ms. Carroll's account and claimed that she had fabricated it, was defamatory.]

The jury found that Mr. Trump's claims that he did not sexually assault Ms. Carroll, that Ms. Carroll fabricated her sexual assault allegation, that Ms. Carroll fabricated the sexual assault allegation for nefarious purposes, that that he had never met Ms. Carroll, and that he did know who she was, were false. [Stip: N]

The jury found that when Mr. Trump made his October 2022 defamatory statement, he acted knowingly or in reckless disregard of its truth or falsity, meaning he had serious doubts as

to the truth of the statement or made the statement with a high degree of awareness that it probably was false. [Stip: N – Defendant's Counterproposal: The jury also found that Ms. Carroll had proven, by clear and convincing evidence, that the October 2022 statement was false and that it was made knowingly or in reckless disregard as to its truth or falsity.]

Finally, the jury found that Ms. Carroll was injured by Mr. Trump's publication of the October 2022 statement, and that Mr. Trump acted maliciously, out of hatred, ill will, spite or wanton, reckless, or willful disregard of the rights of Ms. Carroll when he made the October 2022. [Stip: N]

This case concerns the statements made by Mr. Trump on June 21 and June 22, 2019. [Stip: Y]

Here, Ms. Carroll seeks compensatory damages for injury to her reputation and humiliation and mental anguish in her public and private life, and punitive damages to punish Mr. Trump for acting maliciously and to discourage others from doing the same. [Stip: N – Defendant's Counterproposal: Here, Ms. Carroll seeks damages relating to those statements only. Any other statement made by Mr. Trump concerning Ms. Carroll that may be introduced into evidence or otherwise referenced during the course of this trial is not relevant to your assessment of damages, although it may be considered for the sole purpose of evaluating Mr. Trump's state of mind to determine whether he acted with malicious intent when he made the June 21 and 22 statements.]

The earlier jury verdict I just went through conclusively resolves many of the issues relevant to Ms. Carroll's defamation claims arising from Mr. Trump's June 21 and 22, 2019 statement about Ms. Carroll. [Stip: N – Defendant's Counterproposal: The earlier, May 2023 verdict resolves the issue of liability in Ms. Carroll's favor in this case as it relates to her defamation claims arising from Mr. Trump's June 21 and 22, 2019 statements.] There are several

factors that go into a defamatory statement, all which you must accept as true for purposes of this case. [Stip: Y]

First, you must accept that Mr. Trump published his June 21 and 22, 2019 statements and that the statements were about Ms. Carroll. [Stip: Y]

Second, you must accept that the statements disparaged Ms. Carroll in the way of her business or office or profession or trade and/or that they exposed Ms. Carroll to hatred or contempt or aversion or induced an evil or an unsavory opinion of her in the minds of a substantial number of people in the community. [Stip: N]

Third, you must accept that Mr. Trump's statements about Ms. Carroll were false. [Stip: N – Defendant's Counterproposal: Second, you must accept that the June 2019 statements were false.]

Finally, you must accept that Mr. Trump knew that his statements about Ms. Carroll were false or acted with reckless disregard as to whether they were false. [Stip: Y]

As a result, your task at the end of trial in this case is twofold. [Stip: N – Defendant's Counterproposal: As a result, your task is to decide whether Ms. Carroll was damaged by Mr. Trump's June 21 and 22, 2019 statements about her.]

First, you must decide whether Ms. Carroll was damaged by Mr. Trump's June 2019 defamatory statements about her, and if so, what sum of money that must be paid by Mr. Trump to Ms. Carroll as damages for defaming her. [Stip: N – Defendant's Counterproposal: In the event that you find that Ms. Carroll was damaged by these statements, you must then determine what sum of money, if any, Mr. Trump must pay to compensate her for that damage.]

Second, you must decide whether Mr. Trump acted maliciously in making the June 2019 defamatory statements about Ms. Carroll, and if so, the sum of money that must be paid to Ms.

Carroll to punish Mr. Trump for acting maliciously and to discourage Mr. Trump and others from doing the same. [Stip: N – Defendant's Counterproposal: If you find that Defendant's conduct caused the harm that Plaintiff alleged she suffered, you must consider whether Defendant's conduct was also wanton or malicious. Publication of defamatory statements is wanton and malicious only if the publication was solely motivated by hostility and a desire to injure Plaintiff. If, and only if, you find that such a sole motivation existed here may Plaintiff be entitled to punitive damages. If you reach this point in your deliberation, you will simply determine whether or not Plaintiff has proved, by clear and convincing evidence, that a desire to injure her and hostility toward her were the sole motive for publishing the portions of the June 21 and 22 statements that Plaintiff claims defamed her.]

Dated: November 22, 2023                     Respectfully submitted,


/s/ *Michael Madaio*                          /s/ *Roberta A. Kaplan*
Alina Habba                                   Roberta A. Kaplan
Michael Madaio                                Shawn Crowley
HABBA MADAIO & ASSOCIATES LLP                 Trevor Morrison
1430 U.S. Highway 206, Suite 240              Matthew J. Craig
Bedminster, NJ 07921                          KAPLAN HECKER & FINK LLP
Phone: (908) 869-1188                         350 Fifth Avenue, 63rd Floor
ahabba@habbalaw.com                           New York, New York 10118
mmadaio@habbalaw.com                          Phone: (212) 763-0883
                                              rkaplan@kaplanhecker.com
*Counsel for Defendant Donald J. Trump*       scrowley@kaplanhecker.com
                                              tmorrison@kaplanhecker.com
                                              mcraig@kaplanhecker.com

                                              Joshua Matz
                                              KAPLAN HECKER & FINK LLP
                                              1051 K Street NW, Suite 1040
                                              Washington, D.C. 20001
                                              (202) 742-2661
                                              jmatz@kaplanhecker.com

                                              *Counsel for Plaintiff E. Jean Carroll*