23-1045-cv (L) & 23-1146-cv (Con)
*Carroll v. Trump*

# In the
# United States Court of Appeals
## for the Second Circuit

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/13/2023__

AUGUST TERM 2023

Nos. 23-1045-cv (L) & 23-1146-cv (Con)

E. JEAN CARROLL,
*Plaintiff-Counter-Defendant-Appellee*,

v.

DONALD J. TRUMP, in his personal capacity,
*Defendant-Counter-Claimant-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: OCTOBER 23, 2023
DECIDED: DECEMBER 13, 2023

Before: CABRANES, CHIN, and KAHN, *Circuit Judges*.

CERTIFIED COPY ISSUED ON 12/13/2023

Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation. But defenses based on subject-matter jurisdiction—the courts' statutory or constitutional power to adjudicate the case—are nonwaivable. Defendants can raise such defenses at any stage in the litigation.

Presidential immunity is a defense that entitles the President to absolute immunity from damages liability for acts within the outer perimeter of his official responsibilities. This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se.

2

Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

———————

> Joshua Matz (Kate Harris, Roberta A. Kaplan, Trevor W. Morrison, *on the brief*), Kaplan Hecker & Fink LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellee* E. Jean Carroll.

> Michael T. Madaio (Alina Habba, *on the brief*), Habba Madaio & Associates LLP, Bedminster, NJ, *for Defendant-Counter-Claimant-Appellant* Donald J. Trump.

———————

José A. Cabranes, *Circuit Judge*:

Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation.[1] But

---

[1] *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023). "While the terms 'waiver' and 'forfeiture' are often used interchangeably because they have similar effects, they have slightly different meanings." *Id*. at 117 n.10. "The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (quotation marks and comma omitted). E.

defenses based on subject-matter jurisdiction—"the courts' statutory or constitutional power to adjudicate the case"[2]—are nonwaivable. Defendants can raise such defenses "at any stage in the litigation."[3]

Presidential immunity is a defense that stems from "the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history," and entitles the President to "absolute . . . immunity from damages liability for acts

_____

Jean Carroll ("Plaintiff"), Donald J. Trump ("Defendant"), and the District Court refer to Defendant's failure to raise presidential immunity as "waiver." For purposes of this consolidated appeal, whether Defendant forfeited rather than waived presidential immunity matters not. Thus, "[w]e use the term ['waiver'] in this opinion for ease of discussion," but we express no view on whether Defendant intended to relinquish his presidential immunity defense, "which is a question of fact reserved for the district court." *Kaplan*, 77 F.4th at 117 n.10; *see, e.g.*, *LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961, at *5 n.2 (2d Cir. Apr. 26, 2022) (summary order) ("Although it may be more accurate to refer to [Appellant] as having forfeited, rather than waived, many of the arguments it raises here, for convenience we refer to both their action and inaction here in terms of 'waiver.'").

[2] *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017) (quotation marks omitted).

[3] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

within the outer perimeter of his official responsibilities."[4] For example, the Supreme Court held in *Nixon v. Fitzgerald* that presidential immunity protected former President Richard Nixon from a lawsuit by an ex-Air Force employee who alleged that Nixon fired him in retaliation for testifying before Congress about cost overruns.[5] Conversely, the Court held in *Clinton v. Jones* that presidential immunity did not shield President Clinton from civil liability for actions allegedly taken when he was Governor of Arkansas because they were not official presidential acts.[6]

This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense

---

[4] *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 756 (1982) (quotation marks omitted). Other Government officials are likewise protected by absolute immunity under certain circumstances. For example, prosecutorial immunity is a form of absolute immunity that shields "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding . . . for all acts 'intimately associated with the judicial phase of the criminal process.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). And judges are entitled to absolute judicial immunity "for acts 'committed within their judicial discretion.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985)).

[5] *See Nixon*, 457 U.S. at 733-40, 756-58.

[6] *Clinton v. Jones*, 520 U.S. 681, 694-95 (1997).

in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

## I.   BACKGROUND

The relevant facts in this appeal are undisputed. We summarize them below.

## A. Factual Background

On June 21, 2019, Plaintiff publicly accused Defendant of sexually assaulting her in the mid-1990s.[7] Defendant, who was President of the United States at the time of the accusations, denied Plaintiff's claims in a series of public statements. In the first, released that same day, he claimed that "it never happened," he "never met" Plaintiff, and that "[s]he is trying to sell a new book—that should indicate her motivation."[8] The next day, he stated that "[t]his is a woman who has also accused other men of things . . . It is a totally false accusation."[9]

On November 4, 2019, Plaintiff responded by suing Defendant for defamation in New York State Supreme Court. Defendant filed his

---

[7] *See* E. Jean Carroll, *Hideous Men: Donald Trump Assaulted Me in a Bergdorf Goodman Dressing Room 23 Years Ago. But He's Not Alone on the List of Awful Men in My Life*, THE CUT (June 21, 2019), https://www.thecut.com/2019/06/donald-trump-assault-e-jean-carroll-other-hideous-men.html [https://perma.cc/HX9T-8MPK].

[8] Appellant's Appendix ("A") 573.

[9] *Id.* at 580. On June 24, 2019, Defendant further stated that "she's not my type" and that it "never happened." *Id.* at 590. As of November 15, 2023, Defendant's June 24 statement is no longer the subject of Plaintiff's defamation claim, although Plaintiff contends it remains relevant to the question of punitive damages. *See* Def. 28(j) Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 17, 2023), ECF No. 121; Pl. Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 20, 2023), ECF No. 124. We take judicial notice of this development, *see Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992), but it does not alter our analysis.

answer on January 23, 2020. On September 8, 2020, the United States removed the case to the United States District Court for the Southern District of New York pursuant to the Westfall Act.[10]

## B. Procedural Background

On December 22, 2022, Defendant moved for summary judgment.[11] In his reply brief, filed on January 19, 2023, he raised for the first time the argument that presidential immunity barred liability.

---

[10] The Westfall Act immunizes federal employees acting within the scope of their office or employment from tort liability. *See* 28 U.S.C. § 2679(b)(1). Under the Act, the United States may remove a state court civil case to federal court upon certification by the Attorney General that the employee was acting within the scope of his employment at the time of the alleged incident. *See id.* § 2679(d)(2); *Osborn v. Haley*, 549 U.S. 225, 229-30 (2007). Whether the Westfall Act immunizes Defendant is not before us today. *Cf. Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (recounting the procedural history of this case's Westfall Act dispute and remanding to the District Court). After we remanded to the District Court, the Government decided not to issue Defendant a new Westfall Act certification in light of the filing of Plaintiff's amended complaint.

[11] One month before Defendant moved for summary judgment, Plaintiff filed a separate lawsuit against Defendant for sexual assault and defamation. The defamation claim arose out of an October 2022 statement by Defendant denying Plaintiff's assault allegation. *See* Complaint, *Carroll v. Trump*, No. 22-cv-10016 ("*Carroll II*") (S.D.N.Y. Nov. 24, 2022). In May 2023, the *Carroll II* jury awarded Plaintiff $5 million in damages. The verdict is the subject of a separate appeal currently pending before this Court. *See Carroll II, appeal docketed*, No. 23-793 (2d Cir. May 11, 2023).

On July 5, 2023, the District Court denied Defendant's motion for summary judgment after determining that Defendant waived presidential immunity and denied Defendant's request for leave to amend his answer to add presidential immunity as a defense ("July 5 Order").[12] The Court denied Defendant's request for leave to amend on two independent grounds: first, that the request was futile, and second, that Defendant unduly delayed in raising the defense and granting the request would prejudice Plaintiff.[13] The Court also rejected Defendant's argument that his statements were not defamatory per se.[14] Defendant appealed the July 5 Order on July 19, 2023.

Meanwhile, on May 22, 2023, Plaintiff filed an amended complaint that added, *inter alia*, more statements by Defendant alleging that Plaintiff's accusations were false and politically motivated. Defendant filed his answer to Plaintiff's amended complaint on June 27, 2023. The amended answer for the first time raised presidential immunity as an affirmative defense. On August 7, 2023, the District Court struck Defendant's presidential immunity defense from his amended answer on the ground that it had been

---

[12] Memorandum Opinion Denying Defendant's Motion for Summary Judgment (Corrected), *Carroll v. Trump* ("*Carroll I*"), No. 20-cv-7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ("July 5 Order").

[13] *Id.* at *9-13.

[14] *Id.* at *13-14.

waived and, even if not, "would have been insufficient as a defense" ("August 7 Order").[15] On August 10, 2023, Defendant appealed the August 7 Order.

Defendant sought a stay from the District Court, arguing that his appeal of the District Court's July 5 Order, which rejected Defendant's presidential immunity defense, divested the District Court of jurisdiction. On August 18, 2023, the District Court denied Defendant's stay motion upon determining his appeal to be frivolous.[16] Defendant then sought an emergency stay from our Court, which a motions panel denied on September 13, 2023. The same day, the motions panel ordered the consolidation of Defendant's appeals of the July 5 Order and the August 7 Order and set an expedited briefing schedule.

## II.    DISCUSSION

This case concerns appeals from two related orders by the District Court. The July 5 Order denied Defendant's motion for

---

[15] Memorandum Opinion Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and Certain Purported Affirmative Defenses, *Carroll I*, No. 20-cv-7311, 2023 WL 5017230, at *9 (S.D.N.Y. Aug. 7, 2023) ("August 7 Order"). The August 7 Order also dismissed Defendant's counterclaim that Plaintiff defamed him by accusing him of rape. *Id*. at *5-8. The District Court's dismissal of Defendant's counterclaim is not before us today.

[16] Memorandum Opinion Denying Defendant's Motion to Stay, *Carroll I*, No. 20-cv-7311, 2023 WL 5312894, at *7-8 (S.D.N.Y. Aug. 18, 2023).

summary judgment on the ground that Defendant waived his presidential immunity defense and further denied Defendant's request for leave to amend his answer to add presidential immunity as an affirmative defense. The August 7 Order struck Defendant's affirmative defense of presidential immunity from his answer to Plaintiff's amended complaint on the ground that Defendant had already waived this defense.

We hold that presidential immunity is waivable and that Defendant waived this defense.[17] Thus, the District Court did not err in its order denying Defendant's motion for summary judgment, nor did it err, much less "abuse its discretion," in denying his belated request for leave to amend his answer to add presidential immunity as a defense.[18] We also hold that the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.[19] Nor did the District Court err in retaining jurisdiction after Defendant filed his notice of appeal on July 19, 2023.[20] Finally, we hold that we lack appellate jurisdiction to consider whether Defendant's statements were defamatory per se.[21]

---

[17] *See* Section II.A, *post.*

[18] *See* Sections II.A-II.B, *post.*

[19] *See* Section II.C, *post.*

[20] *See* Section II.D, *post.*

[21] *See* Section II.E, *post.*

### A. Whether Defendant Waived Presidential Immunity[22]

Is presidential immunity waivable? And if so, did Defendant waive it? The answer to both questions is yes.

### 1. Whether Presidential Immunity Is Waivable

Defendant argues that presidential immunity is a jurisdictional defense and is thus nonwaivable.[23] We disagree. The Supreme Court recognized in *Nevada v. Hicks* that "[t]here is no authority whatever for the proposition that absolute- and qualified-immunity defenses

---

[22] We review the District Court's determination that Defendant waived his presidential immunity defense for "abuse of discretion." *See Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022). We review the District Court's denial of summary judgment and its determination that presidential immunity can be waived *de novo*. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012); *Berg v. Kelly*, 897 F.3d 99, 105 (2d Cir. 2018). We have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage. Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law.").

[23] *See* Def. Br. at 12-34; *see also* notes 1-6 , *ante* (explaining concepts of waiver and presidential immunity).

pertain to the court's jurisdiction."[24] And we have repeatedly distinguished absolute immunity defenses from defenses based on subject-matter jurisdiction.[25]

Rather than acknowledge *Hicks* or our precedents, Defendant points to scattered references to "jurisdiction" in Supreme Court cases involving presidential immunity.[26] But as we have recently been reminded by the Supreme Court, "[t]he mere fact that [the Supreme] Court previously described something without elaboration as

---

[24] 533 U.S. 353, 373 (2001); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014) (Jackson, *J.*) ("[A]bsolute judicial immunity is a non-jurisdictional bar."), *aff'd*, No. 14-cv-5180, 2015 WL 13710107 (D.C. Cir. 2015). Qualified immunity shields officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Absolute immunity, by contrast, "confers complete protection from civil suit." *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995). The parties do not dispute that presidential immunity is a form of absolute, rather than qualified, immunity.

[25] *See, e.g.*, *Chen v. Garland*, 43 F.4th 244, 252 n.6 (2d Cir. 2022); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *see also Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) (holding absolute immunity defense to be waived because not adequately preserved for appellate review).

[26] *See* Def. Br. at 15-16, 19, 22, 31 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500-01 (1867); *Nixon*, 457 U.S. at 754; and *Clinton*, 520 U.S. at 710).

jurisdictional . . . does not end the inquiry."[27] We must ask if the prior decision addressed whether the provision or defense is "'technically jurisdictional'—whether it truly operates as a limit on a court's subject-matter jurisdiction—and whether anything in the decision 'turn[ed] on that characterization.'"[28] Accordingly, "[i]f a decision simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional ruling' that receives no precedential effect."[29]

None of the cases on which Defendant relies indicate that presidential immunity is jurisdictional—indeed, quite the opposite. Defendant relies primarily on the following passage in *Nixon*:

> [A] court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests . . . the exercise of jurisdiction has been held warranted. In the case of this

---

[27] *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023) (quotation marks omitted).

[28] *Id.* at 160 (quoting *Arbaugh*, 546 U.S. at 512) (some quotation marks omitted).

[29] *Id.* (quoting *Arbaugh*, 546 U.S. at 511) (alteration adopted).

> merely private suit for damages based on a
> President's official acts, we hold it is not.[30]

But *Nixon* hurts, not helps, Defendant's case. The passage quoted above follows a threshold analysis of whether the Supreme Court had subject-matter jurisdiction over the dispute.[31] Pursuant to the usual practice in the federal courts,[32] only once assured of its subject-matter jurisdiction did the Supreme Court proceed to the "merits"—*i.e.*, to whether the President was entitled to immunity.[33]

Nor do the passing references to "jurisdiction" in *Mississippi v. Johnson* or in *Clinton v. Jones* support Defendant's position. In *Johnson*, the question was whether a state could obtain an injunction to prevent

---

[30] *Nixon*, 457 U.S. at 754 (citations omitted); *see* Def. Br. at 19, 22-23, 30-31, 33.

[31] *Nixon*, 457 U.S. at 741-43; *see also id.* at 741 ("Before addressing the merits of this case, we must consider two challenges to our jurisdiction.").

[32] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("We first address whether the Court of Appeals had subject-matter jurisdiction . . . ."); *In re Clinton Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022) ("At the outset, we must consider whether this Court has subject matter jurisdiction . . . ."); *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 146 (2d Cir. 2016) ("As a threshold matter, we must first satisfy ourselves that we have subject matter jurisdiction."); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 137 (2d Cir. 2012) ("Notwithstanding our grave concerns regarding the merits of the complaint, we proceed, as we must, first to determine issues of subject matter jurisdiction.").

[33] *Nixon*, 457 U.S. at 741, 743 n.23.

the President from carrying out an Act of Congress, not whether a President is liable for damages in a private civil suit.[34] And like *Nixon*, *Clinton* first held that the Supreme Court had subject-matter jurisdiction before proceeding to the immunity question.[35] Neither *Nixon* nor *Clinton* addressed whether presidential immunity is "technically jurisdictional," nor did "anything in the decision[s] turn[]  on that characterization."[36] Thus, *Clinton*'s reference to "jurisdiction"—the Court's determination that "[t]he Federal District Court has jurisdiction to decide this case"[37]—is, like *Nixon*'s, best characterized as a "drive-by jurisdictional ruling" that "should be accorded no precedential effect" because it ultimately does not bear on the question of whether presidential immunity is jurisdictional.[38]

All in all, Defendant provides no case that turns on whether presidential immunity is jurisdictional, much less one holding that it *is* jurisdictional, and *Nixon*—described by Defendant's counsel at oral

---

[34] *See generally Johnson,* 71 U.S. 475.

[35] *See Clinton,* 520 U.S. at 685.

[36] *Wilkins,* 598 U.S. at 160 (quotation marks omitted).

[37] *Clinton,* 520 U.S. at 710.

[38] *Wilkins,* 598 U.S. at 160-61 (quotation marks omitted and alteration adopted).

argument as the "main case" and "the only binding precedent" on presidential immunity—points in the opposite direction.[39]

Next, Defendant contends that "the separation-of-powers doctrine" renders presidential immunity nonwaivable because "an impermissible inter-branch conflict will always arise when a court seeks to impute civil liability on a President for the performance of his official acts."[40] But separation-of-powers considerations militate in favor of, not against, recognizing presidential immunity as waivable. A President's autonomy should be protected; thus, a President *should* be able to litigate if he chooses to do so. Indeed, at least one President has declined to invoke presidential immunity, opting instead to settle two civil suits out of court.[41] Recognizing presidential immunity as a jurisdictional defense would, the District Court observed, "risk

---

[39] Oral Arg. Audio Recording at 4:14-22; *cf. Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, 2023 WL 8291481 (D.C. Cir. Dec. 1, 2023) (affirming district court's order denying Defendant's presidential immunity defense without analyzing whether the defense is jurisdictional).

[40] Def. Br. at 12-13.

[41] *See* Answer to Complaint, *Bailey v. Kennedy,* No. 757,200 (Cal. Super. Ct. Jan. 19, 1961); Answer to Complaint, *Hills v. Kennedy,* No. 757,201 (Cal. Super. Ct. Jan. 19, 1962); *see also Clinton*, 520 U.S. at 692 (summarizing the Kennedy litigation). In addition, lawsuits filed against Presidents Franklin D. Roosevelt and Harry S. Truman were dismissed without, it appears, either President invoking presidential immunity. *See Jones v. Clinton*, 72 F.3d 1354, 1362 n.10 (8th Cir. 1996), *aff'd*, 520 U.S. 681.

encroachment by the judiciary into the president's domain by eliminating the president's ability to choose" whether to litigate.[42]

Moreover, avoiding undue judicial intrusion on the executive branch undergirds the doctrines of both prosecutorial immunity and presidential immunity. That said, Defendant does not dispute that prosecutorial immunity is waivable. Rather, he argues that the President's unique constitutional role distinguishes presidential immunity from other forms of absolute immunity such as prosecutorial immunity and judicial immunity.[43] But as Defendant acknowledges,[44] the Supreme Court has made clear that absolute immunity for prosecutors and judges, on the one hand, and presidential immunity on the other, are closely related. "As is the case with prosecutors and judges," the Court stated in *Nixon*, "a President must concern himself with matters likely to 'arouse the most intense feelings.'"[45] And the Court has recently reinforced the "careful analogy" it drew in *Nixon*, reasoning that "a President, like [judges and prosecutors], must . . . not be made 'unduly cautious in the discharge

---

[42] July 5 Order, *Carroll I*, 2023 WL 4393067, at *8.

[43] Def. Br. at 28-30.

[44] *Id.* at 28-29.

[45] *Nixon*, 457 U.S. at 751-52 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)); *see also id.* at 758 ("For the President, as for judges and prosecutors, absolute immunity merely precludes a particular private remedy for alleged misconduct in order to advance compelling public ends.").

of [his official] duties' by the prospect of civil liability for official acts."[46]

Nor do the Court's references in *Nixon* and *Harlow v. Fitzgerald*—*Nixon*'s companion case—to the President's unique status in comparison with other Government officials support Defendant's position.[47] Those passages contrasted the President to other *executive* officials—such as presidential aides and Cabinet officers—to conclude that, unlike the qualified immunity of these lower-level executive officials, presidential immunity is absolute.[48] And although the Supreme Court in *Nixon* recalled the "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," the passage in question concerned not whether presidential immunity was waivable, but whether the

---

[46] *Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020) (quoting *Nixon*, 457 U.S. at 752 n.32).

[47] *See Nixon*, 457 U.S. at 750 ("The President's unique status under the Constitution distinguishes him from other executive officials."); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ("As we explained in [*Nixon*], the recognition of absolute immunity for all of a President's acts in office derives in principal part from factors unique to his constitutional responsibilities and station. Suits against other officials—including Presidential aides—generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself.").

[48] *Nixon*, 457 U.S. at 750; *Harlow*, 457 U.S. at 811 & n.17. For the difference between qualified immunity and absolute immunity, see note 24, *ante*.

district court's order rejecting Nixon's immunity defense was a "serious and unsettled" question that could be raised on interlocutory appeal.[49]

Finally, Defendant argues that Article III of the Constitution, which vests judicial power in the federal courts, makes presidential immunity nonwaivable. He reasons as follows. First, violations of Article III—for example, the improper exercise of federal judicial power by a non-Article III entity—are not waivable. Next, separation-of-powers considerations inform both Article III and presidential immunity. Thus, presidential immunity is not waivable. But apart from *Nixon* (discussed above), none of the cases Defendant draws to our attention concern immunity at all, much less presidential immunity.[50] More to the point, it is not accurate to assert that

---

[49] *Nixon*, 457 U.S. at 743 (quotation marks omitted).

[50] *See* Def. Br. at 23-27 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986); *Lo Duca v. United States*, 93 F. 3d 1100 (2d Cir. 1996); *Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993); *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975 (2d Cir. 1991); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 682 (2015); *Kuretski v. Comm'r*, 755 F.3d 929, 937 (D.C. Cir. 2014); *Nixon*, 457 U.S. 731; *Nixon*, 457 U.S. 731 (Burger, C.J., concurring); *Johnson*, 71 U.S. 475).

separation-of-powers defenses or arguments are *ipso facto* nonwaivable.[51]

To summarize: notwithstanding scattered references to "jurisdiction" in some presidential immunity cases, the Supreme Court has indicated that immunity defenses are not jurisdictional, and that presidential immunity is to be treated like other forms of immunity that Defendant does not dispute are waivable. Moreover, *Nixon*—the leading presidential immunity case—treats presidential immunity as nonjurisdictional. Finally, recognizing presidential immunity as waivable reinforces, not undermines, the separation of powers and the President's decisionmaking authority by affording the President an opportunity to litigate if he so chooses. Accordingly, we hold that presidential immunity is waivable.

---

[51] *See Wellness Int'l Network*, 575 U.S. at 682 n.11 ("The proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases.") (alteration adopted) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995)); *United States v. Donziger*, 38 F.4th 290, 303 (2d Cir. 2022) ("[S]tructural constitutional claims . . . have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.") (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893-94 (1991) (Scalia, *J.*, concurring in part and concurring in judgment)), *cert. denied*, 143 S. Ct. 868 (2023); *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) ("[W]e do not imply that all claims of structural error . . . are unwaivable.").

21

## 2. Whether Defendant Waived Presidential Immunity

Having determined that presidential immunity is waivable, we reach the question: Did Defendant waive his presidential immunity defense? We hold that he did.

Defendant filed his answer to Plaintiff's original complaint in New York state court in January 2020. But the answer did not invoke presidential immunity. The District Court thus determined that Defendant had waived this defense, a holding Defendant does not challenge in this appeal.[52] Indeed, Defendant's counsel conceded at oral argument that assuming the defense of presidential immunity is waivable, Defendant had waived that defense.[53]

Accordingly, the District Court did not err in denying Defendant's motion for summary judgment on the ground that he had waived his presidential immunity defense. We turn next to whether the District Court correctly rejected his attempt to revive it—first in his request for leave to amend his answer, then in his answer to Plaintiff's amended complaint.

---

[52] *See* July 5 Order, *Carroll I,* 2023 WL 4393067, at *5 n.18 ("It accordingly is clear that Mr. Trump does not dispute that if absolute presidential immunity can be waived, he in fact waived it in this case."). *See generally* Def. Br.

[53] Oral Arg. Audio Recording at 9:59-10:33, 11:53-12:18.

## B. Defendant's Request for Leave to Amend

"We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*."[54] The District Court did not err, much less "abuse its discretion,"[55] when it denied Defendant's request for leave to amend his answer to add the defense of presidential immunity on grounds of undue delay and prejudice.[56]

---

[54] *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quotation marks omitted).

[55] "'[A]buse of discretion' . . . is a nonpejorative term of art" that "implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018). "The term simply describes the circumstance in which a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Id*. (quotation marks omitted and alterations adopted).

[56] That the amendment would have been futile constituted an independent basis for the District Court's decision. *See* July 5 Order, *Carroll I*, 2023 WL 4393067, at *9-11. Because we affirm the District Court's determination on grounds of undue delay and undue prejudice, we do not reach the question whether the proposed amendment would have been futile.

First, Defendant unduly delayed in raising presidential immunity as a defense.[57] Three years passed between Defendant's answer and his request for leave to amend his answer. A three-year delay is more than enough, under our precedents, to qualify as "undue."[58] And Defendant's excuse for not timely raising the defense—that the question of whether the Westfall Act immunized Defendant was pending before the District Court, this Court, and the District of Columbia Court of Appeals between September 2020 and June 2023—is unpersuasive.[59] Defendant does not explain how the

---

[57] Black's Law Dictionary defines "undue" as "[e]xcessive or unwarranted." *Undue*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Groff v. DeJoy*, 600 U.S. 447, 469 (2023) (holding that, in the context of the phrase "undue hardship," "the modifier 'undue' means . . . 'excessive' or 'unjustifiable'") (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1547 (1966)).

[58] *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (1 year and 9 months); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (2 years and 3.5 months); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (2 years and 9 months); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (3 years); *see also City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (3 years and 2 months). To be sure, we have allowed amendments to pleadings when similar or longer lengths of time have passed. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("more than four years"); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). But those cases did not involve a finding of prejudice to the non-moving party.

[59] *See* note 10, *ante* (describing the Westfall Act); *Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (discussing the procedural history of this case's Westfall Act dispute).

Westfall Act dispute precluded him from raising a defense of presidential immunity. Indeed, Defendant first raised presidential immunity in January 2023—that is, during the pendency of the Westfall Act dispute.

We next conclude that Defendant's delay unduly prejudiced Plaintiff. "Prejudice," like "abuse of discretion," is a legal term of art.[60] In gauging whether a proposed amendment would prejudice a party, "we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."[61] Although "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."[62] Finally, requests to amend that come at a late stage of the litigation, after discovery has closed and a

---

[60] *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims"); *see also* note 55, *ante* ("defining abuse of discretion").

[61] *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks omitted).

[62] *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quotation marks omitted and alterations adopted); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotation marks omitted).

motion for summary judgment has been filed, are more likely to be prejudicial.[63]

Had Defendant raised presidential immunity before discovery closed, Plaintiff claims, she would have engaged in discovery on whether Defendant's actions fell within his official duties.[64] First, Plaintiff would have asked Defendant for more detail on the process through which he issued and prepared the June 2019 statements, including how the process compared to his pre- and post-presidential processes.[65] Second, Plaintiff would have sought third-party discovery from White House personnel allegedly involved in preparing and issuing the statements.[66] Third, Plaintiff would have sought expert testimony from former White House officials and requested internal White House documents from the National Archives regarding former presidents' processes for issuing statements denying wrongdoing.[67] Plaintiff's counsel represents that they avoided doing so because "the risk of prolonging the litigation and creating complex executive privilege fights did not seem worth it to us, as measured against the

---

[63] *See AEP Energy Servs.*, 626 F.3d at 727.

[64] Pl. Br. at 45; Oral Arg. Audio Recording at 26:06-30:02.

[65] Oral Arg. Audio Recording at 26:06-27:44.

[66] *Id.* at 27:45-28:22.

[67] *Id.* at 28:23-29:20.

absence of an absolute immunity defense, which Mr. Trump had not raised."[68]

Against all this, Defendant contends that the discovery Plaintiff would have pursued regarding presidential immunity (whether the statements fell within the President's official duties) was already explored by Plaintiff in the discovery she pursued regarding the Westfall Act (whether the statements fell within the President's scope of employment).[69] But as counsel for Defendant concedes, the two tests are different.[70] The Westfall Act's scope-of-employment test is subjective, while presidential immunity's official-duties test is objective.[71] And Defendant has no response to Plaintiff's contention that Defendant's failure to timely raise presidential immunity informed her decision not to engage in discovery on whether Defendant's actions fell within his official duties.

In sum, three years passed before Defendant raised the defense of presidential immunity, significant additional resources to conduct

---

[68] *Id.* at 28:57-29:04.

[69] *Id.* at 39:40-40:28.

[70] *Id.* at 39:50-40:05.

[71] *Compare Trump v. Carroll*, 292 A.3d 220, 234 (D.C. 2023) (Westfall Act inquiry's "focus is on the subjective state of mind of the tortfeasor-employee"), *with Nixon*, 457 U.S. at 756 (presidential immunity analysis rejecting "inquiry into the President's motives").

discovery would be required were Defendant to amend his answer, and the request arose at a late stage of litigation—after discovery closed and Defendant moved for summary judgment. Under these circumstances, we hold that the District Court did not "abuse its discretion" in denying Defendant's request for leave to amend his answer on grounds of undue delay and prejudice.

### C. Defendant's Answer to Plaintiff's Amended Complaint

After the District Court denied Defendant's request for leave to amend his answer, Plaintiff filed an amended complaint. In response, Defendant filed an answer to the amended complaint asserting presidential immunity. The District Court struck Defendant's presidential immunity defense from his amended answer, reasoning that "[t]here is nothing new in the amended complaint that would make Mr. Trump's presidential immunity defense any more viable or persuasive now than it would have been before."[72]

We review a district court decision striking an affirmative defense *de novo*.[73] Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," an amended complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to the original

---

[72] August 7 Order, *Carroll I*, 2023 WL 5017230, at *9.

[73] *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

complaint."[74] Defenses that "involve[] the core issue of a party's willingness to submit a dispute to judicial resolution," such as lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service, or the existence of an arbitration agreement, are "not automatically revived by the submission of an amended complaint" if initially waived.[75] To revive such claims, a party "must show that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy."[76]

Presidential immunity involves the party's willingness to submit the dispute to judicial resolution and is distinguishable from revivable, merits-based defenses.[77] Indeed, the only reason we have jurisdiction over this appeal is that the denial of presidential immunity is a collateral order, a requirement of which is that the issue on appeal be "completely separate from the merits of the action."[78] What's more,

---

[74] *Id.* (quotation marks omitted).

[75] *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *abrogated in part on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).

[76] *Id.* at 113.

[77] *See, e.g.*, *Shields*, 25 F.3d at 1128 (failure to plead fraud with particularity is a revivable defense).

[78] *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation marks omitted). Defendant suggests that the only non-revivable defenses are those listed in Federal

Defendant does not identify any changes to the complaint "that, in fairness, should nullify [his] earlier waiver and allow [him] to reassess [his] strategy."[79] Accordingly, in the unusual circumstances presented here, we hold that the District Court did not err in striking presidential immunity as an affirmative defense from Defendant's answer to Plaintiff's amended complaint.

## D. Whether the District Court Retained Jurisdiction After Defendant Appealed

"The filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed."[80] We have previously noted that "[t]he divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time. Hence, its application is guided by

---

Rule of Civil Procedure 12(b)(2)-(5). Def. Br. at 42; Reply Br. at 27-29. Defendant is mistaken. A motion to compel arbitration, for instance, is non-revivable, even though it is not listed as a defense in Rule 12. *See Gilmore*, 811 F.2d at 112.

[79] *Gilmore*, 811 F.2d at 113.

[80] *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d Cir. 2014) (alteration adopted) (quoting *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996)).

concerns of efficiency and is not automatic."[81] For example, district courts may retain jurisdiction notwithstanding appeal if the appeal is frivolous.[82]

The District Court determined that it retained jurisdiction because Defendant's appeal was frivolous. We need not decide whether Defendant's appeal is frivolous, for we conclude that under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction. To hold otherwise would require the District Court on remand to possibly undertake the rather pointless exercise of re-adopting the orders it has issued since July 19, 2023, the date Defendant appealed the July 7 Order.[83] "[O]ur application of the

---

[81] *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quotation marks and citations omitted).

[82] *See, e.g., United States v. Salerno*, 868 F.2d 524, 539-40 (2d Cir. 1989); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) ("Appellate courts can . . . authorize the district court's retention of jurisdiction when an appeal is certified as frivolous.").

[83] *See United States v. Rodríguez-Rosado*, 909 F.3d 472, 478 (1st Cir. 2018) ("We think applying the bench-made divestiture rule today would surely short-circuit its aim of judicial efficiency . . . . [W]ith jurisdiction back in its hands, the district court, undoubtedly, would again deny [defendant's] motion, like every other time it has confronted—and denied—the motion. And then, chances are that [defendant] would once more appeal his case to us. Which would present to us [another]

divestiture rule must be faithful to the principle of judicial economy from which it springs,"[84] and "it should not be employed to defeat its purposes or to induce endless paper shuffling."[85] This Court has declined to apply the divestiture rule under similar circumstances in the past, and we reach the same result here.[86]

## E. Whether We May Consider Whether Defendant's Statements Were Defamatory Per Se

Apart from appeals taken under the collateral order doctrine,[87] orders denying summary judgment are, in general, not immediately

---

variation on the original theme of this case, like an encore, featuring the very same parties, the very same motion, the very same denial order, and the very same arguments on the merits. That seems to us too much to ask of a rule fashioned to ferret imprudence out of the courts."); s*ee also United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) ("[B]ecause [defendant's] interlocutory appeal was ultimately a losing one, any claimed error in proceeding with limited pretrial matters was harmless and no useful purpose would be served by requiring that court to redecide the pre-trial motions." (quotation marks omitted)).

[84] *Rodgers*, 101 F.3d at 251.

[85] 20 MOORE'S FEDERAL PRACTICE - CIVIL § 303.32 (3d ed. 2023).

[86] *See Rodgers*, 101 F.3d at 251-52 (collecting cases).

[87] *See* note 22, *ante* (explaining that we have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity).

appealable.[88] And collateral-order doctrine appeals—such as Defendant's appeals of the July 5 Order and the August 7 Order—do not render other aspects of the case immediately reviewable unless they are "inextricably intertwined" or "necessary to ensure meaningful review" of the collateral orders.[89]

Defendant argues that none of his statements about Plaintiff were defamatory per se under New York law because they did not tend to cause injury to her trade, business, or profession, and that the District Court applied the wrong legal standard to his statements.[90]

Far from being inextricably intertwined with or necessary to ensure meaningful review of the District Court's denial of presidential immunity, whether Defendant's statements fell within the outer perimeter of his official presidential duties has nothing to do with whether the statements qualify as defamatory per se. Because we have no appellate jurisdiction over the District Court's determination that Defendant's statements were defamatory per se, we do not consider Defendant's argument that the District Court erred in this respect.

---

[88] *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 221 (2d Cir. 2023).

[89] *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010).

[90] Def. Br. at 56-61.

### III.    CONCLUSION

To summarize, we hold that:

(1) Presidential immunity is a waivable defense.

(2) Defendant waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer.

(3) The District Court did not err in denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense on the ground that he had waived this defense.

(4) Defendant unduly delayed in raising presidential immunity as a defense, and permitting Defendant to amend his answer to add the defense would unduly prejudice Plaintiff. Thus, the District Court did not err, much less "abuse its discretion," in denying Defendant's request for leave to amend his answer to add presidential immunity as a defense.

(5) Presidential immunity is not a defense that is automatically revived by the submission of an amended complaint if initially waived. Thus, the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.

(6) Under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction after Defendant's notice

of appeal was filed on July 19, 2023. Thus, the District Court did not err in retaining jurisdiction after July 19, 2023.

(7) Whether Defendant's statements about Plaintiff were defamatory per se is neither inextricably intertwined with nor necessary to ensure meaningful review of the District Court's denial of presidential immunity. Thus, we lack appellate jurisdiction to consider whether Defendant's statements about Plaintiff were defamatory per se.

Accordingly, we **AFFIRM** the July 5, 2023 order of the District Court denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

35