# EXHIBIT B

Page 1

1                UNITED STATES DISTRICT COURT

                SOUTHERN DISTRICT OF NEW YORK

2

3

4    E. JEAN CARROLL,                    )

                                         )

5                    Plaintiff,          )

                                         )

6           -vs-                         ) No. 20 Civ. 7311 (LAK)

                                         )

7    DONALD J. TRUMP, in his             )

     personal capacity,                  )

8                                        )

                     Defendants.         )

9

10

11              Videotaped deposition of ASHLEE HUMPHREYS,

12   Ph.D. taken before CAROL CONNOLLY, CSR, CRR, and Notary

13   Public, pursuant to the Federal Rules of Civil Procedure

14   for the United States District Courts pertaining to the

15   taking of depositions, at 1870 Campus Drive, Room 3-107,

16   Chicago, Illinois, commencing at 9:03 a.m. on the 11th

17   day of December, A.D., 2023.

18

19

20

21

22

23

24

Page 2

```
 1           There were present at the taking of this
 2   deposition the following counsel:
 3           KAPLAN HECKER & FINK by
             SHAWN G. CROWLEY and
 4           KATE HARRIS
             350 Fifth Avenue
 5           63rd Floor
             New York, New York  10118
 6           (212) 763-0883
             scrowley@kaplanhecker.com
 7
                 appeared on behalf of the Plaintiff;
 8
 9           HABBA, MADAIO & ASSOCIATES by
             MICHAEL T. MADAIO
10           1430 U.S. Highway 206
             Suite 240
11           Bedminster, New Jersey  07921
             (908) 869-1188
12           mmadaio@habbalaw.com
13               appeared on behalf of the Defendant.
14
15   ALSO PRESENT:
16           Brandon Rackowski, Videographer
17           Peter Gabra, Habba Madaio & Associates
18
19
20
21
22
23
24
```

Page 3

```
 1                    I N D E X
 2      VIDEOTAPED DEPOSITION OF ASHLEE HUMPHREYS, Ph.D.
 3                TAKEN December 11, 2023
 4
 5   EXAMINATION BY                              PAGE
 6   Michael Madaio                             5, 61
 7   Shawn Crowley                                55
 8                   - - - - - - - -
 9                   EXHIBITS MARKED
10                                              PAGE
11   Exhibit 3        Supplemental Expert         18
                      Report of Professor
12                    Ashlee Humphreys, Ph.D.,
                      November 13, 2023
13
     Exhibit 4        Article, On Trump's         33
14                    "Not My Type" Defense
                      Against E. Jean Carroll,
15                    June 25, 2019, the
                      atlantic.com, Megan Garber
16
     Exhibit 5        Expert Report of Professor  18
17                    Ashlee Humphreys, Ph.D.,
                      October 14, 2022
18
     Exhibit 6        Transcript of proceedings   23
19                    In Re:  E. Jean Carroll v.
                      Donald J. Trump, 22 Civ 10016,
20                    April 25, 2023
21   Exhibit 7        Complaint and Jury Demand   36
                      In Re:  E. Jean Carroll v.
22                    Donald J. Trump, in his
                      personal capacity,
23                    Index No. 160694/2019
24
```

Page 4

1        THE VIDEOGRAPHER:  Good morning.  We are going on
2    the record at 9:03 a.m. on Monday, December 11, 2023.
3    This is media unit 1 of the video-recorded deposition of
4    Dr. Ashlee Humphreys, Ph.D taken by counsel for defendant
5    in the matter of E. Jean Carroll versus Donald J. Trump
6    filed in the United States District Court, southern
7    district of New York, case number 22 Civ 10016 LAK.  The
8    location of the deposition is McCormick Foundation Center
9    located at 1870 Campus Drive, Room 3-107, Evanston,
10   Illinois, 60208.
11          My name is Brandon Rackowski representing
12   Veritext Legal Solutions, and I'm the videographer.  The
13   court reporter is Carol Connolly from the firm Veritext
14   Legal Solutions.
15          Counsel and all present will now state their
16   appearances and affiliations for the record beginning
17   with the noticing attorney.
18      MR. MADAIO:  Michael Madaio with Habba Madaio &
19   Associates representing the defendant Donald J. Trump.
20      MS. CROWLEY:  Shawn Crowley, Kaplan Hecker and Fink.
21   I'm here with my colleague Kate Harris.  We represent the
22   plaintiff E. Jean Carroll.
23          Just one note.  The case caption is actually --
24   the case number is actually 20 Civ 7311.

Page 5

1       THE VIDEOGRAPHER:  Will the court reporter please

2   swear in the witness and then counsel may proceed.

3                   ASHLEE HUMPHREYS, Ph.D.,

4   called as a witness herein, having been first duly sworn,

5   was examined upon oral interrogatories and testified as

6   follows:

7                       EXAMINATION

8                   By Mr. Madaio:

9       Q    Good morning, Dr. Humphreys.

10      A    Good morning.

11      Q    So you gave a deposition previously in this

12   case, correct?

13      A    That's correct.

14      Q    And you also had a deposition in the related

15   Carroll II matter, that's correct?

16      A    That's correct.

17      Q    All right.  So I'm going to skip through most

18   of the general deposition rules given that we have

19   limited time today.  But if you have any questions at any

20   point, if you have any confusion about what's appropriate

21   in a deposition or any questions about, you know, how the

22   deposition should be proceeding, feel free to ask or

23   speak to your counsel.  But, you know, to save time we're

24   going skip over that today.

Page 6

1          Just one question.  Have you taken any

2    medication that would affect your ability to testify

3    truthfully today?

4          A    No, I haven't.

5          Q    Okay.  And -- so you previously submitted an

6    expert report dated October 14th, 2022, right, in this

7    case?

8          A    That's correct.

9          Q    And on November 13th, 2023 you submitted a

10   supplemental report in this case, right?

11         A    That's correct.

12         Q    And what was -- What's your understanding of

13   what the purpose was for your supplemental report?

14         A    My assignment for the supplemental report was

15   to provide an impressions and damages analysis for the

16   first and second statements in this case.

17         Q    And so is it your understanding that the --

18   based on the supplemental report the -- or based on

19   what's happened in this case -- So you understand that --

20   I guess my question is what's your understanding of why

21   the supplemental report was necessary?

22         A    I don't have an understanding of exactly why it

23   was necessary.

24         Q    Okay.  Do you understand that one of the -- one

Page 7

1   of the statements in this case, the June 24th statement,

2   has been removed from this case as a -- as part of the

3   cause of action?

4        MS. CROWLEY:  Objection to form.

5        THE WITNESS:  Answer?

6        MS. CROWLEY:  You can answer.

7        THE WITNESS:  I'm not clear on the details, but that

8   doesn't surprise me given my assignment.

9        MR. MADAIO:  Q   Okay.  And you state in your

10  supplemental report that the methodology used to analyze

11  the impressions, impact, and damages model remains

12  unchanged from that outlined in your initial report,

13  right?

14       A    That's correct.

15       Q    And that's correct.  And in your initial

16  report, the October 14th report, you assessed the harm to

17  Ms. Carroll's reputation based on three statements made

18  by President Trump.  It was a June 21st statement,

19  June 22nd statement, and June 24th statement, right?

20       A    That's right.

21       Q    And when you did your analysis for the initial

22  report, did you do anything to differentiate the harm

23  between any of these three statements and deal with them

24  individually in any way?

Page 8

1        MS. CROWLEY:  Objection to form.

2        THE WITNESS:  I'm sorry.  Could you repeat the

3   question?

4        MR. MADAIO:  Q  Sure.  When you did your initial

5   analysis, did you look at the three statements

6   individually or did you look at them collectively in

7   terms of the harm to Ms. Carroll's reputation?

8        A    Could you be more specific?  In which part of

9   my analysis are you referring to?

10       Q    Did you do anything in your analysis in terms

11   of looking at them individually as opposed to

12   collectively as a group?

13       A    Yes.  So in my impressions analysis each

14   statement is related to a particular instance or a

15   particular news article, tweet, something like that,

16   right.  So in the impressions analysis, you can itemize

17   out.  In the impact analysis, I provided an assessment of

18   impact based on all three of those statements, and there

19   was content related specifically to each one of those

20   statements that I looked at.  In the damages analysis,

21   the damages analysis relies on the impact analysis.  So

22   to the degree I took it into account in the impressions

23   analysis, it was also reflected in damages.  So, yes.

24       Q    But in your initial report did you do anything

Page 9

1  to attribute any of the sources in your impact model to

2  any individual statement, the June 21st, June 22nd,

3  June 24th?

4      A    At that time, no.

5      Q    And is it your position that the supplemental

6  report removes any damages attributable to the June 24th

7  statement?

8      A    Yes.

9      Q    And what process or methodology did you utilize

10 to determine the harm caused by each individual statement

11 meaning the June 21st, June 22nd, and June 24th statement

12 as opposed to the collective harm caused by each

13 statement, which is for the most part how it was dealt

14 with in the initial report?

15     MS. CROWLEY:  Objection.  Are you talking about in

16 the supplemental report?

17     MR. MADAIO:  Q   In the supplemental report.  How

18 did you differentiate to determine which harm is

19 specifically attributable to the June 24th statement?

20     A    Right.  So I looked through all the instances

21 that I had in my initial report, and I omitted any

22 instance that contained only the June 24th statement or

23 referred to a general denial exclusively.

24     Q    Okay.  And that -- that's not something that

Page 10

1   you did in connection with the initial report?

2       MS. CROWLEY:  Objection.

3       MR. MADAIO:  Q  Right?

4       MS. CROWLEY:  We're here just today to talk about

5   the supplemental report.  I've allowed you to ask several

6   questions about the first report.

7       MR. MADAIO:  Well, we're talking about -- I mean,

8   what's relevant is also the differences in her

9   methodology, what she did in the first one, what she did

10  in the second one.

11      MS. CROWLEY:  Right.  But I think she testified

12  about what she did in the first report.  She said that

13  she analyzed each of them separately.  So your question

14  just misstated her testimony.  You can ask it again, but

15  I'd ask you to just correctly state the testimony that

16  she just gave.

17      MR. MADAIO:  Q  Okay.  I'm asking did you utilize --

18  what you just described to me, the process that you

19  utilized to differentiate the harm caused by the

20  June 24th statement, is that anything that you did in the

21  initial report?

22      MS. CROWLEY:  Objection to form.

23      THE WITNESS:  Sorry.  I'm not clear on the question.

24      MR. MADAIO:  Q   The process that -- the process

Page 11

1    that you used to differentiate the harm from the

2    June 24th statement which you did in your supplemental

3    report, did you also do that in any way in your initial

4    report?

5         A    So in my initial report I estimated the harm

6    for all three of the statements.  In the supplemental

7    report I simply took out the instances that refer to that

8    third statement and used the same methodology to

9    calculate both impressions and damages.

10        Q    Right.  But I'm talking about the methodology

11   in terms of differentiating between the three statements.

12        A    Uh-huh.

13        Q    So in the first statement -- in the first

14   report you referred to all three statements as quote,

15   unquote, these statements, right?

16        A    Uh-huh, yes.

17        Q    And so - and throughout the majority of the

18   report you -- that's how you referred to them.  You don't

19   differentiate between either the June 21st, the June 22nd

20   or June 24th statement, correct?

21        A    Correct.

22        Q    Okay.  And so you say for the supplemental

23   report you removed any media sources that referred only

24   to the June 24th statement?

 1      A    That's right.

 2      Q    I think in your report you say sources that

 3  referred exclusively to the June 24th statement, right?

 4      A    That's correct.

 5      Q    And do you think that's an appropriate means of

 6  removing any harm that would have been caused by the

 7  June 24th statement?

 8      MS. CROWLEY:  Objection to form.

 9      THE WITNESS:  Yes, I do.

10      MR. MADAIO:  Q  Did you account for any -- in any

11  way for whether the June 24th statement -- withdrawn.

12          So for the purposes of your analysis for the

13  June 24th statement, when you drafted the supplemental

14  report, if there were articles that referenced the

15  June 24th statement, or even largely focused on the

16  June 24th statement, it was your position that it was

17  appropriate to keep those statements -- those sources in

18  even if they, you know, only referenced the June 21st or

19  June 22nd statement?

20      MS. CROWLEY:  Objection to form.  It's compound.

21          You can answer if you understand it.

22      THE WITNESS:  Can you mind asking me again?  Sorry.

23      MR. MADAIO:  Q   Sure.  So in your report --

24      A    Yes.

Page 13

1      Q     -- You were largely focused -- you removed only

2   those sources that had any reference to the June 24th --

3   June 21st or June 22nd statement, is that right?

4      A     I retained those instances, yes.

5      Q     Does that include articles and sources that

6   also referenced the June 24th statement?

7      A     That's correct.

8      Q     And does that also include articles or sources

9   that were primarily focused on the June 24th statement?

10     A     You know, I'm not aware of any instances that

11  made that statement more prominent and the other

12  statements less prominent.  There could be some in there

13  that contain both where one statement is more prominent

14  than the other, but I didn't -- that wasn't part of my

15  criteria.

16     Q     Well, do you think it would be appropriate to

17  keep a source in there if it was largely focused on the

18  June 24th statement and had hardly any mention of the

19  June 21st or June 22nd statement?

20     MS. CROWLEY:  Objection to form.

21     THE WITNESS:  If it contained one of the first two

22  statements, I did keep -- I did retain them.

23     MR. MADAIO:  Q   But -- my question was do you think

24  that's an appropriate method of assessing the harm of the

Page 14

1  June 24th statement as opposed to the June 21st and

2  June 22nd statements?

3       MS. CROWLEY:  Objection to form.

4       THE WITNESS:  Yes, I think that's an appropriate way

5  to measure the harm of the June -- of the first two

6  statements.

7       MR. MADAIO:  Q   Only if the June 21st or 22nd

8  statements are mentioned in any way in an article.

9       A    That's correct.

10      Q    And you afforded equal weight as opposed to --

11 So, for example, the June 21st statement was mentioned at

12 the tail end of an article briefly referenced.  You think

13 that should be afforded equal weight as an article that's

14 entirely focused on the June 21st statement?

15      A    You know, I could give you a clear answer if

16 you give me specific examples where that's the case.

17      Q    Well, I'm asking more about your methodology in

18 general, the way that you assessed the harm because the

19 way I read it is that you afforded equal weight to these

20 articles and that you essentially did not assess the

21 prominence of the statements within the articles.

22      A    Uh-huh.  So it's my position that those should

23 be included.  However, I could give you a better answer

24 if you have a specific instance.  I'm not aware of

Page 15

1    instances that were like that particular one that you

2    refer to.

3         Q    Okay.  Well, let me point you to a few articles

4    that remained in your damages models in the supplemental

5    report.  I'm just going to read you the title of these

6    articles.  So W-35 is Trump On E. Jean Carroll's Assault

7    Allegations.  Quote, She Is Not My Type.  Actually,

8    sorry.  Let me take a step back actually before I get

9    into the examples.

10              Are you familiar with what President Trump said

11   in the June 24th statement?

12        A    Roughly speaking, yes, I am.

13        Q    What is your understanding of what was said in

14   that statement?

15        A    That what was largely covered was the quote Not

16   My Type.

17        Q    Okay.  And do you know when the June 24th

18   statement was first published?

19        A    I don't offhand.  I assume it was on June 24th,

20   but I could be wrong.

21        Q    Okay.  So, again, to go to the specific

22   examples, I want to read you some of the articles from --

23   that were made in your impact model and your damages

24   assessment in the supplemental report.  W-35:  Trump On

Page 16

1  E. Jean Carroll's Assault Allegations, quote, She Is Not

2  My Type.

3          W-36:  Exclusive, Trump Vehemently Denies

4  E. Jean Carroll allegation, says, quote, She Is Not My

5  Type.

6          W-42:  Trump on E. Jean Carroll Accusing Him Of

7  Rape, quote, She's Not My Type.

8          W-43:  Trump Denies Woman's Sexual Assault

9  Allegation, quote, She Is Not My Type.

10          W-44 is the same exact title.

11          W-46:  Trump says he didn't rape author E. Jean

12  Carol, quote, She's Not My Type.

13          W-48:  Quote, She's Not My Type.  Trump, Again

14  Denies E. Jean Carroll's Misconduct Allegation.

15          W-50:  Trump Responds to E. Jean Carroll Rape

16  Allegation, quote, She's Not My Type --

17      MS. CROWLEY:  Mike, are you going to show her these

18  articles or are you going to read a bunch of titles?

19      MR. MADAIO:  I assume she's familiar with the

20  sources in her report.

21      MS. CROWLEY:  Well, if you're going to ask her

22  whether she kept them and relied on them and what weight

23  she gave these statements, you are going to need to show

24  her the full article.  Just reading the title is not

```
 1   going to get the job done here.
 2        MR. MADAIO:  I can show her her report where she has
 3   the titles listed in her article.
 4        MS. CROWLEY:  But do you have the articles
 5   themselves?
 6        MR. MADAIO:  I have several of them.
 7        MS. CROWLEY:  Okay.  Then I think you need to show
 8   them to her if you're going to ask her whether and how
 9   much weight she gave certain statements in them.
10        MR. MADAIO:  Well, I think the easiest way is that I
11   can show her her report which list the titles out.  I'm
12   referencing the numbers, the W dash number is referring
13   to her report, which she lists them in.  Again, these
14   are, again, sources listed in her report.  I don't
15   think --
16        MS. CROWLEY:  I'm not sure she's going to remember
17   -- what's said in all like however many of the articles.
18        MR. MADAIO:  I'm not asking her -- I'm just pointing
19   at this point just to the titles.
20        MS. CROWLEY:  Okay.  What's the question going to be
21   at the end of this long recitation of --
22        MR. MADAIO:  I have a line of questions.
23        MS. CROWLEY:  Okay.  But my point is just -- we'll
24   see where it goes, but my point is if you're going to ask
```

Page 18

1    her whether she considered how much weight she gave to

2    those articles, whether she considered the content of

3    those articles, that sort of thing, she needs to actually

4    be able to see the article.

5         MR. MADAIO:  Well, right now I'm asking about the

6    titles.  This is strictly about the titles of the

7    articles.

8         MS. CROWLEY:  Okay.

9              (Exhibit 5 marked as requested)

10              (Conversation off the written record)

11         MR. MADAIO:  Q  If you turn to page 97.  We'll start

12    at 96.  This has been marked Humphreys 3.  I can also

13    give you -- it's the supplemental report just for

14    reference to see what's been removed.

15              (Exhibit 3 marked as requested)

16         Q    That's going to be page 25 through 27.  Shows

17    what's been removed in terms of your web sources.

18         A    Great.

19         Q    So if you look at W-35, again that's the

20    article, Trump on E. Jean Carroll --

21         MS. CROWLEY:  Which report are you looking at?

22         MR. MADAIO:  This is the initial report, page 96,

23    W-35.  Title of that article is Trump On E. Jean

24    Carroll's Assault Allegations, quote, She's Not My Type.

Page 19

1    And looking at the supplemental report, page 26, W-35,

2    that source was not removed, correct?

3         A    Uh-huh, that's correct.

4         Q    Okay.  And then W-36, Exclusive -- title is

5    Exclusive, Trump Vehemently Denies E. Jean Carroll's

6    Allegation, says, quote, She's Not My Type.

7              Looking at the supplemental report, that was

8    not removed, correct?

9         A    That's correct, 36, yes.

10        Q    36.  W-42, title is, Trump On E. Jean Carroll

11   Accusing Him of Rape, quote, She's Not My Type.  Again,

12   looking at the supplemental report, W-42 is not removed,

13   right?

14        A    Correct.

15        Q    W-43, Trump Denies Women's Sexual Assault

16   Allegation, quote, She's Not My Type.  And looking at the

17   -- also W-43 has the same title.  Sorry.  Never mind.

18             W-42, looking at supplemental report, that is

19   not removed, correct?

20        A    Correct.

21        Q    W-43 and W-44 have the same title, it's Trump

22   Denies Woman's Sexual Accusation, quote, She's Not My

23   Type.  Again, looking at 43 and 44 on the supplemental

24   report, those have not been removed, right?

Page 20

1      A    Correct.

2      Q    W-46, title is Trump Says He Didn't Rape Author

3  E. Jean Carroll, quote, She's Not My Type.  Again,

4  looking at the supplemental report, 46 is not removed,

5  right?

6      A    Correct.

7      Q    48, W-48, title is, quote, She's Not My Type,

8  Trump Again Denies E. Jean Carroll's Sexual Misconduct

9  Allegation.  Looking at the supplemental report, W-48 is

10 not removed, right?

11     A    Correct.

12     Q    W-50, Trump Responds to E. Jean Carroll's Rape

13 Allegation, quote, She's Not My Type.  Looking at the

14 supplemental report, W-50 is not removed, right?

15     A    Correct.

16     Q    W-52, title is Donald Trump responds to E. Jean

17 Carroll's Rape Allegation, quote, She's Not My Type.

18 W-52 is not removed from the supplemental report, right?

19     A    Correct.

20     Q    W-53, Trump Says Sexual Assault Accuser E. Jean

21 Carroll, Not My Type.  And W-53 is not removed from the

22 -- from the supplemental report, right?

23     A    That's correct.

24     Q    Okay.  And -- so despite the fact that the

Page 21

1    June 24th statement is no longer part of this action and

2    has been removed entirely supposedly from your damages

3    calculation, you thought it was proper to keep these

4    articles included in your impact model?

5         A    Yes, I did.

6         Q    Okay.  And that's despite the fact that the

7    title specifically references the she's-not-my-type

8    statement and the June 24th statement in general?

9         A    That's correct.

10        Q    In determining whether to include an article in

11   your updated impact model, did you consider whether the

12   June 21st or June 22nd statement was featured prominently

13   in that article?

14        A    No, that was not my criteria.

15        Q    Did you think that was relevant to your

16   determination of whether or not they should be included

17   in the impact model?

18        A    I'm sorry.  In the impact model or the

19   impressions model?

20        Q    Did you think that was a relevant

21   consideration?

22        A    In the impact model, I analyzed the response to

23   a lot of these articles.  In the impressions model I

24   decided to include these or not include them.

Page 22

1     Q    Okay.  Did you consider whether the title of

2   the article was related to the June 21st and June 22nd

3   statement?

4     A    Sorry.  Could you ask again?

5     Q    Did you consider whether the title of the

6   article was related to the June 21st or June 22nd

7   statement?

8     A    No, that was not my criteria.

9     Q    Okay.  And did you consider whether the title

10   of the article specifically referenced the June 24th

11   statement?

12     A    No, the title was not in my criteria.

13     Q    Okay.  That's consistent with your methodology

14   that you've employed since your initial report?

15     A    Yes.  So my methodology is consistent

16   throughout.  What materials I analyzed, of course, is

17   different in the expert report -- in the initial report

18   and the supplement.

19     Q    But previously when you were considering

20   articles, you didn't -- you wouldn't consider the

21   prominence of where the statements were in the article,

22   the titles of the article, those aren't factors that you

23   would have previously considered?

24     MS. CROWLEY:  Objection to form.

Page 23

1      THE WITNESS:  I considered instances where one --

2  where the three statements appeared, one of the three

3  statements appeared in my initial selection.

4      MR. MADAIO:  Q   Okay.  I want to show you -- do we

5  have -- I want to show -- Let's have this marked as

6  Humphreys 6.  I'm going to show you what's marked

7  Humphreys 6.

8           (Exhibit 6 marked as requested)

9      Q   Dr. Humphreys, do you recall testifying in

10  Carroll II, it was a related case to this, the trial --

11  we had a trial back in April?

12      A   Yes, I do.

13      Q   Okay.  When you testified in Carroll II your

14  testimony was truthful, right?

15      A   Yes.

16      Q   And do you recall being asked about what

17  criteria you considered in determining which articles to

18  include -- that you included in your impact model for the

19  Carroll II case?

20      A   I don't recall specifically.  If you want to

21  point me to a page, that would be helpful.

22      Q   Yeah.  I'd like to point you to page 1 --

23      MS. CROWLEY:  This is -- you're now asking her about

24  her testimony in a trial in a different case, right?  So

1    this deposition is supposed to be limited to the work she

2    did on the supplemental report in this case.

3         MR. MADAIO:  Well, it's about the methodology and

4    consistency of the methodology that she's employed

5    regarding the statements.

6         MS. CROWLEY:  But those are different statements in

7    a different case.  This deposition is about the --

8         MR. MADAIO:  Well, it all connects, and I'll get

9    there.

10        MS. CROWLEY:  All right.

11        MR. MADAIO:  Q   Okay.  And -- I want to take you to

12   page 1119, and it's -- starting on the bottom of

13   page 1119 to the top of page 1120.  Let's start at line

14   18 -- 17 the question is:  What is the complaint?

15             A  The complaint is kind of the initial

16             document that outlined the allegations against

17             Mr. Trump.

18             Q  And how many articles were cited in the

19             complaint?

20             A  So initially in the complaint I think there

21             were over about 60 articles.

22             Q  Did you use all of them in your analysis?

23             A  No, I didn't.

24             Q  How many did you consider?

Page 25

```
 1              On page 1120, Answer, so I ultimately
 2              considered 17 articles.
 3              Q   And how did you include or what analysis --
 4              what criteria did you use to select those 17?
 5              A   Yes.  So the ones that I chose to count
 6              featured the statement prominently, it related
 7              to the headline.  It might have appeared in the
 8              first half of the article.  There was a
 9              prominent part of those 17 articles.
10         MS. CROWLEY:  I'm going to object to this, and I'm
11    going to direct you not to answer because it doesn't have
12    to do with the first report.  This is about a statement
13    that your client made years after the statements that are
14    actually at issue today, after there was repeated
15    litigation and news stories, and so her work -- that work
16    and analysis that she did in deciding and considering
17    which posts and which articles to consider may have been
18    different, and it has nothing to do with the work that
19    she did in considering the June 29th statement.
20         MR. MADAIO:  She says it in her Carroll II report
21    that she uses the same exact methodologies and everything
22    is the same from Carroll I.  So it all carries over.
23         MS. CROWLEY:  What's the relevance to the
24    supplemental report that we're here to testify about
```

Page 26

 1   today?

 2         MR. MADAIO:  It's absolutely relevant.

 3         MS. CROWLEY:  What is the question?  What's your

 4   question?

 5         MR. MADAIO:  She just testified that she didn't

 6   consider whether statements are in the headlines or

 7   whether they were a prominent part of the article, and

 8   she testified previously that that was part of her main

 9   criteria in determining what articles to choose.

10         MS. CROWLEY:  In Carroll II?

11         MR. MADAIO:  In Carroll II where she used same

12   methodologies as Carroll I.

13         MS. CROWLEY:  Where does she say she used the exact

14   same methodology?

15         MR. MADAIO:  That's in her Carroll II report.

16         MS. CROWLEY:  In the Carroll II report she says she

17   using the exact same methodology that she used in the

18   supplemental report that she had not actually prepared or

19   even thought of that we're here to actually ask questions

20   about?

21         MR. MADAIO:  She says she used the same as her

22   initial report in Carroll I, and in her supplemental

23   report she also says she uses the same methodology that

24   she used in her initial report in Carroll I.

Page 27

1      MS. CROWLEY:  Right.  I think you covered the

2  methodology she used in Carroll I in the first report.

3  We're here today to talk about the methodology and the

4  work that she did in preparing the supplemental report.

5  It has nothing to do with the work that she did in

6  analyzing the October 2022 statement.

7      MR. MADAIO:  It's absolutely relevant.  I want to

8  know why there's inconsistencies.

9      MS. CROWLEY:  You can have a couple more questions,

10  but like this is -- it's pretty clear that we're just

11  here to talk about the supplemental report, and I think

12  that you're getting pretty far away from that.

13      MR. MADAIO:  I think it's very relevant.  It's all

14  about the criteria that she's using to determine what

15  statements should be included in the impact model.

16      MS. CROWLEY:  And she's explained, right?  She said

17  it -- you're asking the same question over and over and

18  over again.  You can have a few questions, but --

19      MR. MADAIO:  I mean -- We can talk to the judge if

20  we need to, but it's completely relevant.

21      MS. CROWLEY:  Okay.  Let's see where this goes.

22      MR. MADAIO:  Q   Okay.  So these -- again, I want to

23  read that line, page 1120.  You stated that the articles

24  that you chose featured -- the criteria that you used in

Page 28

```
 1   choosing the articles were ones that featured the
 2   statement prominently, they related to the headline, it
 3   might have appeared in the first half of the article and
 4   it was a prominent part of those 17 articles.  But you
 5   just said in -- for your supplemental report you didn't
 6   consider those same factors, is that correct?
 7        A    That's correct.
 8        Q    So why did you think these factors were
 9   important in your Carroll II analysis but not in your --
10   your impact model for the supplemental report?
11        A    So this was a methodology for a separate case.
12        Q    Is there anything that -- between the two cases
13   that would warrant you using a different methodology for
14   determining whether the articles are -- should be
15   included in your impact model?
16        A    I can refer you to the expert report in this
17   case to discuss the methodology if you like.
18        Q    Well, did you use different methodologies in
19   Carroll II -- in your expert report for Carroll II than
20   you did for your initial report in Carroll I?
21        A    Not substantially as I recall, but I would need
22   to see the report to tell you.
23        Q    Okay.  Did you use different methodologies in
24   your supplemental report for Carroll I as you did in your
```

Page 29

1    initial report for Carroll I?

2        A    Sorry.  I need to just make a clarification on

3    the terminology here.  So we talk about methodology.

4    What I mean is the methodology for counting impressions,

5    impact the way I treat each statement.  Like, as a social

6    scientist, I would consider these matters of like

7    inclusion or exclusion but not necessarily methodology.

8        Q    Okay.  Okay.  So did you use the same criteria

9    -- is there any reason why you would use -- use different

10   criteria for determining which statements should be

11   included -- sorry -- which sources, meaning articles,

12   should be included and excluded in your impact model in

13   Carroll I as opposed to the impact model in Carroll II?

14       A    Well, there were differences in criteria given

15   that we're looking to include different statements.

16       Q    But, for example, when you point to the -- in

17   Carroll II you say it was relevant whether the statement

18   was prominently featured in the article and whether it

19   was in the headline.  Why wouldn't those factors be

20   relevant in Carroll I as well?

21       A    So they were clearly relevant in Carroll II.

22   They weren't substantially relevant when preparing my

23   expert report in Carroll I.

24       Q    But why were they not relevant in Carroll I

Page 30

1    since they were in Carroll II?  I'd like to know the

2    reason why.

3        A    When I chose what articles to include in

4    Carroll I, I was choosing to include any article that

5    contained a certain set of statements, a certain set of

6    defamatory statements.  That was my assignment and that's

7    what I did.

8        Q    Okay.  But do you think it's relevant the

9    prominence of how an article is -- how a statement is

10   featured in the article?

11       MS. CROWLEY:  Objection to form.

12       THE WITNESS:  Not necessarily.

13       MR. MADAIO:  Q   Okay.  But you thought it was

14   relevant in Carroll II?

15       A    I think it can be relevant in some instances,

16   yes.

17       Q    So what's something that would make the

18   prominence of the -- how the article -- how the statement

19   is featured in the article?  What's something that would

20   make that relevant?

21       A    You know, I'd have to see specific examples to

22   be able to tell you why it would be relevant or not.

23       Q    Okay.  Well, generally speaking, for your

24   supplemental report, you were tasked with removing the

Page 31

1   June 24th statement from your impact model, correct?

2       A    I just need to be clear that I included

3   articles that referred to the first or second statement,

4   but not the third.  So I excluded any article that was

5   exclusively about the third statement.

6       Q    Right.  And what was it that made you think

7   that was the appropriate way to update your impact model

8   to account for the June 24th statement being removed from

9   the case?

10      MS. CROWLEY:  Objection to form.

11           You can answer if you understand that.

12      THE WITNESS:  Sorry.  Could you ask it again?

13      MR. MADAIO:  Q  Sure.  I mean, what's your basis for

14  decision that the appropriate way to account for removing

15  the June 24th statement from your impact model is to

16  remove any statement that is only about the June 24th

17  statement?

18      MS. CROWLEY:  Objection to form.

19      THE WITNESS:  Do you mean the impact model or the

20  impressions model?

21      MR. MADAIO:  Q   I mean either one, the report

22  generally.

23      MS. CROWLEY:  Objection to form.

24      THE WITNESS:  So for the impressions model I simply

Page 32

1    removed all articles that referred exclusively to the

2    June 24th statement.

3         MR. MADAIO:  Q  I just want to be clear.  When you

4    talking about the impressions model versus the impact

5    model, when you removed sources from your supplemental

6    report, they were removed across the board, correct, from

7    all your models?

8         MS. CROWLEY:  Objection to form.

9         MR. MADAIO:  Q  Is that right?

10        A    So in the supplemental report I recalculate

11   impressions and damages.  The impact model is not

12   relevant in the supplemental report.

13        Q    Okay.  Okay.  And did you personally review

14   each article to confirm that -- that it was exclusively

15   focused on the June 24th statement?

16        A    So what I did is I drew up the criteria, I had

17   an assistant help me sort through those articles.  After

18   she was finished, I reviewed -- I spot checked the

19   articles to make sure to make sure they complied with the

20   criteria.

21        Q    Okay.  And if there was any article that

22   contained no reference to either the June 21st or

23   June 22nd statement, that article should not be included

24   in your updated impressions model, right?

Page 33

1      A     You're going to have to ask one more time.

2      Q     So if an article did not have any reference to

3  either the June 21st or the June 22nd statement, it would

4  be removed, right?

5      A     Correct.  If the article only contained the

6  June 24th statement, it would not be in the set.

7      Q     Okay.  I want to show you what's been marked --

8  I guess -- It's been marked as Humphreys 4.

9            (Exhibit 4 marked as requested)

10     Q     I'd like to -- I'd like you to take a moment

11  and just read through the article.  And if you can point

12  me to anywhere in that article where either the June 21st

13  or June 22nd statement is referenced?

14     MS. CROWLEY:  Objection.  Is this one of the

15  articles from the report?

16     MR. MADAIO:  Yes.  So this is what was identified in

17  your report as W-47.  In your -- the title is -- in your

18  expert report is identified as, quote, The Real Meaning

19  of Trump's She's-Not-My-Type Defense.  I believe the

20  title may have been updated.  This is what it is

21  currently.

22     MS. CROWLEY:  You said W-47?

23     MR. MADAIO:  W-47.

24     MS. CROWLEY:  That says it was removed.

Page 34

1          THE WITNESS:  It was excluded.

2          MR. MADAIO:  Was it?

3          MS. CROWLEY:  There's an X in the removed column.

4          MR. MADAIO:  We'll come back to that part.

5          Q    Okay.  Dr. Humphreys, in your initial report,

6     you described two types of damages assessments that you

7     perform.  There's the qualitative impact assessment and

8     the quantitative impact assessment, right?

9          A    That's correct.

10         Q    And with respect to the quantitative analysis,

11    how much of that analysis was based around the

12    impressions models that you had constructed?

13         A    In my initial -- in my initial report?

14         Q    In your initial report.

15         A    Okay.  I'm sorry.  Could you ask again?

16         Q    You know what, I'll withdraw that question.

17             And for the web impressions model, which is a

18    portion of your impressions model, right, you limited

19    your analysis to the online news articles that were cited

20    in Ms. Carroll's complaint, right?

21         A    I believe that was the criteria.  I would need

22    to see my initial report to be sure.

23         Q    Okay.  Well, I think you have a copy of the

24    report if you need it.

Page 35

1      A    I do.  If you have the page where this is, that

2   would help me, just be faster.

3      Q    I don't think I have -- I mean, I can -- I

4   guess --

5      A    Yes, that's correct.  It's page 26.

6      Q    Page 26.  Okay.  So you only used -- so you

7   only used in your web impressions model articles that

8   were cited in the complaint, right?

9      A    That is correct.

10     Q    Okay.  And -- So you reviewed the complaint in

11  connection with the -- with preparing the initial report,

12  correct?

13     A    Yes.

14     Q    And do you recall how the -- how the articles

15  were cited in the complaint?  Was there any specific --

16     MS. CROWLEY:  Objection.  This is definitely just

17  about the first report.  You already deposed her about

18  this.  This is not just a chance to go and redepose her

19  about her methodology in the first report.

20     MR. MADAIO:  No, this is absolutely about the second

21  report.

22     MS. CROWLEY:  You're asking her about what she did

23  to prepare the first report.

24     MR. MADAIO:  Right.

1    MS. CROWLEY:  You're pointing her to the first

2  report and asking her about the articles that she

3  reviewed in connection with the complaint to prepare the

4  first report.  She's already testified at length how she

5  selected the articles to exclude for purposes of the

6  second report.  You can ask her about that, but you can't

7  get back into what she did to prepare the first report.

8    MR. MADAIO:  Q  Okay.  Let me ask you this,

9  Dr. Humphreys.  Did you review the complaint in

10 connection with preparing the supplemental report?

11    A    I did not review the complaint again, no.

12    Q    Okay.  You know what -- I'm going to show you

13 what's been marked as -- Do we have the complaint?  We'll

14 mark -- I'm going to mark this as 7.  Humphreys 7.  This

15 is a copy of the complaint.

16         (Exhibit 7 marked as requested)

17    Q    And I want to point you to paragraphs 97 and 98

18 of the complaint.  And paragraph 97 says:  Two days later

19 on June 24th, 2019, the Hill released an interview in

20 which Trump made the following statement in response to

21 Carroll:  Quote, I'll say it with great respect.  Number

22 1, she's not my type.  Number 2, it never happened, it

23 never happened.  Okay.

24         Paragraph 98:  Trump's statement in the Hill

Page 37

1    was widely reported by the national press.

2              And then there's a Footnote 14, and in

3    Footnote 14 it lists 19 articles.

4              Do you see that?

5         A    I do see that, yes.

6         Q    Okay.  And when you drafted your supplemental

7    report, were you aware that this is how the complaint

8    identifies the articles that relate to the June 24th

9    statement?

10        A    No, I wasn't.

11        Q    Okay.  And would that have been relevant to

12   your analysis if you knew that the complaint had

13   specifically attributed certain articles to the June 24th

14   statement?

15        MS. CROWLEY:  Objection to form.

16        THE WITNESS:  What do you mean by relevant?

17        MR. MADAIO:  Q   Do you think it would have been

18   relevant that that's the plaintiff's manner of

19   identifying which articles are attributable to the 24th

20   statement?

21        MS. CROWLEY:  Objection to form.

22        THE WITNESS:  I'm not sure how it would be relevant,

23   no.

24        MR. MADAIO:  Q   Okay.  I want to turn to the

Page 38

1  qualitative impact analysis in your supplemental report.

2  For this portion of your report you state that you --

3  This is on page 41 if you want to see.  But you state

4  that you, quote, assessed the nature of the statements

5  and their more generalized harm to a brand that faces a

6  general rather than niche public.

7       MS. CROWLEY:  This is 41 from --

8       MR. MADAIO:  Of the initial report.

9       Q    I'll just ask you generally.  We don't have to

10  go into the specifics of the report.

11          Did your qualitative analysis change in any way

12  from the initial report to the supplemental report?

13       A    In the supplemental report, I did not perform a

14  qualitative analysis.

15       Q    You did not perform one meaning that -- what do

16  you mean you didn't perform one?

17       A    I didn't perform a qualitative impact analysis

18  in the supplemental report.

19       Q    Okay.  So your qualitative analysis in the

20  initial report, did that include the June 24th statement?

21       A    Yes, it did.

22       Q    Okay.  And that wasn't changed in any way in

23  the supplemental report?

24       A    That's correct.

1      Q    Okay.  So viewing the report as a whole right
2   now the -- your qualitative impact analysis includes
3   reference to the June 24th statement?
4      A    My qualitative analysis in the initial report?
5      Q    Yes.
6      A    Yes, that's right.
7      Q    And the supplemental report did nothing to
8   change that, right?
9      A    Correct.  I did not redo the impact analysis.
10     Q    Okay.  And in your qualitative analysis in the
11  initial report, one of the criteria that you looked at
12  was Google search data, right?
13     A    That's correct.
14     Q    And do you believe that Google search data is a
15  good measure of the impact that a statement has on a
16  person's brand?
17     MS. CROWLEY:  Objection to form.
18     THE WITNESS:  Sorry.  Could you ask me?
19     MR. MADAIO:  Q  Do you believe that Google search
20  data is a good measure of the impact that the statement
21  has on a person's brand?
22     A    Not alone, no.
23     Q    Okay.  But do you think it's relevant in some
24  measure?

Page 40

1      A    Yes.

2      Q    Okay.  I want to point you to page 47 of your

3  report, Figure 10.

4      A    My initial report?

5      Q    Your initial report, Figure 10, that's page 47.

6  And on page 47 you refer to this chart and you indicate

7  that there were, quote, two clear spikes in search

8  volume.  And it looks like one of those is June 22nd,

9  which is the day after Ms. Carroll made her allegation,

10  the day after Mr. Trump's first statement, and the day of

11  his second statement, right?

12      A    Correct.

13      Q    And then there's a second spike on June 25th,

14  and that's the day that President Trump made his third

15  statement, correct?

16      A    Correct.

17      Q    Sorry.  The day after he made his third

18  statement?

19      A    That's correct.

20      Q    The spike on June 25th, that was the larger of

21  the two spikes, right?

22      A    I believe one spike is 94, one spike is a

23  hundred, so, yes.

24      Q    Okay.  So -- And is a 100 relative search

Page 41

1  volume a significant number in your mind?

2       A    What do you mean by significant?

3       Q    When you compare the search volumes compared to

4  the amount of search -- amount of Google searches after

5  the June 21st statement and June 22nd statement as

6  compared to the spike on June 25th, which is after the

7  June 24th statement, does that indicate in your mind that

8  the June 24th statement garnered the most attention of

9  the three?

10      A    The most by 6 points.  So 100 minus 94, yes.

11      Q    And despite the fact that the June 24th

12  statement had a 100 relative search volume resulting the

13  next day, you didn't think it was necessary to update

14  your qualitative impact analysis to account for that in

15  your supplemental report?

16      A    No, I didn't.

17      Q    And why is that?

18      A    So what I documented in the impact analysis in

19  which I read social media content related to all three

20  statements, I found that there was clear reputational

21  harm connected to the first and second statements.

22      Q    Okay.  So you said that there was clear

23  reputational harm connected to the first and second

24  statements for your qualitative impact analysis.  But in

Page 42

```
 1   your qualitative impact analysis, do you differentiate
 2   any way between the three statements and the harm that is
 3   attributable to each?
 4        A    Somewhat, yes.
 5        Q    Can you describe how you did that in your
 6   report?
 7        A    Sure.  So in the qualitative analysis, I mean,
 8   you can see on -- in the excerpts produced, for example,
 9   on page 54, they refer directly to the content of the
10   first and second statements, in particular that saying
11   Ms. Carroll is a liar, she's only looking for three
12   things, publicity for her book, political agenda,
13   et cetera.  So in the content itself it refers to
14   Mr. Trump's first and second statement.
15        Q    And you're referring to the social media posts?
16        A    That's correct.  I was looking at Figure 13,
17   this is her commentary following Mr. Trump's statements.
18        Q    Okay.  And those are some of the examples of
19   social media posts that you reviewed in connection with
20   the initial report, right?
21        A    Correct.
22        Q    And how many social media -- I mean, what was
23   the total number of posts that you reviewed
24   approximately?
```

Page 43

1      A    You know, I don't recall.  I'd have to look at

2    the report.

3      Q    Okay.  But it was much greater than the six or

4    seven that are listed in that Figure 13, right?

5      A    Yes.  I did review more posts than just these.

6      Q    And did you look through all of those posts in

7    connection with the supplemental report to see whether

8    there was any reference to the June 24th statement?

9      A    No, that wasn't my assignment here.

10     MR. MADAIO:  Okay.  If we can -- Let's just take a

11   five-, ten-minute break if we can right now.  I don't

12   think I have too much more, then we'll wind up.

13     THE VIDEOGRAPHER:  This is the end of media 1.

14   We're going off the record the time is 9:54 a.m.

15         (Off the record)

16     THE VIDEOGRAPHER:  This is the start of media 2.

17   We're going on the record.  The time is 10:09 a.m.

18     MR. MADAIO:  Q   Okay.  Dr. Humphreys, so, again, in

19   drafting your supplemental report, you were tasked with

20   essentially removing the June 24th statement from your

21   damages calculation, right?

22     A    Correct.

23     Q    And I want to ask you again, are you familiar

24   with the June 24th statement when it was initially

Page 44

1   published?

2        MS. CROWLEY:  Objection to form.

3            What's the question?

4        MR. MADAIO:   Q   When the June 24th statement was

5   published.  Essentially what is the June 24th statement?

6        MS. CROWLEY:  Objection to form.

7        MR. MADAIO:  She doesn't know, she can answer.

8        MS. CROWLEY:  You're asking when it was published --

9   or does she know what it was?

10       MR. MADAIO:  Yeah.

11       Q    Do you know the June 24th statement -- when it

12  was published?

13       A    I believe -- you mean, when it was first said?

14  I believe it was first said on June 24th.

15       Q    Right.  I'm asking the manner of when it was

16  first published whether that be -- if it was in an

17  article, if it was, you know, on a TV interview, for

18  example.

19       A    I don't recall exactly.

20       Q    Okay.  I want to point you back to the

21  complaint, paragraph 97, which is page 19.  That says:

22  Two days later on June 24th, 2019, the Hill released an

23  interview in which Trump made the following statement in

24  response to Carroll.  Quote, I'll say with great respect,

Page 45

1   number one, she's not my type.  Number 2, it never

2   happened.  It never happened.  Okay.

3           Under Footnote 13 which cites to an article,

4   and that's by Jordan Fabian and Saagar Enjeti.  I'm not

5   sure if I'm saying that right.  It's titled Exclusive,

6   Trump Vehemently Denies E. Jean Carroll Allegation.

7   Says, quote, she's not my type, from the Hill on

8   June 24th, 2019.

9           So is it -- so do you understand this article

10  to be the -- when this statement, I'll say with great

11  respect, number 1, she's not my type, number 2, it never

12  happened, never happened, okay, the first time that was

13  published?

14      A    Yeah.

15      MS. CROWLEY:  Objection.  What's the question?

16      MR. MADAIO:  If it's her understanding that this is

17  the first time the statement was published.

18      THE WITNESS:  Yes, that's the meaning that I take

19  from the word exclusive here.

20      MR. MADAIO:  Q  Okay.  So for all intents and

21  purposes, this is the June 24th statement, this Hill

22  article?

23      A    I think it likely contains the June 24th

24  statement.

Page 46

1      Q    Okay.  And I want to look at your supplemental

2  report.  W-36 is entitled Exclusive, Trump Vehemently

3  Denies E. Jean Carroll Allegation, says, quote, she's not

4  my type, and that's by Jordan Fabian and Saagar Enjeti,

5  June 24th, 2019.  And if you cross reference that with

6  your initial report, W-36 was not removed, correct?

7      A    Correct.

8      Q    So you included the actual June 24th statement

9  in your supplemental report in the damages calculation,

10  is that correct?

11      A    I would need to look at that article to be

12  sure.  My guess is that it contains the first two

13  statements and so it was included.

14      Q    Okay.  All right.  I'm going to move on.  You

15  state in your supplemental report on page 1 under

16  assignment, beginning of the second paragraph, starts off

17  saying:  I have been asked by counsel to provide a

18  supplemental analysis to re-evaluate the impressions

19  model, the impact model, and the damages model in order

20  to provide an updated estimate of the cost of

21  reputational repair program -- sorry -- repair campaign.

22          Then you say specifically, I was asked, and in

23  point 1 is to limit your analysis.  I'm not going to read

24  the entire thing.  I'm am going to focus on point 2 where

Page 47

```
 1   you say:  To exclude coverage that only referred to the
 2   fact that Mr. Trump denied Ms. Carroll's allegations in
 3   connection with the above caption -- above-captioned
 4   action or otherwise did not contain a defamatory claim
 5   from the June 21st or 22nd statements.
 6           So you say here that you were asked to exclude
 7   coverage that only referred to this fact.  So was it
 8   counsel that directed you to the -- essentially directed
 9   you to exclude that type of coverage, meaning only
10   coverage that exclusively related to the June 24th
11   statement?  Or was that a method that you came up with on
12   your own?
13       MS. CROWLEY:  Objection to form.
14           If you understand, you can answer.
15       THE WITNESS:  Could you ask again?
16       MR. MADAIO:  Q  Sure.  Was it counsel that directed
17   you to remove statements that exclusively relate to the
18   June 24th statement, or did you come up with that method
19   on your own?
20       A    Counsel asked that I redo the analysis for
21   statements one and two.
22       Q    Okay.  But in terms of the actual method in
23   terms of only removing statements that exclusively relate
24   to the June 24th statement, was it counsel that asked you
```

Page 48

1   to do it that way, or did you decide on your own that

2   that was the proper way to do it?

3        A    I'm not sure.  That seemed implied by the

4   assignment.

5        Q    Well, did they say anything to you?  Did they

6   communicate that to you?

7        A    I don't recall how they initially communicated

8   the assignment to be honest.

9        Q    Well, it says in your report that's what you

10  were asked to do by counsel.

11       A    Yes, that's what I was asked to do by counsel.

12       Q    So they asked you to exclude coverage that only

13  referred to the June 24th statement?

14       A    Yes.

15       Q    Okay.  So that wasn't your own determination

16  that would be the proper way to exclude --

17       MS. CROWLEY:  Objection.  The report relates to her

18  assignment.  She's testified about it.  If you're going

19  to get further into discussions between Dr. Humphreys and

20  counsel, I'm going to object as privileged.

21       MR. MADAIO:  Well, we are also going to request any

22  of these communications because --

23       MS. CROWLEY:  You have requested the communications

24  and we've provided them, Mike.

Page 49

1       MR. MADAIO:  You said there weren't any

2   communications.

3       MS. CROWLEY:  I'm sorry.  Withdrawn.  You've

4   requested the communications, we represented that

5   communications that are -- that would be required to be

6   produced under the rules do not exist.

7       MR. MADAIO:  Well, that would be an assumption that

8   would have been provided to the expert if you're talking

9   about the manner in which she's including or excluding

10  statements.

11      MS. CROWLEY:  Right.  There are no written

12  communications that would fall within the rule and that

13  would need to be produced.

14      MR. MADAIO:  Right.  But I'm free to ask her about

15  any oral communications or other communications.

16          Okay.  That's all I have on that anyway.

17      Q    Let me ask, did you have any written

18  communications with counsel about this specific

19  directive?

20      A    You know, I don't recall if we sent emails

21  about it or if we spoke about it verbally.

22      Q    Do you know -- okay.  Based on your

23  professional experience or expertise, do you think that's

24  a proper way to draft your supplemental report and

Page 50

1   account for the removal of the June 24th statement?

2        MS. CROWLEY:  Objection.  Do you think that's a

3   proper way, what are you referring to?

4        MR. MADAIO:  Q  Excluding only statements that refer

5   exclusively to the June 24th statement and keeping in

6   articles that reference the June 21st or June 22nd

7   statement in any way, that's the method you used, right,

8   to remove articles from your updated impact model --

9   impressions model?

10        MS. CROWLEY:  Objection.  Asked and answered many

11   times.

12        MR. MADAIO:  Okay.  That's what I was referring to

13   when I said that.

14        Q    So do you agree that that is a proper method

15   for -- Based on your professional expertise and

16   assessment, do you think that that properly accounts for

17   the removal of the June 24th statement?

18        MS. CROWLEY:  Objection.  Asked and answered.

19             You can answer it again.

20        MR. MADAIO:  I want to know based on her

21   professional experience and expertise.

22        MS. CROWLEY:  She already answered that, but she can

23   answer again.

24             THE WITNESS:  Yes.

Page 51

1       MR. MADAIO:   Q   But you didn't come up with this

2   method, right, it was counsel that asked you to do that?

3       A    What method?

4       Q    In terms of how you removed the articles that

5   are referenced in your impressions model.

6       A    So I wouldn't consider that a method.  I would

7   consider it criteria for including or excluding.

8       Q    Okay.  So was that your sole criteria in

9   determining whether to remove articles from your updated

10  impressions model was whether or not they solely,

11  exclusively referenced the June 24th statement?

12      A    Yes, my criteria was to remove the articles

13  that refer only to that June 24th statement.

14      Q    And if there was any reference whatsoever to

15  the June 21st or June 22nd statement, you kept it in your

16  updated impressions model?

17      A    That's right.

18      Q    Generally speaking, do you think a person

19  reading an article that is focused exclusively on, for

20  example, the June 21st statement has the same weight and

21  impact as an article that is -- that focused largely on

22  the June 24th statement but, you know, hardly references

23  the June 21st statement?

24      MS. CROWLEY:  Objection.  Do you think a person

Page 52

1    reading an article -- Can you rephrase the question?

2        MR. MADAIO:  Q   Yeah.  I mean, do you think -- do

3    you think -- right.  I mean, it's based on your

4    impressions model is largely focused on articles and

5    impressions, meaning people who read the articles, right?

6        MS. CROWLEY:  Objection.

7        THE WITNESS:  So by impression -- Go ahead.

8        MR. MADAIO:  Q  I understand it's more complicated,

9    that you do break it down by Republicans and there are

10   other factors considered, but, you know, without getting

11   too in the weeds about it, somebody who reads an article,

12   do you think it's -- do you think it's a factor that

13   should be considered how prominent that statement is

14   within the article or whether it's hardly referenced at

15   all?

16       MS. CROWLEY:  Objection to form and asked and

17   answered.

18       THE WITNESS:  No.

19       MR. MADAIO:  Q   Okay.  Do you believe the June 24th

20   statement was the most widely viewed of the three

21   statements?

22       A    No.

23       Q    Which one do you believe was the most widely

24   viewed?

Page 53

1      A     You know, I didn't do an analysis of that.  I

2  would have to go back and re-analyze.

3      Q     Okay.  Do you believe the June 24th statement

4  was the most damaging of the three statements?

5      MS. CROWLEY:  Objection.

6      THE WITNESS:  No.

7      MR. MADAIO:  Q  Which one do you believe was the

8  most damaging?

9      A     In my impact analysis, I found that a great of

10 reputational harm came from the claims that Ms. Carroll

11 was lying, that she was a liar, which damaged her

12 personal brand as a journalist.  So I would say those

13 first two statements were very damaging to her personal

14 brand.

15     Q     Then I want to ask you again.  You said you

16 used a company to assist you in preparing the

17 supplemental report, right?

18     A     That's correct.

19     Q     And that was Voluble Insights?

20     A     That's correct.

21     Q     And what was -- I mean, what was their

22 involvement in preparing the supplemental report?  How

23 did you work with Voluble Insights in preparing the

24 report?

Page 54

1     A    So I had worked with them previously to prepare

2   the expert report.  And so I directed them to remove

3   these statements based on some criteria, based on the

4   criteria outlined here.

5     Q    Okay.  Again, that criteria was what we

6   discussed before, if it exclusively referenced the

7   June 24th statement, it should be removed?

8     A    That's right, on page 1.

9     Q    Okay.  And you said previously you didn't look

10  at the complaint in connection with your preparation of

11  the supplemental report.  What documents did you review

12  in connection with your preparation of the supplemental

13  report?

14    A    I reviewed some of my original documents that

15  were used in preparing the initial expert report.

16    Q    Do you know what documents those are?

17    A    Those were basically documents that are

18  reproduced as tables shear.  They exist in Excel

19  spreadsheets and contained that information.

20    Q    And they reflect the same information as the

21  charts in your initial report?

22    A    Correct.

23    Q    Okay.  Did you review anything else in while

24  preparing in connection with your preparation of the

Page 55

```
 1   supplemental report?

 2        A    What do you mean by anything else?

 3        Q    Any other documents, materials, anything else.

 4        A    I mean, I can't recall anything specific that I

 5   referred to.

 6        Q    Did you -- did you rely on any academic sources

 7   in preparing your supplemental report?

 8        A    Simply the ones just cited here.

 9        Q    In the supplemental report?

10        A    Correct.

11        MR. MADAIO:  Okay.  Those are all the questions I

12   have.  Thank you very much.

13        MS. CROWLEY:  I have a couple.

14             This will take just a couple minutes.

15                         EXAMINATION

16                    By Ms. Crowley:

17        Q    Dr. Humphreys, Mr. Madaio asked you some

18   questions about the work that you did in preparing your

19   report in Carroll II.  Do you recall those questions?

20        A    Yes.

21        Q    And I believe you testified at trial in that

22   case that in preparing your impressions model for

23   purposes of the report in that case you considered

24   articles -- you only considered articles where
```

Page 56

1    Mr. Trump's October 2022 statements were prominent.  Do

2    you recall that?

3         A    Yeah, I recall that.

4         Q    Whereas, for the work that you did on the

5    impressions model in this case, Carroll I, for the

6    original report, you considered all of the articles that

7    were referenced in the complaint, correct?

8         A    That's correct.

9         Q    Did you consider the prominence of Mr. Trump's

10   June 2019 statements when selecting the articles to

11   include for your report in this case in Carroll I?

12        A    No, I didn't.

13        Q    And for the supplemental report in this case,

14   you took the set of articles that you considered for the

15   first report and you excluded articles that only

16   reference the June 24th statement or simple denial,

17   correct?

18        A    That's correct.

19        Q    So was your methodology for selecting which

20   articles to use for your impressions model the same for

21   your supplemental report and your original report in this

22   case, Carroll I?

23        A    Yes.

24        Q    In June 2019 when Mr. Trump made the statements

Page 57

```
 1    that are at issue in this case, had Ms. Carroll filed her
 2    lawsuit yet?
 3         A    I don't believe so.
 4         Q    So fair to say that there were no articles that
 5    had been written about this lawsuit, correct?
 6         A    Correct.
 7         Q    And there were not a lot of articles being
 8    written in the widespread media about Ms. Carroll,
 9    correct?
10         A    Correct, prior to this statement.
11         Q    But by October of 2022, this lawsuit had been
12    going on for a number of years, correct?
13         A    Yes.
14         Q    Fair to say that there had been a lot of
15    articles written about this case and Ms. Carroll and
16    Mr. Trump, correct?
17         A    Yes.
18         Q    You also testified in response to Mr. Madaio's
19    questions that you did not perform a new qualitative
20    analysis when preparing the supplemental report in this
21    case?
22         A    Correct.
23         Q    What is the qualitative analysis?  Can you
24    explain that?
```

Page 58

1      A     Sure.  So in my initial report I did a

2   qualitative analysis to establish that there was

3   reputational harm done and then to understand the nature

4   of that reputational harm.

5      Q     And what was the nature of the reputational

6   harm that was a result of Mr. Trump's June 2019

7   statements about Ms. Carroll?

8      A     So, in particular the reputational harm

9   occurred in that it introduced associations between

10  Ms. Carroll to be called a liar, which is central to her

11  person brand as a journalist as a truth teller,

12  et cetera.

13     Q     I think you testified and Mr. Madaio asked you

14  about the June 24th, 2019 statement in which Mr. Carroll

15  -- Mr. Trump says she's not my type, correct?

16     A     Correct.

17     Q     Did you in performing the qualitative analysis

18  in connection with the first report in this case, did you

19  analyze the harm to Ms. Carroll's reputation as an

20  attractive person?

21     A     Yes.

22     Q     Did you analyze the harm done to her reputation

23  as an attractive person?

24     A     No, not necessarily.

Page 59

1      Q    Why did you think it wasn't necessary to

2    perform a new qualitative analysis in preparing your

3    supplemental report in this case?

4      A    So my initial report I found that reputational

5    harm -- significant reputational harm was done by the

6    first two statements, and so I didn't feel it necessary

7    to conduct that analysis.  Those statements weren't at

8    issue here.

9      Q    Is that because the first two statements

10   largely attacked Ms. Carroll's reputation as a truth

11   teller and accused her of making up a story to sell a

12   book?

13     A    Correct.

14     Q    Whereas, the June 24th statement, Mr. Trump

15   simply denied Ms. Carroll's account and said that she

16   wasn't his type, correct?

17     A    Correct.

18     Q    Just to correct the record, I think -- I asked

19   you why did you think it wasn't necessary to perform a

20   new qualitative analysis in preparing your supplemental

21   report in this case, and at least according to the

22   transcript, you said:  My initial report I found

23   significant reputational harm was done by the first two

24   statements, so I didn't think it necessary to conduct

Page 60

1    that analysis.  Those statements weren't at issue here.

2            Did you mean the June 24th statement wasn't at

3    issue here?

4       A    No.

5       Q    Can you just explain -- Let me reask the

6    question so we can just get a clean record.

7            I asked why did you think it wasn't necessary

8    to perform a new qualitative analysis in preparing your

9    supplemental report in this case.

10      A    So the assignment in the supplemental report

11   was to simply exclude the statement on June 24th.  In the

12   initial report I had established that there was

13   reputational harm attributable to the first two

14   statements, and so I didn't feel it was necessary or

15   relevant to reconduct a qualitative analysis.

16      Q    And how did you conclude that there was harm --

17   reputational harm attributable to the first two

18   statements?

19      A    So in my initial analysis, it was due to

20   specific connections between the content of Mr. Trump's

21   statements and the nature of the associations in the

22   public fear, specifically that Ms. Carroll was lying.

23           MS. CROWLEY:  Nothing further.

24

Page 61

1              FURTHER EXAMINATION

2              By Mr. Madaio:

3      Q    I have a couple follow ups.

4           So, Dr. Humphreys, is it your position that the

5  June 24th statement was not in any way relevant to your

6  qualitative analysis in your initial report?

7      A    What do you mean by relevant?

8      Q    It didn't constitute any of the harm that you

9  considered in the -- in your qualitative analysis.

10     A    The harm that I documented in my qualitative

11 analysis was primarily attributable to her reputation as

12 a journalist and specifically the claim that she was

13 lying.  So no, I didn't.

14     Q    So do you believe -- do you believe the

15 June 24th statement was harmful to her reputation at all?

16     A    As a journalist, no, and as a person -- her

17 personal brand, no.

18     Q    Okay.  But despite that you did include it in

19 your initial quantitative analysis report, correct?

20     A    Correct.

21     Q    And it was afforded equal weight as the

22 June 21st and June 22nd statement in terms of

23 impressions, right?

24     A    What do you mean by equal weight?

Page 62

1      Q    You didn't differentiate between any of the

2  statements in your quantitative analysis, right?

3      MS. CROWLEY:  Objection.  That misstates her prior

4  testimony.

5      MR. MADAIO:  Q  Well, let me put it this way.  When

6  you removed the June 24th statement, it reduced the

7  damages calculation by millions of dollars, right?

8      A    That's correct.

9      Q    Okay.  But it's your position that the

10 statement was not harmful in any way?

11     A    That's not exactly correct.

12     Q    Well, can you explain the difference or what

13 I'm missing?

14     A    Yes, of course.  So the nature of the

15 reputational harm that I documented in the impact

16 analysis related to the claim that she was lying.  There

17 was, of course, content related to her being unattractive

18 that was in the public sphere as well, but I didn't find

19 that to be the primary driver of reputational harm.

20     Q    Okay.  I guess -- I don't think that answered

21 my question.  My question is why would the June -- why is

22 it that in your opinion the June 24th statement was

23 relevant to the quantitative analysis in the initial

24 report but not the qualitative analysis?

Page 63

1       A    So at the time I prepared my expert report, the

2   assignment was to include three statements and to measure

3   the impressions of those statements, and so that's what I

4   did.

5       Q    And you did that even based on -- even knowing

6   that in your opinion that the June 24th statement didn't

7   cause any harm, you still included it in your qualitative

8   -- your quantitative analysis?

9       A    Correct.

10      MR. MADAIO:  That's all I have.

11      MS. CROWLEY:  No.  Thanks.

12      THE VIDEOGRAPHER:  We are off the record at

13  10:36 a.m.  And this concludes today's testimony given by

14  Dr. Ashlee Humphreys Ph.D.

15          (Off the record)

16

17      _____

        ASHLEE HUMPHREYS

18

19      Subscribed and sworn to before me

20

        this __ day of _____, 2023.

21

22

        _____

23      Notary public

24

Page 64

1  STATE OF ILLINOIS  )

                     )  SS:

2  COUNTY OF C O O K  )

3

4        The within and foregoing deposition of the

5  aforementioned witness was taken before CAROL CONNOLLY,

6  CSR, CRR and Notary Public, at the place, date and time

7  aforementioned.

8        There were present during the taking of the

9  deposition the previously named counsel.

10       The said witness was first duly sworn and was

11 then examined upon oral interrogatories; the questions

12 and answers were taken down in shorthand by the

13 undersigned, acting as stenographer and Notary Public;

14 and the within and foregoing is a true, accurate and

15 complete record of all of the questions asked of and

16 answers made by the forementioned witness, at the time

17 and place hereinabove referred to.

18       Before completion of the deposition, review of

19 the transcript {} was {X} was not requested.  If

20 requested, any changes made by the deponent, {and

21 provided to the reporter} during the period allowed are

22 appended hereto.

23

24

Page 65

1          The undersigned is not interested in the within

2    case, nor of kin or counsel to any of the parties.

3          Witness my official signature and seal as

4    Notary Public in and for Cook County, Illinois on this

5    12th day of December, 2023.

6

7

8                      *Carol Connolly*

9                      CAROL CONNOLLY, CSR, CRR

                       CSR No. 084-003113

10                     Notary Public

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 66

1                            ERRATA SHEET
                       VERITEXT/NEW YORK REPORTING, LLC
2

     CASE NAME: Carroll, E. Jean v. Trump, Donald J.
3    DATE OF DEPOSITION: 12/11/2023
     WITNESSES' NAME: Ashlee Humphreys , Ph.D.
4
5     PAGE   LINE (S)        CHANGE                    REASON
     ____|_____|_____|_____
6
     ____|_____|_____|_____
7
     ____|_____|_____|_____
8
     ____|_____|_____|_____
9
     ____|_____|_____|_____
10
     ____|_____|_____|_____
11
     ____|_____|_____|_____
12
     ____|_____|_____|_____
13
     ____|_____|_____|_____
14
     ____|_____|_____|_____
15
     ____|_____|_____|_____
16
     ____|_____|_____|_____
17
     ____|_____|_____|_____
18
     ____|_____|_____|_____
19
     ____|_____|_____|_____
20
                                _____
21
                                Ashlee Humphreys , Ph.D.
22   SUBSCRIBED AND SWORN TO BEFORE ME
     THIS ____ DAY OF _____, 20__.
23
24
     _____         _____
25   (NOTARY PUBLIC)             MY COMMISSION EXPIRES:

**[& - 48]**                                                                                   Page 1

| & | | | |
|---|---|---|---|

**&**   2:3,9,17 4:18

| 0 |
|---|

**07921**   2:11
**084-003113**
  65:9

| 1 |
|---|

**1**   4:3 23:22
  36:22 43:13
  45:11 46:15,23
  54:8
**10**   40:3,5
**100**   40:24
  41:10,12
**10016**   3:19 4:7
**10118**   2:5
**10:09**   43:17
**10:36**   63:13
**11**   3:3 4:2
**1119**   24:12,13
**1120**   24:13
  25:1 27:23
**11th**   1:16
**12/11/2023**
  66:3
**12th**   65:5
**13**   3:12 42:16
  43:4 45:3
**13th**   6:9
**14**   3:17 37:2,3
**1430**   2:10
**14th**   6:6 7:16
**160694/2019**
  3:23

**17**   24:14 25:2,4
  25:9 28:4
**18**   3:11,16
  24:14
**1870**   1:15 4:9
**19**   37:3 44:21

| 2 |
|---|

**2**   36:22 43:16
  45:1,11 46:24
**20**   1:6 4:24
  66:22
**2019**   3:15
  36:19 44:22
  45:8 46:5
  56:10,24 58:6
  58:14
**2022**   3:17 6:6
  27:6 56:1
  57:11
**2023**   1:17 3:3
  3:12,20 4:2 6:9
  63:20 65:5
**20551**   65:8
**206**   2:10
**212**   2:6
**21st**   7:18 9:2,11
  11:19 12:18
  13:3,19 14:1,7
  14:11,14 21:12
  22:2,6 32:22
  33:3,12 41:5
  47:5 50:6
  51:15,20,23
  61:22

**22**   3:19 4:7
**22nd**   7:19 9:2
  9:11 11:19
  12:19 13:3,19
  14:2,7 21:12
  22:2,6 32:23
  33:3,13 40:8
  41:5 47:5 50:6
  51:15 61:22
**23**   3:18
**240**   2:10
**24th**   7:1,19 9:3
  9:6,11,19,22
  10:20 11:2,20
  11:24 12:3,7
  12:11,13,15,16
  13:2,6,9,18
  14:1 15:11,17
  15:19 21:1,8
  22:10 31:1,8
  31:15,16 32:2
  32:15 33:6
  36:19 37:8,13
  37:19 38:20
  39:3 41:7,8,11
  43:8,20,24
  44:4,5,11,14,22
  45:8,21,23
  46:5,8 47:10
  47:18,24 48:13
  50:1,5,17
  51:11,13,22
  52:19 53:3
  54:7 56:16
  58:14 59:14

**60**:2,11 **61**:5
  61:15 62:6,22
  63:6
**25**   3:15,20
  18:16
**25th**   40:13,20
  41:6
**26**   19:1 35:5,6
**27**   18:16
**29th**   25:19

| 3 |
|---|

**3**   3:11 18:12,15
**3-107**   1:15 4:9
**33**   3:13
**35**   15:6,24
  18:19,23 19:1
**350**   2:4
**36**   3:21 16:3
  19:4,9,10 46:2
  46:6

| 4 |
|---|

**4**   3:13 33:8,9
**41**   38:3,7
**42**   16:6 19:10
  19:12,18
**43**   16:8 19:15
  19:17,21,23
**44**   16:10 19:21
  19:23
**46**   16:11 20:2,4
**47**   33:17,22,23
  40:2,5,6
**48**   16:13 20:7,7
  20:9

| 5 | a |
|---|---|
| **5** 3:6,16 18:9 | **a.d.** 1:17 |
| **50** 16:15 20:12 | **a.m.** 1:16 4:2 |
| 20:14 | 43:14,17 63:13 |
| **52** 20:16,18 | **ability** 6:2 |
| **53** 20:20,21 | **able** 18:4 30:22 |
| **54** 42:9 | **above** 47:3,3 |
| **55** 3:7 | **absolutely** 26:2 |

**afforded** 14:10
14:13,19 61:21
**aforemention...**
64:5,7
**agenda** 42:12
**agree** 50:14
**ahead** 52:7
**allegation** 16:4
16:9,14,16
19:6,16 20:9
20:13,17 40:9
45:6 46:3
**allegations**
15:7 16:1
18:24 24:16
47:2
**allowed** 10:5
64:21
**amount** 41:4,4
**analysis** 6:15
7:21 8:5,9,10
8:13,16,17,20
8:21,21,23
12:12 24:22
25:3,16 28:9
34:10,11,19
37:12 38:1,11
38:14,17,19
39:2,4,9,10
41:14,18,24
42:1,7 46:18
46:23 47:20
53:1,9 57:20
57:23 58:2,17
59:2,7,20 60:1

60:8,15,19
61:6,9,11,19
62:2,16,23,24
63:8
**analyze** 7:10
53:2 58:19,22
**analyzed** 10:13
21:22 22:16
**analyzing** 27:6
**answer** 7:5,6
12:21 14:15,23
25:1,11 31:11
44:7 47:14
50:19,23
**answered**
50:10,18,22
52:17 62:20
**answers** 64:12
64:16
**anyway** 49:16
**appearances**
4:16
**appeared** 2:7
2:13 23:2,3
25:7 28:3
**appended**
64:22
**appropriate**
5:20 12:5,17
13:16,24 14:4
31:7,14
**approximately**
42:24
**april** 3:20
23:11

**6**

**6** 3:18 23:6,7,8
41:10
**60** 24:21
**60208** 4:10
**61** 3:6
**63rd** 2:5

**7**

**7** 3:21 36:14,14
36:16
**7311** 1:6 4:24
**763-0883** 2:6

**8**

**869-1188** 2:11

**9**

**908** 2:11
**94** 40:22 41:10
**96** 18:12,22
**97** 18:11 36:17
36:18 44:21
**98** 36:17,24
**9:03** 1:16 4:2
**9:54** 43:14

**academic** 55:6
**account** 8:22
12:10 31:8,14
41:14 50:1
59:15
**accounts** 50:16
**accurate** 64:14
**accusation**
19:22
**accused** 59:11
**accuser** 20:20
**accusing** 16:6
19:11
**acting** 64:13
**action** 7:3 21:1
47:4
**actual** 46:8
47:22
**actually** 4:23
4:24 15:7,8
18:3 25:14
26:18,19
**affect** 6:2
**affiliations**
4:16

**article** 3:13
  8:15 14:8,12
  14:13 16:24
  17:3 18:4,20
  18:23 21:10,13
  22:2,6,10,21,22
  25:8 26:7 28:3
  29:18 30:4,9
  30:10,18,19
  31:4 32:14,21
  32:23 33:2,5
  33:11,12 44:17
  45:3,9,22
  46:11 51:19,21
  52:1,11,14
**articles** 12:14
  13:5,8 14:20
  14:21 15:3,6
  15:22 16:18
  17:4,17 18:2,3
  18:7 21:4,23
  22:20 23:17
  24:18,21 25:2
  25:9,17 26:9
  27:23 28:1,4
  28:14 29:11
  30:3 31:3 32:1
  32:17,19 33:15
  34:19 35:7,14
  36:2,5 37:3,8
  37:13,19 50:6
  50:8 51:4,9,12
  52:4,5 55:24
  55:24 56:6,10
  56:14,15,20

  57:4,7,15
**ashlee** 1:11 3:2
  3:12,17 4:4 5:3
  63:14,17 66:3
  66:21
**asked** 23:16
  46:17,22 47:6
  47:20,24 48:10
  48:11,12 50:10
  50:18 51:2
  52:16 55:17
  58:13 59:18
  60:7 64:15
**asking** 10:17
  12:22 14:17
  17:18 18:5
  23:23 27:17
  35:22 36:2
  44:8,15
**assault** 15:6
  16:1,8 18:24
  19:15 20:20
**assess** 14:20
**assessed** 7:16
  14:18 38:4
**assessing** 13:24
**assessment**
  8:17 15:24
  34:7,8 50:16
**assessments**
  34:6
**assignment**
  6:14 7:8 30:6
  43:9 46:16
  48:4,8,18

  60:10 63:2
**assist** 53:16
**assistant** 32:17
**associates** 2:9
  2:17 4:19
**associations**
  58:9 60:21
**assume** 15:19
  16:19
**assumption**
  49:7
**atlantic.com**
  3:15
**attacked** 59:10
**attention** 41:8
**attorney** 4:17
**attractive**
  58:20,23
**attributable**
  9:6,19 37:19
  42:3 60:13,17
  61:11
**attribute** 9:1
**attributed**
  37:13
**author** 16:11
  20:2
**avenue** 2:4
**aware** 13:10
  14:24 37:7

**b**

**back** 15:8
  23:11 34:4
  36:7 44:20
  53:2

**based** 6:18,18
  7:17 8:18
  34:11 49:22
  50:15,20 52:3
  54:3,3 63:5
**basically** 54:17
**basis** 31:13
**bedminster**
  2:11
**beginning** 4:16
  46:16
**behalf** 2:7,13
**believe** 33:19
  34:21 39:14,19
  40:22 44:13,14
  52:19,23 53:3
  53:7 55:21
  57:3 61:14,14
**better** 14:23
**board** 32:6
**book** 42:12
  59:12
**bottom** 24:12
**brand** 38:5
  39:16,21 53:12
  53:14 58:11
  61:17
**brandon** 2:16
  4:11
**break** 43:11
  52:9
**briefly** 14:12
**bunch** 16:18

| c | | | |
| --- | --- | --- | --- |

**c**  64:2
**calculate**  11:9
**calculation**
  21:3 43:21
  46:9 62:7
**called**  5:4 58:10
**campaign**
  46:21
**campus**  1:15
  4:9
**capacity**  1:7
  3:22
**caption**  4:23
  47:3
**captioned**  47:3
**carol**  1:12 4:13
  16:12 64:5
  65:9
**carries**  25:22
**carroll**  1:4 3:14
  3:19,21 4:5,22
  5:15 16:4,6,15
  18:20 19:10
  20:3,21 23:10
  23:13,19 25:20
  25:22 26:10,11
  26:12,15,16,22
  26:24 27:2
  28:9,19,19,20
  28:24 29:1,13
  29:13,17,20,21
  29:23,24 30:1
  30:4,14 36:21
  40:9 42:11

44:24 45:6
46:3 53:10
55:19 56:5,11
56:22 57:1,8
57:15 58:7,10
58:14 60:22
66:2
**carroll's**  7:17
  8:7 15:6 16:1
  16:14 18:24
  19:5 20:8,12
  20:17 34:20
  47:2 58:19
  59:10,15
**case**  4:7,23,24
  5:12 6:7,10,16
  6:19 7:1,2
  14:16 23:10,19
  23:24 24:2,7
  28:11,17 31:9
  55:22,23 56:5
  56:11,13,22
  57:1,15,21
  58:18 59:3,21
  60:9 65:2 66:2
**cases**  28:12
**cause**  7:3 63:7
**caused**  9:10,12
  10:19 12:6
**center**  4:8
**central**  58:10
**certain**  17:9
  30:5,5 37:13
**cetera**  42:13
  58:12

**chance**  35:18
**change**  38:11
  39:8 66:5
**changed**  38:22
**changes**  64:20
**chart**  40:6
**charts**  54:21
**checked**  32:18
**chicago**  1:16
**choose**  26:9
**choosing**  28:1
  30:4
**chose**  25:5
  27:24 30:3
**cited**  24:18
  34:19 35:8,15
  55:8
**cites**  45:3
**civ**  1:6 3:19 4:7
  4:24
**civil**  1:13
**claim**  47:4
  61:12 62:16
**claims**  53:10
**clarification**
  29:2
**clean**  60:6
**clear**  7:7 10:23
  14:15 27:10
  31:2 32:3 40:7
  41:20,22
**clearly**  29:21
**client**  25:13
**colleague**  4:21

**collective**  9:12
**collectively**  8:6
  8:12
**column**  34:3
**come**  34:4
  47:18 51:1
**commencing**
  1:16
**commentary**
  42:17
**commission**
  66:25
**communicate**
  48:6
**communicated**
  48:7
**communicati...**
  48:22,23 49:2
  49:4,5,12,15,15
  49:18
**company**  53:16
**compare**  41:3
**compared**  41:3
  41:6
**complaint**  3:21
  24:14,15,19,20
  34:20 35:8,10
  35:15 36:3,9
  36:11,13,15,18
  37:7,12 44:21
  54:10 56:7
**complete**  64:15
**completely**
  27:20

completion
  64:18
complicated
  52:8
complied  32:19
compound
  12:20
conclude  60:16
concludes
  63:13
conduct  59:7
  59:24
confirm  32:14
confusion  5:20
connected
  41:21,23
connection
  10:1 35:11
  36:3,10 42:19
  43:7 47:3
  54:10,12,24
  58:18
connections
  60:20
connects  24:8
connolly  1:12
  4:13 64:5 65:9
consider  21:11
  22:1,5,9,20
  24:24 25:17
  26:6 28:6 29:6
  51:6,7 56:9
consideration
  21:21

considered
  18:1,2 22:23
  23:1,17 25:2
  52:10,13 55:23
  55:24 56:6,14
  61:9
considering
  22:19 25:16,19
consistency
  24:4
consistent
  22:13,15
constitute  61:8
constructed
  34:12
contain  13:13
  47:4
contained  9:22
  13:21 30:5
  32:22 33:5
  54:19
contains  45:23
  46:12
content  8:19
  18:2 41:19
  42:9,13 60:20
  62:17
conversation
  18:10
cook  65:4
copy  34:23
  36:15
correct  5:12,13
  5:15,16 6:8,11
  7:14,15 11:20

11:21 12:4
13:7 14:9 19:2
19:3,8,9,14,19
19:20 20:1,6
20:11,15,19,23
21:9 28:6,7
31:1 32:6 33:5
34:9 35:5,9,12
38:24 39:9,13
40:12,15,16,19
42:16,21 43:22
46:6,7,10
53:18,20 54:22
55:10 56:7,8
56:17,18 57:5
57:6,9,10,12,16
57:22 58:15,16
59:13,16,17,18
61:19,20 62:8
62:11 63:9
correctly  10:15
cost  46:20
counsel  2:2 4:4
  4:15 5:2,23
  46:17 47:8,16
  47:20,24 48:10
  48:11,20 49:18
  51:2 64:9 65:2
count  25:5
counting  29:4
county  64:2
  65:4
couple  27:9
  55:13,14 61:3

course  22:16
  62:14,17
court  1:1 4:6
  4:13 5:1
courts  1:14
coverage  47:1,7
  47:9,10 48:12
covered  15:15
  27:1
criteria  13:15
  21:14 22:8,12
  23:17 25:4
  26:9 27:14,24
  29:8,10,14
  32:16,20 34:21
  39:11 51:7,8
  51:12 54:3,4,5
cross  46:5
crowley  2:3 3:7
  4:20,20 7:4,6
  8:1 9:15 10:2,4
  10:11,22 12:8
  12:20 13:20
  14:3 16:17,21
  17:4,7,16,20,23
  18:8,21 22:24
  23:23 24:6,10
  25:10,23 26:3
  26:10,13,16
  27:1,9,16,21
  30:11 31:10,18
  31:23 32:8
  33:14,22,24
  34:3 35:16,22
  36:1 37:15,21

38:7 39:17
44:2,6,8 45:15
47:13 48:17,23
49:3,11 50:2
50:10,18,22
51:24 52:6,16
53:5 55:13,16
60:23 62:3
63:11
**crr** 1:12 64:6
65:9
**csr** 1:12 64:6
65:9,9
**currently** 33:21

**d**

**d** 3:1
**damaged** 53:11
**damages** 6:15
7:11 8:20,21
8:23 9:6 11:9
15:4,23 21:2
32:11 34:6
43:21 46:9,19
62:7
**damaging** 53:4
53:8,13
**dash** 17:12
**data** 39:12,14
39:20
**date** 64:6 66:3
**dated** 6:6
**day** 1:17 40:9
40:10,10,14,17
41:13 63:20
65:5 66:22

**days** 36:18
44:22
**deal** 7:23
**dealt** 9:13
**december** 1:17
3:3 4:2 65:5
**decide** 48:1
**decided** 21:24
**deciding** 25:16
**decision** 31:14
**defamatory**
30:6 47:4
**defendant** 2:13
4:4,19
**defendants** 1:8
**defense** 3:14
33:19
**definitely** 35:16
**degree** 8:22
**demand** 3:21
**denial** 9:23
56:16
**denied** 47:2
59:15
**denies** 16:3,8
16:14 19:5,15
19:22 20:8
45:6 46:3
**deponent** 64:20
**deposed** 35:17
**deposition** 1:11
2:2 3:2 4:3,8
5:11,14,18,21
5:22 24:1,7
64:4,9,18 66:3

**depositions**
1:15
**describe** 42:5
**described**
10:18 34:6
**despite** 20:24
21:6 41:11
61:18
**details** 7:7
**determination**
21:16 48:15
**determine** 9:10
9:18 27:14
**determining**
21:10 23:17
26:9 28:14
29:10 51:9
**difference**
62:12
**differences**
10:8 29:14
**different** 22:17
23:24 24:6,7
25:18 28:13,18
28:23 29:9,15
**differentiate**
7:22 9:18
10:19 11:1,19
42:1 62:1
**differentiating**
11:11
**direct** 25:11
**directed** 47:8,8
47:16 54:2

**directive** 49:19
**directly** 42:9
**discuss** 28:17
**discussed** 54:6
**discussions**
48:19
**district** 1:1,1
1:14 4:6,7
**document**
24:16
**documented**
41:18 61:10
62:15
**documents**
54:11,14,16,17
55:3
**dollars** 62:7
**donald** 1:7 3:19
3:22 4:5,19
20:16 66:2
**dr** 4:4 5:9 23:9
34:5 36:9
43:18 48:19
55:17 61:4
63:14
**draft** 49:24
**drafted** 12:13
37:6
**drafting** 43:19
**drew** 32:16
**drive** 1:15 4:9
**driver** 62:19
**due** 60:19
**duly** 5:4 64:10

| e | | | |
|---|---|---|---|
| **e** 1:4 3:1,14,19 3:21 4:5,22 15:6 16:1,4,6 16:11,14,15 18:20,23 19:5 19:10 20:3,8 20:12,16,20 45:6 46:3 66:2 | **evanston** 4:9 **exact** 16:10 25:21 26:13,17 **exactly** 6:22 44:19 62:11 **examination** 3:5 5:7 55:15 61:1 | **exhibit** 3:11,13 3:16,18,21 18:9,15 23:8 33:9 36:16 **exhibits** 3:9 **exist** 49:6 54:18 **experience** 49:23 50:21 | **far** 27:12 **faster** 35:2 **fear** 60:22 **featured** 21:12 25:6 27:24 28:1 29:18 30:10,19 **federal** 1:13 |
| **easiest** 17:10 **either** 11:19 31:21 32:22 33:3,12 | **examined** 5:5 64:11 **example** 14:11 29:16 42:8 44:18 51:20 | **expert** 3:11,16 6:6 22:17 28:16,19 29:23 33:18 49:8 54:2,15 63:1 | **feel** 5:22 59:6 60:14 **fifth** 2:4 **figure** 40:3,5 42:16 43:4 |
| **emails** 49:20 **employed** 22:14 24:4 | **examples** 14:16 15:9,22 30:21 42:18 | **expertise** 49:23 50:15,21 **expires** 66:25 | **filed** 4:6 57:1 **find** 62:18 **finished** 32:18 |
| **enjeti** 45:4 46:4 **entire** 46:24 **entirely** 14:14 21:2 | **excel** 54:18 **excerpts** 42:8 **exclude** 36:5 47:1,6,9 48:12 48:16 60:11 | **explain** 57:24 60:5 62:12 **explained** 27:16 | **fink** 2:3 4:20 **firm** 4:13 **first** 5:4 6:16 10:6,9,12 11:13,13 13:21 |
| **entitled** 46:2 **equal** 14:10,13 14:19 61:21,24 | **excluded** 29:12 31:4 34:1 56:15 | | 14:5 15:18 25:8,12 27:2 28:3 31:3 |
| **errata** 66:1 **essentially** 14:20 43:20 44:5 47:8 | **excluding** 49:9 50:4 51:7 **exclusion** 29:7 **exclusive** 16:3 19:4,5 45:5,19 46:2 | **f** | 35:17,19,23 36:1,4,7 40:10 41:21,23 42:10 42:14 44:13,14 |
| **establish** 58:2 **established** 60:12 | | **fabian** 45:4 46:4 **faces** 38:5 | 44:16 45:12,17 46:12 53:13 56:15 58:18 |
| **estimate** 46:20 **estimated** 11:5 **et** 42:13 58:12 **evaluate** 46:18 | **exclusively** 9:23 12:3 31:5 32:1,14 47:10 47:17,23 50:5 51:11,19 54:6 | **fact** 20:24 21:6 41:11 47:2,7 **factor** 52:12 **factors** 22:22 28:6,8 29:19 52:10 **fair** 57:4,14 **fall** 49:12 **familiar** 15:10 16:19 43:23 | 59:6,9,23 60:13,17 64:10 **five** 43:11 |

**floor** 2:5
**focus** 46:24
**focused** 12:15
  13:1,9,17
  14:14 32:15
  51:19,21 52:4
**follow** 61:3
**following** 2:2
  36:20 42:17
  44:23
**follows** 5:6
**footnote** 37:2,3
  45:3
**foregoing** 64:4
  64:14
**forementioned**
  64:16
**form** 7:4 8:1
  10:22 12:8,20
  13:20 14:3
  22:24 30:11
  31:10,18,23
  32:8 37:15,21
  39:17 44:2,6
  47:13 52:16
**found** 41:20
  53:9 59:4,22
**foundation** 4:8
**free** 5:22 49:14
**full** 16:24
**further** 48:19
  60:23 61:1

**g**

**g** 2:3
**gabra** 2:17
**garber** 3:15
**garnered** 41:8
**general** 5:18
  9:23 14:18
  21:8 38:6
**generalized**
  38:5
**generally** 30:23
  31:22 38:9
  51:18
**getting** 27:12
  52:10
**give** 14:15,16
  14:23 18:13
**given** 5:18 7:8
  29:14 63:13
**go** 15:21 35:18
  38:10 52:7
  53:2
**goes** 17:24
  27:21
**going** 4:1 5:17
  5:24 15:5
  16:17,18,21,23
  17:1,8,16,20,24
  18:16 23:6
  25:10,11 33:1
  36:12,14 43:14
  43:17 46:14,23
  46:24 48:18,20
  48:21 57:12

**good** 4:1 5:9,10
  39:15,20
**google** 39:12,14
  39:19 41:4
**great** 18:18
  36:21 44:24
  45:10 53:9
**greater** 43:3
**group** 8:12
**guess** 6:20 33:8
  35:4 46:12
  62:20

**h**

**habba** 2:9,17
  4:18
**habbalaw.com**
  2:12
**half** 25:8 28:3
**happened** 6:19
  36:22,23 45:2
  45:2,12,12
**harm** 7:16,22
  8:7 9:10,12,18
  10:19 11:1,5
  12:6 13:24
  14:5,18 38:5
  41:21,23 42:2
  53:10 58:3,4,6
  58:8,19,22
  59:5,5,23
  60:13,16,17
  61:8,10 62:15
  62:19 63:7
**harmful** 61:15
  62:10

**harris** 2:4 4:21
**headline** 25:7
  28:2 29:19
**headlines** 26:6
**hecker** 2:3 4:20
**help** 32:17 35:2
**helpful** 23:21
**hereinabove**
  64:17
**hereto** 64:22
**highway** 2:10
**hill** 36:19,24
  44:22 45:7,21
**honest** 48:8
**huh** 11:12,16
  14:22 19:3
**humphreys**
  1:11 3:2,12,17
  4:4 5:3,9 18:12
  23:6,7,9 33:8
  34:5 36:9,14
  43:18 48:19
  55:17 61:4
  63:14,17 66:3
  66:21
**hundred** 40:23

**i**

**identified**
  33:16,18
**identifies** 37:8
**identifying**
  37:19
**ii** 5:15 23:10,13
  23:19 25:20
  26:10,11,15,16

28:9,19,19
29:13,17,21
30:1,14 55:19
**illinois**  1:16
4:10 64:1 65:4
**impact**  7:11
8:17,18,21 9:1
15:23 21:4,11
21:17,18,22
23:18 27:15
28:10,15 29:5
29:12,13 31:1
31:7,15,19
32:4,11 34:7,8
38:1,17 39:2,9
39:15,20 41:14
41:18,24 42:1
46:19 50:8
51:21 53:9
62:15
**implied**  48:3
**important**  28:9
**impression**
52:7
**impressions**
6:15 7:11 8:13
8:16,22 11:9
21:19,23 29:4
31:20,24 32:4
32:11,24 34:12
34:17,18 35:7
46:18 50:9
51:5,10,16
52:4,5 55:22
56:5,20 61:23

63:3
**include**  13:5,8
21:10,24,24
23:18 25:3
29:15 30:3,4
38:20 56:11
61:18 63:2
**included**  14:23
21:4,16 23:18
27:15 28:15
29:11,12 31:2
32:23 46:8,13
63:7
**includes**  39:2
**including**  49:9
51:7
**inclusion**  29:7
**inconsistencies**
27:8
**index**  3:23
**indicate**  40:6
41:7
**individual**  9:2
9:10
**individually**
7:24 8:6,11
**information**
54:19,20
**initial**  7:12,15
7:21 8:4,24
9:14,21 10:1
10:21 11:3,5
18:22 22:14,17
23:3 24:15
26:22,24 28:20

29:1 34:5,13
34:13,14,22
35:11 38:8,12
38:20 39:4,11
40:4,5 42:20
46:6 54:15,21
58:1 59:4,22
60:12,19 61:6
61:19 62:23
**initially**  24:20
43:24 48:7
**insights**  53:19
53:23
**instance**  8:14
9:22 14:24
**instances**  9:20
11:7 13:4,10
15:1 23:1
30:15
**intents**  45:20
**interested**  65:1
**interrogatories**
5:5 64:11
**interview**  36:19
44:17,23
**introduced**
58:9
**involvement**
53:22
**issue**  25:14
57:1 59:8 60:1
60:3
**itemize**  8:16

**j**

**j**  1:7 3:19,22
4:5,19 66:2
**jean**  1:4 3:14
3:19,21 4:5,22
15:6 16:1,4,6
16:11,14,15
18:20,23 19:5
19:10 20:3,8
20:12,16,20
45:6 46:3 66:2
**jersey**  2:11
**job**  17:1
**jordan**  45:4
46:4
**journalist**
53:12 58:11
61:12,16
**judge**  27:19
**june**  3:15 7:1
7:18,19,19 9:2
9:2,3,6,11,11
9:11,19,22
10:20 11:2,19
11:19,20,24
12:3,7,11,13,15
12:16,18,19
13:2,3,3,6,9,18
13:19,19 14:1
14:1,2,5,7,11
14:14 15:11,17
15:19 21:1,8
21:12,12 22:2
22:2,6,6,10
25:19 31:1,8

31:15,16 32:2
32:15,22,23
33:3,3,6,12,13
36:19 37:8,13
38:20 39:3
40:8,13,20
41:5,5,6,7,8,11
43:8,20,24
44:4,5,11,14,22
45:8,21,23
46:5,8 47:5,10
47:18,24 48:13
50:1,5,6,6,17
51:11,13,15,15
51:20,22,23
52:19 53:3
54:7 56:10,16
56:24 58:6,14
59:14 60:2,11
61:5,15,22,22
62:6,21,22
63:6
**jury** 3:21

**k**

**k** 64:2
**kaplan** 2:3 4:20
**kaplanhecker...**
2:6
**kate** 2:4 4:21
**keep** 12:17
13:17,22 21:3
**keeping** 50:5
**kept** 16:22
51:15

**kin** 65:2
**kind** 24:15
**knew** 37:12
**know** 5:21,23
12:18 13:10
14:15 15:17
27:8 30:1,21
34:16 36:12
43:1 44:7,9,11
44:17 49:20,22
50:20 51:22
52:10 53:1
54:16
**knowing** 63:5

**l**

**lak** 1:6 4:7
**largely** 12:15
13:1,17 15:15
51:21 52:4
59:10
**larger** 40:20
**lawsuit** 57:2,5
57:11
**legal** 4:12,14
**length** 36:4
**liar** 42:11
53:11 58:10
**likely** 45:23
**limit** 46:23
**limited** 5:19
24:1 34:18
**line** 17:22
24:13 27:23
66:5

**list** 17:11
**listed** 17:3,14
43:4
**lists** 17:13 37:3
**litigation** 25:15
**llc** 66:1
**located** 4:9
**location** 4:8
**long** 17:21
**longer** 21:1
**look** 8:5,6
18:19 43:1,6
46:1,11 54:9
**looked** 8:20
9:20 39:11
**looking** 8:11
18:21 19:1,7
19:12,16,18,23
20:4,9,13
29:15 42:11,16
**looks** 40:8
**lot** 21:23 57:7
57:14
**lying** 53:11
60:22 61:13
62:16

**m**

**madaio** 2:9,9
2:17 3:6 4:18
4:18,18 5:8 7:9
8:4 9:17 10:3,7
10:17,24 12:10
12:23 13:23
14:7 16:19
17:2,6,10,18,22

18:5,11,22
23:4 24:3,8,11
25:20 26:2,5
26:11,15,21
27:7,13,19,22
30:13 31:13,21
32:3,9 33:16
33:23 34:2,4
35:20,24 36:8
37:17,24 38:8
39:19 43:10,18
44:4,7,10
45:16,20 47:16
48:21 49:1,7
49:14 50:4,12
50:20 51:1
52:2,8,19 53:7
55:11,17 58:13
61:2 62:5
63:10
**madaio's** 57:18
**made** 7:17
13:11 15:23
25:13 31:6
36:20 40:9,14
40:17 44:23
56:24 64:16,20
**main** 26:8
**majority** 11:17
**make** 29:2
30:17,20 32:19
32:19
**making** 59:11
**manner** 37:18
44:15 49:9

**mark** 36:14,14
**marked** 3:9
  18:9,12,15
  23:5,6,8 33:7,8
  33:9 36:13,16
**materials** 22:16
  55:3
**matter** 4:5 5:15
**matters** 29:6
**mccormick** 4:8
**mean** 10:7
  27:19 29:4
  31:13,19,21
  35:3 37:16
  38:16 41:2
  42:7,22 44:13
  52:2,3 53:21
  55:2,4 60:2
  61:7,24
**meaning** 9:11
  29:11 33:18
  38:15 45:18
  47:9 52:5
**means** 12:5
**measure** 14:5
  39:15,20,24
  63:2
**media** 4:3
  11:23 41:19
  42:15,19,22
  43:13,16 57:8
**medication** 6:2
**megan** 3:15
**mention** 13:18

**mentioned** 14:8
  14:11
**method** 13:24
  47:11,18,22
  50:7,14 51:2,3
  51:6
**methodologies**
  25:21 26:12
  28:18,23
**methodology**
  7:10 9:9 10:9
  11:8,10 14:17
  22:13,15 24:3
  24:4 26:14,17
  26:23 27:2,3
  28:11,13,17
  29:3,4,7 35:19
  56:19
**michael** 2:9 3:6
  4:18
**mike** 16:17
  48:24
**millions** 62:7
**mind** 12:22
  19:17 41:1,7
**minus** 41:10
**minute** 43:11
**minutes** 55:14
**misconduct**
  16:14 20:8
**missing** 62:13
**misstated**
  10:14
**misstates** 62:3

**mmadaio** 2:12
**model** 7:11 9:1
  15:23 21:4,11
  21:17,18,19,22
  21:23 23:18
  27:15 28:10,15
  29:12,13 31:1
  31:7,15,19,20
  31:24 32:4,5
  32:11,24 34:17
  34:18 35:7
  46:19,19,19
  50:8,9 51:5,10
  51:16 52:4
  55:22 56:5,20
**models** 15:4
  32:7 34:12
**moment** 33:10
**monday** 4:2
**morning** 4:1
  5:9,10
**move** 46:14

**n**

**n** 3:1
**name** 4:11 66:2
  66:3
**named** 64:9
**national** 37:1
**nature** 38:4
  58:3,5 60:21
  62:14
**necessarily**
  29:7 30:12
  58:24

**necessary** 6:21
  6:23 41:13
  59:1,6,19,24
  60:7,14
**need** 16:23 17:7
  27:20 28:21
  29:2 31:2
  34:21,24 46:11
  49:13
**needs** 18:3
**never** 19:17
  36:22,23 45:1
  45:2,11,12
**new** 1:1 2:5,5
  2:11 4:7 57:19
  59:2,20 60:8
  66:1
**news** 8:15
  25:15 34:19
**niche** 38:6
**notary** 1:12
  63:23 64:6,13
  65:4,10 66:25
**note** 4:23
**noticing** 4:17
**november** 3:12
  6:9
**number** 4:7,24
  17:12 36:21,22
  41:1 42:23
  45:1,1,11,11
  57:12
**numbers** 17:12

| o | | p | person's  39:16 |
|---|---|---|---|

**o**

**o**  64:2,2
**object**  25:10
   48:20
**objection**  7:4
   8:1 9:15 10:2
   10:22 12:8,20
   13:20 14:3
   22:24 30:11
   31:10,18,23
   32:8 33:14
   35:16 37:15,21
   39:17 44:2,6
   45:15 47:13
   48:17 50:2,10
   50:18 51:24
   52:6,16 53:5
   62:3
**occurred**  58:9
**october**  3:17
   6:6 7:16 27:6
   56:1 57:11
**offhand**  15:19
**official**  65:3
**okay**  6:5,24 7:9
   9:24 10:17
   11:22 15:3,17
   15:21 17:7,20
   17:23 18:8
   19:4 20:24
   21:6 22:1,9,13
   23:4,13 24:11
   27:21,22 28:23
   29:8,8 30:8,13
   30:23 32:13,13

   32:21 33:7
   34:5,15,23
   35:6,10 36:8
   36:12,23 37:6
   37:11,24 38:19
   38:22 39:1,10
   39:23 40:2,24
   41:22 42:18
   43:3,10,18
   44:20 45:2,12
   45:20 46:1,14
   47:22 48:15
   49:16,22 50:12
   51:8 52:19
   53:3 54:5,9,23
   55:11 61:18
   62:9,20
**omitted**  9:21
**ones**  25:5 28:1
   55:8
**online**  34:19
**opinion**  62:22
   63:6
**opposed**  8:11
   9:12 14:1,10
   29:13
**oral**  5:5 49:15
   64:11
**order**  46:19
**original**  54:14
   56:6,21
**outlined**  7:12
   24:16 54:4
**own**  47:12,19
   48:1,15

**p**

**page**  3:5,10
   18:11,16,22
   19:1 23:21,22
   24:12,13,13
   25:1 27:23
   35:1,5,6 38:3
   40:2,5,6 42:9
   44:21 46:15
   54:8 66:5
**paragraph**
   36:18,24 44:21
   46:16
**paragraphs**
   36:17
**part**  7:2 8:8
   9:13 13:14
   21:1 25:9 26:7
   26:8 28:4 34:4
**particular**  8:14
   8:15 15:1
   42:10 58:8
**parties**  65:2
**people**  52:5
**perform**  34:7
   38:13,15,16,17
   57:19 59:2,19
   60:8
**performing**
   58:17
**period**  64:21
**person**  51:18
   51:24 58:11,20
   58:23 61:16

**person's**  39:16
   39:21
**personal**  1:7
   3:22 53:12,13
   61:17
**personally**
   32:13
**pertaining**  1:14
**peter**  2:17
**ph.d**  4:4
**ph.d.**  1:12 3:2
   3:12,17 5:3
   63:14 66:3,21
**place**  64:6,17
**plaintiff**  1:5 2:7
   4:22
**plaintiff's**
   37:18
**please**  5:1
**point**  5:20 15:3
   17:19,23,24
   23:21,22 29:16
   33:11 36:17
   40:2 44:20
   46:23,24
**pointing**  17:18
   36:1
**points**  41:10
**political**  42:12
**portion**  34:18
   38:2
**position**  9:5
   12:16 14:22
   61:4 62:9

posts 25:17 42:15,19,23 43:5,6
preparation 54:10,12,24
prepare 35:23 36:3,7 54:1
prepared 26:18 63:1
preparing 27:4 29:22 35:11 36:10 53:16,22 53:23 54:15,24 55:7,18,22 57:20 59:2,20 60:8
present 2:1,15 4:15 64:8
president 7:18 15:10 40:14
press 37:1
pretty 27:10,12
previously 5:11 6:5 22:19,23 26:8 54:1,9 64:9
primarily 13:9 61:11
primary 62:19
prior 57:10 62:3
privileged 48:20
procedure 1:13

proceed 5:2
proceeding 5:22
proceedings 3:18
process 9:9 10:18,24,24
produced 42:8 49:6,13
professional 49:23 50:15,21
professor 3:11 3:16
program 46:21
prominence 14:21 22:21 30:9,18 56:9
prominent 13:11,12,13 25:9 26:7 28:4 52:13 56:1
prominently 21:12 25:6 28:2 29:18
proper 21:3 48:2,16 49:24 50:3,14
properly 50:16
provide 6:15 46:17,20
provided 8:17 48:24 49:8 64:21
public 1:13 38:6 60:22

62:18 63:23 64:6,13 65:4 65:10 66:25
publicity 42:12
published 15:18 44:1,5,8 44:12,16 45:13 45:17
purpose 6:13
purposes 12:12 36:5 45:21 55:23
pursuant 1:13
put 62:5

**q**

qualitative 34:7 38:1,11 38:14,17,19 39:2,4,10 41:14,24 42:1 42:7 57:19,23 58:2,17 59:2 59:20 60:8,15 61:6,9,10 62:24 63:7
quantitative 34:8,10 61:19 62:2,23 63:8
question 6:1,20 8:3 10:13,23 13:23 17:20 24:14 26:3,4 27:17 34:16 44:3 45:15 52:1 60:6

62:21,21
questions 5:19 5:21 10:6 17:22 26:19 27:9,18 55:11 55:18,19 57:19 64:11,15
quote 11:14 15:7,15 16:1,4 16:7,9,12,13,16 18:24 19:6,11 19:16,22 20:3 20:7,13,17 33:18 36:21 38:4 40:7 44:24 45:7 46:3

**r**

rackowski 2:16 4:11
rape 16:7,11,15 19:11 20:2,12 20:17
rather 38:6
read 14:19 15:5 15:22 16:18 27:23 33:11 41:19 46:23 52:5
reading 16:24 51:19 52:1
reads 52:11
real 33:18
reask 60:5

**reason**  29:9
  30:2 66:5
**recalculate**
  32:10
**recall**  23:9,16
  23:20 28:21
  35:14 43:1
  44:19 48:7
  49:20 55:4,19
  56:2,3
**recitation**
  17:21
**reconduct**
  60:15
**record**  4:2,16
  18:10 43:14,15
  43:17 59:18
  60:6 63:12,15
  64:15
**recorded**  4:3
**redepose**  35:18
**redo**  39:9 47:20
**reduced**  62:6
**refer**  11:7 15:2
  28:16 40:6
  42:9 50:4
  51:13
**reference**  13:2
  18:14 32:22
  33:2 39:3 43:8
  46:5 50:6
  51:14 56:16
**referenced**
  12:14,18 13:6
  14:12 22:10

33:13 51:5,11
  52:14 54:6
  56:7
**references**  21:7
  51:22
**referencing**
  17:12
**referred**  9:23
  11:14,18,23
  12:3 31:3 32:1
  47:1,7 48:13
  55:5 64:17
**referring**  8:9
  17:12 42:15
  50:3,12
**refers**  42:13
**reflect**  54:20
**reflected**  8:23
**regarding**  24:5
**relate**  37:8
  47:17,23
**related**  5:14
  8:14,19 22:2,6
  23:10 25:6
  28:2 41:19
  47:10 62:16,17
**relates**  48:17
**relative**  40:24
  41:12
**released**  36:19
  44:22
**relevance**
  25:23
**relevant**  10:8
  21:15,20 26:2

27:7,13,20
  29:17,20,21,22
  29:24 30:8,14
  30:15,20,22
  32:12 37:11,16
  37:18,22 39:23
  60:15 61:5,7
  62:23
**relied**  16:22
**relies**  8:21
**rely**  55:6
**remained**  15:4
**remains**  7:11
**remember**
  17:16
**removal**  50:1
  50:17
**remove**  31:16
  47:17 50:8
  51:9,12 54:2
**removed**  7:2
  11:23 13:1
  18:14,17 19:2
  19:8,12,19,24
  20:4,10,14,18
  20:21 21:2
  31:8 32:1,5,6
  33:4,24 34:3
  46:6 51:4 54:7
  62:6
**removes**  9:6
**removing**  12:6
  30:24 31:14
  43:20 47:23

**repair**  46:21,21
**repeat**  8:2
**repeated**  25:14
**rephrase**  52:1
**report**  3:11,16
  6:6,10,13,14,18
  6:21 7:10,12
  7:16,16,22
  8:24 9:6,14,16
  9:17,21 10:1,5
  10:6,12,21
  11:3,4,5,7,14
  11:18,23 12:2
  12:14,23 15:5
  15:24 16:20
  17:2,11,13,14
  18:13,21,22
  19:1,7,12,18,24
  20:4,9,14,18,22
  22:14,17,17
  24:2 25:12,20
  25:24 26:15,16
  26:18,22,23,24
  27:2,4,11 28:5
  28:10,16,19,20
  28:22,24 29:1
  29:23 30:24
  31:21 32:6,10
  32:12 33:15,17
  33:18 34:5,13
  34:14,22,24
  35:11,17,19,21
  35:23 36:2,4,6
  36:7,10 37:7
  38:1,2,8,10,12

38:12,13,18,20
38:23 39:1,4,7
39:11 40:3,4,5
41:15 42:6,20
43:2,7,19 46:2
46:6,9,15 48:9
48:17 49:24
53:17,22,24
54:2,11,13,15
54:21 55:1,7,9
55:19,23 56:6
56:11,13,15,21
56:21 57:20
58:1,18 59:3,4
59:21,22 60:9
60:10,12 61:6
61:19 62:24
63:1
**reported**  37:1
**reporter**  4:13
  5:1 64:21
**reporting**  66:1
**represent**  4:21
**represented**
  49:4
**representing**
  4:11,19
**reproduced**
  54:18
**republicans**
  52:9
**reputation**  7:17
  8:7 58:19,22
  59:10 61:11,15

**reputational**
  41:20,23 46:21
  53:10 58:3,4,5
  58:8 59:4,5,23
  60:13,17 62:15
  62:19
**request**  48:21
**requested**  18:9
  18:15 23:8
  33:9 36:16
  48:23 49:4
  64:19,20
**required**  49:5
**respect**  34:10
  36:21 44:24
  45:11
**responds**  16:15
  20:12,16
**response**  21:22
  36:20 44:24
  57:18
**result**  58:6
**resulting**  41:12
**retain**  13:22
**retained**  13:4
**review**  32:13
  36:9,11 43:5
  54:11,23 64:18
**reviewed**  32:18
  35:10 36:3
  42:19,23 54:14
**right**  5:17 6:6
  6:10 7:13,19
  7:20 8:16 9:20
  10:3,11 11:10

11:15 12:1,3
13:3 18:5
19:13,24 20:5
20:10,14,18,22
23:14,24 24:10
27:1,16 31:6
32:9,24 33:4
34:8,18,20
35:8,24 39:1,6
39:8,12 40:11
40:21 42:20
43:4,11,21
44:15 45:5
46:14 49:11,14
50:7 51:2,17
52:3,5 53:17
54:8 61:23
62:2,7
**room**  1:15 4:9
**roughly**  15:12
**rule**  49:12
**rules**  1:13 5:18
  49:6

**s**

**s**  66:5
**saagar**  45:4
  46:4
**save**  5:23
**saying**  42:10
  45:5 46:17
**says**  16:4,11
  19:6 20:2,20
  25:20 26:16,21
  26:23 33:24
  36:18 44:21

45:7 46:3 48:9
  58:15
**scientist**  29:6
**scrowley**  2:6
**seal**  65:3
**search**  39:12,14
  39:19 40:7,24
  41:3,4,12
**searches**  41:4
**second**  6:16
  10:10 31:3
  35:20 36:6
  40:11,13 41:21
  41:23 42:10,14
  46:16
**see**  17:24 18:4
  18:14 27:21
  28:22 30:21
  34:22 37:4,5
  38:3 42:8 43:7
**seemed**  48:3
**select**  25:4
**selected**  36:5
**selecting**  56:10
  56:19
**selection**  23:3
**sell**  59:11
**sent**  49:20
**separate**  28:11
**separately**
  10:13
**set**  30:5,5 33:6
  56:14
**seven**  43:4

| | | | |
|---|---|---|---|
| **several** 10:5 | **somewhat** 42:4 | **spike** 40:13,20 | 33:3,6,13 |
| 17:6 | **sorry** 8:2 10:23 | 40:22,22 41:6 | 36:20,24 37:9 |
| **sexual** 16:8 | 12:22 15:8 | **spikes** 40:7,21 | 37:14,20 38:20 |
| 19:15,22 20:8 | 19:17 21:18 | **spoke** 49:21 | 39:3,15,20 |
| 20:20 | 22:4 29:2,11 | **spot** 32:18 | 40:10,11,15,18 |
| **shawn** 2:3 3:7 | 31:12 34:15 | **spreadsheets** | 41:5,5,7,8,12 |
| 4:20 | 39:18 40:17 | 54:19 | 42:14 43:8,20 |
| **shear** 54:18 | 46:21 49:3 | **ss** 64:1 | 43:24 44:4,5 |
| **sheet** 66:1 | **sort** 18:3 32:17 | **start** 18:11 | 44:11,23 45:10 |
| **shorthand** | **source** 13:17 | 24:13 43:16 | 45:17,21,24 |
| 64:12 | 19:2 | **starting** 24:12 | 46:8 47:11,18 |
| **show** 16:17,23 | **sources** 9:1 | **starts** 46:16 | 47:24 48:13 |
| 17:2,7,11 23:4 | 11:23 12:2,17 | **state** 4:15 7:9 | 50:1,5,7,17 |
| 23:5,6 33:7 | 13:2,5,8 16:20 | 10:15 38:2,3 | 51:11,13,15,20 |
| 36:12 | 17:14 18:17 | 46:15 64:1 | 51:22,23 52:13 |
| **shows** 18:16 | 29:11 32:5 | **stated** 27:23 | 52:20 53:3 |
| **signature** 65:3 | 55:6 | **statement** 7:1 | 54:7 56:16 |
| 65:8 | **southern** 1:1 | 7:18,19,19 | 57:10 58:14 |
| **significant** 41:1 | 4:6 | 8:14 9:2,7,10 | 59:14 60:2,11 |
| 41:2 59:5,23 | **speak** 5:23 | 9:11,13,19,22 | 61:5,15,22 |
| **simple** 56:16 | **speaking** 15:12 | 10:20 11:2,8 | 62:6,10,22 |
| **simply** 11:7 | 30:23 51:18 | 11:13,20,24 | 63:6 |
| 31:24 55:8 | **specific** 8:8 | 12:3,7,11,13,15 | **statements** |
| 59:15 60:11 | 14:16,24 15:21 | 12:16,19 13:3 | 6:16 7:1,17,23 |
| **six** 43:3 | 30:21 35:15 | 13:6,9,11,13,18 | 8:5,18,20 11:6 |
| **skip** 5:17,24 | 49:18 55:4 | 13:19 14:1,11 | 11:11,14,15 |
| **social** 29:5 | 60:20 | 14:14 15:11,14 | 12:17 13:12,22 |
| 41:19 42:15,19 | **specifically** | 15:18 21:1,8,8 | 14:2,6,8,21 |
| 42:22 | 8:19 9:19 21:7 | 21:12 22:3,7 | 16:23 17:9 |
| **sole** 51:8 | 22:10 23:20 | 22:11 25:6,12 | 22:21 23:2,3 |
| **solely** 51:10 | 37:13 46:22 | 25:19 27:6 | 24:5,6 25:13 |
| **solutions** 4:12 | 60:22 61:12 | 28:2 29:5,17 | 26:6 27:15 |
| 4:14 | **specifics** 38:10 | 30:9,18 31:1,3 | 29:10,15 30:5 |
| **somebody** | **sphere** 62:18 | 31:5,8,15,16,17 | 30:6 38:4 |
| 52:11 | | 32:2,15,23 | 41:20,21,24 |

42:2,10,17
46:13 47:5,17
47:21,23 49:10
50:4 52:21
53:4,13 54:3
56:1,10,24
58:7 59:6,7,9
59:24 60:1,14
60:18,21 62:2
63:2,3
**states**   1:1,14
4:6
**stenographer**
64:13
**step**   15:8
**stories**   25:15
**story**   59:11
**strictly**   18:6
**submitted**   6:5,9
**subscribed**
63:19 66:22
**substantially**
28:21 29:22
**suite**   2:10
**supplement**
22:18
**supplemental**
3:11 6:10,13
6:14,18,21
7:10 9:5,16,17
10:5 11:2,6,22
12:13 15:4,24
18:13 19:1,7
19:12,18,23
20:4,9,14,18,22

24:2 25:24
26:18,22 27:4
27:11 28:5,10
28:24 30:24
32:5,10,12
36:10 37:6
38:1,12,13,18
38:23 39:7
41:15 43:7,19
46:1,9,15,18
49:24 53:17,22
54:11,12 55:1
55:7,9 56:13
56:21 57:20
59:3,20 60:9
60:10
**supposed**   24:1
**supposedly**
21:2
**sure**   8:4 12:23
17:16 31:13
32:19,19 34:22
37:22 42:7
45:5 46:12
47:16 48:3
58:1
**surprise**   7:8
**swear**   5:2
**sworn**   5:4
63:19 64:10
66:22

**t**

**t**   2:9
**tables**   54:18

**tail**   14:12
**take**   15:8 24:11
33:10 43:10
45:18 55:14
**taken**   1:12 3:3
4:4 6:1 64:5,12
**talk**   10:4 27:3
27:11,19 29:3
**talking**   9:15
10:7 11:10
32:4 49:8
**tasked**   30:24
43:19
**tell**   28:22 30:22
**teller**   58:11
59:11
**ten**   43:11
**terminology**
29:3
**terms**   8:7,10
11:11 18:17
47:22,23 51:4
61:22
**testified**   5:5
10:11 23:13
26:5,8 36:4
48:18 55:21
57:18 58:13
**testify**   6:2
25:24
**testifying**   23:9
**testimony**
10:14,15 23:14
23:24 62:4
63:13

**thank**   55:12
**thanks**   63:11
**thing**   18:3
46:24
**things**   42:12
**think**   10:11
12:2,5 13:16
13:23 14:4,12
17:7,10,15
21:15,20 24:20
27:1,11,13
28:8 30:8,15
31:6 34:23
35:3 37:17
39:23 41:13
43:12 45:23
49:23 50:2,16
51:18,24 52:2
52:3,12,12
58:13 59:1,18
59:19,24 60:7
62:20
**third**   11:8 31:4
31:5 40:14,17
**thought**   21:3
26:19 30:13
**three**   7:17,23
8:5,18 11:6,11
11:14 23:2,2
41:9,19 42:2
42:11 52:20
53:4 63:2
**time**   5:19,23
9:4 33:1 43:14
43:17 45:12,17

63:1 64:6,16
**times** 50:11
**title** 15:5 16:10
  16:24 18:23
  19:4,10,17,21
  20:2,7,16 21:7
  22:1,5,9,12
  33:17,20
**titled** 45:5
**titles** 16:18
  17:3,11,19
  18:6,6 22:22
**today** 5:19,24
  6:3 10:4 25:14
  26:1 27:3
**today's** 63:13
**took** 8:22 11:7
  56:14
**top** 24:13
**total** 42:23
**transcript** 3:18
  59:22 64:19
**treat** 29:5
**trial** 23:10,11
  23:24 55:21
**true** 64:14
**trump** 1:7 3:19
  3:22 4:5,19
  7:18 15:6,10
  15:24 16:3,6,8
  16:11,13,15
  18:20,23 19:5
  19:10,15,21
  20:2,8,12,16,20
  24:17 36:20

40:14 44:23
  45:6 46:2 47:2
  56:24 57:16
  58:15 59:14
  66:2
**trump's** 3:13
  33:19 36:24
  40:10 42:14,17
  56:1,9 58:6
  60:20
**truth** 58:11
  59:10
**truthful** 23:14
**truthfully** 6:3
**turn** 18:11
  37:24
**tv** 44:17
**tweet** 8:15
**two** 13:21 14:5
  28:12 34:6
  36:18 40:7,21
  44:22 46:12
  47:21 53:13
  59:6,9,23
  60:13,17
**type** 3:14 15:7
  15:16 16:2,5,7
  16:9,12,13,16
  18:24 19:6,11
  19:16,23 20:3
  20:7,13,17,21
  21:7 33:19
  36:22 45:1,7
  45:11 46:4
  47:9 58:15

59:16
**types** 34:6

**u**

**u.s.** 2:10
**uh** 11:12,16
  14:22 19:3
**ultimately** 25:1
**unattractive**
  62:17
**unchanged**
  7:12
**under** 45:3
  46:15 49:6
**undersigned**
  64:13 65:1
**understand**
  6:19,24 12:21
  31:11 45:9
  47:14 52:8
  58:3
**understanding**
  6:12,17,20,22
  15:13 45:16
**unit** 4:3
**united** 1:1,14
  4:6
**unquote** 11:15
**update** 31:7
  41:13
**updated** 21:11
  32:24 33:20
  46:20 50:8
  51:9,16
**ups** 61:3

**use** 24:22 25:4
  28:18,23 29:8
  29:9,9 56:20
**used** 7:10 11:1
  11:8 26:11,13
  26:17,21,24
  27:2,24 35:6,7
  50:7 53:16
  54:15
**uses** 25:21
  26:23
**using** 26:17
  27:14 28:13
**utilize** 9:9
  10:17
**utilized** 10:19

**v**

**v** 3:19,21 66:2
**vehemently**
  16:3 19:5 45:6
  46:2
**verbally** 49:21
**veritext** 4:12,13
  66:1
**versus** 4:5 32:4
**video** 4:3
**videographer**
  2:16 4:1,12 5:1
  43:13,16 63:12
**videotaped**
  1:11 3:2
**viewed** 52:20
  52:24
**viewing** 39:1

**voluble**   53:19
  53:23
**volume**   40:8
  41:1,12
**volumes**   41:3
**vs**   1:6

**w**

**w**   15:6,24 16:3
  16:6,8,10,11,13
  16:15 17:12
  18:19,23 19:1
  19:4,10,12,15
  19:17,18,21,21
  20:2,7,9,12,14
  20:16,18,20,21
  33:17,22,23
  46:2,6
**want**   15:22
  23:4,5,20
  24:11 27:7,22
  32:3 33:7
  36:17 37:24
  38:3 40:2
  43:23 44:20
  46:1 50:20
  53:15
**warrant**   28:13
**way**   7:24 11:3
  12:11 14:4,8
  14:18,19 17:10
  29:5 31:7,14
  38:11,22 42:2
  48:1,2,16
  49:24 50:3,7
  61:5 62:5,10

**we've**   48:24
**web**   18:17
  34:17 35:7
**weeds**   52:11
**weight**   14:10
  14:13,19 16:22
  17:9 18:1
  51:20 61:21,24
**whatsoever**
  51:14
**widely**   37:1
  52:20,23
**widespread**
  57:8
**wind**   43:12
**withdraw**
  34:16
**withdrawn**
  12:11 49:3
**witness**   5:2,4
  7:5,7 8:2 10:23
  12:9,22 13:21
  14:4 23:1
  30:12 31:12,19
  31:24 34:1
  37:16,22 39:18
  45:18 47:15
  50:24 52:7,18
  53:6 64:5,10
  64:16 65:3
**witnesses'**   66:3
**woman's**   16:8
  19:22
**women's**   19:15

**word**   45:19
**work**   24:1
  25:15,15,18
  27:4,5 53:23
  55:18 56:4
**worked**   54:1
**written**   18:10
  49:11,17 57:5
  57:8,15
**wrong**   15:20

**x**

**x**   3:1 34:3
  64:19

**y**

**yeah**   23:22
  44:10 45:14
  52:2 56:3
**years**   25:13
  57:12
**york**   1:1 2:5,5
  4:7 66:1

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.