# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **E. JEAN CARROLL** | ) ) ) ) | |
| V | ) ) | Case No. 20 civ. 7311 (JLC) |
| **DONALD J. TRUMP** | ) ) ) | |

**EXPERT REBUTTAL REPORT OF**
**CHARLES MALKUS**

**December 13, 2023**

1. <u>Engagement of Charles Malkus</u>

I have been asked by counsel for Defendant Donald J. Trump ("Defendant" or "Trump") to review and analyze the opinions expressed in the November 13, 2023, supplemental expert report of Ashlee Humphreys, PhD ("Humphreys"). My expert report is prepared for defendant with opinions and testimony in the matter of *E. Jean Carroll v. Donald J. Trump.*

   a. <u>Background and Qualifications</u>

I have over 39 years of experience in public relations, media, reputation management, crisis communications and reputation repair, including the past 25 years at the helm of my firm, Malkus Communications Group.

I've been engaged by the legal profession as an expert in the fields of media, reputational harm, and ethics. I'm recognized as a subject matter expert by international news media for public relations, advertising, media, and marketing.

For example, I have been retained as an expert witness for matters which include reputational harm alleged by a healthcare network because of inactions by a law firm (Broward County, FL); allegations of a foreign country not receiving public relations and branding campaigns from a New York company (United States District Court Southern District of New York); and a national television distribution deal with alleged marketing improprieties.

I'm the author of four books with publishers including Skyhorse and Pelican. As a leadership speaker, I've provided keynotes on ethics, crisis, and reputation management, for organizations including the Miami-Dade Commission on Ethics, Kansas Government Finance Officers Association, the Palm Beach Ethics Commission and Society of Government Meeting Professionals (SGMP). I've served as a panelist for annual conferences of the American Society of Journalists & Authors (ASJA), the South Florida Hospital and Healthcare Association (SFHHA) and Seattle Film Festival.

My involvement with high profile cases has led to being featured as an expert with television appearances including *CNBC* and *FOX Business Network.* I've been quoted in publications including the *Wall Street Journal*, *Associated Press, The Guardian*, *Forbes*, *Daily Business Review* and *Business Journal* publications.

I'm a renowned content creator for digital works which have resulted in serving as an executive producer for Netflix in addition to contributing for the television networks of Warner Bros. Discovery and ESPN. As a social media strategist, I've provided digital media campaigns and advertising for clients.

I am the Founding Co-Chairman of Neighbors 4 Neighbors, a 501c3 organization formed in 1992 during the aftermath of Hurricane Andrew with partners including television station *WFOR CBS 4*; *The Miami Herald*; *iHeart Radio* Network and the Herbert Hoover Foundation. Due to my volunteer leadership of this non-profit team, we built with the national Jaycees organization, national awards were achieved for the organization.

I have also served as a board of director for organizations including the *Florida Bulldog* (investigative newspaper), American Red Cross Broward Chapter, Junior Achievement of South Florida, Nova Southeastern University, Greater Fort Lauderdale Alliance, and MarcumRachlin Foundation. My professional and volunteer work has included working for organizations including Women In Distress, the National Association for the Advancement of Colored People (NAACP) and Goodwill Industries.

In my role as a journalist, I have worked for *The Miami Herald*, daily *South Dade News Leader,* and daily *Miami News*. I've written columns for newspapers including *The South Florida Sun Sentinel* and *Miami's Community Newspapers.*

My qualifications are described in more detail in my *curriculum vitae,* a copy of which is enclosed in this report.

      b.     This Case

Initially, Plaintiff claimed that she incurred reputational damage in connection with Defendant's comments on dates of June 21, 2019, June 22, 2019, and June 24, 2019. The June 24 statement subsequently was withdrawn from this case. The Defendant has denied that Plaintiff suffered any reputational harm.

Plaintiff's expert witness for this case, Ashlee Humphreys, PhD, submitted an original expert report on October 14, 2022, which includes all three June 2019 statements made by Defendant. Additionally, Humphreys has submitted a supplemental expert report on November 13, 2023, to reevaluate the impact of impressions and "to exclude the coverage referring exclusively to the June 24, 2019, statement."

Humphreys' second report is flawed since it fails to properly account for the withdrawal of the June 24 statement. For example, among other deficiencies, only 6 of 19 articles were withdrawn from Humphreys' "Damages Model" of her original analysis despite the articles focusing almost entirely on the June 24 statement, even including it in the title of the article.

My role as an expert witness in this assignment has determined that the assertion of potential reputational damage by Plaintiff is not factually accurate and the methodology provided in the supplemental report by Humphreys is not a reliable means of assessing the actual harm to her reputation nor the cost to 'repair' it. In this report, I will opine how Humphreys' report fails to change or modify her qualitative impact analysis despite the fact that Google search volume displayed a clear spike related to the June 24 statement. Further, her analysis only measures the 'impressions' garnered by media sources and lacks information specifically related to the real-world impact of this media coverage, such as the percentages of media which helped elevate Carroll's brand. Additionally, Humphreys fails to utilize any reliable methodology for removing reputational harm attributable to the June 24 statement.

2.     Subject of Opinion

I will provide fact-based information with respect to the assertions made by Humphreys along with analysis Humphreys has contained in her supplemental report and corresponding damages model. I will deliver clarifications relating to the lack of methodology associated with established public relations traditions and reputational harm programs.

I will share how in 2019 three-quarters of Americans prefer watching television media as the most preferred platform for current-day news according to Pew Research. I will address the inaccurate assertions made by

Humphreys about personal brand in her supplemental report relating to the lack of methodology associated with established public relations traditions for evaluating media in 2019. I will offer analysis concerning (a) how the supplemental expert report fails to modify her qualitative analysis or account for the fact that Google search volume fails to differentiate between whether coverage is attributable to Plaintiff's allegation or Defendant's response; (b) how the supplemental expert report does not properly address a percentage of negative media compared to supportive report; (c) how during the past four years there has been reputational advancement of Plaintiff's public status and career which would demonstrate that reputational repair would not be necessary in 2019 or now; (d) the supplemental report is improper because although Humphreys stated that she removed Defendant's June 24, 2019 comment from her analysis, Humphreys has not provided sufficient analysis pertaining to the removal of that statement which results in grouping all three statements together.

3.    Plaintiff's Expert

Plaintiff retained Ashlee Humphreys, PhD, a Northwestern University professor, as an expert witness in this case. The version of Humphreys' short biography has an emphasis towards "Her research uses a sociological perspective to examine core topics in marketing management and consumer behavior …"

Humphreys, known for marketing and consumer research, appears to have work focused on advertising, market growth and social media. With her background of accomplishments, she has minimal professional experience in public relations or reputation management. Her LinkedIn profile emphasizes marketing; however, Humphreys' experience does not include this case's crucial elements of reputation management, reputational harm and repair program, which involve mainstream news media work.

In my review of Humphreys' professional credentials, she does not have expertise or direct experience in crisis management and personal branding development at the time of a potential reputational matter. This is a highly specialized field which requires hands-on work in real time situations. Although Humphreys has had extensive marketing research, it should be noted that there is a significant difference between social media posts and earned media which includes television and newspaper coverage as a result of public relations initiatives towards a crisis/reputational event.

4.    Media Coverage and Reputation Practices Generally

My direct experiences working in news media during the past 39 years includes serving as a current full-time practitioner with work for applications in current day operating procedures. I have analyzed the court documents in the case; reviewed news media reports which include television and media postings contained in this report, completed an extensive online review; and examined Humphreys' two reports.

5.    Documents Reviewed to Form Opinions:

   Supplemental Expert Report of Ashlee Humphreys, PhD (November 13, 2023)

   Expert Report of Ashlee Humphreys, PhD  (October 14, 2022)

   Complaint of  *E. Jean Carroll v. Donald J Trump*  (November 4, 2019)
   Answer to Complaint (January 23, 2020)

   Deposition transcript of E. Jean Carroll  (October 14, 2022)

   Plaintiff's Responses and Objections to Defendant's request for RPD (June 27, 2022)

   Plaintiff's Second Set of Interrogatories to Defendant (August 2, 2022)

   Defendant's Amended Responses to Plaintiff's First Request of Documents (August 26, 2022)

   Plaintiff's Amended Complaint (May 22, 2023)

   Deposition of Ashlee Humphreys (December 11, 2023)

Expert Report of Charles Malkus                                                                                                              4

6.    <u>Summary of Opinions</u>

Humphreys' report does not include a percentage breakdown between perceived negative news coverage and supportive media with positive impacts toward Carroll's brand. Humphreys doesn't differ between supporters of Carroll's actions and postings relating to Defendant Trump's responses to the *New Yorker Magazine* article and book excerpts.

Further, Humphreys has not provided an accurate methodology since she hasn't included an analysis of supportive media that has continued from June 22, 2019, through the year 2023. Humphreys fails to appropriately address journalism coverage which places Carroll in a positive light, including serving as an advocate for women.

Additionally, in Humphreys' supplemental report, there is no mention of the real-world impact that the media coverage had on Carroll's career, her enhanced public status as a media personality and commentator. Also, one of Carroll's income streams is from her "Ask E. Jean Carroll" Substack subscription plans, which include $120.00 year subscriptions.

    a.    <u>Statements of Negative Impacts towards Plaintiff's Reputation not accurate</u>

On page 4 of Humphreys' Supplemental Expert Report, she writes:

D. "A measure of dissemination of the June 21 and June 22 Statements is possible using an information cascade model to estimate impressions on social media and with ratings, circulation, and web traffic data to estimate impressions on traditional media."

Comment:

From this measure, a glaring omission exists specifically on a percentage of which reporting and online media may be viewed as negative versus supportive. There are not supporting media facts for indicating which impressions may have had a negative impact towards Plaintiff's reputation and comparison percentages to supportive and positive impact impressions.

    b.    <u>Washington Post interview with Supportive Media Coverage, 06/21/2019</u>

> **Plaintiff E. Jean Carroll provided the following interview to the Washington Post which resulted in positive news media coverage and social media posts:**

"She said she hoped that telling her story "will empower women to come forward and not feel bad. . . ."[1]

Comment:

These types of reports by news media including the Washington Post, provides Carroll to be viewed as an advocate to "empower women" and have provided Plaintiff with an enhanced reputation.

    c.    <u>NPR Supportive Media Exposure, Carroll an Advocate for Women</u>

> **Despite Humphreys' reputational repair program needs, positive media coverage has continued for Plaintiff.**

---

[1] https://www.washingtonpost.com/politics/magazine-columnist-accuses-trump-of-sexual-assault-more-than-two-decades-ago-an-allegation-he-denies/2019/06/21/2afc6f12-945a-11e9-b58a-a6a9afaa0e3e_story.html

NPR national radio broadcast on 11/04/2019, includes the following:

"After filing her lawsuit Monday, Carroll positioned herself as a representative of a whole host of women who have survived sexual assault and been afraid to speak up."[2]

Comment:

Although expert witness Humphreys suggests reputation repair is necessary, these types of reports have led to Carroll enhancing her personal brand and continues providing for media career success.

    d.    Carroll and her big win in MSNBC interview

**The positive news coverage has continued for Plaintiff Carroll who has been acknowledged during her MSNBC interview with a "big victory."**

The following MSNBC report from May 10, 2023 includes Plaintiff stating, "This was a big victory for all women….It was about getting my name back." Important to point out that on YouTube alone, there has been 207,000 views.[3]

"She said she hoped that telling her story "will empower women to come forward and not feel bad. . . ."

Comment:

Plaintiff Carroll continues to benefit from positive news coverage which includes MSNBC TV interviews.

    e.    Atlantic Magazine: The Defiant Humanity of E. Jean Carroll

**This May 10, 2023, article is another supportive article which highlights the E. Jean Carroll brand:**

https://www.theatlantic.com/culture/archive/2023/05/e-jean-carroll-trial-donald-trump-sexual-abuse/674008/

Comment:

Carroll continues to achieve news coverage and this Atlantic Magazine article is an indication of how her positive brand is not in need of a reputational repair campaign.

    f.    MSNBC interview with Rachel Maddow

**MSNBC, 05/15/23 live interview with Plaintiff Carroll, supportive earned news media**:

https://www.msnbc.com/rachel-maddow/watch/carroll-thrilled-to-finally-hold-trump-to-account-for-his-lies-174467141720

Comment:

This is another positive live television program where Carroll is increasing her personal brand and receiving free media coverage. Despite expert witness Humphreys' claim of need for reputational repair, the Plaintiff is receiving the highest level of exposure with earned media.

---

[2] https://www.npr.org/2019/11/04/776050542/columnist-who-accused-trump-of-sexual-assault-is-suing-him-for-defamation
[3] https://www.youtube.com/watch?v=nbWlXIbZKTc

7. <u>Pew Research Center: Three-quarters of Americans Prefer Watching TV News</u>

**The December 2018 Pew Report has the following headlines:**

<u>Americans Still Prefer Watching to Reading the News – and Mostly Still Through Television</u>

<u>Three-quarters of Americans prefer watching the news opt for TV</u>

The Pew Research Center report includes:

"Americans continue to prefer watching the news rather than reading or listening to it, and their viewing loyalties have yet to migrate fully to the web. Instead, the majority of U.S. adults who prefer to watch the news opt for television as their primary news platform…"[4]

Comment:

Humphreys' supplemental report, and her corresponding damages model, is not accurate due to the lack of methodology with earned media including supporting television news coverage. Her summary of opinions focuses on social media impressions without explaining the difference between a social media post and the most powerful media medium in the year of 2019 – television. Humphreys has not differentiated the impacts with more believable recognized television information from reporters compared to social media posts.

8. <u>Carroll active with 283,600 Twitter/X followers, personal website media</u>

Carroll has built her person brand to achieve 283,600 Twitter/X followers. Plaintiff has benefited due to positive media reports which have resulted in a ten-fold increase of 260,000 followers from the date of June 26, 2019, when she had a much smaller number of 23,600 followers.

Plaintiff has advanced her personal brand, and her website is an example of utilizing newspaper reports to promote her advocacy efforts:

www.ejeancarroll.com

At the top of her website, she highlights various *New York Times* articles with her lawsuit against Defendant:

"The Trump lawsuit explained in 12 New York Times headlines, one Rachel Maddow show …"

Comment:

Carroll has benefited from positive news coverage received on multiple media outlets, including reports during June 2019. This coverage also results in online posts and outstanding search engine optimization (SEO.)

9. <u>Carroll Continues to Monetize Her Brand</u>
   **Earnings from Substack with paid subscriptions**

Carroll is the recipient of paid subscriptions for content with annual subscriptions of $120.00 along with

---

[4] Pew Research link: https://www.pewresearch.org/journalism/2018/12/03/americans-still-prefer-watching-to-reading-the-news-and-mostly-still-through-television/

monthly paid offerings:
https://ejeancarroll.substack.com/

Comment:

Plaintiff's established media presence is the reason why a reputational repair effort is not necessary, especially since Humphreys' mention of such a plan would be taking place more than four (4) years after media first appeared.

10. The Supplemental Report Does Not Properly Account for the Withdrawal of the June 24 Statement

The data provided by Humphreys in both of her reports asserts allegations of reputation harm to Carroll by Defendant following *The New Yorker* magazine article on her book excerpts. In her initial report, her qualitative impact assessment includes Google search data, from which Humphreys draws the conclusion that there was a "clear spike" in search volume, on June 24, 2019. Her qualitative impact analysis remains completely unchanged in her Supplemental Report, despite the fact that the case is now exclusively focused on the harm caused by the June 21 and 22 statements, which are grouped in the same initial "spike" as Carroll's accusation on June 21.

In addition, since the initial expert report by Humphreys has grouped all three statements, and now Defendant's statement dated June 24, 2019, has been excluded, Humphreys needed to provide analysis pertaining to that change and how it impacts the overall damages calculation in her quantitative analysis. But she fails to do so, stating only that she removed the media sources that 'exclusively' reference the June 24 Statement, and kept them in even if they contain the slightest reference to the June 21 or 22 statements. This is not an accurate means of measuring the harm attributable to the June 21 or June 22 statements. For articles that are largely focused on the June 24 statements, readers will be primarily focused on those statements, not the references to the earlier June 21 or June 22 statement. In her own original report, Humphreys acknowledged that the June 24, 2019, statement was the most viewed and describes a "clear spike" in search volume surrounding that statement.

Consequently, Humphreys' supplemental report should significantly decrease her damages estimate, however, she includes 13 of 19 posts from her original report which are almost exclusively focused on Defendant's statement on June 24, 2019. By including these articles in her model, her overall damages calculations are not accurate.

It should be noted that Humphreys' statement about traditional news media in 2019 is also not accurate:

> *"Secondly, trust in media has declined across the ideological spectrum. Whereas legitimate sources of news once went unquestioned, assessing trust of the source is now a primary concern of users when assessing claims ..."*
> (Pages 22-23, Ci)

As I've shared from the Pew Research report published in December 2018, nothing could be further from the truth. During the summer of 2019, television viewership was still preferred by three-quarters of Americans for receiving their news.

Another seriously flawed opinion by Humphreys is the cost of her reputation budget:

> *"The cost to counteract the impact of these Statements is between $3,333,058.72 and $20,998,86. I believe the minimum corrective campaign to repair reputational damage would be the middle range, from $9,999,171.61 to $12,599,316.71."*
>
> (Page 72, Damage Model Conclusion)

The media momentum enjoyed by Carroll continues during 2023 and it does not make sense to spend media or advertising dollars towards a reputation repair program considering it has been more than four years from the media in question.

## **CONCLUSION**

Although Humphreys is a respected university professor, she has provided data typically associated with paid advertising for marketing campaigns, which has resulted in a flawed methodology for media and reputational harm. The most relevant public information in this case requires an understanding of media impacts which include both perceived negative posts in addition to supportive media with positive impacts which took place in the summer of 2019.

It is my opinion that when Humphreys grouped all three statements together and then failed to adequately account for the removal of the June 24, 2019, statement from her damages model which is a blatant error and resulted in a overinflated damages calculation. This error does not provide a proper valuation with her "Damages Model."

Contrary to claims by Humphreys of a need for a reputation repair program, based on Carroll's current advances as an author and advice expert, the best method of amplifying her messages and public platform would be through mainstream media, including television and newspapers, of which there is no cost to share her insights.

Humphreys has provided, by all appearances, a paid valuation of primarily social media associated with Trump. However, by not differentiating this significant activity with percentages of perceived negative vs. supportive reports, Humphreys' report is not accurate. Humphreys does not provide data associated with typical public relations and media reporting.

I reserve the right to supplement, update or amend my opinions as additional information and documents become available or are brought to my attention.

_____  
Charles Malkus

_12/13/23_  
December 13, 2023

Enclosure: *Curriculum Vitae*

# CHARLES MALKUS

Miami / Fort Lauderdale
chuckmalkus@gmail.com

## COMMUNICATIONS & REPUTATION PROFESSIONAL

Senior level leader who provides expertise for public relations and reputation campaigns. Background in journalism includes as an author for books with publishers Skyhorse and Pelican. Serve as a board of director for non-profit organizations and building communities.

## AREAS OF EXPERTISE

Public Relations | Reputation | Keynote Speaker | Strategy

## PROFESSIONAL EXPERIENCE

**Malkus Communications Group, President**                         **10/1998 - present**

Created this agency specializing in communications and reputation building. Specialties include brand redevelopment and serving as a leadership trainer.

- Lead cross-functional senior leadership teams and deliver effective strategy to achieve long-term goals.
- Handle reputational harm matters for high profile leaders including a respected sports coach, popular musician, and renowned financial investor.
- Serve as a reputation management executive including providing keynotes relating to protecting the interests of organizations and individuals.
- Deliver crisis counsel when the unexpected happens with timely continuity.
- Provide social media content and blog content to achieve initiatives for multi-generational audiences with messaging.
- Build relationships with corporate clients including industries of real estate, tourism, and hospitality.
- Develop branding strategies for organizations and brand refresh efforts towards for multiple industries.
- Launched the non-profit organization Neighbors 4 Neighbors (501c3) as volunteer co-chairman and achieved fund raising for national and international disaster efforts.
- Provide non-profit work and volunteerism for organizations including Women In Distress, the National Association of Colored People (NAACP) and Goodwill Industries.

**Florida Atlantic University**                                    **12//2022 – present**
**Adjunct Professor**

Instructor for a course, Leadership and Communication, providing examples of leadership practices.

- Deliver implementation of leadership skills after communication analyzation and practices.
- Provide leadership ethical responsibilities and how to avoid reputational harm.
- Students gain leadership communication principles and analyze personal styles.
- Student learning includes classroom group interactions and course projects.

**First Horizon Bank**                                                                                      03/2019 – 11/2020
**Business Communications Partner**

Retained for transition leader role by First Horizon (NYSE: FHN) following acquisition of Capital Bank. Engaged for second acquisition of Iberia Bank which resulted in becoming a $85 billion asset bank.

- Served on senior leadership team that executed communications and national news coverage that resulted in First Horizon becoming a Top 25 bank in the country based on deposits.
- Speech writing for senior bank leaders and author of executive internal communications.
- Delivered communications campaigns that included recognitions as a best employer by *Fortune Magazine*. Another honor as a Top 10 Most Reputable Bank by American Banker.
- National news media stories include *CNBC; Associated Press; Bloomberg; Fox Business & WSJ.*
- Developed communications campaigns with *Business Journal* publications.
- Provided leadership with efforts which included landing on the *Forbes* "JUST 100" list.
- Led community efforts including Covid-19 Relief with Baptist Health Florida and Super Bowl Breakfast Awards event.

**Starmark International**                                                                                  08/2013 – 11/2017
**Chief Strategy Officer**

Retained to develop enhanced public relations and leadership for this advertising agency. Responsibilities included increasing brand awareness and business development to achieve new clients in healthcare, marine and real estate industries.

- Moderated a panel for South Florida Hospital & Healthcare Association's annual meeting.
- Created news media placements and marketing programs for the Marine Industries Association of South Florida. Provided community relations and growth strategies for the organization that owns the International Boat Show.
- Delivered communications strategies for the new luxury Auberge Residences on Fort Lauderdale beach for Fairwinds Group.

**Board of Director Positions Include:**

| | |
|---|---|
| 1992 – 1996 | American Red Cross |
| 1992 – 2017 | Neighbors 4 Neighbors (Founding Co-Chairman) |
| 1992 – 2005 | Winterfest |
| 2001 – 2008 | Junior Achievement of South Florida |
| 2002 – 2006 | Greater Fort Lauderdale Alliance |
| 2005 – 2010 | Marcum Rachlin Foundation |
| 2007 – 2010 | City of Fort Lauderdale Beach Redevelopment, Mayoral Appointment |
| 2008 – 2011 | Greater Fort Lauderdale Alliance |
| 2009 – 2010 | BusinessF1RST Advisory Board, City of Fort Lauderdale |
| 2016 – 2017 | Nova Southeastern University, Library, Research & IT Center |
| 2017 – 2018 | American Red Cross (additional term) |
| 2020 – 2021 | Florida Speakers Association |
| 2022 – present | *Florida Bulldog* online news publication |

**Additional Professional Memberships Include:**

American Society of Journalists and Authors (ASJA)
Public Relations Society of America (PRSA)
National Speakers Association (NSA)
Film Florida

**Book Publications:**

- *Getting There: Profiles in Overcoming Obstacles* (Belgian Shepherd), Author, 2019
- *Full Circle: The Remarkable True Story* (Skyhorse), Author, 2018
- *Keep Your Promise* (Belgian Shepherd), Co-Author, 2015
- *Fresh Start Moments* (Danzig), Chapter Contributor, 2015
- *The Ultimate Ponzi: The Scott Rothstein Story* (Pelican), Author, 2013

**Network TV Work:**

- 2021. *Heist* (Television Series): Netflix, Executive Producer
- 2017. Guilty Rich (TV documentary): Investigation Discovery, from authored book
- 2011. *American Greed* (TV documentary): CNBC, from authored book

**Keynotes & Presentations Include:**

2022 – Kansas Government Finance Officers Association (KSGFOA)
2022 – American Society of Journalists & Authors (ASJA)
2021 – Seattle Film Festival
2018 – South Florida Hospital & Healthcare Association (SFHSA)
2017 – Society of Government Meeting Professionals (SGMP)
2014 – Miami-Dade Commission on Ethics at St. Thomas University
2014 – National Intramural & Recreational Sports Association (NIRSA)
2013 – Palm Beach Ethics Commission with Palm Beach State College
2004 – Association of Eminent Domain Professionals

**Newspaper & Magazine Personal Interviews Include:**

- Forbes Magazine, interviewed as subject matter expert, 2023.
- The Guardian, interviewed as subject matter expert, 2022.
- The Street Magazine. interviewed as subject matter expert. 2014.
- Tampa Bay Times, interviewed as subject matter expert, 2013.
- Wall Street Journal, interviewed as book author, 2013.
- Forbes Magazine, interviewed as book author, 2013.
- Daily Business Review, interviewed as book author, 2013.
- Miami Herald, interviewed as book author, 2013.
- South Florida Business Journal, interviewed as book author, 2013.
- Associated Press, Haiti earthquake relief efforts as charity volunteer, 2010.
- Newsday, Haiti earthquake relief efforts as charity volunteer, 2010.
- NBC News.com, Haiti earthquake relief efforts as charity volunteer, 2010.

**Awards & Honors Include:**

2020 – First Horizon Bank team leadership recognition
2017 – Neighbors 4 Neighbors Award, Longest Serving Founding Board Member
2008 – United States Navy Recognition, Volunteer Leadership for Navy Days
2006 – CBS 4 Recognition, Rock for Relief, Hurricane Katrina charity
1993 – National Junior Chamber of Commerce award, Program of the Year


**Education:**

University of Kentucky, Bachelor of Arts and Sciences Degree
Scripps Howard Journalism Scholarship recipient
UK Athletics Media Relations Student Assistant for five years