KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL    scrowley@kaplanhecker.com

December 15, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   *Carroll v. Trump*, No. 20 Civ. 07311 (LAK)

Dear Judge Kaplan:

We write on behalf of Plaintiff E. Jean Carroll in response to Defendant Donald J. Trump's letter motion dated December 13. *See* ECF 237. To date in this case and in *Carroll II*, No. 22 Civ. 10016, there have been no fewer than four disputed motions over expert testimony regarding the damages caused by Trump's defamation. Trump lost each one. *See* ECF 217 (disqualifying Trump's expert); ECF 232 (denying Trump's request to substitute new expert); *Carroll II*, ECF 95 (disqualifying Trump's expert); *Carroll II*, ECF 212 (denying Trump's Rule 59 motion claiming that Professor Ashlee Humphreys' testimony was speculative and deficient).

Trump now tries yet again—this time, arguing that the Court should strike the expert reports of Professor Humphreys or, alternatively, permit him to submit another rebuttal report. In doing so, Trump seizes on a single sentence in the Court's recent order denying Trump's motion to substitute a new expert, where the Court suggested that circumstances might be different if Professor Humphreys' supplemental report unexpectedly departed from the methodology that she had originally used. ECF 232 at 16. But the methodology used is exactly the same, and Trump's effort to pretend otherwise rests on a grossly inaccurate account of Professor Humphreys' analysis.

Trump is understandably desperate to get rid of Professor Humphreys. Following the *Carroll II* verdict, the only issue at the upcoming trial is the amount of damages that Carroll is entitled to receive. Professor Humphreys will be critical to Carroll's case, and Trump's own expert has already been disqualified. That Professor Humphreys recently testified in another case that resulted in a $108 million defamation verdict likely adds to Trump's sense of urgency. *Freeman v. Giuliani*, No. 21 Civ. 3354 (D.D.C.). But Trump's desperation exists in inverse proportion to the merits of his arguments. For all the reasons below, Trump's latest motion should be denied.[1]

---

[1] Because Trump docketed his motion as a "Letter Motion for Discovery," we are submitting this brief opposition within the timetable and page limits that Your Honor's Individual Rules prescribe for discovery motions. Should the

KAPLAN HECKER & FINK LLP

2

\* \* \*

After Carroll decided not to pursue her defamation claim over Trump's June 24, 2019 statement, Carroll agreed to provide Trump a supplemental expert report—"at Mr. Trump's request and [] for his own benefit"—and to make Professor Humphreys available for an additional deposition relating to the supplemental report. ECF 232 at 15. Before even receiving Professor Humphreys' supplemental report, Trump filed a motion to "substitute" a new rebuttal expert in place of his original expert, who had been precluded from testifying. ECF 221.

On November 16, the Court denied Trump's request, holding that a "supplemental expert report is not an automatic invitation for a second bite at a rebuttal expert report." ECF 232 at 16. In response to Trump's "speculat[ion] that Professor Humphreys' supplemental report will contain some unspecified new methodology or analysis," the Court was clear: "If that occurs, Mr. Trump may renew his request to submit a rebuttal report limited to rebutting any such new methodology or analysis. Any such request must demonstrate precisely how Professor Humphreys' analysis or mythology in the supplemental report is different from her original report." *Id.*

By the time the Court issued its order, Trump had already received Professor Humphreys' supplemental report, which should have left no doubt that the methodology and analysis she used to calculate damages in the supplemental report was exactly the same as that which she used in her initial report. In the supplemental report, Professor Humphreys simply removed Trump's June 24 statement from the original damages calculation, thereby reducing the cost of the proposed reputational repair program from approximately $3.3–21 million to $2.1–12.1 million. ECF 237-1 at 6. Professor Humphreys confirmed that she did not change her methodology or analysis in arriving at those revised figures. *Id.* at 3–5; *see also* ECF 237-2 at 11, 22, 29, 51, 56 (repeatedly confirming this point during deposition). Instead, she based her calculations on news coverage that referred to Trump's June 21 and 22 statements, removing from her analysis news coverage that referred only to Trump's June 24 statements or contained a general statement of denial. ECF 237-1 at 2. As the Court anticipated, the supplemental report amounts to "a mere subtraction of the data and assessments associated with the June 24 statement" and nothing more. ECF 232 at 15.

Trump's quest to bring in a new expert should have ended once he received the supplemental report. But now, more than a month later, Trump has moved to "strike" Professor Humphreys' testimony—or to strike her supplemental report, or original report, or both—or to permit his new expert, Charles Malkus, to testify. Trump's motion fails under the Court's prior order in at least three distinct ways.

***First***, Trump fails to identify any "new methodology or analysis" in the supplemental report. *Id.* at 16. All of his arguments rest on a clear misunderstanding—or an intentional mischaracterization—of Professor Humphreys' report and deposition testimony.

For example, Trump relies heavily on the fact that the supplemental report did not address or update Professor Humphreys' "qualitative impact assessment," *see* ECF 237 at 3–4, 7–8, 11–12, and argues that this "demonstrates the unreliability of her testimony," *id.* at 3. But the qualitative impact assessment in the original report was simply a broad survey of the negative

---

Court be inclined to grant Trump's requested relief, or should the Court want additional briefing, Carroll respectfully requests an opportunity to submit full briefing, as would be appropriate given the nature of Trump's application.

KAPLAN HECKER & FINK LLP

3

commentary and attention associated with Carroll following Trump's statements in June 2019. *See* ECF 135-8 at 41–58. It served to assess whether "Carroll's person brand has been harmed by Mr. Trump's Statements" and the "tenor and nature" of that harm. *Id.* at 58. But because the qualitative analysis does not affect the actual damages calculation—the focus of the supplemental report—it did not require amendment or supplementation. *See* ECF 232 at 6 (noting that Carroll agreed to "submit a brief supplemental expert report … recalculating damages"). This makes sense: defaming Carroll three times might cause her more harm than defaming her twice (the quantitative analysis), but the general nature of the harm that comes from being accused of fabricating a sexual assault (the qualitative analysis) would be exactly the same.

Trump also purports to take issue with the articles that Professor Humphreys removed from her original analysis, alleging that the criteria she used to select the articles came from Carroll's counsel. *See* ECF 237 at 5–7. Any fair interpretation of her report and deposition reveals the flimsiness of that claim. The report contains an uncontroversial description of her assignment, ECF 237-1 at 1–2, and Professor Humphreys confirmed at her deposition that "[c]ounsel asked that I redo the analysis for statements one and two" (*i.e.*, Trump's June 21 and 22 statements), ECF 237-2 at 47. As detailed in her supplemental report, that's exactly what she did.

***Second***, Trump's motion wades into a series of topics having nothing to do with changes in the methodology that Professor Humphreys used in her supplemental report.

Trump attempts to argue, for example, that Professor Humphreys' *original* report was somehow flawed because it attributed damages to the June 24 statement. ECF 237 at 8–9, 11. Yet in advancing that argument, he ignores the analysis in the original report itself and cherry-picks certain portions of Professor Humphreys' recent deposition in an attempt to try to generate confusion. But the deposition transcript makes clear that the parties were focused on Trump's June 24 claim that Carroll was "not [his] type" and whether that particular comment affected the qualitative analysis. *See* ECF 237-2 at 58–63. Trump's "not my type" claim, of course, could not be the basis for Carroll's damages because Carroll has never argued that comments about her appearance were defamatory. In any event, whatever flaw Trump is trying to gin up with respect to the damages previously attributable to the June 24 statement is now a moot point, as that statement no longer is the basis for Carroll's claim for compensatory damages.

Trump also dedicates significant space to a comparison of Professor Humphreys' supplemental report to her report in *Carroll II*, arguing that the former "contradict[s] the methodology she previously employed in" the latter. ECF 237 at 7. That not only is inaccurate, but misses the point. The question is whether Professor Humphreys' "methodology for selecting which articles to use for [her] impressions model [was] the same for [her] supplemental report and [her] original report in this case." ECF 237-2 at 56. The answer is a definitive "[y]es." *Id.*

***Third***, the proposed rebuttal report from Malkus itself is not "limited to rebutting any such new methodology or analysis." ECF 232 at 16; *see* ECF 237-3 at 5 (summary of opinions). Quite the opposite—each of Malkus' opinions go to Professor Humphreys' original methodology, which has remained unchanged.

Malkus, as an example, states that Professor Humphreys' supplemental report does "not include a percentage breakdown between perceived negative news coverage and supportive

KAPLAN HECKER & FINK LLP

4

media," ECF 237-3 at 5, but neither did her original report. Malkus similarly faults Professor Humphreys for not "includ[ing] an analysis of supportive media." *Id.* Again, this is not new. In fact, Trump already litigated this supposed deficiency in *Carroll II*, and the Court held that Professor Humphreys' decision not to analyze positive media did not result in a speculative damages calculation. *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 4612082, at *24 (S.D.N.Y. July 19, 2023). Finally, Malkus claims that Professor Humphreys failed to analyze the "real-world impact" of media coverage on Carroll's career, including Carroll's Substack "income streams." ECF 237-3 at 5. But Professor Humphreys never set out to calculate special damages, and both of her reports are focused on calculating the cost of a reputation repair campaign to remedy the harm caused by Trump's defamatory statements.

The eerie similarities between Malkus' report and the report from the now-excluded Robert Fisher underscore how Trump is attempting another bite at the expert apple. Malkus and Fisher make near-verbatim criticisms of Dr. Humphreys' qualifications, despite this Court's holding that "views of Dr. Humphreys's qualifications [] are not proper subjects of expert testimony." *Carroll v. Trump*, No. 22 Civ. 10016, 2023 WL 2652636, at *2 (S.D.N.Y. Mar. 27, 2023); *compare* ECF 135-9 at 2, 9, *with* ECF 237-3 at 4. Both Malkus and Fisher proceed on the demonstrably false assumption that Professor Humphreys' reputational repair program is dominated by social media, ignoring that the majority of her target impressions are for media types other than social media or internet sources. *Compare* ECF 135-9 at 9, *with* ECF 237-3 at 7, 9; *see also* ECF 134 at 19–20; ECF 135-8, Appx. K. And both of them isolate and quote the same two sentences from Professor Humphreys' 140-page *original* report relating to distrust in traditional media. *Compare* ECF 135-9 at 10, *with* ECF 237-3 at 8. Throughout his report, Malkus exhibits the exact sort of *ipse-dixit* reasoning that warranted Fisher's exclusion. *Carroll*, 2023 WL 2652636, at *4; *see, e.g.*, ECF 237-3 at 6–9 ("Carroll continues to benefit from positive news coverage"; "her positive brand is not in need of a reputational repair campaign"; "Plaintiff is receiving the highest level of exposure with earned media"; "it does not make sense to spend media or advertising dollars towards a reputation repair program considering it has been more than four years from the media in question").

In denying his first request for a new rebuttal expert, the Court found that granting Trump's application would unduly prejudice Carroll. ECF 232 at 10–12. This is even truer now, one month later and 32 days from trial. Carroll would be forced to prepare for and take a deposition of Malkus, and the parties would then have to brief Carroll's inevitable motion to preclude him from testifying. Such additional motion practice would further burden the Court, which is already being forced to re-rule on evidentiary disputes it previously decided.

\*    \*    \*

Trump has repeatedly forced Carroll to respond to meritless motions. In the lead-up to the *Carroll II* trial, Trump made three separate adjournment requests in a one-week period, *see Carroll II*, ECF 106, 108, 111. With trial in this action rapidly approaching,[2] he seems to be pursuing a similar strategy. Trump's latest motion should be denied.

---

[2] Indeed, here, preparing for trial is made even harder by the fact that Trump insists on relitigating evidentiary issues that *Carroll II* should have settled and yet still remain pending. *See* ECF 233, 235.

KAPLAN HECKER & FINK LLP

5

                                                   Respectfully submitted,

                                                   Shawn Crowley

cc:    Counsel of Record (via ECF)