# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
       - - - - - - - - - - - - - - - x
 3     RUBY FREEMAN, et al.,
                                         Civil Action No. 21-3354
 4                  Plaintiffs,          Monday, December 11, 2023
       vs.                               1:35 p.m.
 5
       RUDY GIULIANI,
 6
                    Defendant.
 7     - - - - - - - - - - - - - - - x

 8     _____

 9          TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
             HELD BEFORE THE HONORABLE BERYL A. HOWELL
10                  UNITED STATES DISTRICT JUDGE

11     _____

12     APPEARANCES:

13     FOR PLAINTIFFS:     MICHAEL GOTTLIEB, ESQ.
                           MERYL CONANT GOVERNSKI, ESQ.
                           ANNIE HOUGHTON-LARSEN, ESQ.
14                         WILLKIE FARR & GALLAGHER LLP
                           1875 K Street, Suite 100
15                         Washington, DC 20006
                           (202) 303-1016
16                         Email: mgovernski@willkie.com

17                         VON A. DuBOSE, ESQ.
                           DUBOSE MILLER
18                         75 14th Street NE
                           Atlanta, GA 30309
19                         (404) 720-8111
                           Email:  miller@dubosemiller.com
20
                           JOHN LANGFORD, ESQ.
21                         PROTECT DEMOCRACY
                           555 W. 5th Street
22                         Los Angeles, CA 90013
                           (919) 619-9819
23                         Email: john.langford@protectdemocracy.org

24
       (Continued on Next Page)
25
```

1              P R O C E E D I N G S

2           THE COURT:  All right.  Ladies and gentlemen, I

3    hope you've had a pleasant lunch, but now that you've been

4    selected and sworn, I'm going to give you some preliminary

5    instructions that will guide you as to how this trial will

6    work and about some of the legal rules that are important in

7    the trial.

8              These remarks are not a substitute for the

9    instructions I will give you at the end of the trial before

10   you start your deliberations.  These are preliminary

11   instructions, and they're just intended to give you a sense

12   for what's going to be going on in the courtroom and what

13   your responsibilities as jurors will be.

14             Now, you each found on your chairs when you came

15   back a notebook with a pen inside a plastic bag.  That's

16   because I permit jurors to take notes during trial, if they

17   want to, and to have their notes with them during

18   deliberations.

19             None of you is required to take notes.  Indeed,

20   you should not take notes if you think that note-taking

21   might distract you from listening to the evidence and

22   watching the depositions or distract your attention in any

23   way from looking at the witnesses.

24             On the other hand, if you think that taking notes

25   might better focus your attention on the witnesses and the

1    evidence or might better help you to remember what went on

2    during the trial, you should feel free to take notes.

3            I leave the decision of whether or not to take

4    notes up to each juror individually because it's my

5    experience that different people have different ways of most

6    effectively recalling and remembering what they've seen or

7    heard.

8            And so some of us do it better just by listening

9    and observing; some of us do it better by taking some notes.

10   If your notebook is more of a hindrance than a help during

11   the trial, just put it under your chair and forget about it.

12           You should remember that your notes are only an

13   aid to help your memory.  They are not evidence, and they

14   should not replace your own memory of the evidence.

15           Those jurors who do not take notes should rely on

16   their own memory of the evidence and should not be

17   influenced by another juror's notes.  The notes are only for

18   the note-taker's personal use in refreshing his or her

19   memory of the evidence.

20           Now, whenever there's a recess during the course

21   of the trial, just leave your notebooks and the pens in the

22   envelope on your seats.  They will be left there during

23   short recesses.  And also, when we take an overnight recess,

24   Mr. Coates will collect them and keep them in secure

25   storage.  No one, including myself, will ever look at your

1    notes.

2           You will not be able to take your notebooks home

3    with you overnight or at the end of the trial.  I'm

4    sometimes asked about that.  No, you may not.

5           At the end of the trial, after you have finished

6    your deliberations, returned to the courtroom, and delivered

7    your verdict, your notebooks will be collected and your

8    notes torn out and destroyed.  Again, neither I nor anyone

9    else will look at any notes that you have taken during the

10   course of the trial.

11          Now, there are no alternates in this case.  This

12   means that all of you are regular jurors and all of you will

13   deliberate in this matter, so it is important that all of

14   you give this case your most serious attention.

15          Now, during the trial you're going to hear me use

16   a few terms that you may not have heard before.  Let me

17   briefly explain some of the most common terms to you.

18          The party who sues is called the plaintiff.  When

19   I refer to the plaintiffs, I am talking about the plaintiffs

20   Ruby Freeman and Shaye Moss.

21          The party being sued is called the defendant.  In

22   this action, when I speak of the defendant, I am referring

23   to Rudolph Giuliani.

24          When I refer to counsel, that's just another way

25   of saying "lawyer."

1              And the plaintiffs' attorneys are Michael

2      Gottlieb, Meryl Governski, John Langford, Von DuBose, and

3      Annie Houghton-Larson.

4              And the defendant's attorney is Joseph Sibley.

5              When I sustain an objection that a lawyer has made

6      to testimony or evidence, I am excluding that evidence from

7      this trial for a good reason.  When you have heard that I

8      have overruled an objection, I am permitting that evidence

9      to be admitted and for your consideration.

10             When I say "admitted into evidence" or "received

11     into evidence," I mean that this particular statement or

12     exhibit may be considered by you in making the decisions you

13     must make at the end of the trial.

14             In the event the plaintiffs and the defendant

15     stipulate -- that is, agree to certain facts -- you should

16     consider any stipulation of fact to be undisputed evidence.

17             Now I will briefly describe or state again what

18     this case is about before discussing some of the procedures

19     we will use and some of the rules of law that will be

20     important.

21             This is a civil case.  Plaintiffs Ruby Freeman and

22     Wandrea or Shaye -- she calls herself Shaye -- Moss claim

23     that Defendant Rudolph W. Giuliani defamed them,

24     intentionally inflicted emotional distress on them, and

25     engaged in a conspiracy with others to do the same.

1          Plaintiffs served as election workers at the State

2      Farm Arena in Fulton County, Georgia, during the 2020

3      presidential election.

4          Mr. Giuliani is the former mayor of New York City,

5      an attorney who has practiced law for decades, and a current

6      media personality with his own radio shows and podcasts.

7      Mr. Giuliani headed the Trump campaign legal team during

8      former president Donald J. Trump's unsuccessful bid for re-

9      election in 2020 and was part of the campaign to undermine

10     the legitimacy of that election in battleground states like

11     Georgia.

12         Mr. Giuliani publicly and falsely accused

13     plaintiffs of committing various acts of election fraud,

14     including illegally excluding poll watchers under false

15     pretenses, sneaking in and hiding illegal ballots in

16     suitcases under tables, illegally counting ballots multiple

17     times, and passing a USB drive with the intent of changing

18     the vote count in the voting tabulation devices.

19         Ms. Freeman and Ms. Moss allege that

20     Mr. Giuliani's actions have caused them to suffer and

21     continue to suffer extensive emotional and reputational

22     harm, including because Mr. Giuliani's actions made them

23     targets for profane and vile threats.

24         The Court has already determined that Mr. Giuliani

25     is liable for defamation per se, intentional infliction of

1    emotional distress, and civil conspiracy, and that

2    Ms. Freeman and Ms. Moss are entitled to receive

3    compensation, including in the form of punitive damages, for

4    Mr. Giuliani's willful conduct.

5          The only issue remaining in this trial is for

6    the jury, you all, to determine any amount of damages

7    Mr. Giuliani owes to plaintiffs for the damage caused by his

8    conduct.

9          This is a somewhat unusual case because, unlike

10   many other jury trials, in this case certain matters have

11   already been decided.  I'm going to explain what has already

12   been decided in this case and what you, the jury, will have

13   to decide.

14         You are not being asked to and you must not

15   reconsider any of the issues that have already been decided

16   in this case.  Before I give you instructions about what has

17   been decided, I will tell you the reason.

18         In a federal civil action like this case, parties

19   are entitled to the disclosure of all relevant, non-

20   privileged evidence in the other party's possession or

21   control during a process called discovery.  That evidence

22   can include relevant documents and electronically stored

23   information such as defendant's computer files, emails, text

24   messages, online chats, social media accounts, and call

25   logs.

1          Since each party is entitled to obtain the other

2     side's records, all parties to a lawsuit must preserve their

3     records.  The federal rules require parties to preserve and

4     produce the records so that there will be a level playing

5     field when plaintiffs try to prove their claims and

6     defendants try to prove any defenses to those claims.

7          In this case, the Court found that Mr. Giuliani

8     willfully refused to comply with his discovery obligations,

9     including by failing to preserve all relevant records and

10    failing to provide plaintiffs with all relevant records.

11    Those records include relevant communications and documents

12    whether stored in a filing cabinet or on a computer or

13    phone.

14          The Court also found that Mr. Giuliani's willful

15    refusal to comply with his discovery obligations caused the

16    plaintiffs prejudice, which means that it harmed their

17    ability to prove their claims.

18          To address the unfairness to the plaintiffs caused

19    by Mr. Giuliani's misconduct in complying with the rules for

20    fair discovery in a federal civil action, the Court has

21    issued certain orders that Mr. Giuliani is liable to

22    plaintiffs on their three claims against him without the

23    plaintiffs having to produce any more evidence than they

24    already have given his failure to produce relevant records.

25          Also under these orders certain facts must be

1    assumed in this case.  As I will explain again at the end of

2    the trial, this means that you will be required to assume

3    certain facts in calculating the amount, if any, of awards

4    of compensatory and punitive damages.

5         I will first explain plaintiffs' three claims for

6    which Mr. Giuliani is liable and then instruct you on the

7    facts that must be assumed in this case as you make your

8    determination of any damages owed by Mr. Giuliani to

9    plaintiffs.

10        It has already been established in this case that

11   Mr. Giuliani is liable to plaintiffs for defamation,

12   intentional infliction of emotional distress, and civil

13   conspiracy.  It has also been decided that Mr. Giuliani's

14   conduct was willful, and that, as a result, plaintiffs are

15   also entitled to punitive damages.

16        I will explain what each of those terms means in a

17   moment.  For now, I want to emphasize that you are not being

18   asked to and must not reconsider any of these matters;

19   instead, your only role is to determine any amount of money

20   damages that Mr. Giuliani owes to plaintiffs in the form of

21   compensatory and punitive damages.  In making that

22   determination, you must decide the issues presented to you

23   based on the instructions you receive now and at the end of

24   the case based on the evidence that you have heard and the

25   instructions you have received.

1    So that you understand what has already been

2    decided, I will now describe the elements of each of

3    plaintiffs' claims.  The elements describe the necessary

4    conditions for a legally valid claim.  These are the

5    elements of each of plaintiffs' three claims that have

6    already been decided.

7    It already has been decided that Mr. Giuliani is

8    liable to plaintiffs for defamation.  That means that you

9    must accept, for purposes of this trial, that Mr. Giuliani

10   defamed Ms. Freeman and Ms. Moss by publishing certain false

11   and defamatory statements about them, that Mr. Giuliani

12   published these statements with actual malice, that

13   Mr. Giuliani had no legal right to do so, and that these

14   defamatory statements caused harm to Ms. Freeman and

15   Ms. Moss.  These statements are what you will hear referred

16   to today as the actionable statements.

17   The conclusion that Mr. Giuliani published his

18   statements about Ms. Freeman and Ms. Moss means that he

19   personally communicated statements about Ms. Freeman and

20   Ms. Moss to third parties or that he caused other people to

21   communicate the actionable statements to third parties.  The

22   conclusion of the actionable statements were false means

23   that they were not true.

24   In this case the Court has already decided that

25   the actionable statements were defamatory.  A defamatory

1   statement is one that would tend to injure plaintiffs in

2   their trade, profession, or community standing or lower them

3   in the estimation of the community.  In particular, the

4   Court has concluded that the actionable statements falsely

5   accused Ms. Freeman and Ms. Moss of committing crimes.  This

6   is a serious type of defamation known as defamation per se.

7        When a defendant commits defamation per se, the

8   defendants need not prove that they were actually injured by

9   the statements; instead, the law presumes that plaintiffs

10  were injured.  In this case you may presume that the

11  actionable statements injured Ms. Freeman and Ms. Moss in

12  their trade, profession, and community standing, and lowered

13  them in the estimation of the community.

14       The conclusion that Mr. Giuliani made the

15  actionable statements without privilege to a third party

16  means that he did not have a separate legal right to make

17  them.

18       The conclusion that Mr. Giuliani published the

19  actionable statements with actual malice means that

20  Mr. Giuliani knew his statements about Ms. Freeman and

21  Ms. Moss were false, or he recklessly disregarded whether

22  they were true at the time that he published those

23  statements.  In other words, the Court has found that

24  Mr. Giuliani acted at least with a high degree of awareness

25  that the statements were probably false.

14

1          The Court's finding that Mr. Giuliani caused harm

2     to Ms. Freeman and Ms. Moss means that they suffered harm as

3     a result of the defamation.

4          The Court has also found Mr. Giuliani liable for

5     intentional infliction of emotional distress.  That means

6     that you are to accept, for purposes of this trial, that

7     Mr. Giuliani intentionally inflicted emotional distress on

8     plaintiffs by engaging in extreme and outrageous conduct

9     that intentionally or recklessly caused Ms. Freeman and

10    Ms. Moss to suffer severe emotional distress.

11         The Court has also found that Mr. Giuliani engaged

12    in a civil conspiracy to commit the torts of defamation and

13    intentional infliction of emotional distress on or before

14    December 3, 2020, with Donald J. Trump, the Trump 2020

15    presidential campaign's legal team headed by Mr. Giuliani,

16    the One America News network -- called for short OAN -- OAN

17    reporters, and others.  That means that Mr. Giuliani agreed

18    with his co-conspirators to commit defamation and

19    intentional infliction of emotional distress and took

20    certain acts in furtherance of that agreement.

21         As a result of this finding, Mr. Giuliani is

22    liable in this case not just for the harm caused by his own

23    actions, but also for the harm caused by the actions that

24    his co-conspirators took in furtherance of the same

25    conspiracy.

1           Now, to address the unfairness to the plaintiffs

2   caused by Mr. Giuliani's willful failure to comply with his

3   discovery obligations, the Court has issued certain orders

4   about what facts must be assumed in this case, including

5   about damages.  And I will explain this again at the end of

6   the trial in final instructions that you will have in

7   writing, so if you don't want to try and jot all this down,

8   just listen carefully.

9           You will be required to assume certain facts in

10  calculating any awards of compensatory and punitive damages.

11          You must assume that Mr. Giuliani received

12  substantial financial benefits from his defamation of

13  Ms. Freeman and Ms. Moss.

14          You must assume that Mr. Giuliani was

15  intentionally trying to hide evidence about his financial

16  assets for the purpose of artificially deflating his net

17  worth.

18          You must assume that Mr. Giuliani was

19  intentionally trying to hide evidence about the viewership

20  of his video podcast and his social media reach for the

21  purpose of artificially deflating the reach of his

22  defamatory statements.

23          You must assume that Mr. Giuliani was

24  intentionally trying to hide evidence about the finances of

25  his businesses, Giuliani Communications LLC and Giuliani

1    Partners LLC, for the purpose of shielding his assets from

2    discovery and artificially deflating his net worth.

3         And you must assume Mr. Giuliani's businesses,

4    Giuliani Communications LLC and Giuliani Partners LLC,

5    continue to generate advertising revenue and other income

6    from their operations.

7         Now, as I have explained, your duty in this case

8    is limited to determining any amount of money damages to

9    award plaintiffs.  The amount of money awarded to a party in

10   a civil suit like this one is called damages.  The Court has

11   already determined that plaintiffs are entitled to an award

12   of two forms of damages, compensatory and punitive.

13        Compensatory damages are the amount of money that

14   will fairly and reasonably compensate plaintiffs for the

15   harm they have suffered.  As I will explain in greater

16   detail, in this case that harm is not limited to physical

17   and economic harm, but also may include things like

18   reputational harm, emotional harm, and mental harm.

19        Punitive damages are damages awarded to a

20   plaintiff above and beyond the amount of compensatory

21   damages.  Punitive damages are not intended to compensate a

22   plaintiff for the harm that the plaintiff has suffered.

23   Rather, the law permits a jury in a civil case to award a

24   plaintiff punitive damages against a defendant as a

25   punishment for outrageous conduct and to deter others from

1   engaging in similar conduct in the future.

2          I will instruct you in more detail later on the

3   legal standards for how to determine the amount of damages

4   owed.  For now I'm just going to give you some general

5   instructions.

6          As to the defamation claim, plaintiffs are

7   presumed to be harmed as a result of the defamatory

8   actionable statements, and thus they are not required to

9   present evidence of the harm they have suffered for you to

10  award damages to compensate them for that harm.  You are

11  entitled to consider any such evidence of harm, if it is

12  presented.

13         Plaintiffs' burden in presenting such evidence is

14  only to provide a reasonable basis from which you can

15  estimate the harm to the reputations from the defamatory

16  actionable statements.  While you may not engage in

17  speculation or guesswork, you are entitled to approximate

18  plaintiffs' damages based upon the evidence they present.

19         Furthermore, if you decide that the evidence does

20  not fully capture the harm that plaintiffs suffered as a

21  result of the damage to their reputations, you may award an

22  additional amount that using your good judgment and common

23  sense you decide is necessary to compensate them fully for

24  the harm caused to their reputations by the defamatory

25  actionable statements.

1          As to plaintiffs' intentional infliction of

2     emotional distress claim, plaintiffs must show by a

3     preponderance of the evidence that they suffered damages in

4     the form of emotional distress.  If you conclude that

5     plaintiffs have shown by a preponderance of the evidence

6     that plaintiffs suffered damages in the form of emotional

7     distress, plaintiffs' burden is then only to provide a

8     reasonable basis from which you can estimate their damages.

9     There is no exact standard or mathematical formula for

10    deciding the compensatory damages to be awarded for this

11    type of harm, nor is the testimony of any witness required

12    about the amount of compensation.

13          While you may not engage in speculation or

14    guesswork, you are entitled to approximate plaintiffs'

15    damages based upon the evidence they have presented.  To

16    decide the amount that would fairly and reasonably

17    compensate plaintiffs for emotional distress, you should

18    consider the facts of this case in the light of your

19    experience and common sense.

20          To establish a fact by preponderance of the

21    evidence is to prove that it is more likely so than not so.

22    In other words, a preponderance of the evidence means that

23    the evidence produces in your mind the belief that the thing

24    in question is more likely true than not true.

25          The fact that plaintiffs have filed a lawsuit

1    against Mr. Giuliani does not mean that plaintiffs' evidence

2    is entitled to greater weight than any evidence the

3    defendant may put before you.  If, after considering all of

4    the evidence, the evidence favoring the plaintiffs' side of

5    an issue is more convincing to you and causes you to believe

6    that the probability of truth favors the plaintiffs on that

7    issue, then the plaintiffs will have succeeded in carrying

8    the burden of proof on that issue.

9         The term "preponderance of the evidence" does not

10   mean that the proof must produce absolute or mathematical

11   certainty.  For example, it does not mean proof beyond a

12   reasonable doubt as is required in criminal cases.  For

13   those of you who have sat as a juror in a criminal case, you

14   will have heard of proof beyond a reasonable doubt.  That

15   requirement does not apply in a civil case; and, therefore,

16   you should put it out of your mind.

17        Whether there is a preponderance of the evidence

18   depends on the quality, not the quantity, of evidence.  In

19   other words, merely having a greater number of witnesses or

20   documents bearing on a certain version of the facts does not

21   necessarily constitute a preponderance of the evidence.  If

22   you believe the evidence is evenly balanced on an issue that

23   the plaintiffs had to prove, then the plaintiffs have not

24   carried the burden of proof, and your finding on that issue

25   must be for the defendant.

1        As to the final claim of civil conspiracy, the

2   Court has already determined that Mr. Giuliani acted as part

3   of a civil conspiracy to commit the torts of defamation and

4   intentional infliction of emotional distress on or about

5   December 3, 2020, with Donald J. Trump, the Trump 2020

6   presidential campaign's legal team headed by Mr. Giuliani,

7   the One America News network, OAN, and OAN reporters and

8   others.  That means, for purposes of determining damages in

9   this case, that it has already been decided that

10  Mr. Giuliani is liable for the harm caused not just by his

11  own actions, but also for the harm caused by the actions of

12  his co-conspirators taken in furtherance of the conspiracy.

13        Now I'm going to tell you about the parts of the

14  trial.

15        The trial begins with each side having a chance to

16  make opening statements.  The opening statements of the

17  lawyers are not evidence, and they're only supposed to be a

18  general statement of what the lawyers expect the evidence to

19  be.  They are intended to help you understand the evidence

20  which will be introduced.

21        After the opening statements, plaintiffs'

22  attorneys will present their witnesses in support of its

23  claim.  This is called direct examination.

24        When plaintiffs' counsel is finished, defense

25  counsel may ask questions of each witness put on by the

1    plaintiffs.  That is called cross-examination.

2          And after cross-examination is finished,

3    plaintiffs' counsel will have an opportunity to do a

4    redirect examination.

5          After the plaintiffs present their evidence, the

6    defendant may call witnesses to the stand and ask questions

7    on direct examination, and plaintiffs' attorneys may cross-

8    examine those witnesses.  And, again, the defense counsel

9    will have an opportunity for redirect examination after that

10   cross-examination is done.

11         During the testimony of witnesses you may

12   sometimes hear a lawyer ask a question which contains an

13   assertion of fact inside of the question.  For example:  The

14   car was going 90 miles an hour, wasn't it, Mr. Witness?

15   Please remember that no matter how sure or confident the

16   lawyer sounds when stating the question, the assertion of

17   fact by the lawyer in the question is not evidence.  Only

18   what the witness says in the answer is evidence.

19         So if the witness answers no, then there is no

20   evidence the car was going 90 miles an hour even though the

21   lawyer quite confidently said so.  There's only evidence to

22   that effect if the witness answers yes.

23         Now, during the course of this trial you may also

24   hear reference to deposition testimony.  A deposition is the

25   testimony of a person taken before trial.  Depositions are

1    used by parties in litigation to conduct discovery and to

2    preserve testimony for future use in the case, including at

3    trial.

4         At a deposition, the witness is placed under oath,

5    swears to tell the truth, and lawyers for each side may ask

6    questions.  The court reporter is present and records the

7    questions and answers.

8         During the trial you may view certain deposition

9    testimony presented by video.  You should give deposition

10   testimony the same fair and impartial consideration you give

11   any other testimony.  You should not give more weight or

12   less weight to deposition testimony just because the witness

13   does not testify in person or live here in the courtroom.

14        Now, after all the evidence has been presented,

15   the lawyers for plaintiffs and the defendant will have an

16   opportunity to make closing arguments in support of their

17   case.  The lawyers' closing arguments, just like their

18   opening statements, are not evidence in the case; they're

19   only intended to help you understand the evidence.

20        Finally, at the end of all of the evidence and the

21   arguments for both sides, I will give you your final

22   instructions on the law that you are to apply in your

23   deliberations, and then you will retire to consider your

24   verdict.  Your verdict must be unanimous.

25        Now I want to speak to you briefly about my job

23

1    and what your job is; that is, the functions of the judge

2    and the functions of the jury.

3            My responsibilities are to conduct this trial in

4    an orderly, fair, and efficient manner; to rule on legal

5    questions that come up during the trial; and to instruct you

6    about the law that applies in this case.

7            It is your sworn duty as jurors to accept and

8    apply the law as I state it to you.  Your job, ladies and

9    gentlemen, is to determine the facts.  You and only you are

10   the judges of the facts.  You determine the weight, the

11   effect, and the value of the evidence, as well as the

12   credibility or believability of the witnesses.  You must

13   consider and weigh the testimony of all witnesses who appear

14   before you and must decide the extent to which you believe

15   any witness.

16           You must pay careful attention to the testimony of

17   all the witnesses because you will not have transcripts or

18   summaries of the testimony available to you during your

19   deliberations.  You will have to rely on your memory and on

20   your notes, if you choose to take any.  It is your job to

21   resolve any conflicts in the testimony which may occur

22   during the trial and to decide where the truth lies, so

23   please pay careful attention.

24           You may consider only the evidence properly

25   admitted in this case.  That evidence includes the sworn

1    testimony of witnesses, exhibits admitted into evidence, and

2    facts stipulated to and agreed to by counsel.  You may

3    consider any facts to which all counsel have agreed or

4    stipulated to to be undisputed evidence and also the facts

5    that I will instruct you about as guiding your

6    determinations in this case.

7            You may also draw from the facts you find to be

8    proved such reasonable inferences as seem justified in light

9    of your experience.  Inferences are deductions or

10   conclusions that reason and common sense lead you to draw

11   from facts established by the evidence in the case.

12           As I have explained and will repeat to you before

13   your deliberations, there are certain inferences that you

14   must make in this case.  You must accept as true all the

15   factual matters already decided in this case as I have

16   explained to you in these instructions.  You must also

17   assume certain facts for purposes of the case, and I will

18   repeat those for you in the final instructions so you will

19   have them fresh during your deliberations.

20           Certain things are not evidence and must not be

21   considered by you, and this is a short list of three things

22   that are not evidence.

23           As I mentioned, statements, arguments, questions,

24   and objections by lawyers are not evidence.  Testimony that

25   the Court has excluded or told you to disregard is not

25

1    evidence and must not be considered.  And anything you may

2    have seen or heard outside the courtroom is not evidence and

3    must be disregarded.  You are to decide this case solely on

4    the evidence presented here in the courtroom.

5              During the trial, if the Court or a lawyer makes

6    statements or asks a question that refers to evidence you

7    remember differently, you should rely on your own memory of

8    the evidence during your deliberations.  It is your

9    recollection of the evidence that controls.

10             The lawyers in this case may object from time to

11   time when the other side asks a question, makes an argument,

12   or offers evidence that the lawyer believes is not properly

13   admissible.  You must not hold such objections against the

14   lawyer who makes them or the party the lawyer represents.

15   Indeed, it is the lawyers' job and responsibility to object

16   to evidence which he or she believes is not properly

17   admissible under the rules of evidence.

18             If I sustain an objection asked by a lawyer, you

19   should forget about the question because the question is not

20   evidence; and you must not guess or speculate what the

21   answer to the question might have been.  If a question is

22   asked and answered and I then rule that the answer should be

23   stricken from the record, you must forget about both the

24   question and the answer that was stricken.  You should

25   follow this same rule if it happens that any of the exhibits

```
 1    are stricken.
 2              If I overrule an objection to a question, you may
 3    consider the answer and treat the answer like any other.  It
 4    is still up to you to decide how much weight, if any, the
 5    answer is entitled to.
 6              Now, during this trial I may rule on motions or
 7    objections by the lawyers, make comments to lawyers,
 8    question witnesses, and instruct you on the law.  You should
 9    not take any of my statements or actions as any indication
10    of my opinion about how you should decide this case in terms
11    of damages.  If you think that somehow I have expressed or
12    even hinted at any opinion as to how you should make your
13    decision about damages, you should disregard it.  The
14    verdict in this case is your sole and exclusive
15    responsibility.
16              Now, to ensure fairness, you must follow certain
17    rules about your conduct as jurors.
18              First, you are not permitted to discuss this case
19    with anyone until this case is submitted to you for your
20    decision at the end of my final instructions.  This means
21    that until the case is submitted to you, you may not talk
22    about it, even with your fellow jurors.  This is because we
23    don't want you making decisions until you've heard all of
24    the evidence and the instructions of law.
25              After I submit the case to you, you may discuss it
```

1   only when I instruct you to do so and only in the jury room

2   and only in the presence of all of your fellow jurors.  It

3   is important you keep an open mind and not decide any issue

4   in the case until after I submit the entire case to you with

5   my final instructions.

6            In addition, you may not talk about this case with

7   anybody else.  It should go without saying that you may not

8   write about the case electronically, through any blog

9   posting or other communication, including social networking

10  sites such as Facebook or Twitter/X until you have submitted

11  your verdict and the case is over.  This is because you must

12  decide the case based on the instructions I give you and

13  what happens in the courtroom and not on what someone else

14  may have said or told you outside the courtroom.

15           I am sure that when you go home tonight or when

16  you call work to let them know you've been selected for a

17  jury, you may be asked what kind of case you're sitting on.

18  You may respond that you've been selected as a juror in a

19  civil case, but nothing else.  Between now and when you are

20  discharged from jury duty, you must not provide to or

21  receive from anyone, including friends, co-workers and

22  family members, any information about your jury service.

23           As I said, you may tell them that you've been

24  selected to serve as a juror on a civil case, and you may

25  tell them how long you anticipate the case will last.  You

1    must not give any information about the case itself or the

2    people involved in the case because undoubtedly, if you do

3    that, the person you're speaking to may want to share his or

4    her own opinions about this case or the people involved, and

5    you must not hear that person's opinions, views, or

6    information because all those opinions, views, and

7    information may be wrong and have nothing to do with the

8    evidence that you're going to hear in this case.

9         You must also warn people not to try to say

10   anything to you or write to you about your jury service in

11   this case.  This includes face to face or by phone, text, or

12   email or through social media.  In this age of electronic

13   communications, I want to stress you must not use electronic

14   devices or computers to talk about this case, including

15   Tweeting, texting, blogging, emailing, posting information

16   on a website or chat room, or any other means at all.

17        Do not send or accept messages, including email or

18   text messages, about your jury service.  You must not

19   disclose your thoughts about your jury service or ask for

20   advice on how to decide this case.

21        When the case is over, you may discuss any part of

22   it with anyone you wish; but until then, you may not do so.

23        Second, although it is a natural human tendency to

24   talk with people with whom you may come into contact, you

25   must not talk to any of the parties or their attorneys or

1    any witnesses in this case during the time you serve on this

2    jury.  If you encounter people connected with the case

3    outside the courtroom, you should avoid having any

4    conversation with them, overhearing their conversation, or

5    having any contact with them at all.

6         For example, if you find yourself in a courthouse

7    corridor, elevator, or any other location where the case is

8    being discussed by attorneys, parties, witnesses, or anyone

9    else, you should immediately leave the area to avoid hearing

10   such discussions.

11        If you see any of the attorneys or witnesses

12   involved in the case or parties and they turn and walk away

13   from you, they are not being rude.  They're merely following

14   the same instruction not to have any contact with the jurors

15   in this case.

16        If you do happen to hear a discussion about the

17   case, you should report that to me as soon as possible just

18   by letting Mr. Coates know.

19        Third, it is unlikely, but if someone tries to

20   talk to you about this case, you should refuse to engage in

21   any conversation about the case and immediately let me know

22   by telling Mr. Coates.  Do not tell the other jurors.  Just

23   let me know, and I will discuss it with you privately.

24        Fourth, there may be reports in the newspaper or

25   on the radio, Internet, or television concerning this case

1   while the trial is going on.  If there should be such media

2   coverage in this case, you may be tempted to read, listen

3   to, or watch it.  You must not do so.  You must not read,

4   listen to, or watch such reports because you must decide

5   this case solely on the evidence presented in this

6   courtroom.

7          If you are exposed to any press coverage about

8   this case, you must tell me about it immediately by

9   informing Mr. Coates.  Again, you should not tell any of

10  your fellow jurors or anyone else.  I will speak to you

11  about it privately.

12         Fifth, because you must decide this case based

13  only on what occurs in the courtroom, you may not conduct

14  any independent investigation of the law or the facts in

15  this case or consult with anybody about the case.  That

16  means you may not conduct any research in books, newspapers,

17  or through Google searches about anybody involved in the

18  case or what happened in this case.

19         In this electronic age that also means you cannot

20  conduct any kind of research or ask somebody for research.

21  Research includes something even as simple or seemingly

22  harmless as using the Internet to look up a legal term.

23         I want to explain the reasons why you should not

24  conduct your own research or investigation.

25         All parties have a right to have the case decided

1    only on evidence and legal rules that they know about and

2    that they have a chance to respond to.  Relying on

3    information you get outside this courtroom is unfair because

4    the parties would not have a chance to refute it, to correct

5    it, or to explain it.

6            Unfortunately, information we get over the

7    Internet or from other sources, including media sources, may

8    be incomplete or misleading or just plain wrong.  It is up

9    to you to decide whether to credit any evidence presented in

10   court, and only the evidence presented in court may be

11   considered by you.  If evidence or legal information has not

12   been presented in court, you cannot rely on it.  Moreover,

13   if any of you do your own research about the facts or the

14   law, this may result in different jurors basing their

15   decisions on different information.  Each juror must make

16   his or her decision based on the same evidence and under the

17   same rules.

18           Finally, ladies and gentlemen, do not make up your

19   mind during the trial about what your final decision will

20   be.  Keep an open mind.  Do not decide any issue in the case

21   until after I submit the entire case to you with my final

22   instructions.  Then you and your fellow jurors may discuss

23   the case during deliberations and reach your decision.

24           Your job is to decide this case without prejudice,

25   without fear, without sympathy, without favor, and based

1      only on a fair consideration of the evidence presented in

2      this courtroom.  It is for that reason you must completely

3      disregard any press, television, or radio reports that you

4      may read, see, or hear about this matter.  If any such

5      reports come to your attention, it is your sworn duty to put

6      it aside and direct your attention elsewhere.

7             Now, at the beginning of the jury selection

8      process you were introduced to the parties in person, and

9      other witnesses were identified to you only by their name

10     being said.  I want to emphasize that if at any time during

11     the trial you suddenly think you recognize or might know a

12     witness or someone referred to in the testimony or evidence,

13     you should not tell any other members of the jury.  Just let

14     Mr. Coates know, and I will speak to you privately about it.

15            Now, the schedule we're going to follow during the

16     trial is that we will try to start promptly at 9:15 a.m. in

17     the morning.  We'll take a short midmorning break and a

18     lunch break from about 12:30 to 1:30 p.m., and then take a

19     midafternoon break and end around 5:00.

20            You will spend most of your time during the trial

21     either in the courtroom or in the jury room.  I urge you not

22     to leave your valuables in the jury room, your purses, your

23     wallets, or anything of value.  Keep your valuables with

24     you.

25            So thank you very much for your attention, and

1     we're now going to proceed with opening statements starting

2     with plaintiffs' opening statement.

3               Do you want a lapel mic?  Would that be easier

4     than holding it?

5               MR. DuBOSE:  This is probably easier.

6               THE COURT:  Okay.  Fine, your preference.

7               MR. DuBOSE:  What's in a name?  Power, purpose,

8     pride.  I represent the plaintiffs in this case, Ruby

9     Freeman and Shaye Moss.

10              My name is Von DuBose.  I got my name from my

11    father:  Willie Lavon DuBose.  Thank goodness they spared me

12    the Willie.  We don't have any Willie's here, do we?

13              Okay.  But if they had named me Willie Lavon

14    DuBose, Jr., or the second, I would have been very proud to

15    be Willie Lavon DuBose, Jr.

16              Why?  Because names are important.  It's one of

17    the first thing a child learns.  It's their name.  Names are

18    important.  Names are significant.  They often connect us to

19    our family.  They sometimes connect us to our homeland.

20    They're descriptive.  They often define us.  They're

21    important personally.  They're important in business.

22    They're often our personal brands in business.

23              Names are how people find us.  Names are how

24    people identify us.  The great golfer Ben Hogan said, "Your

25    name is the most important thing you own.  Don't ever do