UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
E. JEAN CARROLL,

                                  Plaintiff,

                     -against-                                                 20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                                 Defendant.
------------------------------------------------------------x

**ORDER DENYING DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT OR, ALTERNATIVELY, PERMIT DEFENDANT'S UNTIMELY REBUTTAL EXPERT**

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on defendant's motion to preclude plaintiff's damages expert, Professor Ashlee Humphreys, or, alternatively, to permit defendant to submit an untimely expert report of a new expert witness, Charles Malkus.[1] Plaintiff opposes the motion. Familiarity with the Court's previous decisions in this and a second, closely related case is assumed.[2]

---

[1] Dkt 237 (Def. Letter).

[2] *E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, 635 F. Supp. 3d 229 (S.D.N.Y. 2022); Dkt 145, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 (S.D.N.Y. July 5, 2023); Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Dkt 208, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894, (S.D.N.Y. Aug. 18, 2023); Dkt 214, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152, (S.D.N.Y. Sep. 6, 2023); Dkt 232, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 7924698 (S.D.N.Y. Nov. 16, 2023); Dkt 38, *Carroll v. Trump*, No. 22-CV-10016 (LAK) (*Carroll II*), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*,

*Background*

This, often referred to as *Carroll I*, was the first filed of plaintiff's two actions against defendant. It initially sought damages for defamation by defendant's statements of June 21, June 22, and June 24, 2019. The second, referred to as *Carroll II*, sought damages for sexual assault and defamation by a statement of defendant on October 12, 2022. It was tried to a plaintiff's verdict totaling $5 million and now is on appeal. This action, *Carroll I*, is set for trial on January 16, 2024.

Plaintiff identified Professor Humphreys as her damages expert and defendant identified Robert Fisher as his expert, in each instance in both cases. Plaintiff challenged the admissibility of Mr. Fisher's testimony in *in limine* motions filed last February in both.[3] The Court granted plaintiff's motions in both cases, first in March 2023 in *Carroll II* in which the trial then was imminent. It did so in part because the Court concluded that his methods were unreliable.[4] As the trial in this case was postponed pending appellate proceedings with respect to Westfall Act issues unique to *Carroll I*, the Court did not formally rule on the motion exclude Mr. Fisher here until October 5, 2023.[5] Nevertheless, the decision was no surprise, as it was virtually preordained by the ruling in *Carroll II*. Defendant for his part did not file any timely *in limine* motions to preclude the testimony of Professor Humphreys in either case.

Meanwhile, on September 6, 2023, the Court granted plaintiff's motion for partial summary judgment as to liability with respect to the June 21 and 22 statements but not with respect to the June 24 statement.[6] In light of that decision, plaintiff dropped her damages claim with respect to the June 24 statement on October 17, 2023.[7] That prompted defendant to request a new expert report from Professor Humphreys. On November 1, 2023, plaintiff agreed to provide such a report solely in order to take account of the withdrawal of her damages claim with respect to the June 24 statement, a matter involving principally removing damages sustained as a result of that statement

---

No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

[3] Dkt 133; *Carroll II*, Dkt 72.

[4] The decision in *Carroll II* is reported at *Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 2652636, at *1-5 (S.D.N.Y. Mar. 27, 2023).

[5] Dkt 217 (Order) at 2-3.

[6] *Carroll I*, 2023 WL 5731152, at *11.

[7] Dkt 220 (Pl. Letter).

from the figures in the initial report.[8] On November 2, 2023, defendant agreed on the scope of the revised report.[9] The revised report was provided on November 13.[10] As plaintiff had predicted to defendant, and as in any case was obvious, the revised report lowered the amount of compensatory damages as to which Professor Humphreys would testify.[11]

On November 2, 2023 – the same day on which defendant agreed to the scope of Professor Humphreys' then contemplated but not yet provided revised report – defendant moved for leave to disclose a new and, as of then, not even identified rebuttal expert.[12] He argued in part that allowing plaintiff to submit a revised expert report for Professor Humphreys – the revision that defendant requested and that was to his direct benefit – without allowing him the opportunity to add a new expert long after the time to do so had expired "would result in patent unfairness to Defendant."[13] He speculated also that Professor Humphreys' anticipated revision in response to his request for "the forthcoming 'supplemental' expert report will necessarily contain some amount (and likely a significant amount) of new expert analysis."[14]

On November 16, 2023, the Court denied defendant's November 2 motion, subject to the qualification that defendant could renew his request to submit a rebuttal report if Professor Humphreys' supplemental report contained "new methodology or analysis" and if defendant could "demonstrate precisely how Professor Humphreys' analysis or methodology in the supplemental report is different from her original report."[15]

*Discussion*

Defendant waited to file this motion until December 13, 2023, a full month after he

---

[8] Dkt 223-1 at 6 of 9.

[9] *Id.* at 5 of 9.

[10] Dkt 237 (Def. Letter) at 1.

[11] Dkt 238 (Pl. Opp. Letter) at 2.

[12] Dkt 221 (Def. Letter).

[13] Dkt 224 (Def. Reply Letter) at 1.

[14] *Id.* at 3.

[15] *Carroll I*, 2023 WL 7924698, at *7.

received Professor Humphreys' revised report, nearly a full month after the Court's ruling on his last motion to add a new expert, and only five weeks before the start of the trial in this case. The motion raises two issues – whether defendant has advanced any satisfactory basis for (1) excluding Professor Humphreys' testimony, and if not, (2) allowing his belated attempt to make a much belated disclosure of a new alleged expert, Mr. Malkus, and to call him at trial in the event Professor Humphreys is permitted to testify. It is useful to consider each issue in turn.

*Professor Humphreys*

The deadline for filing *in limine* motions in this case was February 16, 2023.[16] This *in limine* motion to exclude Professor Humphreys' testimony is ten months too late. Nor can the delay be excused on the basis of her revision of the original report to exclude the June 24, 2019 statement from her damages calculation, as the methodology on which both her original opinions (which included the June 21, June 22, and June 24 statements) and her revised opinions (excluding the June 24 statement) are based is identical.

In her original opinions, Professor Humphreys first formulated an Impressions Model (which estimated the media dissemination of the three statements) and an Impact Model (which estimated the percentage of impression recipients who were deemed receptive to defendant's statements), and then estimated the media cost of correcting the receptive impressions of those statements. As shown in her revised opinions, the only change was to back out of her Impressions Model the number of impressions attributable to content that referred solely to the June 24 statement, and then to adjust arithmetically the Impact Model and the estimated repair costs.[17] Thus, virtually the entire basis of defendant's much belated criticism of Professor Humphreys' methodology[18] was laid out in her original report save for the quibble that perhaps she should have attempted to exclude any portion of the figure arrived at in the Impressions and Impact Models of the revised report that might have been attributable to mention of the June 24 statement in the same content as one or both of the other statements. While defendant may wish to cross-examine and argue along those lines – which could make much more out of the June 24 statement than plaintiff otherwise might intend[19] –

---

[16] Dkt 98 at 3; Dkt 100.

[17] Dkt 237-1 at 4-9 of 40.

[18] Dkt 237 (Def. Letter) at 3-10; Dkt 237-3 at 4, 6-10 of 14.

[19] The June 24 statement included the following: "I'll say it with great respect: Number one, she's not my type. Number two, it never happened. It never happened, OK?" Dkt 157 at 20, ¶ 98. The straightforward denial that the incident alleged by plaintiff ever occurred and Mr. Trump's stated, alleged view of Ms. Carroll's appearance concededly were not defamatory. *See* Dkt 213 (Pl. Second Reply Mem.) at 4 n.2; Dkt 238 (Pl. Opp. Letter) at 3. And Mr. Trump's comment regarding Ms. Carroll's appearance presumably is not something to which he would wish to draw attention in view of the fact that he mistook a

the point if anything goes only to the weight of Professor Humphreys' opinions. It does not justify plaintiff in raising the matter for the first time so belatedly.

*The Proposed New Witness*

In denying defendant's November 2 motion to disclose a new rebuttal expert, the Court made clear that defendant could renew his motion *only* if Professor Humphreys' supplemental report contained "new methodology or analysis," and only to the extent that defendant would limit his proposed new expert to rebutting and such new methodology or analysis.[20] As described above, however, Professor Humphreys' supplemental report contains no new methodology or analysis. In consequence, defendant's proposal to call Mr. Malkus, which should have been made very long ago, is nothing more than a veiled attempt to take a second at the apple with respect to the Court's earlier decision denying permission to add a new expert at this late date. In substance, then, it is a motion for reconsideration.

A motion for reconsideration must be made no later than fourteen days after the prior decision and must "sett[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."[21] Defendant's present motion was made nearly a full month after the Court's prior decision and does not claim that the Court previously "overlooked" and "matters or controlling decisions" in its prior ruling. But there is more. Nor, for the reasons already mention, is that result avoided by the qualification the Court made in the prior decision for a renewed motion in the event Professor Humphreys' supplemental report employed new methodology or analysis. Accordingly, the motion is denied on these bases alone. But there is more.

Plaintiff correctly notes that defendant's newly disclosed witness does not propose to limit his testimony to rebutting any new methodology or analysis from Professor Humphreys,[22] as was the Court's explicit order.[23] Mr. Malkus' proposed testimony extends far beyond a targeted analysis of the removal of the June 24 statement from the damages assessment, even going so far as to attack

---

photograph of a much younger Ms. Carroll for his second wife during his deposition. *Carroll II*, Dkt 199 (Trial Tr.) at 1224:9-1225:9. A jury well might infer, as plaintiff argued in *Carroll II*, that Ms. Carroll, at the relevant time, indeed "was exactly [defendant's] type." *Carroll II*, Trial Tr. 1224:9-1225:9.

[20] *Carroll I*, 2023 WL 7924698, at *7.

[21] Local. Civ. R. 6.3.

[22] Dkt 238 (Pl. Opp. Letter) at 3-4.

[23] *Carroll I*, 2023 WL 7924698, at *7.

Professor Humphreys' qualifications,[24] which this Court already has reminded defendant is not the proper subject of expert testimony, at least in these circumstances.[25] In fact, Mr. Malkus' proposed testimony resembles much of the proposed testimony of Mr. Fisher that the Court previously excluded both in *Carroll II* and in this case. The Court excluded the original rebuttal report for good reasons.[26] There is no sufficient reason for a different result now. And defendant's contention that he would be severely prejudiced if not permitted to call Mr. Malkus is unpersuasive for two reasons.

First, as the Court already has pointed out, defendant's lack of an expert witness at this point is entirely a product of his own doing.[27] Defendant knew in March 2023 that Mr. Fisher, his original expert for both this case and *Carroll II*, had been foreclosed as a witness in *Carroll II* on grounds very likely to be applied in this case. He could have read the handwriting on the wall and retained a new expert many months ago, even if only as a backup. Yet he failed to do so. He did nothing in this regard until he sought permission on November 2 to add an unidentified new expert to testify to unspecified opinions on an unspecified basis, thus suggesting very strongly that he had not yet found a new expert. He waited until December 13 – about a month before the long scheduled trial – to surface with Mr. Malkus.

Second, it is important to recognize that the lack of Mr. Malkus' proposed testimony, to the extent it might be admissible under Article 7 of the Federal Rules of Evidence, would add little if anything to the merits of defendant's position with respect to damages, the only issue to be tried. Defendant does not require an expert witness in order to raise on cross-examination and in closing argument many of the points that Mr. Malkus's report suggests he would make if permitted to testify.[28] That indeed was precisely what he did in the trial of *Carroll II*.

Accordingly, defendant would suffer no unfairness at being denied the opportunity to submit a new expert rebuttal report. He had every opportunity to seek to do so on a more timely basis and would not be prejudiced unfairly by his inability to do so on the eve of trial.

---

[24] Dkt 237-3 at 5 of 14.

[25] *Carroll II*, 2023 WL 2652636, at *2.

[26] *See* Dkt 217 at 2-3.

[27] *Carroll I*, 2023 WL 7924698, at *7.

[28] For example, as noted above, plaintiff establish on cross-examination of Professor Humphreys that she did not exclude from the Impressions Model media items that referred both to defendant's June 24 statement and to either or both of the June 21 and 22 statements and argue that she therefore overstated any reputational harm from the latter if he thought that would be helpful to his case.. It is doubtful that such an argument would help his position. *Supra* note 19.

*Conclusion*

        Defendant's motion to preclude the testimony of Professor Humphreys or, alternatively, to be permitted to disclose and call a new expert witness, Mr. Malkus,[29] is denied. To the extent relevant, the Court incorporates its findings and analysis from its most recent opinion denying defendant's motion to disclose a new expert.[30]

        SO ORDERED.

Dated:       December 29, 2023

*[signature]*

Lewis A. Kaplan
United States District Judge

---

[29] Dkt 237 (Def. Letter) at 11-12.

[30] *Carroll I*, 2023 WL 7924698.