UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                           Plaintiff,

               -against-                                20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S *IN LIMINE* MOTION

               Appearances:

                                   Roberta Kaplan
                                   Shawn Crowley
                                   Matthew Craig
                                   Trevor Morrison
                                   KAPLAN HECKER & FINK LLP
                                   *Attorneys for Plaintiff*

                                   Alina Habba
                                   Michael T. Madaio
                                   HABBA MADAIO & ASSOCIATES LLP
                                   *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

          This is a defamation case, frequently referred to as *Carroll I*, brought in November

2019 by writer E. Jean Carroll against Donald Trump for certain statements Mr. Trump made in June

2019 shortly after Ms. Carroll publicly accused him of sexually assaulting her in the mid-1990s.

While *Carroll I* was delayed by appellate proceedings relating to issues under the Westfall Act, Ms. Carroll brought a second, closely related action against Mr. Trump ("*Carroll II*") in November 2022 for damages for sexual assault under the then newly enacted New York Adult Survivors Act and for defamation by a statement Mr. Trump made in October 2022.

Carroll II was tried in this Court in April and May 2023 to a plaintiff's verdict on both claims.[1]  The jury in *Carroll II* found – as Ms. Carroll claimed – that Mr. Trump had sexually assaulted her and that his October 2022 statement defamed her, and awarded Ms. Carroll a total of $5 million of compensatory and punitive damages.[2]  After the verdict in *Carroll II* and the resolution of the appeal in *Carroll I,* the Court granted Ms. Carroll partial summary judgment on liability in this case, largely on the basis that Mr. Trump was collaterally estopped by *Carroll II* to deny that he

---

[1]    The Court assumes familiarity with its prior decisions in this case and in *Carroll II*, which detail the facts and procedural histories of both cases. *E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, 635 F. Supp. 3d 229 (S.D.N.Y. 2022); Dkt 145, *Carroll v. Trump*, No. 20-CV-7311 (LAK) ("*Carroll I*"), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 (S.D.N.Y. July 5, 2023); Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230, (S.D.N.Y. Aug. 7, 2023); Dkt 208, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894, (S.D.N.Y. Aug. 18, 2023); Dkt 214, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152, (S.D.N.Y. Sep. 6, 2023); Dkt 232, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 7924698 (S.D.N.Y. Nov. 16, 2023); Dkt 38, *Carroll v. Trump*, No. 22-CV-10016 (LAK) ("*Carroll II*"), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb, 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

[2]    *Carroll II*, No. 22-CV-10016, Dkt 174 (Verdict).

sexually assaulted and previously defamed Ms. Carroll.[3]  In other words, the material facts concerning the alleged sexual assault already have been determined, and this trial will not be a "do over" of the previous trial.  Accordingly, this case will be tried, commencing on January 16, 2024, on the issue of damages for the June 2019 statements.

The matter now before the Court is Ms. Carroll's motion with respect to various evidentiary issues in advance of the damages trial (Dkt 233).  Many of the questions raised by Ms. Carroll's present motion were the subjects of rulings or concern matters that arose in the trial of *Carroll II*, so the Court frequently refers to those sources.

*Analysis*

*Ms. Carroll's Choice of Her Counsel and Her Counsel's Other Activities*

Ms. Carroll seeks to preclude Mr. Trump from inquiring into Ms. Carroll's choice of counsel and the activities of her counsel apart from this case.  Mr. Trump contends that he should be permitted to cross-examine Ms. Carroll on the subject of her choice of counsel "to demonstrate that [she] has failed to mitigate her own damages."[4]  Specifically, he argues that:

"Given that Plaintiff's theory of harm is largely focused on the negative public attention she has received since coming forward with her allegations against Defendant, one potential defense that Defendant may present at trial is to identify self-aggrandizing and/or attention-seeking behavior exhibited by Plaintiff which independently contributed to any negative public backlash. For instance, Plaintiff has

---

[3]  *Carroll I*, 2023 WL 5731152, at *2.

[4]  Dkt 235 (Def. Opp. Letter) at 2.

displayed a tendency to publicize any ongoing developments of the instant lawsuit

and to paint herself – *and her attorneys* – as champions against Defendant and his

political viewpoints. . . . As such, Defendant is entitled to present evidence which

tends to show that any damage that Plaintiff purportedly suffered should be offset by

the fame or notoriety that she garnered as a result of her own behavior, including her

choice of (and promotion of) her counsel."[5]

Mr. Trump's arguments are unpersuasive.  While New York law requires plaintiffs

to "use reasonable and proper efforts" to minimize the effects of a defamation,[6] Mr. Trump does not

explain how Ms. Carroll's *choice of counsel*, or her counsel's other professional or personal

activities, "independently contributed to" or ameliorated any impact of Mr. Trump's defamatory

statements on her reputation.  Nor is there any merit to Mr. Trump's argument that cross-

examination on Ms. Carroll's choice of counsel and her counsel's activities apart from this case

would "probe into [her] efforts to draw public support and attention for herself, her attorneys, and

this highly-publicized lawsuit."[7]  Mr. Trump is prohibited "from commenting upon or eliciting any

evidence regarding plaintiff's choice of counsel or her counsel's activities outside the litigation

---

[5]      *Id.* at 2-3 (emphasis in original) (footnote omitted).

[6]      *Williams v. Bright*, 230 A.D.2d 548, 550, 658 N.Y.S.2d 910, 911 (1st Dept. 1997) (quoting *Blate v. Third Ave. R.R. Co.*, 44 A.D. 163, 167, 60 N.Y.S. 732, 734 (App. Div. 1899)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 573 n.150 (S.D.N.Y. 2018)*; Wachs v. Winter*, 569 F. Supp. 1438, 1446 (E.D.N.Y. 1983); 44 N.Y. Jur., 2d DEFAMATION AND PRIVACY § 232 (2023); 1 Robert D. Sack, SACK ON DEFAMATION § 10:5.5 at 10-57-58 (4th ed. 2011); RESTATEMENT (SECOND) OF TORTS § 918 (1979).

[7]      Dkt 235 (Def. Opp. Letter) at 3.

between plaintiff and defendant," in each case in the presence of the jury.[8]

*Litigation Funding*

        Ms. Carroll seeks to preclude any evidence, argument, or testimony related to the subject of funding received by her or her counsel for pursuit of this litigation.  The lynchpin of Mr. Trump's argument supporting its admission is that Ms. Carroll testified at a deposition that no one else was paying her legal fees in this litigation as "this is a contingency [fee] case" and that she was not sure about expenses,[9] but that she later recalled and disclosed "that at some point her counsel secured additional funding from a nonprofit organization to offset certain expenses and legal fees."[10] Mr. Trump has claimed that the donor organization was connected to a supporter of Democratic candidates or activities.[11]  Following the disclosure, the Court permitted discovery by "a brief and carefully circumscribed examination of that narrow question" based upon the Court's determination

---

[8]

    *Carroll II*, 2023 WL 2652636, at *8.

    This does not foreclose Mr. Trump from eliciting testimony that the idea of suing Mr. Trump crystallized in Ms. Carroll's mind as a result of a conversation at a party with George Conway, a Republican lawyer who "does not like Mr. Trump," and that Mr. Conway then introduced her to a lawyer.  Such testimony was offered by both Ms. Carroll and Mr. Trump in *Carroll II*.  *Carroll II*, No. 22-CV-10016, Dkt 185 (Trial Tr.) at 68:5-21; Dkt 189 (Trial Tr.) at 315:12-316:12; Dkt 191 (Trial Tr.) at 506:4-508:3, 651:7-653:7; Dkt 199 (Trial Tr.) at 1278:11-1281:15, 1349:19-1350:24, 1364:9-1366:7, 1398:21-1399:12.

[9]

    *Carroll II,* No. 22-CV-10016, Dkt 134-8 at 209:11-21.

[10]

    *Carroll II,* No. 22-CV-10016, Dkt 108-2 at 1.

[11]

    Dkt 235 (Def. Opp. Letter) at 3.

that "it perhaps might prove relevant to the question of plaintiff's credibility."[12]

After the parties completed additional discovery on this narrow issue, Mr. Trump sought in *Carroll II* to offer evidence or make arguments with respect to litigation funding.  The Court precluded him from doing so, stating:

> "In general, litigation funding is not relevant. Here I allowed very limited discovery against what seemed to me a remote but plausible argument that maybe something to do with litigation funding arguably was relevant to the credibility of one or two answers by this witness in her deposition. I gave the defense an additional deposition of the plaintiff, and I gave the defense limited document discovery.
>
> On the basis of all that, I have concluded that there is virtually nothing there as to credibility. And even if there were, the unfair prejudicial effect of going into the subject would very substantially outweigh any probative value whatsoever."[13]

Among the considerations relevant to the Rule 403 analysis was the fact Ms. Carroll already had acknowledged her political opposition to and distaste for Mr. Trump before the Court ruled.[14] Moreover, she expanded upon and was cross-examined on that testimony later in the trial, and all of her principal witnesses testified to similar views.[15]  There accordingly was no evidence or

---

[12]

    *Carroll II*, No. 22-CV-10016, Dkt 110.

[13]

    *Carroll II*, No. 22–CV-10016, Dkt 187 (Trial Tr.) at 240:6-17.

[14]

    *Id.* at 232:18-233:6, 234:18-236:2, 237:3-238:20.

[15]

    *Carroll II*, No. 22-CV-10016, Dkt 189 (Trial Tr.) at 333:9-24, 340:1-343:4 (Carroll) (stating *inter alia* that she is a registered Democrat, hates Mr. Trump's politics, and that he was a bad president); Dkt 193 (Trial Tr.) at 694:8-695:16, 710:17-712:23, 715:13-718:4; 718:5-721:23 (Birnbach) (stating *inter alia* that she is a registered Democrat, voted for Mrs. Clinton,

argument related to litigation funding in the *Carroll II* trial.  But Mr. Trump had more than ample evidence before that jury to the political and personal views of Ms. Carroll and her principal fact witnesses and made that the centerpiece of his defense.  Indeed, his counsel devoted nearly half of his entire summation to the argument that Ms. Carroll initially made up her accusation against Mr. Trump to sell books, that she sued him and testified as she did for political reasons, and that her principal witnesses were similarly motivated.[16]

Mr. Trump's position on this issue is no stronger now than it was in *Carroll II*.  Given Ms. Carroll's frank acknowledgment of her personal and political distaste for Mr. Trump, he has an ample basis for challenging her credibility without getting into a collateral and time consuming dispute about what, if anything, she remembered during her deposition concerning any contribution by a non-profit organization toward the expense of the litigation, let alone the political views of whoever funded that organization.  The prejudice inherent in such an exercise would outweigh substantially any probative value.  Accordingly, Mr. Trump is precluded from offering any evidence or argument concerning litigation funding in the presence of the jury.

---

donates only to Democratic campaigns, and hates Mr. Trump); Dkt 193 (Trial Tr.) at 744:14-24, 760:7-761:12, 763:16-765:20 (Leeds) (stating *inter alia* that she hates Mr. Trump, did not want him to be president, registered Democrat, and donates to Democratic campaigns); Dkt 195 (Trial Tr.) at 999:16-1000:2, 1000:14-22 (Stoynoff) (stating that she voted for Obama, thought Mr. Trump was a bad president, and was happy when he was voted out); Dkt 197 (Trial Tr.) at 1039:15-1040:17, 1051:9-1052:8 (Martin) (stating *inter alia* that she is a registered Democrat, hates Mr. Trump's politics, was devastated when he was elected, and voted for Mrs. Clinton).

[16]  *Carroll II*, No. 22-CV-10016, Dkt 199 (Trial Tr.) at 1330:24-1372:3.

*DNA*

Ms. Carroll seeks to preclude any evidence or argument concerning DNA.  Mr. Trump argues that "[p]laintiff's contention that *any* reference to DNA should be precluded is overly broad and ignores the nuances of this case."[17]  He contends that "[p]laintiff's repeated attempts to publicize the fact that she allegedly possessed Defendant's DNA may very well prove relevant to the issue of damages."[18]  "Defendant," he argues, "could certainly demonstrate that Plaintiff's claims played a role in gaining increased attention from the media, and as a result, amplifying the reaction, whether negative or positive, to her initial sexual assault allegation."[19]

As an initial matter, and assuming *arguendo* that plaintiff made such claims, defendant's suggestion that such claims might have resulted in greater media attention than otherwise would have occurred and that any such increase would have benefitted plaintiff's reputation ultimately is purely speculative.  Even more basically, Mr. Trump's argument properly can be considered only in light of the long saga concerning DNA as it relates to this litigation, which the Court explained in *Carroll II.*[20]

In brief, Ms. Carroll says that she still possesses the dress she claims she wore when Mr. Trump sexually abused her.[21]  Shortly after this case was commenced, unidentified male DNA

---

17    Dkt 235 (Def. Opp. Letter) at 4 (emphasis in original).

18    *Id.*

19    *Id.*

20    *Carroll II*, 2023 WL 2006312; *Carroll II,* 2023 WL 2652636, at *5-7.

21    *Carroll II*, 2023 WL 2006312, at *1.

reportedly was found on the garment.[22]  Plaintiff's counsel then requested that Mr. Trump provide a DNA sample for comparison.[23]  Mr. Trump refused for years to allow the taking of a sample of his DNA.[24]  Two months before the *Carroll II* trial and after discovery had concluded, he finally offered to provide a DNA sample, but only on the condition that Ms. Carroll first turn over to him a previously undisclosed appendix to the DNA testing report.[25]  The Court declined to impose Mr. Trump's bargain, finding "no reason to believe that pursuing that course would be likely to yield any admissible evidence" and that there was no persuasive reason to allow him to inject DNA into the case at such a late date given that his situation was the result of his own unjustified refusal to provide a sample of his own DNA on a timely basis.[26]  It subsequently excluded from *Carroll II* "any evidence or argument by either party concerning DNA."[27]

The argument for exclusion is even more compelling in this case.  The only issue at trial will be Ms. Carroll's damages from Mr. Trump's defamatory statements.  The jury's verdict in *Carroll II* has resolved the principal question for which a DNA comparison would have been relevant – whether it now can be said, years after the alleged incident, that Mr. Trump's DNA is now or ever was on the dress, a matter going to whether the alleged sexual attack occurred (and not even

---

[22]

    *Id.* at *3.

[23]

    *Id.*

[24]

    *Id.* at *5.

[25]

    *Id.* at *6.

[26]

    *Id.* at *1-2, *9.

[27]

    *Carroll II*, 2023 WL 2652636, at *7.

necessarily conclusive of that).  Introduction of any discussion of DNA at this trial nevertheless would entail a substantial risk that Mr. Trump, overtly or by implication, would suggest that there was no conclusive *scientific* proof that he committed the sexual attack that the jury found in *Carroll II*.  Not only would such an argument obscure the fact that Mr. Trump *himself* is the primary reason why there is no DNA comparison evidence in this case, but it would be fundamentally unfair and substantially prejudicial to the plaintiff in view of the Court's collateral estoppel ruling, which forecloses the issue of whether the sexual assault occurred.  As a result, the Court will not permit any testimony, argument, commentary, or reference by either party concerning DNA evidence at trial.

*Ms. Carroll's Prior Relationships and Sexual Assaults and Experiences*

Ms. Carroll moves to preclude any evidence related to Ms. Carroll's prior relationships, sexual assaults on her, or her sexual history.  Mr. Trump contends that:

> "Here, evidence relating to Plaintiff's prior relationships could prove highly probative. For instance, if Plaintiff attempts to demonstrate that the June 2019 Statements caused her to fall into a state of depression, or otherwise caused her 'humiliation and mental anguish,' Defendant would be entitled to introduce other potential sources of trauma that could have affected Plaintiff's mental and emotional state, including abuse in her prior relationships."[28]

Mr. Trump's contentions fall short on several fronts.

First, some evidence of Ms. Carroll's prior relationships and assaults was admitted

---

[28]    Dkt 235 (Def. Opp. Letter) at 5.

11

in *Carroll II* because Mr. Trump's sexual assault of Ms. Carroll and the resulting damages were at issue *in that case*.  As a result, evidence of Ms. Carroll's prior relationships and abuse carried at least minimal relevance to claims for damages that she suffered specifically due to Mr. Trump's *sexual assault*.  In contrast, evidence of prior sexual assaults on Ms. Carroll or her sexual history is not related to the damages caused by Mr. Trump's June 2019 *defamatory statements*, which are the focus in this case and accused her of being a liar and financially and politically motivated.[29] Thus, such evidence is not significantly probative of the reputational harm that Ms. Carroll suffered as a result of that defamation.

Second, the other sexual assaults that Ms. Carroll has endured – and their potential impacts on her – are significantly remote in time and thus of even more limited probative value with respect to her "mental and emotional state" in the wake of Mr. Trump's June 2019 defamation.[30] The incidents that Ms. Carroll can recall occurred well over two decades before the events at issue here.[31]  It would require too great a leap for Mr. Trump to attempt to substitute the harms that Ms. Carroll may have experienced from sexual assaults during her childhood or in the 1980s and 1990s for her alleged harms as a result of Mr. Trump's 2019 defamation.

Finally, Ms. Carroll's past sexual experiences and her prior relationships with or assaults on her by other individuals at most would have little probative value with respect to the remaining issues, and any such value would be outweighed substantially by the unfair prejudice that

---

[29]

Dkt 157-1 (Pl. Amend. Cpt.) at 15-16, 18-19.

[30]

Dkt 235 (Def. Opp. Letter) at 5.

[31]

Ms. Carroll has not provided a specific date for when the alleged sexual assault by her dentist occurred.  *Carroll II*, No. 22-CV-10016, Dkt 187 (Trial Tr.) at 197:7-14.

would result from introducing such inflammatory topics at trial.[32]  Moreover, any such evidence

would confuse and distract the jury from the underlying issues by injecting into the case sensitive

and personal details about Ms. Carroll's life which are wholly unnecessary to resolving it.[33]

Accordingly, the Court precludes both parties from offering or mentioning before the jury any

evidence, argument, or reference to Ms. Carroll's past romantic relationships and prior sexual

experiences.


*Evidence Related to Mr. Trump's Sexual Assault and Ms. Carroll's Motives in Revealing It and Suing Mr. Trump*

      Ms. Carroll seeks to preclude from trial "all testimony, evidence, examination, and

argument suggesting that the assault did not occur or seeking to undermine [Ms.] Carroll's account

by implication," along with "all evidence relating to whether [Ms.] Carroll fabricated her account

of the assault or had a motive to do so,"[34] all in consequence of the Court's collateral estoppel ruling.

Mr. Trump "does not dispute that both parties are estopped from relitigating issues that have already

been determined via partial summary judgment," but counters that "testimony relating to the

underlying [assault]" – and Ms. Carroll's alleged financial and political motivations in raising her

---

[32]
      Fed. R. Evid. 403.

[33]
      Indeed, when defense counsel attempted to admit some of the more salacious details regarding Ms. Carroll and her ex-husband John Johnson in *Carroll II*, the Court found that "the unfair prejudicial effect, outrageously, not substantially, outrageously outweighs any probative value." *Carroll II*, No. 22-CV-10016, Dkt 187 (Trial Tr.) at 208:24-209:4.  After a brief recess, defense counsel acknowledged to the judge that it had "heard the Court's ruling" and understood it. *Id.* at 211:9-11.

[34]
      Dkt 233 (Pl. Letter) at 4.

assault allegations – "could prove relevant and necessary in several ways."[35]

The jury in *Carroll II* found by a preponderance of the evidence that (1) Mr. Trump sexually abused Ms. Carroll and injured her in doing so; (2) his conduct was willfully negligent or reckless in doing so, or he acted with a conscious disregard for Ms. Carroll's rights; and (3) Ms. Carroll was entitled to compensatory and punitive damages for sexual abuse of $2.02 million.[36] Consequently, the fact that Mr. Trump sexually abused – indeed, raped – Ms. Carroll has been conclusively established and is binding in this case.

In light of the foregoing, Mr. Trump is precluded by collateral estoppel and the Court's partial summary judgment ruling from contending in this trial that Ms. Carroll fabricated her charge against him. As the Court previously held, the *Carroll II* jury's verdict "that Mr. Trump's 2022 statement was false necessarily implies that it determined by clear and convincing evidence that Ms. Carroll did not fabricate her sexual assault accusation."[37] And because "[t]he truth or falsity of Mr. Trump's 2019 statements . . . depends – like the truth or falsity of his 2022 statement – on whether Ms. Carroll lied about Mr. Trump sexually assaulting her," the *Carroll II* "jury's finding that she did not [do so] is binding in this case" as well.[38]

Accordingly, neither party shall be permitted to introduce any evidence or argument concerning Mr. Trump's sexual assault of Ms. Carroll, undermining Ms. Carroll's account, or

---

[35]
 Dkt 235 (Def. Opp. Letter) at 6.

[36]
 *Carroll II*, No. 22-CV-10016, Dkt 174 (Verdict) at 1-2.

[37]
 *Carroll I*, 2023 WL 5731152, at *7.

[38]
 *Id.*

14

tending to suggest that the assault did not occur.

Mr. Trump nevertheless contends that he should be allowed to introduce evidence and argument of the alleged financial and political motivations for Ms. Carroll's assault allegations, arguing that they are relevant to the financial and reputational backlash that she suffered.[39]  Such evidence, however, falls squarely within the Court's prior decisions, as it tends to suggest that Ms. Carroll had impure and non-truthful motives in raising her allegations against Mr. Trump. Moreover, Ms. Carroll's personal *motivations* for speaking up are not probative of the harms that she *actually* suffered from Mr. Trump's defamation, shedding no light on her mental and emotional state and reputational damage after Mr. Trump issued his 2019 statements.  Indeed, regardless of the reasons why Ms. Carroll chose to come forward, she did not implicitly consent to whatever defamation Mr. Trump subsequently might commit.[40]  Thus, Mr. Trump is precluded from relitigating his charges of fabrication against Ms. Carroll and from introducing evidence and argument of her personal motivations for such purposes.[41]

Accordingly, Mr. Trump is precluded from offering any testimony, evidence, or argument suggesting or implying that he did not sexually assault Ms. Carroll, that she fabricated her account of the assault, or that she had any motive to do so.

---

[39]     Dkt 235 (Def. Opp. Letter) at 6.

[40]     *See Carroll I*, 2023 WL 4393067, at *18.

[41]     Mr. Trump is not precluded from introducing evidence of Ms. Carroll's public statements for the purpose of arguing that she contributed to the reputational and emotional harm that she claims, but he may not use such statements or related argument to suggest that she fabricated her account or to inquire about her motives in making such statements.  The Court will decide at trial whether the public statements that Mr. Trump proposes to offer are admissible.

*Mr. Trump's Proposed Witnesses*

Mr. Trump's witness list includes Andrew Haskell, the editor-in-chief of *New York Magazine* at the time it published the excerpt from Ms. Carroll's book; Sarah Lazin, Ms. Carroll's agent; and Lisa Birnbach and Carol Martin, who were so-called "outcry witnesses" in *Carroll II* – persons in whom Ms. Carroll confided that she was sexual assaulted by Mr. Trump shortly after it allegedly occurred. Ms. Carroll seeks to preclude Mr. Trump from calling any of them at this trial on the theory that they have "nothing to offer on the issues remaining in this action."[42] Mr. Trump responds that he does not intend to question the witnesses regarding the underlying assault, but offers them "for the relevant purposes of determining the damages purportedly sustained by Plaintiff."[43]

Mr. Trump has not made clear the substance of the testimony that he expects to elicit from any of these witnesses. And it is entirely possible that none has personal knowledge of anything relevant to the damages issues that remain to be tried here. It perhaps is equally possible that Mr. Trump will not call any of them to testify. Nevertheless, the Court is not in a position to exclude them on the basis of the record before it. To the extent that Mr. Trump's proposed witnesses possess personal knowledge relevant to any damages Ms. Carroll suffered from the June 2019 defamation, they are not now precluded. In no event, however, shall Mr. Trump (or, for that matter, Ms. Carroll) be allowed to elicit testimony from any witness regarding the underlying sexual

---

[42]     Dkt 233 (Pl. Letter) at 4.

[43]     Dkt 235 (Def. Opp. Letter) at 7.

assault and alleged fabrication.[44]  Accordingly, this branch of Ms. Carroll's motion is denied.

*Defendant's Testimony and Behavior*

        Mr. Trump has included himself on his list of potential witnesses, as he did in *Carroll II.*  In the event, he did not testify in *Carroll II.*  Nevertheless, Ms. Carroll contends as follows:

> "While it is [Mr.] Trump's right to submit to questioning, he does not have the right to say whatever he pleases. [Mr.] Trump cannot, for instance, claim that he did not sexually assault [Ms.] Carroll; argue that he was telling the truth in his statements about her; suggest that [Ms.] Carroll fabricated her account due to a political agenda, financial interests, or mental illness; or offer any other testimony that would be inconsistent with the Court's collateral estoppel decision determining that [Mr.] Trump, with actual malice, lied about sexually assaulting [Ms.] Carroll. Nor can [Mr.] Trump be permitted to comment on the Court, the jury, or counsel in *Carroll II*, or suggest in any way . . . that he received an unfair trial."[45]

        That is essentially correct.  Mr. Trump's contention that he "must be permitted to testify" regarding "whether he believed [Ms. Carroll's] account" and "whether he personally questioned her motives"[46] is impermissible, as it goes to whether Mr. Trump "knew his statements

---

44

    This is particularly true for the "outcry witnesses," Mss. Birnbach and Martin, as the bulk of their testimony from the *Carroll II* trial pertained to the underlying assault and the veracity of Ms. Carroll's allegations, rather than to damages for defamation.

45

    Dkt 233 (Pl. Letter) at 5.

46

    Dkt 235 (Def. Opp. Letter) at 8.

were false or acted with reckless disregard as to whether they were false."[47]   The Court, however, already has granted partial summary judgment to Ms. Carroll on the issue of constitutional actual malice, meaning that Mr. Trump is precluded from arguing that he believed his statements to have been true when uttered (*i.e.*, whether he believed Ms. Carroll to be lying in her accusations).[48] Indeed, the jury in *Carroll II* already found that Mr. Trump knew of the falsity of his statements (accusing Ms. Carroll of lying), or at least that he made them with reckless disregard for their truth or falsity or that he in fact entertained serious doubt as to the truth of his own statements.[49] Accordingly, Mr. Trump and his counsel are precluded, in the presence of the jury, from claiming that Mr. Trump did not sexually abuse ("rape") Ms. Carroll; that he did not make his June 21 and 22, 2019 statements concerning Ms. Carroll with actual malice in the constitutional sense of that term; or that Ms. Carroll fabricated her account, whether in consequence of a political agenda, financial interests, mental illness, or otherwise.  Mr. Trump and his counsel are precluded also from offering testimony or advancing any argument inconsistent with the Court's collateral estoppel decision determining that Mr. Trump, with constitutional malice, lied about sexually assaulting Ms. Carroll.  This includes any evidence or argument concerning whether Mr. Trump believed Ms. Carroll's allegations or questioned her motives, as these issues will not be before the jury in the present case.

---

[47]     *Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021).

[48]     *Carroll I*, 2023 WL 5731152, at *8-9.

[49]     *Carroll II*, No. 22-CV-10016, Dkt 174 (Verdict) at 2.

*Testimony of Mss. Stoynoff and Leeds and Related Campaign Excerpts*

Both Natasha Stoynoff and Jessica Leeds testified in *Carroll II* that Mr. Trump had sexually assaulted them.  The evidence was received under Federal Rules of Evidence 415 and 413, an exception to the usual rule restricting propensity evidence, pursuant to which evidence of similar acts of sexual assault by a party may be received against that party in civil cases "based on [the] party's sexual assault."[50]  Ms. Carroll wishes to call them again in this trial, adding that she now seeks to elicit not only evidence that Mr. Trump attacked them, but also that he "denied their allegations in the exact manner in which he denied [Ms.] Carroll's."[51]  Mr. Trump resists, arguing that this is not a case "based on sexual assault," as the only issue now to be tried is damages; that the evidence of these witnesses is not relevant to damages; and in any case that the unfair prejudicial effect of this testimony would outweigh substantially its probative value.[52]  Mr. Trump seeks also to preclude statements that he made during the 2016 presidential campaign in which he denied and disparaged the allegations of sexual assault against him, including accusations by Mss. Stoynoff and Leeds, on a similar basis.[53]

---

[50]

Both at trial and in a post-trial ruling in *Carroll II*, the Court relied alternatively on Rule 404(b).  *Carroll II*, No. 22-CV-10016, Dkt 193 (Trial Tr.) at 754:5-757:7.  Contrary to Mr. Trump's suggestion in another place, the Court has not abandoned its reliance on Rules 415 and 413 for so ruling.

In a pre-trial ruling earlier in this case, the Court indicated that related video excerpts of Mr. Trump denying Mss. Stoynoff and Leeds' allegations during his 2016 presidential campaign might be admissible at trial under Rule 404(b) but declined to rule at that time.  *Carroll v. Trump*, 660 F. Supp. 3d 196, 208-09 (S.D.N.Y. 2023).  It does not do so now.

[51]

Dkt 233 (Pl. Letter) at 7.

[52]

Dkt 235 (Def. Opp. Letter) at 9-11.

[53]

*Id.* at 12-13.

First, this Court previously has rejected Mr. Trump's claim that this is not a case "based on sexual assault" in an earlier decision in this very case.[54]  The fact that Mr. Trump is foreclosed by collateral estoppel from disputing his commission of the sexual assault does not alter the basis of the case – of which this damages trial is but one part.  Thus, the case as a whole remains one "based on sexual assault," as Ms. Carroll was required to prove that Mr. Trump sexually assaulted her in order to prove that he defamed her when he denied it and defamed her.[55]

Accordingly, Rules 415 and 413 have been satisfied, as they were in *Carroll II*.[56]

Second, the proposed testimony of Mss. Stoynoff and Leeds arguably remains relevant here despite the fact that Mr. Trump is precluded from denying, directly or indirectly, that he sexually assaulted Ms. Carroll, that he defamed her, and that he did so with constitutional actual malice, thus making it unnecessary for Ms. Carroll to prove up those facts.  She now contends that this testimony is admissible also under Rule 404(b) because it tends to prove that "when a woman accuses [Mr.] Trump of sexual assault, he unconditionally denies the allegations, accuses the woman of fabricating her story, and declares that she was too ugly for him to have sexually assaulted in the first place."[57]  In view of the Second Circuit's "'inclusionary' approach to other act evidence under

---

[54]

    *Carroll*, 660 F. Supp. 3d at 201-02.

[55]

    *See id.*

[56]

    *Id.* at 203-06.

[57]

    Dkt 233 (Pl. Letter) at 7.

    Ms. Carroll utilizes the term *modus operandi* to categorize Mss. Stoynoff and Leeds' testimony under an exception to the rule barring character evidence, but ordinarily, *modus operandi* is applied when propensity evidence is used to prove identity, not intent.  *See, e.g., United States v. Sappe*, 898 F.2d 878, 879-80 (2d Cir. 1990); *United States v. Carlton*, 534 F.3d 97, 101-02 (2d Cir. 2008).  Nonetheless, Mr. Trump's lengthy focus on Ms. Carroll's

Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate

. . . propensity,"[58] "[e]vidence of this pattern" at least arguably "is . . . relevant to proving [that Mr.]

Trump acted with [common law] malice in denying [Ms.] Carroll's allegations [and defaming her]

in the same way here."[59] The testimony therefore appears to be somewhat probative, at least on the

issue of punitive damages, for which courts enjoy wide latitude to "examin[e] all of the relevant

circumstances surrounding the dispute."[60]

> That said, there are non-trivial Rule 403 issues in connection with this evidence.

These include the risk of unfair prejudice that could occur in the event this evidence affected the

jury's compensatory damages award; the prolongation of the trial to litigate the Stoynoff and Leeds

incidents; and possible jury confusion. In all the circumstances, however, the Court declines to rule

---

[58]  potential misuse of the term is misplaced.  Dkt 235 (Def. Opp. Letter) at 10.  Rule 404(b) plainly states that character evidence may be admissible to prove "motive" or "intent" in addition to "identity," for which purpose Ms. Carroll truly seeks to admit Mss. Stoynoff and Leeds' testimony.  Fed. R. Evid. 404(b)(2).  The technical terms used by Ms. Carroll in her brief are thus irrelevant.

*United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citing *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004)).

[59]  Dkt 233 (Pl. Letter) at 7.

[60]  *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 184 (2d Cir. 2000) (citing *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979)); *see also Herbert*, 441 U.S. at 164 n.12 ("The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, *including* threats, *prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties,* facts tending to show a reckless disregard of the plaintiff's rights, *and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration.*") (emphasis added) (internal quotation marks and citations omitted)); 25A Jill Gustafson et al. eds., C.J.S. DAMAGES § 308 (2023) ("Evidence of prior offenses may be admissible to support an award of exemplary damages.").

on the admissibility of this evidence in advance of trial.

*The* Access Hollywood *Video*

Many readers will be familiar with the *Access Hollywood* video, as it was broadcast widely during the 2016 presidential campaign. The relevant portions in any event are described in detail in earlier rulings, including one denying a previous *in limine* motion by Mr. Trump to exclude it here.[61] Briefly stated, it records Mr. Trump stating that he previously had "moved on [a woman] like a bitch, but [he] couldn't get there."[62] He said also:

> Trump: "Maybe it's a different one."
>
> Billy Bush: "It better not be the publicist. No, it's, it's her."
>
> Trump: "Yeah that's her. With the gold. I better use some Tic Tacs just in case I start kissing her. You know I'm automatically attracted to beautiful -- I just start kissing them. It's like a magnet. Just kiss. I don't even wait. *And when you're a star they let you do it. You can do anything.*"
>
> Bush: "Whatever you want."
>
> Trump: "*Grab them by the pussy. You can do anything.*"[63]

In a part of his deposition that was played for the jury in *Carroll II*, Mr. Trump testified that:

> "*Q. And you say -- and again, this has become very famous -- in this video, 'I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're*

---

[61] *Carroll,* 660 F. Supp. 3d at 200-03; *see also Carroll II,* 2023 WL 4612082, at *8-9 n.20.

[62] *Carroll II,* 2023 WL 4612082, at *8.

[63] *Id.* at *8-9.

*a star, they let you do it. You can do anything, grab them by the pussy. You can do*

*anything.' That's what you said; correct?*

*A. Well, historically, that's true with stars.*

*Q. True with stars that they can grab women by the pussy?*

*A. Well, that's what -- if you look over the last million years, I guess that's been*

*largely true. Not always, but largely true. Unfortunately or fortunately.*

*Q. And you consider yourself to be a star?*

*A. I think you can say that, yeah.*

Q. And -- now, you said before, a couple of minutes ago, that this was just locker

room talk?

A. It's locker room talk.

Q. And so does that mean that you didn't really mean it?

A No. It's locker room talk. I don't know. It's just the way people talk."[64]

The video was admitted in *Carroll II* at least under Rule 415 for, among other things, its probative

value with respect to whether the alleged sexual assault on Ms. Carroll occurred.[65] And, as the Court

has noted previously, it alternatively was admissible under Rule 404(b).[66]

      Ms. Carroll seeks its admission here despite the fact that the occurrence of the sexual

assault now has been established conclusively.   She nevertheless contends that the *Access*

---

[64]
    *Carroll II,* No. 22-CV-10016, Dkt 138-1 (Dep. Designations) at 174:5-175:4 (emphasis
added).

[65]
    *Carroll,* 660 F. Supp. 3d at 200-03.

[66]
    *Carroll II,* 2023 WL 4612082, at *8 n.20; *see supra* note 61.

*Hollywood* video is relevant to the issues that remain because it goes to Mr. Trump's "mental state

and disposition – both toward women generally . . . and specifically toward [Ms.] Carroll . . . and

thus [is] relevant to determining his common law malice."[67]  She argues also that the video provides

necessary context to comments Mr. Trump "made about Carroll on CNN after the *Carroll II* trial"

and should be admitted for this purpose at trial as well.[68]

> Mr. Trump responds, first, that the *Access Hollywood* video is not admissible under

Rule 415, in substance for the same reason that he seeks to exclude the testimony of Mss. Stoynoff

and Leeds[69] – that this is not a case "based on sexual assault."  But that argument is without merit

for reasons discussed above and in the Court's prior rulings in this case.[70]

> Mr. Trump next argues that the video should be excluded because it is not relevant

to the issue of damages, even to punitive damages, "because it does not inform Defendant's state

of mind when he made the June 2019 Statements."[71]  But he tellingly concedes that the *Access

Hollywood* video was "made thirteen years prior to when [Ms. Carroll] came forward with her

allegations,"[72] and thus thirteen years before he made the June 2019 defamatory statements about

her.  His *Access Video* statements, the jury could find, evidence misogyny – "[h]atred or dislike of,

---

[67]
    Dkt 233 (Pl. Letter) at 6-7.

[68]
    *Id.* at 7.

[69]
    Dkt 235 (Def. Opp. Letter) at 9, 11-12.

[70]
    *Carroll*, 660 F. Supp. 3d at 200-03.

[71]
    Dkt 235 (Def. Opp. Letter) at 12.

[72]
    *Id.*

or prejudice against women"[73] – and that this hatred or prejudice immediately focused on Ms. Carroll when her allegation of sexual assault became public. Thus, the jury could find Mr. Trump's statements in the video to be probative of his intent in making the June 21 and June 22 defamatory statements about Ms. Carroll.

The reasoning is not difficult. In the video, Mr. Trump bragged that he "moved on [another women] like a bitch" and that he "just starts[s] kissing" women without "even wait[ing]" for their consent. Stars – and he admitted that he is a "star" – can "grab [women] by the pussy" and "can do anything." A jury reasonably could conclude that this was not "locker room talk," but instead that it was truthful bragging by Mr. Trump of his exploits, that it manifested hatred of or prejudice against women, and that this hatred or prejudice fixed specifically on Ms. Carroll when she went public with her accusation and provoked his defamatory reaction. Hence, the jury could find that the *Access Hollywood* video is a relevant window into how Mr. Trump views women that he allegedly has assaulted – including women like Ms. Carroll – and that it therefore is relevant under Rule 401 as tending to prove his common law malice, which is essential to the punitive damages claim.[74]

Moreover, the acts that Mr. Trump arguably admitted committing in the *Access*

---

[73] "Misogyny," OXFORD ENGLISH DICTIONARY (available at https://www.oed.com/search/dictionary/?scope=Entries&q=misogyny) (last visited Jan. 5, 2024).

[74] As has been pointed out previously, the *Access Hollywood* video is admissible, under Rule 104(b), if the Court concludes that the jury could find facts making those statements relevant as the Court has done. It therefore is the function of the jury, not the Court, to determine the relevance of those statements. *See Carroll I,* 660 F. Supp.3d at 202-03. Accordingly, the Court expresses no view on how the jury should interpret Mr. Trump's statements in the video.

*Hollywood* video are almost the exact same acts that he then accuses Ms. Carroll of lying about in her assault allegations. The jury could find that Mr. Trump was prepared to admit privately to sexual assaults eerily similar to that alleged by Ms. Carroll, making his *Access Hollywood* statements admissible on the issues of his intent and mental state when he in June 2019 denied her account as he did and disparaged her. Thus, a jury could find that the *Access Hollywood* video is a useful insight into Mr. Trump's state of mind regarding how he viewed Ms. Carroll specifically, given the similarity between the behavior described in video's remarks and Ms. Carroll's sexual assault claim.[75]

Unsurprisingly, Mr. Trump argues that the *Access Hollywood* video nevertheless should be excluded under Rule 403 because it might cause the jury to "enhanc[e] the potential damages awarded in this case."[76] And it is conceivable that it might do so. But Rule 403 does not permit, much less require, exclusion of relevant evidence simply because it might hurt a defendant's case. It provides instead that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[77]

Receipt of the video in evidence would not cause delay or waste time, as it would take only a minute or less to play. It would not be cumulative because it could be found to be a

---

[75]     *See Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 480, 626 N.E.2d 34 (1993) ("common-law malice focuses on the defendant's mental state in relation to the plaintiff").

[76]     Dkt 235 (Def. Opp. Letter) at 12.

[77]     Fed. R. Evid. 403.

unique window into Mr. Trump's mind provided in his own words and his own voice.  And so the key word for Rule 403 analysis is the word "unfair."  ""'Unfair prejudice' within its context means an undue tendency to suggest decision on an *improper basis*, commonly, though not necessarily, an emotional one.'"[78]  But the question of whether Mr. Trump defamed Ms. Carroll with common law malice is essential to deciding whether she is entitled to punitive damages and important as well to determining the amount, if any.  There would be nothing inherently "unfair" in receiving evidence that is uniquely probative on those questions.  And while a jury might find Mr. Trump's statements on the video quite offensive, rather than being simply untruthful "locker room talk," that risk does not outweigh their probative value, let alone substantially.  That is particularly so given the fact that the Court ultimately would have the ability to address a significantly excessive punitive damages award.[79]

The *Access Hollywood* video is admissible in evidence.

### Conclusion

Plaintiff's letter motion (Dkt 233), which in substance seeks *in limine* rulings on a variety of evidentiary issues, is granted to the extent that:

1.      Defendant and his counsel are precluded, in the presence of the jury, from offering any evidence, argument, or comments:

---

[78]    *Old Chief v. United States,* 519 U.S. 172, 180 (1997) (emphasis added) (quoting Fed. Rule Evid. 403 notes of advisory committee).

[79]    *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (instructing courts on "three guideposts" to follow in reviewing punitive damages awards) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

27

       a.        Concerning plaintiff's choice of counsel or her counsel's activities outside the litigation between plaintiff and defendant;

       b.         Concerning litigation funding;

       c.        Concerning DNA;

       d.        Concerning Ms. Carroll's past romantic relationships, sexual disposition, and prior sexual experiences;

       e.        Suggesting or implying that Mr. Trump did not sexually abuse Carroll; that he did not make his June 21 and 22, 2019 statements concerning Ms. Carroll with actual malice in the constitutional sense of that term; that Ms. Carroll fabricated her account, whether in consequence of a political agenda, financial interests, mental illness, or otherwise; or offering testimony or advancing any argument inconsistent with the Court's collateral estoppel decision determining that Mr. Trump, with actual malice, lied about sexually assaulting Ms. Carroll; and

2.        The *Access Hollywood* video will be received in evidence.

The motion is denied in all other respects without prejudice to renewal during trial with regard to Mss. Stoynoff and Leeds and the related campaign excerpts.

        SO ORDERED.

Dated:      January 9, 2024

                                         Lewis A. Kaplan
                                  United States District Judge