**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0883
DIRECT EMAIL   rkaplan@kaplanhecker.com

January 11, 2024

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Carroll v. Trump*, 20 Civ. 7311 (LAK)

Dear Judge Kaplan:

  We write on behalf of Plaintiff E. Jean Carroll to raise two issues that have arisen since Your Honor's January 9 ruling on Plaintiff's motion in limine. That decision: (1) deferred a ruling on whether certain witnesses Defendant included on his witness list should be precluded from testifying at the upcoming trial and (2) excluded a large swath of evidence that is no longer relevant due to the Court's collateral estoppel and summary judgment decision. ECF 252. In light of the Court's January 9 Order, and as a result of Plaintiff's request, the parties met and conferred yesterday afternoon to discuss certain evidence that Defendant intends to introduce at trial. During that call, it quickly became apparent that Defendant intends to circumvent the Court's recent rulings in order to put before the jury evidence that is not only irrelevant and unduly prejudicial, but also clearly contrary to the directives in the Court's January 9 Order.

  ***First***, as Your Honor is aware, after Defendant included Ms. Martin on his witness list in this action, Plaintiff moved to exclude her on the ground that she had no relevant testimony to offer on the narrow damages issues that remain in this action. ECF 233. The Court deferred such a ruling because Defendant "ha[d] not made clear the substance of the testimony he expects to elicit from any of" the witnesses he listed. ECF 252 at 15. At the same time, the Court observed that it is "entirely possible that none [of Defendant's listed witnesses] has personal knowledge of anything relevant to the damages issues that remain to be tried here," emphasizing that no witness Defendant calls—in particular the two "outcry witnesses," which include Ms. Martin—will be allowed to testify "regarding the underlying sexual assault and alleged fabrication." *Id.* at 15-16 & n.44.

KAPLAN HECKER & FINK LLP

2

Although Defendant listed Ms. Martin on his witness list two months ago, he did not take any steps to secure Ms. Martin's attendance until Tuesday, when he served a trial subpoena on her. Upon learning of that development, we requested a meet-and-confer to understand the nature of the testimony that Defendant intended to elicit from Ms. Martin. During the parties' meet-and-confer yesterday, Defendant's counsel explained that they intended to elicit from Ms. Martin her personal opinion with respect to how Plaintiff carried herself in the aftermath of Defendant's defamatory statements.[1]

Such testimony is not permissible, and the Court should preclude Defendant from calling Ms. Martin. A lay witness may testify as to her opinion about another person's feelings or behaviors only if two conditions are met: first, "if the court finds that the opinion is 'rationally based on' the witness's own perceptions," which requires "first-hand knowledge or observation"; and second, "if the court concludes that it will be 'helpful' to a clear understanding of the witness's testimony or the determination of a fact in issue." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992); Fed. R. Evid. 701. Ms. Martin's opinion that Plaintiff supposedly enjoyed aspects of the attention she received has no bearing on whether Carroll's reputation suffered harm. *See also* ECF 252 at 14 ("[R]egardless of the reasons why Ms. Carroll chose to come forward, she did not implicitly consent to whatever defamation Mr. Trump subsequently might commit."). As for the mental anguish and humiliation that Plaintiff experienced as a result of Defendant's defamation, Defendant's proposed opinion testimony from Ms. Martin fares no better. Ms. Martin has testified that she had only sporadic and largely virtual interactions after Plaintiff filed her lawsuit, Ex. A at 25:16-26:3, rendering any opinion testimony of doubtful value. And her personal reaction to undisputed facts—that Plaintiff appeared on television, or that Plaintiff mentioned her lawsuits in her writings—are not "helpful … to the determination of a fact in issue." *Rea*, 958 F.2d at 1215.

Even if Ms. Martin could properly testify about these issues, the probative value of such testimony would be slight and the risk of prejudice and confusion would be substantial. *See* Fed. R. Evid. 403. Plaintiff will testify about—and will face cross-examination concerning—her public appearances and writings, making Ms. Martin's testimony largely cumulative. And on the other side of the ledger, allowing Ms. Martin to testify will inevitably produce a clash with the Court's recent evidentiary rulings, which reaffirmed the narrow scope of this damages-only trial. *See* ECF 252. Ms. Martin provided relevant testimony in *Carroll II* for one reason only: she was an outcry witness. More specifically, Ms. Martin was one of two people Plaintiff confided in within days of Defendant sexually assaulting her in 1996. At the time, Ms. Martin advised Plaintiff to keep quiet about the assault, as Defendant was a powerful man who would bury Plaintiff if she came forward. If Ms. Martin were to offer opinion testimony at this trial, the full context and history of her relationship with Plaintiff would necessarily be drawn out: otherwise, it would be impossible to properly understand Ms. Martin's perception of Plaintiff's behavior—and her uneasiness with the

---

[1] The only specific evidence of this that Defendant's counsel identified was a private text message that Ms. Martin sent to a friend in 2021 expressing her disapproval of the fact that Plaintiff's lawsuit kept her in the public spotlight and Plaintiff seemed to enjoy the attention. *See Carroll II* Trial Tr. at 1090-93. When reminded that the text message is the out-of-court statement of a non-party and thus inadmissible hearsay, Defendant insisted—incorrectly—that it was admissible because Ms. Martin, a witness, had said it. More fundamentally, however, this supposed evidence reveals the inadmissible nature of the testimony that Defendant hopes to obtain. While Defendant may be permitted to establish the undisputed fact that Plaintiff received public attention, the opinions Ms. Martin shared with a friend are not probative of that fact.

public attention that Plaintiff received—when Plaintiff came forward in 2019. Indeed, Ms. Martin's concerns after Plaintiff spoke up in June 2019 closely echoed her concerns from decades earlier, when she first urged Plaintiff not to reveal the assault. *See, e.g.*, *Carroll II* Trial Tr. 1038:4-8 (Ms. Martin stating that she "had a real worry about the climate of the country and the like" and "it felt like [Plaintiff] was just being, well, hammered in a lot of ways"). But exploring that context—Ms. Martin's original role as an "outcry" witness, her later role as a public validator of Plaintiff's account of being sexually assaulted, and her anxiety that speaking up would be a mistake because Defendant would "bury" Plaintiff—would necessarily drag the trial deep into waters that the Court has properly designated off-limited for both parties. *See* ECF 252 at 13 ("[N]either party shall be permitted to introduce any evidence or argument concerning Mr. Trump's sexual assault of Ms. Carroll."); *see also id.* at 15-16. Ultimately, allowing Ms. Martin to offer lay opinion testimony will offer very little (if anything) to the presentation of relevant evidence, even as it risks confusing the issues and prejudicing the jury by requiring a deep dive into complicated, sensitive issues that are fundamentally out of bounds. For that reason, and to comply with this Court's prior orders, Ms. Martin's testimony should be precluded under Rule 403.[2]

We respectfully request that the Court render a ruling on this issue before trial begins, so that we might avoid a situation in which Defendant's counsel makes remarks to the jury about inadmissible evidence during her opening.[3]

**Second**, after Your Honor's January 9 ruling on Plaintiff's motion in limine, Plaintiff identified several of Defendant's exhibits (DX-15, DX-18, DX-20, DX-21) that were clearly inadmissible in light of the Court's decision. *See* Ex. B (Defendant's exhibits).[4] During yesterday's meet-and-confer, Defendant disagreed, insisting that the admissibility of their anticipated exhibits remained unaffected by the Court's recent ruling.

In support of this position, Defendant's counsel asserted that *any* public statement Plaintiff has made since Defendant defamed her is admissible, no matter its content or context. By way of example, Defendant plans to use Plaintiff's interview on CNN with Anderson Cooper for this purpose, arguing that going on the show and addressing what Defendant said about her had the effect of amplifying his message and further ruining her reputation. But critically, the only portion of the interview that Defendant insists on using focuses on Plaintiff's comment that "most people

---

[2] Should the Court permit Ms. Martin to testify, Plaintiff would likely call her as part of her case-in-chief to establish these points.

[3] Counsel for Defendant informed us yesterday that their current intention (subject to change) is only to call two witnesses as part of their defense: Carol Martin and Donald Trump.

[4] We do not attach to this letter DX-21, which is the CNN video that corresponds to the portion of the transcript included at DX-20.

We further note that, consistent with our agreements with Defendant's prior counsel at trial in *Carroll II*, we have redacted email addresses from Defendant's exhibits. We have repeatedly raised the issue of redactions with Defendant's current counsel in hopes of avoiding the delays occasioned by Defendant's failure to redact sensitive or irrelevant material at the last trial. Current counsel has not made any modifications to their exhibits in light of our concerns or responded to our proposal that the parties discuss redactions in advance of any exhibit's use at trial.

think of rape as being sexy." DX-20 at 8.[5] As Your Honor surely recalls, Defendant repeatedly emphasized this comment in the *Carroll II* trial as a way to discredit her account of the underlying assault. *See, e.g.*, *Carroll II* Trial Tr. 67, 542-46, 1325, 1368. That is ever truer here where Defendant has cut out portions of the CNN interview that give further context to the point Plaintiff was making regarding her concerns about how other people might react to an accusation of rape. But there is clearly no point to introducing the CNN exchange other than to suggest that Plaintiff "fabricated her account" or to "inquire about her motives in making such statements." ECF 252 at 14 n.41.[6] And neither purpose is permissible at this juncture. Defendant's attempt to introduce this exhibit thus represents a blatant attempt to inject an overly prejudicial and highly irrelevant statement—one that has regularly featured in Defendant's defamatory statements since 2022—into the trial in a manner that is contrary to the Court's January 9 Order.[7]

Further, Defendant's position on the CNN interview and his other exhibits suggests that he plans to impermissibly repackage an off-limits motive and fabrication argument as an argument concerning mitigation of reputational harm. The other exhibits Defendant refused to remove after the Court's ruling further demonstrate the point. DX-15, for example, is an email from Plaintiff describing her desire to do more podcast and television interviews about her book, and DX-18 is an email from Plaintiff emphasizing her intention to sell books at an upcoming book event. The Court, however, has excluded evidence about whether Plaintiff "fabricated her account [in pursuit of] financial interests" or whether Defendant "questioned her motives." ECF 252 at 17. Defendant explained during the parties' meet-and-confer that these emails demonstrate that Plaintiff was trying to gain publicity for her book. Every author who writes a book obviously wants people to read it. Defendant's effort to transform his prior argument about Plaintiff's financial motive to fabricate an assault, *see Carroll II* Trial Tr. 66, 71, 561-64, 729-31, 1324-25, 1360, into a supposedly new argument about Plaintiff's motivation for publicity lacks merit. There is no

---

[5] Defendant had originally included the transcript of the entire CNN program as his proposed trial exhibit, even those portions that did not involve Plaintiff. DX-20 at 11-19. Defendant has since limited the portion he wants to use to the following exchange:

> COOPER: I think most people think of rape as a—it's a violent assault. It is not—
>
> CARROLL: I think most people think of rape as being sexy.
>
> COOPER: Let's take a short break—
>
> CARROLL: They think of the fantasies.
>
> COOPER: We're going to take a quick break. If you can stick around we'll talk more on the other side.
>
> CARROLL: You're fascinating to talk to.

DX-20 at 8.

[6] Defendant further defended the CNN interview's admissibility by saying that Plaintiff's expert considered the number of times the interview was viewed in assessing Plaintiff's reputation harm. That is incorrect. Although Plaintiff's expert considered the CNN interview in her initial report, it was excluded from the supplemental report about which she will testify. *See* ECF 237-1 at 23 (noting removal of T-07 and T-08).

[7] The CNN exhibit should also be excluded under Federal Rule of Evidence 412. Introducing Plaintiff's opinion of how rape is viewed in modern culture will "harass[] and embarrass[]" her in court, present "inflammatory and distracting evidence" to the jury, *United States v. Perez*, No. 20 Cr. 1982, 2022 WL 1421408, at *2 (2d Cir. May 5, 2022), and "infus[e] sexual innuendo into the factfinding process," Rule 412, Advisory Committee Notes to 1994 Amendments.

KAPLAN HECKER & FINK LLP

daylight between these two positions, and Defendant's proposed exhibits are clearly precluded by the Court's recent order. ECF 252 at 12-14.

Finally, our concern is further compounded by the fact that we have not seen most of the exhibits that Defendant will likely seek to introduce during cross-examination. Given Defendant's unwillingness to meaningfully meet and confer on evidentiary issues and his repeated disregard of the Court's evidentiary orders in his litigation positions and public statements (including as recently as today[8]), we are justifiably worried that trial will turn into an endless series of sidebars at which the Court will need to review defense exhibits. We thus raise our concerns about these issues with Your Honor now in order to obtain a ruling before Defendant makes any prejudicial use of inadmissible exhibits during opening, and in the hope that the Court's ruling might further deter efforts to circumvent Your Honor's prior rulings.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record

---

[8] Michael M. Grynbaum, *Airing of Trump's Fusillade in Full Is a Reminder of His Media Advantage*, N.Y. Times (Jan. 11, 2024), https://www.nytimes.com/2024/01/11/business/media/trump-fraud-trial-press.html; Brett Samuels, *Trump Says He Plans to Attend E. Jean Carroll Defamation Trial* (Jan. 11, 2024), https://thehill.com/regulation/court-battles/4403684-trump-says-he-plans-to-attend-e-jean-carroll-defamation-trial/; *Trump Holds Press Conference to Discuss Civil Fraud Trial*, YouTube (Jan. 11, 2024), https://www.youtube.com/watch?v=ZwaQCe5bRtA, at 32:11.