# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL     212.763.0883
DIRECT EMAIL    rkaplan@kaplanhecker.com

January 12, 2024

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

            Re:     *Carroll v. Trump*, 20 Civ. 7311 (LAK)

Dear Judge Kaplan:

       We write on behalf of Plaintiff E. Jean Carroll to propose certain prophylactic measures and curative instructions in anticipation of Defendant Donald J. Trump's attendance at the upcoming trial, the possibility that he will seek to testify, and the associated risk that he will violate Court orders if he does so.

       Last year, the Court made clear that trial in this action would be limited to "damages only." ECF 214 at 4. Since then, Mr. Trump has repeatedly ignored that ruling and repeatedly sought to relitigate issues that were settled by virtue of the jury verdict in *Carroll II* and the Court's own decisions. *See, e.g.*, ECF 238, 245. But the Court's recent rulings leave no doubt about what is permissible and what is off-limits. ECF 252 at 17. Mr. Trump cannot testify that he did not sexually assault Ms. Carroll. He cannot claim that he did not rape her, or did not know her, or had never seen her before. He cannot question or attack her motives for revealing that he had assaulted her. He cannot say that he was defending himself from a false accusation. And he cannot point to *Carroll II* jury's determination that the plaintiff did not at this point prove rape within the technical meaning of New York Penal Law. ECF 251 at 3. He also cannot make reference to a wide range of other prejudicial, irrelevant, or otherwise inadmissible matters that have featured prominently in his recent public statements about the case. ECF 252.

       In fact, it is not clear, at least to us, what Mr. Trump could permissibly testify to given these limitations. There is no basis for Mr. Trump to offer lay opinion testimony about the harm that Ms. Carroll has experienced. *See* Fed. R. Evid. 701. Any testimony that he might give with respect to his own common law malice for purposes of punitive damages would have to be consistent with the Court's rulings regarding actual malice, *see* ECF 252 at 17—a needle that Mr.

KAPLAN HECKER & FINK LLP

2

Trump's recent filings and public statements (which are rife with continued defamation and false denials) strongly suggest he could not thread. And while a defamation defendant could theoretically offer testimony about their lack of wealth in the hope of minimizing a punitive damages award, any such testimony from Mr. Trump here would run headlong into Mr. Trump's sworn testimony and public statements elsewhere. *E.g.*, ECF 239-3 at 3550 (Mr. Trump: "I'm worth billions of dollars more than the financial statements."); *see also* ECF 239-2.

Because the scope of permissible testimony that Mr. Trump could offer is very narrow, and because there are any number of reasons why Mr. Trump might perceive a personal or political benefit from intentionally turning this trial into a circus (including that the trial is focused only on damages, rather than any questions of his underlying liability), we are deeply concerned that Mr. Trump will pay no heed to the Court's recent rulings.[1] Indeed, Mr. Trump himself has promised to do so. Yesterday—after the Court's evidentiary rulings on January 9, ECF 252—he expressed at a press conference his intention to do exactly what this Court ordered him not to do: "I'm going to go to [the *Carroll v. Trump* trial], and I'm going to explain I don't know who the hell she is."[2]

The New York Attorney General's ongoing state court civil fraud action against Mr. Trump provides a potential preview of exactly what we might expect to see at next week's trial before this Court. In that case, Mr. Trump offered testimony contradicting the state court's own summary judgment ruling and used his time on the stand to attack opposing counsel and the legitimacy of the proceedings. ECF 233 at 5-6. He did so in contravention of facts that had already been established by the presiding judge. Moreover, Mr. Trump had originally sought permission to give his own closing argument in that case. *See* Ex. A at 8-9 (correspondence between Justice Engoron and Mr. Trump's counsel). The court informed Trump that he must agree on the record to "limit his subjects to what is permissible in a counsel's closing argument," and accordingly may comment only on "relevant, material facts," and may not "introduce new evidence," "deliver a campaign speech," or "impugn" the court or opposing counsel. *Id.* at 7. Mr. Trump's counsel rejected those conditions as "very unfair" and insisted that Mr. Trump must be allowed to "speak about the things that must be spoken about" regarding an "out of control, politically motivated Attorney General." *Id.* at 1. The court was unpersuaded by this request to violate the rules that ordinarily govern the presentation of closing argument in a civil case. Giving up the game, Mr. Trump refused to agree to those generally applicable limitations. *Id.*

Later, at the closing itself, however, Mr. Trump pleaded for an opportunity to address the court. Ex. B at 112-13. The court indulged the request, but only if Mr. Trump "promise[d] to just comment on the law and facts, application of one to the other and not go outside of that." *Id.* At 113. Mr. Trump immediately disregarded the court's instructions and the rules applicable to all

---

[1] This concern finds further support in Trump's other conduct in this very litigation and elsewhere. Trump has repeatedly shown himself to be unaware or willfully blind to what is happening in this case. For example, he falsely told the public that he had filed a motion for recusal that Your Honor "quickly refused." @realDonaldTrump, Truth Social (May 10, 2023), https://truthsocial.com/@realDonaldTrump/posts/ 110342704670441764. He also gave sworn deposition testimony that contradicted his own interrogatory responses, feigning ignorance about those responses and arguing that the "deposition rules" because his responses were "signed by somebody else," ECF 192-2 at 111. It would be wholly improper for Trump to insist at this trial that he is somehow not bound by the Court's orders, or by the positions he has taken, because he is unaware of them.
[2] Brett Samuels, *Trump Says He Plans to Attend E. Jean Carroll Defamation Trial*, The Hill (Jan. 11, 2024), https://thehill.com/regulation/court-battles/4403684-trump-says-he-plans-to-attend-e-jean-carroll-defamation-trial/.

**KAPLAN HECKER & FINK LLP**   3

litigants in closing. He told the court that "this case goes outside of just the facts" and launched into a soliloquy. *Id*. He claimed, despite the court's earlier summary judgment ruling, that the at-issue financial disclosures "were perfect." *Id*. He called the case a "fraud on [him]" and a "political witch hunt," and attacked the Attorney General. *Id*. at 114-17. And when the state court asked Mr. Trump for "[o]ne minute," he attacked the judge too, saying, "You have your own agenda, I can certainly understand that. You can't listen for more than one minute." *Id*. at 116. Mr. Trump's counsel (which included his counsel in this case) ignored the state court's demand that they "control [their] client." *Id*. Consistent with the understanding that this was all intentional—that it is was part of a strategy to delegitimize the proceedings and seek other perceived personal or political benefits from overt noncompliance with court orders—Mr. Trump and his counsel followed up with intemperate public statements and continued attacks on the court. ECF 254 at 5 & n.8.

It takes little imagination to think that Mr. Trump is gearing up for a similar performance here—only this time, in front of a jury. Indeed, as noted above, Mr. Trump promised a second round of this same scenario in his remarks to the press just yesterday. *Id*.

For all of these reasons, we therefore respectfully request that in the event that Mr. Trump does appear to testify at trial (which he has stated that he will), the Court may want to consider taking robust prophylactic measures to ensure that Mr. Trump does not present inadmissible, prejudicial, or otherwise improper information to the jury. Pursuant to its inherent discretion and Federal Rule of Evidence 103(d), before Mr. Trump takes the stand, the Court should consider:

- admonishing Mr. Trump with respect to the conclusions and testimonial implications of the Court's collateral estoppel decision and the evidentiary limitations that it has detailed in various written decisions;

- informing Mr. Trump of the possible consequences for violating the Court's orders;

- requiring Mr. Trump's counsel to provide a detailed offer of proof in advance of Mr. Trump's anticipated testimony, *see* Fed. R. Evid. 103(c); and

- requiring Mr. Trump to state on the record and under oath, out of the presence of the jury, but in open court—that he understands that it is established for purposes of the trial that he sexually assaulted Ms. Carroll, and that he spoke falsely with actual malice and lied when accusing her of fabricating her account and impugning her motives, and that Mr. Trump further understands and accepts all of the limits that the Court has imposed on his testimony in this action and will conduct himself in the courtroom in accordance with those limitations.

Should Mr. Trump nevertheless go on to give inappropriate testimony or otherwise engage in improper conduct, the Court would have various tools at its disposal to enforce its evidentiary rulings and related orders. Among other things, it may find Mr. Trump or his counsel in contempt, *United States v. Allocco*, 994 F.2d 82, 85 (2d Cir. 1993); it may issue punitive fines and monetary sanctions, *id*. at 86; *BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, No. 22 Civ. 2070, 2022 WL 17581775, at *17 (S.D.N.Y. Dec. 12, 2022); it may refer counsel for discipline, *Hinds v. Cnty.*

KAPLAN HECKER & FINK LLP

4

*of Westchester*, No. 11 Civ. 7265, 2020 WL 7046843, at *5-6 (S.D.N.Y. Dec. 1, 2020); and it may preclude Mr. Trump from giving further testimony, *Mercado v. One Beacon Ins. Grp.*, 356 F. App'x 553, 554 (2d Cir. 2009). At a minimum, any future violation by Mr. Trump of a specific evidentiary ruling would justify an emphatic jury instruction that addresses the improper testimony and safeguards against prejudice. *See United States v. Aquart*, 912 F.3d 1, 35 (2d Cir. 2018); *United States v. Van Hise*, No. 12 Cr. 847, 2014 WL 956291, at *4 (S.D.N.Y. Mar. 11, 2014); *see also United States v. Melendez*, 57 F.3d 238, 242 (2d Cir. 1995).

Accordingly, in addition to the proposed prophylactic measures described above, we attach for Your Honor's preliminary consideration two proposed curative instructions: (1) if Mr. Trump gives testimony in violation of the recent order limiting admissible evidence in accordance with the Court's collateral estoppel decision, ECF 252; and (2) if Mr. Trump refers to the *Carroll II* jury's determination relating to rape as defined under New York Penal Law, ECF 251. *See* Exs. C & D. Of course, if Mr. Trump violates one of the Court's evidentiary rulings in other ways, we can propose appropriate curative instructions at that time. As Your Honor has observed, however, some of the evidence that Mr. Trump has previously sought to introduce is so prejudicial that "once that bell rings, there is no way to unring it." *Carroll II* Trial Tr. 456.

If Mr. Trump appears at this trial, whether as a witness or otherwise, his recent statements and behavior strongly suggest that he will seek to sow chaos. Indeed, he may well perceive a benefit in seeking to poison these proceedings, where the only question for the jury is how much more he will have to pay in damages for defaming Ms. Carroll. This Court should made clear from the outset that Mr. Trump is forbidden from engaging in such antics and will suffer consequences if he does so.

Respectfully submitted,

Roberta A. Kaplan

cc:   Counsel of Record