

Michael T. Madaio, Esq.
Partner
mmadaio@habbalaw.com
Admitted to practice in NJ, NY & PA

January 13, 2024

**Via E-Mail and First Class Mail**
The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007

Re:   *E. Jean Carroll v. Donald J. Trump*
      20 Civ. 07311 (LAK) (JLC)

Dear Judge Kaplan:

We write in response to the letter submitted by the plaintiff, E. Jean Carroll ("Plaintiff"), on January 11, 2024 (the "Letter").

In the Letter, Plaintiff asks this Court to preclude a defense witness and several defense exhibits even though the deadline for *in limine* motions has long-since expired[1] and trial is set to commence in mere days. She also blatantly mischaracterizes the substance of the meet-and-confer discussions between counsel and grossly misstates President Trump's position with respect to the scope of admissible evidence. Finally, she sets forth arguments that are entirely bereft of merit and misconstrue the nature of this Court's January 9, 2024 Order. *See* ECF 252. Therefore, Plaintiff's application must be denied.

**I.    Testimony of Carol Martin**

Plaintiff contends that Carol Martin should be precluded as a trial witness because, according to Plaintiff, she has "no relevant testimony to offer." Letter at 1. But Plaintiff already sought this relief and her application was expressly denied by the Court a mere four days ago. *See* ECF 233 at 4 (seeking to preclude Ms. Martin as a trial witness because "she has nothing to offer on the issues remaining at trial."); ECF 52 at 16 ("Accordingly, this branch of Ms. Carroll's motion is denied."). Plaintiff's current application is therefore frivolous and untimely, and seemingly nothing more than an underhanded tactic to burden President Trump's counsel with unnecessary motion practice in the days leading up to trial. For this reason alone, Plaintiff's motion should be denied.

Moreover, Plaintiff's position lacks merit since Ms. Martin has relevant testimony to offer at trial. Plaintiff is seeking damages for the alleged emotional harm she suffered as a result of President Trump's June 21 and June 22 statements. Ms. Martin, who describes herself as a "close" friend of Plaintiff, *see* **Exhibit A,** *Carroll II* trial tr. 1026:8-14, is certainly someone who would

---

[1] The deadline for the parties to file *in limine* motions expired on December 8, 2022 *See* ECF 77.

possess relevant knowledge as to whether Plaintiff suffered mental anguish as a result of the June 21 and June 22 statements. For instance, Ms. Martin previously expressed in a December 1, 2021 text message that she believed Plaintiff was "loving the adulation" she had received since June 2019, going so far as to say: "[Plaintiff is] kinda like Santa at the xmas parade. She likes this crown." *See* **Exhibit B**.[2] While Plaintiff argues that Ms. Martin has only had "sporadic and largely virtual interactions" with Plaintiff in recent years, Letter at 2, Ms. Martin testified that the two have a "close friendship" as of today. **Exhibit A,** *Carroll II* trial tr. 1026:8-14. This is substantiated by the extension communications (text, e-mail, etc.) that were disclosed by both Plaintiff and Ms. Martin during discovery and which demonstrate that the two remain in frequent communication to this day. *See*, *e.g.*, *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ("If lay testimony results from a reasoning familiar in every day life, it [is] permissible lay opinion testimony under Rule 701."). Further, Ms. Martin personally took part in Plaintiff's efforts to publicize her story and garner media attention in June 2019. *See* **Exhibit C**, Martin Dep. tr. 62:21-63;10 (discussing Plaintiff and Ms. Martin appearing on a *New York Times* podcast together in June 2019). Based on the foregoing, there is no question that Ms. Martin possesses "first-hand knowledge" that will assist the jury in determining whether, and to what extent, Plaintiff suffered mental anguish as a result of the increased attention she received following the relevant events of June 2019. *United States v. Rea,* 958 F.2d 1206, 1215 (2d Cir. 1992).

Plaintiff also argues that Ms. Martin should be precluded under Rule 403. But this argument has nothing to do with the Court's January 9, 2024 Order and should therefore be disregarded as untimely. Nonetheless, Plaintiff's position should be rejected since it is based on the false assumption that Ms. Martin would necessarily be required to testify about her role as an "outcry" witness. The fact that Plaintiff purportedly spoke to Ms. Martin in the 1990s about the alleged incident has no bearing as to whether Ms. Martin believes that Plaintiff enjoyed the attention she was receiving in June 2019 and later when her accusation became public. Recounting the specific interactions between Ms. Martin and Plaintiff in the 1990s is not necessary to establish the closeness of their relationship, particularly since Ms. Martin testified in *Carroll II* that she and Plaintiff had a "close friendship" in the 1990s and that they have "kept growing closer" since then. **Exhibit A** at tr. 1026:8-12. Therefore, Plaintiff's Rule 403 argument is unpersuasive.

Based on the foregoing, there is no question that Ms. Martin will offer relevant testimony on the issues of damages. Therefore, Plaintiff's last-ditch attempt to preclude her from testifying at trial must be denied.[3]

---

[2] Plaintiff argues that this text message is inadmissible hearsay as an "out-of-court statement of a non-party." Letter at 2, n. 1. But Plaintiff misses the point. President Trump is entitled to question Ms. Martin as to whether she believes Plaintiff enjoyed the attention she was receiving and, in this respect, the text message could be offered as impeachment evidence to the extent necessary.

[3] President Trump objects to Plaintiff's request to call Ms. Martin as a part of her case-in-chief. *See* Letter at 3, n. 2. This request is made well past the applicable deadline, as Martin was not identified as one of Plaintiff's witnesses in the Pre-Trial Order, *see* ECF 227. To permit Plaintiff to add a witness mere *days* before the commencement of trial would severely prejudice President Trump.

## II. Exhibits DX-15, DX-18, DX-20 and DX-21

Plaintiff argues that certain of Defendant's exhibits—DX-15, DX-18, DX-20, and DX-21—are "clearly inadmissible" in light of the Court's January 9, 2024 Order.[4] This position is plainly without merit.

DX-15 and DX-18 are communications between Plaintiff and others wherein she makes clear that her intention is to garner maximum publicity and attention for her accusation against President Trump. *See* **Exhibit D,** DX-15 (July 18, 2019 e-mail to her publicist in which Plaintiff states that the company is "not living up to its phenomenal reputation and getting [her] more radio, digital, podcasts, and blogs."); **Exhibit E**, DX-18 (September 30, 2019 text message to Lisa Birnbach in which Plaintiff states that, at upcoming media appearance, "the main thing is to SELL BOOKS."). Contrary to Plaintiff's contention, these exhibits will not be offered to show that "Plaintiff fabricated her account [in pursuit of] financial interests." Letter at 4 (citing ECF 252 at 17. They have nothing to do with the underlying incident or any plot by Plaintiff to "fabricate" her claims at all. Rather, they are relevant to the issue of emotional harm since they tend to show that Plaintiff wanted (and expected) to receive a significant amount of attention in connection with her accusation, thereby reducing the likelihood that she suffered mental distress due to the amount of attention she ultimately did receive. In other words, this evidence is offered for the permissible purpose of demonstrating that Plaintiff "contributed to the reputational and emotional harm that she claims." ECF 252 at 14, n. 41. Therefore, it is admissible in accordance with the Court's January 24, 2024 Order.

Plaintiff also argues that DX-20 and DX-21 should be precluded. These exhibits both relate to Plaintiff's June 24, 2019 appearance on *Anderson Cooper 360*. *See* **Exhibit F**, DX-20 (transcript of broadcast); DX-21 (video of broadcast). The portion of this broadcast which President Trump seeks to introduce (DX-21 at 8:15-8:38) is relevant to the issue of damages for several reasons.

First, it is relevant to show that Plaintiff "contributed to the reputational and emotional harm that she claims."[5] ECF 252 at 14, n. 41. In her June 24, 2019 interview on *Anderson Cooper 360*, Plaintiff made several controversial comments, including that "most people think of rape as sexy." **Exhibit F** at 8. These comments garnered widespread attention and caused a significant negative backlash against Plaintiff. Indeed, in the years since the *Anderson Cooper 360* appearance, Plaintiff has frequently defended her comments on social media in the face of attacks from other users[6]. Therefore, there is certainly an argument to be made that Plaintiff's appearance on *Anderson Cooper 360* tarnished her reputation, and that her decision to appear on the show contributed to the reputational harm she suffered.

---

[4] Plaintiff absurdly claims that President Trump's counsel "asserted that *any* public statement Plaintiff has made since [President Trump] defamed her is admissible, no matter its context or content." Letter 3. No such representation was ever made in the meet-and-confer call. To the contrary, defense counsel continually made clear that the limitations contained in the Court's January 9, 2024 Order will be adhered to at trial.

[5] It must be noted that the undersign expressed this position to Plaintiff's counsel in an e-mail dated January 11, 2024, but Plaintiff wholly fails to acknowledge it in her Letter. **Exhibit G**.

[6] *See, e.g.*, https://twitter.com/ejeancarroll/status/1272609902415011843;
https://twitter.com/ejeancarroll/status/1302773720633815046;
https://twitter.com/ejeancarroll/status/1392262154754183169.

Second, the *Anderson Cooper 360* video is also relevant for another reason – it is included in Dr. Humphrey's damages model. Plaintiff disputes that the broadcast is contained in Dr. Humphrey's report, *see* Letter at 4, n. 6, but she is wrong. The *Anderson Cooper 360* broadcast which has been identified as DX-20 is Plaintiff's appearance on the show on June 24, 2019. *See generally* DX-20, DX-21. This broadcast was contained in Dr. Humphrey's initial report as T-35. *See* **Exhibit H** at 110.[7] In Dr. Humphrey's Supplemental Report, T-35 is not marked as "removed" and the number of "reception impressions" attributed to T-35 is included in the total count. *See* **Exhibit I** at 30. Thus, it is inarguable that the June 24, 2019 *Anderson Cooper 360* broadcast is contained in Dr. Humprey's revised damages model, and Plaintiff's insistence to the contrary is either a mistake or an intentional effort to mislead the Court.

Further, the harm which Dr. Humphreys attributes to Plaintiff's June 24, 2019 appearance on *Anderson Cooper 360* is not insignificant. She claims that the appearance is responsible for garnering 1,033,782 "receptive impressions." **Exhibit I** at 30. Given that the total number of "receptive impressions" in her damages model (low estimate) is 21,262,348, *id.* at 31, the *Anderson Cooper 360* appearance accounts for nearly 5% of Dr. Humphreys' total damages estimate. Since that appearance was controversial for the reasons stated above, it is crucial that the jury be able to view the appearance to understand its full context and appreciate why President Trump should not be held liable for any harm emanating from that broadcast, which Plaintiff voluntarily chose to appear on.

For the foregoing reasons, Plaintiff's application should be denied in its entirety.

Respectfully submitted,

Michael T. Madaio, Esq.

---

[7] Dr. Humphreys provides a link to T-35, further evidencing that it is the June 24, 2019 broadcast, which can be viewed at https://archive.org/details/CNNW_20190625_040000_Anderson_Cooper_360. *See* **Exhibit H** at 110.