

Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

January 14, 2024

**Via ECF**
The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *E. Jean Carroll v. Donald J. Trump*
               <u>20 Civ. 07311 (LAK) (JLC)</u>

Dear Judge Kaplan:

    We write, on behalf of President Donald J. Trump, in response to Plaintiff's January 12, 2024 letter (the "Letter"), ECF 256, in which Plaintiff's counsel proposed unprecedented hurdles and unsupported "prophylactic measures and curative instructions" in the event President Trump decides to testify in his upcoming trial. This letter, which is the second letter motion that Plaintiff has filed in a two-day period leading up to trial, is nothing more than another desperate attempt to pigeonhole President Trump's defense and to prevent his legal team from preparing for the upcoming trial.

**I.    Plaintiff Improperly Claims That President Trump Has Nothing To Testify About at Trial**

    Plaintiff's counsel begins her letter by improperly suggesting that in light of the Court's recent ruling on Plaintiff's *motion in limine* (*see* January 9, 2024 Order at ECF Dkt. No 252) (the "January 9, 2024 Order"), that "it is not clear, at least to us, what Mr. Trump could permissibly testify to give these limitations [set forth by the January 9, 2024 Order]." Letter at 1. As an initial matter, it is not Plaintiff's counsel's role to surmise that President Trump cannot offer any valuable, admissible evidence in his defense. In any event, even with the limitations placed on President Trump by the January 9, 2024 Order, he can still offer considerable testimony in his defense—testimony that he should not be made to share with Plaintiff before the trial.

    Most notably, Plaintiff is seeking punitive damages. Under New York law, punitive damages may only be assessed under New York law if the plaintiff has established common law malice in addition to the other elements of libel. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 184 (2d Cir. 2000) (citing *Prozeralik v. Capital Cities Communications*, 82 N.Y.2d 466, 626 N.E.2d 34, 41-42, 605 N.Y.S.2d 218 (N.Y. 1993)). To do so, plaintiffs must prove by a preponderance of the evidence that the libelous statements were made out of "hatred, ill will, [or] spite." *Id.* (citing *Prozeralik,* 626 N.E.2d at 42). As the United Supreme Court has held, common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote. *See, e.g., Herbert v. Lando*, 441 U.S. 153, 164 n.12, 60 L. Ed. 2d 115, 99 S. Ct. 1635

(1979) ("any competent evidence, either direct or circumstantial, can be resorted to [to establish common law malice], and all the relevant circumstances surrounding the transaction may be shown…")  Thus, even with the Court's January 9, 2024 Order, which arguably countermands this Supreme Court precedent, President Trump could offer evidence and should be allowed to testify about the circumstances surrounding his statements. Specifically, President Trump should be allowed to testify to the affirmative questions he was asked by reporters, which propagated his response and denial to Ms. Carroll's story in *New York* magazine, and whether he was acting with hatred or ill will when he provided his answers.  He can do this without opining on the actual underlying events.

Relatedly, President Trump can testify about his state of mind, the timing of the statements, and his mitigation or correction of any statements. Specifically, Ms. Carroll "has a duty to minimize the effects of the [purported] defamation." *Wachs v. Winter,* 569 F.Supp. 1438, 1446 (E.D.N.Y. 1983).  President Trump can testify about the circumstances of his comments, as they related to comments in Ms. Carroll's continuous parade of interviews and publicity, which would also be acceptable testimony that is not in violation of the Court's January 9, 2024 Order. Additionally, President Trump corrected his initial statement the day after issuing his initial statement to acknowledge and explain that he met Ms. Carroll on a receiving line at a charity event, which is relevant testimony to show his lack of ill will or spite.

Finally, while completely hamstringing President Trump's ability to discuss virtually anything related to Ms. Carroll's narrative, the Court, for whatever reason, has left open the issue of whether Jessica Leeds and Natasha Stoynoff can testify and has admitted the *Access Hollywood* tape into evidence, President Trump should certainly be allowed to differentiate, and testify those purported incidences from Ms. Carroll's allegations.  Those incidents are not barred by *res judicata* or collateral estoppel, and if the Court is so inclined to admit such evidence, including the Access Hollywood tape, which the Court has already admitted, President Trump has the right to rebut those accounts and provide his version of the events.

## II. Plaintiff's Proposed Prophylactic Measures and Curative Instructions Are Highly Prejudicial and Unprecedented

In her Letter, Plaintiff improperly suggests extreme and unprecedented barriers of entry, in order for President Trump to be allowed to testify in his own defense.  Most egregiously, without any support or legal precedent, Plaintiff suggests that President Trump be required "to state on the record and under oath, out of the presence of the jury, but in open court—that he understands that it is established (only) for purposes of this trial that he sexually assaulted Ms. Carroll, and that he spoke falsely with actual malice and lied what accusing her of fabricating her account and impugning her motives." Letter at 3.  We presume that this is not a kangaroo court of a third-world country where a party to a lawsuit is involuntarily made to say what a court and an opposing party wants them to say.  While President Trump is well aware of the Court's rulings with respect to issue preclusion and the strict confines placed on his testimony, it would be a manifest injustice to require President Trump to proffer his guilt, under oath, for acts that he maintains did not occur and which were only adjudicated by a jury under a preponderance of evidence standard.  The decision in *Carroll II*, which has direct reverberations on the damages sought in this action, is under appeal, and President Trump cannot and should not be made to testify under oath in any particular affirmative manner.

Plaintiff's other proposals are similarly far-fetched, and highly prejudicial. Again, without citing any precedent, Plaintiff's counsel suggests that Defendant's counsel be made to give an offer of proof related to President Trump's testimony. Plaintiff cites Fed. R. Evid. 103(c), which is inapplicable here, as it relates to a Court's statement about the characterization of evidence, but here, through this very response letter, President Trump has more than demonstrated his ability to testify on valid, relevant topics that the Court has not precluded. Plaintiff's counsel also proposes "admonishing Mr. Trump with respect to the conclusions and testimonial implications of the Court's collateral estoppel decision," before President Trump has even opened his mouth to testify. Letter at 3. Again, this is not appropriate, and certainly should not be done in front of the jury. Finally, Plaintiff's counsel suggests informing President Trump of the possible consequences for violating the Court's orders. This is unnecessary and certainly should not be done within the presence of the jury, as making this warning in front of the jury would certainly prejudice President Trump and his defense.

Similarly, Plaintiff proposes that the Court adhere to formulaic curative instructions in the event that President Trump's testimony happens to run afoul of the Court's previous orders. The Court should not adhere to a formulaic, pre-written curative instruction before it hears what testimony President Trump has actually given. There could be numerous questions that require an answer and the curative instructions that Plaintiff's counsel proposes are overly broad, and extremely prejudicial to President Trump as they needlessly discuss the prior trial at length. Most notably, these proposed curative instructions characterize his statements as "false testimony," when in fact the finding of the jury and judgment, which, as the Court is aware is up for appeal, has no bearing on President Trump's state of mind and whether his testimony is *per se* "false."

### III.   The Court Should Not Consider Plaintiff's Attempts at Introducing Out-of-Context Statements

Plaintiff's letter seeking preventative measures and curative instructions is largely based on Plaintiff's mischaracterization of statements made by President Trump to the media and at his trial against the New York State Attorney General. The Court should not consider these statements or Plaintiff's counsel's mischaracterization thereof. Nothing in these statements indicates that President Trump is unaware of the Court's prior orders or demonstrates any intent to defy them.

With respect to the case commenced by the New York State Attorney General in New York State Supreme Court (the "AG Case"), the situation was markedly different from the instant case, where the President Trump was giving a closing statement after a long trial. President Trump properly asked the Court to consider the financial statements, the present state of the Trump Organization's insurance company ("…Zurich, one of the most prestigious property and most prestigious insurance company in the world…",) the lack of witnesses ("There was no witnesses against us," "They have nothing"), the lack of damages ("the banks got all their money paid back. The banks are happy as can be."), and an explanation for one piece of evidence that should have no bearing on damages ("They do have a triplex where they made a mistake and they corrected it immediately when it was made, and it was de minimis, because the amount of money they're talking about compared to the billions of dollars of net worth is irrelevant. It's virtually irrelevant. It's a very small number. It was a mistake that was corrected.") Letter, Ex. B. In the Letter, Plaintiff presents a contrived narrative of what transpired, cherry-picking President Trump's

3

testimony without acknowledging that he talked about the lack of damages and lack of intent, which were elements of the six causes of action that remained post-summary judgment and were the subject of the trial. *See* Letter at 2. Also, contrary to Plaintiff's misrepresentation in her letter, President Trump honored the time limitations imposed by the court.

Given the Court's prior rulings in this case, President Trump's ability to defend himself at trial is already severely limited. Precluding him from taking the stand altogether would be a manifest injustice and a clear violation of his constitutional rights.

For the foregoing reasons, Plaintiff's application should be denied in its entirety. We thank the Court for its attention to this request.

Respectfully submitted,

Alina Habba, Esq.