**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     rkaplan@kaplanhecker.com

January 19, 2024

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    *Carroll v. Trump*, 20 Civ. 7311 (LAK)

Dear Judge Kaplan:

      During her opening argument on January 16, 2024, defense counsel Ms. Habba repeatedly claimed that Ms. Carroll had a legal duty to mitigate or minimize the damages that resulted from Mr. Trump's defamatory statements. Tr. at 58:19-20 ("Duty to minimize the effects. It's not my client's duty; that's hers."). Ms. Habba further argued that Ms. Carroll violated that supposed duty by publicly stating Mr. Trump's claims were false. For example, Ms. Habba asserted as follows:

> I need you as a jury to remember this — and this is very important — Ms. Carroll had a duty to minimize the effect of the statements, not exacerbate them, as I will show she did when she ignored that duty and did the exact opposite and still does today.

*Id.* at 53:22-54:1. Ms. Habba later echoed that point: "Her alleged emotional harm didn't stop her from going back on TV again and again and again. Duty to mitigate." *Id.* at 59:9-11. Ms. Habba even showed the jury a PowerPoint that made prominent and express reference to such a duty.

      Following these arguments, on January 17, 2024, Your Honor directed the parties to address four questions raised by the Court. Our answers are set forth more fully below. In sum, however, we believe that: (1) such a defense is not applicable to a defamation claim under binding New York precedent; (2) even if it were a valid affirmative defense (which it is not), Defendant Donald J. Trump failed to plead it and thus waived it; and (3) even if such a valid affirmative defense existed, and even if he had not waived it, Mr. Trump would bear the burden of proof.

      Because no such "mitigation of damages" defense to defamation exists under New York law, and (alternatively) because Mr. Trump waived any such argument, we respectfully request

that the Court issue a curative instruction to the jury prior to the presentation of closing arguments. Our proposed curative instruction is attached to this letter for the Court's consideration. We further request that the Court preclude the defense from making any argument to the jury that Ms. Carroll had a legal duty to mitigate the damages caused by Mr. Trump's defamatory statements.

\* \* \*

*First*, in making arguments to the jury about a duty to mitigate in her opening, Ms. Habba egregiously misdescribed the law. As the Supreme Court has explained, "[t]he first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974). If Ms. Habba's position were correct, then engaging in such self-help—in other words, publicly stating that defamatory attacks are false—would itself violate a legal duty. Neither precedent nor common sense supports that claim. And it would be particularly shocking to hold that survivors of sexual abuse must keep silent even as their abuser defames them publicly.

Ms. Habba's statements to the jury that Ms. Carroll owed a duty to mitigate or minimize damages are also contrary to New York law as articulated by the state's highest court—which has held that no such duty exists in cases of defamation involving actual malice. As Your Honor correctly noted, in addressing a claim for libel, the New York Court of Appeals held more than 100 years ago that there is no "obligatory burden" for victims of defamation and other intentional torts to avert the "injurious consequences" of a tortfeasor's misconduct. *Den Norske Ameriekalinje Actiesselskabet v. Sun Printing & Publ'g Ass'n*, 226 N.Y. 1, 8-9 (1919). In diversity cases like this one, where the "relevant state law is established by a decision of the State's highest court, that decision is binding on the federal courts." *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 275 (S.D.N.Y. 2018). Accordingly, *Den Norske* is dispositive on this point.

Moreover, the rule that victims of intentional torts involving malicious conduct have no duty to mitigate is well-established in New York law, and *Den Norske* continues to be applied by New York courts. *See, e.g.*, *Kane v. SDM Enterprises, Inc.*, 125 A.D.3d 939, 940 (2nd Dep't 2015) (no duty to mitigate in cases of "reckless and intentional conduct" (citing *Den Norske*, 226 N.Y. at 9)); *Theroux v. Resnicow*, 194 N.Y.S.3d 922 (N.Y. Sup. Ct. 2023) (explaining, under New York law, that "no duty exists to mitigate damages resulting from intentional conduct"); *accord Ridgeview Partners, LLC v. Entwistle*, 354 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Although two federal cases appeared to suggest otherwise in the 1980s, those opinions are unreasoned, unconvincing, and (of course) not precedential. *See Weldy v. Piedmont Airlines*, No. 88 Civ. 628, 1989 WL 158342, at *5 (W.D.N.Y. Dec. 22, 1989), *rev'd*, 985 F.2d 57 (2d Cir. 1993); *Wachs v. Winter*, 569 F. Supp. 1438, 1446 (E.D.N.Y. 1983). Thus, the rule provided by *Den Norkse* controls in New York—and reflects an understanding that is echoed in many other states. *See, e.g.*, *Bedford v. Audrain Cnty. Motor Co., Inc.*, 631 S.W.3d 663, 674 (Mo. Ct. App. 2021) (Montana law); *DZ Bank AG v. Connect Ins. Agency, Inc.*, No. 14 Civ. 5880, 2016 WL 631574, at *23 (W.D. Wash. Feb. 16, 2016) (Washington law); *Wachovia Bank of Ga., N.A. v. Namik*, 620 S.E.2d 470, 473 (Ga. Ct. App. 2005) (Georgia law); *Johnson v. City of Saline,* 151 F.3d 564, 573-74 (6th Cir. 1998) (Michigan law). Following a diligent search, we are unaware of any New York decision holding that victims of defamation with actual malice are obliged to mitigate their damages.

KAPLAN HECKER & FINK LLP

3

We have discovered a handful of sources—none controlling—suggesting that victims of intentional torts do not have a duty to mitigate, but nonetheless have a general duty to avoid "intentionally or heedlessly" exacerbating their injuries. *Clark Operating Corp. v. Yokley*, 120 Misc. 2d 631, 633 (N.Y. City Civ. Ct. 1983); *see also Trepel v. Dippold*, No. 04 Civ. 8310, 2006 WL 3054336, at *7 (S.D.N.Y. Oct. 27, 2006) (citing *Clark Operating*, 120 Misc. 2d 631). Those cases are inapposite for several reasons. For starters, none of them involved defamation, whereas *Den Norkse* speaks directly to the cause of action at issue in this case. Moreover, the principle in those cases is not the argument that Mr. Trump actually made to the jury, and in that respect it is waived, prejudicial, and not properly raised at this exceedingly late juncture. Finally, given that the U.S. Supreme Court has recognized the propriety of defamation plaintiffs speaking out against false and defamatory statements, it would be startling to hold that Ms. Carroll violated the duty described in *Clark Operating* (a state trial court opinion) by publicly disputing Mr. Trump's lies.

*Second*, even assuming Ms. Habba's argument were a correct statement of the law (and it is not), Mr. Trump waived a "mitigation of damages" defense by failing to raise it in his Answer or in the Joint Pretrial Order. ECF 171; ECF 225. In circumstances where it properly applies, "[f]ailure to mitigate damages is an affirmative defense." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994). The general rule—as Mr. Trump has seen in this very case—"is that a failure to plead an affirmative defense results in a waiver." *Id.* (citing Fed. R. Civ. P. 8(c)); *accord Carroll v. Trump*, 88 F.4th 418, 430 (2d Cir. 2023). Likewise, an affirmative defense that "is not alleged in the Pre-Trial Order is generally deemed waived." *Carlson v. Northwell Health Inc.*, No. 20 Civ 9852, 2022 WL 1304453, at *1 (S.D.N.Y. May 2, 2022).

As Your Honor previously noted, Mr. Trump "has slow-rolled his defenses, asserting or inventing a new one each time his prior effort" has failed. *Carroll v. Trump*, No. 20 Civ. 7311, 2023 WL 4393067, at *12 (S.D.N.Y. July 5, 2023), *aff'd*, 88 F.4th 418 (2d Cir. 2023). Mr. Trump did not raise "failure to mitigate" during his prior attempts to assert new, unpleaded defenses. Accordingly, Ms. Carroll—who designed her litigation, discovery, and trial strategy based on an understanding of claims and defenses properly at issue—would be substantially prejudiced by allowing Mr. Trump to assert a new affirmative defense mid-trial. *Morgenstern v. Cnty. of Nassau*, No. 4 Civ. 58, 2009 WL 5103158, at *2 (E.D.N.Y. Dec. 15, 2009) (finding "no question" that permitting defendant to raise unpleaded mitigation defense mid-trial would prejudice plaintiff); *Ragusa v. United Parcel Serv.*, No. 5 Civ. 6187, 2008 WL 4200288, at *2 (S.D.N.Y. Sept. 12, 2008) (denying leave to amend "just days before trial" where need to prepare would be prejudicial).

In response, Mr. Trump may claim that Ms. Carroll was required to object to Mr. Trump's unpleaded affirmative defense during opening statements, rather than in post-argument briefing. But courts routinely grant written requests for curative instructions that follow argument. *See, e.g.*, *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14 Civ. 6544, 2020 WL 5658779, at *7 (E.D.N.Y. Sept. 23, 2020); *United States v. Pizzaro*, No. 16 Cr. 54 (S.D.N.Y. January 25, 2016), ECF 102, 110 at 115-16. And the Second Circuit has cautioned that courts should be cautious in inferring consent to unpleaded issues, "particularly in light of the notice demands of procedural due process." *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 681 (2d Cir. 1985).

*Finally*, if, despite the above, the Court were to allow Mr. Trump to persist in a "duty to mitigate" defense, he would bear the "burden to establish not only that [Ms. Carroll] failed to make diligent efforts to mitigate [her] damages . . . , but also the extent to which such efforts would have

KAPLAN HECKER & FINK LLP

4

diminished [her] damages." *Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, No. 13 Civ. 2576, 2016 WL 7009016, at *5 (S.D.N.Y. Nov. 29, 2016). In assessing that burden, the parties and the jury would face profoundly confusing questions. In some cases, a duty to mitigate could conceivably require a defamation victim to remain silent. In other cases, however, it could conceivably require a defamation victim to speak publicly and to mitigate harm by disputing defamatory statements. Assessing in each case whether speaking out or staying silent could have best mitigated damages would be an exceptionally difficult task even for a trained PR professional; to our knowledge, and consistent with the cases above, there is no precedent or practice for such inquiries in New York. And there can be no question that the defense has failed to offer any evidence—expert or otherwise—as to what they believe would have been appropriate mitigation of damages here.

Accordingly, and in light of Ms. Habba's argument to the jury, we would request that a curative instruction be given to the jury in substantially the form appended hereto. Independently, we would also request that the Court issue an order precluding the defense from making any argument to the jury in summation, either expressly or impliedly, that Ms. Carroll had a legal duty to mitigate the damages caused by Mr. Trump's defamatory statements in June 2019.

Respectfully submitted,

Roberta A. Kaplan

cc:     Counsel of Record