**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL   rkaplan@kaplanhecker.com

January 20, 2024

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                Re:    *Carroll v. Trump*, 20 Civ. 7311 (LAK)

Dear Judge Kaplan:

      We write on behalf of Plaintiff E. Jean Carroll to: (1) address the rule-of-completeness issue that arose with respect to PX-164 and PX-164-T during Ms. Carroll's redirect examination on January 18, 2023; (2) inform the Court of certain evidence that we no longer intend to offer as part of our case-in-chief; and (3) provide the Court copies of two exhibits that we intend to offer on Monday containing false statements posted by Defendant on Truth Social on January 18 and today.

      ***PX-164 and PX-164-T.*** After leaving the courthouse on January 17, Defendant gave a press conference in which he, among other things, repeated his defamatory statements about Ms. Carroll. We learned about that press conference later that evening, promptly prepared a video and transcript of the portion we intended to put into evidence, and sent the video and transcript to Defendant's counsel pre-marked as PX-164 and PX-164-T. The statement of Defendant contained in those exhibits is as follows:

> The witness today, the person I never knew, I never had anything to do with, it's a totally rigged deal, this whole thing is rigged—election interference. But, this is a person I have no idea—until this happened obviously—I have no idea who she was, and nor could I care less. It's a rigged deal, it's a made-up, fabricated story.

Ex. A (PX-164-T).

      On January 18, during Ms. Carroll's testimony, we offered, and the Court received, both exhibits. Tr. 346. After the video was played, however, defense counsel objected on the ground of the rule of completeness. Tr. 347. Although defense counsel did not then identify which other portion of the press conference they believed "in fairness ought to be considered," Fed. R. Evid. 106, the Court gave them time to review the entire video, noting that PX-164 and PX-164-T were

**KAPLAN HECKER & FINK LLP**

2

"not now received" into evidence. Tr. 348. Later that day, Ms. Habba informed us that two additional portions of what Mr. Trump said that night preceding and following the passage we offered should also be played to the jury. Those two portions are as follows:

> I'll be leaving for New Hampshire in other words right after this. And then as to trial today, it was a very interesting day. As you probably noticed, it's a big story, that . . . .
>
> Well, they found out today that she got rid of a lot of evidence, as you probably noticed, she got rid of massive amounts of evidence. And in addition to that she had a rifle or a gun because she said she bought gun bullets or rifle bullets, and it was the opposite I guess, of her gun. And was it licensed? No, it wasn't licensed, so I guess she's got a difficult problem, that's going to be her problem, but she has a gun or a rifle. She didn't really explain which, she might have both because she said she bought rifle bullets so—and it's totally unlicensed, so I assume that's a problem. But the judge was protecting her, he didn't want to go there, 'we don't want to go there, we don't want to hear'—if that were me, it would be a different story. But, with her, the judge is totally protective of them. And frankly, anybody in that court would see it, it's, frankly it's a disgrace. That's probably one of the reasons our country is going to hell.

*See* Video of Donald J. Trump, Newsmax (Jan. 17, 2023), *available at* https://cdn.jwplayer.com/previews/CSndTBy8. A transcript of the full video as attached as Exhibit B.

The rule of completeness "provides that an 'omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019). But there is nothing misleading about PX-164 and PX-164-T as we offered them. They simply contain yet another repetition, this time before Ms. Carroll was off the stand, of Defendant's defamatory claim that he never "had anything to do with" Ms. Carroll and her account of the sexual assault is "a made-up, fabricated story." In fact, the statement we offered as PX-164 and PX-164-T is very similar to other lies that Defendant has told about Ms. Carroll that are already in evidence. *E.g.*, Ex. C (PX-98). But here, the repetition actually matters since it is directly relevant to the question of the proper measure of punitive damages to be decided by the jury. Defendant's commentary about the New Hampshire primary, Ms. Carroll's firearm, her deletion of emails containing death threats, and Your Honor's alleged bias, however, are obviously the sort of irrelevant, unduly prejudicial topics that have been and routinely are excluded. *See United States v. Johnson*, 529 F.3d 493, 500-01 (2d Cir. 2008); *Clarke v. United States*, 257 F. App'x 361, 363 (2d Cir. 2007); *United States v. Mohamed*, No. 18 Cr. 603, 2022 WL 15493545, at *5 (E.D.N.Y. Oct. 26, 2022).

Accordingly, Plaintiff intends to re-offer PX-164 and PX-164-T without the additions proposed by Defendant before we rest our case on Monday.

***Defendant's testimony.*** As Your Honor is aware, we previously expressed our concern that Defendant would use his testimony in this case to turn the trial into a campaign event, violating court orders about the scope of this trial or admissible evidence in service of a political agenda.

KAPLAN HECKER & FINK LLP

3

*See* ECF 256. Our concern in that regard has only increased since trial began. Defendant has made repeated comments about trial evidence within earshot of the jury, Tr. 118, 167; he has sought to develop the public narrative that the Court is not "allowing [Defendant] to properly defend [himself] from false accusations";[1] and he has stated on the record that he "would love" if Your Honor excluded him from the trial for disregarding court orders or engaging is disruptive behavior, Tr. 167.

In response to our original submission, defense counsel argued that Defendant is entitled to testify concerning the Access Hollywood tape and the sexual assault allegations of Natasha Stoynoff and Jessica Leeds.  ECF 265 at 2. In order to keep the issues at this trial focused, we have decided not to offer the designated portions of Defendant's deposition that relate to the Access Hollywood tape and will not request that Natasha Stoynoff and Jessica Leeds be permitted to testify as part of Plaintiff's case-in-chief.[2]

While Defendant has suggested that he would offer testimony relating to common law malice for purposes of the jury's assessment of punitive damages, ECF 265 at 2, defense counsel has repeatedly made clear that they do not understand the implications of the Court's collateral estoppel decision on this issue.[3] Thus, counsel's representation that Defendant will testify that he "corrected his initial [June 21] statement" about Ms. Carroll on June 22, ECF 265, is both a red herring and a red flag: Defendant has never admitted that he sexually assaulted Ms. Carroll, and as recently as January 18,  he both insisted that he "never touched [Ms. Carroll]" and her account is a "made up & disgusting hoax," and vowed to repeat his false claims about her "again, a thousand times."[4] Counsel's promise that Defendant will take the stand to offer a "I corrected my lie" defense not only lacks any foundation, but also underscores the need for the Court to ensure that Defendant's testimony (if any) is properly circumscribed to issues that are relevant and admissible.

***Defendant's most recent statements.*** Finally, we write to provide copies of PX-165 and PX-166, which consist of two statements that Defendant made about Ms. Carroll since she stepped down from the witness stand on January 18. *See* Ex. D. These statements, in which Defendant repeats his false claim that he "never heard of [Ms. Carroll], never touched her, had nothing to do

---

[1]  @realDonaldTrump, Truth Social (Jan. 17, 2023), https://truthsocial.com/@realDonaldTrump/posts/111772960488972433; *see also* @realDonaldTrump, Truth Social (Jan. 17, 2023), https://truthsocial.com/@realDonaldTrump/posts/111772962282359553; @realDonaldTrump, Truth Social (Jan. 17, 2023), https://truthsocial.com/@realDonaldTrump/posts/111772960895519410; @realDonaldTrump, Truth Social (Jan. 17, 2023), https://truthsocial.com/@realDonaldTrump/posts/111772820270629067; @realDonaldTrump, Truth Social (Jan. 17, 2023), https://truthsocial.com/@realDonaldTrump/posts/111772816176755906.

[2] We informed defense counsel of our decision not to offer the Access Hollywood tape on January 17 and not to call Ms. Stoynoff and Ms. Leeds on January 18.

[3] *Compare, e.g.*, ECF 235 at 8 (arguing that testimony from Defendant about "whether he believed Carroll's account" is relevant to common law malice particularly where "Defendant held, and continues to hold, an unwavering belief that his reputation [of Plaintiff's accusation] was truthful and sincere"), *with* ECF 252 at 13-14 (Defendant is precluded "from contending that Ms. Carroll fabricated her charge against him" or offering evidence "tending to suggest that the assault did not occur").

[4]  @realDonaldTrump, Truth Social (Jan. 18, 2024), https://truthsocial.com/@realDonaldTrump/posts/111775416185647393.

**KAPLAN HECKER & FINK LLP**   4

with her," and, as noted above, promises to repeat his lies "a thousand times." *Id.*[5] Such statements are of course relevant to the issue of punitive damages, as they illustrate that Defendant has no intention of ceasing his defamation campaign against Ms. Carroll, even in the face of judicial proceedings in which his liability for defaming her is settled. And while these statements could have been offered through the testimony of Ms. Carroll if they had been made earlier, they can and should be received regardless: the posts were disseminated through Defendant's personal Truth Social page and share many of the distinct characteristics—in appearance, contents, substance, internal patterns, and more—of the other false statements, already in evidence, that Defendant posted to Truth Social. *See* Fed. R. Evid. 901(b)(4); *see also, e.g.*, Ex. C. We will plan to offer PX-165 and PX-166 along with Plaintiff's other remaining exhibits on Monday.

Respectfully submitted,

Roberta A. Kaplan

cc:   Counsel of Record

---

[5] *See also* @realDonaldTrump, Truth Social (Jan. 20, 2024), https://truthsocial.com/@realDonaldTrump/posts/111789825992370683 (PX-166); @realDonaldTrump, Truth Social (Jan. 18, 2024), https://truthsocial.com/@realDonaldTrump/posts/111775416185647393 (PX-165).