

Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

January 21, 2024

**VIA ECF**
The Honorable Lewis A. Kaplan, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007

    Re:    *Carroll v. Trump*
            Civil Case No.: 1:20-cv-7311-LAK-JLC

Dear Judge Kaplan:

    This letter is submitted, on behalf of President Donald J. Trump, in response to the Court's request that both sides submit briefs addressing the following question: "[i]f someone's reputation in part of a community is injured, is the plaintiff or the injured party entitled to recover damages for that injury even if the reputation of the party in another part of the community is benefited?" Trial tr. 459:2-7. For the reasons set forth below, the answer is no; a plaintiff is not entitled to recover damages under this scenario.

    As an initial point, a writing cannot be libel *per se* unless it "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him [or her] ***in the minds of a substantial number of the community***, even though it may impute no moral turpitude to him [or her]." *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023) (citing *Nichols v. Item Publishers*, 308 N.Y. 596, 600-01 (1956) (emphasis added). Thus, Plaintiff's claim—which is only viable on the theory of libel *per se*—fails as a matter of law if she cannot establish that her reputation was harmed with a "substantial number of the community." *Id.*

    More generally, "reputation is the estimation in which one's character is held by his neighbors or associates." *Waiden v. Fiore*, 571 U.S. 277 (2014) (citing Restatement (Second) of Torts § 577, Comment *b* (1976)). Under New York law, fact finders are free to consider many factors when determining the "fair compensation" for injury to reputation, including "'[the] plaintiff's standing in the community, the nature of defendant's statement made about the plaintiff, the extent to which the statement was circulated, the tendency of the statement to injure a person such as the plaintiff, and all of the other facts and circumstances in the case.'" *Ferri v. Berkowitz*, 561 Fed. Appx. 64, 65 (2d Cir. 2014) (citation omitted).

    Given the variety of factors that must be considered—including a plaintiff's "standing in the community," *id.*—it is evident that the impact a defamatory statement had on a plaintiff's reputation must be viewed wholistically. Therefore, at least in the context of the instant matter, whether Plaintiff's reputation was enhanced with a particular segment of the population is a relevant consideration for the jury. Indeed, the "climate of publication and the character and

relationship of the audience to plaintiff must be taken into consideration, as well as the effect that the language complained of could have upon such an audience." *Greyhound Secur. v. Greyhound Corp.*, 11 A.D.2d 390, 392 (1st Dep't 1960) (citation omitted). Thus, the jury must be able to consider whether any harm to Plaintiff's reputation was offset by the benefit she may have received.

Moreover, the question of whether Plaintiff's reputation was enhanced in some respect is relevant to rebut Plaintiff's theory of damages. Throughout this trial, Plaintiff has not made any attempt to differentiate between the impact of two separate and distinct events – the release of *The Cut* article, on the one hand, and President Trump's June 21 and June 22 statements, on the other hand. Instead, Plaintiff and her expert have grouped these events together while simultaneously arguing that *all* of the reputational harm she incurred since June 2019 was due solely to the President Trump's statements, and none from the release of *The Cut* article. While defense counsel has consistently shown that there is a lack of causation between the harm Plaintiff sustained and President Trump's denial—including, among other things, the significant backlash Plaintiff received in the five hour-gap between the release of *The Cut* article and the publication of the June 21 statement—Plaintiff has persisted in her effort to intermingle these two events.

This failure to differentiate between the impact of *The Cut* article and President Trump's response is best illustrated through Professor Humphreys' testimony. In fact, Professor Humphreys testified that she gave no consideration to "the timing between when the article came out and when President Trump responded,":

> Q: And you're aware that Ms. Carroll publicly accused President Trump of sexually assaulting her in June 2019, right?
>
> A: Correct.
>
> Q: You're aware she first made these allegations through a New York Magazine which featured her on the cover, right?
>
> A: Yes, I am.
>
> Q: And you're aware that President Trump never spoke about Ms. Carroll until after this article came out, right?
>
> A: I actually am not aware if President Trump spoke about Ms. Carroll prior to that.
>
> Q: Well, did you look at all at the timing between when the article came out and when President Trump responded?
>
> A: I did not.

Trial tr. 422:17-423:4; *see also id.* 413:6-9 ("Q: Professor Humphreys, did you consider at all whether those sources discussed Ms. Carroll's accusation? A: No. My assignment in this case was to calculate the impressions for the statement of Mr. Trump, so I did not, no.").

Due to Professor Humphreys' improper intermingling of the public's reaction to the *The Cut* article and President Trump's statements, it is evident that her analysis is flawed. To that end, Professor Humphreys was questioned as to whether she considered the positive effects on

Plaintiff's reputation in order to illustrate an inherent flaw in her methodology. Tellingly, she considered the collective harm caused by both *The Cut* article and President Trump's response but failed to take the same wholistic approach when considering the potential benefit. When looking at the positive effects, she only considered President Trump's response. *See* Trial tr. 458:5-8 ("In my damages analysis, I did not count the roughly 75 percent of people who may have felt positively. I counted -- I included only the 25 percent of those impressions that were receptive ***to Mr. Trump's claims***.") (emphasis added). Thus, in the context of Professor Humphreys' damages analysis, the fact that she failed to properly account for any positive effect on Plaintiff's reputation is relevant and must be considered.

        We thank the Court for its attention to this matter.

                                        Respectfully submitted,

                                        Alina Habba, Esq.
                                        For HABBA MADAIO & ASSOCIATES LLP

cc: All Counsel of Record (via ECF)