UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIRCULATION DRAFT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                 Plaintiff,

       -against-

20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JURY INSTRUCTIONS**

*Table of Contents*

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE LAW AND THE VERDICT FORM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    The Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    The Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.    Questions 1 and 2: Compensatory Damages for June 21 and June 22, 2019 Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        2.    Questions 3 and 4: Punitive Damages for June 21 and June 22, 2019 Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   TRIAL PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.    Burden of Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.    Role of the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    Role of the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.   EVALUATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.    What Is and Is Not Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    B.    Evidence of Deleted Messages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C.    Direct and Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.    Deposition Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.    Demonstratives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    F.    Witness Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    G.    Expert Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    H.    Avoidance of Outside Influence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.    DELIBERATION OF THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    A.    Duty to Deliberate / Unanimous Verdict . . . . . . . . . . . . . . . . . . . . . . . 15
    B.    Notes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    C.    Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    D.    All Jurors Required for Deliberation . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.    Selection of Foreperson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    F.    Verdict Form. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    G.    Return of Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    H.    Communications Between Court and Jury . . . . . . . . . . . . . . . . . . . . . . . 18
    I.    Juror Oath . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    J.    Exceptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1  I.      INTRODUCTION

2              Members of the jury, we have reached that point in the trial where you are about to

3  begin your function as jurors. My instructions to you will be in four parts.

4              First, I will describe the verdict form that you will use to address the factual questions

5  that you are to decide and the law to be applied in doing so. Second, I will instruct you about the trial

6  process, including the burden of proof. Third, I will give you instructions concerning your evaluation

7  of the evidence. The fourth and final section of these instructions will relate to your deliberations.

8

9  II.     THE LAW AND THE VERDICT FORM

10             Your verdict in this case will be in the form of answers to "Yes" or "No" questions

11  and questions that ask you to provide, if applicable, dollar amounts. I ask my staff to distribute the

12  verdict form to you now so it may help you to follow the instructions that I am about to give you.

13

14         A.      The Nature of the Case

15             You of course know that the plaintiff in this case, E. Jean Carroll, is suing the

16  defendant, Donald Trump, for money damages for injuries she claims to have suffered as a result of

17  defamatory statements that Mr. Trump made about her.  In the mid-1990s, Ms. Carroll encountered

18  Mr. Trump at the Bergdorf Goodman department store in Manhattan, where he sexually assaulted her.

19  Ms. Carroll's account of being sexually assaulted by Mr. Trump first was published on June 21,

20  2019.  On June 21 and June 22, 2019, Mr. Trump made the defamatory statements at issue in this

21  case, where he publicly denied knowing Ms. Carroll, denied sexually assaulting her, and accused her

22  of making up the assault for ulterior and improper purposes.

23             As I instructed you at the outset of this trial, you are *not* to decide whether Mr. Trump

1    in fact sexually assaulted Ms. Carroll or whether Mr. Trump's June 2019 statements about her were

2    defamatory.  There have been prior proceedings relating to these events, including a previous jury trial.

3    And the jury in that case — as well as other proceedings in this Court — already found Mr. Trump

4    liable for sexually assaulting Ms. Carroll and for defaming her in his June 2019 statements.

5    Specifically, the following facts pertinent to this dispute already have been decided:

6          *First*, Mr. Trump sexually abused Ms. Carroll by forcibly inserting his fingers into her

7    vagina without her consent.

8          *Second*, Ms. Carroll did not make up her claim of forcible sexual abuse by Mr. Trump.

9    Mr. Trump's June 21 and 22, 2019 statements were false.

10         *Third*, Mr. Trump knew when he made his June 21 and 22, 2019 statements that they

11    were false, had serious doubts as to the truth of those statements, or made those statements with a

12    high degree of awareness that they probably were false.

13         *Fourth*, Mr. Trump's June 21 and 22, 2019 statements were defamatory.  In other words,

14    his false statements tended to disparage Ms. Carroll in the way of her business, office, profession, or

15    trade, or they tended to expose her to hatred, contempt, or aversion, or they tended to induce an evil or

16    an unsavory opinion of her in the minds of a substantial number of people in the community.

17         For your purposes, you must accept these points as true no matter what else you may

18    have heard in this trial.  What remains for you to decide are two very limited issues relating to the

19    damages Mr. Trump owes Ms. Carroll for defaming her in his June 2019 statements.  To be clear: you

20    will *not* be determining any damages that Ms. Carroll suffered by reason of the forcible sexual assault

21    itself.  That already has been done. Your focus will be entirely on damages issues resulting from Mr.

22    Trump's  publication of the June 21 and June 22 defamatory statements.

23         First, you must decide whether Ms. Carroll sustained more than nominal damages by

1     reason of Mr. Trump's June 21 and June 22, 2019 statements and, if she did, the amount of money

2     damages that Mr. Trump must pay Ms. Carroll to compensate her for the injury she suffered as a result

3     of each of those statements. These are called compensatory damages.

4             Second, you must decide whether Mr. Trump should be required to pay Ms. Carroll

5     punitive damages as well and, if so, how much he should be required to pay. Punitive damages are

6     intended to punish a defendant and to deter future defamatory statements.

7             I now will discuss these remaining damages issues in turn, with reference to the verdict

8     form that you will be using to decide this case.

9

10     **B.**     **The Verdict Form**

11            **1.**     **Questions 1 and 2: Compensatory Damages for June 21 and June 22,**
12                      **2019 Statements**

13             A person who has been defamed is entitled to fair and just compensation for the injury

14     to her reputation and for any humiliation and mental anguish in her public and private lives that was

15     caused by the defamatory statement in question. Questions 1 and 2 deal with such damages for Mr.

16     Trump's June 21 and June 22, 2019 statements, PX 1 and PX 2, respectively.

17             For each statement, you will award an amount that, in the exercise of your good

18     judgment and common sense, you decide is fair and just compensation for the injury to Ms. Carroll's

19     reputation and the humiliation and mental anguish in her public and private lives which you decide

20     was caused by Mr. Trump's statement. In fixing that amount, you should consider Ms. Carroll's

21     standing in the community, the nature of Mr. Trump's statement made about Ms. Carroll, the extent

22     to which the statement was circulated, the tendency of the statement to injure a person such as Ms.

23     Carroll, and all of the other facts and circumstances in the case. Compensatory damages cannot be

4

1    proved with mathematical accuracy.  Fair compensation may vary, ranging from one dollar, if you

2    decide that there was no injury, to a substantial sum if you decide that the injury was substantial.

3            [N.Y. Pattern Jury Instr. Civil 3:29 (modified); *Ferri v. Berkowitz*, 561 F.
4            App'x 64, 65 (2d Cir. 2014).]

5            You may award compensatory damages only for those injuries that you find Ms.

6    Carroll has proven by a preponderance of the evidence.  Compensatory damages must not be based

7    on speculation or sympathy.  They must be based on the evidence presented at trial and only on that

8    evidence.

9            [*Lewis v. City of New York*, 689 F. Supp 2d 417, 429 (E.D.N.Y. 2010)].

10           Further, you may not award compensatory damages more than once for the same

11   injury.  For example, where a plaintiff prevails on two claims and establishes that he or she is entitled

12   to $100 in total compensatory damages for one injury, the plaintiff is not entitled to $100 in

13   compensatory damages on each claim.  Of course, where different injuries are attributed to the

14   separate claims, a plaintiff is entitled to be compensated fully for all of the injuries.

15           During her opening statement, Mr. Trump's attorney asserted that Ms. Carroll had a

16   duty to mitigate or minimize any damage that she suffered as a consequence of Mr. Trump's

17   statements at issue in this case.  That statement was incorrect.  A person who is defamed has no duty

18   to mitigate or minimize any harm caused to that person by the defamation.  A person who defames

19   a plaintiff is liable to the plaintiff for all damages caused to the plaintiff by the defamation.

20           [*E.g., Den Norske Ameriekalinije Actiesselskabet v. Sun Printing and Publishing
21           Ass'n*, 226 N.Y. 1, 8-9 (1919); *Kane v. SDM Enterprises, Inc.*, 125 A.D.3d 939, 940
22           (2d Dep't 2015).]

23           Question 1 pertains to compensatory damages for Mr. Trump's June 21, 2019

24   statement, and it has two parts.  The first part asks you whether Ms. Carroll has proved by a

1   preponderance of the evidence that she suffered more than just nominal damages from Mr. Trump's

2   June 21, 2019 statement — meaning that she was injured by that statement in any of the respects that

3   I just described to an extent warranting damages of more than $1.   That is the "Yes" or "No"

4   question.   If the answer is "Yes," you then will fill in the amount you award for all defamation

5   damages attributable to the June 21 statement, *excluding* the reputation repair program that was

6   discussed during Professor Humphreys's testimony.   And then, you will fill in the amount of

7   damages, if any, that you award for the reputation repair program for the June 21, 2019 statement.

8   On the other hand, if your answer to the first part of Question 1 is "No" — that is, if

9   you determine that Ms. Carroll has not proved by a preponderance of the evidence that she suffered

10   more than nominal damages as a result of Mr. Trump's June 21, 2019 statement — then you will

11   write down $1 on the second line, and you will leave the third line blank.

12   Regardless of your answer to Question 1, you will go on to Question 2.   Question 2

13   is the same as Question 1, but it relates to the June 22, 2019 statement instead of the June 21

14   statement.   My instructions on answering Question 1 apply to Question 2 as well.

15   Regardless of your answer to Question 2, you will go on to Question 3.

16

17   **2.      Questions 3 and 4: Punitive Damages for June 21 and June 22, 2019**
18   **Statements**

19   In addition to seeking compensatory damages, which I covered while discussing

20   Questions 1 and 2, Ms. Carroll asks also that you award punitive damages.

21   Punitive damages may be awarded for defamation to punish a defendant who has

22   acted maliciously and to deter him and others from doing the same. A statement is made maliciously

23   for purposes of Questions 3 and 4 if it is made:

6

1          (a) with deliberate intent to injure; or

2          (b) out of hatred, ill will, or spite; or

3          (c) in willful, wanton, or reckless disregard of another's rights.

4                    [*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 174 (2d Cir. 2000).]

5          Question 3 pertains to Mr. Trump's malice with respect to the June 21, 2019

6    statement. Question 4 pertains to Mr. Trump's malice with respect to the June 22, 2019 statement.

7    If you answer "Yes" to either Question 3 or Question 4, or both — that is, if you find that Ms. Carroll

8    has proved by a preponderance of the evidence that Mr. Trump acted maliciously, as I have just

9    defined that term for you, in making the June 21 or June 22, 2019 statement about Ms. Carroll — you

10   will write down an amount, if any, that you find Mr. Trump should pay to Ms. Carroll in punitive

11   damages.  If you answer "No" to both Question 3 and Question 4 — that is, if you find that Ms.

12   Carroll has not proved by a preponderance of the evidence that Mr. Trump's June 21 and June 22,

13   2019 statements were made maliciously — you may not award punitive damages.

14                   [*Greenbaum v. Svenska Handelsbanken*, N.Y., 979 F. Supp. 973, 976
15                   (S.D.N.Y. 1997), *on reconsideration sub nom. Greenbaum v. Handlesbanken*,
16                   26 F. Supp. 2d 649 (S.D.N.Y. 1998); *Celle v. Filipino Rep. Enterprises Inc.*,
17                   209 F.3d 163, 184 (2d Cir. 2000); *Corrigan v. Bobbs-Merrill Co.*, 228 N.Y.
18                   58, 66, 126 N.E. 260, 263 (1920)].
19
20                   In arriving at your decision as to the amount of punitive damages to award, should you

21   decide to award any, you should consider:

22          I.       Your view of the nature and reprehensibility, if any, of what Mr. Trump did.

23                   That would include the character of the wrongdoing and Mr. Trump's

24                   awareness of what harm the conduct caused or was likely to cause. In

25                   considering the amount of punitive damages to award, you should weigh this

1          factor heavily.

2     II.     Any actual and potential harm you conclude was caused or threatened by Mr.

3            Trump's conduct.

4     III.    Mr. Trump's financial condition and the impact that any punitive damages

5            you may award will have on him.

6     IV.    The amount, if any, you consider necessary to deter Mr. Trump from

7            continuing to defame Ms. Carroll and to punish his misbehavior.  In that

8            regard, punitive damages may be considered expressive of the community

9            attitude towards one who willfully and wantonly causes hurt or injury to

10           another.

11          In arriving at your decision, you may consider additionally the relevant circumstances

12    of the making of the June 21 and June 22, 2019 statements, provided that they are not too remote.

13    This includes any subsequent statements that Mr. Trump has made about Ms. Carroll that are in

14    evidence, as well as any other circumstances that indicate the existence of any ill will or hostility

15    between the parties.  For Questions 3 and 4, you may take Mr. Trump's other statements into

16    consideration when determining whether he spoke maliciously when he made the June 21 and 22,

17    2019 statements, as well as in determining the amount of punitive damages, if any, that you decide

18    to award insofar as any previous or subsequent conduct by Mr. Trump, in your view, bears on the size

19    of an award necessary to deter him from continuing to defame Ms. Carroll.

20          [*Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979); *Celle v. Filipino Rep.*
21          *Enterprises Inc.*, 209 F.3d 163, 184 (2d Cir. 2000); *Gertz v. Robert Welch*,
22          Inc., 418 U.S. 323, 350 (1974); *Toomey v. Farley*, 2 N.Y.2d 71, 83, 138
23          N.E.2d 221, 228 (1956)].

24          The amount of punitive damages that you award, if any, must be both reasonable and

8

1    proportionate to the actual and potential harm suffered by the plaintiff, and to the compensatory

2    damages, if any, you awarded the plaintiff.

3               Regardless of your answer to Question 3, you will go on to Question 4.   The

4    instructions I gave you on Question 3 apply also to Question 4.   Once you have answered Question

5    4, you will return your verdict in the manner I will describe to you later.

6

7    **III.**    **TRIAL PROCESS**

8               I have described to you the law to be applied to the facts and put to you the questions

9    that require answers in order to resolve the claims in this case. Now I will instruct you about the trial

10    process, beginning with the burden of proof.

11

12    **A.**    **Burden of Proof**

13               Ms. Carroll bears the burden of proving her damages by a preponderance of the

14    evidence.  As I told you at the outset, proof beyond a reasonable doubt, which is the proper standard

15    of proof in a criminal trial, does not apply to a civil case such as this, and you should put it out of

16    your mind.

17               To establish something by a preponderance of the evidence means to prove that the

18    contention of the party with the burden of proof on that question is more likely true than not true.

19    In other words, a "preponderance" of the evidence means that the party with the burden of proof on

20    a particular question has demonstrated that the odds of that party being right is more than 50-50, even

21    if only by a very tiny amount. It refers to the quality and persuasiveness of the evidence, not to the

22    number of witnesses or documents. In determining whether a claim has been proved by a

1   preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless

2   of which party may have called them, and all the relevant exhibits received in evidence, regardless

3   of which party may have produced them.

4           If, after considering all of the evidence, you find the evidence of both parties to be

5   exactly in balance — in other words, that the chances of the plaintiffs' contention or the defendants'

6   contention being correct with respect to any question I have put to you are exactly equal — then Ms.

7   Carroll will have failed to sustain her burden of proof on that question, and you must find for the

8   defendant on that issue.  On the other hand, if Ms. Carroll has persuaded you on a particular question

9   that her contention is more likely correct than the chances that her opponent is right, even if only by

10  a little, then you must find for her on that particular question.

11
12          [Sand, 4 Modern Federal Jury Instructions-Civil P 73.01 (2023); *Waran v.*
13          *Christie's Inc.*, 315 F. Supp. 3d 713, 718 (S.D.N.Y. 2018)].

14

15  **B.   Role of the Jury**

16          You are the sole and exclusive judges of the facts. I do not mean to indicate any

17  opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are

18  not any indication of my views of what your decision ought to be or as to who should prevail here.

19          You are expressly to understand that the Court expresses no opinion as to any of the

20  issues before you or as to how you should decide them.

21

22  **C.   Role of the Court**

23          Now, as I have told you, is my duty to instruct you as to the law, and it is your duty

24  to accept these instructions of law and apply them to the facts as you determine them.

1    You are to draw no inferences from the fact that I may have asked questions of some

2    of the witnesses and made comments to counsel about the manner in which they made their

3    presentations. I did that to bring out the evidence more quickly, to save time, and to ensure the proper

4    conduct of the trial. I did not intend to suggest any view concerning the credibility of any witness or

5    as to which side should prevail here, and you must not take my comments or questions as having

6    done so. Nor should you consider the fact that I took notes and from time to time made entries on my

7    computer. Whatever I may have noted, or any use by me of the computer, may have had nothing to

8    do with what you are concerned with. You are to decide the case fairly and impartially based solely

9    on the evidence and these instructions.

10

11   **IV.    EVALUATION OF EVIDENCE**

12        **A.    What Is and Is Not Evidence**

13            The evidence in this case is the sworn testimony of the witnesses, the exhibits

14   received in evidence, and any stipulations between counsel.

15            What is not evidence, however, is questions, arguments, and objections by lawyers.

16   Nor is any witness testimony that I struck or told you to disregard to be considered in any way.

17            In deciding this case, I remind you that you are obliged to consider only the evidence

18   you have seen and heard in this courtroom. Anything that you may have learned elsewhere that could

19   conceivably have a bearing on this case must be disregarded.

20

21        **B.    Evidence of Deleted Messages**

22            You have heard some evidence and argument during trial concerning whether Ms.

1 Carroll deleted some e-mails or tweets containing death threats from her computer, as well as some

2 mention by defense counsel that she was issued a subpoena in this case.  The questions of whether

3 there was any impropriety in Ms. Carroll's actions and, if so, what if anything should be done about

4 it are questions entirely for the Court, not the jury.

5   To the extent you find it to be relevant, however, you are entitled to consider exactly

6 what materials Ms. Carroll disposed of, when she did so, and what bearing, if any, her actions have

7 on the questions of damages before you.  I do instruct you, however, that Ms. Carroll had no

8 obligation to preserve anything before she anticipated litigation.

9   [Fed. R. Civ. P. 37(e); *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir.
10   2023); *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 174 (S.D.N.Y. 2022).]

11

12 **C.**  **Direct and Circumstantial Evidence**

13   Now that I have covered the instructions for certain specific evidence, I will give you

14 instructions with respect to the evidence more generally.  There are two types of evidence which you

15 properly may use in reaching your verdict.

16   One type of evidence is direct evidence.  Direct evidence is when a witness testifies

17 about something he or she knows by virtue of his or her own senses — something he or she has seen,

18 felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.

19   The other kind of evidence is circumstantial evidence.  Circumstantial evidence is

20 evidence which tends to prove a disputed fact by proof of other facts.  Circumstantial evidence is of

21 no less value than direct evidence.  It is a general rule that the law makes no distinction between

22 direct evidence and circumstantial evidence but simply requires that your verdict must be based on

23 a preponderance of *all* the evidence presented.

1

2  **[D.   Deposition Testimony**

3  Some of the testimony before you is in the form of videotaped depositions that were

4  received in evidence. A deposition is simply a procedure where, prior to trial, the attorneys may

5  question a witness or an adversary party under oath before a court stenographer. You may consider

6  the testimony of a witness given at a deposition according to the same standards you would use to

7  evaluate the testimony of a witness if given live at trial.]

8

9  **E.   Demonstratives**

10  There were times during the course of the trial where counsel for each side had

11  marked and showed to you visual aids called demonstratives. They were shown to you to help you

12  understand the evidence as it came in. They are not themselves evidence, and they were used only

13  as a manner of convenience, so you should consider them accordingly.

14  [*Cerveceria Modelo de Mexico, S. De R.L. de C.V. v. CB Brand Strategies, LLC*,No.
15  21-CV-1317 (S.D.N.Y 2023)].

16

17  **F.   Witness Credibility**

18  You have had the opportunity to observe the witnesses. It is up to you to decide how

19  believable each witness was in his or her testimony in this case, subject to the fact that you are

20  required to accept as true that (1) Mr. Trump sexually abused Ms. Carroll; (2) his June 21 and 22,

21  2019 statements were false; (3) Mr. Trump knew they were false or made them with a high degree

22  of awareness that they probably were false; and (4) his June 21 and 22, 2019 statements defamed Ms.

23  Carroll. You are the sole judges of the credibility of each witness and of the importance of each

1    witness's testimony. In deciding the weight to give to the testimony of a witness, you should use all

2    the tests for truthfulness that you would use in determining matters of importance to you in your

3    everyday life.

4             Your decision whether or not to believe a witness may depend on how that witness

5    impressed you. You watched each witness testify. Everything a witness said or did on the witness

6    stand [or in the deposition excerpts that you saw] counts in your determination.  Did the witness

7    appear to be frank, forthright, and candid?   Or did the witness answer questions on direct

8    examination in a responsive and forthcoming manner but answer questions on cross-examination

9    evasively or unresponsively? You should consider the opportunity the witness had to see, hear, and

10   know the things about which he or she testified, the accuracy of the witness's memory, the

11   reasonableness and probability of the witness's testimony, and its consistency or lack of consistency

12   and its corroboration or lack of corroboration with other credible testimony.

13             In evaluating a witness's credibility, you should use your common sense, your good

14   judgment, and your own life experience.  Further, you are to perform the duty of evaluating witnesses

15   without bias or prejudice as to any party, and you are to perform that duty with an attitude of

16   complete fairness and impartiality.

17             Finally, should you, in the course of your deliberations, conclude that any witness has

18   intentionally testified falsely as to a material fact during the trial, you are at liberty to disregard all

19   of his or her testimony on the principle that one who testifies falsely as to one material fact may also

20   testify falsely to other facts.  But credibility is not necessarily an all or nothing proposition.  You may

21   accept so much of any witness's testimony as you believe to be true and accurate and reject only such

22   parts, if any, that you conclude are false or inaccurate.

1    **G.    Expert Witness**

2    You also have heard over the course of this trial from an expert witness, specifically

3    Professor Humphreys.  An expert witness is a person who, by education and experience, has become

4    expert in some art, science, profession, or calling. Under the rules of evidence, expert witnesses may

5    state their opinions as to matters in which they profess to be an expert and may also state the reasons

6    for their opinions.  The purpose of expert testimony is to assist you in understanding the evidence

7    and in reaching an independent decision.

8    In weighing an expert's testimony, you may consider the expert's qualifications, his

9    or her opinions, the bases for the expert's opinions, and all of the other considerations I just described

10   to you in evaluating a witness's credibility.  You may give the expert testimony whatever weight, if

11   any, you find it deserves in light of all the evidence in this case.  You should not accept the expert

12   witness's testimony just because she is an expert.  Even with an expert witness, you should use your

13   common sense, your good judgment, and your own life experience.

14   You may give the expert's testimony as much weight, if any, as you think it deserves

15   in light of all the evidence.  You also may reject the testimony of an expert witness in whole or in

16   part if you conclude the reasons given in support of an opinion are unsound or if you for other

17   reasons do not believe the expert witness.

18

19   **H.    Avoidance of Outside Influence**

20   As you know, this case has attracted a great deal of media attention.  Until a verdict

21   is released and you are discharged, you must continue to insulate yourself from all information about

22   this case, except what has come to you in this courtroom.  That means no reading, watching, or

1    listening to media coverage or commentary about the case or comments from anyone else, including

2    your friends and loved ones.  You are to be sealed from other information.  And if anything happens

3    that results in some exposure to some outside source, you are obligated to report it to the Court.

4

5    **V.**    **DELIBERATION OF THE JURY**

6        **A.**    **Duty to Deliberate / Unanimous Verdict**

7            You now will retire to decide the issues submitted for your consideration.  It is your

8    duty as jurors to consult with one another and to deliberate with the goal of reaching an agreement.

9    Each of you must decide for yourself the answers to the questions I have posed, but you should do

10    so only after considering the case with your fellow jurors, and you should not hesitate to change an

11    opinion when convinced that it is mistaken.  Your answers to each question must be unanimous, but

12    you are not required to give up your honest convictions concerning the effect or weight of the

13    evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.

14    Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without

15    regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience

16    appears to be in accordance with the truth.

17

18        **B.**    **Notes**

19            Let me remind you, members of the jury, that any notes you may have taken during

20    the trial are for your personal use only.  You each may consult your own notes during deliberations,

21    but any notes you may have taken are not to be relied upon during deliberations as a substitute for

22    the collective memory of the jury panel.  Your notes should be used as memory aids but should not

16

1    be given precedence over your independent recollection of the evidence.  If you did not take notes,

2    you should rely on your own independent recollection of the proceedings and you should not be

3    influenced by the notes of other jurors.  I emphasize that notes are not entitled to any greater weight

4    than the recollection or impression of each juror as to what the testimony may have been.

5           Again, each of you must make your own decision about the proper answer to each

6    question based on your consideration of the evidence and your discussions with your fellow jurors.

7    No juror should surrender his or her conscientious beliefs solely for the purpose of returning a

8    unanimous verdict.

9

10    **C.**    **Citations**

11           During your deliberations, you will have access to a printed copy of the instructions

12    I am now reading to you.  You will see that the printed copy of the instructions contains a number

13    of legal citations, which appear in brackets.  Those citations were included to aid the lawyers and me,

14    and you are to ignore them in your deliberations.  I have instructed you on the principles of law

15    applicable to this case, and you must apply them in the manner that I have explained them to you.

16    I will describe in a moment what you should do if you require a further explanation of any of my

17    instructions.

18

19    **D.**    **All Jurors Required for Deliberation**

20           You are not to discuss the case until all jurors are present.  Four or five jurors together

21    is only a gathering of individuals.  Only when *all* jurors are present do you constitute a jury, and only

22    then may you deliberate.

1    **E.    Selection of Foreperson**

2          When you retire, you must elect one member of the jury as your foreperson.  That

3    person will preside over the deliberations and speak for you here in open court.

4          The foreperson will send out any notes and, when the jury has reached a verdict, he

5    or she will notify the Officer that the jury has reached a verdict.

6

7    **F.    Verdict Form**

8          As you have seen, the verdict form that each of you has consists of questions

9    concerning the important issues in this case.  As I have explained, your answer to one question will

10   determine whether and how you answer a subsequent question, and the verdict form indicates how

11   you should proceed through the form.  It is important to follow these instructions, because you should

12   answer every question except where the verdict form indicates otherwise.  Further, please do not add

13   anything that is not called for by the verdict form.

14

15   **G.    Return of Verdict**

16          After a unanimous decision has been reached, you will record your answers on one

17   copy of the verdict form.  The foreperson will fill in the form.  Then each juror will write his or her

18   juror number — no names, please! — at the bottom of it and advise the Officer that a verdict has

19   been reached.  Do not give the verdict form to the Officer.  The foreperson should place it in an

20   envelope and bring it with him or her when you return to the courtroom.

21          I stress that each of you should be in agreement with the verdict that is announced in

22   court.  Once your verdict is announced by the foreperson in open court and/or officially recorded, it

18

1    ordinarily cannot be revoked.

2

3    **H.    Communications Between Court and Jury**

4             If during your deliberations you want me to discuss further some of the instructions

5    on the law that I have given you, the foreperson should send out a note through the Officer in a sealed

6    envelope asking for anything you may wish to hear again.

7             If you wish to have testimony read to you, it can be done, but I ask you to do so only

8    when you have exhausted your collective recollection and are certain that you need it.  If you do need

9    to have testimony read, then I ask you to state precisely in your note what you want.

10            We will be sending the exhibits into the jury room with you.

11            If you communicate with the Court before reaching a verdict, you must never indicate

12   to the Court how you are divided unless I specifically ask for it.

13

14   **I.    Juror Oath**

15            You are reminded that you took an oath to render judgment impartially and fairly,

16   without prejudice, sympathy, or fear, based solely upon the evidence in the case and the applicable

17   law.  And I want to elaborate for a moment upon your role under that oath.

18            First of all, you must accept as true the facts I have explained to you that were decided

19   in a previous lawsuit.  You may not properly question these.  In all other respects, you as jurors are

20   the judges of the facts.

21            I remind you that nothing I have said or done should be taken by you as indicating

22   any view on my part as to what your conclusion should be about the facts — about what, if any,

1   damages Ms. Carroll is entitled to. But in determining Ms. Carroll's damages — that is, in reaching

2   your decision as to the facts — it is your sworn duty to follow all of the rules of law as I have

3   explained them to you. You may not disregard or question any rule I have stated to you. You must

4   not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your

5   duty to apply the law as I have explained it to you, regardless of the consequences. And that applies

6   to all of the law I have given you.

7               [Tenth Circuit Criminal Pattern Jury Instructions § 1.04 (2021) (modified)].

8

9               Folks, jury service is a duty of citizenship; it is also a privilege. The jury system is

10   *the* bedrock of our justice system — indeed, the right to a trial by jury is enshrined in two separate

11   amendments to our Constitution. Everything we have done here these past two weeks has been to

12   enable you to decide this case fairly.

13               The jury embodies what is perhaps the most fundamental idea of our nation — that

14   "We the People" created it and "We the People" govern it. Indeed, the Constitution begins:

15               "We the People of the United States, in Order to form a more perfect Union, establish

16               Justice, insure domestic Tranquility, provide for the common defence, promote the

17               general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity,

18               do ordain and establish this Constitution for the United States of America."

19               "We the People." You, ladies and gentlemen of the jury — you stand in for all of "the

20   People." And to you is committed a vital role in our constitutional system.

21               Your role dates back to the earliest days of our nation. The Constitution vests the

22   judicial power of the United States in one supreme court and in those other courts that Congress sees

1    fit to establish.  This is one of those courts.  This court in fact has been functioning since 1789.  It

2    was the very first U.S. court to hold session under our then-new constitution.  It did so even before

3    the first session of the United States Supreme Court.  And as jurors, you are part of this Court.

4               Since those earliest days in our nation's history — through wars, through economic

5    depressions, through pandemics — jurors like you have been asked to decide cases.  And your role

6    is just the same as the role of the countless jurors before you.  You will be entirely fair and impartial

7    to both parties.  You will decide the case only on the evidence before you.  You will decide the case

8    on the basis of my instructions on the law.  This is an important task – doing justice fairly and

9    impartially.  I am confident that you will fulfill your duty with the utmost care.

10

11    **J.**    **Exceptions**

12               Members of the jury, I ask you to remain seated for a moment while I confer with the

13    attorneys.