UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
E. JEAN CARROLL,

                              Plaintiff,

              -against-                                            20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION ON DEFENDANT'S
## MOTION FOR A MISTRIAL OR OTHER RELIEF

              Appearances:

                                        Roberta Kaplan
                                        Shawn Crowley
                                        Matthew Craig
                                        Trevor Morrison
                                        KAPLAN HECKER & FINK LLP
                                        *Attorneys for Plaintiff*

                                        Alina Habba
                                        Michael T. Madaio
                                        HABBA MADAIO & ASSOCIATES LLP
                                        *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

              This is a defamation case brought by writer E. Jean Carroll against Donald Trump for

certain statements Mr. Trump made while he was president in June 2019 shortly after Ms. Carroll

publicly accused him of sexually assaulting her in the mid-1990s. Ms. Carroll filed this case ("*Carroll*

2

*I*") in November 2019.[1]  Liability was determined on a motion for partial summary judgment.[2]  Trial

began on the issue of damages only on January 16, 2024.  It culminated on January 26, 2024 with a

plaintiff's verdict of $83.3 million.[3]

During the trial, Mr. Trump moved for a mistrial on the ground that Ms. Carroll, in her

trial testimony in this case, "admitted that she deleted multiple e-mail messages pertaining to purported

death threats made to her."[4]  The motion ignored, among other things, the facts that (a) Ms. Carroll had

---

[1]

Ms. Carroll brought a second, closely related action against Mr. Trump ("*Carroll II*") in November 2022.  She there brought a sexual battery claim for the underlying assault and a defamation claim for a statement Mr. Trump made in October 2022.  *Carroll II* was tried in this Court in April and May 2023 to a plaintiff's verdict on both claims.

[2]

*Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152 (S.D.N.Y. Sep. 6, 2023).

[3]

The Court assumes familiarity with its prior decisions in this case and in *Carroll II*, which detail the facts and procedural histories of both cases.  *E.g.*, Dkt 32, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), *rev'd in part, vacated in part*, 49 F.4th 759 (2d Cir. 2022); Dkt 73, *Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); Dkt 96, *Carroll v. Trump*, 635 F. Supp. 3d 229 (S.D.N.Y. 2022); Dkt 145, *Carroll v. Trump*, No. 20-CV-7311 (LAK) ("*Carroll I*"), 2023 WL 2441795 (S.D.N.Y. Mar. 10, 2023); Dkt 173, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 (S.D.N.Y. July 5, 2023); Dkt 200, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5017230 (S.D.N.Y. Aug. 7, 2023); Dkt 208, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894 (S.D.N.Y. Aug. 18, 2023); Dkt 214, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5731152 (S.D.N.Y. Sep. 6, 2023); Dkt 232, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 7924698 (S.D.N.Y. Nov. 16, 2023); Dkt 38, *Carroll v. Trump*, No. 22-CV-10016 (LAK) ("*Carroll II*"), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023); *Carroll II*, Dkt 56, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023); *Carroll II*, Dkt 92, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 3000562 (S.D.N.Y. Mar. 20, 2023); *Carroll II*, Dkt 95, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2652636 (S.D.N.Y. Mar. 27, 2023); *Carroll II*, Dkt 96, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023), *Carroll II*, Dkt 212, *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082 (S.D.N.Y. July 19, 2023).

Unless otherwise indicated, Dkt references are to the docket in this case.

[4]

Dkt 271 (Def. Letter) at 1.

acknowledged nearly a year earlier having deleted such materials, and (b) Mr. Trump did not even suggest that he had sought to recover the deleted material by discovery or otherwise in the intervening period. The Court immediately denied the motion, which was without merit.

Later during the trial, Mr. Trump filed a purported letter motion again seeking a mistrial on essentially the same grounds.[5] Alternatively, he requested either an order striking certain of Ms. Carroll's testimony and precluding part of her compensatory damages claim or an adverse inference charge to the jury."[6] These requests also were without merit, and the Court in effect denied *sub silentio* almost all of the relief sought. This memorandum explains all of those rulings.

### *Facts*

I.      *Procedural Background of Carroll-Trump Litigation*

A summary of the procedural history of *Carroll I* and *Carroll II*, as set forth by this Court in a recent decision, is reproduced below:

"Ms. Carroll brought this case[, *Carroll I*,] in November 2019. Her sole claim was for defamation for statements Mr. Trump made on June 21, 22, and 24, 2019 in relation to Ms. Carroll's sexual assault accusation, as any claim for the sexual assault itself almost certainly would have been barred by the statute of limitations.

For several years, the parties litigated in this Court and in the Second Circuit and the District of Columbia Court of Appeals whether the United States should be

---

[5]      *Id.*

[6]      *Id.*

substituted for Mr. Trump as the defendant in *Carroll I* under the Westfall Act based on the theory that Mr. Trump was an 'employee' of the United States within the meaning of the Westfall Act who acted within the scope of his employment in making the allegedly defamatory statements in 2019. This Court did not proceed to trial in *Carroll I* while those issues remained unresolved . . . .

In May 2022, New York enacted the Adult Survivors Act ('ASA'), which, effective in late November 2022, gave adult victims of sexual assault a one-year period within which to bring previously time-barred tort claims for sexual offenses against the alleged perpetrators. Ms. Carroll then brought *Carroll II*, in which she asserted claims against Mr. Trump for battery based on the alleged sexual assault and for defamation based on an October 2022 statement by Mr. Trump . . . .

By early February 2023, both *Carroll I* and *Carroll II* had been scheduled for trial in April 2023. Later that month, Ms. Carroll [and Mr. Trump each] moved *in limine* in each case [with respect to certain evidentiary issues]. But by late March, the Westfall Act issues in *Carroll I* remained unresolved. So on March 20, 2023, the Court adjourned the *Carroll I* trial *sine die* in view of the still unresolved Westfall Act issues and the possibility that issue preclusion as a result of a judgment in *Carroll II* conceivably could make a trial of *Carroll I* unnecessary. Trial of *Carroll II* remained scheduled to begin on April 25, 2023 . . . .

*Carroll II* was tried in this Court in April and May 2023. The jury unanimously determined that Mr. Trump [had] sexually abused Ms. Carroll and defamed her in his October 2022 statement. And on July 11, 2023, following decisions in *Carroll I* by the

Second Circuit and the District of Columbia Court of Appeals, the government informed the parties and the Court of its decision not to renew its Westfall Act certification in this case, thus paving the way for the long delayed trial of *Carroll I*. On September 6, 2023, this Court determined that Ms. Carroll was entitled to summary judgment on each liability element of her defamation claim in this case [with respect to Mr. Trump's June 21 and June 22, 2019 statements], based in part upon the jury's verdict in *Carroll II*. The trial in this case therefore [was] limited to the issue of damages."[7]

## II.    Ms. Carroll's Disclosure of the Electronic Message Deletions

Mr. Trump apparently would have the Court believe that Ms. Carroll's trial testimony concerning her deletion of some threatening electronic messages came as a surprise. That is not consistent with the record. Indeed, as previously noted, Ms. Carroll had given sworn testimony to the same general effect previously beginning nearly a full year before. A summary of that testimony puts recent events in context.

### A.    Ms. Carroll's January 2023 Deposition

Ms. Carroll first testified regarding having deleted threatening messages during her

---

[7]

*Carroll*, 2023 WL 7924698, at *1-2 (footnotes omitted)

The Court did not grant summary judgment with respect to the June 24, 2019 statement "because neither party adequately addressed whether or not [it] should be granted." *Id.* "On October 17, 2023, Ms. Carroll informed the Court and Mr. Trump that she 'does not intend to pursue defamation liability in connection with [Mr. Trump's] June 24[, 2019] [s]tatement[.]'" *Id.* at *3 (quoting Dkt 220 (Pl. Letter)).

deposition on January 31, 2023:

> Q: "[H]ow many death threats do you recall receiving after you publicly disclosed what Donald Trump did to you?"
>
> A: "I don't remember. I was reading my emails late at night and my initial reaction was to delete them when I saw them. I don't recall."
>
> ...
>
> Q: "Did you ever send them to anybody?"
>
> A: "I deleted them. I deleted them."
>
> Q: "You deleted them. You deleted all of them?"
>
> A: "It was a natural reaction to get them away from me, I was like . . . Of course, now I know better."
>
> Q: "You deleted them, but this is after you came out with the book publicly; correct?"
>
> A: "Yes."[8]

B.   *Ms. Carroll's April-May 2023 Trial Testimony in* Carroll II

Ms. Carroll next testified on direct examination on this issue during the *Carroll II* trial on April 26 and April 27, 2023:

> Q: "What did you do with the [threatening] messages themselves?"
>
> A: "Oh, I deleted them immediately."
>
> Q: "Why did you delete them?"

---

[8]   *Carroll v. Trump*, No. 22-CV-10016 ("*Carroll II*"), Pl. Ex. 59 (Jan. 2023 Dep.) at 73:21-74:24.

A: "Well, they were on my computer. I thought I could handle it just by getting -- deleting them and never seeing them again."[9]

On cross-examination, Mr. Trump's counsel elicited the following testimony from Ms. Carroll:

Q. "Okay. In connection with the discovery in this case, the obligations, you turned over your e-mails to counsel, correct?"

A. "Yes."[10]

. . .

Q: "Do you have any tweets where anyone threatened you?"

A: "Yes. But in the early days, I will just delete those to get them out of my sight."

Q: "When is the early days? Can you fix that time period?"

A. "Within days of when it was first revealed on June 21 in The Cut."[11]


C.    *Ms. Carroll's Recent Trial Testimony in* Carroll I

Most recently, Ms. Carroll testified in this trial, *Carroll I,* on January 17 and January 18, 2024.  She stated on direct examination:

Q: "[W]hat did you do with the other [threatening] messages?"

A: "Two of them I remember, I immediately deleted because they sent images . . . ."

---

[9]      *Carroll II*, No. 22-CV-10016, Dkt 187 (Trial Tr.) at 269:20-25.

[10]     *Carroll II*, No. 22-CV-10016, Dkt 189 (Trial Tr.) at 346:5-7.

[11]     *Id.* at 441:5-10.

. . .

Q. "Why did you delete them, Ms. Carroll?"

A. "When I see messages like that, it's -- my brain reacts, and my body reacts. Like it's going to happen right now. And so the heart races. My pulse was up. My senses heighten. And in order to get rid of that horrible feeling of the heart racing and, you know, my -- I became hyperaware. I just delete, delete, delete. It really helped me, you know, get control of the situation."[12]

On cross-examination, defense counsel elicited the following testimony from Ms. Carroll:

Q. "Now, you said you received threatening messages in your testimony today, correct?"

A. "Yes."

Q. "And you deleted those messages?"

A. "Yes."

Q. "And do you know what happens when you delete a message from your inbox?"

A. "It goes into the trash in my computer, and then the trash is emptied automatically every 30 days, I think."

Q. "Did you ever delete the e-mails from the trash section of your e-mail?"

A. "I probably did."

Q. "So your testimony is that you deleted the messages and then they went to the trash and then you went into the trash and deleted the trash as well, correct?"

---

[12] *Carroll*, No. 20-CV-7311, Trial Tr. at 128:7-129:2.

A. "I didn't go into the trash, I just periodically empty my trash in my computer because it's an old computer and tends to slow down if I have a lot in the trash."

Q. "Did you stop deleting these threatening messages at any point, Ms. Carroll?"

A. "Yes."

Q. "What was that point?"

A. "Actually, I went on deleting most of the replies. I stopped right around the second lawsuit. The one in May, I stopped."

Q. "The first trial we had was when you stopped deleting them?"

A. "Well, no."

Q. "That is correct?"

A. "I don't remember deleting any around that time or since then."

. . .

Q. "Ms. Carroll, my question is, when did you stop deleting them, the messages that you just spoke about?"

A. "Probably 2023."

. . .

Q. "Do you know what discovery is?"

A. "Yes."

Q. "Do you understand that you had a duty to preserve documents?"

A. "I preserve every single one of my posts. I didn't know that the replies, which were just a wave of slime, was part of that. They were just replies. My posts, I never deleted."

Q. "What about e-mails in your inbox?"

A. "No."

Q. "No, you did not delete those?"

A. "No. No, I did not."

Q. "So do you have, in your inbox, all the messages relating to death threats that you spoke about today?"

A. "No. I deleted them early on because I didn't know how to handle death threats. I had no idea. I thought deleting them was the smartest, best, quickest way to get it out of my life."

Q. "Did you delete anything after you filed this lawsuit?"

. . .

A. "I never deleted any of my posts or anything that I thought that was the agreement. May, may have deleted some e-mails. Hated, that were filled with threats. I can't say for sure."[13]

Because of the confusing nature of Ms. Carroll's direct and cross-examinations, the details of her deletions remain unclear.  For example, at one point, defense counsel asked Ms. Carroll if she knew what happened when she removed "message[s] from [her] inbox" — implying deletion of e-mails — but when asked when she stopped deleting those "threatening messages," Ms. Carroll responded that she had continued "deleting most of the replies" — implying that she was talking about Twitter messages instead.[14]  Similarly, the timeline of her deletions remains uncertain.  Ms. Carroll

---

[13]
     *Id.* at 231:10-234:25.

[14]
     *Id.* at 231:15-232:9.

initially stated that she stopped deleting "messages" in "[p]robably 2023," but then immediately made clear that she was referencing "just [Twitter] replies."[15] When explicitly asked about e-mails, she then stated that she "did not" delete any, before responding in the next question that she only "deleted them early on."[16] And to the extent that Ms. Carroll did delete any e-mails, her process for deleting them was not clarified on cross-examination, with defense counsel confusing whether she deleted the messages from her e-mail trash folder or her computer hard drive.[17]

> D.      *Mr. Trump's First Mistrial Motion*

During cross-examination of Ms. Carroll, and in the presence of the jury, Mr. Trump's counsel moved for a mistrial: "Your Honor, at this moment, I feel I have to ask for a mistrial. The witness has just admitted to deleting evidence herself, which are part of her claim of damages, and I haven't seen them. She has no evidence of them. She hasn't turned them over."[18] The Court orally denied the motion and instructed the jury to disregard defense counsel's remarks.[19]

III.     *Facts Relevant to Whether Ms. Carroll Had a Duty to Preserve*

Two other aspects of Ms. Carroll's testimony are relevant here.

---

[15]     *Id.* at 233:6-22.

[16]     *Id.* at 233:23-234:6.

[17]     *Id.* at 231:10-232:2.

[18]     *Id.* at 236:21-25.

[19]     *Id.* at 237:1-3.

First, at her October 14, 2022 deposition, Ms. Carroll testified about the origin of her lawsuits against Mr. Trump, stating that she first contemplated suing Mr. Trump in mid-July 2019 after attorney George Conway suggested she consider doing so.  Before this conversation, Ms. Carroll stated, she had no intention of bringing suit.[20]  Mr. Trump never offered any contrary evidence.

Second, in her recent trial testimony in *Carroll I*, Ms. Carroll acknowledged that she had "receive[d] a subpoena in this matter or in the original [*Carroll II*] matter."[21]  But Mr. Trump never offered any subpoena.  There was no evidence as to (1) what documents it sought, if indeed it ever existed;[22] (2) when, if ever, it was served; or (3) what efforts, if any, Mr. Trump made to enforce it.

### *Discussion*

I.      *The Attempt to Revisit the Mistrial Motion*

As noted above, defendant's counsel moved orally during the trial for a mistrial on the basis of Ms. Carroll's trial testimony.[23]  The Court immediately denied it,[24] partly because it was

---

20

    *Carroll II*, No. 22-CV-10016, Pl. Ex. 58 (Oct. 2022 Dep.) at 205:4-206:16.

21

    *Carroll,* No. 20-CV-7311, Trial Tr. at 233:13-15.

22

    Ms. Carroll, a lay witness, may well have conflated Rule 34 or other requests to produce with a subpoena.

23

    *Carroll,* No. 20-CV-7311, Trial Tr. at 236:21-25.

24

    *Id.* at 237:1-3.

untimely (in light of defendant's awareness of the essential facts for nearly a year before trial[25]) but, more importantly, because the motion made no sense.  Indeed, granting a mistrial would have been entirely pointless.

A mistrial in the relevant context is "[a] trial that the judge brings to an end *without a determination on the merits* because of a procedural error or serious misconduct occurring during the proceedings."[26]  Had a mistrial been declared here, it would not have remedied any improper disposal of electronic communications, if any there was.  It would *not* have ended this case.[27]  It simply would have required dismissal of the jury, the selection of a new jury, and the recommencement of the trial.  The issue of whether the defendant would be entitled to any relief for any improper disposal of electronic communications would have carried forward, unresolved, into the second trial.  Declaring a mistrial would have served no useful purpose.

Undaunted, defendant's counsel, in her written motion, again sought a mistrial.  In substance, she sought reconsideration of the Court's denial of her oral motion in the middle of the trial.  But that application was at least doubly frivolous.  A party seeking reconsideration of a prior order must identify "an intervening change of controlling law, the availability of new evidence, or

---

[25]

        *See supra* at 5-6.

[26]

        *Mistrial*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

[27]

        In some circumstances, a mistrial is dispositive of criminal cases because the Double Jeopardy Clause of the Constitution precludes a second trial of the defendant.  But that has no application in civil cases such as this.

the need to correct a clear error or prevent manifest injustice."[28]  Local Civil Rule 6.3 requires that the moving party "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  Yet Mr. Trump has not done so.  Rather, he relies on the same testimony that the Court heard and considered at trial.  He cites no new or controlling cases on the law of mistrial, let alone any that the Court has overlooked.  He has demonstrated no clear error.[29]  Accordingly, the Court declines to reconsider its mid-trial denial of defendant's mistrial motion.

Had it granted reconsideration, however, it would have denied the motion on the merits because it was entirely baseless and would serve no useful purpose.  The written motion before the Court is no more timely, and granting it would be no more sensible, than the oral motion during the trial.[30]  Indeed, granting it now would be even less sensible.[31]

This case has been tried to verdict.  The jury heard all of the testimony concerning

---

[28]    *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations and quotation marks omitted); *see also Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013).

[29]    Dkt 271 (Def. Letter) at 3-4.

[30]    *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 21-22 (S.D.N.Y. 2010), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010) (explaining that spoliation is a discovery-related issue); *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) ("[r]eopening discovery after the discovery period has closed[, let alone during trial,] requires a showing of good cause.") (citing *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991)).

[31]    *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 507 (D. Md. 2009) ("courts should be wary of any spoliation motion made on the eve of trial"); *see also Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999) ( "While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely.") (citing *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 757 (7th Cir. 1994)).

the disposal of some electronic communications. Both sides argued the alleged significance of Ms. Carroll's actions in their closing arguments.[32]  The Court gave an appropriate instruction on the subject.[33]  And the jury rendered its verdict.  A mistrial at this point would be a bootless exercise.

## II.    Defendant's Other Requested Sanctions

Defendant's letter motion, as an alternative to a mistrial, sought two sanctions pursuant to Federal Rule of Civil Procedure 37(e).  The first was to strike plaintiff's testimony and preclude any award of damages attributable to her receipt of death threats.  The second was to give the jury "an [unspecified] adverse inference charge against Plaintiff relating to her willful violation of her discovery."[34]  The Court denied both requests *sub silentio*, as it submitted the case to the jury without granting either.  It is appropriate, however, to address the Court's reasoning here.

---

[32]    *Carroll*, No. 20-CV-7311, Trial Tr. at 739:13-742:17 (defendant); *id.* at 780:1-781:25 (plaintiff rebuttal).

[33]    *Id.* at 797:14-798:2.  Defendant made no adequate objection to the charge on this point. Indeed, when the Court first proposed an instruction on Ms. Carroll's deleted messages during the charge conference, it was plaintiff's counsel, not Mr. Trump's, that objected and proposed an alternative.  *Id.* at 676:2-677:20.  Defense counsel expressed concern with plaintiff's proposed change as being "too one-sided," but did not provide any further explanation and provided no alternative instruction for the Court to consider.  *Id.* at 677:21-678:2.  And when the Court stated that it would adopt plaintiff's proposed instruction, defense counsel did not object.  *Id.* at 678:3-12.  Nor did they raise any objection after the Court delivered the instruction to the jury the next day.  *Id.* at 812:1-814:2.  Hence, defendant made no substantive objection to the Court's "deleted messages" charge and waived any issue.  *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection"); *Rasanen v. Doe*, 723 F.3d 325, 332-33 (2d Cir. 2013) (concluding that counsel did not preserve its jury instruction objection during the charge conference by failing to cite relevant cases or explain why its version of the instruction was required, and then by ultimately acquiescing in the instruction given).

[34]    Dkt 271 (Def. Letter) at 1, 4-7.

*A.*     *Rule 37(e)*

Rule 37(e) governs the determination of whether electronically stored information ("ESI") — which includes emails and social media material — has been discarded or destroyed at least negligently (often referred to as "spoliation") and the consequences of such behavior.[35]   It provides:

> "(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment."[36]

---

[35]   *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y. 2020) ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (footnote omitted))).

[36]   Fed. R. Civ. P. 37(e).

17

A party seeking spoliation sanctions generally has the burden of establishing each element of its claim.[37]  The question of whether ESI improperly was discarded or destroyed is a matter for determination by the Court.[38]  And the determination of an appropriate sanction, if any, is committed to "the sound discretion of the trial judge."[39]

Accordingly, Mr. Trump was obliged, as a prerequisite to *any relief whatsoever*, to prove to the Court's satisfaction that:

- Ms. Carroll unreasonably failed to preserve ESI "in the anticipation or conduct of litigation," and

- The ESI could "not be restored or replaced through additional discovery," and

- Mr. Trump was prejudiced by the loss of the ESI.[40]

In order to obtain the adverse inference instruction he sought, Mr. Trump was obliged to prove, in

---

[37]

*Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM)(GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001)); *see also Ottoson v. SMBC Leasing and Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (citing *Sekisui Am. Corp. v. Hart*, 945 F.Supp.2d 494, 509–10 (S.D.N.Y. 2013)); *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VMB)(CM), 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019).

[38]

*See, e.g.*, *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (explaining that a court must conclude whether "a party was under an obligation to preserve the evidence that it destroyed . . . whether the evidence was intentionally destroyed, and the likely contents of that evidence." (citing *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998))).

[39]

*Fujitsu Ltd.*, 247 F.3d at 436; *see also John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *West*, 167 F.3d at 779 (courts should mold the appropriate sanction "to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.").

[40]

Fed. R. Civ. P. 37(e).

addition, that Ms. Carroll "acted with the intent to deprive [Mr. Trump] of the information's use in the litigation."[41]

### 1. "In . . . Anticipation or Conduct of Litigation"

The first of the Rule 37(e) prerequisites to any relief "requires the moving party to demonstrate that the spoliating party had an obligation to preserve the evidence at the time it was destroyed."[42] This involves two separate inquiries: "when . . . the duty to preserve attach[es]" and "what evidence must be preserved."[43]

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."[44] Regarding the latter, the 2015 Civil Rules Advisory Committee instructed that "[c]ourts should consider the extent to which a party was on notice that litigation was

---

41

*Id.*

42

*Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 60-61 (quoting *Leidig*, 2017 WL 6512353, at *8).

The 2015 amendments to Rule 37(e) did not alter the existing obligations of a litigant to preserve relevant potential evidence. "The duty to preserve ESI imposed by Rule 37(e) incorporate[d] . . . longstanding common law duty." *Resnik v. Coulson*, No. 17-CV-676 (PKC)(SMG), 2019 WL 1434051, at *7 (E.D.N.Y. Mar. 30, 2019) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment); *see Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 61.

43

*Zubulake*, 220 F.R.D. at 216; *see also Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022).

44

*Fujitsu Ltd.*, 247 F.3d at 436; *see also Stanbro v. Westchester Cnty. Health Care Corp.*, No. 19-CV-10857 (KMK)(JCM), 2021 WL 3863396, at *11 (S.D.N.Y. Aug. 27, 2021).

likely and that the information would be relevant."[45]

Ms. Carroll's duty to preserve ESI arose, at the earliest, when she first anticipated litigation. She testified that she did not consider suing Mr. Trump in the initial aftermath of his June 2019 defamatory statements because she did not "know anything about the law."[46] It was not until attorney George Conway in mid-July 2019 explained to her the idea and the process of litigation that she first truly considered suing Mr. Trump.[47] Mr. Trump offered no evidence to the contrary. Accordingly, Ms. Carroll had no duty to preserve any ESI before mid-July 2019. Thus, her deletion of threatening messages "[w]ithin days of when [her accusation against Mr. Trump] was first revealed on June 21 in [T]he Cut"[48] did not occur in anticipation or in the conduct of litigation. At that time, she was under no Rule 37(e) obligation to preserve anything.

To be sure, there is some confusing testimony to the effect that Ms. Carroll deleted some threatening messages or replies to social media posts until "probably" May 2023,[49] but perhaps did so because there was an unexplained "agreement" specifying what she was to retain and what she was free to discard. Regrettably, counsel on both sides let the confusing and imprecise testimony stand without clarification. So while it is possible that Ms. Carroll in fact did dispose of or delete

---

[45]
       Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Leidig*, 2017 WL 6512353, at *8.

[46]
       *Carroll*, No. 20-CV-7311, Trial Tr. at 151:5-12.

[47]
       *Id.* at 151:5-152:3; *Carroll II*, No. 22-CV-10016, Pl. Ex. 58 (Oct. 2022 Dep.) at 205:4-206:15.

[48]
       *Carroll II*, No. 22-CV-10016, Dkt 189 (Trial Tr.) at 441:5-10.

[49]
       *Carroll*, No. 20-CV-7311, Trial Tr. at 233:6-234:6.

some emails and/or replies to her social media posts after the litigation began, it is possible also that there was some agreement affecting document production or retention and that Ms. Carroll simply conformed to the agreement. Certainly, Mr. Trump did not prove the contrary. Nevertheless, the Court assumes (without finding) that Ms. Carroll deleted some ESI after she first anticipated litigation that should have been preserved. As will appear, however, that assumption, even if accurate, would be far from sufficient to warrant relief.

### 2. *Possible Restoration or Replacement*

Even where ESI that should have been preserved in anticipation or conduct of litigation was not maintained, a party moving for sanctions still must establish that the unpreserved information could "not be restored or replaced through additional discovery." In other words, a court may not impose requested Rule 37 sanctions until "the party seeking such sanctions demonstrates that relevant evidence has been lost."[50] Indeed, the advisory committee notes to the 2015 amendments to Rule 37(e) direct that "the initial focus should be on whether the lost information can be restored or replaced through additional discovery."[51] Since ESI frequently is stored across multiple locations, "loss from one source may often be harmless when substitute information can

---

[50] *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 81 (S.D.N.Y. 2022) (quoting *Leidig*, 2017 WL 6512353, at *7); *see also Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y. 2013).

[51] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Equinox Holdings, Inc.*, 592 F. Supp. 3d at 176.

be found elsewhere."[52]

Mr. Trump's counsel have known since Ms. Carroll's January 2023 deposition that she deleted threatening messages. She reiterated that testimony during the *Carroll II* trial in April 2023. Yet Mr. Trump has offered no evidence that he ever even attempted to recover any of these messages through discovery or otherwise. In fact, he does not even *argue* that the messages in question have been permanently lost and are now unrecoverable.[53] This failure alone was sufficient basis to deny the alternative relief he sought.[54]

### 3.    Prejudice

The next question is whether Mr. Trump established prejudice as a result of Ms. Carroll's actions,[55] *i.e.*, that any lost ESI would have supported his position.[56]

---

[52]

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Equinox Holdings, Inc.*, 592 F. Supp. 3d at 176.

[53]

*See generally* Dkt 271 (Def. Letter).

[54]

*Leidig*, 2017 WL 6512353, at *7; *see also Equinox Holdings, Inc.*, 592 F. Supp. 3d at 175-76; *Khaldei*, 961 F. Supp. 2d at 570 ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions." (citing *Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007), *aff'd*, 301 F. App'x 11 (2d Cir. 2008))).

[55]

While the party seeking sanctions generally has the burden of establishing the elements of its claim, Rule 37(e)(1) does not assign the burden of proving prejudice to either party. It instead "leaves judges with discretion to determine how best to assess prejudice in particular cases." *Karsch*, 2019 WL 2708125, at *20 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment); *see also Ungar v. City of New York*, 329 F.R.D. 8, 16 (E.D.N.Y. 2018), *aff'd*, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022) (upholding magistrate judge's placement of burden of proving prejudice on party moving for sanctions). Courts have exercised that discretion to place the burden of proving

prejudice on either the moving and non-moving party, depending on the circumstances of particular cases. Here, in light of defendant's unjustified delay in bringing this motion, the Court holds that he bears the burden of proving prejudice by a preponderance of the evidence. This determination is in keeping with those of several other courts in this Circuit. *E.g.*, *Ungar*, 329 F.R.D. at 16; *Taylor v. City of New York*, 293 F.R.D. 601, 613 (S.D.N.Y. 2013).

56

Rule 37 does not define *prejudice,* and courts have embraced two notably different meanings. The first view is that *prejudice* "may be taken to mean merely that the evidence is probative, similar to the concept of relevance under Fed. R. Evid. 401." *Ungar*, 329 F.R.D. at 15; *see Stanbro,* 2021 WL 3863396, at *14. The second is that *prejudice* "require[s] proof that the evidence was not only probative, but that it would affirmatively support the movant's claim." *Id.* "[C]ourts in this circuit generally require some proof of prejudice in the latter sense before sanctions will issue." *Ungar*, 329 F.R.D. at 15 (citing *Best Payphones, Inc. v. City of New York*, No. 1-CV-3924 (JG)(VMS), 2016 WL 792396, at *5-6 (E.D.N.Y. Feb. 26, 2016), *aff'd as modified sub nom.*, 409 F. Supp. 3d 130 (E.D.N.Y. 2018); *Taylor*, 293 F.R.D. at 613); *accord Ottoson*, 268 F. Supp. 3d at 580; *Creighton v. City of New York*, No. 12-CV-7454 (PGG), 2017 WL 636415, at *21 (S.D.N.Y. Feb. 14, 2017); *Karsch*, 2019 WL 2708125, at *20; *Stanbro,* 2021 WL 3863396, at *14. *But see Equinox Holdings, Inc.*, 592 F. Supp. 3d at 178 (citing *Stanbro,* 2021 WL 3863396, at *15).

This Court holds that the party seeking sanctions must prove that the discarded evidence, had it been preserved, actually would have supported the movant's claim. This would be most consistent with commonly recognized meanings of *prejudice*. *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Damage or detriment to one's legal rights or claims."). It seems to have been the meaning contemplated by the drafters of the 2015 rule amendments — both because they chose to use the word *prejudice* instead of *relevant* or *probative*, and because the advisory committee noted that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. (The October 2014 Agenda Book for the Advisory Committee on Civil Rules provides further support for adopting this definition of prejudice. As reflected in the Committee's April 2014 minutes discussing prejudice, "[t]he party who wants the [lost] information generally is in a better position to explain why information in the category of the lost information may have been important to its case.") And lastly, this approach is most consistent with those of the majority of courts in this Circuit to have considered the issue in the past. *Ungar*, 329 F.R.D. at 15; *Taylor*, 293 F.R.D. at 601; *Karsch*, 2019 WL 2708125, at *20. Of note, the Court of Appeals affirmed one such case in 2022, holding in a summary order that "the district court did not clearly err in concluding that [movant] failed to offer proof that the video *would have corroborated* [movant's] claims, and thus sanctions were unwarranted." *Ungar v. City of New York*, No. 21-1384-CV, 2022 WL 10219749, at *3 (2d Cir. Oct. 18, 2022) (summary order) (emphasis added).

Mr. Trump claims that he was prejudiced by Ms. Carroll's destruction of ESI because evidence of the deleted death threats could have helped "conclusively establish that those death threats [were] not attributable to President Trump's statements" or that Ms. Carroll did not, in fact, receive any death threats.[57] He argues specifically that deleted death threats sent during the alleged "five-hour window," or "gap," between the publication of Ms. Carroll's allegations in The Cut and defendant's first defamatory statement on June 21, 2019 would have shown that he was not the cause of the threats that Ms. Carroll received.[58] He argues also that even deleted threats made after his first statement may have helped his defense by showing that they did not "mirror[]" the language in Mr. Trump's defamatory statements, thereby casting doubt on Ms. Carroll's claims that the statements inspired the threats.[59] Those theories of prejudice are unavailing.

As an initial matter, it is true that the deletion of threats received during the alleged time interval, or "gap," between the publication of Ms. Carroll's book excerpt in The Cut on June 21, 2019 and the publication some time later that day of the first of Mr. Trump's defamatory statements at issue in this case might have been prejudicial. Depending on the language of such deleted threats, Mr. Trump might have used them in support of his argument that death threats received after his own initial defamatory statement were caused by the prior publication in The Cut article. He could have used them also to argue that Ms. Carroll's allegations, rather than his retaliatory statements, caused her to received threatening messages. But there is an insurmountable

---

[57]   Dkt 271 (Def. Letter) at 4.

[58]   *Id.*

[59]   *Id.* at 4, 6.

obstacle to those theories.

As explained above, Ms. Carroll was under no duty to preserve ESI until mid-July 2019.[60]  Thus, while there is a possibility that Ms. Carroll deleted death threats on June 21, 2019 or shortly thereafter, the existence of which might have helped Mr. Trump, she violated no legal duty in doing so.  There was no pending or anticipated litigation.

Mr. Trump argues also that Ms. Carroll prejudiced his defense by deleting messages sent after his June 21, 2019 defamatory statement because those emails may not exactly have "mirrored" the language of Mr. Trump's defamatory statements, thereby perhaps suggesting that Mr. Trump did not cause the threats.[61]  But Mr. Trump's burden here was to show that the loss of any such ESI *would* have supported his defense, not that it *might* have done so.  Moreover, it is at least equally likely that deletion of such messages *benefitted* Mr. Trump by removing from the jury's consideration a significant number of violent threats made against Ms. Carroll in the wake of Mr. Trump's statements.  With fewer examples to show, Ms. Carroll's case for damages was weakened, and Mr. Trump benefitted as a result.

Finally, Mr. Trump seems to suggest that the messages Ms. Carroll states that she deleted may never have existed.[62]  That of course is theoretically possible.  But there is no such evidence, and mere speculation will not suffice.  Ms. Carroll offered extensive proof of the existence

---

[60]

 *See supra* p. 19.

[61]

 Dkt 271 (Def. Letter) at 6.

[62]

 *Id.* at 4.

of death threats through her own testimony and documentary evidence.[63]  More fundamentally, if no

threats existed at all — as Mr. Trump seemed to suggest — then there were no messages that Ms.

Carroll had a duty to preserve.  Thus, Mr. Trump's argument morphs into an attack on Ms. Carroll's

credibility as to her testimony that she deleted some threatening messages.  Indeed, his counsel

argued this on summation.[64]  And while that was a permissible argument, it was not an argument

relevant to the request for Rule 37 sanctions.

As a result, Mr. Trump failed to carry his burden of showing prejudice.  Accordingly,

the Court can impose no sanctions pursuant to Rule 37(e)(1).


4.    *Intent to Deny Other Party of ESI*

The movant bears the burden of proving by clear and convincing evidence[65] "not

merely the intent to perform an act that destroys ESI but rather the *intent to actually deprive another*

*party of evidence.*"[66]  Absent an explicit finding of "intent to deprive," this Court may not impose

---

[63]

See, e.g., *Carroll*, No. 20-CV-7311, Trial Tr. at 125:21-129:12; *Carroll*, No. 20-CV-
7311, Pl. Exs. 122, 124, 126, 128, 130, 132.

[64]

*Carroll*, No. 20-CV-7311, Trial Tr. at 739:13-742:17.

[65]

*Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12,
2018); *Karsch*, 2019 WL 2708125, at *21; *Equinox Holdings, Inc.*, 592 F. Supp. 3d at 175;
*Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67.

[66]

*Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 66 (quoting *Leidig*, 2017 WL 6512353, at
*11) (emphasis added).

Indeed, one of the explicit purposes of the amendments to Rule 37(e) was to prevent
sanctions from being imposed when "the failure to preserve was [not] willful or in bad
faith."  As articulated in the November 2012 Agenda Book for the Advisory Committee on
Civil Rules, a big "goal" of the Rule 37(e) amendments was "to overturn the decision of the

subsection (e)(2) sanctions at all.  Even with such a finding, the sanctions under (e)(2) — adverse

inference instructions and dismissal — are "drastic"[67] and "should not be given lightly."[68]

Here, although the Court need not reach the issue of intent, it nonetheless turns to it

in the alternative.  Mr. Trump has not alleged, and the evidence does not suggest, that Ms. Carroll

acted with the requisite intent.  To the contrary, Ms. Carroll testified that her intent in deleting the

death threats was to "get rid of that horrible feeling" they caused her and to "get control of the

situation."[69]  Moreover, her testimony evidenced her intent to comply with her preservation

obligations to the extent she was aware of them, not an intent to harm or deprive defendant in any

way.[70]  The Court therefore finds that Mr. Trump failed to prove that Ms. Carroll acted with the

intent necessary to permit the "extreme" sanctions sought by Mr. Trump under Rule 37(e)(2).[71]


B.      *Rule 37(b)*

Finally, the defense suggested that Ms. Carroll's deletion of ESI violated a subpoena

---

Second Circuit in *Residential Funding Corp. v. DeGeorge Finan. Corp.*, 306 F.3d 99 (2d Cir. 2002) [and cited by Mr. Trump], which authorized sanctions for negligence.  Not only is the amendment designed to raise the threshold for sanctions, it is also meant to provide a uniform standard for federal courts nationwide. . . ."

[67]

*CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016).

[68]

*Lokai Holdings*, 2018 WL 1512055, at *8 (quoting *Zubulake*, 220 F.R.D. at 219-20).

[69]

*Carroll*, No. 20-CV-7311, Trial Tr. at 128:20-129:2.

[70]

*Id.* at 233:18-22; 235:17-25.

[71]

*Lokai Holdings*, 2018 WL 1512055, at *15.

served in relation to this case,[72] thereby implicating the Court's authority under Federal Rule of Civil

Procedure 37(b)(2) to impose sanctions on a party that fails to "provide or permit discovery" as

ordered by a court.[73]  Yet here, there is no basis for sanctions under Rule 37(b) for two reasons.

       First, while defendant's motion makes passing reference to the existence of a

subpoena, it does not seek sanctions explicitly under Rule 37(b).[74]  Without an explicit request for

sanctions under this provision, the Court declines to construe defendant's motion as one made under

Rule 37(b), not least because doing so would deprive plaintiff of fair notice and an opportunity to

be heard.[75]

       Second, while Mr. Trump at least implies that Ms. Carroll disobeyed a subpoena, he

has not provided this Court with any evidence of what that subpoena demanded or when it was

served.  For that matter, and as already has been stated,[76] the Court has not been made aware of any

evidence at all concerning any Court order or discovery obligation of which Ms. Carroll is in

violation.  Without any concrete evidence on which to base its determination, the Court is unable to

---

[72]
      *See* Dkt 271 (Def. Letter) at 3; *Carroll*, No. 20-CV-7311, Trial Tr. at 233:13-15.

[73]
      Fed. R. Civ. P. 37(b)(2); *see John B. Hull, Inc.*, 845 F.2d at 1176.

[74]
      *See generally* Dkt 271 (Def. Letter).

[75]
      *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 50 (1991) (in "fashion[ing] an appropriate
sanction for conduct which abuses the judicial process," courts "must comply with the
mandates of due process"); *see also In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) ("An
individual must receive notice and an opportunity to be heard before sanctions may be
imposed." (citing *Chambers*, 501 U.S. at 56-57)); *Plaintiffs' Baycol Steering Comm. v.
Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (same).

[76]
      *See supra* p. 12.

consider imposing sanctions under Rule 37(b). In any case, any motion brought now for sanctions pertaining to a discovery issue that defendant has known of for nearly one year would be untimely.

### III.    Timeliness and Discretion

The Court need not reach the issue of an appropriate remedy, as Mr. Trump has failed to carry his burden of showing that sanctions are warranted under Rule 37. Yet even if that were not so, the Court would not grant relief in the present circumstances. Mr. Trump first learned of Ms. Carroll's alleged deletion of ESI more than one year ago,[77] and was reminded of that fact in April 2023 during her testimony in *Carroll II*.[78] Nonetheless, he did not raise the issue with the Court until the middle of cross-examination of Ms. Carroll, *in the presence of the jury*,[79] and with no prior notice to the Court of his concerns or requested relief.[80] Not only were the actions of Mr. Trump's attorney in raising this discovery issue in the presence of the jury needlessly prejudicial to Ms. Carroll, but her motion for sanctions pertaining to a discovery issue that defendant sat on for about one year was

---

[77]

  *Carroll II*, No. 22-CV-10016, Pl. Ex. 59 (Jan. 2023 Dep.) at 73:21-74:20.

[78]

  *Carroll II*, No. 22-CV-10016, Dkt 187 (Trial Tr.) at 269:20-25; *Carroll II*, No. 22-CV-10016, Dkt 189 (Trial Tr.) at 441:5-10.

[79]

  *Carroll*, No. 20-CV-7311, Trial Tr. at 236:21-25.

[80]

  Notably, Local Civil Rule 37.2 governs the process for raising discovery disputes in the Southern District of New York, which covers sanctions sought under Rule 37 and provides that no motion shall be heard "unless counsel for the moving party has first requested an informal conference with the Court . . . ." Yet Mr. Trump *still* has never requested an informal conference with the Court, as is required by Rule 37.2, to discuss Ms. Carroll's alleged deletions and his requested sanctions.

"untimely" under any construction of the term.[81] "It is, quite simply, too late to raise [it] now."[82]

Finally, even if the Court were inclined to grant any relief to Mr. Trump, which it is not, he would not be justified in receiving anything more than what already occurred during trial — that is, cross-examination of Ms. Carroll on her deletion of ESI before the jury and arguing those deletions during summation. Such a remedy was expressly contemplated by the drafters of the 2015 amendment to Rule 37: "[The court may] permit[] the parties to present. . . argument to the jury regarding the loss of information."[83] In addition, the Court instructed the jurors concerning how they were allowed to consider Ms. Carroll's deletion of ESI during their deliberations.[84]   The circumstances did not justify anything more.

---

[81]   *Shamis*, 34 F. Supp. 2d at 886 ("While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely."); *Ali v. A & G Co., Inc.*, 542 F.2d 595, 596 (2d Cir. 1976) (failure to move for sanctions "until the time when the case was actually to be tried [has] placed the court in an intolerable position.").

[82]   *Tri-Cnty. Motors, Inc.*, 494 F. Supp. 2d at 178, *aff'd*, 301 F. App'x 11 (2d Cir. 2008) (citing *Glenn v. Scott Paper Co.*, No. 92-CV-1873 (AMW), 1993 WL 431161, at *17 n.3 (D.N.J. Oct.20, 1993) (finding plaintiff's motion for sanctions untimely when not brought during discovery and after first leveling accusations while defending summary judgment motion)); *see also R.F.M.A.S., Inc. v. So*, 606 F. Supp. 2d 497, 499 (S.D.N.Y. 2009) (finding a motion for Rule 37 sanctions at the summary judgment stage untimely); *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 43-44 (S.D.N.Y. 2014) (finding a motion for discovery sanctions untimely due to the age of the matter, the delay in bringing the motion, and the fact that the information at issue was not newly discovered).

[83]   Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[84]   *See* Dkt 280-4 at 11.

30

*Conclusion*

Mr. Trump's oral motion and his letter motion (Dkt 271) were denied as lacking any

merit.


SO ORDERED.

Dated:          February 7, 2024

_____
Lewis A. Kaplan
United States District Judge