# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his personal capacity,<br><br>*Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY EXECUTION OF THE JUDGMENT PENDING DISPOSITION OF THE POST-TRIAL MOTIONS

HABBA MADAIO & ASSOCIATES LLP
Alina Habba, Esq.
Michael T. Madaio, Esq.
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
(908) 869-1188
ahabba@habbalaw.com

*-and-*

JAMES OTIS LAW GROUP, LLC
D. John Sauer*
William O. Scharf*
13321 North Outer Forty Road, Suite 300
Chesterfield, Missouri 63017
(314) 562-0031
John.Sauer@james-otis.com

\* *pro hac vice* forthcoming

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

LEGAL STANDARDS .........................................................................................1

ARGUMENT .......................................................................................................3

    I.       An Unsecured Stay of Execution Is Appropriate Where, as Here,
           Post-Trial Motions Are Substantially Likely to Affect the Amount
           of the Judgment ................................................................................3

      A.     The Uncertainty of the Bond Amount Warrants an Unsecured Stay ......................3

      B.     Post-trial motions are very likely to reduce the amount of the judgment. ...............4

         1.  The Punitive Damages Award is Excessive and will likely be Reduced ................4

         2.  The Compensatory Damages Award is Likely to be Reduced ...............................7

    II.      An Unsecured Stay of Judgment Will Impose "Minimal" or No Risk
           to the Plaintiff .................................................................................11

      A.     An Unsecured Stay While Post-Trial Motions are Pending Poses
           Minimal Risk ...................................................................................11

      B.     Plaintiff Concedes that President Trump can Satisfy the Judgment .....................12

    III.     Failure to Stay Execution of the Judgment Will Inflict Irreparable Injury............13

    IV.    An Unsecured Stay Until 30 Days After Disposition of Post-Trial
           Motions Is Warranted Under Both Multi-Factor Tests..........................................14

    V.      In the Alternative, the Court Should Authorize a Substantially Reduced Bond....14

CONCLUSION..................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Acevedo-Garcia v. Vera-Monroig*,
　　296 F.3d 13 (1st Cir. 2002)..................................................................13

*Am. Fam. Mut. Ins. Co. v. Miell*,
　　No. C04-0142, 2008 WL 746604 (N.D. Iowa Mar. 19, 2008) .......................................12, 15

*Arnold v. Garlock, Inc.*,
　　278 F.3d 426 (5th Cir. 2001) ..................................................................4

*Bouveng v. NYG Cap. LLC*,
　　175 F. Supp. 3d 280 (S.D.N.Y. 2016) .......................................6, 7, 9, 10

*Carroll v. Trump*,
　　No. 22-CV-10016 (LAK), 2023 WL 4612082 (S.D.N.Y. July 19, 2023)..............................6

*Dillon v. Chicago*,
　　866 F.2d 902 (7th Cir. 1988) ..................................................................2

*Duarte v. St. Barnabas Hosp*,
　　341 F. Supp. 3d 306 (S.D.N.Y. 2018) ..........................7, 8, 9, 10, 11, 14

*Emamian v. Rockefeller Univ.*,
　　2018 WL 2849700 (S.D.N.Y. June 8, 2018) ..........................................10

*FDIC v. Ann-High Assocs.*,
　　No. 97-6095, 1997 WL 1877195 (2d Cir. Dec. 2, 1997).........................................1

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
　　636 F.2d 755 (D.C. Cir. 1980)........................................1, 12, 13

*Graham v. City of N.Y.*,
　　128 F. Supp. 3d 681 (E.D.N.Y. 2015) ..................................................7

*Howell v. Town of Ball*,
　　No. 1:12-CV-00951, 2017 WL 6210869 (W.D. La. Dec. 7, 2017)..............................3, 4, 13

*In re A2P SMS Antitrust Litig.*,
　　No. 12 Civ. 2656 (AJN), 2014 WL 4247744 (S.D.N.Y. Aug. 27, 2014)..............................2

*In re Apollo Grp. Inc. Sec. Litig.*,
　　No. CV 04-2147-PHX-JAT, 2008 WL 410625 (D. Ariz. Feb. 13, 2008) ...............3, 4, 10, 15

*In re Nassau Cnty. Strip Search Cases,*
    783 F.3d 414 (2d Cir. 2015) ............................................................................ 1, 2, 12, 13, 14

*Int'l Wood Processors v. Power Dry, Inc.,*
    102 F.R.D. 212 (D.S.C. 1984) ........................................................................... 11, 12

*Jo Ann Howard & Assocs., P.C. v. Cassity,*
    No. 4:09-cv-01252-ERW, 2015 WL 4478151 (E.D. Mo. July 21, 2015) ............................ 14

*Jowers v. DME Interactive Holdings, Inc.,*
    No. 00 CIV. 4753 (LTS) (KNF), 2006 WL 1408671 (S.D.N.Y. May 22, 2006) ................... 8

*Kaneka Corp. v. SKC Kolon PI, Inc.,*
    No. CV 11-3397 JGB (RZX), 2017 WL 11643347 (C.D. Cal. June 30, 2017) ....... 1, 2, 12, 13

*Klingenberg v. Vulcan Ladder USA, LLC,*
    No. 15-CV-4012-KEM, 2017 WL 4836313 (N.D. Iowa Oct. 25, 2017) .............................. 15

*Lewis v. Am. Sugar Ref., Inc.,*
    25 F.Supp.3d 321 (S.D.N.Y. 2018) ...................................................................... 10

*Lore v. City of Syracuse,*
    670 F.3d 127 (2d Cir. 2012) ............................................................................... 10

*MacCluskey v. Univ. of Connecticut Health Ctr.,*
    No. 3:13-CV-1408 (MPS), 2017 WL 684440 (D. Conn. Feb. 21, 2017) ............................ 8

*MacMillan v. Millennium Broadway Hotel,*
    873 F.Supp.2d 546 (S.D.N.Y. 2012) ................................................................... 11

*Manswell v. Heavenly Miracle Acad. Servs., Inc,*
    No. 14 CV 7114 (MKB) (SMG), 2017 WL 9487194 (E.D.N.Y. Aug. 23, 2017) ................. 8

*Munson v. Diamond,*
    No. 15 CV 00425 (DAB) (BCM), 2017 WL 4863096 (S.D.N.Y. June 1, 2017) .................. 8

*Nken v. Holder,*
    556 U.S. 418 (2009) ....................................................................................... 2, 3, 14

*Noonan v. Becker,*
    No. 14-cv-4084 (LTS) (JLC), 2018 WL 1738746 (S.D.N.Y. Apr. 10, 2018) ....................... 7

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.,*
    786 F.2d 794 (7th Cir. 1986) ............................................................................. 13

iii

*Pelgrift v. 355 W. 41st Tavern, Inc.*,
    14-CV-08934-AJN, 2018 WL 4735705 (S.D.N.Y. Sept. 30, 2018).......................................10

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    No. 19 CIV. 10023 (KPF), 2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) .......................2, 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).........................................................................................................5

*Trump v. Vance*,
    481 F. Supp. 3d 161 (S.D.N.Y. 2020) ...................................................................................4

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014) ............................................................................5, 6, 7, 14

*United States ex rel. Garibaldi v. Orleans Par. Sch. Bd.*,
    CIV.A. 96-0464, 1998 WL 774172 (E.D. La. Oct. 30, 1998).................................................3

*U.S. ex rel. Larkin v. Platt Contracting Co.*,
    324 F.2d 95 (1st Cir. 1963)...................................................................................................2

*United States v. Salus Rehab., Inc.*,
    No. 8:11-CV-1303-T-23TBM, 2017 WL 2730229 (M.D. Fla. Mar. 15, 2017) ....................12

*Vera v. Alstom Power, Inc.*,
    189 F. Supp. 3d 360 (D. Conn. 2016)....................................................................................7

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
    No. 5:14-CV-5262, 2017 WL 11681769 (W.D. Ark. Aug. 31, 2017) ....................................4

## Rules and Statutes

Rules 50 and 59 of the Federal Rules of Civil Procedure.............................................................1, 3

Fed. R. Civ. P. 62 ......................................................................................................................1, 2

Pursuant to Rule 62 of the Federal Rules of Civil Procedure and this Court's equitable authority, Defendant President Donald J. Trump respectfully requests that this Court grant an unsecured stay of the execution of the Court's February 8, 2024, judgment, ECF No. 285, until 30 days after the resolution of President Trump's post-trial motions under Rules 50 and 59 of the Federal Rules of Civil Procedure, which will be filed no later than March 7, 2024.  In the alternative, President Trump requests that this Court grant a partially secured stay of execution until 30 days after the resolution of post-trial motions and authorize President Trump to post a bond in an appropriate fraction of the amount of the judgment.  In addition, President Trump requests that this Court enter a temporary administrative stay of the judgment pending its resolution of this motion, or in the alternative, issue a ruling on this motion by March 4, 2024.

## LEGAL STANDARDS

A district court has authority under Rule 62 to grant an unsecured, or partially secured, stay of execution pending the resolution of post-trial motions and/or appeal.  *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) ("A district court therefore may, in its discretion, waive the bond requirement 'if the appellant provides an acceptable alternative means of securing the judgment.'") (quoting *FDIC v. Ann-High Assocs.*, No. 97-6095, 1997 WL 1877195, at *1 (2d Cir. Dec. 2, 1997)).[1]  "[T]he district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery."  *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760-61 (D.C. Cir. 1980).  "[I]t is within the court's discretion to grant a partially secured or unsecured stay."  *Kaneka*

---

[1] The 2018 amendments to Rule 62 do not alter this authority.  *See generally* Fed. R. Civ. P. 62, Advisory Committee Notes to 2018 Amendments.

*Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2017 WL 11643347, at *2 (C.D. Cal. June 30, 2017); *U.S. ex rel. Larkin v. Platt Contracting Co.*, 324 F.2d 95, 97 (1st Cir. 1963).

In considering whether to grant such a stay of execution under Rule 62, district courts may consider the following "non-exclusive factors":

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*In re Nassau County*, 783 F.3d at 417-18 (quoting *Dillon v. Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988)); *Kaneka Corp.*, 2017 WL 11643347, at *2.

In addition to the district courts' authority to issue unsecured stays under Rule 62, the district courts also possess inherent "equitable powers to stay proceedings … during the pendency" of post-judgment review. *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 19 CIV. 10023 (KPF), 2020 WL 7711522, at *2 (S.D.N.Y. Dec. 29, 2020). It "'has always been held ... that as part of its traditional equipment for the administration of justice a federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" *Id.* (alterations omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 421 (2009)). "Application of this power to stay an order is guided by a 'well-established' four-factor test." *Id.* at *2 n.5 (quoting *In re A2P SMS Antitrust Litig.*, No. 12 Civ. 2656 (AJN), 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014)). "The factors include: '[i] whether the stay applicant has made a strong showing that he is likely to succeed on the merits; [ii] whether the applicant will be irreparably injured absent a stay; [iii] whether issuance of the stay will substantially injure the other parties interested in the proceeding; and [iv] where the public interest lies.'" *Id.* (quoting *In re A2P*, 2014 WL 4247744, at *2 (citing *Nken*, 556 U.S. at 434)).

## ARGUMENT

Here, whether President Trump's request is considered under the non-exclusive five-factor test of *Nassau County*, or the traditional four-factor test for equitable relief of *Nken v. Holder*, the Court should grant an unsecured stay of execution of the judgment until 30 days after disposition of President Trump's forthcoming post-trial motions, which will be filed no later than March 7, 2024.  In the alternative, the Court should grant a partially secured stay.

## I.   An Unsecured Stay of Execution Is Appropriate Where, as Here, Post-Trial Motions Are Substantially Likely to Affect the Amount of the Judgment.

First, an unsecured stay is warranted where the size of the bond, if any, remains uncertain because post-trial motions are very likely to affect the amount of the judgment.

### A.   The uncertainty of the bond amount warrants an unsecured stay.

As multiple courts have held, an unsecured stay may be appropriate before the court rules on post-trial motions where the amount of the judgment is uncertain and likely to be affected by the disposition of post-trial motions.  For example, in *Howell v. Town of Ball*, No. 1:12-CV-00951, 2017 WL 6210869, at *1 (W.D. La. Dec. 7, 2017), the district court granted an unsecured stay pending resolution of post-trial motions, reasoning that the defendant's post-trial "motions under Rules 50 and 59 of the Federal Rules of Civil Procedure," along with plaintiff's motion for attorney's fees, "may affect the amount of damages awarded."  *Id.* at *1.  "Resolution of these motions is warranted, if not necessary, before any further steps are taken to execute the judgment." *Id.* at *1; *see also, e.g., United States ex rel. Garibaldi v. Orleans Par. Sch. Bd*., CIV.A. 96-0464, 1998 WL 774172, at *1 (E.D. La. Oct. 30, 1998) ("Because post-trial motions have been filed and will be filed, the court finds that granting a stay of execution of the judgment would be appropriate pending these motions.").  Likewise, in *In re Apollo Grp. Inc. Sec. Litig*., No. CV 04-2147-PHX-JAT, 2008 WL 410625, at *2 (D. Ariz. Feb. 13, 2008), the district court granted a partially secured

stay because "the damages awarded in this case are on a per-share basis rather than a lump-sum basis," and "[t]hus, the amount of the judgment is uncertain." *Id.* at *2.  As *Howell* reasoned, "the total amount of the judgment is, at this point, disputed by both parties.  Given that fact, as well as the [defendant]'s satisfaction of the relevant factors above, the [defendant] need not furnish security to justify a stay during the pendency of the Post-Trial Motion and the Motion for Attorney's Fees."  *Howell*, 2017 WL 6210869, at *2.

**B.     Post-trial motions are very likely to reduce the amount of the judgment.**

There is a strong probability that the disposition of post-trial motions will substantially reduce, if not eliminate, the amount of the judgment.[2]  President Trump's post-trial motions will present several meritorious issues, but for purposes of this stay motion, President Trump focuses on two issues that the Court has not yet had occasion to consider—the excessiveness of the punitive damages award and the compensatory damages award for emotional injury.

**1.     The punitive damages award is excessive and will likely be reduced.**

First, the punitive damages award is plainly excessive.  Under binding Second Circuit precedent, it violates both the Constitution and the federal common law.  The jury's verdict, as reflected in the judgment, awards $7.3 million in compensatory damages for emotional injuries, plus $11 million in compensatory damages for the reputation repair program, for a total of $18.3

---

[2] On this point, courts have held that the judgment debtor need not show a "probability" of success, but only "a substantial case on the merits when a serious legal question is involved."  *Howell*, 2017 WL 6210869, at *2 (quoting *Arnold v. Garlock, Inc*., 278 F.3d 426, 439 (5th Cir. 2001)); *see also, e.g., Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, No. 5:14-CV-5262, 2017 WL 11681769, at *1 (W.D. Ark. Aug. 31, 2017) ("[T]he volume and complexity of the legal issues implicated in Walmart's post-trial motions show a sufficiently strong likelihood of success on those motions to make the first factor weigh in Walmart's favor—which is not to say the Court thinks it is more likely than not that Walmart's motions will succeed"); *cf. Trump v. Vance*, 481 F. Supp. 3d 161, 164 (S.D.N.Y. 2020) (requiring either a likelihood of success or "sufficiently serious questions going to the merits" to issue a stay pending appeal).  For the reasons stated below, the issues discussed herein satisfy any standard of likelihood.

million in compensatory damages.  ECF Nos. 280, 285.  The jury then awarded $65 million in punitive damages, creating a punitive-to-compensatory ratio of 3.6:1.  *See id.*

Second Circuit precedent calls for the reduction of such excessive awards.  *See, e.g., Turley v. ISG Lackawanna, Inc*., 774 F.3d 140, 165-66 (2d Cir. 2014).  *Turley* involved a suit "for violations of state and federal anti-discrimination statutes, and for intentional infliction of emotional distress under New York law," based on "a pattern of extreme racial harassment in the workplace."  *Id.* at 146; *see also id.* at 147-48 (describing the pattern of extreme racist behavior lasing over three years).  The jury awarded $1.32 million in compensatory damages and $24 million in punitive damages, which the district court remitted to $5 million—a post-remittitur ratio of 3.8:1, very close to the 3.6:1 ratio here.  *Id.* at 147.  Notwithstanding the egregious nature of the conduct, which left the plaintiff "psychologically scarred and deflated," *id.* at 146, the Second Circuit held that, even after it was remitted to $5 million, "the punitive damages award exceed[ed] the bounds of reasonableness."  *Id.* at 164.  The Second Circuit emphasized that a one-to-one ratio provides the best guidepost for the "outermost limit" in cases where the compensatory award is both "imprecise" and "high when compared with similar cases":

> As a general matter, the four-to-one ratio of punitive to compensatory damages awarded is 'close to the line of constitutional impropriety.'  And where, as here, the compensatory damages award is imprecise because of the nature of the injury and high when compared with similar cases, 'a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.'

*Id.* at 165 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).  So also here.  "[T]he compensatory award is particularly high," and "the underlying compensation is … for intangible—and therefore immeasurable—emotional damages."  *Id.*  "Imposing extensive punitive damages on top of such an award stacks one attempt to monetize highly offensive behavior … upon another."  *Id.* at 165-66.

Considering the uniquely egregious nature of the conduct in *Turley*—a three-year long pattern of extreme racist harassment and death threats—the Second Circuit concluded that "a roughly 2:1 ratio of punitive damages to what, by its nature, is necessarily a largely arbitrary compensatory award, constitutes the maximum allowable in these circumstances." *Id.* at 166. But the Court also instructed that, in the great majority of cases, a 1-to-1 ratio would likely be the maximum allowable. *Id.* at 167 ("[T]he Supreme Court has cautioned that, when a compensatory award is particularly high, a 1:1 ratio between compensation and punishment may be the maximum award permitted by the Constitution.").

Under *Turley*, a one-to-one ratio of punitive to compensatory damages, at most, should apply in this case. Considering other "Second Circuit and New York cases" involving defamation claims, *id.* at 166, demonstrates that the compensatory damages awarded here—$18.3 million—are unquestionably high.[3] *See, e.g., Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 348-49 (S.D.N.Y. 2016) (holding that "the compensatory award on Plaintiff's defamation claim is high" when the jury awarded $1.5 million, less than one-tenth of the amount awarded here); *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, at *17 (S.D.N.Y. July 19, 2023) ($2.7 million in compensatory damages for similar conduct, less than 15 percent of the compensatory award here). Reputational and emotional injuries, moreover, are quintessential forms of "imprecise" injury. *Turley*, 774 F.3d at 165; *see also Bouveng*, 175 F. Supp. 3d at 348 (noting "the difficulty in determining the monetary value of Plaintiffs' emotional distress and the damage to her reputation"). Thus, as in *Turley*, "the compensatory damages award is imprecise because of the nature of the injury and high when compared with similar cases." 774 F.3d at 165. Remitting

---

[3] The compensatory damages remain extremely high even when the $7.3 million award for emotional injury is remitted to $125,000, as discussed below.

the punitive damages award would thus be consistent with similar recent decisions of this Court. *See, e.g., Noonan v. Becker*, No. 14-cv-4084 (LTS) (JLC), 2018 WL 1738746, at *8-9 (S.D.N.Y. Apr. 10, 2018), *report and recommendation adopted by* 2018 WL 2088279 (S.D.N.Y. May 3, 2018) (citing *Turley* and awarding punitive damages at a 1:1 ratio in a case involving far more egregious conduct than alleged here); *Bouveng*, 175 F. Supp. 3d at 350 (holding, in a defamation case involving "conduct … at the extreme end of the spectrum," "that a punitive damage award yielding a ratio of no more than 1:1 as to each defendant is appropriate").

2. **The compensatory damages award is likely to be reduced.**

Likewise, the $7.3 million award for compensatory damages far surpasses the permissible bounds for such damages and far exceeds comparable awards in this district, warranting a significant reduction as well.  Reducing compensatory damages, moreover, will require a further reduction of punitive damages pursuant to the one-to-one ratio discussed above.

Under New York law, "a monetary judgment is excessive if it deviates materially from what would be reasonable compensation."  *Bouveng*, 175 F. Supp. 3d at 327 (quotation omitted).  "In determining whether an award deviates materially from what would be reasonable compensation, district courts compare the jury's award to awards allowed in analogous cases involving similar types of injuries."  *Id.* (cleaned up).  "In this Circuit, emotional distress awards ... can generally be grouped into three categories of claims: garden-variety, significant, and egregious."  *Duarte v. St. Barnabas Hosp*., 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018) (cleaned up) (quoting *Vera v. Alstom Power, Inc*., 189 F. Supp. 3d 360, 376 (D. Conn. 2016), and *Graham v. City of N.Y*., 128 F. Supp. 3d 681, 714 (E.D.N.Y. 2015)).  "For 'garden variety' emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the

injury." *Id.* (cleaned up). "Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." *Id.*[4]

That description neatly matches Plaintiff's claim of emotional distress, which underlies the $7.3 million compensatory damages award for non-reputational injury. ECF No. 280, at 1. Plaintiff's evidence as to how the June 21 and 22 statements caused her emotional distress consisted solely of her own testimony about her personal feelings. She did not testify about any physical symptoms of her purported mental distress, much less any long-term physical or emotional effects. She did not present any testimony from a medical expert, did not offer any medical records into evidence, and did not testify that she sought any medical treatment for any emotional harm she may have suffered as a result of the June 21 and 22 statements. In short,

---

[4] *Duarte* provides a helpful collection of cases illustrating "garden-variety" distress, reproduced here verbatim: *MacCluskey v. Univ. of Connecticut Health Ctr.*, No. 3:13-CV-1408 (MPS), 2017 WL 684440, at *15-16 (D. Conn. Feb. 21, 2017) (plaintiff – who had suffered "multiple incidents of sexual harassment over a sustained period" – had established only "garden variety" emotional distress where she testified that "she felt 'ashamed and embarrassed,' was 'afraid to be home alone,' 'afraid to go out in public,' and 'didn't sleep for weeks,' " and continued to suffer from the past harassment, which caused her to "panic" when she felt "somebody behind [her]"; remitting jury's $200,000 emotional distress award to $125,000); *Manswell v. Heavenly Miracle Acad. Servs., Inc.*, No. 14 CV 7114 (MKB) (SMG), 2017 WL 9487194, at *17 (E.D.N.Y. Aug. 23, 2017) (plaintiff had established only "garden variety" emotional distress where she claimed that (1) "she experienced 'extreme anxiety,' 'dreaded going to work,' and 'was fearful at all times' as a result of the harassment she [had] encountered while employed [by defendant]"; and (2) "as a result of the hostility she experienced at work, she felt pains in her chest, fatigue, and sleeplessness," and "would cry at night because she was scared to return to [work] in the morning"), *report and recommendation adopted*, No. 14 CV 7114 (MKB) (SMG), 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017); *Munson v. Diamond*, No. 15 CV 00425 (DAB) (BCM), 2017 WL 4863096, at *8 (S.D.N.Y. June 1, 2017) ("[C]ourts in this District have awarded emotional distress damages in the [garden variety range] based on [ ] general testimony that [a defendant's] discriminatory conduct caused the plaintiff 'continued stress, anger, sadness and frustration,' and that the plaintiff suffered from depression, panic attacks, headaches, nausea, loss of appetite, hives, and severe bouts of insomnia, even after [the plaintiff's] employment was terminated.") (citing *Jowers v. DME Interactive Holdings, Inc.*, No. 00 CIV. 4753 (LTS) (KNF), 2006 WL 1408671, at *12 (S.D.N.Y. May 22, 2006)), *report and recommendation adopted*, No. 15 CIV. 425 (DAB), 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017). *Duarte*, 341 F. Supp. 3d at 321-22.

Plaintiff failed to offer any evidence that her alleged distress was of any significant severity or duration, or that it resulted in any medical, physical, or clinical consequences—or even any extreme emotional effects.[5]

Given the lack of expert testimony, medical diagnosis, medical records, or evidence of any documented physical or psychological effects, Plaintiff's claim for emotional distress is properly classified as "garden variety."  *Duarte*, 341 F. Supp. 3d at 319.  Plaintiff's evidence clearly falls short of establishing the next higher level of emotional injury, *i.e.*, "significant" emotional distress. "In this Circuit, 'significant' emotional distress is generally found only where a plaintiff has offered medical, psychological, or therapist evidence of substantial, long-term psychological harm," *id.* at 320—all of which are absent here.  In fact, Plaintiff's testimony here falls short of the evidence in *Duarte*, where "Plaintiff's vague and subjective complaints of insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches—unsupported by medical corroboration— establish[ed] no more than 'garden variety' emotional distress."  *Id.* at 321.  "Here, … Plaintiff offered no medical evidence whatsoever corroborating her testimony—which itself was quite limited—concerning the emotional distress she suffered…."  *Bouveng*, 175 F. Supp. 3d at 332. "Because cases approving multi-hundred-thousand dollar awards for emotional damages all involve post-traumatic stress disorder or medical evidence of some other psychological harm, … the jury's … award cannot stand."  *Id.* (cleaned up).

---

[5] To the contrary, Plaintiff testified that, in the aftermath of the June 21 and 22 statements, she felt embraced by the public, that people were "coming up to [her] in the street to praise [her]," Trial Tr. 237:11-13, and that she had a feeling of "warmth and [she] enjoyed it immensely," *id.* 242:13. She testified that she has experienced "[w]onderful, really wonderful support," *id.* 149:10-11, and that she frequently feels "optimistic and wonderful," *id.* 170:9-10.  When asked whether she has suffered emotional harm from the June 21 and 22 statements, Plaintiff stated: "I experienced both great support, which I found very encouraging, and on the other hand, horrible, menacing, terrible flood of slime.  Both.  Both.  Both things occurred at the same time."  *Id.* 238:3-6.

Because Plaintiff's evidence establishes, at most, "garden-variety" emotional distress, the compensatory damages award for non-reputational injury should be reduced to no more than $125,000. "Garden variety emotional distress claims generally merit $30,000.00 to $125,000.00 awards." *Duarte*, 341 F. Supp. 3d at 320 (quoting *Emamian v. Rockefeller Univ.*, 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) ("This Court has ... affirmed awards of $125,000 each to plaintiffs for emotional distress … where the evidence of emotional distress consisted only of 'testimony establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress.'") (citations omitted). "Awards compensating garden-variety emotional distress or mental anguish in the Second Circuit range from $30,000 to $125,000." *Lewis v. Am. Sugar Ref., Inc.*, 325 F.Supp.3d 321, 364 (S.D.N.Y. 2018) (collecting cases); *see also Pelgrift v. 355 W. 41st Tavern, Inc.,* 14-CV-08934-AJN, 2018 WL 4735705, at *6 (S.D.N.Y. Sept. 30, 2018) (collecting cases). In the Second Circuit, "'[g]arden variety' emotional distress claims 'generally merit $30,000 to $125,000 awards.'" *Bouveng*, 175 F. Supp. 3d at 330 (citing cases). Accordingly, the Court is likely to grant a new trial or remittitur of the $7.3 million compensatory damages award in this case to no more than $125,000, which would result in a corresponding reduction of the punitive-damages award in the one-to-one ratio discussed above.

Moreover, the fact that remittitur is the appropriate remedy for both the excessive compensatory damages and excessive punitive damages awards in this case creates another dimension of "uncertain[ty]" about the amount of the final award, *In re Apollo Group*., 2008 WL 410625, at *2—if any survives post-trial review. "When a trial court finds a damage verdict to be excessive, it may order a new trial on all issues or only on the question of damages. Alternatively, the court may grant remittitur." *MacMillan v. Millennium Broadway Hotel*, 873 F.Supp.2d 546,

559 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).  "Remittitur is the process by which a court compels a plaintiff to choose between a reduction of an excessive verdict and a new trial."  *Id.*  Thus, even setting aside the other issues to be raised in the post-trial motions, the Court is likely, at the very least, either to order a new damages trial or to order the Plaintiff to choose between a new trial or a significantly reduced damages award.  *See id.*; *Duarte*, 341 F. Supp. 3d at 318 (same).  In both scenarios, the current $83.3 million damages award provides no meaningful benchmark for the ultimate liability in the case.

## II.     An Unsecured Stay of Judgment Will Impose "Minimal" or No Risk to the Plaintiff.

Second, any risk to the judgment creditor in this case from a brief stay of execution until post-trial motions are resolved is minimal to non-existent, for two reasons.  First, as many courts have noted, there is "minimal" risk to the creditor during the relative brief period before the Court decides the post-trial motions.  Second, there is no cognizable risk here, where Plaintiff concedes that President Trump's resources suffice to satisfy the judgment.

### A.     An unsecured stay while post-trial motions are pending poses minimal risk.

Many courts have emphasized that imposing a stay of execution during the period that post-trial motions are pending presents a "minimal" risk to the judgment creditor due to the relative brevity of that period.  "Unlike the stay pending appeal … , a stay pending disposition of" post-trial motions "will generally be resolved in far less time than the lengthy process of briefing, argument and disposition which an appeal entails.  Consequently, the risk of an adverse change in the status quo is less when comparing adequate security pending post-trial motions with adequate security pending appeal."  *Int'l Wood Processors v. Power Dry, Inc.*, 102 F.R.D. 212, 215 (D.S.C. 1984); *see also, e.g., Kaneka Corp.*, 2017 WL 11643347, at *4 (emphasizing "the minimal resulting risk attributable to the brief delay in the execution of the judgment that may be caused

by resolution of Defendants' post-trial motions"); *United States v. Salus Rehab., Inc.*, No. 8:11-CV-1303-T-23TBM, 2017 WL 2730229, at *1 (M.D. Fla. Mar. 15, 2017) (noting that a stay "during the pendency of a post-trial motion … exposes a judgment creditor to only the minimal uncertainty attributable to a brief delay in execution"); *Am. Fam. Mut. Ins. Co. v. Miell*, No. C04-0142, 2008 WL 746604, at *3 (N.D. Iowa Mar. 19, 2008) ("[P]ost-trial motions will generally be resolved in far less time than an appeal and, therefore, the risk that assets will disappear is diminished.").

As in these cases, so also here, "the time necessary to resolve post-trial motions is generally less than the time required to brief, argue, and receive a disposition of an appeal.  As a result, the risk of an adverse change in [the defendant's] financial circumstances so severe that it would be unable to satisfy a final judgment following the Court's consideration of the post-trial motions is minimal."  *Kaneka Corp.*, 2017 WL 11643347, at *3.

## B. Plaintiff concedes that President Trump can satisfy the judgment.

Here, Plaintiff has effectively conceded that she is adequately secured by arguing to the jury that President Trump's resources greatly exceed the amount of the judgment.  Trial Tr. 720:25-721:7.  Having argued to the jury that President Trump has great financial resources, *see, e.g., id.* at 721:12-13, Plaintiff is in no position to contradict herself now and contend that she requires the protection of a bond during the brief period while post-trial motions are pending.  This fact nullifies risk to the judgment creditor and weighs heavily in favor of an unsecured stay.  When the circumstances warrant, a district court may "order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery."  *Fed. Prescription Service*, 636 F.2d at 760-61; *see also, e.g., In re Nassau County*, 783 F.3d at 418 (an unsecured stay is appropriate where "the defendant's ability to pay is so plain that the posting of a bond would be a waste of money") (quoting *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002)).

12

In similar cases, courts have readily held that an unsecured stay—especially for the brief duration required to resolve post-trial motions—presents no cognizable risk to a judgment creditor. *See, e.g., Fed. Prescription Serv.*, 636 F.2d at 761; *Kaneka Corp.*, 2017 WL 11643347, at *3.  "[A] bond for the full amount of the Judgment is inappropriate in light of [President Trump's conceded] ability to pay and the minimal resulting risk attributable to the brief delay in the execution of the judgment that may be caused by resolution of Defendants' post-trial motions."  *Id.* at *4.

### III.    Failure to Stay Execution of the Judgment Will Inflict Irreparable Injury.

As courts often recognize, the irrecoverable cost of time and money inherent in posting a substantial bond—especially a very large bond whose amount is very likely to be reduced, if not eliminated, by post-trial motions—constitutes irreparable injury.  Here, under this district's common practice of requiring a bond of 110 percent of the judgment, President Trump faces the prospect of posting a bond of $91.63 million—a sizeable bond which will come with very substantial, non-recoverable financial costs.  These costs plainly constitute irreparable injury.

As the Second Circuit has held, requiring "a waste of money" in posting a substantial bond gravitates in favor of an unsecured stay: "[A]n inflexible requirement of a bond would be inappropriate ... where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money."  *In re Nassau County*, 783 F.3d at 417 (quoting *Olympia Equip. Leasing v. Western Union*, 786 F.2d 794, 796 (7th Cir. 1986)); *see also, e.g., Kaneka Corp.*, 2017 WL 11643347, at *3 (holding that, because the plaintiff was adequately protected, the court would not "requir[e] Defendants to incur the costs of securing a bond in excess of thirteen million dollars for a short period of time"); *Howell*, 2017 WL 6210869, at *2 (holding that the defendant "may suffer irreparable injury absent a stay," because "the pending motions may affect the viability and value of the judgment," and the absence of a stay "may lead to the expenditure of public funds").

**IV.    An Unsecured Stay Until 30 Days After Disposition of Post-Trial Motions Is Warranted Under Both Multi-Factor Tests.**

As the analysis above indicates, an unsecured stay of execution pending resolution of post-trial motions is warranted here under either the five-factor test of *In re Nassau County* or the traditional four-factor test of *Nken v. Holder* and similar cases.  As for the *Nassau County* factors, those factors emphasize "the degree of confidence that the district court has in the availability of funds to pay the judgment," and "whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money."  783 F.3d at 417-18.  Here, based on Plaintiff's own arguments to the jury, these factors are easily satisfied.  *See supra* Part II.B.  Because of that, "[t]he final factor is inapplicable...."  *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-cv-01252-ERW, 2015 WL 4478151, at *2 (E.D. Mo. July 21, 2015).

Likewise, the traditional four-factor test strongly favors an unsecured stay as well.  As discussed above, the judgment is extremely likely to be reduced under *Turley*, *Duarte*, and other cases; President Trump will suffer well-recognized irreparable injury absent a stay of execution; and the stay presents minimal or non-existent risk to the plaintiff.  *Petroleos de Venezuela*, 2020 WL 7711522, at *2 n.5.  The public interest, moreover, weighs against imposing additional, needless financial consequences from a manifestly excessive verdict.  *See id.*

**V.     In the Alternative, the Court Should Authorize a Substantially Reduced Bond.**

Even if the Court does not grant an unsecured stay of execution pending disposition of post-trial motions and 30 days thereafter, the Court should authorize a bond in a substantially reduced amount to stay the judgment during the same period, for the reasons discussed above.  Courts addressing similar situations often authorize such reduced bonds—such as one-third or one-half the judgment's amount—as providing adequate security for the judgment creditor.  For example, one court "allowed the posting of a supersedeas bond in less than the full judgment

14

amount ($500,000 bond for a $1.5 million judgment) when the defendant's net worth was $40 million, but his assets were tied up in real estate holdings," thus authorizing a two-thirds reduction of the bond amount. *Klingenberg v. Vulcan Ladder USA, LLC*, No. 15-CV-4012-KEM, 2017 WL 4836313, at *2 (N.D. Iowa Oct. 25, 2017) (describing *Am. Family*, 2008 WL 746604, at *1-3). Similarly, in *Apollo Securities Litigation*, where the effective amount of the final judgment was "uncertain," the district court authorized a 50 percent reduction in the bond amount compared with the monetary face value of the final judgment. *In re Apollo Group*, 2008 WL 410625, at *2. Even if it does not grant an unsecured stay, the Court should apply a similar reduction here and authorize President Trump to post a bond in a fraction of the amount of the judgment pending the disposition of post-trial motions. At the very least, the Court should project that the $7.3 million compensatory award will be reduced to $125,000, and punitive damages will be reduced to a 1:1 ratio, consistent with *Turley* and its progeny, which would result in a total compensatory award of $11.125 million and a total judgment of $22.25 million—for which a bond of $24.475 million would be appropriate.[6]

## CONCLUSION

For the reasons stated, President Trump respectfully requests that this Court grant an unsecured stay of the execution of the February 8, 2024, judgment, ECF No. 285, until 30 days after the resolution of President Trump's post-trial motions under Rules 50 and 59 of the Federal Rules of Civil Procedure, which will be filed no later than March 7, 2024. In the alternative, President Trump requests that this Court grant a partially secured stay of execution until 30 days

---

[6] Alternatively, if the Court concludes (as it should not) that remittitur of the compensatory award is unlikely, it should project that punitive damages will be reduced to a 1:1 ratio, resulting in a total award of no more than $36.6 million, and a bond amount of $40 million.

after the resolution of post-trial motions and authorize President Trump to post a bond in an appropriate fraction of the judgment.

Further, President Trump respectfully requests that this Court enter a temporary administrative stay of execution of the judgment pending its ruling on this motion, or in the alternative, issue a ruling on this motion no later than March 4, 2024, to allow time for President Trump to finalize arrangements for an appropriate bond if necessary.

Respectfully submitted,

Dated: New York, New York
February 23, 2024

Alina Habba, Esq.
Michael T. Madaio, Esq.
HABBA MADAIO & ASSOCIATES LLP
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

*-and-*

JAMES OTIS LAW GROUP, LLC
D. John Sauer*
William O. Scharf*
13321 North Outer Forty Road, Suite 300
Chesterfield, Missouri 63017
(314) 562-0031
John.Sauer@james-otis.com

* *pro hac vice* forthcoming

*Attorneys for Defendant,*
*President Donald J. Trump*