**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL, | Civil Action No.: 1:20-cv-7311-LAK-JLC |
| *Plaintiff*, | |
| v. | |
| DONALD J. TRUMP, in his personal capacity, | |
| *Defendant*. | |

**PRESIDENT TRUMP'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF**
**<u>LAW UNDER RULE 50(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

HABBA MADAIO & ASSOCIATES LLP
Alina Habba, Esq.
Michael T. Madaio, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
E-mail: ahabba@habbalaw.com

JAMES OTIS LAW GROUP, LLC
D. John Sauer*
William O. Scharf**
13321 North Outer Forty Road, Suite 300
Chesterfield, Missouri 63017
(314) 562-0031
John.Sauer@james-otis.com

\* *Pro Hac Vice* pending
\*\* *Pro Hac Vice* forthcoming

*Attorneys for President Donald J. Trump*

1

Defendant President Donald J. Trump respectfully requests that this Court grant him judgment as a matter of law in this case under Rule 50(b) of the Federal Rules of Civil Procedure. For the reasons stated herein, judgment as a matter of law is warranted because Plaintiff E. Jean Carroll ("Plaintiff") failed to provide sufficient evidence to prove her case as to causation of any damages in this case.

### A.  Factual Background

Plaintiff's accusations against President Trump became public shortly after noon on June 21, 2019.  Tr. 216:24-217:4.  President Trump's first response to Plaintiff's claims was not publicized until 5:17 p.m. later that day.  *Id.* 219:17-220:4; PX 1.  In her complaint, Plaintiff did not allege that President Trump defamed her by any action or statement prior to 5:17 p.m. on June 21, 2019.  *Id.* 279:17-19; 280:16-281:2; *see also* Compl.

A five-hour gap existed between the publication of Plaintiff's allegations and President Trump's first response.  *Id.* 221:3-9.  During those intervening five hours, Plaintiff received many messages that were not different than the messages she received after 5:17 p.m. on June 21, 2019.  *Id.* 221:10-12; 283:16-293:20; DX65; DX66; DX67; DX69; DX70; DX71.  Plaintiff deleted the threatening messages that she received.  Tr. 231:10-232:2; 233:1-5; 233:18-234:6.  She "did not focus on the time" the messages were sent.  *Id.* 282:22-283:13.

The content in the social-media posts before 5:17 p.m. contained associations similar to the basis for Plaintiff's damages analysis.  *Id.* 386:24-387:12; 738:7-739:12.  Plaintiff's expert did not consider timing issues when preparing her damages model.  *Id.* 423:2-4.

### B.  Legal Standard.

Under Rule 50, judgment as a matter of law should be granted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  A renewed, post-trial Rule 50 motion should be granted when there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) (quoting *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir. 1980)); *see also Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1042 (2d Cir. 1976) ("[T]he jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice; its verdict must be reasonably based on evidence presented at trial.").  On a renewed motion, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).

During trial, President Trump moved for judgment as a matter of law, arguing that there was insufficient evidence to causally connect Plaintiff's purported damages to the June 21 and 22 statements.  *See* Tr. 534:19-544:18.  President Trump now renews this motion pursuant to Fed. R. Civ. P. 50(b).

## C.  <u>Plaintiff must prove her injuries were not caused by third parties.</u>

Causation requires that "there be 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999).  Causation is a "judicial tool[] used to limit a person's responsibility for the consequences of that person's own acts.'" *Id.* (citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318 (1992)).

With respect to damages, a plaintiff must prove causation between the defendant's tortious conduct and the harm allegedly suffered by the plaintiff. *See, e.g.*, *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) (stating that "any degree of speculation in computing the amount of damages unless and until causation of damages is first established."); *see also Philip Morris*, 191 F.3d at 236 ("We also have had occasion to observe that foreseeability and direct injury (or remoteness) are distinct concepts, both of which must generally be established by a plaintiff."). The court can rule on causation as a matter of law. *Pitkin v. McMahon*, 243 A.D.2d 958, 960 (3d Dep't 1997) (citing, *Sheehan v. City of New York,* 40 N.Y.2d 496, 503 (1976)); *see also Dongguk University v. Yale University*, 734 F.3d 113, 130 (2d Cir. 2013) ("Absent evidence from which a trier of fact could reasonably infer that Dongguk's reputational injury was caused by Yale's 2005 statement, summary judgment in Yale's favor is warranted.").

A plaintiff cannot recover if the evidence establishes one or more possible causes of injury for which a defendant is not responsible. "The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible. If the matter is left in doubt and it is just as probable that the injury was the result of one cause as the other, there can be no recovery." *Ruback v. McCleary, Wallin & Crouse*, 220 NY 188, 195 (1917); *see also Gonzalez v. Delta Int'l Mach. Corp.*, 307 A.D.2d 1020, 1021-22 (2d Dep't 2003) ("Where the evidence adduced reveals the existence of several possible causes of an injury, for one or more of which the defendant is not responsible, a plaintiff cannot recover without proving the injury was sustained wholly or in part by reason of the defendant's [conduct].") (internal quotation marks and citations omitted); *Mehra v. Bentz*, 529 F.2d 1137, 1139 (2d Cir. 1975) ("If the circumstantial evidence presented lends itself equally to

4

several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about facts. [A] possibility of causation will not suffice to impress liability upon a defendant.").

### D. Plaintiff failed to establish that President Trump's statements were the proximate cause of her injuries.

Plaintiff's damages theory was centered around the negative public attention she started receiving on June 21, 2019 – the day she first published her allegations against President Trump, which he subsequently denied.  Plaintiff, however, failed to establish the causal nexus between President Trump's June 21 and 22 statements and the harm she claims to have suffered.

Plaintiff's causation evidence did not account for actions taken during the five-hour gap before 5:17 p.m. on June 21, 2019.  Plaintiff alleged she suffered harm from negative messages, such as calling her a "liar," received through social media, news blogs, and direct messages.  Tr. 105:2-6.  However, Plaintiff admitted that she received these types of messages before President Trump's first statement was publicized at 5:17 p.m.  *Id.* 221:10-12; 283:16-293:20; DX65; DX66; DX67; DX69; DX70; DX71.  She admitted that "many people called [her] a liar on social media during that five-hour gap."  *Id.* 221:10-12.

When she reviewed these negative messages, Plaintiff did not focus on when a message was received in relation to President Trump's statement.  *Id.* 282:22-283:13.  And because Plaintiff deleted these messages, *id.* 231:10-232:2; 233:1-5; 233:18-234:6, neither Plaintiff nor the defense could quantify messages received before and after President Trump's statement.

Plaintiff's expert did not consider timing issues when preparing her damages model.  *Id.* 423:2-4.  She should have.  A side-by-side comparison showed comments made on social media before 5:17 p.m. and those made after 5:17 p.m. were identical in every material respect.  *Id.* 386:24-387:12; 738:7-739:12.  Despite the fact that they pre-existed the June 21 and 22 statements,

these messages were nearly identical in form and substance to the social media statements introduced by Plaintiff.  As such, the negative messages sent before 5:17 p.m. unequivocally demonstrated that the public backlash against Plaintiff—and, more specifically, the belief that she is a liar, that she concocted her allegations to sell a book, and that she had ulterior political motivations—existed *before* President Trump ever spoke about her.  In other words, the negative public reaction was likely attributable to *The Cut* article but, in any case, could not have been caused by the June 21 and 22 statements.  Indeed, this direct similarity between the two classes of messages fatally undermines the entire causal premise of Plaintiffs' case—*i.e.*, that President Trump's statements supposedly caused Plaintiffs' alleged injuries.

Plaintiff's trial explanation for negative messages during the five-hour gap is unavailing. While on the stand, Plaintiff attempted to tie the backlash to an unrelated statement that was not issued by President Trump and was never entered into evidence at trial.  Specifically, Plaintiff testified that *The Cut* article contained a denial from the White House, which she inaccurately described as "the president's initial response to the article." *Id.* 217:5-8; *see also id.* 220:5-7; *id.* 279:7-13.  Plaintiff attributed the statement to President Trump—despite the lack of evidence that he issued the statement, approved it, or was even aware of it—and claimed that this statement was the reason the evidence during the initial five-hour gap mirrored the June 21 and 22 statements. *Id.* 221:10-12; *id.* 238:7-15.  Plaintiff's counsel then echoed this misleading position several times during summation, over repeated objections from defense counsel, making it the centerpiece of her causation argument.  Tr. 771:25-773:1; *see also id.* 725:18-726:3.

By repeatedly referencing White House denial, and stating without evidence that President Trump was responsible for issuing that statement, Plaintiff misled the jury into believing that there was no need to differentiate between that denial and the June 21 and 22 statements for the purposes

of causation.  This is not true.  The White House denial was not asserted as a cause of action and is not at issue in this case.  Thus, Plaintiff's testimony (and counsel's argument) that the public backlash against her originated with the White House denial is fatal to her position.  To the extent any harm is attributable to the White House denial, it is inherently *not* attributable to the June 21 or 22 statement, which Plaintiff herself selected as the basis for her cause of action.  Thus, based on Plaintiff's own theory of the case, there is a demonstrable lack of causation between the challenged statements and the harm Plaintiff claims to have suffered.

## CONCLUSION

Based on the foregoing, it is readily apparent that the jury's findings were based on "confusion, speculation or prejudice" as opposed to the "evidence presented at trial."  *Michelman*, 534 F.2d at 1042.  Therefore, under Rule 50, judgment as a matter of law is warranted in President Trump's favor.

Dated: New York, New York                Respectfully submitted,
      March 5, 2024

*/s/ Alina Habba*                    */s/ D. John Sauer*
Alina Habba, Esq.                    D. John Sauer*
Michael T. Madaio, Esq.            William O. Scharf**
HABBA MADAIO & ASSOCIATES LLP    JAMES OTIS LAW GROUP, LLC
1430 U.S. Highway 206, Suite 240      13321 North Outer Forty Road, Suite 300
Bedminster, New Jersey 07921         Chesterfield, Missouri 63017
           -and-                (314) 562-0031
112 West 34th Street, 17th & 18th Floors    John.Sauer@james-otis.com
New York, New York 10120
Telephone: (908) 869-1188           * *Pro Hac Vice* pending
E-mail: ahabba@habbalaw.com        ** *Pro Hac Vice* forthcoming

                                      *Attorneys for President Donald J. Trump*