**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E. JEAN CARROLL, *Plaintiff,* v. DONALD J. TRUMP, *Defendant.* | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**PRESIDENT TRUMP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant President Donald J. Trump ("President Trump"), by and through his undersigned counsel, respectfully submits this memorandum of law in further support of his renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. For the reasons set forth below, the motion should be granted in its entirety.

## ARGUMENT

Carroll's opposition hinges on mischaracterizing the substance of President Trump's motion, which she wrongfully describes as setting forth a "newly minted theory" of causation. ECF No. 332, at 8. However, there is nothing new or novel about insisting that Carroll establish that President Trump's statements were the "legal cause of [her] harm," which is not the case. Restatement (Second) Torts § 430 (Am. Law Inst. 1977); *see Meyers v. Epstein*, 282 F. Supp. 2d 151, 154 (S.D.N.Y. 2003) ("[A]ny damages recovered must be the direct result of defendant's wrongful actions.").

Carroll failed to do so. Based on the evidence and her own telling, Carroll's claimed harms stem from third parties allegedly attacking her, *see* ECF No. 332, at 2–3, or "no longer [seeking] her advice," *id.* at 3–4. Her causation theory—again, by her own telling—is that President Trump's statements caused those reactions by "affect[ing] Ms. Carroll's reputation in the public sphere . . . ." *Id.* at 4–5. Thus, Carroll's claim is that President Trump's statements caused third parties to act and harm her. The problem is that those third parties started acting *before* President Trump's statements, which were made roughly five hours after *The Cut* article was published. *See* ECF No. 310, at 2 (gathering record citations). The evidence adduced at trial thus demonstrates that what Carroll points to as causing her harm (the third-party reactions such as hostile messages and refusal to ask her for advice) started with the release of *The Cut* article, which was done on her own volition. *See id.* at 5–7 (gathering and summarizing the relevant evidence). She thus

failed to show that President Trump's statements *caused* the third-party reactions that form the basis of her injuries.

*The Cut* article, to be sure, included the White House's denial of the accusations. But Carroll concedes her theory of causation does not rely on that denial; it rests on President "Trump's subsequent statements . . . ." ECF No. 332, at 12 n.7; *see* ECF No. 157-1 ¶¶ 83, 92, 103, 168 (alleging the defamatory statements, none of which involve the denial in *The Cut*). That is quite a walk-back from Carroll's attempt to tie the statement to President Trump during her trial testimony, *see* ECF No. 310, at 6, and her decision to make it the "centerpiece of her causation argument," *id.* (gathering record cites). She now denies responsibility for it, saying President Trump's attorneys "elicited" the fact. ECF No. 332, at 12 n.7. But Carroll's counsel expressly argued in closing (and, indeed, quoted it in her opposition) that the jury could disregard the chronological gap because "the White House, which was run by Donald Trump, had already denied Ms. Carroll's claims in *The Cut* article itself." *Id.* (quoting Tr. 725: 22–24). Further, this position figured prominently in her argument in opposition to President Trump's initial JMOL motion. In arguing "there is more than ample evidence of causation," Carroll's counsel claimed "Mr. Trump actually did speak before the Laura Litvan tweet came out; he spoke through the White House. There was a denial of Ms. Carroll's account in the New York Cut article at the very same time by the White House." Tr. 542:11–17. Carroll's decision to walk away from this argument concedes that it was misleading and confused the jury. *See* ECF No. 310, at 6–7. It also concedes she *cannot* fill the gap between the publication of her claims in *The Cut* and President Trump's statements five hours later. The chronology is thus insurmountable and fatal to Carroll's case. That President Trump's statements came *after* third parties sent disparaging comments to Carroll means that he could not have caused them—which undermines Carroll's causation argument. It also places the

2

burden on Carroll to show that third-party reactions occurring after President Trump's statements were caused by those statements, rather than reactions that would have occurred anyway in response to Carroll's public accusations themselves. She had to show that it was more than "merely possible or evenly balanced" that third parties reacted to President Trump's statement as opposed to her accusations. *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co. (SUEZ I)*, 578 F. Supp. 3d 511, 539 (S.D.N.Y. 2022) (quotations omitted). Because the reactions started right after publication of the *The Cut* article, before President Trump made any statements, the latter is "just as reasonable and probable" as the former—indeed, it is more probable that the reactions were to her accusations in *The Cut*—and Carroll thus "cannot have a recovery." *Ingersoll v. Liberty Bank of Buffalo*, 278 N.Y. 1, 4-7 (1938).

Carroll fails to address the point. She argues (at 8) waiver. A Rule 50(b) motion is "limited to those grounds that were 'specifically raised in the prior motion . . . .'" *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (quotations omitted). "[T]he purpose of requiring the moving party to articulate the ground on which JMOL is sought 'is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury[.]'" *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986)). "Accordingly, the JMOL motion must at least identify the specific element that the defendant contends is insufficiently supported." *Id.* (citations omitted). During trial, President Trump moved for judgment as a matter of law on the element of causation, contending that there was insufficient evidence to connect Carroll's damages to President Trump's statements. *See* Tr. 534:19-542:3. Carroll's waiver claim thus rests on reframing President Trump's argument as a new theory of causation that needed to be put to the

3

jury.[1]  *See* ECF No. 332, at 8–9.  But as noted above, President Trump's argument was always that Carroll could do no more than show it was "merely possible or evenly balanced, that" he caused her injuries.  *SUEZ I*, 578 F. Supp. 3d at 539; *see also, e.g.*, Tr. 535:4-25 (arguing *inter alia* that "President Trump is entitled to judgment as a matter of law because Ms. Carroll has failed to establish any causal link between her claimed damages and President Trump's June 21 and June 22 statements," and that "there was a five-hour gap between the release of the article and President Trump's first response to Ms. Carroll's allegation," during which "many social media users made posts that echoed the same sentiments that this Court has determined to be defamatory….").

But the resort to waiver makes sense because Carroll cannot rest on the evidence.  She says the jury "rejected Trump's proposed factual inference," ECF No. 332, at 12 n.7, while failing to address how a jury could rationally reject undisputed chronological fact.  She also asserts there is "ample evidence" of causation, while also claiming she "need not" say what it is.  *Id.* at 12.  In fact, even the evidence in the background section of her brief does not help her.

*First*, Carroll notes she testified that her "email inbox and social media accounts were bombarded by hateful, insulting, and violent rhetoric parroting [President Trump's] words."  ECF No. 332, at 2.  However, she also testified that she "wasn't on Twitter" the afternoon *The Cut* article was released and the White House's first statement was issued—and that she did not view the messages until that night, when she "did not focus on the time" they were sent.  Tr. 282:22-283:13. Her testimony is therefore not probative as to whether the messages were attributable to

---

[1] To the extent Carroll's argument rests on proposed jury instructions, chronology again works against her because a Rule 50(a) motion occurs *before* submission of the case to a jury.  Fed. R. Civ. P. 50(a)(2).  In any event, defense counsel expressly raised the causation argument during the charging conference.  Tr. 667:22-668:1 (arguing for inclusion of jury instruction which clarifies that it is plaintiff's burden "to prove that damages were caused by defendant's actions."); *see also id.* 669:17-19 (stating that said instruction is necessary for the jury to understand that there must be a "direct causal link" to the defendant's conduct).

President Trump's statement or the release of *The Cut* article. Indeed, that those messages were similar to the ones made before President Trump's statements, *see* Tr. 738:7–739:12, underscores that Carroll has not shown that President Trump *caused* those statements, as opposed to third parties independently reacting to *The Cut* article.

*Second*, Robbie Myers testified that Carroll's career was negatively affected by President Trump's statements. *See* ECF No. 332, at 3–4. But that cannot show causation. Ms. Myers had not worked for *Elle* for more than two years when Carroll published her article in June 2019, so she had no personal knowledge on the subject and her opinion is speculative. Tr. 520:19-521:3. The suggestion that Carroll lost "[m]illions" of readers, *see* ECF No. 332, at 4, overlooks that she left *Elle* in 2019, *see* Tr. 180:15, and now publishes online on Substack, *see* Tr. 180:16–25. That is the more probable cause of her alleged lost readership.

*Third*, Carroll's expert, Professor Ashlee Humphreys, determined that the June 21 and 22 statements "affect[ed] [Carroll's] reputation" based on her finding that there was similar "content" found in negative social media messages Carroll received, which "called her a liar, said she wasn't telling the truth, and that she had a particular agenda for not telling the truth." Tr. 387:13-388:1. However, Professor Humphreys conceded that her damages model did not account for "the timing between when [*The Cut*] article came out and when President Trump responded[.]" Tr. 423:2-4. In fact, she admitted that she failed to consider the impact that Carroll's accusation (*i.e.,* the release of *The Cut* article), had on her reputation at all. *Id.* 413:6-9. ("Q: [ ] Professor Humphreys, did you consider at all whether those sources discussed Ms. Carroll's accusation? A. No. My assignment in this case was to calculate the impressions for the statement of Mr. Trump, so I did not, no.").

There is little left to Carroll's arguments. She suggests (at 8–9) that President Trump rejects the substantial-factor test. Again, not so. President Trump's argument is that Carroll failed

5

to carry her burden to show his statements were "a substantial cause of the events which produced the injury." *Mack v. Altmans Stage Lighting Co.*, 98 A.D.2d 468, 470 (2d Dep't 1984) (quotations omitted). Rather, Carroll's evidence supports no inference but that the injury resulted from third parties independently reacting to Carroll's accusations.

Carroll's discussion (at 9–10) of what is necessary to show damages in a defamation case ignores that "there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931). "The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." *Id.*[2] Carroll's own sources show that proving damages and proving causation are different. The Restatement, for example, says "the defamation must be a necessary antecedent of the harm" for a plaintiff to receive special damages. Restatement (Second) of Torts § 622A cmt. *a*. That is not the case here. The evidence shows that the antecedent to the third parties' reactions and communications to Carroll was *The Cut* article, not President Trump's statements.

Besides confusing damages and causation, Carroll gets the law wrong on damages. She suggests (at 9) that a plaintiff need not prove general damages for defamation *per se*. But "[a]ctual damages … must be proven" by a plaintiff seeking more than nominal damages. *Fashion Boutique of Short Hills v. Fendi USA*, 314 F.3d 48, 59 (2d Cir. 2002) (citing *Orlowski v. Koroleski*, 234 A.D.2d 436 (2d Dep't 1996)). Indeed, the First Amendment demands it. *See Gertz v. Robert*

---

[2] Carroll does not dispute that *Story Parchment* supports the proposition for which it was cited—that "[w]ith respect to damages, a plaintiff must prove causation between the defendant's tortious conduct and the harm allegedly suffered by the plaintiff." ECF No. 310, at 4.

6

*Welch, Inc.*, 418 U.S. 323, 349 (1974). Thus, all Carroll's argument can show is that she received too much compensation. Because she failed to show actual damages stemming from what President Trump did (as opposed to third parties reacting to *The Cut* article), she is entitled to no more than nominal damages. *See Orlowski*, 234 A.D.2d at 437.

Similar logic refutes Carroll's attempt (at 10) to distinguish President Trump's cases as involving negligence because "'the strictures of proximate cause are applied more loosely in intentional tort cases.'" ECF No. 332, at 10 (quoting *Meyers*, 282 F. Supp. 2d at 154). As *Meyers* recognizes, "'even an intentional wrongdoer is only responsible for the injuries he has directly caused.'" 282 F. Supp. 2d at 154 (quoting *Cauverien v. De Metz*, 20 Misc.2d 144, 147 (N.Y. Sup. Ct. 1959)). "The more generous concept of causation accorded plaintiffs in the case of intentional tortfeasors ... appears to allow only an expanded concept of proximate cause. The Court is unaware of any case suggesting that the 'but for' causation requirement is obviated where an intentional tort is involved." *Id.* at 154. So "even where the tortfeasor intends a specific result which follows, there must be a causal connection between his act and the result." Restatement (Second) of Torts § 435A, cmt. *a*. Any flexibility in the causation standard—to the extent it exists[3]—lies "in the field of damages," *id.*; *see also* § 435B ("The rule stated in this Section affects only the measure of damages for a tort."), by treating "causation foreseeability ... more expansively," 14 David C. Cook et al., *New York Practice Series – New York Law of Torts* § 8:10 & n.2 (Aug. 2023 update) (gathering cases). But the issue here isn't damages or foreseeability. The issue here is causation itself—*i.e.*, that the attacks by third parties started after *The Cut* article

---

[3] *But see* 14 David C. Cook et al., *New York Practice Series – New York Law of Torts* §8:10 (Aug. 2023 update) ("While courts often do not differentiate between the foreseeability requirement in negligence and intentional tort cases, on occasion they state or imply that causation foreseeability should be treated more expansively in intentional torts, particularly with respect to the extent of liability for damages.") (footnotes omitted).

was published but before President Trump's statements—thus showing President Trump's statements did not cause the alleged attacks and therefore did not harm Carroll.

That not all of the cases President Trump cites involve Rule 50, *see* ECF No. 332, at 10, is irrelevant. They provide the relevant analytical framework and consider liability as a matter of law rather than adjudicating disputed facts. *See Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 122 n.1 (2d Cir. 2013) (summary judgment posture); *Ruback v. McCleary, Wallin & Crouse*, 220 N.Y. 188, 191 (1917) (nonsuit motion).[4] Carroll's claim (at 10–11) that each of President Trump's cases turned on a complete lack of evidentiary support misses the point.[5] Where, as here, "there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible. If the matter is left in doubt, and it is just as probable that the injury was the result of one cause as the other, there can be no recovery." *Ruback*, 220 N.Y. at 195.

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests that this Court grant his motion in its entirety.

---

[4] Carroll (at 10) criticizes *Ruback* as an old case. But precedent from the New York Court of Appeals is still binding precedent regardless of its age. *See, e.g., Levin v. Tiber Holding Corp.*, 277 F.3d 243, 253 (2d Cir. 2002). Moreover, *Ruback* involved a grant of a nonsuit after trial. *See* 220 N.Y. at 191. It is thus procedurally more similar to this case than Carroll suggests.

[5] Carroll's claim that President Trump cites *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), as involving "harm … attributable to a third party," ECF No. 332, at 10 n.5, misreads President Trump's opening memorandum. While the case involves such harms, he cited it for the proposition that causation requires a "'direct relation between the injury asserted and the injurious conducted alleged,'" ECF No. 310, at 3 (quoting *Philip Morris, Inc.*, 191 F.3d at 235), and that plaintiffs must prove causation, *id.* at 4 (citing *Philip Morris, Inc.*, 191 F.3d at 236). Carroll does not dispute those statements.

Dated: New York, New York  
      April 9, 2024

Respectfully submitted,

<u>/s/ D. John Sauer</u>  
D. John Sauer*  
William O. Scharf*  
JAMES OTIS LAW GROUP, LLC  
13321 North Outer Forty Road, Suite 300  
Chesterfield, Missouri 63017  
(314) 562-0031  
John.Sauer@james-otis.com

Michael T. Madaio, Esq.  
Alina Habba, Esq.  
HABBA MADAIO & ASSOCIATES LLP  
1430 U.S. Highway 206, Suite 240  
Bedminster, New Jersey 07921  
              -and-  
112 West 34th Street, 17th & 18th Floors  
New York, New York 10120  
Telephone: (908) 869-1188  
E-mail: ahabba@habbalaw.com

*Attorneys for President Donald J. Trump*

* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

    I hereby certify that, on April 9, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<em>/s/ D. John Sauer</em>