UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. JEAN CARROLL,<br><br>   *Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>   *Defendant*. | Civil Action No.: 1:20-cv-7311-LAK-JLC |

**PRESIDENT TRUMP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL AND/OR TO ALTER OR AMEND THE JUDGMENT UNDER RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant President Donald J. Trump ("President Trump") respectfully requests that this Court grant his motion under Rule 59 for a new trial and/or to alter or amend the judgment.

**I.     The Erroneous Jury Instruction on Common-Law Malice Warrants a New Trial.**

Contrary to the jury instruction, ECF No. 312, at 2-5, 12-15, common-law malice in New York requires a showing that spite or ill will was the defendant's *sole* motivation. Many cases so hold, including *Morsette v. "The Final Call"*, 309 A.D.2d 249 (1st Dep't 2003). Carroll does not cite *Morsette* in the body of her brief, and in a footnote she responds to it solely by citing the dissent. ECF No. 330, at 3 n.1. "Dissents by their nature express views that are not the law." *Arar v. Ashcroft*, 585 F.3d 559, 581 n.14 (2d Cir. 2009) (en banc). Subsequent cases applying New York law—including those addressing punitive damages—consistently follow *Morsette*. *See e.g.*, *Verdi v. Dinowitz*, 188 A.D.3d 441, 442 (1st Dep't 2020); *Roberston v. Doe*, No. 05-cv-7046, 2010 WL 11527317, at *5 (S.D.N.Y. May 11, 2010); *Global Auto, Inc. v. Hitrinov*, No. 13-cv-2479, 2021 WL 7367078, at *12 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2022 WL 593613 (Feb. 28, 2022).

Carroll fails to cite a single case suggesting that a defamation plaintiff can recover punitive damages where injuring the plaintiff was not the defendant's sole motivation. Her cases did not consider whether common-law malice requires that intent to injure the plaintiff be the defendant's *sole* motive. *See* ECF No. 330, at 3. Contrary to Carroll's characterization (at 3-4), *Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011), holds that "common-law malice means spite or ill-will," and "common-law malice will defeat such a [conditional] privilege only if it was '*the one and only cause for the publication*.'" *Id.* at 815 (cleaned up) (emphasis added).

Carroll also cites Pattern Jury Instruction ("PJI") 3:30. Neither PJI 3:30 nor its commentary consider the question here, *i.e.*, whether an intent to injure the plaintiff must be the defendant's *sole* motivation. Thus, the PJI does not provide persuasive authority on that question. *Brussels*

1

*Bank Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 Civ 6876, 2000 WL 1694308, at *1 (S.D.N.Y. Nov. 13, 2000). Moreover, the PJI does not relieve the Court of its obligation to correctly apply New York law. *See, e.g.*, *Acerra v. Trippardella*, 34 A.D.2d 927, 927 (1st Dep't 1970). The jury instructions must reflect "decisional law," not blind adherence to the PJI. *Id.*

Carroll also claims that the jury instruction did not affect President Trump's "substantial rights." ECF No. 330, at 19-20. But the substantial-rights standard applies where a party has failed to object to a jury instruction, *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 387-88 (2d Cir. 2020), and President Trump objected, Tr. 672:12-16. Thus, the erroneous instruction, unless harmless, requires a new trial. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312-13 (1986). The error was not harmless. ECF No. 312, at 12-15. Carroll wrongfully insists that President Trump's "self-defense" statements, which have been consistent and unyielding, and motivations were themselves "malicious." ECF No. 330 at 19. That is wrong. No authority holds that a "self-defense" motivation is "malicious." Statements made in "response to unfavorable publicity" ordinarily are covered by a qualified privilege. *Kane v. Orange Cnty. Publ'ns*, 232 A.D.2d 526, 527 (2d Dep't 1996). This interest takes on a constitutional valence when the speaker defending himself is an elected official. *Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 767 (1985) (White, J., concurring in the judgment).

II. **The Erroneous Exclusion of President Trump's Testimony About His State of Mind.**

Carroll contends that President Trump waived objection to the exclusion of testimony about his state of mind when his counsel asked questions in the form directed by the Court. ECF No. 330 at 14-15. But defense counsel's use of the questions dictated and approved by the Court was not a voluntary, strategic decision. Defense counsel was complying with a wrongful, unconstitutional Court order directing which questions could—and could not—be asked. Defense

2

counsel vigorously objected to the order and the greatly limited questioning allowed by the Court. Counsel need not defy a court order limiting testimony in order to preserve an issue for appeal. *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1208 (11th Cir. 1985). Further, even if President Trump "solicited and agreed to" limitations on the questions, which he did not, there is no plausible argument that he waived the right to fully *answer* those pre-approved questions, instead of having his highly relevant testimony stricken.

Carroll argues that the Court correctly excluded President Trump's testimony as an exercise of the Court's authority "to ensure that he did not mention inadmissible evidence before the jury." ECF No. 330 at 15. But President Trump's testimony about his motivation in making the contested statements was not "inadmissible." *Id.* To the contrary, it was highly relevant of one of the most critical issues at trial, namely, common-law malice, which "focuses on the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity." *Prozeralik v. Capital Cities Commc'ns*, 82 N.Y.2d 466, 480 (1993). That testimony should not have been restricted in advance or stricken afterward.

Finally, Carroll implausibly argues that the exclusion of President Trump's testimony about his mental state did not affect his substantial rights. ECF 330, at 18-19. Carroll claims that the excluded testimony was cumulative of other evidence in the record, including President Trump's deposition testimony. *Id.* But none of the evidence cited by Carroll goes to President Trump's mental state or his motivation for making the statements in question. *See id.* Instead, the cited testimony relates to President Trump's consistent belief that Carroll's claims were false and that his denials were thus true. *See id.* Such statements go to *constitutional* malice, not common-law malice. *Prozeralik*, 82 N.Y.2d at 474. Carroll also points to the fact that the Court instructed the jury that Carroll had not given President Trump "permission" to make the statements at issue. ECF

3

No. 330 at 19. But that instruction addressed the wholly distinct issue of whether President Trump could invoke a defense on the merits of the defamation claim, rather than whether the jury could consider evidence of President Trump's mental state when making the challenged statements. Tr. 798:3-17.

**III.    The Erroneous Jury Instruction on Burden of Proof Warrants a New Trial.**

In support of a preponderance standard for punitive damages, Carroll cites two primary cases: *Corrigan v. Bobbs-Merrill Co.*, 228 N.Y. 58 (1920), and *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163 (2d Cir. 2000). Neither supports Carroll's argument. *Corrigan* has "been effectively overruled" by intervening caselaw, as then-Judge Sotomayor held in 1997. *Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973, 978 (S.D.N.Y. 1997) (Sotomayor, J.). Recent Appellate Division decisions have not followed *Corrigan* but instead have held that a defamation plaintiff must prove entitlement to punitive damages by clear and convincing evidence. *See* ECF No. 312, at 16-17. As to *Celle*, the statement cited by Carroll is dictum. 209 F.3d at 184. There was no dispute in *Celle* about the proper burden of proof, nor did the appropriate burden play into the Second Circuit's analysis in any way. *See id.* at 190-91. "[D]icta are not and cannot be binding." *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006).

Carroll also argues that the instruction did not affect President Trump's "substantial rights." ECF 330, at 20. First of all, the right to defend oneself is as substantial as it gets. Second, as noted above, that is not the correct standard for erroneous jury instructions that have been objected to. The relevant question is whether the erroneous instruction was harmless. "Under [Second Circuit] precedent, it is accepted that an error in instructing a jury on the burden of proof is ordinarily harmful." *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 298 (2d Cir. 2013). Carroll claims that the evidence as to President Trump's motivation was overwhelming. But she

4

makes no effort to link this argument to the applicable legal standard, and she also fails to acknowledge the fact that President Trump was erroneously precluded from presenting highly relevant evidence regarding his motivation. The erroneous instruction was deeply harmful, thus meeting the applicable standard.

**IV.     The $7.3 Million Award for Emotional Distress Must Be Remitted.**

Carroll argues that the $7.3 million award includes economic losses, not merely emotional harm. This contradicts her prior representations. *See* ECF No. 312, at 19. Carroll seeks to disavow her prior position by asserting that "it's the Court's instructions and the witness's testimony, not the parties' arguments, that control." ECF No. 330, at 23. But the jury instructions likewise instructed the jury to award "compensation for the injury to [Carroll's] reputation and for any humiliation and mental anguish," Tr. 788:16-17—not emotional injury. Any injury to Carroll's reputation would be covered by the reputational-repair damages, not the $7.3 million.[1]

Moreover, the purported economic losses that Carroll identifies plainly do not support a $7.3 million award. *See* ECF No. 330, at 23. Carroll makes no effort to quantify those economic losses, *see id.*, and they could not remotely justify an award of $7.3 million. Carroll cites "the added steps that she now has to take to protect her security." *Id.* But the testimony she cites describes such "added steps" as getting a rescue dog; putting in an electric fence; buying bullets; "alert[ing] the neighbors to be on the watch"; and "be[ing] aware of what is going on." Tr. 137.

---

[1] If reputational injury were compensated by both the $7.3 million award and the reputational-repair award, that would constitute impermissible duplicative recovery. "A basic principle of compensatory damages is that an injury can be compensated only once." *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996). The jury was instructed that it "may not award compensatory damages more than once for the same injury." Tr. 789:21-22. "Juries are presumed to follow their instructions." *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (cleaned up).

5

Similarly, Carroll asserts that she "used to write the nation's leading advice column, read by millions of people; now, her Substack column has just 28,000 subscribers, only 1,800 of whom pay for their subscription." ECF 330, at 23. But Carroll did not testify that her Substack journalism earns her less money than her work for *Elle* did. *See* Tr. 181, 467-68 (cited in ECF No. 330, at 23). So there is no evidence that this caused her any loss. Moreover, Carroll's testimony cannot show that President Trump's statements *caused* her to move to Substack. She had already started looking to leave *Elle* after a 2018 pay cut unrelated to this case, Tr. 209:5-8, and stated that she would not seek "damages relating to [her] termination from *Elle*," ECF No. 235-1, at 4. Carroll also cites a decrease in income from freelance work, ECF No. 330, at 23, but she testified that her "ability to get freelance work since June 2019" has "stayed about the same." Tr. 182:2-4.

Second, Carroll disputes the characterization of her emotional distress as "garden variety." "Where emotional distress encompasses humiliation, shame, shock, moodiness and being upset but is devoid of any medical treatment or physical manifestation, it is considered to be 'garden variety.'" *Dotson v. City of Syracuse*, No. 5:04-cv-1388, 2011 WL 817499, at *15 (N.D.N.Y. Mar. 2, 2011). Carroll's testimony precisely fits this category. "In this Circuit, 'significant' emotional distress is generally found only where a plaintiff has offered medical, psychological, or therapist evidence of substantial, long-term psychological harm." *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018) (collecting cases). Carroll did not offer any such evidence.

Moreover, the award is excessive even if Carroll's distress were more than garden-variety. "Significant emotional distress damages usually range from $50,000 to $200,000." *Emamian v. Rockefeller Univ.*, No. 07-cv-3919, 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018). Even if Carroll's emotional distress were "significant," damages could not exceed $200,000. Carroll does not analogize her emotional distress to any case involving "egregious" emotional distress. But

6

even if she could, even "egregious" distress could not support a $7.3 million award. In *Emamian*, the court found a $2 million emotional-distress award excessive, emphasizing that "[e]ven the most egregious cases do not approach that figure." *Id.* at *17. Here, the jury awarded $5.3 million *beyond* that already outlier amount. The award is clearly excessive.

The cases cited by Carroll do not advance her cause. First, the non-economic awards in *Cantu* and *Osorio* included both emotional distress *and* reputational harm. *See Cantu v. Flanigan*, 705 F. Supp.2d 220, 225 (E.D.N.Y. 2010); *Osorio v. Source Enters., Inc.*, No. 05-cv-10029, 2007 WL 683985, at *10 (S.D.N.Y. Mar. 2, 2007). As noted above, the $7.3 million award does not include reputational harm. *See Morse v. Fusto*, No. 07-cv-4793, 2013 WL 4647603, at *28 (E.D.N.Y. Aug. 29, 2013) (finding that this fact made *Osorio* irrelevant to assessment of an emotional-distress award); *Duarte*, 341 F. Supp.3d at 323 n.10 (similar). Moreover, in both cases, the substantial reputational damages were tethered to concrete, quantifiable economic harms. *See Cantu*, 705 F. Supp. 2d at 230 ("Cantu has suffered $38,000,000 in economic damages."); *Osorio*, 2007 WL 683985, at *1 (awarding substantial back-pay and front-pay damages). The same is true of *Prozeralik*, which involved "$1,500,000 in direct financial losses." *Cantu*, 705 F. Supp. 2d at 230-31. Indeed, *Cantu* emphasized at length "the relationship between economic and non-economic damages." *Id*. In *Cantu*, the ratio was approximately 1:4, and in *Prozeralik* it was approximately 1:6. *Id*. Here, Carroll has not proven any economic losses at all.

**V.    The $11 Million Award for Reputational Injury Must Be Remitted.**

Carroll claims that President Trump's arguments regarding Professor Humphreys' testimony are not permissible in a Rule 59 motion. The Court previously rejected this argument in *Carroll II*. *See Carroll v. Trump*, No. 22-cv-10016, 2023 WL 4612082, at *23 (S.D.N.Y. July 19, 2023); *see also McIntosh v. Monsanto Co.*, 462 F. Supp. 2d 1025, 1032-33 (E.D. Mo. 2006).

7

Carroll largely ignores the substantive problems with Professor Humphreys' testimony, instead relying on the jury's verdict. But under Rule 59, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quotation omitted). The Court need not ignore the testimony's unsupported assumptions, internal inconsistencies, or entirely speculative nature.

**VI.  The Punitive Damages Award Is Excessive Under Constitutional and Common Law.**

On punitive damages, Carroll argues (at 33) that *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), holds that a 9:1 ratio is the "outer limit for most cases." Not so. *Campbell* holds, as the Second Circuit recognized in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014), that a "four-to-one ratio ... is 'close to the line of constitutional impropriety.'" *Id.* at 165 (quoting *Campbell*, 538 U.S. at 425). While punitive damages turn on the facts of each case, *see Campbell*, 538 U.S. at 425, Carroll wrongly suggests (at 33–34) that means there are no limits. "Even if there is no such thing as a correct amount of punitive damages, a legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). Thus, the permissible ratio is *inversely related* to the size of compensatory damages. "A larger punitive-to-compensatory ratio may be appropriate where 'a particularly egregious act has resulted in only a small amount of economic damages,' and similarly, 'when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 149 (2d Cir. 2015) (quoting *Campbell*, 538 U.S. at 425); *see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 494 (2008). Thus, "when a compensatory award is particularly high, a 1:1 ratio between compensation and punishment may be the maximum award permitted by the Constitution." *Turley*, 774 F.3d at 167.

8

Carroll does not argue this case involves misconduct of the "extreme nature" that *Turley* said sometimes allows a higher ratio. *Id.* Instead, she argues specific deterrence. ECF No. 330, at 4–35. That waives other bases for defending the award. *See, e.g., Pfizer, Inc. v. United States*, 2017 WL 4350581, at *2 (S.D.N.Y. June 30, 2017). But if specific deterrence is her justification, punitive damages should be close to zero. "Optimal deterrence is achieved when damages equal the harm done by the wrong, divided by the probability of detecting the injury and prosecuting the claim." *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 621 (7th Cir. 2000) (cited in *Turley*, 774 F.3d at 165, and *Payne*, 711 F.3d at 97). Here, Carroll does not claim that President Trump is concealing what she says are defamatory statements. There is no need for "extra-compensatory damages" because the misconduct is not "designed to escape detection." *Jennings v. Yurkiw*, 18 F.4th 383, 392 & n.5 (2d Cir. 2021); *see also Baker*, 554 U.S. at 494. There is certainly no reason for the 3.6:1 ratio here. *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280 (S.D.N.Y. 2016), for example, noted the need for deterrence yet concluded a 1:1 ratio was appropriate. *Id.* at 350.

Further, "very large damages awarded . . . not for any economic loss but for emotional distress and reputational harm" are themselves deterrents. *Osorio*, 2007 WL 683985, at *2. Punitive damages are based, in large part, on a plaintiff's "outrage and humiliation," so compensatory damages "already contain this punitive element." *Campbell*, 538 U.S. at 426.

Finally, Carroll cannot use President Trump's wealth (at 34) to salvage this award. Even to wealthy individuals, a multi-million dollar award is far more than "a minor annoyance." *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978). In fact, to emphasize "the wealth of the wrongdoer increase[s] the risk that the award" rests on impermissible considerations. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993) (plurality opinion).

9

Carroll also claims (at 32) President Trump acted with a high degree of reprehensibility. *Payne*, however, holds that a provoked response, "diminishes the degree of reprehensibility." 711 F.3d at 101. Carroll conflates (at 32) defensive conduct with provoked conduct. Carroll spoke first, falsely accusing President Trump of a crime, and the statements at issue were denials in response. *See* ECF No. 157-1 ¶¶ 82, 164, 168. As in *Payne*, such provocation lessens the degree of reprehensibility. Indeed, the law allows "a defamed person to respond to the extent reasonably necessary to defend himself." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 18 (1st Cir. 2011); *see Shenkman v. O'Malley*, 2 A.D.2d 567, 574 (1st Dep't 1956). That privilege underscores that *responses* to public accusations are not reprehensible and cannot enhance punitive damages.

Carroll also attempts (at 35), and fails, to rely on comparator cases. Her focus on two out-of-circuit cases underscores that this award is out of step with similar cases in this jurisdiction. In any event, she mischaracterizes those cases. *Freeman v. Giuliani* involved *two* plaintiffs; the punitive damages award was thus $37.5 million on a per-plaintiff basis. *See* Verdict Form, *Freeman v. Giuliani*, No. 21-cv-3354 (Dec. 15, 2023), ECF No. 135. That is almost half this award. Moreover, the damages in *Freeman*—unlike here—comply with a roughly 1:1 ratio in both the aggregate and a per-plaintiff basis. *See id.* Likewise, in *Lafferty v. Jones*, 2022 WL 18110184 (Conn. Super. Ct. Nov. 10, 2022), compensatory damages for the *fifteen* plaintiffs ranged from $28.8 million to $120 million. *Id.* at *2. For punitive damages other than costs and fees, each plaintiff was awarded $10 million in punitive damages, *id.* at *10—far below the $65 million Carroll received and well below the 1:1 ratio no matter how calculated. *See id.* at *2, *5, *10.

## CONCLUSION

The Court should grant President Trump's Rule 59 motion, ECF Nos. 311, 312.

Dated: New York, New York  
      April 9, 2024

Respectfully submitted,

*/s/ D. John Sauer*  
D. John Sauer*  
William O. Scharf*  
JAMES OTIS LAW GROUP, LLC  
13321 North Outer Forty Road, Suite 300  
Chesterfield, Missouri 63017  
(314) 562-0031  
John.Sauer@james-otis.com

Michael T. Madaio, Esq.  
Alina Habba, Esq.  
HABBA MADAIO & ASSOCIATES LLP  
1430 U.S. Highway 206, Suite 240  
Bedminster, New Jersey 07921  
              -and-  
112 West 34th Street, 17th & 18th Floors  
New York, New York 10120  
Telephone: (908) 869-1188  
E-mail: ahabba@habbalaw.com

*Attorneys for President Donald J. Trump*

* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 9, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*